# EXHIBIT A

## Proposed Order

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| KIDDE-FENWAL, INC.,[1] | Case No. 23-10638 (___) |
| Debtor. | |

**ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF
OF STRETTO, INC. AS CLAIMS AND NOTICING AGENT**

Upon the application (the "Application")[2] of Kidde-Fenwal, Inc. (the "Debtor"),

for entry of an order (this "Order") appointing Stretto as Claims and Noticing Agent in this

Chapter 11 Case effective as of the Petition Date; and this Court having jurisdiction to consider

the Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of

Reference* from the United States District Court for the District of Delaware, dated February 29,

2012; and this Court being able to issue a final order consistent with Article III of the United

States Constitution; and venue of this Chapter 11 Case and the Application in this district being

proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this matter being a core proceeding pursuant

to 28 U.S.C. § 157(b); and this Court having found that proper and adequate notice of the

Application and the relief requested therein has been provided in accordance with the

Bankruptcy Rules and the Local Rules, and that, except as otherwise ordered herein, no other or

further notice is necessary; and objections (if any) to the Application having been withdrawn,

resolved or overruled on the merits; and this Court having found and determined that the relief

sought in the Application is in the best interests of the Debtor, its estate, its creditors and all other

---

[1]    The last four digits of Kidde-Fenwal, Inc.'s tax identification number are 5282.  The Debtor's corporate headquarters is located at 400 Main Street, Ashland, Massachusetts 01721.

[2]    Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Application.

parties-in-interest; and that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.     The Application is GRANTED as set forth herein.

2.     The Debtor is authorized to retain and employ Stretto as Claims and Noticing Agent in this Chapter 11 Case.

3.     Notwithstanding the terms of the Engagement Agreement attached hereto as Exhibit 1, the Application is approved solely as set forth in this Order.

4.     The Debtor is authorized to retain Stretto as Claims and Noticing Agent effective as of the Petition Date under the terms of the Engagement Agreement and rate structure therein, and Stretto is authorized and directed to perform noticing services and to receive, maintain, record, and otherwise administer the proofs of claim filed in this Chapter 11 Case (if any), and all related tasks, all as described in the Application.

5.     Stretto shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in this Chapter 11 Case (if any) and is authorized and directed to maintain official claims registers for the Debtor, to provide public access to every proof of claim unless otherwise ordered by the Court, and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

6.     Stretto is authorized and directed to provide an electronic interface for filing proofs of claim and to obtain a post office box or address for the receipt of proofs of claim.

7.     Stretto is authorized to take such other action to comply with all duties set forth in the Application.

8.      The Debtor is authorized to compensate Stretto in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Stretto and the rates charged for each, and to reimburse Stretto for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Stretto to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

9.      Stretto shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred. With respect to services provided prior to the effective date of a chapter 11 plan in this Chapter 11 Case, Stretto shall serve monthly invoices on the Debtor, the U.S. Trustee, counsel for the Debtor, counsel for any official statutory committee monitoring the expenses of the Debtor, and any party-in-interest who specifically requests service of the monthly invoices.

10.      The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Engagement Agreement or monthly invoices; *provided* that the parties may seek resolution of the matter from the Court if resolution is not achieved.

11.      Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Stretto under this Order shall be an administrative expense of the Debtor's estate.

12.      Stretto may apply its advance to all prepetition invoices, which advance shall be replenished to the original advance amount, and, thereafter, Stretto may hold its advance under the Engagement Agreement during this Chapter 11 Case as security for the payment of fees and expenses incurred under the Engagement Agreement.

13.      The Debtor shall indemnify Stretto under the terms of the Engagement Agreement, as modified pursuant to this Order.

-3-

14.     Stretto shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Agreement for services other than the services provided under the Engagement Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court.

15.     Notwithstanding anything to the contrary in the Engagement Agreement, the Debtor shall have no obligation to indemnify Stretto, or provide contribution or reimbursement to Stretto, for any claim or expense that is either:  (a) judicially determined (the determination having become final) to have arisen from Stretto's gross negligence, willful misconduct, or fraud; (b) for a contractual dispute in which the Debtor alleges the breach of Stretto's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to applicable law; or (c) settled prior to a judicial determination under (a) or (b), but determined by this Court, after notice and a hearing, to be a claim or expense for which Stretto should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement as modified by this Order.

16.     If, before the earlier of (a) the entry of an order confirming a chapter 11 plan in this Chapter 11 Case (that order having become a final order no longer subject to appeal), or (b) the entry of an order closing this Chapter 11 Case, Stretto believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution, and/or reimbursement obligations under the Engagement Agreement (as modified by this Order), including the advancement of defense costs, Stretto must file an application therefor in this Court, and the Debtor may not pay any such amounts to Stretto before the entry of an order by this Court approving the payment.  This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Stretto

-4-

for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify Stretto. All parties-in-interest shall retain the right to object to any demand by Stretto for indemnification, contribution, or reimbursement.

17.     The limitation of liability section in paragraph 10 of the Engagement Agreement is deemed to be of no force or effect with respect to the services to be provided pursuant to this Order.

18.     In the event Stretto is unable to provide the services set out in this Order, Stretto will immediately notify the Clerk and the Debtor's counsel and, upon approval of the Court, cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtor's counsel.

19.     The Debtor may submit a separate retention application, pursuant to 11 U.S.C. § 327 and/or any applicable law, for work that is to be performed by Stretto but is not specifically authorized by this Order.

20.     The Debtor and Stretto are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

21.     Notwithstanding any term in the Engagement Agreement to the contrary (including with regard to paragraph 15 of the Engagement Agreement), the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

22.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

23.     Stretto shall not cease providing claims processing services during the Chapter 11 Case for any reason, including nonpayment, without an order of the Court.

24.     In the event of any inconsistency between the Engagement Agreement, the Application and this Order, this Order shall govern.

25.     This Order is immediately effective and enforceable, notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise.

26.     This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the Application or the implementation of this Order.

# EXHIBIT 1

**Engagement Agreement**

# Services Agreement

This Services Agreement (this "**Agreement**") is entered into as of May 9, 2023 between Stretto, Inc. ("**Stretto**") and Kidde-Fenwal, Inc. (together with its affiliates and subsidiaries, the "**Company**").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

   (a) Stretto agrees to provide the Company with consulting services regarding (i) legal noticing, maintenance of claims registers, creditor mailing matrices, an electronic platform for filing proofs of claim, plan solicitation, balloting, tabulation of votes, disbursements, and administrative support in preparation of schedules of assets and liabilities and statements of financial affairs ("**Claims Administration, Noticing, and Solicitation Services**"); and (ii) crisis communications, claims analysis and reconciliation, preference analysis and recovery, contract review and analysis, case research, public securities, depository management, treasury services, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement), and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations, or court rules or orders (all such services collectively, the "**Services**").

   (b) The Company acknowledges and agrees that Stretto will often take direction from the Company's representatives, employees, agents, and/or professionals (collectively, the "**Company Parties**") with respect to providing Services hereunder. The parties agree that Stretto may rely upon, and the Company agrees to be bound by, any requests, advice, or information provided by the Company Parties to the same extent as if such requests, advice, or information were provided by the Company.

   (c) The Company agrees and understands that Stretto shall not provide the Company or any other party with legal advice.

2. **Rates, Expenses and Payment**

   (a) Stretto will provide the Services on an as-needed basis and upon request or agreement of the Company. Stretto's charges for Services through the effective date of a chapter 11 plan shall be at the rates attached hereto (the "**Preferred Rate Structure**") and are subject to approval by the Bankruptcy Court. The Company agrees that the Preferred Rate Structure shall not be applicable to Services provided to the Company following its emergence from chapter 11 and that such Services will be provided at Stretto's then prevailing rates.  The Company agrees to pay for reasonable out of pocket expenses incurred by Stretto in connection with providing Services hereunder.

   (b) Stretto will bill the Company no less frequently than monthly. All invoices shall be due and payable upon receipt. Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Stretto may require advance or direct payment from the Company before the performance of Services hereunder. If any amount is unpaid

---

[1] The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case. Each affiliated entity shall be jointly and severally liable for the Company's fees and expenses.

as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

(c) In the case of a dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Stretto within 10 days of receipt of the invoice.

(d) The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof. Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of, or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Stretto or paid by Stretto to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Stretto an advance of $25,000. Stretto may use such advance against unpaid fees and expenses hereunder. Stretto may use the advance against all prepetition fees and expenses.  Company shall upon Stretto's request, which request may take the form of an invoice, replenish the advance to the original advance amount.  Stretto may also, at its option hold such advance to apply against unpaid fees and expenses hereunder.

(h) Stretto reserves the right to make reasonable increases to the Preferred Rate Structure on a periodic basis subject to the Company's approval. Stretto shall provide 30 days' notice to the Company of any such increase.

(i) Payments to Stretto under the terms of this Agreement for services rendered, may be remitted by Company using either (or both) of the following methods:

> **Wire Transmission**
> Bank Name – Pacific Western Bank
> Bank Address – 110 West A Street, Suite 100, San Diego, CA 92101
> ABA – 122238200
> Account Number – 1000681781
> Account Name – Bankruptcy Management Solutions, Inc.
>
> **Check**
> Stretto
> Attn: Accounts Receivable
> 410 Exchange, Suite 100
> Irvine, CA 92602

**3.  Retention in Bankruptcy Case**

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "**Bankruptcy Code**"), the Company promptly shall file any necessary application with the Bankruptcy Court to retain Stretto to provide the Services. The form and substance of such applications and any order approving them shall be reasonably acceptable to Stretto.

(b) If the Company seeks authorization in a chapter 11 case to obtain postpetition financing, including debtor-in-possession loans or use of cash collateral, the Company shall include Stretto's fees and expenses incurred hereunder in any professional compensation carve-out.

(c) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Stretto will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

**4.  Confidentiality**

(a) The Company and Stretto agree to keep confidential all non-public records, systems, procedures, software, and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the receiving party's possession or known to it, independently developed by the receiving party, lawfully obtained by the receiving party from a third party, or required to be disclosed by law, then the receiving party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, (i) such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time, if possible, to seek any remedy available under applicable law to prevent disclosure of the information; and (ii) such party will limit such disclosure to the extent the such party's counsel in good faith determines such disclosure can be limited.

### 5. Property Rights

Stretto reserves to itself and its agents all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation, and any other information or property (collectively, "**Property**") furnished by Stretto for itself or for use by the Company hereunder. The foregoing definition of Property shall include any and all data, from any source, downloaded, stored, and maintained by Stretto's technology infrastructure. Fees and expenses paid by the Company do not vest in the Company any rights in such Property. Such Property is only being made available for the Company's use during and in connection with the Services provided by Stretto hereunder.

### 6. Bank Accounts

At the request of the Company or the Company Parties, Stretto shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction. To the extent that certain financial products are provided to the Company pursuant to Stretto's agreement with financial institutions, Stretto may receive compensation from such institutions for the services Stretto provides pursuant to such agreement.

### 7. Term and Termination

(a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein). "**Cause**" means (i) gross negligence or willful misconduct of Stretto that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Stretto invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the advance held by Stretto where Stretto reasonably believes it likely will not be paid.

(b) If this Agreement is terminated after Stretto is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Stretto of its duties under such retention, which order shall be in form and substance reasonably acceptable to Stretto.

(c) If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Stretto hereunder.

STRETTO

(d)  If this Agreement is terminated, Stretto shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Stretto shall provide the necessary staff, services, and assistance required for such an orderly transfer. The Company agrees to pay for such Services pursuant to the Preferred Rate Structure.

## 8.  No Representations or Warranties

Stretto makes no representations or warranties, express or implied, regarding the services and products sold or licensed to the Company hereunder or otherwise with respect to this Agreement, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness, or capacity. Notwithstanding the foregoing, if the above disclaimer is not enforceable under applicable law, such disclaimer will be construed by limiting it so as to be enforceable to the extent compatible with applicable law.

## 9.  Indemnification

(a)  To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Stretto and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents (collectively, the "**Indemnified Parties**") from and against any and all losses, claims, damages, judgments, liabilities, and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "**Losses**") resulting from, arising out of, or related to Stretto's performance hereunder. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b)  Stretto and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation, or proceeding that either party becomes aware of with respect to the Services provided hereunder.

(c)  The Company's indemnification of Stretto hereunder shall exclude Losses resulting from Stretto's gross negligence or willful misconduct.

(d)  The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

## 10.  Limitations of Liability

Except as expressly provided herein, Stretto's liability to the Company for any Losses, unless due to Stretto's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company to Stretto for the portion of the particular work that gave rise to the alleged Loss.  In no event shall Stretto be liable for any indirect, special, or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

## 11.  Company Data

(a)  The Company is responsible for, and Stretto does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Stretto and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "**SOFAs and Schedules**"). Stretto bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

(b) The Company agrees, represents, and warrants to Stretto that before delivery of any information to Stretto: (i) the Company has full authority to deliver such information to Stretto; and (ii) Stretto is authorized to use such information to perform Services hereunder and as otherwise set forth in this Agreement.

(c) Any data, storage media, programs or other materials furnished to Stretto by the Company may be retained by Stretto until the Services provided hereunder are paid in full. The Company shall remain liable for all fees and expenses incurred by Stretto under this Agreement as a result of data, storage media or other materials maintained, stored, or disposed of by Stretto. Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the Company has not utilized Stretto's Services for a period of 90 days or more, Stretto may dispose of any such materials in a manner to be determined in Stretto's sole reasonable discretion, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data, or information provided by the Company to Stretto.

(d) Stretto and the Company agree that this Agreement is subject to the terms set forth in the GDPR Addendum attached hereto as Exhibit A, which are incorporated herein by reference.

(e) Notwithstanding the foregoing, if Stretto is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media, or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

## 12. California Consumer Privacy Act.

(a) Definitions.  In this Section,
  (i) "**CCPA**" means the California Consumer Privacy Act of 2018, including amendments and final regulations;
  (ii) "**Personal Information**" has the same meaning given to such term under section 1798.140 of the CCPA and is limited to any Company data provided to Stretto by the Company in order for Stretto to provide Services under this Agreement; and
  (iii) "**Commercial Purposes**," "**Sell**," "**Business,**" and "**Service Provider**" have the same meanings assigned to them in section 1798.140 of the CCPA.

(b) Relationship Between the Parties. To the extent the Company is considered a Business under California law, and subject to the terms of this Section 12, Stretto will act solely as Company's Service Provider with respect to Personal Information.

(c) Restrictions. Stretto certifies it will not: (i) Sell Personal Information or (ii) collect, retain, use, or disclose Personal Information for any purpose other than for the specific purpose of performing the Services specified in this Agreement, including collecting, retaining, using, or disclosing Personal Information for any Commercial Purpose other than providing the Services specified in this Agreement unless otherwise permitted under the CCPA.

## 13. Non-Solicitation

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ, or otherwise retain as employees, consultants, or otherwise, any employees of Stretto during the term of this Agreement and for a period of 12 months after termination thereof unless Stretto provides prior written consent to such solicitation or retention.

## 14. Force Majeure

Whenever performance by Stretto of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial

STRETTO

or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Stretto's reasonable control, then such performance shall be excused.

## 15. Choice of Law

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

## 16. Arbitration

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction.  There shall be three arbitrators named in accordance with such rules. The arbitration shall be conducted in the English language in Irvine, California in accordance with the United States Arbitration Act.  Notwithstanding the foregoing, upon commencement of any chapter 11 case(s) by the Company, any disputes related to this Agreement shall be decided by the bankruptcy court assigned to such chapter 11 case(s).

## 17. Integration: Severability; Modifications: Assignment

(a) Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms, and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements, and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Stretto.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Stretto may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

## 18. Effectiveness of Counterparts

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

## 19. Notices

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

STRETTO

If to Stretto:       Stretto
                     410 Exchange, Ste. 100
                     Irvine, CA 92602
                     Attn: Sheryl Betance
                     Tel: 714.716.1872
                     Email: sheryl.betance@stretto.com


If to the Company:   Kidde-Fenwal, Inc.
                     Attn: Steve Hannan
                     400 Maint Street
                     Ashland, MA 01721


With a copy to:      Sullivan & Cromwell LLP
                     125 Broad Street
                     New York, NY 10004-2498
                     Attn:  Alexa J. Kranzley, Esq.
                            Julie G. Kapoor, Esq.
                     Tel: 212.558.7893
                     Email: kranzleya@sullcrom.com
                            kapoorj@sullcrom.com


And a copy to:       Alix Partners, LLP
                     300 N. LaSalle, Suite 1800
                     Chicago, IL 60654
                     Attn: Carrianne Basler, Managing Director
                     Tel: 312.705.3907
                     Email: cbasler@alixpartners.com


**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement effective as of the date first above written.


Stretto

*Sheryl Betance*
_____
By:  Sheryl Betance

Title:  Senior Managing Director



Kidde-Fenwal, Inc.

_____
By: Carrianne Basler

Title: Deputy Chief Transformation Officer

DocuSign Envelope ID: 47897F24-0E6C-48D8-91AB-9850BCEF67B9

**Exhibit A**

## GDPR Addendum

This GDPR Addendum is a part of the Services Agreement (the "**Agreement**") by and between Stretto (the "**Processor**")[2] and the Company (together, the "**Parties**").

### RECITALS

**WHEREAS**,

(A)     The Processor and the Company have agreed to the following terms regarding the Processing of Company Personal Data.

(B)     The Company acts as a Controller of the Company Personal Data.

(C)     The Company wishes to subcontract certain Services, pursuant to the Agreement, which imply and require the processing of personal data, to the Processor.

(D)     The Company instructs the Processor to process Company Personal Data.

(E)     The Parties seek to implement a data processing agreement that complies with the requirements of the current legal framework in relation to data processing and with the Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016 on the protection of natural persons with regard to the processing of personal data and on the free movement of such data, and repealing Directive 95/46/EC (General Data Protection Regulation or "**GDPR**").

**NOW THEREFORE**, the Company and the Processor agree as follows:

1.     **Definitions.**  The parties agree that the following terms, when used in this GDPR Addendum, shall have the following meanings.

(a)     "**Addendum**" shall mean this GDPR Addendum;

(b)     "**Company Personal Data**" means any Personal Data Processed by the Processor or a Subprocessor on behalf of the Company pursuant to or in connection with the Agreement, and may include, for example, Personal Data of Company's employees, clients, customers, creditors, equity interest holders, or counter-parties;

(c)     "**Data Protection Laws**" means EU Directive 95/46/EC, as transposed into domestic legislation of each Member State and as amended, replaced or superseded from time to time, including by the GDPR and laws implementing or supplementing the GDPR;

(d)     "**Services**" means the services the Processor provides to the Company pursuant to the Agreement;

(e)     "**Subprocessor**" means any person appointed by or on behalf the Processor to process Personal Data on behalf of the Company in connection with the Agreement;

---

[2] Capitalized terms utilized but not defined in the GDPR Addendum have the meanings ascribed to them in the Agreement.

STRETTO

(f)    "**Technical and organizational security measures**" means those measures aimed at protecting Personal Data against accidental or unlawful destruction or accidental loss, alteration, unauthorized disclosure or access, in particular where the processing involves the transmission of data over a network, and against all other unlawful forms of processing;

(g)    The terms "**Commission**", "**Controller**", "**Data Subject**", "**Member State**", "**Personal Data**", "**Personal Data Breach**", "**Processor**", "**Processing**", "**Special Categories of Personal Data**", and "**Supervisory Authority**" shall have the same meaning as in the GDPR, and their derivative terms shall be construed accordingly.

2.    **Obligations of the Company.**  The Company agrees and warrants:

(a)    that the Processing, including the transfer itself, of the Company Personal Data has been and will continue to be carried out in accordance with the relevant provisions of the applicable Data Protection Laws (and, where applicable, has been notified to the relevant authorities of the Member State);

(b)    that it has instructed and throughout the duration of the Services will instruct the Processor to process the Company Personal Data transferred only on the Company's behalf and in accordance with the applicable Data Protection Laws, the Agreement, and this Addendum;

(c)    that the Processor will provide sufficient guarantees in respect of the technical and organizational security measures;

(d)    that after assessment of the requirements of the applicable data protection law, the technical and organizational security measures are appropriate to protect the Company Personal Data against accidental or unlawful destruction or accidental loss, alteration, unauthorized disclosure or access, in particular where the processing involves the transmission of data over a network, and against all other unlawful forms of processing, and that these measures ensure a level of security appropriate to the risks presented by the processing and the nature of the data to be protected having regard to the state of the art and the cost of their implementation;

(e)    that it will ensure compliance with the technical and organizational security measures; and

(f)    that the Company Personal Data transferred to Processor does not include or involve any special categories of data, as defined by Article 9 of the GDPR.

3.    **Obligations of the Processor.**  The Processor agrees and warrants:

(a)    to comply with the Data Protection Laws;

(b)    to process the Company Personal Data only on behalf of the Company and in compliance with its instructions and this Addendum; if it cannot provide such compliance for whatever reasons, it agrees to inform promptly the Company of its inability to comply, in which case the Company is entitled to suspend the processing of data and/or terminate the Agreement;

DocuSign Envelope ID: 47897F24-0E6C-48D3-91AB-9850BCFF67B9

(c)     that it has no reason to believe that the legislation applicable to it prevents it from fulfilling the instructions received from the Company and its obligations under the Agreement and that in the event of a change in this legislation which is likely to have a substantial adverse effect on the warranties and obligations provided by the Clauses, it will promptly notify the change to the Company as soon as it is aware, in which case the Company is entitled to suspend the transfer of data and/or terminate the Agreement;

(d)     that it has implemented reasonable and appropriate technical and organizational security measures before processing the Company Personal Data;

(e)     that it will promptly notify the Company about:

  i.     any legally binding request for disclosure of the Company Personal Data by a law enforcement authority unless otherwise prohibited, such as a prohibition under criminal law to preserve the confidentiality of a law enforcement investigation;

  ii.    any accidental or unauthorized access; and

  iii.   any request received directly from any data subject without responding to that request, unless it has been otherwise authorized to do so by the Company or as required by any applicable law;

(f)     to deal promptly and properly with all inquiries from the Company relating to its Processing of the Company Personal Data and to abide by the advice of the supervisory authority with regard to the processing of the Company Personal Data;

(g)     to take reasonable steps to ensure the reliability of any employee, agent, or contractor of any Subprocessor who may have access to the Company Personal Data, ensuring in each case that access is strictly limited to those individuals who need to know or access the relevant Company Personal Data, as strictly necessary to perform the Services under the Agreement, and to comply with Data Protection Laws in the context of that individual's duties to the Subprocessor, ensuring that all such individuals are subject to confidentiality undertakings or professional or statutory obligations of confidentiality; and

(h)     that it shall not use (or disclose any Company Personal Data to) any Subprocessor unless required or authorized by the Company with prior written consent.

**4.     Obligations after Termination of Personal Data Processing Services.**

(a)     The Parties agree that within 10 business days of the termination of the Agreement or provision of Services, the Processor and any Subprocessor shall, at the choice of the Company, return all Company Personal Data and the copies thereof to the Company or shall destroy all the Company Personal Data and certify to the Company that it has done so, unless legislation imposed upon the Processor prevents it from returning or destroying all or part of the Company Personal Data.  In that case, the Processor warrants that it will guarantee the confidentiality of the Company Personal Data and will not further process the Company Personal Data.

(b)    The Processor and any Subprocessor warrant that upon request of the Company and/or of the supervisory authority, it will submit its data-processing facilities for an audit of the technical and organizational security measures.

5.    **Notices.**  All notices and communications given under this Addendum must be delivered as provided for by the Agreement.


# Preferred Rate Structure

## Consulting Services and Rates

*Analyst*                                                           *Waived*

The Analyst processes incoming mail, creditor correspondence and returned mail, and supports the case team with administrative tasks as required.

*Consultant (Associate/Senior Associate)*                          *$70 - $200*

The Associate manages the various data collection processes required by the Chapter 11 process. This includes, among other things, compiling the creditor matrix and Schedules/SOFAs (and generating drafts of same for counsel and advisors), reviewing and processing claims and ballots, overseeing contract review, overseeing all physical and electronic noticing, and generating custom claim and ballot reports.

The Senior Associate leads complex data aggregation projects for compilation of Schedules & SOFA, the creditor matrix and special notice lists. In addition, the Senior Associate oversees quality control and on mailings and reports. Stretto's Senior Associates average over seven years of experience.

*Director/ Managing Director*                                      *$210 - $250*

The Director is the primary contact for the company, counsel and other professionals and oversees and supports all aspects of the administration for the entirety of an engagement.

The Managing Director provides industry and/or project specific expertise to support complex matters. Professionals, including Stretto's executive management team will serve in this role when appropriate.

Stretto's Directors and Managing Directors have over fifteen years of experience and are typically former restructuring professionals.

*Executive Management*                                             *Waived*

Our Executive Management team oversees Stretto's Corporate Restructuring group and will provide consulting support to this matter at no charge.

## Solicitation, Balloting and Tabulation Rates

*Solicitation Associate*                                           *$230*

The Solicitation Associate reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. The Solicitation Associate also prepares customized reports relating to voting and other corporate events, including exchange offers and rights subscriptions. The Solicitation Associate also interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and related communications.

*Director of Securities & Solicitations*                           *$250*

The Director of Securities leads public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of related processes.


## Printing & Noticing Services

| | |
|---|---|
| Printing | $0.10 (per image) |
| Postage/Overnight Delivery | Preferred Rates |
| ECF Email Noticing | Waived |
| Fax Noticing | $0.10 (per page) |
| Envelopes | Varies by Size |
| Coordinate and Publish Legal Notices | Preferred Pricing Available on Request |
| Public Securities Events | Varies by Event |

## Electronic Services

| | |
|---|---|
| Case Homepage Set-Up and Hosting | Waived |
| Robotic Process Automation[1] | Starting at $0.48 (per process) |
| Encrypted HTTPS Bandwidth (volume discount applies) | Starting at $0.125 (per MB) |
| Online Monthly Operating Report Platform Subscription | Waived |

## Claims Administration & Management Expenses

| | |
|---|---|
| License Fee and System Maintenance | $0.10 (per creditor per month) |
| Database and System Access (Unlimited Users) | Waived |
| Online Claims Filing Portal | Waived |
| Online Ballots Filing Portal | Waived |
| Preference Analysis (Initial Preference Review) | Standard Hourly Rates |

## Document Management Services

| | |
|---|---|
| Electronic Imaging (Per Imaged Page) | $0.10 |
| FedRAMP Compliant File Retention (volume discount applies) | Starting at $0.125 (per MB) |
| Virtual Data Room | Available on Request |

## Call Center Support Services

| | |
|---|---|
| Case-Specific Toll-Free Number and Voice-Mail Box | Waived |
| Interactive Voice Response (Per Minute) | Waived |
| Monthly Maintenance Charge | Waived |
| Management of Call Center (Per Hour) | Standard Hourly Rates |

## Disbursement Services

| | |
|---|---|
| Check Issuance | Available on Request |
| Account Opening Fee | Available on Request |
| W-9 Mailing and Maintenance of TIN Database | Standard Hourly Rates |
| Disbursements - Record to Transfer Agent | Quoted at Time of Request |

---

[1] Includes ECF docket automation, subscription-based docket notifications, USPS bulk mail operations, address validation, e-filing transactions, cloud computing charges, and related activities