## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

KIDDE-FENWAL, INC.,[1]

      Debtor.

Chapter 11

Case No. 23-10638 (___)

## MOTION OF DEBTOR FOR ENTRY OF INTERIM AND FINAL ORDERS (I) APPROVING FORM OF ADEQUATE ASSURANCE OF PAYMENT TO UTILITY COMPANIES, (II) ESTABLISHING PROCEDURES FOR RESOLVING OBJECTIONS BY UTILITY COMPANIES, (III) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING OR DISCONTINUING SERVICE AND (IV) GRANTING RELATED RELIEF

Kidde-Fenwal, Inc. (the "Debtor") hereby submits this motion (this "Motion") for entry of an interim order, substantially in the form attached hereto as Exhibit A (the "Interim Order"), and a final order, substantially in the form attached hereto as Exhibit B (the "Final Order" and together with the Interim Order, the "Orders"), pursuant to sections 105(a) and 366 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), (a) approving the Debtor's proposed form of adequate assurance of payment for postpetition Utility Services (as defined below), (b) establishing procedures for resolving objections by Utility Companies (as defined below) relating to the adequacy of the proposed adequate assurance, (c) prohibiting the Utility Companies from altering, refusing or discontinuing service to, or discriminating against, the Debtor on the basis of the commencement of the Debtor's chapter 11 case (the "Chapter 11 Case") or outstanding prepetition invoices and (d) granting certain related relief, including scheduling a hearing to consider approval of the Motion on a final basis (the "Final Hearing"). Certain facts supporting this Motion are set forth in the

---

[1] The last four digits of Kidde-Fenwal, Inc.'s tax identification number are 5282. The Debtor's corporate headquarters is located at 400 Main Street, Ashland, Massachusetts 01721.

*Declaration of James A. Mesterharm in Support of Chapter 11 Petition and First Day Pleadings*

(the "First Day Declaration").  In further support of the Motion, the Debtor respectfully states as follows:

## Background

1.      The Debtor is a Delaware corporation with its headquarters in Ashland, Massachusetts.  The Debtor manufactures fire protection and suppression systems, including fire detectors, alarm notification appliances, fire-suppression control units and fire suppression-agent delivery systems.  The Debtor also manufactures electronic gas burner controls, mechanical temperature controls and fire and overheat detectors.

2.      On the date hereof (the "Petition Date"), the Debtor filed with the United States Bankruptcy Court for the District of Delaware (the "Court") a voluntary petition for relief under the Bankruptcy Code.  The Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no creditors' committee, trustee or examiner has been appointed in this Chapter 11 Case.

3.      Additional factual background relating to the Debtor's business and the commencement of this Chapter 11 Case is set forth in the First Day Declaration.

## Facts Specific to the Relief Requested

4.      The Debtor leases a facility (the "Facility") located in Ashland, Massachusetts, where the Debtor manufactures its products and maintains an office.  In the ordinary course of business, to operate its business and manage the Facility, the Debtor obtains telecommunications, waste removal, water, gas, electricity, propane and other utility services (collectively, the "Utility Services") from a number of utility companies (collectively, the "Utility Companies").  Attached to each of the Interim Order and the Final Order as Exhibit 1 is

-2-

a nonexclusive list of Utility Companies that provide Utility Services to the Debtor as of the

Petition Date (the "Utility Services List").[2]

       5.      Historically, the Debtor has a good payment record with the Utility

Companies.  To the best of the Debtor's knowledge, there are no defaults or arrearages of any

significance for the Debtor's undisputed invoices for prepetition Utility Services, other than

payment interruptions that may be caused by the commencement of this Chapter 11 Case.  Based

on its monthly average for the 12 months prior to the Petition Date, the Debtor estimates its total

cost of Utility Services for the next 30 days will be approximately $81,000.

**I.      The Proposed Adequate Assurance Deposit**

       6.      The Debtor intends to pay all postpetition obligations owed to the Utility

Companies in a timely manner and anticipates having sufficient funds to do so.  Nevertheless, to

provide the Utility Companies with adequate assurance pursuant to sections 366(b) and 366(c) of

the Bankruptcy Code, the Debtor proposes to deposit cash into a segregated account[3] (the

"Utility Deposit Account") for the benefit of the Utility Companies, in an amount equal to two

weeks' payment for the Utility Services, calculated using the historical average for such

payments during the past 12 months (the "Adequate Assurance Deposit" and together with the

Debtor's ability to pay for future Utility Services in the ordinary course, the "Proposed Adequate

Assurance").  Based on the foregoing, the Debtor estimates that the total amount of the Adequate

Assurance Deposit will be approximately $40,000.   The Debtors submit that the Proposed

---

[2]    The inclusion of any entity in, or omission of any entity from, the Utility Services List is not an admission by
the Debtor that such entity is, or is not, a utility within the meaning of section 366 of the Bankruptcy Code, and
the Debtor reserves all rights and defenses.  The Debtor reserves all rights to amend the Utility Services List as
needed.

[3]    As set forth in the *Motion of Debtor for Entry of Interim and Final Orders ((I) Authorizing the Debtor to (A)
Continue to Operate Its Cash Management System, (B) Pay or Honor Certain Prepetition Obligations Related
Thereto and (C) Maintain Its Bank Accounts and Existing Business Forms, (II) Authorizing Affiliate
Transactions and (III) Granting Related Relief*, filed concurrently herewith, the Debtor intends to use the bank
account ending in #9789 as the Utility Deposit Account.

Adequate Assurance constitutes sufficient adequate assurance to the Utility Companies in full satisfaction of section 366 of the Bankruptcy Code.

7.    The Adequate Assurance Deposit may be adjusted by the Debtor if the Debtor terminates any of the Utility Services provided by any of the Utility Companies, makes other arrangements with certain Utility Companies for adequate assurance of payment, determines that an entity listed on the Utility Services List is not a utility company as defined by section 366 of the Bankruptcy Code, or amends or supplements the Utility Services List to include additional Utility Companies.  Within 20 days after the Petition Date, the Debtor will deposit the Adequate Assurance Deposit into the Utility Deposit Account.  The Adequate Assurance Deposit will be held by the Debtor in the Utility Deposit Account for the benefit of the Utility Companies on the Utility Services List during the pendency of this Chapter 11 Case. The Adequate Assurance Deposit will be returned to the Debtor upon the earlier of:  (i) the closing date of a sale of substantially all of the Debtor's assets under section 363 of the Bankruptcy Code, (ii) the effective date of any Chapter 11 Plan for the Debtor or (iii) the closing of this Chapter 11 Case.

## II.    Objections to the Proposed Adequate Assurance

8.    To balance the right of each Utility Company to evaluate the Proposed Adequate Assurance for itself and the harm to the Debtor's business that would result from any interruption in services provided by the Utility Companies, the Debtor proposes the following objection procedures (the "Objection Procedures") in the event that any Utility Company is not satisfied with the Proposed Adequate Assurance:

> a.    If a Utility Company is not satisfied with the Proposed Adequate Assurance, it must serve a written request (a "Request") upon: (a) proposed counsel to the Debtor, (i) Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004, Attn: Alexa J. Kranzley (kranzleya@sullcrom.com) and (ii) Morris, Nichols, Arsht & Tunnell

LLP, 1201 N. Market Street, 16th Floor, P.O. Box 1347, Wilmington, DE, 19899, Attn: Derek C. Abbott (dabbott@morrisnichols.com) and Andrew R. Remming (aremming@morrisnichols.com); (b) the Office of the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>"), 844 King Street, Suite 2207, Wilmington, DE 19801; and (c) counsel to any official statutory committee appointed in this Chapter 11 Case.

b.  The Request must (a) set forth the account number(s), (b) set forth the outstanding balance for each account, (c) describe any deposits, prepayments or other security currently held by the requesting Utility Company, (d) explain why the Utility Company believes the Adequate Assurance Deposit is not adequate assurance of payment and (e) specify the amount and nature of assurance of payment that would be satisfactory to the Utility Company.

c.  Upon the Debtor's receipt of any Adequate Assurance Request, the Debtor shall have 14 days from the receipt of such Adequate Assurance Request (the "<u>Resolution Period</u>") to negotiate with the requesting Utility Company to resolve its Adequate Assurance Request; *provided* that the Debtor and the applicable Utility Company may extend the Resolution Period by mutual agreement.

d.  The Debtor is authorized to resolve, in its sole discretion, any Adequate Assurance Request by mutual agreement with a Utility Company and without further order of the Court and, in connection with any such agreement, in its sole discretion, provide a Utility Company with alternative adequate assurance of payment, including cash deposits, prepayments, or other forms of security, without further order of this Court, if the Debtor believes such alternative assurance is reasonable.

e.  If the Debtor determines an Adequate Assurance Request is not reasonable and the Debtor is unable to reach an alternative resolution with the applicable Utility Company during the Resolution Period, the Debtor shall request a hearing before this Court to determine the adequacy of assurance of payment pursuant to section 366(c)(3) of the Bankruptcy Code (the "<u>Determination Hearing</u>").  Pending resolution of such Adequate Assurance Request at the Determination Hearing, the Utility Company shall be prohibited from altering, refusing or discontinuing services to the Debtor on account of unpaid charges for prepetition services or on account of any objections to the Adequate Assurance.  The Utility Company may request a hearing on an earlier date in the event that it does not agree to the date proposed by the Debtor.

9.      Any Utility Company that does not submit a Request or otherwise comply with the Objection Procedures will be prohibited from altering, refusing or discontinuing Utility Services, including on account of any perceived inadequacy of the Proposed Adequate Assurance.

**III.    Subsequent Modifications of the Utility Services List**

10.     Although the Debtor has made an extensive and good-faith effort to identify all of the Utility Companies that provide Utility Services as set forth on the Utility Services List, certain Utility Companies may not be listed therein.  To the extent the Debtor identifies additional Utility Companies, the Debtor shall promptly file an amendment to the Utility Services List and serve copies of the Interim Order or Final Order, as applicable, on any newly identified Utility Company.  In addition, the Debtor will increase the amount of the Adequate Assurance Deposit to account for any newly identified Utility Company.  The Debtor requests that the Interim and Final Orders shall be binding on all Utility Companies, regardless of when the Utility Companies are added to the Utility Services List.

11.     Upon the discontinuance or termination of any Utility Services, the Debtor may, in its sole discretion and without further order of this Court, reduce the Adequate Assurance Deposit by an amount not exceeding, for each of the Utility Services being discontinued, the lesser of (a) two weeks of the estimated costs for such Utility Services and (b) the amount of the Utility Deposit then attributable to the applicable Utility Company; *provided* that for any Utility Company for which the Adequate Assurance Deposit is reduced, the Debtor shall have paid such Utility Company in full for any outstanding postpetition Utility Services before reducing the Adequate Assurance Deposit; *provided, further,* that the Debtor shall provide five business days' notice to the applicable Utility Company prior to any such reduction (the "Reduction Notice Period").  During such Reduction Notice Period, the applicable

Utility Company may object to such reduction on the sole basis that such Utility Company has not been paid in full for any outstanding postpetition Utility Services.  If such Utility Company timely objects during the Reduction Notice Period, the Debtor shall not reduce the Adequate Assurance Deposit until such objection has been resolved among the parties or by order of the Court.

### Jurisdiction

12.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105(a) and 366 of the Bankruptcy Code.  Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtor consents to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### Relief Requested

13.     By this Motion, the Debtor requests entry of the Interim and Final Orders, substantially in the forms attached hereto as Exhibit A and Exhibit B, respectively, (a) approving the Debtor's Proposed Adequate Assurance for postpetition Utility Services, (b) establishing the Objection Procedures, (c) prohibiting the Utility Companies from altering, refusing or discontinuing service to, or discriminating against, the Debtor on the basis of the commencement

of this Chapter 11 Case or prepetition invoices and (d) granting certain related relief, including scheduling the Final Hearing.

**Basis for Relief**

14.     The relief requested herein will ensure the continuation of the Debtor's business at this critical juncture as the Debtor transitions into chapter 11.  Uninterrupted Utility Services are essential to the Debtor's ongoing operations and, therefore, the success of the Debtor's reorganization.  The Debtor's business involves the manufacturing of fire protection systems, fire suppression systems, fire detection and alarm hardware, products to light and control gas burners, and temperature control products.  To successfully manufacture and sell these products, the Debtor requires a variety of utilities to operate the Facility.  Should any Utility Company refuse or discontinue service, even for a brief period, the Debtor's business operations could be severely disrupted, and such disruption would jeopardize the Debtor's ability to manage its reorganization efforts.

15.     The Debtor also submits that the relief requested also provides the Utility Companies with a fair and orderly procedure for determining requests for additional adequate assurance.  Without the Objection Procedures, the Debtor could be forced to address multiple requests by Utility Companies in a disorganized manner at a critical period in this Chapter 11 Case when the Debtor's efforts should be more productively focused on restructuring its business.

16.     Section 366 of the Bankruptcy Code is designed with the dual purpose of protecting debtors from being cut off from utility services and providing utility companies with adequate assurance that a debtor will be able to pay for postpetition services.  To that end, pursuant to section 366(c), during the first 30 days of a chapter 11 case, a utility company may not alter, refuse or discontinue service to a debtor solely because of unpaid prepetition amounts,

but after the first 30 days, a utility company may alter, refuse or discontinue service if a debtor does not provide "adequate assurance" of payment for postpetition services in satisfactory form.

17.     Section 366(c)(3)(B) provides a list of factors that courts are not to consider when evaluating whether a proposed adequate assurance payment is in fact adequate. These factors are:  (a) the absence of security before the petition date, (b) the debtor's history of timely payments and (c) the availability of an administrative expense priority.  *See* 11 U.S.C. § 366(c)(3)(B).  Although section 366(c) clarifies what does and does not constitute "assurance of payment" and what can be considered in determining whether such assurance is adequate, Congress, in enacting that section, did not divest the Court of its power to determine what amount, if any, is necessary to provide adequate assurance of payment to a Utility Company. *See* 11 U.S.C. § 366(c)(3)(A).  Specifically, section 366(c)(3)(A) states that, "[o]n request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment."  *Id.*  Thus, there is nothing to prevent a court from deciding that, on the facts of the case before it, the amount required of the debtor to provide adequate assurance of payment to a utility company should be nominal.  *See, e.g.*, *In re Pac-West Telecomm, Inc.*, Case No. 07-10562 (BLS) (May 2, 2007), D.I. 39 (approving adequate assurance in the form of one-time supplemental prepayment to each utility company equal to prorated amount of one week's charges).

18.     Although section 366(c)(2) of the Bankruptcy Code allows a utility to take action if the debtor fails to provide adequate assurance of payment that is "satisfactory" to the utility, it is the court and not the utility that is the ultimate arbiter of what is "satisfactory" assurance after taking into consideration the needs of the debtor as well as the utility.  *See, e.g.*, *In re Penn. Cent. Transp. Co.*, 467 F.2d 100, 103–04 (3d Cir. 1972) (affirming the bankruptcy

court's decision that no utility deposit was necessary where such deposits "would jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already [were] reasonably protected"). Indeed, section 366 only requires that assurance of payment be "adequate," and courts have not construed section 366 to require an absolute guarantee of the debtor's ability to pay. *See, e.g.*, *In re Caldor, Inc. – N.Y.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires the Bankruptcy Court to determine whether the circumstances are sufficient to provide a utility with 'adequate assurance' of payment. The statute does not require an 'absolute guarantee of payment.'") (citation omitted).

19.    Further, courts consider what is "need[ed] of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Va. Elec. & Power Co.* v. *Caldor, Inc. – N.Y.*, 117 F.3d 646, 650 (2d Cir. 1997); *see also In re Penn Cent.*, 467 F.2d at 103–04. Indeed, "[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full." *In re The Great Atl. & Pac. Tea Co., Inc.*, 2011 WL 5546954, at *5 (S.D.N.Y. Nov. 14, 2011).

20.    The Proposed Adequate Assurance is reasonable and satisfies the requirements of section 366 of the Bankruptcy Code. The Debtor fully intends to pay all postpetition obligations owed to the Utility Companies as they become due and expects to have sufficient funds to pay such obligations. Additionally, the Utility Companies are protected through the Adequate Assurance Deposit that will be held in the Utility Deposit Account, and are afforded flexibility and an opportunity to be heard through the Objection Procedures. Accordingly, the Proposed Adequate Assurance is reasonable and satisfies section 366 of the Bankruptcy Code.

21.     Further, the Court possesses the power, under section 105(a) of the

Bankruptcy Code, to "issue any order, process, or judgment that is necessary or appropriate to

carry out the provisions of this title." 11 U.S.C. § 105(a).  The Proposed Adequate Assurance is

necessary and appropriate to carry out the provisions of the Bankruptcy Code, particularly

section 366.  Accordingly, the Debtor submits that the Court should exercise its powers under

sections 366 and 105(a) of the Bankruptcy Code and approve the Proposed Adequate Assurance.

22.     Courts in this district have routinely granted relief similar to the relief

requested herein.  *See, e.g.*, *In re Virgin Orbit Holdings, Inc.*, No. 23-10405 (KBO) (Apr. 27,

2023), D.I. 169 (approving similar adequate assurance and objection procedures); *In re Lincoln*

*Power, L.L.C.*, No. 23-10382 (LSS) (Apr. 27, 2023), D.I. 107 (same); *In re Agway Farm &*

*Home Supply, LLC*, No. 22-10602 (JKS) (Aug. 3, 2022), D.I. 108 (same); *In re Armstrong*

*Flooring, Inc.*, No. 22-10426 (MFW) (June 1, 2022), D.I. 253 (same); *In re Lear Capital Inc*.,

No. 22-10165 (BLS) (March 22, 2022), D.I. 69 (same).  Accordingly, the Debtor submits that the

relief requested herein is necessary, appropriate and in the best interest of the Debtor's estate.

### Bankruptcy Rule 6003 Is Satisfied

23.     In order for a debtor to obtain relief to make payments, such as the

Adequate Assurance Deposit, within 21 days of the Petition Date, it must establish that making

such payments satisfies the requirements mandated by rule 6003 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules")—namely, the relief requested is necessary to

avoid "immediate and irreparable harm."  If a debtor's prospect of reorganizing is threatened, or

swift diminution in value of the debtor's estate is likely absent the granting of the requested

relief, immediate and irreparable harm likely exists.  *See In re WorldSpace, Inc.*, 2008 WL

8153639, at *2 (Bankr. D. Del. Oct. 20, 2008) (finding that relief requested by the debtors was

necessary to avoid irreparable harm to the debtors and their estates because such relief was essential for the continued operation of the debtors' businesses).

24.     Immediate and irreparable harm would result if the relief requested herein is not granted.  As described above, access to certain Utility Services is essential to the preservation of the value of the Debtor's business and its ability to successfully prosecute this Chapter 11 Case.  Should any Utility Company refuse or discontinue service, even for a brief period, the Debtor's business operations could be severely disrupted, and such disruption would jeopardize the Debtor's ability to manage its reorganization efforts.  These effects would have an adverse impact to the Debtor's business, thereby causing immediate and irreparable harm. Failure to receive the requested relief during the first 21 days of this Chapter 11 Case would severely disrupt the Debtor's operations at this important juncture.  For the reasons discussed herein, the relief requested is necessary for the Debtor to operate its business in the ordinary course and preserve the value of the Debtor's assets and maximize the value of the estate for the benefit of all stakeholders.  Accordingly, the Debtor respectfully submits that it has satisfied Bankruptcy Rule 6003 as it relates to the relief requested herein.

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

25.     Given the nature of the relief requested herein, the Debtor respectfully requests a waiver of (a) the notice requirements under Bankruptcy Rule 6004(a) and (b) the 14-day stay under Bankruptcy Rule 6004(h).  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until expiration of 14 days after entry of the order, unless the court orders otherwise."  For the reasons described above, the relief requested is essential to prevent potentially irreparable damage to the Debtor's operations, value and ability to reorganize.

## **Reservation of Rights**

26.     Nothing in this Motion: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtor or its estate; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor or its estate to contest the validity, priority, or amount of any claim against the Debtor or its estate; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor or its estate with respect to any and all claims or causes of action against any third party; or (d) shall be construed as a promise to pay a claim or continue any applicable program postpetition, which decision shall be in the discretion of the Debtor.  Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtor's rights to subsequently dispute such claim.

## **Notice**

27.     No creditors' committee, trustee or examiner has been appointed in this Chapter 11 Case.  Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) the Securities and Exchange Commission; (c) the Internal Revenue Service; (d) the United States Department of Justice; (e) the Office of the United States Attorney for the District of Delaware; (f) liaison counsel to the tort claimants; (g) the state attorneys general who have commenced litigation proceedings against the Debtor; (h) the Utility Companies; (i) the parties identified on the Debtor's list of top 20 counsel; and (j) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered in connection with this Motion will be served on all parties in accordance with Local Rule 9013-1(m).  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be provided.

## Conclusion

WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests that the Court (a) enter the Interim Order, substantially in the form attached hereto as Exhibit A, (b) enter the Final Order, substantially in the form attached hereto as Exhibit B, and (c) grant such other and further relief as is just and proper.

Dated: May 14, 2023
      Wilmington, Delaware

**MORRIS NICHOLS ARSHT & TUNNELL LLP**

*/s/ Derek C. Abbott*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Daniel B. Butz (No. 4227)
Tamara K. Mann (No. 5643)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
dabbott@morrisnichols.com
aremming@morrisnichols.com
dbutz@morrisnichols.com
tmann@morrisnichols.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (*pro hac vice* pending)
Brian D. Glueckstein (*pro hac vice* pending)
Justin J. DeCamp (*pro hac vice* pending)
Alexa J. Kranzley (*pro hac vice* pending)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
       gluecksteinb@sullcrom.com
       decampj@sullcrom.com
       kranzleya@sullcrom.com

*Proposed Counsel for the Debtor and Debtor-in-Possession*

-14-