**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

In re:

KIDDE-FENWAL, INC.,[1]

     Debtor.

Chapter 11

Case No. 23-10638 (___)

**MOTION OF DEBTOR FOR ENTRY OF INTERIM AND FINAL**
**ORDERS (I) AUTHORIZING THE DEBTOR TO MAINTAIN ITS CUSTOMER**
**PROGRAMS AND HONOR RELATED PREPETITION OBLIGATIONS,**
**(II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS**
**RELATED CHECKS AND TRANSFERS AND (III) GRANTING RELATED RELIEF**

     Kidde-Fenwal, Inc. (the "Debtor") hereby submits this motion (this "Motion") for entry of an interim order, substantially in the form attached hereto as Exhibit A (the "Interim Order"), and a final order, substantially in the form attached hereto as Exhibit B (the "Final Order" and together with the Interim Order, the "Orders"), pursuant to sections 105(a), 363(b), 1107(a) and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), (a) authorizing the Debtor, in its sole discretion, to (i) maintain and administer the Customer Programs (as defined below) and honor all Prepetition Customer Obligations (as defined below) in the ordinary course of business and in a manner consistent with past practice and (ii) renew, replace, implement, modify or terminate Customer Programs as the Debtor deems appropriate in its business judgment, in the ordinary course of business and consistent with past practice, without further order of the Court, (b) authorizing applicable banks and other financial institutions to honor and process related checks and transfers and (c) granting certain related relief, including scheduling a hearing to consider approval of the Motion on a

---

[1]    The last four digits of Kidde-Fenwal, Inc.'s tax identification number are 5282.  The Debtor's corporate headquarters is located at 400 Main Street, Ashland, Massachusetts 01721.

final basis (the "Final Hearing").  Certain facts supporting this Motion are set forth in the

*Declaration of James A. Mesterharm in Support of Chapter 11 Petition and First Day Pleadings*

(the "First Day Declaration").  In further support of the Motion, the Debtor respectfully states as

follows:

**Background**

1.      The Debtor is a Delaware corporation with its headquarters in Ashland,

Massachusetts.  The Debtor manufactures fire protection and suppression systems, including fire

detectors, alarm notification appliances, fire-suppression control units and fire suppression-agent

delivery systems.  The Debtor also manufactures electronic gas burner controls, mechanical

temperature controls and fire and overheat detectors.

2.      On the date hereof (the "Petition Date"), the Debtor filed with the United

States Bankruptcy Court for the District of Delaware (the "Court") a voluntary petition for relief

under the Bankruptcy Code.  The Debtor continues to operate its business and manage its

properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.  As of the date hereof, no creditors' committee, trustee or examiner has been appointed in

the Debtor's chapter 11 case (the "Chapter 11 Case").

3.      Additional factual background relating to the Debtor's business and the

commencement of this Chapter 11 Case is set forth in the First Day Declaration.

**Facts Specific to the Relief Requested**

I.      **The Debtor's Customer Programs**

4.      The Debtor offers its customers certain discounts, incentives and other

accommodations designed to increase the Debtor's sales and attract and retain customers (the

"Customer Programs" and the obligations to customers arising under the Customer Programs, the

"Customer Obligations").  It is standard in the Debtor's industry to offer Customer Programs

-2-

and, as a result, they are critical to the Debtor's ability to compete effectively in the marketplace and maintain customer goodwill and satisfaction.

A.    Discount Program

5.    The Debtor provides certain customers with discounts (the "Discount Program"), with the applicable discount varying from customer to customer and order to order. These discounts may be negotiated or based on volume.  The Discount Program involves no cash outlay by the Debtor and only grants of discounts by the Debtor.  To the extent the Debtor has already marketed, offered or agreed to certain discounts to customers through the Discount Program, the Debtor seeks authority to honor these terms for their customers in order to maintain customer goodwill and loyalty.  By this Motion, the Debtor seeks authorization to maintain the Discount Program in a manner consistent with its past practices and to honor all related Customer Obligations in the ordinary course of business.

B.    Warranty Program

6.    Consistent with industry standards, the Debtor also provides its customers with limited warranties in connection with the purchase of the Debtor's products, in each case subject to the terms of a written agreement (the "Warranty Program").  The warranties for goods typically cover a 36-month period, with some limited number of products having shorter periods ranging from 12 to 24 months, from the date the goods are shipped to the customer.  All claims for a breach of warranty must be made in writing by the customer within 30 days after the alleged defect becomes or should have become apparent to the customer.  With respect to services, the Debtor warrants that services will be performed in accordance with generally accepted industry standards and practice by competent personnel for 90 days following the provision of such services.

7.     Upon submission of a claim under the Warranty Program, the Debtor may, at its option, (a) repair or replace the defective product, (b) refund the service fees or product purchase price, less a reasonable charge for any actual use by the customer or (c) in the case of a service warranty, re-perform the non-complying services at no additional charge to the customer. If the Debtor fails to honor its obligations under the Warranty Program during this Chapter 11 Case, many repeat customers, upon which the Debtor's business relies, may discontinue their business with the Debtor, causing irreparable harm.  By this Motion, the Debtor seeks authority to maintain the Warranty Program in a manner consistent with its past practices and honor all related Customer Obligations in the ordinary course of business.

C.     <u>Customer Programs Are Necessary to Compete in the Marketplace</u>

8.     It is typical across the Debtor's industry to offer discounts and warranties to customers.  As a result, the Customer Programs are critical to the Debtor's ability to compete effectively in the marketplace and maintain customer goodwill and satisfaction.  The Debtor believes the revenue generated by the Customer Programs far exceeds the costs of implementing such programs.  The Customer Programs are, in effect, the cost of doing business in the competitive industry in which the Debtor operates and the suspension or failure to fully honor the Customer Programs would result in substantial harm to the Debtor's business and the destruction of value for all stakeholders.  Moreover, in the significant majority of cases, administration of the Customer Programs does not require a direct cash disbursement by the Debtor.  The Debtor does not believe that honoring the Customer Obligations will result in a significant cash disbursement by the Debtor's estate.

9.     The Debtor estimates that within the last 12 months, the accrued value of Customer Obligations ranges between approximately $400,000 and $550,000 at any one time. This estimate is based on the variation in the Debtor's reserves for the Customer Programs.  The

Debtor does not anticipate that the aggregate amount of Customer Obligations arising before the

Petition Date (collectively, the "Prepetition Customer Obligations") exceeds this estimate, and

seeks authority to honor such Prepetition Customer Obligations as they may come due in the

ordinary course.  On an interim basis, the Debtor estimates the value of the Prepetition Customer

Obligations to be approximately $520,000, during which time the Debtor does not anticipate

making any significant direct cash disbursements.  On a final basis, the Debtor expects to honor

the entirety of the Prepetition Customer Obligations. The Debtor does not believe that

authorization to continue or modify the Customer Programs in the ordinary course of business on

a postpetition basis is required.  Out of an abundance of caution, however, the Debtor

respectfully requests authorization to continue or modify the Customer Programs in the ordinary

course of business on a postpetition basis, consistent with past practices, including direct cash

disbursements, as applicable.

## Jurisdiction

10.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District

Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding

pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and

1409.  The statutory predicates for the relief requested herein are sections 105(a), 363(b),

1107(a) and 1108 of the Bankruptcy Code.  Pursuant to rule 9013-1(f) of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Rules"), the Debtor consents to the entry of a final order or judgment by

the Court in connection with this Motion to the extent it is later determined that the Court, absent

consent of the parties, cannot enter final orders or judgments consistent with Article III of the

United States Constitution.

## Relief Requested

11.     By this Motion, the Debtor requests entry of the Interim and Final Orders,

substantially in the forms attached hereto as Exhibit A and Exhibit B, respectively,

(a) authorizing the Debtor, in its sole discretion, to (i) maintain and administer the Customer

Programs and honor all Prepetition Customer Obligations in the ordinary course of business and

in a manner consistent with past practice and (ii) renew, replace, implement, modify or terminate

Customer Programs as the Debtor deems appropriate in its business judgment, in the ordinary

course of business and consistent with past practice, without further order of the Court,

(b) authorizing applicable banks and other financial institutions to honor and process related

checks and transfers and (c) granting certain related relief, including scheduling the Final

Hearing.

## Basis for Relief

**I.      Maintaining the Customer Programs and Honoring the Prepetition Customer Obligations Is Appropriate Under Sections 105(a), 363(b), 1107(a) and 1108 of the Bankruptcy Code.**

12.     The relief requested is appropriate under sections 105(a), 363(b), 1107(a)

and 1108 of the Bankruptcy Code.  The Debtor is operating its business as a debtor-in-possession

under sections 1107(a) and 1108 of the Bankruptcy Code, and is therefore a fiduciary "holding

the bankruptcy estate and operating the business for the benefit of its creditors and (if the value

justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

Implicit in the duties of a chapter 11 debtor-in-possession is the duty "to protect and preserve the

estate, including an operating business's going-concern value." *Id.*  Consistent with a debtor's

fiduciary duties to preserve the estate, courts have authorized payment of prepetition obligations

pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.  *See, e.g.*, *In re Montgomery

Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) ("the bankruptcy court has considerable

discretion" in granting motions pursuant to section 363(b)); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (stating that section 363(b) provides a court "broad flexibility" to authorize a debtor to satisfy prepetition claims where supported by a proper business justification); *In re Just for Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999) ("Section 105(a) of the Code provides a statutory basis for the payment of pre-petition claims."). Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *In re CoServ, L.L.C.*, 273 B.R. at 497.

13.     Section 363(b) of the Bankruptcy Code empowers the Court to allow a debtor, in the exercise of its sound business judgment and after notice and a hearing, to "use, sell, or lease, other than in the ordinary course of business, property of the estate." *See* 11 U.S.C. § 363(b)(1); *see also In re Just For Feet, Inc.*, 242 B.R. at 825 ("The Supreme Court, the Third Circuit, and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11."). For a court to approve the use, sale, or lease of estate property under section 363(b) of the Bankruptcy Code, including the payment of prepetition claims, the debtor must "articulate some business justification, other than mere appeasement of major creditors . . . ." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 175; *see also In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992) (recognizing that "[i]f payment of a pre-petition claim 'is essential to the continued operation of [the debtor], payment may be authorized'") (citing *In re Lehigh & N. E. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981)). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted). Under this section, a court may authorize a debtor to pay certain prepetition claims. *See In re Ionosphere Clubs, Inc.*, 98 B.R. at

175 (stating that the bankruptcy court's prior determination to permit payment of prepetition claims under section 363(b) was justified).

14.      Additionally, section 105(a) of the Bankruptcy Code authorizes the Court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).  A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 175.  Under section 105(a), the Court "can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992); *see also In re Just for Feet, Inc.*, 242 B.R. at 825 ("To invoke the necessity of payment doctrine, a debtor must show that payment of the pre-petition claims is critical to the debtor's reorganization."); *see also In re C.A.F. Bindery, Inc.*, 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996) (recognizing that the doctrine of necessity "permits the bankruptcy court to authorize the payment of prepetition claims prior to confirmation").

15.      Courts in this district have recognized the "necessity of payment" doctrine. *See, e.g.*, *In re Energy Future Holdings Corp.*, 561 B.R. 630, 642-43 (Bankr. D. Del. 2016) ("The Third Circuit has explained that a 'necessity of payment' rule is intended to benefit all parties and is applicable when such payment is critical to the Debtors' reorganization."); *In re Lehigh & N. E. Ry. Co.*, 657 F.2d at 581 ("[T]he 'necessity of payment' doctrine . . . teaches no more than, if payment of a claim which arose prior to reorganization is essential to the continued operation of the [debtor] during reorganization, payment may be authorized even if it is made out of corpus.").

16.      The necessity of payment doctrine is designed to foster a debtor's rehabilitation, which courts have recognized is "the paramount policy and goal of Chapter 11."

*In re Ionosphere Clubs, Inc.*, 98 B.R. at 176; *In re Chateaugay Corp.*, 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payment of prepetition workers' compensation claims on grounds that the fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately"); *In re Just for Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[A] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re CoServ, L.L.C.*, 273 B.R. at 497 ("[I]t is only logical that the bankruptcy court be able to use Section 105(a) of the [Bankruptcy] Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process").

17.     The relief requested in this Motion represents a sound exercise of the Debtor's business judgment and is necessary for the preservation of the resources and going-concern value of its estate.  Maintaining the Customer Programs and honoring the Prepetition Customer Obligations is critical to the Debtor's reorganization efforts.  Allowing the Debtor to do so will facilitate a smooth transition into chapter 11 and advance the restructuring of the Debtor's business, both in terms of profitability and the engendering of goodwill with essential customers.  The Debtor believes that the cost of honoring the Prepetition Customer Obligations will be more than offset by the revenue generated by virtue of the Customer Programs remaining in place.

18.     Courts in this district have routinely granted relief similar to the relief requested herein.  *See*, *e.g.*, *In re Starry Group Holdings, Inc.*, No. 23-10219 (KBO) (Mar. 20, 2023), D.I. 164 (authorizing the debtors to honor customer-related obligations in the ordinary course of business and to honor prepetition obligations related to same); *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Aug. 24, 2022), D.I. 73 (same); *In re Riverbed Tech., Inc.*, No. 21-11503 (CTG) (Nov. 18, 2021), D.I. 91 (same); *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (July 14, 2021), D.I. 180 (same); *In re Town Sports Int'l, LLC*, No. 20-12168 (CSS) (Sept. 16, 2020), D.I. 61 (same).  Accordingly, the Debtor submits that the relief requested herein is necessary, appropriate and in the best interest of the Debtor's estate.

## II.     Cause Exists to Authorize Applicable Banks and/or Financial Institutions to Honor Checks and Electronic Fund Transfers.

19.     In order to stabilize the Debtor's operations and to smoothly transition into chapter 11, it is imperative that the Debtor maintains its ability to perform its most basic functions.  The Debtor therefore requests that all applicable banks and other financial institutions should be authorized, when requested by the Debtor in its discretion, to receive, process, honor and pay any and all checks and fund transfer requests made by the Debtor related to the Customer Obligations, whether such checks or fund transfer requests were submitted prior to or after the Petition Date.  Any such financial institution may rely on the representations of the Debtor as to which checks and fund transfer requests are made and authorized to be paid in accordance with this Motion without any duty of further inquiry and without liability for following the Debtor's instructions.  The Debtor also seeks authority to issue new postpetition checks, or effect new electronic funds transfers, to replace any prepetition checks or electronic funds transfer requests that may be dishonored or rejected as a result of the commencement of this Chapter 11 Case with respect to amounts owed in connection with the Customer Obligations.

## Bankruptcy Rule 6003 Is Satisfied

20.     In order for a debtor to obtain relief to make payments within 21 days of the Petition Date, it must establish that making such payments satisfies the requirements mandated by rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") —namely, the relief requested is necessary to avoid "immediate and irreparable harm." If a debtor's prospect of reorganizing is threatened, or swift diminution in value of the debtor's estate is likely absent the granting of the requested relief, immediate and irreparable harm likely exists. *See In re WorldSpace, Inc.*, 2008 WL 8153639, at *2 (Bankr. D. Del. Oct. 20, 2008) (finding that relief requested by the debtors was necessary to avoid irreparable harm to the debtors and their estates because such relief was essential for the continued operation of the debtors' businesses).

21.     Immediate and irreparable harm would result if the relief requested herein is not granted. A failure to honor the Prepetition Customer Obligations would significantly damage customer satisfaction and goodwill and diminish the Debtor's ability to effectively conduct its business. These effects would have an adverse impact to the Debtor's business, thereby causing immediate and irreparable harm. Failure to receive the requested relief during the first 21 days of this Chapter 11 Case would severely disrupt the Debtor's operations at this important juncture. For the reasons discussed herein, the relief requested is necessary for the Debtor to operate its business in the ordinary course and preserve the value of the Debtor's assets and maximize the value of the estate for the benefit of all stakeholders. Accordingly, the Debtor respectfully submits that it has satisfied Bankruptcy Rule 6003 as it relates to the relief requested herein.

## Waiver of Bankruptcy Rules 6004(a) and 6004(h)

22.     Given the nature of the relief requested herein, the Debtor respectfully requests a waiver of (a) the notice requirements under Bankruptcy Rule 6004(a) and (b) the 14-

day stay under Bankruptcy Rule 6004(h).  Pursuant to Bankruptcy Rule 6004(h), "[a]n order

authorizing the use, sale, or lease of property other than cash collateral is stayed until expiration

of 14 days after entry of the order, unless the court orders otherwise."  For the reasons described

above, the relief requested is essential to prevent potentially irreparable damage to the Debtor's

operations, value and ability to reorganize.

### Reservation of Rights

23.     Nothing in this Motion: (a) is intended or shall be deemed to constitute an

assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as

to the validity of any claim against the Debtor or its estate; (b) shall impair, prejudice, waive, or

otherwise affect the rights of the Debtor or its estate to contest the validity, priority, or amount of

any claim against the Debtor or its estate; (c) shall impair, prejudice, waive, or otherwise affect

the rights of the Debtor or its estate with respect to any and all claims or causes of action against

any third party; or (d) shall be construed as a promise to pay a claim or continue any applicable

program postpetition, which decision shall be in the discretion of the Debtor.  Any payment

made pursuant to an order of the Court granting the relief requested herein is not intended to be

nor should it be construed as an admission as to the validity of any claim or a waiver of the

Debtor's rights to subsequently dispute such claim.

### Notice

24.     No creditors' committee, trustee or examiner has been appointed in this

Chapter 11 Case.  Notice of this Motion has been provided to: (a) the Office of the United States

Trustee for the District of Delaware; (b) the Securities and Exchange Commission; (c) the

Internal Revenue Service; (d) the United States Department of Justice; (e) the Office of the

United States Attorney for the District of Delaware; (f) liaison counsel to the tort claimants;

(g) the state attorneys general who have commenced litigation proceedings against the Debtor;

(h) the parties identified on the Debtor's list of top 20 counsel; and (i) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered in connection with this Motion will be served on all parties in accordance with Local Rule 9013-1(m).  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be provided.

**Conclusion**

WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests that the Court (a) enter the Interim Order, substantially in the form attached hereto as Exhibit A, (b) enter the Final Order, substantially in the form attached hereto as Exhibit B, and (c) grant such other and further relief as is just and proper.

Dated: May 14, 2023                        **MORRIS NICHOLS ARSHT & TUNNELL LLP**
      Wilmington, Delaware

/s/ Derek C. Abbott
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Daniel B. Butz (No. 4227)
Tamara K. Mann (No. 5643)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
dabbott@morrisnichols.com
aremming@morrisnichols.com
dbutz@morrisnichols.com
tmann@morrisnichols.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (*pro hac vice* pending)
Brian D. Glueckstein (*pro hac vice* pending)
Justin J. DeCamp (*pro hac vice* pending)
Alexa J. Kranzley (*pro hac vice* pending)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
      gluecksteinb@sullcrom.com
      decampj@sullcrom.com
      kranzleya@sullcrom.com

*Proposed Counsel for the Debtor and Debtor-in-Possession*