**<u>EXHIBIT 1</u>**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KIDDE-FENWAL, INC.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |

### STIPULATION FOR PROTECTIVE ORDER

1.      This Stipulation and Proposed Protective Order (the "**Stipulation**" or "**Protective Order**") is entered into by and among:  (i) Kidde-Fenwal, Inc. (the "**Debtor**") in the above-captioned Chapter 11 Case (the "**Chapter 11 Case**"),[2] (ii) Carrier Global Corporation ("**CGC**"), (iii) Raytheon Technologies Corporation (f/k/a United Technologies Corporation; "**RTX**"), (iv) National Foam, Inc.("**NFI**"), (v) the Special Committee of the Board of Directors of Kidde-Fenwal, Inc. (the "**Special Committee**"), (vi) the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case (the "**UCC**"), and (vii) such other parties in interest in the Chapter 11 Case who become parties to this Protective Order from time to time with the consent of the Producing Parties and who execute an Acknowledgment in the form attached hereto as **Exhibit B**.  Each of the persons or entities identified in the foregoing clauses (i) through (vii) shall be referred to herein individually as a "**Party**" and, collectively, as the "**Parties**".  For the avoidance of doubt, the U.S. Trustee for the District of Delaware is not a Party under the terms of this Stipulation. The Producing Parties and the Receiving Parties shall each be referred to herein

---

[1]      The last four digits of Kidde-Fenwal, Inc.'s tax identification number are 5282.  The Debtor's corporate headquarters is located at 400 Main Street, Ashland, Massachusetts 01721.

[2]      The defined term "Chapter 11 Case" shall include any investigations, contested matters, adversary proceedings (including, without limitation, the above-captioned adversary proceeding, No. 23-10638 (LSS)) and other disputes related to or arising out of those matters or the Chapter 11 Case.

as a "**Party**" and collectively as the "**Parties**."

2.      The Parties hereby stipulate, pursuant to 11 U.S.C. 107(b) and Rule 9018 of the Federal Rules of Bankruptcy Procedure and, with respect to any existing or future contested matter or adversary proceeding, pursuant to Bankruptcy Rules 7026 and 9014 and Rule 26(c) of the Federal Rules of Civil Procedure, by and through their respective attorneys of record, subject to Court approval, to the entry of this Protective Order.

3.      This Stipulation shall apply to any Information, Document or thing produced by any Party (a "**Producing Party**") to any Party (a "**Receiving Party**") pursuant to a request for Information that has been or will be exchanged as part of diligence, discovery, or otherwise in the Chapter 11 Case (the "**Discovery Material**").

4.      This Stipulation governs the production or provision of Discovery Material in connection with the Chapter 11 Case and does not affect, amend, or modify any existing confidentiality agreements applicable to any Party, and nothing in this Stipulation shall constitute a waiver of any rights under such agreements.

5.      Except as otherwise set forth in this Protective Order, Discovery Material, including Information derived therefrom, shall be used solely in connection with the Chapter 11 Case, shall not be used in any other proceeding or for any other purpose, unless both the applicable Receiving Parties and Producing Parties agree, or the Court orders otherwise.

6.      **Definitions.** As used in this Protective Order, these terms have the following meanings:

        a.      **"Producing Party" or "Designating Party"** means the Party producing Discovery Material and designating such materials as Confidential, Intermediate

Confidential, or Highly Confidential –Advisors' Eyes Only ("Highly Confidential-AEO").

b.  "**Receiving Party**" means a Party receiving or having access to Discovery Material.

c.  **"Document(s)"** includes all materials within the scope of Rule 34(a) of the Federal Rules of Civil Procedure.

d.  **"Information"** includes all materials within the scope of Documents, exhibits, evidence or things used at trial, depositions or other proceedings; any testimony, whether given at trial or a deposition; and any other means of presenting, producing or revealing information.

e.  **"Discovery Material"** means Documents and Information in the custody and control of a Producing Party produced pursuant to a request for information made by a Receiving Party that has been or will be exchanged as part of diligence, discovery, or otherwise in the Chapter 11 Case.  It shall also include Information and Documents exchanged in meetings, whether in person or by telephone; Information or Documents requested informally or formally in connection with the Chapter 11 Case; testimony adduced at depositions; answers to interrogatories and requests for admission; Documents and things produced in connection with any type of diligence or discovery request whether voluntarily or involuntarily (including any Information, Documents and things provided via electronic access to data rooms or other hosted sites); and Documents and things provided pursuant to subpoena in connection with the Chapter 11 Case.  Discovery Material shall also include all Information, filings, Documents, and things derived therefrom, based on any of the foregoing material, in whole or in part.

f. **"Challenging Party"** means the Party that challenges a particular designation of Discovery Materials as Confidential, Intermediate Confidential, or Highly Confidential-AEO.

g. "**Advisor**" means any company or organization working for or on behalf of a Producing Party or Receiving Party to aid in the production or review of Discovery Materials.

h. **"Confidential Material"** or "**Confidential**" means Discovery Material, and any other material designated as Confidential in accordance with this Protective Order unless (a) the Producing Party which designated the material or Information withdraws the Confidential designation, or (b) the Court has determined that the material or Information does not constitute Confidential Material. A Producing Party may only designate Discovery Material as Confidential if it has a good-faith basis to believe that the Discovery Material is, constitutes or contains Information that is Confidential under statute, rule, or other applicable law, including Discovery Materials that are confidential, proprietary or commercially sensitive business or financial information, trade secrets, or information that is not publicly available, such as information that otherwise meets the standard for protection set forth in Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure and Rules 7026 or 9018 of the Federal Rules of Bankruptcy Procedure, or that the Producing Party is under a preexisting obligation to a third party to treat as confidential.  Notwithstanding the foregoing, a Producing Party may not designate as Confidential any Documents that have been made publicly available, including through unsealed court filings, public EPA dockets, and/or other similar means by which Information was placed in the public domain.

i.    **"Intermediate Confidential Material" or "Intermediate Confidential"** means all Discovery Materials designated as Intermediate Confidential in accordance with this Protective Order unless (a) the Producing Party which designated the material or Information withdraws the Intermediate Confidential designation, or (b) the Court has determined that the material or Information does not constitute Intermediate Confidential Information.  A Producing Party may only designate Discovery Material as Intermediate Confidential if it has a good-faith basis to believe that (a) the Discovery Material constitutes or contains Information that is Intermediate Confidential under statute, rule, or other applicable law, including Documents, Information, or other tangible things that are confidential, proprietary, or commercially sensitive business or financial information, trade secrets, or information that otherwise meets the standard for protection set forth in Rule 26(c) of the Federal Rules of Civil Procedure; and (b)(i) disclosure of the Discovery Material (i) could cause competitive or similar economic harm;  (ii) the Discovery Material includes private or sensitive information regarding any individual, such as financial or medical information; or (iii) the Discovery Material, if released, would cause harm to the interests of a governmental entity.

j.    **"Highly Confidential-AEO Material" or "Highly Confidential-AEO"** means all Discovery Materials designated as Highly Confidential-AEO in accordance with this Protective Order unless (a) the Producing Party which designated the material or Information withdraws the Highly Confidential-AEO designation, or (b) the Court has determined that the material or Information does not constitute Highly Confidential-AEO Information.  A Producing Party may only designate Discovery Material as Highly Confidential-AEO if it has a good-faith basis to believe that (a) the Discovery Material

constitutes, or contains Information that is Highly Confidential-AEO under statute, rule, or other applicable law, including Documents, Information, or other tangible things that are confidential, proprietary, or commercially sensitive business or financial information, trade secrets, or information that otherwise meets the standard for protection set forth in Rule 26(c) of the Federal Rules of Civil Procedure; and (b)(i) disclosure of the Discovery Material (i) could cause competitive or similar economic advantage or harm; (ii) the Discovery Material includes private or sensitive information regarding any individual, such as personal financial or medical information; or (iii) the Discovery Material, if released, would cause harm to the interests of a governmental entity.  Pursuant to Section 9 hereof, Highly Confidential-AEO materials may be viewed only by a Party's counsel (and other Advisors that have executed **Exhibit A**) and may not otherwise be disclosed unless the Producing Party agrees in writing to a different designation or upon the Court's order.  Highly Confidential-AEO means information a Producing Party in good faith believes is so personally, economically, or competitively sensitive that disclosure would materially affect or threaten injury to personal, business, commercial, or financial interests.

7.     **Access to Confidential Material.**  All Discovery Material designated as Confidential Material by a Producing Party shall not be further disclosed, disseminated, or used for any purpose other than in connection with the Chapter 11 Case, consistent with the restrictions on use of Confidential Material contained in this Protective Order.  Access to any Confidential Material shall be limited to use in the Chapter 11 Case to:

a.    Judges, court reporters, court personnel, videographers, and special masters at trial, hearings, arguments, depositions and any other judicial proceeding related to the Chapter 11 Case.

b.    The Parties and counsel of record for the Parties, including the outside and in-house counsel of the Parties, and the attorneys, secretaries, paralegals, assistants, and other employees in the same firm/company of such counsel, in all cases only to the extent reasonably necessary to render professional services.  No Confidential Material may be disclosed to any individual creditor, or plaintiff in any action related to the Chapter 11 Case or otherwise, except that Confidential Material may be disclosed to the members of the UCC provided that those members of the UCC have agreed in writing to the terms of this Protective Order.

c.    Messenger, copy, and other clerical services vendors not employed by a party or its counsel of record, only to the extent reasonably necessary to assist the parties and counsel of record for the parties in rendering professional services in connection with the Parties' mandates as they relate to the Chapter 11 Case.

d.    The insurers or indemnitors of the Parties or any agents retained by the insurers or indemnitors including independent claims management personnel.

e.    Witnesses during depositions, hearings and trial testimony related to the Chapter 11 Case, either during deposition, hearing or trial testimony or to the extent reasonably necessary to prepare persons to testify, and counsel for such persons.

f.    Advisors, experts, or consultants retained for the purpose of assisting counsel of record's production or review of Discovery Materials.

-6-

g.    Third-party contractors retained for the purpose of organizing, filing, coding, converting, storing, or retrieving Discovery Material or maintaining database programs for handling of Discovery Material.

h.    Other persons who may be designated by written consent of the Producing Party or Receiving Party or pursuant to Court order so long as said persons agree to be bound as set forth in this Order.

i.    Any government agency (other than the U.S. Trustee), internal or external auditor or regulatory body or authority having authority to regulate or oversee any aspects of the Receiving Party's business or that of its affiliates, if required by any applicable statute, law, rule or regulation, subpoena, civil investigative demand or similar demand, or request; provided that (i) the Receiving Party will provide the Producing Party with prior written notice of any such request or requirement (unless such notice is prohibited by applicable law) so that the Producing Party may seek a protective order or other appropriate remedy, and (ii) the Receiving Party advises such recipient of the Confidential nature of the information being disclosed and requests Confidential treatment thereof.

8.    **Access to Intermediate Confidential Material.**    All Discovery Material designated as Intermediate Confidential Material by a Producing Party shall not be further disclosed, disseminated, or used for any purpose other than in connection with the Chapter 11 Case, consistent with the restrictions on use of Intermediate Confidential Material contained in this Protective Order.  Access to any Intermediate Confidential Material shall be limited to use in the Chapter 11 Case to:

a.    Judges, court reporters, court personnel, videographers, and special masters at trial, hearings, arguments, depositions and any other judicial proceeding related to the Chapter 11 Case.

b.    The Parties and counsel of record for the Parties, including the outside and in-house counsel of the Parties, and the attorneys, secretaries, paralegals, assistants, and other employees in the same firm/company of such counsel, in all cases only to the extent reasonably necessary to render professional services. No Intermediate Confidential Material may be disclosed to any individual creditor, party in interest or plaintiff in any action related to the Chapter 11 Case or otherwise.

c.    Messenger, copy, and other clerical services vendors not employed by a party or its counsel of record, only to the extent reasonably necessary to assist the parties and counsel of record for the parties in rendering professional services in connection with the Parties' mandates as they relate to the Chapter 11 Case.

d.    The insurers or indemnitors of the Parties or any agents retained by the insurers or indemnitors including independent claims management personnel.

e.    Witnesses during depositions, hearings and trial testimony related to the Chapter 11 Case, either during deposition, hearing or trial testimony or to the extent reasonably necessary to prepare persons to testify, and counsel for such persons.

f.    Advisors, experts, or consultants retained for the purpose of assisting counsel of record's production of or review of Discovery Materials.

g.    Third-party contractors retained for the purpose of organizing, filing, coding, converting, storing, or retrieving Discovery Material or maintaining database programs for handling of Discovery Material.

h.    Other persons who may be designated by written consent of the Producing Party or Receiving Party or pursuant to Court order so long as said persons agree to be bound as set forth in this Order.

i.    Any government agency (other than the U.S. Trustee), internal or external auditor or regulatory body or authority having authority to regulate or oversee any aspects of the Receiving Party's business or that of its affiliates, if required by any applicable statute, law, rule or regulation, subpoena, civil investigative demand or similar demand, or request; provided that (i) the Receiving Party will provide the Producing Party with prior written notice of any such request or requirement (unless such notice is prohibited by applicable law) so that the Producing Party may seek a protective order or other appropriate remedy, and (ii) the Receiving Party advises such recipient of the Intermediate Confidential nature of the information being disclosed and requests Intermediate Confidential treatment thereof.

9.    **Access to Highly Confidential-AEO Material.**   All Discovery Material designated Highly Confidential-AEO by a Producing Party shall not be further disclosed, disseminated, or used for any purpose other than in connection with the Parties' respective engagements solely as they relate to the Chapter 11 Case, consistent with the restrictions on use of Highly Confidential-AEO Information contained in this Protective Order.  Access to any Highly Confidential-AEO Information shall be limited to the Parties, counsel of record, and Advisors for the Parties, including the outside and in-house counsel of the Parties, and the attorneys, secretaries, paralegals, assistants, and other employees in the same firm/company of such counsel, in all cases only to the extent reasonably necessary to render professional services, as well as judges, court reporters, court personnel, videographers, and special masters at trial, hearings, arguments,

depositions and any other judicial proceeding related to the Chapter 11 Case. No Highly Confidential-AEO Information may be disclosed to any individual creditor, party in interest or plaintiff in any action related to the Chapter 11 Case or otherwise. The Producing Party must consent prior to Highly Confidential-AEO Information being disseminated to witnesses other than those who may review or receive such information during: (1) depositions, (2) hearings, and (3) trial testimony related to the Chapter 11 Case, and may only be used during deposition, hearing, or trial testimony to the extent reasonably necessary to prepare persons to testify, and counsel for such persons. Advisors may provide Highly Confidential-AEO Material to the following parties so long as notice is provided to the Producing Party, and consent is granted by the Producing Parties, prior to such dissemination:

     a. Messenger, copy, and other clerical services vendors not employed by a party or its counsel of record, only to the extent reasonably necessary to assist the parties and counsel of record for the parties in rendering professional services in connection with the Parties' mandates as they relate to the Chapter 11 Case.

     b. The insurers or indemnitors of the Parties or any agents retained by the insurers or indemnitors including independent claims management personnel.

     c. Third-party contractors retained for the purpose of organizing, filing, coding, converting, storing, or retrieving Discovery Material or maintaining database programs for handling of Discovery Material.

     d. Other persons who may be designated by written consent of the Producing Party or Receiving Party or pursuant to Court order so long as said persons agree to be bound as set forth in this Order.

10.    **Disclosure to Competitors.** Discovery Material designated as Intermediate Confidential or as Highly Confidential-AEO is not permitted to be shown to a competitor of the Producing Party.  If Discovery Material is not designated as Intermediate Confidential or Highly Confidential-AEO, then it may be shown to a competitor subject to the terms of this Protective Order (if such competitor is otherwise permitted to access such documents under this Protective Order).

11.    **Undertaking to Abide by This Order**. Before disclosing Confidential or Intermediate Confidential or Highly Confidential-AEO Information to any person listed in paragraphs 7(d)-(h), paragraphs 8(d)-(h), or paragraphs 9(b)-(d), the party proposing such disclosure must provide a copy of this Protective Order to such person, who must sign the attached **Exhibit A**.  That party must retain a signed copy on file for inspection by the Court.  If the person to whom disclosure is contemplated refuses to sign **Exhibit A**, then the parties will work cooperatively to seek a ruling on the issue by the Court.  While awaiting a ruling on the issue by the Court, no one may disclose Confidential Information or Intermediate Confidential or Highly Confidential-AEO information to the person at issue.

12.    **Filing Confidential, Intermediate Confidential, or Highly Confidential-AEO Information with the Court.**  Any Document containing Confidential, Intermediate Confidential, or Highly Confidential-AEO Information filed in any court, and all portions of pleadings, motions, or other papers filed with a court that disclose Confidential or Intermediate Confidential, or Highly Confidential-AEO Information shall be filed under seal in accordance with local rules and any applicable court's procedures.  A party filing any documents or information under seal in the United States Bankruptcy Court for the District of Delaware pursuant to this Protective Order shall comply with all procedures set forth in Del. Bankr. L.R. 9018-1(d).  The Designating Party shall

be responsible for responding to any objections to the motion to file under seal, and shall have the burden of showing that the Documents or Information are Confidential or Intermediate Confidential or Highly Confidential-AEO Information. Any Party that files a motion to file under seal in the Bankruptcy Court for the District of Delaware shall provide counsel to the U.S. Trustee with an unredacted copy of all Documents sought to be sealed, pursuant to Bankruptcy Code § 107(c)(3)(A). The filing party shall file a publicly viewable copy in redacted form, with all Confidential, Intermediate Confidential, or Highly Confidential-AEO Information removed. An unredacted copy shall be filed by the filing party under seal with the Clerk of the Court and kept under seal until further order of the Court, and provided to the Court and all parties entitled to receive such Confidential, Intermediate Confidential, or Highly Confidential-AEO Information. Sensitive personal Information may be redacted from filings without filing an unredacted copy under seal with the Clerk of the Court.

13.    **Designating Discovery Material as Confidential, Intermediate Confidential or Highly Confidential-Advisors' Eyes Only.** The parties may only designate Discovery Materials Confidential, Intermediate Confidential, or Highly Confidential-AEO if they have a good-faith basis to believe that such designation is appropriate.

14.    **Confidentiality Legends.** With respect to documents that are produced in TIFF format, the designation of Discovery Materials shall be made by including the words "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "INTERMEDIATE CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – ADVISORS' EYES ONLY (or "AEO"), SUBJECT TO PROTECTIVE ORDER" in the document in a manner reasonably calculated to be observed by anyone who obtains possession of the document. The addition of any designation pursuant to this Protective Order shall not be deemed

an alteration of the document.  With respect to documents that are produced in native format, the designation of confidentiality shall be made by including the words "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "INTERMEDIATE CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL- ADVISORS' EYES ONLY (or "AEO") – SUBJECT TO PROTECTIVE ORDER" on a cover sheet produced in TIFF format along with the native file and may include, at the Producing Party's discretion, the words "CONFIDENTIAL" or "INTERMEDIATE CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL-ADVISORS' EYES ONLY (or "AEO")" in the file name of the native file as produced.

15.    **Confidentiality Designations on Documents Reproduced from Other Litigations.**    To the extent that any Producing Party reproduces Documents from other litigation(s), all previous confidentiality markings or designations shall apply hereto unless otherwise agreed by the Producing Party.[3]  Documents clearly marked as being "Confidential" and subject to a protective order in such litigation will be deemed designated as "Confidential" for the purpose of this Chapter 11 Case; and all such documents clearly marked "Intermediate Confidential" or "Highly Confidential-Advisors' Eyes Only" will be deemed designated as "Intermediate Confidential" or "Highly Confidential-Advisors' Eyes Only" respectively in this Chapter 11 Case unless:

---

[3]    National Foam's designation of documents in the MDL as National Foam's document productions in the AFFF MDL were designated "HIGHLY CONFIDENTIAL – SUBJECT TO AFFF MDL PROTECTIVE ORDER" shall be considered marked as HIGHLY CONFIDENTIAL-ADVISORS' EYES ONLY (or "AEO") under this Protective Order without further action required by National Foam.

      a.   The confidentiality designation for such Discovery Material from other litigation(s) had been withdrawn by the Producing Party during the other litigation in which it was produced;

      b.   The confidentiality designation for such Discovery Material from other litigations(s) is otherwise withdrawn by the Producing Party; or

      c.   A Court overseeing another litigation(s) in which such Discovery Material was/were originally produced overruled the confidentiality designation previously.

16.    **Confidentiality Designations on Documents Reproduced from Other Litigations (Cont.).** Nothing in this Protective Order shall permit a party to designate any portion of Discovery Material produced from other litigation(s) as "Confidential" or "Intermediate Confidential" or "Highly Confidential-Advisors' Eyes Only" or to assert or reassert a Confidential or Intermediate Confidential or Highly Confidential-AEO designation over such Discovery Material from other litigation(s) if:

      a.   The Documents or Information from the other litigation(s) were not already designated as either "Confidential" or "Intermediate Confidential" or "Highly Confidential-Advisors' Eyes Only" under the protective order in the other litigation(s);

      b.   The confidentiality designation for such Discovery Material from other litigation(s) had been withdrawn by the Producing Party during the other litigation in which it was produced;

      c.   The confidentiality designation for such Discovery Material from other litigation(s) is otherwise withdrawn by the Producing Party; or

      d.   A Court overseeing another litigation(s) in which such Discovery Material was/were originally produced overruled the confidentiality designation previously.

17.   **Designating Deposition Transcripts as Confidential, Intermediate Confidential, or Highly Confidential-AEO.**  All transcripts and other recordings of depositions or portions of depositions taken in this action and any Documents, things, or exhibits used at those depositions may be designated as "Confidential" or "Intermediate Confidential" or "Highly Confidential-AEO" pursuant to the terms of this Protective Order.  To designate such materials as Confidential, Intermediate Confidential, or Highly Confidential-AEO,  a Party must designate the entire deposition or make a "line and page" designation either on the record at the deposition, or by written notice to the court reporter, with copies to all other counsel, within seven (7) calendar days of receipt of the final transcript of the deposition from the court reporter, except in the event that a hearing or briefing on related issues is scheduled to occur within seven (7) days, in which the case the foregoing seven (7) day period will be reduced to two (2) days.  Unless otherwise agreed, transcripts and other recordings of depositions and Documents, things, or exhibits used at those depositions shall be treated as "Intermediate Confidential" during the 7-calendar-day or 2-calendar-day period, as applicable, following receipt of the final transcript from the court reporter. The failure of a Party or non-Party to make the above-required designation either on the record at the deposition or in writing within 7 or 2 days, as applicable, of its receipt of the deposition transcript shall result in the transcript and other recordings of such deposition and the Documents, things, or exhibits used at such deposition not being deemed "Confidential" or "Intermediate Confidential" or "Highly Confidential-AEO."  Nothing in this paragraph shall affect the confidentiality designations of Discovery Material entered as exhibits at depositions.

18.   **Responsibilities and Obligations of Court Reporter**.  In the event that a Party seeks to designate deposition testimony as Confidential or Intermediate Confidential or Highly Confidential-AEO, the Party seeking such designation shall instruct the court reporter to include

on the cover page of each such transcript the legend: "This transcript portion contains information subject to a Protective Order and shall be used only in accordance therewith."  Each page of the transcript shall include the legend "Confidential" or "Intermediate Confidential" or "Highly Confidential-AEO," as appropriate.  If the deposition is videotaped, videotape shall also be subject to the same level of confidentiality as the transcript and include the legend "Confidential" or "Intermediate Confidential" or "Highly Confidential-AEO," as appropriate, if any portion of the transcript itself is so designated.  It is the responsibility of the Party seeking to designate portions of a deposition transcript as Confidential Material or Intermediate Confidential Material or Highly Confidential-AEO to ensure compliance.

19.    **Presence of Certain Persons During Designated Deposition Testimony**.  When Designated Material is elicited during a deposition, persons not entitled to receive such information under the terms of this Order shall be excluded from the portion of the deposition so designated if requested by the person designating such Designated Material.

20.    **Contesting Designation of Documents**.  If any Party believes that any Document or Information designated Confidential or Intermediate Confidential or Highly Confidential-AEO does not constitute Confidential or Intermediate Confidential or Highly Confidential-AEO Information, then that Challenging Party may challenge that designation by notifying the Designating Party in writing, identifying the Documents or Information contested, and articulating the reason(s) for challenging the designation.  The parties shall promptly confer in good faith and use their best efforts to resolve any challenge to a designation.  If the parties are unable to resolve the dispute within seven (7) days of the notice to the Designating Party of such challenge, or the Designating Party does not respond within such time, then the Challenging Party may request resolution of the dispute by the Court.  The Designating Party shall have the burden of showing

that the Documents or Information are Confidential or Intermediate Confidential or Highly Confidential-AEO Information.

21.    **Use of Confidential, Intermediate Confidential, and Highly Confidential Advisors' Eyes Only (AEO) Documents in Court.**   If any Party desires to use a Document or Information that has been labeled as Confidential, Intermediate Confidential, or Highly Confidential-AEO at a court proceeding that is open to the public or in which persons who are not qualified to access such information under this Protective Order are present, prior to proffering such document or information, the proffering Party must first make a motion to clear the courtroom or seek other protections, such as de-designating the Document or Information.

22.    **Late Designation of Discovery Material**.   The failure to designate particular Discovery Material as "Confidential" or "Intermediate Confidential" or "Highly Confidential-AEO" at the time of production shall not operate to waive a Producing Party's right to later so designate such Discovery Material.  Notwithstanding the foregoing, no Party shall be deemed to have violated this Order if, prior to notification of any later designation, such Discovery Material was disclosed or used in any manner consistent with its original designation but inconsistent with its later designation.  Once such later designation has been made, however, any Discovery Material shall be treated in accordance with that later designation; provided, however, that if the material that was not designated has been, at the time of the later designation, previously publicly filed with a court, no Party shall be bound by such later designation except to the extent determined by the Court upon motion of the Party that failed to make the designation.

23.    **No Waiver of Any Privilege Upon Production.**  The production of Documents or electronically stored information ("ESI") subject to any claim of privilege or production, including but not limited to work-product or attorney-client privilege ("Disclosed Protected Information"),

shall not constitute a waiver of the privilege as to the produced information or any other information. The production of privileged or work-product protected documents, electronically stored information ("ESI"), or information, whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. This Protective Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). In the event that a Party produces Disclosed Protected Information, the Producing Party shall, within ten (10) days of discovering that it has produced Disclosed Protected Information, notify the other Party in writing of the disclosure including a description of the Information that was produced (including the format of the production – e.g. paper, ESI) and the date(s) the Information was produced. The Producing Party may, in the notice, request a "clawback" of the Disclosed Protected Information. A Receiving Party is under a good faith obligation to promptly alert the Producing Party if Information that is produced, disclosed, exhibited, or communicated by a Producing Party appears to be privileged or protected either on its face or in light of facts known to the Receiving Party. If the Producing Party claims that only a portion of a Document, electronically stored information or tangible thing produced constitutes Disclosed Protected Information, the Producing Party shall provide a new copy of the Information with the allegedly privileged or protected Information redacted. The Party receiving such clawback notice shall immediately and diligently act to retrieve the Disclosed Protected Information and all copies, including any loaded to databases, and return them to the Producing Party or destroy them as agreed between the parties. All notes or other work product of the Receiving Party reflecting the contents of such materials shall be destroyed and not used. No use shall be made of such Disclosed Protected Information in court filings (except as provided below) or during depositions, hearings or at trial, nor shall they be disclosed to anyone who was not given

-18-

access to them prior to the request to return or destroy them unless otherwise ordered by the Court. The Receiving Party may, within five (5) business days after receipt of the Producing Party's notice of the inadvertent or mistaken production, move the Court to dispute the claim of privilege. If the Receiving Party elects to file a motion, the Receiving Party may retain possession of the Inadvertently Produced Documents as well as any notes or other product of the Receiving Party reflecting the contents of such materials pending the resolution by the Court of the motion but shall segregate and not use them or further disclose them to any person pending resolution of the motion. If the Receiving Party's motion is denied, the Receiving Party shall promptly comply with the immediately preceding provisions of this paragraph.

24. **Legal Process for Designated Information.** If Confidential, Intermediate Confidential, or Highly Confidential-AEO Information of a Producing Party is sought from a Receiving Party by a discovery request, subpoena, order, or other form of legal process from or by any person, court, or administrative or legislative body, then the Party receiving the discovery request, subpoena, order, or other form of legal process must not, except to the extent required by applicable law, provide or otherwise disclose such Documents or Information until 30 days after giving counsel for the Producing Party notice in writing, accompanied by a copy of the discovery request, subpoena, order or other form of legal process. If the Producing Party objects to disclosure, then the Party to whom the discovery request, subpoena, order or other form of legal process is directed agrees not to make any disclosure in response to it until the resolution of the objection by the appropriate court.

25. **Production of Documents.** The Parties mutually seek to reduce the time, expense, and other burdens of discovery of certain hard copy Documents and ESI, and to better define the scope of their obligation with respect to producing such Information and materials, consent to the

provisions contained in the Protocol for Document Collection and Production ("**Protocol**"), attached hereto as **Exhibit C.**

26. **Storage and Transmittal.** To avoid security risks inherent in certain current technologies and to facilitate compliance with the terms of this Protective Order, all persons with access to Confidential, Intermediate Confidential, or Highly Confidential-AEO Information are prohibited from storing or transmitting any such Information in or via any online service (other than counsel's or a party's own firm/corporate email system) that is managed or maintained by any third party other than a litigation support service provider that (i) uses a secure document hosting facility, encrypted web-enabled software, and secure sharing and collaboration among only authorized users, and (ii) does not employ public cloud computing services. Notwithstanding the foregoing provisions of this paragraph, the parties may temporarily store and/or transmit files with Confidential or Intermediate Confidential or Highly Confidential-AEO Information to persons authorized to receive Confidential Information or Intermediate Confidential or Highly Confidential-AEO Information, as email attachments, via secure FTP, Dropbox and/or Box.com, and/or by way of a third-party vendor that the parties agree may be used for encrypted and secure, domestic transmissions, provided that for any such transmissions the parties take all reasonable steps to protect Confidential or Intermediate Confidential or Highly Confidential-AEO Information from being disclosed to unauthorized third parties. The use of a third-party vendor may include short-term, incidental storage of files for the sole purpose of transmitting them, provided that the files are promptly deleted upon transmission. The parties may agree in writing to make mutual accommodations under this paragraph.

27. **Use of Designated Information.** Confidential, Intermediate Confidential, or Highly Confidential-AEO Information shall be maintained in confidence by counsel for the parties

and by the parties themselves and may be used only for the purpose of the Chapter 11 Case, and no other purpose. Confidential, Intermediate Confidential, or Highly Confidential-AEO Information must not be used for any business, competitive, legal, or any other purpose unrelated to the Chapter 11 Case without the express written consent of counsel for the Producing Party or by order of the Court.  Nothing in this Protective Order limits any Party to this Protective Order from disclosing or otherwise using:

      a.   its own Documents or Information produced or disclosed in this action;

      b.   any Documents or Information produced or disclosed in this action not subject to this Protective Order and not designated as "Confidential" or "Intermediate Confidential," or "Highly Confidential-AEO";

      c.   Documents or Information that are not otherwise Confidential, Intermediate Confidential, or Highly Confidential-AEO that a Party already possessed or that it obtained by proper means from other sources.

28.    **Designated Information Produced by a Non-Party.**  Any Party or its counsel serving a subpoena or discovery notice upon a non-Party, which subpoena or discovery notice requires the production of documents or testimony, shall serve a copy of this Protective Order along with such subpoena or discovery notice and instruct the non-Party recipient of such subpoena or discovery notice that he, she, or it may designate documents or testimony in a Dispute produced pursuant to such subpoena or discovery notice according to the provisions herein.  All material designated by the non-party as Confidential Information, Intermediate Confidential, or Highly Confidential-AEO Information will be treated in the same manner as any Confidential, Intermediate Confidential, or Highly Confidential-AEO Information produced by the parties.

-21-

29. **Non-Waiver of Objections.**    Neither this Protective Order nor any of the provisions described herein is a waiver of any Party's right to any objection, including but not limited to any objection concerning the admissibility or discoverability of any Documents or Information; or to seek further protection from the Court before producing Documents or Information that any Party believes may not be adequately protected by the provisions of this Protective Order, or to seek leave to refuse production of such Documents or Information.

30. **Binding Effect**.  The Parties agree to submit this Stipulation for entry by the Court and to be bound by its terms while awaiting its entry by the Court.  The provisions of this Protective Order shall, absent written consent of all of the Parties or further order of the Court, continue to be binding after the conclusion of the Chapter 11 Case and throughout any related post-confirmation litigation or investigation, including without limitation any appeals therefrom.  Within sixty (60) calendar days after receiving notice of an entry of an order, judgment, or decree finally disposing of the Chapter 11 Case and any related post-confirmation litigation or investigation, including the exhaustion of all possible appeals and other review, all parties shall, upon written request by any Designating Party, either (i) return all Confidential, Intermediate Confidential, and Highly Confidential-AEO Information and all copies thereof (including excerpts and all such material provided by a Party to any other persons, whether or not in accordance herewith) to counsel for the Party that produced or disclosed such materials, or (ii) destroy or cause to be destroyed all Confidential, Intermediate Confidential, and Highly Confidential-AEO Information, unless the Court orders, or the Parties agree otherwise.

31. **Notice**.  Notice required or permitted to be given for any purpose under this Protective Order shall be delivered to the Parties in writing by electronic mail and U.S. Mail at the addresses set forth on the attached signature pages (including the addresses set forth on any

acknowledgement signed by an additional Party).  Notice shall be deemed effective upon receipt by the Party or person to whom notice is provided.

32.    **Additional Parties**.  Additional parties may be added to this Stipulation in the future in the following manner:  Any additional party that has executed and delivered to all existing Parties a complete and executed acknowledgment in the form attached hereto as **Exhibit B** shall become a Party and shall be subject to all of the provisions of this Stipulation and any resulting Protective Order as if the additional party were an original Party.

33.    **Continuing Jurisdiction**.  The Court retains exclusive jurisdiction to enforce, modify, or vacate all or any portion of this Stipulation upon appropriate motion by a party in interest.  Nothing herein shall preclude any person from seeking to amend or modify the terms of this Protective Order upon appropriate motion and order of the Court.

34.    **Advice of Counsel**.  Nothing herein shall prevent or otherwise restrict counsel from rendering advice to their clients in connection with the Chapter 11 Case and, in the course thereof, relying on examination of Discovery Materials; provided, however, that in rendering such advice and otherwise communicating with such clients, counsel shall not make specific disclosure of any information in any manner that is inconsistent with the restrictions or procedures set forth herein.

35.    **Counterparts**.  This Stipulation may be executed in multiple counterparts.  The Parties agree that their respective signatures will be effective and a counterpart containing an electronic copy of the signature page shall have the same force and effect as an original.

36.    **Procedural Device**.  This Protective Order is a procedural device intended to protect Discovery Materials designated as Designated Materials.  Nothing in this Protective Order shall affect any Party's rights or obligations unrelated to the confidentiality of Discovery Materials.

37.    **U.S. Trustee**.  The Parties agree that the U.S. Trustee shall be provided with access

to all Discovery Material upon request and may conduct and participate in all discovery contemplated and governed by this Protective Order at any time.

38.    **Obligations of Parties**.  Nothing herein shall relieve a Party of its obligations under the Federal Rules, Bankruptcy Rules, Local Rules, or under any future stipulations and orders, regarding the production of documents or the making of timely responses to Discovery Requests in connection with any Dispute or the Chapter 11 Case.

**[Remainder of page intentionally left blank.]**

Dated: August 1, 2023

/s/ Andrew R. Remming
**MORRIS, NICHOLS, ARSHT &**
**TUNNELL LLP**
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Daniel B. Butz (No. 4227)
Tamara K. Mann (No. 5643)
Scott D. Jones (No. 6672)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: dabbott@morrisnichols.com
        aremming@morrisnichols.com
        dbutz@morrisnichols.com
        tmann@morrisnichols.com
        sjones@morrisnichols.com


/s/ Adam C. Harris
**SCHULTE ROTH & ZABEL, LLP**
Adam C. Harris (admitted pro hac vice)
Gayle Klein (admitted *pro hac vice*)
Peter Amend (admitted *pro hac vice*)
McKenzie Haynes (admitted *pro hac vice*)
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
Facsimile: (212) 593-5955
Email: adam.harris@srz.com
        gayle.klein@srz.com
        peter.amend@srz.com
        mckenzie.haynes@srz.com

*Counsel for the Special Committee of the*
*Board of Directors of Kidde-Fenwal, Inc.*

Respectfully Submitted,

/s/ Brian D. Glueckstein
**SULLIVAN & CROMWELL, LLP**
Andrew Dietderich (admitted *pro hac vice*)
Brian Glueckstein (admitted *pro hac vice*)
Justin DeCamp (admitted *pro hac vice*)
Alexa Kranzley (admitted *pro hac vice*)
Julie Kapoor (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (214) 558-4000
Facsimile: (214) 558-3588
Email: dietdericha@sullcrom.com
        gluecksteinb@sullcrom.com
        decampj@sullcrom.com
        kranzleya@sullcrom.com
        kapoorj@sullcrom.com

*Counsel for Kidde-Fenwal, Inc.*

/s/ R. Craig Martin
**DLA PIPER, LLP**
R. Craig Martin
Robert Russel
1201 North Market Street Suite 2100
Wilmington, Delaware19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: craig.martin@us.dlapiper.com
        robert.russell@dlapiper.com

*Counsel for National Foam, Inc.*

/s/ Mitchell S. Levy
**WACHTELL, LIPTON, ROSEN & KATZ**
Emil A. Kleinhaus
Mitchell S. Levy
51 W 52nd Street
New York, NY 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000
Email: PMindlin@wlrk.com
        EAKleinhaus@WLRK.com
        MSLevy@wlrk.com

*Counsel to Raytheon Technologies Corporation*

/s/ Sigmund S. Wissner-Gross

**BROWN RUDNICK**

David J. Molton (admitted *pro hac vice*)
Jeffrey Jonas (admitted *pro hac vice*)
Sigmund S. Wissner-Gross (admitted *pro hac vice*)
D. Cameron Moxley (admitted *pro hac vice*)
Kenneth J. Aulet (admitted *pro hac vice*)
Gerard T. Cicero (admitted *pro hac vice*)
Catherine M. Castaldi (admitted *pro hac vice*)
Times Square Tower, # 47 7, 6536
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email: dmolton@brownrudnick.com
jjonas@brownrudnick.com
swissner-gross@brownrudnick.com
cmoxley@brownrudnick.com
kaulet@brownrudnick.com
gcicero@brownrudnick.com
ccastaldi@brownrudnick.com

*Counsel for the Official Committee of Unsecured Creditors*

/s/ Alan C. Turner

**SIMPSON THATCHER & BARTLETT LLP**

Alan C. Turner (admitted *pro hac vice*)
Nicholas Baker (admitted *pro hac vice*)
Sunny Singh (admitted *pro hac vice*)
Sandeep Qusba (admitted *pro hac vice*)
425 Lexington Avenue
New York, NY 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
Email: aturner@stblaw.com
nbaker@stblaw.com
sunny.singh@stblaw.com
squsba@stblaw.com

*Counsel for Carrier Global Corporation*

**EXHIBIT A**

**NON-DISCLOSURE DECLARATION**

I, _____, declare under penalty of perjury, the following:

I reside at in the City/ County of _____ and State of _____;

My present employer is _____.

I have been engaged as _____ on behalf of _____ in the above-captioned matter.

I have read the annexed Protective Order, dated _____, 2023, in the above-captioned matter.

I am fully familiar with and agree to comply with and be bound by the provisions of that Protective Order and consent to the jurisdiction of the United States Bankruptcy Court for the District of Delaware for the purpose of any issue or dispute arising hereunder.

I will not divulge to persons other than those specifically authorized by the Protective Order, and will not copy or use, except solely for the purpose of this proceeding, any information designated as Confidential, Intermediate Confidential or Highly Confidential-AEO.[1]

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated:        _____

By:            _____

Name:        _____

Title:          _____

Address:    _____

                  _____

                  _____

---

[1]      Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Protective Order.

## EXHIBIT B

## ACKNOWLEDGEMENT

The undersigned hereby acknowledges and agrees to the following terms and conditions:

My name is _____:

I reside at in the City/ County of _____ and State of _____;

My present employer is _____.

I have been engaged as _____ on behalf of _____ in the above-captioned matter.

I have read the annexed Protective Order, dated _____, 2023, in the above-captioned matter.

      I am fully familiar with and agree to comply with and be bound by the provisions of that Protective Order and consent to the jurisdiction of the United States Bankruptcy Court for the District of Delaware for the purpose of any issue or dispute arising hereunder.

      I will not divulge to persons other than those specifically authorized by the Protective Order, and will not copy or use, except solely for the purpose of the Chapter 11 Cases, any information designated as Confidential, Intermediate Confidential or Highly Confidential-AEO.[2]

      I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: _____

By: _____

Name: _____

Title: _____

Address: _____

---

[2]    Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Protective Order.

<u>**EXHIBIT C**</u>

**<u>PROTOCOL FOR DOCUMENT COLLECTION AND PRODUCTION</u>**

This Protocol supplements the Federal Rules of Civil Procedure and the Local Rules of the United States Bankruptcy Court for the District of Delaware.  The Parties mutually seek to reduce the time, expense, and other burdens of discovery of certain hard copy documents and ESI, and to better define the scope of their obligation with respect to producing such information and materials.  This Protocol is intended to promote a "just, speedy, and inexpensive determination" of Chapter 11 Case. Fed. R. Civ. P. 1.  This Protocol does not prevent the Parties from negotiating additional agreements regarding discovery as may be necessary in the course of this action.  This Protocol is not intended to expand any document storage, preservation, or production requirement beyond the common law or the Federal Rules of Civil Procedure or to limit any protections otherwise available to a Party under the Federal Rules of Civil Procedure or the Federal Rules of Evidence.

**I.  Preservation and Production of Data**

1.      By preserving information that is reasonably anticipated to be subject to discovery in this action in accordance with the terms of this Stipulation and Order, no Party shall be deemed to have waived any objection to particular discovery requests or the scope of discovery.

2.      Absent a showing of good cause by a Party, activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery.

3.      The Parties shall confer regarding the identification and collection of sources of relevant ESI, including: (a) the identity and role of custodians possessing relevant information from whom documents will be collected and produced; (b) search methodology and search terms, if any, to be applied, and use of technology assisted review ("TAR") or similar technologies; (c) relevant data sources, including custodial and non- custodial documents; and (d) any applicable

and appropriate timeframes for the production of documents.

4.    The Parties will confer regarding search methodologies, search terms, date restrictions, and custodian restrictions.  If implementing any search based on key word search terms, the Producing Party will provide a list of proposed search terms to the Receiving Party (*i.e.*, the party requesting documents) thereby providing the Receiving Party with an opportunity to discuss those terms and any additional terms, or other requested changes, proposed by the Receiving Party.  The Parties shall participate a cooperative approach in which the Parties will meet and confer regarding reasonable and appropriate methods to increase the relative precision or proportion of relevant and responsive documents within the search results and production sets.

5.    To the extent a Producing Party has served production sets and responsive information in other litigations, including but not limited to *In re: Aqueous Film-Forming Foams Product Liability Litigation,* No. 2:18-mn-2873-RMG (D.S.C. 2018) (or the "AFFF MDL") it is not obligated to re-run or re-validate those production sets or responsive information and is not obligated to re-collect the documents that served as the basis for that production for the purpose of obtaining additional metadata as described in Part II.1 below.  Should the Requesting Party come forward with a particularized need for additional metadata information as to a specific document, however, the parties will meet and confer to discuss reasonable efforts to locate and recollect such information.

6.    To the extent that a Producing Party uses a prior production(s) to satisfy requests from a Receiving Party, the Producing Party will provide an explanation of the methodology and date ranges used to assemble the prior production(s). The utilization of a prior production(s) by a Producing Party to satisfy requests from a Receiving Party will not exempt the Producing Party from having to run additional and/or supplemental productions to account for additional keyword

searches, custodians, and expanded date ranges that were not taken into account in assembling and serving the prior productions and relevant information, about which the parties shall meet and confer in good faith.

7.    The Parties shall meet and confer about any other technology or process used to streamline discovery that is either outside of the usual discovery processes and technologies or is inconsistent with industry best practices.

**II.  ESI Production Specifications**

1.    Except as set forth below, each Party will produce ESI in single-page TIFF format with corresponding load files and multi-page OCR text or extracted text files.  TIFF files shall be created directly from the original electronic documents; a Party may not create a TIFF file from ESI by printing out paper copies of that electronic document and then scanning that paper copy of the ESI unless not feasible in certain circumstances, all TIFF files will conform to the following specifications :

    i.    All TIFF files will be single page,  black  and  white  TIFF  at 300x300 dpi resolution and $8^{1/2}$ x 11 inch page size, except and to the extent reasonably practicable for documents requiring color or different resolution or page size to be legible and comprehensible. Tracked changes, comments, or notes or other similar information shall be imaged so that this information is captured on the produced image file.

    ii.    Each production of ESI and Documents shall include a standard format load file (Opticon opt, Concordance.Dat, Summation Dii, etc.) containing the production Beginning and Ending Bates numbers and the additional Metadata fields detailed below and the appropriate unitization of the documents and family relationship shall accompany the TIFF production.

    iii.    Except as otherwise agreed by the parties, all productions shall be made in .opt and .dat file formats.

    iv.    All TIFF images shall be branded in the bottom right with a

Bates number, beginning with "ABC_0000000l." Each page will also be branded in the bottom left corner with the appropriate confidentiality designation consistent with any protective order entered. Bates numbers should contain an alphanumeric prefix followed by an 8 digit number. Any numbers with less than 8 digits will be front padded with zeros to reach the required 8 digits. All ESI produced in TIFF format shall contain a unique Bates Number on each page of the document, electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document.

v.   Parties shall produce the following metadata fields to the extent they exist with respect to the original electronic document or information, including files produced natively pursuant to paragraph l(vii) below:

1.    BegAttach
2.    EndA ttach
3.    From
4.    To
5.    CC
6.    BCC
7.    Subject
8.    Datesent
9.    Datecreated (documents)
10.   DateModified (documents)
11.   Custodian
11.   FileName
12.   FileType
13.   OriginalFilePath
14.   Bates Begin
15.   Bates End
16.   Dedupped Custodian
17.   Dedupped Custodian Path
18.   All Custodian
19.   All Custodian Path
20.   MD5 Hash
21.   Extracted Text Path
22.   Native File link
23.   Page Count
24.   Confidential Designation
25.   Redaction
26.   File Size
27.   File Extension

28.    Author
29.    Production Volume
30.    Message ID
31.    ESI Type

vi.    Documents such as those that include hidden data, computer slide presentations (for example and without limitation PowerPoint files), spreadsheet files (for example and without limitation Excel files), audio files, video files, and other file types that cannot be accurately converted to image format as described in II.1.i. above shall be produced in native format unless such documents are redacted. The Producing Party shall produce a single page TIFF "placeholder" page for each such file bearing a Bates number and, if feasible, the placeholder page may also bear the file name, file type, and file extension.

vii.    The Parties' E-Discovery Liaison(s), as set forth below, in consultation with their respective technical personnel shall promptly consult in good faith on a reasonable protocol for producing databases , and files that may not easily conform to the protocol above. In the event the Parties are unable to agree, either Party may promptly move the Court for an Order.

viii.    The presumptive source of extracted text shall be from the native file. Where a document has been redacted and produced in a .TIFF format, OCR may be used to generate text for the text file.

2.    **De-duplication**. To the extent identical copies of ESI exist in a Producing Party's files, the Producing Party need only produce one such identical copy. Each Producing Party may remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. Near-duplicate documents shall not be removed without prior agreement of the parties. Email thread suppression techniques will not be applied in production, although such techniques may be used as a review tool. If global de-

duplication is done across the entire collection, the Deduped Custodian field will list each custodian, separated by a semi-colon, who was a source of that document.

3.    **De-NISTing.** ESI collections will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list.

4.    **Zero-byte Files.** The Parties may filter out files identified as zero bytes in size and any logo files.

5.    **Embedded Objects.** Embedded objects or files such as Excel spreadsheets, Word documents, audio and video files shall be extracted and searched consistent with its category of ESI Non-substantive embedded files, such as logos, need not be extracted. All embedded files produced under this procedure shall be produced subject to the same requirements set forth in this Protocol. For production purposes, embedded files shall be identified as attachments to the parent document in which the file was embedded, and load files for such embedded files shall refer to the parent document in which the file was embedded.

**III.    Supplemental Production of Specific Native Format Documents**

1.    Other than as set forth above, a Party may request native format files of electronic documents from a Producing Party in accordance with the provisions of this Section III (each, a "Requesting Party").

2.    No Requesting Party may seek to compel production of native format files on a wholesale or otherwise unreasonable basis.

3.    Any request for native documents will be carried out under the following protocol:

    i.    The Requesting Party will identify the native files sought by Bates range.

    ii.    The Producing Party will respond in writing within ten (10) calendar days by either agreeing or refusing to produce the requested files.

    iii.    If the Producing Party agrees to the request, the production shall

be made within fifteen (15) calendar days of the notification of agreement or as otherwise agreed by the parties.

iv. If the Producing Party refuses to produce the requested file(s), it shall provide a written statement of the reasons it declines the request. If the reason is technical difficulty in producing, the written statement shall detail the technical difficulty.

v. The Requesting Party may then move the Court for relief, and any objections shall be due seven (7) days after service of the Motion. No reply briefs will be permitted.

**IV.        Hard Copy Production Specifications**

1.      Hard copy documents and attachments should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (i.e., .dat). The database load file should contain the following information: Custodian(s), Bates Number Beginning, Bates Number Ending, Family Range Beginning (Parent/Child Order), Family Range Ending (Parent/Child Order), Confidential Designation, Redaction, OCR Text Path, and Production Volume. Where reasonably feasible, hard copy documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business. Where possible, original document orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape), and the Bates number shall be outside of the portions of the imaged pages containing content. At the request of the Receiving Party, document pages that have affixed notes, such as Post-it® Notes, shall be imaged with and without the note attached. If an original document contains color, then the document produced shall be in color, produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as to not degrade the original image. Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business.

2.      Multi-page OCR text for each document will also be provided.  OCR text files shall be provided as a single text file for each hard copy document, not one text file per page.  The filename itself should match its respective TIFF or JPG filename.  The OCR software shall maximize text quality.  Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.  Notwithstanding the requirements set forth above, absent a showing of good cause, a Party is not obligated to re-scan and re-process hard copy documents that were scanned before the entry of this Protocol.

3.      If any Party determines that any of the specific requirements in this section impose an undue burden or otherwise present an issue with respect to compliance, the Parties shall meet and confer regarding that issue, including discussing any appropriate resolution of that issue or alternative process.

## V.      Costs

The cost of preserving, collecting and producing documents shall be borne by the Producing Party.  In the event, however, that a Party requests documents that would result in the production of cumulative or repetitive information that otherwise imposes an undue burden or expense, the Producing Party (*i.e.*, the party producing documents) may object.  The Parties shall work to resolve any such objection.  In the event that a Party is unable to resolve an objection, and upon substantiation of that objection, the Producing Party may move the Court for an Order shifting the cost of producing such cumulative or repetitive information or information that otherwise imposes an undue burden or expense to the Receiving Party.

## VI.      Redactions

1.      The Producing Party may redact from any TIFF image, metadata field, or native file material that is protected from disclosure by applicable privilege or immunity or that is

required by applicable law or regulation or as permitted by the Protective Order governing this case. Redactions must be limited to only language or information within the document deemed protected.  The Producing Party shall identify redactions  clearly  on the face of any TIFF image, either  with "Redacted" or the redaction reason on the face of the document.

2.       If a document that otherwise would be produced in native format requires redaction, such document may be produced in TIFF format with an OCR text file in accordance with this Protocol.  The native file version of redacted documents need not be produced unless the Parties agree otherwise.

**VII.        Other Issues**

1.       **Encryption.** To maximize the security of information in transit, any production may be encrypted.   In such cases, the Producing Party shall transmit the encryption key or password to the Receiving Party, under separate cover, contemporaneously with sending the encrypted media.

2.       **English Language.**  To the extent any Document exists in more than one language, the Document shall be produced in English, if available.  If no English version of the Document is available, the Producing Party does not have an obligation to produce an English translation of that Document.

3.       **Time Zone Standardization.**  The Parties acknowledge that if the processing time zone for this case is not standardized across the entire collection, then the email metadata for custodians in the different time zones will be different, because the time (and possibly the date) would be different.  As a result, two copies of the same email may fail to be de-duplicated, and the different time zones could create a convoluted chronology.  As a result, to the extent reasonably practicable the Parties agree to produce their ESI standardized to Eastern Standard Time (EST).

4.      **Protective Order.**  The terms of any Stipulated Protective Order filed with the Court are incorporated herein by reference and also govern all production pursuant to this Document Production Protocol.

5.      **Further Conferral.**  If any Party determines that any of the requirements in this Protocol impose an undue burden or otherwise pose an issue with respect to compliance, the Parties shall meet and confer regarding that issue, including discussing, as appropriate, an alternative process or processes.

6.      **Privilege Log.**  The parties will meet and confer further regarding privileged-document logging.

7.      Nothing contained herein limits a Producing Party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

8.      Nothing in this Protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.

9.      Unless otherwise agreed, documents and ESI will be produced on optical media (CD/DVD), an external hard drive, via a secure FTP site, or similar electronic format.