## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | |
| KFI WIND-DOWN CORP.,[1] | Chapter 11 |
| Debtor. | Case No. 23-10638 (LSS) |
| | **Obj. Deadline: September 19, 2024 at 4:00 p.m. ET** |

### ELEVENTH MONTHLY FEE STATEMENT OF COVINGTON & BURLING LLP AS SPECIAL INSURANCE COUNSEL TO THE DEBTOR AND DEBTOR-IN-POSSESSION FOR COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD FROM JULY 1, 2024 THROUGH AND INCLUDING JULY 31, 2024

| Name of Applicant | Covington & Burling LLP |
|---|---|
| Authorized to Provide Professional Services to: | KFI Wind-Down Corp. (formerly Kidde-Fenwal, Inc.), as Debtor and Debtor-in-Possession |
| Date of Retention: | July 27, 2023 *nunc pro tunc* to Petition Date (D.I. 318) |
| Period for which compensation and reimbursement is sought: | July 1, 2024 through and including July 31, 2024 |
| Amount of Compensation sought as actual, reasonable and necessary: | $1,080,010.80 |
| 80% of Compensation sought as actual, reasonable and necessary: | $864.008.64 |
| Amount of Expense Reimbursement sought as actual, reasonable, and necessary: | $3,871.41 |

This is a **X** monthly ____ interim ____ final application.  No prior application has been filed with respect to this Fee Period.

The total time expended for fee application preparation during this fee period is approximately 24.30 hours and the corresponding compensation requested is approximately $22,536.00 (after applying a 10% discount).

---

[1]      The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282.  The Debtor's corporate headquarters is located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

## SUMMARY OF BILLING BY PROFESSIONAL
## JULY 1, 2024 THROUGH AND INCLUDING JULY 31, 2024

| Timekeeper Name | Position | Year of Admission | Year of Law School Graduation | Hourly Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| Benedict M. Lenhart | Partner | 1990 | 1989 | $1,775.00 | 28.70 | $50,942.50 |
| Dianne F. Coffino | Partner | 1989 | 1988 | $1,675.00 | 5.50 | $9,212.50 |
| David A. Luttinger | Partner | 1992 | 1991 | $1,450.00 | 83.00 | $120,350.00 |
| Leeanne S. Mancari | Partner | 2005 | 2004 | $1,450.00 | 0.30 | $435.00 |
| Alexis N. Dyschkant | Partner | 2016 | 2014 | $1,350.00 | 48.00 | $64,800.00 |
| **Partner Total** | | | | | **165.50** | **$245,740.00** |
| R. Gregory Rubio | Special Counsel | 2008 | 2008 | $1,350.00 | 69.90 | $94,365.00 |
| Kevin R. Glandon | Special Counsel | 2010 | 2010 | $1,350.00 | 129.20 | $174,420.00 |
| Ryan M. Buschell | Special Counsel | 2010 | 2010 | $1,350.00 | 35.30 | $47,655.00 |
| Timothy D. Greszler | Of Counsel | 2003 | 2003 | $1,350.00 | 0.70 | $945.00 |
| Scott J. Levitt | Special Counsel | 1996 | 1995 | $1,275.00 | 0.60 | $765.00 |
| Suzan F. Charlton | Special Counsel | 1991 | 1991 | $1,250.00 | 58.50 | $74,587.50 |
| **Special Counsel and Of Counsel Total** | | | | | **294.20** | **$392737.50** |
| Bruno Campos | Associate | 2014 | 2013 | $1,225.00 | 98.10 | $120,172.50 |
| Yurij D. Melnyk | Associate | 2017 | 2017 | $1,095.00 | 86.70 | $94,936.50 |
| Julia Blackburn | Associate | 2019 | 2019 | $965.00 | 3.40 | $3,281.00 |
| Joseph Vandegriff | Associate | 2020 | 2019 | $965.00 | 42.80 | $41,302.00 |
| Rebecca X. DiPietro | Associate | 2023 | 2023 | $750.00 | 121.50 | $91,125.00 |
| Laura D.H. Locke | Associate | 2023 | 2023 | $750.00 | 138.30 | $103,725.00 |
| Ethan W. White | Associate | 2024 | 2023 | $750.00 | 10.20 | $7,650.00 |
| **Associate Total** | | | | | **501.00** | **$462,192.00** |
| Desmond P. Brown | Senior Staff Attorney | 1988 | 1989 | $450.00 | 55.00 | $24,750.00 |
| Nicholas C. Eddy | Staff Attorney | 2003 | 2000 | $250.00 | 23.30 | $5,825.00 |
| Ivy S. Hodge | Staff Attorney | 2004 | 2003 | $250.00 | 156.90 | $39,225.00 |
| **Staff Attorney Total** | | | | | **235.20** | **$69,800.00** |
| **Lawyers Total** | | | | | **1,195.90** | **$1,170,470.00** |
| E. Tracy Brown | Paralegal | N/A | N/A | $725.00 | 22.70 | $16,457.50 |
| Jacob A. Nemetz | Paralegal | N/A | N/A | $600.00 | 14.40 | $8,640.00 |
| Danila Glebov | Litigation Support Analyst | N/A | N/A | $550.00 | 11.60 | $6,380.00 |
| Abigail Falls East | Research Librarian | N/A | N/A | $450.00 | 0.80 | $360.00 |
| Kelly Ng | Library Staff | N/A | N/A | $450.00 | 4.90 | $2,205.00 |
| **Non Legal Personnel Total** | | | | | **54.40** | **$34,042.50** |

| Timekeeper Name | Position | Year of Admission | Year of Law School Graduation | Hourly Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| **TOTAL** | | | | | **1,250.30** | **$1,204,512.00[2]** |
| **10% DISCOUNT[3]** | | | | | | **$119,438.70** |
| **50% REDUCTION IN NON-WORKING TRAVEL FEES** | | | | | | **$5,062.50** |
| **TOTAL AFTER APPLICATION OF 10% DISCOUNT** | | | | | | **$1,080,010.80** |

Blended Hourly Rate:  $963.38

**Blended Hourly Rate After Application of 10% Discount: $863.80**

---

[2]     The "Total Compensation" amount does not reflect the 50% reduction in fees for Non-Working Travel required by Local Rule 2016-2.  The 50% reduction in fees for Non-Working Travel is reflected in the "Total After Application of 10% Discount" amount and in the chart on page four of this fee statement.

[3]     The 10% discount reflects a 10% discount in all fees except for those incurred for Non-Working Travel, which are discounted by 50% pursuant to Local Rule 2016-2.

**STATEMENT OF FEES BY PROJECT CATEGORY**
**JULY 1, 2024 THROUGH AND INCLUDING JULY 31, 2024**

| Project Name | Hours | Fee Amount |
|---|---|---|
| NON-WORKING TRAVEL | 7.50 | $5,062.50 |
| INSURANCE COVERAGE | 1,194.70 | $1,143,415.50 |
| FEE/EMPLOYMENT APPLICATIONS | 24.30 | $25,040.00 |
| HEARING PREPARATION AND ATTENDANCE | 3.00 | $4,050.00 |
| SETTLEMENT/MEDIATION | 20.80 | $21,881.50 |
| **TOTAL** | **1,250.30** | **$1,199,449.50** |
| **10% DISCOUNT** | | **$119,438.70[4]** |
| **TOTAL AFTER APPLICATION OF 10% DISCOUNT** | | **$1,080,010.80** |

---

[4]     The 10% discount reflects a 10% discount in the fee totals for the (i) Insurance Coverage, (ii) Fee/Employment Applications, (iii) Hearing Preparation and Attendance and (iv) Settlement/Mediation projects.  The fee amount for Non-Working Travel has been reduced by 50% pursuant to Local Rule 2016-2 and such reduction is reflected in the fee amount for this project.

## SUMMARY OF ACTUAL AND NECESSARY EXPENSES

| Disbursement Summary | | |
|---|---|---|
| **Expense Category** | **Service Provider, if Applicable** | **Amount** |
| Duplicating | SPS Global, Inc. | $200.70 |
| Legal Research - Lexis | Lexis | $28.85 |
| Legal Research-Westlaw | Westlaw | $649.09 |
| Legal Research – Pacer | Pacer | $910.64 |
| Professional Services | IAG, Ltd. | $1,398.75 |
| Mailing | Federal Express Corp. | $54.48 |
| Monthly Disk Storage | Nuix Discover/Session Guardian | $334.90 |
| Travel – Air/Rail | Amtrak | $249.00 |
| | **TOTAL** | **$3,871.41** |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | |
| KFI WIND-DOWN CORP.,[1] | Chapter 11 |
| Debtor. | Case No. 23-10638 (LSS) |

**ELEVENTH MONTHLY FEE STATEMENT OF COVINGTON & BURLING LLP AS
SPECIAL INSURANCE COUNSEL TO THE DEBTOR AND DEBTOR-IN-POSSESSION
FOR COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD FROM
JULY 1, 2024 THROUGH AND INCLUDING JULY 31, 2024**

Covington & Burling LLP ("Covington"), as Special Insurance Counsel to KFI Wind-Down Corp. (formerly Kidde-Fenwal, Inc.) ("Debtor"), hereby submits this Eleventh Monthly Fee Statement for Compensation for Professional Services Rendered and Expenses Incurred for the Period from July 1, 2024 through and including July 31, 2024 ("Eleventh Monthly Fee Statement"). In support of its Eleventh Monthly Fee Statement, Covington respectfully states as follows:

**Background**

1. The Debtor is a Delaware corporation with its headquarters in Ashland, Massachusetts. The Debtor manufactures fire protection and suppression systems, including fire detectors, alarm notification appliances, fire-suppression control units and fire suppression-agent delivery systems. The Debtor also manufactures electronic gas burner controls, mechanical temperature controls and fire and overheat detectors.

2. On June 14, 2023 ("Petition Date"), the Debtor filed a voluntary petition for relief

---

[1] The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters is located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

under title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended or modified, the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware ("Court"). Following the commencement of this chapter 11 case ("Chapter 11 Case"), the Debtor continued to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On June 30, 2023, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors ("Committee") pursuant to section 1102 of the Bankruptcy Code in the Chapter 11 Case [D.I. 83].  On April 2, 2024, the Court entered an order approving a sale transaction for the sale of all or substantially all of the Debtor's assets to Pacific Erin Opco, LLC [D.I. 1058].

3.     On July 27, 2023, the Court entered the *Order Authorizing the Retention and Employment of Covington & Burling LLP as Special Insurance Counsel to the Debtor Nunc Pro Tunc to the Petition Date*, [D.I. 318], authorizing the retention and employment of Covington as the Debtor's Special Insurance Counsel, *nunc pro tunc* to the Petition Date.

4.     On June 23, 2023, the Court entered the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [D.I. 205] (the "Interim Compensation Order").

**Relief Requested**

5.     By this Eleventh Monthly Fee Statement and in accordance with the Interim Compensation Order, Covington makes this application for (a) allowance of compensation as an administrative expense of the Debtor's estate in the amount of $1,080,010.80 for reasonable and

necessary professional services rendered,[2] (b) payment of compensation in the amount of $864,008.64 (80% thereof), and (c) payment of $3,871.41 for actual and necessary expenses incurred.  The total amount of fees requested by Covington, $1,080,010.80, reflects an agreed-upon 10% discount on the $1,199,449.50 in fees accrued by the firm during the Fee Period.

## I.    Description of Work Performed

6.    During the month of July 2024, Covington provided extensive and reasonable professional services to the Debtor.  These services were necessary to Debtor's efforts to secure its contractual rights under numerous insurance policies, including with respect to insurers' obligations to defend and indemnify Debtor against the AFFF claims.  Recovery from the insurers of the liabilities imposed upon Debtor through judgment or settlement of the AFFF claims and of attorneys' fees and costs incurred by the Debtor to defend against the AFFF claims requires extensive and detailed analysis.  Such analysis includes the close review of terms and conditions, rights and liabilities associated with well over 150 different insurance policies purchased from dozens of different insurance companies over the course of approximately 50 years from the 1960s to 2013.  Adding further complexity to the analysis, during that time period, the National Foam Business—which manufactured, sold, or distributed firefighting products—was involved in several corporate reorganizations, including its acquisition and subsequent sale by Debtor.

7.    The following is a summary of categories of professional services rendered for the most significant subject matter categories during the month of July 2024:

---

[2]    In addition to Covington's 10% discount on its fees for this matter, Covington has also written off $8,662.50, reflecting 24.50 hours of time related to transitory timekeepers.

A.    <u>Litigation – Discovery</u>

8.    During this period, Covington took steps to advance the litigation through discovery, including, but not limited to:

      a.  analyzing the responses of each defendant insurer to KFI's First Set of Requests for Production and Second Set of Requests for Production for deficiencies;

      b.  drafting letters to defendant insurers identifying deficiencies in their responses to KFI's discovery requests;

      c.  corresponding and meeting and conferring with defendant insurers regarding discovery issues;

      d.  drafting, finalizing, and serving interrogatories on defendant insurers;

      e.  reviewing and drafting responses to defendant insurers' interrogatories;

      f.  reviewing and evaluating documents for production to the insurers in view of applicable protective orders and producing documents;

      g.  reviewing the status of defendant insurers' production of requested discovery responses, productions, and other discovery-related information;

      h.  producing documents and coordinating with insurers regarding access to productions;

      i.  preparing a position letter to the Court regarding a discovery dispute, preparing for and attending the related hearing, and drafting an order implementing the Court's ruling;

      j.  evaluating discovery options and potential discovery topics;

      k.  reviewing and responding to insurer requests regarding extensions of time to respond to discovery requests;

      l.  drafting and negotiating a protective order and ESI order; and

      m.  reviewed options and coordinated with co-counsel regarding a response to certain insurers' Rule 2004 motion.

B.    <u>Litigation –Motions and Strategy</u>

9.    During this period, and in addition to the activities relating to discovery described above, Covington took other steps to advance the litigation, including, but not limited to:

a.  negotiating with certain insurers regarding the drafting, finalization, and filing of a motion seeking consolidation of adversary proceedings;

b.  preparing, evaluating, and refining strategic decisions regarding litigation; and

c.  drafting, revising, and finalizing other court filings.

C.    <u>Policy Analysis</u>

10.    During this period, Covington continued to evaluate the extent of known coverage, and, nuances of policy text and applicable law, including:

a.  assessing, for the purposes of potential discovery, known insurance policies to select aspects of the insurance coverage program where additional insurance coverage is likely to exist;

b.  researching and evaluating the impact of case law on the allocation among insurance policies of defense costs and indemnity;

c.  researching and evaluating the impact of insurance policy requirements on potential recoveries;

d.  identifying and analyzing deductible and self-insured retention provisions in the insurance policies;

e.  identifying and analyzing coverage exclusions in those policies; and

f.  analyzing information gathered from policy review and evaluation to identify the most effective and efficient approach to seeking recovery under insurance policies insuring the Debtor.

11.    Detailed review of policies is necessary to preserve the interests of the estate and maximize recoveries on behalf of the Debtor.  The value of insurance policies, and the amount available to be recovered under those policies, depends upon the specific wording of the individual

5

insurance policy contract, the ability of the Debtor to demonstrate it is entitled to coverage under said policy, and whether the facts underlying the claims made against Debtor and the nature of potential liability are such that coverage is afforded under the coverage grant(s) of an insurance policy and not excluded by an exception stated in the policy.

12.    In addition to review of policies themselves, Covington reviewed, applied, and, when necessary, performed research regarding the state law applicable to each policy, as the interpretation of a policy's terms and conditions is subject to state insurance laws and regulations and the legal precedent of the relevant jurisdiction governing interpretation of the insurance policy contract.

13.    Finally, the review of policies frequently required careful review of multiple policy documents and analysis of the way those documents affect the overall policy.  It is common for insurance policy text to vary by issuing insurer, by the evolving nature of the insured entity's business, and over time as new policy extensions and exceptions are included or removed from each insurers' standard policy contracts.

14.    Covington also evaluated and prepared responses to correspondence setting forth insurers' coverage positions and worked with a vendor to locate additional insurance policies.

D.    Settlement, Alternative Dispute Resolution, and Non-Litigation Track Coverage Work

15.    During this period, Covington continued to advise Debtor regarding potential avenues to settlement of its claims for coverage, coverage implications of settlement options, and communications with insurers regarding the same.  Covington has extensive experience not only in litigating insurance disputes, but also in seeking efficient resolution of coverage disputes

through settlement.  Identifying possible avenues to settlement is necessary to allow the maximum possible recovery for the Debtor's estate.

16.    Additionally, during this time period, Covington continued to advise the Debtor regarding alternative dispute ("ADR") provisions contained in multiple insurance policies.  These provisions are contained in several of the Debtor's policies and may affect the Debtor's strategic choices regarding claim resolution.

E.    Cooperation With Insurers

17.    During this time period, Covington continued to advise the Debtor regarding the appropriate timing, content, and scope of outreach to insurers.  Covington also advised the Debtor on appropriate responses to requests made by insurers during this period, including for the provision of information and documents, and regarding appropriate confidentiality agreements governing the same.

18.    Appropriate and timely communication with insurers facilitates receiving coverage available to Debtors under the AFFF policies.  Many of the Debtor's insurers have a duty to defend the Debtor against the AFFF claims and/or have an obligation to indemnify the Debtor for any liabilities that may arise from the AFFF claims.  However, many of the relevant insurance policies contain contractual provisions obligating the Debtor to cooperate with its insurers with respect to certain aspects of the AFFF claims for which the Debtor seeks coverage.  The Debtor may also be obligated under certain insurance policies to seek the consent of its insurers before entering into a settlement.

**II.    Time Records**

18.    Attached hereto as Exhibit A is a detailed itemization of all services performed by Covington with respect to this Chapter 11 Case during the Fee Period.  This detailed itemization

complies with Local Rule 2016-2 in that each time entry contains a separate time allotment, a description of the type of activity and the subject matter of the activity, all time is billed in increments of one-tenth (1/10) of an hour, time entries are presented chronologically in categories, any non-working travel has been described separately and billed at 50% of the standard rate, and all meetings or hearings are individually identified.  Certain information contained within specific time entries, however, has been redacted to preserve confidentiality and avoid an inadvertent privilege or attorney work product waiver.  Redaction of time records was done only as necessary to preserve the Debtor's confidentiality and attorney-client privilege.

19.    The timekeepers who rendered services related to each category are identified in this fee statement, along with the number of hours for each individual and the total compensation sought in each category.  All services for which Covington requests compensation were performed for, or on behalf of, the Debtor.

**III.    Expense Reimbursement**

20.    Covington incurred out-of-pocket expenses during the Fee Period, totaling $3,871.41.  Attached hereto as <u>Exhibit B</u> is a description of the expenses actually incurred by Covington in the performance of services rendered as Special Insurance Counsel to the Debtor.

21.    In accordance with section 330 of the Bankruptcy Code, Covington seeks reimbursement only for the actual cost of such expenses to Covington.  Covington submits that the expenses incurred were customary, necessary and related to the Chapter 11 Case and, by this Eleventh Monthly Fee Statement, requests reimbursement of the same.

**Valuation of Services**

22.     Covington professionals, paraprofessionals and specialists have expended a total of 853.9 hours in connection with this matter during the Fee Period.

23.     The amount of time spent by each of the professionals providing services to the Debtor for the Fee Period is set forth in <u>Exhibit A</u>.  The rates are Covington normal hourly rates of compensation for work of this character.  The reasonable value of the services rendered by Covington for the Fee Period as Special Insurance Counsel for the Debtor in this Chapter 11 Case is $1,080,010.80.

24.     Covington believes that the time entries included in <u>Exhibit A</u> attached hereto and the expense breakdown set forth in <u>Exhibit B</u> attached hereto are in compliance with the requirements of Local Rule 2016-2.

25.     In accordance with the factors enumerated in section 330 of the Bankruptcy Code, the amount requested is fair and reasonable given the complexities of this Chapter 11 Case, the time expended, the nature and extent of the services rendered, the value of such services, and the costs of comparable services other than in a case under this title.

**Certificate of Compliance and Waiver**

26.     The undersigned representative of Covington certifies that she has reviewed the requirements of Local Rules 2016 and that the Eleventh Monthly Fee Statement substantially complies with such Local Rule.  To the extent that the Eleventh Monthly Fee Statement does not comply in all respects with the requirements of Local Rule 2016-2, Covington believes that such deviations are not material and respectfully requests that any such requirements be waived.

**Notice and No Prior Request**

27.     Notice of this Eleventh Monthly Fee Statement has been given to the following

9

parties or, in lieu of, to their counsel, if known: (a) the Debtor, (b) the U.S. Trustee; (c) counsel to the Committee; (d) the Fee Examiner and her counsel; and (e) all parties required to be given notice pursuant to the Interim Compensation Order.  Covington submits that no other or further notice is necessary.

28.    No prior request for the relief sought in this Eleventh Monthly Fee Statement has been made to this or any other Court.

WHEREFORE, Covington respectfully requests that the Bankruptcy Court (a) approve the Eleventh Monthly Fee Statement and (b) grant such further relief as is just and proper.

Dated:  August 29, 2024
        New York, NY

**COVINGTON & BURLING LLP**

By: */s/ Dianne Coffino*
        Dianne Coffino (admitted *pro hac vice*)
        David Luttinger (*admitted pro hac vice*)

The New York Times Bldg.
620 Eighth Avenue
New York, New York 10018-1405
Attn:  Dianne Coffino  (admitted *pro hac vice*)
        David Luttinger (admitted *pro hac vice*)
Telephone: (212) 841-1000
Facsimile:  (212) 841-1010
E-mail:  dluttinger@cov.com
        dcoffino@cov.com

and

COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001
Attn: Benedict M. Lenhart (admitted *pro hac vice*)
        Alexis Dyschkant (admitted *pro hac vice*)
Telephone: (202) 662-6000
Facsimile:  (202) 662-6291
E-mail:  blenhart@cov.com
        adyschkant@cov.com

*Special Insurance Counsel for the Debtor and Debtor-in-Possession*