## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| KIDDE-FENWAL, INC., | Case No. 23-10648 (LSS) |
| Debtor. |  |

### CERTAIN INSURERS' OBJECTION TO DEBTOR'S PROPOSED SOLICITATION PROCEDURES AND CONFIRMATION SCHEDULE (BRIEF # 4 OF 4)

Zurich American Insurance Company, American Guarantee and Liability Insurance Company, and the other insurers listed in the signature blocks below (collectively, the "Insurers") hereby object to the *Motion of KFI Wind-Down Corp. ("Debtor") for Entry of an Order (i) Approving the Adequacy of the Disclosure Statement and Form and Manner of Notice of Hearing Thereon; (ii) Establishing Solicitation Procedures; (iii) Approving the Form and Manner of Notice to Attorneys and Solicitation Directive; (iv) Approving the Form of Ballots; (v) Approving the Form, Manner and Scope of Confirmation Notices; (vi) Establishing Certain Deadlines in Connection with Approval of Disclosure Statement and Confirmation of Plan; and (vii) Granting Related Relief* (Dkt. No. 1651, the "Motion").

### Overview

There are two significant problems with Debtor's proposed solicitation procedures and confirmation schedule. First, the proposed solicitation procedures and ballots together risk meaningful numbers of votes being submitted by persons and entities that do not have claims against Debtor. Second, the confirmation schedule is too tight to allow for the amount of discovery that must be conducted into key factual issues, including the scope of the proposed

releases, whether they are permissible under *Purdue Pharma* and *Emoral*, and, more fundamentally, whether the Plan is proposed in good faith.

The solicitation procedures fall short in at least three key areas:

First, regarding solicitation, the ballots and applicable definitions fail the basic threshold requirement of § 1126 because they allow Holders of AFFF Claims who have not filed a proof of claim in this bankruptcy case to nevertheless vote on Debtor's plan. Such a procedure invites individuals who do not hold valid "claims" against Debtor to vote in this bankruptcy case. That is improper; only persons who assert AFFF Claims (which are claims involving aqueous film-forming foam that contains or allegedly contains PFAS) ***against the Debtor*** should be allowed to vote. The Court should set a bar date for the assertion of AFFF Claims and require claimants to state, under penalty of perjury, where, when, and how they were exposed to AFFF manufactured or distributed by Debtor. That would allow parties in interest, including Insurers, to object to claims that do not adequately establish exposure to Kidde AFFF. Alternatively, the ballots should be modified to require the same information, thereby ensuring that ballots are being cast only by persons or entities who are asserting allowed claims against Debtor.

Second, the proposed use of master ballots in this case should be rejected. Master ballots are inappropriate and unnecessary in a case such as this where allowed claims in most voting classes are held by institutional or governmental entities, and the overall number of claims is relatively low compared to other mass tort cases. To the extent the Court determines to allow law firms to use master ballots, the solicitation procedures should include adequate safeguards to ensure that claims are voted properly, and by persons with authority to do so, including appropriate certifications showing that the law firm submitting such a ballot has authority to do so.

Third, Debtor's proposed solicitation procedures improperly afford Debtor leeway to determine the treatment of individual votes. The Bankruptcy Rules, and not Debtor, should determine how incomplete, duplicate, or subsequent votes are treated. The Rules do not give Debtor unfettered discretion to determine which votes should be counted and which should not. The provisions of the proposed solicitation procedures regarding waivers of deficiencies, subsequently-cast ballots, and efforts to modify a vote once cast must be brought into conformance with the Bankruptcy Rules, and inappropriate discretion over which votes are counted and which are not eliminated.

Finally, with respect to the confirmation schedule, Debtor's proposed timeline is simply too short. The Insurers not only are parties in interest to this bankruptcy case, they may be the only parties with real skin in the game. This is not an asbestos case, where the nature of the underlying liability is clear and has been litigated for decades. The several categories of PFAS-related claims are unfamiliar territory, and it is appropriate for all parties to have the opportunity for discovery to understand whether the classification of these claims in the plan is appropriate, how the mechanisms for liquidating these claims will work, and whether those mechanisms are appropriate. Moreover, this Plan, while proposing to liquidate the Debtor, is quite complex. Parties in interest need sufficient time to explore all of the issues involved with a Plan that incorporates three complex settlement agreements that must each meet the Rule 9019 standards, complicated issues regarding the proposed insurance assignments, incomplete Trust Distribution Procedures, and the basic question of whether the Plan was proposed in good faith. Moreover, some of the key ingredients of the Plan, such as the referenced New National Foam settlement, still have not been provided, despite being described as critical elements of the Plan. Parties in interest, including the Insurers, should be afforded adequate time to take discovery on these

agreements, their (alleged) conformity with § 1129, and their potential impact on creditors, insurers, and other parties in interest.

If the Disclosure Statement can be approved at all notwithstanding objections to it filed by the Insurers and possibly others, the Insurers propose a minimum of six months for confirmation discovery (both fact and expert discovery). Debtor can make no showing of urgency that would justify a timeline that does not allow the Insurers a reasonable opportunity to protect their interests.

## Objection

### I.    The Solicitation Procedures and proposed ballots must be revised, and a bar date should be set.

#### A.    The Solicitation Procedures cannot allow votes by Holders of AFFF Claims that are not eligible to vote under § 1126(a) of the Bankruptcy Code.

To be eligible to vote on a plan, a creditor must file a proof of claim that satisfies § 501 of the Bankruptcy Code. Under § 1126(a) of the Bankruptcy Code, only holders of claims allowed under § 502 of the Bankruptcy Code are eligible to vote. And a claim is only deemed allowed under § 502 (unless objected to) if the claimant files a proof of claim in accordance with § 501 of the Bankruptcy Code. *See also* Fed. R. Bankr. P. 3003(c) (proof of claim required except where the debtor schedules the creditor's claim as non-contingent, liquidated, and undisputed). Pursuant to Bankruptcy Rule 3003(c)(2), a creditor that fails to file a proper proof of claim, and is thus ineligible to vote under § 1126(a) of the Bankruptcy Code, "will not be treated as a creditor for that claim for voting."

For a creditor's proof of claim to satisfy § 501 of the Bankruptcy Code, it must substantially conform to Official Form 410.[1] Official Form 410 requires the creditor (or an

---

[1]      Fed. R. Bankr. P. 3001(a) (a proof of claim "must substantially conform to Form 410").

authorized agent) to, among other things, state the "basis of the claim," attach copies of documents that support the claim, and "declare under penalty of perjury" that they "have a reasonable belief that the information [in the proof of claim] is true and correct."[2]  Further, the "sworn facts in the proof of claim" must be "sufficient to support a legal liability to the claimant."[3]

Here, Debtor's Solicitation Procedures for AFFF Claims in Classes 3A-3K violate Rule 3003(c)(2) because they would allow persons or entities to vote on the Plan even if they have not filed a proof of claim and thus are not eligible to vote under § 1126(a) of the Bankruptcy Code. Debtor proposes that "all persons that believe they hold an AFFF Claim other than a Sovereign State Claim against the Debtor shall be entitled to obtain a Solicitation Package (and applicable Ballot) and vote on the Plan, so long as any such person makes the required certifications on the applicable Ballot."[4]  Because Debtor did not request that the Court set a bar date for AFFF Claims, there may be numerous persons that, even though they may "believe they hold an AFFF Claim," cannot "be treated as a creditor for that claim for voting" under Rule 3003(c)(2) because they have not filed a proof of claim.  Yet, the Solicitation Procedures do not require that a person who "believe[s] they hold an AFFF Claim" must file a proof of claim for their vote to be counted, despite that the Solicitation Procedures *do* include such a requirement for creditors other than Holders of AFFF Claims.[5]

---

[2]     Official Form 410 (instructions, item 8, and Part 3).

[3]     *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992).

[4]     *See* Notice of Filing of Revised Order (i) Approving the Adequacy of the Disclosure Statement and Form and Manner of Notice of Hearing Thereon; (ii) Establishing Solicitation Procedures; (iii) Approving the Form and Manner of Notice to Attorneys and Solicitation Directive; (iv) Approving the Form of Ballots; (v) Approving the Form, Manner and Scope of Confirmation Notices; (vi) Establishing Certain Deadlines in Connection with Approval of Disclosure Statement and Confirmation of Plan; and (vii) Granting Related Relief (Dkt. No. 2107) (the "Revised Proposed Order"), Exhibit 1 (Dkt. No. 2107-1) (the "Solicitation Procedures") at 5, § 3(c).

[5]     *See* Solicitation Procedures at 6, § 4(ii).

Contrary to Debtor's proposal, merely "mak[ing] the required certifications on the Applicable Ballot" is not sufficient for a person or entity that "believes they have an AFFF Claim" to become eligible to vote under § 1126(a) of the Bankruptcy Code.[6]   Debtor's proposed non-master ballots only require the person completing the ballot to certify that:

- The holder of the claim received the solicitation materials;

- The claimant is the Holder of a claim in the specified Class to which the ballot applies, *e.g.*, a Holder of a Water Provider Claim in Class 3A; and

- The holder of the claim has "full power and authority to vote" the claim.[7]

Similarly, Debtor's proposed master ballots only require the attorneys that complete the ballots to certify that:

- The attorneys received the solicitation materials;

- The attorneys are authorized to vote for their clients; and

- Each holder of a claim included on the ballot "has, on such Holder's information and belief," a claim in the specified Class against Debtor.[8]

Unlike Official Form 410 for proofs of claim, the proposed ballots do not require the claimant to state the basis for the claim with "sworn facts" sufficient to support that the assertion that Debtor owes "a legal liability to the claimant,"[9] or to attach supporting documents.

---

[6]     Motion ¶ 37.

[7]     *See* Revised Proposed Order Exs. 2A-2K.

[8]     *See* Revised Proposed Order Exs. 2M-2V.

[9]     *Allegheny Int'l*, 954 F.2d at 173-74.

Nor do the non-master ballots require a claimant (or its representative) to make any certification under penalty of perjury.[10]

The Court should therefore set a bar date for all persons and entities asserting AFFF Claims in Classes 3A-3K. Such persons and entities should be required to swear, under penalty of perjury, the factual basis for their assertion that they have an AFFF Claim against Debtor. This would then allow Debtor or any other party in interest—including the Insurers— to object to any such claims that cannot adequately allege a basis for their asserting a claim against Debtor.[11] That would then limit the pool of voters to persons or entities with allowed claims— precisely as the Bankruptcy Code and Rules require.

At a minimum, the proposed ballots for AFFF Claims in Classes 3A-3K need to be revised to require a claimant that has not filed a proof of claim to incorporate in their ballot the same information as is required for a proof of claim to substantially comply with Official Form 410, and to sign the ballot under penalty of perjury.[12] This revision is an essential safeguard against

---

[10]    Revised Proposed Order Exs. 2A-2K. Curiously, the non-master ballots only require certifications be made under penalty of perjury if the ballot is submitted by an attorney. If the claimant itself, or its representative, completes the ballot, they are only required to make their certifications based "on information and belief."

[11]    Insurers who may be called upon to pay holders of AFFF Claims have standing to object to proofs of claim. *See, e.g., In re Heating Oil Partners*, 2009 WL 5110838, at *5 (D. Conn. Dec. 17, 2009), *aff'd sub nom. In re Heating Oil Partners, LP,* 422 F. App'x 15 (2d Cir. 2011) (insurer had standing to move to void a default judgment the insurer would otherwise have to pay), citing *In re Standard Insulations, Inc.*, 138 B.R. 947, 950 (Bankr. W.D. Mo. 1992) (because "insurers are responsible for payment of injury claims caused by exposure to debtor's products during covered periods," the insurers were "parties in interest . . . and have standing to object to claims against the estate"); *In re Black, Davis & Shue Agency, Inc.*, 460 B.R. 407, 414-15 (Bankr. M.D. Pa. 2011) (holding insurer had standing to object to a proof of claim). *See also Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602 U.S. 268, 271 (2024) (insurers "with a financial responsibility for a bankruptcy claim is sufficiently concerned with, or affected by, the proceedings to be a 'party in interest' that can raise objections to a reorganization plan").

[12]    Compounding the Solicitation Procedures' failure to require holders of AFFF Claims to establish their eligibility to vote, the non-master ballots do not clearly specify that votes only can be submitted on account of claims "against the Debtor." The closest language is the ballots' requirement

the risk that meaningful numbers of persons that do not have valid claims against Debtor could nevertheless cast ballots in Classes 3A-3K.[13]

### B.    To the extent master ballots are used, there should be far more protections against abuse of the format.

The proposed master ballots are further problematic because they create additional opportunities for voting abuses, and needlessly so.  The master ballots would be based on a pre-populated Client List of known claimants prepared by the Solicitation Agent, but law firms are permitted to create Supplemental Client Lists with additional claimants, including claimants that have not filed any litigation against Debtor in the AFFF MDL.[14]  The Solicitation Procedures also state that each law firm must meet "all applicable standards to receive informed consent" from its clients, but there is no requirement—and, indeed, an express disclaimer of any obligation—to verify that such informed consent has been obtained for any client.  Further, law firms purporting to act on behalf of clients under powers of attorney or similar documents have no obligation to produce the document, unless the Debtor requests it.[15]

---

that the person completing the ballot certify that the claimant is the "Holder" of a claim in the specified Class to which the ballot applies.  While "Holder" is defined in the Plan as "a Person holding a Claim against the Debtor," Plan § 2.1.94, unlike various other Plan-defined terms, the Plan definition of "Holder" is not replicated in the non-master ballots themselves.  To head off any confusion, the definition of "Holder" should be added to the ballots.

[13]    *See In re Imerys Talc America, Inc.*, 2021 WL 4786093, at *11 (Bankr. D. Del. Oct. 13, 2021) (excluding master ballots cast by law firm where it "performed zero diligence to discern which of its clients, if any, had been exposed to talc, much less to Debtor's talc").  There are at least five other manufacturers of AFFF named as defendants in the AFFF MDL and many plaintiffs in the MDL have not asserted claims against Debtor.  *See also* Motion ¶ 68 (explaining that "certain plaintiffs in the AFFF MDL have commenced litigation against Released Parties ***but not against the Debtor***") (emphasis added).

[14]    *See* Solicitation Procedures at 12, § 8.

[15]    *See* Solicitation Procedures at 13, § 8(a).

This Court has previously recognized that permitting use of a master ballot requires the Court to place "great trust" in the attorney filing the master ballot, which has "the obligation to ensure that he only votes on behalf of clients who have a claim against Debtors" and that he has the authority to vote each client's interest.[16] And this Court has previously found that trust "not well-placed."[17]

There is no need for the Court to take such a leap of faith in this case. Master ballots are most often permitted in cases involving tens or hundreds of thousands of claimants, who are usually individuals, and often not sophisticated in legal matters.[18] That is not the situation here. The number of ballots that will conceivably be cast in this case is a fraction of the typical case utilizing master ballots, particularly given that prepetition, Debtor had a limited market share and the entire AFFF MDL, which involves dozens of other defendants, has just over 10,000 cases in total. It is not reasonable, therefore, to expect more than a few thousand ballots will be cast, which does not justify the use of master ballots. Further, many of the holders of AFFF Claims are sophisticated entities, such as municipal water providers, businesses, and governmental

---

[16]    *Imerys*, 2021 WL 4786093, at *11.

[17]    *Id.* at *11. *See also In re Red River Talc LLC*, 2025 WL 1029302, at *18-26 (Bankr. S.D. Tex. March 31, 2025) (rejecting votes submitted on master ballots using "Option A" certification where attorneys voted "without affirmative client consent" and rejecting votes submitted on master ballots using "Option B" certification where attorneys only had a general power of attorney, because "a specific power of attorney granting authority to vote is required"); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 207-08, 245 n.66 (3d Cir. 2004), as amended (Feb. 23, 2005) (noting that agents utilizing master ballots were required "to include a valid power of attorney, proxy, or other written evidence of agency for every Asbestos PI Trust claim holder identified on the ballot" and nothing prohibited a debtor from imposing that requirement).

[18]    *See, e.g., In re Red River Talc LLC*, 2025 WL 1029302, at *23 (over 90,000 votes cast); *In re Boy Scouts of America*, 642 B.R. 504, 538 (Bankr. D. Del. 2022) (54,000 claims voted); *In re Imerys Talc Am., Inc.*, 2021 WL 4786093, at *6 (Bankr. D. Del. Oct. 13, 2021) (70,000 claims voted); *In re Quigley Co.*, 346 B.R. 647, 652 (Bankr. S.D.N.Y. 2006) (209,000 claims voted); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 207-08 (3d Cir. 2004), as amended (Feb. 23, 2005) (232,000 claims voted); *In re A.H. Robins Co.*, 880 F.2d 694, 697 (4th Cir. 1989) (139,000 claims voted); *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 641 (2d Cir. 1988) (52,000 claims voted).

entities.  There is no reason such entities cannot fill out non-master ballots.[19]  Indeed, of Classes 3A-3K, only in Class 3E, Personal Injury Claims, are claims reasonably expected to be held by individuals.

If the Court permits master ballots at all, the Court should, at a minimum, implement measures that are at least as rigorous as those this Court required in *Boy Scouts* and *Imerys* to ensure that the law firms voting claims through master ballots are authorized to do so and that the claimants have knowledge of the proposed votes.  Such measures should include:

- Requiring that any claim that cannot be matched to existing client lists and proofs of claim submitted in the case must be solicited via direct solicitation, rather than master balloting.[20]

- Requiring any law firm proposing to vote by master ballot to file disclosures required under Bankruptcy Rule 2019, including: (1) a statement of the facts and circumstances of the law firm's representation; (2) a complete list of all represented claimants; and (3) exemplar retention letters setting forth the firm's authority to vote on behalf of the claimant.[21]

---

[19]    Each of the subclasses of claims held by water providers and governmental entities also has a limited number of claims, so master ballots offer limited efficiencies.

[20]    *See In re Boy Scouts of Am.*, No. 20-10343-LSS, Order Approving Disclosure Statement [Dkt. 6438] (D. Del. Sept. 30, 2021) ¶¶ 14, 30.

[21]    *See, e.g., id.* ¶ 29.

- Requiring that each law firm voting by master ballot certify that it has communicated with each claimant for whom it is voting and obtained their affirmative instruction for the "yes" or "no" vote being cast.[22]

- To the extent a law firm purports to be acting pursuant to a power of attorney, that instrument should be provided along with the master ballot.[23]

These protections are particularly important where, unlike in *Boy Scouts*, here there is currently no bar date, the law firms have client lists that remain in flux, there are existing known issues in the AFFF MDL with lawyers struggling to contact their own clients.

### C.    The tabulation provisions must be revised to eliminate the potential for gerrymandering the vote.

Debtor's proposed vote tabulation procedures are also defective because they vest inappropriate discretion in Debtor that allows manipulation of the voting results.

To conform to applicable rules and to ensure that each vote properly reflects the claimants' intent, the following changes need to be made:

- Debtor should not be permitted to unilaterally grant an extension of the voting deadline for any ballot or to otherwise accept a late ballot.[24]   Bankruptcy Rule 3017(c)

---

[22]     In re Red River Talc LLC, 2025 WL 1029302, at *26 (Bankr. S.D. Tex. Mar. 31, 2025) (rejecting votes submitted on master ballots using "Option A" certification where attorneys voted "without affirmative client consent").

[23]     *Red River Talc LLC*, 2025 WL 1029302 at *23 (rejecting votes submitted on master ballots using "Option B" certification where attorneys only had a general power of attorney, because "a specific power of attorney granting authority to vote is required"); *see also In re Combustion Eng'g, Inc.*, 391 F.3d 190, 207-08 (3d Cir. 2004), as amended (Feb. 23, 2005) (noting that in a case involving approximately 232,000 ballots cast, agents utilizing master ballots were required "to include a valid power of attorney, proxy, or other written evidence of agency for every Asbestos PI Trust claim holder identified on the ballot").

[24]     *See* Solicitation Procedures at 9 at § 6(i), 10 at § 7(i).

requires the Court, not Debtor, to set the voting deadline for all claimants, and nothing in the Bankruptcy Rules allows a debtor to unilaterally extend that deadline.

- The process for reconciling inconsistent votes must be conformed to Bankruptcy Rule 3018. Under the currently proposed procedures, if multiple ballots are received on account of a single claim, the second ballot will be deemed to reflect the voter's intent and will supersede and revoke any previous ballot.[25] The currently proposed procedures also permit the Solicitation Agent to disregard a vote cast by a claimant if it is inconsistent with a vote purportedly cast by the claimant's lawyer.[26] The proposed procedures further provide that if there are multiple votes recorded for the same claimant by different firms, the "sole obligation and responsibility" to resolve conflicting representations lies with the law firms themselves, and for the appropriate firm to submit the vote on behalf of such Eligible Client together with an email confirming such resolution.[27] If conflicting representations are not resolved, the Solicitation Agent is authorized, but not required, to invalidate the inconsistent votes.[28] This is all fails to comply with Bankruptcy Rule 3018, which treats the first-filed ballot for a claim as presumptively controlling and requires court permission following notice, a hearing, and a for-cause showing for a claimant to change its vote from that

---

[25]    *Id.* at 10, § 6(vii).

[26]    *See* Solicitation Procedures at 14, § 8 ("To the extent that the Solicitation Agent timely receives a vote from an Eligible Client directly that is inconsistent with a corresponding vote cast by their Firm, the Solicitation Agent **_may_** tabulate the vote submitted directly by the Eligible Client and invalidate the vote submitted by the Firm on the Eligible Client's behalf") (emphasis added).

[27]    It is clear from other cases (such as *Red River Tale*) that such conflicts are inevitable and that firms cannot be the exclusive arbiters of which votes to count.

[28]    Motion at ¶ 47.

first-filed ballot.[29]  Any reconciliation of conflicting ballots in this case must comply with Rule 3018.

- Debtor also should not have the "discretion," "subject to a contrary order of the Court," to "waive any defects or irregularities as to any particular Ballot at any time, either before or after the close of voting and without notice."[30]  This provision invites mischief.  For example, claims that exist only against non-debtors but that nevertheless are voted in this bankruptcy case are defective on their face.  Debtor's proposed procedures, however, would allow Debtor to waive such defects—in theory, permitting it to swamp the vote with non-debtor claims—and put the onus on other parties in interest to seek "a contrary order of the Court."

Finally, all parties in interest must have the information necessary to evaluate any invalidated votes and their impact on the vote totals.  The invalidated ballots should be included in the final solicitation record, so that the bases for invalidation can be independently examined, and the reported voting totals should reflect and include disallowed votes as well as those that are allowed.

## II.    The confirmation schedule proposed by Debtor does not allow adequate time for necessary discovery.

For the reasons stated in the Insurers' other briefs filed in opposition to the Motion, any discussion of scheduling a confirmation hearing is substantially premature.  Before the Court could possibly address scheduling, Debtor must first come back with a plan that does

---

[29]    *See In re Imerys Talc America, Inc.*, 2021 WL 4786093, at *6 (Bankr. D. Del. Oct. 13, 2021).

[30]    *See* Solicitation Procedures at 10, § 6(x).  *See also id.* at 9, § 6 ("The following voting procedures and standard assumptions shall be used in tabulating Ballots, subject to the Debtor's right to waive any of the below specified requirements for completion and submission of Ballots, so long as such requirement is not otherwise required by the Bankruptcy Code, Bankruptcy Rules, or Local Rules.").

not integrate an unlawful kickback scheme, make appropriate disclosures, including providing copies of key missing documents such as the New National Foam agreement, and modify the proposed Solicitation Procedures. The Court should therefore table any discussion of confirmation scheduling until some future time.

But even if the Court were willing to approve the Disclosure Statement at this point notwithstanding the myriad issues raised by the Insurers regarding the patent unconfirmabilty of the plan, the inadequacy of the proposed disclosures, and the defects in Debtor's proposed Solicitation Procedures, Debtor's revised proposed confirmation schedule[31] should still be rejected because it does not allow adequate time for necessary discovery. In fact, Debtor's revised schedule seems to not take into account in any way the fact that confirmation will be contested and that any schedule should set forth milestones for discovery.

This is a complicated case that embodies a number of settlements the Court is being asked to approve under Rule 9019, including one between Debtor and Carrier that took nearly a year to negotiate. The settlements between Debtor and Carrier contain a number of complex issues, including an insurance assignment that appears to incentivize Carrier to increase Debtor's tort liability, but the RTX Waiver is no less complex, and the New National Foam Agreement has not even been provided yet. Parties in interest in this bankruptcy case are entitled to explore in discovery whether the settlements meet the applicable standards for approval, and this will take time.

The Plan also contains numerous releases and injunctions, including what is effectively a discharge under § 1141 even though Debtor is liquidating. Among those releases is a release of Estate Claims, a broad term with uncertain applicability. Extensive discovery into the

---

[31]    *See* Dkt. No. 2131-1 at 6.

various proposed releases and whether they are appropriate will be required.  Discovery will also be needed to explore the scope of the claims purportedly being released and whether such releases are permissible under *Purdue* and *Emoral*.[32]

Finally, Debtor must demonstrate that the plan was proposed in good faith.  For the reasons set out in *Insurers' Objection To Disclosure Statement For Second Amended Plan Of Liquidation On Grounds That It Is Patently Unconfirmable (Brief # 2 of 4)*, filed herewith, the Insurers have serious concerns with the motivations behind the Plan, including that the supposed Guaranteed Cash Payment is actually designed to be a profitable investment for Carrier, based on its purported right to a share of the Trust proceeds, that is likely to pay off many times over if certain mechanisms in the TDPs result in increased liability of the Trust and, in turn, the Insurers—as they appear calculated to do.  The rationale for the Plan, these mechanisms, and the disproportionate benefit to Carrier, and whether good faith can be established, will be the subject of extensive discovery.

Moreover, a lot of the Insurers' discovery will be directed not to Debtor or the Committee but, instead, to third parties such as Carrier and RTX.  Third-party discovery is notoriously more time-consuming and difficult to conduct than party discovery.

Here, discovery cannot begin in earnest given the need for Debtor's plan to be modified in significant respects to eliminate all of its aspects that are clearly do not satisfy § 1129(a)(3).  Then, when it does make sense to commence discovery, the Insurers will need time to conduct the following discovery:

- The Insurers will seek document discovery and depositions from both Debtor and its current and former parent companies, Carrier and RTX, regarding the Estate Claims

---

[32]    *Harrington v. Purdue Pharma, L.P.*, 603 U.S. 204 (2024), and *In re Emoral, Inc.*, 740 F.3d 875 (3d Cir. 2014).

Settlement Agreement under which Carrier contemplates paying $540 million to KFI to resolve certain purported intra-company disputes.[33]  The scope of the claims purportedly released pursuant to this settlement is a critical confirmation issue.  So, too, is the rationale for the settlement, which will also necessarily be the subject of discovery.

- The Estate Claims Settlement and the two other settlement agreements must, at a minimum, be found to be within the range of reasonableness in order to obtain bankruptcy court approval.[34]  Discovery into all three settlements will be substantial in scope.  By way of example, the disclosure statement says that Debtor's board of directors formed a special committee to evaluate the claims against Carrier and RTX.[35]  The evaluation apparently was a substantial undertaking involving the production and review of nearly a half million documents, "depositions of Carrier Global Corporation, the Debtor, and RTX witnesses," and interviews of current and former Debtor employees.[36]  The Insurers will also seek document discovery from, and to depose representatives of, the various proposed Released Parties regarding their potential exposure to AFFF liabilities.

- The Insurers must have adequate time to explore in discovery the insurance assignment issues.  Taking discovery on this issue is of particular importance to the Insurers given

---

[33]     *See* Dkt. No. 1755-4 (Estate Claims Settlement Agreement); Dkt. No. 1753-1, §§ 2.1.73, 2.1.74, 2.1.89 (relevant definitions in Second Amended Plan).

[34]     There is precedent in this District for the proposition that under certain circumstances, a bankruptcy court's evaluation of a settlement "baked into the plan" is subject to "a more searching review of the reasonableness of the settlements" than is ordinarily conducted under Bankruptcy Rule 9019.  *See In re Yellow Corp.*, __ B.R. __, 2025 WL 992618, *1 (Bankr D. Del. Mar. 31, 2025).

[35]     Dkt. No. 1754-1 § II.B.3 (p. 15 of Amended Disclosure Statement).

[36]     *Id.*, § III.L (p. 22 of Amended Disclosure Statement).

that Carrier—despite not existing until approximately 2019 and not being a debtor in this proceeding—claims to be insured to the same extent as Debtor under certain policies and purports to assign its alleged insurance rights to the Trust.  However, the Insurers' position is that this Court lacks jurisdiction over Carrier's interest, if any, in the at-issue policies.

- The Insurers will likewise need discovery regarding other provisions concerning insurance contained in the plan, including, for example, the Insurance Company Injunction set out in § 10.8 of the Second Amended Plan and the Insurance Cooperation Agreement under which Carrier and the Primary AFFF Settlement Trust will purportedly share certain insurance proceeds.[37]  These are critical issues to whether this plan was proposed in good faith.

- The Insurers will seek document discovery and depositions regarding the Trust Distribution Procedures and the AFFF claims that they anticipate will become payable under the Plan.  Further, the TDPs must be substantially completed before such discovery can reasonably proceed.  Currently, they include incomplete formulas and are generally incomplete.[38]

- The Insurers need discovery into the classification of Class 3 Claims, including whether Debtor's proposed sub-classes are consistent with § 1122.

---

[37] *See generally* Dkt No. 1755-5 (Insurance Cooperation Agreement); Dkt. No. 1753-1 § 5.5.11 (section on "Insurance Matters" in Second Amended Plan).

[38] *See generally* Dkt. No. 1755-1 (Primary AFFF Settlement Trust Agreement containing exhibits setting out partial Trust Distribution Procedures for different classes); Dkt. No. 1753-1 § 5.5.7 (section on "TDPs" in Second Amended Plan).

- The Insurers are entitled to take discovery from any experts that KFI or any other party puts forward in support of the Plan, and other parties will presumably wish to take expert discovery from any experts that any insurer puts forward in support of objections to the Plan.

Further, the parties may fairly anticipate that there will be discovery disputes that will need to be resolved by the Court, in particular given the resistance Debtor demonstrated in producing materials relevant to the Insurers' review of the Disclosure Statement (and Debtor still has not provided the New National Foam Agreement).

This Court has recognized the importance of allowing adequate time for discovery in other mass tort bankruptcy cases such as *Imerys* and *Boy Scouts*. Even in smaller, less complex mass tort cases, bankruptcy courts have recognized that the type of needlessly truncated confirmation schedule sought here is inappropriate. For example, in *Lloyd E. Mitchell*, a relatively small asbestos bankruptcy case, the bankruptcy court agreed with the insurers that setting a confirmation hearing 90 days after approval of a disclosure statement did not allow sufficient time for discovery and that the deadlines for objecting to the plan should instead be tied to the close of discovery.[39]

Finally, Debtor has already sold most of its assets to a third party and its estate will be wound down and dissolved following the confirmation of the Plan. Debtor has acknowledged that it has "no objective to continue or engage in the conduct of trade or business" following confirmation and, thus, it cannot claim a need to have the process unfold on an accelerated timeline.[40] This lack of urgency is further demonstrated by the many times Debtor unilaterally

---

[39]     *See In re Lloyd E. Mitchell, Inc.*, 373 B.R. 416, 428 (Bankr. D. Md. 2007)

[40]     *See* Dkt. No. 1753-2, ¶ 5.6.

continued the hearing on this Motion. There is no melting ice cube here, and no need to rush rather than afford the Insurers and other objectors due process and a fair opportunity to take reasonable discovery.

Accordingly, if the Court is inclined to approve the disclosure statement notwithstanding all of the objections asserted the Insurers, the Insurers propose the following schedule, which assumes that the disclosure statement will be approved on or within days after June 4:

| Event | Date |
|---|---|
| Disclosure Statement Hearing | June 4, 2025 at 10:00 a.m. (prevailing Eastern Time) |
| Fact Discovery Deadline | November 7, 2025 (or a minimum of five months following approval of the DS) |
| Expert Discovery Deadline | December 23, 2025 (or a minimum of six weeks following the fact discovery deadline) |
| Confirmation Objection Deadline | January 23, 2026 (or a minimum of three weeks following the expert discovery deadline adjusted, in this case, for the Christmas and New Year's holiday seasons) |
| Confirmation Brief, Proposed Confirmation Order and Confirmation Objection Reply Filing Deadline | February 13, 2026 |
| Proposed Confirmation Hearing | March 2, 2026 or as soon thereafter as the Court is available |

## Conclusion

For the reasons stated above, the Court should deny the Motion, and decline to approve both the Solicitation Procedures and Debtor's proposed confirmation schedule, unless the changes requested above are first made.

Date: May 19, 2025

Respectfully submitted,

By: _/s/ Richard W. Riley_
Richard W. Riley (DE No. 4052)
PASHMAN STEIN WALDER HAYDEN P.C.
824 North Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 327-6790
Email: rriley@pashmanstein.com

Mark D. Plevin
PLEVIN & TURNER LLP
580 California Street, Suite 1200
San Francisco, California 94104
Tel: 202-580-6640
Email: mplevin@plevinturner.com

Miranda H. Turner
PLEVIN & TURNER LLP
1701 Pennsylvania Ave., N.W., Suite 200
Washington, DC 20006
Telephone: (202) 580-6640
Email: mturner@plevinturner.com

Laurie A. Kamaiko
SAUL EWING LLP
1270 Avenue of the Americas, Suite 2800
New York, New York 10020
Telephone: (212) 980-7200
Email: laurie.kamaiko@saul.com

_Attorneys for American Guarantee and Liability Insurance_
_Company and Zurich American Insurance Company_


Carmella P. Keener (DE No. 2810)
COOCH AND TAYLOR, P.A.
The Brandywine Building
1000 N. West Street, Suite 1500
Wilmington, Delaware  19801
Telephone: (302) 984-3816
ckeener@coochtaylor.com

Megan B. Gramke (*pro hac vice*)
UB GREENSFELDER LLP
312 Walnut Street, Suite 1400
Cincinnati, Ohio 45202
Telephone: (513) 698-5146
mgramke@ubglaw.com

Emmanuel I. Sanders (*pro hac vice*)
UB GREENSFELDER LLP
1660 West 2nd Street, Suite 1100
Cleveland, Ohio  44113
Telephone: (216) 583-7228
esanders@ubglaw.com


*Attorneys for Arch Insurance Company and Arch Specialty Insurance Company*

John D. LaBarbera (p*ro hac vice*)
Karen Andersen Moran (*pro hac vice*)
KENNEDYS CMK LLP
30 South Wacker Drive, Suite 3650
Chicago, Illinois 60606
Telephone: 312-800-5000
John.LaBarbera@kennedyslaw.com

Marc Casarino, Esq.
KENNEDYS CMK LLP
222 Delaware Ave. Suite 710
Wilmington, Delaware 19801
Telephone: 302-308-6647
Marc.casarino@kennedyslaw.com


*Attorneys for Westport Insurance Company, as successor in interest to Puritan Insurance Company*


STAMOULIS & WEINBLATT LLC
Stamatios Stamoulis (No. 4606)
800 N. West Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 999-1540
stamoulis@swdelaw.com

O'MELVENY & MYERS LLP
Andrew Frackman (*pro hac vice*)
Tancred Schiavoni (*pro hac vice*)
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
Telephone: (212) 326-2000
afrackman@omm.com
tschiavoni@omm.com

*Attorneys for ACE American Insurance Company, Century Indemnity Company (as successor to CIGNA Specialty Insurance Company f/k/a California Union Insurance Company; and as successor to CCI Insurance Company, as successor to Insurance Company of North America), Federal Insurance Company, and Pacific Employers Insurance Company*


William E. Chipman, Jr. (No. 3818)
CHIPMAN BROWN CICERO & COLE LLP
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:   (302) 295-0191
chipman@chipmanbrown.com

WILLKIE FARR & GALLAGHER LLP
Christopher J. St. Jeanos (*pro hac vice*)
Simone Marton (*pro hac vice*)
Yara Kass-Gergi (*pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:   (212) 728-8000
cstjeanos@willkie.com
smarton@willkie.com
YKass-Gergi@willkie.com

Joseph G. Davis (*pro hac vice*)
1875 K Street, N.W.
Washington, D.C. 20006
Telephone:   (202) 303-1000
jdavis@willkie.com

Jennifer Hardy (*pro hac vice*)
600 Travis Street
Houston, Texas 77002
Telephone:   (713) 510-1766
jhardy2@willkie.com

*Attorneys for National Union Fire Insurance Company of Pittsburgh, Pa. and Lexington Insurance Company*


KENNEDYS CMK LLP
Marc Casarino, Esq.
Jillian G. Dennehy, Esq. (*pro hac vice*)
222 Delaware Avenue, Suite 710
Wilmington, Delaware 19801
Telephone: (302) 308-6647
Marc.casarino@kennedyslaw.com
jillian.dennehy@kennedyslaw.com

IFRAH LAW PLLC
George R. Calhoun, Esq. (*pro hac vice* forthcoming)
1717 Pennsylvania Avenue, NW, Suite 650
Washington, DC 20006
Telephone: 202-524-4147
george@ifrahlaw.com

*Attorneys for TIG Insurance Company (as successor to Gibraltar Casualty Company), Evanston Insurance Company*


LANDIS RATH & COBB LLP
Kimberly A. Brown (No. 5138)
Joshua B. Brooks (No. 6765)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
brown@lrclaw.com
brooks@lrclaw.com

FROST BROWN TODD LLP
David W. Walulik (*pro hac vice*)
Great American Tower
301 East Fourth Street, Suite 3300
Cincinnati, Ohio 45202
Telephone: (513) 651-6877
dwalulik@fbtlaw.com

*Attorneys for Admiral Insurance Company*


Goldstein & McClintock, LLLP
Maria Aprile Sawczuk (No. 3320)
501 Silverside Road, Suite 65
Wilmington, DE 19809
Telephone: (302) 444-6710
marias@goldmclaw.com

David Christian, Esq. (*pro hac vice*)
David Christian Attorneys LLC
105 W. Madison St., Suite 2300
Chicago, IL 60602
Telephone: (312) 282-5282
dchristian@dca.law

*Attorneys for Wellfleet New York Insurance Company
(formerly known as Atlanta International Insurance
Company), Columbia Casualty Company, The Continental
Insurance Company (on its own behalf and as successor-in-
interest to Harbor Insurance Company and London
Guarantee and Accident Company of New York) and
Government Employees Insurance Company (GEICO)*


CHIPMAN BROWN CICERO & COLE LLP
Joseph B. Cicero (No. 4388)
Mark L. Desgrosseilliers (No. 4083)
1313 North Market Street, Suite 4500
Wilmington, Delaware 19801
Telephone: (302) 295-0191
cicero@chipmanbrown.com
desgross@chipmanbrown.com

Parker, Hudson, Rainer & Dobbs LLP
Harris B. Winsberg (*pro hac vice*)
Matthew M. Weiss (*pro hac vice*)
303 Peachtree Street, Suite 3600
Atlanta, GA 30308
Telephone: (404) 523-5300
hwinsberg@phrd.com
mweiss@phrd.com

Stradley Ronon L.L.P.
Paul W. Kalish (*pro hac vice*)
Marc E. Haas (*pro hac vice*)
Deidre G. Johnson (*pro hac vice*)
2000 K. Street, N.W., Suite 3600
Washington, D.C. 20006
Telephone: (202) 822-9611
pkalish@stradley.com
mhaas@stradley.com
djohnson@stradley.com

*Attorneys for RSA Insurance Group Limited*

SMITH KATZENSTEIN & JENKINS LLP
Robert J. Katzenstein (# 378)
Julie O'Dell (# 6191)
1000 West Street, Suite 1501
Wilmington, DE 19801
Telephone: (302) 652-8400
rjk@skjlaw.com
jmo@skjlaw.com

*Attorneys for Allstate Insurance Company, solely as successor in interest to Northbrook Excess & Surplus Insurance Company, formerly known as Northbrook Insurance Company*

WHITE AND WILLIAMS LLP
Timothy S. Martin (DE No. 4578)
Michael Ingrassia (DE No. 7068)
Courthouse Square
600 N. King Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 467-4509
martint@whiteandwilliams.com
ingrassiam@whiteandwilliams.com

*Attorneys for Coaction Specialty Management Company,
Inc., as managing agent and attorney-in-fact for Employers
Mutual Casualty Company to the extent of its participation
in the Mutual Marine Office, inaccurately captioned as
Employers Mutual Casualty Company*


Kelly A. Green
Smith Katzenstein Jenkins LLP
Brandywine Building
1000 N. West Street, Suite 150
Wilmington, DE 19899
Telephone: (302) 652-8400
kag@skjlaw.com

CLYDE & CO US LLP
Paul R. Koepff (*pro hac vice*)
The Chrysler Building
405 Lexington Avenue, 16th Floor
New York, NY 10174

Fred L. Alvarez
Walker Wilcox Matousek LLP
One North Franklin Street, Suite 3200
Chicago, Illinois 60606
Telephone: (312) 244-6700
falvarez@walkerwilcox.com

Tony L. Draper
Walker Wilcox Matousek LLP
1001 McKinney Street, Suite 2000
Houston, Texas 77002
Telephone: (713) 343-6556
tdraper@walkerwilcox.com

*Attorneys for Endurance American Specialty Insurance Company*

LEWIS BRISBOIS BISGAARD & SMITH LLP
Aimee M. Czachorowski (No. 4670)
500 Delaware Ave., Suite 700
Wilmington, Delaware 19801
Telephone: (302) 985-6000
Aimee.Czachorowski@lewisbrisbois.com

Of Counsel:
SALLEY, HITE, MERCER & RESOR LLC
John W. Hite IIII (*pro hac vice*)
One Canal Place
365 Canal Street, Suite 1710
New Orleans, LA 70130
Telephone: (504) 566-8800
jhite@shmrlaw.com

*Attorneys for United National Insurance Company*

Aaron E. Moore (Del. ID 6739)
MARSHALL DENNEHEY, P.C.
1007 N. Orange Street, Suite 600
P.O. Box 8888
Wilmington, Delaware  19899-8888
Telephone: (302) 552-4300
AEMoore@MDWCG.com


Sarah D. Gordon (*pro hac vice*)
Johanna Dennehy (*pro hac vice*)
Ansley Seay (*pro hac vice*)
STEPTOE LLP
1330 Connecticut Ave. NW
Washington, D.C. 20036
Telephone: (202) 429-3000
sgordon@steptoe.com
jdennehy@steptoe.com
aseay@steptoe.com

Joshua D. Weinberg (*pro hac vice*)
Annette P. Rolain (*pro hac vice*)
James Burke (*pro hac vice*)
RUGGERI PARKS WEINBERG LLP
1875 K Street NW, Suite 800
Washington, D.C.  20006
Telephone: (202) 984-1400
jweinberg@ruggerilaw.com
arolain@ruggerilaw.com
jburke@ruggerilaw.com

*Attorneys for First State Insurance Company, Hartford Accident and Indemnity Company, and Twin City Fire Insurance Company*


Bruce W. McCullough (Del. ID 3112)
BODELL BOVÉ
1225 N. King Street, Suite 1000
P.O. Box 397
Wilmington, Delaware  19899-0397
Telephone: (302) 655-6749
bmccullough@bodellbove.com

Joshua D. Weinberg (*pro hac vice*)
Annette P. Rolain (*pro hac vice*)
James Burke (*pro hac vice*)
RUGGERI PARKS WEINBERG LLP
1875 K Street NW, Suite 800
Washington, D.C.  20006
Telephone: (202) 984-1400
jweinberg@ruggerilaw.com
arolain@ruggerilaw.com
jburke@ruggerilaw.com

*Attorneys for Great American Assurance Company and Great American Insurance Company of New York*

BAYARD P.A.
Ericka F. Johnson, Esq. (No. 5024)
Justin C. Barrett, Esq. (No. 6485)
600 North King Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 429-4274
ejohnson@bayardlaw.com
jbarrett@bayardlaw.com

Littleton Joyce Ughetta & Kelly LLP
Robert L. Joyce, Esq. (*pro hac vice*)
4 Manhattanville Road, Suite 202
Purchase, New York 10577
Telephone: (914) 417-3400
Robert.Joyce@littletonjoyce.com

*Counsel to Defendant Landmark American Insurance
Company*

Louis J. Rizzo, Jr. (#3374)
REGER RIZZO & DARNALL LLP
1521 Concord Pike, Suite 305
Brandywine Plaza West
Wilmington, Delaware 19803
Telephone: (302) 477-7100
lrizzo@regerlaw.com

Karen C. Bifferato (#3279)
CONNOLLY GALLAGHER LLP
1201 North Market Street, 20th Floor
Wilmington, Delaware 19801
Telephone: (302) 757-7300
kbifferato@connollygallagher.com

Stephen V. Gimigliano (*pro hac vice*)
John Maloney (*pro hac vice*)
Christopher K. Kim (*pro hac vice*)
GIMIGLIANO MAURIELLO & MALONEY,
P.A.
163 Madison Avenue, Suite 500
P.O. Box 1449
Morristown, New Jersey 07962-1449
Telephone: (973) 946-8360
sgimigliano@lawgmm.com
jmaloney@lawgmm.com
ckim@lawgmm.com

*Attorneys for Travelers Casualty and Surety Company
(f/k/a The Aetna Casualty and Surety Company)*