## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |

## INSURERS'[2] MOTION TO COMPEL DOCUMENTS WRONGFULLY WITHHELD ON THE BASIS OF MEDIATION PRIVILEGE

STAMOULIS & WEINBLATT LLC
800 N. West Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 999-1540
Facsimile: (302) 762-1688

O'MELVENY & MYERS LLP
1301 Avenue of the Americas, Suite 1700
New York, New York 10019
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

*Counsel for ACE American Insurance Company, Century Indemnity Company (as successor to CIGNA Specialty Insurance Company f/k/a California Union Insurance Company; and as successor to CCI Insurance Company, as successor to Insurance Company of North America), Federal Insurance Company, and Pacific Employers Insurance Company*

---

[1]  The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282.  The Debtor's corporate headquarters is located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]  The "Insurers" include the insurance companies listed in the signature block below.

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS .................................................................................................... 3

ARGUMENT.......................................................................................................................... 5

I.     THE PLAN PROPONENTS WAIVED THE MEDIATION PRIVILEGE BY
PUTTING THE MEDIATION AT ISSUE......................................................................... 5

II.    THE DEBTOR'S APPLICATION OF THE MEDIATION PRIVILEGE IS
OVERBROAD, EVEN IF IT HAD NOT WAIVED THE PRIVILEGE. ........................ 9

CONCLUSION.................................................................................................................... 10

FED. R. CIV. P. 37(A)(1) CERTIFICATION.......................................................................... 10

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*In re AE Liquidation, Inc.*,
  No. 08-13031, 2012 WL 6139950 (Bankr. D. Del. Dec. 11, 2012)..........................................9

*In re Am. Cap. Equip., LLC*,
  688 F.3d 145, 159 (3d Cir. 2012).........................................................................................8

*In re Boy Scouts of Am. & Delaware BSA, LLC*,
  No. 20-10343, D.I. 5803 (Bankr. D. Del. Jul. 27, 2021) .......................................................3, 9

*In re Boy Scouts of Am. & Delaware BSA, LLC*,
  No. 20-10343, D.I. 6798 (Bankr. D. Del. Oct. 25, 2021) .....................................................6, 8

*CP Kelco U.S. Inc. v. Pharmacia Corp.*,
  213 F.R.D. 176 (D. Del. 2003) ..........................................................................................6, 8

*G. Angel, Ltd. v. Camper & Nicholsons USA, Inc.*,
  2009 WL 10666975 (S.D. Fla. May 22, 2009) ......................................................................6

*In re J&M Sales Inc.*,
  644 B.R. 440 (Bankr. D. Del. 2022) .....................................................................................9

*Kolesar v. Home Depot*,
  No. CV 07-560, 2008 WL 11383328 (D.N.J. July 7, 2008)...................................................8

*In re Imerys Talc Am., Inc.*,
  No. 19-10289, D.I. 7340 (Bankr. D. Del. Apr. 2, 2025).........................................................3

*Princeton Digital Image Corp. v. Off. Depot Inc.*,
  No. 13-239-LPS, 2017 WL 3264068 (D. Del. Aug. 1, 2017)..................................................9

*In re Roman Cath. Diocese of Syracuse*,
  665 B.R. 866 (Bankr. N.D.N.Y. 2024) .................................................................................7

*In re Tribune Co.*,
  2011 WL 386827 (Bankr. D. Del. Feb. 3, 2011) ....................................................................7

*In re Unitrin, Inc. Shareholders Litig.*,
  Civ. A. 13656, 1994 WL 507859 (Del. Ch. Ct. Sept. 7, 1994)..............................................6

*In re Welded Constr., L.P.*,
  No. 18-12378, 2021 WL 537406 (Bankr. D. Del. Feb. 15, 2021) ...........................................6

**Rules**

Del. Bankr. L.R. 9019-5(d) ...........................................................................................................8, 9

Fed. R. Bankr. P. 7026 ..................................................................................................................5

Fed. R. Bankr. P. 9014..................................................................................................................5

Fed. R. Civ. P. 26(b) ....................................................................................................................5

## PRELIMINARY STATEMENT

The undersigned Insurers move to compel the production of documents over which KFI Wind-Down Corp. (the "Debtor") has improperly claimed privilege.  To the extent any privilege ever attached, the Plan Proponents have waived it.

In response to multiple discovery requests, the Debtor has consistently and repeatedly refused to produce responsive and relevant documents on the basis of mediation privilege.  But that objection has been waived.  At the June 4, 2024, Disclosure Statement Hearing (the "Hearing"), the Plan Proponents defended the Plan as having been proposed in good faith on the ground that it was the fruit of an extended mediation.  The Debtor repeatedly responded to criticisms of the proposed Plan, including the consideration paid by Carrier Global Corporation ("Carrier") in exchange for releases from the Debtor and the remarkable sharing of insurance recoveries, by invoking the asserted bona fides of the mediation.

- "Even as I said this morning, if both of those things are successfully approved, Carrier faces claims and Carrier was not willing to surrender all of its insurance rights and all of the value of those policies in a settlement.  That was a negotiated term, to where we got to. **It was negotiated under the auspices of our mediators in mediation**."  D.I. 2220 at 229:5–11 (Mr. Glueckstein) (emphasis added).

- "Today, we are here for the Court to consider the debtors' motion seeking approval of the disclosure statement, solicitation procedures, and to set a confirmation hearing date.  As Mr. Abbott alluded to, this hearing has been a long time in the making, over the course of about two years, in fact, including **almost a year's worth of court-ordered mediation**."  *Id.* at 8:5–11 (Mr. Glueckstein) (emphasis added).

- "The process to get to this point has been long and tedious, with much of the parties' work occurring outside of the courtroom.  It was important to KFI that the voices of its creditors be heard with respect to any settlement of estate claims against Carrier or others.  A lot of work has gone into this plan and disclosure statement by a multitude of parties.  **Extensive negotiations amongst key stakeholders and the tireless efforts of our mediators, Judge Drain and Judge Phillips, to be at the point where we can stand here today** with a plan that already is supported by almost virtually all of the debtors' major stakeholders, including the official committee, the PEC, the co-leads in the MDL, the Ad Hoc Committee of States, and Carrier."  *Id.* at 17:3–16 (Mr. Glueckstein) (emphasis added).

- "**The mediation process that went on for the better part of a year** was about what settlement would be appropriate to resolve those claims." *Id.* at 228:11–13 (Mr. Glueckstein) (emphasis added).

Carrier's counsel followed suit:

- "Second, Mr. Glueckstein touched on it, **the deal before Your Honor was the product of about a years-long mediation**. I didn't come into this case until way into that process, thankfully, but nonetheless I've almost been around for a year now, I guess, at this point. **Two Federal Judges, not one, two Federal Judges served as our mediators.** So, again, chutzpah. **For these guys to stand up and say that there was some collusion or some improper conduct when this entire construct was developed under the auspices of a court-ordered mediation overseen by two Federal Judges, that takes chutzpah.** So let's just put that in perspective for the time being." *Id.* at 246:5–16 (Mr. Ziman) (emphasis added).

As a consequence, to the extent that any mediation privilege existed, it has been waived. The Court recognized this after hearing these attempts to use the mediation to justify the insurance kickback to Carrier. The Court observed that "there's going to be discovery on" whether "the settlement [is] appropriate," which undoubtedly covers documents that shed light on the mediation. *Id.* at 80:7–24. For example, the Court made clear the Debtor is "going to have to" produce documents concerning the Debtor's analysis of "Carrier's actual or potential liabilities for direct claims or independent [AFFF] causes of action." *Id.* at 79:1–16. Similarly, in response to the Debtor's argument that "any dispute about the treatment of [certain insurance] policies[3] goes to the reasonableness of the settlement and is a confirmation issue," the Court stated: "everyone should recognize that that just wholly opens the door to discovery on that issue." *Id.* at 97:2–11.

Notwithstanding its reliance on the mediation to defend the good faith of the proposed Plan, and notwithstanding the guidance from the Court at the Hearing, the Debtor still has refused to

---

[3] The policies referred to here are the captive and fronted insurance policies that were issued by UT Insurance (Vermont) Inc., among other insurers, to United Technologies Corporation, which were considered during the negotiations of the proposed Plan. *See* D.I. 2206-1 at 29–28.

produce responsive documents on the ground of mediation privilege.[4]  Accordingly, the Court should order the Debtor to produce all responsive documents which it is withholding on the basis of mediation privilege.

## STATEMENT OF FACTS

The Debtor has objected to 42 of 60 Plan-related requests for production of documents on the basis of various privileges, including mediation privilege, attorney-client privilege, work product privilege, and common interest privilege.  Haberkorn Decl., Exs. A, B, C.  These requests seek, for example:

**Second Set of Plan-Related Requests for Production**

- Request No. 1: Documents or Communications exchanged with Carrier Global Corporation and/or UTC (now RTX after UTC's merger with Raytheon) in connection with the negotiations that led to the Primary AFFF Settlement Trust Agreement, the TDPs and/or the Plan.

- Request No. 15:  Documents or Communications concerning the Debtor's evaluation of its tort liability.

- Request No. 17:  Documents or Communications concerning the TDPs, including, without limitation, those (a) relating to the negotiation of the TDPs with other Plan Proponents; (b) concerning the operation and application of the TDPs to claims, including to ensure payment of only valid claims; (c) concerning the application of SIRs or deductibles to claims under the TDPs; and (d) concerning the methodology to be used to determine proper compensation of claims.

---

[4]  This Court has previously expressed a desire for parties to bring these kinds of mediation privilege issues before the Court sooner.  *See In re Boy Scouts*, No. 20-10343, D.I. 5803 at 24:1–7 (Bankr. D. Del. Jul. 27, 2021) (Silverstein, J.) (attached as Ex. I to Haberkorn Decl.) ("[I]f this issue of mediation privilege and withholding of documents was evident on July 8th, given the schedule that we had, it really should have been brought to me sooner."); *In re Imerys Talc Am., Inc.*, No. 19-10289, D.I. 7340 at 90:1–4, 91:20–92:13 (Bankr. D. Del. Apr. 2, 2025) (Silverstein, J.) (attached as Ex. K to Haberkorn Decl.) (debtors' counsel argued it was incumbent upon the objecting insurers to bring the mediation privilege issues to the court through discovery motions sooner, something that was not possible in the *Imerys* and *Cyprus* cases within the appliable confirmation schedule).  In view of this, the Insurers are filing this Motion now in the hopes of avoiding another situation where a confirmation schedule does not otherwise provide sufficient time to do so later.

- Request No. 18:  Documents or Communications concerning the Allocation of Distribution Value from Settlement Trust Assets in Section 5.5.4 of the Plan.

- Request No. 25:  Documents or Communications concerning the obligations to be assumed by the Trust under the various Insurance Policies.

- Request No. 27:  Documents or Communications concerning the contributions to the Trust by the Debtor, Carrier Global Corporation, and any other Protected Party under the Plan, including, without limitation, negotiations over such contributions.

**Third Set of Plan-Related Requests for Production**

- Request No. 1: All Documents concerning the Estate Claims Settlement and the Released Claims that are the subject of such settlement[.]

- Request No. 11:  All Documents concerning the Contribution Agreement, the negotiation thereof, and the Debtor's decision to enter into such agreement.

- Request No. 14:  All Documents concerning the Insurance Assignment by Carrier, including, without limitation, Documents sufficient to identify, or containing or reflecting Analysis of the value of, all rights, claims, benefits, or Causes of Action to be transferred by Carrier to the Primary AFFF Settlement Trust through the Insurance Assignment.

- Request No. 17:  The most recent coverage chart, or other similar Analysis, reflecting the insurers, policy numbers, policy periods, and limits of liability for Insurance Policies under which the Debtor contends it has rights.

- Request No. 19:  All Documents concerning the Insurance Cooperation Agreement, the negotiation thereof, and the Debtor's decision to enter into such agreement, including, without limitation, Documents concerning Analysis of the value of such agreement to the Debtor, its Estate, or the Primary AFFF Settlement Trust.

- Request No. 21: All Documents concerning the Debtor's Analysis of Carrier's actual or potential liability for Direct Claims or Independent AFFF Causes of Action.

- Request No. 22: All Documents concerning the Debtor's Analysis of Carrier's actual or potential liability for claims or Causes of Action unrelated to AFFF for which Carrier has asserted or could assert rights or claims to coverage under Insurance Policies.

Haberkorn Decl., Ex. B at 6–7, 17–20, 24–26; Ex. C at 6–7, 14–17, 19–23.[5]  For three of the requests listed above—Request No. 15 of the Second Set of Plan-Related Requests for Production

---

[5]    The capitalized terms are defined in the Debtor's Fourth Amended Plan of Liquidation Under

4

(documents relating to the Debtor's evaluation of its tort liability) and Request Nos. 21 and 22 of the Third Set of Plan-Related Requests for Production (documents relating to the Debtor's analysis of Carrier's liability)—the Debtor contends that it is either unaware of any documents responsive to the request or believe that no non-privileged responsive documents exist.  Haberkorn Decl., Ex. D at 4–5; Ex. E at 3.

With respect to mediation-related documents, the Debtor purports to have agreed to produce all "Documents that the Debtor received from or provided to a third party participating in the Mediation that were not created exclusively for use in the Mediation."  Haberkorn Decl., Ex. E at 3; Ex. C at 10 (Request No. 4 of the Third Set of RFPs).  But the Debtor continues to assert the mediation privilege over all responsive documents and communications that were made or submitted to or in the presence of mediators, including but not limited to: (i) mediation statements submitted to the mediators; (ii) presentations made to the mediators; (iii) drafts, term sheets, or any other non-final version of agreements exchanged between the mediating parties in connection with the mediation; (iv) communications to or made in the presence of the mediators; and (v) any other documents created for use in the mediation.

## ARGUMENT

### I.    THE PLAN PROPONENTS WAIVED THE MEDIATION PRIVILEGE BY PUTTING THE MEDIATION AT ISSUE.

There can be no serious question that the documents sought are relevant to issues in dispute since they relate to the process leading to the structure and terms of the proposed Plan.  The Debtor has put them in issue.  And therefore, absent proper application of a privilege, they must be produced.  *See* Fed. R. Bankr. P. 7026, 9014; Fed. R. Civ. P. 26(b).  This includes all documents

---

Chapter 11 of the Bankruptcy Code.  D.I. 2191-1.

relied upon during the mediation, all mediation statements and presentations made to the mediators, and all documents or communications exchanged in the presence of the mediators.

Delaware courts have consistently recognized that a party cannot place a matter "at issue" and shield information relating to that matter from discovery. *See, e.g., CP Kelco U.S. Inc. v. Pharmacia Corp.*, 213 F.R.D. 176, 179 (D. Del. 2003) ("It would be manifestly unfair to allow a party to use the privilege to shield information which it deliberately chose to use offensively. . . . Hence the truism that a privilege cannot be used as both a shield and a sword."); *In re Welded Constr., L.P.*, No. 18-12378, 2021 WL 537406, at * 6 (Bankr. D. Del. Feb. 15, 2021) ("Defendants cannot use OGCS's report as both a sword and a shield – Defendants cannot place the Audit at issue and claim that the Audit 'revealed wrongdoing' and then not give Welded the requisite information to test the validity of those statements."); *see also In re Unitrin, Inc. Shareholders Litig.*, Civ. A. 13656, 1994 WL 507859, at *3 (Del. Ch. Ct. Sept. 7, 1994) ("Defendants have introduced into the record the actual advice given to them on the antitrust issue, presumably to bolster their argument that the board acted on an informed basis. . . . [I]t would be unfair to allow defendants to select those parts of its communications with counsel that can be used in these proceedings, while at the same time invoking the attorney-client privilege. . . ."). "Having chosen to use the information offensively, any privilege [a party] might have claimed to defend the information from disclosure is . . . waived." *CP Kelco*, 213 F.R.D at 179.

In the bankruptcy context, waiver occurs when the holder of the privilege relies on the mediation itself to meet the "good faith" standard under 11 U.S.C. § 1129(a)(3). *See, e.g., G. Angel, Ltd. v. Camper & Nicholsons USA, Inc.*, 2009 WL 10666975, at *3 (S.D. Fla. May 22, 2009) ("As important as the mediation privilege is, however, it may be waived. For example, a waiver occurs when the holder of the privilege asserts a claim that in fairness requires an

6

examination of protected communication." (internal quotation marks and citations omitted)); *In re Roman Cath. Diocese of Syracuse*, 665 B.R. 866, 887 (Bankr. N.D.N.Y. 2024) ("[T]he Plan Proponents shall either produce the requested documents and information or be precluded from offering into evidence the *bona fides* of the mediation."); *In re Tribune Co.*, 2011 WL 386827, at *7–8 (Bankr. D. Del. Feb. 3, 2011) (allowing discovery of certain mediation materials under the facts and circumstances of that case where opposing party put the mediation at issue by arguing that the proposed settlement was fair and that the Debtors and Committee acted in good faith). In *In re Boy Scouts of Am. & Delaware BSA, LLC*, this Court held that communications regarding the TDPs were discoverable where "the fact of mediation may be the primary evidence debtors will induce to meet the good faith standard." No. 20-10343, D.I. 6798 (Bankr. D. Del. Oct. 25, 2021) (Silverstein, J.) at 13:13–18 (attached as Ex. J to Haberkorn Decl.). Specifically, the debtors planned to "put into evidence the fact of mediation itself, the mediation order, the identity of the mediating parties, the identity of the mediators, the number of mediation sessions, and the dates of the sessions" to "imbue the process [by which the Chapter 11 plan was proposed] with good faith." *Id.* at 7:7–17. This Court reasoned that "[i]t cannot be the case that if a party is relying on the very fact of mediation to meet its standard of proof, that discovery is prohibited regarding the bona fides of the mediation." *Id.* at 13:25–14:3.

So, too, here. *See supra* pp. 1–2. Notwithstanding the events at the Hearing, the Debtor still is withholding documents on the ground of mediation privilege. Haberkorn Decl., Ex. D[6] at

---

[6] The Debtor argues in its June 24, 2025 letter that, during a June 18, 2025 meet and confer, the Certain Insurers "stated unequivocally that the insurers are not seeking documents provided to or communications made in the presence of the mediators." Haberkorn Decl., Ex. D. at 2. The Insurers disagree that any such statement was made. Regardless, it has no binding effect. Nor does something said during a meet and confer by one party bind other co-parties to a position. To the extent there was any confusion, two days later, in the Certain Insurers' June 20, 2025 letter memorializing the meet and confer, the Certain Insurers clearly told the Debtor that the

2–4.  Its reliance on Local Rule 9019-5(d) is misplaced.  That Rule provides that "the mediator

and the participants in mediation are prohibited from divulging, outside of the mediation, any oral

or written information disclosed by the parties or witnesses to or in the presence of a mediator, or

between the parties during any mediation conference." Del. Bankr. L.R. 9019-5(d)(ii).  But that

has no applicability here.  The Rule is designed to prohibit one party to a mediation from using

another party's statements as admissions.  Without such rule, no party would be forthright during

the mediation process, which defeats the premise of mediation.  *See* Del. Bankr. L.R. 9019-5(d)

("Confidentiality is necessary to the mediation process. . . .").  It is not designed to permit a litigant,

here the Debtor, from using the privilege as a sword, as the Debtor and Carrier seek to do here.

*CP Kelco*, 213 F.R.D. at 179; *In re Boy Scouts*, No. 20-10343, D.I. 6798 at 13:25–14:3.

        The Debtor cannot have it both ways—it cannot rely on privilege to cloak critical aspects

of the mediation from disclosure while relying on the mediation to show good faith.[7]  Any

---

parties merely "discussed the application of the mediation privilege over documents that were
disclosed to the mediator or in the presence of the mediator, including mediation presentations
or communications made during mediation. For the avoidance of doubt, and as stated in our
letter, [Certain Insurers] maintain that [the Debtor] waived the mediation privilege for such
documents, and any other documents in connection with the mediation, by placing the very
fact of the mediation at issue to support that the Plan was drafted and negotiated in good faith."
Haberkorn Decl., Ex. F at 1–2.

[7]    The Debtor's attempt to shield documents relating to the mediation also ignores the Debtor's
obligations as an insured to provide information to its own insurers under the cooperation
clause of its insurance policies. *See, e.g.,* D.I. 2145-1 (Federal Insurance Company Policy No.
79861188) at 10 ("You and any other involved insured must . . . cooperate with us and any
other insurers in the investigation or settlement of the claims"); *see also In re Am. Cap. Equip.,
LLC*, 688 F.3d 145, 159 (3d Cir. 2012) (recognizing an insured's duty to cooperate in the
bankruptcy context).  Under the common interest among the insurer and the insured and the
insured's duty to cooperate, the Debtor should at the very least disclose its own mediation
statement to its insurers.  The Debtor should not be permitted to avoid disclosing to its insurers
its own statements and communications as to how insurance recoveries would be used to fund
the Trust and sweeten the pot for Carrier merely because those documents were disclosed to
or in the presence of mediators. *See, e.g., Kolesar v. Home Depot*, No. CV 07-560, 2008 WL
11383328, at *4 n.5 (D.N.J. July 7, 2008) ("Cooperation clauses exist so that the insurance
company can control the litigation and settlement of claims 'to prevent collusion between the

privilege, including the mediation privilege, is intended to serve as a shield, not a sword. *Princeton Digital Image Corp. v. Off. Depot Inc.*, No. 13-239-LPS, 2017 WL 3264068, at *2 (D. Del. Aug. 1, 2017) (a party "cannot use the privilege as a sword rather than a shield" (internal quotation marks omitted)).   The Insurers should be afforded a reasonable opportunity to evaluate whether the mediation parties acted in good faith, especially provided that the Insurers were excluded from the negotiations of the proposed Plan and TDPs.   D.I. 2156 at 6; *see also* D.I. 2220 at 259:25–260:9 ("Well, what is a plan?   A plan is a compromise.   A compromise among who?   It's a compromise between the debtor, the UCC, the PEC, the ad hoc committee, the FCR, and Carrier. Guess who's not part of that?   The insurers.").

## II.     THE DEBTOR'S APPLICATION OF THE MEDIATION PRIVILEGE IS OVERBROAD, EVEN IF IT HAD NOT WAIVED THE PRIVILEGE.

Furthermore, even if the Debtor had not waived the mediation privilege, nothing in Local Rule 9019-5 supports the Debtor's overbroad invocation of privilege to immunize from production relevant material merely because it was included in some mediation-related communication.   Del. Bankr. L.R. 9019-5(d)(iv) ("Information otherwise discoverable or admissible in evidence does not become exempt from discovery, or inadmissible in evidence, merely by being used by a party in the mediation.").   *See also In re Boy Scouts*, No. 20-10343, D.I. 5803 at 24:16–23 ("[M]ediation doesn't clo[a]k discovery and information that is, otherwise, discoverable just because you also put it into the mediation process or communicated information you have to the mediator or other parties."); *In re J&M Sales Inc.*, 644 B.R. 440, 444 n.10 (Bankr. D. Del. 2022) ("[D]ocuments that are otherwise discoverable do not become undiscoverable simply because they were used during a mediation.").   "Parties to litigation are entitled to 'broad and liberal discovery.'"   *In re AE*

---

insured and the injured.'").

*Liquidation, Inc.*, No. 08-13031, 2012 WL 6139950, at *2 (Bankr. D. Del. Dec. 11, 2012) (quoting *Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999)).   The Delaware Bankruptcy Court has recognized that Local Rule 9019-5 alone "provides no basis for the Court to grant a protective order related to the mediation, nor does it protect any documents from discovery. . . . [E]vidence is still discoverable if it may lead to other relevant, admissible evidence." *Id.*

The documents that the Debtor is withholding here include documents that the mediation parties considered at the time of the mediation.  *See supra* pp. 3-4.  This Court has held that materials a debtor considered in connection with mediation and the decisions the debtor reached from such materials should all be "fair game." *In re Boy Scouts*, No. 20-10343, D.I. 5803 at 25:8–10 ("What did the debtor consider?  When did they consider it?  When did they decide?  What did they not consider?  All fair game."); *see also id.* at 24:8–15 ("[I]t would seem to me that board resolutions with respect to the [Restructuring Support Agreement], presentations with respect to the board's consideration of the RSA, board minutes with respect to the resolution of the RSA are all fair game and not part of mediation privilege.").  Such documents should not be shielded from discovery simply because the mediation parties somehow used them during mediation.

## CONCLUSION

For the foregoing reasons, pursuant to Fed. R. Civ. P. 34 and 37(a)(3)(B)(iv), the Court should order the Debtor to produce the documents that it has withheld on the basis of mediation privilege, including responsive documents relied upon in the mediation, mediation statements submitted to the mediators, presentations made to the mediators, and communications with the mediators present.

## FED. R. CIV. P. 37(A)(1) CERTIFICATION

Pursuant to Civil Rule 37(a)(l), the undersigned hereby certifies that counsel representing the Insurers have met and conferred with counsel for the Debtor in good faith on these discovery

issues, including a meet and confer call on June 18, 2025.  Additional correspondence exchanged between the parties further evidence the Insurers' attempts to resolve these matters without burdening the Court.[8]

---

[8]    *See, e.g.,* Haberkorn Decl., Exs. D, E, F, G, H.

Dated:  July 3, 2025
          Wilmington, Delaware

Respectfully submitted,


By:  */s/ Stamatios Stamoulis*_____
          Stamatios Stamoulis

**STAMOULIS & WEINBLATT LLC**
Stamatios Stamoulis (No. 4606)
800 N. West Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 999-1540
Facsimile: (302) 762-1688
Email:  stamoulis@swdelaw.com

-and-

**O'MELVENY & MYERS LLP**
Andrew Frackman (*pro hac vice*)
Tancred Schiavoni (*pro hac vice*)
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email:  afrackman@omm.com
          tschiavoni@omm.com

*Counsel for ACE American Insurance Company,
Century Indemnity Company (as successor to
CIGNA Specialty Insurance Company f/k/a
California Union Insurance Company; and as
successor to CCI Insurance Company, as
successor to Insurance Company of North
America), Federal Insurance Company, and
Pacific Employers Insurance Company*

**WHITEFORD, TAYLOR & PRESTON LLC**

By:  */s/ Richard W. Riley*_____
Richard W. Riley (DE No. 4052)
Pashman Stein Walder Hayden, P.C.
824 North Market Street, Suite 800, Wilmington,
DE 19801
Telephone: (302) 327-6790
E-mail: rriley@pashmanstein.com

-and-

Laurie A. Kamaiko
Saul Ewing LLP
1270 Avenue of the Americas, Suite 2800
New York, NY 10020
Telephone: (212) 980-7202
E-mail: laurie.kamaiko@saul.com

-and-

Zachary W. Berk
Saul Ewing LLP
131 Dartmouth Street, Suite 501
Boston, MA 02116
Telephone: (617) 912-0927
E-mail: zachary.berk@saul.com

-and-

Mark Plevin
Plevin & Turner LLP
580 California Street, 12th Floor
San Francisco, California 94104
Telephone: (202) 580.6640
E-mail: mplevin@plevinturner.com

-and-

Miranda Turner
Plevin & Turner LLP
1701 Pennsylvania Ave., N.W., Suite 200
Washington, DC 20006
Telephone: (202) 580.6640
E-mail: mturner@plevinturner.com

*Attorneys for American Guarantee and Liability
Insurance Company and Zurich American
Insurance Company*

**LANDIS RATH & COBB LLP**

*/s/ Joshua B. Brooks*
Kimberly A. Brown (No. 5138)
Joshua B. Brooks (No. 6765)
919 Market Street, Suite 1800
Wilmington, Delaware 19801

Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email:   brown@lrclaw.com
        brooks@lrclaw.com

– and –

**FROST BROWN TODD LLP**
David W. Walulik (admitted *pro hac vice*)
Great American Tower
301 East Fourth Street, Suite 3300
Cincinnati, Ohio 45202
Telephone: (513) 651-6877
Facsimile: (513) 651-6981
Email:  dwalulik@fbtlaw.com

*Counsel to Admiral Insurance Company*

**KENNEDYS CMK LLP**

*/s/ John D. LaBarbera*
John D. LaBarbera (pro hac vice)
Karen Andersen Moran (pro hac vice)
30 South Wacker Drive, Suite 3650
Chicago, Illinois 60606
Telephone: 312-800-5000
John.LaBarbera@kennedyslaw.com

Marc Casarino, Esq.
222 Delaware Ave. Suite 710
Wilmington, Delaware 19801
Telephone: 302-308-6647
Marc.casarino@kennedyslaw.com

*Counsel for Westport Insurance Company (as
successor-in-interest to Puritan Insurance
Company)*

**SMITH, KATZENSTEIN & JENKINS LLP**

*/s/  Robert J. Katzenstein*
Robert J. Katzenstein, Esq. (# 378)
Julie O'Dell, Esq. (# 6191)
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400

rjk@skjlaw.com
jmo@skjlaw.com

*Counsel for Allstate Insurance Company, solely as successor in interest to Northbrook Excess & Surplus Insurance Company, formerly known as Northbrook Insurance Company*

**SMITH, KATZENSTEIN & JENKINS LLP**

*/s/ Kelly A. Green*
(No. 4095)
1000 North West Street, Suite 1501
Wilmington, Delaware 19899
(302) 652-8400
kag@skjlaw.com

*Of counsel:*

Paul R. Koepff
Kevin Haas
Ryan Westerfield
Mina Beshara
Clyde & Co LLP
405 Lexington Avenue, 16th Floor
New York, New York 10174
(212) 710-3900
paul.koepff@clydeco.us

Fred L. Alvarez
Walker Wilcox Matousek LLP
One North Franklin Street, Suite 3200
Chicago, Illinois 60606
(312) 244-6700
falvarez@walkerwilcox.com

Tony L. Draper
Walker Wilcox Matousek LLP
1001 McKinney Street, Suite 2000
Houston, Texas 77002
(713) 343-6556
tdraper@walkerwilcox.com

*Counsel for Endurance American Specialty Insurance Company*