# EXHIBIT A

**THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | |
| KFI WIND-DOWN CORP.,[1] | Chapter 11 |
| Debtor. | Case No. 23-10638 (LSS) |

**DEBTOR'S RESPONSES AND OBJECTIONS TO CERTAIN INSURERS' FIRST SET**
**OF PLAN-RELATED REQUESTS FOR PRODUCTION TO KIDDE-FENWAL, INC.**

Pursuant to rules 26 and 34 of the Federal Rules of Civil Procedure (the "Civil Rules"), made applicable by rules 7026, 7034, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and any other applicable laws, rules, or orders of the Bankruptcy Court (collectively, the "Applicable Rules"), KFI Wind-Down Corp. (the "Debtor"), by its undersigned attorneys, hereby submit these responses and objections (the "Responses") to Certain Insurers' (the "Insurers")[2] First Set of Plan-Related Requests for Production to Kidde-Fenwal, Inc. (the "Requests").

**PRELIMINARY STATEMENT**

Based on (i) counsel to certain of the Insurers' remarks at the December 16, 2024 status conference in the above-captioned proceeding, describing the Requests as seeking "eight items, that's it" (Dec. 16, 2024 Hr'g Tr. 31:23-25), (ii) the Bankruptcy Court's adjournment of the

---

[1]    The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters is located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]    "Certain Insurers" are those identified in the signature block to the Requests.

hearing on the Disclosure Statement[3] and (iii) the December 24, 2024 email from Javed Yunus revising the documents and information sought by the Insurers, the Debtor does not believe there are any live issues with respect to the Requests. The Debtor understands that the Insurers have narrowed the Requests to the Specific Requests enumerated 1 through 8, which the Debtor has satisfied to the extent the documents are available. Notwithstanding this, out of an abundance of caution, the Debtor serves these Responses in order to preserve its rights and objections thereto. To the extent the Insurers wish to pursue other aspects of the Requests in connection with an objection to confirmation of the Plan, the Debtor is willing to meet and confer at the appropriate time.

## GENERAL OBJECTIONS

The general objections set forth below (the "General Objections") apply to the Requests generally and, unless otherwise stated, shall have the same force and effect as if fully set forth in response to each Request. No response to any Request is, or shall be deemed to be, a waiver of the General Objections or to the specific objections set forth below. The fact that an objection is not listed herein does not, and shall not, constitute a waiver of that objection or otherwise preclude the Debtor from raising that objection at a later time.

1.    The Debtor objects to the Requests to the extent that they seek information that is irrelevant to the Bankruptcy Court's consideration of the relief requested in the *Debtor's Motion for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement; (II) Establishing Solicitation Procedures; (III) Approving the Form and Manner of Notice to Attorneys and Solicitation Directive; (IV) Approving the Form of Ballots; (V) Approving the Form,*

---

[3] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Disclosure Statement [D.I. 1754] or Plan [D.I. 1753], as applicable.

*Manner and Scope of Confirmation Notices; (VI) Establishing Certain Deadlines in Connection with Approval of Disclosure Statement and Confirmation of Plan; and (VII) Granting Related Relief* [D.I. 1651] (the "<u>Disclosure Statement Motion</u>").  The Debtor is willing to meet and confer regarding the Requests to extent the Insurers wish to pursue them at a later date in connection with an objection to confirmation of the Plan.

2.       The Debtor objects to the Requests to the extent that they are overbroad or purport to impose burdens or obligations on the Debtor that are broader than, inconsistent with or not authorized by the Applicable Rules.  The Debtor will construe the Requests in accordance with the Applicable Rules.

3.       The Debtor objects to the Requests to the extent that they seek information that is protected from disclosure by any applicable privilege, immunity or protection, including the attorney-client privilege, work product doctrine, joint-defense privilege or the common-interest privilege, or that is otherwise protected from disclosure under the Applicable Rules.  Nothing contained in these Responses is intended to be, nor shall in any way be, construed as a waiver of any such privilege, immunity or protection.  Specific Objections on the grounds of privilege, if any, are provided for clarity only, and the absence of a Specific Objection is neither intended to be, nor should be interpreted as, evidence that the Debtor does not object to a Request on the basis of an applicable privilege, immunity or protection.

4.       The Debtor objects to the Request to the extent that they seek production of information that is a matter of public record and/or information that is equally available to the Insurers.

5.       The Debtor objects to the Requests to the extent that they seek documents outside of the Debtor's possession, custody or control.

-3-

6.      These Responses are based solely on facts reasonably known to the Debtor at the time of responding to the Requests.  The Debtor reserves the right, but does not assume the obligation, to amend, supplement, or otherwise modify the content of these Responses at any time.

7.      The Debtor reserves all objections that may be available to it at any hearing or trial, or on any motion, to the use or admissibility of any material produced.  The production of any material does not constitute an admission by the Debtor that such material or the information contained therein is relevant to the Disclosure Statement Motion, Disclosure Statement or Plan, or is admissible in evidence.  No incidental or implied admissions are intended by the objections herein, nor shall the fact that the Debtor has objected or responded to a particular Request be construed as an admission or indication that the Debtor possesses documents responsive to such Request or any other Request, that the Debtor accepts or admits the existence of any fact or interpretation of law set forth or presumed by such Request or that such objections or responses constitute admissible evidence.

**<u>RESPONSES AND OBJECTIONS TO ADDITONAL REQUESTS</u>**

8.      The Debtor objects (the "<u>Additional Requests Objections</u>") to the second paragraph of the Requests (the "<u>Additional Requests</u>") as overly broad and unduly burdensome to the extent that they seek "all previous drafts," "all current or previous term sheets or similar documents" and "all correspondence."  The Debtor further objects to the Additional Requests on the grounds that "document," "agreement," "draft," "term sheet," "similar documents" and "correspondence" are vague and ambiguous as used therein because they are not defined.  The Debtor further objects to the Additional Requests on the grounds that "produce" is vague and ambiguous as used therein because no instructions for production were included in the Requests. The Debtor further objects to the Additional Requests to the extent that they seek documents or

communications that are irrelevant to approval of the Disclosure Statement or prematurely seek information in connection with confirmation of the Plan. The Debtor further objects to the Additional Requests to the extent that they seek documents protected from disclosure by the attorney-client privilege, work-product doctrine, common interest privilege, mediation privilege or otherwise protected from disclosure by the Applicable Rules. For the reasons set forth above, the Debtor construes the Requests as narrowed to the Specific Requests, which the Debtor has satisfied, as set forth below.

## SPECIFIC RESPONSES AND OBJECTIONS TO REQUESTS

Request No. 1

The Settlement Trust Agreements.

Response to Request No. 1:

The Debtor incorporates by reference the General Objections and Additional Requests Objections as set forth above. The Debtor further objects to this Request on the grounds that it seeks production of information that is a matter of public record and/or equally available to the Insurers. Subject to and without waiver of the foregoing objections, the Debtor refers the Insurers to Exhibits A and B of the *Notice of Filing of Plan Supplement for the Debtor's Second Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. 1755] (the "Plan Supplement").

Request No. 2

The Insurance Cooperation Agreement.

Response to Request No. 2:

The Debtor incorporates by reference the General Objections and Additional Requests Objections as set forth above. The Debtor further objects to this Request on the grounds that it seeks production of information that is a matter of public record and/or equally available to

the Insurers.  Subject to and without waiver of the foregoing objections, the Debtor refers the Insurers to Exhibit E of the Plan Supplement.

Request No. 3

      The Estate Claims Settlement Agreement.

Response to Request No 3:

      The Debtor incorporates by reference the General Objections and Additional Requests Objections as set forth above.  The Debtor further objects to this Request on the grounds that it seeks production of information that is a matter of public record and/or equally available to the Insurers.  Subject to and without waiver of the foregoing objections, the Debtor refers the Insurers to Exhibit D of the Plan Supplement.

Request No. 4

      The Joint Prosecution Agreement.

Response to Request No. 4:

      The Debtor incorporates by reference the General Objections and Additional Requests Objections as set forth above.  The Debtor further objects to Request No. 4 as irrelevant to approval of the Disclosure Statement.  Subject to and without waiver of the foregoing objections, the Debtor refers the Insurers to Debtor's counsel's comments at the December 16, 2024 status conference regarding the Joint Prosecution Agreement.

Request No. 5

      The RTX Waiver.

Response to Request No. 5:

      The Debtor incorporates by reference the General Objections and Additional Requests Objections as set forth above.  The Debtor further objects to this Request on the grounds that it seeks production of information that is a matter of public record and/or equally available to

the Insurers.  Subject to and without waiver of the foregoing objections, the Debtor refers the Insurers to the attachment to the January 3, 2025 email from Julie Kapoor.

<u>Request No. 6</u>

The New National Foam Release and all related releases (including, without limitation, a release of Angus International Safety Group Limited's Claim filed in the Chapter 11 Case).

<u>Response to Request No. 6</u>:

The Debtor incorporates by reference the General Objections and Additional Requests Objections as set forth above.  The Debtor further objects to Request No. 6 as irrelevant to approval of the Disclosure Statement.  The Debtor further objects to this Request to the extent it seeks information or documents outside of the Debtor's possession, custody or control.  Subject to and without waiver of the foregoing objections, the Debtor refers the Insurers to Debtor's counsel's comments at the December 16, 2024 status conference regarding the New National Foam Release.

<u>Request No. 7</u>

The TDPs.

<u>Response to Request No. 7</u>:

The Debtor incorporates by reference the General Objections and Additional Requests Objections as set forth above.  The Debtor further objects to this Request on the grounds that it seeks production of information that is a matter of public record and/or equally available to the Insurers.  Subject to and without waiver of the foregoing objections, the Debtor refers the Insurers to Exhibits A and B of the Plan Supplement.

<u>Request No. 8</u>

The GUC Liquidating Trust Agreement.

Response to Request No. 8:

The Debtor incorporates by reference the General Objections and Additional Requests Objections as set forth above. The Debtor further objects to this Request on the grounds that it seeks production of information that is a matter of public record and/or equally available to the Insurers. Subject to and without waiver of the foregoing objections, the Debtor refers the Insurers to Exhibit C of the Plan Supplement.

Dated: January 16, 2025
      Wilmington, Delaware

**MORRIS NICHOLS ARSHT & TUNNELL LLP**

/s/ *Derek C. Abbott*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Daniel B. Butz (No. 4227)
Tamara K. Mann (No. 5643)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
dabbott@morrisnichols.com
aremming@morrisnichols.com
dbutz@morrisnichols.com
tmann@morrisnichols.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Justin J. DeCamp (admitted *pro hac vice*)
Benjamin B. Beller (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
       gluecksteinb@sullcrom.com
       decampj@sullcrom.com
       bellerb@sullcrom.com

*Counsel for the Debtor and Debtor-in-Possession*

# EXHIBIT B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |

### DEBTOR'S RESPONSES AND OBJECTIONS TO CERTAIN INSURERS' SECOND SET OF PLAN-RELATED REQUESTS FOR PRODUCTION TO KFI WIND-DOWN CORP.

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable by Rules 7026, 7034 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and any other applicable law, rules, or orders of the Court (collectively, the "Applicable Rules"), KFI Wind-Down Corp. (the "Debtor" or "KFI"), by its undersigned attorneys, hereby submits these responses and objections (the "Responses and Objections") to *Certain Insurers'[2] Second Set Of Plan-Related Requests For Production To KFI Wind-Down Corp.* (the "Requests"), dated February 21, 2025.

### GENERAL OBJECTIONS

The general objections set forth below (the "General Objections") apply to the Requests generally and to each Definition, Instruction, and Request and, unless otherwise stated, shall have the same force and effect as if fully set forth in response to each Definition, Instruction, and Request. Any objection to a Definition or Instruction shall also apply to any other Definition,

---

[1]    The last four digits of the Debtor's tax identification number are 5282.  The Debtor's corporate headquarters is located at c/o AlixPartners, 909 Third Avenue, New York, NY 10022.

[2]    "Certain Insurers" are identified in the Requests.

Instruction, or Request that incorporates that Definition or Instruction. No response to any specific Request is, or shall be deemed to be, a waiver of the General Objections or to the specific objections set forth herein. The fact that an objection is not listed herein does not, and shall not, constitute a waiver of that objection or otherwise preclude the Debtor from raising that objection at a later time.

1.      The Debtor objects to the Requests, and to each Definition and Instruction contained therein, to the extent that they are vague and ambiguous, overly broad, unduly burdensome, lacking in particularity, unreasonable, or disproportionate to the needs of the chapter 11 case (the "Chapter 11 Case"), or seek information that is irrelevant to Certain Insurers' assessment of, or potential objections to, the Plan or its confirmation.

2.      The Debtor objects to the Requests, and to each Definition and Instruction contained therein, to the extent that they purport to impose on the Debtor any burden or obligation that is broader than, inconsistent with, or not authorized by, the Applicable Rules. The Debtor will construe the Requests, and each Definition and Instruction contained therein, in accordance with the Debtor's obligations under the Applicable Rules.

3.      The Debtor objects to the Requests, and to each Definition and Instruction contained therein, to the extent that they seek information that is protected from disclosure by any applicable privilege, immunity, or protection, including the attorney-client privilege, work product doctrine, joint-defense privilege, common-interest privilege, Local Rule 9019-5(d) and the Court's *Order Appointing Mediators* [D.I. 660] ("Mediation Privilege"), or that is otherwise protected from disclosure under the Applicable Rules. Any inadvertent disclosure of information that is properly the subject of a claim of privilege or protection is not, and shall not be deemed, a waiver, in whole or in part, of any privilege or protection. Furthermore, nothing contained in these

Responses and Objections is intended to be, nor shall in any way be, construed as a waiver of any such privilege, immunity, or protection.  Objections to specific requests (each, a "<u>Specific Objection</u>") on the grounds of privilege are provided for clarity only, and the absence of a Specific Objection is neither intended to be, nor should be interpreted as, evidence that the Debtor does not object to a Request on the basis of an applicable privilege, immunity, or protection.

4.      The Debtor objects to the Requests, and to each Definition and Instruction contained therein, to the extent that they purport to require the Debtor to draw legal or factual conclusions, or are predicated on legal or factual conclusions or arguments.  No response to any specific Request is, or shall be construed as, a legal or factual conclusion concerning the Request or any of the terms used in the Request.

5.      The Debtor objects to the Requests, and to each Definition and Instruction contained therein, to the extent that they seek production of information that is a matter of public record and/or information that is equally available to Certain Insurers, or are otherwise more appropriately directed to another party or person.

6.      The Debtor objects to the Requests, and to each Definition and Instruction contained therein, to the extent that they seek documents outside of the Debtor's possession, custody, or control.

7.      The Debtor objects to the Requests, and to each Definition and Instruction contained therein, to the extent they would have the effect of circumventing the negotiated stay and limited scope of discovery while such stay remains in place in the cases captioned *Kidde-Fenwal, Inc.* v. *ACE American Insurance Company*, Adv. No. 23-50758 (Bankr. D. Del. filed Nov. 9, 2023) and *Kidde-Fenwal, Inc.* v. *Hartford Accident & Indemnity Company*, Adv. Pro. No. 24-50015 (Bankr. D. Del. filed Feb. 8, 2024) (together, the "<u>Insurance Adversary Proceedings</u>").

8.    The Debtor objects to the Requests, and to each Definition and Instruction contained therein, to the extent that they call for examination of electronically stored information from sources that are not reasonably accessible because of undue burden or cost, or because they require more than a reasonable search under the circumstances.

9.    The Debtor's Responses and Objections are based solely on facts reasonably known to the Debtor at the time of responding to the Requests.  The Debtor reserves the right, but does not assume the obligation, to amend, supplement, or otherwise modify the content of these Responses and Objections at any time.

10.    Any failure of the Debtor to make a Specific Objection to any Request, or any Definition or Instruction contained therein, is not, and shall not be construed as, a waiver of the Debtor's right to object on additional grounds.  The Debtor reserves the right to use or rely on, at any time, any subsequently discovered information or information omitted from these Responses and Objections as a result of mistake, error, oversight, or inadvertence.

11.    The Debtor reserves all objections that may be available to it at any hearing or trial or on any motion to the use or admissibility of any material produced.  The production of any material does not constitute an admission by the Debtor that such material or the information contained therein is relevant to the Plan or its confirmation, or is admissible as evidence.  No incidental or implied admissions are intended by the objections herein, nor shall the fact that the Debtor has objected or responded to a particular Request be construed as an admission or indication that the Debtor possesses documents responsive to such Request, that the Debtor accepts or admits the existence of any fact or interpretation of law set forth or presumed by such Request or that such objections or responses constitute admissible evidence.

12.     The Debtor's production of any documents or information in response to the Requests shall be subject to the terms of the Court's *Order Approving Stipulation for Protective Order* [D.I. 337] and any amendments thereto.

## OBJECTIONS TO DEFINITIONS

13.     The Debtor objects to each Definition, and to any Definition, Instruction, or Request that incorporates that Definition, to the extent that it purports to impose on the Debtor any burden or obligation that is broader than, inconsistent with, or exceeds the requirements of, the Applicable Rules.

14.     The Debtor objects to the Definition of "Plan Proponent," and to any Definition, Instruction, or Request that incorporates that Definition, as overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case.  The Debtor will construe "Plan Proponent" to mean (a) KFI Wind-Down Corp. and (b) Carrier Global Corporation.  For the avoidance of doubt, the Debtor will construe any reference to "Carrier Global Corporation" to refer to Carrier Global Corporation and its current subsidiaries and affiliates only, and any reference to "RTX" to refer to RTX Corporation and its current subsidiaries and affiliates only.

15.     The Debtor objects to the Definition of "You," and to any Definition, Instruction, or Request that incorporates that Definition, as overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case.  The Debtor will construe "You" to mean KFI Wind-Down Corp.

16.     Further, the Requests state that for "capitalized terms set forth in the Request and Instructions that are not listed . . . [Certain Insurers] incorporate by reference the definitions in the Plan or Plan Supplement."  However, "Plan" is not defined.  For the avoidance of doubt, the Debtor will construe capitalized terms not otherwise defined in accordance with their corresponding definitions in the *Debtor's Second Amended Plan of Liquidation under Chapter 11 of the*

*Bankruptcy Code* [D.I. 1753-1] (as may be amended, modified or supplemented from time to time, the "Plan").

## OBJECTIONS TO INSTRUCTIONS

17.    The Debtor objects to each Instruction, and to any Definition, Instruction, or Request that incorporates that Instruction, to the extent that it purports to impose on the Debtor any burden or obligation that is broader than, inconsistent with, or exceeds the requirements of, the Applicable Rules.

18.    The Debtor further objects to each Instruction, and to any Definition, Instruction, or Request that incorporates that Instruction, to the extent that it purports to require the Debtor to prepare and produce documents not maintained in the ordinary course of business or outside of the Debtor's possession, custody or control.

19.    The Debtor objects to Instruction No. 3, and to any Definition, Instruction, or Request that incorporates that Instruction, as unduly burdensome.  The Debtor will construe such Instruction in accordance with the Applicable Rules.

## OBJECTIONS TO SPECIFIC REQUESTS

### DOCUMENT REQUEST NO. 1

Documents or Communications exchanged with Carrier Global Corporation and/or UTC (now RTX after UTC's merger with Raytheon) in connection with the negotiations that led to the Primary AFFF Settlement Trust Agreement, the TDPs and/or the Plan.

### RESPONSE TO REQUEST NO. 1

The Debtor refers to and incorporates its General Objections as if set forth fully herein.  The Debtor further objects to Request No. 1 on the grounds that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan.  The Debtor further objects to Request No. 1 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case.  The Debtor further objects to Request No. 1

as cumulative and duplicative of other Requests.  The Debtor further objects to Request No. 1 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor will produce non-privileged documents responsive to this Request to the extent that they are identified based on a reasonable search.

**DOCUMENT REQUEST NO. 2**

Documents or Communications provided to or prepared by any expert retained by any Plan Proponent in connection with the drafting or negotiating of the Plan and TDPs.

**RESPONSE TO REQUEST NO. 2**

The Debtor refers to and incorporates its General Objections as if set forth fully herein.  The Debtor further objects to Request No. 2 on the grounds that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan.  The Debtor further objects to Request No. 2 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case.  The Debtor further objects to Request No. 2 to the extent that it seeks documents not in the possession, custody, or control of the Debtor and is more appropriately directed to another party.  The Debtor further objects to Request No. 2 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Because this Request seeks privileged documents and communications, the Debtor will not produce documents in response to this Request.  If and when the Debtor submits an expert

report in support of Plan confirmation, the Debtor will provide appropriately scoped expert discovery in accordance with the Applicable Rules.

## DOCUMENT REQUEST NO. 3

Documents or Communications relied upon by any Plan Proponents in conducting any form of financial analysis in connection with the Plan, including, but not limited to, in connection with the liquidation analysis and Plan feasibility.

## RESPONSE TO REQUEST NO. 3

The Debtor refers to and incorporates its General Objections as if set forth fully herein. The Debtor further objects to Request No. 3 on the grounds that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan. The Debtor further objects to Request No. 3 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case to the extent it seeks documents relied upon in conducting *any* form of financial analysis in connection with the Plan. The Debtor further objects to Request No. 3 on the grounds that the terms "relied upon," "financial analysis," and "in connection with" are vague and ambiguous. The Debtor further objects to Request No. 3 as cumulative and duplicative of other Requests. The Debtor further objects to Request No. 3 on the grounds that it seeks documents not in the possession, custody, or control of the Debtor to the extent that it seeks documents and communications relied upon by parties other than the Debtor. The Debtor further objects to Request No. 3 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor will construe this Request as seeking information concerning the Liquidation Analysis set forth in Appendix B

to the Disclosure Statement and will produce non-privileged documents responsive to this Request as so construed to the extent that they are identified based on a reasonable search.

## DOCUMENT REQUEST NO. 4

Documents or Communications concerning the "Plan Supplement."

## RESPONSE TO REQUEST NO. 4

The Debtor refers to and incorporates its General Objections as if set forth fully herein.  The Debtor further objects to Request No. 4 on the grounds that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan.  The Debtor further objects to Request No. 4 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case to the extent it seeks all documents and communications concerning the Plan Supplement with no limiting time period.  The Debtor further objects to Request No. 4 as cumulative and duplicative of other Requests.  The Debtor further objects to Request No. 4 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor will produce non-privileged documents responsive to this Request to the extent that they are identified based on a reasonable search.

## DOCUMENT REQUEST NO. 5

Documents or Communications that the Plan Proponents relied upon in preparing the "Plan Supplement" or any portion of the Plan Supplement.

## RESPONSE TO REQUEST NO. 5

The Debtor refers to and incorporates its General Objections as if set forth fully herein.  The Debtor further objects to Request No. 5 on the grounds that it seeks documents that

are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan. The Debtor further objects to Request No. 5 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case. The Debtor further objects to Request No. 5 on the grounds that the terms "relied upon" and "preparing" are vague and ambiguous. The Debtor further objects to Request No. 5 as cumulative and duplicative of other Requests. The Debtor further objects to Request No. 5 on the grounds that it seeks documents not in the possession, custody, or control of the Debtor to the extent that it seeks documents and communications relied upon by parties other than the Debtor. The Debtor further objects to Request No. 5 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor will produce non-privileged documents responsive to this Request to the extent that they are identified based on a reasonable search.

**DOCUMENT REQUEST NO. 6**

Documents or Communications concerning third-party releases of non-debtor entities that would be provided if and when the Plan were to be confirmed and become effective.

**RESPONSE TO REQUEST NO. 6**

The Debtor refers to and incorporates its General Objections as if set forth fully herein. The Debtor further objects to Request No. 6 on the grounds that it is vague and ambiguous because it refers to a hypothetical, future, contingent event.

The Plan does not include third-party releases and thus the Debtor will not produce documents in response to this Request.

**DOCUMENT REQUEST NO. 7**

Documents or Communications concerning negotiations among or between any Plan Proponents regarding the treatment of Class 3A, 3B, 3C, 3D, 3E, and 3F Claims under the Plan.

**RESPONSE TO REQUEST NO. 7**

The Debtor refers to and incorporates its General Objections as if set forth fully herein.  The Debtor further objects to Request No. 7 on the grounds that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan.  The Debtor further objects to Request No. 7 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case.  The Debtor further objects to Request No. 7 as cumulative and duplicative of other Requests.  The Debtor further objects to Request No. 7 on the grounds that it seeks documents not in the possession, custody, or control of the Debtor to the extent that it seeks communications between parties other than the Debtor.  The Debtor further objects to Request No. 7 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor will produce non-privileged documents responsive to this Request to the extent that they are identified based on a reasonable search.

**DOCUMENT REQUEST NO. 8**

Documents or Communications exchanged with any non-debtor concerning the proposed operation of the Trust and/or the TDPs.

**RESPONSE TO REQUEST NO. 8**

The Debtor refers to and incorporates its General Objections as if set forth fully herein.  The Debtor further objects to Request No. 8 on the grounds that it seeks documents that

are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan.  The Debtor

further objects to Request No. 8 on the grounds that it is overbroad, unduly burdensome, and

disproportionate to the needs of the Chapter 11 Case.  The Debtor further objects to Request No. 8

on the grounds that the terms "non-debtor," "proposed operation," and "Trust" (which has different

definitions in different Plan Supplement documents) are vague and ambiguous.  The Debtor further

objects to Request No. 8 as cumulative and duplicative of other Requests.  The Debtor further

objects to Request No. 8 to the extent that it seeks discovery of information that is protected from

disclosure under any applicable privilege, immunity, or protection, including the attorney-client

privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor will construe

"Trust" as used in this Request to refer to the Primary AFFF Settlement Trust and Sovereign State

AFFF Settlement Trust and will produce non-privileged documents responsive to this Request as

so construed to the extent that they are identified based on a reasonable search.

## DOCUMENT REQUEST NO. 9

Documents or Communications concerning the process and criteria the Trustee will
use to evaluate and determine whether claims are compensable under the TDPs.

## RESPONSE TO REQUEST NO. 9

The Debtor refers to and incorporates its General Objections as if set forth fully

herein.  The Debtor further objects to Request No. 9 on the grounds that it seeks documents that

are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan.  The Debtor

further objects to Request No. 9 on the grounds that it is overbroad, unduly burdensome, and

disproportionate to the needs of the Chapter 11 Case.  The Debtor further objects to Request No. 9

on the grounds that the terms "process," "criteria," and "Trustee" (which has different definitions

in different Plan Supplement Documents) are vague and ambiguous.  The Debtor further objects

to Request No. 9 as cumulative and duplicative of other Requests.  The Debtor further objects to Request No. 9 on the grounds that information relevant to Request No. 9 is publicly available in the Plan and Plan Supplement.  The Debtor further objects to Request No. 9 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor will construe "Trustee" as used in this Request to refer to the Primary AFFF Settlement Trustee and will produce non-privileged documents responsive to this Request as so construed to the extent that they are identified based on a reasonable search.

**DOCUMENT REQUEST NO. 10**

Documents or Communications concerning the forms to be submitted by AFFF Claimants for compensation by the Trust under the TDPs.

**RESPONSE TO REQUEST NO. 10**

The Debtor refers to and incorporates its General Objections as if set forth fully herein.  The Debtor further objects to Request No. 10 on the grounds that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan.  The Debtor further objects to Request No. 10 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case.  The Debtor further objects to Request No. 10 on the grounds that the terms "forms" and "Trust" (which has different definitions in different Plan Supplement documents) are vague and ambiguous.  The Debtor further objects to Request No. 10 as cumulative and duplicative of other Requests.  The Debtor further objects to Request No. 10 to the extent that it seeks discovery of information that is protected from disclosure under any

applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor will construe "Trust" as used in this Request to refer to the Primary AFFF Settlement Trust and "forms" as used in this Request to refer to the specific forms to be submitted by AFFF Claimants as set forth in the TDPs for the Primary AFFF Settlement Trust and will produce non-privileged documents responsive to this Request as so construed to the extent that they are identified based on a reasonable search.

## DOCUMENT REQUEST NO. 11

Documents or Communications concerning how the guidelines were determined for awarding Points to an Allowed AFFF Claim as set forth in each TDP Schedule for the Claim Category.

## RESPONSE TO REQUEST NO. 11

The Debtor refers to and incorporates its General Objections as if set forth fully herein. The Debtor further objects to Request No. 11 on the grounds that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan. The Debtor further objects to Request No. 11 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case. The Debtor further objects to Request No. 11 on the grounds that the phrase "how the guidelines were determined" is vague and ambiguous. The Debtor further objects to Request No. 11 as cumulative and duplicative of other Requests. The Debtor further objects to Request No. 11 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor will produce non-privileged documents responsive to this Request to the extent that they are identified based on a reasonable search.

## DOCUMENT REQUEST NO. 12

Documents or Communications concerning the valuation amount per Point in the TDPs.

## RESPONSE TO REQUEST NO. 12

The Debtor refers to and incorporates its General Objections as if set forth fully herein. The Debtor further objects to Request No. 12 on the grounds that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan. The Debtor further objects to Request No. 12 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case. The Debtor further objects to Request No. 12 on the grounds that the term "valuation amount" is vague and ambiguous. The Debtor further objects to Request No. 12 as cumulative and duplicative of other Requests. The Debtor further objects to Request No. 12 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor will produce non-privileged documents responsive to this Request to the extent that they are identified based on a reasonable search.

## DOCUMENT REQUEST NO. 13

The "form and substance of the questionnaire required in connection with a Class 3K PI AFFF Claims submission under the Primary TDP," referenced in Section 5.14 of the Primary AFFF Settlement Trust Agreement.

**RESPONSE TO REQUEST NO. 13**

The Debtor refers to and incorporates its General Objections as if set forth fully herein. The Debtor will produce the proposed form of questionnaire when it is available in due course.

**DOCUMENT REQUEST NO. 14**

Documents or Communications concerning the methodology that will be used to investigate whether claimants have obtained other settlements prior to making a claim for compensation by the Trust.

**RESPONSE TO REQUEST NO. 14**

The Debtor refers to and incorporates its General Objections as if set forth fully herein. The Debtor further objects to Request No. 14 on the grounds that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan. The Debtor further objects to Request No. 14 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case. The Debtor further objects to Request No. 14 on the grounds that the terms "methodology," "investigate," "claimants," "settlements," "claim for compensation," and "Trust" (which has different definitions in different Plan Supplement documents) are vague and ambiguous. The Debtor further objects to Request No. 14 as cumulative and duplicative of other Requests. The Debtor further objects to Request No. 14 on the grounds that information relevant to Request No. 14 is publicly available in the Plan and Plan Supplement. The Debtor further objects to Request No. 14 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor will construe this Request as seeking information concerning the TDPs and will produce non-privileged

documents responsive to this Request as so construed to the extent that they are identified based on a reasonable search.

## DOCUMENT REQUEST NO. 15

Documents or Communications concerning the Debtor's evaluation of its tort liability.

## RESPONSE TO REQUEST NO. 15

The Debtor refers to and incorporates its General Objections as if set forth fully herein. The Debtor further objects to Request No. 15 on the grounds that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan. The Debtor further objects to Request No. 15 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case to the extent it seeks all documents and communications concerning the Debtor's evaluation of its tort liability with no limiting time period. The Debtor further objects to Request No. 15 on the grounds that the terms "evaluation" and "tort liability" are vague and ambiguous. The Debtor further objects to Request No. 15 as cumulative and duplicative of other Requests. The Debtor further objects to Request No. 15 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Because this Request seeks privileged documents and communications, the Debtor will not produce documents in response to this Request. If and when the Debtor submits an expert report in support of Plan confirmation that is in response to this Request, the Debtor will provide appropriately scoped expert discovery in accordance with the Applicable Rules. The Debtor is also willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 16**

Documents or Communications concerning whether and, if so, how the TDPs or the Plan value or give weight to defenses successfully asserted by the Debtor or on the Debtor's behalf in the underlying AFFF MDL before May 14, 2023.

**RESPONSE TO REQUEST NO. 16**

The Debtor refers to and incorporates its General Objections as if set forth fully herein. The Debtor further objects to Request No. 16 on the grounds that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan. The Debtor further objects to Request No. 16 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case. The Debtor further objects to Request No. 16 on the grounds that the terms "value," "give weight," "defenses," and "successfully" are vague and ambiguous. The Debtor further objects to Request No. 16 as cumulative and duplicative of other Requests. The Debtor further objects to Request No. 16 on the grounds that information relevant to Request No. 16 is publicly available in the Plan and Plan Supplement. The Debtor further objects to Request No. 16 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor will produce non-privileged documents responsive to this Request to the extent that they are identified based on a reasonable search.

**DOCUMENT REQUEST NO. 17**

Documents or Communications concerning the TDPs, including, without limitation, those (a) relating to the negotiation of the TDPs with other Plan Proponents; (b) concerning the operation and application of the TDPs to claims, including to ensure payment of only valid claims; (c) concerning the application of SIRs or deductibles to claims under the TDPs; and (d) concerning the methodology to be used to determine proper compensation of claims.

**RESPONSE TO REQUEST NO. 17**

The Debtor refers to and incorporates its General Objections as if set forth fully herein. The Debtor further objects to Request No. 17 on the grounds that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan. The Debtor further objects to Request No. 17 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case. The Debtor further objects to Request No. 17 on the grounds that the terms "operation," "application," "valid claims," "SIRS," "methodology," and "proper compensation" are vague and ambiguous. The Debtor further objects to Request No. 17 as cumulative and duplicative of other Requests. The Debtor further objects to Request No. 17 on the grounds that information relevant to Request No. 17 is publicly available in the Plan and Plan Supplement. The Debtor further objects to Request No. 17 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor will produce non-privileged documents responsive to this Request to the extent that they are identified based on a reasonable search.

**DOCUMENT REQUEST NO. 18**

Documents or Communications concerning the Allocation of Distribution Value from Settlement Trust Assets in Section 5.5.4 of the Plan.

**RESPONSE TO REQUEST NO. 18**

The Debtor refers to and incorporates its General Objections as if set forth fully herein. The Debtor further objects to Request No. 18 on the grounds that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan. The Debtor

-19-

further objects to Request No. 18 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case.  The Debtor further objects to Request No. 18 on the grounds that the phrase "Allocation of Distribution Value" is vague and ambiguous and does not appear in the referenced section of the Plan, which refers to "Allocation of Distributable Value."  The Debtor further objects to Request No. 18 on the grounds that the Trust Allocation will be filed on the docket of the Chapter 11 Case in due course.  The Debtor further objects to Request No. 18 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor will construe this Request as seeking information concerning the Trust Allocation and will produce non-privileged documents responsive to this Request as so construed to the extent that they are identified based on a reasonable search.

## DOCUMENT REQUEST NO. 19

Documents or Communications concerning the Liquidation Analysis distributable value for the Class 3 and 4 Claims.

## RESPONSE TO REQUEST NO. 19

The Debtor refers to and incorporates its General Objections as if set forth fully herein.  The Debtor further objects to Request No. 19 on the grounds that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan.  The Debtor further objects to Request No. 19 on the grounds that it is overbroad, unduly burdensome and disproportionate to the needs of the Chapter 11 Case.  The Debtor further objects to Request No. 19 on the grounds that the phrase "Liquidation Analysis distributable value" is vague and ambiguous.  The Debtor further objects to Request No. 19 as cumulative and duplicative of other

Requests.  The Debtor further objects to Request No. 19 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor will construe this Request as seeking information concerning the Liquidation Analysis set forth in Appendix B to the Disclosure Statement and will produce non-privileged documents responsive to this Request as so construed to the extent that they are identified based on a reasonable search.

**DOCUMENT REQUEST NO. 20**

Documents or Communications concerning the Claimant Release Form (Schedule II to Primary AFFF Settlement Trust Agreement), including, without limitation, copies of the Claimant Release Form.

**RESPONSE TO REQUEST NO. 20**

The Debtor refers to and incorporates its General Objections as if set forth fully herein.  The Debtor further objects to Request No. 20 on the grounds that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan.  The Debtor further objects to Request No. 20 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case.  The Debtor further objects to Request No. 20 as cumulative and duplicative of other Requests.  The Debtor further objects to Request No. 20 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor will produce non-privileged documents responsive to this Request to the extent that they are identified based on a reasonable search.

-21-

**DOCUMENT REQUEST NO. 21**

Documents or Communications concerning the KFI AFFF Common Benefit Fund document (Ex. 4 to Primary AFFF Settlement Trust Agreement), including, without limitation, copies of the KFI AFFF Common Benefit Fund document.

**RESPONSE TO REQUEST NO. 21**

The Debtor refers to and incorporates its General Objections as if set forth fully herein. The Debtor further objects to Request No. 21 on the grounds that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan. The Debtor further objects to Request No. 21 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case. The Debtor further objects to Request No. 21 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor will produce non-privileged documents responsive to this Request to the extent that they are identified based on a reasonable search.

**DOCUMENT REQUEST NO. 22**

Documents or Communications concerning the Investment Guidelines (Ex. 5 to Primary AFFF Settlement Trust Agreement), including, without limitation, copies of the Investment Guidelines.

**RESPONSE TO REQUEST NO. 22**

The Debtor refers to and incorporates its General Objections as if set forth fully herein. The Debtor further objects to Request No. 22 on the grounds that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan. The Debtor further objects to Request No. 22 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case. The Debtor further objects to Request No.

22 to the extent that it seeks discovery of information that is protected from disclosure under any

applicable privilege, immunity, or protection, including the attorney-client privilege, common-

interest privilege, the work-product doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor will produce

non-privileged documents responsive to this Request to the extent that they are identified based on

a reasonable search.

## DOCUMENT REQUEST NO. 23

Any final and binding State AFFF Allocation, as referenced in the Sovereign State
AFFF Settlement Trust Agreement.

## RESPONSE TO REQUEST NO. 23

The Debtor refers to and incorporates its General Objections as if set forth fully

herein.  Because there will be no "final and binding" State AFFF Allocation (as defined in the

Sovereign State AFFF Settlement Trust Agreement) until after the effective date of the Plan, the

Debtor will not produce documents in response to this Request.

## DOCUMENT REQUEST NO. 24

Final and draft versions of all bracketed sections or provisions, or
sections/provisions otherwise labeled "to come" or "intentionally omitted," including, without
limitation: (1) Sections 2.2, 3.1–3.4, and 4.2 of the Insurance Cooperation Agreement; (2) Sections
1.3, 1.8, 2.1, 4.2, 4.4, 5.14, and 8.2 of the Primary AFFF Settlement Trust Agreement; (3) Sections
3.1 and 5.5 of the Sovereign State AFFF Settlement Trust Agreement.

## RESPONSE TO REQUEST NO. 24

The Debtor refers to and incorporates its General Objections as if set forth fully

herein.  The Debtor further objects to Request No. 24 on the grounds that it seeks documents that

are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan.  The Debtor

further objects to Request No. 24 on the grounds that it is overbroad, unduly burdensome, and

disproportionate to the needs of the Chapter 11 Case.  The Debtor further objects to Request No. 24

on the grounds that it is vague and ambiguous because it requests "[f]inal and draft versions of all bracketed sections or provisions, or sections/provisions otherwise labeled 'to come' or 'intentionally omitted,'" but does not specify any documents from which Certain Insurers seek such sections or provisions, or any limiting subject matter or time period. The Debtor further objects to Request No. 24 as cumulative and duplicative of other Requests. The Debtor further objects to Request No. 24 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor will produce non-privileged documents responsive to this Request to the extent such documents are responsive to other Requests to which the Debtor has agreed to produce documents.

## DOCUMENT REQUEST NO. 25

Documents or Communications concerning the obligations to be assumed by the Trust under the various Insurance Policies.

## RESPONSE TO REQUEST NO. 25

The Debtor refers to and incorporates its General Objections as if set forth fully herein. The Debtor further objects to Request No. 25 on the grounds that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan. The Debtor further objects to Request No. 25 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case. The Debtor further objects to Request No. 25 on the grounds that the terms "obligations" and "Trust" (which has different definitions in different Plan Supplement documents) are vague and ambiguous. The Debtor further objects to Request No. 25 on the grounds that information responsive to Request No. 25 is publicly available in the Plan and Plan Supplement. The Debtor further objects to Request No. 25 to the extent that it seeks

discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor will construe "Trust" as used in this Request to refer to the Primary AFFF Settlement Trust and will produce non-privileged documents responsive to this Request as so construed to the extent that they are identified based on a reasonable search.

**DOCUMENT REQUEST NO. 26**

Documents or Communications concerning the designation of the Trustee(s) of the Trust.

**RESPONSE TO REQUEST NO. 26**

The Debtor refers to and incorporates its General Objections as if set forth fully herein. The Debtor further objects to Request No. 26 on the grounds that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan. The Debtor further objects to Request No. 26 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case. The Debtor further objects to Request No. 26 on the grounds that the term "Trustee(s)" and "Trust" (which have different definitions in different Plan Supplement documents) are vague and ambiguous. The Debtor further objects to Request No. 26 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor will construe "Trustee(s)" as used in this Request to refer to the Primary AFFF Settlement Trustee and Sovereign State AFFF Settlement Trustee, and "Trust" as used in this Request to refer to the Primary AFFF

Settlement Trust and Sovereign State AFFF Settlement Trust, and will produce non-privileged documents responsive to this Request as so construed to the extent that they are identified based on a reasonable search.

## DOCUMENT REQUEST NO. 27

Documents or Communications concerning the contributions to the Trust by the Debtor, Carrier Global Corporation, and any other Protected Party under the Plan, including, without limitation, negotiations over such contributions.

## RESPONSE TO REQUEST NO. 27

The Debtor refers to and incorporates its General Objections as if set forth fully herein. The Debtor further objects to Request No. 27 on the grounds that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan. The Debtor further objects to Request No. 27 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case. The Debtor further objects to Request No. 27 on the grounds that the terms "contributions," "Trust" (which has different definitions in different Plan Supplement documents), and "Protected Party" (which is not defined in the Plan) are vague and ambiguous. The Debtor further objects to Request No. 27 as cumulative and duplicative of other Requests. The Debtor further objects to Request No. 27 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor will construe "Trust" as used in this Request to refer to the Primary AFFF Settlement Trust and will disregard the reference to "Protected Party," and will produce non-privileged documents responsive to this Request as so construed to the extent that they are identified based on a reasonable search.

**DOCUMENT REQUEST NO. 28**

The New National Foam Release and all related releases (including, without limitation, a release of Angus International Safety Group Limited's Claim filed in the Chapter 11 Case), as described in Plan sections 2.1.127 and 9.1(e), including, without limitation, all previous drafts of the document or agreement; all current or previous term sheets or similar documents setting forth the proposed terms of the document or agreement; and all Communications between KFI and the Committee, Carrier Global Corporation, RTX, or other third parties concerning the New National Foam Release.

**RESPONSE TO REQUEST NO. 28**

The Debtor refers to and incorporates its General Objections as if set forth fully

herein.  The Plan does not include any such releases, and thus the Debtor will not produce

documents in response to this Request.

**DOCUMENT REQUEST NO. 29**

Documents or Communications referenced, reviewed, or relied upon in connection with any evaluation of the "best interests of creditors" analysis required by 11 U.S.C. § 1129(a)(7).

**RESPONSE TO REQUEST NO. 29**

The Debtor refers to and incorporates its General Objections as if set forth fully

herein.  The Debtor further objects to Request No. 29 on the grounds that it seeks documents that

are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan.  The Debtor

further objects to Request No. 29 on the grounds that it is overbroad, unduly burdensome, and

disproportionate to the needs of the Chapter 11 Case.  The Debtor further objects to Request No. 29

on the grounds that the terms "referenced," "reviewed," "relied upon," and "evaluation" are vague

and ambiguous.  The Debtor further objects to Request No. 29 as cumulative and duplicative of

other Requests.  The Debtor further objects to Request No. 29 to the extent that it seeks discovery

of information that is protected from disclosure under any applicable privilege, immunity, or

protection, including the attorney-client privilege, common-interest privilege, the work-product

doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor will produce non-privileged documents responsive to this Request to the extent that they are identified based on a reasonable search.

**DOCUMENT REQUEST NO. 30**

Transcripts of, and any and all exhibits to, the depositions of Carrier Global Corporation, the Debtor, and RTX witnesses taken by the Special Committee Investigation, as set forth in Article III, Section L of the Disclosure Statement.

**RESPONSE TO REQUEST NO. 30**

The Debtor refers to and incorporates its General Objections as if set forth fully herein.  The Debtor further objects to Request No. 30 on the grounds that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan.

Subject to and without waiver of the foregoing objections, the Debtor will produce non-privileged documents responsive to this Request to the extent that they are identified based on a reasonable search.

Dated:  March 24, 2025
        Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Casey B. Sawyer*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Daniel B. Butz (No. 4227)
Tamara K. Mann (No. 5643)
Casey B. Sawyer (No. 7260)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
E-mail: dabbott@morrisnichols.com
       aremming@morrisnichols.com
       dbutz@morrisnichols.com
       tmann@morrisnichols.com
       csawyer@morrisnichols.com
-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Justin J. DeCamp (admitted *pro hac vice*)
Benjamin S. Beller (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
       gluecksteinb@sullcrom.com
       decampj@sullcrom.com
       bellerb@sullcrom.com

*Counsel for the Debtor and Debtor-in-Possession*

# EXHIBIT C

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |

## DEBTOR'S RESPONSES AND OBJECTIONS TO
## CERTAIN INSURERS' THIRD SET OF PLAN-RELATED
## REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable by Rules 7026, 7034 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and any other applicable law, rules, or orders of the Court (collectively, the "Applicable Rules"), KFI Wind-Down Corp. (the "Debtor" or "KFI"), by its undersigned attorneys, hereby submits these responses and objections (the "Responses and Objections") to *Certain Insurers'[2] Third Set of Plan-Related Requests for Production of Documents by the Debtor* (the "Requests"), dated February 21, 2025.

### GENERAL OBJECTIONS

The general objections set forth below (the "General Objections") apply to the Requests generally and to each Definition, Instruction, and Request and, unless otherwise stated, shall have the same force and effect as if fully set forth in response to each Definition, Instruction, and Request. Any objection to a Definition or Instruction shall also apply to any other Definition,

---

[1] The last four digits of the Debtor's tax identification number are 5282. The Debtor's corporate headquarters is located at c/o AlixPartners, 909 Third Avenue, New York, NY 10022.

[2] "Certain Insurers" are identified in the Requests.

Instruction, or Request that incorporates that Definition or Instruction.  No response to any specific Request is, or shall be deemed to be, a waiver of the General Objections or to the specific objections set forth herein.  The fact that an objection is not listed herein does not, and shall not, constitute a waiver of that objection or otherwise preclude the Debtor from raising that objection at a later time.

1.      The Debtor objects to the Requests, and to each Definition and Instruction contained therein, to the extent that they are vague and ambiguous, overly broad, unduly burdensome, lacking in particularity, unreasonable, or disproportionate to the needs of the chapter 11 case (the "Chapter 11 Case"), or seek information that is irrelevant to Certain Insurers' assessment of, or potential objections to, the Plan or its confirmation.

2.      The Debtor objects to the Requests, and to each Definition and Instruction contained therein, to the extent that they purport to impose on the Debtor any burden or obligation that is broader than, inconsistent with, or not authorized by, the Applicable Rules.  The Debtor will construe the Requests, and each Definition and Instruction contained therein, in accordance with the Debtor's obligations under the Applicable Rules.

3.      The Debtor objects to the Requests, and to each Definition and Instruction contained therein, to the extent that they seek information that is protected from disclosure by any applicable privilege, immunity, or protection, including the attorney-client privilege, work product doctrine, joint-defense privilege, common-interest privilege, Local Rule 9019-5(d) and the Court's *Order Appointing Mediators* [D.I. 660] ("Mediation Privilege"), or that is otherwise protected from disclosure under the Applicable Rules.  Any inadvertent disclosure of information that is properly the subject of a claim of privilege or protection is not, and shall not be deemed, a waiver, in whole or in part, of any privilege or protection.  Furthermore, nothing contained in these

-2-

Responses and Objections is intended to be, nor shall in any way be, construed as a waiver of any such privilege, immunity, or protection.  Objections to specific requests (each, a "<u>Specific Objection</u>") on the grounds of privilege are provided for clarity only, and the absence of a Specific Objection is neither intended to be, nor should be interpreted as, evidence that the Debtor does not object to a Request on the basis of an applicable privilege, immunity, or protection.

4.    The Debtor objects to the Requests, and to each Definition and Instruction contained therein, to the extent that they purport to require the Debtor to draw legal or factual conclusions, or are predicated on legal or factual conclusions or arguments.  No response to any specific Request is, or shall be construed as, a legal or factual conclusion concerning the Request or any of the terms used in the Request.

5.    The Debtor objects to the Requests, and to each Definition and Instruction contained therein, to the extent that they seek production of information that is a matter of public record and/or information that is equally available to Certain Insurers, or are otherwise more appropriately directed to another party or person.

6.    The Debtor objects to the Requests, and to each Definition and Instruction contained therein, to the extent that they seek documents outside of the Debtor's possession, custody, or control.

7.    The Debtor objects to the Requests, and to each Definition and Instruction contained therein, to the extent they would have the effect of circumventing the negotiated stay and limited scope of discovery while such stay remains in place in the cases captioned *Kidde-Fenwal, Inc.* v. *ACE American Insurance Company*, Adv. No. 23-50758 (Bankr. D. Del. filed Nov. 9, 2023) and *Kidde-Fenwal, Inc.* v. *Hartford Accident & Indemnity Company*, Adv. Pro. No. 24-50015 (Bankr. D. Del. filed Feb. 8, 2024) (together, the "<u>Insurance Adversary Proceedings</u>").

8.     The Debtor objects to the Requests, and to each Definition and Instruction contained therein, to the extent that they call for examination of electronically stored information from sources that are not reasonably accessible because of undue burden or cost, or because they require more than a reasonable search under the circumstances.

9.     The Debtor's Responses and Objections are based solely on facts reasonably known to the Debtor at the time of responding to the Requests. The Debtor reserves the right, but does not assume the obligation, to amend, supplement, or otherwise modify the content of these Responses and Objections at any time.

10.     Any failure of the Debtor to make a Specific Objection to any Request, or any Definition or Instruction contained therein, is not, and shall not be construed as, a waiver of the Debtor's right to object on additional grounds. The Debtor reserves the right to use or rely on, at any time, any subsequently discovered information or information omitted from these Responses and Objections as a result of mistake, error, oversight, or inadvertence.

11.     The Debtor reserves all objections that may be available to it at any hearing or trial or on any motion to the use or admissibility of any material produced. The production of any material does not constitute an admission by the Debtor that such material or the information contained therein is relevant to the Plan or its confirmation, or is admissible as evidence. No incidental or implied admissions are intended by the objections herein, nor shall the fact that the Debtor has objected or responded to a particular Request be construed as an admission or indication that the Debtor possesses documents responsive to such Request, that the Debtor accepts or admits the existence of any fact or interpretation of law set forth or presumed by such Request or that such objections or responses constitute admissible evidence.

12.     The Debtor's production of any documents or information in response to the Requests shall be subject to the terms of the Court's *Order Approving Stipulation for Protective Order* [D.I. 337] and any amendments thereto.

## OBJECTIONS TO DEFINITIONS

13.     The Debtor objects to each Definition, and to any Definition, Instruction, or Request that incorporates that Definition, to the extent that it purports to impose on the Debtor any burden or obligation that is broader than, inconsistent with, or exceeds the requirements of, the Applicable Rules.

14.     The Debtor objects to the Definition of "Debtor," and to any Definition, Instruction, or Request that incorporates that Definition, as overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case. The Debtor will construe "Debtor" to mean KFI Wind-Down Corp. only.

15.     For the avoidance of doubt, the Debtor will construe any reference to "Carrier" to refer to Carrier Global Corporation and its current subsidiaries and affiliates only, and any reference to "RTX" to refer to RTX Corporation and its current subsidiaries and affiliates only.

## OBJECTIONS TO INSTRUCTIONS

16.     The Debtor objects to each Instruction, and to any Definition, Instruction, or Request that incorporates that Instruction, and in particular to Instruction No 5, to the extent that it purports to impose on the Debtor any burden or obligation that is broader than, inconsistent with, or exceeds the requirements of, the Applicable Rules.

17.     The Debtor further objects to each Instruction, and to any Definition, Instruction, or Request that incorporates that Instruction, to the extent that it purports to require the Debtor to prepare and produce documents not maintained in the ordinary course of business or outside of the Debtor's possession, custody, or control.

18.     The Debtor objects to Instruction No. 5, and to any Definition, Instruction, or Request that incorporates that Instruction, as unduly burdensome.  The Debtor will construe such Instruction in accordance with the Applicable Rules.

19.     The Debtor objects to Instruction No. 7 to the extent it purports to require the Debtor to re-review documents already in the possession of Certain Insurers for responsiveness to the Requests.

## OBJECTIONS TO SPECIFIC REQUESTS

## DOCUMENT REQUEST NO. 1

All Documents concerning the Estate Claims Settlement and the Released Claims that are the subject of such settlement, including, without limitation:

i.      Communications and other Documents exchanged between the Debtor and Carrier or its advisors concerning the settlement or the Released Claims.
ii.     Communications and other Documents exchanged between the Debtor and the Special Committee or its advisors concerning the settlement or the Released Claims.
iii.    Communications and other Documents exchanged between the Debtor and the Committee or its advisors concerning the settlement or the Released Claims.
iv.     Communications and other Documents exchanged between the Debtor and the MDL PEC Co-Leads or their advisors concerning the settlement or the Released Claims.
v.      Memoranda, slide decks, or other presentations to the Debtor's board of directors, officers, or other management concerning the settlement or the Released Claims.
vi.     Minutes of meetings of the Special Committee or the Debtor's board of directors, officers, or other management at which the settlement or the Released Claims was addressed.
vii.    Resolutions or other writings memorializing the decision to approve the settlement.
viii.   Documents concerning Analysis of the Guaranteed Cash Payment and the value thereof.
ix.     Documents concerning Analysis of the Releases to be granted by Carrier, the claims affected by such Releases, and the value of such Releases to the Debtor or its Estate.
x.      Documents concerning the Debtor's rights to receive earnouts paid or payable in connection with the Sale, including Analysis of the value thereof.
xi.     Documents concerning estimates, projections, or other Analysis of the Remaining Estate Funds.
xii.    Any other Documents identifying or reflecting any Released Claims that the Debtor could have brought against any of the Carrier Parties.

## RESPONSE TO REQUEST NO. 1

The Debtor refers to and incorporates its General Objections as if set forth fully herein.  The Debtor further objects to Request No. 1 on the grounds that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan.  The Debtor further objects to Request No. 1 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case to the extent that it seeks all documents concerning the Estate Claims Settlement Agreement and Released Claims, including "without limitation" 12 sub-categories of documents and communications.  The Debtor further objects to Request No. 1 on the grounds that the terms "advisors," "settlement," "other presentations," "other management," "addressed," "memorializing," "decision to approve," "value," "identifying," and "reflecting" are vague and ambiguous.  The Debtor further objects to Request No. 1 as cumulative and duplicative of other Requests.  The Debtor further objects to Request No. 1 to the extent that information relevant to Request No. 1 is publicly available in the record of this Chapter 11 Case.  The Debtor further objects to Request No. 1 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor will produce non-privileged documents concerning the negotiation of the Estate Claims Settlement Agreement to the extent they are identified based on a reasonable search.

## DOCUMENT REQUEST NO. 2

All Documents concerning the negotiation of the Estate Claims Settlement Agreement and the Debtor's decision to enter into such agreement, including, without limitation, Documents concerning Analysis of the value of such agreement to the Debtor or its Estate.

**RESPONSE TO REQUEST NO. 2**

The Debtor refers to and incorporates its General Objections as if set forth fully herein.  The Debtor further objects to Request No. 2 on the grounds that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan.  The Debtor further objects to Request No. 2 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case.  The Debtor further objects to Request No. 2 because the phrase "Debtor's decision to enter into such agreement" is vague and ambiguous.  The Debtor further objects to Request No. 2 as cumulative and duplicative of other Requests.  The Debtor further objects to Request No. 2 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor will produce non-privileged documents responsive to this Request to the extent that they are identified based on a reasonable search.

**DOCUMENT REQUEST NO. 3**

All Documents concerning the assertions in the recitals to the Estate Claims Settlement Agreement concerning the "numerous pending disputes among the Parties" to that agreement, including, without limitation:

i.   The Debtor's assertion that it "is entitled to all or substantially all of the Net Sale Proceeds."
ii.  The Debtor's assertion that "the Carrier Parties failed to compensate [the Debtor] fairly, or otherwise inappropriately charged [the Debtor], in connection with various intercompany transactions during the period prior to the Petition Date."
iii. The Debtor's assertion that "[the Debtor] and/or its Estate have colorable causes of action against the Carrier Parties relating to National Foam AFFF, including potential claims based on theories of successor liability, veil-piercing or similar theories."
iv.  The Debtor's assertion that "[the Debtor] and/or its Estate should control access to applicable insurance policies."
v.   Carrier's assertion that it "is entitled to all or substantially all of the Net Sale Proceeds."

vi.    Carrier's assertion that "KFI failed to compensate the Carrier Parties fairly, or to otherwise satisfy legitimate charges, in connection with various intercompany transactions during the period prior to the Petition Date."

vii.    Carrier's assertion that "the Carrier Parties have no responsibility for the National Foam AFFF liability, including based on any theory that the Carrier Parties assumed or can be held liable for KFI's liabilities."

viii.    Carrier's assertion that "the Carrier Parties should control access to applicable insurance policies in the event that they incur any litigation costs or other liabilities arising from or relating to the National Foam line of business."

## RESPONSE TO REQUEST NO. 3

The Debtor refers to and incorporates its General Objections as if set forth fully herein.  The Debtor further objects to Request No. 3 on the grounds that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan.  The Debtor further objects to Request No. 3 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case to the extent that it seeks all documents concerning the recitals to the Estate Claims Settlement Agreement, including "without limitation" eight sub-categories of documents and communications.  The Debtor further objects to Request No. 3 as cumulative and duplicative of other Requests.  The Debtor further objects to Request No. 3 on the grounds that it seeks documents not in the possession, custody, or control of the Debtor to the extent it seeks documents of Carrier.  The Debtor further objects to Request No. 3 to the extent that information relevant to Request No. 3 is publicly available in the record of this Chapter 11 Case.  The Debtor further objects to Request No. 3 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor will produce non-privileged documents responsive to this Request to the extent such documents are responsive to other Requests to which the Debtor has agreed to produce documents.

**DOCUMENT REQUEST NO. 4**

All Documents that the Debtor received from or provided to a third party participating in the Mediation that were not created exclusively for use in the Mediation.

**RESPONSE TO REQUEST NO. 4**

The Debtor refers to and incorporates its General Objections as if set forth fully herein.  The Debtor further objects to Request No. 4 on the grounds that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan.  The Debtor further objects to Request No. 4 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case to the extent that it seeks all documents the Debtor received from or provided to a third party participating in the Mediation, regardless of the subject of the Document, its relevance to the Chapter 11 Case or the Plan, or any limiting time period.  The Debtor further objects to Request No. 4 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Due to its overbreadth untethered to any potential objection and scope seeking documents protected by the Mediation Privilege, the Debtor will not produce documents in response to this Request.

**DOCUMENT REQUEST NO. 5**

All Documents concerning the formation of the Special Committee and the delegation of authority to the Special Committee to "consider all matters relating to investigation of any potential claims against Carrier or RTX," as discussed on page 15 of the Disclosure Statement.

**RESPONSE TO REQUEST NO. 5**

The Debtor refers to and incorporates its General Objections as if set forth fully herein.  The Debtor further objects to Request No. 5 on the grounds that it seeks documents that

are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan. The Debtor further objects to Request No. 5 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case. The Debtor further objects to Request No. 5 on the grounds that references to the "formation" of the Special Committee and "delegation of authority" thereto are vague and ambiguous. The Debtor further objects to Request No. 5 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor will produce non-privileged documents responsive to this Request to the extent that they are identified based on a reasonable search.

**DOCUMENT REQUEST NO. 6**

All Documents concerning the Special Committee's Analysis of potential claims that the Debtor could assert against Carrier or RTX and potential defenses thereto, as discussed on pages 15 and 22 of the Disclosure Statement, including, without limitation:

  i. Memoranda, presentations, meeting minutes, or other Documents reflecting, recording, or otherwise memorializing the Special Committee's investigation and/or Analysis, including the Special Committee's "determin[ation] that the Debtor had certain colorable claims it could assert against Carrier" and its "acknowledge[ment] that Carrier has colorable defenses to these claims," as referenced on page 22 of the Disclosure Statement.
 ii. The "over 450,000 documents" in a "database" referenced on page 22 of the Disclosure Statement and all other Documents that the Special Committee received or reviewed in connection with its Analysis.
iii. Transcripts of the "depositions of Carrier Global Corporation, the Debtor, and RTX witnesses" referenced on page 22 of the Disclosure Statement, including all Documents marked as exhibits or otherwise shown to the witnesses during such depositions.
 iv. Audio recordings, transcripts, and other Documents concerning the "interview[s]" of "current and former Debtor employees" referenced on page 22 of the Disclosure Statement, including interview notes or summaries, memoranda, or other writings recording, reflecting, or otherwise memorializing the discussion during such interviews.
  v. Affidavits or declarations provided to the Special Committee in connection with its Analysis.

vi.     Written requests for documents or information that the Special Committee provided to the Debtor, Carrier, RTX, or other third parties in connection with its Analysis.

**RESPONSE TO REQUEST NO. 6**

The Debtor refers to and incorporates its General Objections as if set forth fully herein.  The Debtor further objects to Request No. 6 on the grounds that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan.  The Debtor further objects to Request No. 6 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case to the extent that it seeks all documents concerning the Special Committee's analysis of potential claims and defenses, including "without limitation" six sub-categories of documents.  The Debtor further objects to Request No. 6 on the grounds that the terms "presentations," "reflecting," "recording," "reviewed," and "in connection with" are vague and ambiguous.  The Debtor further objects to Request No. 6 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 7**

All Documents concerning the Committee's Analysis of potential claims that the Debtor or the Debtor's creditors could assert against Carrier, Carrier's officers or directors, or RTX, and potential defenses thereto, including, without limitation, Documents provided to the Committee in connection with its Analysis and Communications with the Committee or its advisors regarding its Analysis.

**RESPONSE TO REQUEST NO. 7**

The Debtor refers to and incorporates its General Objections as if set forth fully herein.  The Debtor further objects to Request No. 7 to the extent that it seeks documents that are

irrelevant to Certain Insurers' analysis of the Plan.   The Debtor further objects to Request No. 7 on the grounds that it seeks documents not in the possession, custody, or control of the Debtor to the extent it seeks documents of the Committee.   The Debtor further objects to Request No. 7 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor will produce non-privileged documents responsive to this Request to the extent that they are identified based on a reasonable search.

## DOCUMENT REQUEST NO. 8

All Documents relied upon or otherwise referenced in the Complaint which the Committee filed in this case at docket entry number 678-2 and in the motion requesting authority to pursue that Complaint which the Committee filed in this case at docket entry number 678-1.

## RESPONSE TO REQUEST NO. 8

The Debtor refers to and incorporates its General Objections as if set forth fully herein.   The Debtor further objects to Request No. 8 to the extent that it seeks documents that are irrelevant to Certain Insurers' analysis of the Plan.   The Debtor further objects to Request No. 8 on the grounds that it seeks documents not in the possession, custody, or control of the Debtor to the extent it seeks documents of the Committee.

Because this Request is more appropriately directed at the Committee to the extent it is relevant at all, the Debtor will not produce documents in response to this Request.

## DOCUMENT REQUEST NO. 9

The 2020 Separation Agreement.

**RESPONSE TO REQUEST NO. 9**

The Debtor refers to and incorporates its General Objections as if set forth fully herein.  The Debtor further objects to Request No. 9 to the extent that it seeks documents that are irrelevant to Certain Insurers' analysis of the Plan.

Subject to and without waiver of the foregoing objections, the Debtor will produce this document.

**DOCUMENT REQUEST NO. 10**

The IP & Technology Development & Licensing Agreement dated January 1, 2014.

**RESPONSE TO REQUEST NO. 10**

The Debtor refers to and incorporates its General Objections as if set forth fully herein.  The Debtor further objects to Request No. 10 to the extent that it seeks documents that are irrelevant to Certain Insurers' analysis of the Plan.

Subject to and without waiver of the foregoing objections, the Debtor will produce this document.

**DOCUMENT REQUEST NO. 11**

All Documents concerning the Contribution Agreement, the negotiation thereof, and the Debtor's decision to enter into such agreement.

**RESPONSE TO REQUEST NO. 11**

The Debtor refers to and incorporates its General Objections as if set forth fully herein.  The Debtor further objects to Request No. 11 to the extent that it seeks documents that are irrelevant to Certain Insurers' analysis of the Plan because the Contribution Agreement has already been approved by the Court and is not an issue in the Chapter 11 Case.  The Debtor further objects to Request No. 11 to the extent it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case.  The Debtor further objects to Request No. 11 because the term

"Debtor's decision to enter into such agreement" is vague and ambiguous. The Debtor further objects to Request No. 11 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Because the Contribution Agreement has previously been approved by the Court and is not relevant to Certain Insurers' assessment of the Plan, the Debtor will not produce documents in response to this Request.

**DOCUMENT REQUEST NO. 12**

All Documents concerning the Related Assets (as that term is defined in the Disclosure Statement) contributed to the Debtor in connection with the Contribution Agreement, including, without limitation, Documents concerning any prepetition transfers of such assets by the Debtor and Documents concerning Analysis of the value of such assets or the effect of such assets on the Sale.

**RESPONSE TO REQUEST NO. 12**

The Debtor refers to and incorporates its General Objections as if set forth fully herein. The Debtor further objects to Request No. 12 to the extent that it seeks documents that are irrelevant to Certain Insurers' analysis of the Plan because the Contribution Agreement and Sale have already been approved by the Court and are not an issue in the Chapter 11 Case. The Debtor further objects to Request No. 12 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case to the extent that it seeks all documents concerning the Related Assets with no limiting time period. The Debtor further objects to Request No. 12 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Because the Contribution Agreement has previously been approved by the Court and neither it nor the Related Assets are relevant to Certain Insurers' assessment of the Plan, the Debtor will not produce documents in response to this Request.

## DOCUMENT REQUEST NO. 13

All Documents the Debtor (including the Special Committee) provided to or received from Hilco Valuation Services, LLC.

## RESPONSE TO REQUEST NO. 13

The Debtor refers to and incorporates its General Objections as if set forth fully herein. The Debtor further objects to Request No. 13 to the extent that it seeks documents that are irrelevant to Certain Insurers' analysis of the Plan because the Contribution Agreement and Sale have already been approved by the Court and are not an issue in the Chapter 11 Case. The Debtor further objects to Request No. 13 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case to the extent it seeks all documents shared between the Debtor and Hilco Valuation Services regardless of the subject of the Document, its relevance to the Chapter 11 Case or the Plan, or any limiting time period. The Debtor further objects to Request No. 13 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Because The Contribution Agreement has previously been approved by the Court and neither it nor any documents shared with Hilco Valuation Services, LLC are relevant to Certain Insurers' assessment of the Plan, the Debtor will not produce documents in response to this Request.

## DOCUMENT REQUEST NO. 14

All Documents concerning the Insurance Assignment by Carrier, including, without limitation, Documents sufficient to identify, or containing or reflecting Analysis of the

value of, all rights, claims, benefits, or Causes of Action to be transferred by Carrier to the Primary AFFF Settlement Trust through the Insurance Assignment.

**RESPONSE TO REQUEST NO. 14**

The Debtor refers to and incorporates its General Objections as if set forth fully herein. The Debtor further objects to Request No. 14 on the grounds that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan. The Debtor further objects to Request No. 14 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case to the extent it seeks all documents concerning the Insurance Assignment with no limiting time period. The Debtor further objects to Request No. 14 on the grounds that "value" is vague and ambiguous. The Debtor further objects to Request No. 14 on the grounds that it seeks documents not in the possession, custody, or control of the Debtor to the extent it seeks documents of Carrier. The Debtor further objects to Request No. 14 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor will produce non-privileged documents concerning the negotiation of the agreement to provide the Insurance Assignment to the extent that they are identified based on a reasonable search.

**DOCUMENT REQUEST NO. 15**

All Documents concerning the Debtor's allegations in its Complaints in *Kidde-Fenwal, Inc.* v. *ACE American Insurance Company*, Adv. No. 23-50758 (Bankr. D. Del. filed Nov. 9, 2023), and *Kidde-Fenwal, Inc. v. Hartford Accident & Indemnity Company*, Adv. Pro. No. 24-50015 (Bankr. D. Del. filed Feb. 8, 2024), that pursuant to the April 2020 spin-off, Carrier "acquired insurance rights then belonging to the National Foam Business and its parent company prior to its 2013 sale."

## RESPONSE TO REQUEST NO. 15

The Debtor refers to and incorporates its General Objections as if set forth fully herein. The Debtor further objects to Request No. 15 to the extent that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan. The Debtor further objects to Request No. 15 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case to the extent it seeks all documents concerning certain allegations of the Debtor with no limiting time period. The Debtor further objects to Request No. 15 as circumventing the negotiated stay and limited scope of discovery in the referenced proceedings.

Subject to and without waiver of the foregoing objections, the Debtor will produce the documents it previously produced in the Insurance Adversary Proceedings.

## DOCUMENT REQUEST NO. 16

All liability insurance policies under which the Debtor or Carrier claims potential coverage for AFFF claims and any endorsements, riders, amendments, and agreements relating thereto, including, without limitation, all Insurance Policies referenced on Schedules 1 and 2 of the Plan.

## RESPONSE TO REQUEST NO. 16

The Debtor refers to and incorporates its General Objections as if set forth fully herein. The Debtor further objects to Request No. 16 on the grounds that that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan. The Debtor further objects to Request No. 16 on the grounds that it seeks documents not in the possession, custody or control of the Debtor to the extent it seeks documents of Carrier.

Subject to and without waiver of the foregoing objections, the Debtor will produce the documents it previously produced in the Insurance Adversary Proceedings.

## DOCUMENT REQUEST NO. 17

The most recent coverage chart, or other similar Analysis, reflecting the insurers, policy numbers, policy periods, and limits of liability for Insurance Policies under which the Debtor contends it has rights.

## RESPONSE TO REQUEST NO. 17

The Debtor refers to and incorporates its General Objections as if set forth fully herein. The Debtor further objects to Request No. 17 on the grounds that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan. The Debtor further objects to Request No. 17 on the grounds that "coverage chart" is vague and ambiguous. The Debtor further objects to Request No. 17 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege. The Debtor further objects to Request No. 17 as circumventing the negotiated stay in the Insurance Adversary Proceedings.

Because this Request seeks privileged documents, the Debtor will not produce documents in response to this Request.

## DOCUMENT REQUEST NO. 18

The most recent coverage chart, or other similar Analysis, reflecting the insurers, policy numbers, policy periods, and limits of liability for Insurance Policies under which Carrier contends it has rights.

## RESPONSE TO REQUEST NO. 18

The Debtor refers to and incorporates its General Objections as if set forth fully herein. The Debtor further objects to Request No. 18 on the grounds that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan. The Debtor further objects to Request No. 18 on the grounds that "coverage chart" is vague and ambiguous. The Debtor further objects to Request No. 18 on the grounds that it seeks documents not in the

possession, custody, or control of the Debtor to the extent it seeks documents of Carrier.  The

Debtor further objects to Request No. 18 to the extent that it seeks discovery of information that

is protected from disclosure under any applicable privilege, immunity, or protection, including the

attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation

Privilege.  The Debtor further objects to Request No. 18 as circumventing the negotiated stay in

the Insurance Adversary Proceedings.

Because this Request seeks privileged documents to the extent it seeks any

documents of the Debtor rather than Carrier, the Debtor will not produce documents in response

to this Request.

## DOCUMENT REQUEST NO. 19

All Documents concerning the Insurance Cooperation Agreement, the negotiation
thereof, and the Debtor's decision to enter into such agreement, including, without limitation,
Documents concerning Analysis of the value of such agreement to the Debtor, its Estate, or the
Primary AFFF Settlement Trust.

## RESPONSE TO REQUEST NO. 19

The Debtor refers to and incorporates its General Objections as if set forth fully

herein.  The Debtor further objects to Request No. 19 on the grounds that it seeks documents that

are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan.  The Debtor

further objects to Request No. 19 on the grounds that it is overbroad, unduly burdensome, and

disproportionate to the needs of the Action.  The Debtor further objects to Request No. 19 on the

grounds that the Debtor is not a party to the Insurance Cooperation Agreement.  The Debtor further

objects to Request No. 19 on the grounds that it seeks documents not in the possession, custody,

or control of the Debtor to the extent it seeks documents of the parties to the Insurance Cooperation

Agreement.  The Debtor further objects to Request No. 19 to the extent that it seeks discovery of

information that is protected from disclosure under any applicable privilege, immunity, or

protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor will produce non-privileged documents concerning the negotiation of the Insurance Cooperation Agreement to the extent that they are identified based on a reasonable search.

**DOCUMENT REQUEST NO. 20**

All Documents concerning estimates, projections, or other Analysis of the Net Insurance Proceeds (as that term is used in the Insurance Cooperation Agreement) to be paid to Carrier under the Insurance Cooperation Agreement.

**RESPONSE TO REQUEST NO. 20**

The Debtor refers to and incorporates its General Objections as if set forth fully herein. The Debtor further objects to Request No. 20 on the grounds that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan. The Debtor further objects to Request No. 20 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case. The Debtor further objects to Request No. 20 on the grounds that the terms "estimates" and "projections" are vague and ambiguous. The Debtor further objects to Request No. 20 on the grounds that it seeks documents not in the possession, custody, or control of the Debtor to the extent it seeks documents of Carrier. The Debtor further objects to Request No. 20 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Subject to and without waiver of the foregoing objections, the Debtor will produce non-privileged documents responsive to this Request to the extent that they are identified based on a reasonable search.

**DOCUMENT REQUEST NO. 21**

All Documents concerning the Debtor's Analysis of Carrier's actual or potential liability for Direct Claims or Independent AFFF Causes of Action.

**RESPONSE TO REQUEST NO. 21**

The Debtor refers to and incorporates its General Objections as if set forth fully herein. The Debtor further objects to Request No. 21 on the grounds that it seeks documents that are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan, including because it seeks documents relating to liabilities of Carrier, a non-Debtor, which are not being released or settled under the Plan. The Debtor further objects to Request No. 21 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case to the extent it seeks all documents concerning the Debtor's analysis of Carrier's liability with no limiting time period. The Debtor further objects to Request No. 21 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Due to its overbreadth and the fact that it seeks privileged documents, and because Certain Insurers have not articulated a basis for the relevancy of this Request to their assessment of the Plan, the Debtor will not produce documents in response to this Request.

**DOCUMENT REQUEST NO. 22**

All Documents concerning the Debtor's Analysis of Carrier's actual or potential liability for claims or Causes of Action unrelated to AFFF for which Carrier has asserted or could assert rights or claims to coverage under Insurance Policies.

**RESPONSE TO REQUEST NO. 22**

The Debtor refers to and incorporates its General Objections as if set forth fully herein. The Debtor further objects to Request No. 22 on the grounds that it seeks documents that

are irrelevant to Certain Insurers' analysis of, and potential objections to, the Plan, including because it seeks documents relating to liabilities of Carrier, a non-Debtor, which are not being released or settled under the Plan. The Debtor further objects to Request No. 22 on the grounds that it is overbroad, unduly burdensome, and disproportionate to the needs of the Chapter 11 Case to the extent it seeks all documents concerning the Debtor's analysis of Carrier's liability with no time limitation. The Debtor further objects to Request No. 22 to the extent that it seeks discovery of information that is protected from disclosure under any applicable privilege, immunity, or protection, including the attorney-client privilege, common-interest privilege, the work-product doctrine, and Mediation Privilege.

Due to its overbreadth and the fact that it seeks privileged documents, and because Certain Insurers have not articulated a basis for the relevancy of this Request to their assessment of the Plan, the Debtor will not produce documents in response to this Request.

Dated: March 24, 2025
      Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Casey B. Sawyer*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Daniel B. Butz (No. 4227)
Tamara K. Mann (No. 5643)
Casey B. Sawyer (No. 7260)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
E-mail: dabbott@morrisnichols.com
       aremming@morrisnichols.com
       dbutz@morrisnichols.com
       tmann@morrisnichols.com
       csawyer@morrisnichols.com
-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Justin J. DeCamp (admitted *pro hac vice*)
Benjamin S. Beller (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
       gluecksteinb@sullcrom.com
       decampj@sullcrom.com
       bellerb@sullcrom.com

*Counsel for the Debtor and Debtor-in-Possession*

# EXHIBIT D

# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

BRUSSELS • FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

June 24, 2025

Via E-mail

Javed S. Yunus
    O'Melveny & Myers LLP
        1301 Avenue of the Americas, Suite 1700
            New York, NY 10019-6022
                jyunus@omm.com

Re:    *In re KFI Wind-Down Corp., Case No. 23-10638 (Bankr. D. Del.)*

Dear Counsel:

I write on behalf of KFI Wind-Down Corp. f/k/a Kidde-Fenwal, Inc., ("KFI") in response to our June 18 meet and confer and Certain Insurers' June 20 letter (the "June 20 Letter") concerning *Certain Insurers' Second Set of Plan-Related Requests for Production to KFI Wind-Down Corp.*, dated February 21, 2025 (the "Requests").

***"Improper Responses and Objections" and Search Terms and Custodians.*** KFI does not agree that any of its responses or objections to the Requests are "[i]mproper." During the June 18 meet and confer, we confirmed that we are conducting reasonable searches and are not withholding documents that are identified through those searches and review as responsive and not privileged. Coincident with our first production, we also agreed to provide certain search methodology information pursuant to Del. Bankr. L.R. Rule 7026-3(d). KFI will provide the custodians from which collection was undertaken, the relevant date ranges, and the search terms used to identify potentially responsive documents.

***Completion of Production***. Your letter states that "[y]ou stated KFI would be making its first production at the end of this week or early next, and would substantially complete its production of documents by mid-July." (June 20 Letter at 1.) During the June 18 meet and confer, we stated that KFI would make its first production during the week of June 20 or early in the week of June 23, provided that the insurers executed the signature page to the Protective Order governing productions in this chapter 11 case. [D.I. 337]. Your letter omits our discussion about the Protective Order, despite the fact that counsel for the insurers stated that they would confer internally and report back to KFI on this topic. On June 17, we sent counsel for Certain Insurers the signature page (Exhibit A) to the Protective Order and the underlying Protective Order. Thus far, we have

Counsel to Certain Insurers                                                    -2-

not received confirmation as to which insurers have or have not executed copies of the signature page.  KFI is now prepared to make its first production, subject to this confirmation.

In addition, we stated during the meet and confer that we are aiming to substantially complete production by mid- to late July, and would keep you informed if that changes.  Although counsel for the insurers requested a "date certain" for substantial completion in July, which we explained we are currently unable to provide, none raised any issues with this timeline.  Your letter suggests that because the Requests were served several months ago, KFI should be farther along in its review and production, but ignores that the insurers waited over two months after receiving KFI's responses and objections to the Requests on March 24 to engage with KFI and still have not confirmed that they have executed Exhibit A of the Protective Order.  During that intervening period, KFI was diligently collecting documents and conducting its review.

*Privilege Log*.  Your letter requests "KFI's position on the rolling privilege logs, and the content of the categorical log."  (June 20 Letter at 1.)  We can confirm that we will produce a privilege log that contains, for each withheld and redacted document, the document date and time, the To/From/Cc/Bcc e-mail participants on the document, and the subject line of e-mail correspondence (to the extent not privileged), as well as categorical descriptions of documents by group.  KFI agrees to produce such a privilege log at or near the completion of its productions.

*Mediation Privilege*.  We were quite surprised by the assertion in your letter that the insurers "maintain that KFI waived the mediation privilege" for documents "that were disclosed to the mediator or in the presence of the mediator, including mediation presentations or communications made during mediation," and "any other documents in connection with the mediation, by placing the very fact of the mediation at issue to support that the Plan was drafted and negotiated in good faith."  (June 20 Letter at 1-2.)

This position is entirely inconsistent with our discussion during the June 18 meet and confer.  During that discussion, we clarified that KFI is not taking the position that every communication made with any mediation party is subject to the mediation privilege, but that certain documents, including mediation statements submitted to the mediators, presentations made to the mediators, and communications with the mediators present, for example, are clearly subject to the mediation privilege.  KFI asked whether the insurers were taking the position that even those latter categories of documents were subject to production.  Adam Haberkorn (counsel at your firm, O'Melveny & Myers LLP) stated unequivocally that the insurers are *not* seeking documents provided to or communications made in the presence of the mediators, but that the insurers would expect to see such documents logged on KFI's privilege log (*i.e.*, withheld on the basis of mediation privilege).  At no point during our conferral did any counsel for the insurers (and there were many on the call) raise any "waiver"-related argument or maintain that *all* communications and documents exchanged in the mediation, including mediation

Counsel to Certain Insurers                                                          -3-

statements and presentations and other communications involving the mediators, were somehow not protected by the mediation privilege.

        Moreover, in addition to reflecting bad faith, the position that the insurers are apparently now taking, as set forth in your letter, fails to withstand even the most basic scrutiny.

        *First*, the citation to the June 4 hearing transcript that the insurers now frivolously maintain constituted a "waiver" of the mediation privilege by placing the "fact" of mediation "at issue" does no such thing.  The cited statement by counsel for Carrier reads as follows:  "For these guys to stand up and say that there was some collusion or some improper conduct when this entire construct was developed under the auspices of a court-ordered mediation overseen by two Federal Judges, that takes chutzpah.  So let's just put that in perspective for the time being."[1]  Under Third Circuit law, the "at issue" doctrine is applied "narrowly" and "only . . . when the party puts at issue the *actual contents* of" privileged communications "in support of its claim or defense."  *Sensormatic Elecs., LLC* v. *Genetec (USA) Inc.*, 2022 WL 14760185, at *2 (D. Del. Oct. 20, 2022), *adopted*, 2022 WL 18007332 (D. Del. Dec. 30, 2022) (emphasis in original) (citing *Rhone-Poulenc Rorer Inc.* v. *Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994)); *Livingstone* v. *North Belle Vernon Borough*, 91 F.3d 515, 537 n.36 (3d Cir. 1996) (holding that the "at issue" doctrine may apply where a party puts "the substance" of privileged communications or advice at issue).[2]  The statement cited by your letter reveals no content or substance of documents or communications protected by the mediation privilege, and does not put the actual contents of such protected materials at issue.[3]  The existence and hard-fought results of the mediation are non-privileged facts.

---

[1]    *In re: KFI Wind-Down Corp.*, No. 23-10638 (LSS) (Bankr. D. Del. June 4, 2025) (Hr'g Tr. at 246:11-16).

[2]    *See also In re Teleglobe Commc'ns Corp.*, 392 B.R. 561, 586 (Bankr. D. Del. 2008) (rejecting litigant's "at issue" waiver claim after finding testimony regarding privileged communications merely discussed the witness' "actions" and "beliefs" without "refer[ring] specifically to the contents of any of the alleged privileged documents"); *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 378 (3d Cir. 2007), *as amended* (Oct. 12, 2007) ("In discovery disputes, implied waivers are construed narrowly."); *United States* v. *Liebman*, 742 F.2d 807, 811 n. 4 (3d Cir.1984) (refusing to find waiver of privilege "on a speculative basis").

[3]    *Berardino* v. *Prestige Mgmt. Servs., Inc.*, 2017 WL 1084523, at *5 (D.N.J. Mar. 21, 2017) ("In *Rhone–Poulenc*, like here, advice of counsel was not raised as an affirmative defense nor were there any acts evincing a clear intent to waive the attorney-client privilege by placing at issue reliance on the advice of counsel.  In fact, the Third Circuit explicitly rejected [the] argument here—that by asserting the

Counsel to Certain Insurers                                                                                    -4-

*Second*, setting aside that this and any similar statements clearly do not put the content or substance of the mediation "at issue" or waive privilege, under Third Circuit law, one party or client cannot "unilaterally waive the privilege" shared by other parties or clients.  *See, e.g.*, *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 363 (3d Cir. 2007); *Magnetar Techs. Corp.* v. *Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 486 (D. Del. 2012); *Interfaith Hous. Delaware, Inc.* v. *Town of Georgetown*, 841 F. Supp. 1393, 1400 (D. Del. 1994).  The statement cited by your letter was not made by KFI, and even if another party intended to waive the mediation privilege (which we have no reason to believe they did), it would have no impact on KFI's ability to assert the mediation privilege.

*Third*, Judge Silverstein has made her views on the boundaries of the mediation privilege clear.  In the *Order Appointing Mediators* [D.I. 660], Judge Silverstein incorporated Local Rule 9019-5(d), which provides, among other things, that "the mediator *and the participants in mediation are prohibited* from divulging, outside of the mediation, any oral or written information disclosed by the parties or witnesses to or in the presence of the mediator, or between the parties during any mediation conference."  Del. Bankr. L.R. Rule 9019-5(d)(ii) (emphasis added).  At a hearing in another proceeding, Judge Silverstein also clarified that although the mediation privilege does not apply to "every exchange between parties" during the mediation, it does apply to communications and discussions with the mediator, as well as reports and mediation statements made to the mediator.  *See In re Imerys*, No. 19-10289 (LSS) (Bankr. D. Del. Nov. 15, 2021) (Hr'g Tr. at 33:2-24).  KFI's position with respect to the assertion of mediation privilege—to which no insurer objected during our discussion—is consistent with this guidance.

*RFP Nos. 2 and 15*.  Your letter states that KFI agreed that it "would be willing to produce final versions" of experts' "final analysis" relating to tort liability. (June 20 Letter at 2.)  Again, you mischaracterize our discussion.  During the meet and confer, we sought to clarify whether the insurers were seeking (i) every draft and communication related to any expert analysis of the valuation of tort liability and the Estate's potential causes of action against Carrier, or (ii) solely the final version of such analyses and, if the latter, whether the insurers might accept such final versions of the analyses in satisfaction of the requests and without any broader waiver and with appropriate use restrictions.  As explained during our discussion, KFI believes that all such materials, to the extent they exist, are privileged, but asked for clarification on what the insurers are seeking in order to consider whether a compromise might be reached.  You confirmed that

_____

affirmative defense of good faith, [defendant] has impliedly waived its privileges."); *Sheldone* v. *Pennsylvania Tpk. Comm'n*, 104 F. Supp. 2d 511, 517 & n. 4 (W.D. Pa. 2000), *aff'd* (Aug. 8, 2000) (rejecting plaintiffs' claim that mediation privilege was waived by putting "mediation communications and documents 'at issue'" and holding that the court "fails to see how the Defendant's assertion of the affirmative defense that it acted on a good faith belief that its conduct was lawful constitutes a waiver of the mediation privilege").

Counsel to Certain Insurers                                                          -5-

counsel for the insurers would discuss this request for clarification internally and revert. Are we to understand your letter to mean that the insurers reject any pursuit of a possible compromise on these requests, and are seeking all drafts and communications, in addition to any operative or final analyses?  If so, that position is indefensible insofar as it seeks facially privileged information.

       **RFP Nos. 3-4**.  As noted above, KFI agrees to log documents that are withheld or redacted on the basis of privilege in its privilege log, including on the basis of mediation privilege.  As also noted above, KFI rejects the insurers' position, as articulated in your letter (which, again, contradicts our discussion), with respect to any supposed "waiver" of the mediation privilege, which is indefensible and frivolous.

       **RFP No. 6**.  There are no third-party releases contained in the Plan.  KFI's Disclosure Statement states that "the releases under the Plan (including under Section 10.3 of the Plan) do not release any claims that are not property of the Debtor or its Estate." [D.I. 2206-1, at Art. 1.]  This was further confirmed by both counsel for KFI and counsel for Carrier at the June 4, 2025 hearing regarding Disclosure Statement objections.  *See, e.g.*, *In re: KFI Wind-Down Corp.*, No. 23-10638 (LSS) (Bankr. D. Del. June 4, 2025) (Hr'g Tr. at 20:9-21:3, 245:15-21).  No further confirmation is necessary.

       **RFP No. 24**.  We stated that KFI will produce documents in response in this request to the extent non-privileged documents are identified as responsive based on our search parameters.

       ***Special Committee Documents***.  The Special Committee did not conduct independent depositions of any witnesses in the Chapter 11 case.  KFI intends to produce the deposition transcripts (and exhibits, to the extent they are in KFI's possession) of the following witnesses that were deposed by the Committee:  (i) Michael Dumais, (ii) Jeffrey Sherry, (iii) Steve Hannan, and (iv) James Mesterharm.  We are continuing to confer with counsel for the Special Committee with respect to the requests implicating the work of the Special Committee.

                           Sincerely,

                           /s/ Justin J. DeCamp

                           Justin J. DeCamp

cc:

Stamatios Stamoulis
STAMOULIS & WEINBLATT LLC
800 N. West Street, Suite 800

Counsel to Certain Insurers                                                    -6-

Wilmington, DE 19801
stamoulis@swdelaw.com

Andrew Frackman
Tancred Schiavoni
O'MELVENY & MYERS LLP
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
afrackman@omm.com
tschiavoni@omm.com

Robert J. Katzenstein
Julie O'Dell, Esq
Smith Katzenstein & Jenkins LLP
1000 West Street, Suite 1501
Wilmington, DE 19801
rjk@skjlaw.com
jmo@skjlaw.com

Stefano V. Calogero
WINDELS MARX LANE & MITTENDORF, LLP
One Giralda Farms
Madison, NJ 07940

Benjamin A. Blume
Karen Andersen Moran
KENNEDYS CMK LLP
30 South Wacker Drive, Suite 3650
Chicago, Illinois 60606
Benjamin.blume@kennedyslaw.com
Karen.andersenmoran@kennedyslaw.com

Marc Casarino
KENNEDYS CMK LLP
222 Delaware Ave. Suite 710
Wilmington, Delaware 19801
Marc.casarino@kennedyslaw.com

Joseph B. Cicero
Mark L. Desgrosseilliers
CHIPMAN BROWN CICERO & COLE LLP
1313 North Market Street, Suite 4500
Wilmington, Delaware 19801
cicero@chipmanbrown.com

Counsel to Certain Insurers                                                -7-

desgross@chipmanbrown.com

William E. Chipman, Jr.
CHIPMAN BROWN CICERO & COLE, LLP
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
chipman@chipmanbrown.com

Harris B. Winsberg
Matthew M. Weiss
PARKER, HUDSON, RAINER & DOBBS LLP
303 Peachtree Street, Suite 3600
Atlanta, GA 30308
hwinsberg@phrd.com
mweiss@phrd.com

Paul W. Kalish
Marc E. Haas
Deidre G. Johnson
STRADLEY RONON L.L.P.
2000 K. Street, N.W., Suite 3600
Washington, D.C. 20006
pkalish@stradley.com
mhaas@stradley.com
djohnson@stradley.com

Joseph G. Davis
WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, D.C. 20006
jdavis@willkie.com

Jennifer Hardy
WILLKIE FARR & GALLAGHER LLP
600 Travis Street
Houston, Texas 77002
jhardy2@willkie.com

Simone Marton
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
smarton@willkie.com

Counsel to Certain Insurers                                              -8-

Robert K. Beste
SMITH, KATZENSTEIN & JENKINS LLP
1000 North West Street, Suite 1501
Wilmington, Delaware 19899
rkb@skjlaw.com

Paul R. Koepff
Kevin Haas
Ryan Westerfield
Mina Beshara
Clyde & Co LLP
405 Lexington Avenue, 16th Floor
New York, New York 10174
paul.koepff@clydeco.us

Fred L. Alvarez
Walker Wilcox Matousek LLP
One North Franklin Street, Suite 3200
Chicago, Illinois 60606
falvarez@walkerwilcox.com

Tony L. Draper
Walker Wilcox Matousek LLP
1001 McKinney Street, Suite 2000
Houston, Texas 77002
tdraper@walkerwilcox.com

Maria Aprile Sawczuk
GOLDSTEIN & MCCLINTOCK, LLLP
501 Silverside Road, Suite 65
Wilmington, DE 19809
marias@goldmclaw.com

David Christian
David Christian Attorneys LLC
105 W. Madison St., Suite 2300
Chicago, IL 60602
dchristian@dca.law

Richard W. Riley
Pashman Stein Walder Hayden, P.C.
824 North Market Street, Suite 800,
Wilmington, DE 19801

Counsel to Certain Insurers                                                -9-

rriley@pashmanstein.com

Laurie A. Kamaiko
Saul Ewing LLP
1270 Avenue of the Americas, Suite 2800
New York, NY 10020
laurie.kamaiko@saul.com

Zachary W. Berk
Saul Ewing LLP
131 Dartmouth Street, Suite 501
Boston, MA 02116
zachary.berk@saul.com

Mark Plevin
Plevin & Turner LLP
580 California Street, 12th Floor
San Francisco, California 94104
mplevin@plevinturner.com

Miranda Turner
Plevin & Turner LLP
1701 Pennsylvania Ave., N.W., Suite 200
Washington, DC 20006
mturner@plevinturner.com

Bruce W. McCullough
BODELL BOVÉ LLC
1225 N. King Street, Suite 1000
Wilmington, DE 19801-3250
bmccullough@bodellbove.com

Joshua D. Weinberg
Annette P. Rolain
RUGGERI PARKS WEINBERG LLP
1875 K Street NW, Suite 600
Washington, DC 20006
jweinberg@ruggerilaw.com
arolain@ruggerilaw.com

M. Claire McCudden
MARSHALL DENNEHEY, P.C.
1007 N. Orange Street, Suite 600
P.O. Box 8888

Counsel to Certain Insurers                                                -10-

Wilmington, Delaware 19899-8888
MCMcCudden@MDWCG.com

Sarah D. Gordon
Johanna Dennehy
Ansley Seay
STEPTOE LLP
1330 Connecticut Avenue NW
Washington, DC 20036
sgordon@steptoe.com
jdennehy@steptoe.com
aseay@steptoe.com

Joshua D. Weinberg
Annette P. Rolain
RUGGERI PARKS WEINBERG LLP
875 K Street NW, Suite 600
Washington, DC 20006
jweinberg@ruggerilaw.com
arolain@ruggerilaw.com

Louis J. Rizzo, Jr.
REGER RIZZO & DARNALL LLP
1521 Concord Pike, Suite 305
Brandywine Plaza West Wilmington, Delaware 19803
lrizzo@regerlaw.com

Karen C. Bifferato
CONNOLLY GALLAGHER LLP
1201 North Market Street, 20th Floor
Wilmington, Delaware 19801
kbifferato@connollygallagher.com

Stephen V. Gimigliano
John Malone
Christopher K. Kim
GIMIGLIANO MAURIELLO & MALONEY, P.A.
163 Madison Avenue, Suite 500
P.O. Box 1449
Morristown, New Jersey 07962-1449
sgimigliano@lawgmm.com
jmaloney@lawgmm.com
ckim@lawgmm.com

# EXHIBIT E

| | |
|---|---|
| **From:** | Greene, Miles H. |
| **To:** | jburke@ruggerilaw.com |
| **Cc:** | arolain@ruggerilaw.com; jweinberg@ruggerilaw.com; Haberkorn, Adam P.; Alexandre, Quentin; Antonelli, Matthew; aseay@STEPTOE.COM; Benjamin.Blume@KENNEDYSLAW.COM; Beshara, Mina; bmccullough@bodellbove.com; Brandt, Joseph; brooks@lrclaw.com; zzExt-brown; Burbage, James; Christopher Kim; ckeener@coochtaylor.com; Crofford, Gabrielle (Gabe; Davis, Alexa L.; Davis, Joseph; dchristian@dca.law; DGJohnson@mintz.com; dwalulik@fbtlaw.com; Campbell, Eamonn W.; ekonecke@WINDELSMARX.COM; esanders@ubglaw.com; falvarez@WALKERWILCOX.COM; Fitzmaurice, James; Frackman, Andrew; george@ifrahlaw.com; Groffl@whiteandwilliams.com; Hardy, Jennifer; hwinsberg@phrd.com; Ingrassiam@whiteandwilliams.com; jdennehy@STEPTOE.COM; jessica.buckwalter@LBKMLAW.COM; jhite@SHMRLAW.COM; jillian.dennehy@kennedyslaw.com; jmo@SKJLAW.COM; John Maloney; Joseph Cicero; Joyce, Robert L.; Kamaiko, Laurie A.; Karen.AndersenMoran@KENNEDYSLAW.COM; kbifferato@connollygallagher.com; Kass-Gergi, Yara; kmeyers@WINDELSMARX.COM; Koepff, Paul (paul.koepff@clydeco.us); Lee, Clarence Y.; lrizzo@regerlaw.com; matthew.starner@kennedyslaw.com; Marc.Casarino@KENNEDYSLAW.COM; marias@restructuringshop.com; Mark Desgrosseilliers; mark.leimkuhler@LBKMLAW.COM; Martint@whiteandwilliams.com; Marton, Simon; MCMcCudden@MDWCG.COM; mehaas@mintz.com; mgramke@ubglaw.com; mhalter@regerlaw.com; michael.baughman@mclolaw.com; mweiss@phrd.com; Paul Brown; Perez, Stephanie; mplevin@plevinturner.com; pwkalish@mintz.com; rjk@SKJLAW.COM; rkb@SKJLAW.COM; Robert.Joyce@littletonjoyce.com; RRiley@WHITEFORDLAW.COM; Santellep@whiteandwilliams.com; scalogero@WINDELSMARX.COM; Schiavoni, Tancred; sgerald@whitefordlaw.com; Sgordon@STEPTOE.COM; Jabouin, Sheya L.; Spain, Thomas; stamoulis@swdelaw.com; Stephen Gimigliano; StJeanos, Christopher; tdraper@WALKERWILCOX.COM; Turner, Miranda; tyler.pierson@kennedyslaw.com; Warren, Steve; Westerfield, Ryan; William Chipman; Yunus, Javed S.; Zhao, Amy; hwinsberg@phrd.com; Matt M. Weiss; pkalish@stradley.com; mhaas@stradley.com; djohnson@stradley.com; "Berk, Zachary W."; Mark J. Leimkuhler; John D. LaBarbera; DAbbott@morrisnichols.com; Remming, Andrew; Butz, Daniel; Mann, Tamara K.; Sawyer, Casey; Jones, Scott; Giuffra Jr., Robert J.; Dietderich, Andrew G.; Glueckstein, Brian D.; DeCamp, Justin J.; Beller, Benjamin S.; Kapoor, Julie G.; Marchello, Matthew J.; blenhart@cov.com; adyschkant@cov.com; kglandon@cov.com; dluttinger@cov.com |
| **Subject:** | RE: In re: KFI Wind-Down Corp. Case No. 23-10638 (LSS) (Bankr. D. Del) - Debtor"s Responses and Objections to Insurers" Second and Third Sets of RFPS |
| **Date:** | Tuesday, June 24, 2025 9:19:07 PM |
| **Attachments:** | image001.png |

James,

We have provided responses to the points you sent below:

- The Debtor is now prepared to make its first production subject to your confirmation concerning the insurers' execution of the signature page to the Protective Order, as noted in my email from Monday afternoon.

  - Separately, the Debtor will provide search methodology information pursuant to Del. Bankr. L.R. Rule 7026-3(d). Specifically, KFI will provide the custodians, the relevant date ranges, and the search terms used to identify potentially responsive documents. The Debtor is aiming to complete its productions in response to the insurers' RFPs in mid- to late July, and will keep the insurers informed if something changes with respect to that target date.

- The Debtor confirms that it will produce a privilege log that contains, for each withheld and redacted document, the document date and time, the To/From/Cc/Bcc e-mail participants on the document, and the subject line of e-mail correspondence (to the extent not privileged), as well as categorical descriptions of documents by group. The Debtor agrees to produce such a privilege log at or near the completion of productions.

- RFP No. 4:  The Debtor is not taking the position that every communication exchanged with other mediation parties during the mediation period is subject to the mediation privilege.  The Debtor will assert mediation privilege over documents and communications that were made to or in the presence of the mediators, such as mediation statements submitted to the mediators, presentations made to the mediators, and communications with the mediators present.  We understood from our call that you have no issues with this approach, but the letter we received from counsel for the insurers at O'Melveny on June 20, 2025 appears to take a contrary position.  Please let us know if there is any disagreement with respect to this approach.

- RFP No. 8:  We have discussed this clarified request internally and will produce the documents that are identifiable from the face of the Committee's complaint that are in Debtor's possession.

- RFP Nos. 11-13:  We continue to view these requests as seeking non-relevant information, but as a compromise and without waiver of any of KFI's objections, we will produce non-privileged documents responsive to these requests to the extent that we identify such documents based on our search parameters.

- RFP Nos. 17-18:  During the conferral, you agreed that coverage charts or similar analyses that were prepared by coverage counsel may be privileged, and clarified, among other things, that these requests seek non-privileged versions of such charts or analyses.  We do not believe that the Debtor possesses any non-privileged documents that are responsive to these requests.  KFI will be producing the insurance policies, from which the insurers can develop information or analyses related to policy limits and policy period dates themselves.

- RFP Nos. 21-22:  During the conferral, we explained that to the extent documents responsive to these requests exist, such documents would be facially privileged and not subject to disclosure.  If KFI identifies such documents in its search, KFI agrees to log them in its privilege log.  At present, however, KFI is not aware of the existence of documents responsive to these requests.

- RFP Nos. 1, 3, 14, and 19:  You asked us to advise which aspects, if any, in these requests the Debtor is excluding from its definition of what it will produce in response to the requests.
  - As to RFP Nos. 1 and 3, we continue to view aspects of these requests as seeking non-relevant information, but as a compromise and without waiver of any of KFI's objections, we will produce non-privileged documents responsive to these requests to the extent that we identify such documents based on our search parameters.
  As to RFP Nos. 14 and 19, we will produce non-privileged documents responsive to

these requests to the extent that we identify such documents based on our search parameters.

- RFP No. 6:  We are discussing aspects of this request with counsel for the Special Committee and hope to revert later this week.

Best regards,
Miles

**Miles Greene**
212 558-4238 (T) | 718 316-0117 (M)

---

**From:** James Burke <jburke@ruggerilaw.com>
**Sent:** Friday, June 13, 2025 8:10 PM
**To:** DeCamp, Justin J. <decampj@sullcrom.com>; Abbott, Derek <DAbbott@morrisnichols.com>; Remming, Andrew <ARemming@morrisnichols.com>; Butz, Daniel <DButz@morrisnichols.com>; Mann, Tamara K. <tmann@morrisnichols.com>; Sawyer, Casey <csawyer@morrisnichols.com>; Jones, Scott <sjones@morrisnichols.com>; Giuffra Jr., Robert J. <giuffrar@sullcrom.com>; Dietderich, Andrew G. <dietdericha@sullcrom.com>; Glueckstein, Brian D. <gluecksteinb@sullcrom.com>; Beller, Benjamin S. <bellerb@sullcrom.com>; Marchello, Matthew J. <marchellom@sullcrom.com>; Kapoor, Julie G. <kapoorj@sullcrom.com>; blenhart@cov.com; adyschkant@cov.com; kglandon@cov.com; dluttinger@cov.com
**Cc:** Annette Rolain <arolain@ruggerilaw.com>; Joshua Weinberg <jweinberg@ruggerilaw.com>; Haberkorn, Adam P. <ahaberkorn@omm.com>; Alexandre, Quentin <Quentin.Alexandre@clydeco.us>; Antonelli, Matthew <matt.antonelli@saul.com>; aseay@STEPTOE.COM; Benjamin.Blume@KENNEDYSLAW.COM; Beshara, Mina <Mina.Beshara@clydeco.us>; bmccullough@bodellbove.com; Brandt, Joseph <JBrandt@willkie.com>; brooks@lrclaw.com; zzExt-brown <brown@lrclaw.com>; Burbage, James <JBurbage@willkie.com>; Christopher Kim <CKim@lawgmm.com>; ckeener@coochtaylor.com; Crofford, Gabrielle (Gabe <GCrofford@willkie.com>; Davis, Alexa L. <ADavis@willkie.com>; Davis, Joseph <JDavis@WILLKIE.COM>; dchristian@dca.law; DGJohnson@mintz.com; dwalulik@fbtlaw.com; Campbell, Eamonn W. <ecampbell@omm.com>; ekonecke@WINDELSMARX.COM; esanders@ubglaw.com; falvarez@WALKERWILCOX.COM; Fitzmaurice, James <JFitzmaurice@willkie.com>; zzExt-afrackman <afrackman@omm.com>; george@ifrahlaw.com; Groffl@whiteandwilliams.com; Hardy, Jennifer <JHardy2@willkie.com>; hwinsberg@phrd.com; Ingrassiam@whiteandwilliams.com; jdennehy@STEPTOE.COM; jessica.buckwalter@LBKMLAW.COM; jhite@SHMRLAW.COM; jillian.dennehy@kennedyslaw.com; jmo@SKJLAW.COM; John Maloney <JMaloney@lawgmm.com>; Joseph Cicero <Cicero@chipmanbrown.com>; Joyce, Robert L. <Robert.Joyce@littletonpark.com>; Kamaiko, Laurie A. <laurie.kamaiko@saul.com>; Karen.AndersenMoran@KENNEDYSLAW.COM; kbifferato@connollygallagher.com; Kass-Gergi, Yara <YKass-Gergi@willkie.com>; kmeyers@WINDELSMARX.COM; Koepff, Paul (paul.koepff@clydeco.us) <paul.koepff@clydeco.us>; Lee, Clarence Y. <Clarence.Lee@saul.com>; lrizzo@regerlaw.com;

matthew.starner@kennedyslaw.com; Marc.Casarino@KENNEDYSLAW.COM; marias@restructuringshop.com; Mark Desgrosseilliers <desgross@chipmanbrown.com>; mark.leimkuhler@LBKMLAW.COM; Martint@whiteandwilliams.com; Marton, Simone <SMarton@willkie.com>; MCMcCudden@MDWCG.COM; mehaas@mintz.com; mgramke@ubglaw.com; mhalter@regerlaw.com; michael.baughman@mclolaw.com; mweiss@phrd.com; Paul Brown <Brown@chipmanbrown.com>; Perez, Stephanie <sperez@omm.com>; mplevin@plevinturner.com; pwkalish@mintz.com; rjk@SKJLAW.COM; rkb@SKJLAW.COM; Robert.Joyce@littletonjoyce.com; RRiley@WHITEFORDLAW.COM; Santellep@whiteandwilliams.com; scalogero@WINDELSMARX.COM; Schiavoni, Tancred <tschiavoni@omm.com>; sgerald@whitefordlaw.com; Sgordon@STEPTOE.COM; Jabouin, Sheya I. <sjabouin@omm.com>; Spain, Thomas <thomas.spain@saul.com>; stamoulis@swdelaw.com; Stephen Gimigliano <SGimigliano@lawgmm.com>; StJeanos, Christopher <cstjeanos@willkie.com>; tdraper@WALKERWILCOX.COM; Turner, Miranda <mturner@plevinturner.com>; tyler.pierson@kennedyshop.com; Warren, Steve <swarren@omm.com>; Westerfield, Ryan <Ryan.Westerfield@clydeco.us>; William Chipman <Chipman@chipmanbrown.com>; Yunus, Javed S. <jyunus@omm.com>; Zhao, Amy <amyzhao@omm.com>; hwinsberg@phrd.com; Matt M. Weiss <mweiss@phrd.com>; Paul W. Kalish - Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. (pkalish@stradley.com) <pkalish@stradley.com>; mhaas@stradley.com; Deirdre G. Johnson (djohnson@stradley.com) <djohnson@stradley.com>; 'Berk, Zachary W.' <Zachary.Berk@saul.com>; Mark J. Leimkuhler <Mark.Leimkuhler@LBKMLAW.COM>; John D. LaBarbera <John.LaBarbera@kennedyslaw.com>
**Subject:** [EXTERNAL] RE: In re: KFI Wind-Down Corp. Case No. 23-10638 (LSS) (Bankr. D. Del) - Debtor's Responses and Objections to Insurers' Second and Third Sets of RFPS

Justin,

Thanks for your time today.  My summary of our meet and confer about Certain Insurers' Third Set of Requests for Production follows.  Of course, please let me know if you disagree with any point here.

- The Debtor currently anticipates commencing its responsive productions next week. If the Debtor agrees that it is obliged to do so under Local Rule 7026-3(d) and Paragraph 4 of the Discovery Protocol (Dkt. No. 337-1), the Debtor anticipates disclosing its search and collection protocol in its production letter for its initial production.  The Debtor currently estimates that it will probably complete its responsive productions in mid-July.

- The Debtor said it would provide a categorical privilege log at least, and that it would do so at or around the time it completes its responsive productions.  We reserve all rights, including to seek a non-categorical privilege log.

- Request No. 4:  The Debtor agreed that it would produce non-privileged responsive documents, if any, based on its understanding of the scope of this request.  We hereby ask the Debtor to revise its response to this request to clarify any limitations

on its productions.

- Request No. 8:  We clarified that this request is intended to capture documents identifiable from the face of the Committee's complaint, which we presume would have been supplied by the Debtor.   The Debtor will reconsider the request in light of this clarification.

- Request No. 11-13:  The Debtor will propose a refinement to the scope of these requests that would be acceptable to the Debtor.

- Request No. 17-18:  Regarding Request No. 17, you advised that the Debtor would withhold on privilege grounds any "coverage chart" created by coverage counsel.  We clarified that we are seeking any non-privileged list, chart, or similar document that comprehensively identifies the Debtor's policies, including their policy periods and stated limits.  The Debtor will reconsider the request in light of this clarification. Regarding Request No. 18, you advised that the Debtor has no non-privileged responsive documents.

- Request Nos. 21-22:  We understand that the Debtor plans to follow up with a formal response but, subject to confirmation, currently expects that it has no non-privileged documents responsive to these requests.  We noted that these requests are not limited to just the Debtor's analyses but also would encompass documents considered in any such analyses.

- The Debtor will propose a time next week to further meet and confer about Request Nos. 1, 3, 6, 14, and 19.  Regarding Request Nos. 1 and 3, we asked the Debtor to advise which of the subitems specified in the requests the Debtor is excluding from its definition of what it will produce in response to the requests (if any).  Regarding Request Nos. 14 and 19, we similarly asked that the Debtor advise whether the Debtor's definition of what it will produce in response to the requests is intended to be narrower than the requests.



**James Burke**
Partner
RUGGERI PARKS WEINBERG LLP
1875 K Street NW, Suite 800
Washington, DC 20006-1251

Tel:  (202) 469-7788
Fax: (202) 984-1401
Cell: (202) 820-6960
jburke@ruggerilaw.com
www.ruggerilaw.com
[ruggerilaw.com]

**\*Please note that our address has changed.**

Disclaimer: Privileged and confidential. If received in error, please notify me by e-mail and delete the message.

**From:** DeCamp, Justin J. <decampj@sullcrom.com>
**Sent:** Thursday, June 12, 2025 11:41 AM
**To:** James Burke <jburke@ruggerilaw.com>; Abbott, Derek <DAbbott@morrisnichols.com>;
Remming, Andrew <ARemming@morrisnichols.com>; Butz, Daniel <DButz@morrisnichols.com>;
Mann, Tamara K. <tmann@morrisnichols.com>; Sawyer, Casey <csawyer@morrisnichols.com>;
Jones, Scott <sjones@morrisnichols.com>; Giuffra Jr., Robert J. <giuffrar@sullcrom.com>;
Dietderich, Andrew G. <dietdericha@sullcrom.com>; Glueckstein, Brian D.
<gluecksteinb@sullcrom.com>; Beller, Benjamin S. <bellerb@sullcrom.com>; Marchello, Matthew J.
<marchellom@sullcrom.com>; Kapoor, Julie G. <kapoorj@sullcrom.com>; blenhart@cov.com;
adyschkant@cov.com; kglandon@cov.com; dluttinger@cov.com
**Cc:** Annette Rolain <arolain@ruggerilaw.com>; Joshua Weinberg <jweinberg@ruggerilaw.com>;
Haberkorn, Adam P. <ahaberkorn@omm.com>; Alexandre, Quentin
<Quentin.Alexandre@clydeco.us>; Antonelli, Matthew <matt.antonelli@saul.com>;
aseay@STEPTOE.COM; Benjamin.Blume@KENNEDYSLAW.COM; Beshara, Mina
<Mina.Beshara@clydeco.us>; bmccullough@bodellbove.com; Brandt, Joseph
<JBrandt@willkie.com>; brooks@lrclaw.com; zzExt-brown <brown@lrclaw.com>; Burbage, James
<JBurbage@willkie.com>; Christopher Kim <CKim@lawgmm.com>; ckeener@coochtaylor.com;
Crofford, Gabrielle (Gabe <GCrofford@willkie.com>; Davis, Alexa L. <ADavis@willkie.com>; Davis,
Joseph <JDavis@WILLKIE.COM>; dchristian@dca.law; DGJohnson@mintz.com;
dwalulik@fbtlaw.com; Campbell, Eamonn W. <ecampbell@omm.com>;
ekonecke@WINDELSMARX.COM; esanders@ubglaw.com; falvarez@WALKERWILCOX.COM;
Fitzmaurice, James <JFitzmaurice@willkie.com>; zzExt-afrackman <afrackman@omm.com>;
george@ifrahlaw.com; Groffl@whiteandwilliams.com; Hardy, Jennifer <JHardy2@willkie.com>;
hwinsberg@phrd.com; Ingrassiam@whiteandwilliams.com; jdennehy@STEPTOE.COM;
jessica.buckwalter@LBKMLAW.COM; jhite@SHMRLAW.COM; jillian.dennehy@kennedyslaw.com;
jmo@SKJLAW.COM; John Maloney <JMaloney@lawgmm.com>; Joseph Cicero
<Cicero@chipmanbrown.com>; Joyce, Robert L. <Robert.Joyce@littletonpark.com>; Kamaiko, Laurie
A. <laurie.kamaiko@saul.com>; Karen.AndersenMoran@KENNEDYSLAW.COM;
kbifferato@connollygallagher.com; Kass-Gergi, Yara <YKass-Gergi@willkie.com>;
kmeyers@WINDELSMARX.COM; Koepff, Paul (paul.koepff@clydeco.us) <paul.koepff@clydeco.us>;
Lee, Clarence Y. <Clarence.Lee@saul.com>; lrizzo@regerlaw.com;
matthew.starner@kennedyslaw.com; Marc.Casarino@KENNEDYSLAW.COM;
marias@restructuringshop.com; Mark Desgrosseilliers <desgross@chipmanbrown.com>;
mark.leimkuhler@LBKMLAW.COM; Martint@whiteandwilliams.com; Marton, Simone
<SMarton@willkie.com>; MCMcCudden@MDWCG.COM; mehaas@mintz.com;
mgramke@ubglaw.com; mhalter@regerlaw.com; michael.baughman@mclolaw.com;
mweiss@phrd.com; Paul Brown <Brown@chipmanbrown.com>; Perez, Stephanie
<sperez@omm.com>; mplevin@plevinturner.com; pwkalish@mintz.com; rjk@SKJLAW.COM;
rkb@SKJLAW.COM; Robert.Joyce@littletonjoyce.com; RRiley@WHITEFORDLAW.COM;
Santellep@whiteandwilliams.com; scalogero@WINDELSMARX.COM; Schiavoni, Tancred
<tschiavoni@omm.com>; sgerald@whitefordlaw.com; Sgordon@STEPTOE.COM; Jabouin, Sheya I.
<sjabouin@omm.com>; Spain, Thomas <thomas.spain@saul.com>; stamoulis@swdelaw.com;
Stephen Gimigliano <SGimigliano@lawgmm.com>; StJeanos, Christopher <cstjeanos@willkie.com>;
tdraper@WALKERWILCOX.COM; Turner, Miranda <mturner@plevinturner.com>;

tyler.pierson@kennedyslaw.com; Warren, Steve <swarren@omm.com>; Westerfield, Ryan <Ryan.Westerfield@clydeco.us>; William Chipman <Chipman@chipmanbrown.com>; Yunus, Javed S. <jyunus@omm.com>; Zhao, Amy <amyzhao@omm.com>; hwinsberg@phrd.com; Matt M. Weiss <mweiss@phrd.com>; Paul W. Kalish - Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. (pkalish@stradley.com) <pkalish@stradley.com>; mhaas@stradley.com; Deirdre G. Johnson (djohnson@stradley.com) <djohnson@stradley.com>; 'Berk, Zachary W.' <Zachary.Berk@saul.com>; Mark J. Leimkuhler <Mark.Leimkuhler@LBKMLAW.COM>; John D. LaBarbera <John.LaBarbera@kennedyslaw.com>

**Subject:** RE: In re: KFI Wind-Down Corp. Case No. 23-10638 (LSS) (Bankr. D. Del) - Debtor's Responses and Objections to Insurers' Second and Third Sets of RFPS


1:30-2 works.  I will send you an invite and you can circulate to whoever will join on your side.

---

**From:** James Burke <jburke@ruggerilaw.com>
**Sent:** Thursday, June 12, 2025 10:13 AM
**To:** DeCamp, Justin J. <decampj@sullcrom.com>; Abbott, Derek <DAbbott@morrisnichols.com>; Remming, Andrew <ARemming@morrisnichols.com>; Butz, Daniel <DButz@morrisnichols.com>; Mann, Tamara K. <tmann@morrisnichols.com>; Sawyer, Casey <csawyer@morrisnichols.com>; Jones, Scott <sjones@morrisnichols.com>; Giuffra Jr., Robert J. <giuffrar@sullcrom.com>; Dietderich, Andrew G. <dietdericha@sullcrom.com>; Glueckstein, Brian D. <gluecksteinb@sullcrom.com>; Beller, Benjamin S. <bellerb@sullcrom.com>; Marchello, Matthew J. <marchellom@sullcrom.com>; Kapoor, Julie G. <kapoorj@sullcrom.com>; blenhart@cov.com; adyschkant@cov.com; kglandon@cov.com; dluttinger@cov.com
**Cc:** Annette Rolain <arolain@ruggerilaw.com>; Joshua Weinberg <jweinberg@ruggerilaw.com>; Haberkorn, Adam P. <ahaberkorn@omm.com>; Alexandre, Quentin <Quentin.Alexandre@clydeco.us>; Antonelli, Matthew <matt.antonelli@saul.com>; aseay@STEPTOE.COM; Benjamin.Blume@KENNEDYSLAW.COM; Beshara, Mina <Mina.Beshara@clydeco.us>; bmccullough@bodellbove.com; Brandt, Joseph <JBrandt@willkie.com>; brooks@lrclaw; zzExt-brown <brown@lrclaw.com>; Burbage, James <JBurbage@willkie.com>; Christopher Kim <CKim@lawgmm.com>; ckeener@coochtaylor.com; Crofford, Gabrielle (Gabe <GCrofford@willkie.com>; Davis, Alexa L. <ADavis@willkie.com>; Davis, Joseph <JDavis@WILLKIE.COM>; dchristian@dca.law; DGJohnson@mintz.com; dwalulik@fbtlaw.com; Campbell, Eamonn W. <ecampbell@omm.com>; ekonecke@WINDELSMARX.COM; esanders@ubglaw.com; falvarez@WALKERWILCOX.COM; Fitzmaurice, James <JFitzmaurice@willkie.com>; zzExt-afrackman <afrackman@omm.com>; george@ifrahlaw.com; Groffl@whiteandwilliams.com; Hardy, Jennifer <JHardy2@willkie.com>; hwinsberg@phrd.com; Ingrassiam@whiteandwilliams.com; jdenehy@STEPTOE.COM; jessica.buckwalter@LBKMLAW.COM; jhite@SHMRLAW.COM; jillian.dennehy@kennedyslaw.com; jmo@SKJLAW.COM; John Maloney <JMaloney@lawgmm.com>; Joseph Cicero <Cicero@chipmanbrown.com>; Joyce, Robert L. <Robert.Joyce@littletonpark.com>; Kamaiko, Laurie A. <laurie.kamaiko@saul.com>; Karen.AndersenMoran@KENNEDYSLAW.COM; kbifferato@connollygallagher.com; Kass-Gergi, Yara <YKass-Gergi@willkie.com>; kmeyers@WINDELSMARX.COM; Koepff, Paul (paul.koepff@clydeco.us) <paul.koepff@clydeco.us>; Lee, Clarence Y. <Clarence.Lee@saul.com>; lrizzo@regerlaw.com; matthew.starner@kennedyslaw.com; Marc.Casarino@KENNEDYSLAW.COM;

marias@restructuringshop.com; Mark Desgrosseilliers <desgross@chipmanbrown.com>;
mark.leimkuhler@LBKMLAW.COM; Martint@whiteandwilliams.com; Marton, Simone
<SMarton@willkie.com>; MCMcCudden@MDWCG.COM; mehaas@mintz.com;
mgramke@ubglaw.com; mhalter@regerlaw.com; michael.baughman@mclaw.com;
mweiss@phrd.com; Paul Brown <Brown@chipmanbrown.com>; Perez, Stephanie
<sperez@omm.com>; mplevin@plevinturner.com; pwkalish@mintz.com; rjk@SKJLAW.COM;
rkb@SKJLAW.COM; Robert.Joyce@littletonjoyce.com; RRiley@WHITEFORDLAW.COM;
Santellep@whiteandwilliams.com; scalogero@WINDELSMARX.COM; Schiavoni, Tancred
<tschiavoni@omm.com>; sgerald@whitefordlaw.com; Sgordon@STEPTOE.COM; Jabouin, Sheya I.
<sjabouin@omm.com>; Spain, Thomas <thomas.spain@saul.com>; stamoulis@swdelaw.com;
Stephen Gimigliano <SGimigliano@lawgmm.com>; StJeanos, Christopher <cstjeanos@willkie.com>;
tdraper@WALKERWILCOX.COM; Turner, Miranda <mturner@plevinturner.com>;
tyler.pierson@kennedyslaw.com; Warren, Steve <swarren@omm.com>; Westerfield, Ryan
<Ryan.Westerfield@clydeco.us>; William Chipman <Chipman@chipmanbrown.com>; Yunus, Javed
S. <jyunus@omm.com>; Zhao, Amy <amyzhao@omm.com>; hwinsberg@phrd.com; Matt M. Weiss
<mweiss@phrd.com>; Paul W. Kalish - Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
(pkalish@stradley.com) <pkalish@stradley.com>; mhaas@stradley.com; Deirdre G. Johnson
(djohnson@stradley.com) <djohnson@stradley.com>; 'Berk, Zachary W.' <Zachary.Berk@saul.com>;
Mark J. Leimkuhler <Mark.Leimkuhler@LBKMLAW.COM>; John D. LaBarbera
<John.LaBarbera@kennedyslaw.com>;
**Subject:** [EXTERNAL] RE: In re: KFI Wind-Down Corp. Case No. 23-10638 (LSS) (Bankr. D. Del) -
Debtor's Responses and Objections to Insurers' Second and Third Sets of RFPS

Justin,

A quorum of the insurers can be available at 1:30 ET tomorrow or between 3:30 and 5:30
ET.  Please send us an invite for the option that works best for your team.



**James Burke**
Partner
RUGGERI PARKS WEINBERG LLP
1875 K Street NW, Suite 800
Washington, DC 20006-1251

Tel:  (202) 469-7788
Fax: (202) 984-1401
Cell: (202) 820-6960
jburke@ruggerilaw.com
www.ruggerilaw.com
[ruggerilaw.com]

**\*Please note that our address has changed.**

Disclaimer: Privileged and confidential. If received in error, please notify me by e-mail and delete the message.

**From:** DeCamp, Justin J. <decampj@sullcrom.com>
**Sent:** Tuesday, June 10, 2025 2:53 PM
**To:** James Burke <jburke@ruggerilaw.com>; Abbott, Derek <DAbbott@morrisnichols.com>;
Remming, Andrew <ARemming@morrisnichols.com>; Butz, Daniel <DButz@morrisnichols.com>;
Mann, Tamara K. <tmann@morrisnichols.com>; Sawyer, Casey <csawyer@morrisnichols.com>;

Jones, Scott <sjones@morrisnichols.com>; Giuffra Jr., Robert J. <giuffrar@sullcrom.com>; Dietderich, Andrew G. <dietdericha@sullcrom.com>; Glueckstein, Brian D. <glueecksteinb@sullcrom.com>; Beller, Benjamin S. <bellerb@sullcrom.com>; Marchello, Matthew J. <marchellom@sullcrom.com>; Kapoor, Julie G. <kapoorj@sullcrom.com>; blenhart@cov.com; adyschkant@cov.com; kglandon@cov.com; dluttinger@cov.com

**Cc:** Annette Rolain <arolain@ruggerilaw.com>; Joshua Weinberg <jweinberg@ruggerilaw.com>; Haberkorn, Adam P. <ahaberkorn@omm.com>; Alexandre, Quentin <Quentin.Alexandre@clydeco.us>; Antonelli, Matthew <matt.antonelli@saul.com>; aseay@STEPTOE.COM; Benjamin.Blume@KENNEDYSLAW.COM; Beshara, Mina <Mina.Beshara@clydeco.us>; bmccullough@bodellbove.com; Brandt, Joseph <JBrandt@willkie.com>; brooks@lrclaw.com; zzExt-brown <brown@lrclaw.com>; Burbage, James <JBurbage@willkie.com>; Christopher Kim <CKim@lawgmm.com>; ckeener@coochtaylor.com; Crofford, Gabrielle (Gabe <GCrofford@willkie.com>; Davis, Alexa L. <ADavis@willkie.com>; Davis, Joseph <JDavis@WILLKIE.COM>; dchristian@dca.law; DGJohnson@mintz.com; dwalulik@fbtlaw.com; Campbell, Eamonn W. <ecampbell@omm.com>; ekonecke@WINDELSMARX.COM; esanders@ubglaw.com; falvarez@WALKERWILCOX.COM; Fitzmaurice, James <JFitzmaurice@willkie.com>; zzExt-afrackman <afrackman@omm.com>; george@ifrahlaw.com; Groffl@whiteandwilliams.com; Hardy, Jennifer <JHardy2@willkie.com>; hwinsberg@phrd.com; Ingrassiam@whiteandwilliams.com; jdennehy@STEPTOE.COM; jessica.buckwalter@LBKMLAW.COM; jhite@SHMRLAW.COM; jillian.dennehy@kennedyslaw.com; jmo@SKJLAW.COM; John Maloney <JMaloney@lawgmm.com>; Joseph Cicero <Cicero@chipmanbrown.com>; Joyce, Robert L. <Robert.Joyce@littletonpark.com>; Kamaiko, Laurie A. <laurie.kamaiko@saul.com>; Karen.AndersenMoran@KENNEDYSLAW.COM; kbifferato@connollygallagher.com; Kass-Gergi, Yara <YKass-Gergi@willkie.com>; kmeyers@WINDELSMARX.COM; Koepff, Paul (paul.koepff@clydeco.us) <paul.koepff@clydeco.us>; Lee, Clarence Y. <Clarence.Lee@saul.com>; lrizzo@regerlaw.com; matthew.starner@kennedyslaw.com; Marc.Casarino@KENNEDYSLAW.COM; marias@restructuringshop.com; Mark Desgrosseilliers <desgross@chipmanbrown.com>; mark.leimkuhler@LBKMLAW.COM; Martint@whiteandwilliams.com; Marton, Simone <SMarton@willkie.com>; MCMcCudden@MDWCG.COM; mehaas@mintz.com; mgramke@ubglaw.com; mhalter@regerlaw.com; michael.baughman@mclolaw.com; mweiss@phrd.com; Paul Brown <Brown@chipmanbrown.com>; Perez, Stephanie <sperez@omm.com>; mplevin@plevinturner.com; pwkalish@mintz.com; rjk@SKJLAW.COM; rkb@SKJLAW.COM; Robert.Joyce@littletonjoyce.com; RRiley@WHITEFORDLAW.COM; Santellep@whiteandwilliams.com; scalogero@WINDELSMARX.COM; Schiavoni, Tancred <tschiavoni@omm.com>; sgerald@whitefordlaw.com; Sgordon@STEPTOE.COM; Jabouin, Sheya I. <sjabouin@omm.com>; Spain, Thomas <thomas.spain@saul.com>; stamoulis@swdelaw.com; Stephen Gimigliano <SGimigliano@lawgmm.com>; StJeanos, Christopher <cstjeanos@willkie.com>; tdraper@WALKERWILCOX.COM; Turner, Miranda <mturner@plevinturner.com>; tyler.pierson@kennedyslaw.com; Warren, Steve <swarren@omm.com>; Westerfield, Ryan <Ryan.Westerfield@clydeco.us>; William Chipman <Chipman@chipmanbrown.com>; Yunus, Javed S. <jyunus@omm.com>; Zhao, Amy <amyzhao@omm.com>; hwinsberg@phrd.com; Matt M. Weiss <mweiss@phrd.com>; Paul W. Kalish - Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. (pkalish@stradley.com) <pkalish@stradley.com>; mhaas@stradley.com; Deirdre G. Johnson (djohnson@stradley.com) <djohnson@stradley.com>; 'Berk, Zachary W.' <Zachary.Berk@saul.com>;

Mark J. Leimkuhler <[Mark.Leimkuhler@LBKMLAW.com](mailto:Mark.Leimkuhler@LBKMLAW.com)>; John D. LaBarbera
<[John.LaBarbera@kennedyslaw.com](mailto:John.LaBarbera@kennedyslaw.com)>
**Subject:** RE: In re: KFI Wind-Down Corp. Case No. 23-10638 (LSS) (Bankr. D. Del) - Debtor's
Responses and Objections to Insurers' Second and Third Sets of RFPS

James,

Please let us know your availability Friday for a meet and confer.

Regards,

Justin

---

**From:** James Burke <[jburke@ruggerilaw.com](mailto:jburke@ruggerilaw.com)>
**Sent:** Tuesday, May 27, 2025 1:47 PM
**To:** Abbott, Derek <[DAbbott@morrisnichols.com](mailto:DAbbott@morrisnichols.com)>; Remming, Andrew
<[ARemming@morrisnichols.com](mailto:ARemming@morrisnichols.com)>; Butz, Daniel <[DButz@morrisnichols.com](mailto:DButz@morrisnichols.com)>; Mann, Tamara K.
<[tmann@morrisnichols.com](mailto:tmann@morrisnichols.com)>; Sawyer, Casey <[csawyer@morrisnichols.com](mailto:csawyer@morrisnichols.com)>; Jones, Scott
<[sjones@morrisnichols.com](mailto:sjones@morrisnichols.com)>; Giuffra Jr., Robert J. <[giuffrar@sullcrom.com](mailto:giuffrar@sullcrom.com)>; Dietderich, Andrew G.
<[dietdericha@sullcrom.com](mailto:dietdericha@sullcrom.com)>; Glueckstein, Brian D. <[gluecksteinb@sullcrom.com](mailto:gluecksteinb@sullcrom.com)>; DeCamp, Justin
J. <[decampj@sullcrom.com](mailto:decampj@sullcrom.com)>; Beller, Benjamin S. <[bellerb@sullcrom.com](mailto:bellerb@sullcrom.com)>; Marchello, Matthew J.
<[marchellom@sullcrom.com](mailto:marchellom@sullcrom.com)>; Kapoor, Julie G. <[kapoorj@sullcrom.com](mailto:kapoorj@sullcrom.com)>; [blenhart@cov.com](mailto:blenhart@cov.com);
[adyschkant@cov.com](mailto:adyschkant@cov.com), [kglandon@cov.com](mailto:kglandon@cov.com); [dluttinger@cov.com](mailto:dluttinger@cov.com)
**Cc:** Annette Rolain <[arolain@ruggerilaw.com](mailto:arolain@ruggerilaw.com)>; Joshua Weinberg <[jweinberg@ruggerilaw.com](mailto:jweinberg@ruggerilaw.com)>;
Haberkorn, Adam P. <[ahaberkorn@omm.com](mailto:ahaberkorn@omm.com)>; Alexandre, Quentin
<[Quentin.Alexandre@clydeco.us](mailto:Quentin.Alexandre@clydeco.us)>; Antonelli, Matthew <[matt.antonelli@saul.com](mailto:matt.antonelli@saul.com)>;
[aseay@STEPTOE.COM](mailto:aseay@STEPTOE.COM); [Benjamin.Blume@KENNEDYSLAW.COM](mailto:Benjamin.Blume@KENNEDYSLAW.COM); Beshara, Mina
<[Mina.Beshara@clydeco.us](mailto:Mina.Beshara@clydeco.us)>; [bmccullough@bodellbove.com](mailto:bmccullough@bodellbove.com); Brandt, Joseph
<[JBrandt@willkie.com](mailto:JBrandt@willkie.com)>; [brooks@lrclaw.com](mailto:brooks@lrclaw.com); zzExt-brown <[brown@lrclaw.com](mailto:brown@lrclaw.com)>; Burbage, James
<[JBurbage@willkie.com](mailto:JBurbage@willkie.com)>; Christopher Kim <[CKim@lawgmm.com](mailto:CKim@lawgmm.com)>; [ckeener@coochtaylor.com](mailto:ckeener@coochtaylor.com);
Crofford, Gabrielle (Gabe <[GCrofford@willkie.com](mailto:GCrofford@willkie.com)>; Davis, Alexa L. <[ADavis@willkie.com](mailto:ADavis@willkie.com)>; Davis,
Joseph <[JDavis@WILLKIE.COM](mailto:JDavis@WILLKIE.COM)>; [dchristian@dca.law](mailto:dchristian@dca.law); [DGJohnson@mintz.com](mailto:DGJohnson@mintz.com);
[dwalulik@fbtlaw.com](mailto:dwalulik@fbtlaw.com); Campbell, Eamonn W. <[ecampbell@omm.com](mailto:ecampbell@omm.com)>;
[ekonecke@WINDELSMARX.COM](mailto:ekonecke@WINDELSMARX.COM); [esanders@ubglaw.com](mailto:esanders@ubglaw.com); [falvarez@WALKERWILCOX.COM](mailto:falvarez@WALKERWILCOX.COM);
Fitzmaurice, James <[JFitzmaurice@willkie.com](mailto:JFitzmaurice@willkie.com)>; zzExt-afrackman <[afrackman@omm.com](mailto:afrackman@omm.com)>;
[george@ifrahlaw.com](mailto:george@ifrahlaw.com); [Groffl@whiteandwilliams.com](mailto:Groffl@whiteandwilliams.com); Hardy, Jennifer <[JHardy2@willkie.com](mailto:JHardy2@willkie.com)>;
[hwinsberg@phrd.com](mailto:hwinsberg@phrd.com); [Ingrassiam@whiteandwilliams.com](mailto:Ingrassiam@whiteandwilliams.com); [jdennehy@STEPTOE.COM](mailto:jdennehy@STEPTOE.COM);
[jessica.buckwalter@LBKMLAW.COM](mailto:jessica.buckwalter@LBKMLAW.COM); [jhite@SHMRLAW.COM](mailto:jhite@SHMRLAW.COM); [jillian.dennehy@kennedyslaw.com](mailto:jillian.dennehy@kennedyslaw.com);
[jmo@SKJLAW.COM](mailto:jmo@SKJLAW.COM); John Maloney <[JMaloney@lawgmm.com](mailto:JMaloney@lawgmm.com)>; Joseph Cicero
<[Cicero@chipmanbrown.com](mailto:Cicero@chipmanbrown.com)>; Joyce, Robert L. <[Robert.Joyce@littletonpark.com](mailto:Robert.Joyce@littletonpark.com)>; Kamaiko, Laurie
A. <[laurie.kamaiko@saul.com](mailto:laurie.kamaiko@saul.com)>; [Karen.AndersenMoran@KENNEDYSLAW.COM](mailto:Karen.AndersenMoran@KENNEDYSLAW.COM);
[kbifferato@connollygallagher.com](mailto:kbifferato@connollygallagher.com); Kass-Gergi, Yara <[YKass-Gergi@willkie.com](mailto:YKass-Gergi@willkie.com)>;
[kmeyers@WINDELSMARX.COM](mailto:kmeyers@WINDELSMARX.COM); Koepff, Paul ([paul.koepff@clydeco.us](mailto:paul.koepff@clydeco.us)) <[paul.koepff@clydeco.us](mailto:paul.koepff@clydeco.us)>;
Lee, Clarence Y. <[Clarence.Lee@saul.com](mailto:Clarence.Lee@saul.com)>; [lrizzo@regerlaw.com](mailto:lrizzo@regerlaw.com);
[matthew.starner@kennedyslaw.com](mailto:matthew.starner@kennedyslaw.com); [Marc.Casarino@KENNEDYSLAW.COM](mailto:Marc.Casarino@KENNEDYSLAW.COM);

marias@restructuringshop.com; Mark Desgrosseilliers <desgross@chipmanbrown.com>;
mark.leimkuhler@LBKMLAW.COM; Martint@whiteandwilliams.com; Marton, Simone
<SMarton@willkie.com>; MCMcCudden@MDWCG.COM; mehaas@mintz.com;
mgramke@ubglaw.com; mhalter@regerlaw.com; michael.baughman@mclolaw.com;
mweiss@phrd.com; Paul Brown <Brown@chipmanbrown.com>; Perez, Stephanie
<sperez@omm.com>; mplevin@plevinturner.com; pwkalish@mintz.com; rjk@SKJLAW.COM;
rkb@SKJLAW.COM; Robert.Joyce@littletonjoyce.com; RRiley@WHITEFORDLAW.COM;
Santellep@whiteandwilliams.com; scalogero@WINDELSMARX.COM; Schiavoni, Tancred
<tschiavoni@omm.com>; sgerald@whitefordlaw.com; Sgordon@STEPTOE.COM; Jabouin, Sheya I.
<sjabouin@omm.com>; Spain, Thomas <thomas.spain@saul.com>; stamoulis@swdelaw.com;
Stephen Gimigliano <SGimigliano@lawgmm.com>; StJeanos, Christopher <cstjeanos@willkie.com>;
tdraper@WALKERWILCOX.COM; Turner, Miranda <mturner@plevinturner.com>;
tyler.pierson@kennedyslaw.com; Warren, Steve <swarren@omm.com>; Westerfield, Ryan
<Ryan.Westerfield@clydeco.us>; William Chipman <Chipman@chipmanbrown.com>; Yunus, Javed
S. <jyunus@omm.com>; Zhao, Amy <amyzhao@omm.com>; hwinsberg@phrd.com; Matt M. Weiss
<mweiss@phrd.com>; Paul W. Kalish - Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
(pkalish@stradley.com) <pkalish@stradley.com>; mhaas@stradley.com; Deirdre G. Johnson
(djohnson@stradley.com) <djohnson@stradley.com>; 'Berk, Zachary W.' <Zachary.Berk@saul.com>;
Mark J. Leimkuhler <Mark.Leimkuhler@LBKMLAW.COM>; John D. LaBarbera
<John.LaBarbera@kennedyslaw.com>

**Subject:** [EXTERNAL] RE: In re: KFI Wind-Down Corp. Case No. 23-10638 (LSS) (Bankr. D. Del) -
Debtor's Responses and Objections to Insurers' Second and Third Sets of RFPS

Counsel,

Please see attached correspondence related to **Certain Insurers' Third Set of Plan-Related
Requests for Production to the Debtor.**



**James Burke**
Partner
RUGGERI PARKS WEINBERG LLP
1875 K Street NW, Suite 800
Washington, DC 20006-1251

Tel:  (202) 469-7788
Fax: (202) 984-1401
Cell: (202) 820-6960
jburke@ruggerilaw.com
www.ruggerilaw.com
[ruggerilaw.com]

**\*Please note that our address has changed.**

Disclaimer: Privileged and confidential. If received in error, please notify me by e-mail and delete the message.

**From:** Sawyer, Casey <csawyer@morrisnichols.com>
**Sent:** Monday, March 24, 2025 7:16 PM
**To:** Annette Rolain <arolain@RUGGERILAW.COM>; Abbott, Derek <DAbbott@morrisnichols.com>;
Remming, Andrew <ARemming@morrisnichols.com>; Butz, Daniel <DButz@morrisnichols.com>;
Mann, Tamara K. <tmann@morrisnichols.com>; Jones, Scott <sjones@morrisnichols.com>;

blenhart@cov.com; adyschkant@cov.com; kglandon@cov.com; dluttinger@cov.com;
giuffrar@sullcrom.com; dietdericha@sullcrom.com; gluecksteinb@sullcrom.com;
decampj@sullcrom.com; Marchello, Matthew J. <marchellom@sullcrom.com>; Kapoor, Julie G.
<kapoorj@sullcrom.com>

**Cc:** Haberkorn, Adam P. <ahaberkorn@omm.com>; Alexandre, Quentin
<Quentin.Alexandre@clydeco.us>; Antonelli, Matthew <matt.antonelli@saul.com>;
aseay@STEPTOE.COM; Benjamin.Blume@KENNEDYSLAW.COM; Beshara, Mina
<Mina.Beshara@clydeco.us>; bmccullough@bodellbove.com; Brandt, Joseph
<JBrandt@willkie.com>; brooks@lrclaw.com; brown@lrclaw.com; Burbage, James
<JBurbage@willkie.com>; Christopher Kim <CKim@lawgmm.com>; ckeener@coochtaylor.com;
Crofford, Gabrielle (Gabe <GCrofford@willkie.com>; Davis, Alexa L. <ADavis@willkie.com>; Davis,
Joseph <JDavis@WILLKIE.COM>; dchristian@dca.law; DGJohnson@mintz.com;
dwalulik@fbtlaw.com; Campbell, Eamonn W. <ecampbell@omm.com>;
ekonecke@WINDELSMARX.COM; esanders@ubglaw.com; falvarez@WALKERWILCOX.COM;
Fitzmaurice, James <JFitzmaurice@willkie.com>; Frackman, Andrew <afrackman@omm.com>;
george@ifrahlaw.com; Groffl@whiteandwilliams.com; Hardy, Jennifer <JHardy2@willkie.com>;
hwinsberg@phrd.com; Ingrassiam@whiteandwilliams.com; jdennehy@STEPTOE.COM;
jessica.buckwalter@LBKMLAW.COM; jhite@SHMRLAW.COM; jillian.dennehy@kennedyslaw.com;
jmo@SKJLAW.COM; John Maloney <JMaloney@lawgmm.com>; Joseph Cicero
<Cicero@chipmanbrown.com>; Joshua Weinberg <jweinberg@ruggerilaw.com>; Joyce, Robert L.
<Robert.Joyce@littletonpark.com>; Kamaiko, Laurie A. <laurie.kamaiko@saul.com>;
Karen.AndersenMoran@KENNEDYSLAW.COM; kbifferato@connollygallagher.com; Kass-Gergi, Yara
<YKass-Gergi@willkie.com>; kmeyers@WINDELSMARX.COM; Koepff, Paul (paul.koepff@clydeco.us)
<paul.koepff@clydeco.us>; Lee, Clarence Y. <Clarence.Lee@saul.com>; lrizzo@regerlaw.com;
matthew.starner@kennedyslaw.com; Marc.Casarino@KENNEDYSLAW.COM;
marias@restructuringshop.com; Mark Desgrosseilliers <desgross@chipmanbrown.com>;
mark.leimkuhler@LBKMLAW.COM; Martint@whiteandwilliams.com; Marton, Simone
<SMarton@willkie.com>; MCMcCudden@MDWCG.COM; mehaas@mintz.com;
mgramke@ubglaw.com; mhalter@regerlaw.com; michael.baughman@mclolaw.com;
mweiss@phrd.com; Paul Brown <Brown@chipmanbrown.com>; Perez, Stephanie
<sperez@omm.com>; mplevin@plevinturner.com; pwkalish@mintz.com; rjk@SKJLAW.COM;
rkb@SKJLAW.COM; Robert.Joyce@littletonjoyce.com; RRiley@WHITEFORDLAW.COM;
Santellep@whiteandwilliams.com; scalogero@WINDELSMARX.COM; Schiavoni, Tancred
<tschiavoni@omm.com>; sgerald@whitefordlaw.com; Sgordon@STEPTOE.COM; Jabouin, Sheya I.
<sjabouin@omm.com>; Spain, Thomas <thomas.spain@saul.com>; stamoulis@swdelaw.com;
Stephen Gimigliano <SGimigliano@lawgmm.com>; StJeanos, Christopher <cstjeanos@willkie.com>;
tdraper@WALKERWILCOX.COM; Turner, Miranda <mturner@plevinturner.com>;
tyler.pierson@kennedyslaw.com; Warren, Steve <swarren@omm.com>; Westerfield, Ryan
<Ryan.Westerfield@clydeco.us>; William Chipman <Chipman@chipmanbrown.com>; Yunus, Javed
S. <jyunus@omm.com>; Zhao, Amy <amyzhao@omm.com>; James Burke
<jburke@ruggerilaw.com>; hwinsberg@phrd.com; Matt M. Weiss <mweiss@phrd.com>; Paul W.
Kalish - Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. (pkalish@stradley.com)
<pkalish@stradley.com>; mhaas@stradley.com; Deirdre G. Johnson (djohnson@stradley.com)
<djohnson@stradley.com>; 'Berk, Zachary W.' <Zachary.Berk@saul.com>
**Subject:** RE: In re: KFI Wind-Down Corp. Case No. 23-10638 (LSS) (Bankr. D. Del) - Debtor's

Responses and Objections to Insurers' Second and Third Sets of RFPS

Good evening,

Please find attached service copies of the *Debtor's Responses and Objection to Certain Insurers' Second Set of Plan-Related Request for Production to KFI Wind-Down Corp.* and the *Debtor's Responses and Objection to Certain Insurers' Third Set of Plan-Related Request for Production to KFI Wind-Down Corp.*

Best regards,
Casey

**CASEY SAWYER**
(He/Him/His)
Associate
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 351-9182 T | (302) 287-6035 C
**csawyer@morrisnichols.com**
**www.morrisnichols.com**

---

**From:** Annette Rolain <arolain@RUGGERILAW.COM>
**Sent:** Friday, February 21, 2025 6:32 PM
**To:** Abbott, Derek <DAbbott@morrisnichols.com>; Remming, Andrew <ARemming@morrisnichols.com>; Butz, Daniel <DButz@morrisnichols.com>; Mann, Tamara K. <tmann@morrisnichols.com>; Jones, Scott <sjones@morrisnichols.com>; blenhart@cov.com; adyschkant@cov.com; kglandon@cov.com; dluttinger@cov.com; giuffrar@sullcrom.com; dietdericha@sullcrom.com; gluecksteinb@sullcrom.com; decampj@sullcrom.com
**Cc:** Haberkorn, Adam P. <ahaberkorn@omm.com>; Alexandre, Quentin <Quentin.Alexandre@clydeco.us>; Antonelli, Matthew <matt.antonelli@saul.com>; aseay@STEPTOE.COM; Benjamin.Blume@KENNEDYSLAW.COM; Beshara, Mina <Mina.Beshara@clydeco.us>; bmccullough@bodellbove.com; Brandt, Joseph <JBrandt@willkie.com>; brooks@lrclaw.com; brown@lrclaw.com; Burbage, James <JBurbage@willkie.com>; Christopher Kim <CKim@lawgmm.com>; ckeener@coochtaylor.com; Crofford, Gabrielle (Gabe <GCrofford@willkie.com>; Davis, Alexa L. <ADavis@willkie.com>; Davis, Joseph <JDavis@WILLKIE.COM>; dchristian@dca.law; DGJohnson@mintz.com; dwalulik@fbtlaw.com; Campbell, Eamonn W. <ecampbell@omm.com>; ekonecke@WINDELSMARX.COM; esanders@ubglaw.com; falvarez@WALKERWILCOX.COM; Fitzmaurice, James <JFitzmaurice@willkie.com>; Frackman, Andrew <afrackman@omm.com>; george@ifrahlaw.com; Groffl@whiteandwilliams.com; Hardy, Jennifer <JHardy2@willkie.com>; hwinsberg@phrd.com; Ingrassiam@whiteandwilliams.com; jdennehy@STEPTOE.COM; jessica.buckwalter@LBKMLAW.COM; jhite@SHMRLAW.COM; jillian.dennehy@kennedyslaw.com; jmo@SKJLAW.COM; John Maloney <JMaloney@lawgmm.com>; Joseph Cicero <Cicero@chipmanbrown.com>; Joshua Weinberg <jweinberg@ruggerilaw.com>; Joyce, Robert L. <Robert.Joyce@littletonpark.com>; Kamaiko, Laurie A. <laurie.kamaiko@saul.com>; Karen.AndersenMoran@KENNEDYSLAW.COM; kbifferato@connollygallagher.com; Kass-Gergi, Yara

<YKass-Gergi@willkie.com>; kmeyers@WINDELSMARX.COM; Koepff, Paul (paul.koepff@clydeco.us)
<paul.koepff@clydeco.us>; Lee, Clarence Y. <Clarence.Lee@saul.com>; lrizzo@regerlaw.com;
matthew.starner@kennedyslaw.com; Marc.Casarino@KENNEDYSLAW.COM;
marias@restructuringshop.com; Mark Desgrosseilliers <desgross@chipmanbrown.com>;
mark.leimkuhler@LBKMLAW.COM; Martint@whiteandwilliams.com; Marton, Simone
<SMarton@willkie.com>; MCMcCudden@MDWCG.COM; mehaas@mintz.com;
mgramke@ubglaw.com; mhalter@regerlaw.com; michael.baughman@mclolaw.com;
mweiss@phrd.com; Paul Brown <Brown@chipmanbrown.com>; Perez, Stephanie
<sperez@omm.com>; mplevin@plevinturner.com; pwkalish@mintz.com; rjk@SKJLAW.COM;
rkb@SKJLAW.COM; Robert.Joyce@littletonjoyce.com; RRiley@WHITEFORDLAW.COM;
Santellep@whiteandwilliams.com; scalogero@WINDELSMARX.COM; Schiavoni, Tancred
<tschiavoni@omm.com>; sgerald@whitefordlaw.com; Sgordon@STEPTOE.COM; Jabouin, Sheya I.
<sjabouin@omm.com>; Spain, Thomas <thomas.spain@saul.com>; stamoulis@swdelaw.com;
Stephen Gimigliano <SGimigliano@lawgmm.com>; StJeanos, Christopher <cstjeanos@willkie.com>;
tdraper@WALKERWILCOX.COM; Turner, Miranda <mturner@plevinturner.com>;
tyler.pierson@kennedyslaw.com; Warren, Steve <swarren@omm.com>; Westerfield, Ryan
<Ryan.Westerfield@clydeco.us>; William Chipman <Chipman@chipmanbrown.com>; Yunus, Javed
S. <jyunus@omm.com>; Zhao, Amy <amyzhao@omm.com>; James Burke
<jburke@ruggerilaw.com>; hwinsberg@phrd.com; Matt M. Weiss <mweiss@phrd.com>; Paul W.
Kalish - Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. (pkalish@stradley.com)
<pkalish@stradley.com>; mhaas@stradley.com; Deirdre G. Johnson (djohnson@stradley.com)
<djohnson@stradley.com>; 'Berk, Zachary W.' <Zachary.Berk@saul.com>
**Subject:** [EXT] In re: KFI Wind-Down Corp. Case No. 23-10638 (LSS) (Bankr. D. Del) - Certain Insurers'
Third Set of Plan-Related RFPs to KFI

Counsel:

Attached please find a service copy of Certain Insurers' Third Set of Plan-Related Requests
for Production to the Debtor.

Best,

Annette



**Annette P. Rolain**
Partner
RUGGERI PARKS WEINBERG LLP
1875 K Street NW, Suite 800
Washington, DC 20006-1251

Tel:  (202) 469-7767
Fax: (202) 984-1401
Cell: (920) 680-8046
arolain@ruggerilaw.com
www.ruggerilaw.com
[ruggerilaw.com]

**\*Please note that our address has changed.**

Disclaimer: Privileged and confidential. If received in error, please notify me by e-mail and delete the message.

**From:** Haberkorn, Adam P. <ahaberkorn@omm.com>
**Sent:** Friday, February 21, 2025 6:16 PM
**To:** dabbott@morrisnichols.com; aremming@morrisnichols.com; dbutz@morrisnichols.com; tmann@morrisnichols.com; sjones@morrisnichols.com; blenhart@cov.com; adyschkant@cov.com; kglandon@cov.com; dluttinger@cov.com; giuffrar@sullcrom.com; dietdericha@sullcrom.com; glucksteinb@sullcrom.com; decampj@sullcrom.com
**Cc:** adam.kaiser@ALSTON.COM; alexander.lorenzo@ALSTON.COM; Alexandre, Quentin <Quentin.Alexandre@clydeco.us>; Annette Rolain <arolain@RUGGERILAW.COM>; Antonelli, Matthew <matt.antonelli@saul.com>; aseay@STEPTOE.COM; Benjamin.Blume@KENNEDYSLAW.COM; Beshara, Mina <Mina.Beshara@clydeco.us>; bmccullough@bodellbove.com; Brandt, Joseph <JBrandt@willkie.com>; brooks@lrclaw.com; brown@lrclaw.com; Burbage, James <JBurbage@willkie.com>; Christopher Kim <CKim@lawgmm.com>; ckeener@coochtaylor.com; Crofford, Gabrielle (Gabe <GCrofford@willkie.com>; Davis, Alexa L. <ADavis@willkie.com>; Davis, Joseph <JDavis@WILLKIE.COM>; dchristian@dca.law; DGJohnson@mintz.com; dwalulik@fbtlaw.com; Campbell, Eamonn W. <ecampbell@omm.com>; ekonecke@WINDELSMARX.COM; esanders@ubglaw.com; falvarez@WALKERWILCOX.COM; Fitzmaurice, James <JFitzmaurice@willkie.com>; Frackman, Andrew <afrackman@omm.com>; george@ifrahlaw.com; Groffl@whiteandwilliams.com; Haberkorn, Adam P. <ahaberkorn@omm.com>; Hardy, Jennifer <JHardy2@willkie.com>; hwinsberg@phrd.com; Ingrassiam@whiteandwilliams.com; jdennehy@STEPTOE.COM; jessica.buckwalter@LBKMLAW.COM; jhite@SHMRLAW.COM; jillian.dennehy@kennedyslaw.com; jmo@SKJLAW.COM; John Maloney <JMaloney@lawgmm.com>; Joseph Cicero <Cicero@chipmanbrown.com>; Joshua Weinberg <jweinberg@ruggerilaw.com>; Joyce, Robert L. <Robert.Joyce@littletonpark.com>; Kamaiko, Laurie A. <laurie.kamaiko@saul.com>; Karen.AndersenMoran@KENNEDYSLAW.COM; Karen C. Bifferato <kbifferato@connollygallagher.com>; Kass-Gergi, Yara <YKass-Gergi@willkie.com>; kmeyers@WINDELSMARX.COM; Koepff, Paul (paul.koepff@clydeco.us) <paul.koepff@clydeco.us>; Lee, Clarence Y. <Clarence.Lee@saul.com>; lrizzo@regerlaw.com; matthew.starner@kennedyslaw.com; Marc.Casarino@KENNEDYSLAW.COM; marias@restructuringshop.com; Mark Desgrosseilliers <desgross@chipmanbrown.com>; mark.leimkuhler@LBKMLAW.COM; Martint@whiteandwilliams.com; Marton, Simone <SMarton@willkie.com>; MCMcCudden@MDWCG.COM; mehaas@mintz.com; mgramke@ubglaw.com; mhalter@regerlaw.com; michael.baughman@mclolaw.com; mweiss@phrd.com; Paul Brown <Brown@chipmanbrown.com>; Perez, Stephanie <sperez@omm.com>; mplevin@plevinturner.com; pwkalish@mintz.com; rjk@SKJLAW.COM; rkb@SKJLAW.COM; Robert.Joyce@littletonjoyce.com; RRiley@WHITEFORDLAW.COM; Santellep@whiteandwilliams.com; scalogero@WINDELSMARX.COM; Schiavoni, Tancred <tschiavoni@omm.com>; sgerald@whitefordlaw.com; Sgordon@STEPTOE.COM; Jabouin, Sheya I. <sjabouin@omm.com>; Spain, Thomas <thomas.spain@saul.com>; stamoulis@swdelaw.com; Stephen Gimigliano <SGimigliano@lawgmm.com>; StJeanos, Christopher <cstjeanos@willkie.com>; tdraper@WALKERWILCOX.COM; Turner, Miranda <mturner@plevinturner.com>; tyler.pierson@kennedyslaw.com; Warren, Steve <swarren@omm.com>; Westerfield, Ryan <Ryan.Westerfield@clydeco.us>; William Chipman <Chipman@chipmanbrown.com>; Yunus, Javed S. <jyunus@omm.com>; Zhao, Amy <amyzhao@omm.com>
**Subject:** In re: KFI Wind-Down Corp. Case No. 23-10638 (LSS) (Bankr. D. Del) - Certain Insurers'

Second Set of Plan-Related RFPs to KFI

All,

Attached please find your service copy of the Certain Insurers' Second Set of Plan-Related Requests for Production to Debtor KFI.

Regards,
Adam

## O'Melveny

**Adam P. Haberkorn**
Pronouns: he/him/his
ahaberkorn@omm.com
O: +1-212-728-5862
M: +1-508-330-7155

O'Melveny & Myers LLP
1301 Avenue of the Americas, Suite 1700
New York, NY  10019
Website | LinkedIn | Twitter

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.

**\*\*This is an external message from:** jburke@ruggerilaw.com **\*\***

This e-mail is sent by a law firm and contains information that may be privileged and confidential. If you are not the intended recipient, please delete the e-mail and notify us immediately.

# EXHIBIT F



O'Melveny & Myers LLP
1301 Avenue of the Americas
Suite 1700
New York, NY 10019-6022

T: +1 212 326 2000
F: +1 212 326 2061
omm.com

File Number:

June 20, 2025

**Javed S. Yunus**
D: +1 212 728 5872
jyunus@omm.com

Brian D. Glueckstein
Justin J. DeCamp
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004

Justin:

I write to memorialize and follow up on the items discussed during our meet and confer on Wednesday, June 18, regarding KFI's Responses and Objections to Certain Insurers' Second Set of Plan-Related RFPs.  Please let me know if you disagree with anything here, and please follow up in writing this week on the open issues or action items discussed below.

## General Deficiencies

**Improper Responses and Objections.**  You clarified KFI will not withhold documents responsive to your search terms for reasons other than privilege.

**Search Terms and Custodians**.  You stated KFI would be providing Certain Insurers its search terms and custodial information in a cover letter to its initial production that would be circulated next week.

**Completion of Document Productions.**  You stated KFI would be making its first production at the end of this week or early next, and would substantially complete its production of documents by mid-July.  You informed us that KFI's review of the materials for the forthcoming document productions remains ongoing, and it is not near the end of that review, notwithstanding that Certain Insurers served these Requests four months ago, and three months have passed since KFI agreed to produce responsive documents.

**Privilege Log**.  You reiterated that you would serve a complete privilege log roughly coincident with the completion of document production, but agreed to consider producing privilege logs on a rolling basis.  You also agreed to provide more information on the content of any categorical privilege log you would produce.  Please confirm KFI's position on the rolling privilege logs, and the content of the categorical log, by the end of this week.

**Mediation Privilege**.  We discussed the application of the mediation privilege over documents that were disclosed to the mediator or in the presence of the mediator, including mediation presentations or communications made during mediation.  For the avoidance of doubt, and as stated in our letter, we maintain that KFI waived the mediation privilege for such documents, and any other documents in connection with the mediation, by placing the very fact of the

O'Melveny

mediation at issue to support that the Plan was drafted and negotiated in good faith. *See, e.g.*, *In re: KFI Wind-Down Corp.*, Tr. at 246:11-16, Case No. 23-10638 (LSS) (Bankr. D. Del. June 4, 2025).

**Specific Requests**

**Request No. 2 (Plan-Related Experts)**:  We clarified that our request was not seeking expert discovery, but rather documents and communications provided to or created by any expert retained by any Plan Proponent in connection with the drafting or negotiation of the Plan.  For instance, is it your contention that the Debtor entered into the Plan without any analysis of its tort liability and is not relying on that analysis at all to defend the Plan?  And is it your contention that the Debtor agreed to the Plan terms without any analysis of any of the subject matters identified in our June 12 letter?  Unless the Debtor is expressly not relying on any such analyses, we believe they are fair game for discovery.  You also stated KFI would be willing to produce final versions of any such experts' "final analysis," but not drafts or other preliminary documents and communications.  We believe we are entitled to at least the "final" or "operative" documents which existed and which the Debtor considered at the time that it agreed to the Plan terms.  And certainly, any expert analysis shared with any other third party, including Carrier or any Plan Proponent.

**Request Nos. 3 (Financial Analyses) and 4 (Plan Supplement Documents):**  You stated KFI would not withhold any non-privileged documents that come within the scope of its search for documents responsive to either request.  We maintain that KFI has waived the mediation privilege in connection with these documents, and we reserve the right to challenge any other privilege assertions following review of the privilege log.

**Request No. 6 (Third-Party Releases)**:  You reiterated KFI's position that there are no third-party releases in the Plan.  You agreed to consider confirming, in writing—both in a response to this letter, and in the Disclosure Statement—that the Plan does not release any of the Insurers' rights to recover any insurance proceeds shared with Carrier under the Insurance Cooperation Agreement, as discussed in Certain Insurers' brief objecting that the Disclosure Statement should not be approved because the Plan is patently unconfirmable.  If this is accurate, we will send you a proposed stipulation to that effect.  Please advise promptly.

**Request No. 15 (Evaluation of Tort Liability)**:  You stated you did not believe KFI has any non-privileged documents responsive to this Request.  You offered that if such documents existed, KFI would produce all "final" versions of such analysis, but not drafts or communications.  We believe we are entitled to at least the "final" or "operative" documents which existed and which the Debtor considered at the time that it agreed to the Plan terms.  If the "final" version of such analyses includes the documents which the Debtor considered in agreeing to the Plan, we will start with those, while reserving our rights to seek other related documents, including upon receiving your privilege log.

**Request No. 24 (Missing Information)**:  You stated that KFI will produce all non-privileged documents in response to this Request.

O'Melveny

**Request No. 28 (New National Foam Release Documents)**:  You disputed the relevance of documents concerning this release, and reiterated that no such settlement or release has been finalized.  You also offered to revisit this request if and when the New National Foam Release is finalized.  Without conceding our right to these documents, including any term sheets that have been or will be exchanged before a formal final agreement, we are reviewing this proposal and will follow up with you on our position.

**Special Committee Documents (Including Deposition Transcripts)**.   You stated that KFI will need to confer with counsel for the Special Committee at Schulte Roth & Zabel regarding the production of these documents, and thus could not provide the complete list of deposition transcripts referenced in Article III, Section M of the Disclosure Statement, nor could you identify any transcripts KFI intends to withhold and the basis for doing so, as I requested in my June 12 letter.  You stated you will provide an update to us on this by end of this week, including whether KFI can roll the deposition transcripts into its first production, and whether any of the referenced depositions were conducted by the Special Committee independently from discovery in the MDL.  For the avoidance of doubt, please also include in this letter (i) the information I previously requested in my June 12 letter regarding the deposition transcripts, and (ii) whether KFI will be producing each of the specific categories of Special-Committee documents listed in my June 12 letter.

* * *

Sincerely,

*/s/ Javed. S. Yunus*

Javed S. Yunus

# EXHIBIT G



O'Melveny & Myers LLP          T: +1 212 326 2000                          File Number:
1301 Avenue of the Americas    F: +1 212 326 2061
Suite 1700                     omm.com
New York, NY 10019-6022

June 12, 2025                                              **Javed S. Yunus**
                                                          D: +1 212 728 5872
                                                          jyunus@omm.com

Brian D. Glueckstein
Justin J. DeCamp
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004

Dear Counsel:

I write concerning your March 24 Responses and Objections (the "Responses") to Certain Insurers' Second Set of Plan-Related Requests for Production of Documents (the "Requests"). Please advise of your availability next Monday or Tuesday to discuss these issues.

## General Deficiencies

**Improper Responses and Objections.**  KFI has subjected each Response to multiple layers of general and specific objections without specifying whether KFI intends to limit its search or withhold documents on the basis of any one objection.  This is improper and generates the very confusion the Federal Rules sought to eliminate with the requirement that responses be stated with specificity.  *See* FRCP 34(b)(2)(B).  At our meet and confer, please be prepared to state with specificity the categories of document that KFI will produce, those that it will not, the objections under which it will not, the steps KFI has undertaken to conduct its "reasonable searches," and all proposed custodians for those searches.  Please also confirm that KFI's custodians will include the relevant attorneys from your or any other law firm representing KFI in connection with this bankruptcy proceeding.

**Completion of Document Productions.**  More than two months have passed since KFI served its Responses (and three months since the Insurers served the Requests), yet you have not even produced the documents to which you do not object.  This delay will materially prejudice the Insurers' ability to adequately raise objections to the Plan, should the Court permit the Debtor to proceed.  Accordingly, we ask that KFI confirm it will substantially complete its document productions in response to the Requests by June 30, 2025.

**Privilege Log.**  KFI claims it is withholding responsive documents on the basis of a number of privileges and work-product protections.  In addition to being prepared to discuss the categories of documents that you contend you will withhold under privilege (including whether you continue to assert privilege with respect to matters that the Court clearly said would be the subject of discovery at last week's hearing), please confirm the date on which you will provide your privilege log.  We will need it no later than the end of June if we are to avoid prejudice in preparing for a confirmation hearing.

---

Austin  •  Century City  •  Dallas  •  Houston  •  Los Angeles  •  Newport Beach  •  New York  •  San Francisco  •  Silicon Valley  •  Washington, DC
Beijing  •  Brussels  •  Hong Kong  •  London  •  Seoul  •  Shanghai  •  Singapore  •  Tokyo

**O'Melveny**

---

**Documents Withheld on Mediation Privilege**.  Among other things, in light of last week's hearing, see, e.g., *In re: KFI Wind-Down Corp.*, Tr. at 246:11-16, Case No. 23-10638 (LSS) (Bankr. D. Del. June 4, 2025), please confirm that KFI will no longer assert a "mediation privilege."  *See In re Boy Scouts of America*, Tr. at 13:13-18, Case. No. 20-10343 (LSS) (Bankr. D. Del. Oct. 25, 2021) (ordering production of documents over assertions of mediation privilege where "it appears that the fact of mediation may be the primary evidence debtors will induce to meet the good faith standard*").

**Specific Requests**

**Request No. 2 (Plan-Related Experts)**:  In addition to the need for a privilege log for withheld documents, we note that KFI appears to misconstrue the Request, which seeks documents provided to or prepared by experts retained in connection with the *drafting and negotiating* of the Plan and TDPs, not experts whom you might retain for trial purposes.  Please confirm KFI will produce all non-privileged documents responsive to this Request, including:

- any medical or other scientific materials provided to or prepared by any expert;

- any valuations of tort liability provided to or prepared by any expert; any forecasting analysis of the underlying AFFF claims for existing and/or future claims provided to or prepared by any expert;

- any analysis provided to or prepared by any expert with respect to the value of the Estate Causes of Action claims KFI has against Carrier and/or UTC that are being released;  and

- any other analysis or feedback provided to or prepared by any expert with respect to the criteria set forth in the TDP for allowing and valuing any type of claim.

**Request No. 3 (Financial Analyses)**:  KFI construes this Request as only "seeking information concerning the Liquidation Analysis," but the Request seeks documents regarding *any* form of financial analysis in connection with the Plan, even if they were not prepared or reviewed in connection with the Liquidation Analysis.  This includes:

- any non-privileged documents reflecting any forecasting analysis of the underlying AFFF claims, whether forecasting existing claims or future claims;

- any analysis of AFFF market share liability relied upon in the drafting or negotiation of the Plan;

- any analysis of the value of assets being contributed to the Settlement Trusts;

- any analysis of estimated recoveries for the AFFF claims under the proposed Plan;

- any analysis of the value of the captive and fronting insurance policies and the financial impact on that value by releasing RTX, UTC, UTIV and Carrier under the Plan;

2

O'Melveny

- any analysis of the value of the releases being granted to Carrier, including any analysis by the Special Committee disclosed in Article III of the Disclosure Statement, or any other evidence of KFI's claims against Carrier and/or UTC that are being released, and Carrier's insurance and non-insurance assets the claims against which are being released; and

- any analysis of the sharing of Net Insurance Proceeds under Section 2.4 of the Insurance Cooperation Agreement.

Please confirm KFI will produce these documents.

**Request No. 4 (Plan Supplement Documents)**:  This Request seeks all "Documents or Communications concerning the Plan Supplement."  KFI has agreed to produce non-privileged documents responsive to this Request, subject to its specific and general objections.  Please confirm that in response to this Request, KFI will produce:

- all non-privileged drafts of the TDPs, the Insurance Cooperation Agreement (including Section 2.4 on the sharing of proceeds), the Estate Claims Settlement Agreement, and any other document constituting the Plan Supplement;

- any communications between the Debtor and the UCC regarding the TDPs, the Insurance Cooperation Agreement (including Section 2.4 on the sharing of proceeds), the Estate Claims Settlement Agreement, and any other document constituting the Plan Supplement;

- any communications between the Debtor and the PEC regarding TDPs, the Insurance Cooperation Agreement (including Section 2.4 on the sharing of proceeds), the Estate Claims Settlement Agreement, and any other document constituting the Plan Supplement;

- any communications between the Debtor and Carrier, RTX, and/or UTC regarding the TDPs, the Insurance Cooperation Agreement (including Section 2.4 on the sharing of proceeds), the Estate Claims Settlement Agreement, the RTX Waiver, and any other document constituting the Plan Supplement; and

- all non-privileged documents regarding the negotiation and analysis of the sharing of Net Insurance Proceeds under Section 2.4 of the Insurance Cooperation Agreement.

**Request No. 6 (Third-Party Releases)**:  KFI states it will not produce documents in response to this Request because "[t]he Plan does not include third-party releases."  But as discussed in our objection to the Disclosure Statement for the Plan, the Insurers contend the Plan is patently unconfirmable in part because it includes releases of the "Carrier/UTC Parties," as defined in the objection, in violation of *Purdue Pharma*.  *See* Patently Unconfirmable Brief §§ I.B., II. B. Rather than fighting over word usage, please confirm KFI will produce documents in response to this Request, including all documents, communications, and analyses concerning the direct

3

liability KFI and Carrier insist Carrier will continue to face, "naked," in the tort system following the confirmation of the Plan.

**Request No. 15 (Evaluation of Tort Liability)**:  KFI states it will not produce "Documents or Communications concerning the Debtor's evaluation of its tort liability" because the Request "seeks privileged documents and communications."  Please confirm that there are no non-privileged documents responsive to this Request.  If there are any, produce them.  Otherwise, we will await your privilege log and address the documents withheld then.  Responsive documents should include:

- any materials provided to or prepared by any expert retained by KFI *for the purpose of developing or negotiating the Plan and TDPs* (not experts retained for plan discovery, as stated in the Responses);

- any analysis of successful defenses of AFFF claims in the tort system and the amounts paid or expected to be paid out to AFFF claimants in settlements or damages awards in the tort system, including any analyses based on settlements and/or verdicts with respect to other AFFF defendants; and

- any analysis concerning AFFF market share liability.

**Request No. 24 (Missing Information)**:  This Request seeks final and draft versions of all bracketed sections or provisions in the Plan and Plan Supplement, or sections/provisions otherwise labeled "to come" or "intentionally omitted."  KFI responds it will only provide this information to the extent it is responsive to other agreed-upon Requests, but this is not an acceptable objection under the Federal Rules.  The Fourth Amended Plan and Plan Supplement are missing the following provisions/sections, each of which is essential for the Insurers to evaluate the fairness of the Plan:

- With respect to each of the three Trust Agreements, the amount of compensation for the Trustee.  *See* Primary AFFF Settlement Trust Agreement § 5.5; Sovereign State AFFF Settlement Trust Agreement § 5.3; GUC Liquidation Trust Agreement § 4.3.

- As to the Primary AFFF Settlement Trust Agreement, the agreement is still missing in Section 4.2 the bracketed payment amounts that would trigger the suspension/resumption of the Trustee's obligation to make a payment to a Beneficiary.  The agreement is also missing the "Base Score" figures in Section IV.4 of the TDP for Personal Injury AFFF Claims (Schedule I.E.).

- The Insurance Cooperation Agreement has "intentionally omitted" Section 3.3 (Article III – Transfer of Claim Records).

- The Liquidation Analysis continues to omit as "TBD" the "Distributable Value" figures in its "Detailed Liquidation Analysis."

O'Melveny

Please produce all draft and final versions of the above sections, else confirm that the missing figures have not yet been finalized or that draft or final versions of these documents no longer exist.

**Request No. 28 (New National Foam Release Documents)**:  KFI says it will not produce documents in connection with the New National Foam Release because "the Plan does not include any such releases."  But the Plan contemplates that the New National Foam Release will be negotiated and finalized at a future date, and the Court's approval of the release is still a condition precedent to the effective date of the Plan.  *See* Fourth Amended Plan ¶¶ 2.1.139, 2.1.175, 9.1(e).  If responsive documents exist, please produce them.

**Request No. 30 (Special Committee Depositions)**.  This Request seeks the transcripts of all depositions taken in connection with the Special Committee Investigation disclosed in Article III, Section M of the Disclosure Statement.  KFI has agreed to produce all "non-privileged documents responsive to this Request," subject to its general objections and a specific objection on relevance grounds, but it has not confirmed whether it is withholding any responsive documents on the basis of those objections.  Please (i) provide a complete list of the deposition transcripts referred to in Article III, Section M of the Disclosure Statement and (ii) identify any transcripts KFI intends to withhold and the basis for doing so.

**Other Special Committee Documents**.  Please confirm KFI will produce all documents relied upon, created by, or provided to the Special Committee in connection with its evaluation of the potential claims KFI could assert against Carrier and/or RTX, including:

- meeting minutes, presentations, memoranda, or any other documents reflecting the Special Committee's investigation;

- documents provided to, relied upon, or created by any expert retained by the Special Committee in connection with its investigation;

- the 450,000 documents referenced in the Disclosure Statement;

- any other analysis or valuation of the potential claims the Special Committee determined KFI could assert against Carrier and/RTX as a result of its investigation; and

- any communications regarding the investigation between the Special Committee and Carrier.

These documents fall into several of the Requests for which KFI has agreed to produce responsive documents, as well as the Requests discussed above.  *See* Requests Nos. 3, 6, 15, 27, 30.

\* \* \*

Please contact me with any questions about this letter and advise of your availability next Monday or Tuesday to meet and confer regarding the Request and your Responses.

O'Melveny

Sincerely,

*/s/ Javed S. Yunus*

Javed S. Yunus

# EXHIBIT H



James Burke
Phone: (202) 469-7788
jburke@ruggerilaw.com

May 27, 2025

**BY EMAIL**

Derek C. Abbott
Andrew R. Remming
Daniel B. Butz
Tamara K. Mann
Casey B. Sawyer
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
dabbott@morrisnichols.com
aremming@morrisnichols.com
dbutz@morrisnichols.com
tmann@morrisnichols.com
csawyer@morrisnichols.com

Andrew G. Dietderich
Brian D. Glueckstein
Justin J. DeCamp
Benjamin S. Beller
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
dietdericha@sullcrom.com
gluecksteinb@sullcrom.com
decampj@sullcrom.com
bellerb@sullcrom.com

Re:    *In re KFI Wind-Down Corp.*, Case No. 23-10638 (Bankr. D. Del.)

Dear Counsel:

On behalf of certain insurers identified in the Annex below ("Certain Insurers"), we write concerning Certain Insurers' Third Set of Plan-Related Requests for Production of Documents (the "Requests") and the Debtor's Responses and Objections thereto (the "R&Os"), which the Debtor served on March 24, 2025.[1]

---

[1] Capitalized terms not defined here have the definitions given in the *Debtor's Third Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* (Dkt. No. 2053-1) (the "Plan").

May 27, 2025
Page 2 of 11

As to 13 of the 22 Requests (the "Agreed Requests"), the Debtor agreed in its R&Os to produce non-privileged documents, subject to the corresponding objections and limitations in the R&Os. Yet, the R&Os fail to state when the Debtor will commence its document productions in response to the Agreed Requests or when it estimates completing those productions, and nearly two months after the Debtor served its R&Os, the Debtor has yet to produce a single document. *See* Fed. R. Civ. P. 34(b)(2)(B). While Certain Insurers maintain that the Debtor's Plan is patently unconfirmable, if the Court were to allow the Debtor to proceed with solicitation and a confirmation hearing, the continuing delay in the Debtor's productions would be prejudicial to Certain Insurers—especially given that the Debtor has proposed a confirmation schedule under which objections to the Plan would be due on October 1, 2025, and thus potential objectors would need to complete all discovery within roughly four months.  Certain Insurers reserve all rights to raise the Debtor's discovery delay in connection with the upcoming hearing on the Debtor's solicitation motion and the schedule for plan confirmation.

The Debtor also has improperly refused to produce any documents in response to nine of the Requests: Nos. 4, 8, 11, 12, 13, 17, 18, 21, 22 (the "Refused Requests").  Please advise when the Debtor can be available to meet and confer about the Refused Requests.

To inform discussion during the meet and confer, we provide the following non-exhaustive replies with respect to the Refused Requests:

- Request No. 4: "All Documents that the Debtor received from or provided to a third party participating in the Mediation that were not created exclusively for use in the Mediation."

  The Debtor refused to produce in response to this Request "[d]ue to its overbreadth untethered to any potential objection and scope seeking documents protected by the Mediation Privilege."  We will be prepared to discuss any concerns about overbreadth during the meet and confer.  But the Debtor's relevance objection—that the Request is "untethered to any potential objection"—is invalid.  This Request seeks documents that mediation parties would have had access to at the time of mediation—the process through which the Debtor negotiated the core terms of the Plan, including the Estate Claims Settlement.  The information sought is relevant to, among other things, evaluating if the Estate Claims Settlement satisfies the standards for approval under Bankruptcy Rule 9019, as well as whether the Plan satisfies the good faith requirement in 11 U.S.C. § 1129(a)(3).  As for the Debtor's assertion that the documents sought by this Request are "protected by the Mediation Privilege," no mediation privilege could apply to documents responsive to this Request that were exchanged outside of mediation, nor do documents created for non-mediation purposes become shielded from discovery merely because the Debtor also uses those documents during mediation.  *See* Del. Bankr. L.R. 9019-5(d)(ii), (iv); *Burtch v. Luminescent Sys., Inc. (In re AE Liquidation, Inc.)*, 2012 WL 6139950, at *2 (Bankr. D. Del. Dec. 11, 2012) (Local Rule 9019-5 "merely prohibits any party from using as evidence any documents prepared for the purpose of mediation"); *see also In re Tribune Co.*, 2011 WL 386827, at *7-8 (Bankr. D. Del. Feb. 3, 2011) (court approved discovery related to mediation, subject to limitations, where plan proponents put the

mediation "in issue" by "arguing that the proposed [plan] settlement is fair because it is the product of a mediation conducted by a judge").[2]

- Request No. 8: "All Documents relied upon or otherwise referenced in the Complaint which the Committee filed in this case at docket entry number 678-2 and in the motion requesting authority to pursue that Complaint which the Committee filed in this case at docket entry number 678-1."

  The Debtor refused to produce in response to this Request "[b]ecause this Request is more appropriately directed at the Committee to the extent it is relevant at all." But an "other source" objection "is proper only if the sought discovery is obtainable from some other source that is *more convenient, less burdensome, or less expensive.*" *Occidental Chem. Corp. v. 21st Century Fox Am., Inc.*, 2023 WL 2300652, at *9 (D.N.J. Feb. 28, 2023) (emphasis in original); *accord* Fed. R. Civ. P. 26(b)(2)(C). Here, the Debtor's R&Os fail to specify any reason that redirecting this Request to the Committee would be "more convenient, less burdensome, or less expensive" and, thus, the Debtor has not met its burden as the party resisting discovery. *See Bing v. Spinelli*, 2021 WL 2826124, at *1 (D.N.J. July 7, 2021) ("A party resisting discovery on the grounds of burden or expense bears the burden of showing specifically how the request is burdensome."); *accord* Fed. R. Civ. P. 34(b)(2)(B) (response must "state with specificity the grounds for objecting to the request, including the reasons"). The documents sought by this Request are identifiable from the Complaint and we understand are documents that the Committee would have obtained from the Debtor. Further, shifting the burden of production to the Committee would not result in any savings for the Debtor's bankruptcy estate because the Committee also is compensated by the estate for its professional fees and costs.

- Request No. 11: "All Documents concerning the Contribution Agreement, the negotiation thereof, and the Debtor's decision to enter into such agreement."

  The Debtor refused to produce in response to this Request "[b]ecause the Contribution Agreement has previously been approved by the Court and is not relevant to Certain Insurers' assessment of the Plan." This relevance objection is also invalid. The Sale Order left open the issue of how the Net Sale Proceeds would be allocated between the Debtor and Carrier, and that allocation dispute is one of the issues that would be resolved under the Estate Claims Settlement Agreement which the Debtor is asking the Court to approve (under Bankruptcy Rule 9019) as part of plan confirmation. The documents sought by this Request are thus relevant to evaluating the propriety of that Estate Claims Settlement.

---

[2] While the Court's mediation order states that information exchanged during the mediation would be subject to protection under Rule 408 of the Federal Rules of Evidence and Local Rule 9019-5(d)(i) (Order Appointing Mediators (Dkt. No. 660) ¶ 13), those rules relate only to the admissibility of information at trial, not the discoverability of information. *See Fed R. Civ. P. 26(b)(1) ("Information . . . need not be admissible in evidence to be discoverable").

- <u>Request No. 12</u>: "All Documents concerning the Related Assets (as that term is defined in the Disclosure Statement) contributed to the Debtor in connection with the Contribution Agreement, including, without limitation, Documents concerning any prepetition transfers of such assets by the Debtor and Documents concerning Analysis of the value of such assets or the effect of such assets on the Sale."

  The Debtor refused to produce in response to this Request on substantially the same grounds as for Request No. 11 and its refusal to produce is invalid for the same reasons.

- <u>Request No. 13</u>: "All Documents the Debtor (including the Special Committee) provided to or received from Hilco Valuation Services, LLC."

  The Debtor refused to produce in response to this Request on substantially the same grounds as for Request No. 11 and its refusal to produce is invalid for the same reasons.

- <u>Request No. 17</u>: "The most recent coverage chart, or other similar Analysis, reflecting the insurers, policy numbers, policy periods, and limits of liability for Insurance Policies under which the Debtor contends it has rights."

  The Debtor refused to produce in response to this Request "[b]ecause this Request seeks privileged documents." But even if some documents responsive to this Request may contain privileged information, that does not excuse the Debtor from producing other responsive documents that do not. Fed. R. Civ. P. 34(b)(2)(C). Here, the R&Os do not represent that there are no non-privileged documents responsive to this Request, nor could they plausibly do so, as this Request would encompass even a survey of the Debtor's insurance policies similar to Attachment A to the Debtor's complaint in *KFI Wind-Down Corp. v. Ace Am. Ins. Co.*, Adv. Proc. No. 23-50758 (Bankr. D. Del.). Moreover, as to any responsive documents that the Debtor believes contain privileged information, the Debtor must produce redacted versions if doing so would be sufficient to protect that privilege. *See DelTondo v. Sch. Dist. of Pittsburgh*, 2024 WL 197436, at \*3 (W.D. Pa. Jan. 18, 2024) ("Defendants' blanket objection to producing redacted versions of documents cannot be sustained."); *see also Protocol for Document Collection and Production, Exhibit C to Stipulation for Protective Order* (Dkt. No. 337-1), § IV.1 ("Redactions must be limited to only language or information within the document deemed protected.").

- <u>Request No. 18</u>: "The most recent coverage chart, or other similar Analysis, reflecting the insurers, policy numbers, policy periods, and limits of liability for Insurance Policies under which Carrier contends it has rights."

  The Debtor refused to produce in response to this Request on substantially the same grounds as for Request No. 17 and its refusal to produce is invalid for the same reasons.

- <u>Request No. 21</u>: "All Documents concerning the Debtor's Analysis of Carrier's actual or potential liability for Direct Claims or Independent AFFF Causes of Action."

The Debtor refused to produce in response to this Request "[d]ue to its overbreadth and the fact that it seeks privileged documents, and because Certain Insurers have not articulated a basis for the relevancy of this Request to their assessment of the Plan." Here again, we will be prepared to discuss any concerns about overbreadth during the meet and confer. And as discussed above, the Debtor's concern that some documents responsive to this Request may contain privileged information does not excuse the Debtor from producing other responsive documents that do not contain such information or from producing privileged documents in redacted form, if possible. As to the Debtor's relevance objection, the information sought by this Request is directly relevant to evaluating whether the Estate Claims Settlement satisfies the standards for approval under Bankruptcy Rule 9019. Under the Plan, Carrier would assign its insurance rights to the Primary AFFF Settlement Trust. The extent of Carrier's liability for Direct Claims or Independent AFFF Causes of Action bears on the value of the insurance rights Carrier would be assigning.

- <u>Request No. 22</u>: "All Documents concerning the Debtor's Analysis of Carrier's actual or potential liability for claims or Causes of Action unrelated to AFFF for which Carrier has asserted or could assert rights or claims to coverage under Insurance Policies."

  The Debtor refused to produce in response to this Request on substantially the same grounds as for Request No. 21 and its refusal to produce is invalid for the same reasons. Here again, the extent of Carrier's liability for claims or Causes of Action unrelated to AFFF for which Carrier asserts rights to coverage under Insurance Policies bears on the value of the insurance rights Carrier would be assigning under the Plan.

  Additionally, to the extent that the Debtor is withholding production of documents based on any asserted privilege, we cannot adequately assess the Debtor's privilege assertion as to any specific document because the Debtor has not produced any log identifying which documents it is withholding on this basis. *See* Fed. R. Civ. P. 26(b)(5)(A). We can discuss the timing for delivery of the Debtor's privilege log during our meet and confer.

  Please contact me with any questions about this letter. Certain Insurers reserve all rights in connection with the Requests, including their rights to move to compel production and to seek the exclusion at trial of documents that the Debtor improperly withholds.

  Sincerely yours,

  James Burke

May 27, 2025
Page 6 of 11

## ANNEX

BODELL BOVÉ
Bruce W. McCullough (Del. ID 3112)
1225 N. King Street, Suite 1000
P.O. Box 397
Wilmington, DE 19899-0397
Telephone: (302) 655-6749
Facsimile: (302) 655-6827
bmccullough@bodellbove.com

-and-

RUGGERI PARKS WEINBERG LLP
Joshua D. Weinberg (admitted *pro hac vice*)
Annette P. Rolain (admitted *pro hac vice*)
James Burke (admitted *pro hac vice*)
1875 K Street NW, Suite 800
Washington, DC 20006
Telephone: (202) 984-1400
Facsimile: (202) 984-1401
jweinberg@ruggerilaw.com
arolain@ruggerilaw.com
jburke@ruggerilaw.com

*Counsel for Great American Assurance*
*Company and Great American Insurance*
*Company of New York*

May 27, 2025
Page 7 of 11

MARSHALL DENNEHEY, P.C.
M. Claire McCudden (De. No. 5036)
1007 N. Orange Street, Suite 600
P.O. Box 8888
Wilmington, DE 19899-8888
Telephone: 302-552-4300
Facsimile: 302-552-4340
MCMcCudden@MDWCG.com

-and-

STEPTOE LLP
Sarah D. Gordon (admitted *pro hac vice*)
Johanna Dennehy (admitted *pro hac vice*)
Ansley Seay (admitted *pro hac vice*)
1330 Connecticut Ave. NW
Washington, D.C. 20036
202-429-3000
202-429-3902 (facsimile)
sgordon@steptoe.com
jdennehy@steptoe.com
aseay@steptoe.com

-and-

RUGGERI PARKS WEINBERG LLP
Joshua D. Weinberg (admitted *pro hac vice*)
Annette P. Rolain (admitted *pro hac vice*)
James Burke (admitted *pro hac vice*)
1875 K Street NW, Suite 800
Washington, DC 20006
Telephone: (202) 984-1400
Facsimile: (202) 984-1401
jweinberg@ruggerilaw.com
arolain@ruggerilaw.com
jburke@ruggerilaw.com

*Counsel for First State Insurance Company,*
*Hartford Accident and Indemnity Company,*
*and Twin City Fire Insurance Company*

May 27, 2025
Page 8 of 11

KENNEDYS CMK LLP
Marc Casarino, Esq.
Jillian G. Dennehy, Esq. (admitted *pro hac vice*)
222 Delaware Avenue, Suite 710
Wilmington, Delaware 19801
Telephone: (302) 308-6647
Marc.casarino@kennedyslaw.com
Jillian.dennehy@kennedyslaw.com

-and-

IFRAH LAW PLLC
George R. Calhoun, Esq. (*pro hac vice* forthcoming)
1717 Pennsylvania Avenue, NW, Suite 650
Washington, DC 20006
Telephone: (202) 524-4147

*Counsel for TIG Insurance Company, as
successor to Gibraltar Casualty Company, and
Evanston Insurance Company*

May 27, 2025
Page 9 of 11

PASHMAN STEIN WALDER HAYDEN, P.C.
Richard W. Riley (DE No. 4052)
824 North Market Street, Suite 800,
Wilmington, DE 19801
Telephone: (302) 327-6790
E-mail: rriley@pashmanstein.com

-and-

SAUL EWING LLP
Laurie A. Kamaiko (admitted *pro hac vice*)
1270 Avenue of the Americas, Suite 2800
New York, NY 10020
Telephone: (212) 980-7202
laurie.kamaiko@saul.com

Zachary W. Berk
131 Dartmouth Street, Suite 501
Boston, MA 02116
Telephone: (617) 912-0927
zachary.berk@saul.com

-and-

PLEVIN & TURNER LLP
Mark Plevin (admitted *pro hac vice*)
580 California Street, 12th Floor
San Francisco, California 94104
Telephone: (202) 580.6640
mplevin@plevinturner.com

Miranda Turner (admitted *pro hac vice*)
1701 Pennsylvania Ave., N.W., Suite 200
Washington, DC 20006
Telephone: (202) 580.6640
mturner@plevinturner.com

*Counsel for American Guarantee and Liability*
*Insurance Company and Zurich American*
*Insurance Company*

May 27, 2025
Page 10 of 11

REGER RIZZO & DARNALL LLP
Louis J. Rizzo, Jr. (#3374)
1521 Concord Pike, Suite 305
Brandywine Plaza West
Wilmington, Delaware 19803
(302) 477-7100
lrizzo@regerlaw.com

-and-

CONNOLY GALLAGHER LLP
Karen C. Bifferato (#3279)
1201 North Market Street, 20th Floor
Wilmington, Delaware 19801
Telephone: (302) 757-7300
kbifferato@connollygallagher.com

-and-

GIMIGLIANO MAURIELLO & MALONEY, P.A.
Stephen V. Gimigliano (admitted *pro hac vice*)
John Maloney (admitted *pro hac vice*)
Christopher K. Kim (admitted *pro hac vice*)
163 Madison Avenue, Suite 500
P.O. Box 1449
Morristown, New Jersey 07962-1449
Telephone: (973) 946-8360
sgimigliano@lawgmm.com
jmaloney@lawgmm.com
ckim@lawgmm.com

*Counsel for Travelers Casualty and Surety*
*Company (f/k/a The Aetna Casualty and Surety Company)*

May 27, 2025
Page 11 of 11

KENNEDYS CMK LLP
John D. LaBarbera (*pro hac vice* forthcoming)
Karen Andersen Moran (admitted *pro hac vice*)
30 South Wacker Drive, Suite 3650
Chicago, Illinois 60606
Telephone: 312-800-5000
John.labarbera@kennedyslaw.com
Karen.andersenmoran@kennedyslaw.com

Marc Casarino, Esq. (No. 3613)
222 Delaware Ave. Suite 710
Wilmington, Delaware 19801
Telephone: 302-308-6647
Marc.casarino@kennedyslaw.com

*Counsel for Westport Insurance Corporation*
*as successor-in-interest to Puritan Insurance*
*Company*

# EXHIBIT I

1

```
 1                    UNITED STATES BANKRUPTCY COURT
 2                          DISTRICT OF DELAWARE

 3                                        .    Chapter 11
       IN RE:                             .
 4                                        .    Case No. 20-10343 (LSS)
       BOY SCOUTS OF AMERICA AND          .
 5     DELAWARE BSA, LLC,                 .
                                          .    Courtroom No. 2
 6                                        .    824 North Market Street
                                          .    Wilmington, Delaware 19801
 7                                        .
                         Debtors.         .    July 27, 2021
 8     . . . . . . . . . . . . . . . .    .    3:00 P.M.

 9            TRANSCRIPT OF TELEPHONIC DISCOVERY CONFERENCE
            BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
10                 UNITED STATES BANKRUPTCY JUDGE

11     TELEPHONIC APPEARANCES:

12     For the Debtor:          Derek C. Abbott, Esquire
                                Andrew R. Remming, Esquire
13                              Paige N. Topper, Esquire
                                MORRIS, NICHOLS, ARSHT & TUNNELL LLP
14                              1201 North Market Street, 16th Floor
                                Wilmington, Delaware 19899
15
                                - and -
16
                                Jessica C. Lauria, Esquire
17                              Glenn Kurtz, Esquire
                                WHITE & CASE LLP
18                              1221 Avenue of the Americas
                                New York, New York 10020
19
20     Audio Operator:          Brandon J. McCarthy, ECRO

21     Transcription Company:   Reliable
                                1007 N. Orange Street
22                              Wilmington, Delaware 19801
                                (302)654-8080
23                              Email:  gmatthews@reliable-co.com

24
       Proceedings recorded by electronic sound recording; transcript
25     produced by transcription service.
```

1   TELEPHONIC APPEARANCES (Cont'd):

2   For the Debtors:          Michael C. Andolina, Esquire
                              Matthew E. Linder, Esquire
3                             Laura E. Baccash, Esquire
                              Blair M. Warner, Esquire
4                             WHITE & CASE LLP
                              111 South Wacker Drive
5                             Chicago, Illinois 60606

6   For the Roman Catholic    Jeremy Ryan, Esquire
7   Ad Hoc Committee:         POTTER ANDERSON & CORROON LLP
                              Hercules Plaza
8                             1313 North Market Street, 6th Floor
                              P.O. Box 951
9                             Wilmington, Delaware 19801

10  For Century:              Daniel Shamah, Esquire
                              O'MELVENY & MYERS LLP
11                            Times Square Tower
                              7 Times Square
12                            New York, New York 10036

13
    For Hartford:             James Ruggeri, Esquire
14                            SHIPMAN & GOODWIN LLP
                              1875 K Street NW, Suite 600
15                            Washington, DC 20006

16  For Allianz Global        Harris Winsberg, Esquire
17  Risks US Insurance:       TROUTMAN PEPPER HAMILTON SANDERS LLP
                              600 Peachtree Street, NE
18                            Suite 3000
                              Atlanta, Georgia 30308

19

20

21

22

23

24

25

1  practical one. We're not talking about a failure to supply

2  information that is somehow relevant to the truth in any of

3  this. What the objectors are looking to do here is to

4  identify purported deficiencies. And every time that they get

5  the true evidence that they don't have those deficiencies

6  they're upset by it.

7         So it's not the failure to produce information that

8  would be problematic, it's the production of information that

9  is problematic to their objection. Maybe the best example is

10 counsel referred to authorization. That can't be a serious

11 contest here that the board of the Boy Scouts has authorized

12 the Boy Scouts to enter into the RSA. So they're looking for

13 some sort of expedited discovery issue to say, well, we don't

14 have enough proof of that when that can't be a serious issue

15 in the case.

16        So I just wanted to note that we're not missing

17 information to get to the truth finding exercise here. If

18 anything they're just concerned that we're giving them

19 information that undercuts the objections.

20        Thank you for your time, Your Honor.

21        THE COURT: Mr. Kurtz, I think my response to that

22 is if it's helpful information than it should have been

23 produced in the first instance. There shouldn't have been any

24 holding it back. I am not persuaded by that argument.

25        Well I'm not going to take this off calendar, but I

1   am concerned by two things, I will just say.  One, if this

2   issue of mediation privilege and withholding of documents was

3   evident on July 8th, given the schedule that we had, it really

4   should have been brought to me sooner.  And I understand the

5   obligation under our local rules to meet and confer, but --

6   and, of course, I encourage all parties to meet and confer,

7   but bringing issues to me at the last minute is not helpful.

8           On the other hand while I haven't seen any of the

9   documents that the debtors have redacted, and I haven't read a

10  complete deposition of any of the witnesses that have been

11  deposed, on the surface it would seem to me that board

12  resolutions with respect to the RSA, presentations with

13  respect to the board's consideration of the RSA, board minutes

14  with respect to the resolution of the RSA are all fair game

15  and not part of mediation privilege.

16          If the particular documents, I suppose, contain

17  communications that only took place in connection with

18  mediation then perhaps some portion of those documents could

19  be redacted.  But providing -- but mediation doesn't clock

20  discovery and information that is, otherwise, discoverable

21  just because you also put it into the mediation process or

22  communicated information you have to the mediator or other

23  parties.

24          So I am concerned that the mediation privilege may

25  have been too broadly construed.  Again, I haven't seen a

1  document so I don't know, but intuitively those types of

2  documents don't seem to me to fall within the mediation

3  privilege and it would seem to me are very relevant to the

4  issues before the court which the parties have framed is, at

5  least, the debtors' business judgment. I realize some parties

6  have said that there is an entirely fair standard, but at

7  least business judgment.

8          So I think its fair game. What did the debtor

9  consider? When did they consider it? What did they decide?

10  What did they not consider? All fair game.

11          So having said that, as I said, I'm not going to

12  take this off calendar. We will see how the hearing goes.

13  But if I determine that the witnesses are now testifying about

14  topics from which they were precluded from testifying at

15  deposition I am unlikely to hear that testimony.

16          I know there was a separate motion by Hartford. I

17  don't have enough information to know whether I am going to

18  strike Mr. Mosby's testimony. We're going to deal with that

19  also at the hearing. The debtors want to file a response to

20  that you can. I don't think I've received one yet or if you

21  filed it, it hasn't gotten to my desk.

22          MR. KURTZ: We have not filed yet, Your Honor.

23  Thank you. We will file something.

24          THE COURT: Okay. That is all I had for today.

25  Let me also say that on Thursday we will be taking a break

# EXHIBIT J

1

<pre>
 1                    UNITED STATES BANKRUPTCY COURT
 2                         DISTRICT OF DELAWARE

 3                                      .    Chapter 11
      IN RE:                           .
 4                                      .    Case No. 20-10343 (LSS)
      BOY SCOUTS OF AMERICA AND         .
 5    DELAWARE BSA, LLC,                .
                                        .    Courtroom No. 2
 6                                      .    824 North Market Street
                                        .    Wilmington, Delaware 19801
 7                                      .
                        Debtors.       .    Monday, October 25, 2021
 8    . . . . . . . . . . . . . . . .   11:00 A.M.

 9                  TRANSCRIPT OF TELEPHONIC RULING
10          BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
                  UNITED STATES BANKRUPTCY JUDGE

11    APPEARANCES:

12    For the Debtor:          Derek Abbott, Esquire
13                             MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                               1201 North Market Street, 16th Floor
14                             Wilmington, Delaware 19899

15

16

17    Audio Operator:         LaCrisha Harden, ECRO

18    Transcription Company:  Reliable
19                             1007 N. Orange Street
                               Wilmington, Delaware 19801
20                             (302)654-8080
                               Email:  gmatthews@reliable-co.com

21    Proceedings recorded by electronic sound recording; transcript
22    produced by transcription service.

23

24

25
</pre>

1    (Proceedings commence at 11:03 a.m.)

2         THE COURT:  Good morning.

3         This is Judge Silverstein.  We're here for my

4    ruling on the debtors' motion for protective order and I will

5    read it into the record.

6         Debtors filed what they titled a motion for

7    protective order on September 17th.  Debtors want me to make

8    multiple rulings regarding both discovery issues and

9    admissibility issues related to the ongoing mediation

10   proceedings for purposes of the scheduled confirmation

11   hearing.

12        In considering the objections filed by the TCC, the

13   Zalkin and Cochran Law Firms, certain insurers, the AIG

14   Companies, and the joinders by other insurers I conclude that

15   the motion is overly broad in the relief debtors seek at this

16   time, but there is one aspect of the motion that I can rule

17   on; namely, issues surrounding the trust distribution

18   procedures.

19        Some background is helpful:

20        At the request of BSA, on June 9th of last year, I

21   entered an order sending parties to mediation.  There were

22   objections, both as to the need for mediation at that time as

23   well as to particular provisions of the proposed order, and

24   with respect to the identity of the mediators.  Even though

25   modifications were made to address certain objections I would

1  not call it a consensual order.

2         The order appointed three mediators,

3         "For the purpose of mediating the comprehensive

4  resolution of issues and claims in BSA's Chapter 11 case and

5  through a Chapter 11 plan."

6         The debtors, the FCR, the TCC, the UCC, and the ad

7  hoc committee of Local Councils were very willing

8  participants.  Certain insurance companies either signed on

9  right away or apparently joined later.  At the time the

10  mediation order was entered the coalition did not yet exist

11  or, at least, had not yet appeared in the case.  With one

12  exception the mediation order provides that Local Rule 9019-

13  5(d) shall govern the mediation.  Rule 9019-5 is very broad in

14  application.

15         With respect to discovery the last sentence

16  provides that,

17         "No person shall seek discovery from any

18  participant in the mediation with respect to any information

19  disclosed during mediation."

20         This sentence is of recent vintage and has not been

21  interpreted, to my knowledge, by any of my colleagues current

22  or former.

23         The one exception in the mediation order is

24  important.  It provides that,

25         "If a party puts at issue any good faith finding

4

1   concerning the mediation and any subsequent action concerning

2   insurance coverage the parties right to seek discovery, if

3   any, is preserved."

4           At the time this provision was inserted into the

5   mediation order there were no proposed findings regarding

6   trust distribution procedures in a plan or conditions

7   precedent to confirmation before the court.  By the motion for

8   protective order, and as more particularly argued at the

9   hearing, debtors have identified three categories of documents

10  they seek to shield from discovery or redact based on

11  privileges.

12          The three categories of documents that debtors seek

13  to shield are minutes of board meetings of BSA's national

14  executive board, national executive committee and bankruptcy

15  task force; communications between mediation parties about the

16  terms of the Hartford settlement agreement, the TCJC

17  settlement agreement, RSA, plan, TDP's or other documents

18  filed with the plan; and drafts of settlement proposals

19  exchanged between the mediation parties including, without

20  limitation, the Hartford settlement agreement, TCJC settlement

21  agreement, RSA, plan, TDP's or other documents filed with the

22  plan.

23          The motion references three grounds for withholding

24  or redacting comments; attorney/client privilege, work product

25  doctrine and the so called mediation privilege, argument

1   focused on the mediation privilege, and the debtors and the

2   objectors focus mostly on 1129(a)(3) and the TDP's.

3          All objectors preliminarily argued, however, that

4   the request for a protective order is premature, requests an

5   advisory opinion or as more in the nature of a motion *in*

6   *limine*.  They argue that no specific discovery requests are

7   before me and no motions to compel have been filed.

8          As relayed to me at argument, in fact, further

9   discovery requests were recently propounded and responses were

10  filed the day before the hearing.  Understandably, then,

11  parties propounding the discovery did not have the opportunity

12  to review those responses in detail nor to meet and confer.

13         I agree with the objectors that the portion of

14  debtors' motions requesting rulings on admissibility of

15  evidence or premature.  I will not make these rulings divorced

16  from context.  It appears that debtors seek to have me bless

17  or not the adequacy of the record they will make at

18  confirmation.  On at least two occasions during argument Mr.

19  Kurtz stated that debtors have nothing to hide and are willing

20  to and want to put in all evidence and make any record that

21  the court wants at confirmation.

22         Debtors are confused.  Debtors, not the court, must

23  determine what record they need to make or at least offer to

24  obtain an order confirming their plan.  I will consider the

25  admissibility of evidence and any objections to it at trial or

1  perhaps on any motion *in limine* once objections to the plan

2  are filed and the issues are definitively framed.

3        The discovery dispute related to the TDP's has

4  crystalized over the last few months and I can address it.  To

5  start let me contrast the request before me now to the

6  privilege issues raised at the RSA hearing.  There I was asked

7  to find not only that the RSA was the product of debtors'

8  business judgment, a Section 363 standard, but also that the

9  RSA was negotiated in good faith.

10        I questioned what the term "good faith" meant in

11 the context of approving the RSA as it was not part of the

12 relevant standard.  The RSA parties then withdrew their

13 request for a good faith finding and I proceeded with the

14 hearing only on business judgement.  The standard before me at

15 the RSA hearing was whether debtors were reasonably informed

16 when making the decision to enter into the RSA. I addressed

17 admissibility issues and privilege assertions at the hearing

18 and in that context.

19        A debtors entry into an RSA is entirely different

20 then a debtor proposing a plan.  Entry into an RSA, while not

21 an insignificant undertaking, is, in any real sense, only an

22 interim measure.  As I said at that time debtors could file

23 the plan envisioned by the RSA without permission from the

24 court.  Now with discovery addressed to confirmation there are

25 two aspects to the context in which the privileged decisions

1 have been teed up.  The first is 1129(a)(3) standard.  The

2 second are the conditions precedent baked into the plan.

3           Turing to 1129(a)(3) first, section 1129(a)(3)

4 provides that a plan,

5           "Be proposed in good faith and not by any means

6 forbidden by law."

7           Debtors take the position that 1129(a)(3) is

8 basically a process test.  What is the process by which the

9 plan is proposed.  Debtors were quite candid at the hearing

10 about the evidence that they will adduce at confirmation to

11 meet this requirement.  Debtors are going to put into evidence

12 the fact of mediation itself, the mediation order, the

13 identity of the mediating parties, the identity of the

14 mediators, the number of mediation sessions, and the dates of

15 the sessions.

16           This evidence, debtors argue, imbue the process

17 with good faith.  They also argue that all of this evidence is

18 non-privileged and so it is both admissible and does not waive

19 any privileges that exist.

20           The TCC, somewhat surprisingly, believes the

21 process was tainted.  I say somewhat because at one point they

22 signed onto the RSA which forms a substantial basis of the

23 plan.  Century and other insurers, not surprisingly, also

24 believed the process was tainted.  Both the TCC and Century

25 want the ability to discover and admit evidence to that

1  effect.  The TCC does not tell me what in particular they

2  believe is tainted, but the insurers are clear.  As they have

3  repeatedly stated, insurers believe that debtors handed over

4  the pin to the abuse survivors to draft the TDP's which the

5  survivors then intend to use against the insurers in future

6  coverage litigation.

7        The code does not define good faith in the context

8  of 1129(a)(3).  The Third Circuits various expositions on

9  1129(a)(3) are fairly captured in Judge Owens decision in

10 Emerge Energy Services, 2019 Westlaw 7634308, and Judge

11 Andrews decision from earlier this year in Exide, 2021 Westlaw

12 3145612.

13        To quote liberally from those cases the important

14 point of inquiry is the plan itself and whether such a plan

15 will fairly achieve a result consistent with the objectives

16 and purposes of the bankruptcy code.  A plan must be proposed

17 with honesty and good intentions, and with a basis for

18 expecting that reorganization can be achieved, and with

19 fundamental fairness in dealing with creditors."

20        In making the good faith determination courts must

21 consider the totality of the circumstances focusing more to

22 the process of plan development then the content of the plan.

23 Good faith is shown when the plan has been proposed for the

24 purpose of reorganizing the debtor, preserving the value of

25 the bankruptcy estate and delivering value to creditors.  Good

1  faith has been found to be lacking if a plan is proposed with

2  ulterior motives.

3          At least as illuminating as the stated standards

4  are the circumstances courts have looked at in an 1129(a)(3)

5  analysis; for example, in Combustion Engineering, 391 F.3d 190

6  (2004), the Third Circuit recognized that the good faith

7  requirement is an additional check on a debtor's intentional

8  impairment of claims.  That the classification and treatment

9  of classes of claims is always subject to good faith.  And

10  that the Court can examine the motive of a debtor with respect

11  to classification under the good faith requirement.

12          In American Capital Equipment, LLC, 688 F.3d 145

13  (2012), the Third Circuit stated that collusive plans are not

14  in good faith and do not meet the requirements of 1129(a)(3).

15  It also ruled that a plan does not fairly achieve the

16  Bankruptcy Code's objectives when it establishes an inherent

17  conflict of interest under especially concerning

18  circumstances.  It also observed that the fact that there is

19  at least one valid purpose to the plan is not dispositive

20  because the purpose must be fairly achieved.

21          And in Washington Mutual, 461 B.R. 240, the

22  Bankruptcy Court considered in its good faith analysis the

23  role of certain noteholders in settlement negotiations, plan

24  drafting, and review, and the degree of control certain

25  noteholders exercise over the case.  Moreover, the Court

1  looked at whether any harm caused by the noteholders'

2  influence could be remedied by other means.

3          These cases reveal that good faith includes

4  process, but is not necessarily exclusively concerned with

5  process or, perhaps, process, in substance, can overlap in

6  certain instances.

7          While the focus is on the plan, debtors' motivation

8  in proposing the plan, others' participation in the drafting

9  of the plan, as well as the requirement that the plan fairly

10  achieve results consistent with the purposes of the Bankruptcy

11  Code permit, in an appropriate case, evidence beyond what BSA

12  characterizes as process.

13          Turning to the conditions precedent baked into the

14  plan, Findings (J), (Q), (R), (S), and (T) were a focus of the

15  disclosure statement hearing.

16          Findings (R), (S), and (T), in particular, are

17  directed at the trust-distribution procedures.

18          It does not appear that these findings have a code

19  or a confirmation-related purpose; rather, even as modified,

20  they appear to be more directed at most-confirmation

21  litigation with insurers.  To the extent these findings are

22  confirmation-related, however, they clearly open up discovery

23  related to the correctness of those findings.

24          It is in this setting that I turn to debtors'

25  invitation of the mediation privilege.  No party cited to me a

1 case in which the Third Circuit has acknowledged a federal

2 common law mediation privilege. And, in, In re Lake Lotawana

3 Community Improvement District, 563 B.R. 909 (2016), the

4 Bankruptcy Court stated that of the circuits addressing the

5 issue, only the Sixth Circuit had adopted such a privilege.

6 Without a federal mediation privilege, relevant

7 information, exchanged in a confidential mediation is subject

8 to discovery, when jurisdiction is based on a federal statute.

9 But notwithstanding the lack of binding precedent in this

10 circuit, Local Rule 9019-5 exists and was incorporated into my

11 order. As I've already said, the last sentence provides that:

12 "Except as set forth in the previous sentence, no

13 person shall seek discovery from any participant in the

14 mediation with respect to any information disclosed during the

15 mediation."

16 Aside from having absolutely no idea how this

17 sentence works in practice, it appears to be inconsistent with

18 mediation privilege, the collective nature of a bankruptcy

19 proceeding, and the fact that, notwithstanding a settlement of

20 a dispute within mediation, the Court ultimately must rule on

21 most settlements in the context of the bankruptcy case. If

22 the approval process is met with objection, it complicates, at

23 least, the discovery process.

24 This is my "square peg, round hole" comment. Much

25 of the law around mediation appears to be designed for two-

1  party disputes, in which the parties determine to attempt to

2  resolve their dispute consensually through mediation.  While

3  recognizing the Uniform Mediation Act has only been adopted by

4  12 jurisdictions, I found the commentary helpful in attempting

5  to understand the utility of mediation and what the precatory

6  note for the Uniform Act calls, "The appropriate relationship

7  of mediation with the justice system."

8          The drafters of the Uniform Act recognized that

9  because of the confidential nature of mediation, it was

10 necessary to tie confidentiality to the fairness of the

11 mediation process.  Fairness, in turn, is dependent upon the

12 integrity of the process and knowing consent.

13         Successful mediation is based on the integrity of

14 the process, act of party involvement, and informed self-

15 determination or, in other words, the ability to control the

16 outcome of the dispute.  These principles work well in

17 traditional, two-party disputes, in which the parties

18 voluntarily determine to try to resolve their dispute by

19 mediation and choose a mediator.

20         If both parties agree to an outcome in the

21 mediation, their dispute is resolved and litigation is

22 avoided; this is the essence of self-determination.

23         These principles do not describe the multiparty

24 mediation reflected in the mediation order, "Of a

25 comprehensive resolution of issues and claims in BSA's Chapter

1  11 case through a Chapter 11 plan."

2          Not all parties are involved in every aspect of the

3  comprehensive resolution.  Not all parties agree with the

4  comprehensive resolution.  And even if there is an agreed-to

5  resolution by most or even all of the mediation parties,

6  creditors must still vote on the plan and the Court must still

7  conclude that the relevant standards are met.  This is whole

8  not wholly consistent with self-determination.

9          Considering both, the 1129(a)(3) arguments and the

10 findings contained in the conditions precedent to confirming

11 the plan, I conclude that the communications regarding the

12 TDPs are discoverable.  There are three reasons.

13         First, debtors want to use the fact of mediation as

14 evidence of good faith.  From the argument, it appears that

15 the fact of mediation may be the primary evidence debtors will

16 induce to meet the good faith standard; as such, they have put

17 the mediation, at least with respect to the good faith of the

18 TDPs, at issue.

19         Debtors are correct that the facts that they seek

20 to put into evidence may not be privileged and courts have

21 relied upon such facts in determining good faith in the

22 context of class actions and settlements, but none of the

23 decided cases discuss any related discovery or admissibility

24 disputes.

25         It cannot be the case that if a party is relying on

1  the very fact of mediation to meet its standard of proof, that

2  discovery is prohibited regarding the *bona fides* of the

3  mediation.

4           Second, a find that the injection of the findings,

5  particularly (R), (S), and (T), into the confirmation process

6  has accelerated the insurers' reservation in the mediation

7  order with respect to discovery.  While it is true that the

8  good faith reservation is with respect to subsequent actions,

9  it is clear that the survivor representatives seek to

10  injection matters into this confirmation hearing that would

11  otherwise be determined in a subsequent action.

12          Based on the survivors submissions supporting the

13  RSA, with these findings, the survivors seek to foreclose

14  rulings that would otherwise be made in post-confirmation

15  litigation.  The survivors argue that these findings are

16  necessary to confirmation.

17          At this point, however, it is not clear whether

18  these findings are necessary in full or part, or whether these

19  findings are simply a desire to shore up disputes with non-

20  settling insurers.

21          And at that point, insurers are choosing to engage

22  on these findings; certain insurers are.  Whether they will

23  continue to do so or simply argue that the findings are not

24  appropriate, I don't know, but in the meantime, discovery is

25  appropriate.

1          Third, debtors do not suggest that evidence with

2    respect to the negotiation of the trust distribution

3    procedures is otherwise available from another source outside

4    the mediation process; accordingly, I deny debtors' motion to

5    the extent that debtors seek to shield discovery

6    communications, oral and written, regarding the trust

7    distribution procedures, based on the mediation privilege.

8          I make no ruling as to admissibility at this time.

9          I also deny the motion, but without prejudice, with

10   respect to debtors' other requests.  I find them to be

11   premature.

12         No objector has brought discovery disputes

13   regarding the Hartford settlement agreement or the TCJC

14   settlement agreement, and at argument, certain objectors

15   suggested such challenges would not be forthcoming.

16         I will deal with any objections as they arise and

17   when I have context.  Such disputes should be brought to me

18   promptly.  These more traditional two-party disputes may be

19   evaluated differently.

20         And that concludes my ruling on the debtors' motion

21   for protective order.

22         The second motion in front of me last Tuesday was

23   Century's motion, seeking discovery from Eric Green and his

24   company, Resolutions, LLC.  Debtors proposed Professor Green

25   to be one of the three mediators.  Ultimately, I did not

1  approve him in that role.

2          Debtors now propose Professor Green as the sole

3  trustee of their survivor trust.  In response, Century seeks

4  discovery of his connections with others in the case to assess

5  his impartiality and qualifications.

6          In response to Century's request, Professor Green

7  produced certain documents, objected to the requests, and

8  provided a privilege log.  The log raises both, mediation

9  privilege and attorney-client privilege.

10          I question whether mediation privilege is

11  applicable to our situation, where private parties were not

12  free to choose their own mediators, but rather, the selection

13  was subject to approval of the Court.  Further, most of the

14  communications were made prior to the entry of the mediation

15  order.

16          I need not decide that here.  First, Professor

17  Green, both, in his submission and through his counsel at

18  argument, said he felt constrained to raise the mediation

19  privilege, consistent with ABA standards of conduct for

20  mediators, but that the decision was ultimately up to the

21  Court.  Second, no mediation party is asserting the mediation

22  privilege to block production of the requested documents.

23  Third, Century has modified its request to exclude

24  communications between Professor Green and any appointed

25  mediator, as well as any internal notes Professor Green may

1  have made, as well as Professor Green's communications with

2  his staff.

3        Under these circumstances, I conclude that the

4  documents, other than those in the excluded categories, must

5  be produced.  If those documents also contain communications

6  that are protected by the attorney-client privilege, then

7  those communications may be appropriately redacted.

8        And that concludes my ruling with respect to

9  Century's motion seeking discovery from Professor Green.

10        Okay.  Any questions?

11     (No verbal response)

12        THE COURT:  When are we next in court?

13     (No verbal response)

14        THE COURT:  I think the next day I have on my

15  calendar is the 10th.

16        Mr. Abbott, does that seem right to you?

17        MR. ABBOTT:  Your Honor, let me just pull out my

18  calendar and take a quick peek.  I think you might be correct.

19     (Pause)

20        MR. ABBOTT:  Your Honor, the best I can tell, it is

21  correct.  I think that's one of the interim status

22  conferences.

23        THE COURT:  Okay.  If there are discovery disputes

24  that can be framed prior to the 10th, I will make time to hear

25  them prior to the 10th.

# EXHIBIT K

1                UNITED STATES BANKRUPTCY COURT
                 DISTRICT OF DELAWARE

2

                            .  Chapter 11
3 IN RE:                 .  Case No. 19-10289(LSS)
                            .
4 IMERYS TALC AMERICA, INC.   .
et al.,                .
5                            .
                           .
6           Debtors.      .
                           .
7     .
                           .
8 . . . . . . . . . . . . . . . .
9          -and-
. . . . . . . . . . . . . . . .
10 IN RE:                 .  Chapter 11
                         .  Case No. 21-10398 (LSS)_
11 CYPRUS MINES CORPORATION    .
                           .
12                            .  Courtroom No. 2
                           .  824 North Market Street
13          Debtors.      .  Wilmington, Delaware 19801
                           .
14                            .  Wednesday, April 2, 2025
. . . . . . . . . . . . . . . . 10:03 a.m.
15

16

17                  TRANSCRIPT OF HEARING
    BEFORE THE HONORABLE JUDGE LAURIE SELBER SILVERSTEIN
18             UNITED STATES BANKRUPTCY JUDGE

19

20 Audio Operator:         Brandon J. McCarthy, ECRO

21 Transcription Company:   Reliable
                      1007 N. Orange Street
22                       Wilmington, Delaware 19801
                      (302)654-8080
23                       Email:  gmatthews@reliable-co.com

24 Proceedings recorded by electronic sound recording,
25 transcript produced by transcription service.

1  same issue, that same question at deposition.  And that's how

2  it should be resolved.

3       To the extent there is live testimony either

4  through some live direct or, you know, rebuttal testimony,

5  that can be addressed in real time.  And they have already,

6  you know, identified and done the leg work, and I expect that

7  they will have in front of them all of the topics that

8  they're concerned about, and we'll be watching for that, and

9  we understand that they will be doing so.

10       And if there's an objection raised, we will be

11  prepared to address it, and either explain why we think that

12  this is not the question on which privilege was asserted

13  previously, or Your Honor will, you know, sustain the

14  objection, and we'll move on from there.

15       THE COURT:  And let me ask you this.  How do you

16  think an objection should have been preserved for this issue

17  in the deposition questioning?  Because there are some -- and

18  I'm just looking at page 4 of the motion.  There are some

19  questions where there's been either, you know, objection

20  because it to the extent it calls for privileged information.

21  And I look at the question, and I don't think it does.

22       So, and then the witness doesn't answer.  So what

23  do I do with that?

24       MS. QUARTAROLO:  So I think that if there was an

25  assertion or a cautionary instruction of privilege that it

 1   was incumbent upon if they believe that that was an improper

 2   assertion of privilege that that should have been raised

 3   either at the time or in a discovery motion brought to Your

 4   Honor.

 5            I think that a lot of times the way that a

 6   question is phrased, again, very much matters.  And there can

 7   be a question that is broad in nature such that it could call

 8   for privileged information and it could call for

 9   nonprivileged information.  And obviously, it is up for the -

10   - up to the witness to determine and navigate whether they

11   have any information that is nonprivileged.  And if they

12   believe that, you know, there was no nonprivileged

13   information that was asserted and they believed that that

14   privilege assertion was improper, then it's incumbent upon

15   them to bring that to Your Honor.

16            THE COURT:  All right.  Thank you.

17            MR. HABERKORN:  Adam Haberkorn, again, for the

18   Cyprus Historical Excess Insurance.  So I just wanted to

19   quickly respond to the statement about cautionary

20   instructions and then there were responses.  As you know, it

21   happened numerous times.  There was a cautionary instruction,

22   then the witness didn't answer or said they didn't think they

23   could answer.  I think, at that point, there's not much we

24   can do to keep delving into it.  That the witnesses say that

25   they don't think they can answer.  There's no more

1   information.

2          Numerous times across numerous witnesses, there

3   were attempts to rephrase questions.  There were attempts to

4   try to -- try to do just that, and they ended up the same

5   place.  I mean, for example, in the deposition of the Cyprus

6   witness, Mr. Jan Baker, there were 13 questions or more asked

7   about how the TDPs were drafted and negotiated and makes

8   statements about that it was a collaborative process but then

9   refuses to go into what happened there, what happened in the

10  negotiations that made it collaborative, simply refers back

11  to I relied on counsel and refuses to answer, and ultimately

12  culminates in -- when asked about the type of process that

13  was used to negotiate the TDPs, instructed not to answer, and

14  he declined to answer.

15         So there's -- sure.  It's not 63 questions on each

16  of these issues.  But again, I don't -- I'm unaware of any

17  case law that sets a threshold on the number of questions we

18  need to ask before privilege has been asserted and

19  effectively further examination is futile, is blocked.

20         THE COURT:  Was it -- was it incumbent upon the

21  insurers to bring this issue to me to determine whether these

22  matters were privileged or not and to require an answer?

23         MR. HABERKORN:  I don't believe it was, Your

24  Honor.  I believe that it would've -- that it was incumbent

25  upon the defending attorney to instruct the witness

1  accordingly.  And if they're instructing that there's

2  privilege, they clearly signal to the witness that they --

3  that there's some privilege issues, and the witness acted

4  accordingly.

5          I don't believe it was incumbent upon us to come

6  to the Court and especially on the timeline we had, Your

7  Honor.  Effectively, what they're proposing is we would

8  conclude the deposition on each of these 15 topics, file

9  motions with you, and then if they are privileged, if you --

10  if you ruled in our favor and instructed them to answer, then

11  we would have another round of depositions on those topics.

12          Respectfully, Your Honor, that's simply not

13  realistic with the timeline we're working with.

14          THE COURT:  Okay.

15          MR. HABERKORN:  I understand that many of -- that

16  these topics are quite broad, that there are a lot of them.

17          THE COURT:  They are.

18          MR. HABERKORN:  The goal was to be comprehensive,

19  as comprehensive as possible.  We understand this -- many of

20  these are probably better served in -- is being addressed

21  during the confirmation hearing.  However, there are several

22  that seem to be more egregious than others.  I've referenced

23  time and again the TDP negotiation issue.  I think that one

24  was particularly egregious.

25          Another couple that -- that seem to be more

1  egregious are the determination of separating the -- the meso

2  and ovarian cancer claims or Class 4 and 2, Class 4a and 4b

3  and how the determination of fund allocation between those

4  two funds was determined.

5          Those -- those three topics seem to be -- seem to

6  have been particularly egregious in -- in terms of the

7  witnesses refusing to answer, providing no basis for how that

8  was determined, just that they were negotiated, whether that

9  they relied on an expert report, but not providing any -- any

10  reasoning or basis of calculation on which we can evaluate

11  the veracity of their testimony, because that's what this

12  really boils down to, Your Honor, is -- we -- the certain

13  insurers need to be able to -- to cross examine and then

14  determine, well, you say there was a collaborative process.

15          Well, what does that mean?  How -- who -- who

16  suggested this provision?  Why did you agree to that

17  provision?  What was the basis for that?  Who -- these are

18  all very basic questions, and we don't have the -- the

19  information to do so at the end of the day.  We were blocked

20  from obtaining it.

21          THE COURT:  Okay.  Thank you.

22          MR. CALHOUN:  George Calhoun for the Riverstone

23  (phonetic) Insurers.  I just wanted to briefly address your

24  question of whether it was incumbent upon us to file motions

25  about the depositions.  And the answer to that is no.  It was