**<u>Exhibit B</u>**

**Blackline**

**THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP., | Case No. 23-10638 (LSS) |
| Debtor. | |

**DEBTOR'S F~~OUR~~IFTH AMENDED PLAN OF LIQUIDATION UNDER
CHAPTER 11 OF THE BANKRUPTCY CODE**

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Justin J. DeCamp (admitted *pro hac vice*)
Benjamin S. Beller (admitted *pro hac vice*)
Julie G. Kapoor (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
        gluecksteinb@sullcrom.com
        decampj@sullcrom.com
        bellerb@sullcrom.com
        kapoorj@sullcrom.com

**MORRIS NICHOLS ARSHT & TUNNELL LLP**
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Daniel B. Butz (No. 4227)
Tamara K. Mann (No. 5643)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
E-mail: dabbott@morrisnichols.com
        aremming@morrisnichols.com
        dbutz@morrisnichols.com
        tmann@morrisnichols.com

Dated: ~~June 1~~August 15, 2025
       Wilmington, Delaware

4860-3249-7648 v.~~24~~28

# TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| 1. | INTRODUCTION | 1 |
| 2. | DEFINITIONS AND RULES OF INTERPRETATION | 2 |
| | 2.1. Defined Terms | 2 |
| | 2.2. Rules of Interpretation | 26 |
| | 2.3. Computation of Time | 26 |
| 3. | ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS | 28 |
| | 3.1. Administrative Claim Bar Date | 28 |
| | 3.2. General Administrative Claims | 28 |
| | 3.3. Professional Compensation Claims and Fee Examiner Compensation Claims | 29 |
| | 3.4. Statutory Fees Payable Pursuant to 28 U.S.C. § 1930 | 30 |
| | 3.5. Priority Tax Claims | 30 |
| 4. | CLASSIFICATION, TREATMENT AND VOTING OF CLAIMS AND INTERESTS | 31 |
| | 4.1. Classification of Claims and Interests | 31 |
| | 4.2. Treatment of Claims and Interests | 32 |
| | 4.3. Special Provision Governing Unimpaired Claims | 41 |
| | 4.4. Acceptance by Impaired Classes | 41 |
| | 4.5. Elimination of Vacant Classes | 41 |
| | 4.6. Voting Classes; Presumed Acceptance by Non-Voting Classes | 41 |
| | 4.7. Confirmation Pursuant to Sections 1129(a) and 1129(b) of the Bankruptcy Code | 41 |
| 5. | IMPLEMENTATION OF THE PLAN | 42 |
| | 5.1. Operations Between the Confirmation Date and Effective Date | 42 |
| | 5.2. Compromise and Settlement | 42 |
| | 5.3. Plan Transactions | 42 |
| | 5.4. Estate Claims Settlement | 42 |
| | 5.5. Settlement Trusts | 43 |
| | 5.6. Liquidating Estate | 50 |
| | 5.7. Vesting of Assets | 52 |
| | 5.8. Insurance Provisions. | 52 |
| | 5.9. D&O Policies | 53 |
| | 5.10. Cancellation of Existing Agreements, Notes and Interests | 53 |
| | 5.11. Section 1146 Exemption from Certain Transfer Taxes and Recording Fees | 53 |
| | 5.12. Preservation of Causes of Action | 54 |
| | 5.13. Effectuating Documents and Further Transactions | 54 |
| | 5.14. Directors, Officers, Managers, Members and Authorized Persons of the Debtor | 55 |

6.      TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..........56

        6.1.    Rejection of Executory Contracts and Unexpired Leases..................................... 56
        6.2.    Claims Against the Debtor Upon Rejection......................................................... 56
        6.3.    Modification, Amendments, Supplements, Restatements or Other
                Agreements ........................................................................................................... 56
        6.4.    Reservation of Rights........................................................................................... 57

7.      PROVISIONS GOVERNING DISTRIBUTIONS .................................................58

        7.1.    Provisions Governing Distributions On Account of Liquidating Estate
                Claims. ................................................................................................................ 58
        7.2.    Distributions on Account of Channeled AFFF Claims........................................ 60
        7.3.    Distributions on Account of General Unsecured Claims..................................... 60

8.      CLAIMS ADMINISTRATION PROCEDURES ...................................................61

        8.1.    Claims Administration Procedures With Respect to Liquidating Estate
                Claims and General Unsecured Claims. .............................................................. 61
        8.2.    Claims Administration Procedures With Respect to Channeled AFFF
                Claims. ................................................................................................................ 64

9.      CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN ..........................65

        9.1.    Conditions Precedent to the Effective Date ........................................................ 65
        9.2.    Waiver of Conditions........................................................................................... 67
        9.3.    Simultaneous Transactions .................................................................................. 67
        9.4.    Notice of Effective Date ...................................................................................... 67

10.     SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS ..............69

        10.1.   Subordinated Claims............................................................................................ 69
        10.2.   **Release of Liens**............................................................................................... 69
        10.3.   **Releases by the Estate**...................................................................................... 69
        10.4.   **Releases by the Released Parties** .................................................................... 70
        10.5.   **Scope of Releases**............................................................................................ 71
        10.6.   **Exculpation**....................................................................................................... 71
        10.7.   **Injunction**.......................................................................................................... 72
        10.8.   **Channeling Injunction**..................................................................................... 73
        10.9.   **Insurance Company Injunction**...................................................................... 74
        10.10.  **Prohibition on Actions Against Buyer** ........................................................... 76
        10.11.  **Limitations on Exculpations and Releases** ...................................................... 76
        10.12.  Release Dispute.................................................................................................... 76

11.     MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN ...................77

        11.1.   Modification of Plan ............................................................................................ 77
        11.2.   Effect of Confirmation on Modification .............................................................. 77
        11.3.   Revocation of Plan............................................................................................... 77

12.    RETENTION OF JURISDICTION ................................................................78
    12.1.    Retention of Jurisdiction ....................................................... 78

13.    MISCELLANEOUS PROVISIONS ..............................................................81
    13.1.    Immediate Binding Effect ..................................................... 81
    13.2.    Additional Documents; Further Assurances .......................... 81
    13.3.    Reservation of Rights ............................................................ 81
    13.4.    Successors and Assigns .......................................................... 81
    13.5.    Term of Injunction or Stays .................................................. 81
    13.6.    Entire Agreement .................................................................. 82
    13.7.    Exhibits ................................................................................. 82
    13.8.    Nonseverability of Plan Provisions Upon Confirmation ....... 82
    13.9.    Dissolution of Committee ...................................................... 82
    13.10.    Termination of Fee Examiner's Appointment ...................... 83
    13.11.    Post-Confirmation Operating Reports ................................. 83
    13.12.    Closing of Chapter 11 Case ................................................ 83
    13.13.    Conflicts .............................................................................. 83
    13.14.    Waiver or Estoppel .............................................................. 83
    13.15.    Post-Effective Date Service ................................................. 84
    13.16.    Notices ................................................................................. 84

-iii-

1.    <u>I</u><u>NTRODUCTION</u>

KFI Wind-Down Corp., as debtor-in-possession in the above-captioned Chapter 11 Case, proposes the following plan of liquidation (including the Plan Supplement and all other exhibits and schedules thereto, as amended, modified or supplemented, the "*Plan*") pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used but not otherwise defined shall have the meanings ascribed to them in Article 2.

## 2.    DEFINITIONS AND RULES OF INTERPRETATION

### 2.1.    Defined Terms

Except as otherwise provided herein, each capitalized term used in this Plan shall have the meaning set forth below.

2.1.1.    "*2000 Demerger Agreement*" means that certain Demerger Agreement, dated as of November 10, 2000, by and between Chubb plc and Kidde plc.

2.1.2.    "*2020 Separation Agreement*" means that certain Separation and Distribution Agreement, dated as of April 2, 2020, by and among United Technologies Corporation, Carrier Global Corporation, and Otis Worldwide Corporation.

2.1.3.    "*2023 Insurance Adversary Proceeding*" means the adversary proceeding in the Chapter 11 Case captioned Kidde-Fenwal, Inc. v. Ace American Insurance Co., et al., Adv. No. 23-50758 (LSS).

2.1.4.    "*2024 Insurance Adversary Proceeding*" means the adversary proceeding in the Chapter 11 Case captioned Kidde-Fenwal, Inc. v. Hartford Accident and Indemnity Company, Adv. No. 24-50015 (LSS).

2.1.5.    "*3M*" means 3M Company.

2.1.6.    "*Acquisition Agreement*" means that certain Stock and Asset Purchase Agreement, dated as of March 15, 2024 by and between Buyer and the Debtor, as such agreement may be amended or modified from time to time.

2.1.7.    "*Administrative Claim*" means an Allowed Claim for costs and expenses of administration of the Chapter 11 Case pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate; (b) Allowed Professional Compensation Claims; (c) Allowed Fee Examiner Compensation Claims; and (d) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

2.1.8.    "*Administrative Claim Bar Date*" means: (a) 4:00 p.m. (Eastern Time) on the 30th day after the Effective Date or (b) such other date established by order of the Bankruptcy Court by which Proofs of Claim in respect of Administrative Claims must be filed.

2.1.9.    "*AFFF*" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

2.1.10.  "*AFFF Claim*" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.

2.1.11. "*AFFF Claimant*" means a Holder of an AFFF Claim.

2.1.12. "*AFFF Data Transfer*" means the transfer of all files, documents and information which the Debtor has in its possession, custody or control, subject in all respects to the privilege and other limitations set forth in Article 5.5.8 herein, (a) containing evidence related to the Channeled AFFF Claims and (b) related to any Insurance Policy, Insurance Action or that are reasonably related to the Primary AFFF Settlement Trust's pursuit of its rights under the Insurance Assignment as agreed between the Debtor and the Committee, in each case to the Primary AFFF Settlement Trust so as to enable the Primary AFFF Settlement Trust to have full access and utilization of the such records to the same extent available to the Debtor.

2.1.13. "*AFFF MDL*" means the multi-district litigation captioned *In re Aqueous Film-Forming Foams Product Liability Litigation*, MDL No. 2:18-mn-2873-RMG (D.S.C.) in the United States District Court for the District of South Carolina.

2.1.14. "*AFFF Settlement Trust Assets*" means the Settlement Trust Assets other than the GUC Liquidating Trust Assets.

2.1.15. "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

2.1.16. "*Affiliate Claim*" means any prepetition Claim held by an Affiliate of the Debtor against the Debtor.

2.1.17. "*AHC*" means the Ad Hoc Committee of Governmental Claimants formed in the Chapter 11 Case, whose members are listed in the *Verified Statement of the Ad Hoc Committee of Governmental Claimants of Kidde-Fenwal, Inc. Pursuant to Bankruptcy Rule 2019* [D.I. 152] and as subsequently amended.

2.1.18. "*Airport*" means: (a) all airports categorized by the FAA in the National Plan of Integrated Airport Systems, including all airports that have been issued operating certificates by the FAA pursuant to 14 CFR Part 139; and (b) any firefighter training facility operated on airport property, whether or not operated by the airport itself.

2.1.19. "*Airport Claim*" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of an Airport for damages relating to such Airport.

2.1.20. "*Airport Reserve Fund*" shall have the meaning set forth in the Primary AFFF Settlement Trust Agreement.

2.1.21. "*Allowed*" means, with reference to any Claim:  (a) a Claim listed in the Debtor's Schedules, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009, as liquidated, non-contingent, and undisputed, and for which no contrary timely Proof of Claim has been filed; (b) a Claim expressly allowed under the Plan; (c) a Liquidating Estate Claim or General Unsecured Claim to which the Debtor (with the consent of the Committee), the Liquidating Administrators or the GUC Liquidating Trustee, as applicable, and the holder of such Claim agree to the amount and priority of the Claim, which agreement is

-3-

approved by a Final Order; (d) an AFFF Claim against the Debtor that is compromised, settled, or otherwise resolved in a manner consistent with the TDPs; (e) a Claim against the Debtor that is compromised, settled, or otherwise resolved or Allowed pursuant to a Final Order (including any omnibus or procedural Final Order relating to the compromise, settlement, resolution, or allowance of any Claims); or (f) a Proof of Claim, with respect to such Claim, that has been timely filed, has not been withdrawn and no objection thereto has been filed by the applicable deadlines set forth in the Plan, the Bankruptcy Code, the Bankruptcy Rules, or as determined by the Bankruptcy Court; *provided* that notwithstanding the foregoing, unless expressly waived by the Plan, the Allowed amount of Claims shall be subject to, and shall not exceed the limitations or maximum amounts permitted by, the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable.  "*Allowance*" and "*Allowing*" have correlative meanings.

2.1.22. "*Amended Schedules Non-PFAS Bar Date*" means, for Claims that are not AFFF Claims affected by any amendment or supplement to the Schedules, 5:00 p.m. (prevailing Eastern Time) on the date that is 30 days after the date that notice is provided of any such amendment of or supplement to the Schedules.

2.1.23. "*Assumed Liability*" shall have the meaning set forth in the Acquisition Agreement.

2.1.24. "*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other Claims, Causes of Action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties-in-interest under the Bankruptcy Code or applicable non-bankruptcy law, including claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) was commenced prior to the Effective Date.

2.1.25. "*Ballots*" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the Disclosure Statement Order, and which must be actually received on or before the Voting Deadline.

2.1.26. "*Bankruptcy Code*" means chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*, as in effect on the Petition Date.

2.1.27. "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware.

2.1.28. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under 28 U.S.C. § 2075, as applicable to the Chapter 11 Case, and the general, local and chambers rules of the Bankruptcy Court, each as amended from time to time.

2.1.29. "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

-4-

2.1.30. "*Business Loss Claim*" means an AFFF Claim asserted by a person or entity, other than a Governmental Unit, Sovereign State or Sovereign Tribe, for business losses, including lost inventory, lost profits, or comparable damages, recoverable in the tort system that is not an Airport Claim, Fire Training Facility Claim, Landfill Claim, Personal Injury Claim, Property Damage Claim, Sovereign State Claim, Sovereign Tribe Claim, Stormwater Claim, Wastewater Claim, or Water Provider Claim.

2.1.31. "*Business Loss Reserve Fund*" shall have the meaning set forth in the Primary AFFF Settlement Trust Agreement.

2.1.32. "*Buyer*" means Pacific Erin Opco, LLC, as the purchaser of substantially all of the Debtor's assets pursuant to the Acquisition Agreement and the Sale Order.

2.1.33. "*Carrier*" means Carrier Global Corporation, a Delaware corporation, and its non-Debtor affiliates and Related Parties.

2.1.34. "*Cash*" means the legal tender of the United States of America or the equivalents thereof, including bank deposits, checks and other similar items.

2.1.35. "*Causes of Action*" means any current or future actions, Claims, cross-claims, third-party claims, causes of action, controversies, disputes, demands, rights, liens, indemnities, contributions, guaranties, suits, obligations, liabilities, losses, debts, fees or expenses, damages, interest, judgments, costs, accounts, defenses, remedies, offsets, powers, privileges, proceedings, licenses, and franchises of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, choate or inchoate, capable of being asserted directly or derivatively (including any alter ego theories), including any Claims for recovery of attorneys' fees, turnover, fraud, gross negligence, or willful misconduct, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws, consumer protection laws, environmental laws, or nuisance or trespass theories). Causes of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to or otherwise contest Claims or Interests, (c) any claim pursuant to section 362 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Actions.

2.1.36. "*Certificate*" means any instrument evidencing a Claim or an Equity Interest.

2.1.37. "*Channeled AFFF Claims*" means all AFFF Claims against the Debtor or the Estate channeled to the Primary AFFF Settlement Trust under the Plan and Settlement Trust Documents. For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax

-5-

Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

2.1.38. "*Chapter 11 Case*" means the case filed by the Debtor under chapter 11 of the Bankruptcy Code, which is administered under Case No. 23-10638 (LSS).

2.1.39. "*Claim*" has the meaning ascribed to such term under section 101(5) of the Bankruptcy Code.

2.1.40. "*Claim Category*" has the meaning ascribed to such term in the TDPs.

2.1.41. "*Claims Bar Date*" means, as applicable, (a) the Non-PFAS Bar Date; (b) the Amended Schedules Non-PFAS Bar Date; (c) the Rejection Bar Date; (d) the Governmental Non-PFAS Bar Date; (e) the Administrative Claims Bar Date; or (f) such other date established by order of the Bankruptcy Court by which Proofs of Claim must have been filed.

2.1.42. "*Claims Objection Deadline*" means: (a) the date that is the later of (i) 180 days after the Effective Date or (ii) as to Proofs of Claim on account of Claims that are not AFFF Claims filed after the applicable Claims Bar Date, the 60th day after a Final Order is entered by the Bankruptcy Court deeming the late-filed Proof of Claim to be treated as timely filed or (b) such later date as may be established by order of the Bankruptcy Court upon a motion by the Debtor or Liquidating Administrators, as applicable, with notice only to those parties entitled to receive notice pursuant to Bankruptcy Rule 2002.  The Claims Objection Deadline is not applicable to AFFF Claims.

2.1.43. "*Claims Register*" means the official register of Claims maintained by the Notice and Claims Agent.

2.1.44. "*Class*" means a class of Claims or Interests as set forth in Article 4 herein pursuant to section 1122(a) of the Bankruptcy Code.

2.1.45. "*Committee*" means the official committee of unsecured creditors of the Debtor appointed by the U.S. Trustee in the Chapter 11 Case under section 1102(a) of the Bankruptcy Code pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 83] and any amendments thereto.

2.1.46. "*Common Benefit Escrow*" means the fund to be established as set forth in Article 5.5.15 herein.

2.1.47. "*Community Water System*" means a Public Water System that serves at least fifteen (15) service connections used by year-round residents or regularly serves at least twenty-five (25) year-round residents, consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C. § 300f(15), and 40 C.F.R. Part 141.

2.1.48. "*Confirmation*" means the entry of the Confirmation Order on the docket of this Chapter 11 Case.

2.1.49. "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case within the meaning of Bankruptcy Rules 5003 and 9021.

2.1.50. "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

2.1.51. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Settling Parties.

2.1.52. "*Contributing Parties*" means any of the following Persons: (a) Carrier Global Corporation, (b) RTX (other than for purposes of the definition of "Insurance Policy/ies" hereunder), and (c) each such Person's Related Parties.  No Person may be added to this definition, or receive the benefits conferred on Contributing Parties in this Plan without the Committee's prior written consent.

2.1.53. "*Consummation*" means the occurrence of the Effective Date.

2.1.54. "*Current Personal Injury Claim*" means a Personal Injury Claim other than a Future Personal Injury Claim.

2.1.55. "*D&O Policy*" means that certain Chubb Primary Directors & Officers and Entity Security Liability Insurance Policy issued by Federal Insurance Company to Carrier Global Corporation effective as of May 1, 2024 (Policy Number J06009232), and any predecessor, replacement or successor policy.

2.1.56. "*Debtor*" means Kidde-Fenwal, Inc., the debtor and debtor in possession in the Chapter 11 Case, now known as KFI Wind-Down Corp.  In 2007, KFFI (formerly known as National Foam, Inc.) merged into Kidde-Fenwal, Inc., with Kidde-Fenwal, Inc. as the surviving entity.  Pursuant to this merger, KFFI's liabilities were assumed by, and KFFI's causes of action were transferred to, Kidde-Fenwal, Inc. directly or indirectly by merger or other agreement.  The term "Debtor" includes Kidde-Fenwal, Inc. as successor by merger or other agreement by which Kidde-Fenwal, Inc. obtained or assumed the liabilities and Causes of Action of any Person.

2.1.57. "*Definitive Documents*" means all material documents (including any related Bankruptcy Court or other judicial or regulatory orders, agreements, schedules, pleadings, motions, filings, or exhibits) necessary or otherwise desirable to implement the Plan Transactions, including (a) the Plan, (b) the Confirmation Order, (c) the Disclosure Statement, (d) the Solicitation Materials, (e) the Plan Documents, (f) the Plan Supplement and any documents included in the Plan Supplement, including the Settlement Trust Documents, (g) any motions or pleadings filed by the Debtor in the Chapter 11 Case seeking relief material to the Plan Transactions, (h) any other operative documents and/or agreements relating to the Plan or the Plan Transactions, and (i) any exhibits, appendices, or schedules contemplated by the foregoing clauses (a) – (h).

2.1.58. "*Disclosure Statement*" means the disclosure statement for the Plan, including all exhibits and schedules thereto, as the same may be amended, supplemented, or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to the section 1125 of the Bankruptcy Code.

2.1.59. "*Disclosure Statement Hearing*" means the hearing on the Disclosure Statement Motion.

2.1.60. "*Disclosure Statement Motion*" means the motion filed by the Debtor on the docket of the Chapter 11 Case seeking entry of the Disclosure Statement Order.

2.1.61. "*Disclosure Statement Order*" means one or more orders entered by the Bankruptcy Court, in form and substance reasonably acceptable to the Settling Parties: (a) finding that the Disclosure Statement (including any amendment, supplement, or modification thereto) contains adequate information pursuant to section 1125 of the Bankruptcy Code, (b) fixing the amounts of Claims solely for voting purposes and not for purposes of distributions, (c) approving voting procedures, and (d) authorizing solicitation of the Plan.

2.1.62. "*Disputed Claim*" means any Claim that has not been Allowed and not disallowed under the Plan, the Bankruptcy Code or a Final Order as of the Effective Date. Channeled AFFF Claims shall be treated, liquidated, or disputed solely in accordance with the TDPs.

2.1.63. "*Disputed General Unsecured Claim*" means any General Unsecured Claim that is a Disputed Claim.

2.1.64. "*Disputed Liquidating Estate Claim*" means any Liquidating Estate Claim that is a Disputed Claim.

2.1.65. "*Distributable Value*" shall mean the value available for distribution net of applicable expenses incurred in accordance with the Settlement Trust Documents.

2.1.66. "*Distribution*" means a distribution of property pursuant to the Plan, to take place as provided for herein, and "*Distribute*" shall have a correlative meaning.

2.1.67. "*Distribution Agent*" means one or more Entities chosen by the Liquidating Administrators, which may include the Notice and Claims Agent, to make any Distributions at the direction of the Liquidating Administrators.

2.1.68. "*Distribution Date*" means a date or dates, including the Initial Distribution Date, as determined by the Liquidating Administrators in accordance with the terms of the Plan, on which the Liquidating Administrators make a Distribution to Holders of Allowed Liquidating Estate Claims.

2.1.69. "*Distribution Record Date*" means, for the purpose of making Distributions hereunder, the Confirmation Date.

2.1.70. "*District Court*" means the United States District Court for the District of Delaware.

2.1.71. "*Drinking Water*" means water provided for human consumption (including uses such as drinking, cooking, and bathing), consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C. §§ 300f to 300j-27.  The term "*Drinking Water*" includes raw or untreated water that a Public Water System has drawn or collected from a Water Source so that the water may then (after any treatment) be provided for human consumption but does not include raw or untreated water that is not drawn or collected from a Water Source.

2.1.72. "*DuPont*" means Corteva, Inc., DuPont de Nemours, Inc., The Chemours Company, EIDP, Inc. (f/k/a E. I du Pont de Nemours and Company) and their current and former affiliates and Related Parties.

2.1.73. "*Effective Date*" means the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date set forth in the Plan shall have been satisfied or waived and on which a notice indicating the Effective Date has been filed on the docket of the Chapter 11 Case.

2.1.74. "*Estate*" means the estate created in the Chapter 11 Case under sections 301 and 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

2.1.75. "*Estate Causes of Action*" means Causes of Action owned or held by either the Debtor or its Estate, or capable of being asserted (currently, or in the future) by any Person or Governmental Unit on behalf of, under or through, either the Debtor or its Estate, and each of their respective successors or assigns, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions, that may be commenced by a representative of the Estate under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise. Without limiting the foregoing, Estate Causes of Action shall include:  (a) Causes of Action that on or after the Petition Date may be exclusively asserted by or on behalf of the Debtor or its Estate under applicable law, or that prior to the Petition Date could have been asserted by the Debtor on its own behalf under applicable law, including Causes of Action based on (i) the doctrine of successor liability that seek to impose the Debtor's (including KFFI's or National Foam, Inc.'s) liabilities on an alleged successor, whether based on a contractual assumption of liability, consolidation or de facto merger, acquisition of the Debtor's product line, fraud, domination, direction of the Debtor's affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, or (ii) the doctrines of alter ego or veil piercing involving alter egos of the Debtor or the piercing of the Debtor's (including KFFI's or National Foam, Inc.'s) corporate veil, whether based on inadequate capitalization, insolvency,

-9-

failure to observe corporate formalities, fraud, domination, or misuse of the corporate form; (b) Causes of Action or theories for recovery or remedies that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is generally common to creditors of the Debtor and can be asserted by the Debtor under applicable law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor.  Subsections (a), (b) and (c) immediately above expressly encompass any Causes of Action based on:  (i) the alleged assumption of the Debtor's (including KFFI's or National Foam, Inc.'s) liabilities (but not a non-Debtor's liabilities) by Kidde plc (n/k/a Kidde Limited) pursuant to the 2000 Demerger Agreement, or any alleged subsequent assumption of such liabilities of the Debtor from Kidde plc by any other Released Party; or (ii) the alleged assumption of the Debtor's liabilities (but not a non-Debtor's liabilities), including any liabilities resulting from acts or omissions of National Foam, Inc. or KFFI, by a Released Party pursuant to the 2020 Separation Agreement.  For the avoidance of doubt, Estate Causes of Action shall not include any Independent AFFF Causes of Action or any Sovereign State Retained Causes of Action or Insurance Actions against any Released Party based on acts or omissions occurring after entry into the Plan Support Agreement with respect to rights under the 2020 Separation Agreement or the RTX Waiver to access and make Claims under any Insurance Policy or otherwise obtain the benefit of the Insurance Assignment.

2.1.76. "*Exchange Rate*" means the closing exchange rate on the Petition Date as published by *The Wall Street Journal*.

2.1.77. "*Estate Retained Causes of Action*" means any Estate Causes of Action and any Causes of Action held by the Debtor other than the Released Claims, including:  (a) all defenses to any AFFF Claim, including all defenses under section 502 of the Bankruptcy Code; (b) with respect to AFFF Claims, all rights of setoff, recoupment, contribution, reimbursement, subrogation, or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect Claim of any kind whatsoever, whenever and wherever arising or asserted, (c) any other Causes of Action with respect to AFFF that the Debtor would have had under applicable law if the Chapter 11 Case had not occurred (including any Causes of Action against co-defendants); (d) any Cause of Action of the Debtor under the laws of any jurisdiction, for reimbursement, indemnity, contribution, breach of contract, or otherwise arising from or relating to AFFF; and (e) all Insurance Actions.

2.1.78. "*Estate Claims Settlement*" means the settlement, including the release of all Estate Causes of Action against the Released Parties, pursuant to the Estate Claims Settlement Agreement.

2.1.79. "*Estate Claims Settlement Agreement*" means that certain settlement agreement contemplated by the Plan Support Agreement to be filed with the Plan Supplement.

2.1.80. "*Estate Claims Settlement Effective Date*" means the date upon which all Conditions to Settlement enumerated in the Settlement Term Sheet attached as Exhibit B to the PSA are either satisfied or waived in accordance with the terms thereof.

-10-

2.1.81. "*Exculpated Parties*" means the (a) directors and officers of the Debtor during the Chapter 11 Case in their capacities as such, (b) the Committee and its members, in their capacity as members of the Committee, (c) the Future Claimants' Representative in her capacity as such, (d) the Fee Examiner in their capacity as such, (e) the AHC and its members, in their capacity as members of the AHC, and (f) the Professionals.

2.1.82. "*Executory Contract*" means a contract to which the Debtor is a party and that the Debtor may assume or reject under section 365 or 1123 of the Bankruptcy Code.

2.1.83. "*FAA*" means the Federal Aviation Administration.

2.1.84. "*Fee Examiner*" means, collectively, (i) Diana G. Adams, appointed as Fee Examiner under the Fee Examiner Order, (ii) Michael L. Newsom, appointed as IT Consultant under the Fee Examiner Order and (iii) Lori Lapin Jones, appointed as Fee Reviewer under the Fee Examiner Order.

2.1.85. "*Fee Examiner Compensation Claim*" means a Claim for services rendered and costs incurred on or after the Petition Date by the Fee Examiner in connection with the Chapter 11 Case.

2.1.86. "*Fee Examiner Order*" means the *Order Appointing Fee Examiner and Establishing Related Procedures for the Review of Applications of Retained Professionals* [D.I. 501].

2.1.87. "*Fee Examiner Reserve Amount*" means the aggregate amount of accrued and unpaid fees of the Fee Examiner through and including the Fee Examiner Termination Date as estimated in accordance with Article 3.3.4 herein.

2.1.88. "*Fee Examiner Termination Date*" shall have the meaning set forth in Article 3.3.6.

2.1.89. "*Final Order*" means an order, ruling, or judgment of the Bankruptcy Court or the MDL District Court (or any other court of competent jurisdiction), as applicable, entered by the clerks of such courts on the docket in the Chapter 11 Case or the AFFF MDL, as applicable (or by the clerk of such other court of competent jurisdiction on the docket of such court), which has not been reversed, stayed, modified, amended, or vacated, and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or motion for new trial, stay, reargument, or rehearing has been timely taken or is pending or (b) if an appeal, writ of certiorari, new trial, stay, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or MDL District Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari shall have been denied, or a new trial, stay, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing shall have expired, as a result of which such order shall have become final in accordance with Rule 8002 of the Bankruptcy Rules or Rule 4 of the Federal Rules of Appellate Procedure, as applicable; *provided*, *however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil

-11-

Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause an order not to be a Final Order.

2.1.90. "*Fire Training Facility*" means real property (other than an Airport) that is or has been used for live firefighter training with AFFF.

2.1.91. "*Fire Training Facility Claim*" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Fire Training Facility for damages relating to such Fire Training Facility.

2.1.92. "*Fire Training Facility Reserve Fund*" shall have the meaning set forth in the Primary AFFF Settlement Trust Agreement.

2.1.93. "*Future Claimants Representative*" means Randi S. Ellis, as legal representative for certain Holders of Claims pursuant to the *Order Appointing Randi S. Ellis as Legal Representative for Future PFAS Personal Injury Claimants* Nunc Pro Tunc *to December 27, 2023* [D.I. 863].

2.1.94. "*Future Personal Injury Claim*" means a Personal Injury Claim asserted by any Person, (a) who, following the occurrence of the Effective Date, asserts one or more Personal Injury Claims against the Debtor or successor of the Debtor's business based on the Debtor's conduct before the Petition Date and (b) who could not assert such Personal Injury Claims in the Chapter 11 Case because, among other reasons, such Person was (i) unaware of the personal injury as of the Effective Date, (ii) not diagnosed with the personal injury until after the Effective Date or (iii) as of the Effective Date, was otherwise unable or incapable of asserting the personal injury claim(s) based on the personal injury.

2.1.95. "*Future PI Reserve Fund*" shall have the meaning set forth in the Primary AFFF Settlement Trust Agreement.

2.1.96. "*General Administrative Claim*" means an Administrative Claim other than a Professional Compensation Claim or Fee Examiner Compensation Claim.

2.1.97. "*General Unsecured Claim*" means any Claim, including Claims involving environmental remediation or other similar obligations of the Debtor, other than an Administrative Claim, a Priority Tax Claim, an Other Priority Claim, a Secured Claim, an AFFF Claim, or an Affiliate Claim.

2.1.98. "*Governmental Non-PFAS Bar Date*" means 5:00 p.m. (Eastern Time) on November 10, 2023.

2.1.99. "*Governmental Unit*" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code and also includes any national, central, federal, Sovereign Tribe, state, provincial, municipal, local or other domestic, foreign or supranational governmental, legislative, administrative or regulatory authority, agency, court, arbitration tribunal, board, department or commission, instrumentality thereof or other governmental or regulatory entity, including any competent governmental authority responsible for the determination, assessment, or collection of taxes.

-12-

2.1.100.    "*Guaranteed Cash Payment*" means the $540 million payable by Carrier to the Primary AFFF Settlement Trust pursuant to the Estate Claims Settlement Agreement as consideration for the Estate Claims Settlement, to be funded by Carrier on the payment schedule set forth in the Estate Claims Settlement Agreement.

2.1.101.    "*GUC Liquidating Trust*" means the trust established under the Plan and the Settlement Trust Documents to assume all liability of the Debtor and the Estate for, and to administer, all General Unsecured Claims, which shall have the powers, duties and obligations set forth in the Settlement Trust Documents.

2.1.102.    "*GUC Liquidating Trust Agreement*" means the Liquidating Trust Agreement governing the GUC Liquidating Trust, dated as of the Effective Date, as the same may be amended or modified from time to time in accordance with the terms thereof.

2.1.103.    "*GUC Liquidating Trustee*" shall have the meaning set forth in Article 5.5.5.

2.1.104.    "*GUC Liquidating Trust Assets*" means the $10 million transferred to the GUC Liquidating Trust by the Primary AFFF Settlement Trust pursuant to the Plan and the Settlement Trust Documents.

2.1.105.    "*Holder*" means a Person holding a Claim against or an Interest in the Debtor.

2.1.106.    "*Impaired*" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

2.1.107.    "*Independent AFFF Cause of Action*" means any Cause of Action that could be asserted by an AFFF Claimant against a Non-Debtor Party based on the Non-Debtor Party's own conduct and breach of duty (*i.e.*, duty owed to the AFFF Claimant and not owed to the Debtor), including (a) Causes of Action arising from such acts or omissions of such Non-Debtor Party, and (b) Causes of Action based on allegations that a Non-Debtor Party is responsible for such conduct under theories of liability or recovery or remedies that could have been asserted by an AFFF Claimant on its own behalf under applicable state or federal law in respect of such Causes of Action prior to the Petition Date based on (i) the doctrine of successor liability involving a Non-Debtor Party that is alleged to be a successor to another Non-Debtor Party with respect to liabilities not directly or indirectly assumed from the Debtor, whether based on a contractual assumption of liability (including under the 2020 Separation Agreement), consolidation or de facto merger, acquisition of product line, fraud, domination, direction of affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, (ii) the doctrines of alter ego or veil piercing involving alter egos of a Non-Debtor Party, or piercing the corporate veil between Non-Debtor Parties, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form, or (iii) alleged derivative or vicarious liability of a Non-Debtor Party for liabilities of another Non-Debtor Party not directly or indirectly assumed from the Debtor; *provided* that, if any Cause of Action falls within the definition of Estate Cause of

-13-

Action or Sovereign State Retained Cause of Action, it is not an Independent AFFF Cause of Action.

2.1.108.   "*Initial Distribution Date*" means the Business Day as soon as practicable after the Effective Date when Distributions on account of Liquidating Estate Claims under the Plan shall commence that is selected by the Liquidating Administrators.

2.1.109.   "*Insider*" has the meaning set forth in section 101(31) of the Bankruptcy Code.

2.1.110.   "*Insurance Action*" means any Claim, Cause of Action, or right of the Debtor and Carrier, under the laws of any jurisdiction, (i) against any Insurance Company, arising from or related to an Insurance Policy, including: (a) any such Insurance Company's failure to provide coverage or otherwise pay under an Insurance Policy; (b) the refusal of any Insurance Company to compromise and settle any Claim or provide defense to any claim; (c) the interpretation or enforcement of the terms of any Insurance Policy with respect to any Claim; (d) any conduct by any Insurance Company constituting "bad faith" conduct or that could otherwise give rise to extra-contractual damages, or other wrongful conduct under applicable law; or (e) any right to receive proceeds held by the Debtor and Carrier with respect to an Insurance Policy or a coverage action, and (ii) arising out of or related to the rights under the 2020 Separation Agreement to access and make Claims under any Insurance Policy, enter an Insurance Settlement Agreement, or otherwise obtain the benefit of the Insurance Assignment, including under the RTX Waiver. For the avoidance of doubt, the Insurance Adversary Proceedings, and the Causes of Action asserted therein, are Insurance Actions.

2.1.111.   "*Insurance Action Recoveries*" means the rights to the proceeds or benefits of any Insurance Action.

2.1.112.   "*Insurance Adversary Proceedings*" means the 2023 Insurance Adversary Proceeding and the 2024 Insurance Adversary Proceeding.

2.1.113.   "*Insurance Assignment*" means the transfer by the Debtor and Carrier to the Primary AFFF Settlement Trust of certain rights in connection with the Insurance Policies as set forth in Article 5 herein.

2.1.114.   "*Insurance Company*" means any insurance company, insurance syndicate, coverage holder, insurance broker or syndicate insurance broker, guaranty association, or any other Person that has issued, or that has any actual, potential, demonstrated, or alleged liabilities, duties, or obligations under or with respect to, any Insurance Policy.  For the avoidance of doubt, no Released Party shall be considered an "Insurance Company."

2.1.115.   "*Insurance Cooperation Agreement*" means that certain Cooperation Agreement contemplated by the Plan Support Agreement to be filed with the Plan Supplement.

2.1.116.   "*Insurance Policy/ies*" means: (i) any insurance policies listed on <u>Schedule 1</u> hereto, (ii) to the extent not listed on Schedule 1, any "general liability" insurance (which, for the avoidance of doubt, shall exclude director & officer, automobile, or workers'

-14-

compensation insurance) contract, binder, certificate, insurance policy, or reinsurance policy, whether currently known or unknown, discovered after the Effective Date, in effect at any time on or before the Petition Date naming the Debtor, the Contributing Parties, or any of their predecessors, subsidiaries, or past or present affiliates as an insured (whether as the primary or additional insured) or that provides or may provide coverage to Carrier or the Debtor for AFFF Claims, (iii) "Aviation" policies to which Carrier or the Debtor has rights as listed in Schedule 2 hereto solely to the extent of Insurance Policy Rights applicable to or arising from AFFF Claims and (iv) any other subsequently discovered insurance policies of the same types as listed in Schedules 1 and 2 hereto to the extent that Carrier or the Debtor have rights under such policies (whether or not such policies are specifically titled as "General Liability" or "Aviation" policies). For the avoidance of doubt, "Insurance Policies" shall not include any D&O Policies, automobile policies or worker's compensation insurance.

2.1.117. "*Insurance Policy Rights*" means any and all rights subject to the Insurance Assignment.

2.1.118. "*Insurance Settlement Agreement*" means any settlement agreement or sale and purchase or repurchase agreement entered into after the Petition Date and before the Effective Date by and among (a) any Insurance Company, on the one hand, and (b) Carrier, the Debtor, and the Committee, on the other hand, under which any Insurance Policy Rights are released, compromised, sold, or repurchased.

2.1.119. "*Interest*" means any "equity security" in the Debtor as defined in section 101(16) of the Bankruptcy Code.

2.1.120. "*IRC*" means the Internal Revenue Code.

2.1.121. "*IRS*" means the Internal Revenue Service.

2.1.122. "*KFFI*" means Kidde Fire Fighting, Inc. (formerly known as National Foam, Inc.).

2.1.123. "*Landfill*" means a discrete area of real property primarily used for the disposal of waste material as categorized pursuant to 40 CFR Part 239-272.

2.1.124. "*Landfill Claim*" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Landfill for damages relating to such Landfill.

2.1.125. "*Landfill Reserve Fund*" shall have the meaning set forth in the Primary AFFF Settlement Trust Agreement.

2.1.126. "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

2.1.127. "*Liquidating Administrator Agreement*" means the Liquidating Administrator Agreement dated as of the Effective Date, as the same may be amended or

modified from time to time in accordance with the terms thereof, and which shall be filed with the Plan Supplement.

2.1.128. "*Liquidating Administrators*" means the board of directors of the post-Effective Date Debtor, which shall be composed of Steve Hannan and Alex Greene (or such successor(s) as they jointly may designate) and vested with sole authority to administer the Liquidating Estate.

2.1.129. "*Liquidating Estate*" means the Estate after the Effective Date, which shall be administered by the Liquidating Administrators.

2.1.130. "*Liquidating Estate Assets*" means the assets of the Liquidating Estate, including the Wind-Down Reserve.  For the avoidance of doubt, the Liquidating Estate Assets shall exclude the Settlement Trust Assets.

2.1.131. "*Liquidating Estate Claims*" means Administrative Claims, Priority Tax Claims, Other Priority Claims and Secured Claims.

2.1.132. "*Liquidating Estate Retained Causes of Action*" means Estate Retained Causes of Action that are counterclaims or defenses with respect to any Claim that is not directly administered by the Settlement Trusts.

2.1.133. "*MDL District Court*" means the United States District Court for the District of South Carolina overseeing the AFFF MDL.

2.1.134. "*MDL PEC Co-Lead*" means a co-lead of the plaintiffs' executive committee appointed in the AFFF MDL.

2.1.135. "*National Foam*" means the "National Foam" line of business and any entity that owned or operated that business, including but not limited to National Foam, Inc., KFFI, the Debtor, and each of their Related Parties.

2.1.136. "*National Foam AFFF Claim*" means any Claim or Cause of Action attributable to, arising out of or relating to, directly or indirectly, the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF, AFFF-containing products, or any precursor, derivative, or resultant chemicals from PFAS or AFFF by National Foam, including (a) Independent AFFF Causes of Action, (b) any such Claim or Cause of Action that was brought or could have been brought in the AFFF MDL, and (c) any Claim or Cause of Action for contribution or indemnification of losses or liabilities incurred by a Person related to a National Foam AFFF Claim.  National Foam AFFF Claim shall not include any Causes of Action against DuPont, 3M, or their current or former affiliates and Related Parties, or any other party that is not a Released Party.

2.1.137. "*Net Sale Proceeds*" means net sale proceeds of approximately $115 million generated by the Sale of the Debtor's assets (including proceeds generated from the assets contributed by Carrier) that have been deposited in an escrow account.

-16-

2.1.138. "*New National Foam*" means, collectively, National Foam, Inc. f/k/a Eurostar US Tradeco, Inc., Angus Fire Ltd. f/k/a Eurostar Tradeco Limited, Angus International Safety Group Limited f/k/a/ Eurostar Holdco Limited, and each of their Related Parties.

2.1.139. "*New National Foam Release*" means a settlement between the Debtor and New National Foam pursuant to which (a) Estate Causes of Action against New National Foam are resolved for value reasonably acceptable to the Settling Parties and (b) New National Foam agrees to absolutely, unconditionally, and irrevocably release and discharge the Debtor and each Released Party from any and all Claims and Causes of Action, whether known or unknown, based on or relating to, or in any manner arising from that certain Share and Business Sale Agreement, dated as of June 28, 2013, or any other occurrence taking place on or before the Effective Date, including Proof of Claim No. 225, and otherwise in form and substance reasonably acceptable to the Settling Parties.

2.1.140. "*Non-Debtor Party*" means any Person other than the Debtor.  For the avoidance of doubt, the term "*Non-Debtor Party*" does not include KFFI or National Foam, Inc.

2.1.141. "*Non-PFAS Bar Date*" means 5:00 p.m. (Eastern Time) on November 10, 2023.

2.1.142. "*Non-Transient Non-Community Water System*" means a Public Water System that is not a Community Water System and that regularly serves at least twenty-five (25) of the same persons over six (6) months per year, consistent with the use of that term in 40 C.F.R. Part 141.

2.1.143. "*Notice and Claims Agent*" means Stretto, Inc., located at 410 Exchange, Suite 100, Irvine, California 92602, retained and approved by the Bankruptcy Court as the Debtor's notice and claims agent.

2.1.144. "*Other Insurance Company*" means an Insurance Company that is not a Settling Insurance Company.

2.1.145. "*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

2.1.146. "*Person*" means a "person" or "entity" as defined in the Bankruptcy Code.

2.1.147. "*Personal Injury Claim*" means an AFFF Claim asserted by an individual person, or legal representative of such person, for or related to, directly or indirectly, personal injuries or wrongful death.

2.1.148. "*Petition Date*" means May 14, 2023, the date on which the Debtor commenced the Chapter 11 Case.

2.1.149. "*PFAS*" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.

-17-

2.1.150. "*PI Reserve Fund*" shall have the meaning set forth in the Primary AFFF Settlement Trust Agreement.

2.1.151. "*Plan*" has the meaning set forth in the Introduction hereto.

2.1.152. "*Plan Documents*" means, collectively, the Plan and all documents to be executed, delivered, assumed, or performed in connection with the Plan, the Plan Transactions, and the occurrence of the Effective Date, including the documents to be included in the Plan Supplement.

2.1.153. "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, exhibits, and annexes to the Plan, and additional documents filed with the Bankruptcy Court before the Effective Date as amendments, modifications, or supplements to the Plan Supplement. The Plan Supplement shall include the identification of the initial Settlement Trustees. Each document in the Plan Supplement shall be in form and substance reasonably acceptable to each of the Settling Parties.

2.1.154. "*Plan Support Agreement*" means that certain *Settlement Support Agreement With Respect to Estate Claims Settlement, Chapter 11 Plan of Liquidation, and Class Settlements of Certain AFFF MDL Claims*, dated as of October 18, 2024, by and among the Settling Parties, including all exhibits and attachments thereto, and as amended, restated and supplemented from time to time in accordance with its terms.

2.1.155. "*Plan Transactions*" means all transactions described in, approved by, contemplated by, or necessary to effectuate the Plan or any other Plan Transaction.

2.1.156. "*Point Values*" means the values of the applicable points with respect to each Claim Category as set forth in the TDPs, which values shall be approved by the Bankruptcy Court prior to the Effective Date after notice and opportunity for interested parties to object.

2.1.157. "*Prepetition*" means prior to the Petition Date.

2.1.158. "*Primary AFFF Settlement Trust*" means the settlement trust organized under the laws of the state of Delaware and established under the Plan and the Settlement Trust Documents, which shall (i) have the powers, duties and obligations set forth in the Plan and the Settlement Trust Documents, (ii) assume all liability of the Debtor and the Estate for, and administer, all Channeled AFFF Claims and (iii) be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code.

2.1.159. "*Primary AFFF Settlement Trust Agreement*" means the Settlement Trust Agreement governing the Primary AFFF Settlement Trust, dated as of the Effective Date, as the same may be amended or modified from time to time in accordance with the terms thereof.

2.1.160. "*Primary AFFF Settlement Trustee*" means one or more trustees selected by the Committee after consultation with the Debtor, or such successors as may be appointed from time to time after the Effective Date in accordance with the Settlement Trust Documents, to be the trustee(s) of the Primary AFFF Settlement Trust, which shall be identified in the Settlement Trust Documents and subject to approval of the Bankruptcy Court.

-18-

2.1.161. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

2.1.162. "*Property Damage Reserve Fund*" shall have the meaning set forth in the Primary AFFF Settlement Trust Agreement.

2.1.163. "*Pro Rata*" means, with respect to an Allowed Claim, the percentage represented by a fraction (a) the numerator of which shall be an amount equal to such Claim and (b) the denominator of which shall be an amount equal to the aggregate amount of Allowed Claims in the same Class as such Claim, except in cases where Pro Rata is used in reference to multiple Classes, in which case Pro Rata means the proportion that such Holder's Claim in a particular Class bears to the aggregate amount of all Allowed Claims in such multiple Classes.

2.1.164. "*Professional*" means (a) a Person employed in the Chapter 11 Case pursuant to a Bankruptcy Court order in accordance with sections 327, 328, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 363, and 331 of the Bankruptcy Code, excluding any ordinary course professional retained pursuant to a Bankruptcy Court order; (b) a Person awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code; or (c) the professionals employed by the AHC and compensated from the Debtor's Estate throughout the Chapter 11 Case pursuant to the *Order Authorizing the Debtor to Enter Into, and Perform its Obligations Under, the Reimbursement Agreement With the Professionals Retained by the Ad Hoc Committee of Governmental Claimants, Nunc Pro Tunc to May 14, 2023* [D.I. 627].

2.1.165. "*Professional Compensation Claim*" means a Claim for professional services rendered and costs incurred on or after the Petition Date by a Professional, including estimates through the Confirmation Date, in connection with the Chapter 11 Case.

2.1.166. "*Professional Fee Escrow Account*" means an account to be funded by the Debtor upon the Effective Date in an amount equal to (i) the Professional Fee Reserve Amount plus (ii) the Fee Examiner Reserve Amount.

2.1.167. "*Professional Fee Order*" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* entered by the Bankruptcy Court on June 23, 2023 [D.I. 205].

2.1.168. "*Professional Fee Reserve Amount*" means the aggregate amount of unpaid Professional Compensation Claims for all Professionals through and including the Confirmation Date as estimated in accordance with Article 3.3.3 herein.

2.1.169. "*Proof of Claim*" means a proof of Claim filed against the Debtor in this Chapter 11 Case.

2.1.170. "*Property Damage Claim*" means an AFFF Claim asserted by or on behalf of an owner of real property (other than an Airport, Stormwater System, Wastewater System, Public Water System, Landfill, or Fire Training Facility) or personal property for damages relating to such property.

2.1.171. "*Public Water System*" means a system for the provision to the public of water for human consumption through pipes or other constructed conveyances, if such system has at least fifteen (15) service connections or regularly serves an average of at least twenty-five (25) individuals daily at least sixty (60) days out of the year, consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C. § 300f(4)(A), and 40 C.F.R. Part 141.  The term "Public Water System" includes (i) any collection, treatment, storage, and distribution facilities under control of the operator of such system and used primarily in connection with such system, (ii) any collection or pretreatment storage facilities not under such control which are used primarily in connection with such system, (iii) a Community Water System of any size,  (iv) a Non-Transient Non-Community Water System of any size, and (v) any Person (but not any financing or lending institution) that has legal authority or responsibility (by statute, regulation, other law, or contract) to fund or incur financial obligations for the design, engineering, installation, operation, or maintenance of any facility or equipment that treats, filters, remediates, or manages water that has entered or may enter Drinking Water or any Public Water System.

2.1.172. "*Rejection Bar Date*" means, with respect to any Executory Contract or Unexpired Lease that is rejected pursuant to this Plan, 5:00 p.m. prevailing Eastern Time on the earlier of (a) the 30th day after entry by the Bankruptcy Court of an order providing for the rejection of such Executory Contract or Unexpired Lease and (b) the 30th day after the Effective Date; *provided*, *however*, that the deadline for filing any rejection damages claim in connection with any Executory Contract or Unexpired Lease rejected pursuant to a prior order of the Bankruptcy Court shall be the date set forth in the respective order authorizing such rejection.

2.1.173. "*Release Dispute*" means a dispute regarding whether a Cause of Action alleged by an AFFF Claimant against one or more of the Released Parties is a Cause of Action that was an Estate Cause of Action or otherwise settled and released under the Plan.

2.1.174. "*Released Claims*" means all Claims or Causes of Action, including all Estate Causes of Action, that are released under the Plan and the Confirmation Order.  For the avoidance of doubt, no Independent AFFF Causes of Action or Sovereign State Retained Causes of Action shall be Released Claims.

2.1.175. "*Released Party*" means (i) Carrier, (ii) RTX, and (iii) each of their Related Parties in their capacities as such.  Released Parties shall not include DuPont, 3M, or their current or former affiliates and Related Parties.  If a Person is a current or former affiliate or Related Party of DuPont or 3M, and such Person is also a current or former affiliate or Related Party of Carrier or RTX, then such Person shall not be a Released Party.  For the avoidance of doubt, New National Foam shall not be a Released Party unless the New National Foam Release is provided by the Effective Date.

2.1.176. "*Related Party*" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, and current and former affiliates and subsidiaries, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, all only in their capacity as a representative of such Person, and (c) respective heirs, executors, estates, and nominees, in each case solely in its capacity as such.

-20-

2.1.177. "*Remaining Estate Funds*" means all remaining cash in the Estate as of the Effective Date net of accrued and unpaid administrative expenses and amounts required to fund the Wind-Down Budget.

2.1.178. "*Reserve Funds*" shall mean, collectively, the Airport Reserve Fund, Business Loss Reserve Fund, Fire Training Facility Reserve Fund, Landfill Reserve Fund, PI Reserve Fund, Future PI Reserve Fund, Property Damage Reserve Fund, Sovereign Tribe Reserve Fund, State Trust Reserve Fund, Stormwater Reserve Fund, Wastewater Reserve Fund and Water Provider Reserve Fund.

2.1.179. "*RTX*" means RTX Corporation (formerly known as Raytheon Technologies Corporate and successor to United Technologies Corporation).

2.1.180. "*RTX Waiver*" shall have the meaning set forth in Article 5.5.11(b).

2.1.181. "*Sale*" means the sale of substantially all of the Debtor's assets pursuant to the Acquisition Agreement and approved by the Sale Order.

2.1.182. "*Sale Order*" means the *Order (I) Approving the Sale of All or Substantially All of the Debtor's Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving Debtor's Entry, and Performance Under the Contribution Agreement, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Granting Related Relief*, entered by the Bankruptcy Court on April 2, 2024 [D.I. 1058].

2.1.183. "*Schedules*" means, with respect to the Debtor, the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor with the Bankruptcy Court pursuant to sections 521 and 1106(a)(2) of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statements may be amended or supplemented from time to time prior to the Effective Date after consultation with the Committee.

2.1.184. "*SDWIS*" means the U.S. EPA Safe Drinking Water Information System Federal Reporting Services system.

2.1.185. "*Secured*" means, with respect to any Claim, the extent to which the Claim is: (a) secured by a valid, perfected and enforceable Lien on property of the Debtor's Estate (i) as set forth in the Plan, (ii) as agreed to by the holder of such Claim and the Liquidating Administrators or Debtor, as applicable, with the consent of the Committee, not to be unreasonably withheld, conditioned or delayed or (iii) pursuant to applicable law or as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code; (b) subject to any setoff right of the holder of such Claim under section 553 of the Bankruptcy Code, but, with respect to both of the foregoing clauses (a) and (b), only to the extent of the value of the interest of such holder in the Estate's interest in the property securing such Claim or the amount subject to setoff, as applicable.

2.1.186. "*Securities Act*" means the United States Securities Act of 1933, as amended.

2.1.187. "*Security*" means a security as defined in section 2(a)(1) of the Securities Act.

2.1.188. "*Settlement Trust Agreements*" means, collectively, (i) the Primary AFFF Settlement Trust Agreement, (ii) the Sovereign State AFFF Settlement Trust Agreement and (iii) the GUC Liquidating Trust Agreement.  To the extent that any provision of a Settlement Trust Agreement impacts the rights of Carrier, such provision shall not be included in such Settlement Trust Agreement unless reasonably acceptable to Carrier.

2.1.189. "*Settlement Trust Assets*" means contents of the AFFF Data Transfer, the Guaranteed Cash Payment, any and all funds, proceeds or other consideration contributed to the Primary AFFF Settlement Trust pursuant to the Insurance Assignment, and all other assets contributed or Causes of Action assigned to the Primary AFFF Settlement Trust, including the Settlement Trust Retained Causes of Action.

2.1.190. "*Settlement Trust Documents*" means, collectively, (a) the Settlement Trust Agreements, (b) the TDPs, (c) the Confirmation Order, and (d) any other agreements, instruments, and documents governing the establishment, administration, and operation of the Settlement Trusts.

2.1.191. "*Settlement Trust Retained Causes of Action*" means all Estate Causes of Action other than Liquidating Estate Retained Causes of Action.

2.1.192. "*Settlement Trustees*" means the Primary AFFF Settlement Trustee, the Sovereign State AFFF Settlement Trustee and the GUC Liquidating Trustee.

2.1.193. "*Settlement Trusts*" means the Primary AFFF Settlement Trust, Sovereign State AFFF Settlement Trust and GUC Liquidating Trust.

2.1.194. "*Settling Insurance Company*" means any Insurance Company that contributes funds, proceeds, or other consideration to or for the benefit of the Primary AFFF Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order.  No Insurance Company shall be considered a Settling Insurance Company without the Committee's prior written consent.

2.1.195. "*Settling Parties*" means the Debtor, Carrier, the Committee and the MDL PEC Co-Leads.

2.1.196. "*Solicitation Materials*" means all documents, forms, and other materials distributed in connection with the solicitation of votes on the Plan pursuant to sections 1125 and 1126 of the Bankruptcy Code, including, without limitation, the Disclosure Statement, and the forms of ballots with respect to votes on the Plan, which shall be in form and substance reasonably acceptable to each of the Settling Parties.

2.1.197. "*Sovereign State*" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands,

Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.

2.1.198. "*Sovereign State Claim*" means an AFFF Claim asserted by a Sovereign State that is not an Airport Claim, Business Loss Claim, Fire Training Facility Claim, Landfill Claim, Personal Injury Claim, Property Damage Claim, Stormwater Claim, Wastewater Claim or Water Provider Claim.

2.1.199. "*Sovereign State AFFF Settlement Trust*" means the trust established under the Plan and the Settlement Trust Documents to administer all Sovereign State Claims against the Debtor.  The Sovereign State AFFF Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code and shall have the powers, duties and obligations set forth in the Settlement Trust Documents.

2.1.200. "*Sovereign State AFFF Settlement Trust Agreement*" means the Settlement Trust Agreement governing the Sovereign State AFFF Settlement Trust, dated as of the Effective Date, as the same may be amended or modified from time to time in accordance with the terms thereof.

2.1.201. "*Sovereign State AFFF Settlement Trustee*" shall have the meaning set forth in Article 5.5.5.

2.1.202. "*Sovereign State Retained Cause of Action*" means any Claim or Cause of Action asserted, or which may be asserted, by a Sovereign State against a Contributing Party that (1) is not an Estate Cause of Action and (2) arises from a statute, regulation, or common law that creates a theory of liability, by which a Sovereign State could recover damages or penalties, or obtain equitable or injunctive relief, against a Contributing Party.  For the avoidance of doubt, a Sovereign State may assert a Sovereign State Retained Cause of Action irrespective of whether such Sovereign State Retained Cause of Action could also be considered an Independent AFFF Cause of Action.

2.1.203. "*Sovereign Tribe*" means any American Indian or Alaskan Native Tribe, band, nation, pueblo, village or community, that the U.S. Secretary of the Interior acknowledges as an Indian Tribe, as provided in the Federally Recognized Tribe List Act of 1994, 25 U.S.C. § 5130, and as periodically listed by the U.S. Secretary of the Interior in the Federal Register pursuant to 25 U.S.C. § 5131; and any "Tribal Organization" as provided in the Indian Self-Determination and Education and Assistance Act of 1975, as amended, 25 U.S.C. § 5304(1).

2.1.204. "*Sovereign Tribe Claim*" means an AFFF Claim asserted by a Sovereign Tribe that is not an Airport Claim, Business Loss Claim, Fire Training Facility Claim, Landfill Claim, Personal Injury Claim, Property Damage Claim, Stormwater Claim, Wastewater Claim or Water Provider Claim.

2.1.205. "*Sovereign Tribe Reserve Fund*" shall have the meaning set forth in the Primary AFFF Settlement Trust Agreement.

-23-

2.1.206. "*State Trust Reserve Fund*" shall have the meaning set forth in the Primary AFFF Settlement Trust Agreement.

2.1.207. "*Stormwater Claim*" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Stormwater System for damages relating to such Stormwater System.

2.1.208. "*Stormwater Reserve Fund*" shall have the meaning set forth in the Primary AFFF Settlement Trust Agreement.

2.1.209. "*Stormwater System*" means a system of diverting excess precipitation from rain and snowmelt events and dry-weather runoff over land or impervious surfaces without percolating into the ground from real property, municipalities, construction activities, and industrial activities and permitted as such pursuant to the National Pollutant Discharge Elimination System and/or by a state or municipal permitting authority.

2.1.210. "*Subordinated Claim*" means any Claim subject to subordination under section 510(b) of the Bankruptcy Code.

2.1.211. "*Subsequent Distribution Date*" means a date after the Initial Distribution Date selected by the Liquidating Administrators for Distributions.

2.1.212. "*TDPs*" or "*Trust Distribution Procedures*" means the Trust Distribution Procedures for the Settlement Trusts, as the same may be amended or modified from time to time in accordance with the terms thereof, that will govern the claims submission, adjudication, and distribution processes for the Settlement Trusts in a manner that is fair and equitable to Holders of Allowed Channeled AFFF Claims.  To the extent that any provision of the TDPs impacts the rights of Carrier, such provision shall not be included unless reasonably acceptable to Carrier.

2.1.213. "*Transferred Assets*" shall have the meaning set forth in the Acquisition Agreement.

2.1.214. "*Transient Non-Community Water System*" means a Public Water System that is not a Community Water System and that does not regularly serve at least twenty-five (25) of the same persons over six (6) months per year, consistent with the use of that term in 40 C.F.R. Part 141.

2.1.215. "*Trust Advisory Committee*" means the Trust Advisory Committee established pursuant to the terms of the Plan and having the powers, duties, and obligations set forth in the Settlement Trust Documents.

2.1.216. "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

2.1.217. "*Unimpaired*" means any Claim or Interest that is not Impaired.

2.1.218. "*U.S. Trustee*" means the Office of the United States Trustee for the District of Delaware.

-24-

2.1.219. "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

2.1.220. "*Voting*" means the process by which a Holder of a Claim may vote to accept or reject the Plan, pursuant to the conditions in Article 4 herein.

2.1.221. "*Voting Deadline*" means [•]5:00 p.m. prevailing Eastern Time on [•],December 15, 2025, by which time all Ballots must be actually received by the Notice and Claims Agent.

2.1.222. "*Voting Record Date*" means [•],June 4, 2025.

2.1.223. "*Wastewater Claim*" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Wastewater System for damages relating to such Wastewater System.

2.1.224. "*Wastewater Reserve Fund*" shall have the meaning set forth in the Primary AFFF Settlement Trust Agreement.

2.1.225. "*Wastewater System*" means a network of storage tanks, pumping stations, pipes, mixing vessels, filters, and other equipment/appurtenances that convey sewage and treat wastewater prior to its discharge or disposal.

2.1.226. "*Water Provider Claim*" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Public Water System for damages relating to such Public Water System.

2.1.227. "*Water Provider Reserve Fund*" shall have the meaning set forth in the Primary AFFF Settlement Trust Agreement.

2.1.228. "*Water Source*" means a groundwater well, a surface-water intake, or any other intake point from which a Public Water System draws or collects water for distribution as Drinking Water, and the raw or untreated water that is thus drawn or collected.

2.1.229. "*Wind Down Budget*" means the wind-down budget for the Liquidating Estate following the Effective Date as approved by the Bankruptcy Court in connection with the Confirmation of the Plan, which shall provide for the payment of Allowed Administrative Claims, Priority Tax Claims, Other Priority Claims, Secured Claims, and any other Claims or administrative expenses not being administered by the Settlement Trusts, and which shall be reasonably acceptable to and shared with all Settling Parties upon request.

2.1.230. "*Wind Down Reserve*" means the reserve account established and maintained by the Liquidating Estate to administer the wind-down and dissolution of the Liquidating Estate, including the payment of Allowed Professional Compensation Claims, and other costs and expenses of the Debtor and Liquidating Estate, which shall be funded consistent with the Wind-Down Budget and from the sources set forth in Article 5 herein.

2.2.    <u>Rules of Interpretation</u>

For the purposes of this Plan:  (a) any reference herein to the word "including" or word of similar import shall be read to mean "including without limitation"; (b) unless otherwise specified, all references herein to "Articles" are references to Articles herein, hereof or hereto; (c) unless otherwise specified, the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than a particular portion of the Plan; (d) captions and headings to Articles are inserted for the convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (e) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (f) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (g) all references to docket numbers of documents filed in this Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (h) all references to statutes, regulations, orders, rules of courts and the like shall mean as amended from time to time, and as applicable to this Chapter 11 Case, unless otherwise stated; (i) any reference herein to a contract, agreement, lease, plan, policy, document or instrument being in a particular form or on particular terms and conditions means that the same shall be substantially in that form or substantially on those terms and conditions; (j) any reference herein to a contract, agreement, lease, plan, policy, document or instrument or schedule or exhibit thereto, whether or not filed, shall mean the same as amended, restated, modified or supplemented from time to time in accordance with the terms hereof or thereof; (k) any immaterial effectuating provisions may be interpreted by the Debtor, the Settlement Trustees and the Liquidating Administrators, as applicable, in such a manner that is consistent with the overall purpose and intent of the Plan, all without further Bankruptcy Court order; (l) any reference to a Person as a Holder of a Claim or Interest includes that Person's successors and permitted assigns; (m) except as otherwise expressly provided in this Plan, after the Confirmation Date, where this Plan contemplates that the Debtor, the Settlement Trustees, or the Liquidating Administrators shall take any action, incur any obligation, issue any security or adopt, assume, execute or deliver any contract, agreement, lease, plan, policy, document or instrument on or prior to the Effective Date, the same shall be duly and validly authorized by the Plan and effective against and binding upon the Debtor, the Settlement Trustees and/or the Liquidating Administrators, as applicable, on and after the Effective Date without further notice to, order of or other approval by the Bankruptcy Court, action under applicable law, regulation, order or rule, or the vote, consent, authorization or approval of the board of directors of the Debtor or any other Person; (n) any effectuating provisions relating to the Settlement Trusts may be reasonably interpreted by the applicable Settlement Trustee without further notice to or action, order, or approval of the Bankruptcy Court; (o) reference herein to the Settlement Trustees and the Liquidating Administrators, or any right of the Settlement Trustees or Liquidating Administrators, shall be subject in all respects to the Settlement Trust Agreements and Liquidating Administrator Agreement, as applicable, and (p) except as otherwise provided in the Plan, anything required to be done by the Debtor, the Settlement Trustees or the Liquidating Administrators, as applicable, on the Effective Date may be done on the Effective Date or as soon as reasonably practicable thereafter.

2.3.    <u>Computation of Time</u>

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein, and all

dates and times shall be determined based on prevailing time in Wilmington, Delaware.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

4860-3249-7648 v.2428

**3.** **ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims or Priority Tax Claims, payment of which is provided for below.

3.1.  Administrative Claim Bar Date

Any request for payment of an Administrative Claim must be filed and served on the Debtor or the Liquidating Administrators, as applicable, pursuant to the procedures specified in the notice of entry of the Confirmation Order and the Confirmation Order on or prior to the Administrative Claim Bar Date; *provided* that no request for payment is required to be filed and served pursuant to this Article 3.1 with respect to any:

(a) Administrative Claim that is Allowed as of the Administrative Claim Bar Date;

(b) Professional Compensation Claim;

(c) Fee Examiner Compensation Claim; or

(d) Claim for U.S. Trustee Fees.

Any Holder of an Administrative Claim who is required to, but does not, file and serve a request for payment of such Administrative Claim pursuant to the procedures specified in the Confirmation Order on or prior to the Administrative Claim Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Claim against the Debtor or the Liquidating Estate and such Administrative Claim shall be deemed satisfied as of the Effective Date without the need for any objection from the Liquidating Administrators or any notice to or action, order or approval of the Bankruptcy Court.

Any objection to a request for payment of an Administrative Claim that is required to be filed and served pursuant to this Article 3.1 must be filed and served on the requesting party creditor (a) no later than 90 days after the Administrative Claim Bar Date or (b) by such later date as may be established by order of the Bankruptcy Court upon a motion by the Debtor or the Liquidating Administrators, as applicable, with notice only to those parties entitled to receive notice pursuant to Bankruptcy Rule 2002.

3.2.  General Administrative Claims

Except to the extent that a Holder of an Allowed General Administrative Claim agrees to less favorable treatment, the Holder of each Allowed General Administrative Claim shall receive Cash in an amount equal to the full unpaid amount of such Allowed General Administrative Claim on or as reasonably practicable after the later of (a) the Effective Date or (b) the date on which such Claim is Allowed.

3.3.    Professional Compensation Claims and Fee Examiner Compensation Claims

3.3.1.   Professional Final Fee Applications.  All final requests for payment of Professional Compensation Claims shall be filed and served no later than 60 days after the Confirmation Date, in accordance with the procedures established under the Professional Fee Order and the Confirmation Order.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Compensation Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules and prior Bankruptcy Court orders.

3.3.2.   Fee Examiner Final Fee Applications.  All final requests for payment of Fee Examiner Compensation Claims shall be filed and served no later than 30 days after entry of an order or orders approving all final fee applications provided for in Article 3.3.1 herein.  The Bankruptcy Court shall determine the Allowed amounts of such Fee Examiner Compensation Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules and prior Bankruptcy Court orders.

3.3.3.   Professional Fee Escrow Account.  The Debtor or the Liquidating Administrators, as applicable, shall establish and fund the Professional Fee Escrow Account on or prior to the Effective Date; *provided* that the Debtor's and the Liquidating Estate's obligations with respect to the Professional Compensation Claims and the Fee Examiner Compensation Claims shall not be limited by, nor deemed limited to, the balance of funds held in the Professional Fee Escrow Account.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and the Fee Examiner.  Except as provided in the last sentence of this paragraph, such funds shall not be considered property of the Debtor, Liquidating Estate or the Liquidating Administrators.  The Liquidating Administrators shall pay Professional Compensation Claims and Fee Examiner Compensation Claims in Cash no later than five Business Days after such Claims are Allowed by Final Order of the Bankruptcy Court.  To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of accrued Allowed Professional Compensation Claims owing to any Professional or accrued Allowed Fee Examiner Compensation Claims owing to the Fee Examiner, such Professional and/or Fee Examiner shall have an Allowed Administrative Claim for any such deficiency, which shall be satisfied in accordance with Article 3.2 of the Plan (but for the avoidance of doubt, shall not be subject to any Administrative Claims Bar Date).  Any funds remaining in the Professional Fee Escrow Account following (i) the approval of all Professionals' final fee applications provided for in Article 3.3.1 herein and payment of all Professionals 'Allowed Professional Compensation Claims and (ii) the approval of the Fee Examiner's final fee applications provided for in Article 3.3.1 herein and payment of all Allowed Fee Examiner Compensation Claims, shall revert to the Wind-Down Reserve.

3.3.4.   Professional Fee Reserve Amount and Fee Examiner Fee Reserve Amount.  Professionals and the Fee Examiner shall provide good-faith estimates of, respectively, their Professional Compensation Claims and Fee Examiner Compensation Claims for purposes of the Professional Fee Escrow Account and shall deliver such estimates to the Debtor and the Liquidating Administrators no later than seven days prior to the anticipated Effective Date; *provided* that such estimates shall not be considered an admission or limitation with respect to the fees and expenses of such Professionals or the Fee Examiner.  If a Professional or the Fee

-29-

Examiner does not provide such an estimate, the Debtor or the Liquidating Administrators, as applicable, may estimate, in their reasonable discretion, the Professional Compensation Claims of such Professional or the Fee Examiner Compensation Claims of the Fee Examiner.

        3.3.5.  <u>Post-Confirmation Date Fees and Expenses.</u>  Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtor or the Liquidating Administrators, as the case may be, shall, in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional or other fees and expenses related to implementation and Consummation of the Plan incurred by the Professionals, in each case in accordance with the Wind Down Budget.  Except as otherwise specifically provided in the Plan, upon the Confirmation Date, any requirement that Professionals comply with section 327, 328, 329, 330, 331 or 1103 of the Bankruptcy Code or the Professional Fee Order in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor, the Liquidating Administrators and, solely with respect to the matters set forth in Article 13.9 herein, the Committee, may employ and pay any Professional in the ordinary course of business, in each case subject to the Wind Down Budget.

        3.3.6.  <u>Fee Examiner</u>.  The Fee Examiner appointed pursuant to the Fee Examiner Order shall continue to act in such capacity unless and until all final Professional Compensation Claims have been adjudicated by an order of the Bankruptcy Court (the "<u>Fee Examiner Termination Date</u>").  The Liquidating Administrators shall promptly pay the Allowed Fee Examiner Compensation Claims as determined by the Bankruptcy Court.

    3.4.    <u>Statutory Fees Payable Pursuant to 28 U.S.C. § 1930</u>

        All fees due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date, including any applicable interest payable under section 3717 of Title 31 of the United States Code, shall be paid by the Debtor.  On and after the Effective Date, to the extent applicable, the Liquidating Administrators shall pay any and all such fees and interest when due and payable (including any fraction thereof) until the earliest of the Chapter 11 Case being closed, dismissed or converted to a case under chapter 7 of the Bankruptcy Code.

    3.5.    <u>Priority Tax Claims</u>

        Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, or as ordered by the Bankruptcy Court, the Holder of an Allowed Priority Tax Claim shall be treated in accordance with section 1129(a)(9)(C) of the Bankruptcy Code.

-30-

## 4.    CLASSIFICATION, TREATMENT AND VOTING OF CLAIMS AND INTERESTS

4.1.    Classification of Claims and Interests

All Claims and Interests except for Administrative Claims and Priority Tax Claims are classified in the Classes set forth in this Article 4.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest also is classified in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim or Interest is Allowed as a Claim or Interest in that Class and has not been paid, released or otherwise satisfied prior to the Effective Date.

4.1.1.    Summary of Classification and Treatment.

The classification of Claims and Interests pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Secured Claims | Unimpaired | Deemed to Accept |
| 3A | Water Provider Claims | Impaired | Entitled to Vote |
| 3B | Airport Claims | Impaired | Entitled to Vote |
| 3C | Sovereign State Claims | Impaired | Entitled to Vote |
| 3D | Property Damage Claims | Impaired | Entitled to Vote |
| 3E | Personal Injury Claims | Impaired | Entitled to Vote |
| 3F | Sovereign Tribe Claims | Impaired | Entitled to Vote |
| 3G | Business Loss Claims | Impaired | Entitled to Vote |
| 3H | Fire Training Facility Claims | Impaired | Entitled to Vote |
| 3I | Landfill Claims | Impaired | Entitled to Vote |
| 3J | Stormwater Claims | Impaired | Entitled to Vote |
| 3K | Wastewater Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Affiliate Claims | Impaired | Deemed to Reject |
| 6 | Interests | Impaired | Deemed to Reject |

-31-

4.2.    Treatment of Claims and Interests

    4.2.1.    Class 1 – Other Priority Claims

        (a)    *Classification*:  Class 1 consists of all Other Priority Claims.

        (b)    *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, in full and final satisfaction, settlement and release of and in exchange for its Allowed Other Priority Claim, each Holder of such Allowed Other Priority Claim shall be paid in full in Cash on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date on which such Other Priority Claim becomes Allowed and (iii) such other date as may be ordered by the Bankruptcy Court, or otherwise receive treatment consistent with the provisions of section 1129 of the Bankruptcy Code.

        (c)    *Voting*:  Claims in Class 1 are Unimpaired.  Each Holder of an Other Priority Claim is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  No Holder of Other Priority Claims is entitled to vote to accept or reject the Plan.

    4.2.2.    Class 2 – Secured Claims

        (a)    *Classification*:  Class 2 consists of all Secured Claims.

        (b)    *Treatment*:  Except to the extent that a Holder of an Allowed Secured Claim agrees to less favorable treatment, and in full and final satisfaction, settlement and release of and in exchange for its Allowed Secured Claim, each Holder of such Allowed Secured Claim shall be paid in full in Cash on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date on which such Secured Claim becomes Allowed and (iii) such other date as may be ordered by the Bankruptcy Court, or otherwise receive treatment consistent with the provisions of section 1129 of the Bankruptcy Code.

        (c)    *Voting*:  Claims in Class 2 are Unimpaired.  Each Holder of a Secured Claim is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  No Holder of Secured Claims is entitled to vote to accept or reject the Plan.

    4.2.3.    Class 3A – Water Provider Claims

        (a)    *Classification*:  Class 3A consists of all Water Provider Claims against the Debtor.

(b)    *Treatment*:  As of the Effective Date, all Water Provider Claims against the Debtor shall automatically and, without further act, deed, or court order, be channeled exclusively to, and all of the Debtor's liability for such Claims, shall be incurred in full and assumed by the Primary AFFF Settlement Trust.  Subject to the Settlement Trust Documents, each Holder of an Allowed Water Provider Claim against the Debtor shall be entitled to receive its Pro Rata share of the Distributable Value of the Water Provider Reserve Fund with all other Allowed Water Provider Claims.  Holders of Allowed Water Provider Claims against the Debtor shall not receive any payment from the Primary AFFF Settlement Trust unless and until such Claims are resolved in accordance with the Settlement Trust Documents, including the TDPs applicable to Water Provider Claims.  The terms, provisions and procedures set forth in the TDPs applicable to Water Provider Claims shall establish the sole method by which Water Provider Claims against the Debtor will be submitted, processed, liquidated and, if applicable, paid.  The sole recourse of any Holder of a Water Provider Claim on account of its Water Provider Claim against the Debtor shall be to the Primary AFFF Settlement Trust.

(c)    *Voting*:  Claims in Class 3A are Impaired and each Holder of a Water Provider Claim against the Debtor is entitled to vote to accept or reject the Plan.

### 4.2.4.  Class 3B – Airport Claims

(a)    *Classification*:  Class 3B consists of all Airport Claims against the Debtor.

(b)    *Treatment*:  As of the Effective Date, all Airport Claims against the Debtor shall automatically and, without further act, deed, or court order, be channeled exclusively to, and all of the Debtor's liability for such Claims, shall be incurred in full and assumed by the Primary AFFF Settlement Trust.  Subject to the Settlement Trust Documents, each Holder of an Allowed Airport Claim against the Debtor shall be entitled to receive its Pro Rata share of the Distributable Value of the Airport Reserve Fund with all other Allowed Airport Claims.  Holders of Allowed Airport Claims against the Debtor shall not receive any payment from the Primary AFFF Settlement Trust unless and until such Claims are resolved in accordance with the Settlement Trust Documents, including the TDPs applicable to Airport Claims.  The terms, provisions and procedures set forth in the TDPs applicable to Airport Claims shall establish the sole method by which Airport Claims against the Debtor will be submitted, processed, liquidated and, if applicable, paid.  The sole recourse of any Holder of an Airport Claim on

-33-

account of its Airport Claim against the Debtor shall be to the Primary AFFF Settlement Trust.

(c)   *Voting*:  Claims in Class 3B are Impaired and each Holder of an Airport Claim against the Debtor is entitled to vote to accept or reject the Plan.

### 4.2.5.   Class 3C – Sovereign State Claims

(a)   *Classification*:  Class 3C consists of all Sovereign State Claims against the Debtor.

(b)   *Treatment*:  As of the Effective Date, all Sovereign State Claims against the Debtor shall automatically and, without further act, deed, or court order, be channeled exclusively to, and all of the Debtor's liability for such Claims, shall be incurred in full and assumed by the Primary AFFF Settlement Trust.  Each Holder of an Allowed Sovereign State Claim against the Debtor shall be entitled to receive a distribution from the Sovereign State AFFF Settlement Trust in accordance with the terms and conditions of the Settlement Trust Documents.  Holders of Allowed Sovereign State Claims against the Debtor shall not receive any payment from the Sovereign State AFFF Settlement Trust unless and until such Claims are resolved in accordance with the Settlement Trust Documents, including the TDPs applicable to Sovereign State Claims.  The terms, provisions and procedures set forth in the TDPs applicable to Sovereign State Claims shall establish the sole method by which Sovereign State Claims against the Debtor will be submitted, processed, liquidated and, if applicable, paid.  The sole recourse of any Holder of a Sovereign State Claim on account of its Sovereign State Claim against the Debtor shall be to the Sovereign State AFFF Settlement Trust.

(c)   *Voting*:  Claims in Class 3C are Impaired and each Holder of a Sovereign State Claim against the Debtor is entitled to vote to accept or reject the Plan.

### 4.2.6.   Class 3D – Property Damage Claims

(a)   *Classification*:  Class 3D consists of all Property Damage Claims against the Debtor.

(b)   *Treatment*:  As of the Effective Date, all Property Damage Claims against the Debtor shall automatically and, without further act, deed, or court order, be channeled exclusively to, and all of the Debtor's liability for such Claims, shall be incurred in full and assumed by the Primary AFFF Settlement Trust.  Subject to the Settlement Trust Documents, each Holder of an Allowed Property

-34-

Damage Claim against the Debtor shall be entitled to receive its Pro Rata share of the Distributable Value of the Property Damage Reserve Fund with all other Allowed Property Damage Claims. Holders of Allowed Property Damage Claims against the Debtor shall not receive any payment from the Primary AFFF Settlement Trust unless and until such Claims are resolved in accordance with the Settlement Trust Documents, including the TDPs applicable to Property Damage Claims. The terms, provisions and procedures set forth in the TDPs applicable to Property Damage Claims shall establish the sole method by which Property Damage Claims against the Debtor will be submitted, processed, liquidated and, if applicable, paid. The sole recourse of any Holder of a Property Damage Claim on account of its Property Damage Claim against the Debtor shall be to the Primary AFFF Settlement Trust.

(c)     *Voting*: Claims in Class 3D are Impaired and each Holder of an Property Damage Claim against the Debtor is entitled to vote to accept or reject the Plan.

4.2.7.   Class 3E – Personal Injury Claims

(a)     *Classification*: Class 3E consists of all Personal Injury Claims against the Debtor.

(b)     *Treatment*: As of the Effective Date, all Personal Injury Claims against the Debtor shall automatically and, without further act, deed, or court order, be channeled exclusively to, and all of the Debtor's liability for such Claims, shall be incurred in full and assumed by the Primary AFFF Settlement Trust. Subject to the Settlement Trust Documents, each Holder of an Allowed Current Personal Injury Claim against the Debtor shall be entitled to receive its Pro Rata share of the Distributable Value of the PI Reserve Fund with all other Allowed Current Personal Injury Claims and each Holder of an Allowed Future Personal Injury Claim against the Debtor shall be entitled to receive its Pro Rata share of the Distributable Value of the Future PI Reserve Fund with all other Allowed Future Personal Injury Claims. Holders of Allowed Personal Injury Claims against the Debtor shall not receive any payment from the Primary AFFF Settlement Trust unless and until such Claims are resolved in accordance with the Settlement Trust Documents, including the TDPs applicable to Personal Injury Claims. The terms, provisions and procedures set forth in the TDPs applicable to Personal Injury Claims shall establish the sole method by which Personal Injury Claims against the Debtor will be submitted, processed, liquidated and, if applicable, paid. The sole recourse of any Holder of a Personal

-35-

Injury Claim on account of its Personal Injury Claim against the Debtor shall be to the Primary AFFF Settlement Trust.

(c)   *Voting*:  Claims in Class 3E are Impaired and each Holder of a Personal Injury Claim against the Debtor is entitled to vote to accept or reject the Plan.

4.2.8.   Class 3F – Sovereign Tribe Claims

(a)   *Classification*:  Class 3F consists of all Sovereign Tribe Claims against the Debtor.

(b)   *Treatment*:  As of the Effective Date, all Sovereign Tribe Claims against the Debtor shall automatically and, without further act, deed, or court order, be channeled exclusively to, and all of the Debtor's liability for such Claims, shall be incurred in full and assumed by the Primary AFFF Settlement Trust.  Each Holder of a Sovereign Tribe Claim against the Debtor shall be entitled to receive a distribution from the Distributable Value of the Sovereign Tribe Reserve Fund in accordance with the terms and conditions of the Settlement Trust Documents.  Holders of Allowed Sovereign Tribe Claims against the Debtor shall not receive any payment from the Primary AFFF Settlement Trust unless and until such Claims are resolved in accordance with the Settlement Trust Documents, including the TDPs applicable to Sovereign Tribe Claims.  The terms, provisions and procedures set forth in the TDPs applicable to Sovereign Tribe Claims shall establish the sole method by which Sovereign Tribe Claims against the Debtor will be submitted, processed, liquidated and, if applicable, paid.  The sole recourse of any Holder of a Sovereign Tribe Claim on account of its Sovereign Tribe Claim against the Debtor shall be to the Primary AFFF Settlement Trust.

(c)   *Voting*:  Claims in Class 3F are Impaired and each Holder of a Sovereign Tribe Claim against the Debtor is entitled to vote to accept or reject the Plan.

4.2.9.   Class 3G – Business Loss Claims

(a)   *Classification*:  Class 3G consists of all Business Loss Claims against the Debtor.

(b)   *Treatment*:  As of the Effective Date, all Business Loss Claims against the Debtor shall automatically and, without further act, deed, or court order, be channeled exclusively to, and all of the Debtor's liability for such Claims, shall be incurred in full and assumed by the Primary AFFF Settlement Trust.  Subject to the Settlement Trust Documents, each Holder of a Business Loss

-36-

Claim against the Debtor shall be entitled to receive its Pro Rata share of the Distributable Value of the Business Loss Reserve Fund with all other Allowed Business Loss Claims. Holders of Allowed Business Loss Claims against the Debtor shall not receive any payment from the Primary AFFF Settlement Trust unless and until such Claims are resolved in accordance with the Settlement Trust Documents, including the TDPs applicable to Business Loss Claims. The terms, provisions and procedures set forth in the TDPs applicable to Business Loss Claims shall establish the sole method by which Business Loss Claims against the Debtor will be submitted, processed, liquidated and, if applicable, paid. The sole recourse of any Holder of a Business Loss Claim on account of its Business Loss Claim against the Debtor shall be to the Primary AFFF Settlement Trust.

(c)     *Voting*: Claims in Class 3G are Impaired and each Holder of a Business Loss Claim against the Debtor is entitled to vote to accept or reject the Plan.

4.2.10.   Class 3H – Fire Training Facility Claims

(a)     *Classification*: Class 3H consists of all Fire Training Facility Claims against the Debtor.

(b)     *Treatment*: As of the Effective Date, all Fire Training Facility Claims against the Debtor shall automatically and, without further act, deed, or court order, be channeled exclusively to, and all of the Debtor's liability for such Claims, shall be incurred in full and assumed by the Primary AFFF Settlement Trust. Subject to the Settlement Trust Documents, each Holder of a Fire Training Facility Claim against the Debtor shall be entitled to receive its Pro Rata share of the Distributable Value of the Fire Training Facility Reserve Fund with all other Allowed Fire Training Facility Claims. Holders of Allowed Fire Training Facility Claims against the Debtor shall not receive any payment from the Primary AFFF Settlement Trust unless and until such Claims are resolved in accordance with the Settlement Trust Documents, including the TDPs applicable to Fire Training Facility Claims. The terms, provisions and procedures set forth in the TDPs applicable to Fire Training Facility Claims shall establish the sole method by which Fire Training Facility Claims against the Debtor will be submitted, processed, liquidated and, if applicable, paid. The sole recourse of any Holder of a Fire Training Facility Claim on account of its Fire Training Facility Claim against the Debtor shall be to the Primary AFFF Settlement Trust.

-37-

(c)    *Voting*:  Claims in Class 3H are Impaired and each Holder of a Fire Training Facility Claim against the Debtor is entitled to vote to accept or reject the Plan.

4.2.11.   Class 3I – Landfill Claims

(a)    *Classification*:  Class 3I consists of all Landfill Claims against the Debtor.

(b)    *Treatment*:  As of the Effective Date, all Landfill Claims against the Debtor shall automatically and, without further act, deed, or court order, be channeled exclusively to, and all of the Debtor's liability for such Claims, shall be incurred in full and assumed by the Primary AFFF Settlement Trust.  Subject to the Settlement Trust Documents, each Holder of a Landfill Claim against the Debtor shall be entitled to receive its Pro Rata share of the Distributable Value of the Landfill Reserve Fund with all other Allowed Landfill Claims.  Holders of Allowed Landfill Claims against the Debtor shall not receive any payment from the Primary AFFF Settlement Trust unless and until such Claims are resolved in accordance with the Settlement Trust Documents, including the TDPs applicable to Landfill Claims.  The terms, provisions and procedures set forth in the TDPs applicable to Landfill Claims shall establish the sole method by which Landfill Claims against the Debtor will be submitted, processed, liquidated and, if applicable, paid.  The sole recourse of any Holder of a Landfill Claim on account of its Landfill Claim against the Debtor shall be to the Primary AFFF Settlement Trust.

(c)    *Voting*:  Claims in Class 3I are Impaired and each Holder of a Landfill Claim against the Debtor is entitled to vote to accept or reject the Plan.

4.2.12.   Class 3J – Stormwater Claims

(a)    *Classification*:  Class 3J consists of all Stormwater Claims against the Debtor.

(b)    *Treatment*:  As of the Effective Date, all Stormwater Claims against the Debtor shall automatically and, without further act, deed, or court order, be channeled exclusively to, and all of the Debtor's liability for such Claims, shall be incurred in full and assumed by the Primary AFFF Settlement Trust.  Subject to the Settlement Trust Documents, each Holder of a Stormwater Claim against the Debtor shall be entitled to receive its Pro Rata share of the Distributable Value of the Stormwater Reserve Fund with all other Allowed Stormwater Claims.  Holders of Allowed

-38-

Stormwater Claims against the Debtor shall not receive any payment from the Primary AFFF Settlement Trust unless and until such Claims are resolved in accordance with the Settlement Trust Documents, including the TDPs applicable to Stormwater Claims. The terms, provisions and procedures set forth in the TDPs applicable to Stormwater Claims shall establish the sole method by which Stormwater Claims against the Debtor will be submitted, processed, liquidated and, if applicable, paid.  The sole recourse of any Holder of a Stormwater Claim on account of its Stormwater Claim against the Debtor shall be to the Primary AFFF Settlement Trust.

(c)    *Voting*: Claims in Class 3J are Impaired and each Holder of a Stormwater Claim against the Debtor is entitled to vote to accept or reject the Plan.

4.2.13.   Class 3K – Wastewater Claims

(a)    *Classification*:  Class 3K consists of all Wastewater Claims against the Debtor.

(b)    *Treatment*:  As of the Effective Date, all Wastewater Claims against the Debtor shall automatically and, without further act, deed, or court order, be channeled exclusively to, and all of the Debtor's liability for such Claims, shall be incurred in full and assumed by the Primary AFFF Settlement Trust.  Subject to the Settlement Trust Documents, each Holder of a Wastewater Claim against the Debtor shall be entitled to receive its Pro Rata share of the Distributable Value of the Wastewater Reserve Fund with all other Allowed Wastewater Claims.  Holders of Allowed Wastewater Claims against the Debtor shall not receive any payment from the Primary AFFF Settlement Trust unless and until such Claims are resolved in accordance with the Settlement Trust Documents, including the TDPs applicable to Wastewater Claims. The terms, provisions and procedures set forth in the TDPs applicable to Wastewater Claims shall establish the sole method by which Wastewater Claims against the Debtor will be submitted, processed, liquidated and, if applicable, paid.  The sole recourse of any Holder of a Wastewater Claim on account of its Wastewater Claim against the Debtor shall be to the Primary AFFF Settlement Trust.

(c)    *Voting*: Claims in Class 3K are Impaired and each Holder of a Wastewater Claim against the Debtor is entitled to vote to accept or reject the Plan.

4.2.14.   Class 4 – General Unsecured Claims

-39-

(a)     *Classification*:  Class 4 consists of all General Unsecured Claims.

(b)     *Treatment*:  In full and final satisfaction, settlement, release and discharge of an Allowed General Unsecured Claim, subject to the GUC Liquidating Trust Agreement, each Holder of a General Unsecured Claim shall be entitled to receive its Pro Rata share of the Distributable Value of the GUC Liquidating Trust Assets with all other Allowed Class 4 Claims.  The sole recourse of any Holder of a General Unsecured Claim on account of its General Unsecured Claim shall be to the GUC Liquidating Trust.

(c)     *Voting*:  Claims in Class 4 are Impaired and each Holder of a General Unsecured Claim is entitled to vote to accept or reject the Plan.

4.2.15.   Class 5 – Affiliate Claims

(a)     *Classification*:  Class 5 consists of all Affiliate Claims.

(b)     *Treatment*:  All Affiliate Claims shall be canceled, released or extinguished, and the Holders thereof shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such Claim under the Plan.

(c)     *Voting*:  Claims in Class 5 are Impaired.  Each Holder of an Affiliate Claim is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  No Holder of an Affiliate Claim is entitled to vote to accept or reject the Plan.

4.2.16.   Class 6 – Interests

(a)     *Classification*:  Class 6 consists of all Interests.

(b)     *Treatment*:  No Holder of an Interest shall receive any Distributions on account of its Interest.  On and after the Effective Date, all Interests in the Debtor shall be canceled and shall be of no further force and effect, whether surrendered for cancelation or otherwise.

(c)     *Voting*:  Claims in Class 6 are Impaired.  Each Holder of an Interest is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  No Holder of an Interest is entitled to vote to accept or reject the Plan.

4.3.    <u>Special Provision Governing Unimpaired Claims</u>

Except as otherwise provided herein, the Plan shall not affect the Debtor's or the Liquidating Administrators' rights in respect of any Unimpaired Claims, including legal and equitable defenses or setoff or recoupment rights with respect thereto.

4.4.    <u>Acceptance by Impaired Classes</u>

An Impaired Class of Claims shall have accepted the Plan if: (i) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Claims entitled to vote actually voting in such Class have voted to accept the Plan; and (ii) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Claims entitled to vote actually voting in such Class have voted to accept the Plan.

4.5.    <u>Elimination of Vacant Classes</u>

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or an Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purpose of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

4.6.    <u>Voting Classes; Presumed Acceptance by Non-Voting Classes</u>

If a Class of Claims or Interests is eligible to vote and no Holder of Claims or Interests, as applicable, in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by such Class.  Classes 1 and 2 are deemed to have accepted the Plan and are not entitled to vote.

4.7.    <u>Confirmation Pursuant to Sections 1129(a) and 1129(b) of the Bankruptcy Code</u>

For purposes of Confirmation, section 1129(a)(10) of the Bankruptcy Code shall be satisfied if any one of Classes 3A, 3B, 3C, 3D, 3E, 3F, 3G, 3H, 3I, 3J, 3K or 4 accepts the Plan.  The Debtor shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class or Classes of Claims and Interests.  Classes 5 and 6 are deemed to reject the Plan.

-41-

**5.    IMPLEMENTATION OF THE PLAN**

5.1.    Operations Between the Confirmation Date and Effective Date

During the period from the Confirmation Date through and until the Effective Date, the Debtor may continue to operate as a debtor-in-possession, subject to all applicable orders of the Bankruptcy Court.

5.2.    Compromise and Settlement

In consideration for the classification, distributions, releases and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a set of integrated, good-faith compromises and settlements of all Claims, Interests, Causes of Action and controversies resolved pursuant to the Plan.  The Plan shall be deemed a motion by the Debtor to approve such compromises and settlements (including but not limited to the Estate Claims Settlement and the Insurance Assignment) pursuant to Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromises and settlements under Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code, as well as a finding by the Bankruptcy Court that such integrated compromises or settlements are in the best interest of the Debtor, the Estate and Holders of Claims and Interests, and are fair, equitable and within the range of reasonableness.

5.3.    Plan Transactions

On or prior to the Effective Date or as soon as reasonably practicable thereafter, the Debtor or the Liquidating Administrators, as applicable, shall, consistent with the terms of the Plan Support Agreement and subject to the applicable consent and approval rights thereunder, take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Plan Transactions (including any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan), including, but not limited to, (a) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan, and (b) all other actions that the Debtor or the Liquidating Administrators, as applicable, determine are necessary or appropriate in connection with the Plan Transactions and Definitive Documents.

The Confirmation Order shall and shall be deemed to, pursuant to both section 1123 and section 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Plan Transactions (including any transaction described in, approved by, contemplated by or necessary to effectuate the Plan) and in the Definitive Documents.

5.4.    Estate Claims Settlement

The Plan shall be deemed a motion to approve the Estate Claims Settlement Agreement pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall

-42-

constitute the Bankruptcy Court's approval of the Estate Claims Settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as findings by the Bankruptcy Court that the Estate Claims Settlement constitutes a good faith settlement that bars any Cause of Action released or barred thereunder, is in the best interests of the Debtor, its Estate and Holders of Claims and Interests, and is fair, equitable and within the range of reasonableness.

5.5.    Settlement Trusts

5.5.1.    Creation of the Settlement Trusts.  On or before the Effective Date, the Settlement Trust Agreements shall be executed, and all other necessary steps shall be taken to create the Settlement Trusts.  On the Effective Date, the Primary AFFF Settlement Trust shall be automatically appointed as a representative of the Debtor's Estate pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code.

From and after the Effective Date, the Primary AFFF Settlement Trust shall succeed to all rights and powers of the Debtor and its Estate with respect to all Settlement Trust Retained Causes of Action and Insurance Actions.  The Primary AFFF Settlement Trust shall be substituted and will replace the Debtor, its Estate and the Committee in all such Settlement Trust Retained Causes of Action and Insurance Actions, whether or not such claims are pending in filed litigation.

5.5.2.    Purpose of the Settlement Trusts.  The purpose of the Primary AFFF Settlement Trust shall be to (i) hold, manage, protect and monetize the Settlement Trust Assets and (ii) administer, process and satisfy all Channeled AFFF Claims (other than Sovereign State Claims), which for the avoidance of doubt shall be submitted exclusively to the Primary AFFF Settlement Trust and satisfied by the Primary AFFF Settlement Trust in accordance with the terms, provisions and procedures of the TDPs.  Subject to the Insurance Cooperation Agreement, the Primary AFFF Settlement Trust shall have the exclusive power and authority to, among other things, in accordance with the Settlement Trust Documents and Plan Documents: (a) dispose of Settlement Trust Assets; (b) in its capacity as disbursing agent, transfer the GUC Liquidating Trust Assets to the GUC Liquidating Trust; (c) make Distributions to the Sovereign State AFFF Settlement Trust to the extent and in accordance with the terms set forth in the Settlement Trust Documents; (d) commence, prosecute, and settle all Settlement Trust Retained Causes of Action and Insurance Actions; and (e) perform all actions and execute all agreements, instruments and other documents necessary to effectuate the purpose of the Primary AFFF Settlement Trust and carry out the provisions of the Plan relating to the Primary AFFF Settlement Trust.  For the avoidance of doubt, no Person that receives a release under the Estate Claims Settlement or the New National Foam Release shall be a beneficiary of the Settlement Trusts or be entitled to receive a Distribution on account of a Claim from the Settlement Trusts, including for indemnification, contribution or otherwise.  In furtherance of the foregoing and unless otherwise expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan, the Primary AFFF Settlement Trust shall have all defenses, cross-claims, offsets and recoupments, as well as rights of indemnification, contribution, subrogation and similar rights regarding all Channeled AFFF Claims other than Sovereign State Claims that the Debtor has or would have had under applicable law.

The purpose of the Sovereign State AFFF Settlement Trust shall be as set forth in the Sovereign State AFFF Settlement Trust Agreement, including to administer, process and satisfy Sovereign State Claims, which for the avoidance of doubt shall be submitted exclusively to, and satisfied by, the Sovereign State AFFF Settlement Trust in accordance with the terms, provisions and procedures of the TDPs.  In accordance with the Plan Documents and Settlement Trust Documents, the Sovereign State AFFF Settlement Trust shall have the exclusive power and authority to administer, process and satisfy Sovereign State Claims and make Distributions on account of Sovereign State Claims.  In furtherance of the foregoing and unless otherwise expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan, the Sovereign State AFFF Settlement Trust shall have all defenses, cross-claims, offsets and recoupments, as well as rights of indemnification, contribution, subrogation and similar rights regarding all Sovereign State Claims that the Debtor has or would have had under applicable law.  The Sovereign State AFFF Settlement Trust shall be entitled to Distributions from the Primary AFFF Settlement Trust to the extent and in accordance with the Settlement Trust Documents.

The purpose of the GUC Liquidating Trust shall be as set forth in the GUC Liquidating Trust Agreement, including to administer, process and satisfy General Unsecured Claims, which for the avoidance of doubt shall be submitted exclusively to, and satisfied by, the GUC Liquidating Trust in accordance with the Plan and GUC Liquidating Trust Agreement.  In accordance with the Plan Documents and Settlement Trust Documents, the GUC Liquidating Trust shall have the exclusive power and authority to administer, process and satisfy General Unsecured Claims and make Distributions on account of General Unsecured Claims.  In furtherance of the foregoing and unless otherwise expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan, the GUC Liquidating Trust shall have all defenses, cross-claims, offsets and recoupments, as well as rights of indemnification, contribution, subrogation and similar rights regarding all General Unsecured Claims that the Debtor has or would have had under applicable law.  The GUC Liquidating Trust shall be entitled to receive the GUC Liquidating Trust Assets from the Primary AFFF Settlement Trust in accordance with the terms set forth in the Settlement Trust Documents.

On the Effective Date, the Settlement Trust Documents, including the TDPs, shall become effective.

5.5.3.    Funding of the Settlement Trusts.  On the Effective Date, the Primary AFFF Settlement Trust shall be funded with the Settlement Trust Assets.  From and after the Effective Date, the Primary AFFF Settlement Trust shall (i) in its capacity as disbursing agent, transfer the GUC Liquidating Trust Assets to the GUC Liquidating Trust, *provided* that, any residual value in the GUC Liquidating Trust Assets after satisfaction of all General Unsecured Claims in accordance with the Plan and Settlement Trust Documents shall be re-allocated to the AFFF Settlement Trust Assets and be subject to the terms of the Primary AFFF Settlement Trust Agreement; and (ii) make Distributions to the Sovereign State AFFF Settlement Trust to the extent and in accordance with the terms set forth in the Settlement Trust Documents.

5.5.4.    Allocation of AFFF Settlement Trust Assets.  The Primary AFFF Settlement Trust shall allocate the AFFF Settlement Trust Assets, and any residual value re-

-44-

allocated to the AFFF Settlement Trust Assets from the GUC Liquidating Trust Assets, to the Reserve Funds in accordance with the following allocation:

| | |
|---|---|
| **State Trust Reserve Fund** | 30% |
| **Water Provider Reserve Fund** | 30% |
| **Airport Reserve Fund** | 9.2% |
| **Property Damage Reserve Fund** | 2% |
| **PI Reserve Fund** | 22% |
| **Sovereign Tribe Reserve Fund** | 1% |
| **Business Loss Reserve Fund** | 1% |
| **Fire Training Facility Reserve Fund** | 3.15% |
| **Landfill Reserve Fund** | 0.2% |
| **Stormwater Reserve Fund** | 0.2% |
| **Wastewater Reserve Fund** | 1.25% |
| **Total:** | 100% |

5.5.5.   Appointment of Settlement Trustees.  The Primary AFFF Settlement Trust shall be governed by the Primary AFFF Settlement Trustee.  The powers and duties of the Primary AFFF Settlement Trustee shall include, but shall not be limited to, those powers, duties and responsibilities vested in the Primary AFFF Settlement Trustee pursuant to the terms of the Primary AFFF Settlement Trust Agreement, and shall include the authority to: (a) dispose of Settlement Trust Assets; (b) make Distributions to the Sovereign State AFFF Settlement Trust in accordance with and pursuant to the Settlement Trust Documents; (c) cause the transfer, in the Primary AFFF Settlement Trust's capacity as disbursing agent, of the GUC Liquidating Trust Assets to the GUC Liquidating Trust; (d) carry out the provisions of the Plan relating to the Primary AFFF Settlement Trust, including commencing, prosecuting, and settling all Settlement Trust Retained Causes of Action and Insurance Actions; and (e) perform all actions and execute all agreements, instruments and other documents necessary to effectuate the purpose of the Primary AFFF Settlement Trust.  The preceding list of powers, duties, and responsibilities of the Primary AFFF Settlement Trustee is non-exclusive and  the powers, rights and responsibilities of the Primary AFFF Settlement Trustee shall be further specified in the Primary AFFF Settlement Trust Agreement.

The Sovereign State AFFF Settlement Trust shall be governed by one or more trustees as may be appointed from time to time in accordance with the Settlement Trust Documents (the "Sovereign State AFFF Settlement Trustee").  The GUC Liquidating Trust shall

-45-

be governed by one trustee as may be appointed from time to time in accordance with the Settlement Trust Documents (the "GUC Liquidating Trustee"). The Sovereign State AFFF Settlement Trustee and the GUC Liquidating Trustee shall have the powers and duties conferred to them pursuant to the Settlement Trust Documents.

5.5.6. Trust Advisory Committee. On the Effective Date and pursuant to the Settlement Trust Documents, the Trust Advisory Committee shall be established. The Trust Advisory Committee shall have the authority to oversee, review and guide the activities and performance of the Primary AFFF Settlement Trustee, in accordance with the Settlement Trust Documents. The members of the Trust Advisory Committee shall not be entitled to compensation for their services but will be entitled to reimbursement from the Primary AFFF Settlement Trust for reasonable and documented ordinary and customary out-of-pocket expenses in accordance with the Settlement Trust Documents.

5.5.7. TDPs. On the Effective Date, the Settlement Trusts shall implement the TDPs, including the Point Values, in accordance with the terms of the Settlement Trust Documents. On or after the Effective Date, the Primary AFFF Settlement Trustee and Sovereign State AFFF Settlement Trustee shall have the authority to administer, amend, supplement, or modify the applicable TDPs in a manner consistent with the Plan and in accordance with the terms thereof and the Settlement Trust Documents. The TDPs shall be binding on all Holders of Channeled AFFF Claims. Allowed Claims under the TDPs shall be solely enforceable against the applicable Settlement Trust. The Allowed amount of any Channeled AFFF Claim shall be the amount determined under the TDPs, unless such Channeled AFFF Claim is otherwise Allowed pursuant to Article 2.1.1921. Allowed Channeled AFFF Claims under the TDPs shall be legally enforceable against the Primary AFFF Settlement Trust. The amount of any installment payments, initial payments, or payments based on payment percentages established under the TDPs, as determined or as actually paid by the Primary AFFF Settlement Trust or Sovereign State AFFF Settlement Trust, as applicable, are not, as such, the equivalent of any Claimant's Allowed amount of its Channeled AFFF Claim. For the avoidance of doubt, nothing herein determines whether any Insurance Company is obligated to pay the amount of any Allowed Channeled AFFF Claim as determined under the TDPs.

Each Channeled AFFF Claim shall be classified exclusively in one Class. Each Holder of a Channeled AFFF Claim shall have its Channeled AFFF Claim administered and, if Allowed, satisfied, exclusively pursuant to the TDPs for such Class. A Holder of a Channeled AFFF Claim shall not be entitled to recovery on account of such Channeled AFFF Claim, if Allowed, under the TDPs for more than one Class. To the extent a Holder asserts multiple Channeled AFFF Claims, each such Channeled AFFF Claim shall be administered and, if Allowed, satisfied pursuant to the TDPs for the applicable Class of each such Channeled AFFF Claim.

The Allowance of Claims under the TDPs shall not determine, and shall not be used to determine, in any respect the liability of a Released Party for any Independent AFFF Cause of Action, which liability shall be determined through litigation and/or settlement in the tort system separate and apart from the TDPs in all respects.

-46-

5.5.8.    Privileged Information.  On the Effective Date, any attorney-client privilege, work-product privilege, common-interest communications with Insurance Companies, protection or privilege granted by joint defense, common interest, and/or other privilege or immunity of the Debtor relating, in whole or in part, to the Settlement Trust Retained Causes of Action or Insurance Actions shall be irrevocably transferred to and vested in the Primary AFFF Settlement Trust subject to the other terms of this Article 5.5.8.  Any such protections, privileges or immunities that are joint with Carrier shall vest with Carrier on the Effective Date.  All other such protections, privileges or immunities shall vest in the Liquidating Estate.  The transfers or assignment of any privileges or privileged information to the Primary AFFF Settlement Trust in accordance with the foregoing shall vest solely in the Primary AFFF Settlement Trust and not with any other Person, including the Trust Advisory Committee, any committee or subcomponent of the Primary AFFF Settlement Trust or counsel or other professionals who have been engaged by, represent, or have represented any Holder of a Claim that is channeled to the Primary AFFF Settlement Trust.  For the avoidance of doubt, the AFFF Data Transfer shall not waive or be deemed to waive any applicable privilege, doctrine or other protection.  The Primary AFFF Settlement Trust shall  have no authority to waive any applicable privilege, doctrine or other protection on behalf of another Person, nor shall any waiver of any applicable privilege, doctrine or other protection by the conduct of the Primary AFFF Settlement Trust be construed to apply to another Person.  All factual information, documents, opinions, strategies, theories, analyses, research, work product or other materials exchanged or communicated to the Debtor prior to the Effective Date by whatever means in connection with the furtherance of common interest in investigations, potential or pending litigation, or coordination with respect to court proceedings shall remain strictly confidential, privileged and subject to any and all common interest protections and shall not be disclosed to any party or entity without the prior written consent of the party that originally held or still holds the privilege or protection.

Notwithstanding the foregoing, nothing in this Article 5.5.8 or the Plan shall require Carrier or permit the Debtor to provide any materials or information subject to any privilege or immunity owned by Carrier in whole or in part, including any materials or information subject to any privilege or immunity jointly owned with the Debtor, to the Primary AFFF Settlement Trust, and the AFFF Data Transfer shall not encompass any such materials or information, absent Carrier's consent or a court order determining that it is necessary for the Primary AFFF Settlement Trust to obtain the benefit of the Insurance Assignment; *provided* that nothing herein shall divest the Committee of any protections or rights resulting from any common-interest privilege applicable to materials developed jointly by, or communications between, the Committee, on the one hand, and Carrier or the Debtor, on the other, from and after October 18, 2024 (or such other date that any such common-interest privilege became or becomes applicable with respect to a particular subject matter), and any such protection or rights of the Committee (but not those of the Debtor or Carrier) shall be vested in the Primary AFFF Settlement Trust as of the Effective Date.  For the avoidance of doubt, all of the foregoing is subject to paragraph (c) of the "Insurance Cooperation Provision" of Exhibit A-1 of the Plan Support Agreement.

5.5.9.    Institution and Maintenance of Legal and Other Proceedings.  As of the Effective Date, the Primary AFFF Settlement Trust shall be empowered to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve all legal actions and other proceedings related to any asset, liability, or responsibility of the Primary AFFF Settlement

Trust, including Insurance Actions and the Settlement Trust Retained Causes of Action. Without limiting the foregoing, on and after the Effective Date, the Primary AFFF Settlement Trust shall be empowered to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve all such actions, in the name of the Debtor to the extent deemed necessary or appropriate by the Primary AFFF Settlement Trust. Furthermore, without limiting the foregoing, the Primary AFFF Settlement Trust shall be empowered to maintain, administer, preserve, or pursue Insurance Actions and Insurance Action Recoveries.

5.5.10.  <u>Primary AFFF Settlement Trust Discovery</u>. The Primary AFFF Settlement Trust is authorized pursuant to Bankruptcy Rule 2004 and/or other applicable discovery rules to seek discovery necessary to satisfy its obligations under the Plan and the Settlement Trust Documents. The authorization of any discovery request pursuant to this provision shall not be construed to deprive the target of such discovery request of any applicable privilege or immunity from discovery. The Primary AFFF Settlement Trust shall be able to take whatever steps are necessary to enforce such discovery obligations pursuant to Bankruptcy Rule 2004, Federal Rule of Civil Procedure 45, other court resolution processes, under bankruptcy law, and applicable non-bankruptcy law. Nothing herein shall abridge or affect the rights of the Primary AFFF Settlement Trust or the Primary AFFF Settlement Trustee to discovery in any proceeding or litigation brought by the Primary AFFF Settlement Trust or the Primary AFFF Settlement Trustee.

5.5.11.  <u>Insurance Matters</u>.

(a)     <u>Insurance Cooperation Agreement</u>. On the Effective Date, the Primary AFFF Settlement Trust shall enter into the Insurance Cooperation Agreement, pursuant to the terms of the Plan Support Agreement. The Insurance Cooperation Agreement and the Estate Claims Settlement Agreement shall be executed in reliance upon entry into both agreements, and that the rights and obligations under one agreement serve as consideration for the rights and obligations under the agreement.

(b)     <u>Insurance Assignment</u>. On the Effective Date, the Debtor shall transfer to the Primary AFFF Settlement Trust all of its rights in connection with (a) the Insurance Actions, (b) the Insurance Action Recoveries, (c) any Insurance Settlement Agreement, and (d) all other rights, claims, benefits, or Causes of Action it has with respect to the Insurance Policies (but not the policies themselves). On the Effective Date, subject to the terms of, the Insurance Cooperation Agreement, Carrier shall assign to the Primary AFFF Settlement Trust its rights in connection with (a) the Insurance Actions, (b) the Insurance Action Recoveries, (c) any Insurance Settlement Agreement, and (d) all other rights, claims, benefits, or Causes of Action it has with respect to the Insurance Policies (but not the policies themselves). On the Effective Date, the Primary AFFF Settlement Trust and Carrier shall have the rights and obligations with respect to the Insurance Actions, Insurance

-48-

Policies, and Insurance Policy Rights as set forth in the Insurance Cooperation Agreement. The Insurance Assignment shall include and be subject to the representations attested to by RTX (the "RTX Waiver"). The Primary AFFF Settlement Trust is subject to the restrictions and limitations on, and obligations of, Carrier and the Carrier Group as set forth in Section 5.1 of the 2020 Separation Agreement corresponding to the rights that Carrier assigns or transfers under the 2020 Separation Agreement, excepting only indemnification obligations which shall remain with Carrier, or as otherwise provided in the RTX Waiver.

5.5.12. <u>Other Insurance Company Claim Reduction</u>. If an Other Insurance Company obtains a final and non-appealable judicial determination or binding arbitration award in any Insurance Action, that it would have been entitled to recover a sum certain on its right, claim or cause of action against a Settling Insurance Company for contribution, subrogation, equitable subrogation, indemnification, allocation, reimbursement or offset relating to one or more Channeled AFFF Claims, or agrees to such entitlement to such sum certain, then the liability for such determination, award, or agreement shall be satisfied solely by the Primary AFFF Settlement Trust reducing or limiting any claim, cause of action or judgment it has against the Other Insurance Company for recovery on any Channeled AFFF Claim that gave rise to such right, claim or cause of action for contribution, subrogation, equitable subrogation, indemnification, allocation, reimbursement or offset. The Primary AFFF Settlement Trust shall not seek to enforce any judicial determination or binding arbitration award it has obtained against an Insurance Company that is seeking such reduction until the Primary AFFF Settlement Trust's judgment or award becomes final and non-appealable. Post-judgment interest shall not accrue with respect to the portion of any such claim that is so reduced by a final order as a result of a claim for contribution, subrogation, equitable subrogation, indemnification, allocation, reimbursement or offset relating to one or more Channeled AFFF Claims.

5.5.13. <u>Single Satisfaction</u>. Holders of AFFF Claims may not recover more than the Allowed amount of their AFFF Claims from the Released Parties and the Primary AFFF Settlement Trust or Sovereign State AFFF Settlement Trust. If a Holder of an AFFF Claim were to recover from the Released Parties and recover from the Primary AFFF Settlement Trust or Sovereign State AFFF Settlement Trust such that the Holder is in a position where they have recovered more than the Allowed amount of their AFFF Claim, then such Holder shall be required to return to the Primary AFFF Settlement Trust or Sovereign State AFFF Settlement Trust, as applicable, the portion of any recovery that causes such Holder's total recovery on account of such AFFF Claim to exceed the Allowed amount of such AFFF Claim. All defenses to liability are reserved by the Released Parties.

5.5.14. <u>Claim-Over Protections</u>. Subject to the terms of the Plan and consistent with applicable law, (a) the contributions made by the Contributing Parties to the Primary AFFF Settlement Trust shall be the sole payments the Released Parties shall make to address the Released Claims; (b) a Claim by the Holder of a Claim against a Party other than a Contributing Party arising out of a Released Claim shall not result in any additional payment by any Released Party; and (c) the Estate Claims Settlement meets the requirements of the Uniform Contribution Among Tortfeasors Act and any similar state or federal law or doctrine that reduces or

-49-

discharges a Released Party's liability to any other parties. To the extent that on or after the Effective Date, the Primary AFFF Settlement Trust settles any Cause of Action it has against any non-Released Party arising out of, relating to, or involving the Released Claims and provides a release to such non-Released Party, the Primary AFFF Settlement Trust shall include in that settlement a release from such non-Released Party in favor of the Released Parties substantially consistent with the releases provided by the parties providing releases under the Plan, including for National Foam AFFF Claims, subject to Article 5.5.13. Nothing herein prevents the Primary AFFF Settlement Trust or any Holder of a Claim from pursing litigation against a non-Released Party and collecting the full amount of any judgment. These protections shall not apply to Causes of Action brought by any Sovereign State.

       5.5.15. <u>Common Benefit Fund Assessments</u>. On the Effective Date, a Common Benefit Escrow shall be established by the Primary AFFF Settlement Trust and funded by a common benefit assessment for attorneys' fees of 8% and reasonable costs, subject to and in accordance with the AFFF MDL orders applicable to common benefit fees and costs, to be made by a reduction to each Distribution made by the Primary AFFF Settlement Trust to Holders of Claims directly administered by the Primary AFFF Settlement Trust. To the extent the Holder of an Allowed Claim directly administered by Primary AFFF Settlement Trust has retained counsel through a contingency fee arrangement, any contingency fees owed to such contingency counsel payable from the Distributions from the Primary AFFF Settlement Trust shall be reduced by the full amount payable under this Article 5.5.15. The amounts in the Common Benefit Escrow shall be held in escrow and distributed solely pursuant to an order of the MDL District Court approving common benefit fees and assessments in the AFFF MDL. For the avoidance of doubt, the Common Benefit Escrow shall not be funded from Distributions, payments or other transfers from the Primary AFFF Settlement Trust to the Sovereign State AFFF Settlement Trust or the GUC Liquidating Trust. This Article 5.5.15 is severable from the Plan if not approved by the Bankruptcy Court at the Confirmation Hearing and approval of this Article 5.5.15 by the Bankruptcy Court shall not be a requirement or condition to Confirmation of the Plan.

    5.6. <u>Liquidating Estate</u>

       5.6.1. <u>Purpose of the Liquidating Estate</u>. The purpose of the Liquidating Estate is to establish and distribute the Wind-Down Reserve to administer the wind-down and dissolution of the Liquidating Estate, with no objective to continue or engage in the conduct of a trade or business. From and after the Effective Date, the Liquidating Administrators shall be vested with all powers and authorities set forth in this Plan and the Liquidating Administrator Agreement, shall be deemed to have been appointed as the Estate's representatives pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, and shall have the duties of a trustee set forth in sections 704(a)(1), 704(a)(2) and 704(a)5) of the Bankruptcy Code.

       5.6.2. <u>Funding of Wind-Down Reserve</u>. The Wind-Down Reserve shall be funded in accordance with the Wind-Down Budget from the following sources: (a) all Remaining Estate Funds; (b) if the Remaining Estate Funds are exhausted, the Net Sale Proceeds in an amount necessary to fund the Wind-Down Budget, *provided* that, to the extent the Debtor or the Liquidating Estate withdraws any amounts from the Net Sale Proceeds pursuant to the foregoing, Carrier shall receive a dollar-for-dollar credit against the next due installment of the Guaranteed Cash Payment as and to the extent provided in the Estate Claims Settlement

-50-

Agreement; *provided*, further, that if the Effective Date and Estate Claims Settlement Effective Date do not occur, any amounts withdrawn by the Debtor from the Net Sale Proceeds shall be deducted from the Debtor's allocated portion of the Net Sale Proceeds (as to be determined by the Bankruptcy Court or pursuant to an agreement with Carrier subject to Bankruptcy Court approval); and (c) if the Remaining Estate Funds and Net Sale Proceeds are exhausted, a portion of the Guaranteed Cash Payment released on the Effective Date, and after the Effective Date, the remaining Settlement Trust Assets.

The Wind-Down Reserve shall be maintained independent of, and shall not provide funding for, the Settlement Trusts. Any funds remaining in the Wind-Down Reserve after payment of wind-down costs and expenses shall be transferred to Carrier upon completion of the wind-down of the Liquidating Estate, pursuant to the Estate Claims Settlement Agreement.

5.6.3.   Liquidating Administrators.

(a)   Liquidating Administrator Agreement.  The Liquidating Administrators shall be fiduciaries of the Liquidating Estate and shall be compensated and reimbursed for expenses as set forth in, and in accordance with, the Liquidating Administrator Agreement.

(b)   Powers and Duties of Liquidating Administrators.  The Liquidating Administrators shall have no duties until the occurrence of the Effective Date, and on and after the Effective Date shall be fiduciaries for the Liquidating Estate.  If this Plan is withdrawn or otherwise abandoned prior to the occurrence of the Effective Date, the Liquidating Administrator positions shall never be established. From and after the Effective Date, pursuant to the Wind-Down Budget and the terms and provisions of the Plan and Liquidating Administrator Agreement, the Liquidating Administrators shall be empowered and directed to: (a) take all steps and execute all instruments and documents necessary to make Distributions to Holders of Allowed Liquidating Estate Claims and to perform the duties assigned to the Liquidating Administrators under the Plan or the Liquidating Administrator Agreement; (b) comply with this Plan and the obligations hereunder; (c) employ, retain or replace professionals to represent them with respect to their responsibilities without the need for further Bankruptcy Court approval; (d) object to Liquidating Estate Claims as provided in this Plan, and prosecute such objections; (e) compromise and settle any issue or dispute regarding the amount, validity, priority, treatment or allowance of any Liquidating Estate Claim; (f) establish, replenish or release any reserves as provided in the Plan, as applicable; (g) exercise such other powers as may be vested in the Liquidating Administrators pursuant to this Plan, the Liquidating Administrator Agreement or any other order of the Bankruptcy Court, including the Confirmation Order, or otherwise act on behalf of the Liquidating Estate from and after the Effective Date; (h) file

-51-

applicable tax returns for the Debtor; (i) liquidate, receive, hold, invest, supervise and protect the Wind-Down Reserve; (j) promptly after completing the wind-down, take any actions necessary to voluntarily dissolve the Debtor or allow the applicable Secretary of State to involuntarily dissolve the Debtor; and (k) following the wind-down and dissolution of the Debtor, entry of a final decree in the Chapter 11 Case.

5.7.    Vesting of Assets

5.7.1.    Liquidating Estate Assets.  As of the Effective Date, all Remaining Estate Funds and all Liquidating Estate Retained Causes of Action shall vest in the Liquidating Estate free and clear of all Liens, Claims, charges or other encumbrances or interests to the extent permitted by section 1141 of the Bankruptcy Code.

5.7.2.    Settlement Trust Assets.  As of the Effective Date, the Settlement Trust Assets, including without limitation, the Settlement Trust Retained Causes of Action, and the Debtor's rights, title and interests to such Settlement Trust Assets, including without limitation the Settlement Trust Retained Causes of Action, shall vest in the Primary AFFF Settlement Trust free and clear of all Liens, Claims, charges or other encumbrances or interests to the extent permitted by section 1141 of the Bankruptcy Code.  In connection with the Confirmation of the Plan and prior to the Effective Date, the Debtor and the Committee shall cooperate in good faith in connection with the AFFF Data Transfer, including to determine a mutually agreeable process for effectuating the AFFF Data Transfer on the Effective Date.  Notwithstanding anything herein to the contrary, the transfer of the Settlement Trust Assets to the Primary AFFF Settlement Trust shall not diminish, and fully preserves, any defenses the Debtor or Liquidating Estate would have had if such Settlement Trust Assets had been retained by the Debtor or Liquidating Estate.  The Primary AFFF Settlement Trust and the Primary AFFF Settlement Trustee, as applicable, through their authorized agents or representatives, shall retain and may exclusively enforce the Settlement Trust Retained Causes of Action vested, transferred, or assigned to such entity.  The Primary AFFF Settlement Trust or the Primary AFFF Settlement Trustee, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Settlement Trust Retained Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.  For the avoidance of doubt, subject to the provisions of this Plan and the Insurance Cooperation Agreement, the Settlement Trust Assets held for Distribution pursuant to the Plan will be held by the applicable Settlement Trustee solely in trust for (i) with respect to the Primary AFFF Settlement Trust, Holders of Allowed Channeled AFFF Claims and the Sovereign State AFFF Settlement Trust, (ii) with respect to the Sovereign State AFFF Settlement Trust, Holders of Allowed Sovereign State Claims and (iii) with respect to the GUC Liquidating Trust, Holders of Allowed General Unsecured Claims, in each case in accordance with this Plan, and will not be deemed property of the Debtor or the Liquidating Estate.  For the avoidance of doubt, this Article 5.7.2 shall be subject in its entirety to the Insurance Cooperation Agreement.

5.8.    Insurance Provisions.

-52-

Nothing in the Plan shall limit the right of any Insurance Company to assert any defenses to coverage that it may have under applicable law, except for (a) any defense that the Insurance Assignment is invalid or unenforceable or otherwise breaches the terms of such coverage; and/or (b) any defense that (i) the drafting, proposing, confirmation, or consummation of the Plan or (ii) the discharge or release of the Debtor from liability for any Claims pursuant to the Plan operates to, or otherwise results in, the elimination of or the reduction of any obligation any Insurance Company may have with respect to the Insurance Policies, including in providing coverage pursuant to the Insurance Assignment for liabilities assumed by the Primary AFFF Settlement Trust.  Except for the transfer of rights to the Primary AFFF Settlement Trust pursuant to the Insurance Assignment (which, with respect to Carrier's rights, shall be subject to Article 5.5.11 herein), or as otherwise provided by the Bankruptcy Code, applicable law, the findings made by the Bankruptcy Court in the Confirmation Order or otherwise, nothing in the Plan shall modify, amend, or supplement the terms of any Insurance Policy issued by any Other Insurance Company, or the rights or obligations under any such Insurance Policy to the extent such rights and obligations are otherwise available under applicable law.  The rights and obligations, if any, of any Other Insurance Company relating to or arising out of the Insurance Policies and any of the Plan Documents shall be determined pursuant to the terms and provisions of the Insurance Policies and applicable law.  Nothing in this Article 5.8 is intended or shall be construed to preclude otherwise applicable principles of res judicata or collateral estoppel from being applied against any Person.

5.9.    D&O Policies

Nothing in this Plan or the Confirmation Order shall adversely affect the rights to coverage, if any, of any Insured Persons or Organizations under any D&O Policy with respect to alleged Wrongful Acts occurring prior to the Effective Date (as such terms are used in the D&O Policy).  None of the Liquidating Administrators or any officers or directors of the Liquidating Estate in their capacities as such shall have any rights under the D&O Policy or any other directors & officers insurance policy under which Carrier has any rights or obligations in whole or in part.

5.10.    Cancellation of Existing Agreements, Notes and Interests

On the Effective Date, except as otherwise specifically provided for in the Plan or any agreement, instrument, or other document incorporated in the Plan, the obligations of the Debtor under any Certificate, Interest, share, note, purchase right, option, warrant, intercreditor agreement, guaranty, indemnity, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtor or giving rise to any Claim or Interest shall be canceled solely as to the Debtor, and the Debtor shall not have any continuing obligation thereunder and shall be released therefrom.

5.11.    Section 1146 Exemption from Certain Transfer Taxes and Recording Fees

Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, any transfers from the Debtor to the Liquidating Estate or to any other Person, pursuant to, in contemplation of, or in connection with the Plan (including any transfer pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other

-53-

interest in the Debtor; or (b) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, sales and use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall, and shall be directed to, forgo the collection of any such tax, recordation fee or government assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee or government assessment.

5.12.    Preservation of Causes of Action

Other than Causes of Action against a Person that are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan, including pursuant to the Estate Claims Settlement, or by a Bankruptcy Court order entered prior to the Effective Date, the Debtor reserves any and all Causes of Action.  On the Effective Date, (i) the Settlement Trust Retained Causes of Action shall vest in the Primary AFFF Settlement Trust and (ii) the Liquidating Estate Retained Causes of Action shall vest in the Liquidating Estate, in each case free and clear of all Claims, Liens, encumbrances and other interests.  The Settlement Trust Retained Causes of Action shall become Settlement Trust Assets and the Liquidating Estate Retained Causes of Action shall become Liquidating Estate Assets.  On and after the Effective Date, the Primary AFFF Settlement Trustee shall have sole and exclusive discretion to pursue and dispose of the Settlement Trust Retained Causes of Action and the Liquidating Administrators shall have sole and exclusive discretion to pursue the Liquidating Estate Retained Causes of Action.  No Person may rely on the absence of a specific reference in the Plan or Disclosure Statement as to any Cause of Action as any indication that the Debtor, and on and after the Effective Date, the Primary AFFF Settlement Trustee or Liquidating Administrators, as applicable, will not pursue any and all available Causes of Action against them.  No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation.  Prior to the Effective Date, the Debtor (and on and after the Effective Date, the Primary AFFF Settlement Trustee and Liquidating Administrators, as applicable) shall retain and shall have, through their authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

5.13.    Effectuating Documents and Further Transactions

On and after the Effective Date, the Debtor or the Liquidating Administrators, as applicable, are authorized to and may take all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.

-54-

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require approval of the shareholders, directors or members of the Debtor shall be deemed to have been so approved and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to applicable law, and without any requirement of further action by the shareholders, directors, managers or partners of the Debtor, or the need for any approvals, authorizations, actions or consents.

5.14.   <u>Directors, Officers, Managers, Members and Authorized Persons of the Debtor</u>

On the Effective Date, each of the Debtor's directors and officers shall be discharged from their duties and terminated automatically without the need for any corporate action or approval and without the need for any corporate filings, and, unless subject to a separate agreement with the Administrators, shall have no continuing obligations in their capacities as directors and officers to the Debtor following the occurrence of the Effective Date.

## 6.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 6.1.    Rejection of Executory Contracts and Unexpired Leases

Except as otherwise provided herein, and subject to the occurrence of the Effective Date, all Executory Contracts and Unexpired Leases will be rejected by the Plan on the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code, other than (a) Executory Contracts or Unexpired Leases previously assumed or rejected pursuant to an order of the Bankruptcy Court or (b) Executory Contracts or Unexpired Leases that are the subject of a pending motion to assume, or for which a notice of assumption has been filed pursuant to the assumption and assignment procedures approved by the Bankruptcy Court in connection with the Sale.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejection of such Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code.  For the avoidance of doubt, none of the Insurance Policies are Executory Contracts.

### 6.2.    Claims Against the Debtor Upon Rejection

No Executory Contract or Unexpired Lease rejected on or prior to the Effective Date shall create any obligation or liability of the Debtor or the GUC Liquidating Trust that is not a Claim.  Any Proof of Claim arising from or relating to the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan must be filed with the Notice and Claims Agent before the Rejection Bar Date.  Any Claim arising from or relating to the rejection of an Executory Contract or Unexpired Lease that is not filed with the Notice and Claims Agent by the Rejection Bar Date will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtor, the Liquidating Estate, the GUC Liquidating Trust or any of their property.  Any Allowed Claim arising from the rejection of an Executory Contract or Unexpired Lease shall be classified as a General Unsecured Claim and shall be treated in accordance with Article 4.2.14 herein.

### 6.3.    Modification, Amendments, Supplements, Restatements or Other Agreements

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is rejected shall include all modifications, amendments, supplements, restatements or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements have been previously rejected or repudiated or are rejected or repudiated under the Plan.

Modifications, amendments, supplements and restatements to Prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the Prepetition nature of such Executory Contracts or Unexpired Leases or the validity, priority or amount of any Claims that may arise in connection therewith.

6.4.    <u>Reservation of Rights</u>

Nothing contained in the Plan shall constitute an admission by the Debtor that any contract or lease is in fact an Executory Contract or Unexpired Lease, or that the Debtor has any liability thereunder.

**7.    PROVISIONS GOVERNING DISTRIBUTIONS**

    7.1.    Provisions Governing Distributions On Account of Liquidating Estate Claims.

        7.1.1.    Distribution Record Date.  On the Distribution Record Date, the Claims Register shall be closed and the Distribution Agent and Liquidating Administrators, as applicable, shall be authorized and entitled to recognize only those Holders of Claims listed on the Claims Register as of the close of business on the Distribution Record Date.  If a Claim is transferred 20 or fewer days before the Distributions Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical, and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

        7.1.2.    Distributions on Account of Liquidating Estate Claims Allowed as of the Effective Date.  Except as otherwise provided in the Plan, a Final Order, or as agreed by the relevant parties, Distributions under the Plan on account of Liquidating Estate Claims Allowed on or before the Effective Date shall be made on the Initial Distribution Date.  After the Initial Distribution Date, the Liquidating Administrators shall, from time to time, determine the subsequent Distribution Dates for purposes of making additional Distributions under the Plan on account of Liquidating Estate Claims.

        7.1.3.    Distributions on Account of Liquidating Estate Claims Allowed After the Effective Date.  Except as otherwise provided herein, a Final Order, or as agreed to by the relevant parties, Distributions on account of Disputed Liquidating Estate Claims that become Allowed after the Effective Date shall be made on the next applicable Distribution Date that is at least 30 days after such Disputed Claim becomes an Allowed Claim.  Notwithstanding any provision otherwise herein and except as otherwise agreed to by the relevant parties, no partial payments and no partial Distributions shall be made with respect to a Disputed Liquidating Estate Claim until all such disputes in connection with such Disputed Claim have been resolved and such Claim has become Allowed.

        7.1.4.    Delivery of Distributions.  The Distribution Agent, at the direction of the Liquidating Administrators, shall make all Distributions, allocations, and/or issuances required under the Plan on account of Liquidating Estate Claims.  In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Distribution Agent has determined the then current address of such Holder, at which time such Distribution shall be made to such Holder without interest; *provided, however*, such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the date such Distribution was made.  After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Liquidating Estate automatically and without need for a further order by the Bankruptcy Court for Distribution in accordance with the Plan and the Claim of any such Holder to such property or interest in property shall be released, settled, compromised, and forever barred.  The Debtor, the Liquidating Administrators and the Distribution Agent shall not incur any liability whatsoever on account of the delivery of any Distributions under the Plan.

4860-3249-7648 v.2428

7.1.5.    <u>Manner of Payment Under Plan</u>.  At the option of the Liquidating Administrators or the Distribution Agent, as applicable, any Cash payment to be made hereunder on account of Liquidating Estate Claims may be made by a check or wire transfer from the Distribution Agent.  Any wire transfer fees incurred in connection with the transmission of a wire transfer shall be deducted from the amount of the recipient Holder's Allowed Claim.  The wire transfer fee will be deducted from the amount of the Distribution a Holder of an Allowed Claim would otherwise receive.  The Liquidating Administrators and the Distribution Agent, as applicable, will, to the extent practicable, make aggregate Distributions on account of all the Allowed Claims held by a particular Holder.

7.1.6.    <u>Minimum Cash Distributions</u>.  No intermediate Distribution shall be required to be made to any Holder of an Allowed Liquidating Estate Claim on any applicable Distribution Date of Cash less than $100; *provided, however,* that if any Distribution is not made pursuant to this Article 7.1.6, such Distribution shall be added to any subsequent Distribution to be made on behalf of such Allowed Claim.  Other than on account of Unimpaired Claims, the Liquidating Administrators and the Distribution Agent shall not be required to make any final Distributions of Cash less than $50 to any Holder of an Allowed Liquidating Estate Claim.

7.1.7.    <u>Setoffs</u>.  The Liquidating Administrators may, but shall not be required to, set off against any Liquidating Estate Claim any Claims of any nature whatsoever that the Debtor or the Liquidating Estate may have against the Holder of such Claim; *provided* that neither the failure to do so nor the allowance of any such Claim hereunder shall constitute a waiver or release by the Debtor or the Liquidating Estate of any such Claim the Debtor or the Liquidating Estate may have against the Holder of such Claim.

7.1.8.    <u>Distributions After Effective Date</u>.  Distributions made after the Effective Date to Holders of Disputed Liquidating Estate Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

7.1.9.    <u>Compliance Matters and Allocation of Distributions Between Principal and Interest</u>.  The Debtor and the Liquidating Estate shall comply with all withholding, deduction and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Distributions made by the Debtor or the Liquidating Estate, as applicable, shall be subject to any applicable withholding, deduction and reporting requirements.  The Debtor and the Liquidating Administrators shall be authorized to take any and all actions that may be necessary or appropriate to comply with any such withholding, deduction, and reporting requirements.  All amounts properly withheld or deducted from the Distributions to a Holder of an Allowed Claim as required by applicable law and paid over to the applicable taxing authority for the account of such Holder shall be treated as paid to such Holder.  All such Holders shall be required to provide any information necessary to effect the withholding and reporting of such taxes.  The Debtor and the Liquidating Administrators may require any Holder who receives a Distribution to furnish to the Debtor or the Liquidating Administrators, as applicable, or their designee, its social security number or employer or taxpayer identification number as assigned by the IRS and complete any related documentation, including but not limited to a Form W-8BEN, Form W-8BENE-E, or Form W-9 (the "<u>Tax Documents</u>").  The Debtor and Liquidating Administrators may condition any and all Distributions to any Holder of an Allowed Claim upon the timely

-59-

receipt of properly executed Tax Documents and receipt of such other documents as the Debtor or Liquidating Administrators, as applicable, reasonably request in accordance with the Plan.

Except as otherwise provided in this Plan, to the extent that any Allowed Liquidating Estate Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Liquidating Estate Claim first, and then to accrued but unpaid interest.

7.1.10.    No Postpetition Interest on Claims.  Except as otherwise provided in the Plan, the Confirmation Order, or another order of the Bankruptcy Court, or required by the Bankruptcy Code, postpetition interest shall not accrue or be paid on any Liquidating Estate Claims and no Holder of such Claim shall be entitled to interest accruing on or after the Petition Date.

7.1.11.    Undeliverable Distributions.  In the event that any Distribution to any Holder is returned as undeliverable, or no address for such Holder is found in the Debtor's records, no further Distribution to such Holder shall be made unless and until the Liquidating Administrators or the Distribution Agent, as applicable, is notified in writing of the then-current address of such Holder, at which time such Distribution shall be made to such Holder not less than 30 days thereafter.  Undeliverable Distributions shall remain in the possession of the Liquidating Administrators or the Distribution Agent until such time as such Distribution becomes deliverable or such Distribution reverts to the Liquidating Estate or is canceled as provided for herein and shall not be supplemented with any interest, dividends or other accruals of any kind.

7.1.12.    No Distribution in Excess of Amount of Allowed Claim.  Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Liquidating Estate Claim shall, on account of such Allowed Claim, receive a Distribution in excess of the Allowed amount of such Claim.

7.2.    Distributions on Account of Channeled AFFF Claims.

Notwithstanding anything to the contrary herein, all Distributions to Holders of Allowed Channeled AFFF Claims shall be made by and from the Primary AFFF Settlement Trust or Sovereign State AFFF Settlement Trust, as applicable, in accordance with the Settlement Trust Documents.

7.3.    Distributions on Account of General Unsecured Claims.

Notwithstanding anything to the contrary herein, all Distributions to Holders of Allowed General Unsecured Claims shall be made by and from the GUC Liquidating Trust in accordance with the GUC Liquidating Trust Agreement.

**8.    CLAIMS ADMINISTRATION PROCEDURES**

8.1.    Claims Administration Procedures With Respect to Liquidating Estate Claims and General Unsecured Claims.

8.1.1.    Objections to Liquidating Estate Claims and General Unsecured Claims. As of the Effective Date, objections to, and requests for estimation of (i) Liquidating Estate Claims may only be interposed and prosecuted by the Liquidating Administrators and (ii) General Unsecured Claims may only be interposed and prosecuted by the GUC Liquidating Trustee. Such objections and requests for estimation shall be served and filed on or before the Claims Objection Deadline. The Claims Objection Deadline may be extended by the Liquidating Administrators or GUC Liquidating Trustee by filing a motion to extend on or before the Claims Objection Deadline, and the filing of such motion shall automatically extend the Claims Objection Deadline until the Bankruptcy Court rules on such motion. The Liquidating Administrators and GUC Liquidating Trustee shall have standing to object to Liquidating Estate Claims and General Unsecured Claims, as applicable.

8.1.2.    Allowance of Liquidating Estate Claims and General Unsecured Claims. After the Effective Date, the Liquidating Estate and the GUC Liquidating Trust shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Liquidating Estate Claim and General Unsecured Claim, respectively, against the Debtor except with respect to any such Claim expressly Allowed under this Plan. Except as expressly provided in this Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including, without limitation, the Confirmation Order), no Liquidating Estate Claim or General Unsecured Claim shall become an Allowed Claim unless and until such Claim is expressly Allowed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Case allowing such Claim.

8.1.3.    Estimation of Liquidating Estate Claims and General Unsecured Claims. The Debtor, the Liquidating Administrators, or the GUC Liquidating Trustee, as applicable, may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Liquidating Estate Claim or General Unsecured Claim, as applicable, pursuant to section 502(c) of the Bankruptcy Code regardless of whether any party in interest previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any such Claim or during the appeal relating to such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Liquidating Estate Claim or Disputed General Unsecured Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or the maximum limit of such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Liquidating Administrators or the GUC Liquidating Trustee, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Liquidating Estate Claims and General Unsecured Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court or under the Plan.

8.1.4.    <u>No Distributions Pending Allowance</u>.  No payment or Distribution provided under the Plan shall be made on account of a Disputed Liquidating Estate Claim or a Disputed General Unsecured Claim unless and until such Disputed Claim becomes an Allowed Claim.

8.1.5.    <u>Distributions After Allowance</u>.  To the extent that a Disputed Liquidating Estate Claim or Disputed General Unsecured Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the applicable provisions of the Plan or the GUC Liquidating Trust Agreement, as applicable; *provided* that interest shall not accrue or be paid on any such Claim during the period from the Effective Date to the date a final distribution is made on account of such Claim.

8.1.6.    <u>Resolution of Liquidating Estate Claims and General Unsecured Claims</u>.

(a)    Except as otherwise provided herein (including the release provisions hereof) or in the Confirmation Order, or in any contract, instrument, release, or other agreement or document entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, on and after the Effective Date, the Liquidating Administrators may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Liquidating Estate Claims, rights, Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Liquidating Estate may hold against any Person, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith.  From and after the Effective Date, the Liquidating Administrators may (i) file, withdraw or litigate to judgment objections to Liquidating Estate Claims, (ii) settle or compromise any Disputed Liquidating Estate Claim and (iii) administer and adjust, or cause to be administered and adjusted, the Claims Register to reflect any such settlements or compromises.

(b)    Except as otherwise provided herein (including the release provisions hereof) or in the Confirmation Order, or in any contract, instrument, release, or other agreement or document entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, on and after the Effective Date, the GUC Liquidating Trustees may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed General Unsecured Claims, rights, Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, that the GUC Liquidating Trust may hold against any Person, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith.  From and after the Effective Date, the GUC Liquidating Trustee may (i) file, withdraw or litigate to judgment objections to General Unsecured

-62-

Claims, (ii) settle or compromise any Disputed General Unsecured Claims and (iii) administer and adjust, or cause to be administered or adjusted, the Claims Register to reflect any such settlements or compromises.

    8.1.7.   Expungement and Disallowance of Liquidating Estate Claims and General Unsecured Claims.

        (a)    Paid, Satisfied, Amended, Duplicated or Superseded Claims.  Any Liquidating Estate Claim or General Unsecured Claim that has been paid, satisfied, amended, duplicated, superseded or otherwise dealt with or treated in the Plan, may be adjusted or expunged on the Claims Register at the direction of the Liquidating Administrators or GUC Liquidating Trustee, as applicable, on or after 14 calendar days after the date on which notice of such adjustment or expungement has been filed with the Bankruptcy Court, without an objection to such Claim having to be filed, and without any further action, order or approval of the Bankruptcy Court.

        (b)    Claims by Persons From Which Property Is Recoverable.  Unless otherwise agreed to by the Liquidating Administrators or GUC Liquidating Trustee, as applicable, or ordered by the Bankruptcy Court, any Liquidating Estate Claims or General Unsecured Claims held by any Person from which property is recoverable under section 542, 543, 550 or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and any Holder of such Claim may not receive any Distributions on account of such Claim until such time as such Cause of Action against that Person has been resolved.

    8.1.8.   Amendments to Liquidating Estate Claims and General Unsecured Claims;  Late Filed Liquidating Estate Claims and General Unsecured Claims.  Following the Effective Date, except as otherwise provided in this Plan, or the Confirmation Order,  no Proof of Claim on account of a Liquidating Estate Claim or General Unsecured Claim may be filed, amended, or supplemented without the approval of the Bankruptcy Court or without the prior written authorization of the Liquidating Administrators or GUC Liquidating Trustee, as applicable, and any such amended Proof of Claim filed without such prior authorization shall be deemed disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court.

8.1.9.    <u>Liquidating Estate Claims and General Unsecured Claims Paid or Payable by Third Parties</u>.

The Liquidating Administrators or GUC Liquidating Trustee shall reduce a Liquidating Estate Claim or General Unsecured Claim, as applicable, and such Claim (or portion thereof) shall be disallowed without a Claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not the Liquidating Administrators or GUC Liquidating Trustee, as applicable.  To the extent a Holder of a Claim receives a Distribution on account of such Claim and also receives payment from a party that is not the Liquidating Administrators or GUC Liquidating Trustee, as applicable, on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the Distribution to the Liquidating Estate or GUC Liquidating Trust, as applicable, to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of such Allowed Claim as of the applicable Distribution Date.

No Distributions under this Plan shall be made on account of an Allowed Liquidating Estate Claim or Allowed General Unsecured Claim that is payable pursuant to one of the Debtor's insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Liquidating Estate Claim or General Unsecured Claim (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), then immediately upon such insurers' satisfaction, such Claim may be expunged to the extent of such satisfaction without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

8.2.    <u>Claims Administration Procedures With Respect to Channeled AFFF Claims.</u>

Notwithstanding anything to the contrary herein, administration of all Channeled AFFF Claims shall be subject to and in accordance with the Settlement Trust Documents.

**9.** **CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN**

9.1. Conditions Precedent to the Effective Date

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of this Article 9.1:

(a)     The Bankruptcy Court or another court of competent jurisdiction shall have entered the Confirmation Order in form and substance consistent with the Plan Support Agreement, such order shall be a Final Order, and to the extent such order was not entered by the District Court, the District Court shall have affirmed the Confirmation Order;

(b)     the Bankruptcy Court shall have determined that the Estate Claims Settlement is a fair, equitable, and reasonable compromise, in the best interests of the Estate, the product of good faith, arms'-length negotiations, and satisfies all applicable requirements of the Bankruptcy Code and Bankruptcy Rules, including Bankruptcy Rule 9019;

(c)     the Bankruptcy Court shall have determined that the Estate Claims Settlement is a good faith settlement that bars any Cause of Action by a non-Released Party against any Released Party for contribution, indemnification or otherwise seeking to recover any amounts paid by or awarded against that non-Released Party and paid or awarded to any Holder of a Claim by way of settlement, judgment or otherwise on any Claim that would be a Released Claim were such non-Released Party a Released Party to the extent that a good faith settlement has such effect under applicable law;

(d)     the Bankruptcy Court shall have determined that the releases set forth in the Estate Claims Settlement Agreement and Plan are an integral component of the Estate Claims Settlement and that the Estate Claims Settlement is fair, equitable, reasonable, in the best interests of the Estate, and consistent with all applicable provisions of the Bankruptcy Code;

(e)     the New National Foam Release and all related releases (which shall include, but not be limited to, a release of Angus International Safety Group Limited's Claim filed in the Chapter 11 Case) shall have been approved by the Bankruptcy Court and the subject of a Final Order (which for the avoidance of doubt may be through the Confirmation Order);

(f)     the Plan Support Agreement shall remain in full force and effect and shall not have been terminated with respect to the Estate

-65-

Claims Settlement and the parties thereto shall be in compliance therewith;

(g)    all Definitive Documents contemplated by the Plan Support Agreement shall (i) be consistent with the Plan Support Agreement and otherwise approved by the applicable parties thereto consistent with their respective consent and approval rights set forth therein and (ii) have been executed or deemed executed and delivered by each party thereto, and any conditions precedent related thereto shall have been satisfied or waived by the applicable party or parties;

(h)    the Settlement Trusts shall be established and validly existing and the AFFF Data Transfer shall have been completed;

(i)    the Bankruptcy Court shall have determined that the proposed governance for the Settlement Trusts is appropriate, and that the TDPs are fair and reasonable based on the evidentiary record offered to the Bankruptcy Court and are proposed in good faith;

(j)    the Bankruptcy Court shall have authorized the Insurance Assignment by the Debtor to the Primary AFFF Settlement Trust as provided in the Plan, notwithstanding any terms or any policies or provisions of non-bankruptcy law that prohibit the delegation, assignment, or other transfer of such rights, and the Bankruptcy Court shall have determined that the Primary AFFF Settlement Trust is a proper defendant for all Holders of applicable Claims against the Debtor and/or the Released Parties that are settled pursuant to the Estate Claims Settlement Agreement to assert liability to trigger and pursue such insurance rights and that the Primary AFFF Settlement Trust is entitled to pursue insurance coverage for all other AFFF Claims asserted against the Released Parties or the Debtor as provided in and consistent with the Insurance Assignment (which, with respect to Carrier's rights, shall be subject to Article 5.5.11 herein) and the Insurance Cooperation Agreement;

(k)    the Bankruptcy Court shall have determined that the Plan is proposed in good faith and is sufficient to satisfy the requirements of section 1129(a)(3) of the Bankruptcy Code;

(l)    the Bankruptcy Court shall have determined that the injunctions set forth in the Plan, including the Channeling Injunction and Insurance Entity Injunction, are essential to the Plan and the Estate Claims Settlement, appropriately tailored to implement the applicable provisions of the Estate Claims Settlement and the Plan,

-66-

and consistent with all applicable provisions of the Bankruptcy Code;

(m)    the Bankruptcy Court shall have entered an order approving the Insurance Cooperation Agreement;

(n)    the Bankruptcy Court shall have determined that it may properly, and upon the Effective Date shall, retain jurisdiction over matters arising in, under, and related to the Chapter 11 Case, including the Plan and Plan Documents and shall retain non-exclusive jurisdiction over any Insurance Action including the Insurance Adversary Proceedings;

(o)    all actions, documents, certificates and agreements necessary to implement the Plan as mutually agreed by the Debtor and the Settling Parties shall have been effected or executed and delivered, as applicable;

(p)    the Bankruptcy Court shall have determined that the Plan, the Plan Documents, and the Confirmation Order are binding on all parties-in-interest to the extent provided therein;

(q)    the Debtor shall have established and funded the Professional Fee Escrow Account in accordance with Article 3.3.2 herein; and

(r)    all authorizations, consents, regulatory approvals, rulings or documents that are necessary to implement and effectuate the Plan as of the Effective Date shall have been received, waived or otherwise resolved.

9.1.2.    For the avoidance of doubt, neither acceptance, approval, nor effectiveness of any settlement of claims against Carrier in the AFFF MDL (nor any other condition to or relating to such settlements) shall be a condition to effectiveness of the Plan.

9.2.    <u>Waiver of Conditions</u>

Subject to the Settling Parties' consent rights pursuant to the Plan Support Agreement, the Debtor may waive conditions to the occurrence of the Effective Date set forth in this Article 9 at any time without further notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to consummate the Plan.

9.3.    <u>Simultaneous Transactions</u>

Except as otherwise expressly set forth in the Plan, the Confirmation Order or a written agreement by the Debtor, each action to be taken on the Effective Date shall be deemed to occur simultaneously as part of a single transaction.

9.4.    <u>Notice of Effective Date</u>

-67-

As soon as practicable after the Effective Date has occurred, the Liquidating Administrators shall file with the Bankruptcy Court a notice specifying the Effective Date.

4860-3249-7648 v.2428

## 10.    SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

### 10.1.    Subordinated Claims

The allowance, classification and treatment of all Allowed Claims and Interests and the respective Distributions and treatments under the Plan take into account, conform to and satisfy the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto; however, subject to the Settling Parties' consent rights set forth in the Plan Support Agreement, the Debtor reserves the right to reclassify or modify the treatment of any Allowed Claim or Interest in accordance with any contractual, legal or equitable subordination relating thereto, unless otherwise provided in a settlement agreement concerning such Allowed Claim or Interest.

### 10.2.    **Release of Liens**

**Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released and cancelled, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Liquidating Estate and their successors and assigns.  Any Holder of such mortgage, deed of trust, Lien, pledge or other security interest (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including and cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Liquidating Administrators to evidence such release, including the execution, delivery and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

### 10.3.    **Releases by the Estate**

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party, the Debtor, the Liquidating Estate and each Related Party of the Debtor and the Liquidating Estate shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, or any other Person or Governmental Unit asserting currently or in the future by, under, through, or on behalf of the Debtor or its Estate, and each of their respective successors or assigns, including the Settlement Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the**

-69-

transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between one or both of the Debtor, on the one hand, and any Released Party, the Liquidating Estate, or any Related Party of the Debtor and the Liquidating Estate, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in this Article 10.3 shall not be construed to release any post-Effective Date obligations under the RTX Waiver, the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, which specifically provides that such Estate Claims Settlement can be terminated, and the releases provided in the Plan or in the Estate Claims Settlement are void, if Carrier fails to make the installments of the Guaranteed Cash Payment when due and such failure is not timely cured within 30 days, at which time the Primary AFFF Settlement Trust is entitled to commence, prosecute, or continue all Estate Causes of Action against the Released Parties in any court of competent jurisdiction, and take such other actions as the Primary AFFF Settlement Trustee may determine in the exercise of their fiduciary duties.

10.4. <u>**Releases by the Released Parties**</u>

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Released Parties and their successors or assigns of and from any and all Claims and Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, the Debtor's current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between any of the Debtor, the Liquidating Estate, the Settlement Trusts or the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case, on the one hand, and any Released Party, on the other hand, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or

-70-

entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in this Article 10.4 shall not be construed to release, waive or otherwise affect any post-Effective Date obligations under the Plan Documents, the Confirmation Order, the 2020 Separation Agreement as supplemented by the RTX Waiver, or the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, or the right of any Person to enforce the same in accordance with the terms thereof. Except with respect to the Claims and Causes of Action against the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case that are released and discharged under this Article 10.4, the releases contained in this Article 10.4 shall not be construed to release, waive or otherwise affect any obligations, rights, Causes of Action or Claims that Carrier Global Corporation or members of the Carrier Group (other than the Debtor), Otis Worldwide Corporation or members of the Otis Group, or RTX or members of the UTC Group may have against any Person under the 2020 Separation Agreement as supplemented by the RTX Waiver (including indemnification rights of RTX and other members of the "UTC Group" under the 2020 Separation Agreement). For the avoidance of doubt, in the event that the Estate Claims Settlement Effective Date does not occur or the Estate Claims Settlement is terminated as contemplated by the last paragraph of Article 10.3 herein, all releases being provided by the Released Parties hereunder shall be void.

10.5.   **Scope of Releases**

Each Person providing releases under the Plan, including the Debtor, the Estate and the Settling Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts. Each Person providing releases under the Plan shall be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

10.6.   **Exculpation**

-71-

Notwithstanding anything herein to the contrary, as of the Effective Date, the Debtor and its directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation.

As of the Effective Date, to the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in Article 10 of the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person for any act or omission in connection with, related to or arising out of this Chapter 11 Case, including (a) the operation of the Debtor's businesses during the pendency of this Chapter 11 Case; (b) the administration and adjudication of Claims and Interests during this Chapter 11 Case; (c) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Plan, the Disclosure Statement, the Plan Supplement, or any related contract, instrument, release or other agreement or document created or entered into in connection with the Chapter 11 Case (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan and the distribution of property under the Plan); (d) any other transaction, agreement, event, or other occurrence related to the Chapter 11 Case taking place on or before the Effective Date, other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.

10.7. **Injunction**

Except as otherwise expressly provided in the Plan or the Confirmation Order, the satisfaction and release pursuant to this Article 10 shall also act as a permanent injunction against any Person who has held, holds, or may in the future hold Claims against or Interests in the Debtor or any of its assets or properties based on any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are treated, released, settled, ~~discharged,~~ channeled, or exculpated pursuant to the terms of the Plan from taking any of the following actions on account of, or on the basis of, such ~~discharged~~ Claims or Interests:  (a) commencing or continuing any action to collect, enforce, offset, recoup, or recover with respect to any Claims or Interests treated, released, settled, ~~discharged,~~ channeled, or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, ~~including to the extent provided for or authorized by sections 524 or 1141 thereof,~~ (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Claim or Interest against the Debtor, the Liquidating Estate, the Settlement Trusts, or its or their respective property; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of or in connection with or with respect to any such Claims or Interests, notwithstanding an indication of a Claim or Interest or otherwise that a Holder of such Claim or Interest

-72-

asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise, against the Debtor, the Liquidating Estate, or the Settlement Trusts; or (e) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. ~~In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge or termination of all Claims, Interests, and other debts and liabilities of the Debtor pursuant to sections 105, 524, and 1141 of the Bankruptcy Code.~~

10.8.  **Channeling Injunction**

Notwithstanding anything to the contrary herein, to preserve and promote the settlements contemplated by and provided for in the Plan, including the Insurance Settlement Agreements~~, and to supplement, where necessary, the injunctive effect of the discharge as provided in sections 1141 and 524 of the Bankruptcy Code~~, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under sections 105(a) and 1123(b) of the Bankruptcy Code, the sole recourse of any Holder of a Channeled AFFF Claim against the Debtor or a Released Party on account of such Channeled AFFF Claim shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, and such Holder shall have no right whatsoever at any time to assert any such Channeled AFFF Claim or any Estate Cause of Action that is released under the Estate Claims Settlement against the Debtor or any Released Party or any property or interest in property of the Debtor or any Released Party.  For the avoidance of doubt, the sole recourse for any Channeled AFFF Claim covered by any Insurance Policy issued by a Settling Insurance Company shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents.  Accordingly, on and after the Effective Date, all Holders of AFFF Claims that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled AFFF Claim or any Estate Cause of Action against the Debtor or any Released Party shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from the Debtor or any Released Party with respect to any such Channeled AFFF Claim or Estate Cause of Action, other than from the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, including:

a)  commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

-73-

b)    enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

c)    creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

d)    asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party; or

e)    taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents, or, with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, by the Sovereign State AFFF Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Channeled AFFF Claim.

The Debtor, the Liquidating Estate and/or any Released Party, as applicable, may enforce the Channeling Injunction and/or the Releases contained in the Plan before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at their own cost and expense, and no such cost or expense incurred by a party other than the Primary AFFF Settlement Trust shall be reimbursed or indemnified by the Primary AFFF Settlement Trust under any circumstances.

10.9.    **Insurance Company Injunction**

Subject to the provisos set forth in this Section, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim or cause of action (including any AFFF Claim or any Claim for or respecting any Primary AFFF Settlement Trust expense) against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Insurance Policy, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, statute or any other theory of law, equity or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim or cause of action, including:

a)    commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, demand, or cause of action against any Insurance Company, or against the property

-74-

of any Insurance Company, with respect to any such Claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such Claim, demand, or cause of action against any Insurance Company);

        b)     enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

        c)     creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such Claim or cause of action; and

        d)     except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

*provided, however,* that (i) nothing in this Section shall impair or affect the rights of any member of the UTC Group, including RTX, or any member of the Otis Group (each as defined in the 2020 Separation Agreement), or any additional insured designated by RTX or any member of the UTC Group, based upon, attributable to, arising out of, or in any way connected with an Insurance Policy, including to assert Claims or Causes of Action against any Insurance Company for covered losses and to receive proceeds in respect thereof; (ii) this injunction shall not impair in any way any actions brought by the Primary AFFF Settlement Trust against any Other Insurance Company; (iii) the Primary AFFF Settlement Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction with respect to any Other Insurance Company, in accordance with the Settlement Trust Documents, upon express written notice to such Other Insurance Company; and (iv) this injunction is not issued for the benefit of any Other Insurance Company, and no Other Insurance Company is a third-party beneficiary of this injunction.

        Notwithstanding anything to the contrary in the Plan, this injunction shall not enjoin:

        a)     the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of Holders of AFFF Claims to assert such Claims, as applicable, in accordance with the TDPs;

        b)     the rights of the Primary AFFF Settlement Trust to prosecute any action based on or arising from Insurance Policies, except to the extent otherwise released;

        c)     the rights of the Primary AFFF Settlement Trust to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company based on or arising from the Insurance Policies;

-75-

d)      any actions of the Contributing Parties in fulfilling their obligations under the Estate Claims Settlement in consultation and coordination with the Primary AFFF Settlement Trust;

e)      the rights of any Insurance Company to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company; or

f)      the Claims for reinsurance under reinsurance contracts or Claims under retrocessional contracts among the Settling Insurance Companies and any Other Insurance Company.

10.10.  **Prohibition on Actions Against Buyer**

Subject to the Sale Order and the Acquisition Agreement, Buyer, in its capacity as such, shall not have any liability for any AFFF Claims against the Debtor arising prior to the closing of the Sale.  Except as expressly otherwise set forth in the Sale Order, all persons and entities hereby are forever barred, estopped and permanently enjoined from asserting against Buyer, its Affiliates, its successors or assigns, its property or the Transferred Assets, such persons' or entities' AFFF Claims that have been or could have been asserted against the Debtor arising prior to the closing of the Sale.  For the avoidance of doubt, the foregoing shall not release Buyer from, or enjoin any actions against Buyer for, any Assumed Liability or any other liability incurred by Buyer on account of its operations following the closing of the Sale.

10.11.  **Limitations on Exculpations and Releases**

Notwithstanding anything to the contrary herein, none of the releases or exculpations set forth herein shall operate to waive or release any obligation or Causes of Action of any Person:  (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations or (b) expressly set forth in and preserved by the Plan, the Plan Supplement, Plan Documents or related documents.

10.12.  Release Dispute

In the event of a Release Dispute, a Released Party may, at its sole cost and expense, file a motion with the Bankruptcy Court seeking a determination as to whether an AFFF Claimant's Cause of Action was settled and released pursuant to the Plan, and upon such motion, the Bankruptcy Court shall make such determination and, if appropriate, enjoin the prosecution of such Cause of Action as having been settled and released under the Plan.

-76-

## 11.    MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

### 11.1.    Modification of Plan

Subject to the limitations contained in the Plan and the Settling Parties' consent rights in the Plan Support Agreement: (a) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order and (b) after the entry of the Confirmation Order, the Debtor or the Liquidating Administrators, as applicable, may, upon order of the Bankruptcy Court, (i) amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code or (ii) remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

### 11.2.    Effect of Confirmation on Modification

Entry of a Confirmation Order shall mean that all modifications and amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code, and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### 11.3.    Revocation of Plan

Subject to the limitations and Settling Parties' consent rights contained in the Plan Support Agreement, the Debtor reserves the right to revoke or withdraw the Plan prior to the Effective Date and to file subsequent plans of reorganization or liquidation.  If the Debtor revokes or withdraws the Plan, or if the Confirmation Order is not entered or the Effective Date does not occur, then:  (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases affected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (c) nothing contained in the Plan shall: (i) constitute a waiver or release of any Causes of Action, Claims by or Claims against, or any Interests in, the Debtor or any other Person; (ii) prejudice in any manner the rights of the Debtor or any other Person; or (iii) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other Person.

-77-

## 12.    RETENTION OF JURISDICTION

12.1.    Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain its exclusive jurisdiction over all matters arising in or out of, or related to, this Chapter 11 Case or the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

(a)    Allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any General Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

(b)    Decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

(c)    Resolve any matters related to: (i) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including any disputes regarding cure obligations; and (ii) any dispute regarding whether a contract or lease is, or was, executory or expired;

(d)    Ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the Plan and adjudicate any and all disputes from, or relating to Distributions under the Plan;

(e)    Adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and Causes of Action, and grant or deny any applications, involving the Debtor that may be pending before the Bankruptcy Court on the Effective Date;

(f)    Adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(g)    Adjudicate, decide or resolve any and all matters related to section 1146 of the Bankruptcy Code;

(h)    Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and

-78-

other agreements or documents created in connection with the Plan, Plan Supplement, Plan Documents or the Disclosure Statement;

(i)     Enter, adjudicate, and enforce any order for the sale of property pursuant to section 363, 1123 or 1146(a) of the Bankruptcy Code;

(j)     Adjudicate, decide or resolve any and all disputes as to the ownership of any Claim or Interest;

(k)     Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with enforcement of the Plan;

(l)     Resolve any cases, controversies, suits, disputes or Causes of Action with respect to the existence, nature and scope of the releases, injunctions and other provisions contained in the Plan, including whether a Cause of Action alleged by an AFFF Claimant against one or more Released Parties is a Cause of Action that was an Estate Cause of Action or otherwise settled and released under the Plan, and enter such orders as may be necessary or appropriate to implement and enforce such releases, injunctions and other provisions;

(m)    Adjudicate, decide or resolve any and all matters arising out of, in connection with or related to the Estate Claims Settlement;

(n)     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(o)     Determine any other matters that may arise in connection with or relate to the Plan, the Plan Supplement, the Plan Documents, including the Settlement Trust Documents, the Liquidating Administrator Agreement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan, the Plan Supplement, the Plan Documents or the Disclosure Statement;

(p)     Enter an order or final decree concluding or closing this Chapter 11 Case;

(q)     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

-79-

    (r)    Hear and determine disputes, cases, controversies or Causes of Action arising in connection with the interpretation, implementation or enforcement of the Plan, including the releases or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

    (s)    Hear and determine all disputes relating to any liability arising out of the termination of employment or the termination of any employee or retirement benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

    (t)    Enforce and adjudicate all orders previously entered by the Bankruptcy Court;

    (u)    Hear any other matter not inconsistent with the Bankruptcy Code, the Plan, or the Confirmation Order.

For the avoidance of doubt, the Bankruptcy Court's jurisdiction over Insurance Actions will be non-exclusive after the Effective Date.

## 13.    MISCELLANEOUS PROVISIONS

13.1.    Immediate Binding Effect

Notwithstanding Bankruptcy Rule 3020(e), 6004(h) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtor, the Settlement Trustees, the Liquidating Administrators, any and all Holders of Claims and Interests (irrespective of whether Holders of such Claims or Interests are deemed to have accepted the Plan), all Persons that are parties to or are subject to the settlements, compromises, releases and injunctions described in the Plan, each Person acquiring property under the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor and any other parties-in-interest.

13.2.    Additional Documents; Further Assurances

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtor, the Settlement Trustees, the Liquidating Administrators and all Holders of Claims or Interests receiving Distributions pursuant to the Plan and all other parties-in-interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

13.3.    Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Debtor or any other Person with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (a) the Debtor with respect to the Holders of Claims or Interests or any other Person or (b) any Holder of a Claim or an Interest or any other Person prior to the Effective Date.

13.4.    Successors and Assigns

The rights, benefits and obligations of any Person named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

13.5.    Term of Injunction or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in this Chapter 11 Case pursuant to section 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their

-81-

terms. For the avoidance of doubt, no stay or injunction contained herein shall apply to Independent AFFF Causes of Action or Sovereign State Retained Causes of Action.

### 13.6.  Entire Agreement

The Plan Support Agreement and the Plan Documents set forth the entire agreement and undertakings relating to the subject matter thereof.  On the Effective Date, the Plan Documents shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations with respect to the subject matter hereof and thereof, all of which have become merged and integrated into the Plan.

### 13.7.  Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  Copies of such exhibits and documents may be obtained upon written request to the Debtor's counsel at the address below or by downloading such exhibits and documents from the website of the Debtor's Notice and Claims Agent, at https://cases.stretto.com/KFI/ or the Bankruptcy Court's electronic docket for the Debtor's Chapter 11 Case at https://ecf.deb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.uscourts.gov). In addition, copies of such exhibits and documents may be requested from the Notice and Claims Agent at (866) 887-0488 (U.S./Canada) or (949) 889-0128 (International).

### 13.8.  Nonseverability of Plan Provisions Upon Confirmation

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtor; and (c) nonseverable and mutually dependent. Notwithstanding anything to the contrary herein, Article 5.5.15 shall be severable from the Plan if not approved by the Bankruptcy Court at the Confirmation Hearing and approval of Article 5.5.15 by the Bankruptcy Court shall not be a requirement or condition to Confirmation of the Plan.

### 13.9.  Dissolution of Committee

On the Effective Date, the Committee shall dissolve and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Case; *provided*, *however*, that the Committee will stay in existence solely for the limited purpose of (a) applications filed pursuant to sections 330 and 331 of the Bankruptcy

-82-

Code and (b) motions or litigation, including pending appeals, seeking enforcement of the provisions of the Plan or under the Confirmation Order; *provided, further*, that with respect to pending appeals and related proceedings, the Committee shall continue to comply with sections 327, 328, 329, 330, 331 and 1103 of the Bankruptcy Code and the Professional Fee Order in seeking compensation for services rendered.

13.10.   <u>Termination of Fee Examiner's Appointment</u>

Upon the resolution of all applications filed pursuant to sections 330 and 331 of the Bankruptcy Code by Professionals subject to review by the Fee Examiner, the Fee Examiner's appointment shall terminate, and the Fee Examiner shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Case.

13.11.   <u>Post-Confirmation Operating Reports</u>

The Liquidating Administrators, on behalf of the Debtor and the Liquidating Estate, shall file and serve on the U.S. Trustee quarterly reports of the disbursements made pursuant to the Plan until the Chapter 11 Case is converted, dismissed or closed by entry of a final decree.  Any such reports shall be prepared consistent with (both in terms of content and format) the applicable Bankruptcy Court's and U.S. Trustee's guidelines for such matters.

13.12.   <u>Closing of Chapter 11 Case</u>

The Liquidating Administrators shall, promptly after the full administration of this Chapter 11 Case, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close this Chapter 11 Case.

13.13.   <u>Conflicts</u>

Except as set forth in the Plan, to the extent that any provisions of the Disclosure Statement, the Plan Supplement, the Plan Documents, or any order of the Bankruptcy Court (other than the Confirmation Order) referenced in the Plan (or any exhibits, appendices, supplements or amendments to any of the foregoing), conflicts with or is in any way inconsistent with any provision of the Plan, the Plan shall govern and control.  To the extent any provision of the Plan, Disclosure Statement, the Plan Supplement, any other Plan Document or document referenced in the Plan (or any exhibits, appendices, supplements or amendments to any of the foregoing), conflicts with or is in any way inconsistent with the Confirmation Order, the Confirmation Order shall govern and control.

13.14.   <u>Waiver or Estoppel</u>

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtor or its counsel, or any other Person, if such agreement was not disclosed in the Plan, the Disclosure Statement or papers filed with the Bankruptcy Court prior to the Confirmation Date.

-83-

13.15.  <u>Post-Effective Date Service</u>

After the Effective Date, the Liquidating Administrators are authorized to limit the list of Persons receiving documents pursuant to Bankruptcy Rule 2002 to those Persons that have filed renewed requests for service.

13.16.  <u>Notices</u>

All notices, requests, pleadings and demands to or upon the Debtor to be effective shall be in writing (including by facsimile transmission and via email) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

(a)    If to the <u>Debtor</u>, to:

Sullivan & Cromwell LLP
125 Broad St.
New York, NY 10004
Attn:   Andrew G. Dietderich
Brian D. Glueckstein
Justin D. DeCamp
Benjamin S. Beller
Julie G. Kapoor

and

Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
Attn:   Derek C. Abbott
         Andrew R. Remming

(b)    If to the <u>Committee</u>, to:

Brown Rudnick LLP
Seven Times Square
New York, NY 10036
Attention: David J. Molton
Cathrine M. Castaldi
Eric R. Goodman

and

Stutzman, Bromberg, Esserman & Pilfka, A Professional
Corporation

-84-

2323 Bryan Street, Suite 2200
Dallas, TX 75201-2689
Attention: Sander L. Esserman
Peter C. D'Apice

(c)    If to the <u>Future Claimants' Representative</u>, to:
Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
Attn:    Sharon M. Zieg

(d)    If to the <u>U.S. Trustee</u>, to:

United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 N. King Street, Room 2207
Wilmington, DE 19801
Attn:    Timothy J. Fox

-85-

Dated: ~~June 1~~August 15, 2025
         Wilmington, Delaware

                                        **KFI Wind-Down Corp.**

                                        By: _____
                                             Name:
                                             Title:

## Schedule 1

| POLICYHOLDER | INSURANCE CO | POLICY NO | POLICY PERIOD BEGIN | POLICY PERIOD END |
|---|---|---|---|---|
| National Foam System, Inc | INA | XBC 6269 | 2/15/1966 | 2/15/1967 |
| National Foam System, Inc | INA | ENP 1117 | 1/1/1967 | 1/1/1968 |
| National Foam System, Inc | INA | XBC 6773 | 2/15/1967 | 2/15/1968 |
| National Foam System, Inc | INA | ENP 1117 | 1/1/1968 | 1/1/1969 |
| National Foam System, Inc | INA | XBC 7276 | 2/15/1968 | 2/15/1969 |
| National Foam System, Inc | INA | ENP 1117 | 1/1/1969 | 1/1/1970 |
| National Foam System, Inc | INA | XBC 7548 | 2/15/1969 | 2/15/1970 |
| National Foam System, Inc | INA | XBC 7883 | 2/15/1970 | 2/15/1971 |
| Philadelphia Suburban Corp | Hartford Accident & Indemnity Co. | 39CE16300E | 8/1/1972 | 8/1/1973 |
| Philadelphia Suburban Corp | Hartford Accident & Indemnity Co. | 39CE16304E | 8/1/1973 | 8/1/1974 |
| Philadelphia Suburban Corp | Hartford Accident & Indemnity Co. | 39CE16312E | 8/1/1974 | 8/1/1975 |
| Philadelphia Suburban Corp | Hartford Accident & Indemnity Co. | 39CE16320E | 8/1/1975 | 8/1/1976 |
| Philadelphia Suburban Corp | First State | 922102 | 9/9/1975 | 8/1/1976 |
| Philadelphia Suburban Corp | Home | TBD | 9/9/1975 | 8/1/1976 |
| Philadelphia Suburban Corp | Hartford Accident & Indemnity Co. | 39CE16328E | 8/1/1976 | 8/1/1977 |
| Philadelphia Suburban Corp | Allstate | 63 002 090 | 8/1/1976 | 8/1/1977 |
| Philadelphia Suburban Corp | Columbia Cas | RDX 1864271 | 8/1/1976 | 8/1/1977 |
| Philadelphia Suburban Corp | Allstate | 63 003 444 | 8/1/1977 | 8/1/1978 |
| Philadelphia Suburban Corp | Allstate | 63 003 769 | 8/1/1977 | 8/1/1978 |
| Philadelphia Suburban Corp | Columbia Cas | RDX 3652509 | 8/1/1977 | 8/1/1978 |
| Philadelphia Suburban Corp | Admiral | ZCV 0294 | 8/1/1977 | 8/1/1978 |
| Philadelphia Suburban Corp | California Union | ZCX 001735 | 8/1/1977 | 8/1/1978 |
| Philadelphia Suburban Corp | Aetna C&S | 04AL251305SRA | 8/1/1977 | 8/1/1978 |
| Philadelphia Suburban Corp | Allstate | 63 004 859 | 1/1/1978 | 1/1/1979 |
| Philadelphia Suburban Corp | Admiral | 8CU 0493 | 8/1/1978 | 8/1/1979 |
| Philadelphia Suburban Corp | California Union | ZCX 003278 | 8/1/1978 | 8/1/1979 |
| Philadelphia Suburban Corp | Aetna C&S | 04AL251363 | 8/1/1978 | 8/1/1979 |
| Philadelphia Suburban Corp | Aetna C&S | 04GL00015SRA | 8/1/1978 | 8/1/1979 |
| Philadelphia Suburban Corp | Aetna C&S | 04 XS 2707 | 8/1/1979 | 8/1/1980 |
| Philadelphia Suburban Corp | Allstate | 63 005 939 | 8/1/1979 | 8/1/1980 |
| Philadelphia Suburban Corp | Puritan | ML 652416 | 8/1/1979 | 8/1/1980 |
| Philadelphia Suburban Corp | California Union | ZCX 003760 | 8/1/1979 | 8/1/1980 |
| Philadelphia Suburban Corp | California Union | ZCX 003770 | 8/1/1979 | 8/1/1980 |
| Philadelphia Suburban Corp | Aetna C&S | 04AL251393SRA | 8/1/1979 | 8/1/1980 |
| Philadelphia Suburban Corp | Aetna C&S | 04GL1467SRA | 8/1/1979 | 8/1/1980 |
| Philadelphia Suburban Corp | Aetna C&S | 04 XS 2716 | 8/1/1980 | 8/1/1981 |
| Philadelphia Suburban Corp | Allstate | 63 007 002 | 8/1/1980 | 8/1/1981 |
| Philadelphia Suburban Corp | Puritan | ML 652455 | 8/1/1980 | 8/1/1981 |
| Philadelphia Suburban Corp | California Union | ZCX 004103 | 8/1/1980 | 8/1/1981 |
| Philadelphia Suburban Corp | Aetna C&S | 04AL315923SRA | 8/1/1980 | 8/1/1981 |
| Philadelphia Suburban Corp | Aetna C&S | 04GL55455SRA | 8/1/1980 | 8/1/1981 |
| Enterra Corporation | First State | 932556 | 8/1/1981 | 8/1/1982 |
| Enterra Corporation | Aetna C&S | 04 GL 55479 SRA | 8/1/1981 | 8/1/1982 |
| Enterra Corporation | Aetna C&S | 04 XN 202 WCA | 8/1/1981 | 8/1/1982 |
| Enterra Corporation | Integrity | ISX 106205 | 8/1/1981 | 8/1/1982 |
| Enterra Corporation | Mission | MN880116 | 8/1/1981 | 8/1/1982 |
| Enterra Corporation | Transit Casualty | SCU 956009 | 8/1/1981 | 8/1/1982 |
| Enterra Corporation | California Union | ZCX 004578 | 8/1/1981 | 8/1/1982 |
| Enterra Corporation | First State | 934633 | 8/1/1982 | 8/1/1983 |
| Enterra Corporation | First State | 934633 | 8/1/1982 | 8/1/1983 |
| Enterra Corporation | Aetna C&S | 04 GL 55478 SRA | 8/1/1982 | 8/1/1983 |
| Enterra Corporation | Federal | 7928-51-42 | 8/1/1982 | 8/1/1983 |
| Enterra Corporation | Admiral | A2UX0133 | 8/1/1982 | 8/1/1983 |
| Enterra Corporation | GEICO | GXU30170 | 8/1/1982 | 8/1/1983 |
| Enterra Corporation | Integrity | ISX 109393 | 8/1/1982 | 8/1/1983 |
| Enterra Corporation | Mutual Marine Office, Inc. for Employers Mutual Casualty Company | MMO73210 | 8/1/1982 | 8/1/1983 |
| Enterra Corporation | Mission | MN880116 | 8/1/1982 | 8/1/1983 |
| Enterra Corporation | Columbia Casualty | RDX 9176157 | 8/1/1982 | 8/1/1983 |
| Enterra Corporation | Columbia Casualty | RDX 9176159 | 8/1/1982 | 8/1/1983 |
| Enterra Corporation | Continental | SRX1591755 | 8/1/1982 | 8/1/1983 |

| Enterra Corporation | Transit Casualty | TBD | 8/1/1982 | 8/1/1983 |
|---|---|---|---|---|
| Enterra Corporation | Aetna C&S | TBD | 8/1/1982 | 8/1/1983 |
| Enterra Corporation | Twin City Fire | TXS 100518 | 8/1/1982 | 8/1/1983 |
| Enterra Corporation | Twin City | TXS100518 | 8/1/1982 | 8/1/1983 |
| Enterra Corporation | California Union | ZCX006329 | 8/1/1982 | 8/1/1983 |
| Enterra Corporation | Aetna C&S | 04XN221WCA | 8/1/1982 | 8/1/1983 |
| Enterra Corporation | Aetna C&S | 04GL237671SRA | 8/1/1982 | 8/1/1983 |
| Enterra Corporation | Federal | (84) 7928-5142 | 8/1/1983 | 8/1/1984 |
| Enterra Corporation | Aetna C&S | 04 GL 402022 SRA | 8/1/1983 | 8/1/1984 |
| Enterra Corporation | Admiral | A3UX0166 | 8/1/1983 | 8/1/1984 |
| Enterra Corporation | First State | EU936124 | 8/1/1983 | 8/1/1984 |
| Enterra Corporation | TIG | GMX02348 | 8/1/1983 | 8/1/1984 |
| Enterra Corporation | GEICO | GXU30285 | 8/1/1983 | 8/1/1984 |
| Enterra Corporation | Home | HEC 1200431 | 8/1/1983 | 8/1/1984 |
| Enterra Corporation | Integrity | ISX 112137 | 8/1/1983 | 8/1/1984 |
| Enterra Corporation | London Guarantee | LX2107859 | 8/1/1983 | 8/1/1984 |
| Enterra Corporation | London Guarantee | LX2107859 | 8/1/1983 | 8/1/1984 |
| Enterra Corporation | Mutual Marine Office, Inc. for Employers Mutual Casualty Company | MMO73441 | 8/1/1983 | 8/1/1984 |
| Enterra Corporation | Mission | MN024330 | 8/1/1983 | 8/1/1984 |
| Enterra Corporation | Continental | SRX1592029 | 8/1/1983 | 8/1/1984 |
| Enterra Corporation | Twin City Fire | TXS 100518 | 8/1/1983 | 8/1/1984 |
| Enterra Corporation | Twin City | TXS100518 | 8/1/1983 | 8/1/1984 |
| Enterra Corporation | Atlanta Int'l | XL06167 | 8/1/1983 | 8/1/1984 |
| Enterra Corporation | California Union | ZCX006388 | 8/1/1983 | 8/1/1984 |
| Enterra Corporation | Aetna C&S | 04 GL 460897 SRA | 8/1/1984 | 8/1/1985 |
| Enterra Corporation | Federal | 7928-5142 | 8/1/1984 | 8/1/1985 |
| Enterra Corporation | Centaur | CML101061 | 8/1/1984 | 8/1/1985 |
| Enterra Corporation | Royal Indemnity | ED 102857 | 8/1/1984 | 8/1/1985 |
| Enterra Corporation | Royal Indemnity | ED102857 | 8/1/1984 | 8/1/1985 |
| Enterra Corporation | First State | EU002250 | 8/1/1984 | 8/1/1985 |
| Enterra Corporation | Western Employers | EX10-0884-10368 | 8/1/1984 | 8/1/1985 |
| Enterra Corporation | Evanston | EX11479 | 8/1/1984 | 8/1/1985 |
| Enterra Corporation | Home | HEC 1200431 | 8/1/1984 | 8/1/1985 |
| Enterra Corporation | Harbor | HI178526 | 8/1/1984 | 8/1/1985 |
| Enterra Corporation | Integrity | ISX 114440 | 8/1/1984 | 8/1/1985 |
| Enterra Corporation | Mutual Marine Office, Inc. for Employers Mutual Casualty Company | MMO73614 | 8/1/1984 | 8/1/1985 |
| Enterra Corporation | Mission | MN034232 | 8/1/1984 | 8/1/1985 |
| Enterra Corporation | Highlands | SR22300 | 8/1/1984 | 8/1/1985 |
| Enterra Corporation | Highlands | SR22301 | 8/1/1984 | 8/1/1985 |
| Enterra Corporation | Twin City Fire | TXS101883 | 8/1/1984 | 8/1/1985 |
| Enterra Corporation | Safety National Cas | UF1846PA | 8/1/1984 | 8/1/1985 |
| Enterra Corporation | Pacific Empl | XCC014536 | 8/1/1984 | 8/1/1985 |
| Enterra Corporation | Pacific Employers | XCC014536 | 8/1/1984 | 8/1/1985 |
| Enterra Corporation | United National | XTP-11026 | 8/1/1984 | 8/1/1985 |
| Enterra Corporation | California Union | ZCX007054 | 8/1/1984 | 8/1/1985 |
| Enterra Corporation | Aetna C&S | 04 GL 544144 SRA | 8/1/1985 | 12/27/1985 |
| Enterra Corporation | Aetna C&S | 04 XS 205504 SRA | 8/1/1985 | 12/27/1985 |
| Enterra Corporation | Aetna C&S | 04 GL 554165 SRA | 12/27/1985 | 12/27/1986 |
| Enterra Corporation | Aetna C&S | 04 XS 205509 SRA | 12/27/1985 | 12/27/1986 |
| Racal-Chubb | City Insurance | GL 994852 | 4/1/1987 | 3/1/1988 |
| Racal-Chubb | Royal Indemnity | RIG550721 | 3/1/1988 | 3/31/1989 |
| Racal-Chubb | Royal Indemnity | RIW550911 | 3/31/1989 | 3/31/1990 |
| Racal-Chubb | Royal Indemnity | RIW550912 | 3/31/1990 | 3/31/1991 |
| Racal-Chubb | Royal Indemnity | RIW550913 | 3/31/1991 | 3/31/1992 |
| Racal-Chubb | Royal Indemnity | RIW754971 | 3/31/1992 | 3/31/1993 |
| Racal-Chubb | Royal Indemnity | RIW754972 | 3/31/1993 | 3/31/1994 |
| Racal-Chubb | London Companies | B3C5016 | 4/1/1993 | 3/31/1994 |
| Racal-Chubb | Royal Indemnity | RIW755101 | 3/31/1994 | 3/31/1995 |
| Racal-Chubb | London Companies | B4C5016 | 4/1/1994 | 3/31/1995 |
| Racal-Chubb | London Companies | B4C5017 | 4/1/1994 | 3/31/1995 |
| Racal-Chubb | Royal Indemnity | RIW762951 | 3/31/1995 | 3/31/1996 |
| Racal-Chubb | London Companies | B5C5016 | 4/1/1995 | 3/31/1996 |

| | | | | |
|---|---|---|---|---|
| Racal-Chubb | London Companies | B5C5017 | 4/1/1995 | 3/31/1996 |
| Racal-Chubb | Royal Indemnity | TBD | 3/31/1996 | 1/1/1997 |
| Racal-Chubb | London Cos | B6C6429 | 4/1/1996 | 1/1/1997 |
| Racal-Chubb | London Cos | B6C6430 | 4/1/1996 | 1/1/1997 |
| Racal-Chubb | London Cos | B6C6431 | 4/1/1996 | 1/1/1997 |
| Williams Holdings plc | London Cos | 820/QE001EOH / 9700202S0110 | 1/1/1997 | 12/31/1997 |
| Williams Holdings plc | London Cos | 820/QE001FOH / 9700202Q0111 | 1/1/1997 | 12/31/1997 |
| Williams Holdings plc | Royal Indemnity | RIW7650810000 | 1/1/1997 | 1/1/1998 |
| Williams Holdings plc | Royal & Sun Alliance | YMM817226/7 | 1/1/1997 | 12/31/1997 |
| Williams Holdings plc | London Cos | 820/QE006XOJ / 9800201S0110 | 1/1/1998 | 12/31/1998 |
| Williams Holdings plc | Royal & Sun Alliance | 9805709S0110 | 1/1/1998 | 12/31/1998 |
| Williams Holdings plc | Royal Indemnity | RIW7650810098 | 1/1/1998 | 1/1/1999 |
| Williams Holdings plc | London Cos | 820 / QE006XOK / 9900201S0110 | 1/1/1999 | 12/31/1999 |
| Williams Holdings plc | Royal & Sun Alliance | 9600372S0111 | 1/1/1999 | 12/31/1999 |
| Williams Holdings plc | Royal Indemnity | RIW7650810099 | 1/1/1999 | 1/1/2000 |
| Williams Holdings plc | London Cos | 823/KL0000185 | 1/1/2000 | 11/13/2000 |
| Williams Holdings plc | Royal & Sun Alliance | 9600372S0111 | 1/1/2000 | 11/13/2000 |
| Williams Holdings plc | Royal Indemnity | RIW76508100100Y | 1/1/2000 | 11/13/2000 |
| Kidde plc | London Cos | 823/KL00002466 | 11/13/2000 | 12/31/2001 |
| Kidde plc | London Cos | 823/KL00002467 | 11/13/2000 | 12/31/2001 |
| Kidde plc | Royal Indemnity | RIW003840000 | 11/13/2000 | 12/31/2001 |
| Kidde plc | Royal & Sun Alliance | YMM817665 | 11/13/2000 | 12/31/2001 |
| Kidde plc | Royal Indemnity | R2IW0034630000 | 12/31/2001 | 12/31/2002 |
| Kidde plc | Royal & Sun Alliance | YMM817665 | 12/31/2001 | 12/31/2002 |
| Kidde plc | Starr Excess | 6394062 | 1/1/2002 | 12/31/2002 |
| Kidde plc | Zurich Int'l (UK) | 716/WRS022138009 | 1/1/2002 | 12/31/2002 |
| Kidde plc | London Cos | 716/WRS022141937 | 1/1/2002 | 12/31/2002 |
| Kidde plc | London Cos | 716/WRS022141945 | 1/1/2002 | 12/31/2002 |
| Kidde plc | Liberty Int'l | DU003216002 | 1/1/2002 | 1/1/2003 |
| Kidde plc | Starr Excess | 6340140 | 1/1/2003 | 12/31/2003 |
| Kidde plc | Zurich Ins Co (UK) | 716/WRS032138005 | 1/1/2003 | 12/31/2003 |
| Kidde plc | AIG Europe | 716/WRS032141937 / 716/WRS032138009 | 1/1/2003 | 12/31/2003 |
| Kidde plc | London Cos | 716/WRS032141945 | 1/1/2003 | 12/31/2003 |
| Kidde plc | AIG Europe | 716/WRS032153600 | 1/1/2003 | 12/31/2003 |
| Kidde plc | AWAC (Europe) | C001442-001 | 1/1/2003 | 12/31/2003 |
| Kidde plc | Zurich American | GLO 3373845-00 | 1/1/2003 | 1/1/2004 |
| Kidde plc | Zurich Insurance Co (UK) | 716/WRS042138005 | 1/1/2004 | 5/31/2005 |
| Kidde plc | AIG Europe & AWAC Europe | 716/WRS042141937 | 1/1/2004 | 5/31/2005 |
| Kidde plc | London Cos | 716/WRS042141945 | 1/1/2004 | 5/31/2005 |
| Kidde plc | London Cos | 716/WRS042141949 | 1/1/2004 | 5/31/2005 |
| Kidde plc | AIG Europe | 716/WRS042138009 | 1/1/2004 | 5/31/2005 |
| Kidde plc | Zurich American | GLO 3373845-01 | 1/1/2004 | 6/1/2005 |
| UTC Corporation | Starr Excess Liab | 4009874 | 6/1/2005 | 6/1/2006 |
| UTC Corporation | National Union Fire | 4484724 | 6/1/2005 | 6/1/2006 |
| UTC Corporation | American Guar & Liab | AEC534681500 | 6/1/2005 | 6/1/2006 |
| UTC Corporation | Arch Re Ltd | B4URP0339500 | 6/1/2005 | 6/1/2006 |
| UTC Corporation | AWAC | C003511002 | 6/1/2005 | 6/1/2006 |
| UTC Corporation | Great American | EXC5750137 | 6/1/2005 | 6/1/2006 |
| UTC Corporation | Endurance Specialty | P005341001 | 6/1/2005 | 6/1/2006 |
| UTC Corporation | Gerling Konzern | UK7361700 | 6/1/2005 | 6/1/2006 |
| UTC Corporation | XL Insurance Co | UK7361800 | 6/1/2005 | 6/1/2006 |
| UTC Corporation | ACE Insurance Co | UTX5117/5 | 6/1/2005 | 6/1/2006 |
| UTC Corporation | ACE Insurance Co | UTX5117/5 | 6/1/2005 | 6/1/2006 |
| UTC Corporation | Arch Specialty | UXP000705300 | 6/1/2005 | 6/1/2006 |
| UTC Corporation | XL Insurance Co | XLUMB601542 | 6/1/2005 | 6/1/2006 |
| UTIV | TBD | TBD | 6/1/2005 | 6/1/2006 |
| UTC Corporation | Starr Excess Liab | 311011 | 6/1/2006 | 9/1/2007 |
| UTC Corporation | Lexington | 5577432 | 6/1/2006 | 9/1/2007 |
| UTC Corporation | Federal | 79844829 | 6/1/2006 | 9/1/2007 |
| UTC Corporation | Gerling Konzern | 576UL73617 | 6/1/2006 | 9/1/2007 |
| UTC Corporation | London Cos | 576UL73935 | 6/1/2006 | 9/1/2007 |
| UTC Corporation | American Guar & Liab | AEC534681501 | 6/1/2006 | 9/1/2007 |
| UTC Corporation | National Union Fire | BE4485396 | 6/1/2006 | 9/1/2007 |
| UTC Corporation | AWAC | C003511003 | 6/1/2006 | 9/1/2007 |
| UTC Corporation | Great American | EXC9251752 | 6/1/2006 | 9/1/2007 |

| | | | | |
|---|---|---|---|---|
| UTC Corporation | Landmark American | LHA035155 | 6/1/2006 | 9/1/2007 |
| UTC Corporation | Endurance Specialty | P005341002 | 6/1/2006 | 9/1/2007 |
| UTC Corporation | XL Europe – Ireland | UL73618 | 6/1/2006 | 9/1/2007 |
| UTC Corporation | Liberty Mutual EU | UL73937 | 6/1/2006 | 9/1/2007 |
| UTC Corporation | Arch Re Ltd | URP001583000 | 6/1/2006 | 9/1/2007 |
| UTC Corporation | ACE Insurance Co | UTX5117/5 | 6/1/2006 | 9/1/2007 |
| UTC Corporation | ACE Insurance Co | UTX5517/5 | 6/1/2006 | 9/1/2007 |
| UTC Corporation | Arch Specialty | UXP001568300 | 6/1/2006 | 9/1/2007 |
| UTC Corporation | ACE American | XCPG23713822 | 6/1/2006 | 9/1/2007 |
| UTC Corporation | XL Insurance Co | XLUMB601542 | 6/1/2006 | 9/1/2007 |
| UTIV | Swiss Re | 327652 | 6/1/2006 | 9/1/2007 |
| UTIV | SCOR | 576/UL73936 | 6/1/2006 | 9/1/2007 |
| UTIV | TBD | TBD | 6/1/2006 | 9/1/2007 |
| UTC Corporation | AIG Excess Liab | 9495583 | 9/1/2007 | 9/1/2008 |
| UTC Corporation | Federal | 79844829 | 9/1/2007 | 9/1/2008 |
| UTC Corporation | American Guar & Liab | AEC534681502 | 9/1/2007 | 9/1/2008 |
| UTC Corporation | National Union Fire | BE9835138 | 9/1/2007 | 9/1/2008 |
| UTC Corporation | Great American | EXC9253321 | 9/1/2007 | 9/1/2008 |
| UTC Corporation | Endurance Amer | LD10000720800 | 9/1/2007 | 9/1/2008 |
| UTC Corporation | Landmark American | LHA040990 | 9/1/2007 | 9/1/2008 |
| UTC Corporation | Arch Specialty | UXP001568301 | 9/1/2007 | 9/1/2008 |
| UTC Corporation | ACE American | XCPG23885682 | 9/1/2007 | 9/1/2008 |
| UTIV | Lexington | 5577738 | 9/1/2007 | 9/1/2008 |
| UTIV | XL Europe | 576UM73618 | 9/1/2007 | 9/1/2008 |
| UTIV | Berkshire Hathaway Int'l | 576UM74235 | 9/1/2007 | 9/1/2008 |
| UTIV | Munich Re | 9412671 | 9/1/2007 | 9/1/2008 |
| UTIV | AWAC | C003511004 | 9/1/2007 | 9/1/2008 |
| UTIV | Swiss Re | MH327652 | 9/1/2007 | 9/1/2008 |
| UTIV | Swiss Re | MH327653 | 9/1/2007 | 9/1/2008 |
| UTIV | Endurance | P005341-003 | 9/1/2007 | 9/1/2008 |
| UTIV | Arch Re Ltd. | URP001583001 | 9/1/2007 | 9/1/2008 |
| UTIV | ACE Bermuda | UTC1318005RE | 9/1/2007 | 9/1/2008 |
| UTIV | XL Ins. Bermuda | XSRE601542 | 9/1/2007 | 9/1/2008 |
| UTC Corporation | Lexington | 2213721 | 9/1/2008 | 9/1/2009 |
| UTC Corporation | AIG Excess Liab | 2350648 | 9/1/2008 | 9/1/2009 |
| UTC Corporation | Chubb Atlantic | 33101638 | 9/1/2008 | 9/1/2009 |
| UTC Corporation | Federal | 79844829 | 9/1/2008 | 9/1/2009 |
| UTC Corporation | American Guar & Liab | AEC534681503 | 9/1/2008 | 9/1/2009 |
| UTC Corporation | American Guar & Liab | AEC967326200 | 9/1/2008 | 9/1/2009 |
| UTC Corporation | National Union Fire | BE6081844 | 9/1/2008 | 9/1/2009 |
| UTC Corporation | Great American | EXC2195181 | 9/1/2008 | 9/1/2009 |
| UTC Corporation | Arch Specialty | UXP002854900 | 9/1/2008 | 9/1/2009 |
| UTC Corporation | ACE American | XCPG2468163 | 9/1/2008 | 9/1/2009 |
| UTIV | Lexington | 2213721 | 9/1/2008 | 9/1/2009 |
| UTIV | Munich Re | 3011593 | 9/1/2008 | 9/1/2009 |
| UTIV | Berkshire Hathaway Int'l | 495711 | 9/1/2008 | 9/1/2009 |
| UTIV | XL Ins. Ltd. | 576/UN73618 | 9/1/2008 | 9/1/2009 |
| UTIV | SJCatlin | 576/UN74544 | 9/1/2008 | 9/1/2009 |
| UTIV | XL Ins. Bermuda | BM0023848LI08A | 9/1/2008 | 9/1/2009 |
| UTIV | AWAC Specialty | C003511005 | 9/1/2008 | 9/1/2009 |
| UTIV | Aspen Ins. UK | K0A065908A0E | 9/1/2008 | 9/1/2009 |
| UTIV | Swiss Re American | MH32765310 | 9/1/2008 | 9/1/2009 |
| UTIV | Endurance Specialty | P005341-004 | 9/1/2008 | 9/1/2009 |
| UTIV | TBD | TBD | 9/1/2008 | 9/1/2009 |
| UTIV | Canopius Re | UTX-008/UTIVOCCRE-08 | 9/1/2008 | 9/1/2009 |
| UTIV | ACE Bermuda | UTX200809OCCCRE | 9/1/2008 | 9/1/2009 |
| UTC Corporation | AIG Excess Liab | 21472658 | 9/1/2009 | 9/1/2010 |
| UTC Corporation | American Guar & Liab | AEC534681504 | 9/1/2009 | 9/1/2010 |
| UTC Corporation | American Guar & Liab | AEC967326201 | 9/1/2009 | 9/1/2010 |
| UTC Corporation | National Union Fire | BE27471365 | 9/1/2009 | 9/1/2010 |
| UTC Corporation | Great American | EXC8634502 | 9/1/2009 | 9/1/2010 |
| UTC Corporation | Arch Insurance | UXP002854901 | 9/1/2009 | 9/1/2010 |
| UTC Corporation | ACE American | XCPG24896468 | 9/1/2009 | 9/1/2010 |
| UTIV | Lexington London | 2214028 | 9/1/2009 | 9/1/2010 |
| UTIV | Argo Re | ARGO-CAS-OCC-RE-000116.1 | 9/1/2009 | 9/1/2010 |

| UTIV | Liberty Mutual Insurance Europe Ltd. | B080110588U09 | 9/1/2009 | 9/1/2010 |
|---|---|---|---|---|
| UTIV | SJ Catlin | B080110591U09 | 9/1/2009 | 9/1/2010 |
| UTIV | XL Europe UK | B080111977U09 | 9/1/2009 | 9/1/2010 |
| UTIV | XL Bermuda | BM00023848LI08A | 9/1/2009 | 9/1/2010 |
| UTIV | AWAC | C003511006 | 9/1/2009 | 9/1/2010 |
| UTIV | AWAC | C012739/001 | 9/1/2009 | 9/1/2010 |
| UTIV | Aspen Ins. UK | K0A065909A0E | 9/1/2009 | 9/1/2010 |
| UTIV | Liberty Mutual Ins. Europe Ltd. | LO842215001 | 9/1/2009 | 9/1/2010 |
| UTIV | Swiss Re | MH32765.2.16 | 9/1/2009 | 9/1/2010 |
| UTIV | Endurance Specialty | P005341 005 | 9/1/2009 | 9/1/2010 |
| UTIV | Canopius Undw. Bermuda | UTX-113/UTIVOCCRE-09 | 9/1/2009 | 9/1/2010 |
| UTIV | ACE Bermuda | UTX-200910/OCCRE | 9/1/2009 | 9/1/2010 |
| UTC Corporation | National Union Fire | 15972413 | 9/1/2010 | 9/1/2011 |
| UTC Corporation | Chartis Excess | 60703823 | 9/1/2010 | 9/1/2011 |
| UTC Corporation | Federal | 79861188 | 9/1/2010 | 9/1/2011 |
| UTC Corporation | American Guar & Liab | AEC53468150 | 9/1/2010 | 9/1/2011 |
| UTC Corporation | American Guar & Liab | AEC96732620 | 9/1/2010 | 9/1/2011 |
| UTC Corporation | Great American | EXC2098183 | 9/1/2010 | 9/1/2011 |
| UTC Corporation | Arch Insurance | UXP00285490 | 9/1/2010 | 9/1/2011 |
| UTC Corporation | ACE American | XCPG4907764 | 9/1/2010 | 9/1/2011 |
| UTIV | Munich Re | 10052792 | 9/1/2010 | 9/1/2011 |
| UTIV | Argo Re | ARGO-CAS-OCC-RE-000116.2 | 9/1/2010 | 9/1/2011 |
| UTIV | Liberty Mutual UK | B080110588U10 | 9/1/2010 | 9/1/2011 |
| UTIV | SJCatlin | B080110591U10 | 9/1/2010 | 9/1/2011 |
| UTIV | Lexington UK | B080111972U10 | 9/1/2010 | 9/1/2011 |
| UTIV | XL (UK) | B080111977U10 | 9/1/2010 | 9/1/2011 |
| UTIV | Liberty Mutual UK | B080113281U10 | 9/1/2010 | 9/1/2011 |
| UTIV | XL Bermuda | BM00025047LI10A | 9/1/2010 | 9/1/2011 |
| UTIV | AWAC | C003511007 | 9/1/2010 | 9/1/2011 |
| UTIV | AWAC | C012739/002 | 9/1/2010 | 9/1/2011 |
| UTIV | Aspen | K0A065910AOE | 9/1/2010 | 9/1/2011 |
| UTIV | Swiss Re | MH32765.2.21 | 9/1/2010 | 9/1/2011 |
| UTIV | Swiss Re | MH32765.4.3 | 9/1/2010 | 9/1/2011 |
| UTIV | Endurance Specialty | P005341 006 | 9/1/2010 | 9/1/2011 |
| UTIV | Canopius | UTX-165/UTIVOCCRE-10 | 9/1/2010 | 9/1/2011 |
| UTIV | ACE Bermuda | UTX-201011/OCCRE | 9/1/2010 | 9/1/2011 |
| UTC Corporation | National Union Fire | 25030360 | 9/1/2011 | 9/1/2012 |
| UTC Corporation | Chartis Excess | 60703823 | 9/1/2011 | 9/1/2012 |
| UTC Corporation | Federal | 79861188 | 9/1/2011 | 9/1/2012 |
| UTC Corporation | American Guar & Liab | AEC534681506 | 9/1/2011 | 9/1/2012 |
| UTC Corporation | American Guar & Liab | AEC967326203 | 9/1/2011 | 9/1/2012 |
| UTC Corporation | Argo Re | ARGOCASOCCRE 0001163 | 9/1/2011 | 9/1/2012 |
| UTC Corporation | Great American | EXC2105915 | 9/1/2011 | 9/1/2012 |
| UTC Corporation | Arch | UXP002854903 | 9/1/2011 | 9/1/2012 |
| UTC Corporation | ACE American | XCPG25831184 | 9/1/2011 | 9/1/2012 |
| UTIV | Munich Re | 10052792-2011 | 9/1/2011 | 9/1/2012 |
| UTIV | Lexington London | 62785200 | 9/1/2011 | 9/1/2012 |
| UTIV | Argo Re | ARGO-CAS-OCC-RE-000116.3 | 9/1/2011 | 9/1/2012 |
| UTIV | Liberty Int'l Underwriters UK | B080110588U11 | 9/1/2011 | 9/1/2012 |
| UTIV | SJCatlin | B080110591U11 | 9/1/2011 | 9/1/2012 |
| UTIV | XL UK Ltd. | B080111977U11 | 9/1/2011 | 9/1/2012 |
| UTIV | SCOR Re | B080113965U11 | 9/1/2011 | 9/1/2012 |
| UTIV | Alterra Europe UK | B080113976U11 | 9/1/2011 | 9/1/2012 |
| UTIV | XL Bermuda | BM00025749LI11A | 9/1/2011 | 9/1/2012 |
| UTIV | AWAC | C003511/008 | 9/1/2011 | 9/1/2012 |
| UTIV | AWAC | C012739/002 | 9/1/2011 | 9/1/2012 |
| UTIV | Iron Starr Excess | IS0000630 | 9/1/2011 | 9/1/2012 |
| UTIV | Iron Starr Excess | IS0000631 | 9/1/2011 | 9/1/2012 |
| UTIV | Aspen UK | K0A065911A0E | 9/1/2011 | 9/1/2012 |
| UTIV | Swiss Re | MH32765.2.24 | 9/1/2011 | 9/1/2012 |
| UTIV | Swiss Re | MH32765.4.6 | 9/1/2011 | 9/1/2012 |
| UTIV | Endurance Specialty | P005341 007 | 9/1/2011 | 9/1/2012 |
| UTIV | ACE Bermuda | UTX-201112/OCCRE | 9/1/2011 | 9/1/2012 |
| UTIV | Canopius | UTX-214/UTIVOCCRE-11 | 9/1/2011 | 9/1/2012 |
| UTC Corporation | National Union Fire | 13273307 | 9/1/2012 | 10/1/2013 |

| UTC Corporation | Chartis Excess | 60703823 | 9/1/2012 | 10/1/2013 |
|---|---|---|---|---|
| UTC Corporation | Federal | 79861188 | 9/1/2012 | 10/1/2013 |
| UTC Corporation | American Guar & Liab | AEC534681507 | 9/1/2012 | 10/1/2013 |
| UTC Corporation | American Guar & Liab | AEC967326204 | 9/1/2012 | 10/1/2013 |
| UTC Corporation | Great American | EXC4646473 | 9/1/2012 | 10/1/2013 |
| UTC Corporation | North American Specialty | H2X000059400 | 9/1/2012 | 10/1/2013 |
| UTC Corporation | ACE American | XCPG27043367 | 9/1/2012 | 10/1/2013 |
| UTIV | Lexington London | 62785200 | 9/1/2012 | 10/1/2013 |
| UTIV | Argo Re | ARGO-CAS-OCC-RE-116.4 | 9/1/2012 | 10/1/2013 |
| UTIV | Aspen UK | B080110581U12 | 9/1/2012 | 10/1/2013 |
| UTIV | Liberty Mutual UK | B080110588U12 | 9/1/2012 | 10/1/2013 |
| UTIV | SJCatlin | B080110591U12 | 9/1/2012 | 10/1/2013 |
| UTIV | XL Ins. Ltd. | B080111977U12 | 9/1/2012 | 10/1/2013 |
| UTIV | SCOR Re | B080113965U12 | 9/1/2012 | 10/1/2013 |
| UTIV | Alterra UK | B080113976U12 | 9/1/2012 | 10/1/2013 |
| UTIV | Torus Ins. UK | B080114778U12 | 9/1/2012 | 10/1/2013 |
| UTIV | XL Bermuda | BM00026436LI12A | 9/1/2012 | 10/1/2013 |
| UTIV | AWAC | C003511/009 | 9/1/2012 | 10/1/2013 |
| UTIV | AWAC | C012739/004 | 9/1/2012 | 10/1/2013 |
| UTIV | Iron Starr Excess | IS0001053 | 9/1/2012 | 10/1/2013 |
| UTIV | Iron Starr | IS0001054 | 9/1/2012 | 10/1/2013 |
| UTIV | Swiss Re | MH97422.1 | 9/1/2012 | 10/1/2013 |
| UTIV | Endurance Specialty | P005341 008 | 9/1/2012 | 10/1/2013 |
| UTIV | TBD | TBD | 9/1/2012 | 10/1/2013 |
| UTIV | ACE Bermuda | UTX-201213/OCCRE | 9/1/2012 | 10/1/2013 |
| UTIV | Canopius | UTX-232/UTIVOCCRE-12 | 9/1/2012 | 10/1/2013 |

## Schedule 2

| POLICYHOLDER | INSURANCE CO | POLICY NO | POLICY PERIOD BEGIN | POLICY PERIOD END |
|---|---|---|---|---|
| Racal-Chubb | Lloyd's & London | 551/VV5203 | 4/1/1987 | 3/31/1988 |
| Racal-Chubb | Lloyd's & London | 551/VV5204 | 4/1/1987 | 3/31/1988 |
| Racal-Chubb | Lloyd's & London | 551/VA5309 | 4/1/1988 | 3/31/1989 |
| Racal-Chubb | Lloyd's & London | 551/V1K272 | 4/1/1991 | 3/31/1992 |
| Racal-Chubb | Lloyd's & London | 551/V2K158 | 4/1/1992 | 4/1/1993 |
| Racal-Chubb | Lloyd's & London | 551/V60302 | 4/1/1996 | 3/31/1997 |
| Williams Holdings plc | Lloyd's & London | 823/AK9725001 823/AK9725001(B) 823/AK9725002 | 1/1/1997 | 12/31/1997 |
| Williams Holdings plc | Lloyd's & London | 823/AB9800121 823/AB9800121(B) 823/AB9800122 | 1/1/1998 | 12/31/1998 |
| Williams Holdings plc | Lloyd's & London | 823/AB9900121 823/AB9900122 | 1/1/1999 | 12/31/1999 |
| Williams Holdings plc | Lloyd's & London | 823/AB0000121 823/AB0000122 | 1/1/2000 | 1/1/2001 |
| Kidde plc | Lloyd's & London | 823/AB0033011 823/AB0033012 | 11/13/2000 | 12/31/2001 |
| Kidde plc | Lloyd's & London | 576/AGP1722 | 1/1/2002 | 12/31/2002 |
| Kidde plc | Lloyd's & London | 576/AHP1722 | 1/1/2003 | 10/1/2003 |
| Kidde plc | Lloyd's & London | 576/AHP1839 | 10/1/2003 | 5/31/2004 |
| Kidde plc | Lloyd's & London | 576/AJP1839 | 6/1/2004 | 5/31/2005 |