## Exhibit A

**Further Revised Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | Ref. No. ___ |

## ORDER (I) APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT AND FORM AND MANNER OF NOTICE OF HEARING THEREON; (II) ESTABLISHING SOLICITATION PROCEDURES; (III) APPROVING THE FORM AND MANNER OF NOTICE TO ATTORNEYS AND SOLICITATION DIRECTIVE; (IV) APPROVING THE FORM OF BALLOTS; (V) APPROVING THE FORM, MANNER AND SCOPE OF CONFIRMATION NOTICES; (VI) ESTABLISHING CERTAIN DEADLINES IN CONNECTION WITH APPROVAL OF DISCLOSURE STATEMENT AND CONFIRMATION OF PLAN; AND (VII) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of KFI Wind-Down Corp. (the "Debtor"), for entry of an order (this "Order"): (a) approving the Disclosure Statement for the Plan; (b) approving the form and manner of the Disclosure Statement Hearing Notice in respect of the Disclosure Statement Hearing; (c) establishing the Solicitation Procedures; (d) approving the forms of the Ballots to tabulate votes solicited from Holders of Claims in the Voting Classes; (e) approving the form and manner of the Solicitation Directive Notice and the Solicitation Directive; (f) approving the form, manner and scope of the Confirmation Notices in respect of the Confirmation Hearing; (g) establishing certain deadlines in connection with the foregoing; and (h) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court

---

[1] The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters is located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2] Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

being able to issue a final order consistent with Article III of the United States Constitution; and venue of this Chapter 11 Case and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that proper and adequate notice of the Motion and the relief requested therein has been provided in accordance with the Bankruptcy Rules and the Local Rules, and that, except as otherwise ordered herein, no other or further notice is necessary; and objections (if any) to the Motion having been withdrawn, resolved or overruled on the merits; and a hearing having been held to consider the relief requested in the Motion and upon the record of the hearing and all of the proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtor, its estate, its creditors and all other parties-in-interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

      A.    <u>Disclosure Statement</u>.  The Disclosure Statement provides Holders of Claims in the Voting Classes with adequate information in accordance with section 1125(b) of the Bankruptcy Code and complies with the requirements of section 1125 of the Bankruptcy Code. The Disclosure Statement complies with Bankruptcy Rule 3016(c) and provides Holders of Claims and Interests with sufficient notice of, and describes in specific and conspicuous language, the injunction, exculpation and release provisions in the Plan.  No further information is necessary or required.

      B.    <u>Notice of Disclosure Statement Hearing</u>. Through the Disclosure Statement Hearing Notice, a copy of which was attached to the Motion as Exhibit B, and the notices of adjourned Disclosure Statement Hearing [D.I. 1828, 1916, 2008, 2074] (collectively, the "<u>Notices</u>

of Adjourned Disclosure Statement Hearing"), the Debtor provided adequate and sufficient notice of (i) the objection deadline to, and the hearing to consider, the Motion and (ii) the manner in which copies of the Motion, Disclosure Statement and Plan may be obtained, in satisfaction of the requirements of the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.  No other or further notice is necessary or required.

C.    Confirmation Timeline.  The Debtor's Confirmation Timeline relating to solicitation of votes on the Plan provides (i) parties-in-interest with sufficient time to review and consider all solicitation materials, including the Plan, Disclosure Statement, Plan Supplement and other information and materials relating to confirmation of the Plan, (ii) Holders of Claims in the Voting Classes with sufficient time to make an informed judgment to accept or reject the Plan, (iii) Firms enough time to review and respond to the Solicitation Directive and (iv) all parties-in-interest in the Chapter 11 Case with sufficient time to object or otherwise respond to confirmation of the Plan.

D.    Solicitation Packages.    The procedures set forth in the Solicitation Procedures regarding the form and manner of distribution of the Solicitation Packages to Holders of Claims in the Voting Classes provide such Holders with adequate information to make informed decisions with respect to voting on or objecting or otherwise responding to, confirmation of the Plan in accordance with Bankruptcy Rule 3017(d) and other applicable provisions of the Bankruptcy Code, Bankruptcy Rules and the Local Rules.

E.    Notices of Non-Voting Status.  The procedures set forth in the Solicitation Procedures regarding the form and manner of distribution of Notices of Non-Voting Status to Holders of Claims and Interests in the Non-Voting Classes provide such Holders with adequate information to make informed decisions with respect to objecting or otherwise responding to

-3-

confirmation of the Plan in accordance with Bankruptcy Rule 3017(d) and other applicable provisions of the Bankruptcy Code, Bankruptcy Rules and the Local Rules.

F.    <u>Confirmation Hearing Notice and Publication Notice</u>.    Service in the manner described in this Order and the Solicitation Procedures, as applicable, of the Confirmation Hearing Notice, substantially in the form attached hereto as <u>Exhibit 8</u>, and publication of the Publication Notice, substantially in the form attached hereto as <u>Exhibit 9</u>, constitute good and sufficient notice of the Confirmation Hearing to all Holders of Claims and Interests and other parties-in-interest in this Chapter 11 Case in satisfaction of the requirements of due process, and are in accordance with Bankruptcy Rules 2002(b) and 3017(d), Local Rule 3017-1 and other applicable provisions of the Bankruptcy Code, Bankruptcy Rules and the Local Rules.  No other or further notice is required.

G.    <u>Plan Supplement Notice</u>.  Service in the manner described in the Solicitation Procedures of the Plan Supplement Notice, substantially in the form attached hereto as <u>Exhibit 11</u>, constitutes good and sufficient notice of the Plan Supplement in satisfaction of the applicable provisions of the Bankruptcy Code, Bankruptcy Rules and the Local Rules.  No other or further notice is required.

H.    <u>Ballots</u>.  The forms of the Ballots, substantially in the forms attached hereto as <u>Exhibits 2A</u> through <u>2V</u>, including all voting instructions provided therein, adequately address the circumstances of the Chapter 11 Case and provide for a fair and equitable voting process appropriate for the Voting Classes.  The Ballots are consistent with Official Bankruptcy Form No. 14 and comply with Bankruptcy Rule 3018(c).  Ballots do not need to be provided to Holders of Claims or Interests in the Non-Voting Classes, which are classified as unimpaired under the Plan and are conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy

Code or are not entitled to any distribution under the Plan and are conclusively presumed to reject

the Plan pursuant to section 1126(g) of the Bankruptcy Code, as applicable. No further information

or instructions are necessary.

I.  <u>Solicitation, Voting and Tabulation Procedures</u>.  The Solicitation

Procedures, substantially in the form attached hereto as <u>Exhibit 1</u>, for (i) soliciting, receiving and

tabulating votes to accept or reject the Plan, including for establishing Claim amounts and the

temporary allowance of Claims for voting purposes, and (ii) voting to accept or reject the Plan,

adequately address the circumstances of the Chapter 11 Case and provide for a fair and equitable

solicitation, voting and tabulation process appropriate for the Voting Classes, and comply with

Bankruptcy Rules 3017(d), 3018(a) and 3018(c) and other applicable provisions of the Bankruptcy

Code, Bankruptcy Rules and the Local Rules. The period during which the Debtor may solicit

votes on the Plan is a reasonable and adequate period of time for Holders of Claims entitled to vote

on the Plan to make an informed decision to accept or reject the Plan and timely return Ballots

evidencing such decision.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.  The Motion is GRANTED, as set forth herein.

**I.  Disclosure Statement**

2.  The Disclosure Statement is approved as containing adequate information

within the meaning of section 1125 of the Bankruptcy Code, and the Debtor is authorized to

distribute the Disclosure Statement and the Solicitation Packages in order to solicit votes on, and

pursue confirmation of, the Plan.

3.  All objections to the Disclosure Statement that have not been withdrawn or

resolved previously or at the hearing to consider the Disclosure Statement are overruled.

4917-3096-6273 v.12

4.      The Disclosure Statement Hearing Notice, the Notices of Adjourned Disclosure Statement Hearing and the manner of service thereof as described in the Motion are approved.

**II.     Confirmation Timeline**

5.      The following Confirmation Timeline is approved:

| Event | Date |
|---|---|
| Voting Record Date | June 4, 2025 |
| Solicitation Directive Mailing Deadline | August 25, 2025 |
| Solicitation Directive Response Deadline | October 6, 2025 |
| Solicitation Mailing Deadline | October 13, 2025 |
| Publication Deadline | October 13, 2025 |
| Plan Supplement Filing Deadline | November 17, 2025 |
| Voting Deadline | December 15, 2025, at 5:00 p.m. (prevailing Eastern Time) |
| Confirmation Objection Deadline | December 15, 2025, at 4:00 p.m. (prevailing Eastern Time) |
| Deadline to File Voting Report | December 31, 2025 |
| Confirmation Brief, Proposed Confirmation Order and Confirmation Objection Reply Filing Deadline | January 14, 2026 |
| Confirmation Hearing | January 21, 2026 |

6.      A Confirmation Hearing to consider confirmation of the Plan is hereby scheduled to be held before this Court on **January 21, 2026 at [•] [a.m. / p.m.] (prevailing Eastern Time)**. The Confirmation Hearing may be continued from time to time by the Debtor (in consultation with the Settling Parties) or the Court without further notice other than adjournments announced in open court or in the filing of a notice or a hearing agenda on the docket of the Chapter 11 Case.

7.      The Debtor shall use the Voting Record Date for purposes of determining (a) the Holders of Claims and Interests entitled to receive a Solicitation Package, (b) the Holders of Claims in Class 4 and (c) whether Claims have been transferred properly to an assignee pursuant to Bankruptcy Rule 3001(e), such that the assignee can vote as the Holder of such Claim.

### III.    Solicitation Packages and Materials

8.    The proposed distribution and contents of the Solicitation Packages, which shall include the following, are approved:

a.    with respect to Holders of Claims in the Voting Classes (but subject to the AFFF Master Ballot Solicitation Procedures (as defined below)):

- the Cover Letter;

- the Committee Letter;

- for Holders of Claims in Class 3C, a letter from counsel to the Ad Hoc Committee of Governmental Claimants (the "AHC Letter");

- the Solicitation Procedures;

- a USB flash drive containing a copy of the Disclosure Statement (and exhibits thereto, including the Plan) and the documents contained in the Plan Supplement that have been filed prior to the Solicitation Mailing Deadline;

- the Order (without exhibits);

- an appropriate Ballot and voting instructions for the same;

- a preaddressed, return envelope for completed Ballots; and

- the Confirmation Hearing Notice.

b.    with respect to Holders of Claims and Interests in Non-Voting Classes:

- the Confirmation Hearing Notice; and

- the applicable Notice of Non-Voting Status.

c.    with respect to the U.S. Trustee, a copy of each document contained in each version of the Solicitation Packages, which may include non-customized Ballots and non-customized Notices of Non-Voting Status; and

d.    any other materials ordered by the Court to be included as part of the Solicitation Package.

9.      On or before the Solicitation Mailing Deadline or as soon as reasonably practicable thereafter, the Debtor shall distribute, or cause to be distributed, the Solicitation Packages as set forth in the Solicitation Procedures.

10.     As part of the Solicitation Packages, copies of the Disclosure Statement and all exhibits, including the Plan with its exhibits, shall be provided in PDF format on a USB flash drive, instead of printed hard copies.  The Cover Letter included in the Solicitation Package shall include instructions for obtaining printed copies of the materials free of charge.  The Debtor may substitute hard copies of all solicitation materials instead of the USB flash drive as may be necessary to achieve timely distribution of the Solicitation Packages.  Any party that receives content in the Solicitation Package in USB flash drive format but would prefer to receive materials in paper format may contact the Solicitation Agent and request paper copies of the corresponding materials previously provided in USB flash drive format (to be provided at the Debtor's expense) via the communication methods set forth in the Solicitation Procedures.

11.     For purposes of serving the Solicitation Packages, the Debtor may rely on the address information for Voting Classes and Non-Voting Classes as compiled, updated and maintained by the Solicitation Agent as of the Voting Record Date.  The Debtor is not required to serve a Solicitation Package or notice of any kind upon any person or entity to whom the Debtor mailed the Disclosure Statement Notice or other notice in the Chapter 11 Case and such notice was returned as undeliverable, unless the Solicitation Agent is provided with an accurate address for such person or entity prior to the Voting Record Date.

## IV.    Solicitation Procedures

12.     The Solicitation Procedures, including the AFFF Master Ballot Solicitation Procedures, and the establishment of Claim amounts and the temporary allowance of Claims for

4917-3096-6273 v.12

voting purposes, attached hereto as Exhibit 1, are approved in their entirety. The Debtor and the Solicitation Agent are authorized to accept, solicit, receive and tabulate votes to accept or reject the Plan in accordance with the Solicitation Procedures, which are incorporated herein by reference.

13.     The forms of Ballots attached hereto as Exhibits 2A-2V are approved in their entirety.

14.     The Cover Letter, Committee Letter, and AHC Letter, substantially in the forms attached hereto as Exhibits 3, 4, and 12, respectively, are approved.

15.     The Solicitation Directive Notice and Solicitation Directive, substantially in the forms attached hereto as Exhibits 6 and 7, respectively, are approved. Each Firm is required to complete and return the Solicitation Directive and Client List to the Solicitation Agent on or before the Solicitation Directive Response Deadline (**October 6, 2025**), which deadline may be extended by the Debtor in writing, in consultation with the Settling Parties. The Solicitation Agent is authorized to accept the Solicitation Directives, Client Lists and AFFF Master Ballots submitted pursuant to the AFFF Master Ballot Solicitation Procedures via encrypted email or other secured method of electronic communication.

16.     The Solicitation Agent shall process and tabulate Ballots and file the Voting Report no later than the Voting Report Deadline. The Voting Report shall include, among other things, a general description of the methodology used for solicitation and tabulation, final voting results, any exceptions granted to otherwise-applicable Solicitation Procedures, and an exhibit showing any votes excluded as invalid and the reason for invalidity. The Voting Report shall also identify votes, if any, that were changed or withdrawn before the Voting Deadline and a general description of any communications with voters regarding solicitation. To preserve the

-9-

confidentiality of Personal Injury Claim voters, the Solicitation Agent will identify defective Ballots by using law firm names and unique identification numbers and may redact the names, addresses, birth dates, and other personally identifying information of Personal Injury Claim voters appearing anywhere on the Voting Report and its exhibits.

17.    The Debtor, in its discretion, and subject to contrary order of this Court and the procedures governing Solicitation Changes, may waive any defect in any Ballot at any time, either before or after the close of voting and without notice.  Except as otherwise provided herein and subject to the procedures governing Solicitation Changes, unless the Ballot being furnished is timely submitted on or prior to the Voting Deadline (as may be extended by the Debtor in writing, in consultation with the Settling Parties), the Debtor may reject such Ballot as invalid, and therefore, decline to utilize it in connection with confirmation of the Plan by this Court.

18.    The Solicitation Agent is authorized to accept Ballots via electronic online transmission solely through a customized online balloting portal on the Debtor's case website; *provided* that the Solicitation Agent may otherwise receive all AFFF Master Ballots in accordance with this Order.  The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted in this manner, and the creditor's electronic signature shall be deemed to be immediately legally valid and effective.  Ballots submitted via the customized online balloting portal shall be deemed to contain an original signature.

19.    Notwithstanding anything to the contrary herein and for the avoidance of doubt, all Persons that believe they hold an AFFF Claim other than a Sovereign State Claim against the Debtor shall be entitled to obtain a Solicitation Package (and applicable Ballot) and vote on the Plan, so long as any such Person makes the required certifications on the applicable Ballot.  All materials included in the Solicitation Packages for Holders of AFFF Claims other than Sovereign

-10-

State Claims against the Debtor shall be made available free of charge online at the Debtor's website maintained by the Solicitation Agent, https://cases.stretto.com/kfi. The dedicated webpage shall contain an online portal whereby Persons may request (and immediately obtain) and submit a Ballot on account of an AFFF Claim other than a Sovereign State Claim against the Debtor.

20.    All other Solicitation Package requests must be made by email to KFIInquiries@stretto.com or through the online portal, and the Solicitation Agent will not be required to provide Solicitation Packages to parties that do not make a request in this manner. If a Person eligible to vote on the Plan contacts the Solicitation Agent more than seven business days before the Voting Deadline and requests a Solicitation Package, the Solicitation Agent will provide such claimant with a Solicitation Package within two business days of such request, and if such request is made on or after seven business days before the Voting Deadline, the Solicitation Agent shall provide the Solicitation Package by overnight mail; *provided* that unless hard copy service is requested, the Solicitation Agent will provide parties with the Solicitation Package documents or a link where they can be accessed via email. All such requests must be submitted by no later than three business days before the Voting Deadline.

21.    The Solicitation Agent is authorized to rely on the certifications made in any Ballot with respect to whether a Person holds a Claim against the Debtor.

22.    The Solicitation Agent is authorized to rely on the certifications made in any AFFF Master Ballot by a Firm regarding its authority to vote on behalf of its Eligible Clients.

23.    The Solicitation Agent is authorized to assist the Debtor in (a) distributing the Solicitation Packages; (b) receiving, tabulating and reporting on Ballots cast to accept or reject the Plan by Holders of Claims against the Debtor; (c) responding to inquiries from Holders of

Claims and Interests and other parties-in-interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Packages and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan; (d) soliciting votes on the Plan; and (e) if necessary, contacting creditors regarding the Plan.

## V.    Confirmation Notices and Objection Procedures

24.    The Confirmation Hearing Notice and manner of service thereof as described in the Solicitation  Procedures are approved.

25.    Any objection to the confirmation of the Plan must:  (a) be in writing; (b) comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules; (c) set forth the name of the objector and the nature and amount of Claims or Interests held or asserted by the objector against the Debtor; (d) state the basis and the specific grounds therefor and (e) be filed with the Bankruptcy Court, together with proof of service thereof, and served so that it is **actually received** by each of the following parties (collectively, the "Notice Parties") no later than **4:00 p.m. (prevailing Eastern Time) on December 15, 2025** (the "Confirmation Objection Deadline") by the following parties:

a.    Counsel to the Debtor: (i) Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004, Attn: Andrew G. Dietderich (dietdericha@sullcrom.com), Brian D. Glueckstein (gluecksteinb@sullcrom.com), Justin J. DeCamp (decampj@sullcrom.com) and Benjamin S. Beller (bellerb@sullcrom.com; and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box. 1347, Wilmington, DE 19899, Attn: Derek C. Abbott (dabbott@morrisnichols.com) and Andrew R. Remming (aremming@morrisnichols.com);

b.    Counsel to the Special Committee of the Board of Directors of the Debtor, Schulte Roth & Zabel LLP, 919 Third Avenue, New York, NY, Attn: Adam Harris (Adam.Harris@srz.com) and Peter Amend (Peter.Amend@srz.com);

-12-

c.     Counsel to Carrier, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Sixth Avenue, New York, NY 10019, Attn: Paul M. Basta (pbasta@paulweiss.com), Kenneth S. Ziman (kziman@paulweiss.com) and Robert A. Britton (rbritton@paulweiss.com);

d.     Counsel to the Committee: (i) Brown Rudnick LLP, Seven Times Square, New York, NY 10036, Attn: David J. Molton (dmolton@brownrudnick.com); Cathrine M. Castaldi (ccastaldi@brownrudnick.com) and Eric R. Goodman (egoodman@brownrudnick.com); and (ii) Stutzman, Bromberg, Esserman & Plifka, 2323 Bryan Street, Suite 2200, Dallas, TX 75201, Attn: Sander L. Esserman (Esserman@sbep-law.com);

e.     The MDL PEC Co-Leads: (i) Baron & Budd, P.C., 3102 Oak Lawn Avenue #1100, Dallas, TX 75219, Attn: Scott Summy (SSummy@baronbudd.com); (ii) Douglas & London, P.C., 59 Maiden Ln., 6th Floor, New York, NY 10038, Attn: Michael London (mlondon@douglasandlondon.com); (iii) Motley Rice LLC, 28 Bridgeside Blvd., Mount Pleasant, SC 29464, Attn: Joseph F. Rice (jrice@motleyrice.com); (iv) Napoli Shkolnik PLLC, 1302 Avenida Ponce de Leon, Santurce, Puerto Rico 00907, Attn: Paul Napoli (PNapoli@NSPRLaw.com); and (v) Taft Stettinius & Hollister LLP, 41 South High Street, Suite 1800, Columbus, OH 43215, Attn: David J. Butler (dbutler@taftlaw.com);

f.     The Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Timothy J. Fox, Esq. (timothy.fox@usdoj.gov); and

g.     To the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.

26.     Any objections to the Plan that fail to comply with the requirements set forth in this Order may not be considered and may be overruled by the Bankruptcy Court without further notice.

27.     The Publication Notice is approved.  No later than the Publication Deadline or as soon as reasonably practicable thereafter, the Debtor shall publish the Publication Notice in The Wall Street Journal.

-13-

28.     The Notice of Unimpaired Non-Voting Status and Notice of Impaired Non-Voting Status, substantially in the forms attached hereto as Exhibits 10A and 10B, respectively, are approved.  The Debtor shall distribute, or cause to be distributed, the Confirmation Hearing Notice and the applicable Notice of Non-Voting Status to Holders of Claims and Interests in the Non-Voting Classes.  The Debtor and the Solicitation Agent shall not be required to mail any other materials relating to voting or confirmation of the Plan to Holders of Claims or Interests in the Non-Voting Classes.

29.     The Plan Supplement Notice is approved.   On or before the Plan Supplement Filing Deadline, or such later date as this Court may approve, the Debtor shall file and serve, or cause to be served, the Plan Supplement Notice as set forth in the Solicitation Procedures.

30.     The Disclosure Statement and Plan shall remain posted in PDF format at https://cases.stretto.com/KFI and shall be provided in either electronic or paper form to any parties-in-interest upon written request to the Debtor.

**VI.     Additional Relief**

31.     The Debtor is authorized to make non-substantive changes, subject to the Settling Parties' consent rights set forth in the Plan Support Agreement, to the Disclosure Statement, Plan, Confirmation Hearing Notice, Solicitation Packages, the Ballots and notices, any voting and tabulation procedures described herein and related documents without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan and any other materials in the Solicitation Packages before distribution.

4917-3096-6273 v.12

32.     Subject to the Settling Parties' consent rights set forth in the Plan Support Agreement, the Debtor reserves the right to modify the Plan in accordance with Article 11.1 thereof, including the right to withdraw the Plan at any time before the Confirmation Hearing Date.

33.     Nothing in this Order shall be construed as a waiver of the right of the Debtor or any other party-in-interest, as applicable, to object to a Proof of Claim after the Voting Record Date.

34.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

35.     The Debtor and the Solicitation Agent are authorized and empowered to execute and deliver all documents and to take and perform all actions necessary to implement and effectuate the relief granted pursuant to this Order.

36.     The Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the Motion or the implementation or interpretation of this Order.

4917-3096-6273 v.12

# **EXHIBIT 1**

## **Solicitation Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |

## SOLICITATION PROCEDURES

On [•], 2025, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Disclosure Statement Order"), which among other things: (i) approved the *Disclosure Statement for the Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (as may be modified, amended, or supplemented from time to time and including all schedules and exhibits thereto, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (ii) authorized the above-captioned debtor (the "Debtor") to solicit votes on the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (as may be modified, amended, or supplemented from time to time and including all schedules and exhibits thereto, the "Plan");[2] (iii) approved these procedures for the solicitation and tabulation of votes on the Plan (the "Solicitation Procedures"); and (iv) approved the solicitation materials and documents to be included in the Solicitation Packages.

### 1. The Voting Record Date

The Court has established **June 4, 2025** (the "Voting Record Date"), as the record date for purposes of determining (a) the Holders of Claims and Interests entitled to receive a Solicitation Package, (b) the Holders of Claims in Class 4 and (c) whether Claims have been transferred properly to an assignee pursuant to Bankruptcy Rule 3001(e), such that the assignee can vote as the Holder of a Claim.  The Voting Classes are:

| Class | Claim |
|---|---|
| 3A | Water Provider Claims |
| 3B | Airport Claims |
| 3C | Sovereign State Claims |
| 3D | Property Damage Claims |
| 3E | Personal Injury Claims |
| 3F | Sovereign Tribe Claims |
| 3G | Business Loss Claims |
| 3H | Fire Training Facility Claims |

---

[1]    The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters is located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Disclosure Statement Order, the Plan, or the Disclosure Statement, as applicable.

| Class | Claim |
|-------|-------|
| 3I | Landfill Claims |
| 3J | Stormwater Claims |
| 3K | Wastewater Claims |
| 4 | General Unsecured Claims |

**2. The Voting Deadline and Ballots**

The Court has approved **December 15, 2025 at 5:00 p.m. (prevailing Eastern Time)** as the voting deadline (the "Voting Deadline") for the Plan.

To be counted as votes to accept or reject the Plan, votes must be submitted on an appropriate ballot or master ballot (each, as applicable, a "Ballot"). There are 10 types of master ballots: one master ballot for each Class of AFFF Claims other than Sovereign State Claims against the Debtor (each, an "AFFF Master Ballot"). AFFF Master Ballots will be used to solicit votes from certain Holders of Claims in Classes 3A, 3B, 3D, 3E, 3F, 3G, 3H, 3I, 3J and 3K.

Votes on the appropriate Ballot must be delivered so that the Ballot is *actually received* no later than the Voting Deadline, which may be extended by the Debtor in writing, by Stretto, Inc. (the "Solicitation Agent"). The procedures governing the submission of your vote depend on the type of Ballot on which your Claim is being voted. Therefore, please refer to your specific Ballot for instructions on the procedures to follow in order to submit your vote properly.

**3. Form, Content, and Manner of the Solicitation Packages and Notices.**

a) The Confirmation Notice.

The Solicitation Packages will include the Confirmation Hearing Notice. As soon as reasonably practicable after entry of the Disclosure Statement Order (but no later than the Solicitation Mailing Deadline (as defined below) and solely to the extent such party is not receiving a Confirmation Hearing Notice in a Solicitation Package, the Debtor shall cause the Confirmation Hearing Notice to be served by electronic and/or first-class mail (based on the contact information in the Debtor's books and records) on the following parties: (a) all Persons that have filed Proofs of Claim in the Chapter 11 Case that have not been withdrawn; (b) all Persons listed in the Schedules (other than claimants who filed litigation against the Debtor in the AFFF MDL); (c) all Holders of Interests; (d) all claimants who filed litigation against the Debtor in the AFFF MDL as of the Petition Date for whom the Debtor has a physical address; (e) counsel to all claimants who filed litigation against the Debtor or a Released Party in the AFFF MDL as of the Voting Record Date; (f) any other known Holders of claims against, or Interests in, the Debtor; (g) the attorneys general of each U.S. state and territory; (h) any Persons for whom the Solicitation Agent received an addressed on a Client List from a Firm; (i) the Notice Parties; and (j) the 2002 List.

4909-0914-4833 v.10

b)  The Solicitation Package.

      The following materials shall constitute the solicitation package (the "Solicitation Package"):

    i.   with respect to Holders of Claims in the Voting Classes (but subject to the AFFF Master Ballot Solicitation Procedures (as defined below)):

- the Cover Letter;

- the Committee Letter;

- for Holders of Claims in Class 3C, the AHC Letter;

- these Solicitation Procedures;

- a USB flash drive containing a copy of the Disclosure Statement (and exhibits thereto, including the Plan) and the documents contained in the Plan Supplement that have been filed prior to the Solicitation Mailing Deadline;

- the Disclosure Statement Order (without exhibits);

- an appropriate Ballot and voting instructions for the same;

- a preaddressed, return envelope for completed Ballots; and

- the Confirmation Hearing Notice.

    ii.   with respect to Holders of Claims and Interests in Non-Voting Classes:

- the Confirmation Hearing Notice; and

- the applicable Notice of Non-Voting Status.

    iii.   with respect to the U.S. Trustee, a copy of each document contained in each version of the Solicitation Packages, which may include non-customized Ballots and non-customized Notices of Non-Voting Status; and

    iv.   any other materials ordered by the Court to be included as part of the Solicitation Package.

c)  Distribution of the Solicitation Packages for Holders of Claims in the Voting Classes and Online Submissions.

      The Solicitation Package shall include a USB flash drive containing electronic copies of the Disclosure Statement with all exhibits, including the Plan, and the documents contained in

-3-

the Plan Supplement that have been filed prior to the Solicitation Mailing Deadline.   All other contents of the Solicitation Package, including all Ballots, shall be provided in paper format.

For the avoidance of doubt, the paper Ballots contain instructions for electronic, online transmission of the Ballots.   The Ballots (other than AFFF Master Ballots) can be submitted via electronic, online transmissions, solely through a customized online balloting portal on the Debtor's case website maintained at *https://cases.stretto.com/KFI*.   Persons entitled to vote may cast an electronic Ballot and electronically sign and submit the Ballot instantly by utilizing the online balloting portal (which allows a Holder of a Claim to submit an electronic signature). The AFFF Master Ballots may be submitted via email and Firms are strongly encouraged to submit the AFFF Master Ballots and accompanying Exhibits (as defined below) via encrypted email or other secured method of electronic transmission.

The Debtor may substitute paper copies of all solicitation materials instead of the USB flash drive as may be necessary to achieve timely distribution of the Solicitation Package.   Any party that would prefer paper format versions of any of the documents in the Solicitation Package may request such paper copies, at the Debtor's expense, by contacting the Solicitation Agent by: (i) calling (866) 887-0488   (toll-free) or +1 (949) 889-0128 (international); (ii) visiting the Debtor's   restructuring   website   at:   https://cases.stretto.com/KFI;   (iii) writing KFI Ballot Processing c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602; and/or (iv) emailing KFIInquiries@stretto.com.

In addition, on or before October 13, 2025 (the "Solicitation Mailing Deadline") or as soon as reasonably practicable thereafter, the Debtor shall serve, or cause to be served, a Solicitation Package to Holders of Claims in the Voting Classes as follows:

     i.    With respect to AFFF Claims:

- o The Solicitation Agent shall serve a Solicitation Package including the applicable Ballot on claimants who have filed Proofs of Claim in the Chapter 11 Case on account of an AFFF Claim as of the Voting Record Date.

- o The Solicitation Agent shall serve a Solicitation Package including a Class 3C Ballot on the attorneys general of each U.S. state and territory.

- o The Solicitation Agent shall solicit all other known Holders of AFFF Claims pursuant to the AFFF Master Ballot Procedures described below.

- o Unless (i) a Holder of an AFFF Claim filed a Proof of Claim in the Chapter 11 Case on account of an AFFF Claim by the Voting Record Date or (ii) a Firm (as defined below) directs the Debtor to directly solicit an Eligible Client (as defined below) via the Direct Solicitation Method (as defined below) and (a) such Eligible Client has filed a Proof of Claim in the Chapter 11 Case including a mailing address or (b) the Firm provides a mailing address for such Eligible Client, the Debtor will not serve a Solicitation Package on Holders of Class 3A, 3B, 3D, 3E, 3F, 3G, 3H, 3I, 3J or 3K Claims.

-4-

ii.    With respect to Claims other than AFFF Claims in a Voting Class:

o    The Solicitation Agent shall serve a Solicitation Package including a Class 4 Ballot on Holders of General Unsecured Claims in accordance with the procedures set forth herein.

Notwithstanding anything to the contrary herein, all Persons that believe they hold an AFFF Claim other than a Sovereign State Claim against the Debtor shall be entitled to obtain a Solicitation Package (and applicable Ballot) and vote on the Plan, so long as any such Person makes the required certifications on the applicable Ballot. All materials included in the Solicitation Packages for Holders of AFFF Claims other than Sovereign State Claims against the Debtor will be made available free of charge online at the Debtor's website maintained by the Solicitation Agent, https://cases.stretto.com/kfi. The dedicated webpage will contain an online portal whereby Persons may request (and immediately obtain) and submit a Ballot on account of an AFFF Claim other than a Sovereign State Claim against the Debtor.

All other Solicitation Package requests must be made by email to KFIInquiries@stretto.com or through the online portal, and the Solicitation Agent will not be required to provide Solicitation Packages to parties that do not make a request in this manner. If a Person eligible to vote on the Plan contacts the Solicitation Agent more than seven business days before the Voting Deadline and requests a Solicitation Package, the Solicitation Agent will provide such claimant with a Solicitation Package within two business days of such request, and if such request is made on or after seven business days before the Voting Deadline, the Solicitation Agent shall provide the Solicitation Package by overnight mail; *provided* that unless hard copy service is requested, the Solicitation Agent will provide parties with the Solicitation Package documents or a link where they can be accessed via email. All such requests must be submitted by no later than three business days before the Voting Deadline.

For purposes of serving the Solicitation Packages, the Debtor may rely on the address information for Voting Classes and Non-Voting Classes as compiled, updated, and maintained by the Solicitation Agent as of the Voting Record Date. The Debtor and the Solicitation Agent are not required to conduct any additional research for updated addresses based on undeliverable Solicitation Packages (including Ballots), but the Solicitation Agent will maintain a record of all Solicitation Packages returned as undeliverable.

d)    Other Parties

The Solicitation Agent shall serve a copy of each document contained in each version of the Solicitation Packages, which may include non-customized Ballots and non-customized Notices of Non-Voting Status, on the U.S. Trustee.

The Solicitation Agent shall also serve a Solicitation Package (without a Ballot) on the Notice Parties.

e)    Non-Voting Status Notices for Unimpaired Classes and Classes Deemed to Reject the Plan.

-5-

Certain Holders of Claims and Interests that (i) are not entitled to vote because they are Unimpaired or otherwise presumed to accept the Plan under section 1126(f) of the Bankruptcy Code or (ii) are not entitled to vote because they are Impaired and presumed to reject the Plan under section 1126(g) of the Bankruptcy Code, will receive only a notice of non-voting status, substantially in one of the forms attached as Exhibits 10A and 10B to the Disclosure Statement Order (each, a "Notice of Non-Voting Status").[3]  Such notice will instruct such Holders as to how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots).   Each Holder that receives a Notice of Non-Voting Status will also receive a Confirmation Hearing Notice.

f)  Plan Supplement

The documents contained in the Plan Supplement that have been filed as of the Solicitation Mailing Deadline will be included in the Solicitation Packages as applicable.  Any further Plan Supplement, and any amendments or supplements to the foregoing, will be served on: (a) the U.S. Trustee, (b) the Notice Parties and (c) the 2002 List.

**4. Establishing Claim Amounts for Voting Purposes and Allowance and Disallowance of Claims for Tabulation Purposes.**

A claimant who holds a Claim in a Voting Class is nonetheless not entitled to vote to the extent that:

    i.  such claimant's Claim has been disallowed, expunged, or superseded; or

    ii.  (A) such claimant's Claim is either (1) not listed on the Schedules, (2) scheduled at zero or in an unknown amount, or (3) listed on the Schedules as unliquidated, contingent or disputed and (B) such claimant did not file a timely Proof of Claim with respect to such Claim; *provided*, *however*, that this specific provision shall not apply to Holders of AFFF Claims against the Debtor.

Solely for the purpose of voting, each Claim within the Voting Classes is temporarily allowed in an amount equal to the liquidated, noncontingent and undisputed amount of such Claim set forth in the Schedules or Proof of Claim, as applicable, subject to the following exceptions:

    i.  if a Proof of Claim was timely filed in an amount that is wholly liquidated, noncontingent and undisputed, such Claim is temporarily allowed solely for voting purposes in the amount set forth in the Proof of Claim, unless such Claim is disputed as set forth in subparagraph (ix) below;

    ii.  if a Claim for which a Proof of Claim has been timely filed is wholly contingent, unliquidated, or disputed (based on the face of such Proof of

---

[3]  Holders of Claims in Classes 1 and 2 will receive a Notice of Unimpaired Non-Voting Status for Holders deemed to accept the Plan.   Holders of Claims and Interests in Classes 5 and 6 will receive a Notice of Impaired Non-Voting Status for Holders deemed to reject the Plan.

Claim or as determined upon the review of the Debtor), such Claim is accorded one vote and valued at $1.00 for voting purposes only, and not for purposes of allowance or distribution, unless such Claim is disputed as set forth in subparagraph (ix) below;

iii.  notwithstanding anything to the contrary herein, each Claim in Classes 3A, 3B, 3C, 3D, 3E, 3F, 3G, 3H, 3I, 3J and 3K shall be accorded one vote and valued at $1.00 for voting purposes only, and not for purposes of allowance or distribution;

iv.  if a Claim is listed on a timely filed Proof of Claim as contingent, unliquidated or disputed in part, such Claim is temporarily allowed in the amount that is liquidated, noncontingent and undisputed, unless such Claim is disputed as set forth in subparagraph (ix) below;

v.  subject to subparagraph (ix) below, if a Claim has been estimated or otherwise allowed for voting purposes by order of the Court on or before the Voting Deadline, such Claim is temporarily allowed in the amount so estimated or allowed by the Court for voting purposes only; *provided that* nothing in the Solicitation Procedures shall limit in any way the effect of an order allowing a Claim for purposes of distribution and allowance;

vi.  any claimant who has filed or purchased duplicate Claims within the same Class (based on the reasonable determination of the Debtor) will be provided with only one Solicitation Package and one Ballot for voting a single Claim in such Class, regardless of whether the Debtor has objected to such duplicate Claim;

vii.  each claimant who holds or has filed more than one non-duplicative Claim within a particular Class shall be treated as if such claimant has only one Claim in such Class in the aggregate dollar amount of such Claims;

viii.  if a Proof of Claim has been validly amended by a later Proof of Claim that is filed on or prior to the Voting Record Date, the later filed amended claim shall entitle the Holder of such Claim to vote in a manner consistent with these tabulation rules, and the earlier filed claim shall be disallowed for voting purposes, regardless of whether the Debtor has objected to such earlier filed Claim.  Except as otherwise ordered by the Court, any amendments to Proofs of Claim after the Voting Record Date shall not be considered for purposes of these tabulation rules;

ix.  if the Debtor or any party-in-interest with appropriate standing has filed an objection to a Proof of Claim prior to the Voting Record Date, such Claim is temporarily allowed for voting purposes at: (A) if wholly contingent, unliquidated or disputed based on the Debtor's Schedules, the face of a timely filed Proof of Claim or as determined upon the review of the Debtor, $1.00, (B) if scheduled as wholly noncontingent, liquidated and undisputed, the

-7-

scheduled amount; (C) if scheduled as partially liquidated and partially unliquidated or contingent, the scheduled liquidated amount; (D) if not scheduled, $1.00; *provided* that if the objection seeks to reduce the allowed amount of such Claim, then such Claim shall be temporarily allowed for voting purposes in the reduced amount, except, in each case, as provided in a stipulation, settlement or other agreement filed by the Debtor or as may be otherwise ordered by the Court; and

    x.    the Debtor shall not be required to send Solicitation Packages to creditors whose Claims (A) are based solely on amounts scheduled by the Debtor that have already been paid in the full scheduled amount or (B) have been scheduled in a wholly unliquidated, contingent or disputed amount and with respect to which such creditor did not file a timely Proof of Claim (other than for AFFF Claims against the Debtor).

**5. Return of Ballots.**

    i.    Only Holders of Claims in the Voting Classes are entitled to vote on the Plan.

    ii.    Votes to accept or reject the Plan will be counted only if such votes are included on a valid Ballot properly executed, completed and delivered to the Solicitation Agent so that such Ballot is actually received by the Solicitation Agent no later than the Voting Deadline (as may be extended by the Debtor in writing, in consultation with the Settling Parties). Please refer to your specific Ballot for instructions on the procedures to follow in order to submit your vote properly.

    iii.    In addition to accepting hard copy Ballots via first-class mail, overnight courier, or hand delivery, (or, in the case of the AFFF Master Ballots, via email), the Debtor will accept Ballots submitted via an online balloting portal accessible at the Debtor's chapter 11 case website.[4]

    iv.    For the avoidance of doubt, the Debtor will accept AFFF Master Ballots submitted by Firms via email, and to that end, the Debtor encourages Firms to submit AFFF Master Ballots and accompanying Exhibits (setting forth the Eligible Clients' votes) via encrypted email or other secured method of electronic transmission. Firms with any questions about such secured transmission methods should contact Stretto at KFIInquiries@stretto.com.

---

[4]    The encrypted Ballot data and audit trail created by such online submission shall become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed immediately legally valid and effective. Ballots submitted via the customized online balloting portal shall be deemed to contain an original signature.

4909-0914-4833 v.10

6.    **Tabulation Procedures.**

The following voting procedures and standard assumptions shall be used in tabulating Ballots, subject to the Debtor's right to waive any of the below specified requirements for completion and submission of Ballots, so long as such requirement is not otherwise required by the Bankruptcy Code, Bankruptcy Rules, or Local Rules:

i.    Except as otherwise provided in the Solicitation Procedures or the Disclosure Statement Order, unless the Ballot being furnished is timely submitted to the Solicitation Agent on or prior to the Voting Deadline (as may be extended by the Debtor in writing in consultation with the Settling Parties), the Debtor may, in its discretion, reject such Ballot as invalid and, therefore, decline to utilize it in connection with Confirmation of the Plan; *provided, however*, that such invalid Ballots shall be documented in the Voting Report (as defined below);

ii.    The Solicitation Agent will date-stamp all Ballots when received and shall retain all original Ballots and an electronic copy of the same for a period of one year after the Effective Date of the Plan, and thereafter may discard such original Ballots, unless otherwise ordered by the Court or requested by the Debtor;

iii.    The Solicitation Agent will process and tabulate the Ballots, and thereafter file with the Court, on or before December 31, 2025 (the "Voting Report Deadline"), a certification of votes (the "Voting Report"). The Voting Report shall, among other things, provide a general description of the methodology used for solicitation and tabulation, the final voting results, any exceptions granted to otherwise-applicable Solicitation Procedures, and an exhibit showing any votes excluded as invalid and the reason for invalidity. The Voting Report shall also identify votes, if any, that were changed or withdrawn before the Voting Deadline and a general description of any communications with voters regarding solicitation. The Voting Report shall also certify to the Court in writing the amount and number of Allowed Claims of each Class accepting or rejecting the Plan. To preserve the confidentiality of Personal Injury Claim voters, the Solicitation Agent will identify defective Ballots by using law firm names and unique identification numbers and may redact the names, addresses, birth dates and other personally identifying information of Personal Injury Claim voters appearing anywhere on the Voting Report and its exhibits. The Voting Report shall be served upon the Notice Parties;

iv.    The method of delivery of Ballots to be sent to the Solicitation Agent is at the election and risk of each Holder, and except as otherwise provided, a Ballot will be deemed delivered only when the Solicitation Agent actually receives the executed Ballot;

-9-

v.     Delivery of any Ballot to the Solicitation Agent by facsimile, telecopy or any electronic means other than as expressly provided in these Solicitation Procedures will not be valid;

vi.    No Ballot should be sent to the Debtor, the Debtor's agents (other than the Solicitation Agent), or the Debtor's financial or legal advisors, and if so sent, and not otherwise properly and timely delivered to the Solicitation Agent, will not be counted;

vii.   Except as described in the AFFF Master Ballot Solicitation Procedures in Section 4 below, if multiple Ballots are received from the same Holder with respect to the same Claim prior to the Voting Deadline, the last valid Ballot received by the Solicitation Agent prior to the Voting Deadline will be deemed to reflect that Holder's intent and will supersede and revoke any prior Ballot;

viii.  Holders must vote all of their Claims within a particular Class either to accept or reject the Plan and may not split any votes.  Accordingly, a Ballot (other than an AFFF Master Ballot) that indicates both an acceptance and rejection of the Plan or partially rejects and partially accepts the Plan will not be counted. In addition, any Ballot that does not indicate an acceptance or rejection of the Plan will not be counted.  Further, to the extent there are multiple Claims of any particular Holder within the same Class, the Debtor may, in its discretion, aggregate the Claims of any particular Holder within a Class for the purpose of counting votes;

ix.    Any person signing a Ballot in its capacity as a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity of a Holder of Claims must indicate such capacity when signing; and

x.     The Debtor, in its discretion, and subject to a contrary order of the Court and the procedures governing Solicitation Changes, may waive any defects or irregularities as to any particular Ballot at any time, either before or after the close of voting and without notice.

**7.  Votes Not Counted.**

Any timely received Ballot that contains sufficient information to permit the identification of the claimant and the amount of the claim, and is cast as an acceptance or rejection of the Plan, will be counted and deemed to be cast as an acceptance or rejection, subject to the following exceptions.  The following Ballots will not be counted or considered for any purposes in determining whether the Plan has been accepted or rejected:

i.     any Ballot received after the Voting Deadline unless the Debtor shall have granted an extension of the Voting Deadline in writing with respect to such Ballot or the Bankruptcy Court approves such an extension;

-10-

ii. any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;

iii. any Ballot cast by or on behalf of a Person that does not hold a Claim in one of the Voting Classes;

iv. any Ballot cast for a Claim that is not listed on the Schedules, or that is scheduled at zero, in an unknown amount, or, in whole or in part, as unliquidated, contingent or disputed, and for which no Proof of Claim was timely filed; *provided*, *however*, that this specific provision shall not apply to Holders of AFFF Claims against the Debtor;

v. any Ballot that is properly completed, executed, and timely filed, but (A) does not indicate an acceptance or rejection of the Plan, (B) indicates both an acceptance and rejection of the Plan, or (C) partially accepts and partially rejects the Plan;

vi. any Ballot submitted by facsimile, telecopy, or electronic mail (other than the Solicitation Agent's online portal and other than as provided pursuant to the AFFF Master Ballot Solicitation Procedures);

vii. any unsigned Ballot;

viii. any Ballot that is incomplete, including, without limitation, a Ballot on which the claimant or their attorney or representative fails to make any required certification.

ix. any Ballot sent to the Debtor, the Debtor's agents/representatives (other than the Solicitation Agent), or the Debtor's financial or legal advisors; or

x. any Ballot not cast in accordance with the procedures approved in the Disclosure Statement Order.

**8. Changes to Solicitation Procedures**

The approval of certain changes to the Solicitation Procedures are subject to the following requirements:

i. If the Debtor, pursuant to the Solicitation Procedures and in consultation with the Settling Parties, provides a waiver of any condition, requirement, irregularity or defect for completed Ballots or extends the Voting Deadline (each, a "Solicitation Change"), (a) such Solicitation Change shall be memorialized in the Voting Report and (b) the Debtor shall file, within two business days after the filing of the Voting Report, a notice with the Bankruptcy Court supporting the justification for the Solicitation Change (a "Solicitation Change Notice").

-11-

ii.    Parties shall have five calendar days after the filing of the Solicitation Change Notice to file and serve an objection to any Solicitation Change.

iii.    If no party objects to a Solicitation Change, the Ballot(s) subject to such Solicitation Change shall be accepted as having been received in compliance with the Solicitation Procedures and such Solicitation Change shall  be included in the Voting Report.

iv.    If a party timely objects in writing to any Solicitation Change and the Debtor (in consultation with the Settling Parties) and such objecting party are unable to resolve the disputed Solicitation Change, the Bankruptcy Court shall resolve such dispute at or before the Confirmation Hearing.  A revised Voting Report reflecting any resolution shall be filed as soon practicable after such resolution, as applicable.

**9.  AFFF Master Ballot Solicitation Procedures (for Classes 3A, 3B, 3D, 3E, 3F, 3G, 3H, 3I, 3J and 3K)**

The following procedures (the "AFFF Master Ballot Solicitation Procedures") shall apply in cases where an attorney (such attorneys, collectively, the "Firms") representing Holders of Claims in Voting Classes 3A, 3B, 3D, 3E, 3F, 3G, 3H, 3I, 3J and 3K (collectively, the "Solicitation Directive Classes") returned a properly completed solicitation directive (the "Solicitation Directive").   The Debtor shall serve, or cause to be served, a Solicitation Directive Notice and Solicitation Directive on all Firms representing plaintiffs who have filed litigation against the Debtor or a Released Party in the AFFF MDL as of the Voting Record Date.  The properly completed Solicitation Directive must include an associated list of such Firm's client(s) (the "Eligible Clients") that hold Claims in any Solicitation Directive Class in the precise, readily accessible electronic format dictated by the Solicitation Agent in the Solicitation Directive (the "Client List").   The Firms must direct the Solicitation Agent on the method to solicit its Eligible Clients pursuant to these AFFF Master Ballot Solicitation Procedures on or before October 6, 2025, as such deadline may be extended by the Debtor in consultation with the Settling Parties (the "Solicitation Directive Response Deadline").   Any Firm that fails to return or improperly completes the Solicitation Directive (including the Client List) by the Solicitation Directive Deadline will be deemed to have directed the Solicitation Agent to solicit votes on the Plan directly from its Eligible Clients according to the Direct Solicitation Method (as defined below).

The Client List must be completed and include (a) the selected solicitation method (*i.e.*, AFFF Master Ballot Solicitation Method or Direct Solicitation Method) for each Eligible Client and (b) if the Firm has elected the Direct Solicitation Method or requested that the Solicitation Agent serve the Eligible Clients with Solicitation Packages (without Ballots) directly, the mailing address of each applicable Eligible Client.  The Client List is pre-populated by the Solicitation Agent with the names of all plaintiffs who have filed litigation against the Debtor or a Released Party in the AFFF MDL as of the Voting Record Date that are represented by a Firm, based on (a) to the extent the claimant is listed on the Debtor's Schedules, the Firm set forth thereon with respect to the applicable claimant or (b) to the extent the claimant is not listed on the Debtor's Schedules, the face of the applicable complaint

-12-

filed in the AFFF MDL.[5]  Firms are directed to include a supplemental Client List following the same formatting and including the same information to the extent a Firm represents additional Eligible Clients not set forth on the Client List pre-populated by the Solicitation Agent or believe any of the Eligible Clients provided for on the pre-populated Client List hold a Claim or Claims in a Class or Classes other than the Class(es) provided for on the pre-populated Client List.  Any such supplemental Client List must include the "Claim Type" of the Eligible Clients listed.  If a Firm lists an Eligible Client on a supplemental Client List but either (a) does not include a Claim Type or (b) includes a Claim Type that is not a Claim in a Solicitation Directive Class, such Eligible Client will not be included on any AFFF Master Ballot sent to such Firm and will not otherwise be solicited.

The Claims of Eligible Clients listed on each Solicitation Directive shall be solicited pursuant to the solicitation method below selected by the Firm on the applicable Solicitation Directive:

a. **AFFF Master Ballot Solicitation Method**.  If a Firm certifies that (i) the Firm will collect and record the votes of its Eligible Clients through customary and accepted practices (*e.g.*, by email, telephone or other standard communications) or (ii) it has the authority under a power of attorney to vote to accept or reject the Plan on behalf of its Eligible Clients, the Firm may direct the Solicitation Agent to serve the Firm with one Solicitation Package and, for each Class in which the Firm represents Eligible Clients, the applicable master ballot (each such master ballot, an "AFFF Master Ballot").  The Firm must record the votes on the Plan for each of its Eligible Clients on the applicable AFFF Master Ballot.  Any Firm that elects this procedure shall meet all applicable standards to receive informed consent from its Eligible Clients and, unless the Firm has authority under a power of attorney to vote to accept or reject the Plan on behalf of an Eligible Client with respect to their Claim(s), a Firm cannot rely on negative notice to vote on behalf of any Eligible Client.  The Solicitation Agent may rely upon the representation of authority presented to the Solicitation Agent in the Solicitation Directive and AFFF Master Ballot without the need to further investigate or verify its validity; *provided* that any Firm that executes an AFFF Master Ballot must provide evidence of such authority to the Debtor upon request.  Each Firm that elects this procedure shall either (i) provide the Disclosure Statement, via instructions detailing how to access electronic versions or in hard copy or electronic format, to its Eligible Clients, or (ii) return the completed Client List and request that, for informational purposes and by selecting the applicable box on the Solicitation Directive, the Solicitation Agent

---

[5]    The inclusion of plaintiffs who commenced proceedings against the Debtor following the Petition Date is not an admission by the Debtor that such claims are valid and/or are not in violation of section 362 of the Bankruptcy Code, and the Debtor reserves all rights and defenses with respect thereto.

-13-

serve Solicitation Packages (without Ballots) on its Eligible Clients.[6] Any Firm that elects this procedure must return the applicable AFFF Master Ballot(s) to the Solicitation Agent so that they are received by the Voting Deadline, as may be extended by the Debtor in writing in consultation with the Settling Parties. The AFFF Master Ballot(s) must be returned to the Solicitation Agent pursuant to the instructions thereon. Firms are strongly encouraged to submit Solicitation Directives and accompanying Client Lists, as well as AFFF Master Ballots, via encrypted email or other secured method of electronic transmission.

b.      **Direct Solicitation Method**.   If a Firm prefers to have each of its Eligible Clients cast its own vote to accept or reject the Plan or it does not have authority from its Eligible Clients as described above, such Firm may direct the Solicitation Agent to solicit votes on the Plan directly from its Eligible Clients by mailing Solicitation Packages (including Ballots) directly to the Firm's Eligible Clients at the addresses provided on the Client List. If no address is set forth on the Client List, the Solicitation Agent shall solicit votes on the Plan directly from the Firm's Eligible Clients by mailing the Solicitation Packages (including Ballots) directly to the Firm's Eligible Clients at the primary address as indicated in a valid Proof of Claim form filed by such Eligible Client. Under this procedure, completed Ballots will be submitted to the Solicitation Agent individually by the Eligible Clients. In the event that no contact information is set forth on the Client List for an Eligible Client and the Eligible Client has no Proof of Claim on file, the Solicitation Agent will not be responsible for mailing the Solicitation Package (including a Ballot) directly to the Eligible Client. For the avoidance of doubt, failure by a Firm to properly return the Solicitation Directive so that it is actually received by the Solicitation Agent on or before the Solicitation Directive Response Deadline will be deemed a direction to the Solicitation Agent to solicit votes on the Plan from its Eligible Clients according to the Direct Solicitation Method.

An Excel spreadsheet template for a supplemental Client List is provided with the Solicitation Directive under "Client List Formatting Instructions." The supplemental Client List template may also be downloaded in Microsoft Excel format from the Debtor's case website maintained by the Solicitation Agent at https://cases.stretto.com/kfi. Firms must return the Client List and supplemental Client List, if applicable, in the precise electronic format of such template no later than the Solicitation Directive Response Deadline (**October 6, 2025**).

---

[6]     Such informational Solicitation Packages may contain a generic, non-customized insert explaining that the recipient's attorney has elected to utilize the AFFF Master Ballot Solicitation Method.

4909-0914-4833 v.10

To the extent that the Solicitation Agent timely receives a vote from an Eligible Client directly that is inconsistent with a corresponding vote cast by their Firm, the Solicitation Agent shall tabulate the vote submitted directly by the Eligible Client and invalidate the vote submitted by the Firm on the Eligible Client's behalf.

It is the sole obligation and responsibility of the Firms to coordinate with each other to resolve any conflicting representations, and for the appropriate Firm to submit the vote on behalf of such Eligible Client together with an email to KFIInquiries@stretto.com copying all affected Firms confirming such resolution. The Solicitation Agent is entitled to rely upon such an email. If the Firms are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple consistent votes on account of such Eligible Client (*i.e.*, multiple votes to accept the Plan or multiple votes to reject the Plan), the Solicitation Agent is authorized to treat such votes as duplicative and count them only once for both numerosity and voting amount purposes. If, however, the Firms are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple inconsistent votes on account of such Eligible Client (*i.e.*, a vote to accept the Plan and a vote to reject the Plan), the Solicitation Agent shall contact the relevant Firms and request they coordinate with each other to resolve the conflicting representation. If after the submission of inconsistent votes but prior to the Voting Deadline, the applicable Firms timely reach a consensus regarding which vote should be counted, one of the applicable Firms may email KFIInquiries@stretto.com, copying all other affected Firms, and direct the Solicitation Agent as to which vote should be counted. The Solicitation Agent is entitled to rely upon such an email without the need to further investigate or verify its validity. If representation of the Holder of the Claim is not resolved within 10 calendar days from the notice of the conflict as provided by the Solicitation Agent, such votes shall not be counted. For the further avoidance of doubt, if the Solicitation Agent timely receives a vote from an Eligible Client directly that is inconsistent with a corresponding vote cast by their Firm, the vote cast by the Eligible Client will control. Notwithstanding anything to the contrary herein, neither the Debtor nor the Solicitation Agent are obligated to attempt to cure any inconsistent votes.

### 10. Required Certifications

No vote in favor of or against the Plan by or on behalf of a Holder of a Claim shall be counted by the Solicitation Agent unless the Ballot reflecting such vote includes the written certifications contained on the Ballot.

      i.   **Certification for Individual Ballots.** Ballots voted by or on behalf of a Holder of a Claim shall contain an acknowledgement and certification under penalty of perjury that (A) the person signing the Ballot has received the documents included in the applicable Solicitation Package, (B) to the best of the person signing the ballot's knowledge, information and belief, the claimant holds the applicable Claim against the Debtor, and (C) the person signing the Ballot has power and authority to vote to accept or reject the Plan.

-15-

ii.    **Certifications for AFFF Master Ballots.**

A.    Firms shall certify under penalty of perjury to one of the options below with respect to each AFFF Claim whose vote is included on the Firm's AFFF Master Ballot(s).

(i)    "Option (a) Certification": The Firm (or one or more of its attorneys) has communicated with the applicable Eligible Client and has been authorized, consistent with applicable law, by such Eligible Client to vote their Claims to accept or reject the Plan as indicated on the Exhibit.  A Firm may not rely on negative notice for such authorization.

(ii)    "Option (b) Certification": The Firm (or one or more of its attorneys) has the authority under a power of attorney to vote to accept or reject the Plan on behalf of the applicable Eligible Client and the Firm completed the vote on behalf of such Eligible Client on the AFFF Master Ballot in accordance with the authority granted to the Firm.

B.    Firms shall also certify under penalty of perjury of perjury that (A) the person signing the AFFF Master Ballot has received the documents included in the applicable Solicitation Package and (B) to the best of the person signing the AFFF Master Ballot's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, each Eligible Client listed on the Exhibit for which the Firm has voted holds the applicable Claim against the Debtor.

C.    If the attorney is unable to make the required certifications on behalf of any Eligible Client included on the Exhibit of an AFFF Master Ballot, the attorney ***shall not*** cast a vote on behalf of such Eligible Client.

4909-0914-4833 v.10

## **EXHIBIT 2A**

**Ballot for Class 3A: Water Provider Claims**

**\*\*KFI WIND-DOWN CORP. PLAN BALLOT\*\***

> # THIS BALLOT IS FOR HOLDERS OF CLAIMS AGAINST KFI WIND-DOWN CORP. (F/K/A KIDDE-FENWAL, INC.) ARISING FROM ITS AFFF OR AFFF-CONTAINING PRODUCTS.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |

## BALLOT FOR ACCEPTING OR REJECTING THE
## DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

## CLASS 3A:  WATER PROVIDER CLAIMS

On May 14, 2023 (the "Petition Date"), KFI Wind-Down Corp. f/k/a Kidde-Fenwal, Inc. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") (the "Chapter 11 Case").

On [•], 2025, the Debtor filed the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Plan"),[2] which is described in greater detail

---

[1]   The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters are located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

in the *Disclosure Statement for the Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Disclosure Statement").

---

**THE PLAN CONTAINS RELEASE, INJUNCTION AND EXCULPATORY PROVISIONS. THESE PROVISIONS ARE SET FORTH IN <u>APPENDIX A</u> TO THIS BALLOT. YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.**

---

On [•], 2025, the Bankruptcy Court entered an order [D.I. [•]] (the "Disclosure Statement Order") approving the Disclosure Statement as containing "adequate information" within the meaning ascribed to such term in section 1125 of the Bankruptcy Code and procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures").

The Plan, Disclosure Statement, Disclosure Statement Order, Solicitation Procedures and documents included in the Plan Supplement as of the Solicitation Mailing Deadline have been included in the package of materials containing the attached ballot (the "Ballot") and can be accessed free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code. For a description of the Causes of Action to be enjoined and the identities of the Persons that would be subject to this injunction, see Article IV.E.8 of the Disclosure Statement and Article 10.8 of the Plan.

A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of the Claims that submit votes in that Voting Class vote to accept the Plan. Even if a Voting Class votes to reject the Plan, the Bankruptcy Court nonetheless may confirm the Plan if it finds the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

If the Plan is confirmed by the Bankruptcy Court, all Holders of Claims against and Interests in the Debtor (including those Holders who reject the Plan or abstain from voting on the Plan, and those Holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby.

The Debtor will file the Plan Supplement (as may be amended, modified or supplemented from time to time) with the Bankruptcy Court no later than **November 17, 2025.**

-2-

The documents included in the Plan Supplement as of the Solicitation Mailing Deadline are included in your Solicitation Package. Any further Plan Supplement, and any amendments or supplements to the foregoing, will only be served on: (a) the U.S. Trustee, (b) the Notice Parties and (c) the 2002 List. Once filed, a copy of the Plan Supplement will also be available for review and download on the Debtor's website maintained by the Solicitation Agent free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

**Unless such time is extended by the Debtor, in consultation with the Settling Parties, or the Bankruptcy Court, the Ballot must be properly completed, signed and returned to the Solicitation Agent *so as to be actually received* no later than 5:00 p.m. (prevailing Eastern Time) on December 15, 2025 (the "Voting Deadline") in order for the vote on the Ballot to count. Unless otherwise provided in the Solicitation Procedures, all Holders of Claims in the Voting Classes are required to (a) submit their Ballots online at the Solicitation Agent's online voting portal at https://cases.stretto.com/kfi or (b) return their Ballots by mail, overnight courier or hand delivery to the Solicitation Agent at KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, in each case so that they are actually received by the Solicitation Agent on or before the Voting Deadline (December 15, 2025 at 5:00 p.m. (prevailing Eastern Time)).**

This Ballot is to be used by Holders of Water Provider Claims against the Debtor in Class 3A of the Plan only. Please refer to the Plan for the specific definition of "Water Provider Claim," which is copied below, as well as other relevant definitions.

> *"Holder" means a Person holding a Claim against or an Interest in the Debtor.*

> *"Water Provider Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Public Water System for damages relating to such Public Water System.*

> *"AFFF" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.*

> *"AFFF Claim" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.*

> *"Sovereign State" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and*

-3-

*each of their respective attorneys general and representatives in their capacities as such.*

*"Sovereign Tribe" means any American Indian or Alaskan Native Tribe, band, nation, pueblo, village or community, that the U.S. Secretary of the Interior acknowledges as an Indian Tribe, as provided in the Federally Recognized Tribe List Act of 1994, 25 U.S.C. § 5130, and as periodically listed by the U.S. Secretary of the Interior in the Federal Register pursuant to 25 U.S.C. § 5131; and any "Tribal Organization" as provided in the Indian Self-Determination and Education and Assistance Act of 1975, as amended, 25 U.S.C. § 5304(1).*

*"Public Water System" means a system for the provision to the public of water for human consumption through pipes or other constructed conveyances, if such system has at least fifteen (15) service connections or regularly serves an average of at least twenty-five (25) individuals daily at least sixty (60) days out of the year, consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C. § 300f(4)(A), and 40 C.F.R. Part 141. The term "Public Water System" includes (i) any collection, treatment, storage, and distribution facilities under control of the operator of such system and used primarily in connection with such system, (ii) any collection or pretreatment storage facilities not under such control which are used primarily in connection with such system, (iii) a Community Water System of any size, (iv) a Non-Transient Non-Community Water System of any size, and (v) any Person (but not any financing or lending institution) that has legal authority or responsibility (by statute, regulation, other law, or contract) to fund or incur financial obligations for the design, engineering, installation, operation, or maintenance of any facility or equipment that treats, filters, remediates, or manages water that has entered or may enter Drinking Water or any Public Water System.*

*"PFAS" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.*

*"Claim" has the meaning ascribed to such term under section 101(5) of the Bankruptcy Code.*

*"Community Water System" means a Public Water System that serves at least fifteen (15) service connections used by year-round residents or regularly serves at least twenty-five (25) year-round residents, consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C. § 300f(15), and 40 C.F.R. Part 141.*

-4-

*"Non-Transient Non-Community Water System" means a Public Water System that is not a Community Water System and that regularly serves at least twenty-five (25) of the same persons over six (6) months per year, consistent with the use of that term in 40 C.F.R. Part 141.*

*"Person" means a "person" or "entity" as defined in the Bankruptcy Code.*

*"Drinking Water" means water provided for human consumption (including uses such as drinking, cooking, and bathing), consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C. §§ 300f to 300j-27.   The term "Drinking Water" includes raw or untreated water that a Public Water System has drawn or collected from a Water Source so that the water may then (after any treatment) be provided for human consumption but does not include raw or untreated water that is not drawn or collected from a Water Source.*

*"Water Source" means a groundwater well, a surface-water intake, or any other intake point from which a Public Water System draws or collects water for distribution as Drinking Water, and the raw or untreated water that is thus drawn or collected.*

<center>*[Remainder of the page left intentionally blank]*</center>

<center>-5-</center>

## DOCUMENTS INCLUDED WITH THE BALLOT

You should have received the following documents with the Ballot (collectively, the "**Solicitation Package**"). **Please note that some of the following documents may be included on a USB flash drive included as part of your Solicitation Package**.

- the Cover Letter;

- the Committee Letter;

- the Solicitation Procedures;

- a USB flash drive containing a copy of the Disclosure Statement (and exhibits thereto, including the Plan) and the documents contained in the Plan Supplement that have been filed prior to the Solicitation Mailing Deadline;

- the Disclosure Statement Order (without exhibits);

- a preaddressed, return envelope for completed Ballots;

- the Confirmation Hearing Notice; and

- any other materials ordered by the Court to be included as part of the Solicitation Package.

If you have questions about the Ballot, or if you did not receive a copy of the Plan or any related materials, please contact the Solicitation Agent at KFIInquiries@stretto.com or (866) 887-0488 (toll-free) or +1 (949) 889-0128 (international). Information may also be obtained at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtor or any other party for payment purposes.

-6-

## <u>INSTRUCTIONS FOR COMPLETING YOUR BALLOT</u>

The following instructions explain each of the items contained on the Ballot.   If you have any questions, please contact the Solicitation Agent at the phone number or e-mail provided above or visit https://cases.stretto.com/kfi.

### If Submitting Your Vote through the Ballot Submission Portal:

The Solicitation Agent will accept Ballots if properly completed through the Ballot Submission Portal.   To submit your customized electronic Ballot via the Ballot Submission Portal, visit https://cases.stretto.com/kfi, click on the Ballot Submission Portal link and follow the instructions to submit your Ballot.

**IMPORTANT NOTE:** You will need the following information to retrieve and submit your customized electronic Ballot:

**Unique E-Ballot Password:** _____

Except as provided in the Solicitation Procedures, submission of your Ballot via the Solicitation Agent's online portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Except as provided in the Solicitation Procedures, Ballots submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.

Each "Unique E-Ballot Password" is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each Unique E-Ballot Password you receive, as applicable.  Creditors who cast a Ballot using the online portal should NOT also submit a paper Ballot.

The encrypted Ballot data and audit trail created by such electronic submission will become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.  Ballots submitted via the Ballot Submission Portal will be deemed to contain an original signature.

If your Ballot is not actually received on or before the Voting Deadline by the Solicitation Agent, and such Voting Deadline is not extended by the Debtor as noted above, your vote will not be counted.

### If Submitting Your Vote through Regular Mail, Overnight Courier, or via Hand Delivery:

Submit your completed and signed Ballot by regular mail using the return envelope included in the Solicitation Package (or otherwise), or by hand delivery or overnight courier to:

4909-2598-7585 v.10

> KFI Ballot Processing
> c/o Stretto
> 410 Exchange, Suite 100
> Irvine, CA 92602
>
> To arrange for hand delivery, please send an
> email to KFIInquiries@stretto.com at
> least 24 hours before arrival at the address above and
> provide the anticipated date and time of delivery.

**To fill out the Ballot, you must complete the following:**

**Item 1.  Claimant's Name and Address.**

Please fill in the name and address information requested.   Claimants should include street address, city, state, ZIP Code, telephone number and email address.

**Item 2.  Vote on the Plan.**

Vote on the Plan by checking the box that corresponds to your choice.   You may vote to ACCEPT the Plan (meaning that you vote in favor of the Plan) or to REJECT the Plan (meaning that you vote against the Plan).   You must check either the ACCEPT or REJECT box below for the Plan to have your vote counted.   If you check both the ACCEPT and REJECT boxes for the Plan, your vote will not be counted.

**Item 3.  Certifications, Acknowledgment, Signature and Date.**

Either the claimant, the claimant's personal representative, or the claimant's attorney MUST sign the Ballot.  If the Ballot is not signed, the vote shown on the Ballot will NOT be counted.

The claimant, the claimant's personal representative, or the claimant's attorney MUST certify certain information on the Ballot.  If you are the claimant's attorney, you must provide evidence of your authority to vote on behalf of the claimant at the Debtor's request.  Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

By signing the Ballot, you make one of the following certifications, as applicable:

-8-

- I am the claimant and make the following certifications under penalty of perjury.

  i.   I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

  ii.  To the best of my knowledge, information and belief, I am the Holder of a Water Provider Claim against the Debtor in Class 3A of the Plan; and

  iii. I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan in my capacity as the claimant.

- I am the personal representative of the claimant and make the following certifications under penalty of perjury.

  i.   The claimant's personal representative has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

  ii.  To the best of my knowledge, information and belief, the claimant is the Holder of a Water Provider Claim against the Debtor in Class 3A of the Plan; and

  iii. I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

- I am an attorney for the claimant and make the following certifications under penalty of perjury.

  i.   The claimant's attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

-9-

    ii.      To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the claimant is the Holder of a Water Provider Claim against the Debtor in Class 3A of the Plan; and

    iii.     I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

The Ballot does not constitute and will not be deemed a Proof of Claim or Interest, an assertion of a Claim, the allowance of a Claim, or the acceptance or liquidation of any Water Provider Claim for purposes of any distribution. None of the information set forth in the Ballot shall constitute an admission by the Debtor as to the extent, validity, or priority of the Claim voted herein, nor shall anything contained herein or information submitted in or with the Ballot be binding upon the Debtor or the Holder in any subsequent Claims resolution process or other proceeding. The Ballot may not be used for any purposes other than to transmit votes on the Plan.

If you cast more than one Ballot voting the same Water Provider Claim before the Voting Deadline, the last valid Ballot received by the Solicitation Agent on or before the Voting Deadline will be deemed to reflect your intent and will supersede any prior Ballots.

**Holders of Claims must vote the full amount of their Claims to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan**. A Holder of a Water Provider Claim may not split his or her vote on the Plan. Accordingly, the votes of any Holder of a Water Provider Claim who purports partially to accept and partially to reject the Plan will not be counted.

---

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT,
BELIEVE YOU MAY HAVE RECEIVED AN INCORRECT BALLOT,
OR IF YOU DID NOT RECEIVE A COPY OF ANY OF
THE DOCUMENTS DESCRIBED IN THESE INSTRUCTIONS,
PLEASE CONTACT THE SOLICITATION AGENT AT:**

**TELEPHONE: (866) 887-0488 (TOLL-FREE)
OR +1 (949) 889-0128 (INTERNATIONAL)
E-MAIL: KFIINQUIRIES@STRETTO.COM
OR VISIT HTTPS://CASES.STRETTO.COM/KFI**

---

4909-2598-7585 v.10

## **PLAN BALLOT**

## BALLOT FOR ACCEPTING OR REJECTING THE
## DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

---

### CLASS 3A:  WATER PROVIDER CLAIMS

---

| |
|---|
| **Please read the instructions that accompany this Ballot before completing.    Print clearly.** |
| **ITEM 1 – Claimant's Name and Address:** |
| Name |
| Street Address |
| City, State, and ZIP Code (U.S.) |
| Telephone Number |
| Email Address |
| **ITEM 2 – Amount of Your Claim.** <br><br> For the purposes of voting to accept or reject the Plan, the undersigned certifies that the claimant holds a Water Provider Claim in the amount set forth below.  **Please note that each AFFF Claim has been temporarily allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance or any other purpose.** <br><br> **Claim Amount:**    $1.00 |

**ITEM 3 – Vote on the Plan:**

The undersigned, as Holder of (or representative of a Holder of) a Water Provider Claim against the Debtor in Class 3A of the Plan, votes (fill in ONE box only):

☐  to ACCEPT (vote in favor of) the Plan.

☐  to REJECT (vote against) the Plan.

**ITEM 4 – Certifications, Acknowledgment, Signature and Date:**

☐  I am the claimant and make the following certifications under penalty of perjury.

     i.    I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

     ii.    To the best of my knowledge, information and belief, I am the Holder of a Water Provider Claim against the Debtor in Class 3A of the Plan; and

     iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan in my capacity as the claimant.

☐  I am the personal representative of the claimant and make the following certifications under penalty of perjury.

     i.    The claimant's personal representative has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

     ii.    To the best of my knowledge, information and belief, the claimant is the Holder of a Water Provider Claim against the Debtor in Class 3A of the Plan; and

-2-

4909-2598-7585 v.10

iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

☐   I am the attorney for the claimant and make the below certifications under penalty of perjury.

i.    The claimant's attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

ii.    To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the claimant is the Holder of a Water Provider Claim against the Debtor in Class 3A of the Plan; and

iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

 **Signature and Date**

| |
|---|
| Signature of Claimant or Authorized Agent |
| Date |
| **YOU MUST COMPLETE ITEM 4 IN ORDER FOR YOUR VOTE(S) ON THE PLAN TO BE COUNTED.** |

**DO NOT INCLUDE MEDICAL RECORDS WITH THIS BALLOT.**
**MEDICAL RECORDS CANNOT BE RETURNED BY THE SOLICITATION AGENT.**

**IF THIS BALLOT IS NOT ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY 5:00 P.M. (PREVAILING EASTERN TIME) ON DECEMBER 15, 2025, YOUR VOTE MAY NOT BE COUNTED.**

-3-

## __Appendix A__

**Release, Injunction and Exculpation Provisions in the Plan[1]**

---

[1]    The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.

### Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released and cancelled, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Liquidating Estate and their successors and assigns.  Any Holder of such mortgage, deed of trust, Lien, pledge or other security interest (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including and cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Liquidating Administrators to evidence such release, including the execution, delivery and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

### Releases by the Estate

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party, the Debtor, the Liquidating Estate and each Related Party of the Debtor and the Liquidating Estate shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, or any other Person or Governmental Unit asserting currently or in the future by, under, through, or on behalf of the Debtor or its Estate, and each of their respective successors or assigns, including the Settlement Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between one or both of the Debtor, on the one hand, and any Released Party, the Liquidating Estate, or any Related Party of the Debtor and the Liquidating Estate, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.3 of the Plan shall not be construed to release any post-Effective Date obligations under the RTX Waiver, the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, which specifically provides that such Estate Claims Settlement can be terminated, and the releases provided in the Plan or in the Estate Claims Settlement are void, if Carrier fails to make the installments of the Guaranteed Cash Payment when due and such failure is not timely cured within 30 days, at which time the Primary AFFF Settlement Trust is entitled to commence, prosecute, or continue all Estate Causes of Action against the Released Parties in any court of competent jurisdiction, and take such other actions as the Primary AFFF Settlement Trustee may determine in the exercise of their fiduciary duties.

### Releases by the Released Parties

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Released Parties and their successors or assigns of and from any and all Claims and Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, the Debtor's current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between any of the Debtor, the Liquidating Estate, the Settlement Trusts or the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case, on the one hand, and any Released Party, on the other hand, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any post-Effective Date obligations under the Plan Documents, the Confirmation Order, the 2020 Separation Agreement as supplemented by the RTX Waiver, or the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, or the right of any Person to enforce the same in accordance with

the terms thereof. Except with respect to the Claims and Causes of Action against the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case that are released and discharged under Article 10.4 of the Plan, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any obligations, rights, Causes of Action or Claims that Carrier Global Corporation or members of the Carrier Group (other than the Debtor), Otis Worldwide Corporation or members of the Otis Group, or RTX or members of the UTC Group may have against any Person under the 2020 Separation Agreement as supplemented by the RTX Waiver (including indemnification rights of RTX and other members of the "UTC Group" under the 2020 Separation Agreement).  For the avoidance of doubt, in the event that the Estate Claims Settlement Effective Date does not occur or the Estate Claims Settlement is terminated as contemplated by the last paragraph of Article 10.3 in the Plan, all releases being provided by the Released Parties under the Plan shall be void.

## Scope of Releases

Each Person providing releases under the Plan, including the Debtor, the Estate and the Settling Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts.  Each Person providing releases under the Plan shall be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

## Exculpation

Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtor and its directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation.

As of the Effective Date, to the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in Article 10 of the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person for any act or omission in connection with, related to or arising out of this Chapter 11 Case, including (a) the operation of the Debtor's businesses during the pendency of this Chapter 11 Case; (b) the

administration and adjudication of Claims and Interests during this Chapter 11 Case; (c) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Plan, the Disclosure Statement, the Plan Supplement, or any related contract, instrument, release or other agreement or document created or entered into in connection with the Chapter 11 Case (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan and the distribution of property under the Plan); (d) any other transaction, agreement, event, or other occurrence related to the Chapter 11 Case taking place on or before the Effective Date, other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.

## Injunction

Except as otherwise expressly provided in the Plan or the Confirmation Order, the satisfaction and release pursuant to Article 10 of the Plan shall also act as a permanent injunction against any Person who has held, holds, or may in the future hold Claims against or Interests in the Debtor or any of its assets or properties based on any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are treated, released, settled, channeled, or exculpated pursuant to the terms of the Plan from taking any of the following actions on account of, or on the basis of, such Claims or Interests:  (a) commencing or continuing any action to collect, enforce, offset, recoup, or recover with respect to any Claims or Interests treated, released, settled, channeled, or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Claim or Interest against the Debtor, the Liquidating Estate, the Settlement Trusts, or its or their respective property; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of or in connection with or with respect to any such Claims or Interests, notwithstanding an indication of a Claim or Interest or otherwise that a Holder of such Claim or Interest asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise, against the Debtor, the Liquidating Estate, or the Settlement Trusts; or (e) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

## Channeling Injunction

Notwithstanding anything to the contrary in the Plan, to preserve and promote the settlements contemplated by and provided for in the Plan, including the Insurance Settlement Agreements, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under sections 105(a) and 1123(b) of the Bankruptcy Code, the sole recourse of any Holder of a Channeled AFFF Claim against the Debtor or a Released Party on account of such Channeled AFFF Claim shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to

**and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, and such Holder shall have no right whatsoever at any time to assert any such Channeled AFFF Claim or any Estate Cause of Action that is released under the Estate Claims Settlement against the Debtor or any Released Party or any property or interest in property of the Debtor or any Released Party.  For the avoidance of doubt, the sole recourse for any Channeled AFFF Claim covered by any Insurance Policy issued by a Settling Insurance Company shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents.  Accordingly, on and after the Effective Date, all Holders of AFFF Claims that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled AFFF Claim or any Estate Cause of Action against the Debtor or any Released Party shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from the Debtor or any Released Party with respect to any such Channeled AFFF Claim or Estate Cause of Action, other than from the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, including:**

**a)  commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;**

**b)  enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;**

**c)  creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;**

**d)  asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party; or**

**e)  taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents, or, with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, by the Sovereign State AFFF Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Channeled AFFF Claim.**

The Debtor, the Liquidating Estate and/or any Released Party, as applicable, may enforce the Channeling Injunction and/or the Releases contained in the Plan before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at their own cost and expense, and no such cost or expense incurred by a party other than the Primary AFFF Settlement Trust shall be reimbursed or indemnified by the Primary AFFF Settlement Trust under any circumstances.

## Insurance Company Injunction

Subject to the provisos set forth in this Section, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim or cause of action (including any AFFF Claim or any Claim for or respecting any Primary AFFF Settlement Trust expense) against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Insurance Policy, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, statute or any other theory of law, equity or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim or cause of action, including:

a) commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, demand, or cause of action against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such Claim, demand, or cause of action against any Insurance Company);

b) enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

c) creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such Claim or cause of action; and

d) except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

*provided, however,* that (i) nothing in this Section shall impair or affect the rights of any member of the UTC Group, including RTX, or any member of the Otis Group (each as defined in the 2020 Separation Agreement), or any additional insured designated by RTX

or any member of the UTC Group, based upon, attributable to, arising out of, or in any way connected with an Insurance Policy, including to assert Claims or Causes of Action against any Insurance Company for covered losses and to receive proceeds in respect thereof; (ii) this injunction shall not impair in any way any actions brought by the Primary AFFF Settlement Trust against any Other Insurance Company; (iii) the Primary AFFF Settlement Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction with respect to any Other Insurance Company, in accordance with the Settlement Trust Documents, upon express written notice to such Other Insurance Company; and (iv) this injunction is not issued for the benefit of any Other Insurance Company, and no Other Insurance Company is a third-party beneficiary of this injunction.

Notwithstanding anything to the contrary in the Plan, this injunction shall not enjoin:

a)      the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of Holders of AFFF Claims to assert such Claims, as applicable, in accordance with the TDPs;

b)      the rights of the Primary AFFF Settlement Trust to prosecute any action based on or arising from Insurance Policies, except to the extent otherwise released;

c)      the rights of the Primary AFFF Settlement Trust to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company based on or arising from the Insurance Policies;

d)      any actions of the Contributing Parties in fulfilling their obligations under the Estate Claims Settlement in consultation and coordination with the Primary AFFF Settlement Trust;

e)      the rights of any Insurance Company to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company; or

f)      the Claims for reinsurance under reinsurance contracts or Claims under retrocessional contracts among the Settling Insurance Companies and any Other Insurance Company.

## Prohibition on Actions Against Buyer

Subject to the Sale Order and the Acquisition Agreement, Buyer, in its capacity as such, shall not have any liability for any AFFF Claims against the Debtor arising prior to the closing of the Sale.  Except as expressly otherwise set forth in the Sale Order, all persons and entities hereby are forever barred, estopped and permanently enjoined from asserting against Buyer, its Affiliates, its successors or assigns, its property or the Transferred Assets, such persons' or entities' AFFF Claims that have been or could have been asserted against the Debtor arising prior to the closing of the Sale.  For the avoidance of doubt, the foregoing shall

not release Buyer from, or enjoin any actions against Buyer for, any Assumed Liability or any other liability incurred by Buyer on account of its operations following the closing of the Sale.

## Limitations on Exculpations and Releases

Notwithstanding anything to the contrary in the Plan, none of the releases or exculpations set forth in the Plan shall operate to waive or release any obligation or Causes of Action of any Person:  (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations or (b) expressly set forth in and preserved by the Plan, the Plan Supplement, Plan Documents or related documents.

## Release Dispute

In the event of a Release Dispute, a Released Party may, at its sole cost and expense, file a motion with the Bankruptcy Court seeking a determination as to whether an AFFF Claimant's Cause of Action was settled and released pursuant to the Plan, and upon such motion, the Bankruptcy Court shall make such determination and, if appropriate, enjoin the prosecution of such Cause of Action as having been settled and released under the Plan.

## Relevant Definitions

"*2020 Separation Agreement*" means that certain Separation and Distribution Agreement, dated as of April 2, 2020, by and among United Technologies Corporation, Carrier Global Corporation, and Otis Worldwide Corporation.

"*Administrative Claim*" means an Allowed Claim for costs and expenses of administration of the Chapter 11 Case pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate; (b) Allowed Professional Compensation Claims; (c) Allowed Fee Examiner Compensation Claims; and (d) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

"*AFFF*" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

"*AFFF Claim*" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.

"*Assumed Liability*" shall have the meaning set forth in the Acquisition Agreement.

"*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other Claims, Causes of Action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties-in-interest under the Bankruptcy Code or applicable non-

bankruptcy law, including claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) was commenced prior to the Effective Date.

"*Buyer*" means Pacific Erin Opco, LLC, as the purchaser of substantially all of the Debtor's assets pursuant to the Acquisition Agreement and the Sale Order.

"*Carrier*" means Carrier Global Corporation, a Delaware corporation, and its non-Debtor affiliates and Related Parties.

"*Causes of Action*" means any current or future actions, Claims, cross-claims, third-party claims, causes of action, controversies, disputes, demands, rights, liens, indemnities, contributions, guaranties, suits, obligations, liabilities, losses, debts, fees or expenses, damages, interest, judgments, costs, accounts, defenses, remedies, offsets, powers, privileges, proceedings, licenses, and franchises of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, choate or inchoate, capable of being asserted directly or derivatively (including any alter ego theories), including any Claims for recovery of attorneys' fees, turnover, fraud, gross negligence, or willful misconduct, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws, consumer protection laws, environmental laws, or nuisance or trespass theories). Causes of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to or otherwise contest Claims or Interests, (c) any claim pursuant to section 362 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Actions.

"*Channeled AFFF Claims*" means all AFFF Claims against the Debtor or the Estate channeled to the Primary AFFF Settlement Trust under the Plan and Settlement Trust Documents. For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

"*Committee*" means the official committee of unsecured creditors of the Debtor appointed by the U.S. Trustee in the Chapter 11 Case under section 1102(a) of the Bankruptcy Code pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 83] and any amendments thereto.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Settling Parties.

"*Consummation*" means the occurrence of the Effective Date.

"*Debtor*" means Kidde-Fenwal, Inc., the debtor and debtor in possession in the Chapter 11 Case, now known as KFI Wind-Down Corp.  In 2007, KFFI (formerly known as National Foam, Inc.) merged into Kidde-Fenwal, Inc., with Kidde-Fenwal, Inc. as the surviving entity.  Pursuant to this merger, KFFI's liabilities were assumed by, and KFFI's causes of action were transferred to, Kidde-Fenwal, Inc. directly or indirectly by merger or other agreement.  The term "Debtor" includes Kidde-Fenwal, Inc. as successor by merger or other agreement by which Kidde-Fenwal, Inc. obtained or assumed the liabilities and Causes of Action of any Person.

"*Effective Date*" means the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date set forth in the Plan shall have been satisfied or waived and on which a notice indicating the Effective Date has been filed on the docket of the Chapter 11 Case.

"*Estate Causes of Action*" means Causes of Action owned or held by either the Debtor or its Estate, or capable of being asserted (currently, or in the future) by any Person or Governmental Unit on behalf of, under or through, either the Debtor or its Estate, and each of their respective successors or assigns, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions, that may be commenced by a representative of the Estate under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise.  Without limiting the foregoing, Estate Causes of Action shall include:  (a) Causes of Action that on or after the Petition Date may be exclusively asserted by or on behalf of the Debtor or its Estate under applicable law, or that prior to the Petition Date could have been asserted by the Debtor on its own behalf under applicable law, including Causes of Action based on (i) the doctrine of successor liability that seek to impose the Debtor's (including KFFI's or National Foam, Inc.'s) liabilities on an alleged successor, whether based on a contractual assumption of liability, consolidation or de facto merger, acquisition of the Debtor's product line, fraud, domination, direction of the Debtor's affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, or (ii) the doctrines of alter ego or veil piercing involving alter egos of the Debtor or the piercing of the Debtor's (including KFFI's or National Foam, Inc.'s) corporate veil, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form; (b) Causes of Action or theories for recovery or remedies that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is generally common to creditors of the Debtor and can be asserted by the Debtor under applicable law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor.  Subsections (a), (b) and (c) immediately above expressly encompass any Causes of Action based on:  (i) the alleged assumption of the Debtor's (including KFFI's or

National Foam, Inc.'s) liabilities (but not a non-Debtor's liabilities) by Kidde plc (n/k/a Kidde Limited) pursuant to the 2000 Demerger Agreement, or any alleged subsequent assumption of such liabilities of the Debtor from Kidde plc by any other Released Party; or (ii) the alleged assumption of the Debtor's liabilities (but not a non-Debtor's liabilities), including any liabilities resulting from acts or omissions of National Foam, Inc. or KFFI, by a Released Party pursuant to the 2020 Separation Agreement.  For the avoidance of doubt, Estate Causes of Action shall not include any Independent AFFF Causes of Action or any Sovereign State Retained Causes of Action or Insurance Actions against any Released Party based on acts or omissions occurring after entry into the Plan Support Agreement with respect to rights under the 2020 Separation Agreement or the RTX Waiver to access and make Claims under any Insurance Policy or otherwise obtain the benefit of the Insurance Assignment.

"*Estate Claims Settlement*" means the settlement, including the release of all Estate Causes of Action against the Released Parties, pursuant to the Estate Claims Settlement Agreement.

"*Independent AFFF Cause of Action*" means any Cause of Action that could be asserted by an AFFF Claimant against a Non-Debtor Party based on the Non-Debtor Party's own conduct and breach of duty (*i.e.*, duty owed to the AFFF Claimant and not owed to the Debtor), including (a) Causes of Action arising from such acts or omissions of such Non-Debtor Party, and (b) Causes of Action based on allegations that a Non-Debtor Party is responsible for such conduct under theories of liability or recovery or remedies that could have been asserted by an AFFF Claimant on its own behalf under applicable state or federal law in respect of such Causes of Action prior to the Petition Date based on (i) the doctrine of successor liability involving a Non-Debtor Party that is alleged to be a successor to another Non-Debtor Party with respect to liabilities not directly or indirectly assumed from the Debtor, whether based on a contractual assumption of liability (including under the 2020 Separation Agreement), consolidation or de facto merger, acquisition of product line, fraud, domination, direction of affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, (ii) the doctrines of alter ego or veil piercing involving alter egos of a Non-Debtor Party, or piercing the corporate veil between Non-Debtor Parties, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form, or (iii) alleged derivative or vicarious liability of a Non-Debtor Party for liabilities of another Non-Debtor Party not directly or indirectly assumed from the Debtor; *provided* that, if any Cause of Action falls within the definition of Estate Cause of Action or Sovereign State Retained Cause of Action, it is not an Independent AFFF Cause of Action.
"*Insurance Assignment*" means the transfer by the Debtor and Carrier to the Primary AFFF Settlement Trust of certain rights in connection with the Insurance Policies as set forth in Article 5 of the Plan.

"*Insurance Policy/ies*" means: (i) any insurance policies listed on Schedule 1 to the Plan, (ii) to the extent not listed on Schedule 1, any "general liability" insurance (which, for the avoidance of doubt, shall exclude director & officer, automobile, or workers' compensation insurance) contract, binder, certificate, insurance policy, or reinsurance policy, whether currently known or unknown, discovered after the Effective Date, in effect at any time on or before the Petition Date naming the Debtor, the Contributing Parties, or any of their predecessors, subsidiaries, or past or present affiliates as an insured (whether as the primary or additional insured) or that provides or may provide coverage to Carrier or the Debtor for AFFF Claims, (iii) "Aviation" policies to

which Carrier or the Debtor has rights as listed in Schedule 2 to the Plan solely to the extent of Insurance Policy Rights applicable to or arising from AFFF Claims and (iv) any other subsequently discovered insurance policies of the same types as listed in Schedules 1 and 2 to the Plan to the extent that Carrier or the Debtor have rights under such policies (whether or not such policies are specifically titled as "General Liability" or "Aviation" policies). For the avoidance of doubt, "Insurance Policies" shall not include any D&O Policies, automobile policies or worker's compensation insurance.

"*Insurance Policy Rights*" means any and all rights subject to the Insurance Assignment.

"*KFFI*" means Kidde Fire Fighting, Inc. (formerly known as National Foam, Inc.).

"*Liquidating Estate Claims*" means Administrative Claims, Priority Tax Claims, Other Priority Claims and Secured Claims.

"*New National Foam*" means, collectively, National Foam, Inc. f/k/a Eurostar US Tradeco, Inc., Angus Fire Ltd. f/k/a Eurostar Tradeco Limited, Angus International Safety Group Limited f/k/a/ Eurostar Holdco Limited, and each of their Related Parties.

"*New National Foam Release*" means a settlement between the Debtor and New National Foam pursuant to which (a) Estate Causes of Action against New National Foam are resolved for value reasonably acceptable to the Settling Parties and (b) New National Foam agrees to absolutely, unconditionally, and irrevocably release and discharge the Debtor and each Released Party from any and all Claims and Causes of Action, whether known or unknown, based on or relating to, or in any manner arising from that certain Share and Business Sale Agreement, dated as of June 28, 2013, or any other occurrence taking place on or before the Effective Date, including Proof of Claim No. 225, and otherwise in form and substance reasonably acceptable to the Settling Parties.

"*Non-Debtor Party*" means any Person other than the Debtor. For the avoidance of doubt, the term "*Non-Debtor Party*" does not include KFFI or National Foam, Inc.

"*Other Insurance Company*" means an Insurance Company that is not a Settling Insurance Company.

"*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"*Person*" means a "person" or "entity" as defined in the Bankruptcy Code.

"*Petition Date*" means May 14, 2023, the date on which the Debtor commenced the Chapter 11 Case.

"*PFAS*" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.

"*Primary AFFF Settlement Trust*" means the settlement trust organized under the laws of the state of Delaware and established under the Plan and the Settlement Trust Documents, which

shall (i) have the powers, duties and obligations set forth in the Plan and the Settlement Trust Documents, (ii) assume all liability of the Debtor and the Estate for, and administer, all Channeled AFFF Claims and (iii) be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code.

"*Primary AFFF Settlement Trust Agreement*" means the Settlement Trust Agreement governing the Primary AFFF Settlement Trust, dated as of the Effective Date, as the same may be amended or modified from time to time in accordance with the terms thereof.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Released Party*" means (i) Carrier, (ii) RTX, and (iii) each of their Related Parties in their capacities as such.  Released Parties shall not include DuPont, 3M, or their current or former affiliates and Related Parties.  If a Person is a current or former affiliate or Related Party of DuPont or 3M, and such Person is also a current or former affiliate or Related Party of Carrier or RTX, then such Person shall not be a Released Party.  For the avoidance of doubt, New National Foam shall not be a Released Party unless the New National Foam Release  is provided by the Effective Date.

"*Related Party*" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, and current and former affiliates and subsidiaries, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, all only in their capacity as a representative of such Person, and (c) respective heirs, executors, estates, and nominees, in each case solely in its capacity as such.

"*RTX Waiver*" shall have the meaning set forth in Article 5.5.11(b) of the Plan.

"*Sale Order*" means the *Order (I) Approving the Sale of All or Substantially All of the Debtor's Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving Debtor's Entry, and Performance Under the Contribution Agreement, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Granting Related Relief*, entered by the Bankruptcy Court on April 2, 2024 [D.I. 1058].

"*Settlement Trust Agreements*" means, collectively, (i) the Primary AFFF Settlement Trust Agreement, (ii) the Sovereign State AFFF Settlement Trust Agreement and (iii) the GUC Liquidating Trust Agreement.  To the extent that any provision of a Settlement Trust Agreement impacts the rights of Carrier, such provision shall not be included in such Settlement Trust Agreement unless reasonably acceptable to Carrier.

"*Settlement Trust Documents*" means, collectively, (a) the Settlement Trust Agreements, (b) the TDPs, (c) the Confirmation Order, and (d) any other agreements, instruments, and documents governing the establishment, administration, and operation of the Settlement Trusts.

"*Settlement Trusts*" means the Primary AFFF Settlement Trust, Sovereign State AFFF Settlement Trust and GUC Liquidating Trust.

"*Settling Insurance Company*" means any Insurance Company that contributes funds, proceeds, or other consideration to or for the benefit of the Primary AFFF Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order.  No Insurance Company shall be considered a Settling Insurance Company without the Committee's prior written consent.

"*Sovereign State*" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.

"*Sovereign State AFFF Settlement Trust*" means the trust established under the Plan and the Settlement Trust Documents to administer all Sovereign State Claims against the Debtor.  The Sovereign State AFFF Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code and shall have the powers, duties and obligations set forth in the Settlement Trust Documents.

"*Sovereign State Retained Cause of Action*" means any Claim or Cause of Action asserted, or which may be asserted, by a Sovereign State against a Contributing Party that (1) is not an Estate Cause of Action and (2) arises from a statute, regulation, or common law that creates a theory of liability, by which a Sovereign State could recover damages or penalties, or obtain equitable or injunctive relief, against a Contributing Party.  For the avoidance of doubt, a Sovereign State may assert a Sovereign State Retained Cause of Action irrespective of whether such Sovereign State Retained Cause of Action could also be considered an Independent AFFF Cause of Action.

"*TDPs*" or "Trust Distribution Procedures" means the Trust Distribution Procedures for the Settlement Trusts, as the same may be amended or modified from time to time in accordance with the terms thereof, that will govern the claims submission, adjudication, and distribution processes for the Settlement Trusts in a manner that is fair and equitable to Holders of Allowed Channeled AFFF Claims.  To the extent that any provision of the TDPs impacts the rights of Carrier, such provision shall not be included unless reasonably acceptable to Carrier.

"*Transferred Assets*" shall have the meaning set forth in the Acquisition Agreement.

## **EXHIBIT 2B**

**Ballot for Class 3B: Airport Claims**

**\*\*KFI WIND-DOWN CORP. PLAN BALLOT\*\***

<div style="border: 1px solid black">

**THIS BALLOT IS FOR HOLDERS OF CLAIMS AGAINST KFI WIND-DOWN CORP. (F/K/A KIDDE-FENWAL, INC.) ARISING FROM ITS AFFF OR AFFF-CONTAINING PRODUCTS.**

</div>

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |

**BALLOT FOR ACCEPTING OR REJECTING THE
DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

---

**CLASS 3B:  AIRPORT CLAIMS**

---

On May 14, 2023 (the "Petition Date"), KFI Wind-Down Corp. f/k/a Kidde-Fenwal, Inc. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") (the "Chapter 11 Case").

On [•], 2025, the Debtor filed the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Plan"),[2] which is described in greater detail

---

[1]  The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters are located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

in the *Disclosure Statement for the Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Disclosure Statement").

> **THE PLAN CONTAINS RELEASE, INJUNCTION AND EXCULPATORY PROVISIONS. THESE PROVISIONS ARE SET FORTH IN <u>APPENDIX A</u> TO THIS BALLOT.  YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.**

On [•], 2025, the Bankruptcy Court entered an order [D.I. [•]] (the "Disclosure Statement Order") approving the Disclosure Statement as containing "adequate information" within the meaning ascribed to such term in section 1125 of the Bankruptcy Code and procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures").

The Plan, Disclosure Statement, Disclosure Statement Order, Solicitation Procedures and documents included in the Plan Supplement as of the Solicitation Mailing Deadline have been included in the package of materials containing the attached ballot (the "Ballot") and can be accessed free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code.  For a description of the Causes of Action to be enjoined and the identities of the Persons that would be subject to this injunction, see Article IV.E.8 of the Disclosure Statement and Article 10.8 of the Plan.

A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of the Claims that submit votes in that Voting Class vote to accept the Plan.  Even if a Voting Class votes to reject the Plan, the Bankruptcy Court nonetheless may confirm the Plan if it finds the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

If the Plan is confirmed by the Bankruptcy Court, all Holders of Claims against and Interests in the Debtor (including those Holders who reject the Plan or abstain from voting on the Plan, and those Holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby.

The Debtor will file the Plan Supplement (as may be amended, modified or supplemented from time to time) with the Bankruptcy Court no later than **November 17, 2025.**

The documents included in the Plan Supplement as of the Solicitation Mailing Deadline are included in your Solicitation Package.  Any further Plan Supplement, and any amendments or

-2-

supplements to the foregoing, will only be served on: (a) the U.S. Trustee, (b) the Notice Parties and (c) the 2002 List.  Once filed, a copy of the Plan Supplement will also be available for review and download on the Debtor's website maintained by the Solicitation Agent free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

**Unless such time is extended by the Debtor, in consultation with the Settling Parties, or the Bankruptcy Court, the Ballot must be properly completed, signed and returned to the Solicitation Agent *so as to be actually received* no later than 5:00 p.m. (prevailing Eastern Time) on December 15, 2025 (the "Voting Deadline") in order for the vote on the Ballot to count.  Unless otherwise provided in the Solicitation Procedures, all Holders of Claims in the Voting Classes are required to (a) submit their Ballots online at the Solicitation Agent's online voting portal at https://cases.stretto.com/kfi or (b) return their Ballots by mail, overnight courier or hand delivery to the Solicitation Agent at KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, in each case so that they are actually received by the Solicitation Agent on or before the Voting Deadline (December 15, 2025 at 5:00 p.m. (prevailing Eastern Time)).**

This Ballot is to be used by Holders of Airport Claims against the Debtor in Class 3B of the Plan only.  Please refer to the Plan for the specific definition of "Airport Claim," which is copied below, as well as other relevant definitions.

> *"Holder" means a Person holding a Claim against or an Interest in the Debtor.*

> *"Airport Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of an Airport for damages relating to such Airport.*

> *"AFFF" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.*

> *"AFFF Claim" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.*

> *"Sovereign State" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.*

> *"Sovereign Tribe" means any American Indian or Alaskan Native Tribe, band, nation, pueblo, village or community, that the U.S. Secretary of the Interior acknowledges as*

*an Indian Tribe, as provided in the Federally Recognized Tribe List Act of 1994, 25 U.S.C. § 5130, and as periodically listed by the U.S. Secretary of the Interior in the Federal Register pursuant to 25 U.S.C. § 5131; and any "Tribal Organization" as provided in the Indian Self-Determination and Education and Assistance Act of 1975, as amended, 25 U.S.C. § 5304(1).*

*"Airport" means: (a) all airports categorized by the FAA in the National Plan of Integrated Airport Systems, including all airports that have been issued operating certificates by the FAA pursuant to 14 CFR Part 139; and (b) any firefighter training facility operated on airport property, whether or not operated by the airport itself.*

*"PFAS" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.*

*"Claim" has the meaning ascribed to such term under section 101(5) of the Bankruptcy Code.*

-4-

## DOCUMENTS INCLUDED WITH THE BALLOT

You should have received the following documents with the Ballot (collectively, the "**Solicitation Package**").  **Please note that some of the following documents may be included on a USB flash drive included as part of your Solicitation Package**.

- the Cover Letter;

- the Committee Letter;

- the Solicitation Procedures;

- a USB flash drive containing a copy of the Disclosure Statement (and exhibits thereto, including the Plan) and the documents contained in the Plan Supplement that have been filed prior to the Solicitation Mailing Deadline;

- the Disclosure Statement Order (without exhibits);

- a preaddressed, return envelope for completed Ballots;

- the Confirmation Hearing Notice; and

- any other materials ordered by the Court to be included as part of the Solicitation Package.

If you have questions about the Ballot, or if you did not receive a copy of the Plan or any related materials, please contact the Solicitation Agent at KFIInquiries@stretto.com or (866) 887-0488 (toll-free) or +1 (949) 889-0128 (international).  Information may also be obtained at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtor or any other party for payment purposes.

-5-

<u>**INSTRUCTIONS FOR COMPLETING YOUR BALLOT**</u>

The following instructions explain each of the items contained on the Ballot.   If you have any questions, please contact the Solicitation Agent at the phone number or e-mail provided above or visit https://cases.stretto.com/kfi.

**If Submitting Your Vote through the Ballot Submission Portal:**

The Solicitation Agent will accept Ballots if properly completed through the Ballot Submission Portal.   To submit your customized electronic Ballot via the Ballot Submission Portal, visit https://cases.stretto.com/kfi, click on the Ballot Submission Portal link and follow the instructions to submit your Ballot.

**IMPORTANT NOTE:** You will need the following information to retrieve and submit your customized electronic Ballot:

**Unique E-Ballot Password:** _____

Except as provided in the Solicitation Procedures, submission of your Ballot via the Solicitation Agent's online portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Except as provided in the Solicitation Procedures, Ballots submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.

Each "Unique E-Ballot Password" is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each Unique E-Ballot Password you receive, as applicable.  Creditors who cast a Ballot using the online portal should NOT also submit a paper Ballot.

The encrypted Ballot data and audit trail created by such electronic submission will become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.  Ballots submitted via the Ballot Submission Portal will be deemed to contain an original signature.

If your Ballot is not actually received on or before the Voting Deadline by the Solicitation Agent, and such Voting Deadline is not extended by the Debtor as noted above, your vote will not be counted.

**If Submitting Your Vote through Regular Mail, Overnight Courier, or via Hand Delivery:**

Submit your completed and signed Ballot by regular mail using the return envelope included in the Solicitation Package (or otherwise), or by hand delivery or overnight courier to:

> KFI Ballot Processing
> c/o Stretto
> 410 Exchange, Suite 100
> Irvine, CA 92602
>
> To arrange for hand delivery, please send an
> email to KFIInquiries@stretto.com at
> least 24 hours before arrival at the address above and
> provide the anticipated date and time of delivery.

**To fill out the Ballot, you must complete the following:**

**Item 1.  Claimant's Name and Address.**

Please fill in the name and address information requested.  Claimants should include street address, city, state, ZIP Code, telephone number and email address.

**Item 2.  Vote on the Plan.**

Vote on the Plan by checking the box that corresponds to your choice.  You may vote to ACCEPT the Plan (meaning that you vote in favor of the Plan) or to REJECT the Plan (meaning that you vote against the Plan).  You must check either the ACCEPT or REJECT box below for the Plan to have your vote counted.  If you check both the ACCEPT and REJECT boxes for the Plan, your vote will not be counted.

**Item 3.  Certifications, Acknowledgment, Signature and Date.**

Either the claimant, the claimant's personal representative, or the claimant's attorney MUST sign the Ballot.  If the Ballot is not signed, the vote shown on the Ballot will NOT be counted.

The claimant, the claimant's personal representative, or the claimant's attorney MUST certify certain information on the Ballot.  If you are the claimant's attorney, you must provide evidence of your authority to vote on behalf of the claimant at the Debtor's request.  Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

By signing the Ballot, you make one of the following certifications, as applicable:

- I am the claimant and make the following certifications under penalty or perjury.

4898-0197-9649 v.10

i. I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

ii. To the best of my knowledge, information and belief, I am the Holder of an Airport Claim against the Debtor in Class 3B of the Plan; and

iii. I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan in my capacity as the claimant.

- I am the personal representative of the claimant and make the following certifications under penalty of perjury.

i. The claimant's personal representative has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

ii. To the best of my knowledge, information and belief, the claimant is the Holder of an Airport Claim against the Debtor in Class 3B of the Plan; and

iii. I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

- I am an attorney for the claimant and make the following certifications under penalty of perjury.

i. The claimant's attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

ii. To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the claimant is the Holder of an Airport Claim against the Debtor in Class 3B of the Plan; and

-8-

      iii.     I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

The Ballot does not constitute and will not be deemed a Proof of Claim or Interest, an assertion of a Claim, the allowance of a Claim, or the acceptance or liquidation of any Airport Claim for purposes of any distribution.   None of the information set forth in the Ballot shall constitute an admission by the Debtor as to the extent, validity, or priority of the Claim voted herein, nor shall anything contained herein or information submitted in or with the Ballot be binding upon the Debtor or the Holder in any subsequent Claims resolution process or other proceeding.   The Ballot may not be used for any purposes other than to transmit votes on the Plan.

If you cast more than one Ballot voting the same Airport Claim before the Voting Deadline, the last valid Ballot received by the Solicitation Agent on or before the Voting Deadline will be deemed to reflect your intent and will supersede any prior Ballots.

**Holders of Claims must vote the full amount of their Claims to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan**.   A Holder of an Airport Claim may not split his or her vote on the Plan.   Accordingly, the votes of any Holder of an Airport Claim who purports partially to accept and partially to reject the Plan will not be counted.

---

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT,
BELIEVE YOU MAY HAVE RECEIVED AN INCORRECT BALLOT,
OR IF YOU DID NOT RECEIVE A COPY OF ANY OF
THE DOCUMENTS DESCRIBED IN THESE INSTRUCTIONS,
PLEASE CONTACT THE SOLICITATION AGENT AT:**

**TELEPHONE: (866) 887-0488 (TOLL-FREE)
OR +1 (949) 889-0128 (INTERNATIONAL)
E-MAIL: KFIINQUIRIES@STRETTO.COM
OR VISIT HTTPS://CASES.STRETTO.COM/KFI**

---

4898-0197-9649 v.10

## **PLAN BALLOT**

### BALLOT FOR ACCEPTING OR REJECTING THE
### DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
### UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

---

### CLASS 3B:  AIRPORT CLAIMS

---

| **Please read the instructions that accompany this Ballot before completing.    Print clearly.** |
|---|
| **ITEM 1 – Claimant's Name and Address:** |
| Name |
| Street Address |
| City, State, and ZIP Code (U.S.) |
| Telephone Number |
| Email Address |

**ITEM 2 – Amount of Your Claim.**

For the purposes of voting to accept or reject the Plan, the undersigned certifies that the claimant holds an Airport Claim in the amount set forth below.  **Please note that each AFFF Claim has been temporarily allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance or any other purpose.**

**Claim Amount:**    $1.00

**ITEM 3 – Vote on the Plan:**

The undersigned, as Holder of (or representative of a Holder of) an Airport Claim against the Debtor in Class 3B of the Plan, votes (fill in ONE box only):

☐  to ACCEPT (vote in favor of) the Plan.

☐  to REJECT (vote against) the Plan.

---

**ITEM 4 – Certifications, Acknowledgment, Signature and Date:**

☐   I am the claimant and make the following certifications under penalty of perjury.

    i.    I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii.    To the best of my knowledge, information and belief, I am the Holder of an Airport Claim against the Debtor in Class 3B of the Plan; and

    iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan in my capacity as the claimant.

☐   I am the personal representative of the claimant and make the following certifications under penalty of perjury.

    i.    The claimant's personal representative has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii.    To the best of my knowledge, information and belief, the claimant is the Holder of an Airport Claim against the Debtor in Class 3B of the Plan; and

    iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT

-2-

(vote against) the Plan on behalf of the claimant.

☐   I am the attorney for the claimant and make the below certifications under penalty of perjury.

    i.    The claimant's attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii.    To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the claimant is the Holder of an Airport Claim against the Debtor in Class 3B of the Plan; and

    iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

**Signature and Date**




Signature of Claimant or Authorized Agent


Date


**YOU <u>MUST</u> COMPLETE ITEM 4 IN ORDER FOR YOUR VOTE(S) ON THE PLAN TO BE COUNTED.**

<u>**DO NOT INCLUDE MEDICAL RECORDS WITH THIS BALLOT.**</u>
<u>**MEDICAL RECORDS CANNOT BE RETURNED BY THE SOLICITATION AGENT.**</u>

**IF THIS BALLOT IS NOT ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY 5:00 P.M. (PREVAILING EASTERN TIME) ON DECEMBER 15, 2025, YOUR VOTE MAY NOT BE COUNTED**.

4898-0197-9649 v.10

## **Appendix A**

**Release, Injunction and Exculpation Provisions in the Plan[1]**

---

[1]   The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.

## Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released and cancelled, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Liquidating Estate and their successors and assigns.  Any Holder of such mortgage, deed of trust, Lien, pledge or other security interest (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including and cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Liquidating Administrators to evidence such release, including the execution, delivery and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

## Releases by the Estate

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party, the Debtor, the Liquidating Estate and each Related Party of the Debtor and the Liquidating Estate shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, or any other Person or Governmental Unit asserting currently or in the future by, under, through, or on behalf of the Debtor or its Estate, and each of their respective successors or assigns, including the Settlement Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between one or both of the Debtor, on the one hand, and any Released Party, the Liquidating Estate, or any Related Party of the Debtor and the Liquidating Estate, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.3 of the Plan shall not be construed to release any post-Effective Date obligations under the RTX Waiver, the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, which specifically provides that such Estate Claims Settlement can be terminated, and the releases provided in the Plan or in the Estate Claims Settlement are void, if Carrier fails to make the installments of the Guaranteed Cash Payment when due and such failure is not timely cured within 30 days, at which time the Primary AFFF Settlement Trust is entitled to commence, prosecute, or continue all Estate Causes of Action against the Released Parties in any court of competent jurisdiction, and take such other actions as the Primary AFFF Settlement Trustee may determine in the exercise of their fiduciary duties.

### Releases by the Released Parties

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Released Parties and their successors or assigns of and from any and all Claims and Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, the Debtor's current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between any of the Debtor, the Liquidating Estate, the Settlement Trusts or the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case, on the one hand, and any Released Party, on the other hand, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any post-Effective Date obligations under the Plan Documents, the Confirmation Order, the 2020 Separation Agreement as supplemented by the RTX Waiver, or the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, or the right of any Person to enforce the same in accordance with

the terms thereof. Except with respect to the Claims and Causes of Action against the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case that are released and discharged under Article 10.4 of the Plan, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any obligations, rights, Causes of Action or Claims that Carrier Global Corporation or members of the Carrier Group (other than the Debtor), Otis Worldwide Corporation or members of the Otis Group, or RTX or members of the UTC Group may have against any Person under the 2020 Separation Agreement as supplemented by the RTX Waiver (including indemnification rights of RTX and other members of the "UTC Group" under the 2020 Separation Agreement).  For the avoidance of doubt, in the event that the Estate Claims Settlement Effective Date does not occur or the Estate Claims Settlement is terminated as contemplated by the last paragraph of Article 10.3 in the Plan, all releases being provided by the Released Parties under the Plan shall be void.

## Scope of Releases

Each Person providing releases under the Plan, including the Debtor, the Estate and the Settling Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts. Each Person providing releases under the Plan shall be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

## Exculpation

Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtor and its directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation.

As of the Effective Date, to the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in Article 10 of the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person for any act or omission in connection with, related to or arising out of this Chapter 11 Case, including (a) the operation of the Debtor's businesses during the pendency of this Chapter 11 Case; (b) the

administration and adjudication of Claims and Interests during this Chapter 11 Case; (c) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Plan, the Disclosure Statement, the Plan Supplement, or any related contract, instrument, release or other agreement or document created or entered into in connection with the Chapter 11 Case (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan and the distribution of property under the Plan); (d) any other transaction, agreement, event, or other occurrence related to the Chapter 11 Case taking place on or before the Effective Date, other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.

## Injunction

Except as otherwise expressly provided in the Plan or the Confirmation Order, the satisfaction and release pursuant to Article 10 of the Plan shall also act as a permanent injunction against any Person who has held, holds, or may in the future hold Claims against or Interests in the Debtor or any of its assets or properties based on any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are treated, released, settled, channeled, or exculpated pursuant to the terms of the Plan from taking any of the following actions on account of, or on the basis of, such Claims or Interests:  (a) commencing or continuing any action to collect, enforce, offset, recoup, or recover with respect to any Claims or Interests treated, released, settled, channeled, or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Claim or Interest against the Debtor, the Liquidating Estate, the Settlement Trusts, or its or their respective property; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of or in connection with or with respect to any such Claims or Interests, notwithstanding an indication of a Claim or Interest or otherwise that a Holder of such Claim or Interest asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise, against the Debtor, the Liquidating Estate, or the Settlement Trusts; or (e) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

## Channeling Injunction

Notwithstanding anything to the contrary in the Plan, to preserve and promote the settlements contemplated by and provided for in the Plan, including the Insurance Settlement Agreements, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under sections 105(a) and 1123(b) of the Bankruptcy Code, the sole recourse of any Holder of a Channeled AFFF Claim against the Debtor or a Released Party on account of such Channeled AFFF Claim shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to

and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, and such Holder shall have no right whatsoever at any time to assert any such Channeled AFFF Claim or any Estate Cause of Action that is released under the Estate Claims Settlement against the Debtor or any Released Party or any property or interest in property of the Debtor or any Released Party.  For the avoidance of doubt, the sole recourse for any Channeled AFFF Claim covered by any Insurance Policy issued by a Settling Insurance Company shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents.  Accordingly, on and after the Effective Date, all Holders of AFFF Claims that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled AFFF Claim or any Estate Cause of Action against the Debtor or any Released Party shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from the Debtor or any Released Party with respect to any such Channeled AFFF Claim or Estate Cause of Action, other than from the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, including:

    a)    commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

    b)    enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

    c)    creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

    d)    asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party; or

    e)    taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents, or, with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, by the Sovereign State AFFF Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Channeled AFFF Claim.

The Debtor, the Liquidating Estate and/or any Released Party, as applicable, may enforce the Channeling Injunction and/or the Releases contained in the Plan before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at their own cost and expense, and no such cost or expense incurred by a party other than the Primary AFFF Settlement Trust shall be reimbursed or indemnified by the Primary AFFF Settlement Trust under any circumstances.

## Insurance Company Injunction

Subject to the provisos set forth in this Section, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim or cause of action (including any AFFF Claim or any Claim for or respecting any Primary AFFF Settlement Trust expense) against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Insurance Policy, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, statute or any other theory of law, equity or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim or cause of action, including:

a)      commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, demand, or cause of action against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such Claim, demand, or cause of action against any Insurance Company);

b)      enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

c)      creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such Claim or cause of action; and

d)      except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

*provided, however,* that (i) nothing in this Section shall impair or affect the rights of any member of the UTC Group, including RTX, or any member of the Otis Group (each as defined in the 2020 Separation Agreement), or any additional insured designated by RTX

or any member of the UTC Group, based upon, attributable to, arising out of, or in any way connected with an Insurance Policy, including to assert Claims or Causes of Action against any Insurance Company for covered losses and to receive proceeds in respect thereof; (ii) this injunction shall not impair in any way any actions brought by the Primary AFFF Settlement Trust against any Other Insurance Company; (iii) the Primary AFFF Settlement Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction with respect to any Other Insurance Company, in accordance with the Settlement Trust Documents, upon express written notice to such Other Insurance Company; and (iv) this injunction is not issued for the benefit of any Other Insurance Company, and no Other Insurance Company is a third-party beneficiary of this injunction.

Notwithstanding anything to the contrary in the Plan, this injunction shall not enjoin:

a)      the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of Holders of AFFF Claims to assert such Claims, as applicable, in accordance with the TDPs;

b)      the rights of the Primary AFFF Settlement Trust to prosecute any action based on or arising from Insurance Policies, except to the extent otherwise released;

c)      the rights of the Primary AFFF Settlement Trust to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company based on or arising from the Insurance Policies;

d)      any actions of the Contributing Parties in fulfilling their obligations under the Estate Claims Settlement in consultation and coordination with the Primary AFFF Settlement Trust;

e)      the rights of any Insurance Company to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company; or

f)      the Claims for reinsurance under reinsurance contracts or Claims under retrocessional contracts among the Settling Insurance Companies and any Other Insurance Company.

### Prohibition on Actions Against Buyer

Subject to the Sale Order and the Acquisition Agreement, Buyer, in its capacity as such, shall not have any liability for any AFFF Claims against the Debtor arising prior to the closing of the Sale.  Except as expressly otherwise set forth in the Sale Order, all persons and entities hereby are forever barred, estopped and permanently enjoined from asserting against Buyer, its Affiliates, its successors or assigns, its property or the Transferred Assets, such persons' or entities' AFFF Claims that have been or could have been asserted against the Debtor arising prior to the closing of the Sale.  For the avoidance of doubt, the foregoing shall

not release Buyer from, or enjoin any actions against Buyer for, any Assumed Liability or any other liability incurred by Buyer on account of its operations following the closing of the Sale.

## Limitations on Exculpations and Releases

Notwithstanding anything to the contrary in the Plan, none of the releases or exculpations set forth in the Plan shall operate to waive or release any obligation or Causes of Action of any Person:  (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations or (b) expressly set forth in and preserved by the Plan, the Plan Supplement, Plan Documents or related documents.

## Release Dispute

In the event of a Release Dispute, a Released Party may, at its sole cost and expense, file a motion with the Bankruptcy Court seeking a determination as to whether an AFFF Claimant's Cause of Action was settled and released pursuant to the Plan, and upon such motion, the Bankruptcy Court shall make such determination and, if appropriate, enjoin the prosecution of such Cause of Action as having been settled and released under the Plan.

## Relevant Definitions

"*2020 Separation Agreement*" means that certain Separation and Distribution Agreement, dated as of April 2, 2020, by and among United Technologies Corporation, Carrier Global Corporation, and Otis Worldwide Corporation.

"*Administrative Claim*" means an Allowed Claim for costs and expenses of administration of the Chapter 11 Case pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate; (b) Allowed Professional Compensation Claims; (c) Allowed Fee Examiner Compensation Claims; and (d) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

"*AFFF*" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

"*AFFF Claim*" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.

"*Assumed Liability*" shall have the meaning set forth in the Acquisition Agreement.

"*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other Claims, Causes of Action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties-in-interest under the Bankruptcy Code or applicable non-

bankruptcy law, including claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) was commenced prior to the Effective Date.

"*Buyer*" means Pacific Erin Opco, LLC, as the purchaser of substantially all of the Debtor's assets pursuant to the Acquisition Agreement and the Sale Order.

"*Carrier*" means Carrier Global Corporation, a Delaware corporation, and its non-Debtor affiliates and Related Parties.

"*Causes of Action*" means any current or future actions, Claims, cross-claims, third-party claims, causes of action, controversies, disputes, demands, rights, liens, indemnities, contributions, guaranties, suits, obligations, liabilities, losses, debts, fees or expenses, damages, interest, judgments, costs, accounts, defenses, remedies, offsets, powers, privileges, proceedings, licenses, and franchises of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, choate or inchoate, capable of being asserted directly or derivatively (including any alter ego theories), including any Claims for recovery of attorneys' fees, turnover, fraud, gross negligence, or willful misconduct, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws, consumer protection laws, environmental laws, or nuisance or trespass theories). Causes of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to or otherwise contest Claims or Interests, (c) any claim pursuant to section 362 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Actions.

"*Channeled AFFF Claims*" means all AFFF Claims against the Debtor or the Estate channeled to the Primary AFFF Settlement Trust under the Plan and Settlement Trust Documents. For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

"*Committee*" means the official committee of unsecured creditors of the Debtor appointed by the U.S. Trustee in the Chapter 11 Case under section 1102(a) of the Bankruptcy Code pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 83] and any amendments thereto.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Settling Parties.

"*Consummation*" means the occurrence of the Effective Date.

"*Debtor*" means Kidde-Fenwal, Inc., the debtor and debtor in possession in the Chapter 11 Case, now known as KFI Wind-Down Corp.  In 2007, KFFI (formerly known as National Foam, Inc.) merged into Kidde-Fenwal, Inc., with Kidde-Fenwal, Inc. as the surviving entity.  Pursuant to this merger, KFFI's liabilities were assumed by, and KFFI's causes of action were transferred to, Kidde-Fenwal, Inc. directly or indirectly by merger or other agreement.  The term "Debtor" includes Kidde-Fenwal, Inc. as successor by merger or other agreement by which Kidde-Fenwal, Inc. obtained or assumed the liabilities and Causes of Action of any Person.

"*Effective Date*" means the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date set forth in the Plan shall have been satisfied or waived and on which a notice indicating the Effective Date has been filed on the docket of the Chapter 11 Case.

"*Estate Causes of Action*" means Causes of Action owned or held by either the Debtor or its Estate, or capable of being asserted (currently, or in the future) by any Person or Governmental Unit on behalf of, under or through, either the Debtor or its Estate, and each of their respective successors or assigns, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions, that may be commenced by a representative of the Estate under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise.  Without limiting the foregoing, Estate Causes of Action shall include:  (a) Causes of Action that on or after the Petition Date may be exclusively asserted by or on behalf of the Debtor or its Estate under applicable law, or that prior to the Petition Date could have been asserted by the Debtor on its own behalf under applicable law, including Causes of Action based on (i) the doctrine of successor liability that seek to impose the Debtor's (including KFFI's or National Foam, Inc.'s) liabilities on an alleged successor, whether based on a contractual assumption of liability, consolidation or de facto merger, acquisition of the Debtor's product line, fraud, domination, direction of the Debtor's affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, or (ii) the doctrines of alter ego or veil piercing involving alter egos of the Debtor or the piercing of the Debtor's (including KFFI's or National Foam, Inc.'s) corporate veil, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form; (b) Causes of Action or theories for recovery or remedies that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is generally common to creditors of the Debtor and can be asserted by the Debtor under applicable law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor.  Subsections (a), (b) and (c) immediately above expressly encompass any Causes of Action based on:  (i) the alleged assumption of the Debtor's (including KFFI's or

National Foam, Inc.'s) liabilities (but not a non-Debtor's liabilities) by Kidde plc (n/k/a Kidde Limited) pursuant to the 2000 Demerger Agreement, or any alleged subsequent assumption of such liabilities of the Debtor from Kidde plc by any other Released Party; or (ii) the alleged assumption of the Debtor's liabilities (but not a non-Debtor's liabilities), including any liabilities resulting from acts or omissions of National Foam, Inc. or KFFI, by a Released Party pursuant to the 2020 Separation Agreement.  For the avoidance of doubt, Estate Causes of Action shall not include any Independent AFFF Causes of Action or any Sovereign State Retained Causes of Action or Insurance Actions against any Released Party based on acts or omissions occurring after entry into the Plan Support Agreement with respect to rights under the 2020 Separation Agreement or the RTX Waiver to access and make Claims under any Insurance Policy or otherwise obtain the benefit of the Insurance Assignment.

"*Estate Claims Settlement*" means the settlement, including the release of all Estate Causes of Action against the Released Parties, pursuant to the Estate Claims Settlement Agreement.

"*Independent AFFF Cause of Action*" means any Cause of Action that could be asserted by an AFFF Claimant against a Non-Debtor Party based on the Non-Debtor Party's own conduct and breach of duty (*i.e.*, duty owed to the AFFF Claimant and not owed to the Debtor), including (a) Causes of Action arising from such acts or omissions of such Non-Debtor Party, and (b) Causes of Action based on allegations that a Non-Debtor Party is responsible for such conduct under theories of liability or recovery or remedies that could have been asserted by an AFFF Claimant on its own behalf under applicable state or federal law in respect of such Causes of Action prior to the Petition Date based on (i) the doctrine of successor liability involving a Non-Debtor Party that is alleged to be a successor to another Non-Debtor Party with respect to liabilities not directly or indirectly assumed from the Debtor, whether based on a contractual assumption of liability (including under the 2020 Separation Agreement), consolidation or de facto merger, acquisition of product line, fraud, domination, direction of affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, (ii) the doctrines of alter ego or veil piercing involving alter egos of a Non-Debtor Party, or piercing the corporate veil between Non-Debtor Parties, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form, or (iii) alleged derivative or vicarious liability of a Non-Debtor Party for liabilities of another Non-Debtor Party not directly or indirectly assumed from the Debtor; *provided* that, if any Cause of Action falls within the definition of Estate Cause of Action or Sovereign State Retained Cause of Action, it is not an Independent AFFF Cause of Action.
"*Insurance Assignment*" means the transfer by the Debtor and Carrier to the Primary AFFF Settlement Trust of certain rights in connection with the Insurance Policies as set forth in Article 5 of the Plan.

"*Insurance Policy/ies*" means: (i) any insurance policies listed on Schedule 1 to the Plan, (ii) to the extent not listed on Schedule 1, any "general liability" insurance (which, for the avoidance of doubt, shall exclude director & officer, automobile, or workers' compensation insurance) contract, binder, certificate, insurance policy, or reinsurance policy, whether currently known or unknown, discovered after the Effective Date, in effect at any time on or before the Petition Date naming the Debtor, the Contributing Parties, or any of their predecessors, subsidiaries, or past or present affiliates as an insured (whether as the primary or additional insured) or that provides or may provide coverage to Carrier or the Debtor for AFFF Claims, (iii) "Aviation" policies to

which Carrier or the Debtor has rights as listed in Schedule 2 to the Plan solely to the extent of Insurance Policy Rights applicable to or arising from AFFF Claims and (iv) any other subsequently discovered insurance policies of the same types as listed in Schedules 1 and 2 to the Plan to the extent that Carrier or the Debtor have rights under such policies (whether or not such policies are specifically titled as "General Liability" or "Aviation" policies).  For the avoidance of doubt, "Insurance Policies" shall not include any D&O Policies, automobile policies or worker's compensation insurance.

"*Insurance Policy Rights*" means any and all rights subject to the Insurance Assignment.

"*KFFI*" means Kidde Fire Fighting, Inc. (formerly known as National Foam, Inc.).

"*Liquidating Estate Claims*" means Administrative Claims, Priority Tax Claims, Other Priority Claims and Secured Claims.

"*New National Foam*" means, collectively, National Foam, Inc. f/k/a Eurostar US Tradeco, Inc., Angus Fire Ltd. f/k/a Eurostar Tradeco Limited, Angus International Safety Group Limited f/k/a/ Eurostar Holdco Limited, and each of their Related Parties.

"*New National Foam Release*" means a settlement between the Debtor and New National Foam pursuant to which (a) Estate Causes of Action against New National Foam are resolved for value reasonably acceptable to the Settling Parties and (b) New National Foam agrees to absolutely, unconditionally, and irrevocably release and discharge the Debtor and each Released Party from any and all Claims and Causes of Action, whether known or unknown, based on or relating to, or in any manner arising from that certain Share and Business Sale Agreement, dated as of June 28, 2013, or any other occurrence taking place on or before the Effective Date, including Proof of Claim No. 225, and otherwise in form and substance reasonably acceptable to the Settling Parties.

"*Non-Debtor Party*" means any Person other than the Debtor.  For the avoidance of doubt, the term "*Non-Debtor Party*" does not include KFFI or National Foam, Inc.

"*Other Insurance Company*" means an Insurance Company that is not a Settling Insurance Company.

"*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"*Person*" means a "person" or "entity" as defined in the Bankruptcy Code.

"*Petition Date*" means May 14, 2023, the date on which the Debtor commenced the Chapter 11 Case.

"*PFAS*" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.

"*Primary AFFF Settlement Trust*" means the settlement trust organized under the laws of the state of Delaware and established under the Plan and the Settlement Trust Documents, which

shall (i) have the powers, duties and obligations set forth in the Plan and the Settlement Trust Documents, (ii) assume all liability of the Debtor and the Estate for, and administer, all Channeled AFFF Claims and (iii) be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code.

"*Primary AFFF Settlement Trust Agreement*" means the Settlement Trust Agreement governing the Primary AFFF Settlement Trust, dated as of the Effective Date, as the same may be amended or modified from time to time in accordance with the terms thereof.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Released Party*" means (i) Carrier, (ii) RTX, and (iii) each of their Related Parties in their capacities as such.  Released Parties shall not include DuPont, 3M, or their current or former affiliates and Related Parties.  If a Person is a current or former affiliate or Related Party of DuPont or 3M, and such Person is also a current or former affiliate or Related Party of Carrier or RTX, then such Person shall not be a Released Party.  For the avoidance of doubt, New National Foam shall not be a Released Party unless the New National Foam Release  is provided by the Effective Date.

"*Related Party*" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, and current and former affiliates and subsidiaries, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, all only in their capacity as a representative of such Person, and (c) respective heirs, executors, estates, and nominees, in each case solely in its capacity as such.

"*RTX Waiver*" shall have the meaning set forth in Article 5.5.11(b) of the Plan.

"*Sale Order*" means the *Order (I) Approving the Sale of All or Substantially All of the Debtor's Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving Debtor's Entry, and Performance Under the Contribution Agreement, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Granting Related Relief*, entered by the Bankruptcy Court on April 2, 2024 [D.I. 1058].

"*Settlement Trust Agreements*" means, collectively, (i) the Primary AFFF Settlement Trust Agreement, (ii) the Sovereign State AFFF Settlement Trust Agreement and (iii) the GUC Liquidating Trust Agreement.  To the extent that any provision of a Settlement Trust Agreement impacts the rights of Carrier, such provision shall not be included in such Settlement Trust Agreement unless reasonably acceptable to Carrier.

"*Settlement Trust Documents*" means, collectively, (a) the Settlement Trust Agreements, (b) the TDPs, (c) the Confirmation Order, and (d) any other agreements, instruments, and documents governing the establishment, administration, and operation of the Settlement Trusts.

"*Settlement Trusts*" means the Primary AFFF Settlement Trust, Sovereign State AFFF Settlement Trust and GUC Liquidating Trust.

"*Settling Insurance Company*" means any Insurance Company that contributes funds, proceeds, or other consideration to or for the benefit of the Primary AFFF Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order.  No Insurance Company shall be considered a Settling Insurance Company without the Committee's prior written consent.

"*Sovereign State*" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.

"*Sovereign State AFFF Settlement Trust*" means the trust established under the Plan and the Settlement Trust Documents to administer all Sovereign State Claims against the Debtor.  The Sovereign State AFFF Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code and shall have the powers, duties and obligations set forth in the Settlement Trust Documents.

"*Sovereign State Retained Cause of Action*" means any Claim or Cause of Action asserted, or which may be asserted, by a Sovereign State against a Contributing Party that (1) is not an Estate Cause of Action and (2) arises from a statute, regulation, or common law that creates a theory of liability, by which a Sovereign State could recover damages or penalties, or obtain equitable or injunctive relief, against a Contributing Party.  For the avoidance of doubt, a Sovereign State may assert a Sovereign State Retained Cause of Action irrespective of whether such Sovereign State Retained Cause of Action could also be considered an Independent AFFF Cause of Action.

"*TDPs*" or "Trust Distribution Procedures" means the Trust Distribution Procedures for the Settlement Trusts, as the same may be amended or modified from time to time in accordance with the terms thereof, that will govern the claims submission, adjudication, and distribution processes for the Settlement Trusts in a manner that is fair and equitable to Holders of Allowed Channeled AFFF Claims.  To the extent that any provision of the TDPs impacts the rights of Carrier, such provision shall not be included unless reasonably acceptable to Carrier.

"*Transferred Assets*" shall have the meaning set forth in the Acquisition Agreement.

# **EXHIBIT 2C**

**Ballot for Class 3C: Sovereign State Claims**

## **KFI WIND-DOWN CORP. PLAN BALLOT**

> # THIS BALLOT IS FOR HOLDERS OF CLAIMS AGAINST KFI WIND-DOWN CORP. (F/K/A KIDDE-FENWAL, INC.) ARISING FROM ITS AFFF OR AFFF-CONTAINING PRODUCTS.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |

## BALLOT FOR ACCEPTING OR REJECTING THE
## DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

## CLASS 3C:  SOVEREIGN STATE CLAIMS

On May 14, 2023 (the "Petition Date"), KFI Wind-Down Corp. f/k/a Kidde-Fenwal, Inc. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") (the "Chapter 11 Case").

On [•], 2025, the Debtor filed the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Plan"),[2] which is described in greater detail in the *Disclosure Statement for the Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the*

---

[1]   The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters are located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

*Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto and as may be amended, modified or supplemented from time to time, the "Disclosure Statement").

> **THE PLAN CONTAINS RELEASE, INJUNCTION AND EXCULPATORY PROVISIONS. THESE PROVISIONS ARE SET FORTH IN <u>APPENDIX A</u> TO THIS BALLOT. YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.**

On [•], 2025, the Bankruptcy Court entered an order [D.I. [•]] (the "Disclosure Statement Order") approving the Disclosure Statement as containing "adequate information" within the meaning ascribed to such term in section 1125 of the Bankruptcy Code and procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures").

The Plan, Disclosure Statement, Disclosure Statement Order, Solicitation Procedures and documents included in the Plan Supplement as of the Solicitation Mailing Deadline have been included in the package of materials containing the attached ballot (the "Ballot") and can be accessed free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code. For a description of the Causes of Action to be enjoined and the identities of the Persons that would be subject to this injunction, see Article IV.E.8 of the Disclosure Statement and Article 10.8 of the Plan.

A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of the Claims that submit votes in that Voting Class vote to accept the Plan. Even if a Voting Class votes to reject the Plan, the Bankruptcy Court nonetheless may confirm the Plan if it finds the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

If the Plan is confirmed by the Bankruptcy Court, all Holders of Claims against and Interests in the Debtor (including those Holders who reject the Plan or abstain from voting on the Plan, and those Holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby.

The Debtor will file the Plan Supplement (as may be amended, modified or supplemented from time to time) with the Bankruptcy Court no later than **November 17, 2025.**

The documents included in the Plan Supplement as of the Solicitation Mailing Deadline are included in your Solicitation Package. Any further Plan Supplement, and any amendments or supplements to the foregoing, will only be served on: (a) the U.S. Trustee (b) the Notice Parties and (c)

-2-

the 2002 List.   Once filed, a copy of the Plan Supplement will also be available for review and download on the Debtor's website maintained by the Solicitation Agent free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

**Unless such time is extended by the Debtor, in consultation with the Settling Parties, or the Bankruptcy Court, the Ballot must be properly completed, signed and returned to the Solicitation Agent *so as to be actually received* no later than 5:00 p.m. (prevailing Eastern Time) on December 15, 2025 (the "Voting Deadline") in order for the vote on the Ballot to count.   Unless otherwise provided in the Solicitation Procedures, all Holders of Claims in the Voting Classes are required to (a) submit their Ballots online at the Solicitation Agent's online voting portal at https://cases.stretto.com/kfi or (b) return their Ballots by mail, overnight courier or hand delivery to the Solicitation Agent at KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, in each case so that they are actually received by the Solicitation Agent on or before the Voting Deadline (December 15, 2025 at 5:00 p.m. (prevailing Eastern Time)).**

This Ballot is to be used by Holders of Sovereign State Claims against the Debtor in Class 3C of the Plan only.  Please refer to the Plan for the specific definition of "Sovereign State Claim," which is copied below, as well as other relevant definitions.

*"Holder" means a Person holding a Claim against or an Interest in the Debtor.*

*"Sovereign State Claim" means any AFFF Claim asserted by a Sovereign State that is not an Airport Claim, Business Loss Claim, Fire Training Facility Claim, Landfill Claim, Personal Injury Claim, Property Damage Claim, Stormwater Claim, Wastewater Claim or Water Provider Claim.*

*"AFFF" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.*

*"AFFF Claim" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.*

*"Sovereign State" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.*

4923-8567-0913 v.10

*"Airport Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of an Airport for damages relating to such Airport.*

*"Business Loss Claim" means an AFFF Claim asserted by a person or entity, other than a Governmental Unit, Sovereign State or Sovereign Tribe, for business losses, including lost inventory, lost profits, or comparable damages, recoverable in the tort system that is not an Airport Claim, Fire Training Facility Claim, Landfill Claim, Personal Injury Claim, Property Damage Claim, Sovereign State Claim, Sovereign Tribe Claim, Stormwater Claim, Wastewater Claim, or Water Provider Claim.*

*"Fire Training Facility Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Fire Training Facility for damages relating to such Fire Training Facility.*

*"Landfill Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Landfill for damages relating to such Landfill.*

*"Personal Injury Claim" means an AFFF Claim asserted by an individual person, or legal representative of such person, for or related to, directly or indirectly, personal injuries or wrongful death.*

*"Property Damage Claim" means an AFFF Claim asserted by or on behalf of an owner of real property (other than an Airport, Stormwater System, Wastewater System, Public Water System, Landfill, or Fire Training Facility) or personal property for damages relating to such property.*

*"Stormwater Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Stormwater System for damages relating to such Stormwater System.*

*"Wastewater Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Wastewater System for damages relating to such Wastewater System.*

*"Water Provider Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Public Water System for damages relating to such Public Water System.*

*"PFAS" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.*

-4-

*"Claim"* has the meaning ascribed to such term under section 101(5) of the Bankruptcy Code.

*"Airport"* means: (a) all airports categorized by the FAA in the National Plan of Integrated Airport Systems, including all airports that have been issued operating certificates by the FAA pursuant to 14 CFR Part 139; and (b) any firefighter training facility operated on airport property, whether or not operated by the airport itself.

*"Governmental Unit"* means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code and also includes any national, central, federal, Sovereign Tribe, state, provincial, municipal, local or other domestic, foreign or supranational governmental, legislative, administrative or regulatory authority, agency, court, arbitration tribunal, board, department or commission, instrumentality thereof or other governmental or regulatory entity, including any competent governmental authority responsible for the determination, assessment, or collection of taxes.

*"Sovereign State"* means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.

*"Sovereign Tribe"* means any American Indian or Alaskan Native Tribe, band, nation, pueblo, village or community, that the U.S. Secretary of the Interior acknowledges as an Indian Tribe, as provided in the Federally Recognized Tribe List Act of 1994, 25 U.S.C. § 5130, and as periodically listed by the U.S. Secretary of the Interior in the Federal Register pursuant to 25 U.S.C. § 5131; and any "Tribal Organization" as provided in the Indian Self-Determination and Education and Assistance Act of 1975, as amended, 25 U.S.C. § 5304(1).

*"Sovereign Tribe Claim"* means an AFFF Claim asserted by a Sovereign Tribe that is not an Airport Claim, Business Loss Claim, Fire Training Facility Claim, Landfill Claim, Personal Injury Claim, Property Damage Claim, Stormwater Claim, Wastewater Claim or Water Provider Claim.

*"Fire Training Facility"* means real property (other than an Airport) that is or has been used for live firefighter training with AFFF.

*"Landfill"* means a discrete area of real property primarily used for the disposal of waste material as categorized pursuant to 40 CFR Part 239-272.

-5-

*"Stormwater System" means a system of diverting excess precipitation from rain and snowmelt events and dry-weather runoff over land or impervious surfaces without percolating into the ground from real property, municipalities, construction activities, and industrial activities and permitted as such pursuant to the National Pollutant Discharge Elimination System and/or by a state or municipal permitting authority.*

*"Wastewater System" means a network of pipes, pumping stations, and appurtenances that convey sewage and waste from its points of origin to a point of treatment and disposal.*

*"Public Water System" means a system for the provision to the public of water for human consumption through pipes or other constructed conveyances, if such system has at least fifteen (15) service connections or regularly serves an average of at least twenty-five (25) individuals daily at least sixty (60) days out of the year, consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C. § 300f(4)(A), and 40 C.F.R. Part 141. The term "Public Water System" includes (i) any collection, treatment, storage, and distribution facilities under control of the operator of such system and used primarily in connection with such system, (ii) any collection or pretreatment storage facilities not under such control which are used primarily in connection with such system, (iii) a Community Water System of any size, (iv) a Non-Transient Non-Community Water System of any size, and (v) any Person (but not any financing or lending institution) that has legal authority or responsibility (by statute, regulation, other law, or contract) to fund or incur financial obligations for the design, engineering, installation, operation, or maintenance of any facility or equipment that treats, filters, remediates, or manages water that has entered or may enter Drinking Water or any Public Water System.*

*"Community Water System" means a Public Water System that serves at least fifteen (15) service connections used by year-round residents or regularly serves at least twenty-five (25) year-round residents, consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C. § 300f(15), and 40 C.F.R. Part 141.*

*"Non-Transient Non-Community Water System" means a Public Water System that is not a Community Water System and that regularly serves at least twenty-five (25) of the same persons over six (6) months per year, consistent with the use of that term in 40 C.F.R. Part 141.*

*"Person" means a "person" or "entity" as defined in the Bankruptcy Code.*

*"Transient Non-Community Water System" means a Public Water System that is not a Community Water System and that does not regularly serve at least twenty-five (25) of*

-6-

*the same persons over six (6) months per year, consistent with the use of that term in 40 C.F.R. Part 141.*

*"Drinking Water" means water provided for human consumption (including uses such as drinking, cooking, and bathing), consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C. §§ 300f to 300j-27.   The term "Drinking Water" includes raw or untreated water that a Public Water System has drawn or collected from a Water Source so that the water may then (after any treatment) be provided for human consumption but does not include raw or untreated water that is not drawn or collected from a Water Source.*

*"Water Source" means a groundwater well, a surface-water intake, or any other intake point from which a Public Water System draws or collects water for distribution as Drinking Water, and the raw or untreated water that is thus drawn or collected.*

*[Remainder of page left intentionally blank]*

-7-

## <u>DOCUMENTS INCLUDED WITH THE BALLOT</u>

You should have received the following documents with the Ballot (collectively, the "**<u>Solicitation Package</u>**"). **Please note that some of the following documents may be included on a USB flash drive included as part of your Solicitation Package**.

- the Cover Letter;

- the Committee Letter;

- the AHC Letter;

- the Solicitation Procedures;

- a USB flash drive containing a copy of the Disclosure Statement (and exhibits thereto, including the Plan) and the documents contained in the Plan Supplement that have been filed prior to the Solicitation Mailing Deadline;

- the Disclosure Statement Order (without exhibits);

- a preaddressed, return envelope for completed Ballots;

- the Confirmation Hearing Notice; and

- any other materials ordered by the Court to be included as part of the Solicitation Package.

If you have questions about the Ballot, or if you did not receive a copy of the Plan or any related materials, please contact the Solicitation Agent at KFIInquiries@stretto.com or (866) 887-0488 (toll-free) or +1 (949) 889-0128 (international). Information may also be obtained at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtor or any other party for payment purposes.

-8-

4923-8567-0913 v.10

## INSTRUCTIONS FOR COMPLETING YOUR BALLOT

The following instructions explain each of the items contained on the Ballot.  If you have any questions, please contact the Solicitation Agent at the phone number or e-mail provided above or visit https://cases.stretto.com/kfi.

### If Submitting Your Vote through the Ballot Submission Portal:

The Solicitation Agent will accept Ballots if properly completed through the Ballot Submission Portal.  To submit your customized electronic Ballot via the Ballot Submission Portal, visit https://cases.stretto.com/kfi, click on the Ballot Submission Portal link and follow the instructions to submit your Ballot.

**IMPORTANT NOTE:** You will need the following information to retrieve and submit your customized electronic Ballot:

**Unique E-Ballot Password:** _____

Except as provided in the Solicitation Procedures, submission of your Ballot via the Solicitation Agent's online portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Except as provided in the Solicitation Procedures, Ballots submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.

Each "Unique E-Ballot Password" is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each Unique E-Ballot Password you receive, as applicable.  Creditors who cast a Ballot using the online portal should NOT also submit a paper Ballot.

The encrypted Ballot data and audit trail created by such electronic submission will become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.  Ballots submitted via the Ballot Submission Portal will be deemed to contain an original signature.

If your Ballot is not actually received on or before the Voting Deadline by the Solicitation Agent, and such Voting Deadline is not extended by the Debtor as noted above, your vote will not be counted.

### If Submitting Your Vote through Regular Mail, Overnight Courier, or via Hand Delivery:

Submit your completed and signed Ballot by regular mail using the return envelope included in the Solicitation Package (or otherwise), or by hand delivery or overnight courier to:

4923-8567-0913 v.10

KFI Ballot Processing
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602

To arrange for hand delivery, please send an
email to KFIInquiries@stretto.com at
least 24 hours before arrival at the address above and
provide the anticipated date and time of delivery.

**To fill out the Ballot, you must complete the following:**

**Item 1.  Claimant's Name and Address.**

Please fill in the name and address information requested.  Claimants should include street address, city, state, ZIP Code, telephone number and email address.

**Item 2.  Vote on the Plan.**

Vote on the Plan by checking the box that corresponds to your choice.  You may vote to ACCEPT the Plan (meaning that you vote in favor of the Plan) or to REJECT the Plan (meaning that you vote against the Plan).   You must check either the ACCEPT or REJECT box below for the Plan to have your vote counted.   If you check both the ACCEPT and REJECT boxes for the Plan, your vote will not be counted.

**Item 3.  Certifications, Acknowledgment, Signature and Date.**

Either the claimant, the claimant's personal representative, or the claimant's attorney MUST sign the Ballot.  If the Ballot is not signed, the vote shown on the Ballot will NOT be counted.

The claimant, the claimant's personal representative, or the claimant's attorney MUST certify certain information on the Ballot.  If you are the claimant's attorney, you must provide evidence of your authority to vote on behalf of the claimant at the Debtor's request.  Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

By signing the Ballot, you make one of the following certifications, as applicable:

- I am the claimant and make the following certifications under penalty of perjury.

i.    I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee and the AHC urging claimants to vote to ACCEPT (vote in favor of) the Plan;

ii.    To the best of my knowledge, information and belief, I am the Holder of a Sovereign State Claim against the Debtor in Class 3C of the Plan; and

iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan in my capacity as the claimant.

- I am the personal representative of the claimant and make the following certifications under penalty of perjury.

  i.    The claimant's personal representative has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee and the AHC urging claimants to vote to ACCEPT (vote in favor of) the Plan;

  ii.    To the best of my knowledge, information, and belief, the claimant is the Holder of a Sovereign State Claim against the Debtor in Class 3C of the Plan; and

  iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

- I am an attorney for the claimant and make the following certifications under penalty of perjury.

  i.    The claimant's attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee and the AHC urging claimants to vote to ACCEPT (vote in favor of) the Plan;

  ii.    To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the claimant is the Holder of a Sovereign State Claim against the Debtor in Class 3C of the Plan; and

-11-

iii.     I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

The Ballot does not constitute and will not be deemed a Proof of Claim or Interest, an assertion of a Claim, the allowance of a Claim, or the acceptance or liquidation of any Sovereign State Claim for purposes of any distribution. None of the information set forth in the Ballot shall constitute an admission by the Debtor as to the extent, validity, or priority of the Claim voted herein, nor shall anything contained herein or information submitted in or with the Ballot be binding upon the Debtor or the Holder in any subsequent Claims resolution process or other proceeding. The Ballot may not be used for any purposes other than to transmit votes on the Plan.

If you cast more than one Ballot voting the same Sovereign State Claim before the Voting Deadline, the last valid Ballot received by the Solicitation Agent on or before the Voting Deadline will be deemed to reflect your intent and will supersede any prior Ballots.

**Holders of Claims must vote the full amount of their Claims to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan.** A Holder of a Sovereign State Claim may not split his or her vote on the Plan. Accordingly, the votes of any Holder of a Sovereign State Claim who purports partially to accept and partially to reject the Plan will not be counted.

<div style="border:1px solid black; padding:10px; text-align:center">

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT,**
**BELIEVE YOU MAY HAVE RECEIVED AN INCORRECT BALLOT,**
**OR IF YOU DID NOT RECEIVE A COPY OF ANY OF**
**THE DOCUMENTS DESCRIBED IN THESE INSTRUCTIONS,**
**PLEASE CONTACT THE SOLICITATION AGENT AT:**

**TELEPHONE: (866) 887-0488 (TOLL-FREE)**
**OR +1 (949) 889-0128 (INTERNATIONAL)**
**E-MAIL: KFIINQUIRIES@STRETTO.COM**
**OR VISIT HTTPS://CASES.STRETTO.COM/KFI**

</div>

-12-

4923-8567-0913 v.10

**\*\*PLAN BALLOT\*\***

## BALLOT FOR ACCEPTING OR REJECTING THE
## DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

## CLASS 3C:  SOVEREIGN STATE CLAIMS

| **Please read the instructions that accompany this Ballot before completing.    Print clearly.** |
|---|
| **ITEM 1 – Claimant's Name and Address:** |
| Name |
| Street Address |
| City, State, and ZIP Code (U.S.) |
| Telephone Number |
| Email Address |
| **ITEM 2 – Amount of Your Claim.**<br><br>For the purposes of voting to accept or reject the Plan, the undersigned certifies that the claimant holds a Sovereign State Claim in the amount set forth below.  **Please note that each AFFF Claim has been temporarily allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance or any other purpose.**<br><br>**Claim Amount:**    $1.00 |

**ITEM 3 – Vote on the Plan:**

The undersigned, as Holder of (or representative of a Holder of) a Sovereign State Claim against the Debtor in Class 3C of the Plan, votes (fill in ONE box only):

☐  to ACCEPT (vote in favor of) the Plan.

☐  to REJECT (vote against) the Plan.

**ITEM 4 – Certifications, Acknowledgment, Signature and Date:**

☐   I am the claimant and make the following certifications under penalty of perjury.

    i.      I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee and the AHC urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii.      To the best of my knowledge, information and belief, I am the Holder of a Sovereign State Claim against the Debtor in Class 3C of the Plan; and

    iii.      I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan in my capacity as the claimant.

☐   I am the personal representative of the claimant and make the following certifications under penalty of perjury.

    i.      The claimant's personal representative has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee and the AHC urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii.      To the best of my knowledge, information and belief, the claimant is the Holder of a Sovereign State Claim against the Debtor in Class 3C of the Plan; and

-2-

iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

☐   I am the attorney for the claimant and make the below certifications under penalty of perjury.

i.    The claimant's attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee and the AHC urging claimants to vote to ACCEPT (vote in favor of) the Plan;

ii.    To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the claimant is the Holder of a Sovereign State Claim against the Debtor in Class 3C of the Plan; and

iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

**Signature and Date**

Signature of Claimant or Authorized Agent

Date

**YOU <u>MUST</u> COMPLETE ITEM 4 IN ORDER FOR YOUR VOTE(S) ON THE PLAN TO BE COUNTED.**

**<u>DO NOT INCLUDE MEDICAL RECORDS WITH THIS BALLOT.</u>**
**<u>MEDICAL RECORDS CANNOT BE RETURNED BY THE SOLICITATION AGENT.</u>**

**IF THIS BALLOT IS NOT ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY 5:00 P.M. (PREVAILING EASTERN TIME) ON DECEMBER 15, 2025, YOUR**

-3-

**VOTE MAY NOT BE COUNTED**.

4923-8567-0913 v.10

## **Appendix A**

### **Release, Injunction and Exculpation Provisions in the Plan[1]**

---

[1]    The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.

### Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released and cancelled, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Liquidating Estate and their successors and assigns.  Any Holder of such mortgage, deed of trust, Lien, pledge or other security interest (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including and cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Liquidating Administrators to evidence such release, including the execution, delivery and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

### Releases by the Estate

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party, the Debtor, the Liquidating Estate and each Related Party of the Debtor and the Liquidating Estate shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, or any other Person or Governmental Unit asserting currently or in the future by, under, through, or on behalf of the Debtor or its Estate, and each of their respective successors or assigns, including the Settlement Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between one or both of the Debtor, on the one hand, and any Released Party, the Liquidating Estate, or any Related Party of the Debtor and the Liquidating Estate, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.3 of the Plan shall not be construed to release any post-Effective Date obligations under the RTX Waiver, the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, which specifically provides that such Estate Claims Settlement can be terminated, and the releases provided in the Plan or in the Estate Claims Settlement are void, if Carrier fails to make the installments of the Guaranteed Cash Payment when due and such failure is not timely cured within 30 days, at which time the Primary AFFF Settlement Trust is entitled to commence, prosecute, or continue all Estate Causes of Action against the Released Parties in any court of competent jurisdiction, and take such other actions as the Primary AFFF Settlement Trustee may determine in the exercise of their fiduciary duties.

### Releases by the Released Parties

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Released Parties and their successors or assigns of and from any and all Claims and Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, the Debtor's current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between any of the Debtor, the Liquidating Estate, the Settlement Trusts or the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case, on the one hand, and any Released Party, on the other hand, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any post-Effective Date obligations under the Plan Documents, the Confirmation Order, the 2020 Separation Agreement as supplemented by the RTX Waiver, or the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, or the right of any Person to enforce the same in accordance with

the terms thereof. Except with respect to the Claims and Causes of Action against the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case that are released and discharged under Article 10.4 of the Plan, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any obligations, rights, Causes of Action or Claims that Carrier Global Corporation or members of the Carrier Group (other than the Debtor), Otis Worldwide Corporation or members of the Otis Group, or RTX or members of the UTC Group may have against any Person under the 2020 Separation Agreement as supplemented by the RTX Waiver (including indemnification rights of RTX and other members of the "UTC Group" under the 2020 Separation Agreement). For the avoidance of doubt, in the event that the Estate Claims Settlement Effective Date does not occur or the Estate Claims Settlement is terminated as contemplated by the last paragraph of Article 10.3 in the Plan, all releases being provided by the Released Parties under the Plan shall be void.

## Scope of Releases

Each Person providing releases under the Plan, including the Debtor, the Estate and the Settling Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts. Each Person providing releases under the Plan shall be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

## Exculpation

Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtor and its directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation.

As of the Effective Date, to the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in Article 10 of the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person for any act or omission in connection with, related to or arising out of this Chapter 11 Case, including (a) the operation of the Debtor's businesses during the pendency of this Chapter 11 Case; (b) the

administration and adjudication of Claims and Interests during this Chapter 11 Case; (c) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Plan, the Disclosure Statement, the Plan Supplement, or any related contract, instrument, release or other agreement or document created or entered into in connection with the Chapter 11 Case (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan and the distribution of property under the Plan); (d) any other transaction, agreement, event, or other occurrence related to the Chapter 11 Case taking place on or before the Effective Date, other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.

## Injunction

Except as otherwise expressly provided in the Plan or the Confirmation Order, the satisfaction and release pursuant to Article 10 of the Plan shall also act as a permanent injunction against any Person who has held, holds, or may in the future hold Claims against or Interests in the Debtor or any of its assets or properties based on any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are treated, released, settled, channeled, or exculpated pursuant to the terms of the Plan from taking any of the following actions on account of, or on the basis of, such Claims or Interests:  (a) commencing or continuing any action to collect, enforce, offset, recoup, or recover with respect to any Claims or Interests treated, released, settled, channeled, or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Claim or Interest against the Debtor, the Liquidating Estate, the Settlement Trusts, or its or their respective property; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of or in connection with or with respect to any such Claims or Interests, notwithstanding an indication of a Claim or Interest or otherwise that a Holder of such Claim or Interest asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise, against the Debtor, the Liquidating Estate, or the Settlement Trusts; or (e) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

## Channeling Injunction

Notwithstanding anything to the contrary in the Plan, to preserve and promote the settlements contemplated by and provided for in the Plan, including the Insurance Settlement Agreements, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under sections 105(a) and 1123(b) of the Bankruptcy Code, the sole recourse of any Holder of a Channeled AFFF Claim against the Debtor or a Released Party on account of such Channeled AFFF Claim shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to

**and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, and such Holder shall have no right whatsoever at any time to assert any such Channeled AFFF Claim or any Estate Cause of Action that is released under the Estate Claims Settlement against the Debtor or any Released Party or any property or interest in property of the Debtor or any Released Party.  For the avoidance of doubt, the sole recourse for any Channeled AFFF Claim covered by any Insurance Policy issued by a Settling Insurance Company shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents.  Accordingly, on and after the Effective Date, all Holders of AFFF Claims that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled AFFF Claim or any Estate Cause of Action against the Debtor or any Released Party shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from the Debtor or any Released Party with respect to any such Channeled AFFF Claim or Estate Cause of Action, other than from the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, including:**

> **a)       commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;**

> **b)       enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;**

> **c)       creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;**

> **d)       asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party; or**

> **e)       taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents, or, with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, by the Sovereign State AFFF Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Channeled AFFF Claim.**

The Debtor, the Liquidating Estate and/or any Released Party, as applicable, may enforce the Channeling Injunction and/or the Releases contained in the Plan before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at their own cost and expense, and no such cost or expense incurred by a party other than the Primary AFFF Settlement Trust shall be reimbursed or indemnified by the Primary AFFF Settlement Trust under any circumstances.

## Insurance Company Injunction

Subject to the provisos set forth in this Section, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim or cause of action (including any AFFF Claim or any Claim for or respecting any Primary AFFF Settlement Trust expense) against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Insurance Policy, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, statute or any other theory of law, equity or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim or cause of action, including:

a) commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, demand, or cause of action against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such Claim, demand, or cause of action against any Insurance Company);

b) enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

c) creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such Claim or cause of action; and

d) except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

*provided, however,* that (i) nothing in this Section shall impair or affect the rights of any member of the UTC Group, including RTX, or any member of the Otis Group (each as defined in the 2020 Separation Agreement), or any additional insured designated by RTX

or any member of the UTC Group, based upon, attributable to, arising out of, or in any way connected with an Insurance Policy, including to assert Claims or Causes of Action against any Insurance Company for covered losses and to receive proceeds in respect thereof; (ii) this injunction shall not impair in any way any actions brought by the Primary AFFF Settlement Trust against any Other Insurance Company; (iii) the Primary AFFF Settlement Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction with respect to any Other Insurance Company, in accordance with the Settlement Trust Documents, upon express written notice to such Other Insurance Company; and (iv) this injunction is not issued for the benefit of any Other Insurance Company, and no Other Insurance Company is a third-party beneficiary of this injunction.

Notwithstanding anything to the contrary in the Plan, this injunction shall not enjoin:

a)      the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of Holders of AFFF Claims to assert such Claims, as applicable, in accordance with the TDPs;

b)      the rights of the Primary AFFF Settlement Trust to prosecute any action based on or arising from Insurance Policies, except to the extent otherwise released;

c)      the rights of the Primary AFFF Settlement Trust to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company based on or arising from the Insurance Policies;

d)      any actions of the Contributing Parties in fulfilling their obligations under the Estate Claims Settlement in consultation and coordination with the Primary AFFF Settlement Trust;

e)      the rights of any Insurance Company to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company; or

f)      the Claims for reinsurance under reinsurance contracts or Claims under retrocessional contracts among the Settling Insurance Companies and any Other Insurance Company.

### Prohibition on Actions Against Buyer

Subject to the Sale Order and the Acquisition Agreement, Buyer, in its capacity as such, shall not have any liability for any AFFF Claims against the Debtor arising prior to the closing of the Sale.  Except as expressly otherwise set forth in the Sale Order, all persons and entities hereby are forever barred, estopped and permanently enjoined from asserting against Buyer, its Affiliates, its successors or assigns, its property or the Transferred Assets, such persons' or entities' AFFF Claims that have been or could have been asserted against the Debtor arising prior to the closing of the Sale.  For the avoidance of doubt, the foregoing shall

not release Buyer from, or enjoin any actions against Buyer for, any Assumed Liability or any other liability incurred by Buyer on account of its operations following the closing of the Sale.

### Limitations on Exculpations and Releases

Notwithstanding anything to the contrary in the Plan, none of the releases or exculpations set forth in the Plan shall operate to waive or release any obligation or Causes of Action of any Person:  (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations or (b) expressly set forth in and preserved by the Plan, the Plan Supplement, Plan Documents or related documents.

### Release Dispute

In the event of a Release Dispute, a Released Party may, at its sole cost and expense, file a motion with the Bankruptcy Court seeking a determination as to whether an AFFF Claimant's Cause of Action was settled and released pursuant to the Plan, and upon such motion, the Bankruptcy Court shall make such determination and, if appropriate, enjoin the prosecution of such Cause of Action as having been settled and released under the Plan.

### Relevant Definitions

"*2020 Separation Agreement*" means that certain Separation and Distribution Agreement, dated as of April 2, 2020, by and among United Technologies Corporation, Carrier Global Corporation, and Otis Worldwide Corporation.

"*Administrative Claim*" means an Allowed Claim for costs and expenses of administration of the Chapter 11 Case pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate; (b) Allowed Professional Compensation Claims; (c) Allowed Fee Examiner Compensation Claims; and (d) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

"*AFFF*" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

"*AFFF Claim*" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.

"*Assumed Liability*" shall have the meaning set forth in the Acquisition Agreement.

"*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other Claims, Causes of Action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties-in-interest under the Bankruptcy Code or applicable non-

bankruptcy law, including claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) was commenced prior to the Effective Date.

"*Buyer*" means Pacific Erin Opco, LLC, as the purchaser of substantially all of the Debtor's assets pursuant to the Acquisition Agreement and the Sale Order.

"*Carrier*" means Carrier Global Corporation, a Delaware corporation, and its non-Debtor affiliates and Related Parties.

"*Causes of Action*" means any current or future actions, Claims, cross-claims, third-party claims, causes of action, controversies, disputes, demands, rights, liens, indemnities, contributions, guaranties, suits, obligations, liabilities, losses, debts, fees or expenses, damages, interest, judgments, costs, accounts, defenses, remedies, offsets, powers, privileges, proceedings, licenses, and franchises of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, choate or inchoate, capable of being asserted directly or derivatively (including any alter ego theories), including any Claims for recovery of attorneys' fees, turnover, fraud, gross negligence, or willful misconduct, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws, consumer protection laws, environmental laws, or nuisance or trespass theories). Causes of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to or otherwise contest Claims or Interests, (c) any claim pursuant to section 362 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Actions.

"*Channeled AFFF Claims*" means all AFFF Claims against the Debtor or the Estate channeled to the Primary AFFF Settlement Trust under the Plan and Settlement Trust Documents. For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

"*Committee*" means the official committee of unsecured creditors of the Debtor appointed by the U.S. Trustee in the Chapter 11 Case under section 1102(a) of the Bankruptcy Code pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 83] and any amendments thereto.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Settling Parties.

"*Consummation*" means the occurrence of the Effective Date.

"*Debtor*" means Kidde-Fenwal, Inc., the debtor and debtor in possession in the Chapter 11 Case, now known as KFI Wind-Down Corp.  In 2007, KFFI (formerly known as National Foam, Inc.) merged into Kidde-Fenwal, Inc., with Kidde-Fenwal, Inc. as the surviving entity.  Pursuant to this merger, KFFI's liabilities were assumed by, and KFFI's causes of action were transferred to, Kidde-Fenwal, Inc. directly or indirectly by merger or other agreement.  The term "Debtor" includes Kidde-Fenwal, Inc. as successor by merger or other agreement by which Kidde-Fenwal, Inc. obtained or assumed the liabilities and Causes of Action of any Person.

"*Effective Date*" means the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date set forth in the Plan shall have been satisfied or waived and on which a notice indicating the Effective Date has been filed on the docket of the Chapter 11 Case.

"*Estate Causes of Action*" means Causes of Action owned or held by either the Debtor or its Estate, or capable of being asserted (currently, or in the future) by any Person or Governmental Unit on behalf of, under or through, either the Debtor or its Estate, and each of their respective successors or assigns, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions, that may be commenced by a representative of the Estate under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise.  Without limiting the foregoing, Estate Causes of Action shall include:  (a) Causes of Action that on or after the Petition Date may be exclusively asserted by or on behalf of the Debtor or its Estate under applicable law, or that prior to the Petition Date could have been asserted by the Debtor on its own behalf under applicable law, including Causes of Action based on (i) the doctrine of successor liability that seek to impose the Debtor's (including KFFI's or National Foam, Inc.'s) liabilities on an alleged successor, whether based on a contractual assumption of liability, consolidation or de facto merger, acquisition of the Debtor's product line, fraud, domination, direction of the Debtor's affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, or (ii) the doctrines of alter ego or veil piercing involving alter egos of the Debtor or the piercing of the Debtor's (including KFFI's or National Foam, Inc.'s) corporate veil, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form; (b) Causes of Action or theories for recovery or remedies that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is generally common to creditors of the Debtor and can be asserted by the Debtor under applicable law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor.  Subsections (a), (b) and (c) immediately above expressly encompass any Causes of Action based on:  (i) the alleged assumption of the Debtor's (including KFFI's or

National Foam, Inc.'s) liabilities (but not a non-Debtor's liabilities) by Kidde plc (n/k/a Kidde Limited) pursuant to the 2000 Demerger Agreement, or any alleged subsequent assumption of such liabilities of the Debtor from Kidde plc by any other Released Party; or (ii) the alleged assumption of the Debtor's liabilities (but not a non-Debtor's liabilities), including any liabilities resulting from acts or omissions of National Foam, Inc. or KFFI, by a Released Party pursuant to the 2020 Separation Agreement.  For the avoidance of doubt, Estate Causes of Action shall not include any Independent AFFF Causes of Action or any Sovereign State Retained Causes of Action or Insurance Actions against any Released Party based on acts or omissions occurring after entry into the Plan Support Agreement with respect to rights under the 2020 Separation Agreement or the RTX Waiver to access and make Claims under any Insurance Policy or otherwise obtain the benefit of the Insurance Assignment.

"*Estate Claims Settlement*" means the settlement, including the release of all Estate Causes of Action against the Released Parties, pursuant to the Estate Claims Settlement Agreement.

"*Independent AFFF Cause of Action*" means any Cause of Action that could be asserted by an AFFF Claimant against a Non-Debtor Party based on the Non-Debtor Party's own conduct and breach of duty (*i.e.*, duty owed to the AFFF Claimant and not owed to the Debtor), including (a) Causes of Action arising from such acts or omissions of such Non-Debtor Party, and (b) Causes of Action based on allegations that a Non-Debtor Party is responsible for such conduct under theories of liability or recovery or remedies that could have been asserted by an AFFF Claimant on its own behalf under applicable state or federal law in respect of such Causes of Action prior to the Petition Date based on (i) the doctrine of successor liability involving a Non-Debtor Party that is alleged to be a successor to another Non-Debtor Party with respect to liabilities not directly or indirectly assumed from the Debtor, whether based on a contractual assumption of liability (including under the 2020 Separation Agreement), consolidation or de facto merger, acquisition of product line, fraud, domination, direction of affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, (ii) the doctrines of alter ego or veil piercing involving alter egos of a Non-Debtor Party, or piercing the corporate veil between Non-Debtor Parties, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form, or (iii) alleged derivative or vicarious liability of a Non-Debtor Party for liabilities of another Non-Debtor Party not directly or indirectly assumed from the Debtor; *provided* that, if any Cause of Action falls within the definition of Estate Cause of Action or Sovereign State Retained Cause of Action, it is not an Independent AFFF Cause of Action.
"*Insurance Assignment*" means the transfer by the Debtor and Carrier to the Primary AFFF Settlement Trust of certain rights in connection with the Insurance Policies as set forth in Article 5 of the Plan.

"*Insurance Policy/ies*" means: (i) any insurance policies listed on <u>Schedule 1</u> to the Plan, (ii) to the extent not listed on Schedule 1, any "general liability" insurance (which, for the avoidance of doubt, shall exclude director & officer, automobile, or workers' compensation insurance) contract, binder, certificate, insurance policy, or reinsurance policy, whether currently known or unknown, discovered after the Effective Date, in effect at any time on or before the Petition Date naming the Debtor, the Contributing Parties, or any of their predecessors, subsidiaries, or past or present affiliates as an insured (whether as the primary or additional insured) or that provides or may provide coverage to Carrier or the Debtor for AFFF Claims, (iii) "Aviation" policies to

which Carrier or the Debtor has rights as listed in Schedule 2 to the Plan solely to the extent of Insurance Policy Rights applicable to or arising from AFFF Claims and (iv) any other subsequently discovered insurance policies of the same types as listed in Schedules 1 and 2 to the Plan to the extent that Carrier or the Debtor have rights under such policies (whether or not such policies are specifically titled as "General Liability" or "Aviation" policies).  For the avoidance of doubt, "Insurance Policies" shall not include any D&O Policies, automobile policies or worker's compensation insurance.

"*Insurance Policy Rights*" means any and all rights subject to the Insurance Assignment.

"*KFFI*" means Kidde Fire Fighting, Inc. (formerly known as National Foam, Inc.).

"*Liquidating Estate Claims*" means Administrative Claims, Priority Tax Claims, Other Priority Claims and Secured Claims.

"*New National Foam*" means, collectively, National Foam, Inc. f/k/a Eurostar US Tradeco, Inc., Angus Fire Ltd. f/k/a Eurostar Tradeco Limited, Angus International Safety Group Limited f/k/a/ Eurostar Holdco Limited, and each of their Related Parties.

"*New National Foam Release*" means a settlement between the Debtor and New National Foam pursuant to which (a) Estate Causes of Action against New National Foam are resolved for value reasonably acceptable to the Settling Parties and (b) New National Foam agrees to absolutely, unconditionally, and irrevocably release and discharge the Debtor and each Released Party from any and all Claims and Causes of Action, whether known or unknown, based on or relating to, or in any manner arising from that certain Share and Business Sale Agreement, dated as of June 28, 2013, or any other occurrence taking place on or before the Effective Date, including Proof of Claim No. 225, and otherwise in form and substance reasonably acceptable to the Settling Parties.

"*Non-Debtor Party*" means any Person other than the Debtor.  For the avoidance of doubt, the term "*Non-Debtor Party*" does not include KFFI or National Foam, Inc.

"*Other Insurance Company*" means an Insurance Company that is not a Settling Insurance Company.

"*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"*Person*" means a "person" or "entity" as defined in the Bankruptcy Code.

"*Petition Date*" means May 14, 2023, the date on which the Debtor commenced the Chapter 11 Case.

"*PFAS*" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.

"*Primary AFFF Settlement Trust*" means the settlement trust organized under the laws of the state of Delaware and established under the Plan and the Settlement Trust Documents, which

shall (i) have the powers, duties and obligations set forth in the Plan and the Settlement Trust Documents, (ii) assume all liability of the Debtor and the Estate for, and administer, all Channeled AFFF Claims and (iii) be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code.

"*Primary AFFF Settlement Trust Agreement*" means the Settlement Trust Agreement governing the Primary AFFF Settlement Trust, dated as of the Effective Date, as the same may be amended or modified from time to time in accordance with the terms thereof.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Released Party*" means (i) Carrier, (ii) RTX, and (iii) each of their Related Parties in their capacities as such.  Released Parties shall not include DuPont, 3M, or their current or former affiliates and Related Parties.  If a Person is a current or former affiliate or Related Party of DuPont or 3M, and such Person is also a current or former affiliate or Related Party of Carrier or RTX, then such Person shall not be a Released Party.  For the avoidance of doubt, New National Foam shall not be a Released Party unless the New National Foam Release  is provided by the Effective Date.

"*Related Party*" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, and current and former affiliates and subsidiaries, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, all only in their capacity as a representative of such Person, and (c) respective heirs, executors, estates, and nominees, in each case solely in its capacity as such.

"*RTX Waiver*" shall have the meaning set forth in Article 5.5.11(b) of the Plan.

"*Sale Order*" means the *Order (I) Approving the Sale of All or Substantially All of the Debtor's Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving Debtor's Entry, and Performance Under the Contribution Agreement, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Granting Related Relief*, entered by the Bankruptcy Court on April 2, 2024 [D.I. 1058].

"*Settlement Trust Agreements*" means, collectively, (i) the Primary AFFF Settlement Trust Agreement, (ii) the Sovereign State AFFF Settlement Trust Agreement and (iii) the GUC Liquidating Trust Agreement.  To the extent that any provision of a Settlement Trust Agreement impacts the rights of Carrier, such provision shall not be included in such Settlement Trust Agreement unless reasonably acceptable to Carrier.

"*Settlement Trust Documents*" means, collectively, (a) the Settlement Trust Agreements, (b) the TDPs, (c) the Confirmation Order, and (d) any other agreements, instruments, and documents governing the establishment, administration, and operation of the Settlement Trusts.

"*Settlement Trusts*" means the Primary AFFF Settlement Trust, Sovereign State AFFF Settlement Trust and GUC Liquidating Trust.

"*Settling Insurance Company*" means any Insurance Company that contributes funds, proceeds, or other consideration to or for the benefit of the Primary AFFF Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order.  No Insurance Company shall be considered a Settling Insurance Company without the Committee's prior written consent.

"*Sovereign State*" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.

"*Sovereign State AFFF Settlement Trust*" means the trust established under the Plan and the Settlement Trust Documents to administer all Sovereign State Claims against the Debtor.  The Sovereign State AFFF Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code and shall have the powers, duties and obligations set forth in the Settlement Trust Documents.

"*Sovereign State Retained Cause of Action*" means any Claim or Cause of Action asserted, or which may be asserted, by a Sovereign State against a Contributing Party that (1) is not an Estate Cause of Action and (2) arises from a statute, regulation, or common law that creates a theory of liability, by which a Sovereign State could recover damages or penalties, or obtain equitable or injunctive relief, against a Contributing Party.  For the avoidance of doubt, a Sovereign State may assert a Sovereign State Retained Cause of Action irrespective of whether such Sovereign State Retained Cause of Action could also be considered an Independent AFFF Cause of Action.

"*TDPs*" or "Trust Distribution Procedures" means the Trust Distribution Procedures for the Settlement Trusts, as the same may be amended or modified from time to time in accordance with the terms thereof, that will govern the claims submission, adjudication, and distribution processes for the Settlement Trusts in a manner that is fair and equitable to Holders of Allowed Channeled AFFF Claims.  To the extent that any provision of the TDPs impacts the rights of Carrier, such provision shall not be included unless reasonably acceptable to Carrier.

"*Transferred Assets*" shall have the meaning set forth in the Acquisition Agreement.

## **<u>EXHIBIT 2D</u>**

**Ballot for Class 3D: Property Damage Claims**

**\*\*KFI WIND-DOWN CORP. PLAN BALLOT\*\***

<div style="border:1px solid">

# THIS BALLOT IS FOR HOLDERS OF CLAIMS AGAINST KFI WIND-DOWN CORP. (F/K/A KIDDE-FENWAL, INC.) ARISING FROM ITS AFFF OR AFFF-CONTAINING PRODUCTS.

</div>

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |

## BALLOT FOR ACCEPTING OR REJECTING THE
## DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

---

### CLASS 3D:  PROPERTY DAMAGE CLAIMS

---

On May 14, 2023 (the "Petition Date"), KFI Wind-Down Corp. f/k/a Kidde-Fenwal, Inc. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") (the "Chapter 11 Case").

On [•], 2025, the Debtor filed the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Plan"),[2] which is described in greater detail in the *Disclosure Statement for the Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the*

---

[1]    The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters are located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

*Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Disclosure Statement").

---

**THE PLAN CONTAINS RELEASE, INJUNCTION AND EXCULPATORY PROVISIONS. THESE PROVISIONS ARE SET FORTH IN <u>APPENDIX A</u> TO THIS BALLOT.  YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.**

---

On [•], 2025, the Bankruptcy Court entered an order [D.I. [•]] (the "Disclosure Statement Order") approving the Disclosure Statement as containing "adequate information" within the meaning ascribed to such term in section 1125 of the Bankruptcy Code and procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures").

The Plan, Disclosure Statement, Disclosure Statement Order, Solicitation Procedures and documents included in the Plan Supplement as of the Solicitation Mailing Deadline have been included in the package of materials containing the attached ballot (the "Ballot") and can be accessed free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code.  For a description of the Causes of Action to be enjoined and the identities of the Persons that would be subject to this injunction, see Article IV.E.8 of the Disclosure Statement and Article 10.8 of the Plan.

A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of the Claims that submit votes in that Voting Class vote to accept the Plan.  Even if a Voting Class votes to reject the Plan, the Bankruptcy Court nonetheless may confirm the Plan if it finds the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

If the Plan is confirmed by the Bankruptcy Court, all Holders of Claims against and Interests in the Debtor (including those Holders who reject the Plan or abstain from voting on the Plan, and those Holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby.

The Debtor will file the Plan Supplement (as may be amended, modified or supplemented from time to time) with the Bankruptcy Court no later than **November 17, 2025.**

The documents included in the Plan Supplement as of the Solicitation Mailing Deadline are included in your Solicitation Package.  Any further Plan Supplement, and any amendments or supplements to the foregoing, will only be served on: (a) the U.S. Trustee, (b) the Notice Parties and (c)

4913-7910-3489 v.7

the 2002 List.   Once filed, a copy of the Plan Supplement will also be available for review and download on the Debtor's website maintained by the Solicitation Agent free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

**Unless such time is extended by the Debtor, in consultation with the Settling Parties, or the Bankruptcy Court, the Ballot must be properly completed, signed and returned to the Solicitation Agent *so as to be actually received* no later than 5:00 p.m. (prevailing Eastern Time) on December 15, 2025 (the "Voting Deadline") in order for the vote on the Ballot to count.   Unless otherwise provided in the Solicitation Procedures, all Holders of Claims in the Voting Classes are required to (a) submit their Ballots online at the Solicitation Agent's online voting portal at https://cases.stretto.com/kfi or (b) return their Ballots by mail, overnight courier or hand delivery to the Solicitation Agent at KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, in each case so that they are actually received by the Solicitation Agent on or before the Voting Deadline (December 15, 2025 at 5:00 p.m. (prevailing Eastern Time)).**

This Ballot is to be used by Holders of Property Damage Claims against the Debtor in Class 3D of the Plan only.  Please refer to the Plan for the specific definition of "Property Damage Claim," which is copied below, as well as other relevant definitions.

*"Holder" means a Person holding a Claim against or an Interest in the Debtor.*

*"Property Damage Claim" means an AFFF Claim asserted by or on behalf of an owner of real property (other than an Airport, Stormwater System, Wastewater System, Public Water System, Landfill, or Fire Training Facility) or personal property for damages relating to such property.*

*"AFFF" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.*

*"AFFF Claim" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.*

*"Airport" means: (a) all airports categorized by the FAA in the National Plan of Integrated Airport Systems, including all airports that have been issued operating certificates by the FAA pursuant to 14 CFR Part 139; and (b) any firefighter training facility operated on airport property, whether or not operated by the airport itself.*

*"Stormwater System" means a system of diverting excess precipitation from rain and snowmelt events and dry-weather runoff over land or impervious surfaces without percolating into the ground from real property, municipalities, construction activities,*

-3-

*and industrial activities and permitted as such pursuant to the National Pollutant Discharge Elimination System and/or by a state or municipal permitting authority.*

*"Wastewater System" means a network of pipes, pumping stations, and appurtenances that convey sewage and waste from its points of origin to a point of treatment and disposal.*

*"Public Water System" means a system for the provision to the public of water for human consumption through pipes or other constructed conveyances, if such system has at least fifteen (15) service connections or regularly serves an average of at least twenty-five (25) individuals daily at least sixty (60) days out of the year, consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C. § 300f(4)(A), and 40 C.F.R. Part 141. The term "Public Water System" includes (i) any collection, treatment, storage, and distribution facilities under control of the operator of such system and used primarily in connection with such system, (ii) any collection or pretreatment storage facilities not under such control which are used primarily in connection with such system, (iii) a Community Water System of any size, (iv) a Non-Transient Non-Community Water System of any size, and (v) any Person (but not any financing or lending institution) that has legal authority or responsibility (by statute, regulation, other law, or contract) to fund or incur financial obligations for the design, engineering, installation, operation, or maintenance of any facility or equipment that treats, filters, remediates, or manages water that has entered or may enter Drinking Water or any Public Water System.*

*"Landfill" means a discrete area of real property primarily used for the disposal of waste material as categorized pursuant to 40 CFR Part 239-272.*

*"Fire Training Facility" means real property (other than an Airport) that is or has been used for live firefighter training with AFFF.*

*"PFAS" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.*

*"Claim" has the meaning ascribed to such term under section 101(5) of the Bankruptcy Code.*

*"Community Water System" means a Public Water System that serves at least fifteen (15) service connections used by year-round residents or regularly serves at least twenty-five (25) year-round residents, consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C. § 300f(15), and 40 C.F.R. Part 141.*

-4-

*"Non-Transient Non-Community Water System"* means a Public Water System that is not a Community Water System and that regularly serves at least twenty-five (25) of the same persons over six (6) months per year, consistent with the use of that term in 40 C.F.R. Part 141.

*"Person"* means a "person" or "entity" as defined in the Bankruptcy Code.

*"Drinking Water"* means water provided for human consumption (including uses such as drinking, cooking, and bathing), consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C. §§ 300f to 300j-27.   The term *"Drinking Water"* includes raw or untreated water that a Public Water System has drawn or collected from a Water Source so that the water may then (after any treatment) be provided for human consumption but does not include raw or untreated water that is not drawn or collected from a Water Source.

*"Water Source"* means a groundwater well, a surface-water intake, or any other intake point from which a Public Water System draws or collects water for distribution as Drinking Water, and the raw or untreated water that is thus drawn or collected.

4913-7910-3489 v.7

## DOCUMENTS INCLUDED WITH THE BALLOT

You should have received the following documents with the Ballot (collectively, the "**Solicitation Package**").  **Please note that some of the following documents may be included on a USB flash drive included as part of your Solicitation Package**.

- the Cover Letter;

- the Committee Letter;

- the Solicitation Procedures;

- a USB flash drive containing a copy of the Disclosure Statement (and exhibits thereto, including the Plan) and the documents contained in the Plan Supplement that have been filed prior to the Solicitation Mailing Deadline;

- the Disclosure Statement Order (without exhibits);

- a preaddressed, return envelope for completed Ballots;

- the Confirmation Hearing Notice; and

- any other materials ordered by the Court to be included as part of the Solicitation Package.

If you have questions about the Ballot, or if you did not receive a copy of the Plan or any related materials, please contact the Solicitation Agent at KFIInquiries@stretto.com or (866) 887-0488 (toll-free) or +1 (949) 889-0128 (international).  Information may also be obtained at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtor or any other party for payment purposes.

-6-

## INSTRUCTIONS FOR COMPLETING YOUR BALLOT

The following instructions explain each of the items contained on the Ballot.   If you have any questions, please contact the Solicitation Agent at the phone number or e-mail provided above or visit https://cases.stretto.com/kfi.

### If Submitting Your Vote through the Ballot Submission Portal:

The Solicitation Agent will accept Ballots if properly completed through the Ballot Submission Portal.   To submit your customized electronic Ballot via the Ballot Submission Portal, visit https://cases.stretto.com/kfi, click on the Ballot Submission Portal link and follow the instructions to submit your Ballot.

**IMPORTANT NOTE:** You will need the following information to retrieve and submit your customized electronic Ballot:

**Unique E-Ballot Password:** _____

Except as provided in the Solicitation Procedures, submission of your Ballot via the Solicitation Agent's online portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Except as provided in the Solicitation Procedures, Ballots submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.

Each "Unique E-Ballot Password" is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each Unique E-Ballot Password you receive, as applicable.  Creditors who cast a Ballot using the online portal should NOT also submit a paper Ballot.

The encrypted Ballot data and audit trail created by such electronic submission will become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.  Ballots submitted via the Ballot Submission Portal will be deemed to contain an original signature.

If your Ballot is not actually received on or before the Voting Deadline by the Solicitation Agent, and such Voting Deadline is not extended by the Debtor as noted above, your vote will not be counted.

### If Submitting Your Vote through Regular Mail, Overnight Courier, or via Hand Delivery:

Submit your completed and signed Ballot by regular mail using the return envelope included in the Solicitation Package (or otherwise), or by hand delivery or overnight courier to:

4913-7910-3489 v.7

<div style="border:1px solid black; padding:10px; text-align:center;">

KFI Ballot Processing
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602

To arrange for hand delivery, please send an
email to KFIInquiries@stretto.com at
least 24 hours before arrival at the address above and
provide the anticipated date and time of delivery.

</div>

**To fill out the Ballot, you must complete the following:**

**Item 1.  Claimant's Name and Address.**

Please fill in the name and address information requested.   Claimants should include street address, city, state, ZIP Code, telephone number and email address.

**Item 2.  Vote on the Plan.**

Vote on the Plan by checking the box that corresponds to your choice.   You may vote to ACCEPT the Plan (meaning that you vote in favor of the Plan) or to REJECT the Plan (meaning that you vote against the Plan).   You must check either the ACCEPT or REJECT box below for the Plan to have your vote counted.   If you check both the ACCEPT and REJECT boxes for the Plan, your vote will not be counted.

**Item 3.  Certifications, Acknowledgment, Signature and Date.**

Either the claimant, the claimant's personal representative, or the claimant's attorney MUST sign the Ballot.  If the Ballot is not signed, the vote shown on the Ballot will NOT be counted.

The claimant, the claimant's personal representative, or the claimant's attorney MUST certify certain information on the Ballot.  If you are the claimant's attorney you must provide evidence of your authority to vote on behalf of the claimant at the Debtor's request.  Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

By signing the Ballot, you make one of the following certifications, as applicable:

- I am the claimant and make the following certifications under penalty of perjury.

4913-7910-3489 v.7

i. I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

ii. To the best of my knowledge, information and belief, I am the Holder of a Property Damage Claim against the Debtor in Class 3D of the Plan; and

iii. I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan in my capacity as the claimant.

- I am the personal representative of the claimant and make the following certifications under penalty of perjury.

    i. The claimant's personal representative has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii. To the best of my knowledge, information and belief, the claimant is the Holder of a Property Damage Claim against the Debtor in Class 3D of the Plan; and

    iii. I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

- I am an attorney for the claimant and make the following certifications under penalty of perjury.

    i. The claimant's attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii. To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the claimant is the Holder of a Property Damage Claim against the Debtor in Class 3D of the Plan; and

-9-

      iii.     I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

The Ballot does not constitute and will not be deemed a Proof of Claim or Interest, an assertion of a Claim, the allowance of a Claim, or the acceptance or liquidation of any Property Damage Claim for purposes of any distribution. None of the information set forth in the Ballot shall constitute an admission by the Debtor as to the extent, validity, or priority of the Claim voted herein, nor shall anything contained herein or information submitted in or with the Ballot be binding upon the Debtor or the Holder in any subsequent Claims resolution process or other proceeding. The Ballot may not be used for any purposes other than to transmit votes on the Plan.

If you cast more than one Ballot voting the same Property Damage Claim before the Voting Deadline, the last valid Ballot received by the Solicitation Agent on or before the Voting Deadline will be deemed to reflect your intent and will supersede any prior Ballots.

**Holders of Claims must vote the full amount of their Claims to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan**. A Holder of a Property Damage Claim may not split his or her vote on the Plan. Accordingly, the votes of any Holder of a Property Damage Claim who purports partially to accept and partially to reject the Plan will not be counted.

---

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT,**
**BELIEVE YOU MAY HAVE RECEIVED AN INCORRECT BALLOT,**
**OR IF YOU DID NOT RECEIVE A COPY OF ANY OF**
**THE DOCUMENTS DESCRIBED IN THESE INSTRUCTIONS,**
**PLEASE CONTACT THE SOLICITATION AGENT AT:**

**TELEPHONE: (866) 887-0488 (TOLL-FREE)**
**OR +1 (949) 889-0128 (INTERNATIONAL)**
**E-MAIL: KFIINQUIRIES@STRETTO.COM**
**OR VISIT HTTPS://CASES.STRETTO.COM/KFI**

---

4913-7910-3489 v.7

**\*\*PLAN BALLOT\*\***

**BALLOT FOR ACCEPTING OR REJECTING THE
DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

**CLASS 3D:  PROPERTY DAMAGE CLAIMS**

| |
|---|
| **Please read the instructions that accompany this Ballot before completing.    Print clearly.** |
| **ITEM 1 – Claimant's Name and Address:** |
| Name |
| Street Address |
| City, State, and ZIP Code (U.S.) |
| Telephone Number |
| Email Address |
| **ITEM 2 – Amount of Your Claim.** <br><br> For the purposes of voting to accept or reject the Plan, the undersigned certifies that the claimant holds a Property Damage Claim in the amount set forth below.  **Please note that each AFFF Claim has been temporarily allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance or any other purpose.** <br><br> **Claim Amount:**    <u>$1.00</u> |

**ITEM 3 – Vote on the Plan:**

The undersigned, as Holder of (or representative of a Holder of) a Property Damage Claim against the Debtor in Class 3D of the Plan, votes (fill in ONE box only):

☐  to ACCEPT (vote in favor of) the Plan.

☐  to REJECT (vote against) the Plan.

**ITEM 4 – Certifications, Acknowledgment, Signature and Date:**

☐  I am the claimant and make the following certifications under penalty of perjury.

    i.    I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii.    To the best of my knowledge, information and belief, I am the Holder of a Property Damage Claim against the Debtor in Class 3D of the Plan; and

    iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan in my capacity as the claimant.

☐  I am the personal representative of the claimant and make the following certifications under penalty of perjury.

    i.    The claimant's personal representative has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii.    To the best of my knowledge, information and belief, the claimant is the Holder of a Property Damage Claim against the Debtor in Class 3D of the Plan; and

    iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT

-2-

(vote against) the Plan on behalf of the claimant.

☐   I am the attorney for the claimant and make the below certifications under penalty of perjury.

i.      The claimant's attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

ii.     To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the claimant is the Holder of a Property Damage Claim against the Debtor in Class 3D of the Plan; and

iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

**Signature and Date**

Signature of Claimant or Authorized Agent

Date

**YOU MUST COMPLETE ITEM 4 IN ORDER FOR YOUR VOTE(S) ON THE PLAN TO BE COUNTED.**

**DO NOT INCLUDE MEDICAL RECORDS WITH THIS BALLOT.
MEDICAL RECORDS CANNOT BE RETURNED BY THE SOLICITATION AGENT.**

**IF THIS BALLOT IS NOT ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY 5:00 P.M. (PREVAILING EASTERN TIME) ON DECEMBER 15, 2025, YOUR VOTE MAY NOT BE COUNTED.**

4913-7910-3489 v.7

## **Appendix A**

**Release, Injunction and Exculpation Provisions in the Plan[1]**

---

[1] The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.

## Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released and cancelled, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Liquidating Estate and their successors and assigns.  Any Holder of such mortgage, deed of trust, Lien, pledge or other security interest (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including and cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Liquidating Administrators to evidence such release, including the execution, delivery and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

## Releases by the Estate

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party, the Debtor, the Liquidating Estate and each Related Party of the Debtor and the Liquidating Estate shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, or any other Person or Governmental Unit asserting currently or in the future by, under, through, or on behalf of the Debtor or its Estate, and each of their respective successors or assigns, including the Settlement Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between one or both of the Debtor, on the one hand, and any Released Party, the Liquidating Estate, or any Related Party of the Debtor and the Liquidating Estate, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.3 of the Plan shall not be construed to release any post-Effective Date obligations under the RTX Waiver, the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, which specifically provides that such Estate Claims Settlement can be terminated, and the releases provided in the Plan or in the Estate Claims Settlement are void, if Carrier fails to make the installments of the Guaranteed Cash Payment when due and such failure is not timely cured within 30 days, at which time the Primary AFFF Settlement Trust is entitled to commence, prosecute, or continue all Estate Causes of Action against the Released Parties in any court of competent jurisdiction, and take such other actions as the Primary AFFF Settlement Trustee may determine in the exercise of their fiduciary duties.

### Releases by the Released Parties

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Released Parties and their successors or assigns of and from any and all Claims and Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, the Debtor's current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between any of the Debtor, the Liquidating Estate, the Settlement Trusts or the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case, on the one hand, and any Released Party, on the other hand, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any post-Effective Date obligations under the Plan Documents, the Confirmation Order, the 2020 Separation Agreement as supplemented by the RTX Waiver, or the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, or the right of any Person to enforce the same in accordance with

the terms thereof. Except with respect to the Claims and Causes of Action against the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case that are released and discharged under Article 10.4 of the Plan, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any obligations, rights, Causes of Action or Claims that Carrier Global Corporation or members of the Carrier Group (other than the Debtor), Otis Worldwide Corporation or members of the Otis Group, or RTX or members of the UTC Group may have against any Person under the 2020 Separation Agreement as supplemented by the RTX Waiver (including indemnification rights of RTX and other members of the "UTC Group" under the 2020 Separation Agreement). For the avoidance of doubt, in the event that the Estate Claims Settlement Effective Date does not occur or the Estate Claims Settlement is terminated as contemplated by the last paragraph of Article 10.3 in the Plan, all releases being provided by the Released Parties under the Plan shall be void.

### Scope of Releases

Each Person providing releases under the Plan, including the Debtor, the Estate and the Settling Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts. Each Person providing releases under the Plan shall be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

### Exculpation

Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtor and its directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation.

As of the Effective Date, to the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in Article 10 of the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person for any act or omission in connection with, related to or arising out of this Chapter 11 Case, including (a) the operation of the Debtor's businesses during the pendency of this Chapter 11 Case; (b) the

administration and adjudication of Claims and Interests during this Chapter 11 Case; (c) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Plan, the Disclosure Statement, the Plan Supplement, or any related contract, instrument, release or other agreement or document created or entered into in connection with the Chapter 11 Case (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan and the distribution of property under the Plan); (d) any other transaction, agreement, event, or other occurrence related to the Chapter 11 Case taking place on or before the Effective Date, other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.

## Injunction

Except as otherwise expressly provided in the Plan or the Confirmation Order, the satisfaction and release pursuant to Article 10 of the Plan shall also act as a permanent injunction against any Person who has held, holds, or may in the future hold Claims against or Interests in the Debtor or any of its assets or properties based on any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are treated, released, settled, channeled, or exculpated pursuant to the terms of the Plan from taking any of the following actions on account of, or on the basis of, such Claims or Interests:  (a) commencing or continuing any action to collect, enforce, offset, recoup, or recover with respect to any Claims or Interests treated, released, settled, channeled, or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Claim or Interest against the Debtor, the Liquidating Estate, the Settlement Trusts, or its or their respective property; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of or in connection with or with respect to any such Claims or Interests, notwithstanding an indication of a Claim or Interest or otherwise that a Holder of such Claim or Interest asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise, against the Debtor, the Liquidating Estate, or the Settlement Trusts; or (e) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

## Channeling Injunction

Notwithstanding anything to the contrary in the Plan, to preserve and promote the settlements contemplated by and provided for in the Plan, including the Insurance Settlement Agreements, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under sections 105(a) and 1123(b) of the Bankruptcy Code, the sole recourse of any Holder of a Channeled AFFF Claim against the Debtor or a Released Party on account of such Channeled AFFF Claim shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to

**and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, and such Holder shall have no right whatsoever at any time to assert any such Channeled AFFF Claim or any Estate Cause of Action that is released under the Estate Claims Settlement against the Debtor or any Released Party or any property or interest in property of the Debtor or any Released Party. For the avoidance of doubt, the sole recourse for any Channeled AFFF Claim covered by any Insurance Policy issued by a Settling Insurance Company shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents. Accordingly, on and after the Effective Date, all Holders of AFFF Claims that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled AFFF Claim or any Estate Cause of Action against the Debtor or any Released Party shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from the Debtor or any Released Party with respect to any such Channeled AFFF Claim or Estate Cause of Action, other than from the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, including:**

**a)     commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;**

**b)     enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;**

**c)     creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;**

**d)     asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party; or**

**e)     taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents, or, with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, by the Sovereign State AFFF Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Channeled AFFF Claim.**

The Debtor, the Liquidating Estate and/or any Released Party, as applicable, may enforce the Channeling Injunction and/or the Releases contained in the Plan before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at their own cost and expense, and no such cost or expense incurred by a party other than the Primary AFFF Settlement Trust shall be reimbursed or indemnified by the Primary AFFF Settlement Trust under any circumstances.

## Insurance Company Injunction

Subject to the provisos set forth in this Section, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim or cause of action (including any AFFF Claim or any Claim for or respecting any Primary AFFF Settlement Trust expense) against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Insurance Policy, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, statute or any other theory of law, equity or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim or cause of action, including:

a)      commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, demand, or cause of action against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such Claim, demand, or cause of action against any Insurance Company);

b)      enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

c)      creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such Claim or cause of action; and

d)      except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

*provided, however,* that (i) nothing in this Section shall impair or affect the rights of any member of the UTC Group, including RTX, or any member of the Otis Group (each as defined in the 2020 Separation Agreement), or any additional insured designated by RTX

or any member of the UTC Group, based upon, attributable to, arising out of, or in any way connected with an Insurance Policy, including to assert Claims or Causes of Action against any Insurance Company for covered losses and to receive proceeds in respect thereof; (ii) this injunction shall not impair in any way any actions brought by the Primary AFFF Settlement Trust against any Other Insurance Company; (iii) the Primary AFFF Settlement Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction with respect to any Other Insurance Company, in accordance with the Settlement Trust Documents, upon express written notice to such Other Insurance Company; and (iv) this injunction is not issued for the benefit of any Other Insurance Company, and no Other Insurance Company is a third-party beneficiary of this injunction.

Notwithstanding anything to the contrary in the Plan, this injunction shall not enjoin:

a)      the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of Holders of AFFF Claims to assert such Claims, as applicable, in accordance with the TDPs;

b)      the rights of the Primary AFFF Settlement Trust to prosecute any action based on or arising from Insurance Policies, except to the extent otherwise released;

c)      the rights of the Primary AFFF Settlement Trust to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company based on or arising from the Insurance Policies;

d)      any actions of the Contributing Parties in fulfilling their obligations under the Estate Claims Settlement in consultation and coordination with the Primary AFFF Settlement Trust;

e)      the rights of any Insurance Company to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company; or

f)      the Claims for reinsurance under reinsurance contracts or Claims under retrocessional contracts among the Settling Insurance Companies and any Other Insurance Company.

## Prohibition on Actions Against Buyer

Subject to the Sale Order and the Acquisition Agreement, Buyer, in its capacity as such, shall not have any liability for any AFFF Claims against the Debtor arising prior to the closing of the Sale.  Except as expressly otherwise set forth in the Sale Order, all persons and entities hereby are forever barred, estopped and permanently enjoined from asserting against Buyer, its Affiliates, its successors or assigns, its property or the Transferred Assets, such persons' or entities' AFFF Claims that have been or could have been asserted against the Debtor arising prior to the closing of the Sale.  For the avoidance of doubt, the foregoing shall

**not release Buyer from, or enjoin any actions against Buyer for, any Assumed Liability or any other liability incurred by Buyer on account of its operations following the closing of the Sale.**

## Limitations on Exculpations and Releases

**Notwithstanding anything to the contrary in the Plan, none of the releases or exculpations set forth in the Plan shall operate to waive or release any obligation or Causes of Action of any Person: (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations or (b) expressly set forth in and preserved by the Plan, the Plan Supplement, Plan Documents or related documents.**

## Release Dispute

**In the event of a Release Dispute, a Released Party may, at its sole cost and expense, file a motion with the Bankruptcy Court seeking a determination as to whether an AFFF Claimant's Cause of Action was settled and released pursuant to the Plan, and upon such motion, the Bankruptcy Court shall make such determination and, if appropriate, enjoin the prosecution of such Cause of Action as having been settled and released under the Plan.**

## Relevant Definitions

"*2020 Separation Agreement*" means that certain Separation and Distribution Agreement, dated as of April 2, 2020, by and among United Technologies Corporation, Carrier Global Corporation, and Otis Worldwide Corporation.

"*Administrative Claim*" means an Allowed Claim for costs and expenses of administration of the Chapter 11 Case pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate; (b) Allowed Professional Compensation Claims; (c) Allowed Fee Examiner Compensation Claims; and (d) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

"*AFFF*" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

"*AFFF Claim*" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.

"*Assumed Liability*" shall have the meaning set forth in the Acquisition Agreement.

"*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other Claims, Causes of Action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties-in-interest under the Bankruptcy Code or applicable non-

bankruptcy law, including claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) was commenced prior to the Effective Date.

"*Buyer*" means Pacific Erin Opco, LLC, as the purchaser of substantially all of the Debtor's assets pursuant to the Acquisition Agreement and the Sale Order.

"*Carrier*" means Carrier Global Corporation, a Delaware corporation, and its non-Debtor affiliates and Related Parties.

"*Causes of Action*" means any current or future actions, Claims, cross-claims, third-party claims, causes of action, controversies, disputes, demands, rights, liens, indemnities, contributions, guaranties, suits, obligations, liabilities, losses, debts, fees or expenses, damages, interest, judgments, costs, accounts, defenses, remedies, offsets, powers, privileges, proceedings, licenses, and franchises of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, choate or inchoate, capable of being asserted directly or derivatively (including any alter ego theories), including any Claims for recovery of attorneys' fees, turnover, fraud, gross negligence, or willful misconduct, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws, consumer protection laws, environmental laws, or nuisance or trespass theories).  Causes of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to or otherwise contest Claims or Interests, (c) any claim pursuant to section 362 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Actions.

"*Channeled AFFF Claims*" means all AFFF Claims against the Debtor or the Estate channeled to the Primary AFFF Settlement Trust under the Plan and Settlement Trust Documents.  For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

"*Committee*" means the official committee of unsecured creditors of the Debtor appointed by the U.S. Trustee in the Chapter 11 Case under section 1102(a) of the Bankruptcy Code pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 83] and any amendments thereto.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Settling Parties.

"*Consummation*" means the occurrence of the Effective Date.

"*Debtor*" means Kidde-Fenwal, Inc., the debtor and debtor in possession in the Chapter 11 Case, now known as KFI Wind-Down Corp.  In 2007, KFFI (formerly known as National Foam, Inc.) merged into Kidde-Fenwal, Inc., with Kidde-Fenwal, Inc. as the surviving entity.  Pursuant to this merger, KFFI's liabilities were assumed by, and KFFI's causes of action were transferred to, Kidde-Fenwal, Inc. directly or indirectly by merger or other agreement.  The term "Debtor" includes Kidde-Fenwal, Inc. as successor by merger or other agreement by which Kidde-Fenwal, Inc. obtained or assumed the liabilities and Causes of Action of any Person.

"*Effective Date*" means the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date set forth in the Plan shall have been satisfied or waived and on which a notice indicating the Effective Date has been filed on the docket of the Chapter 11 Case.

"*Estate Causes of Action*" means Causes of Action owned or held by either the Debtor or its Estate, or capable of being asserted (currently, or in the future) by any Person or Governmental Unit on behalf of, under or through, either the Debtor or its Estate, and each of their respective successors or assigns, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions, that may be commenced by a representative of the Estate under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise.  Without limiting the foregoing, Estate Causes of Action shall include:  (a) Causes of Action that on or after the Petition Date may be exclusively asserted by or on behalf of the Debtor or its Estate under applicable law, or that prior to the Petition Date could have been asserted by the Debtor on its own behalf under applicable law, including Causes of Action based on (i) the doctrine of successor liability that seek to impose the Debtor's (including KFFI's or National Foam, Inc.'s) liabilities on an alleged successor, whether based on a contractual assumption of liability, consolidation or de facto merger, acquisition of the Debtor's product line, fraud, domination, direction of the Debtor's affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, or (ii) the doctrines of alter ego or veil piercing involving alter egos of the Debtor or the piercing of the Debtor's (including KFFI's or National Foam, Inc.'s) corporate veil, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form; (b) Causes of Action or theories for recovery or remedies that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is generally common to creditors of the Debtor and can be asserted by the Debtor under applicable law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor.  Subsections (a), (b) and (c) immediately above expressly encompass any Causes of Action based on:  (i) the alleged assumption of the Debtor's (including KFFI's or

National Foam, Inc.'s) liabilities (but not a non-Debtor's liabilities) by Kidde plc (n/k/a Kidde Limited) pursuant to the 2000 Demerger Agreement, or any alleged subsequent assumption of such liabilities of the Debtor from Kidde plc by any other Released Party; or (ii) the alleged assumption of the Debtor's liabilities (but not a non-Debtor's liabilities), including any liabilities resulting from acts or omissions of National Foam, Inc. or KFFI, by a Released Party pursuant to the 2020 Separation Agreement.  For the avoidance of doubt, Estate Causes of Action shall not include any Independent AFFF Causes of Action or any Sovereign State Retained Causes of Action or Insurance Actions against any Released Party based on acts or omissions occurring after entry into the Plan Support Agreement with respect to rights under the 2020 Separation Agreement or the RTX Waiver to access and make Claims under any Insurance Policy or otherwise obtain the benefit of the Insurance Assignment.

"*Estate Claims Settlement*" means the settlement, including the release of all Estate Causes of Action against the Released Parties, pursuant to the Estate Claims Settlement Agreement.

"*Independent AFFF Cause of Action*" means any Cause of Action that could be asserted by an AFFF Claimant against a Non-Debtor Party based on the Non-Debtor Party's own conduct and breach of duty (*i.e.*, duty owed to the AFFF Claimant and not owed to the Debtor), including (a) Causes of Action arising from such acts or omissions of such Non-Debtor Party, and (b) Causes of Action based on allegations that a Non-Debtor Party is responsible for such conduct under theories of liability or recovery or remedies that could have been asserted by an AFFF Claimant on its own behalf under applicable state or federal law in respect of such Causes of Action prior to the Petition Date based on (i) the doctrine of successor liability involving a Non-Debtor Party that is alleged to be a successor to another Non-Debtor Party with respect to liabilities not directly or indirectly assumed from the Debtor, whether based on a contractual assumption of liability (including under the 2020 Separation Agreement), consolidation or de facto merger, acquisition of product line, fraud, domination, direction of affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, (ii) the doctrines of alter ego or veil piercing involving alter egos of a Non-Debtor Party, or piercing the corporate veil between Non-Debtor Parties, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form, or (iii) alleged derivative or vicarious liability of a Non-Debtor Party for liabilities of another Non-Debtor Party not directly or indirectly assumed from the Debtor; *provided* that, if any Cause of Action falls within the definition of Estate Cause of Action or Sovereign State Retained Cause of Action, it is not an Independent AFFF Cause of Action.
"*Insurance Assignment*" means the transfer by the Debtor and Carrier to the Primary AFFF Settlement Trust of certain rights in connection with the Insurance Policies as set forth in Article 5 of the Plan.

"*Insurance Policy/ies*" means: (i) any insurance policies listed on <u>Schedule 1</u> to the Plan, (ii) to the extent not listed on Schedule 1, any "general liability" insurance (which, for the avoidance of doubt, shall exclude director & officer, automobile, or workers' compensation insurance) contract, binder, certificate, insurance policy, or reinsurance policy, whether currently known or unknown, discovered after the Effective Date, in effect at any time on or before the Petition Date naming the Debtor, the Contributing Parties, or any of their predecessors, subsidiaries, or past or present affiliates as an insured (whether as the primary or additional insured) or that provides or may provide coverage to Carrier or the Debtor for AFFF Claims, (iii) "Aviation" policies to

which Carrier or the Debtor has rights as listed in Schedule 2 to the Plan solely to the extent of Insurance Policy Rights applicable to or arising from AFFF Claims and (iv) any other subsequently discovered insurance policies of the same types as listed in Schedules 1 and 2 to the Plan to the extent that Carrier or the Debtor have rights under such policies (whether or not such policies are specifically titled as "General Liability" or "Aviation" policies).  For the avoidance of doubt, "Insurance Policies" shall not include any D&O Policies, automobile policies or worker's compensation insurance.

"*Insurance Policy Rights*" means any and all rights subject to the Insurance Assignment.

"*KFFI*" means Kidde Fire Fighting, Inc. (formerly known as National Foam, Inc.).

"*Liquidating Estate Claims*" means Administrative Claims, Priority Tax Claims, Other Priority Claims and Secured Claims.

"*New National Foam*" means, collectively, National Foam, Inc. f/k/a Eurostar US Tradeco, Inc., Angus Fire Ltd. f/k/a Eurostar Tradeco Limited, Angus International Safety Group Limited f/k/a/ Eurostar Holdco Limited, and each of their Related Parties.

"*New National Foam Release*" means a settlement between the Debtor and New National Foam pursuant to which (a) Estate Causes of Action against New National Foam are resolved for value reasonably acceptable to the Settling Parties and (b) New National Foam agrees to absolutely, unconditionally, and irrevocably release and discharge the Debtor and each Released Party from any and all Claims and Causes of Action, whether known or unknown, based on or relating to, or in any manner arising from that certain Share and Business Sale Agreement, dated as of June 28, 2013, or any other occurrence taking place on or before the Effective Date, including Proof of Claim No. 225, and otherwise in form and substance reasonably acceptable to the Settling Parties.

"*Non-Debtor Party*" means any Person other than the Debtor.  For the avoidance of doubt, the term "*Non-Debtor Party*" does not include KFFI or National Foam, Inc.

"*Other Insurance Company*" means an Insurance Company that is not a Settling Insurance Company.

"*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"*Person*" means a "person" or "entity" as defined in the Bankruptcy Code.

"*Petition Date*" means May 14, 2023, the date on which the Debtor commenced the Chapter 11 Case.

"*PFAS*" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.

"*Primary AFFF Settlement Trust*" means the settlement trust organized under the laws of the state of Delaware and established under the Plan and the Settlement Trust Documents, which

shall (i) have the powers, duties and obligations set forth in the Plan and the Settlement Trust Documents, (ii) assume all liability of the Debtor and the Estate for, and administer, all Channeled AFFF Claims and (iii) be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code.

"*Primary AFFF Settlement Trust Agreement*" means the Settlement Trust Agreement governing the Primary AFFF Settlement Trust, dated as of the Effective Date, as the same may be amended or modified from time to time in accordance with the terms thereof.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Released Party*" means (i) Carrier, (ii) RTX, and (iii) each of their Related Parties in their capacities as such.  Released Parties shall not include DuPont, 3M, or their current or former affiliates and Related Parties.  If a Person is a current or former affiliate or Related Party of DuPont or 3M, and such Person is also a current or former affiliate or Related Party of Carrier or RTX, then such Person shall not be a Released Party.  For the avoidance of doubt, New National Foam shall not be a Released Party unless the New National Foam Release  is provided by the Effective Date.

"*Related Party*" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, and current and former affiliates and subsidiaries, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, all only in their capacity as a representative of such Person, and (c) respective heirs, executors, estates, and nominees, in each case solely in its capacity as such.

"*RTX Waiver*" shall have the meaning set forth in Article 5.5.11(b) of the Plan.

"*Sale Order*" means the *Order (I) Approving the Sale of All or Substantially All of the Debtor's Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving Debtor's Entry, and Performance Under the Contribution Agreement, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Granting Related Relief*, entered by the Bankruptcy Court on April 2, 2024 [D.I. 1058].

"*Settlement Trust Agreements*" means, collectively, (i) the Primary AFFF Settlement Trust Agreement, (ii) the Sovereign State AFFF Settlement Trust Agreement and (iii) the GUC Liquidating Trust Agreement.  To the extent that any provision of a Settlement Trust Agreement impacts the rights of Carrier, such provision shall not be included in such Settlement Trust Agreement unless reasonably acceptable to Carrier.

"*Settlement Trust Documents*" means, collectively, (a) the Settlement Trust Agreements, (b) the TDPs, (c) the Confirmation Order, and (d) any other agreements, instruments, and documents governing the establishment, administration, and operation of the Settlement Trusts.

"*Settlement Trusts*" means the Primary AFFF Settlement Trust, Sovereign State AFFF Settlement Trust and GUC Liquidating Trust.

"*Settling Insurance Company*" means any Insurance Company that contributes funds, proceeds, or other consideration to or for the benefit of the Primary AFFF Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order.  No Insurance Company shall be considered a Settling Insurance Company without the Committee's prior written consent.

"*Sovereign State*" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.

"*Sovereign State AFFF Settlement Trust*" means the trust established under the Plan and the Settlement Trust Documents to administer all Sovereign State Claims against the Debtor.  The Sovereign State AFFF Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code and shall have the powers, duties and obligations set forth in the Settlement Trust Documents.

"*Sovereign State Retained Cause of Action*" means any Claim or Cause of Action asserted, or which may be asserted, by a Sovereign State against a Contributing Party that (1) is not an Estate Cause of Action and (2) arises from a statute, regulation, or common law that creates a theory of liability, by which a Sovereign State could recover damages or penalties, or obtain equitable or injunctive relief, against a Contributing Party.  For the avoidance of doubt, a Sovereign State may assert a Sovereign State Retained Cause of Action irrespective of whether such Sovereign State Retained Cause of Action could also be considered an Independent AFFF Cause of Action.

"*TDPs*" or "Trust Distribution Procedures" means the Trust Distribution Procedures for the Settlement Trusts, as the same may be amended or modified from time to time in accordance with the terms thereof, that will govern the claims submission, adjudication, and distribution processes for the Settlement Trusts in a manner that is fair and equitable to Holders of Allowed Channeled AFFF Claims.  To the extent that any provision of the TDPs impacts the rights of Carrier, such provision shall not be included unless reasonably acceptable to Carrier.

"*Transferred Assets*" shall have the meaning set forth in the Acquisition Agreement.

**<u>EXHIBIT 2E</u>**

**Ballot for Class 3E: Personal Injury Claims**

**\*\*KFI WIND-DOWN CORP. PLAN BALLOT\*\***

> # THIS BALLOT IS FOR HOLDERS OF CLAIMS AGAINST KFI WIND-DOWN CORP. (F/K/A KIDDE-FENWAL, INC.) ARISING FROM ITS AFFF OR AFFF-CONTAINING PRODUCTS.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |

## BALLOT FOR ACCEPTING OR REJECTING THE DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

## CLASS 3E:  PERSONAL INJURY CLAIMS

On May 14, 2023 (the "Petition Date"), KFI Wind-Down Corp. f/k/a Kidde-Fenwal, Inc. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") (the "Chapter 11 Case").

On [•], 2025, the Debtor filed the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Plan"),[2] which is described in greater detail in the *Disclosure Statement for the Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the*

---

[1] The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters are located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

*Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Disclosure Statement").

> **THE PLAN CONTAINS RELEASE, INJUNCTION AND EXCULPATORY PROVISIONS. THESE PROVISIONS ARE SET FORTH IN <u>APPENDIX A</u> TO THIS BALLOT.  YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.**

On [•], 2025, the Bankruptcy Court entered an order [D.I. [•]] (the "Disclosure Statement Order") approving the Disclosure Statement as containing "adequate information" within the meaning ascribed to such term in section 1125 of the Bankruptcy Code and procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures").

The Plan, Disclosure Statement, Disclosure Statement Order, Solicitation Procedures and documents included in the Plan Supplement as of the Solicitation Mailing Deadline have been included in the package of materials containing the attached ballot (the "Ballot") and can be accessed free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code.  For a description of the Causes of Action to be enjoined and the identities of the Persons that would be subject to this injunction, see Article IV.E.8 of the Disclosure Statement and Article 10.8 of the Plan.

A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of the Claims that submit votes in that Voting Class vote to accept the Plan.  Even if a Voting Class votes to reject the Plan, the Bankruptcy Court nonetheless may confirm the Plan if it finds the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

If the Plan is confirmed by the Bankruptcy Court, all Holders of Claims against and Interests in the Debtor (including those Holders who reject the Plan or abstain from voting on the Plan, and those Holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby.

The Debtor will file the Plan Supplement (as may be amended, modified or supplemented from time to time) with the Bankruptcy Court no later than **November 17, 2025.**

The documents included in the Plan Supplement as of the Solicitation Mailing Deadline are included in your Solicitation Package.  Any further Plan Supplement, and any amendments or supplements to the foregoing, will only be served on: (a) the U.S. Trustee, (b) the Notice Parties and (c)

-2-

the 2002 List.   Once filed, a copy of the Plan Supplement will also be available for review and download on the Debtor's website maintained by the Solicitation Agent free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

**Unless such time is extended by the Debtor, in consultation with the Settling Parties, or the Bankruptcy Court, the Ballot must be properly completed, signed and returned to the Solicitation Agent *so as to be actually received* no later than 5:00 p.m. (prevailing Eastern Time) on December 15, 2025 (the "Voting Deadline") in order for the vote on the Ballot to count.   Unless otherwise provided in the Solicitation Procedures, all Holders of Claims in the Voting Classes are required to (a) submit their Ballots online at the Solicitation Agent's online voting portal at https://cases.stretto.com/kfi or (b) return their Ballots by mail, overnight courier or hand delivery to the Solicitation Agent at KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, in each case so that they are actually received by the Solicitation Agent on or before the Voting Deadline (December 15, 2025 at 5:00 p.m. (prevailing Eastern Time)).**

This Ballot is to be used by Holders of Personal Injury Claims against the Debtor in Class 3E of the Plan only.  Please refer to the Plan for the specific definition of "Personal Injury Claim," which is copied below, as well as other relevant definitions.

*"Holder" means a Person holding a Claim against or an Interest in the Debtor.*

*"Personal Injury Claim" means an AFFF Claim asserted by an individual person, or legal representative of such person, for or related to, directly or indirectly, personal injuries or wrongful death.*

*"AFFF" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.*

*"AFFF Claim" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.*

*"PFAS" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.*

*"Claim" has the meaning ascribed to such term under section 101(5) of the Bankruptcy Code.*

*[Remainder of page left intentionally blank]*

-3-

## <u>DOCUMENTS INCLUDED WITH THE BALLOT</u>

You should have received the following documents with the Ballot (collectively, the "**Solicitation Package**"). **Please note that some of the following documents may be included on a USB flash drive included as part of your Solicitation Package**.

- the Cover Letter;

- the Committee Letter;

- the Solicitation Procedures;

- a USB flash drive containing a copy of the Disclosure Statement (and exhibits thereto, including the Plan) and the documents contained in the Plan Supplement that have been filed prior to the Solicitation Mailing Deadline;

- the Disclosure Statement Order (without exhibits);

- a preaddressed, return envelope for completed Ballots;

- the Confirmation Hearing Notice; and

- any other materials ordered by the Court to be included as part of the Solicitation Package.

If you have questions about the Ballot, or if you did not receive a copy of the Plan or any related materials, please contact the Solicitation Agent at KFIInquiries@stretto.com or (866) 887-0488 (toll-free) or +1 (949) 889-0128 (international). Information may also be obtained at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtor or any other party for payment purposes.

-4-

<u>**INSTRUCTIONS FOR COMPLETING YOUR BALLOT**</u>

The following instructions explain each of the items contained on the Ballot.   If you have any questions, please contact the Solicitation Agent at the phone number or e-mail provided above or visit https://cases.stretto.com/kfi.

**If Submitting Your Vote through the Ballot Submission Portal:**

The Solicitation Agent will accept Ballots if properly completed through the Ballot Submission Portal.   To submit your customized electronic Ballot via the Ballot Submission Portal, visit https://cases.stretto.com/kfi, click on the Ballot Submission Portal link and follow the instructions to submit your Ballot.

**IMPORTANT NOTE:** You will need the following information to retrieve and submit your customized electronic Ballot:

**Unique E-Ballot Password:** _____

Except as provided in the Solicitation Procedures, submission of your Ballot via the Solicitation Agent's online portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Except as provided in the Solicitation Procedures, Ballots submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.

Each "Unique E-Ballot Password" is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each Unique E-Ballot Password you receive, as applicable.  Creditors who cast a Ballot using the online portal should NOT also submit a paper Ballot.

The encrypted Ballot data and audit trail created by such electronic submission will become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.  Ballots submitted via the Ballot Submission Portal will be deemed to contain an original signature.

If your Ballot is not actually received on or before the Voting Deadline by the Solicitation Agent, and such Voting Deadline is not extended by the Debtor as noted above, your vote will not be counted.

**If Submitting Your Vote through Regular Mail, Overnight Courier, or via Hand Delivery:**

Submit your completed and signed Ballot by regular mail using the return envelope included in the Solicitation Package (or otherwise), or by hand delivery or overnight courier to:

4903-0542-7201 v.7

> KFI Ballot Processing
> c/o Stretto
> 410 Exchange, Suite 100
> Irvine, CA 92602
>
> To arrange for hand delivery, please send an
> email to KFIInquiries@stretto.com at
> least 24 hours before arrival at the address above and
> provide the anticipated date and time of delivery.

**To fill out the Ballot, you must complete the following:**

**Item 1.  Claimant's Name and Address.**

Please fill in the name and address information requested.  Claimants should include street address, city, state, ZIP Code, telephone number and email address.

**Item 2.  Vote on the Plan.**

Vote on the Plan by checking the box that corresponds to your choice.  You may vote to ACCEPT the Plan (meaning that you vote in favor of the Plan) or to REJECT the Plan (meaning that you vote against the Plan).   You must check either the ACCEPT or REJECT box below for the Plan to have your vote counted.   If you check both the ACCEPT and REJECT boxes for the Plan, your vote will not be counted.

**Item 3.  Certifications, Acknowledgment, Signature and Date.**

Either the claimant, the claimant's personal representative, or the claimant's attorney MUST sign the Ballot.  If the Ballot is not signed, the vote shown on the Ballot will NOT be counted.

The claimant, the claimant's personal representative, or the claimant's attorney MUST certify certain information on the Ballot.  If you are the claimant's attorney, you must provide evidence of your authority to vote on behalf of the claimant at the Debtor's request.  Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

By signing the Ballot, you make one of the following certifications, as applicable:

- I am the claimant and make the following certifications under penalty of perjury.

-6-

i.   I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

ii.  To the best of my knowledge, information and belief, I am the Holder of a Personal Injury Claim against the Debtor in Class 3E of the Plan; and

iii. I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan in my capacity as the claimant.

- I am the personal representative of the claimant and make the following certifications under penalty of perjury.

    i.   The claimant's personal representative has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii.  To the best of my knowledge, information and belief, the claimant is the Holder of a Personal Injury Claim against the Debtor in Class 3E of the Plan; and

    iii. I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

- I am an attorney for the claimant and make the following certifications under penalty of perjury.

    i.   The claimant's attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii.  To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the claimant is the Holder of a Personal Injury Claim against the Debtor in Class 3E of the Plan; and

-7-

iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

The Ballot does not constitute and will not be deemed a Proof of Claim or Interest, an assertion of a Claim, the allowance of a Claim, or the acceptance or liquidation of any Personal Injury Claim for purposes of any distribution.   None of the information set forth in the Ballot shall constitute an admission by the Debtor as to the extent, validity, or priority of the Claim voted herein, nor shall anything contained herein or information submitted in or with the Ballot be binding upon the Debtor or the Holder in any subsequent Claims resolution process or other proceeding.   The Ballot may not be used for any purposes other than to transmit votes on the Plan.

If you cast more than one Ballot voting the same Personal Injury Claim before the Voting Deadline, the last valid Ballot received by the Solicitation Agent on or before the Voting Deadline will be deemed to reflect your intent and will supersede any prior Ballots.

**Holders of Claims must vote the full amount of their Claims to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan**.   A Holder of a Personal Injury Claim may not split his or her vote on the Plan.   Accordingly, the votes of any Holder of a Personal Injury Claim who purports partially to accept and partially to reject the Plan will not be counted.

---

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT,
BELIEVE YOU MAY HAVE RECEIVED AN INCORRECT BALLOT,
OR IF YOU DID NOT RECEIVE A COPY OF ANY OF
THE DOCUMENTS DESCRIBED IN THESE INSTRUCTIONS,
PLEASE CONTACT THE SOLICITATION AGENT AT:**

**TELEPHONE: (866) 887-0488 (TOLL-FREE)
OR +1 (949) 889-0128 (INTERNATIONAL)
E-MAIL: KFIINQUIRIES@STRETTO.COM
OR VISIT HTTPS://CASES.STRETTO.COM/KFI**

---

4903-0542-7201 v.7

**\*\*PLAN BALLOT\*\***

**BALLOT FOR ACCEPTING OR REJECTING THE
DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

---

**CLASS 3E:  PERSONAL INJURY CLAIMS**

---

| Please read the instructions that accompany this Ballot before completing.    Print clearly. |
|---|
| **ITEM 1 – Claimant's Name and Address:** |
| Name |
| Street Address |
| City, State, and ZIP Code (U.S.) |
| Telephone Number |
| Email Address |
| **ITEM 2 – Amount of Your Claim.**<br><br>For the purposes of voting to accept or reject the Plan, the undersigned certifies that the claimant holds a Personal Injury Claim in the amount set forth below.  **Please note that each AFFF Claim has been temporarily allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance or any other purpose.**<br><br>**Claim Amount:**     $1.00 |

**ITEM 3 – Vote on the Plan:**

The undersigned, as Holder of (or representative of a Holder of) a Personal Injury Claim against the Debtor in Class 3E of the Plan, votes (fill in ONE box only):

☐  to ACCEPT (vote in favor of) the Plan.

☐  to REJECT (vote against) the Plan.

---

**ITEM 4 – Certifications, Acknowledgment, Signature and Date:**

☐  I am the claimant and make the following certifications under penalty of perjury.

    i.    I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii.    To the best of my knowledge, information and belief, I am the Holder of a Personal Injury Claim against the Debtor in Class 3E of the Plan; and

    iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan in my capacity as the claimant.

☐  I am the personal representative of the claimant and make the following certifications under penalty of perjury.

    i.    The claimant's personal representative has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii.    To the best of my knowledge, information and belief, the claimant is the Holder of a Personal Injury Claim against the Debtor in Class 3E of the Plan; and

    iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT

-2-

(vote against) the Plan on behalf of the claimant.

☐   I am the attorney for the claimant and make the below certifications under penalty of perjury.

    i.      The claimant's attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii.     To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the claimant is the Holder of a Personal Injury Claim against the Debtor in Class 3E of the Plan; and

    iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

**Signature and Date**

| |
|---|
| Signature of Claimant or Authorized Agent |
| Date |

**YOU MUST COMPLETE ITEM 4 IN ORDER FOR YOUR VOTE(S) ON THE PLAN TO BE COUNTED.**

**DO NOT INCLUDE MEDICAL RECORDS WITH THIS BALLOT.**
**MEDICAL RECORDS CANNOT BE RETURNED BY THE SOLICITATION AGENT.**

**IF THIS BALLOT IS NOT ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY 5:00 P.M. (PREVAILING EASTERN TIME) ON DECEMBER 15, 2025, YOUR VOTE MAY NOT BE COUNTED.**

-3-

## **Appendix A**

### **Release, Injunction and Exculpation Provisions in the Plan[1]**

---

[1]    The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.

## Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released and cancelled, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Liquidating Estate and their successors and assigns. Any Holder of such mortgage, deed of trust, Lien, pledge or other security interest (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including and cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Liquidating Administrators to evidence such release, including the execution, delivery and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

## Releases by the Estate

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party, the Debtor, the Liquidating Estate and each Related Party of the Debtor and the Liquidating Estate shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, or any other Person or Governmental Unit asserting currently or in the future by, under, through, or on behalf of the Debtor or its Estate, and each of their respective successors or assigns, including the Settlement Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between one or both of the Debtor, on the one hand, and any Released Party, the Liquidating Estate, or any Related Party of the Debtor and the Liquidating Estate, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.3 of the Plan shall not be construed to release any post-Effective Date obligations under the RTX Waiver, the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, which specifically provides that such Estate Claims Settlement can be terminated, and the releases provided in the Plan or in the Estate Claims Settlement are void, if Carrier fails to make the installments of the Guaranteed Cash Payment when due and such failure is not timely cured within 30 days, at which time the Primary AFFF Settlement Trust is entitled to commence, prosecute, or continue all Estate Causes of Action against the Released Parties in any court of competent jurisdiction, and take such other actions as the Primary AFFF Settlement Trustee may determine in the exercise of their fiduciary duties.

### Releases by the Released Parties

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Released Parties and their successors or assigns of and from any and all Claims and Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, the Debtor's current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between any of the Debtor, the Liquidating Estate, the Settlement Trusts or the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case, on the one hand, and any Released Party, on the other hand, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any post-Effective Date obligations under the Plan Documents, the Confirmation Order, the 2020 Separation Agreement as supplemented by the RTX Waiver, or the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, or the right of any Person to enforce the same in accordance with

the terms thereof. Except with respect to the Claims and Causes of Action against the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case that are released and discharged under Article 10.4 of the Plan, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any obligations, rights, Causes of Action or Claims that Carrier Global Corporation or members of the Carrier Group (other than the Debtor), Otis Worldwide Corporation or members of the Otis Group, or RTX or members of the UTC Group may have against any Person under the 2020 Separation Agreement as supplemented by the RTX Waiver (including indemnification rights of RTX and other members of the "UTC Group" under the 2020 Separation Agreement).  For the avoidance of doubt, in the event that the Estate Claims Settlement Effective Date does not occur or the Estate Claims Settlement is terminated as contemplated by the last paragraph of Article 10.3 in the Plan, all releases being provided by the Released Parties under the Plan shall be void.

## Scope of Releases

Each Person providing releases under the Plan, including the Debtor, the Estate and the Settling Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts. Each Person providing releases under the Plan shall be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

## Exculpation

Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtor and its directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation.

As of the Effective Date, to the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in Article 10 of the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person for any act or omission in connection with, related to or arising out of this Chapter 11 Case, including (a) the operation of the Debtor's businesses during the pendency of this Chapter 11 Case; (b) the

administration and adjudication of Claims and Interests during this Chapter 11 Case; (c) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Plan, the Disclosure Statement, the Plan Supplement, or any related contract, instrument, release or other agreement or document created or entered into in connection with the Chapter 11 Case (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan and the distribution of property under the Plan); (d) any other transaction, agreement, event, or other occurrence related to the Chapter 11 Case taking place on or before the Effective Date, other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.

<div align="center">Injunction</div>

Except as otherwise expressly provided in the Plan or the Confirmation Order, the satisfaction and release pursuant to Article 10 of the Plan shall also act as a permanent injunction against any Person who has held, holds, or may in the future hold Claims against or Interests in the Debtor or any of its assets or properties based on any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are treated, released, settled, channeled, or exculpated pursuant to the terms of the Plan from taking any of the following actions on account of, or on the basis of, such Claims or Interests:  (a) commencing or continuing any action to collect, enforce, offset, recoup, or recover with respect to any Claims or Interests treated, released, settled, channeled, or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Claim or Interest against the Debtor, the Liquidating Estate, the Settlement Trusts, or its or their respective property; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of or in connection with or with respect to any such Claims or Interests, notwithstanding an indication of a Claim or Interest or otherwise that a Holder of such Claim or Interest asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise, against the Debtor, the Liquidating Estate, or the Settlement Trusts; or (e) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

<div align="center">Channeling Injunction</div>

Notwithstanding anything to the contrary in the Plan, to preserve and promote the settlements contemplated by and provided for in the Plan, including the Insurance Settlement Agreements, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under sections 105(a) and 1123(b) of the Bankruptcy Code, the sole recourse of any Holder of a Channeled AFFF Claim against the Debtor or a Released Party on account of such Channeled AFFF Claim shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to

and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, and such Holder shall have no right whatsoever at any time to assert any such Channeled AFFF Claim or any Estate Cause of Action that is released under the Estate Claims Settlement against the Debtor or any Released Party or any property or interest in property of the Debtor or any Released Party.  For the avoidance of doubt, the sole recourse for any Channeled AFFF Claim covered by any Insurance Policy issued by a Settling Insurance Company shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents.  Accordingly, on and after the Effective Date, all Holders of AFFF Claims that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled AFFF Claim or any Estate Cause of Action against the Debtor or any Released Party shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from the Debtor or any Released Party with respect to any such Channeled AFFF Claim or Estate Cause of Action, other than from the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, including:

  a) commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

  b) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

  c) creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

  d) asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party; or

  e) taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents, or, with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, by the Sovereign State AFFF Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Channeled AFFF Claim.

The Debtor, the Liquidating Estate and/or any Released Party, as applicable, may enforce the Channeling Injunction and/or the Releases contained in the Plan before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at their own cost and expense, and no such cost or expense incurred by a party other than the Primary AFFF Settlement Trust shall be reimbursed or indemnified by the Primary AFFF Settlement Trust under any circumstances.

## Insurance Company Injunction

Subject to the provisos set forth in this Section, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim or cause of action (including any AFFF Claim or any Claim for or respecting any Primary AFFF Settlement Trust expense) against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Insurance Policy, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, statute or any other theory of law, equity or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim or cause of action, including:

a)      commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, demand, or cause of action against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such Claim, demand, or cause of action against any Insurance Company);

b)      enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

c)      creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such Claim or cause of action; and

d)      except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

*provided, however,* that (i) nothing in this Section shall impair or affect the rights of any member of the UTC Group, including RTX, or any member of the Otis Group (each as defined in the 2020 Separation Agreement), or any additional insured designated by RTX

or any member of the UTC Group, based upon, attributable to, arising out of, or in any way connected with an Insurance Policy, including to assert Claims or Causes of Action against any Insurance Company for covered losses and to receive proceeds in respect thereof; (ii) this injunction shall not impair in any way any actions brought by the Primary AFFF Settlement Trust against any Other Insurance Company; (iii) the Primary AFFF Settlement Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction with respect to any Other Insurance Company, in accordance with the Settlement Trust Documents, upon express written notice to such Other Insurance Company; and (iv) this injunction is not issued for the benefit of any Other Insurance Company, and no Other Insurance Company is a third-party beneficiary of this injunction.

Notwithstanding anything to the contrary in the Plan, this injunction shall not enjoin:

a)      the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of Holders of AFFF Claims to assert such Claims, as applicable, in accordance with the TDPs;

b)      the rights of the Primary AFFF Settlement Trust to prosecute any action based on or arising from Insurance Policies, except to the extent otherwise released;

c)      the rights of the Primary AFFF Settlement Trust to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company based on or arising from the Insurance Policies;

d)      any actions of the Contributing Parties in fulfilling their obligations under the Estate Claims Settlement in consultation and coordination with the Primary AFFF Settlement Trust;

e)      the rights of any Insurance Company to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company; or

f)      the Claims for reinsurance under reinsurance contracts or Claims under retrocessional contracts among the Settling Insurance Companies and any Other Insurance Company.

## Prohibition on Actions Against Buyer

Subject to the Sale Order and the Acquisition Agreement, Buyer, in its capacity as such, shall not have any liability for any AFFF Claims against the Debtor arising prior to the closing of the Sale.  Except as expressly otherwise set forth in the Sale Order, all persons and entities hereby are forever barred, estopped and permanently enjoined from asserting against Buyer, its Affiliates, its successors or assigns, its property or the Transferred Assets, such persons' or entities' AFFF Claims that have been or could have been asserted against the Debtor arising prior to the closing of the Sale.  For the avoidance of doubt, the foregoing shall

not release Buyer from, or enjoin any actions against Buyer for, any Assumed Liability or any other liability incurred by Buyer on account of its operations following the closing of the Sale.

## Limitations on Exculpations and Releases

Notwithstanding anything to the contrary in the Plan, none of the releases or exculpations set forth in the Plan shall operate to waive or release any obligation or Causes of Action of any Person:  (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations or (b) expressly set forth in and preserved by the Plan, the Plan Supplement, Plan Documents or related documents.

## Release Dispute

In the event of a Release Dispute, a Released Party may, at its sole cost and expense, file a motion with the Bankruptcy Court seeking a determination as to whether an AFFF Claimant's Cause of Action was settled and released pursuant to the Plan, and upon such motion, the Bankruptcy Court shall make such determination and, if appropriate, enjoin the prosecution of such Cause of Action as having been settled and released under the Plan.

## Relevant Definitions

"*2020 Separation Agreement*" means that certain Separation and Distribution Agreement, dated as of April 2, 2020, by and among United Technologies Corporation, Carrier Global Corporation, and Otis Worldwide Corporation.

"*Administrative Claim*" means an Allowed Claim for costs and expenses of administration of the Chapter 11 Case pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate; (b) Allowed Professional Compensation Claims; (c) Allowed Fee Examiner Compensation Claims; and (d) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

"*AFFF*" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

"*AFFF Claim*" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.

"*Assumed Liability*" shall have the meaning set forth in the Acquisition Agreement.

"*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other Claims, Causes of Action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties-in-interest under the Bankruptcy Code or applicable non-

bankruptcy law, including claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) was commenced prior to the Effective Date.

"*Buyer*" means Pacific Erin Opco, LLC, as the purchaser of substantially all of the Debtor's assets pursuant to the Acquisition Agreement and the Sale Order.

"*Carrier*" means Carrier Global Corporation, a Delaware corporation, and its non-Debtor affiliates and Related Parties.

"*Causes of Action*" means any current or future actions, Claims, cross-claims, third-party claims, causes of action, controversies, disputes, demands, rights, liens, indemnities, contributions, guaranties, suits, obligations, liabilities, losses, debts, fees or expenses, damages, interest, judgments, costs, accounts, defenses, remedies, offsets, powers, privileges, proceedings, licenses, and franchises of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, choate or inchoate, capable of being asserted directly or derivatively (including any alter ego theories), including any Claims for recovery of attorneys' fees, turnover, fraud, gross negligence, or willful misconduct, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws, consumer protection laws, environmental laws, or nuisance or trespass theories).  Causes of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to or otherwise contest Claims or Interests, (c) any claim pursuant to section 362 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Actions.

"*Channeled AFFF Claims*" means all AFFF Claims against the Debtor or the Estate channeled to the Primary AFFF Settlement Trust under the Plan and Settlement Trust Documents.  For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

"*Committee*" means the official committee of unsecured creditors of the Debtor appointed by the U.S. Trustee in the Chapter 11 Case under section 1102(a) of the Bankruptcy Code pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 83] and any amendments thereto.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Settling Parties.

"*Consummation*" means the occurrence of the Effective Date.

"*Debtor*" means Kidde-Fenwal, Inc., the debtor and debtor in possession in the Chapter 11 Case, now known as KFI Wind-Down Corp.  In 2007, KFFI (formerly known as National Foam, Inc.) merged into Kidde-Fenwal, Inc., with Kidde-Fenwal, Inc. as the surviving entity.  Pursuant to this merger, KFFI's liabilities were assumed by, and KFFI's causes of action were transferred to, Kidde-Fenwal, Inc. directly or indirectly by merger or other agreement.  The term "Debtor" includes Kidde-Fenwal, Inc. as successor by merger or other agreement by which Kidde-Fenwal, Inc. obtained or assumed the liabilities and Causes of Action of any Person.

"*Effective Date*" means the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date set forth in the Plan shall have been satisfied or waived and on which a notice indicating the Effective Date has been filed on the docket of the Chapter 11 Case.

"*Estate Causes of Action*" means Causes of Action owned or held by either the Debtor or its Estate, or capable of being asserted (currently, or in the future) by any Person or Governmental Unit on behalf of, under or through, either the Debtor or its Estate, and each of their respective successors or assigns, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions, that may be commenced by a representative of the Estate under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise.  Without limiting the foregoing, Estate Causes of Action shall include:  (a) Causes of Action that on or after the Petition Date may be exclusively asserted by or on behalf of the Debtor or its Estate under applicable law, or that prior to the Petition Date could have been asserted by the Debtor on its own behalf under applicable law, including Causes of Action based on (i) the doctrine of successor liability that seek to impose the Debtor's (including KFFI's or National Foam, Inc.'s) liabilities on an alleged successor, whether based on a contractual assumption of liability, consolidation or de facto merger, acquisition of the Debtor's product line, fraud, domination, direction of the Debtor's affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, or (ii) the doctrines of alter ego or veil piercing involving alter egos of the Debtor or the piercing of the Debtor's (including KFFI's or National Foam, Inc.'s) corporate veil, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form; (b) Causes of Action or theories for recovery or remedies that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is generally common to creditors of the Debtor and can be asserted by the Debtor under applicable law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor.  Subsections (a), (b) and (c) immediately above expressly encompass any Causes of Action based on:  (i) the alleged assumption of the Debtor's (including KFFI's or

National Foam, Inc.'s) liabilities (but not a non-Debtor's liabilities) by Kidde plc (n/k/a Kidde Limited) pursuant to the 2000 Demerger Agreement, or any alleged subsequent assumption of such liabilities of the Debtor from Kidde plc by any other Released Party; or (ii) the alleged assumption of the Debtor's liabilities (but not a non-Debtor's liabilities), including any liabilities resulting from acts or omissions of National Foam, Inc. or KFFI, by a Released Party pursuant to the 2020 Separation Agreement.  For the avoidance of doubt, Estate Causes of Action shall not include any Independent AFFF Causes of Action or any Sovereign State Retained Causes of Action or Insurance Actions against any Released Party based on acts or omissions occurring after entry into the Plan Support Agreement with respect to rights under the 2020 Separation Agreement or the RTX Waiver to access and make Claims under any Insurance Policy or otherwise obtain the benefit of the Insurance Assignment.

"*Estate Claims Settlement*" means the settlement, including the release of all Estate Causes of Action against the Released Parties, pursuant to the Estate Claims Settlement Agreement.

"*Independent AFFF Cause of Action*" means any Cause of Action that could be asserted by an AFFF Claimant against a Non-Debtor Party based on the Non-Debtor Party's own conduct and breach of duty (*i.e.*, duty owed to the AFFF Claimant and not owed to the Debtor), including (a) Causes of Action arising from such acts or omissions of such Non-Debtor Party, and (b) Causes of Action based on allegations that a Non-Debtor Party is responsible for such conduct under theories of liability or recovery or remedies that could have been asserted by an AFFF Claimant on its own behalf under applicable state or federal law in respect of such Causes of Action prior to the Petition Date based on (i) the doctrine of successor liability involving a Non-Debtor Party that is alleged to be a successor to another Non-Debtor Party with respect to liabilities not directly or indirectly assumed from the Debtor, whether based on a contractual assumption of liability (including under the 2020 Separation Agreement), consolidation or de facto merger, acquisition of product line, fraud, domination, direction of affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, (ii) the doctrines of alter ego or veil piercing involving alter egos of a Non-Debtor Party, or piercing the corporate veil between Non-Debtor Parties, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form, or (iii) alleged derivative or vicarious liability of a Non-Debtor Party for liabilities of another Non-Debtor Party not directly or indirectly assumed from the Debtor; *provided* that, if any Cause of Action falls within the definition of Estate Cause of Action or Sovereign State Retained Cause of Action, it is not an Independent AFFF Cause of Action.
"*Insurance Assignment*" means the transfer by the Debtor and Carrier to the Primary AFFF Settlement Trust of certain rights in connection with the Insurance Policies as set forth in Article 5 of the Plan.

"*Insurance Policy/ies*" means: (i) any insurance policies listed on Schedule 1 to the Plan, (ii) to the extent not listed on Schedule 1, any "general liability" insurance (which, for the avoidance of doubt, shall exclude director & officer, automobile, or workers' compensation insurance) contract, binder, certificate, insurance policy, or reinsurance policy, whether currently known or unknown, discovered after the Effective Date, in effect at any time on or before the Petition Date naming the Debtor, the Contributing Parties, or any of their predecessors, subsidiaries, or past or present affiliates as an insured (whether as the primary or additional insured) or that provides or may provide coverage to Carrier or the Debtor for AFFF Claims, (iii) "Aviation" policies to

which Carrier or the Debtor has rights as listed in Schedule 2 to the Plan solely to the extent of Insurance Policy Rights applicable to or arising from AFFF Claims and (iv) any other subsequently discovered insurance policies of the same types as listed in Schedules 1 and 2 to the Plan to the extent that Carrier or the Debtor have rights under such policies (whether or not such policies are specifically titled as "General Liability" or "Aviation" policies).  For the avoidance of doubt, "Insurance Policies" shall not include any D&O Policies, automobile policies or worker's compensation insurance.

"*Insurance Policy Rights*" means any and all rights subject to the Insurance Assignment.

"*KFFI*" means Kidde Fire Fighting, Inc. (formerly known as National Foam, Inc.).

"*Liquidating Estate Claims*" means Administrative Claims, Priority Tax Claims, Other Priority Claims and Secured Claims.

"*New National Foam*" means, collectively, National Foam, Inc. f/k/a Eurostar US Tradeco, Inc., Angus Fire Ltd. f/k/a Eurostar Tradeco Limited, Angus International Safety Group Limited f/k/a/ Eurostar Holdco Limited, and each of their Related Parties.

"*New National Foam Release*" means a settlement between the Debtor and New National Foam pursuant to which (a) Estate Causes of Action against New National Foam are resolved for value reasonably acceptable to the Settling Parties and (b) New National Foam agrees to absolutely, unconditionally, and irrevocably release and discharge the Debtor and each Released Party from any and all Claims and Causes of Action, whether known or unknown, based on or relating to, or in any manner arising from that certain Share and Business Sale Agreement, dated as of June 28, 2013, or any other occurrence taking place on or before the Effective Date, including Proof of Claim No. 225, and otherwise in form and substance reasonably acceptable to the Settling Parties.

"*Non-Debtor Party*" means any Person other than the Debtor.  For the avoidance of doubt, the term "*Non-Debtor Party*" does not include KFFI or National Foam, Inc.

"*Other Insurance Company*" means an Insurance Company that is not a Settling Insurance Company.

"*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"*Person*" means a "person" or "entity" as defined in the Bankruptcy Code.

"*Petition Date*" means May 14, 2023, the date on which the Debtor commenced the Chapter 11 Case.

"*PFAS*" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.

"*Primary AFFF Settlement Trust*" means the settlement trust organized under the laws of the state of Delaware and established under the Plan and the Settlement Trust Documents, which

shall (i) have the powers, duties and obligations set forth in the Plan and the Settlement Trust Documents, (ii) assume all liability of the Debtor and the Estate for, and administer, all Channeled AFFF Claims and (iii) be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code.

"*Primary AFFF Settlement Trust Agreement*" means the Settlement Trust Agreement governing the Primary AFFF Settlement Trust, dated as of the Effective Date, as the same may be amended or modified from time to time in accordance with the terms thereof.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Released Party*" means (i) Carrier, (ii) RTX, and (iii) each of their Related Parties in their capacities as such.  Released Parties shall not include DuPont, 3M, or their current or former affiliates and Related Parties.  If a Person is a current or former affiliate or Related Party of DuPont or 3M, and such Person is also a current or former affiliate or Related Party of Carrier or RTX, then such Person shall not be a Released Party.  For the avoidance of doubt, New National Foam shall not be a Released Party unless the New National Foam Release  is provided by the Effective Date.

"*Related Party*" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, and current and former affiliates and subsidiaries, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, all only in their capacity as a representative of such Person, and (c) respective heirs, executors, estates, and nominees, in each case solely in its capacity as such.

"*RTX Waiver*" shall have the meaning set forth in Article 5.5.11(b) of the Plan.

"*Sale Order*" means the *Order (I) Approving the Sale of All or Substantially All of the Debtor's Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving Debtor's Entry, and Performance Under the Contribution Agreement, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Granting Related Relief*, entered by the Bankruptcy Court on April 2, 2024 [D.I. 1058].

"*Settlement Trust Agreements*" means, collectively, (i) the Primary AFFF Settlement Trust Agreement, (ii) the Sovereign State AFFF Settlement Trust Agreement and (iii) the GUC Liquidating Trust Agreement.  To the extent that any provision of a Settlement Trust Agreement impacts the rights of Carrier, such provision shall not be included in such Settlement Trust Agreement unless reasonably acceptable to Carrier.

"*Settlement Trust Documents*" means, collectively, (a) the Settlement Trust Agreements, (b) the TDPs, (c) the Confirmation Order, and (d) any other agreements, instruments, and documents governing the establishment, administration, and operation of the Settlement Trusts.

"*Settlement Trusts*" means the Primary AFFF Settlement Trust, Sovereign State AFFF Settlement Trust and GUC Liquidating Trust.

"*Settling Insurance Company*" means any Insurance Company that contributes funds, proceeds, or other consideration to or for the benefit of the Primary AFFF Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order. No Insurance Company shall be considered a Settling Insurance Company without the Committee's prior written consent.

"*Sovereign State*" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.

"*Sovereign State AFFF Settlement Trust*" means the trust established under the Plan and the Settlement Trust Documents to administer all Sovereign State Claims against the Debtor. The Sovereign State AFFF Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code and shall have the powers, duties and obligations set forth in the Settlement Trust Documents.

"*Sovereign State Retained Cause of Action*" means any Claim or Cause of Action asserted, or which may be asserted, by a Sovereign State against a Contributing Party that (1) is not an Estate Cause of Action and (2) arises from a statute, regulation, or common law that creates a theory of liability, by which a Sovereign State could recover damages or penalties, or obtain equitable or injunctive relief, against a Contributing Party. For the avoidance of doubt, a Sovereign State may assert a Sovereign State Retained Cause of Action irrespective of whether such Sovereign State Retained Cause of Action could also be considered an Independent AFFF Cause of Action.

"*TDPs*" or "Trust Distribution Procedures" means the Trust Distribution Procedures for the Settlement Trusts, as the same may be amended or modified from time to time in accordance with the terms thereof, that will govern the claims submission, adjudication, and distribution processes for the Settlement Trusts in a manner that is fair and equitable to Holders of Allowed Channeled AFFF Claims. To the extent that any provision of the TDPs impacts the rights of Carrier, such provision shall not be included unless reasonably acceptable to Carrier.

"*Transferred Assets*" shall have the meaning set forth in the Acquisition Agreement.

## **EXHIBIT 2F**

**Ballot for Class 3F: Sovereign Tribe Claims**

**\*\*KFI WIND-DOWN CORP. PLAN BALLOT\*\***

<div style="border:1px solid">

# THIS BALLOT IS FOR HOLDERS OF CLAIMS AGAINST KFI WIND-DOWN CORP. (F/K/A KIDDE-FENWAL, INC.) ARISING FROM ITS AFFF OR AFFF-CONTAINING PRODUCTS.

</div>

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |

## BALLOT FOR ACCEPTING OR REJECTING THE
## DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

## CLASS 3F:  SOVEREIGN TRIBE CLAIMS

On May 14, 2023 (the "Petition Date"), KFI Wind-Down Corp. f/k/a Kidde-Fenwal, Inc. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") (the "Chapter 11 Case").

On [•], 2025, the Debtor filed the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Plan"),[2] which is described in greater detail in the *Disclosure Statement for the Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the*

---

[1]   The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters are located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

*Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Disclosure Statement").

> **THE PLAN CONTAINS RELEASE, INJUNCTION AND EXCULPATORY PROVISIONS. THESE PROVISIONS ARE SET FORTH IN <u>APPENDIX A</u> TO THIS BALLOT.  YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.**

On [•], 2025, the Bankruptcy Court entered an order [D.I. [•]] (the "Disclosure Statement Order") approving the Disclosure Statement as containing "adequate information" within the meaning ascribed to such term in section 1125 of the Bankruptcy Code and procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures").

The Plan, Disclosure Statement, Disclosure Statement Order, Solicitation Procedures and documents included in the Plan Supplement as of the Solicitation Mailing Deadline have been included in the package of materials containing the attached ballot (the "Ballot") and can be accessed free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code.  For a description of the Causes of Action to be enjoined and the identities of the Persons that would be subject to this injunction, see Article IV.E.8 of the Disclosure Statement and Article 10.8 of the Plan.

A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of the Claims that submit votes in that Voting Class vote to accept the Plan.  Even if a Voting Class votes to reject the Plan, the Bankruptcy Court nonetheless may confirm the Plan if it finds the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

If the Plan is confirmed by the Bankruptcy Court, all Holders of Claims against and Interests in the Debtor (including those Holders who reject the Plan or abstain from voting on the Plan, and those Holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby.

The Debtor will file the Plan Supplement (as may be amended, modified or supplemented from time to time) with the Bankruptcy Court no later than **November 17, 2025.**

The documents included in the Plan Supplement as of the Solicitation Mailing Deadline are included in your Solicitation Package.  Any further Plan Supplement, and any amendments or supplements to the foregoing, will only be served on: (a) the U.S. Trustee, (b) the Notice Parties and (c)

-2-

the 2002 List.   Once filed, a copy of the Plan Supplement will also be available for review and download on the Debtor's website maintained by the Solicitation Agent free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

**Unless such time is extended by the Debtor, in consultation with the Settling Parties, or the Bankruptcy Court, the Ballot must be properly completed, signed and returned to the Solicitation Agent *so as to be actually received* no later than 5:00 p.m. (prevailing Eastern Time) on December 15, 2025 (the "Voting Deadline") in order for the vote on the Ballot to count.   Unless otherwise provided in the Solicitation Procedures, all Holders of Claims in the Voting Classes are required to (a) submit their Ballots online at the Solicitation Agent's online voting portal at https://cases.stretto.com/kfi or (b) return their Ballots by mail, overnight courier or hand delivery to the Solicitation Agent at KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, in each case so that they are actually received by the Solicitation Agent on or before the Voting Deadline (December 15, 2025 at 5:00 p.m. (prevailing Eastern Time)).**

This Ballot is to be used by Holders of Sovereign Tribe Claims against the Debtor in Class 3F of the Plan only.  Please refer to the Plan for the specific definition of "Sovereign Tribe Claim," which is copied below, as well as other relevant definitions.

*"Holder" means a Person holding a Claim against or an Interest in the Debtor.*

*"Sovereign Tribe Claim" means an AFFF Claim asserted by a Sovereign Tribe that is not an Airport Claim, Business Loss Claim, Fire Training Facility Claim, Landfill Claim, Personal Injury Claim, Property Damage Claim, Stormwater Claim, Wastewater Claim or Water Provider Claim.*

*"AFFF" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.*

*"AFFF Claim" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.*

*"Sovereign Tribe" means any American Indian or Alaskan Native Tribe, band, nation, pueblo, village or community, that the U.S. Secretary of the Interior acknowledges as an Indian Tribe, as provided in the Federally Recognized Tribe List Act of 1994, 25 U.S.C. § 5130, and as periodically listed by the U.S. Secretary of the Interior in the Federal Register pursuant to 25 U.S.C. § 5131; and any "Tribal Organization" as provided in the Indian Self-Determination and Education and Assistance Act of 1975, as amended, 25 U.S.C. § 5304(1).*

4938-9575-1425 v.7

*"Airport Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of an Airport for damages relating to such Airport.*

*"Business Loss Claim" means an AFFF Claim asserted by a person or entity, other than a Governmental Unit, Sovereign State or Sovereign Tribe, for business losses, including lost inventory, lost profits, or comparable damages, recoverable in the tort system that is not an Airport Claim, Fire Training Facility Claim, Landfill Claim, Personal Injury Claim, Property Damage Claim, Sovereign State Claim, Sovereign Tribe Claim, Stormwater Claim, Wastewater Claim, or Water Provider Claim.*

*"Fire Training Facility Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Fire Training Facility for damages relating to such Fire Training Facility.*

*"Landfill Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Landfill for damages relating to such Landfill.*

*"Personal Injury Claim" means an AFFF Claim asserted by an individual person, or legal representative of such person, for or related to, directly or indirectly, personal injuries or wrongful death.*

*"Property Damage Claim" means an AFFF Claim asserted by or on behalf of an owner of real property (other than an Airport, Stormwater System, Wastewater System, Public Water System, Landfill, or Fire Training Facility) or personal property for damages relating to such property.*

*"Stormwater Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Stormwater System for damages relating to such Stormwater System.*

*"Wastewater Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Wastewater System for damages relating to such Wastewater System.*

*"Water Provider Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Public Water System for damages relating to such Public Water System.*

*"PFAS" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.*

-4-

*"Claim" has the meaning ascribed to such term under section 101(5) of the Bankruptcy Code.*

*"Sovereign State" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.*

*"Airport" means: (a) all airports categorized by the FAA in the National Plan of Integrated Airport Systems, including all airports that have been issued operating certificates by the FAA pursuant to 14 CFR Part 139; and (b) any firefighter training facility operated on airport property, whether or not operated by the airport itself. airport property, including any firefighter training facility, whether or not operated by the airport itself.*

*"Governmental Unit" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code and also includes any national, central, federal, Sovereign Tribe, state, provincial, municipal, local or other domestic, foreign or supranational governmental, legislative, administrative or regulatory authority, agency, court, arbitration tribunal, board, department or commission, instrumentality thereof or other governmental or regulatory entity, including any competent governmental authority responsible for the determination, assessment, or collection of taxes.*

*"Sovereign State Claim" means an AFFF Claim asserted by a Sovereign State that is not an Airport Claim, Business Loss Claim, Fire Training Facility Claim, Landfill Claim, Personal Injury Claim, Property Damage Claim, Stormwater Claim, Wastewater Claim or Water Provider Claim.*

*"Stormwater System" means a system of diverting excess precipitation from rain and snowmelt events and dry-weather runoff over land or impervious surfaces without percolating into the ground from real property, municipalities, construction activities, and industrial activities and permitted as such pursuant to the National Pollutant Discharge Elimination System and/or by a state or municipal permitting authority.*

*"Wastewater System" means a network of pipes, pumping stations, and appurtenances that convey sewage and waste from its points of origin to a point of treatment and disposal.*

*"Public Water System" means a system for the provision to the public of water for human consumption through pipes or other constructed conveyances, if such system*

-5-

*has at least fifteen (15) service connections or regularly serves an average of at least twenty-five (25) individuals daily at least sixty (60) days out of the year, consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C. § 300f(4)(A), and 40 C.F.R. Part 141. The term "Public Water System" includes (i) any collection, treatment, storage, and distribution facilities under control of the operator of such system and used primarily in connection with such system, (ii) any collection or pretreatment storage facilities not under such control which are used primarily in connection with such system, (iii) a Community Water System of any size, (iv) a Non-Transient Non-Community Water System of any size, and (v) any Person (but not any financing or lending institution) that has legal authority or responsibility (by statute, regulation, other law, or contract) to fund or incur financial obligations for the design, engineering, installation, operation, or maintenance of any facility or equipment that treats, filters, remediates, or manages water that has entered or may enter Drinking Water or any Public Water System.*

*"Fire Training Facility" means real property (other than an Airport) that is or has been used for live firefighter training with AFFF.*

*"Landfill" means a discrete area of real property primarily used for the disposal of waste material as categorized pursuant to 40 CFR Part 239-272.*

*"Community Water System" means a Public Water System that serves at least fifteen (15) service connections used by year-round residents or regularly serves at least twenty-five (25) year-round residents, consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C. § 300f(15), and 40 C.F.R. Part 141.*

*"Non-Transient Non-Community Water System" means a Public Water System that is not a Community Water System and that regularly serves at least twenty-five (25) of the same persons over six (6) months per year, consistent with the use of that term in 40 C.F.R. Part 141.*

*"Person" means a "person" or "entity" as defined in the Bankruptcy Code.*

*"Drinking Water" means water provided for human consumption (including uses such as drinking, cooking, and bathing), consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C. §§ 300f to 300j-27.   The term "Drinking Water" includes raw or untreated water that a Public Water System has drawn or collected from a Water Source so that the water may then (after any treatment) be provided for human consumption but does not include raw or untreated water that is not drawn or collected from a Water Source.*

-6-

***"Water Source"* means a groundwater well, a surface-water intake, or any other intake point from which a Public Water System draws or collects water for distribution as Drinking Water, and the raw or untreated water that is thus drawn or collected.**

*[Remainder of page left intentionally blank]*

-7-

## <u>DOCUMENTS INCLUDED WITH THE BALLOT</u>

You should have received the following documents with the Ballot (collectively, the "**<u>Solicitation Package</u>**"). **Please note that some of the following documents may be included on a USB flash drive included as part of your Solicitation Package**.

- the Cover Letter;

- the Committee Letter;

- the Solicitation Procedures;

- a USB flash drive containing a copy of the Disclosure Statement (and exhibits thereto, including the Plan) and the documents contained in the Plan Supplement that have been filed prior to the Solicitation Mailing Deadline;

- the Disclosure Statement Order (without exhibits);

- a preaddressed, return envelope for completed Ballots;

- the Confirmation Hearing Notice; and

- any other materials ordered by the Court to be included as part of the Solicitation Package.

If you have questions about the Ballot, or if you did not receive a copy of the Plan or any related materials, please contact the Solicitation Agent at KFIInquiries@stretto.com or (866) 887-0488 (toll-free) or +1 (949) 889-0128 (international). Information may also be obtained at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtor or any other party for payment purposes.

-8-

## <u>INSTRUCTIONS FOR COMPLETING YOUR BALLOT</u>

The following instructions explain each of the items contained on the Ballot.   If you have any questions, please contact the Solicitation Agent at the phone number or e-mail provided above or visit https://cases.stretto.com/kfi.

### If Submitting Your Vote through the Ballot Submission Portal:

The Solicitation Agent will accept Ballots if properly completed through the Ballot Submission Portal.   To submit your customized electronic Ballot via the Ballot Submission Portal, visit https://cases.stretto.com/kfi, click on the Ballot Submission Portal link and follow the instructions to submit your Ballot.

**IMPORTANT NOTE:** You will need the following information to retrieve and submit your customized electronic Ballot:

**Unique E-Ballot Password:** _____

Except as provided in the Solicitation Procedures, submission of your Ballot via the Solicitation Agent's online portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Except as provided in the Solicitation Procedures, Ballots submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.

Each "Unique E-Ballot Password" is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each Unique E-Ballot Password you receive, as applicable.  Creditors who cast a Ballot using the online portal should NOT also submit a paper Ballot.

The encrypted Ballot data and audit trail created by such electronic submission will become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.  Ballots submitted via the Ballot Submission Portal will be deemed to contain an original signature.

If your Ballot is not actually received on or before the Voting Deadline by the Solicitation Agent, and such Voting Deadline is not extended by the Debtor as noted above, your vote will not be counted.

### If Submitting Your Vote through Regular Mail, Overnight Courier, or via Hand Delivery:

Submit your completed and signed Ballot by regular mail using the return envelope included in the Solicitation Package (or otherwise), or by hand delivery or overnight courier to:

-9-

```
KFI Ballot Processing
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602

To arrange for hand delivery, please send an
email to KFIInquiries@stretto.com at
least 24 hours before arrival at the address above and
provide the anticipated date and time of delivery.
```

**To fill out the Ballot, you must complete the following:**

**Item 1.  Claimant's Name and Address.**

Please fill in the name and address information requested.  Claimants should include street address, city, state, ZIP Code, telephone number and email address.

**Item 2.  Vote on the Plan.**

Vote on the Plan by checking the box that corresponds to your choice.  You may vote to ACCEPT the Plan (meaning that you vote in favor of the Plan) or to REJECT the Plan (meaning that you vote against the Plan).   You must check either the ACCEPT or REJECT box below for the Plan to have your vote counted.   If you check both the ACCEPT and REJECT boxes for the Plan, your vote will not be counted.

**Item 3.  Certifications, Acknowledgment, Signature and Date.**

Either the claimant, the claimant's personal representative, or the claimant's attorney MUST sign the Ballot.  If the Ballot is not signed, the vote shown on the Ballot will NOT be counted.

The claimant, the claimant's personal representative, or the claimant's attorney MUST certify certain information on the Ballot.  If you are the claimant's attorney, you must provide evidence of your authority to vote on behalf of the claimant at the Debtor's request.  Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

By signing the Ballot, you make one of the following certifications, as applicable:

•     I am the claimant and make the following certifications under penalty of perjury.

    i.    I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii.    To the best of my knowledge, information and belief, I am the Holder of a Sovereign Tribe Claim against the Debtor in Class 3F of the Plan; and

    iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan in my capacity as the claimant.

- I am the personal representative of the claimant and make the following certifications under penalty of perjury.

    i.    The claimant's personal representative has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii.    To the best of my knowledge, information and belief, the claimant is the Holder of a Sovereign Tribe Claim against the Debtor in Class 3F of the Plan; and

    iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

- I am an attorney for the claimant and make the following certifications under penalty of perjury.

    i.    The claimant's attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii.    To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the claimant is the Holder of a Sovereign Tribe Claim against the Debtor in Class 3F of the Plan; and

4938-9575-1425 v.7

iii.     I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

The Ballot does not constitute and will not be deemed a Proof of Claim or Interest, an assertion of a Claim, the allowance of a Claim, or the acceptance or liquidation of any Sovereign Tribe Claim for purposes of any distribution.    None of the information set forth in the Ballot shall constitute an admission by the Debtor as to the extent, validity, or priority of the Claim voted herein, nor shall anything contained herein or information submitted in or with the Ballot be binding upon the Debtor or the Holder in any subsequent Claims resolution process or other proceeding.   The Ballot may not be used for any purposes other than to transmit votes on the Plan.

If you cast more than one Ballot voting the same Sovereign Tribe Claim before the Voting Deadline, the last valid Ballot received by the Solicitation Agent on or before the Voting Deadline will be deemed to reflect your intent and will supersede any prior Ballots.

**Holders of Claims must vote the full amount of their Claims to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan**.   A Holder of a Sovereign Tribe Claim may not split his or her vote on the Plan.   Accordingly, the votes of any Holder of a Sovereign Tribe Claim who purports partially to accept and partially to reject the Plan will not be counted.

---

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT,
BELIEVE YOU MAY HAVE RECEIVED AN INCORRECT BALLOT,
OR IF YOU DID NOT RECEIVE A COPY OF ANY OF
THE DOCUMENTS DESCRIBED IN THESE INSTRUCTIONS,
PLEASE CONTACT THE SOLICITATION AGENT AT:**

**TELEPHONE: (866) 887-0488 (TOLL-FREE)
OR +1 (949) 889-0128 (INTERNATIONAL)
E-MAIL: KFIINQUIRIES@STRETTO.COM
OR VISIT HTTPS://CASES.STRETTO.COM/KFI**

---

-12-

**\*\*PLAN BALLOT\*\***

**BALLOT FOR ACCEPTING OR REJECTING THE
DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

---

**CLASS 3F:  SOVEREIGN TRIBE CLAIMS**

---

| |
|---|
| **Please read the instructions that accompany this Ballot before completing.    Print clearly.** |
| **ITEM 1 – Claimant's Name and Address:** |
| Name |
| Street Address |
| City, State, and ZIP Code (U.S.) |
| Telephone Number |
| Email Address |
| **ITEM 2 – Amount of Your Claim.** <br><br> For the purposes of voting to accept or reject the Plan, the undersigned certifies that the claimant holds a Sovereign Tribe Claim in the amount set forth below.  **Please note that each AFFF Claim has been temporarily allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance or any other purpose.** <br><br> **Claim Amount:**     $1.00 |

4938-9575-1425 v.7

**ITEM 3 – Vote on the Plan:**

The undersigned, as Holder of (or representative of a Holder of) a Sovereign Tribe Claim against the Debtor in Class 3F of the Plan, votes (fill in ONE box only):

☐  to ACCEPT (vote in favor of) the Plan.

☐  to REJECT (vote against) the Plan.

**ITEM 4 – Certifications, Acknowledgment, Signature and Date:**

☐  I am the claimant and make the following certifications under penalty of perjury.

    i.     I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii.     To the best of my knowledge, information and belief, I am the Holder of a Sovereign Tribe Claim against the Debtor in Class 3F of the Plan; and

    iii.     I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan in my capacity as the claimant.

☐  I am the personal representative of the claimant and make the following certifications under penalty of perjury.

    i.     The claimant's personal representative has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii.     To the best of my knowledge, information and belief, the claimant is the Holder of a Sovereign Tribe Claim against the Debtor in Class 3F of the Plan; and

    iii.     I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT

-2-

(vote against) the Plan on behalf of the claimant.

☐   I am the attorney for the claimant and make the below certifications under penalty of perjury.

i.      The claimant's attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

ii.     To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the claimant is the Holder of a Sovereign Tribe Claim against the Debtor in Class 3F of the Plan; and

iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

**Signature and Date**

| |
|---|
| Signature of Claimant or Authorized Agent |
| Date |

**YOU MUST COMPLETE ITEM 4 IN ORDER FOR YOUR VOTE(S) ON THE PLAN TO BE COUNTED.**

**DO NOT INCLUDE MEDICAL RECORDS WITH THIS BALLOT.**
**MEDICAL RECORDS CANNOT BE RETURNED BY THE SOLICITATION AGENT.**

**IF THIS BALLOT IS NOT ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY 5:00 P.M. (PREVAILING EASTERN TIME) ON DECEMBER 15, 2025, YOUR VOTE MAY NOT BE COUNTED.**

-3-

## **Appendix A**

**Release, Injunction and Exculpation Provisions in the Plan[1]**

---

[1] The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights. If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.

## Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released and cancelled, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Liquidating Estate and their successors and assigns. Any Holder of such mortgage, deed of trust, Lien, pledge or other security interest (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including and cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Liquidating Administrators to evidence such release, including the execution, delivery and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

## Releases by the Estate

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party, the Debtor, the Liquidating Estate and each Related Party of the Debtor and the Liquidating Estate shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, or any other Person or Governmental Unit asserting currently or in the future by, under, through, or on behalf of the Debtor or its Estate, and each of their respective successors or assigns, including the Settlement Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between one or both of the Debtor, on the one hand, and any Released Party, the Liquidating Estate, or any Related Party of the Debtor and the Liquidating Estate, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.3 of the Plan shall not be construed to release any post-Effective Date obligations under the RTX Waiver, the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, which specifically provides that such Estate Claims Settlement can be terminated, and the releases provided in the Plan or in the Estate Claims Settlement are void, if Carrier fails to make the installments of the Guaranteed Cash Payment when due and such failure is not timely cured within 30 days, at which time the Primary AFFF Settlement Trust is entitled to commence, prosecute, or continue all Estate Causes of Action against the Released Parties in any court of competent jurisdiction, and take such other actions as the Primary AFFF Settlement Trustee may determine in the exercise of their fiduciary duties.

### Releases by the Released Parties

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Released Parties and their successors or assigns of and from any and all Claims and Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, the Debtor's current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between any of the Debtor, the Liquidating Estate, the Settlement Trusts or the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case, on the one hand, and any Released Party, on the other hand, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any post-Effective Date obligations under the Plan Documents, the Confirmation Order, the 2020 Separation Agreement as supplemented by the RTX Waiver, or the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, or the right of any Person to enforce the same in accordance with

the terms thereof. Except with respect to the Claims and Causes of Action against the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case that are released and discharged under Article 10.4 of the Plan, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any obligations, rights, Causes of Action or Claims that Carrier Global Corporation or members of the Carrier Group (other than the Debtor), Otis Worldwide Corporation or members of the Otis Group, or RTX or members of the UTC Group may have against any Person under the 2020 Separation Agreement as supplemented by the RTX Waiver (including indemnification rights of RTX and other members of the "UTC Group" under the 2020 Separation Agreement).  For the avoidance of doubt, in the event that the Estate Claims Settlement Effective Date does not occur or the Estate Claims Settlement is terminated as contemplated by the last paragraph of Article 10.3 in the Plan, all releases being provided by the Released Parties under the Plan shall be void.

### Scope of Releases

Each Person providing releases under the Plan, including the Debtor, the Estate and the Settling Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts. Each Person providing releases under the Plan shall be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

### Exculpation

Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtor and its directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation.

As of the Effective Date, to the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in Article 10 of the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person for any act or omission in connection with, related to or arising out of this Chapter 11 Case, including (a) the operation of the Debtor's businesses during the pendency of this Chapter 11 Case; (b) the

administration and adjudication of Claims and Interests during this Chapter 11 Case; (c) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Plan, the Disclosure Statement, the Plan Supplement, or any related contract, instrument, release or other agreement or document created or entered into in connection with the Chapter 11 Case (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan and the distribution of property under the Plan); (d) any other transaction, agreement, event, or other occurrence related to the Chapter 11 Case taking place on or before the Effective Date, other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.

## Injunction

Except as otherwise expressly provided in the Plan or the Confirmation Order, the satisfaction and release pursuant to Article 10 of the Plan shall also act as a permanent injunction against any Person who has held, holds, or may in the future hold Claims against or Interests in the Debtor or any of its assets or properties based on any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are treated, released, settled, channeled, or exculpated pursuant to the terms of the Plan from taking any of the following actions on account of, or on the basis of, such Claims or Interests:  (a) commencing or continuing any action to collect, enforce, offset, recoup, or recover with respect to any Claims or Interests treated, released, settled, channeled, or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Claim or Interest against the Debtor, the Liquidating Estate, the Settlement Trusts, or its or their respective property; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of or in connection with or with respect to any such Claims or Interests, notwithstanding an indication of a Claim or Interest or otherwise that a Holder of such Claim or Interest asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise, against the Debtor, the Liquidating Estate, or the Settlement Trusts; or (e) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

## Channeling Injunction

Notwithstanding anything to the contrary in the Plan, to preserve and promote the settlements contemplated by and provided for in the Plan, including the Insurance Settlement Agreements, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under sections 105(a) and 1123(b) of the Bankruptcy Code, the sole recourse of any Holder of a Channeled AFFF Claim against the Debtor or a Released Party on account of such Channeled AFFF Claim shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to

and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, and such Holder shall have no right whatsoever at any time to assert any such Channeled AFFF Claim or any Estate Cause of Action that is released under the Estate Claims Settlement against the Debtor or any Released Party or any property or interest in property of the Debtor or any Released Party.  For the avoidance of doubt, the sole recourse for any Channeled AFFF Claim covered by any Insurance Policy issued by a Settling Insurance Company shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents.  Accordingly, on and after the Effective Date, all Holders of AFFF Claims that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled AFFF Claim or any Estate Cause of Action against the Debtor or any Released Party shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from the Debtor or any Released Party with respect to any such Channeled AFFF Claim or Estate Cause of Action, other than from the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, including:

a) commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

b) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

c) creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

d) asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party; or

e) taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents, or, with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, by the Sovereign State AFFF Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Channeled AFFF Claim.

The Debtor, the Liquidating Estate and/or any Released Party, as applicable, may enforce the Channeling Injunction and/or the Releases contained in the Plan before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at their own cost and expense, and no such cost or expense incurred by a party other than the Primary AFFF Settlement Trust shall be reimbursed or indemnified by the Primary AFFF Settlement Trust under any circumstances.

<u>Insurance Company Injunction</u>

Subject to the provisos set forth in this Section, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim or cause of action (including any AFFF Claim or any Claim for or respecting any Primary AFFF Settlement Trust expense) against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Insurance Policy, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, statute or any other theory of law, equity or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim or cause of action, including:

a)       commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, demand, or cause of action against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such Claim, demand, or cause of action against any Insurance Company);

b)       enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

c)       creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such Claim or cause of action; and

d)       except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

*provided, however,* that (i) nothing in this Section shall impair or affect the rights of any member of the UTC Group, including RTX, or any member of the Otis Group (each as defined in the 2020 Separation Agreement), or any additional insured designated by RTX

or any member of the UTC Group, based upon, attributable to, arising out of, or in any way connected with an Insurance Policy, including to assert Claims or Causes of Action against any Insurance Company for covered losses and to receive proceeds in respect thereof; (ii) this injunction shall not impair in any way any actions brought by the Primary AFFF Settlement Trust against any Other Insurance Company; (iii) the Primary AFFF Settlement Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction with respect to any Other Insurance Company, in accordance with the Settlement Trust Documents, upon express written notice to such Other Insurance Company; and (iv) this injunction is not issued for the benefit of any Other Insurance Company, and no Other Insurance Company is a third-party beneficiary of this injunction.

Notwithstanding anything to the contrary in the Plan, this injunction shall not enjoin:

a)      the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of Holders of AFFF Claims to assert such Claims, as applicable, in accordance with the TDPs;

b)      the rights of the Primary AFFF Settlement Trust to prosecute any action based on or arising from Insurance Policies, except to the extent otherwise released;

c)      the rights of the Primary AFFF Settlement Trust to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company based on or arising from the Insurance Policies;

d)      any actions of the Contributing Parties in fulfilling their obligations under the Estate Claims Settlement in consultation and coordination with the Primary AFFF Settlement Trust;

e)      the rights of any Insurance Company to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company; or

f)      the Claims for reinsurance under reinsurance contracts or Claims under retrocessional contracts among the Settling Insurance Companies and any Other Insurance Company.

### Prohibition on Actions Against Buyer

Subject to the Sale Order and the Acquisition Agreement, Buyer, in its capacity as such, shall not have any liability for any AFFF Claims against the Debtor arising prior to the closing of the Sale.  Except as expressly otherwise set forth in the Sale Order, all persons and entities hereby are forever barred, estopped and permanently enjoined from asserting against Buyer, its Affiliates, its successors or assigns, its property or the Transferred Assets, such persons' or entities' AFFF Claims that have been or could have been asserted against the Debtor arising prior to the closing of the Sale.  For the avoidance of doubt, the foregoing shall

not release Buyer from, or enjoin any actions against Buyer for, any Assumed Liability or any other liability incurred by Buyer on account of its operations following the closing of the Sale.

## Limitations on Exculpations and Releases

Notwithstanding anything to the contrary in the Plan, none of the releases or exculpations set forth in the Plan shall operate to waive or release any obligation or Causes of Action of any Person: (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations or (b) expressly set forth in and preserved by the Plan, the Plan Supplement, Plan Documents or related documents.

## Release Dispute

In the event of a Release Dispute, a Released Party may, at its sole cost and expense, file a motion with the Bankruptcy Court seeking a determination as to whether an AFFF Claimant's Cause of Action was settled and released pursuant to the Plan, and upon such motion, the Bankruptcy Court shall make such determination and, if appropriate, enjoin the prosecution of such Cause of Action as having been settled and released under the Plan.

## Relevant Definitions

"*2020 Separation Agreement*" means that certain Separation and Distribution Agreement, dated as of April 2, 2020, by and among United Technologies Corporation, Carrier Global Corporation, and Otis Worldwide Corporation.

"*Administrative Claim*" means an Allowed Claim for costs and expenses of administration of the Chapter 11 Case pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate; (b) Allowed Professional Compensation Claims; (c) Allowed Fee Examiner Compensation Claims; and (d) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

"*AFFF*" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

"*AFFF Claim*" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.

"*Assumed Liability*" shall have the meaning set forth in the Acquisition Agreement.

"*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other Claims, Causes of Action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties-in-interest under the Bankruptcy Code or applicable non-

bankruptcy law, including claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) was commenced prior to the Effective Date.

"*Buyer*" means Pacific Erin Opco, LLC, as the purchaser of substantially all of the Debtor's assets pursuant to the Acquisition Agreement and the Sale Order.

"*Carrier*" means Carrier Global Corporation, a Delaware corporation, and its non-Debtor affiliates and Related Parties.

"*Causes of Action*" means any current or future actions, Claims, cross-claims, third-party claims, causes of action, controversies, disputes, demands, rights, liens, indemnities, contributions, guaranties, suits, obligations, liabilities, losses, debts, fees or expenses, damages, interest, judgments, costs, accounts, defenses, remedies, offsets, powers, privileges, proceedings, licenses, and franchises of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, choate or inchoate, capable of being asserted directly or derivatively (including any alter ego theories), including any Claims for recovery of attorneys' fees, turnover, fraud, gross negligence, or willful misconduct, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws, consumer protection laws, environmental laws, or nuisance or trespass theories).  Causes of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to or otherwise contest Claims or Interests, (c) any claim pursuant to section 362 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Actions.

"*Channeled AFFF Claims*" means all AFFF Claims against the Debtor or the Estate channeled to the Primary AFFF Settlement Trust under the Plan and Settlement Trust Documents.  For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

"*Committee*" means the official committee of unsecured creditors of the Debtor appointed by the U.S. Trustee in the Chapter 11 Case under section 1102(a) of the Bankruptcy Code pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 83] and any amendments thereto.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Settling Parties.

"*Consummation*" means the occurrence of the Effective Date.

"*Debtor*" means Kidde-Fenwal, Inc., the debtor and debtor in possession in the Chapter 11 Case, now known as KFI Wind-Down Corp.  In 2007, KFFI (formerly known as National Foam, Inc.) merged into Kidde-Fenwal, Inc., with Kidde-Fenwal, Inc. as the surviving entity.  Pursuant to this merger, KFFI's liabilities were assumed by, and KFFI's causes of action were transferred to, Kidde-Fenwal, Inc. directly or indirectly by merger or other agreement.  The term "Debtor" includes Kidde-Fenwal, Inc. as successor by merger or other agreement by which Kidde-Fenwal, Inc. obtained or assumed the liabilities and Causes of Action of any Person.

"*Effective Date*" means the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date set forth in the Plan shall have been satisfied or waived and on which a notice indicating the Effective Date has been filed on the docket of the Chapter 11 Case.

"*Estate Causes of Action*" means Causes of Action owned or held by either the Debtor or its Estate, or capable of being asserted (currently, or in the future) by any Person or Governmental Unit on behalf of, under or through, either the Debtor or its Estate, and each of their respective successors or assigns, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions, that may be commenced by a representative of the Estate under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise.  Without limiting the foregoing, Estate Causes of Action shall include:  (a) Causes of Action that on or after the Petition Date may be exclusively asserted by or on behalf of the Debtor or its Estate under applicable law, or that prior to the Petition Date could have been asserted by the Debtor on its own behalf under applicable law, including Causes of Action based on (i) the doctrine of successor liability that seek to impose the Debtor's (including KFFI's or National Foam, Inc.'s) liabilities on an alleged successor, whether based on a contractual assumption of liability, consolidation or de facto merger, acquisition of the Debtor's product line, fraud, domination, direction of the Debtor's affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, or (ii) the doctrines of alter ego or veil piercing involving alter egos of the Debtor or the piercing of the Debtor's (including KFFI's or National Foam, Inc.'s) corporate veil, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form; (b) Causes of Action or theories for recovery or remedies that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is generally common to creditors of the Debtor and can be asserted by the Debtor under applicable law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor.  Subsections (a), (b) and (c) immediately above expressly encompass any Causes of Action based on:  (i) the alleged assumption of the Debtor's (including KFFI's or

National Foam, Inc.'s) liabilities (but not a non-Debtor's liabilities) by Kidde plc (n/k/a Kidde Limited) pursuant to the 2000 Demerger Agreement, or any alleged subsequent assumption of such liabilities of the Debtor from Kidde plc by any other Released Party; or (ii) the alleged assumption of the Debtor's liabilities (but not a non-Debtor's liabilities), including any liabilities resulting from acts or omissions of National Foam, Inc. or KFFI, by a Released Party pursuant to the 2020 Separation Agreement.  For the avoidance of doubt, Estate Causes of Action shall not include any Independent AFFF Causes of Action or any Sovereign State Retained Causes of Action or Insurance Actions against any Released Party based on acts or omissions occurring after entry into the Plan Support Agreement with respect to rights under the 2020 Separation Agreement or the RTX Waiver to access and make Claims under any Insurance Policy or otherwise obtain the benefit of the Insurance Assignment.

"*Estate Claims Settlement*" means the settlement, including the release of all Estate Causes of Action against the Released Parties, pursuant to the Estate Claims Settlement Agreement.

"*Independent AFFF Cause of Action*" means any Cause of Action that could be asserted by an AFFF Claimant against a Non-Debtor Party based on the Non-Debtor Party's own conduct and breach of duty (*i.e.*, duty owed to the AFFF Claimant and not owed to the Debtor), including (a) Causes of Action arising from such acts or omissions of such Non-Debtor Party, and (b) Causes of Action based on allegations that a Non-Debtor Party is responsible for such conduct under theories of liability or recovery or remedies that could have been asserted by an AFFF Claimant on its own behalf under applicable state or federal law in respect of such Causes of Action prior to the Petition Date based on (i) the doctrine of successor liability involving a Non-Debtor Party that is alleged to be a successor to another Non-Debtor Party with respect to liabilities not directly or indirectly assumed from the Debtor, whether based on a contractual assumption of liability (including under the 2020 Separation Agreement), consolidation or de facto merger, acquisition of product line, fraud, domination, direction of affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, (ii) the doctrines of alter ego or veil piercing involving alter egos of a Non-Debtor Party, or piercing the corporate veil between Non-Debtor Parties, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form, or (iii) alleged derivative or vicarious liability of a Non-Debtor Party for liabilities of another Non-Debtor Party not directly or indirectly assumed from the Debtor; *provided* that, if any Cause of Action falls within the definition of Estate Cause of Action or Sovereign State Retained Cause of Action, it is not an Independent AFFF Cause of Action.
"*Insurance Assignment*" means the transfer by the Debtor and Carrier to the Primary AFFF Settlement Trust of certain rights in connection with the Insurance Policies as set forth in Article 5 of the Plan.

"*Insurance Policy/ies*" means: (i) any insurance policies listed on Schedule 1 to the Plan, (ii) to the extent not listed on Schedule 1, any "general liability" insurance (which, for the avoidance of doubt, shall exclude director & officer, automobile, or workers' compensation insurance) contract, binder, certificate, insurance policy, or reinsurance policy, whether currently known or unknown, discovered after the Effective Date, in effect at any time on or before the Petition Date naming the Debtor, the Contributing Parties, or any of their predecessors, subsidiaries, or past or present affiliates as an insured (whether as the primary or additional insured) or that provides or may provide coverage to Carrier or the Debtor for AFFF Claims, (iii) "Aviation" policies to

which Carrier or the Debtor has rights as listed in Schedule 2 to the Plan solely to the extent of Insurance Policy Rights applicable to or arising from AFFF Claims and (iv) any other subsequently discovered insurance policies of the same types as listed in Schedules 1 and 2 to the Plan to the extent that Carrier or the Debtor have rights under such policies (whether or not such policies are specifically titled as "General Liability" or "Aviation" policies).  For the avoidance of doubt, "Insurance Policies" shall not include any D&O Policies, automobile policies or worker's compensation insurance.

"*Insurance Policy Rights*" means any and all rights subject to the Insurance Assignment.

"*KFFI*" means Kidde Fire Fighting, Inc. (formerly known as National Foam, Inc.).

"*Liquidating Estate Claims*" means Administrative Claims, Priority Tax Claims, Other Priority Claims and Secured Claims.

"*New National Foam*" means, collectively, National Foam, Inc. f/k/a Eurostar US Tradeco, Inc., Angus Fire Ltd. f/k/a Eurostar Tradeco Limited, Angus International Safety Group Limited f/k/a Eurostar Holdco Limited, and each of their Related Parties.

"*New National Foam Release*" means a settlement between the Debtor and New National Foam pursuant to which (a) Estate Causes of Action against New National Foam are resolved for value reasonably acceptable to the Settling Parties and (b) New National Foam agrees to absolutely, unconditionally, and irrevocably release and discharge the Debtor and each Released Party from any and all Claims and Causes of Action, whether known or unknown, based on or relating to, or in any manner arising from that certain Share and Business Sale Agreement, dated as of June 28, 2013, or any other occurrence taking place on or before the Effective Date, including Proof of Claim No. 225, and otherwise in form and substance reasonably acceptable to the Settling Parties.

"*Non-Debtor Party*" means any Person other than the Debtor.  For the avoidance of doubt, the term "*Non-Debtor Party*" does not include KFFI or National Foam, Inc.

"*Other Insurance Company*" means an Insurance Company that is not a Settling Insurance Company.

"*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"*Person*" means a "person" or "entity" as defined in the Bankruptcy Code.

"*Petition Date*" means May 14, 2023, the date on which the Debtor commenced the Chapter 11 Case.

"*PFAS*" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.

"*Primary AFFF Settlement Trust*" means the settlement trust organized under the laws of the state of Delaware and established under the Plan and the Settlement Trust Documents, which

shall (i) have the powers, duties and obligations set forth in the Plan and the Settlement Trust Documents, (ii) assume all liability of the Debtor and the Estate for, and administer, all Channeled AFFF Claims and (iii) be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code.

"*Primary AFFF Settlement Trust Agreement*" means the Settlement Trust Agreement governing the Primary AFFF Settlement Trust, dated as of the Effective Date, as the same may be amended or modified from time to time in accordance with the terms thereof.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Released Party*" means (i) Carrier, (ii) RTX, and (iii) each of their Related Parties in their capacities as such. Released Parties shall not include DuPont, 3M, or their current or former affiliates and Related Parties. If a Person is a current or former affiliate or Related Party of DuPont or 3M, and such Person is also a current or former affiliate or Related Party of Carrier or RTX, then such Person shall not be a Released Party. For the avoidance of doubt, New National Foam shall not be a Released Party unless the New National Foam Release is provided by the Effective Date.

"*Related Party*" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, and current and former affiliates and subsidiaries, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, all only in their capacity as a representative of such Person, and (c) respective heirs, executors, estates, and nominees, in each case solely in its capacity as such.

"*RTX Waiver*" shall have the meaning set forth in Article 5.5.11(b) of the Plan.

"*Sale Order*" means the *Order (I) Approving the Sale of All or Substantially All of the Debtor's Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving Debtor's Entry, and Performance Under the Contribution Agreement, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Granting Related Relief*, entered by the Bankruptcy Court on April 2, 2024 [D.I. 1058].

"*Settlement Trust Agreements*" means, collectively, (i) the Primary AFFF Settlement Trust Agreement, (ii) the Sovereign State AFFF Settlement Trust Agreement and (iii) the GUC Liquidating Trust Agreement. To the extent that any provision of a Settlement Trust Agreement impacts the rights of Carrier, such provision shall not be included in such Settlement Trust Agreement unless reasonably acceptable to Carrier.

"*Settlement Trust Documents*" means, collectively, (a) the Settlement Trust Agreements, (b) the TDPs, (c) the Confirmation Order, and (d) any other agreements, instruments, and documents governing the establishment, administration, and operation of the Settlement Trusts.

"*Settlement Trusts*" means the Primary AFFF Settlement Trust, Sovereign State AFFF Settlement Trust and GUC Liquidating Trust.

"*Settling Insurance Company*" means any Insurance Company that contributes funds, proceeds, or other consideration to or for the benefit of the Primary AFFF Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order.  No Insurance Company shall be considered a Settling Insurance Company without the Committee's prior written consent.

"*Sovereign State*" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.

"*Sovereign State AFFF Settlement Trust*" means the trust established under the Plan and the Settlement Trust Documents to administer all Sovereign State Claims against the Debtor.  The Sovereign State AFFF Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code and shall have the powers, duties and obligations set forth in the Settlement Trust Documents.

"*Sovereign State Retained Cause of Action*" means any Claim or Cause of Action asserted, or which may be asserted, by a Sovereign State against a Contributing Party that (1) is not an Estate Cause of Action and (2) arises from a statute, regulation, or common law that creates a theory of liability, by which a Sovereign State could recover damages or penalties, or obtain equitable or injunctive relief, against a Contributing Party.  For the avoidance of doubt, a Sovereign State may assert a Sovereign State Retained Cause of Action irrespective of whether such Sovereign State Retained Cause of Action could also be considered an Independent AFFF Cause of Action.

"*TDPs*" or "Trust Distribution Procedures" means the Trust Distribution Procedures for the Settlement Trusts, as the same may be amended or modified from time to time in accordance with the terms thereof, that will govern the claims submission, adjudication, and distribution processes for the Settlement Trusts in a manner that is fair and equitable to Holders of Allowed Channeled AFFF Claims.  To the extent that any provision of the TDPs impacts the rights of Carrier, such provision shall not be included unless reasonably acceptable to Carrier.

"*Transferred Assets*" shall have the meaning set forth in the Acquisition Agreement.

## **EXHIBIT 2G**

**Ballot for Class 3G: Business Loss Claims**

**\*\*KFI WIND-DOWN CORP. PLAN BALLOT\*\***

> # THIS BALLOT IS FOR HOLDERS OF CLAIMS AGAINST KFI WIND-DOWN CORP. (F/K/A KIDDE-FENWAL, INC.) ARISING FROM ITS AFFF OR AFFF-CONTAINING PRODUCTS.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |

## BALLOT FOR ACCEPTING OR REJECTING THE
## DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

## CLASS 3G:  BUSINESS LOSS CLAIMS

On May 14, 2023 (the "Petition Date"), KFI Wind-Down Corp. f/k/a Kidde-Fenwal, Inc. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") (the "Chapter 11 Case").

On [•], 2025, the Debtor filed the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Plan"),[2] which is described in greater detail in the *Disclosure Statement for the Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the*

---

[1]    The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters are located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

*Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Disclosure Statement").

---

**THE PLAN CONTAINS RELEASE, INJUNCTION AND EXCULPATORY PROVISIONS. THESE PROVISIONS ARE SET FORTH IN <u>APPENDIX A</u> TO THIS BALLOT.  YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.**

---

On [•], 2025, the Bankruptcy Court entered an order [D.I. [•]] (the "Disclosure Statement Order") approving the Disclosure Statement as containing "adequate information" within the meaning ascribed to such term in section 1125 of the Bankruptcy Code and procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures").

The Plan, Disclosure Statement, Disclosure Statement Order, Solicitation Procedures and documents included in the Plan Supplement as of the Solicitation Mailing Deadline have been included in the package of materials containing the attached ballot (the "Ballot") and can be accessed free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code.  For a description of the Causes of Action to be enjoined and the identities of the Persons that would be subject to this injunction, see Article IV.E.8 of the Disclosure Statement and Article 10.8 of the Plan.

A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of the Claims that submit votes in that Voting Class vote to accept the Plan.  Even if a Voting Class votes to reject the Plan, the Bankruptcy Court nonetheless may confirm the Plan if it finds the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

If the Plan is confirmed by the Bankruptcy Court, all Holders of Claims against and Interests in the Debtor (including those Holders who reject the Plan or abstain from voting on the Plan, and those Holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby.

The Debtor will file the Plan Supplement (as may be amended, modified or supplemented from time to time) with the Bankruptcy Court no later than **November 17, 2025.**

The documents included in the Plan Supplement as of the Solicitation Mailing Deadline are included in your Solicitation Package.  Any further Plan Supplement, and any amendments or supplements to the foregoing, will only be served on: (a) the U.S. Trustee, (b) the Notice Parties and (c)

4929-4911-2585 v.6

the 2002 List.   Once filed, a copy of the Plan Supplement will also be available for review and download on the Debtor's website maintained by the Solicitation Agent free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

**Unless such time is extended by the Debtor, in consultation with the Settling Parties, or the Bankruptcy Court, the Ballot must be properly completed, signed and returned to the Solicitation Agent *so as to be actually received* no later than 5:00 p.m. (prevailing Eastern Time) on December 15, 2025 (the "Voting Deadline") in order for the vote on the Ballot to count.   Unless otherwise provided in the Solicitation Procedures, all Holders of Claims in the Voting Classes are required to (a) submit their Ballots online at the Solicitation Agent's online voting portal at https://cases.stretto.com/kfi or (b) return their Ballots by mail, overnight courier or hand delivery to the Solicitation Agent at KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, in each case so that they are actually received by the Solicitation Agent on or before the Voting Deadline (December 15, 2025 at 5:00 p.m. (prevailing Eastern Time)).**

This Ballot is to be used by Holders of Business Loss Claims against the Debtor in Class 3G of the Plan only.  Please refer to the Plan for the specific definition of "Business Loss Claim," which is copied below, as well as other relevant definitions.

*"Holder" means a Person holding a Claim against or an Interest in the Debtor.*

*"Business Loss Claim" means an AFFF Claim asserted by a person or entity, other than a Governmental Unit, Sovereign State or Sovereign Tribe, for business losses, including lost inventory, lost profits, or comparable damages, recoverable in the tort system that is not an Airport Claim, Fire Training Facility Claim, Landfill Claim, Personal Injury Claim, Property Damage Claim, Sovereign State Claim, Sovereign Tribe Claim, Stormwater Claim, Wastewater Claim, or Water Provider Claim.*

*"AFFF" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.*

*"AFFF Claim" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.*

*"Governmental Unit" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code and also includes any national, central, federal, Sovereign Tribe, state, provincial, municipal, local or other domestic, foreign or supranational governmental, legislative, administrative or regulatory authority, agency, court, arbitration tribunal, board, department or commission, instrumentality thereof or other*

-3-

*governmental or regulatory entity, including any competent governmental authority responsible for the determination, assessment, or collection of taxes.*

*"Sovereign State" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.*

*"Sovereign Tribe" means any American Indian or Alaskan Native Tribe, band, nation, pueblo, village or community, that the U.S. Secretary of the Interior acknowledges as an Indian Tribe, as provided in the Federally Recognized Tribe List Act of 1994, 25 U.S.C. § 5130, and as periodically listed by the U.S. Secretary of the Interior in the Federal Register pursuant to 25 U.S.C. § 5131; and any "Tribal Organization" as provided in the Indian Self-Determination and Education and Assistance Act of 1975, as amended, 25 U.S.C. § 5304(1).*

*"Airport Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of an Airport for damages relating to such Airport.*

*"Fire Training Facility Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Fire Training Facility for damages relating to such Fire Training Facility.*

*"Landfill Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Landfill for damages relating to such Landfill.*

*"Personal Injury Claim" means an AFFF Claim asserted by an individual person, or legal representative of such person, for or related to, directly or indirectly, personal injuries or wrongful death.*

*"Property Damage Claim" means an AFFF Claim asserted by or on behalf of an owner of real property (other than an Airport, Stormwater System, Wastewater System, Public Water System, Landfill, or Fire Training Facility) or personal property for damages relating to such property.*

*"Sovereign State Claim" means an AFFF Claim asserted by a Sovereign State that is not an Airport Claim, Business Loss Claim, Fire Training Facility Claim, Landfill Claim, Personal Injury Claim, Property Damage Claim, Stormwater Claim, Wastewater Claim or Water Provider Claim.*

-4-

*"Sovereign Tribe Claim" means an AFFF Claim asserted by a Sovereign Tribe that is not an Airport Claim, Business Loss Claim, Fire Training Facility Claim, Landfill Claim, Personal Injury Claim, Property Damage Claim, Stormwater Claim, Wastewater Claim or Water Provider Claim.*

*"Stormwater Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Stormwater System for damages relating to such Stormwater System.*

*"Wastewater Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Wastewater System for damages relating to such Wastewater System.*

*"Water Provider Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Public Water System for damages relating to such Public Water System.*

*"PFAS" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.*

*"Claim" has the meaning ascribed to such term under section 101(5) of the Bankruptcy Code.*

*"Airport" means: (a) all airports categorized by the FAA in the National Plan of Integrated Airport Systems, including all airports that have been issued operating certificates by the FAA pursuant to 14 CFR Part 139; and (b) any firefighter training facility operated on airport property, whether or not operated by the airport itself.*

*"Stormwater System" means a system of diverting excess precipitation from rain and snowmelt events and dry-weather runoff over land or impervious surfaces without percolating into the ground from real property, municipalities, construction activities, and industrial activities and permitted as such pursuant to the National Pollutant Discharge Elimination System and/or by a state or municipal permitting authority*

*"Wastewater System" means a network of pipes, pumping stations, and appurtenances that convey sewage and waste from its points of origin to a point of treatment and disposal.*

*"Public Water System" means a system for the provision to the public of water for human consumption through pipes or other constructed conveyances, if such system has at least fifteen (15) service connections or regularly serves an average of at least twenty-five (25) individuals daily at least sixty (60) days out of the year, consistent with*

-5-

*the use of that term in the Safe Drinking Water Act, 42 U.S.C. § 300f(4)(A), and 40 C.F.R. Part 141. The term "Public Water System" includes (i) any collection, treatment, storage, and distribution facilities under control of the operator of such system and used primarily in connection with such system, (ii) any collection or pretreatment storage facilities not under such control which are used primarily in connection with such system, (iii) a Community Water System of any size, (iv) a Non-Transient Non-Community Water System of any size, and (v) any Person (but not any financing or lending institution) that has legal authority or responsibility (by statute, regulation, other law, or contract) to fund or incur financial obligations for the design, engineering, installation, operation, or maintenance of any facility or equipment that treats, filters, remediates, or manages water that has entered or may enter Drinking Water or any Public Water System*

*"Landfill" means a discrete area of real property primarily used for the disposal of waste material as categorized pursuant to 40 CFR Part 239-272.*

*"Fire Training Facility" means real property (other than an Airport) that is or has been used for live firefighter training with AFFF.*

*"Community Water System" means a Public Water System that serves at least fifteen (15) service connections used by year-round residents or regularly serves at least twenty-five (25) year-round residents, consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C. § 300f(15), and 40 C.F.R. Part 141.*

*"Non-Transient Non-Community Water System" means a Public Water System that is not a Community Water System and that regularly serves at least twenty-five (25) of the same persons over six (6) months per year, consistent with the use of that term in 40 C.F.R. Part 141.*

*"Person" means a "person" or "entity" as defined in the Bankruptcy Code.*

*"Drinking Water" means water provided for human consumption (including uses such as drinking, cooking, and bathing), consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C. §§ 300f to 300j-27.   The term "Drinking Water" includes raw or untreated water that a Public Water System has drawn or collected from a Water Source so that the water may then (after any treatment) be provided for human consumption but does not include raw or untreated water that is not drawn or collected from a Water Source.*

-6-

***"Water Source"*** *means a groundwater well, a surface-water intake, or any other intake point from which a Public Water System draws or collects water for distribution as Drinking Water, and the raw or untreated water that is thus drawn or collected.*

*[Remainder of page left intentionally blank]*

-7-

## DOCUMENTS INCLUDED WITH THE BALLOT

You should have received the following documents with the Ballot (collectively, the "**Solicitation Package**").  **Please note that some of the following documents may be included on a USB flash drive included as part of your Solicitation Package**.

- the Cover Letter;

- the Committee Letter;

- the Solicitation Procedures;

- a USB flash drive containing a copy of the Disclosure Statement (and exhibits thereto, including the Plan) and the documents contained in the Plan Supplement that have been filed prior to the Solicitation Mailing Deadline;

- the Disclosure Statement Order (without exhibits);

- a preaddressed, return envelope for completed Ballots;

- the Confirmation Hearing Notice; and

- any other materials ordered by the Court to be included as part of the Solicitation Package.

If you have questions about the Ballot, or if you did not receive a copy of the Plan or any related materials, please contact the Solicitation Agent at KFIInquiries@stretto.com or (866) 887-0488 (toll-free) or +1 (949) 889-0128 (international).  Information may also be obtained at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtor or any other party for payment purposes.

-8-

## <u>INSTRUCTIONS FOR COMPLETING YOUR BALLOT</u>

The following instructions explain each of the items contained on the Ballot. If you have any questions, please contact the Solicitation Agent at the phone number or e-mail provided above or visit https://cases.stretto.com/kfi.

### If Submitting Your Vote through the Ballot Submission Portal:

The Solicitation Agent will accept Ballots if properly completed through the Ballot Submission Portal. To submit your customized electronic Ballot via the Ballot Submission Portal, visit https://cases.stretto.com/kfi, click on the Ballot Submission Portal link and follow the instructions to submit your Ballot.

**IMPORTANT NOTE:** You will need the following information to retrieve and submit your customized electronic Ballot:

**Unique E-Ballot Password:** _____

Except as provided in the Solicitation Procedures, submission of your Ballot via the Solicitation Agent's online portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Except as provided in the Solicitation Procedures, Ballots submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.

Each "Unique E-Ballot Password" is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot. Please complete and submit an electronic Ballot for each Unique E-Ballot Password you receive, as applicable. Creditors who cast a Ballot using the online portal should NOT also submit a paper Ballot.

The encrypted Ballot data and audit trail created by such electronic submission will become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective. Ballots submitted via the Ballot Submission Portal will be deemed to contain an original signature.

If your Ballot is not actually received on or before the Voting Deadline by the Solicitation Agent, and such Voting Deadline is not extended by the Debtor as noted above, your vote will not be counted.

### If Submitting Your Vote through Regular Mail, Overnight Courier, or via Hand Delivery:

Submit your completed and signed Ballot by regular mail using the return envelope included in the Solicitation Package (or otherwise), or by hand delivery or overnight courier to:

4929-4911-2585 v.6

<div style="border:1px solid black; text-align:center;">

KFI Ballot Processing
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602

To arrange for hand delivery, please send an
email to KFIInquiries@stretto.com at
least 24 hours before arrival at the address above and
provide the anticipated date and time of delivery.

</div>

**To fill out the Ballot, you must complete the following:**

**Item 1.  Claimant's Name and Address.**

Please fill in the name and address information requested.  Claimants should include street address, city, state, ZIP Code, telephone number and email address.

**Item 2.  Vote on the Plan.**

Vote on the Plan by checking the box that corresponds to your choice.  You may vote to ACCEPT the Plan (meaning that you vote in favor of the Plan) or to REJECT the Plan (meaning that you vote against the Plan).   You must check either the ACCEPT or REJECT box below for the Plan to have your vote counted.   If you check both the ACCEPT and REJECT boxes for the Plan, your vote will not be counted.

**Item 3.  Certifications, Acknowledgment, Signature and Date.**

Either the claimant, the claimant's personal representative, or the claimant's attorney MUST sign the Ballot.  If the Ballot is not signed, the vote shown on the Ballot will NOT be counted.

The claimant, the claimant's personal representative, or the claimant's attorney MUST certify certain information on the Ballot.  If you are the claimant's attorney, you must provide evidence of your authority to vote on behalf of the claimant at the Debtor's request.  Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

By signing the Ballot, you make one of the following certifications, as applicable:

- I am the claimant and make the following certifications under penalty of perjury.

i. I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

ii. To the best of my knowledge, information and belief, I am the Holder of a Business Loss Claim against the Debtor in Class 3G of the Plan; and

iii. I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan in my capacity as the claimant.

- I am the personal representative of the claimant and make the following certifications under penalty of perjury.

i. The claimant's personal representative has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

ii. To the best of my knowledge, information and belief, the claimant is the Holder of a Business Loss Claim against the Debtor in Class 3G of the Plan; and

iii. I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

- I am an attorney for the claimant and make the following certifications under penalty of perjury.

i. The claimant's attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

ii. To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the claimant is the Holder of a Business Loss Claim against the Debtor in Class 3G of the Plan; and

-11-

iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

The Ballot does not constitute and will not be deemed a Proof of Claim or Interest, an assertion of a Claim, the allowance of a Claim, or the acceptance or liquidation of any Business Loss Claim for purposes of any distribution.  None of the information set forth in the Ballot shall constitute an admission by the Debtor as to the extent, validity, or priority of the Claim voted herein, nor shall anything contained herein or information submitted in or with the Ballot be binding upon the Debtor or the Holder in any subsequent Claims resolution process or other proceeding.  The Ballot may not be used for any purposes other than to transmit votes on the Plan.

If you cast more than one Ballot voting the same Business Loss Claim before the Voting Deadline, the last valid Ballot received by the Solicitation Agent on or before the Voting Deadline will be deemed to reflect your intent and will supersede any prior Ballots.

**Holders of Claims must vote the full amount of their Claims to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan**.  A Holder of a Business Loss Claim may not split his or her vote on the Plan.  Accordingly, the votes of any Holder of a Business Loss Claim who purports partially to accept and partially to reject the Plan will not be counted.

---

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT,
BELIEVE YOU MAY HAVE RECEIVED AN INCORRECT BALLOT,
OR IF YOU DID NOT RECEIVE A COPY OF ANY OF
THE DOCUMENTS DESCRIBED IN THESE INSTRUCTIONS,
PLEASE CONTACT THE SOLICITATION AGENT AT:**

**TELEPHONE: (866) 887-0488 (TOLL-FREE)
OR +1 (949) 889-0128 (INTERNATIONAL)
E-MAIL: KFIINQUIRIES@STRETTO.COM
OR VISIT HTTPS://CASES.STRETTO.COM/KFI**

---

4929-4911-2585 v.6

**\*\*PLAN BALLOT\*\***

**BALLOT FOR ACCEPTING OR REJECTING THE
DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

---

**CLASS 3G:  BUSINESS LOSS CLAIMS**

---

| |
|---|
| **Please read the instructions that accompany this Ballot before completing.    Print clearly.** |
| **ITEM 1 – Claimant's Name and Address:** |
| Name |
| Street Address |
| City, State, and ZIP Code (U.S.) |
| Telephone Number |
| Email Address |
| **ITEM 2 – Amount of Your Claim.**<br><br>For the purposes of voting to accept or reject the Plan, the undersigned certifies that the claimant holds a Business Loss Claim in the amount set forth below.  **Please note that each AFFF Claim has been temporarily allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance or any other purpose.**<br><br>**Claim Amount:**    <u>$1.00</u> |

**ITEM 3 – Vote on the Plan:**

The undersigned, as Holder of (or representative of a Holder of) a Business Loss Claim against the Debtor in Class 3G of the Plan, votes (fill in ONE box only):

☐  to ACCEPT (vote in favor of) the Plan.

☐  to REJECT (vote against) the Plan.

---

**ITEM 4 – Certifications, Acknowledgment, Signature and Date:**

☐  I am the claimant and make the following certifications under penalty of perjury.

    i.    I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii.    To the best of my knowledge, information and belief, I am the Holder of a Business Loss Claim against the Debtor in Class 3G of the Plan; and

    iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan in my capacity as the claimant.

☐  I am the personal representative of the claimant and make the following certifications under penalty of perjury.

    i.    The claimant's personal representative has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii.    To the best of my knowledge, information and belief, the claimant is the Holder of a Business Loss Claim against the Debtor in Class 3G of the Plan; and

    iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT

-2-

(vote against) the Plan on behalf of the claimant.

☐   I am the attorney for the claimant and make the below certifications under penalty of perjury.

i.    The claimant's attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

ii.   To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the claimant is the Holder of a Business Loss Claim against the Debtor in Class 3G of the Plan; and

iii.  I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

**Signature and Date**

Signature of Claimant or Authorized Agent

Date

**YOU MUST COMPLETE ITEM 4 IN ORDER FOR YOUR VOTE(S) ON THE PLAN TO BE COUNTED.**

**<u>DO NOT INCLUDE MEDICAL RECORDS WITH THIS BALLOT.</u>**
**<u>MEDICAL RECORDS CANNOT BE RETURNED BY THE SOLICITATION AGENT.</u>**

**IF THIS BALLOT IS NOT ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY 5:00 P.M. (PREVAILING EASTERN TIME) ON DECEMBER 15, 2025, YOUR VOTE MAY NOT BE COUNTED.**

4929-4911-2585 v.6

## **Appendix A**

**Release, Injunction and Exculpation Provisions in the Plan[1]**

---

[1] The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights. If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.

## Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released and cancelled, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Liquidating Estate and their successors and assigns.  Any Holder of such mortgage, deed of trust, Lien, pledge or other security interest (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including and cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Liquidating Administrators to evidence such release, including the execution, delivery and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

## Releases by the Estate

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party, the Debtor, the Liquidating Estate and each Related Party of the Debtor and the Liquidating Estate shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, or any other Person or Governmental Unit asserting currently or in the future by, under, through, or on behalf of the Debtor or its Estate, and each of their respective successors or assigns, including the Settlement Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between one or both of the Debtor, on the one hand, and any Released Party, the Liquidating Estate, or any Related Party of the Debtor and the Liquidating Estate, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.3 of the Plan shall not be construed to release any post-Effective Date obligations under the RTX Waiver, the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, which specifically provides that such Estate Claims Settlement can be terminated, and the releases provided in the Plan or in the Estate Claims Settlement are void, if Carrier fails to make the installments of the Guaranteed Cash Payment when due and such failure is not timely cured within 30 days, at which time the Primary AFFF Settlement Trust is entitled to commence, prosecute, or continue all Estate Causes of Action against the Released Parties in any court of competent jurisdiction, and take such other actions as the Primary AFFF Settlement Trustee may determine in the exercise of their fiduciary duties.

## Releases by the Released Parties

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Released Parties and their successors or assigns of and from any and all Claims and Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, the Debtor's current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between any of the Debtor, the Liquidating Estate, the Settlement Trusts or the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case, on the one hand, and any Released Party, on the other hand, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any post-Effective Date obligations under the Plan Documents, the Confirmation Order, the 2020 Separation Agreement as supplemented by the RTX Waiver, or the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, or the right of any Person to enforce the same in accordance with

the terms thereof. Except with respect to the Claims and Causes of Action against the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case that are released and discharged under Article 10.4 of the Plan, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any obligations, rights, Causes of Action or Claims that Carrier Global Corporation or members of the Carrier Group (other than the Debtor), Otis Worldwide Corporation or members of the Otis Group, or RTX or members of the UTC Group may have against any Person under the 2020 Separation Agreement as supplemented by the RTX Waiver (including indemnification rights of RTX and other members of the "UTC Group" under the 2020 Separation Agreement).  For the avoidance of doubt, in the event that the Estate Claims Settlement Effective Date does not occur or the Estate Claims Settlement is terminated as contemplated by the last paragraph of Article 10.3 in the Plan, all releases being provided by the Released Parties under the Plan shall be void.

## Scope of Releases

Each Person providing releases under the Plan, including the Debtor, the Estate and the Settling Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts.  Each Person providing releases under the Plan shall be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

## Exculpation

Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtor and its directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation.

As of the Effective Date, to the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in Article 10 of the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person for any act or omission in connection with, related to or arising out of this Chapter 11 Case, including (a) the operation of the Debtor's businesses during the pendency of this Chapter 11 Case; (b) the

administration and adjudication of Claims and Interests during this Chapter 11 Case; (c) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Plan, the Disclosure Statement, the Plan Supplement, or any related contract, instrument, release or other agreement or document created or entered into in connection with the Chapter 11 Case (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan and the distribution of property under the Plan); (d) any other transaction, agreement, event, or other occurrence related to the Chapter 11 Case taking place on or before the Effective Date, other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.

## Injunction

Except as otherwise expressly provided in the Plan or the Confirmation Order, the satisfaction and release pursuant to Article 10 of the Plan shall also act as a permanent injunction against any Person who has held, holds, or may in the future hold Claims against or Interests in the Debtor or any of its assets or properties based on any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are treated, released, settled, channeled, or exculpated pursuant to the terms of the Plan from taking any of the following actions on account of, or on the basis of, such Claims or Interests:  (a) commencing or continuing any action to collect, enforce, offset, recoup, or recover with respect to any Claims or Interests treated, released, settled, channeled, or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Claim or Interest against the Debtor, the Liquidating Estate, the Settlement Trusts, or its or their respective property; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of or in connection with or with respect to any such Claims or Interests, notwithstanding an indication of a Claim or Interest or otherwise that a Holder of such Claim or Interest asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise, against the Debtor, the Liquidating Estate, or the Settlement Trusts; or (e) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

## Channeling Injunction

Notwithstanding anything to the contrary in the Plan, to preserve and promote the settlements contemplated by and provided for in the Plan, including the Insurance Settlement Agreements, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under sections 105(a) and 1123(b) of the Bankruptcy Code, the sole recourse of any Holder of a Channeled AFFF Claim against the Debtor or a Released Party on account of such Channeled AFFF Claim shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to

and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, and such Holder shall have no right whatsoever at any time to assert any such Channeled AFFF Claim or any Estate Cause of Action that is released under the Estate Claims Settlement against the Debtor or any Released Party or any property or interest in property of the Debtor or any Released Party. For the avoidance of doubt, the sole recourse for any Channeled AFFF Claim covered by any Insurance Policy issued by a Settling Insurance Company shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents. Accordingly, on and after the Effective Date, all Holders of AFFF Claims that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled AFFF Claim or any Estate Cause of Action against the Debtor or any Released Party shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from the Debtor or any Released Party with respect to any such Channeled AFFF Claim or Estate Cause of Action, other than from the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, including:

a)    commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

b)    enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

c)    creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

d)    asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party; or

e)    taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents, or, with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, by the Sovereign State AFFF Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Channeled AFFF Claim.

The Debtor, the Liquidating Estate and/or any Released Party, as applicable, may enforce the Channeling Injunction and/or the Releases contained in the Plan before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at their own cost and expense, and no such cost or expense incurred by a party other than the Primary AFFF Settlement Trust shall be reimbursed or indemnified by the Primary AFFF Settlement Trust under any circumstances.

## Insurance Company Injunction

Subject to the provisos set forth in this Section, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim or cause of action (including any AFFF Claim or any Claim for or respecting any Primary AFFF Settlement Trust expense) against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Insurance Policy, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, statute or any other theory of law, equity or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim or cause of action, including:

a)       commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, demand, or cause of action against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such Claim, demand, or cause of action against any Insurance Company);

b)       enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

c)       creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such Claim or cause of action; and

d)       except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

*provided, however,* that (i) nothing in this Section shall impair or affect the rights of any member of the UTC Group, including RTX, or any member of the Otis Group (each as defined in the 2020 Separation Agreement), or any additional insured designated by RTX

or any member of the UTC Group, based upon, attributable to, arising out of, or in any way connected with an Insurance Policy, including to assert Claims or Causes of Action against any Insurance Company for covered losses and to receive proceeds in respect thereof; (ii) this injunction shall not impair in any way any actions brought by the Primary AFFF Settlement Trust against any Other Insurance Company; (iii) the Primary AFFF Settlement Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction with respect to any Other Insurance Company, in accordance with the Settlement Trust Documents, upon express written notice to such Other Insurance Company; and (iv) this injunction is not issued for the benefit of any Other Insurance Company, and no Other Insurance Company is a third-party beneficiary of this injunction.

Notwithstanding anything to the contrary in the Plan, this injunction shall not enjoin:

a)      the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of Holders of AFFF Claims to assert such Claims, as applicable, in accordance with the TDPs;

b)      the rights of the Primary AFFF Settlement Trust to prosecute any action based on or arising from Insurance Policies, except to the extent otherwise released;

c)      the rights of the Primary AFFF Settlement Trust to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company based on or arising from the Insurance Policies;

d)      any actions of the Contributing Parties in fulfilling their obligations under the Estate Claims Settlement in consultation and coordination with the Primary AFFF Settlement Trust;

e)      the rights of any Insurance Company to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company; or

f)      the Claims for reinsurance under reinsurance contracts or Claims under retrocessional contracts among the Settling Insurance Companies and any Other Insurance Company.

## Prohibition on Actions Against Buyer

Subject to the Sale Order and the Acquisition Agreement, Buyer, in its capacity as such, shall not have any liability for any AFFF Claims against the Debtor arising prior to the closing of the Sale.  Except as expressly otherwise set forth in the Sale Order, all persons and entities hereby are forever barred, estopped and permanently enjoined from asserting against Buyer, its Affiliates, its successors or assigns, its property or the Transferred Assets, such persons' or entities' AFFF Claims that have been or could have been asserted against the Debtor arising prior to the closing of the Sale.  For the avoidance of doubt, the foregoing shall

not release Buyer from, or enjoin any actions against Buyer for, any Assumed Liability or any other liability incurred by Buyer on account of its operations following the closing of the Sale.

## Limitations on Exculpations and Releases

Notwithstanding anything to the contrary in the Plan, none of the releases or exculpations set forth in the Plan shall operate to waive or release any obligation or Causes of Action of any Person:  (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations or (b) expressly set forth in and preserved by the Plan, the Plan Supplement, Plan Documents or related documents.

## Release Dispute

In the event of a Release Dispute, a Released Party may, at its sole cost and expense, file a motion with the Bankruptcy Court seeking a determination as to whether an AFFF Claimant's Cause of Action was settled and released pursuant to the Plan, and upon such motion, the Bankruptcy Court shall make such determination and, if appropriate, enjoin the prosecution of such Cause of Action as having been settled and released under the Plan.

## Relevant Definitions

"*2020 Separation Agreement*" means that certain Separation and Distribution Agreement, dated as of April 2, 2020, by and among United Technologies Corporation, Carrier Global Corporation, and Otis Worldwide Corporation.

"*Administrative Claim*" means an Allowed Claim for costs and expenses of administration of the Chapter 11 Case pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate; (b) Allowed Professional Compensation Claims; (c) Allowed Fee Examiner Compensation Claims; and (d) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

"*AFFF*" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

"*AFFF Claim*" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.

"*Assumed Liability*" shall have the meaning set forth in the Acquisition Agreement.

"*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other Claims, Causes of Action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties-in-interest under the Bankruptcy Code or applicable non-

bankruptcy law, including claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) was commenced prior to the Effective Date.

"*Buyer*" means Pacific Erin Opco, LLC, as the purchaser of substantially all of the Debtor's assets pursuant to the Acquisition Agreement and the Sale Order.

"*Carrier*" means Carrier Global Corporation, a Delaware corporation, and its non-Debtor affiliates and Related Parties.

"*Causes of Action*" means any current or future actions, Claims, cross-claims, third-party claims, causes of action, controversies, disputes, demands, rights, liens, indemnities, contributions, guaranties, suits, obligations, liabilities, losses, debts, fees or expenses, damages, interest, judgments, costs, accounts, defenses, remedies, offsets, powers, privileges, proceedings, licenses, and franchises of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, choate or inchoate, capable of being asserted directly or derivatively (including any alter ego theories), including any Claims for recovery of attorneys' fees, turnover, fraud, gross negligence, or willful misconduct, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws, consumer protection laws, environmental laws, or nuisance or trespass theories).  Causes of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to or otherwise contest Claims or Interests, (c) any claim pursuant to section 362 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Actions.

"*Channeled AFFF Claims*" means all AFFF Claims against the Debtor or the Estate channeled to the Primary AFFF Settlement Trust under the Plan and Settlement Trust Documents.  For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

"*Committee*" means the official committee of unsecured creditors of the Debtor appointed by the U.S. Trustee in the Chapter 11 Case under section 1102(a) of the Bankruptcy Code pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 83] and any amendments thereto.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Settling Parties.

"*Consummation*" means the occurrence of the Effective Date.

"*Debtor*" means Kidde-Fenwal, Inc., the debtor and debtor in possession in the Chapter 11 Case, now known as KFI Wind-Down Corp.  In 2007, KFFI (formerly known as National Foam, Inc.) merged into Kidde-Fenwal, Inc., with Kidde-Fenwal, Inc. as the surviving entity.  Pursuant to this merger, KFFI's liabilities were assumed by, and KFFI's causes of action were transferred to, Kidde-Fenwal, Inc. directly or indirectly by merger or other agreement.  The term "Debtor" includes Kidde-Fenwal, Inc. as successor by merger or other agreement by which Kidde-Fenwal, Inc. obtained or assumed the liabilities and Causes of Action of any Person.

"*Effective Date*" means the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date set forth in the Plan shall have been satisfied or waived and on which a notice indicating the Effective Date has been filed on the docket of the Chapter 11 Case.

"*Estate Causes of Action*" means Causes of Action owned or held by either the Debtor or its Estate, or capable of being asserted (currently, or in the future) by any Person or Governmental Unit on behalf of, under or through, either the Debtor or its Estate, and each of their respective successors or assigns, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions, that may be commenced by a representative of the Estate under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise.  Without limiting the foregoing, Estate Causes of Action shall include:  (a) Causes of Action that on or after the Petition Date may be exclusively asserted by or on behalf of the Debtor or its Estate under applicable law, or that prior to the Petition Date could have been asserted by the Debtor on its own behalf under applicable law, including Causes of Action based on (i) the doctrine of successor liability that seek to impose the Debtor's (including KFFI's or National Foam, Inc.'s) liabilities on an alleged successor, whether based on a contractual assumption of liability, consolidation or de facto merger, acquisition of the Debtor's product line, fraud, domination, direction of the Debtor's affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, or (ii) the doctrines of alter ego or veil piercing involving alter egos of the Debtor or the piercing of the Debtor's (including KFFI's or National Foam, Inc.'s) corporate veil, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form; (b) Causes of Action or theories for recovery or remedies that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is generally common to creditors of the Debtor and can be asserted by the Debtor under applicable law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor.  Subsections (a), (b) and (c) immediately above expressly encompass any Causes of Action based on:  (i) the alleged assumption of the Debtor's (including KFFI's or

National Foam, Inc.'s) liabilities (but not a non-Debtor's liabilities) by Kidde plc (n/k/a Kidde Limited) pursuant to the 2000 Demerger Agreement, or any alleged subsequent assumption of such liabilities of the Debtor from Kidde plc by any other Released Party; or (ii) the alleged assumption of the Debtor's liabilities (but not a non-Debtor's liabilities), including any liabilities resulting from acts or omissions of National Foam, Inc. or KFFI, by a Released Party pursuant to the 2020 Separation Agreement.  For the avoidance of doubt, Estate Causes of Action shall not include any Independent AFFF Causes of Action or any Sovereign State Retained Causes of Action or Insurance Actions against any Released Party based on acts or omissions occurring after entry into the Plan Support Agreement with respect to rights under the 2020 Separation Agreement or the RTX Waiver to access and make Claims under any Insurance Policy or otherwise obtain the benefit of the Insurance Assignment.

"*Estate Claims Settlement*" means the settlement, including the release of all Estate Causes of Action against the Released Parties, pursuant to the Estate Claims Settlement Agreement.

"*Independent AFFF Cause of Action*" means any Cause of Action that could be asserted by an AFFF Claimant against a Non-Debtor Party based on the Non-Debtor Party's own conduct and breach of duty (*i.e.*, duty owed to the AFFF Claimant and not owed to the Debtor), including (a) Causes of Action arising from such acts or omissions of such Non-Debtor Party, and (b) Causes of Action based on allegations that a Non-Debtor Party is responsible for such conduct under theories of liability or recovery or remedies that could have been asserted by an AFFF Claimant on its own behalf under applicable state or federal law in respect of such Causes of Action prior to the Petition Date based on (i) the doctrine of successor liability involving a Non-Debtor Party that is alleged to be a successor to another Non-Debtor Party with respect to liabilities not directly or indirectly assumed from the Debtor, whether based on a contractual assumption of liability (including under the 2020 Separation Agreement), consolidation or de facto merger, acquisition of product line, fraud, domination, direction of affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, (ii) the doctrines of alter ego or veil piercing involving alter egos of a Non-Debtor Party, or piercing the corporate veil between Non-Debtor Parties, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form, or (iii) alleged derivative or vicarious liability of a Non-Debtor Party for liabilities of another Non-Debtor Party not directly or indirectly assumed from the Debtor; *provided* that, if any Cause of Action falls within the definition of Estate Cause of Action or Sovereign State Retained Cause of Action, it is not an Independent AFFF Cause of Action.
"*Insurance Assignment*" means the transfer by the Debtor and Carrier to the Primary AFFF Settlement Trust of certain rights in connection with the Insurance Policies as set forth in Article 5 of the Plan.

"*Insurance Policy/ies*" means: (i) any insurance policies listed on <u>Schedule 1</u> to the Plan, (ii) to the extent not listed on Schedule 1, any "general liability" insurance (which, for the avoidance of doubt, shall exclude director & officer, automobile, or workers' compensation insurance) contract, binder, certificate, insurance policy, or reinsurance policy, whether currently known or unknown, discovered after the Effective Date, in effect at any time on or before the Petition Date naming the Debtor, the Contributing Parties, or any of their predecessors, subsidiaries, or past or present affiliates as an insured (whether as the primary or additional insured) or that provides or may provide coverage to Carrier or the Debtor for AFFF Claims, (iii) "Aviation" policies to

which Carrier or the Debtor has rights as listed in Schedule 2 to the Plan solely to the extent of Insurance Policy Rights applicable to or arising from AFFF Claims and (iv) any other subsequently discovered insurance policies of the same types as listed in Schedules 1 and 2 to the Plan to the extent that Carrier or the Debtor have rights under such policies (whether or not such policies are specifically titled as "General Liability" or "Aviation" policies).  For the avoidance of doubt, "Insurance Policies" shall not include any D&O Policies, automobile policies or worker's compensation insurance.

"*Insurance Policy Rights*" means any and all rights subject to the Insurance Assignment.

"*KFFI*" means Kidde Fire Fighting, Inc. (formerly known as National Foam, Inc.).

"*Liquidating Estate Claims*" means Administrative Claims, Priority Tax Claims, Other Priority Claims and Secured Claims.

"*New National Foam*" means, collectively, National Foam, Inc. f/k/a Eurostar US Tradeco, Inc., Angus Fire Ltd. f/k/a Eurostar Tradeco Limited, Angus International Safety Group Limited f/k/a/ Eurostar Holdco Limited, and each of their Related Parties.

"*New National Foam Release*" means a settlement between the Debtor and New National Foam pursuant to which (a) Estate Causes of Action against New National Foam are resolved for value reasonably acceptable to the Settling Parties and (b) New National Foam agrees to absolutely, unconditionally, and irrevocably release and discharge the Debtor and each Released Party from any and all Claims and Causes of Action, whether known or unknown, based on or relating to, or in any manner arising from that certain Share and Business Sale Agreement, dated as of June 28, 2013, or any other occurrence taking place on or before the Effective Date, including Proof of Claim No. 225, and otherwise in form and substance reasonably acceptable to the Settling Parties.

"*Non-Debtor Party*" means any Person other than the Debtor.  For the avoidance of doubt, the term "*Non-Debtor Party*" does not include KFFI or National Foam, Inc.

"*Other Insurance Company*" means an Insurance Company that is not a Settling Insurance Company.

"*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"*Person*" means a "person" or "entity" as defined in the Bankruptcy Code.

"*Petition Date*" means May 14, 2023, the date on which the Debtor commenced the Chapter 11 Case.

"*PFAS*" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.

"*Primary AFFF Settlement Trust*" means the settlement trust organized under the laws of the state of Delaware and established under the Plan and the Settlement Trust Documents, which

shall (i) have the powers, duties and obligations set forth in the Plan and the Settlement Trust Documents, (ii) assume all liability of the Debtor and the Estate for, and administer, all Channeled AFFF Claims and (iii) be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code.

"*Primary AFFF Settlement Trust Agreement*" means the Settlement Trust Agreement governing the Primary AFFF Settlement Trust, dated as of the Effective Date, as the same may be amended or modified from time to time in accordance with the terms thereof.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Released Party*" means (i) Carrier, (ii) RTX, and (iii) each of their Related Parties in their capacities as such.  Released Parties shall not include DuPont, 3M, or their current or former affiliates and Related Parties.  If a Person is a current or former affiliate or Related Party of DuPont or 3M, and such Person is also a current or former affiliate or Related Party of Carrier or RTX, then such Person shall not be a Released Party.  For the avoidance of doubt, New National Foam shall not be a Released Party unless the New National Foam Release  is provided by the Effective Date.

"*Related Party*" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, and current and former affiliates and subsidiaries, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, all only in their capacity as a representative of such Person, and (c) respective heirs, executors, estates, and nominees, in each case solely in its capacity as such.

"*RTX Waiver*" shall have the meaning set forth in Article 5.5.11(b) of the Plan.

"*Sale Order*" means the *Order (I) Approving the Sale of All or Substantially All of the Debtor's Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving Debtor's Entry, and Performance Under the Contribution Agreement, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Granting Related Relief*, entered by the Bankruptcy Court on April 2, 2024 [D.I. 1058].

"*Settlement Trust Agreements*" means, collectively, (i) the Primary AFFF Settlement Trust Agreement, (ii) the Sovereign State AFFF Settlement Trust Agreement and (iii) the GUC Liquidating Trust Agreement.  To the extent that any provision of a Settlement Trust Agreement impacts the rights of Carrier, such provision shall not be included in such Settlement Trust Agreement unless reasonably acceptable to Carrier.

"*Settlement Trust Documents*" means, collectively, (a) the Settlement Trust Agreements, (b) the TDPs, (c) the Confirmation Order, and (d) any other agreements, instruments, and documents governing the establishment, administration, and operation of the Settlement Trusts.

"*Settlement Trusts*" means the Primary AFFF Settlement Trust, Sovereign State AFFF Settlement Trust and GUC Liquidating Trust.

"*Settling Insurance Company*" means any Insurance Company that contributes funds, proceeds, or other consideration to or for the benefit of the Primary AFFF Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order. No Insurance Company shall be considered a Settling Insurance Company without the Committee's prior written consent.

"*Sovereign State*" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.

"*Sovereign State AFFF Settlement Trust*" means the trust established under the Plan and the Settlement Trust Documents to administer all Sovereign State Claims against the Debtor. The Sovereign State AFFF Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code and shall have the powers, duties and obligations set forth in the Settlement Trust Documents.

"*Sovereign State Retained Cause of Action*" means any Claim or Cause of Action asserted, or which may be asserted, by a Sovereign State against a Contributing Party that (1) is not an Estate Cause of Action and (2) arises from a statute, regulation, or common law that creates a theory of liability, by which a Sovereign State could recover damages or penalties, or obtain equitable or injunctive relief, against a Contributing Party. For the avoidance of doubt, a Sovereign State may assert a Sovereign State Retained Cause of Action irrespective of whether such Sovereign State Retained Cause of Action could also be considered an Independent AFFF Cause of Action.

"*TDPs*" or "Trust Distribution Procedures" means the Trust Distribution Procedures for the Settlement Trusts, as the same may be amended or modified from time to time in accordance with the terms thereof, that will govern the claims submission, adjudication, and distribution processes for the Settlement Trusts in a manner that is fair and equitable to Holders of Allowed Channeled AFFF Claims. To the extent that any provision of the TDPs impacts the rights of Carrier, such provision shall not be included unless reasonably acceptable to Carrier.

"*Transferred Assets*" shall have the meaning set forth in the Acquisition Agreement.

**<u>EXHIBIT 2H</u>**

**Ballot for Class 3H: Fire Training Facility Claims**

**\*\*KFI WIND-DOWN CORP. PLAN BALLOT\*\***

> # THIS BALLOT IS FOR HOLDERS OF CLAIMS AGAINST KFI WIND-DOWN CORP. (F/K/A KIDDE-FENWAL, INC.) ARISING FROM ITS AFFF OR AFFF-CONTAINING PRODUCTS.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |

## BALLOT FOR ACCEPTING OR REJECTING THE
## DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

## CLASS 3H:  FIRE TRAINING FACILITY CLAIMS

On May 14, 2023 (the "Petition Date"), KFI Wind-Down Corp. f/k/a Kidde-Fenwal, Inc. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") (the "Chapter 11 Case").

On [•], 2025, the Debtor filed the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Plan"),[2] which is described in greater detail in the *Disclosure Statement for the Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the*

---

[1]    The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters are located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

*Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Disclosure Statement").

---

**THE PLAN CONTAINS RELEASE, INJUNCTION AND EXCULPATORY PROVISIONS. THESE PROVISIONS ARE SET FORTH IN <u>APPENDIX A</u> TO THIS BALLOT.  YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.**

---

On [•], 2025, the Bankruptcy Court entered an order [D.I. [•]] (the "Disclosure Statement Order") approving the Disclosure Statement as containing "adequate information" within the meaning ascribed to such term in section 1125 of the Bankruptcy Code and procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures").

The Plan, Disclosure Statement, Disclosure Statement Order, Solicitation Procedures and documents included in the Plan Supplement as of the Solicitation Mailing Deadline have been included in the package of materials containing the attached ballot (the "Ballot") and can be accessed free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code.  For a description of the Causes of Action to be enjoined and the identities of the Persons that would be subject to this injunction, see Article IV.E.8 of the Disclosure Statement and Article 10.8 of the Plan.

A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of the Claims that submit votes in that Voting Class vote to accept the Plan.  Even if a Voting Class votes to reject the Plan, the Bankruptcy Court nonetheless may confirm the Plan if it finds the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

If the Plan is confirmed by the Bankruptcy Court, all Holders of Claims against and Interests in the Debtor (including those Holders who reject the Plan or abstain from voting on the Plan, and those Holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby.

The Debtor will file the Plan Supplement (as may be amended, modified or supplemented from time to time) with the Bankruptcy Court no later than **November 17, 2025.**

The documents included in the Plan Supplement as of the Solicitation Mailing Deadline are included in your Solicitation Package.  Any further Plan Supplement, and any amendments or supplements to the foregoing, will only be served on: (a) the U.S. Trustee, (b) the Notice Parties and (c)

4936-5375-5657 v.6

the 2002 List.  Once filed, a copy of the Plan Supplement will also be available for review and download on the Debtor's website maintained by the Solicitation Agent free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

**Unless such time is extended by the Debtor, in consultation with the Settling Parties, or the Bankruptcy Court, the Ballot must be properly completed, signed and returned to the Solicitation Agent *so as to be actually received* no later than 5:00 p.m. (prevailing Eastern Time) on December 15, 2025 (the "Voting Deadline") in order for the vote on the Ballot to count.  Unless otherwise provided in the Solicitation Procedures, all Holders of Claims in the Voting Classes are required to (a) submit their Ballots online at the Solicitation Agent's online voting portal at https://cases.stretto.com/kfi or (b) return their Ballots by mail, overnight courier or hand delivery to the Solicitation Agent at KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, in each case so that they are actually received by the Solicitation Agent on or before the Voting Deadline (December 15, 2025 at 5:00 p.m. (prevailing Eastern Time)).**

This Ballot is to be used by Holders of Fire Training Facility Claims against the Debtor in Class 3H of the Plan only.  Please refer to the Plan for the specific definition of "Fire Training Facility Claim," which is copied below, as well as other relevant definitions.

*"Holder" means a Person holding a Claim against or an Interest in the Debtor.*

*"Fire Training Facility Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Fire Training Facility for damages relating to such Fire Training Facility.*

*"AFFF" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.*

*"AFFF Claim" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.*

*"Sovereign State" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.*

*"Sovereign Tribe" means any American Indian or Alaskan Native Tribe, band, nation, pueblo, village or community, that the U.S. Secretary of the Interior acknowledges as an Indian Tribe, as provided in the Federally Recognized Tribe List Act of 1994, 25*

4936-5375-5657 v.6

*U.S.C. § 5130, and as periodically listed by the U.S. Secretary of the Interior in the Federal Register pursuant to 25 U.S.C. § 5131; and any "Tribal Organization" as provided in the Indian Self-Determination and Education and Assistance Act of 1975, as amended, 25 U.S.C. § 5304(1).*

*"Fire Training Facility" means real property (other than an Airport) that is or has been used for live firefighter training with AFFF.*

*"PFAS" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.*

*"Claim" has the meaning ascribed to such term under section 101(5) of the Bankruptcy Code.*

*"Airport" means: (a) all airports categorized by the FAA in the National Plan of Integrated Airport Systems, including all airports that have been issued operating certificates by the FAA pursuant to 14 CFR Part 139; and (b) any firefighter training facility operated on airport property, whether or not operated by the airport itself.*

*[Remainder of page left intentionally blank]*

-4-

## <u>DOCUMENTS INCLUDED WITH THE BALLOT</u>

You should have received the following documents with the Ballot (collectively, the "**Solicitation Package**").  **Please note that some of the following documents may be included on a USB flash drive included as part of your Solicitation Package**.

- the Cover Letter;

- the Committee Letter;

- the Solicitation Procedures;

- a USB flash drive containing a copy of the Disclosure Statement (and exhibits thereto, including the Plan) and the documents contained in the Plan Supplement that have been filed prior to the Solicitation Mailing Deadline;

- the Disclosure Statement Order (without exhibits);

- a preaddressed, return envelope for completed Ballots;

- the Confirmation Hearing Notice; and

- any other materials ordered by the Court to be included as part of the Solicitation Package.

If you have questions about the Ballot, or if you did not receive a copy of the Plan or any related materials, please contact the Solicitation Agent at KFIInquiries@stretto.com or (866) 887-0488 (toll-free) or +1 (949) 889-0128 (international).  Information may also be obtained at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtor or any other party for payment purposes.

4936-5375-5657 v.6

## <u>INSTRUCTIONS FOR COMPLETING YOUR BALLOT</u>

The following instructions explain each of the items contained on the Ballot.   If you have any questions, please contact the Solicitation Agent at the phone number or e-mail provided above or visit https://cases.stretto.com/kfi.

**If Submitting Your Vote through the Ballot Submission Portal:**

The Solicitation Agent will accept Ballots if properly completed through the Ballot Submission Portal.   To submit your customized electronic Ballot via the Ballot Submission Portal, visit https://cases.stretto.com/kfi, click on the Ballot Submission Portal link and follow the instructions to submit your Ballot.

**IMPORTANT NOTE:** You will need the following information to retrieve and submit your customized electronic Ballot:

**Unique E-Ballot Password:** _____

Except as provided in the Solicitation Procedures, submission of your Ballot via the Solicitation Agent's online portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Except as provided in the Solicitation Procedures, Ballots submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.

Each "Unique E-Ballot Password" is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each Unique E-Ballot Password you receive, as applicable.  Creditors who cast a Ballot using the online portal should NOT also submit a paper Ballot.

The encrypted Ballot data and audit trail created by such electronic submission will become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.  Ballots submitted via the Ballot Submission Portal will be deemed to contain an original signature.

If your Ballot is not actually received on or before the Voting Deadline by the Solicitation Agent, and such Voting Deadline is not extended by the Debtor as noted above, your vote will not be counted.

**If Submitting Your Vote through Regular Mail, Overnight Courier, or via Hand Delivery:**

Submit your completed and signed Ballot by regular mail using the return envelope included in the Solicitation Package (or otherwise), or by hand delivery or overnight courier to:

> KFI Ballot Processing
> c/o Stretto
> 410 Exchange, Suite 100
> Irvine, CA 92602
>
> To arrange for hand delivery, please send an
> email to KFIInquiries@stretto.com at
> least 24 hours before arrival at the address above and
> provide the anticipated date and time of delivery.

**To fill out the Ballot, you must complete the following:**

**Item 1.  Claimant's Name and Address.**

Please fill in the name and address information requested.  Claimants should include street address, city, state, ZIP Code, telephone number and email address.

**Item 2.  Vote on the Plan.**

Vote on the Plan by checking the box that corresponds to your choice.  You may vote to ACCEPT the Plan (meaning that you vote in favor of the Plan) or to REJECT the Plan (meaning that you vote against the Plan).   You must check either the ACCEPT or REJECT box below for the Plan to have your vote counted.   If you check both the ACCEPT and REJECT boxes for the Plan, your vote will not be counted.

**Item 3.  Certifications, Acknowledgment, Signature and Date.**

Either the claimant, the claimant's personal representative, or the claimant's attorney MUST sign the Ballot.  If the Ballot is not signed, the vote shown on the Ballot will NOT be counted.

The claimant, the claimant's personal representative, or the claimant's attorney MUST certify certain information on the Ballot.  If you are the claimant's attorney, you must provide evidence of your authority to vote on behalf of the claimant at the Debtor's request.  Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

By signing the Ballot, you make one of the following certifications, as applicable:

- I am the claimant and make the following certifications under penalty of perjury.

4936-5375-5657 v.6

i. I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

ii. To the best of my knowledge, information and belief, I am the Holder of a Fire Training Facility Claim against the Debtor in Class 3H of the Plan; and

iii. I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan in my capacity as the claimant.

- I am the personal representative of the claimant and make the following certifications under penalty of perjury.

i. The claimant's personal representative has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

ii. To the best of my knowledge, information and belief, the claimant is the Holder of a Fire Training Facility Claim against the Debtor in Class 3H of the Plan; and

iii. I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

- I am an attorney for the claimant and make the following certifications under penalty of perjury.

i. The claimant's attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

ii. To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the claimant is the Holder of a Fire Training Facility Claim against the Debtor in Class 3H of the Plan; and

-8-

        iii.     I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

The Ballot does not constitute and will not be deemed a Proof of Claim or Interest, an assertion of a Claim, the allowance of a Claim, or the acceptance or liquidation of any Fire Training Facility Claim for purposes of any distribution.  None of the information set forth in the Ballot shall constitute an admission by the Debtor as to the extent, validity, or priority of the Claim voted herein, nor shall anything contained herein or information submitted in or with the Ballot be binding upon the Debtor or the Holder in any subsequent Claims resolution process or other proceeding.  The Ballot may not be used for any purposes other than to transmit votes on the Plan.

If you cast more than one Ballot voting the same Fire Training Facility Claim before the Voting Deadline, the last valid Ballot received by the Solicitation Agent on or before the Voting Deadline will be deemed to reflect your intent and will supersede any prior Ballots.

**Holders of Claims must vote the full amount of their Claims to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan**.   A Holder of a Fire Training Facility Claim may not split his or her vote on the Plan.   Accordingly, the votes of any Holder of a Fire Training Facility Claim who purports partially to accept and partially to reject the Plan will not be counted.

---

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT,
BELIEVE YOU MAY HAVE RECEIVED AN INCORRECT BALLOT,
OR IF YOU DID NOT RECEIVE A COPY OF ANY OF
THE DOCUMENTS DESCRIBED IN THESE INSTRUCTIONS,
PLEASE CONTACT THE SOLICITATION AGENT AT:**

**TELEPHONE: (866) 887-0488 (TOLL-FREE)
OR +1 (949) 889-0128 (INTERNATIONAL)
E-MAIL: KFIINQUIRIES@STRETTO.COM
OR VISIT HTTPS://CASES.STRETTO.COM/KFI**

---

4936-5375-5657 v.6

**\*\*PLAN BALLOT\*\***

**BALLOT FOR ACCEPTING OR REJECTING THE
DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

---

**CLASS 3H:  FIRE TRAINING FACILITY CLAIMS**

---

| |
|---|
| **Please read the instructions that accompany this Ballot before completing.    Print clearly.** |
| **ITEM 1 – Claimant's Name and Address:** |
| Name |
| Street Address |
| City, State, and ZIP Code (U.S.) |
| Telephone Number |
| Email Address |
| **ITEM 2 – Amount of Your Claim.** <br><br> For the purposes of voting to accept or reject the Plan, the undersigned certifies that the claimant holds a Fire Training Facility Claim in the amount set forth below.  **Please note that each AFFF Claim has been temporarily allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance or any other purpose.** <br><br> **Claim Amount:**    <u>$1.00</u> |

**ITEM 3 – Vote on the Plan:**

The undersigned, as Holder of (or representative of a Holder of) a Fire Training Facility Claim against the Debtor in Class 3H of the Plan, votes (fill in ONE box only):

☐  to ACCEPT (vote in favor of) the Plan.

☐  to REJECT (vote against) the Plan.

**ITEM 4 – Certifications, Acknowledgment, Signature and Date:**

☐   I am the claimant and make the following certifications under penalty of perjury.

     i.      I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

     ii.      To the best of my knowledge, information and belief, I am the Holder of a Fire Training Facility Claim against the Debtor in Class 3H of the Plan; and

     iii.      I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan in my capacity as the claimant.

☐   I am the personal representative of the claimant and make the following certifications under penalty of perjury.

     i.      The claimant's personal representative has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

     ii.      To the best of my knowledge, information and belief, the claimant is the Holder of a Fire Training Facility Claim against the Debtor in Class 3H of the Plan; and

     iii.      I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT

(vote against) the Plan on behalf of the claimant.

☐   I am the attorney for the claimant and make the below certifications under penalty of perjury.

  i.  The claimant's attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

  ii.  To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the claimant is the Holder of a Fire Training Facility Claim against the Debtor in Class 3H of the Plan; and

  iii.  I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

**Signature and Date**

| |
|---|
| |
| Signature of Claimant or Authorized Agent |
| |
| Date |
| |

**YOU <u>MUST</u> COMPLETE ITEM 4 IN ORDER FOR YOUR VOTE(S) ON THE PLAN TO BE COUNTED.**

<u>**DO NOT INCLUDE MEDICAL RECORDS WITH THIS BALLOT.**</u>
<u>**MEDICAL RECORDS CANNOT BE RETURNED BY THE SOLICITATION AGENT.**</u>

**IF THIS BALLOT IS NOT ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY 5:00 P.M. (PREVAILING EASTERN TIME) ON DECEMBER 15, 2025, YOUR VOTE MAY NOT BE COUNTED.**

-3-

4936-5375-5657 v.6

## **Appendix A**

### **Release, Injunction and Exculpation Provisions in the Plan[1]**

---

[1]    The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.

### Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released and cancelled, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Liquidating Estate and their successors and assigns. Any Holder of such mortgage, deed of trust, Lien, pledge or other security interest (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including and cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Liquidating Administrators to evidence such release, including the execution, delivery and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

### Releases by the Estate

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party, the Debtor, the Liquidating Estate and each Related Party of the Debtor and the Liquidating Estate shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, or any other Person or Governmental Unit asserting currently or in the future by, under, through, or on behalf of the Debtor or its Estate, and each of their respective successors or assigns, including the Settlement Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between one or both of the Debtor, on the one hand, and any Released Party, the Liquidating Estate, or any Related Party of the Debtor and the Liquidating Estate, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.3 of the Plan shall not be construed to release any post-Effective Date obligations under the RTX Waiver, the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, which specifically provides that such Estate Claims Settlement can be terminated, and the releases provided in the Plan or in the Estate Claims Settlement are void, if Carrier fails to make the installments of the Guaranteed Cash Payment when due and such failure is not timely cured within 30 days, at which time the Primary AFFF Settlement Trust is entitled to commence, prosecute, or continue all Estate Causes of Action against the Released Parties in any court of competent jurisdiction, and take such other actions as the Primary AFFF Settlement Trustee may determine in the exercise of their fiduciary duties.

### Releases by the Released Parties

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Released Parties and their successors or assigns of and from any and all Claims and Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, the Debtor's current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between any of the Debtor, the Liquidating Estate, the Settlement Trusts or the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case, on the one hand, and any Released Party, on the other hand, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any post-Effective Date obligations under the Plan Documents, the Confirmation Order, the 2020 Separation Agreement as supplemented by the RTX Waiver, or the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, or the right of any Person to enforce the same in accordance with

the terms thereof. Except with respect to the Claims and Causes of Action against the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case that are released and discharged under Article 10.4 of the Plan, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any obligations, rights, Causes of Action or Claims that Carrier Global Corporation or members of the Carrier Group (other than the Debtor), Otis Worldwide Corporation or members of the Otis Group, or RTX or members of the UTC Group may have against any Person under the 2020 Separation Agreement as supplemented by the RTX Waiver (including indemnification rights of RTX and other members of the "UTC Group" under the 2020 Separation Agreement).  For the avoidance of doubt, in the event that the Estate Claims Settlement Effective Date does not occur or the Estate Claims Settlement is terminated as contemplated by the last paragraph of Article 10.3 in the Plan, all releases being provided by the Released Parties under the Plan shall be void.

### Scope of Releases

Each Person providing releases under the Plan, including the Debtor, the Estate and the Settling Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts. Each Person providing releases under the Plan shall be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

### Exculpation

Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtor and its directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation.

As of the Effective Date, to the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in Article 10 of the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person for any act or omission in connection with, related to or arising out of this Chapter 11 Case, including (a) the operation of the Debtor's businesses during the pendency of this Chapter 11 Case; (b) the

administration and adjudication of Claims and Interests during this Chapter 11 Case; (c) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Plan, the Disclosure Statement, the Plan Supplement, or any related contract, instrument, release or other agreement or document created or entered into in connection with the Chapter 11 Case (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan and the distribution of property under the Plan); (d) any other transaction, agreement, event, or other occurrence related to the Chapter 11 Case taking place on or before the Effective Date, other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.

## Injunction

Except as otherwise expressly provided in the Plan or the Confirmation Order, the satisfaction and release pursuant to Article 10 of the Plan shall also act as a permanent injunction against any Person who has held, holds, or may in the future hold Claims against or Interests in the Debtor or any of its assets or properties based on any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are treated, released, settled, channeled, or exculpated pursuant to the terms of the Plan from taking any of the following actions on account of, or on the basis of, such Claims or Interests:  (a) commencing or continuing any action to collect, enforce, offset, recoup, or recover with respect to any Claims or Interests treated, released, settled, channeled, or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Claim or Interest against the Debtor, the Liquidating Estate, the Settlement Trusts, or its or their respective property; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of or in connection with or with respect to any such Claims or Interests, notwithstanding an indication of a Claim or Interest or otherwise that a Holder of such Claim or Interest asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise, against the Debtor, the Liquidating Estate, or the Settlement Trusts; or (e) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

## Channeling Injunction

Notwithstanding anything to the contrary in the Plan, to preserve and promote the settlements contemplated by and provided for in the Plan, including the Insurance Settlement Agreements, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under sections 105(a) and 1123(b) of the Bankruptcy Code, the sole recourse of any Holder of a Channeled AFFF Claim against the Debtor or a Released Party on account of such Channeled AFFF Claim shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to

and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, and such Holder shall have no right whatsoever at any time to assert any such Channeled AFFF Claim or any Estate Cause of Action that is released under the Estate Claims Settlement against the Debtor or any Released Party or any property or interest in property of the Debtor or any Released Party. For the avoidance of doubt, the sole recourse for any Channeled AFFF Claim covered by any Insurance Policy issued by a Settling Insurance Company shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents. Accordingly, on and after the Effective Date, all Holders of AFFF Claims that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled AFFF Claim or any Estate Cause of Action against the Debtor or any Released Party shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from the Debtor or any Released Party with respect to any such Channeled AFFF Claim or Estate Cause of Action, other than from the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, including:

        a)      commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

        b)      enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

        c)      creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

        d)      asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party; or

        e)      taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents, or, with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, by the Sovereign State AFFF Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Channeled AFFF Claim.

The Debtor, the Liquidating Estate and/or any Released Party, as applicable, may enforce the Channeling Injunction and/or the Releases contained in the Plan before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at their own cost and expense, and no such cost or expense incurred by a party other than the Primary AFFF Settlement Trust shall be reimbursed or indemnified by the Primary AFFF Settlement Trust under any circumstances.

## Insurance Company Injunction

Subject to the provisos set forth in this Section, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim or cause of action (including any AFFF Claim or any Claim for or respecting any Primary AFFF Settlement Trust expense) against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Insurance Policy, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, statute or any other theory of law, equity or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim or cause of action, including:

a)      commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, demand, or cause of action against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such Claim, demand, or cause of action against any Insurance Company);

b)      enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

c)      creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such Claim or cause of action; and

d)      except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

*provided, however,* that (i) nothing in this Section shall impair or affect the rights of any member of the UTC Group, including RTX, or any member of the Otis Group (each as defined in the 2020 Separation Agreement), or any additional insured designated by RTX

or any member of the UTC Group, based upon, attributable to, arising out of, or in any way connected with an Insurance Policy, including to assert Claims or Causes of Action against any Insurance Company for covered losses and to receive proceeds in respect thereof; (ii) this injunction shall not impair in any way any actions brought by the Primary AFFF Settlement Trust against any Other Insurance Company; (iii) the Primary AFFF Settlement Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction with respect to any Other Insurance Company, in accordance with the Settlement Trust Documents, upon express written notice to such Other Insurance Company; and (iv) this injunction is not issued for the benefit of any Other Insurance Company, and no Other Insurance Company is a third-party beneficiary of this injunction.

Notwithstanding anything to the contrary in the Plan, this injunction shall not enjoin:

a)      the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of Holders of AFFF Claims to assert such Claims, as applicable, in accordance with the TDPs;

b)      the rights of the Primary AFFF Settlement Trust to prosecute any action based on or arising from Insurance Policies, except to the extent otherwise released;

c)      the rights of the Primary AFFF Settlement Trust to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company based on or arising from the Insurance Policies;

d)      any actions of the Contributing Parties in fulfilling their obligations under the Estate Claims Settlement in consultation and coordination with the Primary AFFF Settlement Trust;

e)      the rights of any Insurance Company to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company; or

f)      the Claims for reinsurance under reinsurance contracts or Claims under retrocessional contracts among the Settling Insurance Companies and any Other Insurance Company.

## Prohibition on Actions Against Buyer

Subject to the Sale Order and the Acquisition Agreement, Buyer, in its capacity as such, shall not have any liability for any AFFF Claims against the Debtor arising prior to the closing of the Sale.  Except as expressly otherwise set forth in the Sale Order, all persons and entities hereby are forever barred, estopped and permanently enjoined from asserting against Buyer, its Affiliates, its successors or assigns, its property or the Transferred Assets, such persons' or entities' AFFF Claims that have been or could have been asserted against the Debtor arising prior to the closing of the Sale.  For the avoidance of doubt, the foregoing shall

not release Buyer from, or enjoin any actions against Buyer for, any Assumed Liability or any other liability incurred by Buyer on account of its operations following the closing of the Sale.

## Limitations on Exculpations and Releases

Notwithstanding anything to the contrary in the Plan, none of the releases or exculpations set forth in the Plan shall operate to waive or release any obligation or Causes of Action of any Person:  (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations or (b) expressly set forth in and preserved by the Plan, the Plan Supplement, Plan Documents or related documents.

## Release Dispute

In the event of a Release Dispute, a Released Party may, at its sole cost and expense, file a motion with the Bankruptcy Court seeking a determination as to whether an AFFF Claimant's Cause of Action was settled and released pursuant to the Plan, and upon such motion, the Bankruptcy Court shall make such determination and, if appropriate, enjoin the prosecution of such Cause of Action as having been settled and released under the Plan.

## Relevant Definitions

"*2020 Separation Agreement*" means that certain Separation and Distribution Agreement, dated as of April 2, 2020, by and among United Technologies Corporation, Carrier Global Corporation, and Otis Worldwide Corporation.

"*Administrative Claim*" means an Allowed Claim for costs and expenses of administration of the Chapter 11 Case pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate; (b) Allowed Professional Compensation Claims; (c) Allowed Fee Examiner Compensation Claims; and (d) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

"*AFFF*" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

"*AFFF Claim*" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.

"*Assumed Liability*" shall have the meaning set forth in the Acquisition Agreement.

"*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other Claims, Causes of Action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties-in-interest under the Bankruptcy Code or applicable non-

bankruptcy law, including claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) was commenced prior to the Effective Date.

"*Buyer*" means Pacific Erin Opco, LLC, as the purchaser of substantially all of the Debtor's assets pursuant to the Acquisition Agreement and the Sale Order.

"*Carrier*" means Carrier Global Corporation, a Delaware corporation, and its non-Debtor affiliates and Related Parties.

"*Causes of Action*" means any current or future actions, Claims, cross-claims, third-party claims, causes of action, controversies, disputes, demands, rights, liens, indemnities, contributions, guaranties, suits, obligations, liabilities, losses, debts, fees or expenses, damages, interest, judgments, costs, accounts, defenses, remedies, offsets, powers, privileges, proceedings, licenses, and franchises of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, choate or inchoate, capable of being asserted directly or derivatively (including any alter ego theories), including any Claims for recovery of attorneys' fees, turnover, fraud, gross negligence, or willful misconduct, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws, consumer protection laws, environmental laws, or nuisance or trespass theories). Causes of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to or otherwise contest Claims or Interests, (c) any claim pursuant to section 362 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Actions.

"*Channeled AFFF Claims*" means all AFFF Claims against the Debtor or the Estate channeled to the Primary AFFF Settlement Trust under the Plan and Settlement Trust Documents. For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

"*Committee*" means the official committee of unsecured creditors of the Debtor appointed by the U.S. Trustee in the Chapter 11 Case under section 1102(a) of the Bankruptcy Code pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 83] and any amendments thereto.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Settling Parties.

"*Consummation*" means the occurrence of the Effective Date.

"*Debtor*" means Kidde-Fenwal, Inc., the debtor and debtor in possession in the Chapter 11 Case, now known as KFI Wind-Down Corp.  In 2007, KFFI (formerly known as National Foam, Inc.) merged into Kidde-Fenwal, Inc., with Kidde-Fenwal, Inc. as the surviving entity.  Pursuant to this merger, KFFI's liabilities were assumed by, and KFFI's causes of action were transferred to, Kidde-Fenwal, Inc. directly or indirectly by merger or other agreement.  The term "Debtor" includes Kidde-Fenwal, Inc. as successor by merger or other agreement by which Kidde-Fenwal, Inc. obtained or assumed the liabilities and Causes of Action of any Person.

"*Effective Date*" means the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date set forth in the Plan shall have been satisfied or waived and on which a notice indicating the Effective Date has been filed on the docket of the Chapter 11 Case.

"*Estate Causes of Action*" means Causes of Action owned or held by either the Debtor or its Estate, or capable of being asserted (currently, or in the future) by any Person or Governmental Unit on behalf of, under or through, either the Debtor or its Estate, and each of their respective successors or assigns, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions, that may be commenced by a representative of the Estate under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise.  Without limiting the foregoing, Estate Causes of Action shall include:  (a) Causes of Action that on or after the Petition Date may be exclusively asserted by or on behalf of the Debtor or its Estate under applicable law, or that prior to the Petition Date could have been asserted by the Debtor on its own behalf under applicable law, including Causes of Action based on (i) the doctrine of successor liability that seek to impose the Debtor's (including KFFI's or National Foam, Inc.'s) liabilities on an alleged successor, whether based on a contractual assumption of liability, consolidation or de facto merger, acquisition of the Debtor's product line, fraud, domination, direction of the Debtor's affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, or (ii) the doctrines of alter ego or veil piercing involving alter egos of the Debtor or the piercing of the Debtor's (including KFFI's or National Foam, Inc.'s) corporate veil, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form; (b) Causes of Action or theories for recovery or remedies that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is generally common to creditors of the Debtor and can be asserted by the Debtor under applicable law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor.  Subsections (a), (b) and (c) immediately above expressly encompass any Causes of Action based on:  (i) the alleged assumption of the Debtor's (including KFFI's or

National Foam, Inc.'s) liabilities (but not a non-Debtor's liabilities) by Kidde plc (n/k/a Kidde Limited) pursuant to the 2000 Demerger Agreement, or any alleged subsequent assumption of such liabilities of the Debtor from Kidde plc by any other Released Party; or (ii) the alleged assumption of the Debtor's liabilities (but not a non-Debtor's liabilities), including any liabilities resulting from acts or omissions of National Foam, Inc. or KFFI, by a Released Party pursuant to the 2020 Separation Agreement.  For the avoidance of doubt, Estate Causes of Action shall not include any Independent AFFF Causes of Action or any Sovereign State Retained Causes of Action or Insurance Actions against any Released Party based on acts or omissions occurring after entry into the Plan Support Agreement with respect to rights under the 2020 Separation Agreement or the RTX Waiver to access and make Claims under any Insurance Policy or otherwise obtain the benefit of the Insurance Assignment.

"*Estate Claims Settlement*" means the settlement, including the release of all Estate Causes of Action against the Released Parties, pursuant to the Estate Claims Settlement Agreement.

"*Independent AFFF Cause of Action*" means any Cause of Action that could be asserted by an AFFF Claimant against a Non-Debtor Party based on the Non-Debtor Party's own conduct and breach of duty (*i.e.*, duty owed to the AFFF Claimant and not owed to the Debtor), including (a) Causes of Action arising from such acts or omissions of such Non-Debtor Party, and (b) Causes of Action based on allegations that a Non-Debtor Party is responsible for such conduct under theories of liability or recovery or remedies that could have been asserted by an AFFF Claimant on its own behalf under applicable state or federal law in respect of such Causes of Action prior to the Petition Date based on (i) the doctrine of successor liability involving a Non-Debtor Party that is alleged to be a successor to another Non-Debtor Party with respect to liabilities not directly or indirectly assumed from the Debtor, whether based on a contractual assumption of liability (including under the 2020 Separation Agreement), consolidation or de facto merger, acquisition of product line, fraud, domination, direction of affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, (ii) the doctrines of alter ego or veil piercing involving alter egos of a Non-Debtor Party, or piercing the corporate veil between Non-Debtor Parties, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form, or (iii) alleged derivative or vicarious liability of a Non-Debtor Party for liabilities of another Non-Debtor Party not directly or indirectly assumed from the Debtor; *provided* that, if any Cause of Action falls within the definition of Estate Cause of Action or Sovereign State Retained Cause of Action, it is not an Independent AFFF Cause of Action.
"*Insurance Assignment*" means the transfer by the Debtor and Carrier to the Primary AFFF Settlement Trust of certain rights in connection with the Insurance Policies as set forth in Article 5 of the Plan.

"*Insurance Policy/ies*" means: (i) any insurance policies listed on Schedule 1 to the Plan, (ii) to the extent not listed on Schedule 1, any "general liability" insurance (which, for the avoidance of doubt, shall exclude director & officer, automobile, or workers' compensation insurance) contract, binder, certificate, insurance policy, or reinsurance policy, whether currently known or unknown, discovered after the Effective Date, in effect at any time on or before the Petition Date naming the Debtor, the Contributing Parties, or any of their predecessors, subsidiaries, or past or present affiliates as an insured (whether as the primary or additional insured) or that provides or may provide coverage to Carrier or the Debtor for AFFF Claims, (iii) "Aviation" policies to

which Carrier or the Debtor has rights as listed in Schedule 2 to the Plan solely to the extent of Insurance Policy Rights applicable to or arising from AFFF Claims and (iv) any other subsequently discovered insurance policies of the same types as listed in Schedules 1 and 2 to the Plan to the extent that Carrier or the Debtor have rights under such policies (whether or not such policies are specifically titled as "General Liability" or "Aviation" policies).  For the avoidance of doubt, "Insurance Policies" shall not include any D&O Policies, automobile policies or worker's compensation insurance.

"*Insurance Policy Rights*" means any and all rights subject to the Insurance Assignment.

"*KFFI*" means Kidde Fire Fighting, Inc. (formerly known as National Foam, Inc.).

"*Liquidating Estate Claims*" means Administrative Claims, Priority Tax Claims, Other Priority Claims and Secured Claims.

"*New National Foam*" means, collectively, National Foam, Inc. f/k/a Eurostar US Tradeco, Inc., Angus Fire Ltd. f/k/a Eurostar Tradeco Limited, Angus International Safety Group Limited f/k/a/ Eurostar Holdco Limited, and each of their Related Parties.

"*New National Foam Release*" means a settlement between the Debtor and New National Foam pursuant to which (a) Estate Causes of Action against New National Foam are resolved for value reasonably acceptable to the Settling Parties and (b) New National Foam agrees to absolutely, unconditionally, and irrevocably release and discharge the Debtor and each Released Party from any and all Claims and Causes of Action, whether known or unknown, based on or relating to, or in any manner arising from that certain Share and Business Sale Agreement, dated as of June 28, 2013, or any other occurrence taking place on or before the Effective Date, including Proof of Claim No. 225, and otherwise in form and substance reasonably acceptable to the Settling Parties.

"*Non-Debtor Party*" means any Person other than the Debtor.  For the avoidance of doubt, the term "*Non-Debtor Party*" does not include KFFI or National Foam, Inc.

"*Other Insurance Company*" means an Insurance Company that is not a Settling Insurance Company.

"*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"*Person*" means a "person" or "entity" as defined in the Bankruptcy Code.

"*Petition Date*" means May 14, 2023, the date on which the Debtor commenced the Chapter 11 Case.

"*PFAS*" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.

"*Primary AFFF Settlement Trust*" means the settlement trust organized under the laws of the state of Delaware and established under the Plan and the Settlement Trust Documents, which

shall (i) have the powers, duties and obligations set forth in the Plan and the Settlement Trust Documents, (ii) assume all liability of the Debtor and the Estate for, and administer, all Channeled AFFF Claims and (iii) be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code.

"*Primary AFFF Settlement Trust Agreement*" means the Settlement Trust Agreement governing the Primary AFFF Settlement Trust, dated as of the Effective Date, as the same may be amended or modified from time to time in accordance with the terms thereof.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Released Party*" means (i) Carrier, (ii) RTX, and (iii) each of their Related Parties in their capacities as such.  Released Parties shall not include DuPont, 3M, or their current or former affiliates and Related Parties.  If a Person is a current or former affiliate or Related Party of DuPont or 3M, and such Person is also a current or former affiliate or Related Party of Carrier or RTX, then such Person shall not be a Released Party.  For the avoidance of doubt, New National Foam shall not be a Released Party unless the New National Foam Release  is provided by the Effective Date.

"*Related Party*" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, and current and former affiliates and subsidiaries, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, all only in their capacity as a representative of such Person, and (c) respective heirs, executors, estates, and nominees, in each case solely in its capacity as such.

"*RTX Waiver*" shall have the meaning set forth in Article 5.5.11(b) of the Plan.

"*Sale Order*" means the *Order (I) Approving the Sale of All or Substantially All of the Debtor's Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving Debtor's Entry, and Performance Under the Contribution Agreement, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Granting Related Relief*, entered by the Bankruptcy Court on April 2, 2024 [D.I. 1058].

"*Settlement Trust Agreements*" means, collectively, (i) the Primary AFFF Settlement Trust Agreement, (ii) the Sovereign State AFFF Settlement Trust Agreement and (iii) the GUC Liquidating Trust Agreement.  To the extent that any provision of a Settlement Trust Agreement impacts the rights of Carrier, such provision shall not be included in such Settlement Trust Agreement unless reasonably acceptable to Carrier.

"*Settlement Trust Documents*" means, collectively, (a) the Settlement Trust Agreements, (b) the TDPs, (c) the Confirmation Order, and (d) any other agreements, instruments, and documents governing the establishment, administration, and operation of the Settlement Trusts.

"*Settlement Trusts*" means the Primary AFFF Settlement Trust, Sovereign State AFFF Settlement Trust and GUC Liquidating Trust.

"*Settling Insurance Company*" means any Insurance Company that contributes funds, proceeds, or other consideration to or for the benefit of the Primary AFFF Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order.  No Insurance Company shall be considered a Settling Insurance Company without the Committee's prior written consent.

"*Sovereign State*" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.

"*Sovereign State AFFF Settlement Trust*" means the trust established under the Plan and the Settlement Trust Documents to administer all Sovereign State Claims against the Debtor.  The Sovereign State AFFF Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code and shall have the powers, duties and obligations set forth in the Settlement Trust Documents.

"*Sovereign State Retained Cause of Action*" means any Claim or Cause of Action asserted, or which may be asserted, by a Sovereign State against a Contributing Party that (1) is not an Estate Cause of Action and (2) arises from a statute, regulation, or common law that creates a theory of liability, by which a Sovereign State could recover damages or penalties, or obtain equitable or injunctive relief, against a Contributing Party.  For the avoidance of doubt, a Sovereign State may assert a Sovereign State Retained Cause of Action irrespective of whether such Sovereign State Retained Cause of Action could also be considered an Independent AFFF Cause of Action.

"*TDPs*" or "Trust Distribution Procedures" means the Trust Distribution Procedures for the Settlement Trusts, as the same may be amended or modified from time to time in accordance with the terms thereof, that will govern the claims submission, adjudication, and distribution processes for the Settlement Trusts in a manner that is fair and equitable to Holders of Allowed Channeled AFFF Claims.  To the extent that any provision of the TDPs impacts the rights of Carrier, such provision shall not be included unless reasonably acceptable to Carrier.

"*Transferred Assets*" shall have the meaning set forth in the Acquisition Agreement.

## EXHIBIT 2I

**Ballot for Class 3I: Landfill Claims**

**\*\*KFI WIND-DOWN CORP. PLAN BALLOT\*\***

THIS BALLOT IS FOR HOLDERS OF CLAIMS AGAINST KFI WIND-DOWN CORP. (F/K/A KIDDE-FENWAL, INC.) ARISING FROM ITS AFFF OR AFFF-CONTAINING PRODUCTS.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |

## BALLOT FOR ACCEPTING OR REJECTING THE
## DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

## CLASS 3I:  LANDFILL CLAIMS

On May 14, 2023 (the "Petition Date"), KFI Wind-Down Corp. f/k/a Kidde-Fenwal, Inc. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") (the "Chapter 11 Case").

On [•], 2025, the Debtor filed the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Plan"),[2] which is described in greater detail in the *Disclosure Statement for the Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the*

---

[1]    The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters are located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

*Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Disclosure Statement").

> **THE PLAN CONTAINS RELEASE, INJUNCTION AND EXCULPATORY PROVISIONS. THESE PROVISIONS ARE SET FORTH IN <u>APPENDIX A</u> TO THIS BALLOT.  YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.**

On [•], 2025, the Bankruptcy Court entered an order [D.I. [•]] (the "Disclosure Statement Order") approving the Disclosure Statement as containing "adequate information" within the meaning ascribed to such term in section 1125 of the Bankruptcy Code and procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures").

The Plan, Disclosure Statement, Disclosure Statement Order, Solicitation Procedures and documents included in the Plan Supplement as of the Solicitation Mailing Deadline have been included in the package of materials containing the attached ballot (the "Ballot") and can be accessed free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code.  For a description of the Causes of Action to be enjoined and the identities of the Persons that would be subject to this injunction, see Article IV.E.8 of the Disclosure Statement and Article 10.8 of the Plan.

A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of the Claims that submit votes in that Voting Class vote to accept the Plan.  Even if a Voting Class votes to reject the Plan, the Bankruptcy Court nonetheless may confirm the Plan if it finds the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

If the Plan is confirmed by the Bankruptcy Court, all Holders of Claims against and Interests in the Debtor (including those Holders who reject the Plan or abstain from voting on the Plan, and those Holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby.

The Debtor will file the Plan Supplement (as may be amended, modified or supplemented from time to time) with the Bankruptcy Court no later than **November 17, 2025.**

The documents included in the Plan Supplement as of the Solicitation Mailing Deadline are included in your Solicitation Package.  Any further Plan Supplement, and any amendments or supplements to the foregoing, will only be served on:  (a) the U.S. Trustee, (b) the Notice Parties and (c)

-2-

the 2002 List.   Once filed, a copy of the Plan Supplement will also be available for review and download on the Debtor's website maintained by the Solicitation Agent free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

**Unless such time is extended by the Debtor, in consultation with the Settling Parties, or the Bankruptcy Court, the Ballot must be properly completed, signed and returned to the Solicitation Agent *so as to be actually received* no later than 5:00 p.m. (prevailing Eastern Time) on December 15, 2025 (the "Voting Deadline") in order for the vote on the Ballot to count.   Unless otherwise provided in the Solicitation Procedures, all Holders of Claims in the Voting Classes are required to (a) submit their Ballots online at the Solicitation Agent's online voting portal at https://cases.stretto.com/kfi or (b) return their Ballots by mail, overnight courier or hand delivery to the Solicitation Agent at KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, in each case so that they are actually received by the Solicitation Agent on or before the Voting Deadline (December 15, 2025 at 5:00 p.m. (prevailing Eastern Time)).**

This Ballot is to be used by Holders of Landfill Claims against the Debtor in Class 3I of the Plan only.  Please refer to the Plan for the specific definition of "Landfill Claim," which is copied below, as well as other relevant definitions.

*"Holder" means a Person holding a Claim against or an Interest in the Debtor.*

*"Landfill Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Landfill for damages relating to such Landfill.*

*"AFFF" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.*

*"AFFF Claim" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.*

*"Sovereign State" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.*

*"Sovereign Tribe" means any American Indian or Alaskan Native Tribe, band, nation, pueblo, village or community, that the U.S. Secretary of the Interior acknowledges as an Indian Tribe, as provided in the Federally Recognized Tribe List Act of 1994, 25*

-3-

4896-2728-9353 v.6

*U.S.C. § 5130, and as periodically listed by the U.S. Secretary of the Interior in the Federal Register pursuant to 25 U.S.C. § 5131; and any "Tribal Organization" as provided in the Indian Self-Determination and Education and Assistance Act of 1975, as amended, 25 U.S.C. § 5304(1).*

*"Landfill" means a discrete area of real property primarily used for the disposal of waste material as categorized pursuant to 40 CFR Part 239-272.*

*"PFAS" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.*

*"Claim" has the meaning ascribed to such term under section 101(5) of the Bankruptcy Code.*

*[Remainder of page left intentionally blank]*

-4-

## DOCUMENTS INCLUDED WITH THE BALLOT

You should have received the following documents with the Ballot (collectively, the "**Solicitation Package**").  **Please note that some of the following documents may be included on a USB flash drive included as part of your Solicitation Package**.

- the Cover Letter;

- the Committee Letter;

- the Solicitation Procedures;

- a USB flash drive containing a copy of the Disclosure Statement (and exhibits thereto, including the Plan) and the documents contained in the Plan Supplement that have been filed prior to the Solicitation Mailing Deadline;

- the Disclosure Statement Order (without exhibits);

- a preaddressed, return envelope for completed Ballots;

- the Confirmation Hearing Notice; and

- any other materials ordered by the Court to be included as part of the Solicitation Package.

If you have questions about the Ballot, or if you did not receive a copy of the Plan or any related materials, please contact the Solicitation Agent at KFIInquiries@stretto.com or (866) 887-0488 (toll-free) or +1 (949) 889-0128 (international).  Information may also be obtained at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

Any admission of Claims for purposes of voting on the Plan is not an admission of liability on the part of the Debtor or any other party for payment purposes.

-5-

## INSTRUCTIONS FOR COMPLETING YOUR BALLOT

The following instructions explain each of the items contained on the Ballot.   If you have any questions, please contact the Solicitation Agent at the phone number or e-mail provided above or visit https://cases.stretto.com/kfi.

### If Submitting Your Vote through the Ballot Submission Portal:

The Solicitation Agent will accept Ballots if properly completed through the Ballot Submission Portal.   To submit your customized electronic Ballot via the Ballot Submission Portal, visit https://cases.stretto.com/kfi, click on the Ballot Submission Portal link and follow the instructions to submit your Ballot.

**IMPORTANT NOTE:** You will need the following information to retrieve and submit your customized electronic Ballot:

**Unique E-Ballot Password:** _____

Except as provided in the Solicitation Procedures, submission of your Ballot via the Solicitation Agent's online portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Except as provided in the Solicitation Procedures, Ballots submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.

Each "Unique E-Ballot Password" is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each Unique E-Ballot Password you receive, as applicable.  Creditors who cast a Ballot using the online portal should NOT also submit a paper Ballot.

The encrypted Ballot data and audit trail created by such electronic submission will become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.  Ballots submitted via the Ballot Submission Portal will be deemed to contain an original signature.

If your Ballot is not actually received on or before the Voting Deadline by the Solicitation Agent, and such Voting Deadline is not extended by the Debtor as noted above, your vote will not be counted.

### If Submitting Your Vote through Regular Mail, Overnight Courier, or via Hand Delivery:

Submit your completed and signed Ballot by regular mail using the return envelope included in the Solicitation Package (or otherwise), or by hand delivery or overnight courier to:

4896-2728-9353 v.6

```
                    KFI Ballot Processing
                       c/o Stretto
                  410 Exchange, Suite 100
                     Irvine, CA 92602

              To arrange for hand delivery, please send an
                  email to KFIInquiries@stretto.com at
              least 24 hours before arrival at the address above and
                provide the anticipated date and time of delivery.
```

**To fill out the Ballot, you must complete the following:**

**Item 1.  Claimant's Name and Address.**

Please fill in the name and address information requested.  Claimants should include street address, city, state, ZIP Code, telephone number and email address.

**Item 2.  Vote on the Plan.**

Vote on the Plan by checking the box that corresponds to your choice.  You may vote to ACCEPT the Plan (meaning that you vote in favor of the Plan) or to REJECT the Plan (meaning that you vote against the Plan).   You must check either the ACCEPT or REJECT box below for the Plan to have your vote counted.   If you check both the ACCEPT and REJECT boxes for the Plan, your vote will not be counted.

**Item 3.  Certifications, Acknowledgment, Signature and Date.**

Either the claimant, the claimant's personal representative, or the claimant's attorney MUST sign the Ballot.  If the Ballot is not signed, the vote shown on the Ballot will NOT be counted.

The claimant, the claimant's personal representative, or the claimant's attorney MUST certify certain information on the Ballot.  If you are the claimant's attorney, you must provide evidence of your authority to vote on behalf of the claimant at the Debtor's request.  Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

By signing the Ballot, you make one of the following certifications, as applicable:

- I am the claimant and make the following certifications under penalty of perjury.

4896-2728-9353 v.6

      i.     I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

      ii.    To the best of my knowledge, information and belief, I am the Holder of a Landfill Claim against the Debtor in Class 3I of the Plan; and

      iii.   I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan in my capacity as the claimant.

- I am the personal representative of the claimant and make the following certifications under penalty of perjury.

      i.     The claimant's personal representative has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

      ii.    To the best of my knowledge, information and belief, the claimant is the Holder of a Landfill Claim against the Debtor in Class 3I of the Plan; and

      iii.   I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

- I am an attorney for the claimant and make the following certifications under penalty of perjury.

      i.     The claimant's attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

      ii.    To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the claimant is the Holder of a Landfill Claim against the Debtor in Class 3I of the Plan; and

iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

The Ballot does not constitute and will not be deemed a Proof of Claim or Interest, an assertion of a Claim, the allowance of a Claim, or the acceptance or liquidation of any Landfill Claim for purposes of any distribution.   None of the information set forth in the Ballot shall constitute an admission by the Debtor as to the extent, validity, or priority of the Claim voted herein, nor shall anything contained herein or information submitted in or with the Ballot be binding upon the Debtor or the Holder in any subsequent Claims resolution process or other proceeding.   The Ballot may not be used for any purposes other than to transmit votes on the Plan.

If you cast more than one Ballot voting the same Landfill Claim before the Voting Deadline, the last valid Ballot received by the Solicitation Agent on or before the Voting Deadline will be deemed to reflect your intent and will supersede any prior Ballots.

**Holders of Claims must vote the full amount of their Claims to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan**.   A Holder of a Landfill Claim may not split his or her vote on the Plan.   Accordingly, the votes of any Holder of a Landfill Claim who purports partially to accept and partially to reject the Plan will not be counted.

---

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT,
BELIEVE YOU MAY HAVE RECEIVED AN INCORRECT BALLOT,
OR IF YOU DID NOT RECEIVE A COPY OF ANY OF
THE DOCUMENTS DESCRIBED IN THESE INSTRUCTIONS,
PLEASE CONTACT THE SOLICITATION AGENT AT:**

**TELEPHONE: (866) 887-0488 (TOLL-FREE)
OR +1 (949) 889-0128 (INTERNATIONAL)
E-MAIL: KFIINQUIRIES@STRETTO.COM
OR VISIT HTTPS://CASES.STRETTO.COM/KFI**

---

4896-2728-9353 v.6

**\*\*PLAN BALLOT\*\***

**BALLOT FOR ACCEPTING OR REJECTING THE
DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

---

**CLASS 3I:  LANDFILL CLAIMS**

---

| |
|---|
| **Please read the instructions that accompany this Ballot before completing.    Print clearly.** |
| **ITEM 1 – Claimant's Name and Address:** |
| Name |
| Street Address |
| City, State, and ZIP Code (U.S.) |
| Telephone Number |
| Email Address |
| **ITEM 2 – Amount of Your Claim.**<br><br>For the purposes of voting to accept or reject the Plan, the undersigned certifies that the claimant holds a Landfill Claim in the amount set forth below.  **Please note that each AFFF Claim has been temporarily allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance or any other purpose.**<br><br>**Claim Amount:**    $1.00 |

**ITEM 3 – Vote on the Plan:**

The undersigned, as Holder of (or representative of a Holder of) a Landfill Claim against the Debtor in Class 3I of the Plan, votes (fill in ONE box only):

☐  to ACCEPT (vote in favor of) the Plan.

☐  to REJECT (vote against) the Plan.

**ITEM 4 – Certifications, Acknowledgment, Signature and Date:**

☐  I am the claimant and make the following certifications under penalty of perjury.

    i.    I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii.    To the best of my knowledge, information and belief, I am the Holder of a Landfill Claim against the Debtor in Class 3I of the Plan; and

    iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan in my capacity as the claimant.

☐  I am the personal representative of the claimant and make the following certifications under penalty of perjury.

    i.    The claimant's personal representative has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii.    To the best of my knowledge, information and belief, the claimant is the Holder of a Landfill Claim against the Debtor in Class 3I of the Plan; and

    iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT

-2-

(vote against) the Plan on behalf of the claimant.

☐  I am the attorney for the claimant and make the below certifications under penalty of perjury.

    i.      The claimant's attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii.     To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the claimant is the Holder of a Landfill Claim against the Debtor in Class 3I of the Plan; and

    iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

**Signature and Date**

Signature of Claimant or Authorized Agent

Date

**YOU <u>MUST</u> COMPLETE ITEM 4 IN ORDER FOR YOUR VOTE(S) ON THE PLAN TO BE COUNTED.**

<u>**DO NOT INCLUDE MEDICAL RECORDS WITH THIS BALLOT.**</u>
<u>**MEDICAL RECORDS CANNOT BE RETURNED BY THE SOLICITATION AGENT.**</u>

**IF THIS BALLOT IS NOT ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY 5:00 P.M. (PREVAILING EASTERN TIME) ON DECEMBER 15, 2025, YOUR VOTE MAY NOT BE COUNTED.**

4896-2728-9353 v.6

## **Appendix A**

**Release, Injunction and Exculpation Provisions in the Plan[1]**

---

[1]     The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.

## Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released and cancelled, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Liquidating Estate and their successors and assigns.  Any Holder of such mortgage, deed of trust, Lien, pledge or other security interest (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including and cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Liquidating Administrators to evidence such release, including the execution, delivery and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

## Releases by the Estate

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party, the Debtor, the Liquidating Estate and each Related Party of the Debtor and the Liquidating Estate shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, or any other Person or Governmental Unit asserting currently or in the future by, under, through, or on behalf of the Debtor or its Estate, and each of their respective successors or assigns, including the Settlement Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between one or both of the Debtor, on the one hand, and any Released Party, the Liquidating Estate, or any Related Party of the Debtor and the Liquidating Estate, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.3 of the Plan shall not be construed to release any post-Effective Date obligations under the RTX Waiver, the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, which specifically provides that such Estate Claims Settlement can be terminated, and the releases provided in the Plan or in the Estate Claims Settlement are void, if Carrier fails to make the installments of the Guaranteed Cash Payment when due and such failure is not timely cured within 30 days, at which time the Primary AFFF Settlement Trust is entitled to commence, prosecute, or continue all Estate Causes of Action against the Released Parties in any court of competent jurisdiction, and take such other actions as the Primary AFFF Settlement Trustee may determine in the exercise of their fiduciary duties.

### Releases by the Released Parties

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Released Parties and their successors or assigns of and from any and all Claims and Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, the Debtor's current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between any of the Debtor, the Liquidating Estate, the Settlement Trusts or the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case, on the one hand, and any Released Party, on the other hand, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any post-Effective Date obligations under the Plan Documents, the Confirmation Order, the 2020 Separation Agreement as supplemented by the RTX Waiver, or the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, or the right of any Person to enforce the same in accordance with

the terms thereof. Except with respect to the Claims and Causes of Action against the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case that are released and discharged under Article 10.4 of the Plan, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any obligations, rights, Causes of Action or Claims that Carrier Global Corporation or members of the Carrier Group (other than the Debtor), Otis Worldwide Corporation or members of the Otis Group, or RTX or members of the UTC Group may have against any Person under the 2020 Separation Agreement as supplemented by the RTX Waiver (including indemnification rights of RTX and other members of the "UTC Group" under the 2020 Separation Agreement). For the avoidance of doubt, in the event that the Estate Claims Settlement Effective Date does not occur or the Estate Claims Settlement is terminated as contemplated by the last paragraph of Article 10.3 in the Plan, all releases being provided by the Released Parties under the Plan shall be void.

### Scope of Releases

Each Person providing releases under the Plan, including the Debtor, the Estate and the Settling Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts. Each Person providing releases under the Plan shall be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

### Exculpation

Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtor and its directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation.

As of the Effective Date, to the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in Article 10 of the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person for any act or omission in connection with, related to or arising out of this Chapter 11 Case, including (a) the operation of the Debtor's businesses during the pendency of this Chapter 11 Case; (b) the

administration and adjudication of Claims and Interests during this Chapter 11 Case; (c) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Plan, the Disclosure Statement, the Plan Supplement, or any related contract, instrument, release or other agreement or document created or entered into in connection with the Chapter 11 Case (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan and the distribution of property under the Plan); (d) any other transaction, agreement, event, or other occurrence related to the Chapter 11 Case taking place on or before the Effective Date, other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.

## Injunction

Except as otherwise expressly provided in the Plan or the Confirmation Order, the satisfaction and release pursuant to Article 10 of the Plan shall also act as a permanent injunction against any Person who has held, holds, or may in the future hold Claims against or Interests in the Debtor or any of its assets or properties based on any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are treated, released, settled, channeled, or exculpated pursuant to the terms of the Plan from taking any of the following actions on account of, or on the basis of, such Claims or Interests:  (a) commencing or continuing any action to collect, enforce, offset, recoup, or recover with respect to any Claims or Interests treated, released, settled, channeled, or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Claim or Interest against the Debtor, the Liquidating Estate, the Settlement Trusts, or its or their respective property; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of or in connection with or with respect to any such Claims or Interests, notwithstanding an indication of a Claim or Interest or otherwise that a Holder of such Claim or Interest asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise, against the Debtor, the Liquidating Estate, or the Settlement Trusts; or (e) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

## Channeling Injunction

Notwithstanding anything to the contrary in the Plan, to preserve and promote the settlements contemplated by and provided for in the Plan, including the Insurance Settlement Agreements, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under sections 105(a) and 1123(b) of the Bankruptcy Code, the sole recourse of any Holder of a Channeled AFFF Claim against the Debtor or a Released Party on account of such Channeled AFFF Claim shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to

**and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, and such Holder shall have no right whatsoever at any time to assert any such Channeled AFFF Claim or any Estate Cause of Action that is released under the Estate Claims Settlement against the Debtor or any Released Party or any property or interest in property of the Debtor or any Released Party. For the avoidance of doubt, the sole recourse for any Channeled AFFF Claim covered by any Insurance Policy issued by a Settling Insurance Company shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents. Accordingly, on and after the Effective Date, all Holders of AFFF Claims that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled AFFF Claim or any Estate Cause of Action against the Debtor or any Released Party shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from the Debtor or any Released Party with respect to any such Channeled AFFF Claim or Estate Cause of Action, other than from the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, including:**

**a)       commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;**

**b)       enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;**

**c)       creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;**

**d)       asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party; or**

**e)       taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents, or, with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, by the Sovereign State AFFF Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Channeled AFFF Claim.**

The Debtor, the Liquidating Estate and/or any Released Party, as applicable, may enforce the Channeling Injunction and/or the Releases contained in the Plan before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at their own cost and expense, and no such cost or expense incurred by a party other than the Primary AFFF Settlement Trust shall be reimbursed or indemnified by the Primary AFFF Settlement Trust under any circumstances.

## Insurance Company Injunction

Subject to the provisos set forth in this Section, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim or cause of action (including any AFFF Claim or any Claim for or respecting any Primary AFFF Settlement Trust expense) against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Insurance Policy, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, statute or any other theory of law, equity or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim or cause of action, including:

a)      commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, demand, or cause of action against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such Claim, demand, or cause of action against any Insurance Company);

b)      enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

c)      creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such Claim or cause of action; and

d)      except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

*provided, however,* that (i) nothing in this Section shall impair or affect the rights of any member of the UTC Group, including RTX, or any member of the Otis Group (each as defined in the 2020 Separation Agreement), or any additional insured designated by RTX

or any member of the UTC Group, based upon, attributable to, arising out of, or in any way connected with an Insurance Policy, including to assert Claims or Causes of Action against any Insurance Company for covered losses and to receive proceeds in respect thereof; (ii) this injunction shall not impair in any way any actions brought by the Primary AFFF Settlement Trust against any Other Insurance Company; (iii) the Primary AFFF Settlement Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction with respect to any Other Insurance Company, in accordance with the Settlement Trust Documents, upon express written notice to such Other Insurance Company; and (iv) this injunction is not issued for the benefit of any Other Insurance Company, and no Other Insurance Company is a third-party beneficiary of this injunction.

Notwithstanding anything to the contrary in the Plan, this injunction shall not enjoin:

a)      the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of Holders of AFFF Claims to assert such Claims, as applicable, in accordance with the TDPs;

b)      the rights of the Primary AFFF Settlement Trust to prosecute any action based on or arising from Insurance Policies, except to the extent otherwise released;

c)      the rights of the Primary AFFF Settlement Trust to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company based on or arising from the Insurance Policies;

d)      any actions of the Contributing Parties in fulfilling their obligations under the Estate Claims Settlement in consultation and coordination with the Primary AFFF Settlement Trust;

e)      the rights of any Insurance Company to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company; or

f)      the Claims for reinsurance under reinsurance contracts or Claims under retrocessional contracts among the Settling Insurance Companies and any Other Insurance Company.

### Prohibition on Actions Against Buyer

Subject to the Sale Order and the Acquisition Agreement, Buyer, in its capacity as such, shall not have any liability for any AFFF Claims against the Debtor arising prior to the closing of the Sale.  Except as expressly otherwise set forth in the Sale Order, all persons and entities hereby are forever barred, estopped and permanently enjoined from asserting against Buyer, its Affiliates, its successors or assigns, its property or the Transferred Assets, such persons' or entities' AFFF Claims that have been or could have been asserted against the Debtor arising prior to the closing of the Sale.  For the avoidance of doubt, the foregoing shall

not release Buyer from, or enjoin any actions against Buyer for, any Assumed Liability or any other liability incurred by Buyer on account of its operations following the closing of the Sale.

## Limitations on Exculpations and Releases

Notwithstanding anything to the contrary in the Plan, none of the releases or exculpations set forth in the Plan shall operate to waive or release any obligation or Causes of Action of any Person:  (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations or (b) expressly set forth in and preserved by the Plan, the Plan Supplement, Plan Documents or related documents.

## Release Dispute

In the event of a Release Dispute, a Released Party may, at its sole cost and expense, file a motion with the Bankruptcy Court seeking a determination as to whether an AFFF Claimant's Cause of Action was settled and released pursuant to the Plan, and upon such motion, the Bankruptcy Court shall make such determination and, if appropriate, enjoin the prosecution of such Cause of Action as having been settled and released under the Plan.

## Relevant Definitions

"*2020 Separation Agreement*" means that certain Separation and Distribution Agreement, dated as of April 2, 2020, by and among United Technologies Corporation, Carrier Global Corporation, and Otis Worldwide Corporation.

"*Administrative Claim*" means an Allowed Claim for costs and expenses of administration of the Chapter 11 Case pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate; (b) Allowed Professional Compensation Claims; (c) Allowed Fee Examiner Compensation Claims; and (d) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

"*AFFF*" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

"*AFFF Claim*" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.

"*Assumed Liability*" shall have the meaning set forth in the Acquisition Agreement.

"*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other Claims, Causes of Action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties-in-interest under the Bankruptcy Code or applicable non-

bankruptcy law, including claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) was commenced prior to the Effective Date.

"*Buyer*" means Pacific Erin Opco, LLC, as the purchaser of substantially all of the Debtor's assets pursuant to the Acquisition Agreement and the Sale Order.

"*Carrier*" means Carrier Global Corporation, a Delaware corporation, and its non-Debtor affiliates and Related Parties.

"*Causes of Action*" means any current or future actions, Claims, cross-claims, third-party claims, causes of action, controversies, disputes, demands, rights, liens, indemnities, contributions, guaranties, suits, obligations, liabilities, losses, debts, fees or expenses, damages, interest, judgments, costs, accounts, defenses, remedies, offsets, powers, privileges, proceedings, licenses, and franchises of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, choate or inchoate, capable of being asserted directly or derivatively (including any alter ego theories), including any Claims for recovery of attorneys' fees, turnover, fraud, gross negligence, or willful misconduct, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws, consumer protection laws, environmental laws, or nuisance or trespass theories). Causes of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to or otherwise contest Claims or Interests, (c) any claim pursuant to section 362 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Actions.

"*Channeled AFFF Claims*" means all AFFF Claims against the Debtor or the Estate channeled to the Primary AFFF Settlement Trust under the Plan and Settlement Trust Documents. For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

"*Committee*" means the official committee of unsecured creditors of the Debtor appointed by the U.S. Trustee in the Chapter 11 Case under section 1102(a) of the Bankruptcy Code pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 83] and any amendments thereto.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Settling Parties.

"*Consummation*" means the occurrence of the Effective Date.

"*Debtor*" means Kidde-Fenwal, Inc., the debtor and debtor in possession in the Chapter 11 Case, now known as KFI Wind-Down Corp.  In 2007, KFFI (formerly known as National Foam, Inc.) merged into Kidde-Fenwal, Inc., with Kidde-Fenwal, Inc. as the surviving entity.  Pursuant to this merger, KFFI's liabilities were assumed by, and KFFI's causes of action were transferred to, Kidde-Fenwal, Inc. directly or indirectly by merger or other agreement.  The term "Debtor" includes Kidde-Fenwal, Inc. as successor by merger or other agreement by which Kidde-Fenwal, Inc. obtained or assumed the liabilities and Causes of Action of any Person.

"*Effective Date*" means the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date set forth in the Plan shall have been satisfied or waived and on which a notice indicating the Effective Date has been filed on the docket of the Chapter 11 Case.

"*Estate Causes of Action*" means Causes of Action owned or held by either the Debtor or its Estate, or capable of being asserted (currently, or in the future) by any Person or Governmental Unit on behalf of, under or through, either the Debtor or its Estate, and each of their respective successors or assigns, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions, that may be commenced by a representative of the Estate under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise.  Without limiting the foregoing, Estate Causes of Action shall include:  (a) Causes of Action that on or after the Petition Date may be exclusively asserted by or on behalf of the Debtor or its Estate under applicable law, or that prior to the Petition Date could have been asserted by the Debtor on its own behalf under applicable law, including Causes of Action based on (i) the doctrine of successor liability that seek to impose the Debtor's (including KFFI's or National Foam, Inc.'s) liabilities on an alleged successor, whether based on a contractual assumption of liability, consolidation or de facto merger, acquisition of the Debtor's product line, fraud, domination, direction of the Debtor's affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, or (ii) the doctrines of alter ego or veil piercing involving alter egos of the Debtor or the piercing of the Debtor's (including KFFI's or National Foam, Inc.'s) corporate veil, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form; (b) Causes of Action or theories for recovery or remedies that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is generally common to creditors of the Debtor and can be asserted by the Debtor under applicable law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor.  Subsections (a), (b) and (c) immediately above expressly encompass any Causes of Action based on:  (i) the alleged assumption of the Debtor's (including KFFI's or

National Foam, Inc.'s) liabilities (but not a non-Debtor's liabilities) by Kidde plc (n/k/a Kidde Limited) pursuant to the 2000 Demerger Agreement, or any alleged subsequent assumption of such liabilities of the Debtor from Kidde plc by any other Released Party; or (ii) the alleged assumption of the Debtor's liabilities (but not a non-Debtor's liabilities), including any liabilities resulting from acts or omissions of National Foam, Inc. or KFFI, by a Released Party pursuant to the 2020 Separation Agreement.  For the avoidance of doubt, Estate Causes of Action shall not include any Independent AFFF Causes of Action or any Sovereign State Retained Causes of Action or Insurance Actions against any Released Party based on acts or omissions occurring after entry into the Plan Support Agreement with respect to rights under the 2020 Separation Agreement or the RTX Waiver to access and make Claims under any Insurance Policy or otherwise obtain the benefit of the Insurance Assignment.

"*Estate Claims Settlement*" means the settlement, including the release of all Estate Causes of Action against the Released Parties, pursuant to the Estate Claims Settlement Agreement.

"*Independent AFFF Cause of Action*" means any Cause of Action that could be asserted by an AFFF Claimant against a Non-Debtor Party based on the Non-Debtor Party's own conduct and breach of duty (*i.e.*, duty owed to the AFFF Claimant and not owed to the Debtor), including (a) Causes of Action arising from such acts or omissions of such Non-Debtor Party, and (b) Causes of Action based on allegations that a Non-Debtor Party is responsible for such conduct under theories of liability or recovery or remedies that could have been asserted by an AFFF Claimant on its own behalf under applicable state or federal law in respect of such Causes of Action prior to the Petition Date based on (i) the doctrine of successor liability involving a Non-Debtor Party that is alleged to be a successor to another Non-Debtor Party with respect to liabilities not directly or indirectly assumed from the Debtor, whether based on a contractual assumption of liability (including under the 2020 Separation Agreement), consolidation or de facto merger, acquisition of product line, fraud, domination, direction of affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, (ii) the doctrines of alter ego or veil piercing involving alter egos of a Non-Debtor Party, or piercing the corporate veil between Non-Debtor Parties, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form, or (iii) alleged derivative or vicarious liability of a Non-Debtor Party for liabilities of another Non-Debtor Party not directly or indirectly assumed from the Debtor; *provided* that, if any Cause of Action falls within the definition of Estate Cause of Action or Sovereign State Retained Cause of Action, it is not an Independent AFFF Cause of Action.
"*Insurance Assignment*" means the transfer by the Debtor and Carrier to the Primary AFFF Settlement Trust of certain rights in connection with the Insurance Policies as set forth in Article 5 of the Plan.

"*Insurance Policy/ies*" means: (i) any insurance policies listed on Schedule 1 to the Plan, (ii) to the extent not listed on Schedule 1, any "general liability" insurance (which, for the avoidance of doubt, shall exclude director & officer, automobile, or workers' compensation insurance) contract, binder, certificate, insurance policy, or reinsurance policy, whether currently known or unknown, discovered after the Effective Date, in effect at any time on or before the Petition Date naming the Debtor, the Contributing Parties, or any of their predecessors, subsidiaries, or past or present affiliates as an insured (whether as the primary or additional insured) or that provides or may provide coverage to Carrier or the Debtor for AFFF Claims, (iii) "Aviation" policies to

which Carrier or the Debtor has rights as listed in Schedule 2 to the Plan solely to the extent of Insurance Policy Rights applicable to or arising from AFFF Claims and (iv) any other subsequently discovered insurance policies of the same types as listed in Schedules 1 and 2 to the Plan to the extent that Carrier or the Debtor have rights under such policies (whether or not such policies are specifically titled as "General Liability" or "Aviation" policies).  For the avoidance of doubt, "Insurance Policies" shall not include any D&O Policies, automobile policies or worker's compensation insurance.

"*Insurance Policy Rights*" means any and all rights subject to the Insurance Assignment.

"*KFFI*" means Kidde Fire Fighting, Inc. (formerly known as National Foam, Inc.).

"*Liquidating Estate Claims*" means Administrative Claims, Priority Tax Claims, Other Priority Claims and Secured Claims.

"*New National Foam*" means, collectively, National Foam, Inc. f/k/a Eurostar US Tradeco, Inc., Angus Fire Ltd. f/k/a Eurostar Tradeco Limited, Angus International Safety Group Limited f/k/a/ Eurostar Holdco Limited, and each of their Related Parties.

"*New National Foam Release*" means a settlement between the Debtor and New National Foam pursuant to which (a) Estate Causes of Action against New National Foam are resolved for value reasonably acceptable to the Settling Parties and (b) New National Foam agrees to absolutely, unconditionally, and irrevocably release and discharge the Debtor and each Released Party from any and all Claims and Causes of Action, whether known or unknown, based on or relating to, or in any manner arising from that certain Share and Business Sale Agreement, dated as of June 28, 2013, or any other occurrence taking place on or before the Effective Date, including Proof of Claim No. 225, and otherwise in form and substance reasonably acceptable to the Settling Parties.

"*Non-Debtor Party*" means any Person other than the Debtor.  For the avoidance of doubt, the term "*Non-Debtor Party*" does not include KFFI or National Foam, Inc.

"*Other Insurance Company*" means an Insurance Company that is not a Settling Insurance Company.

"*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"*Person*" means a "person" or "entity" as defined in the Bankruptcy Code.

"*Petition Date*" means May 14, 2023, the date on which the Debtor commenced the Chapter 11 Case.

"*PFAS*" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.

"*Primary AFFF Settlement Trust*" means the settlement trust organized under the laws of the state of Delaware and established under the Plan and the Settlement Trust Documents, which

shall (i) have the powers, duties and obligations set forth in the Plan and the Settlement Trust Documents, (ii) assume all liability of the Debtor and the Estate for, and administer, all Channeled AFFF Claims and (iii) be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code.

"*Primary AFFF Settlement Trust Agreement*" means the Settlement Trust Agreement governing the Primary AFFF Settlement Trust, dated as of the Effective Date, as the same may be amended or modified from time to time in accordance with the terms thereof.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Released Party*" means (i) Carrier, (ii) RTX, and (iii) each of their Related Parties in their capacities as such.  Released Parties shall not include DuPont, 3M, or their current or former affiliates and Related Parties.  If a Person is a current or former affiliate or Related Party of DuPont or 3M, and such Person is also a current or former affiliate or Related Party of Carrier or RTX, then such Person shall not be a Released Party.  For the avoidance of doubt, New National Foam shall not be a Released Party unless the New National Foam Release  is provided by the Effective Date.

"*Related Party*" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, and current and former affiliates and subsidiaries, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, all only in their capacity as a representative of such Person, and (c) respective heirs, executors, estates, and nominees, in each case solely in its capacity as such.

"*RTX Waiver*" shall have the meaning set forth in Article 5.5.11(b) of the Plan.

"*Sale Order*" means the *Order (I) Approving the Sale of All or Substantially All of the Debtor's Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving Debtor's Entry, and Performance Under the Contribution Agreement, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Granting Related Relief*, entered by the Bankruptcy Court on April 2, 2024 [D.I. 1058].

"*Settlement Trust Agreements*" means, collectively, (i) the Primary AFFF Settlement Trust Agreement, (ii) the Sovereign State AFFF Settlement Trust Agreement and (iii) the GUC Liquidating Trust Agreement.  To the extent that any provision of a Settlement Trust Agreement impacts the rights of Carrier, such provision shall not be included in such Settlement Trust Agreement unless reasonably acceptable to Carrier.

"*Settlement Trust Documents*" means, collectively, (a) the Settlement Trust Agreements, (b) the TDPs, (c) the Confirmation Order, and (d) any other agreements, instruments, and documents governing the establishment, administration, and operation of the Settlement Trusts.

"*Settlement Trusts*" means the Primary AFFF Settlement Trust, Sovereign State AFFF Settlement Trust and GUC Liquidating Trust.

"*Settling Insurance Company*" means any Insurance Company that contributes funds, proceeds, or other consideration to or for the benefit of the Primary AFFF Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order.  No Insurance Company shall be considered a Settling Insurance Company without the Committee's prior written consent.

"*Sovereign State*" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.

"*Sovereign State AFFF Settlement Trust*" means the trust established under the Plan and the Settlement Trust Documents to administer all Sovereign State Claims against the Debtor.  The Sovereign State AFFF Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code and shall have the powers, duties and obligations set forth in the Settlement Trust Documents.

"*Sovereign State Retained Cause of Action*" means any Claim or Cause of Action asserted, or which may be asserted, by a Sovereign State against a Contributing Party that (1) is not an Estate Cause of Action and (2) arises from a statute, regulation, or common law that creates a theory of liability, by which a Sovereign State could recover damages or penalties, or obtain equitable or injunctive relief, against a Contributing Party.  For the avoidance of doubt, a Sovereign State may assert a Sovereign State Retained Cause of Action irrespective of whether such Sovereign State Retained Cause of Action could also be considered an Independent AFFF Cause of Action.

"*TDPs*" or "Trust Distribution Procedures" means the Trust Distribution Procedures for the Settlement Trusts, as the same may be amended or modified from time to time in accordance with the terms thereof, that will govern the claims submission, adjudication, and distribution processes for the Settlement Trusts in a manner that is fair and equitable to Holders of Allowed Channeled AFFF Claims.  To the extent that any provision of the TDPs impacts the rights of Carrier, such provision shall not be included unless reasonably acceptable to Carrier.

"*Transferred Assets*" shall have the meaning set forth in the Acquisition Agreement.

**<u>EXHIBIT 2J</u>**

**Ballot for Class 3J: Stormwater Claims**

**\*\*KFI WIND-DOWN CORP. PLAN BALLOT\*\***

> **THIS BALLOT IS FOR HOLDERS OF CLAIMS AGAINST KFI WIND-DOWN CORP. (F/K/A KIDDE-FENWAL, INC.) ARISING FROM ITS AFFF OR AFFF-CONTAINING PRODUCTS.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |

## BALLOT FOR ACCEPTING OR REJECTING THE
## DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

---

## CLASS 3J:  STORMWATER CLAIMS

---

On May 14, 2023 (the "Petition Date"), KFI Wind-Down Corp. f/k/a Kidde-Fenwal, Inc. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") (the "Chapter 11 Case").

On [•], 2025, the Debtor filed the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Plan"),[2] which is described in greater detail in the *Disclosure Statement for the Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the*

---

[1]   The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters are located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

*Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Disclosure Statement").

> **THE PLAN CONTAINS RELEASE, INJUNCTION AND EXCULPATORY PROVISIONS. THESE PROVISIONS ARE SET FORTH IN <u>APPENDIX A</u> TO THIS BALLOT.  YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.**

On [•], 2025, the Bankruptcy Court entered an order [D.I. [•]] (the "Disclosure Statement Order") approving the Disclosure Statement as containing "adequate information" within the meaning ascribed to such term in section 1125 of the Bankruptcy Code and procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures").

The Plan, Disclosure Statement, Disclosure Statement Order, Solicitation Procedures and documents included in the Plan Supplement as of the Solicitation Mailing Deadline have been included in the package of materials containing the attached ballot (the "Ballot") and can be accessed free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code.  For a description of the Causes of Action to be enjoined and the identities of the Persons that would be subject to this injunction, see Article IV.E.8 of the Disclosure Statement and Article 10.8 of the Plan.

A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of the Claims that submit votes in that Voting Class vote to accept the Plan.  Even if a Voting Class votes to reject the Plan, the Bankruptcy Court nonetheless may confirm the Plan if it finds the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

If the Plan is confirmed by the Bankruptcy Court, all Holders of Claims against and Interests in the Debtor (including those Holders who reject the Plan or abstain from voting on the Plan, and those Holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby.

The Debtor will file the Plan Supplement (as may be amended, modified or supplemented from time to time) with the Bankruptcy Court no later than **November 17, 2025.**

The documents included in the Plan Supplement as of the Solicitation Mailing Deadline are included in your Solicitation Package. Any further Plan Supplement, and any amendments or supplements to the foregoing, will only be served on:  (a) the U.S. Trustee, (b) the Notice Parties and (c) the 2002 List.

-2-

Once filed, a copy of the Plan Supplement will also be available for review and download on the Debtor's website maintained by the Solicitation Agent free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

**Unless such time is extended by the Debtor, in consultation with the Settling Parties, or the Bankruptcy Court, the Ballot must be properly completed, signed and returned to the Solicitation Agent *so as to be actually received* no later than 5:00 p.m. (prevailing Eastern Time) on December 15, 2025 (the "Voting Deadline") in order for the vote on the Ballot to count. Unless otherwise provided in the Solicitation Procedures, all Holders of Claims in the Voting Classes are required to (a) submit their Ballots online at the Solicitation Agent's online voting portal at https://cases.stretto.com/kfi or (b) return their Ballots by mail, overnight courier or hand delivery to the Solicitation Agent at KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, in each case so that they are actually received by the Solicitation Agent on or before the Voting Deadline (December 15, 2025 at 5:00 p.m. (prevailing Eastern Time)).**

This Ballot is to be used by Holders of Stormwater Claims against the Debtor in Class 3J of the Plan only. Please refer to the Plan for the specific definition of "Stormwater Claim," which is copied below, as well as other relevant definitions.

*"Holder" means a Person holding a Claim against or an Interest in the Debtor.*

*"Stormwater Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Stormwater System for damages relating to such Stormwater System.*

*"AFFF" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.*

*"AFFF Claim" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.*

*"Sovereign State" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.*

*"Sovereign Tribe" means any American Indian or Alaskan Native Tribe, band, nation, pueblo, village or community, that the U.S. Secretary of the Interior acknowledges as an Indian Tribe, as provided in the Federally Recognized Tribe List Act of 1994, 25*

-3-

*U.S.C. § 5130, and as periodically listed by the U.S. Secretary of the Interior in the Federal Register pursuant to 25 U.S.C. § 5131; and any "Tribal Organization" as provided in the Indian Self-Determination and Education and Assistance Act of 1975, as amended, 25 U.S.C. § 5304(1).*

*"Stormwater System" means a system of diverting excess precipitation from rain and snowmelt events and dry-weather runoff over land or impervious surfaces without percolating into the ground from real property, municipalities, construction activities, and industrial activities and permitted as such pursuant to the National Pollutant Discharge Elimination System and/or by a state or municipal permitting authority.*

*"PFAS" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.*

*"Claim" has the meaning ascribed to such term under section 101(5) of the Bankruptcy Code.*

*[Remainder of page left intentionally blank]*

-4-

## DOCUMENTS INCLUDED WITH THE BALLOT

You should have received the following documents with the Ballot (collectively, the "**Solicitation Package**").  **Please note that some of the following documents may be included on a USB flash drive included as part of your Solicitation Package**.

- the Cover Letter;

- the Committee Letter;

- the Solicitation Procedures;

- a USB flash drive containing a copy of the Disclosure Statement (and exhibits thereto, including the Plan) and the documents contained in the Plan Supplement that have been filed prior to the Solicitation Mailing Deadline;

- the Disclosure Statement Order (without exhibits);

- a preaddressed, return envelope for completed Ballots;

- the Confirmation Hearing Notice; and

- any other materials ordered by the Court to be included as part of the Solicitation Package.

If you have questions about the Ballot, or if you did not receive a copy of the Plan or any related materials, please contact the Solicitation Agent at KFIInquiries@stretto.com or (866) 887-0488 (toll-free) or +1 (949) 889-0128 (international).  Information may also be obtained at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

Any admission of Claims for purposes of voting on the Plan is not an admission of liability on the part of the Debtor or any other party for payment purposes.

-5-

## INSTRUCTIONS FOR COMPLETING YOUR BALLOT

The following instructions explain each of the items contained on the Ballot.   If you have any questions, please contact the Solicitation Agent at the phone number or e-mail provided above or visit https://cases.stretto.com/kfi.

### If Submitting Your Vote through the Ballot Submission Portal:

The Solicitation Agent will accept Ballots if properly completed through the Ballot Submission Portal.   To submit your customized electronic Ballot via the Ballot Submission Portal, visit https://cases.stretto.com/kfi, click on the Ballot Submission Portal link and follow the instructions to submit your Ballot.

**IMPORTANT NOTE:** You will need the following information to retrieve and submit your customized electronic Ballot:

**Unique E-Ballot Password:** _____

Except as provided in the Solicitation Procedures, submission of your Ballot via the Solicitation Agent's online portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Except as provided in the Solicitation Procedures, Ballots submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.

Each "Unique E-Ballot Password" is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each Unique E-Ballot Password you receive, as applicable.  Creditors who cast a Ballot using the online portal should NOT also submit a paper Ballot.

The encrypted Ballot data and audit trail created by such electronic submission will become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.  Ballots submitted via the Ballot Submission Portal will be deemed to contain an original signature.

If your Ballot is not actually received on or before the Voting Deadline by the Solicitation Agent, and such Voting Deadline is not extended by the Debtor as noted above, your vote will not be counted.

### If Submitting Your Vote through Regular Mail, Overnight Courier, or via Hand Delivery:

Submit your completed and signed Ballot by regular mail using the return envelope included in the Solicitation Package (or otherwise), or by hand delivery or overnight courier to:

-6-

KFI Ballot Processing
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602

To arrange for hand delivery, please send an
email to KFIInquiries@stretto.com at
least 24 hours before arrival at the address above and
provide the anticipated date and time of delivery.

**To fill out the Ballot, you must complete the following:**

**Item 1.  Claimant's Name and Address.**

Please fill in the name and address information requested.   Claimants should include street address, city, state, ZIP Code, telephone number and email address.

**Item 2.  Vote on the Plan.**

Vote on the Plan by checking the box that corresponds to your choice.   You may vote to ACCEPT the Plan (meaning that you vote in favor of the Plan) or to REJECT the Plan (meaning that you vote against the Plan).   You must check either the ACCEPT or REJECT box below for the Plan to have your vote counted.   If you check both the ACCEPT and REJECT boxes for the Plan, your vote will not be counted.

**Item 3.  Certifications, Acknowledgment, Signature and Date.**

Either the claimant, the claimant's personal representative, or the claimant's attorney MUST sign the Ballot.  If the Ballot is not signed, the vote shown on the Ballot will NOT be counted.

The claimant, the claimant's personal representative, or the claimant's attorney MUST certify certain information on the Ballot.  If you are the claimant's attorney, you must provide evidence of your authority to vote on behalf of the claimant at the Debtor's request.  Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

By signing the Ballot, you make one of the following certifications, as applicable:

- I am the claimant and make the following certifications under penalty of perjury.

-7-

4903-3193-2425 v.6

      i.      I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

      ii.     To the best of my knowledge, information and belief, I am the Holder of a Stormwater Claim against the Debtor in Class 3J of the Plan; and

      iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan in my capacity as the claimant.

- I am the personal representative of the claimant and make the following certifications under penalty of perjury.

      i.      The claimant's personal representative has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

      ii.     To the best of my knowledge, information and belief, the claimant is the Holder of a Stormwater Claim against the Debtor in Class 3J of the Plan; and

      iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

- I am an attorney for the claimant and make the following certifications under penalty of perjury.

      i.      The claimant's attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

      ii.     To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the claimant is the Holder of a Stormwater Claim against the Debtor in Class 3J of the Plan; and

     iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

The Ballot does not constitute and will not be deemed a Proof of Claim or Interest, an assertion of a Claim, the allowance of a Claim, or the acceptance or liquidation of any Stormwater Claim for purposes of any distribution.   None of the information set forth in the Ballot shall constitute an admission by the Debtor as to the extent, validity, or priority of the Claim voted herein, nor shall anything contained herein or information submitted in or with the Ballot be binding upon the Debtor or the Holder in any subsequent Claims resolution process or other proceeding.   The Ballot may not be used for any purposes other than to transmit votes on the Plan.

If you cast more than one Ballot voting the same Stormwater Claim before the Voting Deadline, the last valid Ballot received by the Solicitation Agent on or before the Voting Deadline will be deemed to reflect your intent and will supersede any prior Ballots.

**Holders of Claims must vote the full amount of their Claims to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan**.   A Holder of a Stormwater Claim may not split his or her vote on the Plan.   Accordingly, the votes of any Holder of a Stormwater Claim who purports partially to accept and partially to reject the Plan will not be counted.

---

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT,
BELIEVE YOU MAY HAVE RECEIVED AN INCORRECT BALLOT,
OR IF YOU DID NOT RECEIVE A COPY OF ANY OF
THE DOCUMENTS DESCRIBED IN THESE INSTRUCTIONS,
PLEASE CONTACT THE SOLICITATION AGENT AT:**

**TELEPHONE: (866) 887-0488 (TOLL-FREE)
OR +1 (949) 889-0128 (INTERNATIONAL)
E-MAIL: KFIINQUIRIES@STRETTO.COM
OR VISIT HTTPS://CASES.STRETTO.COM/KFI**

---

4903-3193-2425 v.6

**\*\*PLAN BALLOT\*\***

**BALLOT FOR ACCEPTING OR REJECTING THE
DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

---

**CLASS 3J:  STORMWATER CLAIMS**

---

| |
|---|
| **Please read the instructions that accompany this Ballot before completing.    Print clearly.** |
| **ITEM 1 – Claimant's Name and Address:** |
| Name |
| Street Address |
| City, State, and ZIP Code (U.S.) |
| Telephone Number |
| Email Address |
| **ITEM 2 – Amount of Your Claim.** <br><br> For the purposes of voting to accept or reject the Plan, the undersigned certifies that the claimant holds a Stormwater Claim in the amount set forth below.  **Please note that each AFFF Claim has been temporarily allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance or any other purpose.** <br><br> **Claim Amount:**    $1.00 |

**ITEM 3 – Vote on the Plan:**

The undersigned, as Holder of (or representative of a Holder of) a Stormwater Claim against the Debtor in Class 3J of the Plan, votes (fill in ONE box only):

☐ to ACCEPT (vote in favor of) the Plan.

☐ to REJECT (vote against) the Plan.

**ITEM 4 – Certifications, Acknowledgment, Signature and Date:**

☐ I am the claimant and make the following certifications under penalty of perjury.

    i.    I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii.    To the best of my knowledge, information and belief, I am the Holder of a Stormwater Claim against the Debtor in Class 3J of the Plan; and

    iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan in my capacity as the claimant.

☐ I am the personal representative of the claimant and make the following certifications under penalty of perjury.

    i.    The claimant's personal representative has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii.    To the best of my knowledge, information and belief, the claimant is the Holder of a Stormwater Claim against the Debtor in Class 3J of the Plan; and

    iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT

4903-3193-2425 v.6

(vote against) the Plan on behalf of the claimant.

☐   I am the attorney for the claimant and make the below certifications under penalty of perjury.

    i.    The claimant's attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii.    To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the claimant is the Holder of a Stormwater Claim against the Debtor in Class 3J of the Plan; and

    iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

**Signature and Date**

Signature of Claimant or Authorized Agent

Date

**YOU <u>MUST</u> COMPLETE ITEM 4 IN ORDER FOR YOUR VOTE(S) ON THE PLAN TO BE COUNTED.**

<u>**DO NOT INCLUDE MEDICAL RECORDS WITH THIS BALLOT.**</u>
<u>**MEDICAL RECORDS CANNOT BE RETURNED BY THE SOLICITATION AGENT.**</u>

**IF THIS BALLOT IS NOT ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY 5:00 P.M. (PREVAILING EASTERN TIME) ON DECEMBER 15, 2025, YOUR VOTE MAY NOT BE COUNTED.**

-3-

4903-3193-2425 v.6

## **Appendix A**

### **Release, Injunction and Exculpation Provisions in the Plan[1]**

---

[1] The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.

### Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released and cancelled, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Liquidating Estate and their successors and assigns. Any Holder of such mortgage, deed of trust, Lien, pledge or other security interest (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including and cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Liquidating Administrators to evidence such release, including the execution, delivery and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

### Releases by the Estate

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party, the Debtor, the Liquidating Estate and each Related Party of the Debtor and the Liquidating Estate shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, or any other Person or Governmental Unit asserting currently or in the future by, under, through, or on behalf of the Debtor or its Estate, and each of their respective successors or assigns, including the Settlement Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between one or both of the Debtor, on the one hand, and any Released Party, the Liquidating Estate, or any Related Party of the Debtor and the Liquidating Estate, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.3 of the Plan shall not be construed to release any post-Effective Date obligations under the RTX Waiver, the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, which specifically provides that such Estate Claims Settlement can be terminated, and the releases provided in the Plan or in the Estate Claims Settlement are void, if Carrier fails to make the installments of the Guaranteed Cash Payment when due and such failure is not timely cured within 30 days, at which time the Primary AFFF Settlement Trust is entitled to commence, prosecute, or continue all Estate Causes of Action against the Released Parties in any court of competent jurisdiction, and take such other actions as the Primary AFFF Settlement Trustee may determine in the exercise of their fiduciary duties.

### Releases by the Released Parties

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Released Parties and their successors or assigns of and from any and all Claims and Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, the Debtor's current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between any of the Debtor, the Liquidating Estate, the Settlement Trusts or the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case, on the one hand, and any Released Party, on the other hand, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any post-Effective Date obligations under the Plan Documents, the Confirmation Order, the 2020 Separation Agreement as supplemented by the RTX Waiver, or the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, or the right of any Person to enforce the same in accordance with

the terms thereof. Except with respect to the Claims and Causes of Action against the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case that are released and discharged under Article 10.4 of the Plan, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any obligations, rights, Causes of Action or Claims that Carrier Global Corporation or members of the Carrier Group (other than the Debtor), Otis Worldwide Corporation or members of the Otis Group, or RTX or members of the UTC Group may have against any Person under the 2020 Separation Agreement as supplemented by the RTX Waiver (including indemnification rights of RTX and other members of the "UTC Group" under the 2020 Separation Agreement).  For the avoidance of doubt, in the event that the Estate Claims Settlement Effective Date does not occur or the Estate Claims Settlement is terminated as contemplated by the last paragraph of Article 10.3 in the Plan, all releases being provided by the Released Parties under the Plan shall be void.

## Scope of Releases

Each Person providing releases under the Plan, including the Debtor, the Estate and the Settling Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts.  Each Person providing releases under the Plan shall be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

## Exculpation

Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtor and its directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation.

As of the Effective Date, to the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in Article 10 of the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person for any act or omission in connection with, related to or arising out of this Chapter 11 Case, including (a) the operation of the Debtor's businesses during the pendency of this Chapter 11 Case; (b) the

administration and adjudication of Claims and Interests during this Chapter 11 Case; (c) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Plan, the Disclosure Statement, the Plan Supplement, or any related contract, instrument, release or other agreement or document created or entered into in connection with the Chapter 11 Case (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan and the distribution of property under the Plan); (d) any other transaction, agreement, event, or other occurrence related to the Chapter 11 Case taking place on or before the Effective Date, other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.

## Injunction

Except as otherwise expressly provided in the Plan or the Confirmation Order, the satisfaction and release pursuant to Article 10 of the Plan shall also act as a permanent injunction against any Person who has held, holds, or may in the future hold Claims against or Interests in the Debtor or any of its assets or properties based on any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are treated, released, settled, channeled, or exculpated pursuant to the terms of the Plan from taking any of the following actions on account of, or on the basis of, such Claims or Interests:  (a) commencing or continuing any action to collect, enforce, offset, recoup, or recover with respect to any Claims or Interests treated, released, settled, channeled, or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Claim or Interest against the Debtor, the Liquidating Estate, the Settlement Trusts, or its or their respective property; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of or in connection with or with respect to any such Claims or Interests, notwithstanding an indication of a Claim or Interest or otherwise that a Holder of such Claim or Interest asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise, against the Debtor, the Liquidating Estate, or the Settlement Trusts; or (e) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

## Channeling Injunction

Notwithstanding anything to the contrary in the Plan, to preserve and promote the settlements contemplated by and provided for in the Plan, including the Insurance Settlement Agreements, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under sections 105(a) and 1123(b) of the Bankruptcy Code, the sole recourse of any Holder of a Channeled AFFF Claim against the Debtor or a Released Party on account of such Channeled AFFF Claim shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to

and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, and such Holder shall have no right whatsoever at any time to assert any such Channeled AFFF Claim or any Estate Cause of Action that is released under the Estate Claims Settlement against the Debtor or any Released Party or any property or interest in property of the Debtor or any Released Party.  For the avoidance of doubt, the sole recourse for any Channeled AFFF Claim covered by any Insurance Policy issued by a Settling Insurance Company shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents.  Accordingly, on and after the Effective Date, all Holders of AFFF Claims that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled AFFF Claim or any Estate Cause of Action against the Debtor or any Released Party shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from the Debtor or any Released Party with respect to any such Channeled AFFF Claim or Estate Cause of Action, other than from the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, including:

a)    commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

b)    enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

c)    creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

d)    asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party; or

e)    taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents, or, with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, by the Sovereign State AFFF Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Channeled AFFF Claim.

The Debtor, the Liquidating Estate and/or any Released Party, as applicable, may enforce the Channeling Injunction and/or the Releases contained in the Plan before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at their own cost and expense, and no such cost or expense incurred by a party other than the Primary AFFF Settlement Trust shall be reimbursed or indemnified by the Primary AFFF Settlement Trust under any circumstances.

## Insurance Company Injunction

Subject to the provisos set forth in this Section, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim or cause of action (including any AFFF Claim or any Claim for or respecting any Primary AFFF Settlement Trust expense) against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Insurance Policy, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, statute or any other theory of law, equity or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim or cause of action, including:

a)      commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, demand, or cause of action against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such Claim, demand, or cause of action against any Insurance Company);

b)      enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

c)      creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such Claim or cause of action; and

d)      except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

*provided, however,* that (i) nothing in this Section shall impair or affect the rights of any member of the UTC Group, including RTX, or any member of the Otis Group (each as defined in the 2020 Separation Agreement), or any additional insured designated by RTX

or any member of the UTC Group, based upon, attributable to, arising out of, or in any way connected with an Insurance Policy, including to assert Claims or Causes of Action against any Insurance Company for covered losses and to receive proceeds in respect thereof; (ii) this injunction shall not impair in any way any actions brought by the Primary AFFF Settlement Trust against any Other Insurance Company; (iii) the Primary AFFF Settlement Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction with respect to any Other Insurance Company, in accordance with the Settlement Trust Documents, upon express written notice to such Other Insurance Company; and (iv) this injunction is not issued for the benefit of any Other Insurance Company, and no Other Insurance Company is a third-party beneficiary of this injunction.

Notwithstanding anything to the contrary in the Plan, this injunction shall not enjoin:

a)      the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of Holders of AFFF Claims to assert such Claims, as applicable, in accordance with the TDPs;

b)      the rights of the Primary AFFF Settlement Trust to prosecute any action based on or arising from Insurance Policies, except to the extent otherwise released;

c)      the rights of the Primary AFFF Settlement Trust to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company based on or arising from the Insurance Policies;

d)      any actions of the Contributing Parties in fulfilling their obligations under the Estate Claims Settlement in consultation and coordination with the Primary AFFF Settlement Trust;

e)      the rights of any Insurance Company to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company; or

f)      the Claims for reinsurance under reinsurance contracts or Claims under retrocessional contracts among the Settling Insurance Companies and any Other Insurance Company.

### Prohibition on Actions Against Buyer

Subject to the Sale Order and the Acquisition Agreement, Buyer, in its capacity as such, shall not have any liability for any AFFF Claims against the Debtor arising prior to the closing of the Sale.  Except as expressly otherwise set forth in the Sale Order, all persons and entities hereby are forever barred, estopped and permanently enjoined from asserting against Buyer, its Affiliates, its successors or assigns, its property or the Transferred Assets, such persons' or entities' AFFF Claims that have been or could have been asserted against the Debtor arising prior to the closing of the Sale.  For the avoidance of doubt, the foregoing shall

not release Buyer from, or enjoin any actions against Buyer for, any Assumed Liability or any other liability incurred by Buyer on account of its operations following the closing of the Sale.

## Limitations on Exculpations and Releases

Notwithstanding anything to the contrary in the Plan, none of the releases or exculpations set forth in the Plan shall operate to waive or release any obligation or Causes of Action of any Person:  (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations or (b) expressly set forth in and preserved by the Plan, the Plan Supplement, Plan Documents or related documents.

## Release Dispute

In the event of a Release Dispute, a Released Party may, at its sole cost and expense, file a motion with the Bankruptcy Court seeking a determination as to whether an AFFF Claimant's Cause of Action was settled and released pursuant to the Plan, and upon such motion, the Bankruptcy Court shall make such determination and, if appropriate, enjoin the prosecution of such Cause of Action as having been settled and released under the Plan.

## Relevant Definitions

"*2020 Separation Agreement*" means that certain Separation and Distribution Agreement, dated as of April 2, 2020, by and among United Technologies Corporation, Carrier Global Corporation, and Otis Worldwide Corporation.

"*Administrative Claim*" means an Allowed Claim for costs and expenses of administration of the Chapter 11 Case pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate; (b) Allowed Professional Compensation Claims; (c) Allowed Fee Examiner Compensation Claims; and (d) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

"*AFFF*" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

"*AFFF Claim*" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.

"*Assumed Liability*" shall have the meaning set forth in the Acquisition Agreement.

"*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other Claims, Causes of Action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties-in-interest under the Bankruptcy Code or applicable non-

bankruptcy law, including claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) was commenced prior to the Effective Date.

"*Buyer*" means Pacific Erin Opco, LLC, as the purchaser of substantially all of the Debtor's assets pursuant to the Acquisition Agreement and the Sale Order.

"*Carrier*" means Carrier Global Corporation, a Delaware corporation, and its non-Debtor affiliates and Related Parties.

"*Causes of Action*" means any current or future actions, Claims, cross-claims, third-party claims, causes of action, controversies, disputes, demands, rights, liens, indemnities, contributions, guaranties, suits, obligations, liabilities, losses, debts, fees or expenses, damages, interest, judgments, costs, accounts, defenses, remedies, offsets, powers, privileges, proceedings, licenses, and franchises of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, choate or inchoate, capable of being asserted directly or derivatively (including any alter ego theories), including any Claims for recovery of attorneys' fees, turnover, fraud, gross negligence, or willful misconduct, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws, consumer protection laws, environmental laws, or nuisance or trespass theories). Causes of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to or otherwise contest Claims or Interests, (c) any claim pursuant to section 362 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Actions.

"*Channeled AFFF Claims*" means all AFFF Claims against the Debtor or the Estate channeled to the Primary AFFF Settlement Trust under the Plan and Settlement Trust Documents. For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

"*Committee*" means the official committee of unsecured creditors of the Debtor appointed by the U.S. Trustee in the Chapter 11 Case under section 1102(a) of the Bankruptcy Code pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 83] and any amendments thereto.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Settling Parties.

"*Consummation*" means the occurrence of the Effective Date.

"*Debtor*" means Kidde-Fenwal, Inc., the debtor and debtor in possession in the Chapter 11 Case, now known as KFI Wind-Down Corp.  In 2007, KFFI (formerly known as National Foam, Inc.) merged into Kidde-Fenwal, Inc., with Kidde-Fenwal, Inc. as the surviving entity.  Pursuant to this merger, KFFI's liabilities were assumed by, and KFFI's causes of action were transferred to, Kidde-Fenwal, Inc. directly or indirectly by merger or other agreement.  The term "Debtor" includes Kidde-Fenwal, Inc. as successor by merger or other agreement by which Kidde-Fenwal, Inc. obtained or assumed the liabilities and Causes of Action of any Person.

"*Effective Date*" means the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date set forth in the Plan shall have been satisfied or waived and on which a notice indicating the Effective Date has been filed on the docket of the Chapter 11 Case.

"*Estate Causes of Action*" means Causes of Action owned or held by either the Debtor or its Estate, or capable of being asserted (currently, or in the future) by any Person or Governmental Unit on behalf of, under or through, either the Debtor or its Estate, and each of their respective successors or assigns, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions, that may be commenced by a representative of the Estate under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise.  Without limiting the foregoing, Estate Causes of Action shall include:  (a) Causes of Action that on or after the Petition Date may be exclusively asserted by or on behalf of the Debtor or its Estate under applicable law, or that prior to the Petition Date could have been asserted by the Debtor on its own behalf under applicable law, including Causes of Action based on (i) the doctrine of successor liability that seek to impose the Debtor's (including KFFI's or National Foam, Inc.'s) liabilities on an alleged successor, whether based on a contractual assumption of liability, consolidation or de facto merger, acquisition of the Debtor's product line, fraud, domination, direction of the Debtor's affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, or (ii) the doctrines of alter ego or veil piercing involving alter egos of the Debtor or the piercing of the Debtor's (including KFFI's or National Foam, Inc.'s) corporate veil, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form; (b) Causes of Action or theories for recovery or remedies that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is generally common to creditors of the Debtor and can be asserted by the Debtor under applicable law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor.  Subsections (a), (b) and (c) immediately above expressly encompass any Causes of Action based on:  (i) the alleged assumption of the Debtor's (including KFFI's or

National Foam, Inc.'s) liabilities (but not a non-Debtor's liabilities) by Kidde plc (n/k/a Kidde Limited) pursuant to the 2000 Demerger Agreement, or any alleged subsequent assumption of such liabilities of the Debtor from Kidde plc by any other Released Party; or (ii) the alleged assumption of the Debtor's liabilities (but not a non-Debtor's liabilities), including any liabilities resulting from acts or omissions of National Foam, Inc. or KFFI, by a Released Party pursuant to the 2020 Separation Agreement.  For the avoidance of doubt, Estate Causes of Action shall not include any Independent AFFF Causes of Action or any Sovereign State Retained Causes of Action or Insurance Actions against any Released Party based on acts or omissions occurring after entry into the Plan Support Agreement with respect to rights under the 2020 Separation Agreement or the RTX Waiver to access and make Claims under any Insurance Policy or otherwise obtain the benefit of the Insurance Assignment.

"*Estate Claims Settlement*" means the settlement, including the release of all Estate Causes of Action against the Released Parties, pursuant to the Estate Claims Settlement Agreement.

"*Independent AFFF Cause of Action*" means any Cause of Action that could be asserted by an AFFF Claimant against a Non-Debtor Party based on the Non-Debtor Party's own conduct and breach of duty (*i.e.*, duty owed to the AFFF Claimant and not owed to the Debtor), including (a) Causes of Action arising from such acts or omissions of such Non-Debtor Party, and (b) Causes of Action based on allegations that a Non-Debtor Party is responsible for such conduct under theories of liability or recovery or remedies that could have been asserted by an AFFF Claimant on its own behalf under applicable state or federal law in respect of such Causes of Action prior to the Petition Date based on (i) the doctrine of successor liability involving a Non-Debtor Party that is alleged to be a successor to another Non-Debtor Party with respect to liabilities not directly or indirectly assumed from the Debtor, whether based on a contractual assumption of liability (including under the 2020 Separation Agreement), consolidation or de facto merger, acquisition of product line, fraud, domination, direction of affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, (ii) the doctrines of alter ego or veil piercing involving alter egos of a Non-Debtor Party, or piercing the corporate veil between Non-Debtor Parties, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form, or (iii) alleged derivative or vicarious liability of a Non-Debtor Party for liabilities of another Non-Debtor Party not directly or indirectly assumed from the Debtor; *provided* that, if any Cause of Action falls within the definition of Estate Cause of Action or Sovereign State Retained Cause of Action, it is not an Independent AFFF Cause of Action.
"*Insurance Assignment*" means the transfer by the Debtor and Carrier to the Primary AFFF Settlement Trust of certain rights in connection with the Insurance Policies as set forth in Article 5 of the Plan.

"*Insurance Policy/ies*" means: (i) any insurance policies listed on Schedule 1 to the Plan, (ii) to the extent not listed on Schedule 1, any "general liability" insurance (which, for the avoidance of doubt, shall exclude director & officer, automobile, or workers' compensation insurance) contract, binder, certificate, insurance policy, or reinsurance policy, whether currently known or unknown, discovered after the Effective Date, in effect at any time on or before the Petition Date naming the Debtor, the Contributing Parties, or any of their predecessors, subsidiaries, or past or present affiliates as an insured (whether as the primary or additional insured) or that provides or may provide coverage to Carrier or the Debtor for AFFF Claims, (iii) "Aviation" policies to

which Carrier or the Debtor has rights as listed in Schedule 2 to the Plan solely to the extent of Insurance Policy Rights applicable to or arising from AFFF Claims and (iv) any other subsequently discovered insurance policies of the same types as listed in Schedules 1 and 2 to the Plan to the extent that Carrier or the Debtor have rights under such policies (whether or not such policies are specifically titled as "General Liability" or "Aviation" policies).  For the avoidance of doubt, "Insurance Policies" shall not include any D&O Policies, automobile policies or worker's compensation insurance.

"*Insurance Policy Rights*" means any and all rights subject to the Insurance Assignment.

"*KFFI*" means Kidde Fire Fighting, Inc. (formerly known as National Foam, Inc.).

"*Liquidating Estate Claims*" means Administrative Claims, Priority Tax Claims, Other Priority Claims and Secured Claims.

"*New National Foam*" means, collectively, National Foam, Inc. f/k/a Eurostar US Tradeco, Inc., Angus Fire Ltd. f/k/a Eurostar Tradeco Limited, Angus International Safety Group Limited f/k/a/ Eurostar Holdco Limited, and each of their Related Parties.

"*New National Foam Release*" means a settlement between the Debtor and New National Foam pursuant to which (a) Estate Causes of Action against New National Foam are resolved for value reasonably acceptable to the Settling Parties and (b) New National Foam agrees to absolutely, unconditionally, and irrevocably release and discharge the Debtor and each Released Party from any and all Claims and Causes of Action, whether known or unknown, based on or relating to, or in any manner arising from that certain Share and Business Sale Agreement, dated as of June 28, 2013, or any other occurrence taking place on or before the Effective Date, including Proof of Claim No. 225, and otherwise in form and substance reasonably acceptable to the Settling Parties.

"*Non-Debtor Party*" means any Person other than the Debtor.  For the avoidance of doubt, the term "*Non-Debtor Party*" does not include KFFI or National Foam, Inc.

"*Other Insurance Company*" means an Insurance Company that is not a Settling Insurance Company.

"*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"*Person*" means a "person" or "entity" as defined in the Bankruptcy Code.

"*Petition Date*" means May 14, 2023, the date on which the Debtor commenced the Chapter 11 Case.

"*PFAS*" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.

"*Primary AFFF Settlement Trust*" means the settlement trust organized under the laws of the state of Delaware and established under the Plan and the Settlement Trust Documents, which

shall (i) have the powers, duties and obligations set forth in the Plan and the Settlement Trust Documents, (ii) assume all liability of the Debtor and the Estate for, and administer, all Channeled AFFF Claims and (iii) be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code.

"*Primary AFFF Settlement Trust Agreement*" means the Settlement Trust Agreement governing the Primary AFFF Settlement Trust, dated as of the Effective Date, as the same may be amended or modified from time to time in accordance with the terms thereof.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Released Party*" means (i) Carrier, (ii) RTX, and (iii) each of their Related Parties in their capacities as such.  Released Parties shall not include DuPont, 3M, or their current or former affiliates and Related Parties.  If a Person is a current or former affiliate or Related Party of DuPont or 3M, and such Person is also a current or former affiliate or Related Party of Carrier or RTX, then such Person shall not be a Released Party.  For the avoidance of doubt, New National Foam shall not be a Released Party unless the New National Foam Release  is provided by the Effective Date.

"*Related Party*" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, and current and former affiliates and subsidiaries, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, all only in their capacity as a representative of such Person, and (c) respective heirs, executors, estates, and nominees, in each case solely in its capacity as such.

"*RTX Waiver*" shall have the meaning set forth in Article 5.5.11(b) of the Plan.

"*Sale Order*" means the *Order (I) Approving the Sale of All or Substantially All of the Debtor's Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving Debtor's Entry, and Performance Under the Contribution Agreement, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Granting Related Relief*, entered by the Bankruptcy Court on April 2, 2024 [D.I. 1058].

"*Settlement Trust Agreements*" means, collectively, (i) the Primary AFFF Settlement Trust Agreement, (ii) the Sovereign State AFFF Settlement Trust Agreement and (iii) the GUC Liquidating Trust Agreement.  To the extent that any provision of a Settlement Trust Agreement impacts the rights of Carrier, such provision shall not be included in such Settlement Trust Agreement unless reasonably acceptable to Carrier.

"*Settlement Trust Documents*" means, collectively, (a) the Settlement Trust Agreements, (b) the TDPs, (c) the Confirmation Order, and (d) any other agreements, instruments, and documents governing the establishment, administration, and operation of the Settlement Trusts.

"*Settlement Trusts*" means the Primary AFFF Settlement Trust, Sovereign State AFFF Settlement Trust and GUC Liquidating Trust.

"*Settling Insurance Company*" means any Insurance Company that contributes funds, proceeds, or other consideration to or for the benefit of the Primary AFFF Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order. No Insurance Company shall be considered a Settling Insurance Company without the Committee's prior written consent.

"*Sovereign State*" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.

"*Sovereign State AFFF Settlement Trust*" means the trust established under the Plan and the Settlement Trust Documents to administer all Sovereign State Claims against the Debtor. The Sovereign State AFFF Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code and shall have the powers, duties and obligations set forth in the Settlement Trust Documents.

"*Sovereign State Retained Cause of Action*" means any Claim or Cause of Action asserted, or which may be asserted, by a Sovereign State against a Contributing Party that (1) is not an Estate Cause of Action and (2) arises from a statute, regulation, or common law that creates a theory of liability, by which a Sovereign State could recover damages or penalties, or obtain equitable or injunctive relief, against a Contributing Party. For the avoidance of doubt, a Sovereign State may assert a Sovereign State Retained Cause of Action irrespective of whether such Sovereign State Retained Cause of Action could also be considered an Independent AFFF Cause of Action.

"*TDPs*" or "Trust Distribution Procedures" means the Trust Distribution Procedures for the Settlement Trusts, as the same may be amended or modified from time to time in accordance with the terms thereof, that will govern the claims submission, adjudication, and distribution processes for the Settlement Trusts in a manner that is fair and equitable to Holders of Allowed Channeled AFFF Claims. To the extent that any provision of the TDPs impacts the rights of Carrier, such provision shall not be included unless reasonably acceptable to Carrier.

"*Transferred Assets*" shall have the meaning set forth in the Acquisition Agreement.

**EXHIBIT 2K**

**Ballot for Class 3K: Wastewater Claims**

**\*\*KFI WIND-DOWN CORP. PLAN BALLOT\*\***

> # THIS BALLOT IS FOR HOLDERS OF CLAIMS AGAINST KFI WIND-DOWN CORP. (F/K/A KIDDE-FENWAL, INC.) ARISING FROM ITS AFFF OR AFFF-CONTAINING PRODUCTS.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |

## BALLOT FOR ACCEPTING OR REJECTING THE
## DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

---

## CLASS 3K:  WASTEWATER CLAIMS

---

On May 14, 2023 (the "Petition Date"), KFI Wind-Down Corp. f/k/a Kidde-Fenwal, Inc. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") (the "Chapter 11 Case").

On [•], 2025, the Debtor filed the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Plan"),[2] which is described in greater detail in the *Disclosure Statement for the Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the*

---

[1]    The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters are located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

*Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Disclosure Statement").

> **THE PLAN CONTAINS RELEASE, INJUNCTION AND EXCULPATORY PROVISIONS. THESE PROVISIONS ARE SET FORTH IN <u>APPENDIX A</u> TO THIS BALLOT.  YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.**

On [•], 2025, the Bankruptcy Court entered an order [D.I. [•]] (the "Disclosure Statement Order") approving the Disclosure Statement as containing "adequate information" within the meaning ascribed to such term in section 1125 of the Bankruptcy Code and procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures").

The Plan, Disclosure Statement, Disclosure Statement Order, Solicitation Procedures and documents included in the Plan Supplement as of the Solicitation Mailing Deadline have been included in the package of materials containing the attached ballot (the "Ballot") and can be accessed free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code.  For a description of the Causes of Action to be enjoined and the identities of the Persons that would be subject to this injunction, see Article IV.E.8 of the Disclosure Statement and Article 10.8 of the Plan.

A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of the Claims that submit votes in that Voting Class vote to accept the Plan.  Even if a Voting Class votes to reject the Plan, the Bankruptcy Court nonetheless may confirm the Plan if it finds the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

If the Plan is confirmed by the Bankruptcy Court, all Holders of Claims against and Interests in the Debtor (including those Holders who reject the Plan or abstain from voting on the Plan, and those Holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby.

The Debtor will file the Plan Supplement (as may be amended, modified or supplemented from time to time) with the Bankruptcy Court no later than **November 17, 2025.**

The documents included in the Plan Supplement as of the Solicitation Mailing Deadline are included in your Solicitation Package.  Any further Plan Supplement, and any amendments or supplements to the foregoing, will only be served on:  (a) the U.S. Trustee, (b) the Notice Parties and (c)

the 2002 List.   Once filed, a copy of the Plan Supplement will also be available for review and download on the Debtor's website maintained by the Solicitation Agent free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

**Unless such time is extended by the Debtor, in consultation with the Settling Parties, or the Bankruptcy Court, the Ballot must be properly completed, signed and returned to the Solicitation Agent *so as to be actually received* no later than 5:00 p.m. (prevailing Eastern Time) on December 15, 2025 (the "Voting Deadline") in order for the vote on the Ballot to count.   Unless otherwise provided in the Solicitation Procedures, all Holders of Claims in the Voting Classes are required to (a) submit their Ballots online at the Solicitation Agent's online voting portal at https://cases.stretto.com/kfi or (b) return their Ballots by mail, overnight courier or hand delivery to the Solicitation Agent at KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, in each case so that they are actually received by the Solicitation Agent on or before the Voting Deadline (December 15, 2025 at 5:00 p.m. (prevailing Eastern Time)).**

This Ballot is to be used by Holders of Wastewater Claims against the Debtor in Class 3K of the Plan only.  Please refer to the Plan for the specific definition of "Wastewater Claim," which is copied below, as well as other relevant definitions.

> *"Holder" means a Person holding a Claim against or an Interest in the Debtor.*
>
> *"Wastewater Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Wastewater System for damages relating to such Wastewater System.*
>
> *"AFFF" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.*
>
> *"AFFF Claim" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.*
>
> *"Sovereign State" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.*
>
> *"Sovereign Tribe" means any American Indian or Alaskan Native Tribe, band, nation, pueblo, village or community, that the U.S. Secretary of the Interior acknowledges as an Indian Tribe, as provided in the Federally Recognized Tribe List Act of 1994, 25*

-3-

*U.S.C. § 5130, and as periodically listed by the U.S. Secretary of the Interior in the Federal Register pursuant to 25 U.S.C. § 5131; and any "Tribal Organization" as provided in the Indian Self-Determination and Education and Assistance Act of 1975, as amended, 25 U.S.C. § 5304(1).*

*"Wastewater System" means a network of pipes, pumping stations, and appurtenances that convey sewage and waste from its points of origin to a point of treatment and disposal.*

*"PFAS" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.*

*"Claim" has the meaning ascribed to such term under section 101(5) of the Bankruptcy Code.*

*[Remainder of page left intentionally blank]*

-4-

## DOCUMENTS INCLUDED WITH THE BALLOT

You should have received the following documents with the Ballot (collectively, the "**Solicitation Package**").  **Please note that some of the following documents may be included on a USB flash drive included as part of your Solicitation Package**.

- the Cover Letter;

- the Committee Letter;

- the Solicitation Procedures;

- a USB flash drive containing a copy of the Disclosure Statement (and exhibits thereto, including the Plan) and the documents contained in the Plan Supplement that have been filed prior to the Solicitation Mailing Deadline;

- the Disclosure Statement Order (without exhibits);

- a preaddressed, return envelope for completed Ballots;

- the Confirmation Hearing Notice; and

- any other materials ordered by the Court to be included as part of the Solicitation Package.

If you have questions about the Ballot, or if you did not receive a copy of the Plan or any related materials, please contact the Solicitation Agent at KFIInquiries@stretto.com or (866) 887-0488 (toll-free) or +1 (949) 889-0128 (international).  Information may also be obtained at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtor or any other party for payment purposes.

4906-3392-2313 v.6

## <u>INSTRUCTIONS FOR COMPLETING YOUR BALLOT</u>

The following instructions explain each of the items contained on the Ballot.   If you have any questions, please contact the Solicitation Agent at the phone number or e-mail provided above or visit https://cases.stretto.com/kfi.

### If Submitting Your Vote through the Ballot Submission Portal:

The Solicitation Agent will accept Ballots if properly completed through the Ballot Submission Portal.   To submit your customized electronic Ballot via the Ballot Submission Portal, visit https://cases.stretto.com/kfi, click on the Ballot Submission Portal link and follow the instructions to submit your Ballot.

**IMPORTANT NOTE:** You will need the following information to retrieve and submit your customized electronic Ballot:

**Unique E-Ballot Password:** _____

Except as provided in the Solicitation Procedures, submission of your Ballot via the Solicitation Agent's online portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Except as provided in the Solicitation Procedures, Ballots submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.

Each "Unique E-Ballot Password" is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each Unique E-Ballot Password you receive, as applicable.  Creditors who cast a Ballot using the online portal should NOT also submit a paper Ballot.

The encrypted Ballot data and audit trail created by such electronic submission will become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.  Ballots submitted via the Ballot Submission Portal will be deemed to contain an original signature.

If your Ballot is not actually received on or before the Voting Deadline by the Solicitation Agent, and such Voting Deadline is not extended by the Debtor as noted above, your vote will not be counted.

### If Submitting Your Vote through Regular Mail, Overnight Courier, or via Hand Delivery:

Submit your completed and signed Ballot by regular mail using the return envelope included in the Solicitation Package (or otherwise), or by hand delivery or overnight courier to:

4906-3392-2313 v.6

> KFI Ballot Processing
> c/o Stretto
> 410 Exchange, Suite 100
> Irvine, CA 92602
>
> To arrange for hand delivery, please send an
> email to KFIInquiries@stretto.com at
> least 24 hours before arrival at the address above and
> provide the anticipated date and time of delivery.

**To fill out the Ballot, you must complete the following:**

**Item 1.  Claimant's Name and Address.**

Please fill in the name and address information requested.  Claimants should include street address, city, state, ZIP Code, telephone number and email address.

**Item 2.  Vote on the Plan.**

Vote on the Plan by checking the box that corresponds to your choice.  You may vote to ACCEPT the Plan (meaning that you vote in favor of the Plan) or to REJECT the Plan (meaning that you vote against the Plan).   You must check either the ACCEPT or REJECT box below for the Plan to have your vote counted.   If you check both the ACCEPT and REJECT boxes for the Plan, your vote will not be counted.

**Item 3.  Certifications, Acknowledgment, Signature and Date.**

Either the claimant, the claimant's personal representative, or the claimant's attorney MUST sign the Ballot.  If the Ballot is not signed, the vote shown on the Ballot will NOT be counted.

The claimant, the claimant's personal representative, or the claimant's attorney MUST certify certain information on the Ballot.  If you are the claimant's attorney, you must provide evidence of your authority to vote on behalf of the claimant at the Debtor's request.  Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

By signing the Ballot, you make one of the following certifications, as applicable:

- I am the claimant and make the following certifications under penalty of perjury.

4906-3392-2313 v.6

    i.    I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii.    To the best of my knowledge, information and belief, I am the Holder of a Wastewater Claim against the Debtor in Class 3K of the Plan; and

    iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan in my capacity as the claimant.

- I am the personal representative of the claimant and make the following certifications under penalty of perjury.

    i.    The claimant's personal representative has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii.    To the best of my knowledge, information and belief, the claimant is the Holder of a Wastewater Claim against the Debtor in Class 3K of the Plan; and

    iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

- I am an attorney for the claimant and make the following certifications under penalty of perjury.

    i.    The claimant's attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii.    To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the claimant is the Holder of a Wastewater Claim against the Debtor in Class 3K of the Plan; and

iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

The Ballot does not constitute and will not be deemed a Proof of Claim or Interest, an assertion of a Claim, the allowance of a Claim, or the acceptance or liquidation of any Wastewater Claim for purposes of any distribution.   None of the information set forth in the Ballot shall constitute an admission by the Debtor as to the extent, validity, or priority of the Claim voted herein, nor shall anything contained herein or information submitted in or with the Ballot be binding upon the Debtor or the Holder in any subsequent Claims resolution process or other proceeding.   The Ballot may not be used for any purposes other than to transmit votes on the Plan.

If you cast more than one Ballot voting the same Wastewater Claim before the Voting Deadline, the last valid Ballot received by the Solicitation Agent on or before the Voting Deadline will be deemed to reflect your intent and will supersede any prior Ballots.

**Holders of Claims must vote the full amount of their Claims to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan**.   A Holder of a Wastewater Claim may not split his or her vote on the Plan.   Accordingly, the votes of any Holder of a Wastewater Claim who purports partially to accept and partially to reject the Plan will not be counted.

---

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT,
BELIEVE YOU MAY HAVE RECEIVED AN INCORRECT BALLOT,
OR IF YOU DID NOT RECEIVE A COPY OF ANY OF
THE DOCUMENTS DESCRIBED IN THESE INSTRUCTIONS,
PLEASE CONTACT THE SOLICITATION AGENT AT:**

**TELEPHONE: (866) 887-0488 (TOLL-FREE)
OR +1 (949) 889-0128 (INTERNATIONAL)
E-MAIL: KFIINQUIRIES@STRETTO.COM
OR VISIT HTTPS://CASES.STRETTO.COM/KFI**

---

4906-3392-2313 v.6

**\*\*PLAN BALLOT\*\***

**BALLOT FOR ACCEPTING OR REJECTING THE
DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

**CLASS 3K:  WASTEWATER CLAIMS**

| Please read the instructions that accompany this Ballot before completing.    Print clearly. |
|---|
| **ITEM 1 – Claimant's Name and Address:** |
| Name |
| Street Address |
| City, State, and ZIP Code (U.S.) |
| Telephone Number |
| Email Address |
| **ITEM 2 – Amount of Your Claim.**<br><br>For the purposes of voting to accept or reject the Plan, the undersigned certifies that the claimant holds a Wastewater Claim in the amount set forth below.  **Please note that each AFFF Claim has been temporarily allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance or any other purpose.**<br><br>**Claim Amount:**    <u>$1.00</u> |

**ITEM 3 – Vote on the Plan:**

The undersigned, as Holder of (or representative of a Holder of) a Wastewater Claim against the Debtor in Class 3K of the Plan, votes (fill in ONE box only):

☐  to ACCEPT (vote in favor of) the Plan.

☐  to REJECT (vote against) the Plan.

**ITEM 4 – Certifications, Acknowledgment, Signature and Date:**

☐  I am the claimant and make the following certifications under penalty of perjury.

    i.      I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii.     To the best of my knowledge, information and belief, I am the Holder of a Wastewater Claim against the Debtor in Class 3K of the Plan; and

    iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan in my capacity as the claimant.

☐  I am the personal representative of the claimant and make the following certifications under penalty of perjury.

    i.      The claimant's personal representative has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

    ii.     To the best of my knowledge, information and belief, the claimant is the Holder of a Wastewater Claim against the Debtor in Class 3K of the Plan; and

    iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT

4906-3392-2313 v.6

(vote against) the Plan on behalf of the claimant.

☐   I am the attorney for the claimant and make the below certifications under penalty of perjury.

i.    The claimant's attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

ii.   To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the claimant is the Holder of a Wastewater Claim against the Debtor in Class 3K of the Plan; and

iii.  I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

**Signature and Date**

Signature of Claimant or Authorized Agent

Date

**YOU <u>MUST</u> COMPLETE ITEM 4 IN ORDER FOR YOUR VOTE(S) ON THE PLAN TO BE COUNTED.**

<u>**DO NOT INCLUDE MEDICAL RECORDS WITH THIS BALLOT.**</u>
<u>**MEDICAL RECORDS CANNOT BE RETURNED BY THE SOLICITATION AGENT.**</u>

**IF THIS BALLOT IS NOT ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY 5:00 P.M. (PREVAILING EASTERN TIME) ON DECEMBER 15, 2025, YOUR VOTE MAY NOT BE COUNTED.**

-3-

4906-3392-2313 v.6

## **Appendix A**

**Release, Injunction and Exculpation Provisions in the Plan[1]**

---

[1]    The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.

### Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released and cancelled, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Liquidating Estate and their successors and assigns. Any Holder of such mortgage, deed of trust, Lien, pledge or other security interest (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including and cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Liquidating Administrators to evidence such release, including the execution, delivery and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

### Releases by the Estate

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party, the Debtor, the Liquidating Estate and each Related Party of the Debtor and the Liquidating Estate shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, or any other Person or Governmental Unit asserting currently or in the future by, under, through, or on behalf of the Debtor or its Estate, and each of their respective successors or assigns, including the Settlement Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between one or both of the Debtor, on the one hand, and any Released Party, the Liquidating Estate, or any Related Party of the Debtor and the Liquidating Estate, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.3 of the Plan shall not be construed to release any post-Effective Date obligations under the RTX Waiver, the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, which specifically provides that such Estate Claims Settlement can be terminated, and the releases provided in the Plan or in the Estate Claims Settlement are void, if Carrier fails to make the installments of the Guaranteed Cash Payment when due and such failure is not timely cured within 30 days, at which time the Primary AFFF Settlement Trust is entitled to commence, prosecute, or continue all Estate Causes of Action against the Released Parties in any court of competent jurisdiction, and take such other actions as the Primary AFFF Settlement Trustee may determine in the exercise of their fiduciary duties.

### Releases by the Released Parties

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Released Parties and their successors or assigns of and from any and all Claims and Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, the Debtor's current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between any of the Debtor, the Liquidating Estate, the Settlement Trusts or the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case, on the one hand, and any Released Party, on the other hand, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any post-Effective Date obligations under the Plan Documents, the Confirmation Order, the 2020 Separation Agreement as supplemented by the RTX Waiver, or the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, or the right of any Person to enforce the same in accordance with

the terms thereof. Except with respect to the Claims and Causes of Action against the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case that are released and discharged under Article 10.4 of the Plan, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any obligations, rights, Causes of Action or Claims that Carrier Global Corporation or members of the Carrier Group (other than the Debtor), Otis Worldwide Corporation or members of the Otis Group, or RTX or members of the UTC Group may have against any Person under the 2020 Separation Agreement as supplemented by the RTX Waiver (including indemnification rights of RTX and other members of the "UTC Group" under the 2020 Separation Agreement).  For the avoidance of doubt, in the event that the Estate Claims Settlement Effective Date does not occur or the Estate Claims Settlement is terminated as contemplated by the last paragraph of Article 10.3 in the Plan, all releases being provided by the Released Parties under the Plan shall be void.

### Scope of Releases

Each Person providing releases under the Plan, including the Debtor, the Estate and the Settling Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts. Each Person providing releases under the Plan shall be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

### Exculpation

Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtor and its directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation.

As of the Effective Date, to the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in Article 10 of the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person for any act or omission in connection with, related to or arising out of this Chapter 11 Case, including (a) the operation of the Debtor's businesses during the pendency of this Chapter 11 Case; (b) the

administration and adjudication of Claims and Interests during this Chapter 11 Case; (c) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Plan, the Disclosure Statement, the Plan Supplement, or any related contract, instrument, release or other agreement or document created or entered into in connection with the Chapter 11 Case (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan and the distribution of property under the Plan); (d) any other transaction, agreement, event, or other occurrence related to the Chapter 11 Case taking place on or before the Effective Date, other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.

## Injunction

Except as otherwise expressly provided in the Plan or the Confirmation Order, the satisfaction and release pursuant to Article 10 of the Plan shall also act as a permanent injunction against any Person who has held, holds, or may in the future hold Claims against or Interests in the Debtor or any of its assets or properties based on any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are treated, released, settled, channeled, or exculpated pursuant to the terms of the Plan from taking any of the following actions on account of, or on the basis of, such Claims or Interests:  (a) commencing or continuing any action to collect, enforce, offset, recoup, or recover with respect to any Claims or Interests treated, released, settled, channeled, or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Claim or Interest against the Debtor, the Liquidating Estate, the Settlement Trusts, or its or their respective property; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of or in connection with or with respect to any such Claims or Interests, notwithstanding an indication of a Claim or Interest or otherwise that a Holder of such Claim or Interest asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise, against the Debtor, the Liquidating Estate, or the Settlement Trusts; or (e) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

## Channeling Injunction

Notwithstanding anything to the contrary in the Plan, to preserve and promote the settlements contemplated by and provided for in the Plan, including the Insurance Settlement Agreements, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under sections 105(a) and 1123(b) of the Bankruptcy Code, the sole recourse of any Holder of a Channeled AFFF Claim against the Debtor or a Released Party on account of such Channeled AFFF Claim shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to

and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, and such Holder shall have no right whatsoever at any time to assert any such Channeled AFFF Claim or any Estate Cause of Action that is released under the Estate Claims Settlement against the Debtor or any Released Party or any property or interest in property of the Debtor or any Released Party.  For the avoidance of doubt, the sole recourse for any Channeled AFFF Claim covered by any Insurance Policy issued by a Settling Insurance Company shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents.  Accordingly, on and after the Effective Date, all Holders of AFFF Claims that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled AFFF Claim or any Estate Cause of Action against the Debtor or any Released Party shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from the Debtor or any Released Party with respect to any such Channeled AFFF Claim or Estate Cause of Action, other than from the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, including:

a) commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

b) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

c) creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

d) asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party; or

e) taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents, or, with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, by the Sovereign State AFFF Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Channeled AFFF Claim.

The Debtor, the Liquidating Estate and/or any Released Party, as applicable, may enforce the Channeling Injunction and/or the Releases contained in the Plan before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at their own cost and expense, and no such cost or expense incurred by a party other than the Primary AFFF Settlement Trust shall be reimbursed or indemnified by the Primary AFFF Settlement Trust under any circumstances.

## Insurance Company Injunction

Subject to the provisos set forth in this Section, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim or cause of action (including any AFFF Claim or any Claim for or respecting any Primary AFFF Settlement Trust expense) against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Insurance Policy, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, statute or any other theory of law, equity or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim or cause of action, including:

a)        commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, demand, or cause of action against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such Claim, demand, or cause of action against any Insurance Company);

b)        enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

c)        creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such Claim or cause of action; and

d)        except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

*provided, however,* that (i) nothing in this Section shall impair or affect the rights of any member of the UTC Group, including RTX, or any member of the Otis Group (each as defined in the 2020 Separation Agreement), or any additional insured designated by RTX

or any member of the UTC Group, based upon, attributable to, arising out of, or in any way connected with an Insurance Policy, including to assert Claims or Causes of Action against any Insurance Company for covered losses and to receive proceeds in respect thereof; (ii) this injunction shall not impair in any way any actions brought by the Primary AFFF Settlement Trust against any Other Insurance Company; (iii) the Primary AFFF Settlement Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction with respect to any Other Insurance Company, in accordance with the Settlement Trust Documents, upon express written notice to such Other Insurance Company; and (iv) this injunction is not issued for the benefit of any Other Insurance Company, and no Other Insurance Company is a third-party beneficiary of this injunction.

Notwithstanding anything to the contrary in the Plan, this injunction shall not enjoin:

a)    the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of Holders of AFFF Claims to assert such Claims, as applicable, in accordance with the TDPs;

b)    the rights of the Primary AFFF Settlement Trust to prosecute any action based on or arising from Insurance Policies, except to the extent otherwise released;

c)    the rights of the Primary AFFF Settlement Trust to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company based on or arising from the Insurance Policies;

d)    any actions of the Contributing Parties in fulfilling their obligations under the Estate Claims Settlement in consultation and coordination with the Primary AFFF Settlement Trust;

e)    the rights of any Insurance Company to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company; or

f)    the Claims for reinsurance under reinsurance contracts or Claims under retrocessional contracts among the Settling Insurance Companies and any Other Insurance Company.

## Prohibition on Actions Against Buyer

Subject to the Sale Order and the Acquisition Agreement, Buyer, in its capacity as such, shall not have any liability for any AFFF Claims against the Debtor arising prior to the closing of the Sale.  Except as expressly otherwise set forth in the Sale Order, all persons and entities hereby are forever barred, estopped and permanently enjoined from asserting against Buyer, its Affiliates, its successors or assigns, its property or the Transferred Assets, such persons' or entities' AFFF Claims that have been or could have been asserted against the Debtor arising prior to the closing of the Sale.  For the avoidance of doubt, the foregoing shall

not release Buyer from, or enjoin any actions against Buyer for, any Assumed Liability or any other liability incurred by Buyer on account of its operations following the closing of the Sale.

## Limitations on Exculpations and Releases

Notwithstanding anything to the contrary in the Plan, none of the releases or exculpations set forth in the Plan shall operate to waive or release any obligation or Causes of Action of any Person:  (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations or (b) expressly set forth in and preserved by the Plan, the Plan Supplement, Plan Documents or related documents.

## Release Dispute

In the event of a Release Dispute, a Released Party may, at its sole cost and expense, file a motion with the Bankruptcy Court seeking a determination as to whether an AFFF Claimant's Cause of Action was settled and released pursuant to the Plan, and upon such motion, the Bankruptcy Court shall make such determination and, if appropriate, enjoin the prosecution of such Cause of Action as having been settled and released under the Plan.

## Relevant Definitions

"*2020 Separation Agreement*" means that certain Separation and Distribution Agreement, dated as of April 2, 2020, by and among United Technologies Corporation, Carrier Global Corporation, and Otis Worldwide Corporation.

"*Administrative Claim*" means an Allowed Claim for costs and expenses of administration of the Chapter 11 Case pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate; (b) Allowed Professional Compensation Claims; (c) Allowed Fee Examiner Compensation Claims; and (d) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

"*AFFF*" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

"*AFFF Claim*" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.

"*Assumed Liability*" shall have the meaning set forth in the Acquisition Agreement.

"*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other Claims, Causes of Action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties-in-interest under the Bankruptcy Code or applicable non-

bankruptcy law, including claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) was commenced prior to the Effective Date.

"*Buyer*" means Pacific Erin Opco, LLC, as the purchaser of substantially all of the Debtor's assets pursuant to the Acquisition Agreement and the Sale Order.

"*Carrier*" means Carrier Global Corporation, a Delaware corporation, and its non-Debtor affiliates and Related Parties.

"*Causes of Action*" means any current or future actions, Claims, cross-claims, third-party claims, causes of action, controversies, disputes, demands, rights, liens, indemnities, contributions, guaranties, suits, obligations, liabilities, losses, debts, fees or expenses, damages, interest, judgments, costs, accounts, defenses, remedies, offsets, powers, privileges, proceedings, licenses, and franchises of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, choate or inchoate, capable of being asserted directly or derivatively (including any alter ego theories), including any Claims for recovery of attorneys' fees, turnover, fraud, gross negligence, or willful misconduct, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws, consumer protection laws, environmental laws, or nuisance or trespass theories).  Causes of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to or otherwise contest Claims or Interests, (c) any claim pursuant to section 362 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Actions.

"*Channeled AFFF Claims*" means all AFFF Claims against the Debtor or the Estate channeled to the Primary AFFF Settlement Trust under the Plan and Settlement Trust Documents.  For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

"*Committee*" means the official committee of unsecured creditors of the Debtor appointed by the U.S. Trustee in the Chapter 11 Case under section 1102(a) of the Bankruptcy Code pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 83] and any amendments thereto.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Settling Parties.

"*Consummation*" means the occurrence of the Effective Date.

"*Debtor*" means Kidde-Fenwal, Inc., the debtor and debtor in possession in the Chapter 11 Case, now known as KFI Wind-Down Corp.  In 2007, KFFI (formerly known as National Foam, Inc.) merged into Kidde-Fenwal, Inc., with Kidde-Fenwal, Inc. as the surviving entity.  Pursuant to this merger, KFFI's liabilities were assumed by, and KFFI's causes of action were transferred to, Kidde-Fenwal, Inc. directly or indirectly by merger or other agreement.  The term "Debtor" includes Kidde-Fenwal, Inc. as successor by merger or other agreement by which Kidde-Fenwal, Inc. obtained or assumed the liabilities and Causes of Action of any Person.

"*Effective Date*" means the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date set forth in the Plan shall have been satisfied or waived and on which a notice indicating the Effective Date has been filed on the docket of the Chapter 11 Case.

"*Estate Causes of Action*" means Causes of Action owned or held by either the Debtor or its Estate, or capable of being asserted (currently, or in the future) by any Person or Governmental Unit on behalf of, under or through, either the Debtor or its Estate, and each of their respective successors or assigns, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions, that may be commenced by a representative of the Estate under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise.  Without limiting the foregoing, Estate Causes of Action shall include:  (a) Causes of Action that on or after the Petition Date may be exclusively asserted by or on behalf of the Debtor or its Estate under applicable law, or that prior to the Petition Date could have been asserted by the Debtor on its own behalf under applicable law, including Causes of Action based on (i) the doctrine of successor liability that seek to impose the Debtor's (including KFFI's or National Foam, Inc.'s) liabilities on an alleged successor, whether based on a contractual assumption of liability, consolidation or de facto merger, acquisition of the Debtor's product line, fraud, domination, direction of the Debtor's affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, or (ii) the doctrines of alter ego or veil piercing involving alter egos of the Debtor or the piercing of the Debtor's (including KFFI's or National Foam, Inc.'s) corporate veil, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form; (b) Causes of Action or theories for recovery or remedies that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is generally common to creditors of the Debtor and can be asserted by the Debtor under applicable law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor.  Subsections (a), (b) and (c) immediately above expressly encompass any Causes of Action based on:  (i) the alleged assumption of the Debtor's (including KFFI's or

National Foam, Inc.'s) liabilities (but not a non-Debtor's liabilities) by Kidde plc (n/k/a Kidde Limited) pursuant to the 2000 Demerger Agreement, or any alleged subsequent assumption of such liabilities of the Debtor from Kidde plc by any other Released Party; or (ii) the alleged assumption of the Debtor's liabilities (but not a non-Debtor's liabilities), including any liabilities resulting from acts or omissions of National Foam, Inc. or KFFI, by a Released Party pursuant to the 2020 Separation Agreement.  For the avoidance of doubt, Estate Causes of Action shall not include any Independent AFFF Causes of Action or any Sovereign State Retained Causes of Action or Insurance Actions against any Released Party based on acts or omissions occurring after entry into the Plan Support Agreement with respect to rights under the 2020 Separation Agreement or the RTX Waiver to access and make Claims under any Insurance Policy or otherwise obtain the benefit of the Insurance Assignment.

"*Estate Claims Settlement*" means the settlement, including the release of all Estate Causes of Action against the Released Parties, pursuant to the Estate Claims Settlement Agreement.

"*Independent AFFF Cause of Action*" means any Cause of Action that could be asserted by an AFFF Claimant against a Non-Debtor Party based on the Non-Debtor Party's own conduct and breach of duty (*i.e.*, duty owed to the AFFF Claimant and not owed to the Debtor), including (a) Causes of Action arising from such acts or omissions of such Non-Debtor Party, and (b) Causes of Action based on allegations that a Non-Debtor Party is responsible for such conduct under theories of liability or recovery or remedies that could have been asserted by an AFFF Claimant on its own behalf under applicable state or federal law in respect of such Causes of Action prior to the Petition Date based on (i) the doctrine of successor liability involving a Non-Debtor Party that is alleged to be a successor to another Non-Debtor Party with respect to liabilities not directly or indirectly assumed from the Debtor, whether based on a contractual assumption of liability (including under the 2020 Separation Agreement), consolidation or de facto merger, acquisition of product line, fraud, domination, direction of affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, (ii) the doctrines of alter ego or veil piercing involving alter egos of a Non-Debtor Party, or piercing the corporate veil between Non-Debtor Parties, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form, or (iii) alleged derivative or vicarious liability of a Non-Debtor Party for liabilities of another Non-Debtor Party not directly or indirectly assumed from the Debtor; *provided* that, if any Cause of Action falls within the definition of Estate Cause of Action or Sovereign State Retained Cause of Action, it is not an Independent AFFF Cause of Action.
"*Insurance Assignment*" means the transfer by the Debtor and Carrier to the Primary AFFF Settlement Trust of certain rights in connection with the Insurance Policies as set forth in Article 5 of the Plan.

"*Insurance Policy/ies*" means: (i) any insurance policies listed on <u>Schedule 1</u> to the Plan, (ii) to the extent not listed on Schedule 1, any "general liability" insurance (which, for the avoidance of doubt, shall exclude director & officer, automobile, or workers' compensation insurance) contract, binder, certificate, insurance policy, or reinsurance policy, whether currently known or unknown, discovered after the Effective Date, in effect at any time on or before the Petition Date naming the Debtor, the Contributing Parties, or any of their predecessors, subsidiaries, or past or present affiliates as an insured (whether as the primary or additional insured) or that provides or may provide coverage to Carrier or the Debtor for AFFF Claims, (iii) "Aviation" policies to

which Carrier or the Debtor has rights as listed in Schedule 2 to the Plan solely to the extent of Insurance Policy Rights applicable to or arising from AFFF Claims and (iv) any other subsequently discovered insurance policies of the same types as listed in Schedules 1 and 2 to the Plan to the extent that Carrier or the Debtor have rights under such policies (whether or not such policies are specifically titled as "General Liability" or "Aviation" policies).  For the avoidance of doubt, "Insurance Policies" shall not include any D&O Policies, automobile policies or worker's compensation insurance.

"*Insurance Policy Rights*" means any and all rights subject to the Insurance Assignment.

"*KFFI*" means Kidde Fire Fighting, Inc. (formerly known as National Foam, Inc.).

"*Liquidating Estate Claims*" means Administrative Claims, Priority Tax Claims, Other Priority Claims and Secured Claims.

"*New National Foam*" means, collectively, National Foam, Inc. f/k/a Eurostar US Tradeco, Inc., Angus Fire Ltd. f/k/a Eurostar Tradeco Limited, Angus International Safety Group Limited f/k/a/ Eurostar Holdco Limited, and each of their Related Parties.

"*New National Foam Release*" means a settlement between the Debtor and New National Foam pursuant to which (a) Estate Causes of Action against New National Foam are resolved for value reasonably acceptable to the Settling Parties and (b) New National Foam agrees to absolutely, unconditionally, and irrevocably release and discharge the Debtor and each Released Party from any and all Claims and Causes of Action, whether known or unknown, based on or relating to, or in any manner arising from that certain Share and Business Sale Agreement, dated as of June 28, 2013, or any other occurrence taking place on or before the Effective Date, including Proof of Claim No. 225, and otherwise in form and substance reasonably acceptable to the Settling Parties.

"*Non-Debtor Party*" means any Person other than the Debtor.  For the avoidance of doubt, the term "*Non-Debtor Party*" does not include KFFI or National Foam, Inc.

"*Other Insurance Company*" means an Insurance Company that is not a Settling Insurance Company.

"*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"*Person*" means a "person" or "entity" as defined in the Bankruptcy Code.

"*Petition Date*" means May 14, 2023, the date on which the Debtor commenced the Chapter 11 Case.

"*PFAS*" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.

"*Primary AFFF Settlement Trust*" means the settlement trust organized under the laws of the state of Delaware and established under the Plan and the Settlement Trust Documents, which

shall (i) have the powers, duties and obligations set forth in the Plan and the Settlement Trust Documents, (ii) assume all liability of the Debtor and the Estate for, and administer, all Channeled AFFF Claims and (iii) be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code.

"*Primary AFFF Settlement Trust Agreement*" means the Settlement Trust Agreement governing the Primary AFFF Settlement Trust, dated as of the Effective Date, as the same may be amended or modified from time to time in accordance with the terms thereof.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Released Party*" means (i) Carrier, (ii) RTX, and (iii) each of their Related Parties in their capacities as such. Released Parties shall not include DuPont, 3M, or their current or former affiliates and Related Parties. If a Person is a current or former affiliate or Related Party of DuPont or 3M, and such Person is also a current or former affiliate or Related Party of Carrier or RTX, then such Person shall not be a Released Party. For the avoidance of doubt, New National Foam shall not be a Released Party unless the New National Foam Release is provided by the Effective Date.

"*Related Party*" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, and current and former affiliates and subsidiaries, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, all only in their capacity as a representative of such Person, and (c) respective heirs, executors, estates, and nominees, in each case solely in its capacity as such.

"*RTX Waiver*" shall have the meaning set forth in Article 5.5.11(b) of the Plan.

"*Sale Order*" means the *Order (I) Approving the Sale of All or Substantially All of the Debtor's Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving Debtor's Entry, and Performance Under the Contribution Agreement, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Granting Related Relief*, entered by the Bankruptcy Court on April 2, 2024 [D.I. 1058].

"*Settlement Trust Agreements*" means, collectively, (i) the Primary AFFF Settlement Trust Agreement, (ii) the Sovereign State AFFF Settlement Trust Agreement and (iii) the GUC Liquidating Trust Agreement. To the extent that any provision of a Settlement Trust Agreement impacts the rights of Carrier, such provision shall not be included in such Settlement Trust Agreement unless reasonably acceptable to Carrier.

"*Settlement Trust Documents*" means, collectively, (a) the Settlement Trust Agreements, (b) the TDPs, (c) the Confirmation Order, and (d) any other agreements, instruments, and documents governing the establishment, administration, and operation of the Settlement Trusts.

"*Settlement Trusts*" means the Primary AFFF Settlement Trust, Sovereign State AFFF Settlement Trust and GUC Liquidating Trust.

"*Settling Insurance Company*" means any Insurance Company that contributes funds, proceeds, or other consideration to or for the benefit of the Primary AFFF Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order.  No Insurance Company shall be considered a Settling Insurance Company without the Committee's prior written consent.

"*Sovereign State*" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.

"*Sovereign State AFFF Settlement Trust*" means the trust established under the Plan and the Settlement Trust Documents to administer all Sovereign State Claims against the Debtor.  The Sovereign State AFFF Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code and shall have the powers, duties and obligations set forth in the Settlement Trust Documents.

"*Sovereign State Retained Cause of Action*" means any Claim or Cause of Action asserted, or which may be asserted, by a Sovereign State against a Contributing Party that (1) is not an Estate Cause of Action and (2) arises from a statute, regulation, or common law that creates a theory of liability, by which a Sovereign State could recover damages or penalties, or obtain equitable or injunctive relief, against a Contributing Party.  For the avoidance of doubt, a Sovereign State may assert a Sovereign State Retained Cause of Action irrespective of whether such Sovereign State Retained Cause of Action could also be considered an Independent AFFF Cause of Action.

"*TDPs*" or "Trust Distribution Procedures" means the Trust Distribution Procedures for the Settlement Trusts, as the same may be amended or modified from time to time in accordance with the terms thereof, that will govern the claims submission, adjudication, and distribution processes for the Settlement Trusts in a manner that is fair and equitable to Holders of Allowed Channeled AFFF Claims.  To the extent that any provision of the TDPs impacts the rights of Carrier, such provision shall not be included unless reasonably acceptable to Carrier.

"*Transferred Assets*" shall have the meaning set forth in the Acquisition Agreement.

**<u>EXHIBIT 2L</u>**

**Ballot for Class 4: General Unsecured Claims**

**\*\*KFI WIND-DOWN CORP. PLAN BALLOT\*\***

---

**THIS BALLOT IS FOR HOLDERS OF CLAIMS AGAINST KFI WIND-DOWN CORP. (F/K/A KIDDE-FENWAL, INC.).**

---

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |

**BALLOT FOR ACCEPTING OR REJECTING THE
DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

---

**CLASS 4:  GENERAL UNSECURED CLAIMS**

---

On May 14, 2023 (the "Petition Date"), KFI Wind-Down Corp. f/k/a Kidde-Fenwal, Inc. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") (the "Chapter 11 Case").

On [•], 2025, the Debtor filed the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Plan"),[2] which is described in greater detail in the *Disclosure Statement for the Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Disclosure Statement").

---

[1]    The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters are located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

4907-2354-6881 v.7

**THE PLAN CONTAINS RELEASE, INJUNCTION AND EXCULPATORY PROVISIONS. THESE PROVISIONS ARE SET FORTH IN <u>APPENDIX A</u> TO THIS BALLOT.  YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.**

On [•], 2025, the Bankruptcy Court entered an order [D.I. [•]] (the "<u>Disclosure Statement Order</u>") approving the Disclosure Statement as containing "adequate information" within the meaning ascribed to such term in section 1125 of the Bankruptcy Code and procedures for soliciting votes to accept or reject the Plan (the "<u>Solicitation Procedures</u>").

The Plan, Disclosure Statement, Disclosure Statement Order, Solicitation Procedures and documents included in the Plan Supplement as of the Solicitation Mailing Deadline have been included in the package of materials containing the attached ballot (the "<u>Ballot</u>") and can be accessed free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code.  For a description of the Causes of Action to be enjoined and the identities of the Persons that would be subject to this injunction, see <u>Article IV.E.8</u> of the Disclosure Statement and <u>Article 10.8</u> of the Plan.

A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of the Claims that submit votes in that Voting Class vote to accept the Plan.  Even if a Voting Class votes to reject the Plan, the Bankruptcy Court nonetheless may confirm the Plan if it finds the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

If the Plan is confirmed by the Bankruptcy Court, all Holders of Claims against and Interests in the Debtor (including those Holders who reject the Plan or abstain from voting on the Plan, and those Holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby.

The Debtor will file the Plan Supplement (as may be amended, modified or supplemented from time to time) with the Bankruptcy Court no later than **November 17, 2025.**

The documents included in the Plan Supplement as of the Solicitation Mailing Deadline are included in your Solicitation Package. Any further Plan Supplement, and any amendments or supplements to the foregoing, will only be served on:  (a) the U.S. Trustee, (b) the Notice Parties and (c) the 2002 List. Once filed, a copy of the Plan Supplement will also be available for review and download on the Debtor's website maintained by the Solicitation Agent free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

4907-2354-6881 v.7

This Ballot is to be used by Holders of General Unsecured Claims against the Debtor in Class 4 of the Plan only, **who hold such General Unsecured Claims as of June 4, 2025 (the "Voting Record Date")**. **Unless such time is extended by the Debtor, in consultation with the Settling Parties, or the Bankruptcy Court, the Ballot must be properly completed, signed and returned to the Solicitation Agent *so as to be actually received* no later than 5:00 p.m. prevailing Eastern Time on December 15, 2025 (the "Voting Deadline") in order for the vote on the Ballot to count.  Unless otherwise provided in the Solicitation Procedures, all Holders of Claims in the Voting Classes are required to (a) submit their Ballots online at the Solicitation Agent's online voting portal at https://cases.stretto.com/kfi or (b) return their Ballots by mail, overnight courier or hand delivery to the Solicitation Agent at KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, in each case so that they are actually received by the Solicitation Agent on or before the Voting Deadline.**

*[Remainder of page left intentionally blank]*

-3-

## DOCUMENTS INCLUDED WITH THE BALLOT

You should have received the following documents with the Ballot (collectively, the "**Solicitation Package**").  **Please note that some of the following documents may be included on a USB flash drive included as part of your Solicitation Package**.

- the Cover Letter;

- the Committee Letter;

- the Solicitation Procedures;

- a USB flash drive containing a copy of the Disclosure Statement (and exhibits thereto, including the Plan) and the documents contained in the Plan Supplement that have been filed prior to the Solicitation Mailing Deadline;

- the Disclosure Statement Order (without exhibits);

- a preaddressed, return envelope for completed Ballots;

- the Confirmation Hearing Notice; and

- any other materials ordered by the Court to be included as part of the Solicitation Package.

If you have questions about the Ballot, or if you did not receive a copy of the Plan or any related materials, please contact the Solicitation Agent at KFIInquiries@stretto.com or (866) 887-0488 (toll-free) or +1 (949) 889-0128 (international).  Information may also be obtained at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtor or any other party for payment purposes.

## INSTRUCTIONS FOR COMPLETING YOUR BALLOT

The following instructions explain each of the items contained on the Ballot.   If you have any questions, please contact the Solicitation Agent at the phone number or e-mail provided above or visit https://cases.stretto.com/kfi.

**If Submitting Your Vote through the Ballot Submission Portal:**

The Solicitation Agent will accept Ballots if properly completed through the Ballot Submission Portal.   To submit your customized electronic Ballot via the Ballot Submission Portal, visit https://cases.stretto.com/kfi, click on the Ballot Submission Portal link and follow the instructions to submit your Ballot.

**IMPORTANT NOTE:** You will need the following information to retrieve and submit your customized electronic Ballot:

**Unique E-Ballot Password: _____**

Except as provided in the Solicitation Procedures, submission of your Ballot via the Solicitation Agent's online portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Except as provided in the Solicitation Procedures, Ballots submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.

Each "Unique E-Ballot Password" is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each Unique E-Ballot Password you receive, as applicable.  Creditors who cast a Ballot using the online portal should NOT also submit a paper Ballot.

The encrypted Ballot data and audit trail created by such electronic submission will become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.  Ballots submitted via the Ballot Submission Portal will be deemed to contain an original signature.

If your Ballot is not actually received on or before the Voting Deadline by the Solicitation Agent, and such Voting Deadline is not extended by the Debtor as noted above, your vote will not be counted.

**If Submitting Your Vote through Regular Mail, Overnight Courier, or via Hand Delivery:**

Submit your completed and signed Ballot by regular mail using the return envelope included in the Solicitation Package (or otherwise), or by hand delivery or overnight courier to:

4907-2354-6881 v.7

<div style="border:1px solid black">

KFI Ballot Processing
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602

To arrange for hand delivery, please send an
email to KFIInquiries@stretto.com at
least 24 hours before arrival at the address above and
provide the anticipated date and time of delivery.

</div>

**To fill out the Ballot, you must complete the following:**

**Item 1.  Claimant's Name and Address.**

Please fill in the name and address information requested.   Claimants should include street address, city, state, ZIP Code, telephone number and email address.

**Item 2.  Vote on the Plan.**

Vote on the Plan by checking the box that corresponds to your choice.  You may vote to ACCEPT the Plan (meaning that you vote in favor of the Plan) or to REJECT the Plan (meaning that you vote against the Plan).   You must check either the ACCEPT or REJECT box below for the Plan to have your vote counted.   If you check both the ACCEPT and REJECT boxes for the Plan, your vote will not be counted.

**Item 3.  Certifications, Acknowledgment, Signature and Date.**

Either the claimant, the claimant's personal representative, or the claimant's attorney MUST sign the Ballot.  If the Ballot is not signed, the vote shown on the Ballot will NOT be counted.

The claimant, the claimant's personal representative, or the claimant's attorney MUST certify certain information on the Ballot.  If you are the claimant's attorney, you must provide evidence of your authority to vote on behalf of the claimant at the Debtor's request.  Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

By signing the Ballot, you make one of the following certifications, as applicable:

- I am the claimant and make the following certifications under penalty of perjury.

    i.    I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure

-6-

Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

ii.    To the best of my knowledge, information and belief, I am the Holder of a General Unsecured Claim against the Debtor in Class 4 of the Plan as of the Voting Record Date; and

iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan in my capacity as the claimant.

- I am the personal representative of the claimant and make the following certifications under penalty of perjury.

i.    The claimant's personal representative has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

ii.    To the best of my knowledge, information and belief, the claimant is the Holder of a General Unsecured Claim against the Debtor in Class 4 of the Plan as of the Voting Record Date; and

iii.    I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

- I am an attorney for the claimant and make the following certifications under penalty of perjury.

i.    The claimant's attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

ii.    To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the claimant is the Holder of a General Unsecured Claim against the Debtor in Class 4 of the Plan as of the Voting Record Date; and

      iii.     I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

The Ballot does not constitute and will not be deemed a Proof of Claim or Interest, an assertion of a Claim, the allowance of a Claim, or the acceptance or liquidation of any General Unsecured Claim for purposes of any distribution. None of the information set forth in the Ballot shall constitute an admission by the Debtor as to the extent, validity, or priority of the Claim voted herein, nor shall anything contained herein or information submitted in or with the Ballot be binding upon the Debtor or the Holder in any subsequent Claims resolution process or other proceeding. The Ballot may not be used for any purposes other than to transmit votes on the Plan.

If you cast more than one Ballot voting the same General Unsecured Claim before the Voting Deadline, the last valid Ballot received by the Solicitation Agent on or before the Voting Deadline will be deemed to reflect your intent and will supersede any prior Ballots.

**Holders of Claims must vote the full amount of their Claims to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan**. A Holder of a General Unsecured Claim may not split his or her vote on the Plan. Accordingly, the votes of any Holder of a General Unsecured Claim who purports partially to accept and partially to reject the Plan will not be counted.

---

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT,
BELIEVE YOU MAY HAVE RECEIVED AN INCORRECT BALLOT,
OR IF YOU DID NOT RECEIVE A COPY OF ANY OF
THE DOCUMENTS DESCRIBED IN THESE INSTRUCTIONS,
PLEASE CONTACT THE SOLICITATION AGENT AT:**

**TELEPHONE: (866) 887-0488 (TOLL-FREE)
OR +1 (949) 889-0128 (INTERNATIONAL)
E-MAIL: KFIINQUIRIES@STRETTO.COM
OR VISIT HTTPS://CASES.STRETTO.COM/KFI**

---

-8-

## **PLAN BALLOT**

### BALLOT FOR ACCEPTING OR REJECTING T H E  DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

### CLASS 4:  GENERAL UNSECURED CLAIMS

---

**Please read the instructions that accompany this Ballot before completing.    Print clearly.**

**ITEM 1 – Claimant's Name and Address:**

Name

Street Address

City, State, and ZIP Code (U.S.)

Telephone Number

Email Address

**ITEM 2 – Amount of Your Claim(s).**

For the purposes of voting to accept or reject the Plan, the undersigned certifies that, as of the Voting Record Date, the claimant holds a General Unsecured Claim in the amount set forth below.

**Claim Amount:**        $_____

**ITEM 3 – Vote on the Plan:**

The undersigned, as Holder of (or representative of a Holder of) a General Unsecured Claim against the Debtor in Class 4 of the Plan as of the Voting Record Date, votes (fill in ONE box only):

☐  to ACCEPT (vote in favor of) the Plan.

☐  to REJECT (vote against) the Plan.

**ITEM 4 – Certifications, Acknowledgment, Signature and Date:**

☐  I am the claimant and make the following certifications under penalty of perjury.

 i. I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

 ii. To the best of my knowledge, information and belief, I am the Holder of a General Unsecured Claim against the Debtor in Class 4 of the Plan as of the Voting Record Date; and

 iii. I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan in my capacity as the claimant.

☐  I am the personal representative of the claimant and make the following certifications under penalty of perjury.

 i. The claimant's personal representative has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

 ii. To the best of my knowledge, information and belief, the claimant is the Holder of a General Unsecured Claim against the Debtor in Class 4 of the Plan as of the Voting Record Date; and

       iii.     I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

☐  I am the attorney for the claimant and make the below certifications under penalty of perjury.

       i.     The claimant's attorney has been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee urging claimants to vote to ACCEPT (vote in favor of) the Plan;

       ii.     To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the claimant is the Holder of a General Unsecured Claim against the Debtor in Class 4 of the Plan as of the Voting Record Date; and

       iii.     I have full power and authority to vote to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan on behalf of the claimant.

**Signature and Date**

Signature of Claimant or Authorized Agent

Date

**YOU <u>MUST</u> COMPLETE ITEM 4 IN ORDER FOR YOUR VOTE(S) ON THE PLAN TO BE COUNTED.**

**IF THIS BALLOT IS NOT ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY 5:00 P.M. (PREVAILING EASTERN TIME) ON DECEMBER 15, 2025, YOUR VOTE MAY NOT BE COUNTED.**

4907-2354-6881 v.7

## **Appendix A**

## **Release, Injunction and Exculpation Provisions in the Plan[1]**

---

[1]    The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.

### Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released and cancelled, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Liquidating Estate and their successors and assigns.  Any Holder of such mortgage, deed of trust, Lien, pledge or other security interest (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including and cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Liquidating Administrators to evidence such release, including the execution, delivery and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

### Releases by the Estate

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party, the Debtor, the Liquidating Estate and each Related Party of the Debtor and the Liquidating Estate shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, or any other Person or Governmental Unit asserting currently or in the future by, under, through, or on behalf of the Debtor or its Estate, and each of their respective successors or assigns, including the Settlement Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between one or both of the Debtor, on the one hand, and any Released Party, the Liquidating Estate, or any Related Party of the Debtor and the Liquidating Estate, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.3 of the Plan shall not be construed to release any post-Effective Date obligations under the RTX Waiver, the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, which specifically provides that such Estate Claims Settlement can be terminated, and the releases provided in the Plan or in the Estate Claims Settlement are void, if Carrier fails to make the installments of the Guaranteed Cash Payment when due and such failure is not timely cured within 30 days, at which time the Primary AFFF Settlement Trust is entitled to commence, prosecute, or continue all Estate Causes of Action against the Released Parties in any court of competent jurisdiction, and take such other actions as the Primary AFFF Settlement Trustee may determine in the exercise of their fiduciary duties.

## Releases by the Released Parties

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Released Parties and their successors or assigns of and from any and all Claims and Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, the Debtor's current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between any of the Debtor, the Liquidating Estate, the Settlement Trusts or the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case, on the one hand, and any Released Party, on the other hand, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any post-Effective Date obligations under the Plan Documents, the Confirmation Order, the 2020 Separation Agreement as supplemented by the RTX Waiver, or the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, or the right of any Person to enforce the same in accordance with

the terms thereof. Except with respect to the Claims and Causes of Action against the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case that are released and discharged under Article 10.4 of the Plan, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any obligations, rights, Causes of Action or Claims that Carrier Global Corporation or members of the Carrier Group (other than the Debtor), Otis Worldwide Corporation or members of the Otis Group, or RTX or members of the UTC Group may have against any Person under the 2020 Separation Agreement as supplemented by the RTX Waiver (including indemnification rights of RTX and other members of the "UTC Group" under the 2020 Separation Agreement).  For the avoidance of doubt, in the event that the Estate Claims Settlement Effective Date does not occur or the Estate Claims Settlement is terminated as contemplated by the last paragraph of Article 10.3 in the Plan, all releases being provided by the Released Parties under the Plan shall be void.

## Scope of Releases

Each Person providing releases under the Plan, including the Debtor, the Estate and the Settling Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts.  Each Person providing releases under the Plan shall be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

## Exculpation

Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtor and its directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation.

As of the Effective Date, to the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in Article 10 of the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person for any act or omission in connection with, related to or arising out of this Chapter 11 Case, including (a) the operation of the Debtor's businesses during the pendency of this Chapter 11 Case; (b) the

administration and adjudication of Claims and Interests during this Chapter 11 Case; (c) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Plan, the Disclosure Statement, the Plan Supplement, or any related contract, instrument, release or other agreement or document created or entered into in connection with the Chapter 11 Case (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan and the distribution of property under the Plan); (d) any other transaction, agreement, event, or other occurrence related to the Chapter 11 Case taking place on or before the Effective Date, other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.

## Injunction

Except as otherwise expressly provided in the Plan or the Confirmation Order, the satisfaction and release pursuant to Article 10 of the Plan shall also act as a permanent injunction against any Person who has held, holds, or may in the future hold Claims against or Interests in the Debtor or any of its assets or properties based on any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are treated, released, settled, channeled, or exculpated pursuant to the terms of the Plan from taking any of the following actions on account of, or on the basis of, such Claims or Interests:  (a) commencing or continuing any action to collect, enforce, offset, recoup, or recover with respect to any Claims or Interests treated, released, settled, channeled, or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Claim or Interest against the Debtor, the Liquidating Estate, the Settlement Trusts, or its or their respective property; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of or in connection with or with respect to any such Claims or Interests, notwithstanding an indication of a Claim or Interest or otherwise that a Holder of such Claim or Interest asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise, against the Debtor, the Liquidating Estate, or the Settlement Trusts; or (e) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

## Channeling Injunction

Notwithstanding anything to the contrary in the Plan, to preserve and promote the settlements contemplated by and provided for in the Plan, including the Insurance Settlement Agreements, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under sections 105(a) and 1123(b) of the Bankruptcy Code, the sole recourse of any Holder of a Channeled AFFF Claim against the Debtor or a Released Party on account of such Channeled AFFF Claim shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to

and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, and such Holder shall have no right whatsoever at any time to assert any such Channeled AFFF Claim or any Estate Cause of Action that is released under the Estate Claims Settlement against the Debtor or any Released Party or any property or interest in property of the Debtor or any Released Party.  For the avoidance of doubt, the sole recourse for any Channeled AFFF Claim covered by any Insurance Policy issued by a Settling Insurance Company shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents.  Accordingly, on and after the Effective Date, all Holders of AFFF Claims that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled AFFF Claim or any Estate Cause of Action against the Debtor or any Released Party shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from the Debtor or any Released Party with respect to any such Channeled AFFF Claim or Estate Cause of Action, other than from the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, including:

        a)        commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

        b)        enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

        c)        creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

        d)        asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party; or

        e)        taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents, or, with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, by the Sovereign State AFFF Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Channeled AFFF Claim.

The Debtor, the Liquidating Estate and/or any Released Party, as applicable, may enforce the Channeling Injunction and/or the Releases contained in the Plan before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at their own cost and expense, and no such cost or expense incurred by a party other than the Primary AFFF Settlement Trust shall be reimbursed or indemnified by the Primary AFFF Settlement Trust under any circumstances.

## Insurance Company Injunction

Subject to the provisos set forth in this Section, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim or cause of action (including any AFFF Claim or any Claim for or respecting any Primary AFFF Settlement Trust expense) against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Insurance Policy, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, statute or any other theory of law, equity or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim or cause of action, including:

a)      commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, demand, or cause of action against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such Claim, demand, or cause of action against any Insurance Company);

b)      enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

c)      creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such Claim or cause of action; and

d)      except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

*provided, however,* that (i) nothing in this Section shall impair or affect the rights of any member of the UTC Group, including RTX, or any member of the Otis Group (each as defined in the 2020 Separation Agreement), or any additional insured designated by RTX

or any member of the UTC Group, based upon, attributable to, arising out of, or in any way connected with an Insurance Policy, including to assert Claims or Causes of Action against any Insurance Company for covered losses and to receive proceeds in respect thereof; (ii) this injunction shall not impair in any way any actions brought by the Primary AFFF Settlement Trust against any Other Insurance Company; (iii) the Primary AFFF Settlement Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction with respect to any Other Insurance Company, in accordance with the Settlement Trust Documents, upon express written notice to such Other Insurance Company; and (iv) this injunction is not issued for the benefit of any Other Insurance Company, and no Other Insurance Company is a third-party beneficiary of this injunction.

Notwithstanding anything to the contrary in the Plan, this injunction shall not enjoin:

a)      the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of Holders of AFFF Claims to assert such Claims, as applicable, in accordance with the TDPs;

b)      the rights of the Primary AFFF Settlement Trust to prosecute any action based on or arising from Insurance Policies, except to the extent otherwise released;

c)      the rights of the Primary AFFF Settlement Trust to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company based on or arising from the Insurance Policies;

d)      any actions of the Contributing Parties in fulfilling their obligations under the Estate Claims Settlement in consultation and coordination with the Primary AFFF Settlement Trust;

e)      the rights of any Insurance Company to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company; or

f)      the Claims for reinsurance under reinsurance contracts or Claims under retrocessional contracts among the Settling Insurance Companies and any Other Insurance Company.

## Prohibition on Actions Against Buyer

Subject to the Sale Order and the Acquisition Agreement, Buyer, in its capacity as such, shall not have any liability for any AFFF Claims against the Debtor arising prior to the closing of the Sale.  Except as expressly otherwise set forth in the Sale Order, all persons and entities hereby are forever barred, estopped and permanently enjoined from asserting against Buyer, its Affiliates, its successors or assigns, its property or the Transferred Assets, such persons' or entities' AFFF Claims that have been or could have been asserted against the Debtor arising prior to the closing of the Sale.  For the avoidance of doubt, the foregoing shall

not release Buyer from, or enjoin any actions against Buyer for, any Assumed Liability or any other liability incurred by Buyer on account of its operations following the closing of the Sale.

## Limitations on Exculpations and Releases

Notwithstanding anything to the contrary in the Plan, none of the releases or exculpations set forth in the Plan shall operate to waive or release any obligation or Causes of Action of any Person:  (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations or (b) expressly set forth in and preserved by the Plan, the Plan Supplement, Plan Documents or related documents.

## Release Dispute

In the event of a Release Dispute, a Released Party may, at its sole cost and expense, file a motion with the Bankruptcy Court seeking a determination as to whether an AFFF Claimant's Cause of Action was settled and released pursuant to the Plan, and upon such motion, the Bankruptcy Court shall make such determination and, if appropriate, enjoin the prosecution of such Cause of Action as having been settled and released under the Plan.

## Relevant Definitions

"*2020 Separation Agreement*" means that certain Separation and Distribution Agreement, dated as of April 2, 2020, by and among United Technologies Corporation, Carrier Global Corporation, and Otis Worldwide Corporation.

"*Administrative Claim*" means an Allowed Claim for costs and expenses of administration of the Chapter 11 Case pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate; (b) Allowed Professional Compensation Claims; (c) Allowed Fee Examiner Compensation Claims; and (d) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

"*AFFF*" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

"*AFFF Claim*" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.

"*Assumed Liability*" shall have the meaning set forth in the Acquisition Agreement.

"*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other Claims, Causes of Action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties-in-interest under the Bankruptcy Code or applicable non-

bankruptcy law, including claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) was commenced prior to the Effective Date.

"*Buyer*" means Pacific Erin Opco, LLC, as the purchaser of substantially all of the Debtor's assets pursuant to the Acquisition Agreement and the Sale Order.

"*Carrier*" means Carrier Global Corporation, a Delaware corporation, and its non-Debtor affiliates and Related Parties.

"*Causes of Action*" means any current or future actions, Claims, cross-claims, third-party claims, causes of action, controversies, disputes, demands, rights, liens, indemnities, contributions, guaranties, suits, obligations, liabilities, losses, debts, fees or expenses, damages, interest, judgments, costs, accounts, defenses, remedies, offsets, powers, privileges, proceedings, licenses, and franchises of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, choate or inchoate, capable of being asserted directly or derivatively (including any alter ego theories), including any Claims for recovery of attorneys' fees, turnover, fraud, gross negligence, or willful misconduct, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws, consumer protection laws, environmental laws, or nuisance or trespass theories).  Causes of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to or otherwise contest Claims or Interests, (c) any claim pursuant to section 362 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Actions.

"*Channeled AFFF Claims*" means all AFFF Claims against the Debtor or the Estate channeled to the Primary AFFF Settlement Trust under the Plan and Settlement Trust Documents.  For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

"*Committee*" means the official committee of unsecured creditors of the Debtor appointed by the U.S. Trustee in the Chapter 11 Case under section 1102(a) of the Bankruptcy Code pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 83] and any amendments thereto.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Settling Parties.

"*Consummation*" means the occurrence of the Effective Date.

"*Debtor*" means Kidde-Fenwal, Inc., the debtor and debtor in possession in the Chapter 11 Case, now known as KFI Wind-Down Corp.  In 2007, KFFI (formerly known as National Foam, Inc.) merged into Kidde-Fenwal, Inc., with Kidde-Fenwal, Inc. as the surviving entity.  Pursuant to this merger, KFFI's liabilities were assumed by, and KFFI's causes of action were transferred to, Kidde-Fenwal, Inc. directly or indirectly by merger or other agreement.  The term "Debtor" includes Kidde-Fenwal, Inc. as successor by merger or other agreement by which Kidde-Fenwal, Inc. obtained or assumed the liabilities and Causes of Action of any Person.

"*Effective Date*" means the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date set forth in the Plan shall have been satisfied or waived and on which a notice indicating the Effective Date has been filed on the docket of the Chapter 11 Case.

"*Estate Causes of Action*" means Causes of Action owned or held by either the Debtor or its Estate, or capable of being asserted (currently, or in the future) by any Person or Governmental Unit on behalf of, under or through, either the Debtor or its Estate, and each of their respective successors or assigns, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions, that may be commenced by a representative of the Estate under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise.  Without limiting the foregoing, Estate Causes of Action shall include:  (a) Causes of Action that on or after the Petition Date may be exclusively asserted by or on behalf of the Debtor or its Estate under applicable law, or that prior to the Petition Date could have been asserted by the Debtor on its own behalf under applicable law, including Causes of Action based on (i) the doctrine of successor liability that seek to impose the Debtor's (including KFFI's or National Foam, Inc.'s) liabilities on an alleged successor, whether based on a contractual assumption of liability, consolidation or de facto merger, acquisition of the Debtor's product line, fraud, domination, direction of the Debtor's affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, or (ii) the doctrines of alter ego or veil piercing involving alter egos of the Debtor or the piercing of the Debtor's (including KFFI's or National Foam, Inc.'s) corporate veil, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form; (b) Causes of Action or theories for recovery or remedies that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is generally common to creditors of the Debtor and can be asserted by the Debtor under applicable law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor.  Subsections (a), (b) and (c) immediately above expressly encompass any Causes of Action based on:  (i) the alleged assumption of the Debtor's (including KFFI's or

National Foam, Inc.'s) liabilities (but not a non-Debtor's liabilities) by Kidde plc (n/k/a Kidde Limited) pursuant to the 2000 Demerger Agreement, or any alleged subsequent assumption of such liabilities of the Debtor from Kidde plc by any other Released Party; or (ii) the alleged assumption of the Debtor's liabilities (but not a non-Debtor's liabilities), including any liabilities resulting from acts or omissions of National Foam, Inc. or KFFI, by a Released Party pursuant to the 2020 Separation Agreement.  For the avoidance of doubt, Estate Causes of Action shall not include any Independent AFFF Causes of Action or any Sovereign State Retained Causes of Action or Insurance Actions against any Released Party based on acts or omissions occurring after entry into the Plan Support Agreement with respect to rights under the 2020 Separation Agreement or the RTX Waiver to access and make Claims under any Insurance Policy or otherwise obtain the benefit of the Insurance Assignment.

"*Estate Claims Settlement*" means the settlement, including the release of all Estate Causes of Action against the Released Parties, pursuant to the Estate Claims Settlement Agreement.

"*Independent AFFF Cause of Action*" means any Cause of Action that could be asserted by an AFFF Claimant against a Non-Debtor Party based on the Non-Debtor Party's own conduct and breach of duty (*i.e.*, duty owed to the AFFF Claimant and not owed to the Debtor), including (a) Causes of Action arising from such acts or omissions of such Non-Debtor Party, and (b) Causes of Action based on allegations that a Non-Debtor Party is responsible for such conduct under theories of liability or recovery or remedies that could have been asserted by an AFFF Claimant on its own behalf under applicable state or federal law in respect of such Causes of Action prior to the Petition Date based on (i) the doctrine of successor liability involving a Non-Debtor Party that is alleged to be a successor to another Non-Debtor Party with respect to liabilities not directly or indirectly assumed from the Debtor, whether based on a contractual assumption of liability (including under the 2020 Separation Agreement), consolidation or de facto merger, acquisition of product line, fraud, domination, direction of affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, (ii) the doctrines of alter ego or veil piercing involving alter egos of a Non-Debtor Party, or piercing the corporate veil between Non-Debtor Parties, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form, or (iii) alleged derivative or vicarious liability of a Non-Debtor Party for liabilities of another Non-Debtor Party not directly or indirectly assumed from the Debtor; *provided* that, if any Cause of Action falls within the definition of Estate Cause of Action or Sovereign State Retained Cause of Action, it is not an Independent AFFF Cause of Action.
"*Insurance Assignment*" means the transfer by the Debtor and Carrier to the Primary AFFF Settlement Trust of certain rights in connection with the Insurance Policies as set forth in Article 5 of the Plan.

"*Insurance Policy/ies*" means: (i) any insurance policies listed on Schedule 1 to the Plan, (ii) to the extent not listed on Schedule 1, any "general liability" insurance (which, for the avoidance of doubt, shall exclude director & officer, automobile, or workers' compensation insurance) contract, binder, certificate, insurance policy, or reinsurance policy, whether currently known or unknown, discovered after the Effective Date, in effect at any time on or before the Petition Date naming the Debtor, the Contributing Parties, or any of their predecessors, subsidiaries, or past or present affiliates as an insured (whether as the primary or additional insured) or that provides or may provide coverage to Carrier or the Debtor for AFFF Claims, (iii) "Aviation" policies to

which Carrier or the Debtor has rights as listed in Schedule 2 to the Plan solely to the extent of Insurance Policy Rights applicable to or arising from AFFF Claims and (iv) any other subsequently discovered insurance policies of the same types as listed in Schedules 1 and 2 to the Plan to the extent that Carrier or the Debtor have rights under such policies (whether or not such policies are specifically titled as "General Liability" or "Aviation" policies).  For the avoidance of doubt, "Insurance Policies" shall not include any D&O Policies, automobile policies or worker's compensation insurance.

"*Insurance Policy Rights*" means any and all rights subject to the Insurance Assignment.

"*KFFI*" means Kidde Fire Fighting, Inc. (formerly known as National Foam, Inc.).

"*Liquidating Estate Claims*" means Administrative Claims, Priority Tax Claims, Other Priority Claims and Secured Claims.

"*New National Foam*" means, collectively, National Foam, Inc. f/k/a Eurostar US Tradeco, Inc., Angus Fire Ltd. f/k/a Eurostar Tradeco Limited, Angus International Safety Group Limited f/k/a/ Eurostar Holdco Limited, and each of their Related Parties.

"*New National Foam Release*" means a settlement between the Debtor and New National Foam pursuant to which (a) Estate Causes of Action against New National Foam are resolved for value reasonably acceptable to the Settling Parties and (b) New National Foam agrees to absolutely, unconditionally, and irrevocably release and discharge the Debtor and each Released Party from any and all Claims and Causes of Action, whether known or unknown, based on or relating to, or in any manner arising from that certain Share and Business Sale Agreement, dated as of June 28, 2013, or any other occurrence taking place on or before the Effective Date, including Proof of Claim No. 225, and otherwise in form and substance reasonably acceptable to the Settling Parties.

"*Non-Debtor Party*" means any Person other than the Debtor.  For the avoidance of doubt, the term "*Non-Debtor Party*" does not include KFFI or National Foam, Inc.

"*Other Insurance Company*" means an Insurance Company that is not a Settling Insurance Company.

"*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"*Person*" means a "person" or "entity" as defined in the Bankruptcy Code.

"*Petition Date*" means May 14, 2023, the date on which the Debtor commenced the Chapter 11 Case.

"*PFAS*" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.

"*Primary AFFF Settlement Trust*" means the settlement trust organized under the laws of the state of Delaware and established under the Plan and the Settlement Trust Documents, which

shall (i) have the powers, duties and obligations set forth in the Plan and the Settlement Trust Documents, (ii) assume all liability of the Debtor and the Estate for, and administer, all Channeled AFFF Claims and (iii) be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code.

"*Primary AFFF Settlement Trust Agreement*" means the Settlement Trust Agreement governing the Primary AFFF Settlement Trust, dated as of the Effective Date, as the same may be amended or modified from time to time in accordance with the terms thereof.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Released Party*" means (i) Carrier, (ii) RTX, and (iii) each of their Related Parties in their capacities as such.  Released Parties shall not include DuPont, 3M, or their current or former affiliates and Related Parties.  If a Person is a current or former affiliate or Related Party of DuPont or 3M, and such Person is also a current or former affiliate or Related Party of Carrier or RTX, then such Person shall not be a Released Party.  For the avoidance of doubt, New National Foam shall not be a Released Party unless the New National Foam Release  is provided by the Effective Date.

"*Related Party*" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, and current and former affiliates and subsidiaries, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, all only in their capacity as a representative of such Person, and (c) respective heirs, executors, estates, and nominees, in each case solely in its capacity as such.

"*RTX Waiver*" shall have the meaning set forth in Article 5.5.11(b) of the Plan.

"*Sale Order*" means the *Order (I) Approving the Sale of All or Substantially All of the Debtor's Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving Debtor's Entry, and Performance Under the Contribution Agreement, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Granting Related Relief*, entered by the Bankruptcy Court on April 2, 2024 [D.I. 1058].

"*Settlement Trust Agreements*" means, collectively, (i) the Primary AFFF Settlement Trust Agreement, (ii) the Sovereign State AFFF Settlement Trust Agreement and (iii) the GUC Liquidating Trust Agreement.  To the extent that any provision of a Settlement Trust Agreement impacts the rights of Carrier, such provision shall not be included in such Settlement Trust Agreement unless reasonably acceptable to Carrier.

"*Settlement Trust Documents*" means, collectively, (a) the Settlement Trust Agreements, (b) the TDPs, (c) the Confirmation Order, and (d) any other agreements, instruments, and documents governing the establishment, administration, and operation of the Settlement Trusts.

"*Settlement Trusts*" means the Primary AFFF Settlement Trust, Sovereign State AFFF Settlement Trust and GUC Liquidating Trust.

"*Settling Insurance Company*" means any Insurance Company that contributes funds, proceeds, or other consideration to or for the benefit of the Primary AFFF Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order.  No Insurance Company shall be considered a Settling Insurance Company without the Committee's prior written consent.

"*Sovereign State*" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.

"*Sovereign State AFFF Settlement Trust*" means the trust established under the Plan and the Settlement Trust Documents to administer all Sovereign State Claims against the Debtor.  The Sovereign State AFFF Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code and shall have the powers, duties and obligations set forth in the Settlement Trust Documents.

"*Sovereign State Retained Cause of Action*" means any Claim or Cause of Action asserted, or which may be asserted, by a Sovereign State against a Contributing Party that (1) is not an Estate Cause of Action and (2) arises from a statute, regulation, or common law that creates a theory of liability, by which a Sovereign State could recover damages or penalties, or obtain equitable or injunctive relief, against a Contributing Party.  For the avoidance of doubt, a Sovereign State may assert a Sovereign State Retained Cause of Action irrespective of whether such Sovereign State Retained Cause of Action could also be considered an Independent AFFF Cause of Action.

"*TDPs*" or "Trust Distribution Procedures" means the Trust Distribution Procedures for the Settlement Trusts, as the same may be amended or modified from time to time in accordance with the terms thereof, that will govern the claims submission, adjudication, and distribution processes for the Settlement Trusts in a manner that is fair and equitable to Holders of Allowed Channeled AFFF Claims.  To the extent that any provision of the TDPs impacts the rights of Carrier, such provision shall not be included unless reasonably acceptable to Carrier.

"*Transferred Assets*" shall have the meaning set forth in the Acquisition Agreement.

## **EXHIBIT 2M**

**AFFF Master Ballot for Class 3A: Water Provider Claims**

## **KFI WIND-DOWN CORP. PLAN BALLOT**

> ### THIS BALLOT IS FOR HOLDERS OF CLAIMS AGAINST KFI WIND-DOWN CORP. (F/K/A KIDDE-FENWAL, INC.) ARISING FROM ITS AFFF OR AFFF-CONTAINING PRODUCTS.

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |

### MASTER BALLOT FOR ACCEPTING OR REJECTING
### THE DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
### UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

### CLASS 3A:  WATER PROVIDER CLAIMS

On May 14, 2023 (the "Petition Date"), KFI Wind-Down Corp. f/k/a Kidde-Fenwal, Inc. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") (the "Chapter 11 Case").

On [•], 2025, the Debtor filed the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Plan"),[2] which is described in greater detail in the *Disclosure Statement for the Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Disclosure Statement").

---

[1] The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters are located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

> **THE PLAN CONTAINS RELEASE, INJUNCTION AND EXCULPATORY PROVISIONS.  THESE PROVISIONS ARE SET FORTH IN APPENDIX A TO THIS MASTER BALLOT.  YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.**

On [•], 2025, the Bankruptcy Court entered an order [D.I. [•]] (the "Disclosure Statement Order") approving the Disclosure Statement as containing "adequate information" within the meaning ascribed to such term in section 1125 of the Bankruptcy Code and procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures").

The Plan, Disclosure Statement, Disclosure Statement Order, Solicitation Procedures and documents included in the Plan Supplement as of the Solicitation Mailing Deadline have been included in the package of materials containing the attached master ballot (the "Master Ballot") and can be accessed free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code.  For a description of the Causes of Action to be enjoined and the identities of the Persons that would be subject to this injunction, see Article IV.E.8 of the Disclosure Statement and Article 10.8 of the Plan.

A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of the Claims that submit votes in that Voting Class vote to accept the Plan.  Even if a Voting Class votes to reject the Plan, the Bankruptcy Court nonetheless may confirm the Plan if it finds the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

If the Plan is confirmed by the Bankruptcy Court, all Holders of Claims against and Interests in the Debtor (including those Holders who reject the Plan or abstain from voting on the Plan, and those Holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby.

The Debtor will file the Plan Supplement (as may be amended, modified or supplemented from time to time) with the Bankruptcy Court no later than **November 17, 2025**.

The documents included in the Plan Supplement as of the Solicitation Mailing Deadline are included in your Solicitation Package. Any further Plan Supplement, and any amendments or supplements to the foregoing, will only be served on:  (a) the U.S. Trustee, (b) the Notice Parties and (c) the 2002 List.   Once filed, a copy of the Plan Supplement will also be available for review and download on the Debtor's website maintained by the Solicitation Agent free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

**Unless such time is extended by the Debtor, in consultation with the Settling Parties, or the Bankruptcy Court, the Master Ballot must be properly completed, signed and submitted to the Solicitation Agent *so as to be actually received* no later than 5:00 p.m.**

(prevailing Eastern Time) on December 15, 2025 (the "Voting Deadline") in order for the votes on the Master Ballot to count. Unless you receive express, written permission from the Debtor to submit a Master Ballot via other means, the **ONLY** acceptable manner of submission of Master Ballots is either (a) by email to KFIInquiries@stretto.com or (b) by regular mail, overnight courier or hand delivery to KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, in either case so that it is actually received by the Solicitation Agent by or before the Voting Deadline (December 15, 2025 at 5:00 p.m. (prevailing Eastern Time)).

This Master Ballot is to be used by attorneys only for voting on behalf of Holders of Water Provider Claims against the Debtor in Class 3A of the Plan. Please refer to the Plan for the specific definition of "Water Provider Claim," which is copied below, as well as other relevant definitions.

*"Holder" means a Person holding a Claim against or an Interest in the Debtor.*

*"Water Provider Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Public Water System for damages relating to such Public Water System.*

*"AFFF" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.*

*"AFFF Claim" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.*

*"Sovereign State" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.*

*"Sovereign Tribe" means any American Indian or Alaskan Native Tribe, band, nation, pueblo, village or community, that the U.S. Secretary of the Interior acknowledges as an Indian Tribe, as provided in the Federally Recognized Tribe List Act of 1994, 25 U.S.C. § 5130, and as periodically listed by the U.S. Secretary of the Interior in the Federal Register pursuant to 25 U.S.C. § 5131; and any "Tribal Organization" as provided in the Indian Self-Determination and Education and Assistance Act of 1975, as amended, 25 U.S.C. § 5304(1).*

*"Public Water System" means a system for the provision to the public of water for human consumption through pipes or other constructed conveyances, if such system has at least fifteen (15) service connections or regularly serves an average of at least twenty-five (25) individuals daily at least sixty (60) days out of the year, consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C. §*

4899-0290-5089 v.6

*300f(4)(A), and 40 C.F.R. Part 141.  The term "Public Water System" includes (i) any collection, treatment, storage, and distribution facilities under control of the operator of such system and used primarily in connection with such system, (ii) any collection or pretreatment storage facilities not under such control which are used primarily in connection with such system, (iii) a Community Water System of any size, (iv) a Non-Transient Non-Community Water System of any size, and (v) any Person (but not any financing or lending institution) that has legal authority or responsibility (by statute, regulation, other law, or contract) to fund or incur financial obligations for the design, engineering, installation, operation, or maintenance of any facility or equipment that treats, filters, remediates, or manages water that has entered or may enter Drinking Water or any Public Water System.*

*"Claim" has the meaning ascribed to such term under section 101(5) of the Bankruptcy Code.*

*"Community Water System" means a Public Water System that serves at least fifteen (15) service connections used by year-round residents or regularly serves at least twenty-five (25) year-round residents, consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C. § 300f(15), and 40 C.F.R. Part 141.*

*"Non-Transient Non-Community Water System" means a Public Water System that is not a Community Water System and that regularly serves at least twenty-five (25) of the same persons over six (6) months per year, consistent with the use of that term in 40 C.F.R. Part 141.*

*"PFAS" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.*

*"Person" means a "person" or "entity" as defined in the Bankruptcy Code.*

*"Drinking Water" means water provided for human consumption (including uses such as drinking, cooking, and bathing), consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C. §§ 300f to 300j-27.  The term "Drinking Water" includes raw or untreated water that a Public Water System has drawn or collected from a Water Source so that the water may then (after any treatment) be provided for human consumption but does not include raw or untreated water that is not drawn or collected from a Water Source.*

*"Water Source" means a groundwater well, a surface-water intake, or any other intake point from which a Public Water System draws or collects water for distribution as Drinking Water, and the raw or untreated water that is thus drawn or collected.*

*[Remainder of page left intentionally blank]*

-4-

## <u>DOCUMENTS INCLUDED WITH THE MASTER BALLOT</u>

You should have received the following documents with the Master Ballot (collectively, the "<u>Solicitation Package</u>").  **Please note that some of the following documents may be included on a USB flash drive included as part of your Solicitation Package.**

- the Cover Letter;

- the Committee Letter;

- the Solicitation Procedures;

- a USB flash drive containing a copy of the Disclosure Statement (and exhibits thereto, including the Plan) and the documents contained in the Plan Supplement that have been filed prior to the Solicitation Mailing Deadline;

- the Disclosure Statement Order (without exhibits);

- a preaddressed, return envelope for completed Master Ballots;

- the Confirmation Hearing Notice; and

- any other materials ordered by the Court to be included as part of the Solicitation Package.

If you have questions about the Master Ballot, or if you did not receive a copy of the Plan or any related materials, please contact the Solicitation Agent at <u>KFIInquiries@stretto.com</u> or (866) 887-0488 (toll-free) or +1 (949) 889-0128 (international).  Information may also be obtained at <u>https://cases.stretto.com/kfi</u> by clicking the link for "Plan & Disclosure Statement" on the landing page.

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtor or any other party for payment purposes.

## INSTRUCTIONS FOR COMPLETING THE MASTER BALLOT

1.      The Master Ballot is provided to you, as an attorney for Holders of Water Provider Claims against the Debtor, in connection with the solicitation of votes of Holders of Water Provider Claims to accept or reject the Plan.  The Disclosure Statement and Plan are also being provided to you.   PLEASE READ ALL DOCUMENTS CAREFULLY BEFORE COMPLETING THE MASTER BALLOT.

2.      The Master Ballot is to be used by attorneys who represent, **and are authorized to vote on behalf of**, one or more Holders of Water Provider Claims.  You may be required to provide evidence of your authorization by Holders of Water Provider Claims to vote to accept or reject the Plan.

3.      You are receiving this Master Ballot because you represent certain clients (collectively, your "Eligible Clients") who are Holders of Water Provider Claims against the Debtor.  Your firm ("Firm") must certify to one of the options below with respect to each Eligible Client whose vote is included in your Firm's Master Ballot.

　　　(a)      "Option (a) Certification":  The Firm (or one or more of its attorneys) has communicated with the applicable Eligible Client (as defined below) and has been authorized, consistent with applicable law, by such Eligible Client to vote their Water Provider Claims to accept or reject the Plan.  The Firm may not rely on negative notice for such authorization.

　　　(b)      "Option (b) Certification":  The Firm (or one or more of its attorneys) has the authority under a power of attorney to vote to accept or reject the Plan on behalf of the applicable Eligible Client and the Firm completed the vote on behalf of such Eligible Client on the Master Ballot in accordance with the authority granted to the Firm.

4.      To use the Master Ballot, you must be authorized to vote on behalf of your Eligible Clients under all applicable standards for such authorization.  With respect to any of the Eligible Clients on the Exhibit, if you are unable to certify that you have the authority to vote on the Plan on behalf of such Eligible Client, you must not vote on behalf of such Eligible Client.

5.      To be entitled to vote on the Plan, a Holder of a Water Provider Claim in Class 3A (either directly or through his or her attorney or agent) must be able to certify that such Holder has a Water Provider Claim in Class 3A.

6.      To have the votes reflected on the Master Ballot counted for purposes of voting on the Plan, the Master Ballot must be completed, signed, and submitted **so that it is actually received** no later than the Voting Deadline by the Solicitation Agent as set forth in these instructions below.   Master Ballots will be accepted either (i) by email to KFIInquiries@stretto.com or (ii) by regular mail, overnight courier or hand delivery to KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602 unless the party submitting a Master Ballot previously received permission in writing from the Debtor to submit such Master

-6-

Ballot via other means.  If a Master Ballot is received after the Voting Deadline (as may be extended by the Debtor in writing, in consultation with the Settling Parties), it may not be counted. If the Master Ballot is not signed on the appropriate lines, the Master Ballot will not be valid or counted as having been cast.

7.      The Master Ballot will not constitute or be deemed a Proof of Claim or Interest, an assertion of a Claim, the allowance of a Claim, or the acceptance or liquidation of any Water Provider Claim for purposes of any distribution.  None of the information set forth in the Master Ballot shall constitute an admission by the Debtor as to the extent, validity, or priority of the Claim voted herein, nor shall anything contained herein or information submitted in or with the Master Ballot be binding upon the Debtor or the Holder in any subsequent claims resolution process or other proceeding.  The Master Ballot may not be used for any purposes other than to transmit votes on the Plan.

8.      Multiple Master Ballots may be completed and delivered to the Solicitation Agent. Subject to the terms of the Solicitation Procedures, votes reflected by multiple Master Ballots submitted by the same Firm will be counted except to the extent that they are duplicative of other Master Ballots.  If two or more such ballots submitted by the same Firm are inconsistent, the last valid Master Ballot received by the Solicitation Agent on or before the Voting Deadline will, to the extent of such inconsistency, govern unless otherwise ordered by the Bankruptcy Court.  If more than one Master Ballot is submitted and the last such ballot supplements rather than supersedes earlier Master Ballot(s), please designate the subsequent Master Ballot(s) as "Supplemental" and clearly mark which of those votes reflected thereon are additional votes.

9.      Notwithstanding the foregoing, if the Solicitation Agent receives two or more Master Ballots from separate Firms, each of whom purports to represent the same Holder of a Water Provider Claim, it is the sole obligation and responsibility of the Firms to coordinate with each other to resolve any conflicting representations, and for the appropriate Firm to submit the vote on behalf of such Eligible Client together with an email to KFIInquiries@stretto.com copying all affected Firms confirming such resolution.  The Solicitation Agent is entitled to rely upon such an email.  If the Firms are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple consistent votes on account of such Eligible Client (*i.e.*, multiple votes to accept the Plan or multiple votes to reject the Plan), the Solicitation Agent is authorized to treat such votes as duplicative and count them only once for both numerosity and voting amount purposes.  If, however, the Firms voting on account of such Eligible Client are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple inconsistent votes on account of such Eligible Client (*i.e.*, a vote to accept the Plan and a vote to reject the Plan), the Solicitation Agent shall contact the relevant Firms and request they coordinate with each other to resolve the conflicting representation.  If after the submission of inconsistent votes but prior to the Voting Deadline, the applicable Firms timely reach a consensus regarding which vote should be counted, one of the applicable Firms may email KFIInquiries@stretto.com, copying all other affected Firms, and direct the Solicitation Agent as to which vote should be counted.  The Solicitation Agent is entitled to rely upon such an email.  If representation of the Holder of the Claim is not resolved within 10 calendar days from the notice of the conflict as provided by the Solicitation Agent, such votes shall not be counted.

-7-

10.      Each Holder of a Water Provider Claim that votes must vote his or her entire Claim either, to ACCEPT (vote in favor of), or to REJECT (vote against), the Plan.  A Holder of a Water Provider Claim may not split his or her vote.  Accordingly, the votes of any Holder of a Water Provider Claim who purports partially to accept and partially to reject the Plan will not be counted.

11.      If the Master Ballot is signed and timely sent to the Solicitation Agent, but does not designate either acceptance or rejection, or designates both acceptance and rejection, of the Plan for any particular claimant listed on the Exhibit, then the Solicitation Agent may, at its discretion, either contact the party submitting the Master Ballot in order to cure the defect on the Master Ballot or such Claim will not be counted either as an acceptance or rejection of the Plan.

12.      **To complete the Master Ballot properly, you must follow the procedures described below:**

Item 1 of the Master Ballot requires that you to indicate, for each Eligible Client on the Exhibit for which you are casting a vote, (a) the authority upon which votes on behalf of each such Eligible Client are being included (*i.e.*, Option (a) Certification or Option (b) Certification as described above) in the Master Ballot and (b) whether such Eligible Client accepts or rejects the Plan.

Item 2 of the Master Ballot contains certifications which are required for you to submit a vote on behalf of one or more Holders of Water Provider Claims.  Please ensure that you have read and understood the certifications before signing the Master Ballot.  **If you are unable to make the certification as to the authority to vote on behalf of any Holder of a Water Provider Claim you represent, you may not cast a vote on behalf of such Holder.**

Sign the Master Ballot.

Provide your name and mailing and email addresses where indicated.

Contact the Solicitation Agent if you need additional information or copies of any documents contained in the Solicitation Package or if you have any technical questions regarding composition and submission of your Master Ballot.

Submit the completed, executed Master Ballot *so as to be actually received* by the Solicitation Agent before the Voting Deadline either (i) by email to KFIInquiries@stretto.com or (ii) by regular mail, overnight courier or hand delivery to KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602.

---

**IF YOU HAVE ANY QUESTIONS REGARDING THE MASTER BALLOT,**
**BELIEVE YOU MAY HAVE RECEIVED AN INCORRECT BALLOT,**
**OR IF YOU DID NOT RECEIVE A COPY OF ANY OF**

---

-8-

**THE DOCUMENTS DESCRIBED IN THESE INSTRUCTIONS,
PLEASE CONTACT THE SOLICITATION AGENT AT:**

**TELEPHONE: (866) 887-0488 (TOLL-FREE)
OR +1 (949) 889-0128 (INTERNATIONAL)
E-MAIL: KFIINQUIRIES@STRETTO.COM
OR VISIT HTTPS://CASES.STRETTO.COM/KFI**

4899-0290-5089 v.6

# **PLAN BALLOT**

## MASTER BALLOT FOR ACCEPTING OR REJECTING THE DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

---

### CLASS 3A: WATER PROVIDER CLAIMS

---

**PLEASE COMPLETE THE FOLLOWING:**

The Solicitation Procedures are included within the Solicitation Package that accompanies these instructions. The Solicitation Procedures contain important information regarding the balloting process. Please read the Solicitation Procedures before submitting this Master Ballot. If you have any technical questions or need to arrange for special delivery of your Master Ballot, please contact the Solicitation Agent.

**Please note that each Holder of a Water Provider Claim who votes on the Plan must vote the entire amount of his or her Claim to accept or reject the Plan. All AFFF Claims have been temporarily allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance or any other purpose.** Any Holders of AFFF Claims who attempt partially to reject and partially to accept the Plan will not have their vote counted. If this Master Ballot is signed and timely received by the Solicitation Agent but does not designate either acceptance or rejection or designates both acceptance and rejection of the Plan for any particular claimant, such vote will not be counted either as an acceptance or rejection of the Plan.

**Item 1 – List of Holders of Water Provider Claims Represented by the Firm.**

The exhibit to this Master Ballot (the "Exhibit") contains the names set forth on the Client List previously submitted by your Firm with the Solicitation Directive and is a list of each Holder of a Water Provider Claim that you represent. You must indicate on the Exhibit next to each Eligible Client for which you cast a vote (a) the authority upon which votes on behalf of each such Eligible Client are being included (*i.e.*, Option (a) Certification or Option (b) Certification as described in Item 2) on the Master Ballot and (b) whether such Eligible Client accepts or rejects the Plan.

**Item 2 – Certifications, Acknowledgement, Signature, and Date.**

By signing this Master Ballot, the undersigned certifies under penalty of perjury that each of the following statements is true and correct:

- I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the

Solicitation Mailing Deadline, and a letter from the Committee and the MDL PEC Co-Leads urging claimants to vote to ACCEPT (vote in favor of) the Plan.

• I am authorized, by agreement or under applicable law, by each of the Holders of the Water Provider Claims listed on the Exhibit for which I have voted to vote his, her, or its Water Provider Claim to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan.

• For each client listed on the Exhibit and for whom the "Option (a) Certification" is indicated, I or my Firm communicated with each such Eligible Client and have been authorized, consistent with applicable law, by each such Eligible Client to vote each of their Water Provider Claim to accept or reject the Plan. I am not relying on negative notice to make such certification.

• For each Eligible Client listed on the Exhibit and for whom the "Option (b) Certification" is indicated, I or my Firm has the authority under a power of attorney to vote to accept or reject the Plan on behalf of each such Eligible Client and I have completed this Master Ballot in accordance with such authority.

• To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, each Holder of a Water Provider Claim listed on the Exhibit who is casting a vote has, on such Holder's information and belief, a Water Provider Claim against the Debtor.

Print or Type Name of Attorney: _____

Name of Firm: _____

Attorney Signature: _____

Street Address: _____

City, State, and ZIP Code: _____

Telephone Number: _____

E-mail Address of Attorney/Signatory: _____

Date: _____

The entire Exhibit accompanying this Master Ballot must be completed and submitted with this completed Master Ballot to the Solicitation Agent.

-2-

**IF THIS MASTER BALLOT IS NOT *ACTUALLY RECEIVED BY*
THE SOLICITATION AGENT BY 5:00 P.M. (PREVAILING EASTERN TIME) ON
DECEMBER 15, 2025, YOUR VOTE MAY NOT BE COUNTED.**

4899-0290-5089 v.6

**<u>Appendix A</u>**

**Release, Injunction and Exculpation Provisions in the Plan[1]**

---

[1]     The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.

## Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released and cancelled, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Liquidating Estate and their successors and assigns.  Any Holder of such mortgage, deed of trust, Lien, pledge or other security interest (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including and cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Liquidating Administrators to evidence such release, including the execution, delivery and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

## Releases by the Estate

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party, the Debtor, the Liquidating Estate and each Related Party of the Debtor and the Liquidating Estate shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, or any other Person or Governmental Unit asserting currently or in the future by, under, through, or on behalf of the Debtor or its Estate, and each of their respective successors or assigns, including the Settlement Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between one or both of the Debtor, on the one hand, and any Released Party, the Liquidating Estate, or any Related Party of the Debtor and the Liquidating Estate, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.3 of the Plan shall not be construed to release any post-Effective Date obligations under the RTX Waiver, the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, which specifically provides that such Estate Claims Settlement can be terminated, and the releases provided in the Plan or in the Estate Claims Settlement are void, if Carrier fails to make the installments of the Guaranteed Cash Payment when due and such failure is not timely cured within 30 days, at which time the Primary AFFF Settlement Trust is entitled to commence, prosecute, or continue all Estate Causes of Action against the Released Parties in any court of competent jurisdiction, and take such other actions as the Primary AFFF Settlement Trustee may determine in the exercise of their fiduciary duties.

### Releases by the Released Parties

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Released Parties and their successors or assigns of and from any and all Claims and Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, the Debtor's current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between any of the Debtor, the Liquidating Estate, the Settlement Trusts or the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case, on the one hand, and any Released Party, on the other hand, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any post-Effective Date obligations under the Plan Documents, the Confirmation Order, the 2020 Separation Agreement as supplemented by the RTX Waiver, or the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, or the right of any Person to enforce the same in accordance with

the terms thereof. Except with respect to the Claims and Causes of Action against the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case that are released and discharged under Article 10.4 of the Plan, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any obligations, rights, Causes of Action or Claims that Carrier Global Corporation or members of the Carrier Group (other than the Debtor), Otis Worldwide Corporation or members of the Otis Group, or RTX or members of the UTC Group may have against any Person under the 2020 Separation Agreement as supplemented by the RTX Waiver (including indemnification rights of RTX and other members of the "UTC Group" under the 2020 Separation Agreement).  For the avoidance of doubt, in the event that the Estate Claims Settlement Effective Date does not occur or the Estate Claims Settlement is terminated as contemplated by the last paragraph of Article 10.3 in the Plan, all releases being provided by the Released Parties under the Plan shall be void.

## Scope of Releases

Each Person providing releases under the Plan, including the Debtor, the Estate and the Settling Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts. Each Person providing releases under the Plan shall be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

## Exculpation

Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtor and its directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation.

As of the Effective Date, to the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in Article 10 of the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person for any act or omission in connection with, related to or arising out of this Chapter 11 Case, including (a) the operation of the Debtor's businesses during the pendency of this Chapter 11 Case; (b) the

administration and adjudication of Claims and Interests during this Chapter 11 Case; (c) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Plan, the Disclosure Statement, the Plan Supplement, or any related contract, instrument, release or other agreement or document created or entered into in connection with the Chapter 11 Case (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan and the distribution of property under the Plan); (d) any other transaction, agreement, event, or other occurrence related to the Chapter 11 Case taking place on or before the Effective Date, other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.

## Injunction

Except as otherwise expressly provided in the Plan or the Confirmation Order, the satisfaction and release pursuant to Article 10 of the Plan shall also act as a permanent injunction against any Person who has held, holds, or may in the future hold Claims against or Interests in the Debtor or any of its assets or properties based on any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are treated, released, settled, channeled, or exculpated pursuant to the terms of the Plan from taking any of the following actions on account of, or on the basis of, such Claims or Interests:  (a) commencing or continuing any action to collect, enforce, offset, recoup, or recover with respect to any Claims or Interests treated, released, settled, channeled, or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Claim or Interest against the Debtor, the Liquidating Estate, the Settlement Trusts, or its or their respective property; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of or in connection with or with respect to any such Claims or Interests, notwithstanding an indication of a Claim or Interest or otherwise that a Holder of such Claim or Interest asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise, against the Debtor, the Liquidating Estate, or the Settlement Trusts; or (e) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

## Channeling Injunction

Notwithstanding anything to the contrary in the Plan, to preserve and promote the settlements contemplated by and provided for in the Plan, including the Insurance Settlement Agreements, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under sections 105(a) and 1123(b) of the Bankruptcy Code, the sole recourse of any Holder of a Channeled AFFF Claim against the Debtor or a Released Party on account of such Channeled AFFF Claim shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to

and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, and such Holder shall have no right whatsoever at any time to assert any such Channeled AFFF Claim or any Estate Cause of Action that is released under the Estate Claims Settlement against the Debtor or any Released Party or any property or interest in property of the Debtor or any Released Party.  For the avoidance of doubt, the sole recourse for any Channeled AFFF Claim covered by any Insurance Policy issued by a Settling Insurance Company shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents.  Accordingly, on and after the Effective Date, all Holders of AFFF Claims that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled AFFF Claim or any Estate Cause of Action against the Debtor or any Released Party shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from the Debtor or any Released Party with respect to any such Channeled AFFF Claim or Estate Cause of Action, other than from the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, including:

    a)    commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

    b)    enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

    c)    creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

    d)    asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party; or

    e)    taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents, or, with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, by the Sovereign State AFFF Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Channeled AFFF Claim.

The Debtor, the Liquidating Estate and/or any Released Party, as applicable, may enforce the Channeling Injunction and/or the Releases contained in the Plan before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at their own cost and expense, and no such cost or expense incurred by a party other than the Primary AFFF Settlement Trust shall be reimbursed or indemnified by the Primary AFFF Settlement Trust under any circumstances.

## Insurance Company Injunction

Subject to the provisos set forth in this Section, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim or cause of action (including any AFFF Claim or any Claim for or respecting any Primary AFFF Settlement Trust expense) against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Insurance Policy, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, statute or any other theory of law, equity or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim or cause of action, including:

a)       commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, demand, or cause of action against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such Claim, demand, or cause of action against any Insurance Company);

b)       enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

c)       creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such Claim or cause of action; and

d)       except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

*provided, however,* that (i) nothing in this Section shall impair or affect the rights of any member of the UTC Group, including RTX, or any member of the Otis Group (each as defined in the 2020 Separation Agreement), or any additional insured designated by RTX

or any member of the UTC Group, based upon, attributable to, arising out of, or in any way connected with an Insurance Policy, including to assert Claims or Causes of Action against any Insurance Company for covered losses and to receive proceeds in respect thereof; (ii) this injunction shall not impair in any way any actions brought by the Primary AFFF Settlement Trust against any Other Insurance Company; (iii) the Primary AFFF Settlement Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction with respect to any Other Insurance Company, in accordance with the Settlement Trust Documents, upon express written notice to such Other Insurance Company; and (iv) this injunction is not issued for the benefit of any Other Insurance Company, and no Other Insurance Company is a third-party beneficiary of this injunction.

Notwithstanding anything to the contrary in the Plan, this injunction shall not enjoin:

a)    the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of Holders of AFFF Claims to assert such Claims, as applicable, in accordance with the TDPs;

b)    the rights of the Primary AFFF Settlement Trust to prosecute any action based on or arising from Insurance Policies, except to the extent otherwise released;

c)    the rights of the Primary AFFF Settlement Trust to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company based on or arising from the Insurance Policies;

d)    any actions of the Contributing Parties in fulfilling their obligations under the Estate Claims Settlement in consultation and coordination with the Primary AFFF Settlement Trust;

e)    the rights of any Insurance Company to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company; or

f)    the Claims for reinsurance under reinsurance contracts or Claims under retrocessional contracts among the Settling Insurance Companies and any Other Insurance Company.

### Prohibition on Actions Against Buyer

Subject to the Sale Order and the Acquisition Agreement, Buyer, in its capacity as such, shall not have any liability for any AFFF Claims against the Debtor arising prior to the closing of the Sale.  Except as expressly otherwise set forth in the Sale Order, all persons and entities hereby are forever barred, estopped and permanently enjoined from asserting against Buyer, its Affiliates, its successors or assigns, its property or the Transferred Assets, such persons' or entities' AFFF Claims that have been or could have been asserted against the Debtor arising prior to the closing of the Sale.  For the avoidance of doubt, the foregoing shall

not release Buyer from, or enjoin any actions against Buyer for, any Assumed Liability or any other liability incurred by Buyer on account of its operations following the closing of the Sale.

## Limitations on Exculpations and Releases

Notwithstanding anything to the contrary in the Plan, none of the releases or exculpations set forth in the Plan shall operate to waive or release any obligation or Causes of Action of any Person: (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations or (b) expressly set forth in and preserved by the Plan, the Plan Supplement, Plan Documents or related documents.

## Release Dispute

In the event of a Release Dispute, a Released Party may, at its sole cost and expense, file a motion with the Bankruptcy Court seeking a determination as to whether an AFFF Claimant's Cause of Action was settled and released pursuant to the Plan, and upon such motion, the Bankruptcy Court shall make such determination and, if appropriate, enjoin the prosecution of such Cause of Action as having been settled and released under the Plan.

## Relevant Definitions

"*2020 Separation Agreement*" means that certain Separation and Distribution Agreement, dated as of April 2, 2020, by and among United Technologies Corporation, Carrier Global Corporation, and Otis Worldwide Corporation.

"*Administrative Claim*" means an Allowed Claim for costs and expenses of administration of the Chapter 11 Case pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate; (b) Allowed Professional Compensation Claims; (c) Allowed Fee Examiner Compensation Claims; and (d) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

"*AFFF*" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

"*AFFF Claim*" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.

"*Assumed Liability*" shall have the meaning set forth in the Acquisition Agreement.

"*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other Claims, Causes of Action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties-in-interest under the Bankruptcy Code or applicable non-

bankruptcy law, including claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) was commenced prior to the Effective Date.

"*Buyer*" means Pacific Erin Opco, LLC, as the purchaser of substantially all of the Debtor's assets pursuant to the Acquisition Agreement and the Sale Order.

"*Carrier*" means Carrier Global Corporation, a Delaware corporation, and its non-Debtor affiliates and Related Parties.

"*Causes of Action*" means any current or future actions, Claims, cross-claims, third-party claims, causes of action, controversies, disputes, demands, rights, liens, indemnities, contributions, guaranties, suits, obligations, liabilities, losses, debts, fees or expenses, damages, interest, judgments, costs, accounts, defenses, remedies, offsets, powers, privileges, proceedings, licenses, and franchises of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, choate or inchoate, capable of being asserted directly or derivatively (including any alter ego theories), including any Claims for recovery of attorneys' fees, turnover, fraud, gross negligence, or willful misconduct, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws, consumer protection laws, environmental laws, or nuisance or trespass theories). Causes of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to or otherwise contest Claims or Interests, (c) any claim pursuant to section 362 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Actions.

"*Channeled AFFF Claims*" means all AFFF Claims against the Debtor or the Estate channeled to the Primary AFFF Settlement Trust under the Plan and Settlement Trust Documents. For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

"*Committee*" means the official committee of unsecured creditors of the Debtor appointed by the U.S. Trustee in the Chapter 11 Case under section 1102(a) of the Bankruptcy Code pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 83] and any amendments thereto.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Settling Parties.

"*Consummation*" means the occurrence of the Effective Date.

"*Debtor*" means Kidde-Fenwal, Inc., the debtor and debtor in possession in the Chapter 11 Case, now known as KFI Wind-Down Corp.  In 2007, KFFI (formerly known as National Foam, Inc.) merged into Kidde-Fenwal, Inc., with Kidde-Fenwal, Inc. as the surviving entity.  Pursuant to this merger, KFFI's liabilities were assumed by, and KFFI's causes of action were transferred to, Kidde-Fenwal, Inc. directly or indirectly by merger or other agreement.  The term "Debtor" includes Kidde-Fenwal, Inc. as successor by merger or other agreement by which Kidde-Fenwal, Inc. obtained or assumed the liabilities and Causes of Action of any Person.

"*Effective Date*" means the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date set forth in the Plan shall have been satisfied or waived and on which a notice indicating the Effective Date has been filed on the docket of the Chapter 11 Case.

"*Estate Causes of Action*" means Causes of Action owned or held by either the Debtor or its Estate, or capable of being asserted (currently, or in the future) by any Person or Governmental Unit on behalf of, under or through, either the Debtor or its Estate, and each of their respective successors or assigns, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions, that may be commenced by a representative of the Estate under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise.  Without limiting the foregoing, Estate Causes of Action shall include:  (a) Causes of Action that on or after the Petition Date may be exclusively asserted by or on behalf of the Debtor or its Estate under applicable law, or that prior to the Petition Date could have been asserted by the Debtor on its own behalf under applicable law, including Causes of Action based on (i) the doctrine of successor liability that seek to impose the Debtor's (including KFFI's or National Foam, Inc.'s) liabilities on an alleged successor, whether based on a contractual assumption of liability, consolidation or de facto merger, acquisition of the Debtor's product line, fraud, domination, direction of the Debtor's affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, or (ii) the doctrines of alter ego or veil piercing involving alter egos of the Debtor or the piercing of the Debtor's (including KFFI's or National Foam, Inc.'s) corporate veil, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form; (b) Causes of Action or theories for recovery or remedies that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is generally common to creditors of the Debtor and can be asserted by the Debtor under applicable law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor.  Subsections (a), (b) and (c) immediately above expressly encompass any Causes of Action based on:  (i) the alleged assumption of the Debtor's (including KFFI's or

National Foam, Inc.'s) liabilities (but not a non-Debtor's liabilities) by Kidde plc (n/k/a Kidde Limited) pursuant to the 2000 Demerger Agreement, or any alleged subsequent assumption of such liabilities of the Debtor from Kidde plc by any other Released Party; or (ii) the alleged assumption of the Debtor's liabilities (but not a non-Debtor's liabilities), including any liabilities resulting from acts or omissions of National Foam, Inc. or KFFI, by a Released Party pursuant to the 2020 Separation Agreement.  For the avoidance of doubt, Estate Causes of Action shall not include any Independent AFFF Causes of Action or any Sovereign State Retained Causes of Action or Insurance Actions against any Released Party based on acts or omissions occurring after entry into the Plan Support Agreement with respect to rights under the 2020 Separation Agreement or the RTX Waiver to access and make Claims under any Insurance Policy or otherwise obtain the benefit of the Insurance Assignment.

"*Estate Claims Settlement*" means the settlement, including the release of all Estate Causes of Action against the Released Parties, pursuant to the Estate Claims Settlement Agreement.

"*Independent AFFF Cause of Action*" means any Cause of Action that could be asserted by an AFFF Claimant against a Non-Debtor Party based on the Non-Debtor Party's own conduct and breach of duty (*i.e.*, duty owed to the AFFF Claimant and not owed to the Debtor), including (a) Causes of Action arising from such acts or omissions of such Non-Debtor Party, and (b) Causes of Action based on allegations that a Non-Debtor Party is responsible for such conduct under theories of liability or recovery or remedies that could have been asserted by an AFFF Claimant on its own behalf under applicable state or federal law in respect of such Causes of Action prior to the Petition Date based on (i) the doctrine of successor liability involving a Non-Debtor Party that is alleged to be a successor to another Non-Debtor Party with respect to liabilities not directly or indirectly assumed from the Debtor, whether based on a contractual assumption of liability (including under the 2020 Separation Agreement), consolidation or de facto merger, acquisition of product line, fraud, domination, direction of affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, (ii) the doctrines of alter ego or veil piercing involving alter egos of a Non-Debtor Party, or piercing the corporate veil between Non-Debtor Parties, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form, or (iii) alleged derivative or vicarious liability of a Non-Debtor Party for liabilities of another Non-Debtor Party not directly or indirectly assumed from the Debtor; *provided* that, if any Cause of Action falls within the definition of Estate Cause of Action or Sovereign State Retained Cause of Action, it is not an Independent AFFF Cause of Action.
"*Insurance Assignment*" means the transfer by the Debtor and Carrier to the Primary AFFF Settlement Trust of certain rights in connection with the Insurance Policies as set forth in Article 5 of the Plan.

"*Insurance Policy/ies*" means: (i) any insurance policies listed on Schedule 1 to the Plan, (ii) to the extent not listed on Schedule 1, any "general liability" insurance (which, for the avoidance of doubt, shall exclude director & officer, automobile, or workers' compensation insurance) contract, binder, certificate, insurance policy, or reinsurance policy, whether currently known or unknown, discovered after the Effective Date, in effect at any time on or before the Petition Date naming the Debtor, the Contributing Parties, or any of their predecessors, subsidiaries, or past or present affiliates as an insured (whether as the primary or additional insured) or that provides or may provide coverage to Carrier or the Debtor for AFFF Claims, (iii) "Aviation" policies to

which Carrier or the Debtor has rights as listed in Schedule 2 to the Plan solely to the extent of Insurance Policy Rights applicable to or arising from AFFF Claims and (iv) any other subsequently discovered insurance policies of the same types as listed in Schedules 1 and 2 to the Plan to the extent that Carrier or the Debtor have rights under such policies (whether or not such policies are specifically titled as "General Liability" or "Aviation" policies).  For the avoidance of doubt, "Insurance Policies" shall not include any D&O Policies, automobile policies or worker's compensation insurance.

"*Insurance Policy Rights*" means any and all rights subject to the Insurance Assignment.

"*KFFI*" means Kidde Fire Fighting, Inc. (formerly known as National Foam, Inc.).

"*Liquidating Estate Claims*" means Administrative Claims, Priority Tax Claims, Other Priority Claims and Secured Claims.

"*New National Foam*" means, collectively, National Foam, Inc. f/k/a Eurostar US Tradeco, Inc., Angus Fire Ltd. f/k/a Eurostar Tradeco Limited, Angus International Safety Group Limited f/k/a/ Eurostar Holdco Limited, and each of their Related Parties.

"*New National Foam Release*" means a settlement between the Debtor and New National Foam pursuant to which (a) Estate Causes of Action against New National Foam are resolved for value reasonably acceptable to the Settling Parties and (b) New National Foam agrees to absolutely, unconditionally, and irrevocably release and discharge the Debtor and each Released Party from any and all Claims and Causes of Action, whether known or unknown, based on or relating to, or in any manner arising from that certain Share and Business Sale Agreement, dated as of June 28, 2013, or any other occurrence taking place on or before the Effective Date, including Proof of Claim No. 225, and otherwise in form and substance reasonably acceptable to the Settling Parties.

"*Non-Debtor Party*" means any Person other than the Debtor.  For the avoidance of doubt, the term "*Non-Debtor Party*" does not include KFFI or National Foam, Inc.

"*Other Insurance Company*" means an Insurance Company that is not a Settling Insurance Company.

"*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"*Person*" means a "person" or "entity" as defined in the Bankruptcy Code.

"*Petition Date*" means May 14, 2023, the date on which the Debtor commenced the Chapter 11 Case.

"*PFAS*" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.

"*Primary AFFF Settlement Trust*" means the settlement trust organized under the laws of the state of Delaware and established under the Plan and the Settlement Trust Documents, which

shall (i) have the powers, duties and obligations set forth in the Plan and the Settlement Trust Documents, (ii) assume all liability of the Debtor and the Estate for, and administer, all Channeled AFFF Claims and (iii) be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code.

"*Primary AFFF Settlement Trust Agreement*" means the Settlement Trust Agreement governing the Primary AFFF Settlement Trust, dated as of the Effective Date, as the same may be amended or modified from time to time in accordance with the terms thereof.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Released Party*" means (i) Carrier, (ii) RTX, and (iii) each of their Related Parties in their capacities as such. Released Parties shall not include DuPont, 3M, or their current or former affiliates and Related Parties. If a Person is a current or former affiliate or Related Party of DuPont or 3M, and such Person is also a current or former affiliate or Related Party of Carrier or RTX, then such Person shall not be a Released Party. For the avoidance of doubt, New National Foam shall not be a Released Party unless the New National Foam Release is provided by the Effective Date.

"*Related Party*" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, and current and former affiliates and subsidiaries, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, all only in their capacity as a representative of such Person, and (c) respective heirs, executors, estates, and nominees, in each case solely in its capacity as such.

"*RTX Waiver*" shall have the meaning set forth in Article 5.5.11(b) of the Plan.

"*Sale Order*" means the *Order (I) Approving the Sale of All or Substantially All of the Debtor's Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving Debtor's Entry, and Performance Under the Contribution Agreement, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Granting Related Relief*, entered by the Bankruptcy Court on April 2, 2024 [D.I. 1058].

"*Settlement Trust Agreements*" means, collectively, (i) the Primary AFFF Settlement Trust Agreement, (ii) the Sovereign State AFFF Settlement Trust Agreement and (iii) the GUC Liquidating Trust Agreement. To the extent that any provision of a Settlement Trust Agreement impacts the rights of Carrier, such provision shall not be included in such Settlement Trust Agreement unless reasonably acceptable to Carrier.

"*Settlement Trust Documents*" means, collectively, (a) the Settlement Trust Agreements, (b) the TDPs, (c) the Confirmation Order, and (d) any other agreements, instruments, and documents governing the establishment, administration, and operation of the Settlement Trusts.

"*Settlement Trusts*" means the Primary AFFF Settlement Trust, Sovereign State AFFF Settlement Trust and GUC Liquidating Trust.

"*Settling Insurance Company*" means any Insurance Company that contributes funds, proceeds, or other consideration to or for the benefit of the Primary AFFF Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order.  No Insurance Company shall be considered a Settling Insurance Company without the Committee's prior written consent.

"*Sovereign State*" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.

"*Sovereign State AFFF Settlement Trust*" means the trust established under the Plan and the Settlement Trust Documents to administer all Sovereign State Claims against the Debtor.  The Sovereign State AFFF Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code and shall have the powers, duties and obligations set forth in the Settlement Trust Documents.

"*Sovereign State Retained Cause of Action*" means any Claim or Cause of Action asserted, or which may be asserted, by a Sovereign State against a Contributing Party that (1) is not an Estate Cause of Action and (2) arises from a statute, regulation, or common law that creates a theory of liability, by which a Sovereign State could recover damages or penalties, or obtain equitable or injunctive relief, against a Contributing Party.  For the avoidance of doubt, a Sovereign State may assert a Sovereign State Retained Cause of Action irrespective of whether such Sovereign State Retained Cause of Action could also be considered an Independent AFFF Cause of Action.

"*TDPs*" or "Trust Distribution Procedures" means the Trust Distribution Procedures for the Settlement Trusts, as the same may be amended or modified from time to time in accordance with the terms thereof, that will govern the claims submission, adjudication, and distribution processes for the Settlement Trusts in a manner that is fair and equitable to Holders of Allowed Channeled AFFF Claims.  To the extent that any provision of the TDPs impacts the rights of Carrier, such provision shall not be included unless reasonably acceptable to Carrier.

"*Transferred Assets*" shall have the meaning set forth in the Acquisition Agreement.

**EXHIBIT**

**EXHIBIT**

| Creditor Name | Type of Authority for Vote (A OR B) | | Vote to ACCEPT (in Favor of the Plan) OR Vote to REJECT (Against the Plan) | |
|---|---|---|---|---|
| | A | B | ACCEPT | REJECT |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |

In re Kidde-Fenwal, Inc.
Case Number: 23-10638 (LSS)

Master Ballot

## **EXHIBIT 2N**

**AFFF Master Ballot for Class 3B: Airport Claims**

**\*\*KFI WIND-DOWN CORP. PLAN BALLOT\*\***

> # THIS BALLOT IS FOR HOLDERS OF CLAIMS AGAINST KFI WIND-DOWN CORP. (F/K/A KIDDE-FENWAL, INC.) ARISING FROM ITS AFFF OR AFFF-CONTAINING PRODUCTS.

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |

### MASTER BALLOT FOR ACCEPTING OR REJECTING
### THE DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
### UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

### CLASS 3B:  AIRPORT CLAIMS

On May 14, 2023 (the "Petition Date"), KFI Wind-Down Corp. f/k/a Kidde-Fenwal, Inc. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") (the "Chapter 11 Case").

On [•], 2025, the Debtor filed the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Plan"),[2] which is described in greater detail in the *Disclosure Statement for the Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Disclosure Statement").

---

[1]   The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters are located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

> **THE PLAN CONTAINS RELEASE, INJUNCTION AND EXCULPATORY PROVISIONS.  THESE PROVISIONS ARE SET FORTH IN APPENDIX A TO THIS MASTER BALLOT.  YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.**

On [•], 2025, the Bankruptcy Court entered an order [D.I. [•]] (the "Disclosure Statement Order") approving the Disclosure Statement as containing "adequate information" within the meaning ascribed to such term in section 1125 of the Bankruptcy Code and procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures").

The Plan, Disclosure Statement, Disclosure Statement Order, Solicitation Procedures and documents included in the Plan Supplement as of the Solicitation Mailing Deadline have been included in the package of materials containing the attached master ballot (the "Master Ballot") and can be accessed free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code.  For a description of the Causes of Action to be enjoined and the identities of the Persons that would be subject to this injunction, see Article IV.E.8 of the Disclosure Statement and Article 10.8 of the Plan.

A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of the Claims that submit votes in that Voting Class vote to accept the Plan.  Even if a Voting Class votes to reject the Plan, the Bankruptcy Court nonetheless may confirm the Plan if it finds the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

If the Plan is confirmed by the Bankruptcy Court, all Holders of Claims against and Interests in the Debtor (including those Holders who reject the Plan or abstain from voting on the Plan, and those Holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby.

The Debtor will file the Plan Supplement (as may be amended, modified or supplemented from time to time) with the Bankruptcy Court no later than **November 17, 2025**.

The documents included in the Plan Supplement as of the Solicitation Mailing Deadline are included in your Solicitation Package. Any further Plan Supplement, and any amendments or supplements to the foregoing, will only be served on:  (a) the U.S. Trustee, (b) the Notice Parties and (c) the 2002 List. Once filed, a copy of the Plan Supplement will also be available for review and download on the Debtor's website maintained by the Solicitation Agent free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

**Unless such time is extended by the Debtor, in consultation with the Settling Parties, or the Bankruptcy Court, the Master Ballot must be properly completed, signed and submitted to the Solicitation Agent *so as to be actually received* no later than 5:00 p.m. (prevailing Eastern Time) on December 15, 2025 (the "Voting Deadline") in order for the**

4922-5171-5329 v.8

votes on the Master Ballot to count.  **Unless you receive express, written permission from the Debtor to submit a Master Ballot via other means, the <u>ONLY</u> acceptable manner of submission of Master Ballots is either (a) by email to <u>KFIInquiries@stretto.com</u> or (b) by regular mail, overnight courier or hand delivery to KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, in either case so that it is <u>actually received</u> by the Solicitation Agent by or before the Voting Deadline (December 15, 2025 at 5:00 p.m. (prevailing Eastern Time)).**

This Master Ballot is to be used by attorneys only for voting on behalf of Holders of Airport Claims against the Debtor in Class 3B of the Plan.  Please refer to the Plan for the specific definition of "Airport Claim," which is copied below, as well as other relevant definitions.

*"Holder" means a Person holding a Claim against or an Interest in the Debtor.*

*"Airport Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of an Airport for damages relating to such Airport.*

*"AFFF" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.*

*"AFFF Claim" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.*

*"Sovereign State" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.*

*"Sovereign Tribe" means any American Indian or Alaskan Native Tribe, band, nation, pueblo, village or community, that the U.S. Secretary of the Interior acknowledges as an Indian Tribe, as provided in the Federally Recognized Tribe List Act of 1994, 25 U.S.C. § 5130, and as periodically listed by the U.S. Secretary of the Interior in the Federal Register pursuant to 25 U.S.C. § 5131; and any "Tribal Organization" as provided in the Indian Self-Determination and Education and Assistance Act of 1975, as amended, 25 U.S.C. § 5304(1).*

*"Airport" means: (a) all airports categorized by the FAA in the National Plan of Integrated Airport Systems, including all airports that have been issued operating certificates by the FAA pursuant to 14 CFR Part 139; and (b) any firefighter training facility operated on airport property, whether or not operated by the airport itself.*

*"Claim" has the meaning ascribed to such term under section 101(5) of the Bankruptcy Code.*

-3-

**"PFAS" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.**

*[Remainder of page left intentionally blank]*

4922-5171-5329 v.8

## <u>DOCUMENTS INCLUDED WITH THE MASTER BALLOT</u>

You should have received the following documents with the Master Ballot (collectively, the "<u>Solicitation Package</u>").  **Please note that some of the following documents may be included on a USB flash drive included as part of your Solicitation Package.**

- the Cover Letter;

- the Committee Letter;

- the Solicitation Procedures;

- a USB flash drive containing a copy of the Disclosure Statement (and exhibits thereto, including the Plan) and the documents contained in the Plan Supplement that have been filed prior to the Solicitation Mailing Deadline;

- the Disclosure Statement Order (without exhibits);

- a preaddressed, return envelope for completed Master Ballots;

- the Confirmation Hearing Notice; and

- any other materials ordered by the Court to be included as part of the Solicitation Package.

If you have questions about the Master Ballot, or if you did not receive a copy of the Plan or any related materials, please contact the Solicitation Agent at <u>KFIInquiries@stretto.com</u> or (866) 887-0488 (toll-free) or +1 (949) 889-0128 (international).  Information may also be obtained at <u>https://cases.stretto.com/kfi</u> by clicking the link for "Plan & Disclosure Statement" on the landing page.

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtor or any other party for payment purposes.

4922-5171-5329 v.8

## INSTRUCTIONS FOR COMPLETING THE MASTER BALLOT

1.      The Master Ballot is provided to you, as an attorney for Holders of Airport Claims against the Debtor, in connection with the solicitation of votes of Holders of Airport Claims to accept or reject the Plan.  The Disclosure Statement and Plan are also being provided to you. PLEASE READ ALL DOCUMENTS CAREFULLY BEFORE COMPLETING THE MASTER BALLOT.

**2.**      The Master Ballot is to be used by attorneys who represent, **and are authorized to vote on behalf of**, one or more Holders of Airport Claims.  You may be required to provide evidence of your authorization by Holders of Airport Claims to vote to accept or reject the Plan.

3.      You are receiving this Master Ballot because you represent certain clients (collectively, your "Eligible Clients") who are Holders of Airport Claims against the Debtor.  Your firm ("Firm") must certify to one of the options below with respect to each Eligible Client whose vote is included in your Firm's Master Ballot.

   (a)      "Option (a) Certification":  The Firm (or one or more of its attorneys) has communicated with the applicable Eligible Client (as defined below) and has been authorized, consistent with applicable law, by such Eligible Client to vote their Airport Claim to accept or reject the Plan.  The Firm may not rely on negative notice for such authorization.

   (b)      "Option (b) Certification":  The Firm (or one or more of its attorneys) has the authority under a power of attorney to vote to accept or reject the Plan on behalf of the applicable Eligible Client and the Firm completed the vote on behalf of such Eligible Client on the Master Ballot in accordance with the authority granted to the Firm.

4.      To use the Master Ballot, you must be authorized to vote on behalf of your Eligible Clients under all applicable standards for such authorization.  With respect to any of the Eligible Clients on the Exhibit, if you are unable to certify that you have the authority to vote on the Plan on behalf of such Eligible Client, you must not vote on behalf of such Eligible Client.

5.      To be entitled to vote on the Plan, a Holder of an Airport Claim in Class 3B (either directly or through his or her attorney or agent) must be able to certify that such Holder has an Airport Claim in Class 3B.

6.      To have the votes reflected on the Master Ballot counted for purposes of voting on the Plan, the Master Ballot must be completed, signed, and submitted **so that it is actually received** no later than the Voting Deadline by the Solicitation Agent as set forth in these instructions below.    Master Ballots will be accepted either (i) by email to KFIInquiries@stretto.com or (ii) by regular mail, overnight courier or hand delivery to KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602 unless the party submitting a Master Ballot previously received permission in writing from the Debtor to submit such Master Ballot via other means.  If a Master Ballot is received after the Voting Deadline (as may be extended by the Debtor in writing, in consultation with the Settling Parties), it may not be counted.

4922-5171-5329 v.8

If the Master Ballot is not signed on the appropriate lines, the Master Ballot will not be valid or counted as having been cast.

7.      The Master Ballot will not constitute or be deemed a Proof of Claim or Interest, an assertion of a Claim, the allowance of a Claim, or the acceptance or liquidation of any Airport Claim for purposes of any distribution. None of the information set forth in the Master Ballot shall constitute an admission by the Debtor as to the extent, validity, or priority of the Claim voted herein, nor shall anything contained herein or information submitted in or with the Master Ballot be binding upon the Debtor or the Holder in any subsequent claims resolution process or other proceeding. The Master Ballot may not be used for any purposes other than to transmit votes on the Plan.

8.      Multiple Master Ballots may be completed and delivered to the Solicitation Agent. Subject to the terms of the Solicitation Procedures, votes reflected by multiple Master Ballots submitted by the same Firm will be counted except to the extent that they are duplicative of other Master Ballots. If two or more such ballots submitted by the same Firm are inconsistent, the last valid Master Ballot received by the Solicitation Agent on or before the Voting Deadline will, to the extent of such inconsistency, govern unless otherwise ordered by the Bankruptcy Court. If more than one Master Ballot is submitted and the last such ballot supplements rather than supersedes earlier Master Ballot(s), please designate the subsequent Master Ballot(s) as "Supplemental" and clearly mark which of those votes reflected thereon are additional votes.

9.      Notwithstanding the foregoing, if the Solicitation Agent receives two or more Master Ballots from separate Firms, each of whom purports to represent the same Holder of an Airport Claim, it is the sole obligation and responsibility of the Firms to coordinate with each other to resolve any conflicting representations, and for the appropriate Firm to submit the vote on behalf of such Eligible Client together with an email to KFIInquiries@stretto.com copying all affected Firms confirming such resolution. The Solicitation Agent is entitled to rely upon such an email. If the Firms are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple consistent votes on account of such Eligible Client (*i.e.*, multiple votes to accept the Plan or multiple votes to reject the Plan), the Solicitation Agent is authorized to treat such votes as duplicative and count them only once for both numerosity and voting amount purposes. If, however, the Firms voting on account of such Eligible Client are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple inconsistent votes on account of such Eligible Client (*i.e.*, a vote to accept the Plan and a vote to reject the Plan), the Solicitation Agent shall contact the relevant Firms and request they coordinate with each other to resolve the conflicting representation. If after the submission of inconsistent votes but prior to the Voting Deadline, the applicable Firms timely reach a consensus regarding which vote should be counted, one of the applicable Firms may email KFIInquiries@stretto.com, copying all other affected Firms, and direct the Solicitation Agent as to which vote should be counted. The Solicitation Agent is entitled to rely upon such an email. If representation of the Holder of the Claim is not resolved within 10 calendar days from the notice of the conflict as provided by the Solicitation Agent, such votes shall not be counted.

10.     Each Holder of an Airport Claim that votes must vote his or her entire Claim either, to ACCEPT (vote in favor of), or to REJECT (vote against), the Plan. A Holder of an Airport

Claim may not split his or her vote.  Accordingly, the votes of any Holder of an Airport Claim who purports partially to accept and partially to reject the Plan will not be counted.

11.     If the Master Ballot is signed and timely sent to the Solicitation Agent, but does not designate either acceptance or rejection, or designates both acceptance and rejection, of the Plan for any particular claimant listed on the Exhibit, then the Solicitation Agent may, at its discretion, either contact the party submitting the Master Ballot in order to cure the defect on the Master Ballot or such Claim will not be counted either as an acceptance or rejection of the Plan.

**12.     To complete the Master Ballot properly, you must follow the procedures described below:**

Item 1 of the Master Ballot requires that you to indicate, for each Eligible Client on the Exhibit for which you are casting a vote, (a) the authority upon which votes on behalf of each such Eligible Client are being included (*i.e.*, Option (a) Certification or Option (b) Certification as described above) in the Master Ballot and (b) whether such Eligible Client accepts or rejects the Plan.

Item 2 of the Master Ballot contains certifications which are required for you to submit a vote on behalf of one or more Holders of Airport Claims.  Please ensure that you have read and understood the certifications before signing the Master Ballot.  **If you are unable to make the certification as to the authority to vote on behalf of any Holder of an Airport Claim you represent, you may not cast a vote on behalf of such Holder.**

Sign the Master Ballot.

Provide your name and mailing and email addresses where indicated.

Contact the Solicitation Agent if you need additional information or copies of any documents contained in the Solicitation Package or if you have any technical questions regarding composition and submission of your Master Ballot.

Submit the completed, executed Master Ballot *so as to be actually received* by the Solicitation Agent before the Voting Deadline either (i) by email to KFIInquiries@stretto.com or (ii) by regular mail, overnight courier or hand delivery to KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602.

---

**IF YOU HAVE ANY QUESTIONS REGARDING THE MASTER BALLOT,
BELIEVE YOU MAY HAVE RECEIVED AN INCORRECT BALLOT,
OR IF YOU DID NOT RECEIVE A COPY OF ANY OF
THE DOCUMENTS DESCRIBED IN THESE INSTRUCTIONS,
PLEASE CONTACT THE SOLICITATION AGENT AT:**

**TELEPHONE: (866) 887-0488 (TOLL-FREE)**

---

4922-5171-5329 v.8

**OR +1 (949) 889-0128 (INTERNATIONAL)**
**E-MAIL: KFIINQUIRIES@STRETTO.COM**
**OR VISIT HTTPS://CASES.STRETTO.COM/KFI**

4922-5171-5329 v.8

# **PLAN BALLOT**

## MASTER BALLOT FOR ACCEPTING OR REJECTING THE DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

---

### CLASS 3B: AIRPORT CLAIMS

---

**PLEASE COMPLETE THE FOLLOWING:**

The Solicitation Procedures are included within the Solicitation Package that accompanies these instructions. The Solicitation Procedures contain important information regarding the balloting process. Please read the Solicitation Procedures before submitting this Master Ballot. If you have any technical questions or need to arrange for special delivery of your Master Ballot, please contact the Solicitation Agent.

**Please note that each Holder of an Airport Claim who votes on the Plan must vote the entire amount of his or her Claim to accept or reject the Plan. All AFFF Claims have been temporarily allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance or any other purpose.** Any Holders of AFFF Claims who attempt partially to reject and partially to accept the Plan will not have their vote counted. If this Master Ballot is signed and timely received by the Solicitation Agent but does not designate either acceptance or rejection or designates both acceptance and rejection of the Plan for any particular claimant, such vote will not be counted either as an acceptance or rejection of the Plan.

**Item 1 – List of Holders of Airport Claims Represented by the Firm.**

The exhibit to this Master Ballot (the "Exhibit") contains the names set forth on the Client List previously submitted by your Firm with the Solicitation Directive and is a list of each Holder of an Airport Claim that you represent. You must indicate on the Exhibit next to each Eligible Client for which you cast a vote (a) the authority upon which votes on behalf of each such Eligible Client are being included (*i.e.*, Option (a) Certification or Option (b) Certification as described in Item 2) on the Master Ballot and (b) whether such Eligible Client accepts or rejects the Plan.

**Item 2 – Certifications, Acknowledgement, Signature, and Date.**

By signing this Master Ballot, the undersigned certifies under penalty of perjury that each of the following statements is true and correct:

- I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the

Solicitation Mailing Deadline, and a letter from the Committee and the MDL PEC Co-Leads urging claimants to vote to ACCEPT (vote in favor of) the Plan.

- I am authorized, by agreement or under applicable law, by each of the Holders of the Airport Claims listed on the Exhibit for which I have voted to vote his, her, or its Airport Claim to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan.

- For each client listed on the Exhibit and for whom the "Option (a) Certification" is indicated, I or my Firm communicated with each such Eligible Client and have been authorized, consistent with applicable law, by each such Eligible Client to vote each of their Airport Claim to accept or reject the Plan. I am not relying on negative notice to make such certification.

- For each Eligible Client listed on the Exhibit and for whom the "Option (b) Certification" is indicated, I or my Firm has the authority under a power of attorney to vote to accept or reject the Plan on behalf of each such Eligible Client and I have completed this Master Ballot in accordance with such authority.

- To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, each Holder of an Airport Claim listed on the Exhibit who is casting a vote has, on such Holder's information and belief, an Airport Claim against the Debtor.

Print or Type Name of Attorney: _____

Name of Firm: _____

Attorney Signature: _____

Street Address: _____

City, State, and ZIP Code: _____

Telephone Number: _____

E-mail Address of Attorney/Signatory: _____

Date: _____

The entire Exhibit accompanying this Master Ballot must be completed and submitted with this completed Master Ballot to the Solicitation Agent.

-2-

**IF THIS MASTER BALLOT IS NOT *ACTUALLY RECEIVED BY* THE SOLICITATION AGENT BY 5:00 P.M. (PREVAILING EASTERN TIME) ON DECEMBER 15, 2025, YOUR VOTE MAY NOT BE COUNTED.**

4922-5171-5329 v.8

<u>**Appendix A**</u>

**Release, Injunction and Exculpation Provisions in the Plan**[1]

---

[1] The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.

## Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released and cancelled, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Liquidating Estate and their successors and assigns.  Any Holder of such mortgage, deed of trust, Lien, pledge or other security interest (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including and cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Liquidating Administrators to evidence such release, including the execution, delivery and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

## Releases by the Estate

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party, the Debtor, the Liquidating Estate and each Related Party of the Debtor and the Liquidating Estate shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, or any other Person or Governmental Unit asserting currently or in the future by, under, through, or on behalf of the Debtor or its Estate, and each of their respective successors or assigns, including the Settlement Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between one or both of the Debtor, on the one hand, and any Released Party, the Liquidating Estate, or any Related Party of the Debtor and the Liquidating Estate, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.3 of the Plan shall not be construed to release any post-Effective Date obligations under the RTX Waiver, the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, which specifically provides that such Estate Claims Settlement can be terminated, and the releases provided in the Plan or in the Estate Claims Settlement are void, if Carrier fails to make the installments of the Guaranteed Cash Payment when due and such failure is not timely cured within 30 days, at which time the Primary AFFF Settlement Trust is entitled to commence, prosecute, or continue all Estate Causes of Action against the Released Parties in any court of competent jurisdiction, and take such other actions as the Primary AFFF Settlement Trustee may determine in the exercise of their fiduciary duties.

### Releases by the Released Parties

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Released Parties and their successors or assigns of and from any and all Claims and Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, the Debtor's current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between any of the Debtor, the Liquidating Estate, the Settlement Trusts or the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case, on the one hand, and any Released Party, on the other hand, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any post-Effective Date obligations under the Plan Documents, the Confirmation Order, the 2020 Separation Agreement as supplemented by the RTX Waiver, or the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, or the right of any Person to enforce the same in accordance with

the terms thereof. Except with respect to the Claims and Causes of Action against the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case that are released and discharged under Article 10.4 of the Plan, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any obligations, rights, Causes of Action or Claims that Carrier Global Corporation or members of the Carrier Group (other than the Debtor), Otis Worldwide Corporation or members of the Otis Group, or RTX or members of the UTC Group may have against any Person under the 2020 Separation Agreement as supplemented by the RTX Waiver (including indemnification rights of RTX and other members of the "UTC Group" under the 2020 Separation Agreement). For the avoidance of doubt, in the event that the Estate Claims Settlement Effective Date does not occur or the Estate Claims Settlement is terminated as contemplated by the last paragraph of Article 10.3 in the Plan, all releases being provided by the Released Parties under the Plan shall be void.

## Scope of Releases

Each Person providing releases under the Plan, including the Debtor, the Estate and the Settling Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts. Each Person providing releases under the Plan shall be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

## Exculpation

Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtor and its directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation.

As of the Effective Date, to the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in Article 10 of the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person for any act or omission in connection with, related to or arising out of this Chapter 11 Case, including (a) the operation of the Debtor's businesses during the pendency of this Chapter 11 Case; (b) the

administration and adjudication of Claims and Interests during this Chapter 11 Case; (c) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Plan, the Disclosure Statement, the Plan Supplement, or any related contract, instrument, release or other agreement or document created or entered into in connection with the Chapter 11 Case (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan and the distribution of property under the Plan); (d) any other transaction, agreement, event, or other occurrence related to the Chapter 11 Case taking place on or before the Effective Date, other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.

## Injunction

Except as otherwise expressly provided in the Plan or the Confirmation Order, the satisfaction and release pursuant to Article 10 of the Plan shall also act as a permanent injunction against any Person who has held, holds, or may in the future hold Claims against or Interests in the Debtor or any of its assets or properties based on any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are treated, released, settled, channeled, or exculpated pursuant to the terms of the Plan from taking any of the following actions on account of, or on the basis of, such Claims or Interests:  (a) commencing or continuing any action to collect, enforce, offset, recoup, or recover with respect to any Claims or Interests treated, released, settled, channeled, or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Claim or Interest against the Debtor, the Liquidating Estate, the Settlement Trusts, or its or their respective property; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of or in connection with or with respect to any such Claims or Interests, notwithstanding an indication of a Claim or Interest or otherwise that a Holder of such Claim or Interest asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise, against the Debtor, the Liquidating Estate, or the Settlement Trusts; or (e) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

## Channeling Injunction

Notwithstanding anything to the contrary in the Plan, to preserve and promote the settlements contemplated by and provided for in the Plan, including the Insurance Settlement Agreements, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under sections 105(a) and 1123(b) of the Bankruptcy Code, the sole recourse of any Holder of a Channeled AFFF Claim against the Debtor or a Released Party on account of such Channeled AFFF Claim shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to

and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, and such Holder shall have no right whatsoever at any time to assert any such Channeled AFFF Claim or any Estate Cause of Action that is released under the Estate Claims Settlement against the Debtor or any Released Party or any property or interest in property of the Debtor or any Released Party.  For the avoidance of doubt, the sole recourse for any Channeled AFFF Claim covered by any Insurance Policy issued by a Settling Insurance Company shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents.  Accordingly, on and after the Effective Date, all Holders of AFFF Claims that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled AFFF Claim or any Estate Cause of Action against the Debtor or any Released Party shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from the Debtor or any Released Party with respect to any such Channeled AFFF Claim or Estate Cause of Action, other than from the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, including:

      a)     commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

      b)     enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

      c)     creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

      d)     asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party; or

      e)     taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents, or, with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, by the Sovereign State AFFF Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Channeled AFFF Claim.

The Debtor, the Liquidating Estate and/or any Released Party, as applicable, may enforce the Channeling Injunction and/or the Releases contained in the Plan before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at their own cost and expense, and no such cost or expense incurred by a party other than the Primary AFFF Settlement Trust shall be reimbursed or indemnified by the Primary AFFF Settlement Trust under any circumstances.

<u>Insurance Company Injunction</u>

Subject to the provisos set forth in this Section, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim or cause of action (including any AFFF Claim or any Claim for or respecting any Primary AFFF Settlement Trust expense) against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Insurance Policy, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, statute or any other theory of law, equity or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim or cause of action, including:

a)      commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, demand, or cause of action against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such Claim, demand, or cause of action against any Insurance Company);

b)      enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

c)      creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such Claim or cause of action; and

d)      except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

*provided, however,* that (i) nothing in this Section shall impair or affect the rights of any member of the UTC Group, including RTX, or any member of the Otis Group (each as defined in the 2020 Separation Agreement), or any additional insured designated by RTX

or any member of the UTC Group, based upon, attributable to, arising out of, or in any way connected with an Insurance Policy, including to assert Claims or Causes of Action against any Insurance Company for covered losses and to receive proceeds in respect thereof; (ii) this injunction shall not impair in any way any actions brought by the Primary AFFF Settlement Trust against any Other Insurance Company; (iii) the Primary AFFF Settlement Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction with respect to any Other Insurance Company, in accordance with the Settlement Trust Documents, upon express written notice to such Other Insurance Company; and (iv) this injunction is not issued for the benefit of any Other Insurance Company, and no Other Insurance Company is a third-party beneficiary of this injunction.

Notwithstanding anything to the contrary in the Plan, this injunction shall not enjoin:

a)      the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of Holders of AFFF Claims to assert such Claims, as applicable, in accordance with the TDPs;

b)      the rights of the Primary AFFF Settlement Trust to prosecute any action based on or arising from Insurance Policies, except to the extent otherwise released;

c)      the rights of the Primary AFFF Settlement Trust to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company based on or arising from the Insurance Policies;

d)      any actions of the Contributing Parties in fulfilling their obligations under the Estate Claims Settlement in consultation and coordination with the Primary AFFF Settlement Trust;

e)      the rights of any Insurance Company to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company; or

f)      the Claims for reinsurance under reinsurance contracts or Claims under retrocessional contracts among the Settling Insurance Companies and any Other Insurance Company.

## Prohibition on Actions Against Buyer

Subject to the Sale Order and the Acquisition Agreement, Buyer, in its capacity as such, shall not have any liability for any AFFF Claims against the Debtor arising prior to the closing of the Sale.  Except as expressly otherwise set forth in the Sale Order, all persons and entities hereby are forever barred, estopped and permanently enjoined from asserting against Buyer, its Affiliates, its successors or assigns, its property or the Transferred Assets, such persons' or entities' AFFF Claims that have been or could have been asserted against the Debtor arising prior to the closing of the Sale.  For the avoidance of doubt, the foregoing shall

not release Buyer from, or enjoin any actions against Buyer for, any Assumed Liability or any other liability incurred by Buyer on account of its operations following the closing of the Sale.

## Limitations on Exculpations and Releases

Notwithstanding anything to the contrary in the Plan, none of the releases or exculpations set forth in the Plan shall operate to waive or release any obligation or Causes of Action of any Person:  (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations or (b) expressly set forth in and preserved by the Plan, the Plan Supplement, Plan Documents or related documents.

## Release Dispute

In the event of a Release Dispute, a Released Party may, at its sole cost and expense, file a motion with the Bankruptcy Court seeking a determination as to whether an AFFF Claimant's Cause of Action was settled and released pursuant to the Plan, and upon such motion, the Bankruptcy Court shall make such determination and, if appropriate, enjoin the prosecution of such Cause of Action as having been settled and released under the Plan.

## Relevant Definitions

"*2020 Separation Agreement*" means that certain Separation and Distribution Agreement, dated as of April 2, 2020, by and among United Technologies Corporation, Carrier Global Corporation, and Otis Worldwide Corporation.

"*Administrative Claim*" means an Allowed Claim for costs and expenses of administration of the Chapter 11 Case pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate; (b) Allowed Professional Compensation Claims; (c) Allowed Fee Examiner Compensation Claims; and (d) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

"*AFFF*" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

"*AFFF Claim*" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.

"*Assumed Liability*" shall have the meaning set forth in the Acquisition Agreement.

"*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other Claims, Causes of Action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties-in-interest under the Bankruptcy Code or applicable non-

bankruptcy law, including claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) was commenced prior to the Effective Date.

"*Buyer*" means Pacific Erin Opco, LLC, as the purchaser of substantially all of the Debtor's assets pursuant to the Acquisition Agreement and the Sale Order.

"*Carrier*" means Carrier Global Corporation, a Delaware corporation, and its non-Debtor affiliates and Related Parties.

"*Causes of Action*" means any current or future actions, Claims, cross-claims, third-party claims, causes of action, controversies, disputes, demands, rights, liens, indemnities, contributions, guaranties, suits, obligations, liabilities, losses, debts, fees or expenses, damages, interest, judgments, costs, accounts, defenses, remedies, offsets, powers, privileges, proceedings, licenses, and franchises of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, choate or inchoate, capable of being asserted directly or derivatively (including any alter ego theories), including any Claims for recovery of attorneys' fees, turnover, fraud, gross negligence, or willful misconduct, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws, consumer protection laws, environmental laws, or nuisance or trespass theories).  Causes of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to or otherwise contest Claims or Interests, (c) any claim pursuant to section 362 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Actions.

"*Channeled AFFF Claims*" means all AFFF Claims against the Debtor or the Estate channeled to the Primary AFFF Settlement Trust under the Plan and Settlement Trust Documents.  For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

"*Committee*" means the official committee of unsecured creditors of the Debtor appointed by the U.S. Trustee in the Chapter 11 Case under section 1102(a) of the Bankruptcy Code pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 83] and any amendments thereto.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Settling Parties.

"*Consummation*" means the occurrence of the Effective Date.

"*Debtor*" means Kidde-Fenwal, Inc., the debtor and debtor in possession in the Chapter 11 Case, now known as KFI Wind-Down Corp.  In 2007, KFFI (formerly known as National Foam, Inc.) merged into Kidde-Fenwal, Inc., with Kidde-Fenwal, Inc. as the surviving entity.  Pursuant to this merger, KFFI's liabilities were assumed by, and KFFI's causes of action were transferred to, Kidde-Fenwal, Inc. directly or indirectly by merger or other agreement.  The term "Debtor" includes Kidde-Fenwal, Inc. as successor by merger or other agreement by which Kidde-Fenwal, Inc. obtained or assumed the liabilities and Causes of Action of any Person.

"*Effective Date*" means the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date set forth in the Plan shall have been satisfied or waived and on which a notice indicating the Effective Date has been filed on the docket of the Chapter 11 Case.

"*Estate Causes of Action*" means Causes of Action owned or held by either the Debtor or its Estate, or capable of being asserted (currently, or in the future) by any Person or Governmental Unit on behalf of, under or through, either the Debtor or its Estate, and each of their respective successors or assigns, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions, that may be commenced by a representative of the Estate under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise.  Without limiting the foregoing, Estate Causes of Action shall include:  (a) Causes of Action that on or after the Petition Date may be exclusively asserted by or on behalf of the Debtor or its Estate under applicable law, or that prior to the Petition Date could have been asserted by the Debtor on its own behalf under applicable law, including Causes of Action based on (i) the doctrine of successor liability that seek to impose the Debtor's (including KFFI's or National Foam, Inc.'s) liabilities on an alleged successor, whether based on a contractual assumption of liability, consolidation or de facto merger, acquisition of the Debtor's product line, fraud, domination, direction of the Debtor's affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, or (ii) the doctrines of alter ego or veil piercing involving alter egos of the Debtor or the piercing of the Debtor's (including KFFI's or National Foam, Inc.'s) corporate veil, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form; (b) Causes of Action or theories for recovery or remedies that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is generally common to creditors of the Debtor and can be asserted by the Debtor under applicable law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor.  Subsections (a), (b) and (c) immediately above expressly encompass any Causes of Action based on:  (i) the alleged assumption of the Debtor's (including KFFI's or

National Foam, Inc.'s) liabilities (but not a non-Debtor's liabilities) by Kidde plc (n/k/a Kidde Limited) pursuant to the 2000 Demerger Agreement, or any alleged subsequent assumption of such liabilities of the Debtor from Kidde plc by any other Released Party; or (ii) the alleged assumption of the Debtor's liabilities (but not a non-Debtor's liabilities), including any liabilities resulting from acts or omissions of National Foam, Inc. or KFFI, by a Released Party pursuant to the 2020 Separation Agreement.  For the avoidance of doubt, Estate Causes of Action shall not include any Independent AFFF Causes of Action or any Sovereign State Retained Causes of Action or Insurance Actions against any Released Party based on acts or omissions occurring after entry into the Plan Support Agreement with respect to rights under the 2020 Separation Agreement or the RTX Waiver to access and make Claims under any Insurance Policy or otherwise obtain the benefit of the Insurance Assignment.

"*Estate Claims Settlement*" means the settlement, including the release of all Estate Causes of Action against the Released Parties, pursuant to the Estate Claims Settlement Agreement.

"*Independent AFFF Cause of Action*" means any Cause of Action that could be asserted by an AFFF Claimant against a Non-Debtor Party based on the Non-Debtor Party's own conduct and breach of duty (*i.e.*, duty owed to the AFFF Claimant and not owed to the Debtor), including (a) Causes of Action arising from such acts or omissions of such Non-Debtor Party, and (b) Causes of Action based on allegations that a Non-Debtor Party is responsible for such conduct under theories of liability or recovery or remedies that could have been asserted by an AFFF Claimant on its own behalf under applicable state or federal law in respect of such Causes of Action prior to the Petition Date based on (i) the doctrine of successor liability involving a Non-Debtor Party that is alleged to be a successor to another Non-Debtor Party with respect to liabilities not directly or indirectly assumed from the Debtor, whether based on a contractual assumption of liability (including under the 2020 Separation Agreement), consolidation or de facto merger, acquisition of product line, fraud, domination, direction of affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, (ii) the doctrines of alter ego or veil piercing involving alter egos of a Non-Debtor Party, or piercing the corporate veil between Non-Debtor Parties, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form, or (iii) alleged derivative or vicarious liability of a Non-Debtor Party for liabilities of another Non-Debtor Party not directly or indirectly assumed from the Debtor; *provided* that, if any Cause of Action falls within the definition of Estate Cause of Action or Sovereign State Retained Cause of Action, it is not an Independent AFFF Cause of Action.
"*Insurance Assignment*" means the transfer by the Debtor and Carrier to the Primary AFFF Settlement Trust of certain rights in connection with the Insurance Policies as set forth in Article 5 of the Plan.

"*Insurance Policy/ies*" means: (i) any insurance policies listed on <u>Schedule 1</u> to the Plan, (ii) to the extent not listed on Schedule 1, any "general liability" insurance (which, for the avoidance of doubt, shall exclude director & officer, automobile, or workers' compensation insurance) contract, binder, certificate, insurance policy, or reinsurance policy, whether currently known or unknown, discovered after the Effective Date, in effect at any time on or before the Petition Date naming the Debtor, the Contributing Parties, or any of their predecessors, subsidiaries, or past or present affiliates as an insured (whether as the primary or additional insured) or that provides or may provide coverage to Carrier or the Debtor for AFFF Claims, (iii) "Aviation" policies to

which Carrier or the Debtor has rights as listed in Schedule 2 to the Plan solely to the extent of Insurance Policy Rights applicable to or arising from AFFF Claims and (iv) any other subsequently discovered insurance policies of the same types as listed in Schedules 1 and 2 to the Plan to the extent that Carrier or the Debtor have rights under such policies (whether or not such policies are specifically titled as "General Liability" or "Aviation" policies). For the avoidance of doubt, "Insurance Policies" shall not include any D&O Policies, automobile policies or worker's compensation insurance.

"*Insurance Policy Rights*" means any and all rights subject to the Insurance Assignment.

"*KFFI*" means Kidde Fire Fighting, Inc. (formerly known as National Foam, Inc.).

"*Liquidating Estate Claims*" means Administrative Claims, Priority Tax Claims, Other Priority Claims and Secured Claims.

"*New National Foam*" means, collectively, National Foam, Inc. f/k/a Eurostar US Tradeco, Inc., Angus Fire Ltd. f/k/a Eurostar Tradeco Limited, Angus International Safety Group Limited f/k/a/ Eurostar Holdco Limited, and each of their Related Parties.

"*New National Foam Release*" means a settlement between the Debtor and New National Foam pursuant to which (a) Estate Causes of Action against New National Foam are resolved for value reasonably acceptable to the Settling Parties and (b) New National Foam agrees to absolutely, unconditionally, and irrevocably release and discharge the Debtor and each Released Party from any and all Claims and Causes of Action, whether known or unknown, based on or relating to, or in any manner arising from that certain Share and Business Sale Agreement, dated as of June 28, 2013, or any other occurrence taking place on or before the Effective Date, including Proof of Claim No. 225, and otherwise in form and substance reasonably acceptable to the Settling Parties.

"*Non-Debtor Party*" means any Person other than the Debtor. For the avoidance of doubt, the term "*Non-Debtor Party*" does not include KFFI or National Foam, Inc.

"*Other Insurance Company*" means an Insurance Company that is not a Settling Insurance Company.

"*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"*Person*" means a "person" or "entity" as defined in the Bankruptcy Code.

"*Petition Date*" means May 14, 2023, the date on which the Debtor commenced the Chapter 11 Case.

"*PFAS*" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.

"*Primary AFFF Settlement Trust*" means the settlement trust organized under the laws of the state of Delaware and established under the Plan and the Settlement Trust Documents, which

shall (i) have the powers, duties and obligations set forth in the Plan and the Settlement Trust Documents, (ii) assume all liability of the Debtor and the Estate for, and administer, all Channeled AFFF Claims and (iii) be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code.

"*Primary AFFF Settlement Trust Agreement*" means the Settlement Trust Agreement governing the Primary AFFF Settlement Trust, dated as of the Effective Date, as the same may be amended or modified from time to time in accordance with the terms thereof.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Released Party*" means (i) Carrier, (ii) RTX, and (iii) each of their Related Parties in their capacities as such.  Released Parties shall not include DuPont, 3M, or their current or former affiliates and Related Parties.  If a Person is a current or former affiliate or Related Party of DuPont or 3M, and such Person is also a current or former affiliate or Related Party of Carrier or RTX, then such Person shall not be a Released Party.  For the avoidance of doubt, New National Foam shall not be a Released Party unless the New National Foam Release  is provided by the Effective Date.

"*Related Party*" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, and current and former affiliates and subsidiaries, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, all only in their capacity as a representative of such Person, and (c) respective heirs, executors, estates, and nominees, in each case solely in its capacity as such.

"*RTX Waiver*" shall have the meaning set forth in Article 5.5.11(b) of the Plan.

"*Sale Order*" means the *Order (I) Approving the Sale of All or Substantially All of the Debtor's Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving Debtor's Entry, and Performance Under the Contribution Agreement, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Granting Related Relief*, entered by the Bankruptcy Court on April 2, 2024 [D.I. 1058].

"*Settlement Trust Agreements*" means, collectively, (i) the Primary AFFF Settlement Trust Agreement, (ii) the Sovereign State AFFF Settlement Trust Agreement and (iii) the GUC Liquidating Trust Agreement.  To the extent that any provision of a Settlement Trust Agreement impacts the rights of Carrier, such provision shall not be included in such Settlement Trust Agreement unless reasonably acceptable to Carrier.

"*Settlement Trust Documents*" means, collectively, (a) the Settlement Trust Agreements, (b) the TDPs, (c) the Confirmation Order, and (d) any other agreements, instruments, and documents governing the establishment, administration, and operation of the Settlement Trusts.

"*Settlement Trusts*" means the Primary AFFF Settlement Trust, Sovereign State AFFF Settlement Trust and GUC Liquidating Trust.

"*Settling Insurance Company*" means any Insurance Company that contributes funds, proceeds, or other consideration to or for the benefit of the Primary AFFF Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order.  No Insurance Company shall be considered a Settling Insurance Company without the Committee's prior written consent.

"*Sovereign State*" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.

"*Sovereign State AFFF Settlement Trust*" means the trust established under the Plan and the Settlement Trust Documents to administer all Sovereign State Claims against the Debtor.  The Sovereign State AFFF Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code and shall have the powers, duties and obligations set forth in the Settlement Trust Documents.

"*Sovereign State Retained Cause of Action*" means any Claim or Cause of Action asserted, or which may be asserted, by a Sovereign State against a Contributing Party that (1) is not an Estate Cause of Action and (2) arises from a statute, regulation, or common law that creates a theory of liability, by which a Sovereign State could recover damages or penalties, or obtain equitable or injunctive relief, against a Contributing Party.  For the avoidance of doubt, a Sovereign State may assert a Sovereign State Retained Cause of Action irrespective of whether such Sovereign State Retained Cause of Action could also be considered an Independent AFFF Cause of Action.

"*TDPs*" or "Trust Distribution Procedures" means the Trust Distribution Procedures for the Settlement Trusts, as the same may be amended or modified from time to time in accordance with the terms thereof, that will govern the claims submission, adjudication, and distribution processes for the Settlement Trusts in a manner that is fair and equitable to Holders of Allowed Channeled AFFF Claims.  To the extent that any provision of the TDPs impacts the rights of Carrier, such provision shall not be included unless reasonably acceptable to Carrier.

"*Transferred Assets*" shall have the meaning set forth in the Acquisition Agreement.

**<u>EXHIBIT</u>**

**EXHIBIT**

| Creditor Name | Type of Authority for Vote (A OR B) | | Vote to ACCEPT (in Favor of the Plan) OR Vote to REJECT (Against the Plan) | |
|---|---|---|---|---|
| | A | B | ACCEPT | REJECT |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |

# EXHIBIT 2O

**AFFF Master Ballot for Class 3D: Property Damage Claims**

**\*\*KFI WIND-DOWN CORP. PLAN BALLOT\*\***

---

**THIS BALLOT IS FOR HOLDERS OF CLAIMS AGAINST KFI WIND-DOWN CORP. (F/K/A KIDDE-FENWAL, INC.) ARISING FROM ITS AFFF OR AFFF-CONTAINING PRODUCTS.**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |

**MASTER BALLOT FOR ACCEPTING OR REJECTING THE**
**DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

---

**CLASS 3D:  PROPERTY DAMAGE CLAIMS**

---

On May 14, 2023 (the "Petition Date"), KFI Wind-Down Corp. f/k/a Kidde-Fenwal, Inc. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") (the "Chapter 11 Case").

On [•], 2025, the Debtor filed the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Plan"),[2] which is described in greater detail in the *Disclosure Statement for the Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Disclosure Statement").

---

[1]   The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters are located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

> **THE PLAN CONTAINS RELEASE, INJUNCTION AND EXCULPATORY PROVISIONS.  THESE PROVISIONS ARE SET FORTH IN APPENDIX A TO THIS MASTER BALLOT.  YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.**

On [•], 2025, the Bankruptcy Court entered an order [D.I. [•]] (the "Disclosure Statement Order") approving the Disclosure Statement as containing "adequate information" within the meaning ascribed to such term in section 1125 of the Bankruptcy Code and procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures").

The Plan, Disclosure Statement, Disclosure Statement Order, Solicitation Procedures and documents included in the Plan Supplement as of the Solicitation Mailing Deadline have been included in the package of materials containing the attached master ballot (the "Master Ballot") and can be accessed free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code.  For a description of the Causes of Action to be enjoined and the identities of the Persons that would be subject to this injunction, see Article IV.E.8 of the Disclosure Statement and Article 10.8 of the Plan.

A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of the Claims that submit votes in that Voting Class vote to accept the Plan.  Even if a Voting Class votes to reject the Plan, the Bankruptcy Court nonetheless may confirm the Plan if it finds the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

If the Plan is confirmed by the Bankruptcy Court, all Holders of Claims against and Interests in the Debtor (including those Holders who reject the Plan or abstain from voting on the Plan, and those Holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby.

The Debtor will file the Plan Supplement (as may be amended, modified or supplemented from time to time) with the Bankruptcy Court no later than **November 17, 2025**.

The documents included in the Plan Supplement as of the Solicitation Mailing Deadline are included in your Solicitation Package. Any further Plan Supplement, and any amendments or supplements to the foregoing, will only be served on:  (a) the U.S. Trustee, (b) the Notice Parties and (c) the 2002 List.   Once filed, a copy of the Plan Supplement will also be available for review and download on the Debtor's website maintained by the Solicitation Agent free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

**Unless such time is extended by the Debtor, in consultation with the Settling Parties, or the Bankruptcy Court, the Master Ballot must be properly completed, signed and submitted to the Solicitation Agent *so as to be actually received* no later than 5:00 p.m. (prevailing Eastern Time) on December 15, 2025 (the "Voting Deadline") in order for the**

-2-

votes on the Master Ballot to count.  **Unless you receive express, written permission from the Debtor to submit a Master Ballot via other means, the ONLY acceptable manner of submission of Master Ballots is either (a) by email to KFIInquiries@stretto.com or (b) by regular mail, overnight courier or hand delivery to KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, in either case so that it is actually received by the Solicitation Agent by or before the Voting Deadline (December 15, 2025 at 5:00 p.m. (prevailing Eastern Time)).**

This Master Ballot is to be used by attorneys only for voting on behalf of Holders of Property Damage Claims against the Debtor in Class 3D of the Plan.  Please refer to the Plan for the specific definition of "Property Damage Claim," which is copied below, as well as other relevant definitions.

*"Holder" means a Person holding a Claim against or an Interest in the Debtor.*

*"Property Damage Claim" means an AFFF Claim asserted by or on behalf of an owner of real property (other than an Airport, Stormwater System, Wastewater System, Public Water System, Landfill, or Fire Training Facility) or personal property for damages relating to such property.*

*"AFFF" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.*

*"AFFF Claim" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.*

*"Airport" means: (a) all airports categorized by the FAA in the National Plan of Integrated Airport Systems, including all airports that have been issued operating certificates by the FAA pursuant to 14 CFR Part 139; and (b) any firefighter training facility operated on airport property, whether or not operated by the airport itself.*

*"Stormwater System" means a system of diverting excess precipitation from rain and snowmelt events and dry-weather runoff over land or impervious surfaces without percolating into the ground from real property, municipalities, construction activities, and industrial activities and permitted as such pursuant to the National Pollutant Discharge Elimination System and/or by a state or municipal permitting authority.*

*"Wastewater System" means a network of pipes, pumping stations, and appurtenances that convey sewage and waste from its points of origin to a point of treatment and disposal.*

*"Public Water System" means a system for the provision to the public of water for human consumption through pipes or other constructed conveyances, if such system has at least fifteen (15) service connections or regularly serves an average*

*of at least twenty-five (25) individuals daily at least sixty (60) days out of the year, consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C. § 300f(4)(A), and 40 C.F.R. Part 141. The term "Public Water System" includes (i) any collection, treatment, storage, and distribution facilities under control of the operator of such system and used primarily in connection with such system, (ii) any collection or pretreatment storage facilities not under such control which are used primarily in connection with such system, (iii) a Community Water System of any size, (iv) a Non-Transient Non-Community Water System of any size, and (v) any Person (but not any financing or lending institution) that has legal authority or responsibility (by statute, regulation, other law, or contract) to fund or incur financial obligations for the design, engineering, installation, operation, or maintenance of any facility or equipment that treats, filters, remediates, or manages water that has entered or may enter Drinking Water or any Public Water System.*

*"Landfill" means a discrete area of real property primarily used for the disposal of waste material as categorized pursuant to 40 CFR Part 239-272.*

*"Fire Training Facility" means real property (other than an Airport) that is or has been used for live firefighter training with AFFF.*

*"Claim" has the meaning ascribed to such term under section 101(5) of the Bankruptcy Code.*

*"Community Water System" means a Public Water System that serves at least fifteen (15) service connections used by year-round residents or regularly serves at least twenty-five (25) year-round residents, consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C. § 300f(15), and 40 C.F.R. Part 141.*

*"Non-Transient Non-Community Water System" means a Public Water System that is not a Community Water System and that regularly serves at least twenty-five (25) of the same persons over six (6) months per year, consistent with the use of that term in 40 C.F.R. Part 141.*

*"Person" means a "person" or "entity" as defined in the Bankruptcy Code.*

*"PFAS" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.*

*"Drinking Water" means water provided for human consumption (including uses such as drinking, cooking, and bathing), consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C. §§ 300f to 300j-27. The term "Drinking Water" includes raw or untreated water that a Public Water System has drawn or collected from a Water Source so that the water may then (after any treatment) be provided for human consumption but does not include raw or untreated water that is not drawn or collected from a Water Source.*

-4-

***"Water Source"*** *means a groundwater well, a surface-water intake, or any other intake point from which a Public Water System draws or collects water for distribution as Drinking Water, and the raw or untreated water that is thus drawn or collected.*

*[Remainder of page left intentionally blank]*

-5-

## <u>DOCUMENTS INCLUDED WITH THE MASTER BALLOT</u>

You should have received the following documents with the Master Ballot (collectively, the "<u>Solicitation Package</u>").  **Please note that some of the following documents may be included on a USB flash drive included as part of your Solicitation Package.**

- the Cover Letter;

- the Committee Letter;

- the Solicitation Procedures;

- a USB flash drive containing a copy of the Disclosure Statement (and exhibits thereto, including the Plan) and the documents contained in the Plan Supplement that have been filed prior to the Solicitation Mailing Deadline;

- the Disclosure Statement Order (without exhibits);

- a preaddressed, return envelope for completed Master Ballots;

- the Confirmation Hearing Notice; and

- any other materials ordered by the Court to be included as part of the Solicitation Package.

If you have questions about the Master Ballot, or if you did not receive a copy of the Plan or any related materials, please contact the Solicitation Agent at <u>KFIInquiries@stretto.com</u> or (866) 887-0488 (toll-free) or +1 (949) 889-0128 (international).  Information may also be obtained at <u>https://cases.stretto.com/kfi</u> by clicking the link for "Plan & Disclosure Statement" on the landing page.

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtor or any other party for payment purposes.

4897-8559-5649 v.6

### INSTRUCTIONS FOR COMPLETING THE MASTER BALLOT

1.      The Master Ballot is provided to you, as an attorney for Holders of Property Damage Claims against the Debtor, in connection with the solicitation of votes of Holders of Property Damage Claims to accept or reject the Plan.  The Disclosure Statement and Plan are also being provided to you.  PLEASE READ ALL DOCUMENTS CAREFULLY BEFORE COMPLETING THE MASTER BALLOT.

2.      The Master Ballot is to be used by attorneys who represent, **and are authorized to vote on behalf of**, one or more Holders of Property Damage Claims.  You may be required to provide evidence of your authorization by Holders of Property Damage Claims to vote to accept or reject the Plan.

3.      You are receiving this Master Ballot because you represent certain clients (collectively, your "<u>Eligible Clients</u>") who are Holders of Property Damage Claims against the Debtor.  Your firm ("<u>Firm</u>") must certify to one of the options below with respect to each Eligible Client whose vote is included in your Firm's Master Ballot.

      (a)      "<u>Option (a) Certification</u>":  The Firm (or one or more of its attorneys) has communicated with the applicable Eligible Client (as defined below) and has been authorized, consistent with applicable law, by such Eligible Client to vote their Property Damage Claims to accept or reject the Plan.  The Firm may not rely on negative notice for such authorization.

      (b)      "<u>Option (b) Certification</u>":  The Firm (or one or more of its attorneys) has the authority under a power of attorney to vote to accept or reject the Plan on behalf of the applicable Eligible Client and the Firm completed the vote on behalf of such Eligible Client on the Master Ballot in accordance with the authority granted to the Firm.

4.      To use the Master Ballot, you must be authorized to vote on behalf of your Eligible Clients under all applicable standards for such authorization.  With respect to any of the Eligible Clients on the Exhibit, if you are unable to certify that you have the authority to vote on the Plan on behalf of such Eligible Client, you must not vote on behalf of such Eligible Client.

5.      To be entitled to vote on the Plan, a Holder of a Property Damage Claim in Class 3D (either directly or through his or her attorney or agent) must be able to certify that such Holder has a Property Damage Claim in Class 3D.

6.      To have the votes reflected on the Master Ballot counted for purposes of voting on the Plan, the Master Ballot must be completed, signed, and submitted **so that it is actually received** no later than the Voting Deadline by the Solicitation Agent as set forth in these instructions below.    Master Ballots will be accepted either (i) by email to KFIInquiries@stretto.com or (ii) by regular mail, overnight courier or hand delivery to KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602 unless the party submitting a Master Ballot previously received permission in writing from the Debtor to submit such Master Ballot via other means.  If a Master Ballot is received after the Voting Deadline (as may be

extended by the Debtor in writing, in consultation with the Settling Parties), it may not be counted. If the Master Ballot is not signed on the appropriate lines, the Master Ballot will not be valid or counted as having been cast.

7.     The Master Ballot will not constitute or be deemed a Proof of Claim or Interest, an assertion of a Claim, the allowance of a Claim, or the acceptance or liquidation of any Property Damage Claim for purposes of any distribution.  None of the information set forth in the Master Ballot shall constitute an admission by the Debtor as to the extent, validity, or priority of the Claim voted herein, nor shall anything contained herein or information submitted in or with the Master Ballot be binding upon the Debtor or the Holder in any subsequent claims resolution process or other proceeding.  The Master Ballot may not be used for any purposes other than to transmit votes on the Plan.

8.     Multiple Master Ballots may be completed and delivered to the Solicitation Agent. Subject to the terms of the Solicitation Procedures, votes reflected by multiple Master Ballots submitted by the same Firm will be counted except to the extent that they are duplicative of other Master Ballots.  If two or more such ballots submitted by the same Firm are inconsistent, the last valid Master Ballot received by the Solicitation Agent on or before the Voting Deadline will, to the extent of such inconsistency, govern unless otherwise ordered by the Bankruptcy Court.  If more than one Master Ballot is submitted and the last such ballot supplements rather than supersedes earlier Master Ballot(s), please designate the subsequent Master Ballot(s) as "Supplemental" and clearly mark which of those votes reflected thereon are additional votes.

9.     Notwithstanding the foregoing, if the Solicitation Agent receives two or more Master Ballots from separate Firms, each of whom purports to represent the same Holder of a Property Damage Claim, it is the sole obligation and responsibility of the Firms to coordinate with each other to resolve any conflicting representations, and for the appropriate Firm to submit the vote on behalf of such Eligible Client together with an email to KFIInquiries@stretto.com copying all affected Firms confirming such resolution.  The Solicitation Agent is entitled to rely upon such an email.  If the Firms are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple consistent votes on account of such Eligible Client (*i.e.*, multiple votes to accept the Plan or multiple votes to reject the Plan), the Solicitation Agent is authorized to treat such votes as duplicative and count them only once for both numerosity and voting amount purposes.  If, however, the Firms voting on account of such Eligible Client are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple inconsistent votes on account of such Eligible Client (*i.e.*, a vote to accept the Plan and a vote to reject the Plan), the Solicitation Agent shall contact the relevant Firms and request they coordinate with each other to resolve the conflicting representation.  If after the submission of inconsistent votes but prior to the Voting Deadline, the applicable Firms timely reach a consensus regarding which vote should be counted, one of the applicable Firms may email KFIInquiries@stretto.com, copying all other affected Firms, and direct the Solicitation Agent as to which vote should be counted.  The Solicitation Agent is entitled to rely upon such an email.  If representation of the Holder of the Claim is not resolved within 10 calendar days from the notice of the conflict as provided by the Solicitation Agent, such votes shall not be counted.

10.     Each Holder of a Property Damage Claim that votes must vote his or her entire Claim either, to ACCEPT (vote in favor of), or to REJECT (vote against), the Plan. A Holder of a Property Damage Claim may not split his or her vote. Accordingly, the votes of any Holder of a Property Damage Claim who purports partially to accept and partially to reject the Plan will not be counted.

11.     If the Master Ballot is signed and timely sent to the Solicitation Agent, but does not designate either acceptance or rejection, or designates both acceptance and rejection, of the Plan for any particular claimant listed on the Exhibit, then the Solicitation Agent may, at its discretion, either contact the party submitting the Master Ballot in order to cure the defect on the Master Ballot or such Claim will not be counted either as an acceptance or rejection of the Plan.

12.     **To complete the Master Ballot properly, you must follow the procedures described below:**

Item 1 of the Master Ballot requires that you to indicate, for each Eligible Client on the Exhibit for which you are casting a vote, (a) the authority upon which votes on behalf of each such Eligible Client are being included (*i.e.*, Option (a) Certification or Option (b) Certification as described above) in the Master Ballot and (b) whether such Eligible Client accepts or rejects the Plan.

Item 2 of the Master Ballot contains certifications which are required for you to submit a vote on behalf of one or more Holders of Property Damage Claims. Please ensure that you have read and understood the certifications before signing the Master Ballot. **If you are unable to make the certification as to the authority to vote on behalf of any Holder of a Property Damage Claim you represent, you may not cast a vote on behalf of such Holder.**

Sign the Master Ballot.

Provide your name and mailing and email addresses where indicated.

Contact the Solicitation Agent if you need additional information or copies of any documents contained in the Solicitation Package or if you have any technical questions regarding composition and submission of your Master Ballot.

Submit the completed, executed Master Ballot *so as to be actually received* by the Solicitation Agent before the Voting Deadline either (i) by email to KFIInquiries@stretto.com or (ii) by regular mail, overnight courier or hand delivery to KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602.

---

**IF YOU HAVE ANY QUESTIONS REGARDING THE MASTER BALLOT, BELIEVE YOU MAY HAVE RECEIVED AN INCORRECT BALLOT, OR IF YOU DID NOT RECEIVE A COPY OF ANY OF**

4897-8559-5649 v.6

THE DOCUMENTS DESCRIBED IN THESE INSTRUCTIONS,
PLEASE CONTACT THE SOLICITATION AGENT AT:

TELEPHONE: (866) 887-0488 (TOLL-FREE)
OR +1 (949) 889-0128 (INTERNATIONAL)
E-MAIL: KFIINQUIRIES@STRETTO.COM
OR VISIT HTTPS://CASES.STRETTO.COM/KFI

4897-8559-5649 v.6

# **PLAN BALLOT**

## MASTER BALLOT FOR ACCEPTING OR REJECTING THE DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

### CLASS 3D: PROPERTY DAMAGE CLAIMS

**PLEASE COMPLETE THE FOLLOWING:**

The Solicitation Procedures are included within the Solicitation Package that accompanies these instructions. The Solicitation Procedures contain important information regarding the balloting process. Please read the Solicitation Procedures before submitting this Master Ballot. If you have any technical questions or need to arrange for special delivery of your Master Ballot, please contact the Solicitation Agent.

**Please note that each Holder of a Property Damage Claim who votes on the Plan must vote the entire amount of his or her Claim to accept or reject the Plan. All AFFF Claims have been temporarily allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance or any other purpose.** Any Holders of AFFF Claims who attempt partially to reject and partially to accept the Plan will not have their vote counted. If this Master Ballot is signed and timely received by the Solicitation Agent but does not designate either acceptance or rejection or designates both acceptance and rejection of the Plan for any particular claimant, such vote will not be counted either as an acceptance or rejection of the Plan.

**Item 1 – List of Holders of Property Damage Claims Represented by the Firm.**

The exhibit to this Master Ballot (the "Exhibit") contains the names set forth on the Client List previously submitted by your Firm with the Solicitation Directive and is a list of each Holder of a Property Damage Claim that you represent. You must indicate on the Exhibit next to each Eligible Client for which you cast a vote (a) the authority upon which votes on behalf of each such Eligible Client are being included (*i.e.*, Option (a) Certification or Option (b) Certification as described in Item 2) on the Master Ballot and (b) whether such Eligible Client accepts or rejects the Plan.

**Item 2 – Certifications, Acknowledgement, Signature, and Date.**

By signing this Master Ballot, the undersigned certifies under penalty of perjury that each of the following statements is true and correct:

• I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the

Solicitation Mailing Deadline, and a letter from the Committee and the MDL PEC Co-Leads urging claimants to vote to ACCEPT (vote in favor of) the Plan.

- I am authorized, by agreement or under applicable law, by each of the Holders of the Property Damage Claims listed on the Exhibit for which I have voted to vote his, her, or its Property Damage Claim to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan.

- For each client listed on the Exhibit and for whom the "Option (a) Certification" is indicated, I or my Firm communicated with each such Eligible Client and have been authorized, consistent with applicable law, by each such Eligible Client to vote each of their Property Damage Claim to accept or reject the Plan. I am not relying on negative notice to make such certification.

- For each Eligible Client listed on the Exhibit and for whom the "Option (b) Certification" is indicated, I or my Firm has the authority under a power of attorney to vote to accept or reject the Plan on behalf of each such Eligible Client and I have completed this Master Ballot in accordance with such authority.

- To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, each Holder of a Property Damage Claim listed on the Exhibit who is casting a vote has, on such Holder's information and belief, a Property Damage Claim against the Debtor.

Print or Type Name of Attorney: _____

Name of Firm: _____

Attorney Signature: _____

Street Address: _____

City, State, and ZIP Code: _____

Telephone Number: _____

E-mail Address of Attorney/Signatory: _____

Date: _____

The entire Exhibit accompanying this Master Ballot must be completed and submitted with this completed Master Ballot to the Solicitation Agent.

-2-

**IF THIS MASTER BALLOT IS NOT *ACTUALLY RECEIVED BY* THE SOLICITATION AGENT BY 5:00 P.M. (PREVAILING EASTERN TIME) ON DECEMBER 15, 2025, YOUR VOTE MAY NOT BE COUNTED.**

<u>**Appendix A**</u>

**Release, Injunction and Exculpation Provisions in the Plan[1]**

---

[1] The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights. If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.

### Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released and cancelled, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Liquidating Estate and their successors and assigns.  Any Holder of such mortgage, deed of trust, Lien, pledge or other security interest (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including and cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Liquidating Administrators to evidence such release, including the execution, delivery and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

### Releases by the Estate

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party, the Debtor, the Liquidating Estate and each Related Party of the Debtor and the Liquidating Estate shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, or any other Person or Governmental Unit asserting currently or in the future by, under, through, or on behalf of the Debtor or its Estate, and each of their respective successors or assigns, including the Settlement Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between one or both of the Debtor, on the one hand, and any Released Party, the Liquidating Estate, or any Related Party of the Debtor and the Liquidating Estate, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.3 of the Plan shall not be construed to release any post-Effective Date obligations under the RTX Waiver, the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, which specifically provides that such Estate Claims Settlement can be terminated, and the releases provided in the Plan or in the Estate Claims Settlement are void, if Carrier fails to make the installments of the Guaranteed Cash Payment when due and such failure is not timely cured within 30 days, at which time the Primary AFFF Settlement Trust is entitled to commence, prosecute, or continue all Estate Causes of Action against the Released Parties in any court of competent jurisdiction, and take such other actions as the Primary AFFF Settlement Trustee may determine in the exercise of their fiduciary duties.

### Releases by the Released Parties

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Released Parties and their successors or assigns of and from any and all Claims and Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, the Debtor's current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between any of the Debtor, the Liquidating Estate, the Settlement Trusts or the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case, on the one hand, and any Released Party, on the other hand, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any post-Effective Date obligations under the Plan Documents, the Confirmation Order, the 2020 Separation Agreement as supplemented by the RTX Waiver, or the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, or the right of any Person to enforce the same in accordance with

the terms thereof. Except with respect to the Claims and Causes of Action against the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case that are released and discharged under Article 10.4 of the Plan, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any obligations, rights, Causes of Action or Claims that Carrier Global Corporation or members of the Carrier Group (other than the Debtor), Otis Worldwide Corporation or members of the Otis Group, or RTX or members of the UTC Group may have against any Person under the 2020 Separation Agreement as supplemented by the RTX Waiver (including indemnification rights of RTX and other members of the "UTC Group" under the 2020 Separation Agreement). For the avoidance of doubt, in the event that the Estate Claims Settlement Effective Date does not occur or the Estate Claims Settlement is terminated as contemplated by the last paragraph of Article 10.3 in the Plan, all releases being provided by the Released Parties under the Plan shall be void.

### Scope of Releases

Each Person providing releases under the Plan, including the Debtor, the Estate and the Settling Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts. Each Person providing releases under the Plan shall be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

### Exculpation

Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtor and its directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation.

As of the Effective Date, to the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in Article 10 of the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person for any act or omission in connection with, related to or arising out of this Chapter 11 Case, including (a) the operation of the Debtor's businesses during the pendency of this Chapter 11 Case; (b) the

administration and adjudication of Claims and Interests during this Chapter 11 Case; (c) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Plan, the Disclosure Statement, the Plan Supplement, or any related contract, instrument, release or other agreement or document created or entered into in connection with the Chapter 11 Case (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan and the distribution of property under the Plan); (d) any other transaction, agreement, event, or other occurrence related to the Chapter 11 Case taking place on or before the Effective Date, other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.

## Injunction

Except as otherwise expressly provided in the Plan or the Confirmation Order, the satisfaction and release pursuant to Article 10 of the Plan shall also act as a permanent injunction against any Person who has held, holds, or may in the future hold Claims against or Interests in the Debtor or any of its assets or properties based on any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are treated, released, settled, channeled, or exculpated pursuant to the terms of the Plan from taking any of the following actions on account of, or on the basis of, such Claims or Interests:  (a) commencing or continuing any action to collect, enforce, offset, recoup, or recover with respect to any Claims or Interests treated, released, settled, channeled, or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Claim or Interest against the Debtor, the Liquidating Estate, the Settlement Trusts, or its or their respective property; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of or in connection with or with respect to any such Claims or Interests, notwithstanding an indication of a Claim or Interest or otherwise that a Holder of such Claim or Interest asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise, against the Debtor, the Liquidating Estate, or the Settlement Trusts; or (e) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

## Channeling Injunction

Notwithstanding anything to the contrary in the Plan, to preserve and promote the settlements contemplated by and provided for in the Plan, including the Insurance Settlement Agreements, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under sections 105(a) and 1123(b) of the Bankruptcy Code, the sole recourse of any Holder of a Channeled AFFF Claim against the Debtor or a Released Party on account of such Channeled AFFF Claim shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to

and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, and such Holder shall have no right whatsoever at any time to assert any such Channeled AFFF Claim or any Estate Cause of Action that is released under the Estate Claims Settlement against the Debtor or any Released Party or any property or interest in property of the Debtor or any Released Party.  For the avoidance of doubt, the sole recourse for any Channeled AFFF Claim covered by any Insurance Policy issued by a Settling Insurance Company shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents.  Accordingly, on and after the Effective Date, all Holders of AFFF Claims that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled AFFF Claim or any Estate Cause of Action against the Debtor or any Released Party shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from the Debtor or any Released Party with respect to any such Channeled AFFF Claim or Estate Cause of Action, other than from the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, including:

      a)      commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

      b)      enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

      c)      creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

      d)      asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party; or

      e)      taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents, or, with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, by the Sovereign State AFFF Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Channeled AFFF Claim.

The Debtor, the Liquidating Estate and/or any Released Party, as applicable, may enforce the Channeling Injunction and/or the Releases contained in the Plan before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at their own cost and expense, and no such cost or expense incurred by a party other than the Primary AFFF Settlement Trust shall be reimbursed or indemnified by the Primary AFFF Settlement Trust under any circumstances.

## Insurance Company Injunction

Subject to the provisos set forth in this Section, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim or cause of action (including any AFFF Claim or any Claim for or respecting any Primary AFFF Settlement Trust expense) against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Insurance Policy, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, statute or any other theory of law, equity or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim or cause of action, including:

a) commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, demand, or cause of action against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such Claim, demand, or cause of action against any Insurance Company);

b) enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

c) creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such Claim or cause of action; and

d) except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

*provided, however,* that (i) nothing in this Section shall impair or affect the rights of any member of the UTC Group, including RTX, or any member of the Otis Group (each as defined in the 2020 Separation Agreement), or any additional insured designated by RTX

or any member of the UTC Group, based upon, attributable to, arising out of, or in any way connected with an Insurance Policy, including to assert Claims or Causes of Action against any Insurance Company for covered losses and to receive proceeds in respect thereof; (ii) this injunction shall not impair in any way any actions brought by the Primary AFFF Settlement Trust against any Other Insurance Company; (iii) the Primary AFFF Settlement Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction with respect to any Other Insurance Company, in accordance with the Settlement Trust Documents, upon express written notice to such Other Insurance Company; and (iv) this injunction is not issued for the benefit of any Other Insurance Company, and no Other Insurance Company is a third-party beneficiary of this injunction.

Notwithstanding anything to the contrary in the Plan, this injunction shall not enjoin:

a)    the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of Holders of AFFF Claims to assert such Claims, as applicable, in accordance with the TDPs;

b)    the rights of the Primary AFFF Settlement Trust to prosecute any action based on or arising from Insurance Policies, except to the extent otherwise released;

c)    the rights of the Primary AFFF Settlement Trust to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company based on or arising from the Insurance Policies;

d)    any actions of the Contributing Parties in fulfilling their obligations under the Estate Claims Settlement in consultation and coordination with the Primary AFFF Settlement Trust;

e)    the rights of any Insurance Company to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company; or

f)    the Claims for reinsurance under reinsurance contracts or Claims under retrocessional contracts among the Settling Insurance Companies and any Other Insurance Company.

## Prohibition on Actions Against Buyer

Subject to the Sale Order and the Acquisition Agreement, Buyer, in its capacity as such, shall not have any liability for any AFFF Claims against the Debtor arising prior to the closing of the Sale.  Except as expressly otherwise set forth in the Sale Order, all persons and entities hereby are forever barred, estopped and permanently enjoined from asserting against Buyer, its Affiliates, its successors or assigns, its property or the Transferred Assets, such persons' or entities' AFFF Claims that have been or could have been asserted against the Debtor arising prior to the closing of the Sale.  For the avoidance of doubt, the foregoing shall

not release Buyer from, or enjoin any actions against Buyer for, any Assumed Liability or any other liability incurred by Buyer on account of its operations following the closing of the Sale.

## Limitations on Exculpations and Releases

Notwithstanding anything to the contrary in the Plan, none of the releases or exculpations set forth in the Plan shall operate to waive or release any obligation or Causes of Action of any Person:  (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations or (b) expressly set forth in and preserved by the Plan, the Plan Supplement, Plan Documents or related documents.

## Release Dispute

In the event of a Release Dispute, a Released Party may, at its sole cost and expense, file a motion with the Bankruptcy Court seeking a determination as to whether an AFFF Claimant's Cause of Action was settled and released pursuant to the Plan, and upon such motion, the Bankruptcy Court shall make such determination and, if appropriate, enjoin the prosecution of such Cause of Action as having been settled and released under the Plan.

## Relevant Definitions

"*2020 Separation Agreement*" means that certain Separation and Distribution Agreement, dated as of April 2, 2020, by and among United Technologies Corporation, Carrier Global Corporation, and Otis Worldwide Corporation.

"*Administrative Claim*" means an Allowed Claim for costs and expenses of administration of the Chapter 11 Case pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate; (b) Allowed Professional Compensation Claims; (c) Allowed Fee Examiner Compensation Claims; and (d) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

"*AFFF*" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

"*AFFF Claim*" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.

"*Assumed Liability*" shall have the meaning set forth in the Acquisition Agreement.

"*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other Claims, Causes of Action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties-in-interest under the Bankruptcy Code or applicable non-

bankruptcy law, including claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) was commenced prior to the Effective Date.

"*Buyer*" means Pacific Erin Opco, LLC, as the purchaser of substantially all of the Debtor's assets pursuant to the Acquisition Agreement and the Sale Order.

"*Carrier*" means Carrier Global Corporation, a Delaware corporation, and its non-Debtor affiliates and Related Parties.

"*Causes of Action*" means any current or future actions, Claims, cross-claims, third-party claims, causes of action, controversies, disputes, demands, rights, liens, indemnities, contributions, guaranties, suits, obligations, liabilities, losses, debts, fees or expenses, damages, interest, judgments, costs, accounts, defenses, remedies, offsets, powers, privileges, proceedings, licenses, and franchises of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, choate or inchoate, capable of being asserted directly or derivatively (including any alter ego theories), including any Claims for recovery of attorneys' fees, turnover, fraud, gross negligence, or willful misconduct, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws, consumer protection laws, environmental laws, or nuisance or trespass theories). Causes of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to or otherwise contest Claims or Interests, (c) any claim pursuant to section 362 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Actions.

"*Channeled AFFF Claims*" means all AFFF Claims against the Debtor or the Estate channeled to the Primary AFFF Settlement Trust under the Plan and Settlement Trust Documents. For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

"*Committee*" means the official committee of unsecured creditors of the Debtor appointed by the U.S. Trustee in the Chapter 11 Case under section 1102(a) of the Bankruptcy Code pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 83] and any amendments thereto.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Settling Parties.

"*Consummation*" means the occurrence of the Effective Date.

"*Debtor*" means Kidde-Fenwal, Inc., the debtor and debtor in possession in the Chapter 11 Case, now known as KFI Wind-Down Corp.  In 2007, KFFI (formerly known as National Foam, Inc.) merged into Kidde-Fenwal, Inc., with Kidde-Fenwal, Inc. as the surviving entity.  Pursuant to this merger, KFFI's liabilities were assumed by, and KFFI's causes of action were transferred to, Kidde-Fenwal, Inc. directly or indirectly by merger or other agreement.  The term "Debtor" includes Kidde-Fenwal, Inc. as successor by merger or other agreement by which Kidde-Fenwal, Inc. obtained or assumed the liabilities and Causes of Action of any Person.

"*Effective Date*" means the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date set forth in the Plan shall have been satisfied or waived and on which a notice indicating the Effective Date has been filed on the docket of the Chapter 11 Case.

"*Estate Causes of Action*" means Causes of Action owned or held by either the Debtor or its Estate, or capable of being asserted (currently, or in the future) by any Person or Governmental Unit on behalf of, under or through, either the Debtor or its Estate, and each of their respective successors or assigns, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions, that may be commenced by a representative of the Estate under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise.  Without limiting the foregoing, Estate Causes of Action shall include:  (a) Causes of Action that on or after the Petition Date may be exclusively asserted by or on behalf of the Debtor or its Estate under applicable law, or that prior to the Petition Date could have been asserted by the Debtor on its own behalf under applicable law, including Causes of Action based on (i) the doctrine of successor liability that seek to impose the Debtor's (including KFFI's or National Foam, Inc.'s) liabilities on an alleged successor, whether based on a contractual assumption of liability, consolidation or de facto merger, acquisition of the Debtor's product line, fraud, domination, direction of the Debtor's affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, or (ii) the doctrines of alter ego or veil piercing involving alter egos of the Debtor or the piercing of the Debtor's (including KFFI's or National Foam, Inc.'s) corporate veil, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form; (b) Causes of Action or theories for recovery or remedies that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is generally common to creditors of the Debtor and can be asserted by the Debtor under applicable law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor.  Subsections (a), (b) and (c) immediately above expressly encompass any Causes of Action based on:  (i) the alleged assumption of the Debtor's (including KFFI's or

National Foam, Inc.'s) liabilities (but not a non-Debtor's liabilities) by Kidde plc (n/k/a Kidde Limited) pursuant to the 2000 Demerger Agreement, or any alleged subsequent assumption of such liabilities of the Debtor from Kidde plc by any other Released Party; or (ii) the alleged assumption of the Debtor's liabilities (but not a non-Debtor's liabilities), including any liabilities resulting from acts or omissions of National Foam, Inc. or KFFI, by a Released Party pursuant to the 2020 Separation Agreement.  For the avoidance of doubt, Estate Causes of Action shall not include any Independent AFFF Causes of Action or any Sovereign State Retained Causes of Action or Insurance Actions against any Released Party based on acts or omissions occurring after entry into the Plan Support Agreement with respect to rights under the 2020 Separation Agreement or the RTX Waiver to access and make Claims under any Insurance Policy or otherwise obtain the benefit of the Insurance Assignment.

"*Estate Claims Settlement*" means the settlement, including the release of all Estate Causes of Action against the Released Parties, pursuant to the Estate Claims Settlement Agreement.

"*Independent AFFF Cause of Action*" means any Cause of Action that could be asserted by an AFFF Claimant against a Non-Debtor Party based on the Non-Debtor Party's own conduct and breach of duty (*i.e.*, duty owed to the AFFF Claimant and not owed to the Debtor), including (a) Causes of Action arising from such acts or omissions of such Non-Debtor Party, and (b) Causes of Action based on allegations that a Non-Debtor Party is responsible for such conduct under theories of liability or recovery or remedies that could have been asserted by an AFFF Claimant on its own behalf under applicable state or federal law in respect of such Causes of Action prior to the Petition Date based on (i) the doctrine of successor liability involving a Non-Debtor Party that is alleged to be a successor to another Non-Debtor Party with respect to liabilities not directly or indirectly assumed from the Debtor, whether based on a contractual assumption of liability (including under the 2020 Separation Agreement), consolidation or de facto merger, acquisition of product line, fraud, domination, direction of affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, (ii) the doctrines of alter ego or veil piercing involving alter egos of a Non-Debtor Party, or piercing the corporate veil between Non-Debtor Parties, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form, or (iii) alleged derivative or vicarious liability of a Non-Debtor Party for liabilities of another Non-Debtor Party not directly or indirectly assumed from the Debtor; *provided* that, if any Cause of Action falls within the definition of Estate Cause of Action or Sovereign State Retained Cause of Action, it is not an Independent AFFF Cause of Action.
"*Insurance Assignment*" means the transfer by the Debtor and Carrier to the Primary AFFF Settlement Trust of certain rights in connection with the Insurance Policies as set forth in Article 5 of the Plan.

"*Insurance Policy/ies*" means: (i) any insurance policies listed on Schedule 1 to the Plan, (ii) to the extent not listed on Schedule 1, any "general liability" insurance (which, for the avoidance of doubt, shall exclude director & officer, automobile, or workers' compensation insurance) contract, binder, certificate, insurance policy, or reinsurance policy, whether currently known or unknown, discovered after the Effective Date, in effect at any time on or before the Petition Date naming the Debtor, the Contributing Parties, or any of their predecessors, subsidiaries, or past or present affiliates as an insured (whether as the primary or additional insured) or that provides or may provide coverage to Carrier or the Debtor for AFFF Claims, (iii) "Aviation" policies to

which Carrier or the Debtor has rights as listed in Schedule 2 to the Plan solely to the extent of Insurance Policy Rights applicable to or arising from AFFF Claims and (iv) any other subsequently discovered insurance policies of the same types as listed in Schedules 1 and 2 to the Plan to the extent that Carrier or the Debtor have rights under such policies (whether or not such policies are specifically titled as "General Liability" or "Aviation" policies).  For the avoidance of doubt, "Insurance Policies" shall not include any D&O Policies, automobile policies or worker's compensation insurance.

"*Insurance Policy Rights*" means any and all rights subject to the Insurance Assignment.

"*KFFI*" means Kidde Fire Fighting, Inc. (formerly known as National Foam, Inc.).

"*Liquidating Estate Claims*" means Administrative Claims, Priority Tax Claims, Other Priority Claims and Secured Claims.

"*New National Foam*" means, collectively, National Foam, Inc. f/k/a Eurostar US Tradeco, Inc., Angus Fire Ltd. f/k/a Eurostar Tradeco Limited, Angus International Safety Group Limited f/k/a/ Eurostar Holdco Limited, and each of their Related Parties.

"*New National Foam Release*" means a settlement between the Debtor and New National Foam pursuant to which (a) Estate Causes of Action against New National Foam are resolved for value reasonably acceptable to the Settling Parties and (b) New National Foam agrees to absolutely, unconditionally, and irrevocably release and discharge the Debtor and each Released Party from any and all Claims and Causes of Action, whether known or unknown, based on or relating to, or in any manner arising from that certain Share and Business Sale Agreement, dated as of June 28, 2013, or any other occurrence taking place on or before the Effective Date, including Proof of Claim No. 225, and otherwise in form and substance reasonably acceptable to the Settling Parties.

"*Non-Debtor Party*" means any Person other than the Debtor.  For the avoidance of doubt, the term "*Non-Debtor Party*" does not include KFFI or National Foam, Inc.

"*Other Insurance Company*" means an Insurance Company that is not a Settling Insurance Company.

"*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"*Person*" means a "person" or "entity" as defined in the Bankruptcy Code.

"*Petition Date*" means May 14, 2023, the date on which the Debtor commenced the Chapter 11 Case.

"*PFAS*" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.

"*Primary AFFF Settlement Trust*" means the settlement trust organized under the laws of the state of Delaware and established under the Plan and the Settlement Trust Documents, which

shall (i) have the powers, duties and obligations set forth in the Plan and the Settlement Trust Documents, (ii) assume all liability of the Debtor and the Estate for, and administer, all Channeled AFFF Claims and (iii) be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code.

"*Primary AFFF Settlement Trust Agreement*" means the Settlement Trust Agreement governing the Primary AFFF Settlement Trust, dated as of the Effective Date, as the same may be amended or modified from time to time in accordance with the terms thereof.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Released Party*" means (i) Carrier, (ii) RTX, and (iii) each of their Related Parties in their capacities as such. Released Parties shall not include DuPont, 3M, or their current or former affiliates and Related Parties. If a Person is a current or former affiliate or Related Party of DuPont or 3M, and such Person is also a current or former affiliate or Related Party of Carrier or RTX, then such Person shall not be a Released Party. For the avoidance of doubt, New National Foam shall not be a Released Party unless the New National Foam Release is provided by the Effective Date.

"*Related Party*" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, and current and former affiliates and subsidiaries, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, all only in their capacity as a representative of such Person, and (c) respective heirs, executors, estates, and nominees, in each case solely in its capacity as such.

"*RTX Waiver*" shall have the meaning set forth in Article 5.5.11(b) of the Plan.

"*Sale Order*" means the *Order (I) Approving the Sale of All or Substantially All of the Debtor's Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving Debtor's Entry, and Performance Under the Contribution Agreement, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Granting Related Relief*, entered by the Bankruptcy Court on April 2, 2024 [D.I. 1058].

"*Settlement Trust Agreements*" means, collectively, (i) the Primary AFFF Settlement Trust Agreement, (ii) the Sovereign State AFFF Settlement Trust Agreement and (iii) the GUC Liquidating Trust Agreement. To the extent that any provision of a Settlement Trust Agreement impacts the rights of Carrier, such provision shall not be included in such Settlement Trust Agreement unless reasonably acceptable to Carrier.

"*Settlement Trust Documents*" means, collectively, (a) the Settlement Trust Agreements, (b) the TDPs, (c) the Confirmation Order, and (d) any other agreements, instruments, and documents governing the establishment, administration, and operation of the Settlement Trusts.

"*Settlement Trusts*" means the Primary AFFF Settlement Trust, Sovereign State AFFF Settlement Trust and GUC Liquidating Trust.

"*Settling Insurance Company*" means any Insurance Company that contributes funds, proceeds, or other consideration to or for the benefit of the Primary AFFF Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order.  No Insurance Company shall be considered a Settling Insurance Company without the Committee's prior written consent.

"*Sovereign State*" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.

"*Sovereign State AFFF Settlement Trust*" means the trust established under the Plan and the Settlement Trust Documents to administer all Sovereign State Claims against the Debtor.  The Sovereign State AFFF Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code and shall have the powers, duties and obligations set forth in the Settlement Trust Documents.

"*Sovereign State Retained Cause of Action*" means any Claim or Cause of Action asserted, or which may be asserted, by a Sovereign State against a Contributing Party that (1) is not an Estate Cause of Action and (2) arises from a statute, regulation, or common law that creates a theory of liability, by which a Sovereign State could recover damages or penalties, or obtain equitable or injunctive relief, against a Contributing Party.  For the avoidance of doubt, a Sovereign State may assert a Sovereign State Retained Cause of Action irrespective of whether such Sovereign State Retained Cause of Action could also be considered an Independent AFFF Cause of Action.

"*TDPs*" or "Trust Distribution Procedures" means the Trust Distribution Procedures for the Settlement Trusts, as the same may be amended or modified from time to time in accordance with the terms thereof, that will govern the claims submission, adjudication, and distribution processes for the Settlement Trusts in a manner that is fair and equitable to Holders of Allowed Channeled AFFF Claims.  To the extent that any provision of the TDPs impacts the rights of Carrier, such provision shall not be included unless reasonably acceptable to Carrier.

"*Transferred Assets*" shall have the meaning set forth in the Acquisition Agreement.

**EXHIBIT**

**EXHIBIT**

| Creditor Name | Type of Authority for Vote (A OR B) | | Vote to ACCEPT (in Favor of the Plan) OR Vote to REJECT (Against the Plan) | |
|---|---|---|---|---|
| | A | B | ACCEPT | REJECT |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |

In re Kidde-Fenwal, Inc.
Case Number: 23-10638 (LSS)

Master Ballot

**<u>EXHIBIT 2P</u>**

**AFFF Master Ballot for Class 3E: Personal Injury Claims**

**\*\*KFI WIND-DOWN CORP. PLAN BALLOT\*\***

---

THIS BALLOT IS FOR HOLDERS OF CLAIMS AGAINST KFI WIND-DOWN CORP. (F/K/A KIDDE-FENWAL, INC.) ARISING FROM ITS AFFF OR AFFF-CONTAINING PRODUCTS.

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |

### MASTER BALLOT FOR ACCEPTING OR REJECTING
### THE DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
### UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

---

### CLASS 3E:  PERSONAL INJURY CLAIMS

---

On May 14, 2023 (the "Petition Date"), KFI Wind-Down Corp. f/k/a Kidde-Fenwal, Inc. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") (the "Chapter 11 Case").

On [•], 2025, the Debtor filed the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Plan"),[2] which is described in greater detail in the *Disclosure Statement for the Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Disclosure Statement").

---

[1]    The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters are located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

> **THE PLAN CONTAINS RELEASE, INJUNCTION AND EXCULPATORY PROVISIONS.  THESE PROVISIONS ARE SET FORTH IN APPENDIX A TO THIS MASTER BALLOT.  YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.**

On [•], 2025, the Bankruptcy Court entered an order [D.I. [•]] (the "Disclosure Statement Order") approving the Disclosure Statement as containing "adequate information" within the meaning ascribed to such term in section 1125 of the Bankruptcy Code and procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures").

The Plan, Disclosure Statement, Disclosure Statement Order, Solicitation Procedures and documents included in the Plan Supplement as of the Solicitation Mailing Deadline have been included in the package of materials containing the attached master ballot (the "Master Ballot") and can be accessed free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code.  For a description of the Causes of Action to be enjoined and the identities of the Persons that would be subject to this injunction, see Article IV.E.8 of the Disclosure Statement and Article 10.8 of the Plan.

A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of the Claims that submit votes in that Voting Class vote to accept the Plan.  Even if a Voting Class votes to reject the Plan, the Bankruptcy Court nonetheless may confirm the Plan if it finds the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

If the Plan is confirmed by the Bankruptcy Court, all Holders of Claims against and Interests in the Debtor (including those Holders who reject the Plan or abstain from voting on the Plan, and those Holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby.

The Debtor will file the Plan Supplement (as may be amended, modified or supplemented from time to time) with the Bankruptcy Court no later than **November 17, 2025**.

The documents included in the Plan Supplement as of the Solicitation Mailing Deadline are included in your Solicitation Package. Any further Plan Supplement, and any amendments or supplements to the foregoing, will only be served on:  (a) the U.S. Trustee, (b) the Notice Parties and (c) the 2002 List.   Once filed, a copy of the Plan Supplement will also be available for review and download on the Debtor's website maintained by the Solicitation Agent free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

**Unless such time is extended by the Debtor, in consultation with the Settling Parties, or the Bankruptcy Court, the Master Ballot must be properly completed, signed and**

submitted to the Solicitation Agent *so as to be actually received* no later than 5:00 p.m. (prevailing Eastern Time) on December 15, 2025 (the "<u>Voting Deadline</u>") in order for the votes on the Master Ballot to count.  Unless you receive express, written permission from the Debtor to submit a Master Ballot via other means, the <u>ONLY</u> acceptable manner of submission of Master Ballots is either (a) by email to <u>KFIInquiries@stretto.com</u> or (b) by regular mail, overnight courier or hand delivery to KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, in either case so that it is <u>actually received</u> by the Solicitation Agent by or before the Voting Deadline (December 15, 2025 at 5:00 p.m. (prevailing Eastern Time)).

This Master Ballot is to be used by attorneys only for voting on behalf of Holders of Personal Injury Claims against the Debtor in Class 3E of the Plan.  Please refer to the Plan for the specific definition of "Personal Injury Claim," which is copied below, as well as other relevant definitions.

> *"Holder" means a Person holding a Claim against or an Interest in the Debtor.*

> *"Personal Injury Claim" means an AFFF Claim asserted by an individual person, or legal representative of such person, for or related to, directly or indirectly, personal injuries or wrongful death.*

> *"AFFF" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.*

> *"PFAS" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.*

> *"AFFF Claim" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.*

> *"Claim" has the meaning ascribed to such term under section 101(5) of the Bankruptcy Code.*

> *[Remainder of page left intentionally blank]*

-3-

## <u>DOCUMENTS INCLUDED WITH THE MASTER BALLOT</u>

You should have received the following documents with the Master Ballot (collectively, the "<u>Solicitation Package</u>").  **Please note that some of the following documents may be included on a USB flash drive included as part of your Solicitation Package.**

- the Cover Letter;

- the Committee Letter;

- the Solicitation Procedures;

- a USB flash drive containing a copy of the Disclosure Statement (and exhibits thereto, including the Plan) and the documents contained in the Plan Supplement that have been filed prior to the Solicitation Mailing Deadline;

- the Disclosure Statement Order (without exhibits);

- a preaddressed, return envelope for completed Master Ballots;

- the Confirmation Hearing Notice; and

- any other materials ordered by the Court to be included as part of the Solicitation Package.

If you have questions about the Master Ballot, or if you did not receive a copy of the Plan or any related materials, please contact the Solicitation Agent at <u>KFIInquiries@stretto.com</u> or (866) 887-0488 (toll-free) or +1 (949) 889-0128 (international).  Information may also be obtained at <u>https://cases.stretto.com/kfi</u> by clicking the link for "Plan & Disclosure Statement" on the landing page.

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtor or any other party for payment purposes.

-4-

## INSTRUCTIONS FOR COMPLETING THE MASTER BALLOT

1.     The Master Ballot is provided to you, as an attorney for Holders of Personal Injury Claims against the Debtor, in connection with the solicitation of votes of Holders of Personal Injury Claims to accept or reject the Plan.  The Disclosure Statement and Plan are also being provided to you.   PLEASE READ ALL DOCUMENTS CAREFULLY BEFORE COMPLETING THE MASTER BALLOT.

2.     The Master Ballot is to be used by attorneys who represent, **and are authorized to vote on behalf of**, one or more Holders of Personal Injury Claims.  You may be required to provide evidence of your authorization by Holders of Personal Injury Claims to vote to accept or reject the Plan.

3.     You are receiving this Master Ballot because you represent certain clients (collectively, your "Eligible Clients") who are Holders of Personal Injury Claims against the Debtor.  Your firm ("Firm") must certify to one of the options below with respect to each Eligible Client whose vote is included in your Firm's Master Ballot.

    (a)    "Option (a) Certification":  The Firm (or one or more of its attorneys) has communicated with the applicable Eligible Client (as defined below) and has been authorized, consistent with applicable law, by such Eligible Client to vote their Personal Injury Claim to accept or reject the Plan.  The Firm may not rely on negative notice for such authorization.

    (b)    "Option (b) Certification":  The Firm (or one or more of its attorneys) has the authority under a power of attorney to vote to accept or reject the Plan on behalf of the applicable Eligible Client and the Firm completed the vote on behalf of such Eligible Client on the Master Ballot in accordance with the authority granted to the Firm.

4.     To use the Master Ballot, you must be authorized to vote on behalf of your Eligible Clients under all applicable standards for such authorization.  With respect to any of the Eligible Clients on the Exhibit, if you are unable to certify that you have the authority to vote on the Plan on behalf of such Eligible Client, you must not vote on behalf of such Eligible Client.

5.     To be entitled to vote on the Plan, a Holder of a Personal Injury Claim in Class 3E (either directly or through his or her attorney or agent) must be able to certify that such Holder has a Personal Injury Claim in Class 3E.

6.     To have the votes reflected on the Master Ballot counted for purposes of voting on the Plan, the Master Ballot must be completed, signed, and submitted **so that it is actually received** no later than the Voting Deadline by the Solicitation Agent as set forth in these instructions below.   Master Ballots will be accepted either (i) by email to KFIInquiries@stretto.com or (ii) by regular mail, overnight courier or hand delivery to KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602 unless the party submitting a

4925-3705-9073 v.6

Master Ballot previously received permission in writing from the Debtor to submit such Master Ballot via other means. If a Master Ballot is received after the Voting Deadline (as may be extended by the Debtor in writing, in consultation with the Settling Parties), it may not be counted. If the Master Ballot is not signed on the appropriate lines, the Master Ballot will not be valid or counted as having been cast.

7.     The Master Ballot will not constitute or be deemed a Proof of Claim or Interest, an assertion of a Claim, the allowance of a Claim, or the acceptance or liquidation of any Personal Injury Claim for purposes of any distribution. None of the information set forth in the Master Ballot shall constitute an admission by the Debtor as to the extent, validity, or priority of the Claim voted herein, nor shall anything contained herein or information submitted in or with the Master Ballot be binding upon the Debtor or the Holder in any subsequent claims resolution process or other proceeding. The Master Ballot may not be used for any purposes other than to transmit votes on the Plan.

8.     Multiple Master Ballots may be completed and delivered to the Solicitation Agent. Subject to the terms of the Solicitation Procedures, votes reflected by multiple Master Ballots submitted by the same Firm will be counted except to the extent that they are duplicative of other Master Ballots. If two or more such ballots submitted by the same Firm are inconsistent, the last valid Master Ballot received by the Solicitation Agent on or before the Voting Deadline will, to the extent of such inconsistency, govern unless otherwise ordered by the Bankruptcy Court. If more than one Master Ballot is submitted and the last such ballot supplements rather than supersedes earlier Master Ballot(s), please designate the subsequent Master Ballot(s) as "Supplemental" and clearly mark which of those votes reflected thereon are additional votes.

9.     Notwithstanding the foregoing, if the Solicitation Agent receives two or more Master Ballots from separate Firms, each of whom purports to represent the same Holder of a Personal Injury Claim, it is the sole obligation and responsibility of the Firms to coordinate with each other to resolve any conflicting representations, and for the appropriate Firm to submit the vote on behalf of such Eligible Client together with an email to KFIInquiries@stretto.com copying all affected Firms confirming such resolution. The Solicitation Agent is entitled to rely upon such an email. If the Firms are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple consistent votes on account of such Eligible Client (*i.e.*, multiple votes to accept the Plan or multiple votes to reject the Plan), the Solicitation Agent is authorized to treat such votes as duplicative and count them only once for both numerosity and voting amount purposes. If, however, the Firms voting on account of such Eligible Client are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple inconsistent votes on account of such Eligible Client (*i.e.*, a vote to accept the Plan and a vote to reject the Plan), the Solicitation Agent shall contact the relevant Firms and request they coordinate with each other to resolve the conflicting representation. If after the submission of inconsistent votes but prior to the Voting Deadline, the applicable Firms timely reach a consensus regarding which vote should be counted, one of the applicable Firms may email KFIInquiries@stretto.com, copying all other affected Firms, and direct the Solicitation Agent as to which vote should be counted. The Solicitation Agent is entitled to rely upon such an email. If representation of the Holder of the

-6-

Claim is not resolved within 10 calendar days from the notice of the conflict as provided by the Solicitation Agent, such votes shall not be counted.

10.     Each Holder of a Personal Injury Claim that votes must vote his or her entire Claim either, to ACCEPT (vote in favor of), or to REJECT (vote against), the Plan.  A Holder of a Personal Injury Claim may not split his or her vote.  Accordingly, the votes of any Holder of a Personal Injury Claim who purports partially to accept and partially to reject the Plan will not be counted.

11.     If the Master Ballot is signed and timely sent to the Solicitation Agent, but does not designate either acceptance or rejection, or designates both acceptance and rejection, of the Plan for any particular claimant listed on the Exhibit, then the Solicitation Agent may, at its discretion, either contact the party submitting the Master Ballot in order to cure the defect on the Master Ballot or such Claim will not be counted either as an acceptance or rejection of the Plan.

12.     **To complete the Master Ballot properly, you must follow the procedures described below:**

Item 1 of the Master Ballot requires that you to indicate, for each Eligible Client on the Exhibit for which you are casting a vote, (a) the authority upon which votes on behalf of each such Eligible Client are being included (*i.e.*, Option (a) Certification or Option (b) Certification as described above) in the Master Ballot and (b) whether such Eligible Client accepts or rejects the Plan.

Item 2 of the Master Ballot contains certifications which are required for you to submit a vote on behalf of one or more Holders of Personal Injury Claims.  Please ensure that you have read and understood the certifications before signing the Master Ballot.  **If you are unable to make the certification as to the authority to vote on behalf of any Holder of a Personal Injury Claim you represent, you may not cast a vote on behalf of such Holder.**

Sign the Master Ballot.

Provide your name and mailing and email addresses where indicated.

Contact the Solicitation Agent if you need additional information or copies of any documents contained in the Solicitation Package or if you have any technical questions regarding composition and submission of your Master Ballot.

Submit the completed, executed Master Ballot *so as to be actually received* by the Solicitation Agent before the Voting Deadline either (i) by email to KFIInquiries@stretto.com or (ii) by regular mail, overnight courier or hand delivery to KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602.

---

**IF YOU HAVE ANY QUESTIONS REGARDING THE MASTER BALLOT,
BELIEVE YOU MAY HAVE RECEIVED AN INCORRECT BALLOT,
OR IF YOU DID NOT RECEIVE A COPY OF ANY OF**

---

-7-

**THE DOCUMENTS DESCRIBED IN THESE INSTRUCTIONS,
PLEASE CONTACT THE SOLICITATION AGENT AT:**

**TELEPHONE: (866) 887-0488 (TOLL-FREE)
OR +1 (949) 889-0128 (INTERNATIONAL)
E-MAIL: KFIINQUIRIES@STRETTO.COM
OR VISIT HTTPS://CASES.STRETTO.COM/KFI**

4925-3705-9073 v.6

# **PLAN BALLOT**

## MASTER BALLOT FOR ACCEPTING OR REJECTING THE DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

### CLASS 3E: PERSONAL INJURY CLAIMS

**PLEASE COMPLETE THE FOLLOWING:**

The Solicitation Procedures are included within the Solicitation Package that accompanies these instructions. The Solicitation Procedures contain important information regarding the balloting process. Please read the Solicitation Procedures before submitting this Master Ballot. If you have any technical questions or need to arrange for special delivery of your Master Ballot, please contact the Solicitation Agent.

**Please note that each Holder of a Personal Injury Claim who votes on the Plan must vote the entire amount of his or her Claim to accept or reject the Plan. All AFFF Claims have been temporarily allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance or any other purpose.** Any Holders of AFFF Claims who attempt partially to reject and partially to accept the Plan will not have their vote counted. If this Master Ballot is signed and timely received by the Solicitation Agent but does not designate either acceptance or rejection or designates both acceptance and rejection of the Plan for any particular claimant, such vote will not be counted either as an acceptance or rejection of the Plan.

**Item 1 – List of Holders of Personal Injury Claims Represented by the Firm.**

The exhibit to this Master Ballot (the "Exhibit") contains the names set forth on the Client List previously submitted by your Firm with the Solicitation Directive and is a list of each Holder of a Personal Injury Claim that you represent. You must indicate on the Exhibit next to each Eligible Client for which you cast a vote (a) the authority upon which votes on behalf of each such Eligible Client are being included (*i.e.*, Option (a) Certification or Option (b) Certification as described in Item 2) on the Master Ballot and (b) whether such Eligible Client accepts or rejects the Plan.

**Item 2 – Certifications, Acknowledgement, Signature, and Date.**

4925-3705-9073 v.6

By signing this Master Ballot, the undersigned certifies under penalty of perjury that each of the following statements is true and correct:

- I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee and the MDL PEC Co-Leads urging claimants to vote to ACCEPT (vote in favor of) the Plan.

- I am authorized, by agreement or under applicable law, by each of the Holders of the Personal Injury Claims listed on the Exhibit for which I have voted to vote his, her, or its Personal Injury Claim to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan.

- For each client listed on the Exhibit and for whom the "Option (a) Certification" is indicated, I or my Firm communicated with each such Eligible Client and have been authorized, consistent with applicable law, by each such Eligible Client to vote each of their Personal Injury Claim to accept or reject the Plan.  I am not relying on negative notice to make such certification.

- For each Eligible Client listed on the Exhibit and for whom the "Option (b) Certification" is indicated, I or my Firm has the authority under a power of attorney to vote to accept or reject the Plan on behalf of each such Eligible Client and I have completed this Master Ballot in accordance with such authority.

- To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, each Holder of a Personal Injury Claim listed on the Exhibit who is casting a vote has, on such Holder's information and belief, a Personal Injury Claim against the Debtor.

Print or Type Name of Attorney: _____

Name of Firm: _____

Attorney Signature: _____

Street Address: _____

City, State, and ZIP Code: _____

Telephone Number: _____

E-mail Address of Attorney/Signatory: _____

-2-

Date: _____

  The entire Exhibit accompanying this Master Ballot must be completed and submitted with this completed Master Ballot to the Solicitation Agent.

> **IF THIS MASTER BALLOT IS NOT *ACTUALLY RECEIVED BY*
> THE SOLICITATION AGENT BY 5:00 P.M. (PREVAILING EASTERN TIME) ON
> DECEMBER 15, 2025, YOUR VOTE MAY NOT BE COUNTED.**

## Appendix A

**Release, Injunction and Exculpation Provisions in the Plan[1]**

---

[1] The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.

### Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released and cancelled, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Liquidating Estate and their successors and assigns. Any Holder of such mortgage, deed of trust, Lien, pledge or other security interest (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including and cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Liquidating Administrators to evidence such release, including the execution, delivery and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

### Releases by the Estate

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party, the Debtor, the Liquidating Estate and each Related Party of the Debtor and the Liquidating Estate shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, or any other Person or Governmental Unit asserting currently or in the future by, under, through, or on behalf of the Debtor or its Estate, and each of their respective successors or assigns, including the Settlement Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between one or both of the Debtor, on the one hand, and any Released Party, the Liquidating Estate, or any Related Party of the Debtor and the Liquidating Estate, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.3 of the Plan shall not be construed to release any post-Effective Date obligations under the RTX Waiver, the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, which specifically provides that such Estate Claims Settlement can be terminated, and the releases provided in the Plan or in the Estate Claims Settlement are void, if Carrier fails to make the installments of the Guaranteed Cash Payment when due and such failure is not timely cured within 30 days, at which time the Primary AFFF Settlement Trust is entitled to commence, prosecute, or continue all Estate Causes of Action against the Released Parties in any court of competent jurisdiction, and take such other actions as the Primary AFFF Settlement Trustee may determine in the exercise of their fiduciary duties.

### Releases by the Released Parties

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Released Parties and their successors or assigns of and from any and all Claims and Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, the Debtor's current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between any of the Debtor, the Liquidating Estate, the Settlement Trusts or the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case, on the one hand, and any Released Party, on the other hand, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any post-Effective Date obligations under the Plan Documents, the Confirmation Order, the 2020 Separation Agreement as supplemented by the RTX Waiver, or the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, or the right of any Person to enforce the same in accordance with

the terms thereof. Except with respect to the Claims and Causes of Action against the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case that are released and discharged under Article 10.4 of the Plan, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any obligations, rights, Causes of Action or Claims that Carrier Global Corporation or members of the Carrier Group (other than the Debtor), Otis Worldwide Corporation or members of the Otis Group, or RTX or members of the UTC Group may have against any Person under the 2020 Separation Agreement as supplemented by the RTX Waiver (including indemnification rights of RTX and other members of the "UTC Group" under the 2020 Separation Agreement).  For the avoidance of doubt, in the event that the Estate Claims Settlement Effective Date does not occur or the Estate Claims Settlement is terminated as contemplated by the last paragraph of Article 10.3 in the Plan, all releases being provided by the Released Parties under the Plan shall be void.

### Scope of Releases

Each Person providing releases under the Plan, including the Debtor, the Estate and the Settling Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts. Each Person providing releases under the Plan shall be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

### Exculpation

Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtor and its directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation.

As of the Effective Date, to the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in Article 10 of the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person for any act or omission in connection with, related to or arising out of this Chapter 11 Case, including (a) the operation of the Debtor's businesses during the pendency of this Chapter 11 Case; (b) the

administration and adjudication of Claims and Interests during this Chapter 11 Case; (c) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Plan, the Disclosure Statement, the Plan Supplement, or any related contract, instrument, release or other agreement or document created or entered into in connection with the Chapter 11 Case (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan and the distribution of property under the Plan); (d) any other transaction, agreement, event, or other occurrence related to the Chapter 11 Case taking place on or before the Effective Date, other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.

## Injunction

Except as otherwise expressly provided in the Plan or the Confirmation Order, the satisfaction and release pursuant to Article 10 of the Plan shall also act as a permanent injunction against any Person who has held, holds, or may in the future hold Claims against or Interests in the Debtor or any of its assets or properties based on any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are treated, released, settled, channeled, or exculpated pursuant to the terms of the Plan from taking any of the following actions on account of, or on the basis of, such Claims or Interests: (a) commencing or continuing any action to collect, enforce, offset, recoup, or recover with respect to any Claims or Interests treated, released, settled, channeled, or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Claim or Interest against the Debtor, the Liquidating Estate, the Settlement Trusts, or its or their respective property; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of or in connection with or with respect to any such Claims or Interests, notwithstanding an indication of a Claim or Interest or otherwise that a Holder of such Claim or Interest asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise, against the Debtor, the Liquidating Estate, or the Settlement Trusts; or (e) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

## Channeling Injunction

Notwithstanding anything to the contrary in the Plan, to preserve and promote the settlements contemplated by and provided for in the Plan, including the Insurance Settlement Agreements, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under sections 105(a) and 1123(b) of the Bankruptcy Code, the sole recourse of any Holder of a Channeled AFFF Claim against the Debtor or a Released Party on account of such Channeled AFFF Claim shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to

and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, and such Holder shall have no right whatsoever at any time to assert any such Channeled AFFF Claim or any Estate Cause of Action that is released under the Estate Claims Settlement against the Debtor or any Released Party or any property or interest in property of the Debtor or any Released Party.  For the avoidance of doubt, the sole recourse for any Channeled AFFF Claim covered by any Insurance Policy issued by a Settling Insurance Company shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents.  Accordingly, on and after the Effective Date, all Holders of AFFF Claims that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled AFFF Claim or any Estate Cause of Action against the Debtor or any Released Party shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from the Debtor or any Released Party with respect to any such Channeled AFFF Claim or Estate Cause of Action, other than from the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, including:

a)    commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

b)    enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

c)    creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

d)    asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party; or

e)    taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents, or, with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, by the Sovereign State AFFF Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Channeled AFFF Claim.

The Debtor, the Liquidating Estate and/or any Released Party, as applicable, may enforce the Channeling Injunction and/or the Releases contained in the Plan before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at their own cost and expense, and no such cost or expense incurred by a party other than the Primary AFFF Settlement Trust shall be reimbursed or indemnified by the Primary AFFF Settlement Trust under any circumstances.

## Insurance Company Injunction

Subject to the provisos set forth in this Section, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim or cause of action (including any AFFF Claim or any Claim for or respecting any Primary AFFF Settlement Trust expense) against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Insurance Policy, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, statute or any other theory of law, equity or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim or cause of action, including:

a)      commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, demand, or cause of action against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such Claim, demand, or cause of action against any Insurance Company);

b)      enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

c)      creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such Claim or cause of action; and

d)      except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

*provided, however,* that (i) nothing in this Section shall impair or affect the rights of any member of the UTC Group, including RTX, or any member of the Otis Group (each as defined in the 2020 Separation Agreement), or any additional insured designated by RTX

or any member of the UTC Group, based upon, attributable to, arising out of, or in any way connected with an Insurance Policy, including to assert Claims or Causes of Action against any Insurance Company for covered losses and to receive proceeds in respect thereof; (ii) this injunction shall not impair in any way any actions brought by the Primary AFFF Settlement Trust against any Other Insurance Company; (iii) the Primary AFFF Settlement Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction with respect to any Other Insurance Company, in accordance with the Settlement Trust Documents, upon express written notice to such Other Insurance Company; and (iv) this injunction is not issued for the benefit of any Other Insurance Company, and no Other Insurance Company is a third-party beneficiary of this injunction.

Notwithstanding anything to the contrary in the Plan, this injunction shall not enjoin:

a)     the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of Holders of AFFF Claims to assert such Claims, as applicable, in accordance with the TDPs;

b)     the rights of the Primary AFFF Settlement Trust to prosecute any action based on or arising from Insurance Policies, except to the extent otherwise released;

c)     the rights of the Primary AFFF Settlement Trust to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company based on or arising from the Insurance Policies;

d)     any actions of the Contributing Parties in fulfilling their obligations under the Estate Claims Settlement in consultation and coordination with the Primary AFFF Settlement Trust;

e)     the rights of any Insurance Company to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company; or

f)     the Claims for reinsurance under reinsurance contracts or Claims under retrocessional contracts among the Settling Insurance Companies and any Other Insurance Company.

### Prohibition on Actions Against Buyer

Subject to the Sale Order and the Acquisition Agreement, Buyer, in its capacity as such, shall not have any liability for any AFFF Claims against the Debtor arising prior to the closing of the Sale.  Except as expressly otherwise set forth in the Sale Order, all persons and entities hereby are forever barred, estopped and permanently enjoined from asserting against Buyer, its Affiliates, its successors or assigns, its property or the Transferred Assets, such persons' or entities' AFFF Claims that have been or could have been asserted against the Debtor arising prior to the closing of the Sale.  For the avoidance of doubt, the foregoing shall

not release Buyer from, or enjoin any actions against Buyer for, any Assumed Liability or any other liability incurred by Buyer on account of its operations following the closing of the Sale.

## Limitations on Exculpations and Releases

Notwithstanding anything to the contrary in the Plan, none of the releases or exculpations set forth in the Plan shall operate to waive or release any obligation or Causes of Action of any Person:  (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations or (b) expressly set forth in and preserved by the Plan, the Plan Supplement, Plan Documents or related documents.

## Release Dispute

In the event of a Release Dispute, a Released Party may, at its sole cost and expense, file a motion with the Bankruptcy Court seeking a determination as to whether an AFFF Claimant's Cause of Action was settled and released pursuant to the Plan, and upon such motion, the Bankruptcy Court shall make such determination and, if appropriate, enjoin the prosecution of such Cause of Action as having been settled and released under the Plan.

## Relevant Definitions

"*2020 Separation Agreement*" means that certain Separation and Distribution Agreement, dated as of April 2, 2020, by and among United Technologies Corporation, Carrier Global Corporation, and Otis Worldwide Corporation.

"*Administrative Claim*" means an Allowed Claim for costs and expenses of administration of the Chapter 11 Case pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate; (b) Allowed Professional Compensation Claims; (c) Allowed Fee Examiner Compensation Claims; and (d) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

"*AFFF*" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

"*AFFF Claim*" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.

"*Assumed Liability*" shall have the meaning set forth in the Acquisition Agreement.

"*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other Claims, Causes of Action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties-in-interest under the Bankruptcy Code or applicable non-

bankruptcy law, including claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) was commenced prior to the Effective Date.

"*Buyer*" means Pacific Erin Opco, LLC, as the purchaser of substantially all of the Debtor's assets pursuant to the Acquisition Agreement and the Sale Order.

"*Carrier*" means Carrier Global Corporation, a Delaware corporation, and its non-Debtor affiliates and Related Parties.

"*Causes of Action*" means any current or future actions, Claims, cross-claims, third-party claims, causes of action, controversies, disputes, demands, rights, liens, indemnities, contributions, guaranties, suits, obligations, liabilities, losses, debts, fees or expenses, damages, interest, judgments, costs, accounts, defenses, remedies, offsets, powers, privileges, proceedings, licenses, and franchises of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, choate or inchoate, capable of being asserted directly or derivatively (including any alter ego theories), including any Claims for recovery of attorneys' fees, turnover, fraud, gross negligence, or willful misconduct, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws, consumer protection laws, environmental laws, or nuisance or trespass theories). Causes of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to or otherwise contest Claims or Interests, (c) any claim pursuant to section 362 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Actions.

"*Channeled AFFF Claims*" means all AFFF Claims against the Debtor or the Estate channeled to the Primary AFFF Settlement Trust under the Plan and Settlement Trust Documents. For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

"*Committee*" means the official committee of unsecured creditors of the Debtor appointed by the U.S. Trustee in the Chapter 11 Case under section 1102(a) of the Bankruptcy Code pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 83] and any amendments thereto.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Settling Parties.

"*Consummation*" means the occurrence of the Effective Date.

"*Debtor*" means Kidde-Fenwal, Inc., the debtor and debtor in possession in the Chapter 11 Case, now known as KFI Wind-Down Corp.  In 2007, KFFI (formerly known as National Foam, Inc.) merged into Kidde-Fenwal, Inc., with Kidde-Fenwal, Inc. as the surviving entity.  Pursuant to this merger, KFFI's liabilities were assumed by, and KFFI's causes of action were transferred to, Kidde-Fenwal, Inc. directly or indirectly by merger or other agreement.  The term "Debtor" includes Kidde-Fenwal, Inc. as successor by merger or other agreement by which Kidde-Fenwal, Inc. obtained or assumed the liabilities and Causes of Action of any Person.

"*Effective Date*" means the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date set forth in the Plan shall have been satisfied or waived and on which a notice indicating the Effective Date has been filed on the docket of the Chapter 11 Case.

"*Estate Causes of Action*" means Causes of Action owned or held by either the Debtor or its Estate, or capable of being asserted (currently, or in the future) by any Person or Governmental Unit on behalf of, under or through, either the Debtor or its Estate, and each of their respective successors or assigns, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions, that may be commenced by a representative of the Estate under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise.  Without limiting the foregoing, Estate Causes of Action shall include:  (a) Causes of Action that on or after the Petition Date may be exclusively asserted by or on behalf of the Debtor or its Estate under applicable law, or that prior to the Petition Date could have been asserted by the Debtor on its own behalf under applicable law, including Causes of Action based on (i) the doctrine of successor liability that seek to impose the Debtor's (including KFFI's or National Foam, Inc.'s) liabilities on an alleged successor, whether based on a contractual assumption of liability, consolidation or de facto merger, acquisition of the Debtor's product line, fraud, domination, direction of the Debtor's affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, or (ii) the doctrines of alter ego or veil piercing involving alter egos of the Debtor or the piercing of the Debtor's (including KFFI's or National Foam, Inc.'s) corporate veil, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form; (b) Causes of Action or theories for recovery or remedies that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is generally common to creditors of the Debtor and can be asserted by the Debtor under applicable law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor.  Subsections (a), (b) and (c) immediately above expressly encompass any Causes of Action based on:  (i) the alleged assumption of the Debtor's (including KFFI's or

National Foam, Inc.'s) liabilities (but not a non-Debtor's liabilities) by Kidde plc (n/k/a Kidde Limited) pursuant to the 2000 Demerger Agreement, or any alleged subsequent assumption of such liabilities of the Debtor from Kidde plc by any other Released Party; or (ii) the alleged assumption of the Debtor's liabilities (but not a non-Debtor's liabilities), including any liabilities resulting from acts or omissions of National Foam, Inc. or KFFI, by a Released Party pursuant to the 2020 Separation Agreement.  For the avoidance of doubt, Estate Causes of Action shall not include any Independent AFFF Causes of Action or any Sovereign State Retained Causes of Action or Insurance Actions against any Released Party based on acts or omissions occurring after entry into the Plan Support Agreement with respect to rights under the 2020 Separation Agreement or the RTX Waiver to access and make Claims under any Insurance Policy or otherwise obtain the benefit of the Insurance Assignment.

"*Estate Claims Settlement*" means the settlement, including the release of all Estate Causes of Action against the Released Parties, pursuant to the Estate Claims Settlement Agreement.

"*Independent AFFF Cause of Action*" means any Cause of Action that could be asserted by an AFFF Claimant against a Non-Debtor Party based on the Non-Debtor Party's own conduct and breach of duty (*i.e.*, duty owed to the AFFF Claimant and not owed to the Debtor), including (a) Causes of Action arising from such acts or omissions of such Non-Debtor Party, and (b) Causes of Action based on allegations that a Non-Debtor Party is responsible for such conduct under theories of liability or recovery or remedies that could have been asserted by an AFFF Claimant on its own behalf under applicable state or federal law in respect of such Causes of Action prior to the Petition Date based on (i) the doctrine of successor liability involving a Non-Debtor Party that is alleged to be a successor to another Non-Debtor Party with respect to liabilities not directly or indirectly assumed from the Debtor, whether based on a contractual assumption of liability (including under the 2020 Separation Agreement), consolidation or de facto merger, acquisition of product line, fraud, domination, direction of affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, (ii) the doctrines of alter ego or veil piercing involving alter egos of a Non-Debtor Party, or piercing the corporate veil between Non-Debtor Parties, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form, or (iii) alleged derivative or vicarious liability of a Non-Debtor Party for liabilities of another Non-Debtor Party not directly or indirectly assumed from the Debtor; *provided* that, if any Cause of Action falls within the definition of Estate Cause of Action or Sovereign State Retained Cause of Action, it is not an Independent AFFF Cause of Action.
"*Insurance Assignment*" means the transfer by the Debtor and Carrier to the Primary AFFF Settlement Trust of certain rights in connection with the Insurance Policies as set forth in Article 5 of the Plan.

"*Insurance Policy/ies*" means: (i) any insurance policies listed on Schedule 1 to the Plan, (ii) to the extent not listed on Schedule 1, any "general liability" insurance (which, for the avoidance of doubt, shall exclude director & officer, automobile, or workers' compensation insurance) contract, binder, certificate, insurance policy, or reinsurance policy, whether currently known or unknown, discovered after the Effective Date, in effect at any time on or before the Petition Date naming the Debtor, the Contributing Parties, or any of their predecessors, subsidiaries, or past or present affiliates as an insured (whether as the primary or additional insured) or that provides or may provide coverage to Carrier or the Debtor for AFFF Claims, (iii) "Aviation" policies to

which Carrier or the Debtor has rights as listed in Schedule 2 to the Plan solely to the extent of Insurance Policy Rights applicable to or arising from AFFF Claims and (iv) any other subsequently discovered insurance policies of the same types as listed in Schedules 1 and 2 to the Plan to the extent that Carrier or the Debtor have rights under such policies (whether or not such policies are specifically titled as "General Liability" or "Aviation" policies).  For the avoidance of doubt, "Insurance Policies" shall not include any D&O Policies, automobile policies or worker's compensation insurance.

"*Insurance Policy Rights*" means any and all rights subject to the Insurance Assignment.

"*KFFI*" means Kidde Fire Fighting, Inc. (formerly known as National Foam, Inc.).

"*Liquidating Estate Claims*" means Administrative Claims, Priority Tax Claims, Other Priority Claims and Secured Claims.

"*New National Foam*" means, collectively, National Foam, Inc. f/k/a Eurostar US Tradeco, Inc., Angus Fire Ltd. f/k/a Eurostar Tradeco Limited, Angus International Safety Group Limited f/k/a/ Eurostar Holdco Limited, and each of their Related Parties.

"*New National Foam Release*" means a settlement between the Debtor and New National Foam pursuant to which (a) Estate Causes of Action against New National Foam are resolved for value reasonably acceptable to the Settling Parties and (b) New National Foam agrees to absolutely, unconditionally, and irrevocably release and discharge the Debtor and each Released Party from any and all Claims and Causes of Action, whether known or unknown, based on or relating to, or in any manner arising from that certain Share and Business Sale Agreement, dated as of June 28, 2013, or any other occurrence taking place on or before the Effective Date, including Proof of Claim No. 225, and otherwise in form and substance reasonably acceptable to the Settling Parties.

"*Non-Debtor Party*" means any Person other than the Debtor.  For the avoidance of doubt, the term "*Non-Debtor Party*" does not include KFFI or National Foam, Inc.

"*Other Insurance Company*" means an Insurance Company that is not a Settling Insurance Company.

"*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"*Person*" means a "person" or "entity" as defined in the Bankruptcy Code.

"*Petition Date*" means May 14, 2023, the date on which the Debtor commenced the Chapter 11 Case.

"*PFAS*" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.

"*Primary AFFF Settlement Trust*" means the settlement trust organized under the laws of the state of Delaware and established under the Plan and the Settlement Trust Documents, which

shall (i) have the powers, duties and obligations set forth in the Plan and the Settlement Trust Documents, (ii) assume all liability of the Debtor and the Estate for, and administer, all Channeled AFFF Claims and (iii) be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code.

"*Primary AFFF Settlement Trust Agreement*" means the Settlement Trust Agreement governing the Primary AFFF Settlement Trust, dated as of the Effective Date, as the same may be amended or modified from time to time in accordance with the terms thereof.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Released Party*" means (i) Carrier, (ii) RTX, and (iii) each of their Related Parties in their capacities as such.  Released Parties shall not include DuPont, 3M, or their current or former affiliates and Related Parties.  If a Person is a current or former affiliate or Related Party of DuPont or 3M, and such Person is also a current or former affiliate or Related Party of Carrier or RTX, then such Person shall not be a Released Party.  For the avoidance of doubt, New National Foam shall not be a Released Party unless the New National Foam Release  is provided by the Effective Date.

"*Related Party*" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, and current and former affiliates and subsidiaries, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, all only in their capacity as a representative of such Person, and (c) respective heirs, executors, estates, and nominees, in each case solely in its capacity as such.

"*RTX Waiver*" shall have the meaning set forth in Article 5.5.11(b) of the Plan.

"*Sale Order*" means the *Order (I) Approving the Sale of All or Substantially All of the Debtor's Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving Debtor's Entry, and Performance Under the Contribution Agreement, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Granting Related Relief*, entered by the Bankruptcy Court on April 2, 2024 [D.I. 1058].

"*Settlement Trust Agreements*" means, collectively, (i) the Primary AFFF Settlement Trust Agreement, (ii) the Sovereign State AFFF Settlement Trust Agreement and (iii) the GUC Liquidating Trust Agreement.  To the extent that any provision of a Settlement Trust Agreement impacts the rights of Carrier, such provision shall not be included in such Settlement Trust Agreement unless reasonably acceptable to Carrier.

"*Settlement Trust Documents*" means, collectively, (a) the Settlement Trust Agreements, (b) the TDPs, (c) the Confirmation Order, and (d) any other agreements, instruments, and documents governing the establishment, administration, and operation of the Settlement Trusts.

"*Settlement Trusts*" means the Primary AFFF Settlement Trust, Sovereign State AFFF Settlement Trust and GUC Liquidating Trust.

"*Settling Insurance Company*" means any Insurance Company that contributes funds, proceeds, or other consideration to or for the benefit of the Primary AFFF Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order. No Insurance Company shall be considered a Settling Insurance Company without the Committee's prior written consent.

"*Sovereign State*" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.

"*Sovereign State AFFF Settlement Trust*" means the trust established under the Plan and the Settlement Trust Documents to administer all Sovereign State Claims against the Debtor. The Sovereign State AFFF Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code and shall have the powers, duties and obligations set forth in the Settlement Trust Documents.

"*Sovereign State Retained Cause of Action*" means any Claim or Cause of Action asserted, or which may be asserted, by a Sovereign State against a Contributing Party that (1) is not an Estate Cause of Action and (2) arises from a statute, regulation, or common law that creates a theory of liability, by which a Sovereign State could recover damages or penalties, or obtain equitable or injunctive relief, against a Contributing Party. For the avoidance of doubt, a Sovereign State may assert a Sovereign State Retained Cause of Action irrespective of whether such Sovereign State Retained Cause of Action could also be considered an Independent AFFF Cause of Action.

"*TDPs*" or "Trust Distribution Procedures" means the Trust Distribution Procedures for the Settlement Trusts, as the same may be amended or modified from time to time in accordance with the terms thereof, that will govern the claims submission, adjudication, and distribution processes for the Settlement Trusts in a manner that is fair and equitable to Holders of Allowed Channeled AFFF Claims. To the extent that any provision of the TDPs impacts the rights of Carrier, such provision shall not be included unless reasonably acceptable to Carrier.

"*Transferred Assets*" shall have the meaning set forth in the Acquisition Agreement.

**EXHIBIT**

**EXHIBIT**

| Creditor Name | Type of Authority for Vote (A OR B) | | Vote to ACCEPT (in Favor of the Plan) OR Vote to REJECT (Against the Plan) | |
|---|---|---|---|---|
| | A | B | ACCEPT | REJECT |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |

In re Kidde-Fenwal, Inc.
Case Number: 23-10638 (LSS)

Master Ballot

**EXHIBIT 2Q**

**AFFF Master Ballot for Class 3F: Sovereign Tribe Claims**

## **KFI WIND-DOWN CORP. PLAN BALLOT**

> ## THIS BALLOT IS FOR HOLDERS OF CLAIMS AGAINST KFI WIND-DOWN CORP. (F/K/A KIDDE-FENWAL, INC.) ARISING FROM ITS AFFF OR AFFF-CONTAINING PRODUCTS.

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |

### MASTER BALLOT FOR ACCEPTING OR REJECTING
### THE DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
### UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

### CLASS 3F:  SOVEREIGN TRIBE CLAIMS

On May 14, 2023 (the "Petition Date"), KFI Wind-Down Corp. f/k/a Kidde-Fenwal, Inc. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") (the "Chapter 11 Case").

On [•], 2025, the Debtor filed the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Plan"),[2] which is described in greater detail in the *Disclosure Statement for the Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Disclosure Statement").

---

[1]  The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters are located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

**THE PLAN CONTAINS RELEASE, INJUNCTION AND EXCULPATORY PROVISIONS. THESE PROVISIONS ARE SET FORTH IN APPENDIX A TO THIS MASTER BALLOT. YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.**

On [•], 2025, the Bankruptcy Court entered an order [D.I. [•]] (the "Disclosure Statement Order") approving the Disclosure Statement as containing "adequate information" within the meaning ascribed to such term in section 1125 of the Bankruptcy Code and procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures").

The Plan, Disclosure Statement, Disclosure Statement Order, Solicitation Procedures and documents included in the Plan Supplement as of the Solicitation Mailing Deadline have been included in the package of materials containing the attached master ballot (the "Master Ballot") and can be accessed free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code. For a description of the Causes of Action to be enjoined and the identities of the Persons that would be subject to this injunction, see Article IV.E.8 of the Disclosure Statement and Article 10.8 of the Plan.

A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of the Claims that submit votes in that Voting Class vote to accept the Plan. Even if a Voting Class votes to reject the Plan, the Bankruptcy Court nonetheless may confirm the Plan if it finds the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

If the Plan is confirmed by the Bankruptcy Court, all Holders of Claims against and Interests in the Debtor (including those Holders who reject the Plan or abstain from voting on the Plan, and those Holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby.

The Debtor will file the Plan Supplement (as may be amended, modified or supplemented from time to time) with the Bankruptcy Court no later than **November 17, 2025**.

The documents included in the Plan Supplement as of the Solicitation Mailing Deadline are included in your Solicitation Package. Any further Plan Supplement, and any amendments or supplements to the foregoing, will only be served on: (a) the U.S. Trustee, (b) the Notice Parties and (c) the 2002 List. Once filed, a copy of the Plan Supplement will also be available for review and download on the Debtor's website maintained by the Solicitation Agent free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

**Unless such time is extended by the Debtor, in consultation with the Settling Parties, or the Bankruptcy Court, the Master Ballot must be properly completed, signed and**

-2-

submitted to the Solicitation Agent *so as to be actually received* no later than 5:00 p.m. (prevailing Eastern Time) on December 15, 2025 (the "Voting Deadline") in order for the votes on the Master Ballot to count.  Unless you receive express, written permission from the Debtor to submit a Master Ballot via other means, the ONLY acceptable manner of submission of Master Ballots is either (a) by email to KFIInquiries@stretto.com or (b) by regular mail, overnight courier or hand delivery to KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, in either case so that it is actually received by the Solicitation Agent by or before the Voting Deadline (December 15, 2025 at 5:00 p.m. (prevailing Eastern Time)).

This Master Ballot is to be used by attorneys only for voting on behalf of Holders of Sovereign Tribe Claims against the Debtor in Class 3F of the Plan.  Please refer to the Plan for the specific definition of "Sovereign Tribe Claim," which is copied below, as well as other relevant definitions.

*"Holder" means a Person holding a Claim against or an Interest in the Debtor.*

*"Sovereign Tribe Claim" means an AFFF Claim asserted by a Sovereign Tribe that is not an Airport Claim, Business Loss Claim, Fire Training Facility Claim, Landfill Claim, Personal Injury Claim, Property Damage Claim, Stormwater Claim, Wastewater Claim or Water Provider Claim.*

*"AFFF" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.*

*"AFFF Claim" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.*

*"Sovereign Tribe" means any American Indian or Alaskan Native Tribe, band, nation, pueblo, village or community, that the U.S. Secretary of the Interior acknowledges as an Indian Tribe, as provided in the Federally Recognized Tribe List Act of 1994, 25 U.S.C. § 5130, and as periodically listed by the U.S. Secretary of the Interior in the Federal Register pursuant to 25 U.S.C. § 5131; and any "Tribal Organization" as provided in the Indian Self-Determination and Education and Assistance Act of 1975, as amended, 25 U.S.C. § 5304(1).*

*"Airport Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of an Airport for damages relating to such Airport.*

*"Business Loss Claim" means an AFFF Claim asserted by a person or entity, other than a Governmental Unit, Sovereign State or Sovereign Tribe, for business losses, including lost inventory, lost profits, or comparable damages, recoverable*

-3-

*in the tort system that is not an Airport Claim, Fire Training Facility Claim, Landfill Claim, Personal Injury Claim, Property Damage Claim, Sovereign State Claim, Sovereign Tribe Claim, Stormwater Claim, Wastewater Claim, or Water Provider Claim.*

*"Governmental Unit" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code and also includes any national, central, federal, Sovereign Tribe, state, provincial, municipal, local or other domestic, foreign or supranational governmental, legislative, administrative or regulatory authority, agency, court, arbitration tribunal, board, department or commission, instrumentality thereof or other governmental or regulatory entity, including any competent governmental authority responsible for the determination, assessment, or collection of taxes.*

*"Fire Training Facility Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Fire Training Facility for damages relating to such Fire Training Facility.*

*"Landfill Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Landfill for damages relating to such Landfill.*

*"Personal Injury Claim" means an AFFF Claim asserted by an individual person, or legal representative of such person, for or related to, directly or indirectly, personal injuries or wrongful death.*

*"PFAS" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.*

*"Property Damage Claim" means an AFFF Claim asserted by or on behalf of an owner of real property (other than an Airport, Stormwater System, Wastewater System, Public Water System, Landfill, or Fire Training Facility) or personal property for damages relating to such property.*

*"Sovereign State Claim" means an AFFF Claim asserted by a Sovereign State that is not an Airport Claim, Business Loss Claim, Fire Training Facility Claim, Landfill Claim, Personal Injury Claim, Property Damage Claim, Stormwater Claim, Wastewater Claim or Water Provider Claim.*

*"Stormwater Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Stormwater System for damages relating to such Stormwater System.*

*"Wastewater Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Wastewater System for damages relating to such Wastewater System.*

-4-

*"Water Provider Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Public Water System for damages relating to such Public Water System.*

*"Claim" has the meaning ascribed to such term under section 101(5) of the Bankruptcy Code.*

*"Sovereign State" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.*

*"Airport" means: (a) all airports categorized by the FAA in the National Plan of Integrated Airport Systems, including all airports that have been issued operating certificates by the FAA pursuant to 14 CFR Part 139; and (b) any firefighter training facility operated on airport property, whether or not operated by the airport itself.*

*"Stormwater System" means a system of diverting excess precipitation from rain and snowmelt events and dry-weather runoff over land or impervious surfaces without percolating into the ground from real property, municipalities, construction activities, and industrial activities and permitted as such pursuant to the National Pollutant Discharge Elimination System and/or by a state or municipal permitting authority.*

*"Wastewater System" means a network of pipes, pumping stations, and appurtenances that convey sewage and waste from its points of origin to a point of treatment and disposal.*

*"Public Water System" means a system for the provision to the public of water for human consumption through pipes or other constructed conveyances, if such system has at least fifteen (15) service connections or regularly serves an average of at least twenty-five (25) individuals daily at least sixty (60) days out of the year, consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C. § 300f(4)(A), and 40 C.F.R. Part 141. The term "Public Water System" includes (i) any collection, treatment, storage, and distribution facilities under control of the operator of such system and used primarily in connection with such system, (ii) any collection or pretreatment storage facilities not under such control which are used primarily in connection with such system, (iii) a Community Water System of any size, (iv) a Non-Transient Non-Community Water System of any size, and (v) any Person (but not any financing or lending institution) that has legal authority or responsibility (by statute, regulation, other law, or contract) to fund or incur financial obligations for the design, engineering, installation, operation, or maintenance of any facility or equipment that treats, filters, remediates, or*

-5-

*manages water that has entered or may enter Drinking Water or any Public Water System.*

*"Fire Training Facility" means real property (other than an Airport) that is or has been used for live firefighter training with AFFF.*

*Landfill" means a discrete area of real property primarily used for the disposal of waste material as categorized pursuant to 40 CFR Part 239-272.*

*"Community Water System" means a Public Water System that serves at least fifteen (15) service connections used by year-round residents or regularly serves at least twenty-five (25) year-round residents, consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C. § 300f(15), and 40 C.F.R. Part 141.*

*"Non-Transient Non-Community Water System" means a Public Water System that is not a Community Water System and that regularly serves at least twenty-five (25) of the same persons over six (6) months per year, consistent with the use of that term in 40 C.F.R. Part 141.*

*"Person" means a "person" or "entity" as defined in the Bankruptcy Code.*

*"Drinking Water" means water provided for human consumption (including uses such as drinking, cooking, and bathing), consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C. §§ 300f to 300j-27.  The term "Drinking Water" includes raw or untreated water that a Public Water System has drawn or collected from a Water Source so that the water may then (after any treatment) be provided for human consumption but does not include raw or untreated water that is not drawn or collected from a Water Source.*

*"Water Source" means a groundwater well, a surface-water intake, or any other intake point from which a Public Water System draws or collects water for distribution as Drinking Water, and the raw or untreated water that is thus drawn or collected.*

*[Remainder of page left intentionally blank]*

-6-

## <u>DOCUMENTS INCLUDED WITH THE MASTER BALLOT</u>

You should have received the following documents with the Master Ballot (collectively, the "<u>Solicitation Package</u>").  **Please note that some of the following documents may be included on a USB flash drive included as part of your Solicitation Package.**

- the Cover Letter;

- the Committee Letter;

- the Solicitation Procedures;

- a USB flash drive containing a copy of the Disclosure Statement (and exhibits thereto, including the Plan) and the documents contained in the Plan Supplement that have been filed prior to the Solicitation Mailing Deadline;

- the Disclosure Statement Order (without exhibits);

- a preaddressed, return envelope for completed Master Ballots;

- the Confirmation Hearing Notice; and

- any other materials ordered by the Court to be included as part of the Solicitation Package.

If you have questions about the Master Ballot, or if you did not receive a copy of the Plan or any related materials, please contact the Solicitation Agent at <u>KFIInquiries@stretto.com</u> or (866) 887-0488 (toll-free) or +1 (949) 889-0128 (international).  Information may also be obtained at <u>https://cases.stretto.com/kfi</u> by clicking the link for "Plan & Disclosure Statement" on the landing page.

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtor or any other party for payment purposes.

4901-5305-6001 v.6

## INSTRUCTIONS FOR COMPLETING THE MASTER BALLOT

1.     The Master Ballot is provided to you, as an attorney for Holders of Sovereign Tribe Claims against the Debtor, in connection with the solicitation of votes of Holders of Sovereign Tribe Claims to accept or reject the Plan.  The Disclosure Statement and Plan are also being provided to you.  PLEASE READ ALL DOCUMENTS CAREFULLY BEFORE COMPLETING THE MASTER BALLOT.

2.     The Master Ballot is to be used by attorneys who represent, **and are authorized to vote on behalf of**, one or more Holders of Sovereign Tribe Claims.  You may be required to provide evidence of your authorization by Holders of Sovereign Tribe Claims to vote to accept or reject the Plan.

3.     You are receiving this Master Ballot because you represent certain clients (collectively, your "Eligible Clients") who are Holders of Sovereign Tribe Claims against the Debtor.  Your firm ("Firm") must certify to one of the options below with respect to each Eligible Client whose vote is included in your Firm's Master Ballot.

    (a)     "Option (a) Certification":  The Firm (or one or more of its attorneys) has communicated with the applicable Eligible Client (as defined below) and has been authorized, consistent with applicable law, by such Eligible Client to vote their Sovereign Tribe Claim to accept or reject the Plan.  The Firm may not rely on negative notice for such authorization.

    (b)     "Option (b) Certification":  The Firm (or one or more of its attorneys) has the authority under a power of attorney to vote to accept or reject the Plan on behalf of the applicable Eligible Client and the Firm completed the vote on behalf of such Eligible Client on the Master Ballot in accordance with the authority granted to the Firm.

4.     To use the Master Ballot, you must be authorized to vote on behalf of your Eligible Clients under all applicable standards for such authorization.  With respect to any of the Eligible Clients on the Exhibit, if you are unable to certify that you have the authority to vote on the Plan on behalf of such Eligible Client, you must not vote on behalf of such Eligible Client.

5.     To be entitled to vote on the Plan, a Holder of a Sovereign Tribe Claim in Class 3F (either directly or through his or her attorney or agent) must be able to certify that such Holder has a Sovereign Tribe Claim in Class 3F.

6.     To have the votes reflected on the Master Ballot counted for purposes of voting on the Plan, the Master Ballot must be completed, signed, and submitted **so that it is actually received** no later than the Voting Deadline by the Solicitation Agent as set forth in these instructions below.   Master Ballots will be accepted either (i) by email to KFIInquiries@stretto.com or (ii) by regular mail, overnight courier or hand delivery to KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602 unless the party submitting a

-8-

Master Ballot previously received permission in writing from the Debtor to submit such Master Ballot via other means. If a Master Ballot is received after the Voting Deadline (as may be extended by the Debtor in writing, in consultation with the Settling Parties), it may not be counted. If the Master Ballot is not signed on the appropriate lines, the Master Ballot will not be valid or counted as having been cast.

7. The Master Ballot will not constitute or be deemed a Proof of Claim or Interest, an assertion of a Claim, the allowance of a Claim, or the acceptance or liquidation of any Sovereign Tribe Claim for purposes of any distribution. None of the information set forth in the Master Ballot shall constitute an admission by the Debtor as to the extent, validity, or priority of the Claim voted herein, nor shall anything contained herein or information submitted in or with the Master Ballot be binding upon the Debtor or the Holder in any subsequent claims resolution process or other proceeding. The Master Ballot may not be used for any purposes other than to transmit votes on the Plan.

8. Multiple Master Ballots may be completed and delivered to the Solicitation Agent. Subject to the terms of the Solicitation Procedures, votes reflected by multiple Master Ballots submitted by the same Firm will be counted except to the extent that they are duplicative of other Master Ballots. If two or more such ballots submitted by the same Firm are inconsistent, the last valid Master Ballot received by the Solicitation Agent on or before the Voting Deadline will, to the extent of such inconsistency, govern unless otherwise ordered by the Bankruptcy Court. If more than one Master Ballot is submitted and the last such ballot supplements rather than supersedes earlier Master Ballot(s), please designate the subsequent Master Ballot(s) as "Supplemental" and clearly mark which of those votes reflected thereon are additional votes.

9. Notwithstanding the foregoing, if the Solicitation Agent receives two or more Master Ballots from separate Firms, each of whom purports to represent the same Holder of a Sovereign Tribe Claim, it is the sole obligation and responsibility of the Firms to coordinate with each other to resolve any conflicting representations, and for the appropriate Firm to submit the vote on behalf of such Eligible Client together with an email to KFIInquiries@stretto.com copying all affected Firms confirming such resolution. The Solicitation Agent is entitled to rely upon such an email. If the Firms are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple consistent votes on account of such Eligible Client (*i.e.*, multiple votes to accept the Plan or multiple votes to reject the Plan), the Solicitation Agent is authorized to treat such votes as duplicative and count them only once for both numerosity and voting amount purposes. If, however, the Firms voting on account of such Eligible Client are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple inconsistent votes on account of such Eligible Client (*i.e.*, a vote to accept the Plan and a vote to reject the Plan), the Solicitation Agent shall contact the relevant Firms and request they coordinate with each other to resolve the conflicting representation. If after the submission of inconsistent votes but prior to the Voting Deadline, the applicable Firms timely reach a consensus regarding which vote should be counted, one of the applicable Firms may email KFIInquiries@stretto.com, copying all other affected Firms, and direct the Solicitation Agent as to which vote should be counted. The Solicitation Agent is entitled to rely upon such an email. If representation of the Holder of the

-9-

Claim is not resolved within 10 calendar days from the notice of the conflict as provided by the Solicitation Agent, such votes shall not be counted.

10.    Each Holder of a Sovereign Tribe Claim that votes must vote his or her entire Claim either, to ACCEPT (vote in favor of), or to REJECT (vote against), the Plan.  A Holder of a Sovereign Tribe Claim may not split his or her vote.  Accordingly, the votes of any Holder of a Sovereign Tribe Claim who purports partially to accept and partially to reject the Plan will not be counted.

11.    If the Master Ballot is signed and timely sent to the Solicitation Agent, but does not designate either acceptance or rejection, or designates both acceptance and rejection, of the Plan for any particular claimant listed on the Exhibit, then the Solicitation Agent may, at its discretion, either contact the party submitting the Master Ballot in order to cure the defect on the Master Ballot or such Claim will not be counted either as an acceptance or rejection of the Plan.

12.    **To complete the Master Ballot properly, you must follow the procedures described below:**

Item 1 of the Master Ballot requires that you to indicate, for each Eligible Client on the Exhibit for which you are casting a vote, (a) the authority upon which votes on behalf of each such Eligible Client are being included (*i.e.*, Option (a) Certification or Option (b) Certification as described above) in the Master Ballot and (b) whether such Eligible Client accepts or rejects the Plan.

Item 2 of the Master Ballot contains certifications which are required for you to submit a vote on behalf of one or more Holders of Sovereign Tribe Claims.  Please ensure that you have read and understood the certifications before signing the Master Ballot.  **If you are unable to make the certification as to the authority to vote on behalf of any Holder of a Sovereign Tribe Claim you represent, you may not cast a vote on behalf of such Holder**.

Sign the Master Ballot.

Provide your name and mailing and email addresses where indicated.

Contact the Solicitation Agent if you need additional information or copies of any documents contained in the Solicitation Package or if you have any technical questions regarding composition and submission of your Master Ballot.

Submit the completed, executed Master Ballot *so as to be actually received* by the Solicitation Agent before the Voting Deadline either (i) by email to KFIInquiries@stretto.com or (ii) by regular mail, overnight courier or hand delivery to KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602.

4901-5305-6001 v.6

**IF YOU HAVE ANY QUESTIONS REGARDING THE MASTER BALLOT,
BELIEVE YOU MAY HAVE RECEIVED AN INCORRECT BALLOT,
OR IF YOU DID NOT RECEIVE A COPY OF ANY OF
THE DOCUMENTS DESCRIBED IN THESE INSTRUCTIONS,
PLEASE CONTACT THE SOLICITATION AGENT AT:**

**TELEPHONE: (866) 887-0488 (TOLL-FREE)
OR +1 (949) 889-0128 (INTERNATIONAL)
E-MAIL: KFIINQUIRIES@STRETTO.COM
OR VISIT HTTPS://CASES.STRETTO.COM/KFI**

4901-5305-6001 v.6

# **PLAN BALLOT**

## MASTER BALLOT FOR ACCEPTING OR REJECTING THE DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

### CLASS 3F: SOVEREIGN TRIBE CLAIMS

**PLEASE COMPLETE THE FOLLOWING:**

The Solicitation Procedures are included within the Solicitation Package that accompanies these instructions. The Solicitation Procedures contain important information regarding the balloting process. Please read the Solicitation Procedures before submitting this Master Ballot. If you have any technical questions or need to arrange for special delivery of your Master Ballot, please contact the Solicitation Agent.

**Please note that each Holder of a Sovereign Tribe Claim who votes on the Plan must vote the entire amount of his or her Claim to accept or reject the Plan. All AFFF Claims have been temporarily allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance or any other purpose.** Any Holders of AFFF Claims who attempt partially to reject and partially to accept the Plan will not have their vote counted. If this Master Ballot is signed and timely received by the Solicitation Agent but does not designate either acceptance or rejection or designates both acceptance and rejection of the Plan for any particular claimant, such vote will not be counted either as an acceptance or rejection of the Plan.

**Item 1 – List of Holders of Sovereign Tribe Claims Represented by the Firm.**

The exhibit to this Master Ballot (the "Exhibit") contains the names set forth on the Client List previously submitted by your Firm with the Solicitation Directive and is a list of each Holder of a Sovereign Tribe Claim that you represent. You must indicate on the Exhibit next to each Eligible Client for which you cast a vote (a) the authority upon which votes on behalf of each such Eligible Client are being included (*i.e.*, Option (a) Certification or Option (b) Certification as described in Item 2) on the Master Ballot and (b) whether such Eligible Client accepts or rejects the Plan.

**Item 2 – Certifications, Acknowledgement, Signature, and Date.**

By signing this Master Ballot, the undersigned certifies under penalty of perjury that each of the following statements is true and correct:

- I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the

Solicitation Mailing Deadline, and a letter from the Committee and the MDL PEC Co-Leads urging claimants to vote to ACCEPT (vote in favor of) the Plan.

• I am authorized, by agreement or under applicable law, by each of the Holders of the Sovereign Tribe Claims listed on the Exhibit for which I have voted to vote his, her, or its Sovereign Tribe Claim to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan.

• For each client listed on the Exhibit and for whom the "Option (a) Certification" is indicated, I or my Firm communicated with each such Eligible Client and have been authorized, consistent with applicable law, by each such Eligible Client to vote each of their Sovereign Tribe Claim to accept or reject the Plan. I am not relying on negative notice to make such certification.

• For each Eligible Client listed on the Exhibit and for whom the "Option (b) Certification" is indicated, I or my Firm has the authority under a power of attorney to vote to accept or reject the Plan on behalf of each such Eligible Client and I have completed this Master Ballot in accordance with such authority.

• To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, each Holder of a Sovereign Tribe Claim listed on the Exhibit who is casting a vote has, on such Holder's information and belief, a Sovereign Tribe Claim against the Debtor.

Print or Type Name of Attorney: _____

Name of Firm: _____

Attorney Signature: _____

Street Address: _____

City, State, and ZIP Code: _____

Telephone Number: _____

E-mail Address of Attorney/Signatory: _____

Date: _____

The entire Exhibit accompanying this Master Ballot must be completed and submitted with this completed Master Ballot to the Solicitation Agent.

-2-

**IF THIS MASTER BALLOT IS NOT *ACTUALLY RECEIVED BY*
THE SOLICITATION AGENT BY 5:00 P.M. (PREVAILING EASTERN TIME) ON
DECEMBER 15, 2025, YOUR VOTE MAY NOT BE COUNTED.**

4901-5305-6001 v.6

## Appendix A

**Release, Injunction and Exculpation Provisions in the Plan[1]**

---

[1] The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.

**Release of Liens**

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released and cancelled, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Liquidating Estate and their successors and assigns. Any Holder of such mortgage, deed of trust, Lien, pledge or other security interest (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including and cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Liquidating Administrators to evidence such release, including the execution, delivery and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

**Releases by the Estate**

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party, the Debtor, the Liquidating Estate and each Related Party of the Debtor and the Liquidating Estate shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, or any other Person or Governmental Unit asserting currently or in the future by, under, through, or on behalf of the Debtor or its Estate, and each of their respective successors or assigns, including the Settlement Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between one or both of the Debtor, on the one hand, and any Released Party, the Liquidating Estate, or any Related Party of the Debtor and the Liquidating Estate, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.3 of the Plan shall not be construed to release any post-Effective Date obligations under the RTX Waiver, the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, which specifically provides that such Estate Claims Settlement can be terminated, and the releases provided in the Plan or in the Estate Claims Settlement are void, if Carrier fails to make the installments of the Guaranteed Cash Payment when due and such failure is not timely cured within 30 days, at which time the Primary AFFF Settlement Trust is entitled to commence, prosecute, or continue all Estate Causes of Action against the Released Parties in any court of competent jurisdiction, and take such other actions as the Primary AFFF Settlement Trustee may determine in the exercise of their fiduciary duties.

## Releases by the Released Parties

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Released Parties and their successors or assigns of and from any and all Claims and Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, the Debtor's current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between any of the Debtor, the Liquidating Estate, the Settlement Trusts or the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case, on the one hand, and any Released Party, on the other hand, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any post-Effective Date obligations under the Plan Documents, the Confirmation Order, the 2020 Separation Agreement as supplemented by the RTX Waiver, or the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, or the right of any Person to enforce the same in accordance with

the terms thereof. Except with respect to the Claims and Causes of Action against the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case that are released and discharged under Article 10.4 of the Plan, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any obligations, rights, Causes of Action or Claims that Carrier Global Corporation or members of the Carrier Group (other than the Debtor), Otis Worldwide Corporation or members of the Otis Group, or RTX or members of the UTC Group may have against any Person under the 2020 Separation Agreement as supplemented by the RTX Waiver (including indemnification rights of RTX and other members of the "UTC Group" under the 2020 Separation Agreement).  For the avoidance of doubt, in the event that the Estate Claims Settlement Effective Date does not occur or the Estate Claims Settlement is terminated as contemplated by the last paragraph of Article 10.3 in the Plan, all releases being provided by the Released Parties under the Plan shall be void.

## Scope of Releases

Each Person providing releases under the Plan, including the Debtor, the Estate and the Settling Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts.  Each Person providing releases under the Plan shall be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

## Exculpation

Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtor and its directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation.

As of the Effective Date, to the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in Article 10 of the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person for any act or omission in connection with, related to or arising out of this Chapter 11 Case, including (a) the operation of the Debtor's businesses during the pendency of this Chapter 11 Case; (b) the

administration and adjudication of Claims and Interests during this Chapter 11 Case; (c) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Plan, the Disclosure Statement, the Plan Supplement, or any related contract, instrument, release or other agreement or document created or entered into in connection with the Chapter 11 Case (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan and the distribution of property under the Plan); (d) any other transaction, agreement, event, or other occurrence related to the Chapter 11 Case taking place on or before the Effective Date, other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.

## Injunction

Except as otherwise expressly provided in the Plan or the Confirmation Order, the satisfaction and release pursuant to Article 10 of the Plan shall also act as a permanent injunction against any Person who has held, holds, or may in the future hold Claims against or Interests in the Debtor or any of its assets or properties based on any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are treated, released, settled, channeled, or exculpated pursuant to the terms of the Plan from taking any of the following actions on account of, or on the basis of, such Claims or Interests:  (a) commencing or continuing any action to collect, enforce, offset, recoup, or recover with respect to any Claims or Interests treated, released, settled, channeled, or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Claim or Interest against the Debtor, the Liquidating Estate, the Settlement Trusts, or its or their respective property; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of or in connection with or with respect to any such Claims or Interests, notwithstanding an indication of a Claim or Interest or otherwise that a Holder of such Claim or Interest asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise, against the Debtor, the Liquidating Estate, or the Settlement Trusts; or (e) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

## Channeling Injunction

Notwithstanding anything to the contrary in the Plan, to preserve and promote the settlements contemplated by and provided for in the Plan, including the Insurance Settlement Agreements, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under sections 105(a) and 1123(b) of the Bankruptcy Code, the sole recourse of any Holder of a Channeled AFFF Claim against the Debtor or a Released Party on account of such Channeled AFFF Claim shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to

and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, and such Holder shall have no right whatsoever at any time to assert any such Channeled AFFF Claim or any Estate Cause of Action that is released under the Estate Claims Settlement against the Debtor or any Released Party or any property or interest in property of the Debtor or any Released Party.  For the avoidance of doubt, the sole recourse for any Channeled AFFF Claim covered by any Insurance Policy issued by a Settling Insurance Company shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents.  Accordingly, on and after the Effective Date, all Holders of AFFF Claims that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled AFFF Claim or any Estate Cause of Action against the Debtor or any Released Party shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from the Debtor or any Released Party with respect to any such Channeled AFFF Claim or Estate Cause of Action, other than from the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, including:

> a)      commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

> b)      enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

> c)      creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

> d)      asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party; or

> e)      taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents, or, with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, by the Sovereign State AFFF Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Channeled AFFF Claim.

The Debtor, the Liquidating Estate and/or any Released Party, as applicable, may enforce the Channeling Injunction and/or the Releases contained in the Plan before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at their own cost and expense, and no such cost or expense incurred by a party other than the Primary AFFF Settlement Trust shall be reimbursed or indemnified by the Primary AFFF Settlement Trust under any circumstances.

## Insurance Company Injunction

Subject to the provisos set forth in this Section, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim or cause of action (including any AFFF Claim or any Claim for or respecting any Primary AFFF Settlement Trust expense) against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Insurance Policy, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, statute or any other theory of law, equity or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim or cause of action, including:

a)      commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, demand, or cause of action against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such Claim, demand, or cause of action against any Insurance Company);

b)      enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

c)      creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such Claim or cause of action; and

d)      except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

*provided, however,* that (i) nothing in this Section shall impair or affect the rights of any member of the UTC Group, including RTX, or any member of the Otis Group (each as defined in the 2020 Separation Agreement), or any additional insured designated by RTX

or any member of the UTC Group, based upon, attributable to, arising out of, or in any way connected with an Insurance Policy, including to assert Claims or Causes of Action against any Insurance Company for covered losses and to receive proceeds in respect thereof; (ii) this injunction shall not impair in any way any actions brought by the Primary AFFF Settlement Trust against any Other Insurance Company; (iii) the Primary AFFF Settlement Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction with respect to any Other Insurance Company, in accordance with the Settlement Trust Documents, upon express written notice to such Other Insurance Company; and (iv) this injunction is not issued for the benefit of any Other Insurance Company, and no Other Insurance Company is a third-party beneficiary of this injunction.

Notwithstanding anything to the contrary in the Plan, this injunction shall not enjoin:

a)      the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of Holders of AFFF Claims to assert such Claims, as applicable, in accordance with the TDPs;

b)      the rights of the Primary AFFF Settlement Trust to prosecute any action based on or arising from Insurance Policies, except to the extent otherwise released;

c)      the rights of the Primary AFFF Settlement Trust to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company based on or arising from the Insurance Policies;

d)      any actions of the Contributing Parties in fulfilling their obligations under the Estate Claims Settlement in consultation and coordination with the Primary AFFF Settlement Trust;

e)      the rights of any Insurance Company to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company; or

f)      the Claims for reinsurance under reinsurance contracts or Claims under retrocessional contracts among the Settling Insurance Companies and any Other Insurance Company.

### Prohibition on Actions Against Buyer

Subject to the Sale Order and the Acquisition Agreement, Buyer, in its capacity as such, shall not have any liability for any AFFF Claims against the Debtor arising prior to the closing of the Sale.  Except as expressly otherwise set forth in the Sale Order, all persons and entities hereby are forever barred, estopped and permanently enjoined from asserting against Buyer, its Affiliates, its successors or assigns, its property or the Transferred Assets, such persons' or entities' AFFF Claims that have been or could have been asserted against the Debtor arising prior to the closing of the Sale.  For the avoidance of doubt, the foregoing shall

not release Buyer from, or enjoin any actions against Buyer for, any Assumed Liability or any other liability incurred by Buyer on account of its operations following the closing of the Sale.

## Limitations on Exculpations and Releases

Notwithstanding anything to the contrary in the Plan, none of the releases or exculpations set forth in the Plan shall operate to waive or release any obligation or Causes of Action of any Person:  (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations or (b) expressly set forth in and preserved by the Plan, the Plan Supplement, Plan Documents or related documents.

## Release Dispute

In the event of a Release Dispute, a Released Party may, at its sole cost and expense, file a motion with the Bankruptcy Court seeking a determination as to whether an AFFF Claimant's Cause of Action was settled and released pursuant to the Plan, and upon such motion, the Bankruptcy Court shall make such determination and, if appropriate, enjoin the prosecution of such Cause of Action as having been settled and released under the Plan.

## Relevant Definitions

"*2020 Separation Agreement*" means that certain Separation and Distribution Agreement, dated as of April 2, 2020, by and among United Technologies Corporation, Carrier Global Corporation, and Otis Worldwide Corporation.

"*Administrative Claim*" means an Allowed Claim for costs and expenses of administration of the Chapter 11 Case pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate; (b) Allowed Professional Compensation Claims; (c) Allowed Fee Examiner Compensation Claims; and (d) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

"*AFFF*" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

"*AFFF Claim*" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.

"*Assumed Liability*" shall have the meaning set forth in the Acquisition Agreement.

"*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other Claims, Causes of Action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties-in-interest under the Bankruptcy Code or applicable non-

bankruptcy law, including claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) was commenced prior to the Effective Date.

"*Buyer*" means Pacific Erin Opco, LLC, as the purchaser of substantially all of the Debtor's assets pursuant to the Acquisition Agreement and the Sale Order.

"*Carrier*" means Carrier Global Corporation, a Delaware corporation, and its non-Debtor affiliates and Related Parties.

"*Causes of Action*" means any current or future actions, Claims, cross-claims, third-party claims, causes of action, controversies, disputes, demands, rights, liens, indemnities, contributions, guaranties, suits, obligations, liabilities, losses, debts, fees or expenses, damages, interest, judgments, costs, accounts, defenses, remedies, offsets, powers, privileges, proceedings, licenses, and franchises of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, choate or inchoate, capable of being asserted directly or derivatively (including any alter ego theories), including any Claims for recovery of attorneys' fees, turnover, fraud, gross negligence, or willful misconduct, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws, consumer protection laws, environmental laws, or nuisance or trespass theories).  Causes of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to or otherwise contest Claims or Interests, (c) any claim pursuant to section 362 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Actions.

"*Channeled AFFF Claims*" means all AFFF Claims against the Debtor or the Estate channeled to the Primary AFFF Settlement Trust under the Plan and Settlement Trust Documents.  For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

"*Committee*" means the official committee of unsecured creditors of the Debtor appointed by the U.S. Trustee in the Chapter 11 Case under section 1102(a) of the Bankruptcy Code pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 83] and any amendments thereto.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Settling Parties.

"*Consummation*" means the occurrence of the Effective Date.

"*Debtor*" means Kidde-Fenwal, Inc., the debtor and debtor in possession in the Chapter 11 Case, now known as KFI Wind-Down Corp.  In 2007, KFFI (formerly known as National Foam, Inc.) merged into Kidde-Fenwal, Inc., with Kidde-Fenwal, Inc. as the surviving entity.  Pursuant to this merger, KFFI's liabilities were assumed by, and KFFI's causes of action were transferred to, Kidde-Fenwal, Inc. directly or indirectly by merger or other agreement.  The term "Debtor" includes Kidde-Fenwal, Inc. as successor by merger or other agreement by which Kidde-Fenwal, Inc. obtained or assumed the liabilities and Causes of Action of any Person.

"*Effective Date*" means the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date set forth in the Plan shall have been satisfied or waived and on which a notice indicating the Effective Date has been filed on the docket of the Chapter 11 Case.

"*Estate Causes of Action*" means Causes of Action owned or held by either the Debtor or its Estate, or capable of being asserted (currently, or in the future) by any Person or Governmental Unit on behalf of, under or through, either the Debtor or its Estate, and each of their respective successors or assigns, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions, that may be commenced by a representative of the Estate under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise.  Without limiting the foregoing, Estate Causes of Action shall include:  (a) Causes of Action that on or after the Petition Date may be exclusively asserted by or on behalf of the Debtor or its Estate under applicable law, or that prior to the Petition Date could have been asserted by the Debtor on its own behalf under applicable law, including Causes of Action based on (i) the doctrine of successor liability that seek to impose the Debtor's (including KFFI's or National Foam, Inc.'s) liabilities on an alleged successor, whether based on a contractual assumption of liability, consolidation or de facto merger, acquisition of the Debtor's product line, fraud, domination, direction of the Debtor's affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, or (ii) the doctrines of alter ego or veil piercing involving alter egos of the Debtor or the piercing of the Debtor's (including KFFI's or National Foam, Inc.'s) corporate veil, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form; (b) Causes of Action or theories for recovery or remedies that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is generally common to creditors of the Debtor and can be asserted by the Debtor under applicable law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor.  Subsections (a), (b) and (c) immediately above expressly encompass any Causes of Action based on:  (i) the alleged assumption of the Debtor's (including KFFI's or

National Foam, Inc.'s) liabilities (but not a non-Debtor's liabilities) by Kidde plc (n/k/a Kidde Limited) pursuant to the 2000 Demerger Agreement, or any alleged subsequent assumption of such liabilities of the Debtor from Kidde plc by any other Released Party; or (ii) the alleged assumption of the Debtor's liabilities (but not a non-Debtor's liabilities), including any liabilities resulting from acts or omissions of National Foam, Inc. or KFFI, by a Released Party pursuant to the 2020 Separation Agreement.  For the avoidance of doubt, Estate Causes of Action shall not include any Independent AFFF Causes of Action or any Sovereign State Retained Causes of Action or Insurance Actions against any Released Party based on acts or omissions occurring after entry into the Plan Support Agreement with respect to rights under the 2020 Separation Agreement or the RTX Waiver to access and make Claims under any Insurance Policy or otherwise obtain the benefit of the Insurance Assignment.

"*Estate Claims Settlement*" means the settlement, including the release of all Estate Causes of Action against the Released Parties, pursuant to the Estate Claims Settlement Agreement.

"*Independent AFFF Cause of Action*" means any Cause of Action that could be asserted by an AFFF Claimant against a Non-Debtor Party based on the Non-Debtor Party's own conduct and breach of duty (*i.e.*, duty owed to the AFFF Claimant and not owed to the Debtor), including (a) Causes of Action arising from such acts or omissions of such Non-Debtor Party, and (b) Causes of Action based on allegations that a Non-Debtor Party is responsible for such conduct under theories of liability or recovery or remedies that could have been asserted by an AFFF Claimant on its own behalf under applicable state or federal law in respect of such Causes of Action prior to the Petition Date based on (i) the doctrine of successor liability involving a Non-Debtor Party that is alleged to be a successor to another Non-Debtor Party with respect to liabilities not directly or indirectly assumed from the Debtor, whether based on a contractual assumption of liability (including under the 2020 Separation Agreement), consolidation or de facto merger, acquisition of product line, fraud, domination, direction of affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, (ii) the doctrines of alter ego or veil piercing involving alter egos of a Non-Debtor Party, or piercing the corporate veil between Non-Debtor Parties, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form, or (iii) alleged derivative or vicarious liability of a Non-Debtor Party for liabilities of another Non-Debtor Party not directly or indirectly assumed from the Debtor; *provided* that, if any Cause of Action falls within the definition of Estate Cause of Action or Sovereign State Retained Cause of Action, it is not an Independent AFFF Cause of Action.
"*Insurance Assignment*" means the transfer by the Debtor and Carrier to the Primary AFFF Settlement Trust of certain rights in connection with the Insurance Policies as set forth in Article 5 of the Plan.

"*Insurance Policy/ies*" means: (i) any insurance policies listed on <u>Schedule 1</u> to the Plan, (ii) to the extent not listed on Schedule 1, any "general liability" insurance (which, for the avoidance of doubt, shall exclude director & officer, automobile, or workers' compensation insurance) contract, binder, certificate, insurance policy, or reinsurance policy, whether currently known or unknown, discovered after the Effective Date, in effect at any time on or before the Petition Date naming the Debtor, the Contributing Parties, or any of their predecessors, subsidiaries, or past or present affiliates as an insured (whether as the primary or additional insured) or that provides or may provide coverage to Carrier or the Debtor for AFFF Claims, (iii) "Aviation" policies to

which Carrier or the Debtor has rights as listed in Schedule 2 to the Plan solely to the extent of Insurance Policy Rights applicable to or arising from AFFF Claims and (iv) any other subsequently discovered insurance policies of the same types as listed in Schedules 1 and 2 to the Plan to the extent that Carrier or the Debtor have rights under such policies (whether or not such policies are specifically titled as "General Liability" or "Aviation" policies).  For the avoidance of doubt, "Insurance Policies" shall not include any D&O Policies, automobile policies or worker's compensation insurance.

"*Insurance Policy Rights*" means any and all rights subject to the Insurance Assignment.

"*KFFI*" means Kidde Fire Fighting, Inc. (formerly known as National Foam, Inc.).

"*Liquidating Estate Claims*" means Administrative Claims, Priority Tax Claims, Other Priority Claims and Secured Claims.

"*New National Foam*" means, collectively, National Foam, Inc. f/k/a Eurostar US Tradeco, Inc., Angus Fire Ltd. f/k/a Eurostar Tradeco Limited, Angus International Safety Group Limited f/k/a/ Eurostar Holdco Limited, and each of their Related Parties.

"*New National Foam Release*" means a settlement between the Debtor and New National Foam pursuant to which (a) Estate Causes of Action against New National Foam are resolved for value reasonably acceptable to the Settling Parties and (b) New National Foam agrees to absolutely, unconditionally, and irrevocably release and discharge the Debtor and each Released Party from any and all Claims and Causes of Action, whether known or unknown, based on or relating to, or in any manner arising from that certain Share and Business Sale Agreement, dated as of June 28, 2013, or any other occurrence taking place on or before the Effective Date, including Proof of Claim No. 225, and otherwise in form and substance reasonably acceptable to the Settling Parties.

"*Non-Debtor Party*" means any Person other than the Debtor.  For the avoidance of doubt, the term "*Non-Debtor Party*" does not include KFFI or National Foam, Inc.

"*Other Insurance Company*" means an Insurance Company that is not a Settling Insurance Company.

"*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"*Person*" means a "person" or "entity" as defined in the Bankruptcy Code.

"*Petition Date*" means May 14, 2023, the date on which the Debtor commenced the Chapter 11 Case.

"*PFAS*" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.

"*Primary AFFF Settlement Trust*" means the settlement trust organized under the laws of the state of Delaware and established under the Plan and the Settlement Trust Documents, which

shall (i) have the powers, duties and obligations set forth in the Plan and the Settlement Trust Documents, (ii) assume all liability of the Debtor and the Estate for, and administer, all Channeled AFFF Claims and (iii) be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code.

"*Primary AFFF Settlement Trust Agreement*" means the Settlement Trust Agreement governing the Primary AFFF Settlement Trust, dated as of the Effective Date, as the same may be amended or modified from time to time in accordance with the terms thereof.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Released Party*" means (i) Carrier, (ii) RTX, and (iii) each of their Related Parties in their capacities as such.  Released Parties shall not include DuPont, 3M, or their current or former affiliates and Related Parties.  If a Person is a current or former affiliate or Related Party of DuPont or 3M, and such Person is also a current or former affiliate or Related Party of Carrier or RTX, then such Person shall not be a Released Party.  For the avoidance of doubt, New National Foam shall not be a Released Party unless the New National Foam Release  is provided by the Effective Date.

"*Related Party*" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, and current and former affiliates and subsidiaries, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, all only in their capacity as a representative of such Person, and (c) respective heirs, executors, estates, and nominees, in each case solely in its capacity as such.

"*RTX Waiver*" shall have the meaning set forth in Article 5.5.11(b) of the Plan.

"*Sale Order*" means the *Order (I) Approving the Sale of All or Substantially All of the Debtor's Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving Debtor's Entry, and Performance Under the Contribution Agreement, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Granting Related Relief*, entered by the Bankruptcy Court on April 2, 2024 [D.I. 1058].

"*Settlement Trust Agreements*" means, collectively, (i) the Primary AFFF Settlement Trust Agreement, (ii) the Sovereign State AFFF Settlement Trust Agreement and (iii) the GUC Liquidating Trust Agreement.  To the extent that any provision of a Settlement Trust Agreement impacts the rights of Carrier, such provision shall not be included in such Settlement Trust Agreement unless reasonably acceptable to Carrier.

"*Settlement Trust Documents*" means, collectively, (a) the Settlement Trust Agreements, (b) the TDPs, (c) the Confirmation Order, and (d) any other agreements, instruments, and documents governing the establishment, administration, and operation of the Settlement Trusts.

"*Settlement Trusts*" means the Primary AFFF Settlement Trust, Sovereign State AFFF Settlement Trust and GUC Liquidating Trust.

"*Settling Insurance Company*" means any Insurance Company that contributes funds, proceeds, or other consideration to or for the benefit of the Primary AFFF Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order.  No Insurance Company shall be considered a Settling Insurance Company without the Committee's prior written consent.

"*Sovereign State*" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.

"*Sovereign State AFFF Settlement Trust*" means the trust established under the Plan and the Settlement Trust Documents to administer all Sovereign State Claims against the Debtor.  The Sovereign State AFFF Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code and shall have the powers, duties and obligations set forth in the Settlement Trust Documents.

"*Sovereign State Retained Cause of Action*" means any Claim or Cause of Action asserted, or which may be asserted, by a Sovereign State against a Contributing Party that (1) is not an Estate Cause of Action and (2) arises from a statute, regulation, or common law that creates a theory of liability, by which a Sovereign State could recover damages or penalties, or obtain equitable or injunctive relief, against a Contributing Party.  For the avoidance of doubt, a Sovereign State may assert a Sovereign State Retained Cause of Action irrespective of whether such Sovereign State Retained Cause of Action could also be considered an Independent AFFF Cause of Action.

"*TDPs*" or "Trust Distribution Procedures" means the Trust Distribution Procedures for the Settlement Trusts, as the same may be amended or modified from time to time in accordance with the terms thereof, that will govern the claims submission, adjudication, and distribution processes for the Settlement Trusts in a manner that is fair and equitable to Holders of Allowed Channeled AFFF Claims.  To the extent that any provision of the TDPs impacts the rights of Carrier, such provision shall not be included unless reasonably acceptable to Carrier.

"*Transferred Assets*" shall have the meaning set forth in the Acquisition Agreement.

**EXHIBIT**

**EXHIBIT**

| Creditor Name | Type of Authority for Vote (A OR B) | | Vote to ACCEPT (in Favor of the Plan) OR Vote to REJECT (Against the Plan) | |
|---|---|---|---|---|
| | A | B | ACCEPT | REJECT |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |

## __EXHIBIT 2R__

**AFFF Master Ballot for Class 3G: Business Loss Claims**

**KFI WIND-DOWN CORP. PLAN BALLOT**

---

**THIS BALLOT IS FOR HOLDERS OF CLAIMS AGAINST KFI WIND-DOWN CORP. (F/K/A KIDDE-FENWAL, INC.) ARISING FROM ITS AFFF OR AFFF-CONTAINING PRODUCTS.**

---

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |

**MASTER BALLOT FOR ACCEPTING OR REJECTING
THE DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

---

**CLASS 3G:  BUSINESS LOSS CLAIMS**

---

On May 14, 2023 (the "Petition Date"), KFI Wind-Down Corp. f/k/a Kidde-Fenwal, Inc. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") (the "Chapter 11 Case").

On [•], 2025, the Debtor filed the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Plan"),[2] which is described in greater detail in the *Disclosure Statement for the Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Disclosure Statement").

---

[1]    The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters are located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

> **THE PLAN CONTAINS RELEASE, INJUNCTION AND EXCULPATORY PROVISIONS. THESE PROVISIONS ARE SET FORTH IN APPENDIX A TO THIS MASTER BALLOT. YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.**

On [•], 2025, the Bankruptcy Court entered an order [D.I. [•]] (the "Disclosure Statement Order") approving the Disclosure Statement as containing "adequate information" within the meaning ascribed to such term in section 1125 of the Bankruptcy Code and procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures").

The Plan, Disclosure Statement, Disclosure Statement Order, Solicitation Procedures and documents included in the Plan Supplement as of the Solicitation Mailing Deadline have been included in the package of materials containing the attached master ballot (the "Master Ballot") and can be accessed free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code. For a description of the Causes of Action to be enjoined and the identities of the Persons that would be subject to this injunction, see Article IV.E.8 of the Disclosure Statement and Article 10.8 of the Plan.

A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of the Claims that submit votes in that Voting Class vote to accept the Plan. Even if a Voting Class votes to reject the Plan, the Bankruptcy Court nonetheless may confirm the Plan if it finds the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

If the Plan is confirmed by the Bankruptcy Court, all Holders of Claims against and Interests in the Debtor (including those Holders who reject the Plan or abstain from voting on the Plan, and those Holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby.

The Debtor will file the Plan Supplement (as may be amended, modified or supplemented from time to time) with the Bankruptcy Court no later than **November 17, 2025**.

The documents included in the Plan Supplement as of the Solicitation Mailing Deadline are included in your Solicitation Package. Any further Plan Supplement, and any amendments or supplements to the foregoing, will only be served on: (a) the U.S. Trustee, (b) the Notice Parties and (c) the 2002 List. Once filed, a copy of the Plan Supplement will also be available for review and download on the Debtor's website maintained by the Solicitation Agent free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

**Unless such time is extended by the Debtor, in consultation with the Settling Parties, or the Bankruptcy Court, the Master Ballot must be properly completed, signed and**

submitted to the Solicitation Agent *so as to be actually received* no later than 5:00 p.m. (prevailing Eastern Time) on December 15, 2025 (the "Voting Deadline") in order for the votes on the Master Ballot to count.  Unless you receive express, written permission from the Debtor to submit a Master Ballot via other means, the **ONLY** acceptable manner of submission of Master Ballots is either (a) by email to **KFIInquiries@stretto.com** or (b) by regular mail, overnight courier or hand delivery to KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, in either case so that it is **actually received** by the Solicitation Agent by or before the Voting Deadline (December 15, 2025 at 5:00 p.m. (prevailing Eastern Time)).

This Master Ballot is to be used by attorneys only for voting on behalf of Holders of Business Loss Claims against the Debtor in Class 3G of the Plan.  Please refer to the Plan for the specific definition of "Business Loss Claim," which is copied below, as well as other relevant definitions.

> *"Holder" means a Person holding a Claim against or an Interest in the Debtor.*
>
> *"Business Loss Claim" means an AFFF Claim asserted by a person or entity, other than a Governmental Unit, Sovereign State or Sovereign Tribe, for business losses, including lost inventory, lost profits, or comparable damages, recoverable in the tort system that is not an Airport Claim, Fire Training Facility Claim, Landfill Claim, Personal Injury Claim, Property Damage Claim, Sovereign State Claim, Sovereign Tribe Claim, Stormwater Claim, Wastewater Claim, or Water Provider Claim.*
>
> *"AFFF" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.*
>
> *"AFFF Claim" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.*
>
> *"Governmental Unit" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code and also includes any national, central, federal, Sovereign Tribe, state, provincial, municipal, local or other domestic, foreign or supranational governmental, legislative, administrative or regulatory authority, agency, court, arbitration tribunal, board, department or commission, instrumentality thereof or other governmental or regulatory entity, including any competent governmental authority responsible for the determination, assessment, or collection of taxes.*
>
> *"Sovereign State" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the*

4904-1640-8329 v.5

*District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.*

*"Sovereign Tribe" means any American Indian or Alaskan Native Tribe, band, nation, pueblo, village or community, that the U.S. Secretary of the Interior acknowledges as an Indian Tribe, as provided in the Federally Recognized Tribe List Act of 1994, 25 U.S.C. § 5130, and as periodically listed by the U.S. Secretary of the Interior in the Federal Register pursuant to 25 U.S.C. § 5131; and any "Tribal Organization" as provided in the Indian Self-Determination and Education and Assistance Act of 1975, as amended, 25 U.S.C. § 5304(1).*

*"Airport Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of an Airport for damages relating to such Airport.*

*"Fire Training Facility Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Fire Training Facility for damages relating to such Fire Training Facility.*

*"Landfill Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Landfill for damages relating to such Landfill.*

*"Personal Injury Claim" means an AFFF Claim asserted by an individual person, or legal representative of such person, for or related to, directly or indirectly, personal injuries or wrongful death.*

*"Property Damage Claim" means an AFFF Claim asserted by or on behalf of an owner of real property (other than an Airport, Stormwater System, Wastewater System, Public Water System, Landfill, or Fire Training Facility) or personal property for damages relating to such property.*

*"Sovereign State Claim" means an AFFF Claim asserted by a Sovereign State that is not an Airport Claim, Business Loss Claim, Fire Training Facility Claim, Landfill Claim, Personal Injury Claim, Property Damage Claim, Stormwater Claim, Wastewater Claim or Water Provider Claim.*

*"Sovereign Tribe Claim" means an AFFF Claim asserted by a Sovereign Tribe that is not an Airport Claim, Business Loss Claim, Fire Training Facility Claim, Landfill Claim, Personal Injury Claim, Property Damage Claim, Stormwater Claim, Wastewater Claim or Water Provider Claim.*

*"Stormwater Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Stormwater System for damages relating to such Stormwater System.*

-4-

*"Wastewater Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Wastewater System for damages relating to such Wastewater System.*

*"Water Provider Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Public Water System for damages relating to such Public Water System.*

*"Claim" has the meaning ascribed to such term under section 101(5) of the Bankruptcy Code.*

*"Airport" means: (a) all airports categorized by the FAA in the National Plan of Integrated Airport Systems, including all airports that have been issued operating certificates by the FAA pursuant to 14 CFR Part 139; and (b) any firefighter training facility operated on airport property, whether or not operated by the airport itself.*

*"Stormwater System" means a system of diverting excess precipitation from rain and snowmelt events and dry-weather runoff over land or impervious surfaces without percolating into the ground from real property, municipalities, construction activities, and industrial activities and permitted as such pursuant to the National Pollutant Discharge Elimination System and/or by a state or municipal permitting authority.*

*"Wastewater System" means a network of pipes, pumping stations, and appurtenances that convey sewage and waste from its points of origin to a point of treatment and disposal.*

*"Public Water System" means a system for the provision to the public of water for human consumption through pipes or other constructed conveyances, if such system has at least fifteen (15) service connections or regularly serves an average of at least twenty-five (25) individuals daily at least sixty (60) days out of the year, consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C. § 300f(4)(A), and 40 C.F.R. Part 141. The term "Public Water System" includes (i) any collection, treatment, storage, and distribution facilities under control of the operator of such system and used primarily in connection with such system, (ii) any collection or pretreatment storage facilities not under such control which are used primarily in connection with such system, (iii) a Community Water System of any size, (iv) a Non-Transient Non-Community Water System of any size, and (v) any Person (but not any financing or lending institution) that has legal authority or responsibility (by statute, regulation, other law, or contract) to fund or incur financial obligations for the design, engineering, installation, operation, or maintenance of any facility or equipment that treats, filters, remediates, or manages water that has entered or may enter Drinking Water or any Public Water System.*

-5-

*"Landfill" means a discrete area of real property primarily used for the disposal of waste material as categorized pursuant to 40 CFR Part 239-272.*

*"Fire Training Facility" means real property (other than an Airport) that is or has been used for live firefighter training with AFFF.*

*"Community Water System" means a Public Water System that serves at least fifteen (15) service connections used by year-round residents or regularly serves at least twenty-five (25) year-round residents, consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C. § 300f(15), and 40 C.F.R. Part 141.*

*"Non-Transient Non-Community Water System" means a Public Water System that is not a Community Water System and that regularly serves at least twenty-five (25) of the same persons over six (6) months per year, consistent with the use of that term in 40 C.F.R. Part 141.*

*"Person" means a "person" or "entity" as defined in the Bankruptcy Code.*

*"PFAS" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.*

*"Drinking Water" means water provided for human consumption (including uses such as drinking, cooking, and bathing), consistent with the use of that term in the Safe Drinking Water Act, 42 U.S.C. §§ 300f to 300j-27. The term "Drinking Water" includes raw or untreated water that a Public Water System has drawn or collected from a Water Source so that the water may then (after any treatment) be provided for human consumption but does not include raw or untreated water that is not drawn or collected from a Water Source.*

*"Water Source" means a groundwater well, a surface-water intake, or any other intake point from which a Public Water System draws or collects water for distribution as Drinking Water, and the raw or untreated water that is thus drawn or collected.*

*[Remainder of page left intentionally blank]*

## <u>DOCUMENTS INCLUDED WITH THE MASTER BALLOT</u>

You should have received the following documents with the Master Ballot (collectively, the "<u>Solicitation Package</u>").  **Please note that some of the following documents may be included on a USB flash drive included as part of your Solicitation Package.**

- the Cover Letter;

- the Committee Letter;

- the Solicitation Procedures;

- a USB flash drive containing a copy of the Disclosure Statement (and exhibits thereto, including the Plan) and the documents contained in the Plan Supplement that have been filed prior to the Solicitation Mailing Deadline;

- the Disclosure Statement Order (without exhibits);

- a preaddressed, return envelope for completed Master Ballots;

- the Confirmation Hearing Notice; and

- any other materials ordered by the Court to be included as part of the Solicitation Package.

If you have questions about the Master Ballot, or if you did not receive a copy of the Plan or any related materials, please contact the Solicitation Agent at <u>KFIInquiries@stretto.com</u> or (866) 887-0488 (toll-free) or +1 (949) 889-0128 (international).  Information may also be obtained at <u>https://cases.stretto.com/kfi</u> by clicking the link for "Plan & Disclosure Statement" on the landing page.

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtor or any other party for payment purposes.

-7-

## INSTRUCTIONS FOR COMPLETING THE MASTER BALLOT

1.      The Master Ballot is provided to you, as an attorney for Holders of Business Loss Claims against the Debtor, in connection with the solicitation of votes of Holders of Business Loss Claims to accept or reject the Plan.  The Disclosure Statement and Plan are also being provided to you.   PLEASE READ ALL DOCUMENTS CAREFULLY BEFORE COMPLETING THE MASTER BALLOT.

2.      The Master Ballot is to be used by attorneys who represent, **and are authorized to vote on behalf of**, one or more Holders of Business Loss Claims.  You may be required to provide evidence of your authorization by Holders of Business Loss Claims to vote to accept or reject the Plan.

3.      You are receiving this Master Ballot because you represent certain clients (collectively, your "Eligible Clients") who are Holders of Business Loss Claims against the Debtor. Your firm ("Firm") must certify to one of the options below with respect to each Eligible Client whose vote is included in your Firm's Master Ballot.

      (a)      "Option (a) Certification": The Firm (or one or more of its attorneys) has communicated with the applicable Eligible Client (as defined below) and has been authorized, consistent with applicable law, by such Eligible Client to vote their Business Loss Claim to accept or reject the Plan.  The Firm may not rely on negative notice for such authorization.

      (b)      "Option (b) Certification": The Firm (or one or more of its attorneys) has the authority under a power of attorney to vote to accept or reject the Plan on behalf of the applicable Eligible Client and the Firm completed the vote on behalf of such Eligible Client on the Master Ballot in accordance with the authority granted to the Firm.

4.      To use the Master Ballot, you must be authorized to vote on behalf of your Eligible Clients under all applicable standards for such authorization.  With respect to any of the Eligible Clients on the Exhibit, if you are unable to certify that you have the authority to vote on the Plan on behalf of such Eligible Client, you must not vote on behalf of such Eligible Client.

5.      To be entitled to vote on the Plan, a Holder of a Business Loss Claim in Class 3G (either directly or through his or her attorney or agent) must be able to certify that such Holder has a Business Loss Claim in Class 3G.

6.      To have the votes reflected on the Master Ballot counted for purposes of voting on the Plan, the Master Ballot must be completed, signed, and submitted **so that it is actually received** no later than the Voting Deadline by the Solicitation Agent as set forth in these instructions below.   Master Ballots will be accepted either (i) by email to KFIInquiries@stretto.com or (ii) by regular mail, overnight courier or hand delivery to KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602 unless the party submitting a

-8-

Master Ballot previously received permission in writing from the Debtor to submit such Master Ballot via other means. If a Master Ballot is received after the Voting Deadline (as may be extended by the Debtor in writing, in consultation with the Settling Parties), it may not be counted. If the Master Ballot is not signed on the appropriate lines, the Master Ballot will not be valid or counted as having been cast.

7.      The Master Ballot will not constitute or be deemed a Proof of Claim or Interest, an assertion of a Claim, the allowance of a Claim, or the acceptance or liquidation of any Business Loss Claim for purposes of any distribution. None of the information set forth in the Master Ballot shall constitute an admission by the Debtor as to the extent, validity, or priority of the Claim voted herein, nor shall anything contained herein or information submitted in or with the Master Ballot be binding upon the Debtor or the Holder in any subsequent claims resolution process or other proceeding. The Master Ballot may not be used for any purposes other than to transmit votes on the Plan.

8.      Multiple Master Ballots may be completed and delivered to the Solicitation Agent. Subject to the terms of the Solicitation Procedures, votes reflected by multiple Master Ballots submitted by the same Firm will be counted except to the extent that they are duplicative of other Master Ballots. If two or more such ballots submitted by the same Firm are inconsistent, the last valid Master Ballot received by the Solicitation Agent on or before the Voting Deadline will, to the extent of such inconsistency, govern unless otherwise ordered by the Bankruptcy Court. If more than one Master Ballot is submitted and the last such ballot supplements rather than supersedes earlier Master Ballot(s), please designate the subsequent Master Ballot(s) as "Supplemental" and clearly mark which of those votes reflected thereon are additional votes.

9.      Notwithstanding the foregoing, if the Solicitation Agent receives two or more Master Ballots from separate Firms, each of whom purports to represent the same Holder of a Business Loss Claim, it is the sole obligation and responsibility of the Firms to coordinate with each other to resolve any conflicting representations, and for the appropriate Firm to submit the vote on behalf of such Eligible Client together with an email to KFIInquiries@stretto.com copying all affected Firms confirming such resolution. The Solicitation Agent is entitled to rely upon such an email. If the Firms are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple consistent votes on account of such Eligible Client (*i.e.*, multiple votes to accept the Plan or multiple votes to reject the Plan), the Solicitation Agent is authorized to treat such votes as duplicative and count them only once for both numerosity and voting amount purposes. If, however, the Firms voting on account of such Eligible Client are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple inconsistent votes on account of such Eligible Client (*i.e.*, a vote to accept the Plan and a vote to reject the Plan), the Solicitation Agent shall contact the relevant Firms and request they coordinate with each other to resolve the conflicting representation. If after the submission of inconsistent votes but prior to the Voting Deadline, the applicable Firms timely reach a consensus regarding which vote should be counted, one of the applicable Firms may email KFIInquiries@stretto.com, copying all other affected Firms, and direct the Solicitation Agent as to which vote should be counted. The Solicitation Agent is entitled to rely upon such an email. If representation of the Holder of the

-9-

Claim is not resolved within 10 calendar days from the notice of the conflict as provided by the Solicitation Agent, such votes shall not be counted.

10.     Each Holder of a Business Loss Claim that votes must vote his or her entire Claim either, to ACCEPT (vote in favor of), or to REJECT (vote against), the Plan.  A Holder of a Business Loss Claim may not split his or her vote.  Accordingly, the votes of any Holder of a Business Loss Claim who purports partially to accept and partially to reject the Plan will not be counted.

11.     If the Master Ballot is signed and timely sent to the Solicitation Agent, but does not designate either acceptance or rejection, or designates both acceptance and rejection, of the Plan for any particular claimant listed on the Exhibit, then the Solicitation Agent may, at its discretion, either contact the party submitting the Master Ballot in order to cure the defect on the Master Ballot or such Claim will not be counted either as an acceptance or rejection of the Plan.

12.     **To complete the Master Ballot properly, you must follow the procedures described below:**

Item 1 of the Master Ballot requires that you to indicate, for each Eligible Client on the Exhibit for which you are casting a vote, (a) the authority upon which votes on behalf of each such Eligible Client are being included (*i.e.*, Option (a) Certification or Option (b) Certification as described above) in the Master Ballot and (b) whether such Eligible Client accepts or rejects the Plan.

Item 2 of the Master Ballot contains certifications which are required for you to submit a vote on behalf of one or more Holders of Business Loss Claims.  Please ensure that you have read and understood the certifications before signing the Master Ballot.  **If you are unable to make the certification as to the authority to vote on behalf of any Holder of a Business Loss Claim you represent, you may not cast a vote on behalf of such Holder**.

Sign the Master Ballot.

Provide your name and mailing and email addresses where indicated.

Contact the Solicitation Agent if you need additional information or copies of any documents contained in the Solicitation Package or if you have any technical questions regarding composition and submission of your Master Ballot.

Submit the completed, executed Master Ballot *so as to be actually received* by the Solicitation Agent before the Voting Deadline either (i) by email to KFIInquiries@stretto.com or (ii) by regular mail, overnight courier or hand delivery to KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602.

<div align="center">-10-</div>

**IF YOU HAVE ANY QUESTIONS REGARDING THE MASTER BALLOT,
BELIEVE YOU MAY HAVE RECEIVED AN INCORRECT BALLOT,
OR IF YOU DID NOT RECEIVE A COPY OF ANY OF
THE DOCUMENTS DESCRIBED IN THESE INSTRUCTIONS,
PLEASE CONTACT THE SOLICITATION AGENT AT:**

**TELEPHONE: (866) 887-0488 (TOLL-FREE)
OR +1 (949) 889-0128 (INTERNATIONAL)
E-MAIL: KFIINQUIRIES@STRETTO.COM
OR VISIT HTTPS://CASES.STRETTO.COM/KFI**

4904-1640-8329 v.5

# **PLAN BALLOT**

## MASTER BALLOT FOR ACCEPTING OR REJECTING THE DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

### CLASS 3G: BUSINESS LOSS CLAIMS

**PLEASE COMPLETE THE FOLLOWING:**

The Solicitation Procedures are included within the Solicitation Package that accompanies these instructions. The Solicitation Procedures contain important information regarding the balloting process. Please read the Solicitation Procedures before submitting this Master Ballot. If you have any technical questions or need to arrange for special delivery of your Master Ballot, please contact the Solicitation Agent.

**Please note that each Holder of a Business Loss Claim who votes on the Plan must vote the entire amount of his or her Claim to accept or reject the Plan. All AFFF Claims have been temporarily allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance or any other purpose.** Any Holders of AFFF Claims who attempt partially to reject and partially to accept the Plan will not have their vote counted. If this Master Ballot is signed and timely received by the Solicitation Agent but does not designate either acceptance or rejection or designates both acceptance and rejection of the Plan for any particular claimant, such vote will not be counted either as an acceptance or rejection of the Plan.

**Item 1 – List of Holders of Business Loss Claims Represented by the Firm.**

The exhibit to this Master Ballot (the "Exhibit") contains the names set forth on the Client List previously submitted by your Firm with the Solicitation Directive and is a list of each Holder of a Business Loss Claim that you represent. You must indicate on the Exhibit next to each Eligible Client for which you cast a vote (a) the authority upon which votes on behalf of each such Eligible Client are being included (*i.e.*, Option (a) Certification or Option (b) Certification as described in Item 2) on the Master Ballot and (b) whether such Eligible Client accepts or rejects the Plan.

**Item 2 – Certifications, Acknowledgement, Signature, and Date.**

By signing this Master Ballot, the undersigned certifies under penalty of perjury that each of the following statements is true and correct:

- I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the

Solicitation Mailing Deadline, and a letter from the Committee and the MDL PEC Co-Leads urging claimants to vote to ACCEPT (vote in favor of) the Plan.

- I am authorized, by agreement or under applicable law, by each of the Holders of the Business Loss Claims listed on the Exhibit for which I have voted to vote his, her, or its Business Loss Claim to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan.

- For each client listed on the Exhibit and for whom the "Option (a) Certification" is indicated, I or my Firm communicated with each such Eligible Client and have been authorized, consistent with applicable law, by each such Eligible Client to vote each of their Business Loss Claim to accept or reject the Plan. I am not relying on negative notice to make such certification.

- For each Eligible Client listed on the Exhibit and for whom the "Option (b) Certification" is indicated, I or my Firm has the authority under a power of attorney to vote to accept or reject the Plan on behalf of each such Eligible Client and I have completed this Master Ballot in accordance with such authority.

- To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, each Holder of a Business Loss Claim listed on the Exhibit who is casting a vote has, on such Holder's information and belief, a Business Loss Claim against the Debtor.

Print or Type Name of Attorney: _____

Name of Firm: _____

Attorney Signature: _____

Street Address: _____

City, State, and ZIP Code: _____

Telephone Number: _____

E-mail Address of Attorney/Signatory: _____

Date: _____

The entire Exhibit accompanying this Master Ballot must be completed and submitted with this completed Master Ballot to the Solicitation Agent.

4904-1640-8329 v.5

**IF THIS MASTER BALLOT IS NOT *ACTUALLY RECEIVED BY*
THE SOLICITATION AGENT BY 5:00 P.M. (PREVAILING EASTERN TIME) ON
DECEMBER 15, 2025, YOUR VOTE MAY NOT BE COUNTED.**

**Appendix A**

**Release, Injunction and Exculpation Provisions in the Plan[1]**

---

[1]    The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.

## Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released and cancelled, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Liquidating Estate and their successors and assigns.  Any Holder of such mortgage, deed of trust, Lien, pledge or other security interest (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including and cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Liquidating Administrators to evidence such release, including the execution, delivery and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

## Releases by the Estate

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party, the Debtor, the Liquidating Estate and each Related Party of the Debtor and the Liquidating Estate shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, or any other Person or Governmental Unit asserting currently or in the future by, under, through, or on behalf of the Debtor or its Estate, and each of their respective successors or assigns, including the Settlement Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between one or both of the Debtor, on the one hand, and any Released Party, the Liquidating Estate, or any Related Party of the Debtor and the Liquidating Estate, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.3 of the Plan shall not be construed to release any post-Effective Date obligations under the RTX Waiver, the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, which specifically provides that such Estate Claims Settlement can be terminated, and the releases provided in the Plan or in the Estate Claims Settlement are void, if Carrier fails to make the installments of the Guaranteed Cash Payment when due and such failure is not timely cured within 30 days, at which time the Primary AFFF Settlement Trust is entitled to commence, prosecute, or continue all Estate Causes of Action against the Released Parties in any court of competent jurisdiction, and take such other actions as the Primary AFFF Settlement Trustee may determine in the exercise of their fiduciary duties.

### Releases by the Released Parties

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Released Parties and their successors or assigns of and from any and all Claims and Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, the Debtor's current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between any of the Debtor, the Liquidating Estate, the Settlement Trusts or the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case, on the one hand, and any Released Party, on the other hand, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any post-Effective Date obligations under the Plan Documents, the Confirmation Order, the 2020 Separation Agreement as supplemented by the RTX Waiver, or the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, or the right of any Person to enforce the same in accordance with

the terms thereof. Except with respect to the Claims and Causes of Action against the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case that are released and discharged under Article 10.4 of the Plan, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any obligations, rights, Causes of Action or Claims that Carrier Global Corporation or members of the Carrier Group (other than the Debtor), Otis Worldwide Corporation or members of the Otis Group, or RTX or members of the UTC Group may have against any Person under the 2020 Separation Agreement as supplemented by the RTX Waiver (including indemnification rights of RTX and other members of the "UTC Group" under the 2020 Separation Agreement). For the avoidance of doubt, in the event that the Estate Claims Settlement Effective Date does not occur or the Estate Claims Settlement is terminated as contemplated by the last paragraph of Article 10.3 in the Plan, all releases being provided by the Released Parties under the Plan shall be void.

## Scope of Releases

Each Person providing releases under the Plan, including the Debtor, the Estate and the Settling Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts. Each Person providing releases under the Plan shall be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

## Exculpation

Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtor and its directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation.

As of the Effective Date, to the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in Article 10 of the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person for any act or omission in connection with, related to or arising out of this Chapter 11 Case, including (a) the operation of the Debtor's businesses during the pendency of this Chapter 11 Case; (b) the

administration and adjudication of Claims and Interests during this Chapter 11 Case; (c) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Plan, the Disclosure Statement, the Plan Supplement, or any related contract, instrument, release or other agreement or document created or entered into in connection with the Chapter 11 Case (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan and the distribution of property under the Plan); (d) any other transaction, agreement, event, or other occurrence related to the Chapter 11 Case taking place on or before the Effective Date, other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.

## Injunction

Except as otherwise expressly provided in the Plan or the Confirmation Order, the satisfaction and release pursuant to Article 10 of the Plan shall also act as a permanent injunction against any Person who has held, holds, or may in the future hold Claims against or Interests in the Debtor or any of its assets or properties based on any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are treated, released, settled, channeled, or exculpated pursuant to the terms of the Plan from taking any of the following actions on account of, or on the basis of, such Claims or Interests:  (a) commencing or continuing any action to collect, enforce, offset, recoup, or recover with respect to any Claims or Interests treated, released, settled, channeled, or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Claim or Interest against the Debtor, the Liquidating Estate, the Settlement Trusts, or its or their respective property; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of or in connection with or with respect to any such Claims or Interests, notwithstanding an indication of a Claim or Interest or otherwise that a Holder of such Claim or Interest asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise, against the Debtor, the Liquidating Estate, or the Settlement Trusts; or (e) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

## Channeling Injunction

Notwithstanding anything to the contrary in the Plan, to preserve and promote the settlements contemplated by and provided for in the Plan, including the Insurance Settlement Agreements, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under sections 105(a) and 1123(b) of the Bankruptcy Code, the sole recourse of any Holder of a Channeled AFFF Claim against the Debtor or a Released Party on account of such Channeled AFFF Claim shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to

and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, and such Holder shall have no right whatsoever at any time to assert any such Channeled AFFF Claim or any Estate Cause of Action that is released under the Estate Claims Settlement against the Debtor or any Released Party or any property or interest in property of the Debtor or any Released Party.  For the avoidance of doubt, the sole recourse for any Channeled AFFF Claim covered by any Insurance Policy issued by a Settling Insurance Company shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents.  Accordingly, on and after the Effective Date, all Holders of AFFF Claims that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled AFFF Claim or any Estate Cause of Action against the Debtor or any Released Party shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from the Debtor or any Released Party with respect to any such Channeled AFFF Claim or Estate Cause of Action, other than from the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, including:

      a)      commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

      b)      enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

      c)      creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

      d)      asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party; or

      e)      taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents, or, with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, by the Sovereign State AFFF Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Channeled AFFF Claim.

The Debtor, the Liquidating Estate and/or any Released Party, as applicable, may enforce the Channeling Injunction and/or the Releases contained in the Plan before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at their own cost and expense, and no such cost or expense incurred by a party other than the Primary AFFF Settlement Trust shall be reimbursed or indemnified by the Primary AFFF Settlement Trust under any circumstances.

## Insurance Company Injunction

Subject to the provisos set forth in this Section, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim or cause of action (including any AFFF Claim or any Claim for or respecting any Primary AFFF Settlement Trust expense) against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Insurance Policy, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, statute or any other theory of law, equity or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim or cause of action, including:

a) commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, demand, or cause of action against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such Claim, demand, or cause of action against any Insurance Company);

b) enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

c) creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such Claim or cause of action; and

d) except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

*provided, however,* that (i) nothing in this Section shall impair or affect the rights of any member of the UTC Group, including RTX, or any member of the Otis Group (each as defined in the 2020 Separation Agreement), or any additional insured designated by RTX

or any member of the UTC Group, based upon, attributable to, arising out of, or in any way connected with an Insurance Policy, including to assert Claims or Causes of Action against any Insurance Company for covered losses and to receive proceeds in respect thereof; (ii) this injunction shall not impair in any way any actions brought by the Primary AFFF Settlement Trust against any Other Insurance Company; (iii) the Primary AFFF Settlement Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction with respect to any Other Insurance Company, in accordance with the Settlement Trust Documents, upon express written notice to such Other Insurance Company; and (iv) this injunction is not issued for the benefit of any Other Insurance Company, and no Other Insurance Company is a third-party beneficiary of this injunction.

Notwithstanding anything to the contrary in the Plan, this injunction shall not enjoin:

a)    the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of Holders of AFFF Claims to assert such Claims, as applicable, in accordance with the TDPs;

b)    the rights of the Primary AFFF Settlement Trust to prosecute any action based on or arising from Insurance Policies, except to the extent otherwise released;

c)    the rights of the Primary AFFF Settlement Trust to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company based on or arising from the Insurance Policies;

d)    any actions of the Contributing Parties in fulfilling their obligations under the Estate Claims Settlement in consultation and coordination with the Primary AFFF Settlement Trust;

e)    the rights of any Insurance Company to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company; or

f)    the Claims for reinsurance under reinsurance contracts or Claims under retrocessional contracts among the Settling Insurance Companies and any Other Insurance Company.

### Prohibition on Actions Against Buyer

Subject to the Sale Order and the Acquisition Agreement, Buyer, in its capacity as such, shall not have any liability for any AFFF Claims against the Debtor arising prior to the closing of the Sale.  Except as expressly otherwise set forth in the Sale Order, all persons and entities hereby are forever barred, estopped and permanently enjoined from asserting against Buyer, its Affiliates, its successors or assigns, its property or the Transferred Assets, such persons' or entities' AFFF Claims that have been or could have been asserted against the Debtor arising prior to the closing of the Sale.  For the avoidance of doubt, the foregoing shall

not release Buyer from, or enjoin any actions against Buyer for, any Assumed Liability or any other liability incurred by Buyer on account of its operations following the closing of the Sale.

## Limitations on Exculpations and Releases

Notwithstanding anything to the contrary in the Plan, none of the releases or exculpations set forth in the Plan shall operate to waive or release any obligation or Causes of Action of any Person:  (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations or (b) expressly set forth in and preserved by the Plan, the Plan Supplement, Plan Documents or related documents.

## Release Dispute

In the event of a Release Dispute, a Released Party may, at its sole cost and expense, file a motion with the Bankruptcy Court seeking a determination as to whether an AFFF Claimant's Cause of Action was settled and released pursuant to the Plan, and upon such motion, the Bankruptcy Court shall make such determination and, if appropriate, enjoin the prosecution of such Cause of Action as having been settled and released under the Plan.

## Relevant Definitions

"*2020 Separation Agreement*" means that certain Separation and Distribution Agreement, dated as of April 2, 2020, by and among United Technologies Corporation, Carrier Global Corporation, and Otis Worldwide Corporation.

"*Administrative Claim*" means an Allowed Claim for costs and expenses of administration of the Chapter 11 Case pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate; (b) Allowed Professional Compensation Claims; (c) Allowed Fee Examiner Compensation Claims; and (d) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

"*AFFF*" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

"*AFFF Claim*" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.

"*Assumed Liability*" shall have the meaning set forth in the Acquisition Agreement.

"*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other Claims, Causes of Action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties-in-interest under the Bankruptcy Code or applicable non-

bankruptcy law, including claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) was commenced prior to the Effective Date.

"*Buyer*" means Pacific Erin Opco, LLC, as the purchaser of substantially all of the Debtor's assets pursuant to the Acquisition Agreement and the Sale Order.

"*Carrier*" means Carrier Global Corporation, a Delaware corporation, and its non-Debtor affiliates and Related Parties.

"*Causes of Action*" means any current or future actions, Claims, cross-claims, third-party claims, causes of action, controversies, disputes, demands, rights, liens, indemnities, contributions, guaranties, suits, obligations, liabilities, losses, debts, fees or expenses, damages, interest, judgments, costs, accounts, defenses, remedies, offsets, powers, privileges, proceedings, licenses, and franchises of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, choate or inchoate, capable of being asserted directly or derivatively (including any alter ego theories), including any Claims for recovery of attorneys' fees, turnover, fraud, gross negligence, or willful misconduct, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws, consumer protection laws, environmental laws, or nuisance or trespass theories).  Causes of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to or otherwise contest Claims or Interests, (c) any claim pursuant to section 362 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Actions.

"*Channeled AFFF Claims*" means all AFFF Claims against the Debtor or the Estate channeled to the Primary AFFF Settlement Trust under the Plan and Settlement Trust Documents.  For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

"*Committee*" means the official committee of unsecured creditors of the Debtor appointed by the U.S. Trustee in the Chapter 11 Case under section 1102(a) of the Bankruptcy Code pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 83] and any amendments thereto.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Settling Parties.

"*Consummation*" means the occurrence of the Effective Date.

"*Debtor*" means Kidde-Fenwal, Inc., the debtor and debtor in possession in the Chapter 11 Case, now known as KFI Wind-Down Corp.  In 2007, KFFI (formerly known as National Foam, Inc.) merged into Kidde-Fenwal, Inc., with Kidde-Fenwal, Inc. as the surviving entity.  Pursuant to this merger, KFFI's liabilities were assumed by, and KFFI's causes of action were transferred to, Kidde-Fenwal, Inc. directly or indirectly by merger or other agreement.  The term "Debtor" includes Kidde-Fenwal, Inc. as successor by merger or other agreement by which Kidde-Fenwal, Inc. obtained or assumed the liabilities and Causes of Action of any Person.

"*Effective Date*" means the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date set forth in the Plan shall have been satisfied or waived and on which a notice indicating the Effective Date has been filed on the docket of the Chapter 11 Case.

"*Estate Causes of Action*" means Causes of Action owned or held by either the Debtor or its Estate, or capable of being asserted (currently, or in the future) by any Person or Governmental Unit on behalf of, under or through, either the Debtor or its Estate, and each of their respective successors or assigns, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions, that may be commenced by a representative of the Estate under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise.  Without limiting the foregoing, Estate Causes of Action shall include:  (a) Causes of Action that on or after the Petition Date may be exclusively asserted by or on behalf of the Debtor or its Estate under applicable law, or that prior to the Petition Date could have been asserted by the Debtor on its own behalf under applicable law, including Causes of Action based on (i) the doctrine of successor liability that seek to impose the Debtor's (including KFFI's or National Foam, Inc.'s) liabilities on an alleged successor, whether based on a contractual assumption of liability, consolidation or de facto merger, acquisition of the Debtor's product line, fraud, domination, direction of the Debtor's affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, or (ii) the doctrines of alter ego or veil piercing involving alter egos of the Debtor or the piercing of the Debtor's (including KFFI's or National Foam, Inc.'s) corporate veil, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form; (b) Causes of Action or theories for recovery or remedies that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is generally common to creditors of the Debtor and can be asserted by the Debtor under applicable law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor.  Subsections (a), (b) and (c) immediately above expressly encompass any Causes of Action based on:  (i) the alleged assumption of the Debtor's (including KFFI's or

National Foam, Inc.'s) liabilities (but not a non-Debtor's liabilities) by Kidde plc (n/k/a Kidde Limited) pursuant to the 2000 Demerger Agreement, or any alleged subsequent assumption of such liabilities of the Debtor from Kidde plc by any other Released Party; or (ii) the alleged assumption of the Debtor's liabilities (but not a non-Debtor's liabilities), including any liabilities resulting from acts or omissions of National Foam, Inc. or KFFI, by a Released Party pursuant to the 2020 Separation Agreement.  For the avoidance of doubt, Estate Causes of Action shall not include any Independent AFFF Causes of Action or any Sovereign State Retained Causes of Action or Insurance Actions against any Released Party based on acts or omissions occurring after entry into the Plan Support Agreement with respect to rights under the 2020 Separation Agreement or the RTX Waiver to access and make Claims under any Insurance Policy or otherwise obtain the benefit of the Insurance Assignment.

"*Estate Claims Settlement*" means the settlement, including the release of all Estate Causes of Action against the Released Parties, pursuant to the Estate Claims Settlement Agreement.

"*Independent AFFF Cause of Action*" means any Cause of Action that could be asserted by an AFFF Claimant against a Non-Debtor Party based on the Non-Debtor Party's own conduct and breach of duty (*i.e.*, duty owed to the AFFF Claimant and not owed to the Debtor), including (a) Causes of Action arising from such acts or omissions of such Non-Debtor Party, and (b) Causes of Action based on allegations that a Non-Debtor Party is responsible for such conduct under theories of liability or recovery or remedies that could have been asserted by an AFFF Claimant on its own behalf under applicable state or federal law in respect of such Causes of Action prior to the Petition Date based on (i) the doctrine of successor liability involving a Non-Debtor Party that is alleged to be a successor to another Non-Debtor Party with respect to liabilities not directly or indirectly assumed from the Debtor, whether based on a contractual assumption of liability (including under the 2020 Separation Agreement), consolidation or de facto merger, acquisition of product line, fraud, domination, direction of affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, (ii) the doctrines of alter ego or veil piercing involving alter egos of a Non-Debtor Party, or piercing the corporate veil between Non-Debtor Parties, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form, or (iii) alleged derivative or vicarious liability of a Non-Debtor Party for liabilities of another Non-Debtor Party not directly or indirectly assumed from the Debtor; *provided* that, if any Cause of Action falls within the definition of Estate Cause of Action or Sovereign State Retained Cause of Action, it is not an Independent AFFF Cause of Action.
"*Insurance Assignment*" means the transfer by the Debtor and Carrier to the Primary AFFF Settlement Trust of certain rights in connection with the Insurance Policies as set forth in Article 5 of the Plan.

"*Insurance Policy/ies*" means: (i) any insurance policies listed on Schedule 1 to the Plan, (ii) to the extent not listed on Schedule 1, any "general liability" insurance (which, for the avoidance of doubt, shall exclude director & officer, automobile, or workers' compensation insurance) contract, binder, certificate, insurance policy, or reinsurance policy, whether currently known or unknown, discovered after the Effective Date, in effect at any time on or before the Petition Date naming the Debtor, the Contributing Parties, or any of their predecessors, subsidiaries, or past or present affiliates as an insured (whether as the primary or additional insured) or that provides or may provide coverage to Carrier or the Debtor for AFFF Claims, (iii) "Aviation" policies to

which Carrier or the Debtor has rights as listed in Schedule 2 to the Plan solely to the extent of Insurance Policy Rights applicable to or arising from AFFF Claims and (iv) any other subsequently discovered insurance policies of the same types as listed in Schedules 1 and 2 to the Plan to the extent that Carrier or the Debtor have rights under such policies (whether or not such policies are specifically titled as "General Liability" or "Aviation" policies).  For the avoidance of doubt, "Insurance Policies" shall not include any D&O Policies, automobile policies or worker's compensation insurance.

"*Insurance Policy Rights*" means any and all rights subject to the Insurance Assignment.

"*KFFI*" means Kidde Fire Fighting, Inc. (formerly known as National Foam, Inc.).

"*Liquidating Estate Claims*" means Administrative Claims, Priority Tax Claims, Other Priority Claims and Secured Claims.

"*New National Foam*" means, collectively, National Foam, Inc. f/k/a Eurostar US Tradeco, Inc., Angus Fire Ltd. f/k/a Eurostar Tradeco Limited, Angus International Safety Group Limited f/k/a/ Eurostar Holdco Limited, and each of their Related Parties.

"*New National Foam Release*" means a settlement between the Debtor and New National Foam pursuant to which (a) Estate Causes of Action against New National Foam are resolved for value reasonably acceptable to the Settling Parties and (b) New National Foam agrees to absolutely, unconditionally, and irrevocably release and discharge the Debtor and each Released Party from any and all Claims and Causes of Action, whether known or unknown, based on or relating to, or in any manner arising from that certain Share and Business Sale Agreement, dated as of June 28, 2013, or any other occurrence taking place on or before the Effective Date, including Proof of Claim No. 225, and otherwise in form and substance reasonably acceptable to the Settling Parties.

"*Non-Debtor Party*" means any Person other than the Debtor.  For the avoidance of doubt, the term "*Non-Debtor Party*" does not include KFFI or National Foam, Inc.

"*Other Insurance Company*" means an Insurance Company that is not a Settling Insurance Company.

"*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"*Person*" means a "person" or "entity" as defined in the Bankruptcy Code.

"*Petition Date*" means May 14, 2023, the date on which the Debtor commenced the Chapter 11 Case.

"*PFAS*" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.

"*Primary AFFF Settlement Trust*" means the settlement trust organized under the laws of the state of Delaware and established under the Plan and the Settlement Trust Documents, which

shall (i) have the powers, duties and obligations set forth in the Plan and the Settlement Trust Documents, (ii) assume all liability of the Debtor and the Estate for, and administer, all Channeled AFFF Claims and (iii) be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code.

"*Primary AFFF Settlement Trust Agreement*" means the Settlement Trust Agreement governing the Primary AFFF Settlement Trust, dated as of the Effective Date, as the same may be amended or modified from time to time in accordance with the terms thereof.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Released Party*" means (i) Carrier, (ii) RTX, and (iii) each of their Related Parties in their capacities as such.  Released Parties shall not include DuPont, 3M, or their current or former affiliates and Related Parties.  If a Person is a current or former affiliate or Related Party of DuPont or 3M, and such Person is also a current or former affiliate or Related Party of Carrier or RTX, then such Person shall not be a Released Party.  For the avoidance of doubt, New National Foam shall not be a Released Party unless the New National Foam Release  is provided by the Effective Date.

"*Related Party*" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, and current and former affiliates and subsidiaries, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, all only in their capacity as a representative of such Person, and (c) respective heirs, executors, estates, and nominees, in each case solely in its capacity as such.

"*RTX Waiver*" shall have the meaning set forth in Article 5.5.11(b) of the Plan.

"*Sale Order*" means the *Order (I) Approving the Sale of All or Substantially All of the Debtor's Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving Debtor's Entry, and Performance Under the Contribution Agreement, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Granting Related Relief*, entered by the Bankruptcy Court on April 2, 2024 [D.I. 1058].

"*Settlement Trust Agreements*" means, collectively, (i) the Primary AFFF Settlement Trust Agreement, (ii) the Sovereign State AFFF Settlement Trust Agreement and (iii) the GUC Liquidating Trust Agreement.  To the extent that any provision of a Settlement Trust Agreement impacts the rights of Carrier, such provision shall not be included in such Settlement Trust Agreement unless reasonably acceptable to Carrier.

"*Settlement Trust Documents*" means, collectively, (a) the Settlement Trust Agreements, (b) the TDPs, (c) the Confirmation Order, and (d) any other agreements, instruments, and documents governing the establishment, administration, and operation of the Settlement Trusts.

"*Settlement Trusts*" means the Primary AFFF Settlement Trust, Sovereign State AFFF Settlement Trust and GUC Liquidating Trust.

"*Settling Insurance Company*" means any Insurance Company that contributes funds, proceeds, or other consideration to or for the benefit of the Primary AFFF Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order.  No Insurance Company shall be considered a Settling Insurance Company without the Committee's prior written consent.

"*Sovereign State*" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.

"*Sovereign State AFFF Settlement Trust*" means the trust established under the Plan and the Settlement Trust Documents to administer all Sovereign State Claims against the Debtor.  The Sovereign State AFFF Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code and shall have the powers, duties and obligations set forth in the Settlement Trust Documents.

"*Sovereign State Retained Cause of Action*" means any Claim or Cause of Action asserted, or which may be asserted, by a Sovereign State against a Contributing Party that (1) is not an Estate Cause of Action and (2) arises from a statute, regulation, or common law that creates a theory of liability, by which a Sovereign State could recover damages or penalties, or obtain equitable or injunctive relief, against a Contributing Party.  For the avoidance of doubt, a Sovereign State may assert a Sovereign State Retained Cause of Action irrespective of whether such Sovereign State Retained Cause of Action could also be considered an Independent AFFF Cause of Action.

"*TDPs*" or "Trust Distribution Procedures" means the Trust Distribution Procedures for the Settlement Trusts, as the same may be amended or modified from time to time in accordance with the terms thereof, that will govern the claims submission, adjudication, and distribution processes for the Settlement Trusts in a manner that is fair and equitable to Holders of Allowed Channeled AFFF Claims.  To the extent that any provision of the TDPs impacts the rights of Carrier, such provision shall not be included unless reasonably acceptable to Carrier.

"*Transferred Assets*" shall have the meaning set forth in the Acquisition Agreement.

# **EXHIBIT**

**EXHIBIT**

| Creditor Name | Type of Authority for Vote (A OR B) | | Vote to ACCEPT (in Favor of the Plan) OR Vote to REJECT (Against the Plan) | |
|---|---|---|---|---|
| | A | B | ACCEPT | REJECT |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |

**<u>EXHIBIT 2S</u>**

**AFFF Master Ballot for Class 3H: Fire Training Facility Claims**

**\*\*KFI WIND-DOWN CORP. PLAN BALLOT\*\***

---

### THIS BALLOT IS FOR HOLDERS OF CLAIMS AGAINST KFI WIND-DOWN CORP. (F/K/A KIDDE-FENWAL, INC.) ARISING FROM ITS AFFF OR AFFF-CONTAINING PRODUCTS.

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |

---

### MASTER BALLOT FOR ACCEPTING OR REJECTING
### THE DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
### UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

---

### CLASS 3H:  FIRE TRAINING FACILITY CLAIMS

---

On May 14, 2023 (the "Petition Date"), KFI Wind-Down Corp. f/k/a Kidde-Fenwal, Inc. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") (the "Chapter 11 Case").

On [•], 2025, the Debtor filed the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Plan"),[2] which is described in greater detail in the *Disclosure Statement for the Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Disclosure Statement").

---

[1]    The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters are located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

> **THE PLAN CONTAINS RELEASE, INJUNCTION AND EXCULPATORY PROVISIONS.  THESE PROVISIONS ARE SET FORTH IN APPENDIX A TO THIS MASTER BALLOT.  YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.**

On [•], 2025, the Bankruptcy Court entered an order [D.I. [•]] (the "Disclosure Statement Order") approving the Disclosure Statement as containing "adequate information" within the meaning ascribed to such term in section 1125 of the Bankruptcy Code and procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures").

The Plan, Disclosure Statement, Disclosure Statement Order, Solicitation Procedures and documents included in the Plan Supplement as of the Solicitation Mailing Deadline have been included in the package of materials containing the attached master ballot (the "Master Ballot") and can be accessed free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code.  For a description of the Causes of Action to be enjoined and the identities of the Persons that would be subject to this injunction, see Article IV.E.8 of the Disclosure Statement and Article 10.8 of the Plan.

A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of the Claims that submit votes in that Voting Class vote to accept the Plan.  Even if a Voting Class votes to reject the Plan, the Bankruptcy Court nonetheless may confirm the Plan if it finds the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

If the Plan is confirmed by the Bankruptcy Court, all Holders of Claims against and Interests in the Debtor (including those Holders who reject the Plan or abstain from voting on the Plan, and those Holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby.

The Debtor will file the Plan Supplement (as may be amended, modified or supplemented from time to time) with the Bankruptcy Court no later than **November 17, 2025**.

The documents included in the Plan Supplement as of the Solicitation Mailing Deadline are included in your Solicitation Package. Any further Plan Supplement, and any amendments or supplements to the foregoing, will only be served on:  (a) the U.S. Trustee, (b) the Notice Parties and (c) the 2002 List.   Once filed, a copy of the Plan Supplement will also be available for review and download on the Debtor's website maintained by the Solicitation Agent free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

**Unless such time is extended by the Debtor, in consultation with the Settling Parties, or the Bankruptcy Court, the Master Ballot must be properly completed, signed and**

submitted to the Solicitation Agent *so as to be actually received* no later than 5:00 p.m. (prevailing Eastern Time) on December 15, 2025 (the "Voting Deadline") in order for the votes on the Master Ballot to count. Unless you receive express, written permission from the Debtor to submit a Master Ballot via other means, the **ONLY** acceptable manner of submission of Master Ballots is either (a) by email to **KFIInquiries@stretto.com** or (b) by regular mail, overnight courier or hand delivery to KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, in either case so that it is actually received by the Solicitation Agent by or before the Voting Deadline (December 15, 2025 at 5:00 p.m. (prevailing Eastern Time)).

This Master Ballot is to be used by attorneys only for voting on behalf of Holders of Fire Training Facility Claims against the Debtor in Class 3H of the Plan. Please refer to the Plan for the specific definition of "Fire Training Facility Claim," which is copied below, as well as other relevant definitions.

*"Holder" means a Person holding a Claim against or an Interest in the Debtor.*

*"Fire Training Facility Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Fire Training Facility for damages relating to such Fire Training Facility.*

*"AFFF" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.*

*"AFFF Claim" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.*

*"Airport" means: (a) all airports categorized by the FAA in the National Plan of Integrated Airport Systems, including all airports that have been issued operating certificates by the FAA pursuant to 14 CFR Part 139; and (b) any firefighter training facility operated on airport property, whether or not operated by the airport itself.*

*"PFAS" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.*

*"Sovereign State" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.*

*"Sovereign Tribe" means any American Indian or Alaskan Native Tribe, band, nation, pueblo, village or community, that the U.S. Secretary of the Interior*

-3-

*acknowledges as an Indian Tribe, as provided in the Federally Recognized Tribe List Act of 1994, 25 U.S.C. § 5130, and as periodically listed by the U.S. Secretary of the Interior in the Federal Register pursuant to 25 U.S.C. § 5131; and any "Tribal Organization" as provided in the Indian Self-Determination and Education and Assistance Act of 1975, as amended, 25 U.S.C. § 5304(1).*

*"Fire Training Facility" means real property (other than an Airport) that is or has been used for live firefighter training with AFFF.*

*"Claim" has the meaning ascribed to such term under section 101(5) of the Bankruptcy Code.*

*[Remainder of page left intentionally blank]*

-4-

## <u>DOCUMENTS INCLUDED WITH THE MASTER BALLOT</u>

You should have received the following documents with the Master Ballot (collectively, the "<u>Solicitation Package</u>").  **Please note that some of the following documents may be included on a USB flash drive included as part of your Solicitation Package.**

- the Cover Letter;

- the Committee Letter;

- the Solicitation Procedures;

- a USB flash drive containing a copy of the Disclosure Statement (and exhibits thereto, including the Plan) and the documents contained in the Plan Supplement that have been filed prior to the Solicitation Mailing Deadline;

- the Disclosure Statement Order (without exhibits);

- a preaddressed, return envelope for completed Master Ballots;

- the Confirmation Hearing Notice; and

- any other materials ordered by the Court to be included as part of the Solicitation Package.

If you have questions about the Master Ballot, or if you did not receive a copy of the Plan or any related materials, please contact the Solicitation Agent at <u>KFIInquiries@stretto.com</u> or (866) 887-0488 (toll-free) or +1 (949) 889-0128 (international).  Information may also be obtained at <u>https://cases.stretto.com/kfi</u> by clicking the link for "Plan & Disclosure Statement" on the landing page.

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtor or any other party for payment purposes.

-5-

## INSTRUCTIONS FOR COMPLETING THE MASTER BALLOT

1.      The Master Ballot is provided to you, as an attorney for Holders of Fire Training Facility Claims against the Debtor, in connection with the solicitation of votes of Holders of Fire Training Facility Claims to accept or reject the Plan.  The Disclosure Statement and Plan are also being provided to you.  PLEASE READ ALL DOCUMENTS CAREFULLY BEFORE COMPLETING THE MASTER BALLOT.

2.      The Master Ballot is to be used by attorneys who represent, **and are authorized to vote on behalf of**, one or more Holders of Fire Training Facility Claims.  You may be required to provide evidence of your authorization by Holders of Fire Training Facility Claims to vote to accept or reject the Plan.

3.      You are receiving this Master Ballot because you represent certain clients (collectively, your "Eligible Clients") who are Holders of Fire Training Facility Claims against the Debtor.  Your firm ("Firm") must certify to one of the options below with respect to each Eligible Client whose vote is included in your Firm's Master Ballot.

      (a)      "Option (a) Certification":  The Firm (or one or more of its attorneys) has communicated with the applicable Eligible Client (as defined below) and has been authorized, consistent with applicable law, by such Eligible Client to vote their Fire Training Facility Claim to accept or reject the Plan.  The Firm may not rely on negative notice for such authorization.

      (b)      "Option (b) Certification":  The Firm (or one or more of its attorneys) has the authority under a power of attorney to vote to accept or reject the Plan on behalf of the applicable Eligible Client and the Firm completed the vote on behalf of such Eligible Client on the Master Ballot in accordance with the authority granted to the Firm.

4.      To use the Master Ballot, you must be authorized to vote on behalf of your Eligible Clients under all applicable standards for such authorization.  With respect to any of the Eligible Clients on the Exhibit, if you are unable to certify that you have the authority to vote on the Plan on behalf of such Eligible Client, you must not vote on behalf of such Eligible Client.

5.      To be entitled to vote on the Plan, a Holder of a Fire Training Facility Claim in Class 3H (either directly or through his or her attorney or agent) must be able to certify that such Holder has a Fire Training Facility Claim in Class 3H.

6.      To have the votes reflected on the Master Ballot counted for purposes of voting on the Plan, the Master Ballot must be completed, signed, and submitted **so that it is actually received** no later than the Voting Deadline by the Solicitation Agent as set forth in these instructions below.    Master Ballots will be accepted either (i) by email to KFIInquiries@stretto.com or (ii) by regular mail, overnight courier or hand delivery to KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602 unless the party submitting a

-6-

Master Ballot previously received permission in writing from the Debtor to submit such Master Ballot via other means. If a Master Ballot is received after the Voting Deadline (as may be extended by the Debtor in writing, in consultation with the Settling Parties), it may not be counted. If the Master Ballot is not signed on the appropriate lines, the Master Ballot will not be valid or counted as having been cast.

7.    The Master Ballot will not constitute or be deemed a Proof of Claim or Interest, an assertion of a Claim, the allowance of a Claim, or the acceptance or liquidation of any Fire Training Facility Claim for purposes of any distribution. None of the information set forth in the Master Ballot shall constitute an admission by the Debtor as to the extent, validity, or priority of the Claim voted herein, nor shall anything contained herein or information submitted in or with the Master Ballot be binding upon the Debtor or the Holder in any subsequent claims resolution process or other proceeding. The Master Ballot may not be used for any purposes other than to transmit votes on the Plan.

8.    Multiple Master Ballots may be completed and delivered to the Solicitation Agent. Subject to the terms of the Solicitation Procedures, votes reflected by multiple Master Ballots submitted by the same Firm will be counted except to the extent that they are duplicative of other Master Ballots. If two or more such ballots submitted by the same Firm are inconsistent, the last valid Master Ballot received by the Solicitation Agent on or before the Voting Deadline will, to the extent of such inconsistency, govern unless otherwise ordered by the Bankruptcy Court. If more than one Master Ballot is submitted and the last such ballot supplements rather than supersedes earlier Master Ballot(s), please designate the subsequent Master Ballot(s) as "Supplemental" and clearly mark which of those votes reflected thereon are additional votes.

9.    Notwithstanding the foregoing, if the Solicitation Agent receives two or more Master Ballots from separate Firms, each of whom purports to represent the same Holder of a Fire Training Facility Claim, it is the sole obligation and responsibility of the Firms to coordinate with each other to resolve any conflicting representations, and for the appropriate Firm to submit the vote on behalf of such Eligible Client together with an email to KFIInquiries@stretto.com copying all affected Firms confirming such resolution. The Solicitation Agent is entitled to rely upon such an email. If the Firms are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple consistent votes on account of such Eligible Client (*i.e.*, multiple votes to accept the Plan or multiple votes to reject the Plan), the Solicitation Agent is authorized to treat such votes as duplicative and count them only once for both numerosity and voting amount purposes. If, however, the Firms voting on account of such Eligible Client are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple inconsistent votes on account of such Eligible Client (*i.e.*, a vote to accept the Plan and a vote to reject the Plan), the Solicitation Agent shall contact the relevant Firms and request they coordinate with each other to resolve the conflicting representation. If after the submission of inconsistent votes but prior to the Voting Deadline, the applicable Firms timely reach a consensus regarding which vote should be counted, one of the applicable Firms may email KFIInquiries@stretto.com, copying all other affected Firms, and direct the Solicitation Agent as to which vote should be counted. The Solicitation Agent is entitled to rely upon such an email. If representation of the Holder of the

-7-

Claim is not resolved within 10 calendar days from the notice of the conflict as provided by the Solicitation Agent, such votes shall not be counted.

10.     Each Holder of a Fire Training Facility Claim that votes must vote his or her entire Claim either, to ACCEPT (vote in favor of), or to REJECT (vote against), the Plan.  A Holder of a Fire Training Facility Claim may not split his or her vote.  Accordingly, the votes of any Holder of a Fire Training Facility Claim who purports partially to accept and partially to reject the Plan will not be counted.

11.     If the Master Ballot is signed and timely sent to the Solicitation Agent, but does not designate either acceptance or rejection, or designates both acceptance and rejection, of the Plan for any particular claimant listed on the Exhibit, then the Solicitation Agent may, at its discretion, either contact the party submitting the Master Ballot in order to cure the defect on the Master Ballot or such Claim will not be counted either as an acceptance or rejection of the Plan.

12.     **To complete the Master Ballot properly, you must follow the procedures described below:**

Item 1 of the Master Ballot requires that you to indicate, for each Eligible Client on the Exhibit for which you are casting a vote, (a) the authority upon which votes on behalf of each such Eligible Client are being included (*i.e.*, Option (a) Certification or Option (b) Certification as described above) in the Master Ballot and (b) whether such Eligible Client accepts or rejects the Plan.

Item 2 of the Master Ballot contains certifications which are required for you to submit a vote on behalf of one or more Holders of Fire Training Facility Claims.  Please ensure that you have read and understood the certifications before signing the Master Ballot.  **If you are unable to make the certification as to the authority to vote on behalf of any Holder of a Fire Training Facility Claim you represent, you may not cast a vote on behalf of such Holder**.

Sign the Master Ballot.

Provide your name and mailing and email addresses where indicated.

Contact the Solicitation Agent if you need additional information or copies of any documents contained in the Solicitation Package or if you have any technical questions regarding composition and submission of your Master Ballot.

Submit the completed, executed Master Ballot *so as to be actually received* by the Solicitation Agent before the Voting Deadline either (i) by email to KFIInquiries@stretto.com or (ii) by regular mail, overnight courier or hand delivery to KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602.

**IF YOU HAVE ANY QUESTIONS REGARDING THE MASTER BALLOT,
BELIEVE YOU MAY HAVE RECEIVED AN INCORRECT BALLOT,
OR IF YOU DID NOT RECEIVE A COPY OF ANY OF
THE DOCUMENTS DESCRIBED IN THESE INSTRUCTIONS,
PLEASE CONTACT THE SOLICITATION AGENT AT:**

**TELEPHONE: (866) 887-0488 (TOLL-FREE)
OR +1 (949) 889-0128 (INTERNATIONAL)
E-MAIL: KFIINQUIRIES@STRETTO.COM
OR VISIT HTTPS://CASES.STRETTO.COM/KFI**

4908-3583-8729 v.5

# **PLAN BALLOT**

## MASTER BALLOT FOR ACCEPTING OR REJECTING THE DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

---

### CLASS 3H: FIRE TRAINING FACILITY CLAIMS

---

**PLEASE COMPLETE THE FOLLOWING:**

The Solicitation Procedures are included within the Solicitation Package that accompanies these instructions.  The Solicitation Procedures contain important information regarding the balloting process.  Please read the Solicitation Procedures before submitting this Master Ballot.  If you have any technical questions or need to arrange for special delivery of your Master Ballot, please contact the Solicitation Agent.

**Please note that each Holder of a Fire Training Facility Claim who votes on the Plan must vote the entire amount of his or her Claim to accept or reject the Plan.  All AFFF Claims have been temporarily allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance or any other purpose.**  Any Holders of AFFF Claims who attempt partially to reject and partially to accept the Plan will not have their vote counted.  If this Master Ballot is signed and timely received by the Solicitation Agent but does not designate either acceptance or rejection or designates both acceptance and rejection of the Plan for any particular claimant, such vote will not be counted either as an acceptance or rejection of the Plan.

**Item 1 – List of Holders of Fire Training Facility Claims Represented by the Firm.**

The exhibit to this Master Ballot (the "Exhibit") contains the names set forth on the Client List previously submitted by your Firm with the Solicitation Directive and is a list of each Holder of a Fire Training Facility Claim that you represent.  You must indicate on the Exhibit next to each Eligible Client for which you cast a vote (a) the authority upon which votes on behalf of each such Eligible Client are being included (*i.e.*, Option (a) Certification or Option (b) Certification as described in Item 2) on the Master Ballot and (b) whether such Eligible Client accepts or rejects the Plan.

**Item 2 – Certifications, Acknowledgement, Signature, and Date.**

By signing this Master Ballot, the undersigned certifies under penalty of perjury that each of the following statements is true and correct:

- I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the

Solicitation Procedures, the documents included in the Plan Supplement as of the Solicitation Mailing Deadline, and a letter from the Committee and the MDL PEC Co-Leads urging claimants to vote to ACCEPT (vote in favor of) the Plan.

- I am authorized, by agreement or under applicable law, by each of the Holders of the Fire Training Facility Claims listed on the Exhibit for which I have voted to vote his, her, or its Fire Training Facility Claim to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan.

- For each client listed on the Exhibit and for whom the "Option (a) Certification" is indicated, I or my Firm communicated with each such Eligible Client and have been authorized, consistent with applicable law, by each such Eligible Client to vote each of their Fire Training Facility Claim to accept or reject the Plan. I am not relying on negative notice to make such certification.

- For each Eligible Client listed on the Exhibit and for whom the "Option (b) Certification" is indicated, I or my Firm has the authority under a power of attorney to vote to accept or reject the Plan on behalf of each such Eligible Client and I have completed this Master Ballot in accordance with such authority.

- To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, each Holder of a Fire Training Facility Claim listed on the Exhibit who is casting a vote has, on such Holder's information and belief, a Fire Training Facility Claim against the Debtor.

Print or Type Name of Attorney: _____

Name of Firm: _____

Attorney Signature: _____

Street Address: _____

City, State, and ZIP Code: _____

Telephone Number: _____

E-mail Address of Attorney/Signatory: _____

Date: _____

The entire Exhibit accompanying this Master Ballot must be completed and submitted with this completed Master Ballot to the Solicitation Agent.

-2-

**IF THIS MASTER BALLOT IS NOT *ACTUALLY RECEIVED BY*
THE SOLICITATION AGENT BY 5:00 P.M. (PREVAILING EASTERN TIME) ON
DECEMBER 15, 2025, YOUR VOTE MAY NOT BE COUNTED.**

-3-

<u>**Appendix A**</u>

**Release, Injunction and Exculpation Provisions in the Plan[1]**

---

4908-3583-8729 v.5

## Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released and cancelled, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Liquidating Estate and their successors and assigns.  Any Holder of such mortgage, deed of trust, Lien, pledge or other security interest (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including and cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Liquidating Administrators to evidence such release, including the execution, delivery and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

## Releases by the Estate

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party, the Debtor, the Liquidating Estate and each Related Party of the Debtor and the Liquidating Estate shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, or any other Person or Governmental Unit asserting currently or in the future by, under, through, or on behalf of the Debtor or its Estate, and each of their respective successors or assigns, including the Settlement Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between one or both of the Debtor, on the one hand, and any Released Party, the Liquidating Estate, or any Related Party of the Debtor and the Liquidating Estate, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.3 of the Plan shall not be construed to release any post-Effective Date obligations under the RTX Waiver, the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, which specifically provides that such Estate Claims Settlement can be terminated, and the releases provided in the Plan or in the Estate Claims Settlement are void, if Carrier fails to make the installments of the Guaranteed Cash Payment when due and such failure is not timely cured within 30 days, at which time the Primary AFFF Settlement Trust is entitled to commence, prosecute, or continue all Estate Causes of Action against the Released Parties in any court of competent jurisdiction, and take such other actions as the Primary AFFF Settlement Trustee may determine in the exercise of their fiduciary duties.

### Releases by the Released Parties

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Released Parties and their successors or assigns of and from any and all Claims and Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, the Debtor's current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between any of the Debtor, the Liquidating Estate, the Settlement Trusts or the Debtor's current or former officers, directors, and board members who served in such capacity during the Chapter 11 Case, on the one hand, and any Released Party, on the other hand, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any post-Effective Date obligations under the Plan Documents, the Confirmation Order, the 2020 Separation Agreement as supplemented by the RTX Waiver, or the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, or the right of any Person to enforce the same in accordance with

the terms thereof. Except with respect to the Claims and Causes of Action against the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case that are released and discharged under Article 10.4 of the Plan, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any obligations, rights, Causes of Action or Claims that Carrier Global Corporation or members of the Carrier Group (other than the Debtor), Otis Worldwide Corporation or members of the Otis Group, or RTX or members of the UTC Group may have against any Person under the 2020 Separation Agreement as supplemented by the RTX Waiver (including indemnification rights of RTX and other members of the "UTC Group" under the 2020 Separation Agreement).  For the avoidance of doubt, in the event that the Estate Claims Settlement Effective Date does not occur or the Estate Claims Settlement is terminated as contemplated by the last paragraph of Article 10.3 in the Plan, all releases being provided by the Released Parties under the Plan shall be void.

## Scope of Releases

Each Person providing releases under the Plan, including the Debtor, the Estate and the Settling Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts. Each Person providing releases under the Plan shall be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

## Exculpation

Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtor and its directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation.

As of the Effective Date, to the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in Article 10 of the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person for any act or omission in connection with, related to or arising out of this Chapter 11 Case, including (a) the operation of the Debtor's businesses during the pendency of this Chapter 11 Case; (b) the

administration and adjudication of Claims and Interests during this Chapter 11 Case; (c) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Plan, the Disclosure Statement, the Plan Supplement, or any related contract, instrument, release or other agreement or document created or entered into in connection with the Chapter 11 Case (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan and the distribution of property under the Plan); (d) any other transaction, agreement, event, or other occurrence related to the Chapter 11 Case taking place on or before the Effective Date, other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.

## Injunction

Except as otherwise expressly provided in the Plan or the Confirmation Order, the satisfaction and release pursuant to Article 10 of the Plan shall also act as a permanent injunction against any Person who has held, holds, or may in the future hold Claims against or Interests in the Debtor or any of its assets or properties based on any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are treated, released, settled, channeled, or exculpated pursuant to the terms of the Plan from taking any of the following actions on account of, or on the basis of, such Claims or Interests: (a) commencing or continuing any action to collect, enforce, offset, recoup, or recover with respect to any Claims or Interests treated, released, settled, channeled, or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Claim or Interest against the Debtor, the Liquidating Estate, the Settlement Trusts, or its or their respective property; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of or in connection with or with respect to any such Claims or Interests, notwithstanding an indication of a Claim or Interest or otherwise that a Holder of such Claim or Interest asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise, against the Debtor, the Liquidating Estate, or the Settlement Trusts; or (e) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

## Channeling Injunction

Notwithstanding anything to the contrary in the Plan, to preserve and promote the settlements contemplated by and provided for in the Plan, including the Insurance Settlement Agreements, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under sections 105(a) and 1123(b) of the Bankruptcy Code, the sole recourse of any Holder of a Channeled AFFF Claim against the Debtor or a Released Party on account of such Channeled AFFF Claim shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to

and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, and such Holder shall have no right whatsoever at any time to assert any such Channeled AFFF Claim or any Estate Cause of Action that is released under the Estate Claims Settlement against the Debtor or any Released Party or any property or interest in property of the Debtor or any Released Party.  For the avoidance of doubt, the sole recourse for any Channeled AFFF Claim covered by any Insurance Policy issued by a Settling Insurance Company shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents.  Accordingly, on and after the Effective Date, all Holders of AFFF Claims that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled AFFF Claim or any Estate Cause of Action against the Debtor or any Released Party shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from the Debtor or any Released Party with respect to any such Channeled AFFF Claim or Estate Cause of Action, other than from the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, including:

a)      commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

b)      enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

c)      creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

d)      asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party; or

e)      taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents, or, with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, by the Sovereign State AFFF Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Channeled AFFF Claim.

The Debtor, the Liquidating Estate and/or any Released Party, as applicable, may enforce the Channeling Injunction and/or the Releases contained in the Plan before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at their own cost and expense, and no such cost or expense incurred by a party other than the Primary AFFF Settlement Trust shall be reimbursed or indemnified by the Primary AFFF Settlement Trust under any circumstances.

## Insurance Company Injunction

Subject to the provisos set forth in this Section, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim or cause of action (including any AFFF Claim or any Claim for or respecting any Primary AFFF Settlement Trust expense) against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Insurance Policy, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, statute or any other theory of law, equity or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim or cause of action, including:

a)      commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, demand, or cause of action against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such Claim, demand, or cause of action against any Insurance Company);

b)      enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

c)      creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such Claim or cause of action; and

d)      except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

*provided, however,* that (i) nothing in this Section shall impair or affect the rights of any member of the UTC Group, including RTX, or any member of the Otis Group (each as defined in the 2020 Separation Agreement), or any additional insured designated by RTX

or any member of the UTC Group, based upon, attributable to, arising out of, or in any way connected with an Insurance Policy, including to assert Claims or Causes of Action against any Insurance Company for covered losses and to receive proceeds in respect thereof; (ii) this injunction shall not impair in any way any actions brought by the Primary AFFF Settlement Trust against any Other Insurance Company; (iii) the Primary AFFF Settlement Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction with respect to any Other Insurance Company, in accordance with the Settlement Trust Documents, upon express written notice to such Other Insurance Company; and (iv) this injunction is not issued for the benefit of any Other Insurance Company, and no Other Insurance Company is a third-party beneficiary of this injunction.

Notwithstanding anything to the contrary in the Plan, this injunction shall not enjoin:

a)       the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of Holders of AFFF Claims to assert such Claims, as applicable, in accordance with the TDPs;

b)       the rights of the Primary AFFF Settlement Trust to prosecute any action based on or arising from Insurance Policies, except to the extent otherwise released;

c)       the rights of the Primary AFFF Settlement Trust to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company based on or arising from the Insurance Policies;

d)       any actions of the Contributing Parties in fulfilling their obligations under the Estate Claims Settlement in consultation and coordination with the Primary AFFF Settlement Trust;

e)       the rights of any Insurance Company to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company; or

f)       the Claims for reinsurance under reinsurance contracts or Claims under retrocessional contracts among the Settling Insurance Companies and any Other Insurance Company.

<u>Prohibition on Actions Against Buyer</u>

Subject to the Sale Order and the Acquisition Agreement, Buyer, in its capacity as such, shall not have any liability for any AFFF Claims against the Debtor arising prior to the closing of the Sale. Except as expressly otherwise set forth in the Sale Order, all persons and entities hereby are forever barred, estopped and permanently enjoined from asserting against Buyer, its Affiliates, its successors or assigns, its property or the Transferred Assets, such persons' or entities' AFFF Claims that have been or could have been asserted against the Debtor arising prior to the closing of the Sale. For the avoidance of doubt, the foregoing shall

not release Buyer from, or enjoin any actions against Buyer for, any Assumed Liability or any other liability incurred by Buyer on account of its operations following the closing of the Sale.

## Limitations on Exculpations and Releases

Notwithstanding anything to the contrary in the Plan, none of the releases or exculpations set forth in the Plan shall operate to waive or release any obligation or Causes of Action of any Person:  (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations or (b) expressly set forth in and preserved by the Plan, the Plan Supplement, Plan Documents or related documents.

## Release Dispute

In the event of a Release Dispute, a Released Party may, at its sole cost and expense, file a motion with the Bankruptcy Court seeking a determination as to whether an AFFF Claimant's Cause of Action was settled and released pursuant to the Plan, and upon such motion, the Bankruptcy Court shall make such determination and, if appropriate, enjoin the prosecution of such Cause of Action as having been settled and released under the Plan.

## Relevant Definitions

"*2020 Separation Agreement*" means that certain Separation and Distribution Agreement, dated as of April 2, 2020, by and among United Technologies Corporation, Carrier Global Corporation, and Otis Worldwide Corporation.

"*Administrative Claim*" means an Allowed Claim for costs and expenses of administration of the Chapter 11 Case pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate; (b) Allowed Professional Compensation Claims; (c) Allowed Fee Examiner Compensation Claims; and (d) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

"*AFFF*" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

"*AFFF Claim*" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.

"*Assumed Liability*" shall have the meaning set forth in the Acquisition Agreement.

"*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other Claims, Causes of Action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties-in-interest under the Bankruptcy Code or applicable non-

bankruptcy law, including claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) was commenced prior to the Effective Date.

"*Buyer*" means Pacific Erin Opco, LLC, as the purchaser of substantially all of the Debtor's assets pursuant to the Acquisition Agreement and the Sale Order.

"*Carrier*" means Carrier Global Corporation, a Delaware corporation, and its non-Debtor affiliates and Related Parties.

"*Causes of Action*" means any current or future actions, Claims, cross-claims, third-party claims, causes of action, controversies, disputes, demands, rights, liens, indemnities, contributions, guaranties, suits, obligations, liabilities, losses, debts, fees or expenses, damages, interest, judgments, costs, accounts, defenses, remedies, offsets, powers, privileges, proceedings, licenses, and franchises of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, choate or inchoate, capable of being asserted directly or derivatively (including any alter ego theories), including any Claims for recovery of attorneys' fees, turnover, fraud, gross negligence, or willful misconduct, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws, consumer protection laws, environmental laws, or nuisance or trespass theories).  Causes of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to or otherwise contest Claims or Interests, (c) any claim pursuant to section 362 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Actions.

"*Channeled AFFF Claims*" means all AFFF Claims against the Debtor or the Estate channeled to the Primary AFFF Settlement Trust under the Plan and Settlement Trust Documents.  For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

"*Committee*" means the official committee of unsecured creditors of the Debtor appointed by the U.S. Trustee in the Chapter 11 Case under section 1102(a) of the Bankruptcy Code pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 83] and any amendments thereto.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Settling Parties.

"*Consummation*" means the occurrence of the Effective Date.

"*Debtor*" means Kidde-Fenwal, Inc., the debtor and debtor in possession in the Chapter 11 Case, now known as KFI Wind-Down Corp.  In 2007, KFFI (formerly known as National Foam, Inc.) merged into Kidde-Fenwal, Inc., with Kidde-Fenwal, Inc. as the surviving entity.  Pursuant to this merger, KFFI's liabilities were assumed by, and KFFI's causes of action were transferred to, Kidde-Fenwal, Inc. directly or indirectly by merger or other agreement.  The term "Debtor" includes Kidde-Fenwal, Inc. as successor by merger or other agreement by which Kidde-Fenwal, Inc. obtained or assumed the liabilities and Causes of Action of any Person.

"*Effective Date*" means the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date set forth in the Plan shall have been satisfied or waived and on which a notice indicating the Effective Date has been filed on the docket of the Chapter 11 Case.

"*Estate Causes of Action*" means Causes of Action owned or held by either the Debtor or its Estate, or capable of being asserted (currently, or in the future) by any Person or Governmental Unit on behalf of, under or through, either the Debtor or its Estate, and each of their respective successors or assigns, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions, that may be commenced by a representative of the Estate under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise.  Without limiting the foregoing, Estate Causes of Action shall include:  (a) Causes of Action that on or after the Petition Date may be exclusively asserted by or on behalf of the Debtor or its Estate under applicable law, or that prior to the Petition Date could have been asserted by the Debtor on its own behalf under applicable law, including Causes of Action based on (i) the doctrine of successor liability that seek to impose the Debtor's (including KFFI's or National Foam, Inc.'s) liabilities on an alleged successor, whether based on a contractual assumption of liability, consolidation or de facto merger, acquisition of the Debtor's product line, fraud, domination, direction of the Debtor's affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, or (ii) the doctrines of alter ego or veil piercing involving alter egos of the Debtor or the piercing of the Debtor's (including KFFI's or National Foam, Inc.'s) corporate veil, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form; (b) Causes of Action or theories for recovery or remedies that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is generally common to creditors of the Debtor and can be asserted by the Debtor under applicable law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor.  Subsections (a), (b) and (c) immediately above expressly encompass any Causes of Action based on:  (i) the alleged assumption of the Debtor's (including KFFI's or

National Foam, Inc.'s) liabilities (but not a non-Debtor's liabilities) by Kidde plc (n/k/a Kidde Limited) pursuant to the 2000 Demerger Agreement, or any alleged subsequent assumption of such liabilities of the Debtor from Kidde plc by any other Released Party; or (ii) the alleged assumption of the Debtor's liabilities (but not a non-Debtor's liabilities), including any liabilities resulting from acts or omissions of National Foam, Inc. or KFFI, by a Released Party pursuant to the 2020 Separation Agreement.  For the avoidance of doubt, Estate Causes of Action shall not include any Independent AFFF Causes of Action or any Sovereign State Retained Causes of Action or Insurance Actions against any Released Party based on acts or omissions occurring after entry into the Plan Support Agreement with respect to rights under the 2020 Separation Agreement or the RTX Waiver to access and make Claims under any Insurance Policy or otherwise obtain the benefit of the Insurance Assignment.

"*Estate Claims Settlement*" means the settlement, including the release of all Estate Causes of Action against the Released Parties, pursuant to the Estate Claims Settlement Agreement.

"*Independent AFFF Cause of Action*" means any Cause of Action that could be asserted by an AFFF Claimant against a Non-Debtor Party based on the Non-Debtor Party's own conduct and breach of duty (*i.e.*, duty owed to the AFFF Claimant and not owed to the Debtor), including (a) Causes of Action arising from such acts or omissions of such Non-Debtor Party, and (b) Causes of Action based on allegations that a Non-Debtor Party is responsible for such conduct under theories of liability or recovery or remedies that could have been asserted by an AFFF Claimant on its own behalf under applicable state or federal law in respect of such Causes of Action prior to the Petition Date based on (i) the doctrine of successor liability involving a Non-Debtor Party that is alleged to be a successor to another Non-Debtor Party with respect to liabilities not directly or indirectly assumed from the Debtor, whether based on a contractual assumption of liability (including under the 2020 Separation Agreement), consolidation or de facto merger, acquisition of product line, fraud, domination, direction of affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, (ii) the doctrines of alter ego or veil piercing involving alter egos of a Non-Debtor Party, or piercing the corporate veil between Non-Debtor Parties, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form, or (iii) alleged derivative or vicarious liability of a Non-Debtor Party for liabilities of another Non-Debtor Party not directly or indirectly assumed from the Debtor; *provided* that, if any Cause of Action falls within the definition of Estate Cause of Action or Sovereign State Retained Cause of Action, it is not an Independent AFFF Cause of Action.
"*Insurance Assignment*" means the transfer by the Debtor and Carrier to the Primary AFFF Settlement Trust of certain rights in connection with the Insurance Policies as set forth in Article 5 of the Plan.

"*Insurance Policy/ies*" means: (i) any insurance policies listed on Schedule 1 to the Plan, (ii) to the extent not listed on Schedule 1, any "general liability" insurance (which, for the avoidance of doubt, shall exclude director & officer, automobile, or workers' compensation insurance) contract, binder, certificate, insurance policy, or reinsurance policy, whether currently known or unknown, discovered after the Effective Date, in effect at any time on or before the Petition Date naming the Debtor, the Contributing Parties, or any of their predecessors, subsidiaries, or past or present affiliates as an insured (whether as the primary or additional insured) or that provides or may provide coverage to Carrier or the Debtor for AFFF Claims, (iii) "Aviation" policies to

which Carrier or the Debtor has rights as listed in Schedule 2 to the Plan solely to the extent of Insurance Policy Rights applicable to or arising from AFFF Claims and (iv) any other subsequently discovered insurance policies of the same types as listed in Schedules 1 and 2 to the Plan to the extent that Carrier or the Debtor have rights under such policies (whether or not such policies are specifically titled as "General Liability" or "Aviation" policies).  For the avoidance of doubt, "Insurance Policies" shall not include any D&O Policies, automobile policies or worker's compensation insurance.

"*Insurance Policy Rights*" means any and all rights subject to the Insurance Assignment.

"*KFFI*" means Kidde Fire Fighting, Inc. (formerly known as National Foam, Inc.).

"*Liquidating Estate Claims*" means Administrative Claims, Priority Tax Claims, Other Priority Claims and Secured Claims.

"*New National Foam*" means, collectively, National Foam, Inc. f/k/a Eurostar US Tradeco, Inc., Angus Fire Ltd. f/k/a Eurostar Tradeco Limited, Angus International Safety Group Limited f/k/a/ Eurostar Holdco Limited, and each of their Related Parties.

"*New National Foam Release*" means a settlement between the Debtor and New National Foam pursuant to which (a) Estate Causes of Action against New National Foam are resolved for value reasonably acceptable to the Settling Parties and (b) New National Foam agrees to absolutely, unconditionally, and irrevocably release and discharge the Debtor and each Released Party from any and all Claims and Causes of Action, whether known or unknown, based on or relating to, or in any manner arising from that certain Share and Business Sale Agreement, dated as of June 28, 2013, or any other occurrence taking place on or before the Effective Date, including Proof of Claim No. 225, and otherwise in form and substance reasonably acceptable to the Settling Parties.

"*Non-Debtor Party*" means any Person other than the Debtor.  For the avoidance of doubt, the term "*Non-Debtor Party*" does not include KFFI or National Foam, Inc.

"*Other Insurance Company*" means an Insurance Company that is not a Settling Insurance Company.

"*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"*Person*" means a "person" or "entity" as defined in the Bankruptcy Code.

"*Petition Date*" means May 14, 2023, the date on which the Debtor commenced the Chapter 11 Case.

"*PFAS*" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.

"*Primary AFFF Settlement Trust*" means the settlement trust organized under the laws of the state of Delaware and established under the Plan and the Settlement Trust Documents, which

shall (i) have the powers, duties and obligations set forth in the Plan and the Settlement Trust Documents, (ii) assume all liability of the Debtor and the Estate for, and administer, all Channeled AFFF Claims and (iii) be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code.

"*Primary AFFF Settlement Trust Agreement*" means the Settlement Trust Agreement governing the Primary AFFF Settlement Trust, dated as of the Effective Date, as the same may be amended or modified from time to time in accordance with the terms thereof.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Released Party*" means (i) Carrier, (ii) RTX, and (iii) each of their Related Parties in their capacities as such.  Released Parties shall not include DuPont, 3M, or their current or former affiliates and Related Parties.  If a Person is a current or former affiliate or Related Party of DuPont or 3M, and such Person is also a current or former affiliate or Related Party of Carrier or RTX, then such Person shall not be a Released Party.  For the avoidance of doubt, New National Foam shall not be a Released Party unless the New National Foam Release  is provided by the Effective Date.

"*Related Party*" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, and current and former affiliates and subsidiaries, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, all only in their capacity as a representative of such Person, and (c) respective heirs, executors, estates, and nominees, in each case solely in its capacity as such.

"*RTX Waiver*" shall have the meaning set forth in Article 5.5.11(b) of the Plan.

"*Sale Order*" means the *Order (I) Approving the Sale of All or Substantially All of the Debtor's Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving Debtor's Entry, and Performance Under the Contribution Agreement, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Granting Related Relief*, entered by the Bankruptcy Court on April 2, 2024 [D.I. 1058].

"*Settlement Trust Agreements*" means, collectively, (i) the Primary AFFF Settlement Trust Agreement, (ii) the Sovereign State AFFF Settlement Trust Agreement and (iii) the GUC Liquidating Trust Agreement.  To the extent that any provision of a Settlement Trust Agreement impacts the rights of Carrier, such provision shall not be included in such Settlement Trust Agreement unless reasonably acceptable to Carrier.

"*Settlement Trust Documents*" means, collectively, (a) the Settlement Trust Agreements, (b) the TDPs, (c) the Confirmation Order, and (d) any other agreements, instruments, and documents governing the establishment, administration, and operation of the Settlement Trusts.

"*Settlement Trusts*" means the Primary AFFF Settlement Trust, Sovereign State AFFF Settlement Trust and GUC Liquidating Trust.

"*Settling Insurance Company*" means any Insurance Company that contributes funds, proceeds, or other consideration to or for the benefit of the Primary AFFF Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order. No Insurance Company shall be considered a Settling Insurance Company without the Committee's prior written consent.

"*Sovereign State*" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.

"*Sovereign State AFFF Settlement Trust*" means the trust established under the Plan and the Settlement Trust Documents to administer all Sovereign State Claims against the Debtor. The Sovereign State AFFF Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code and shall have the powers, duties and obligations set forth in the Settlement Trust Documents.

"*Sovereign State Retained Cause of Action*" means any Claim or Cause of Action asserted, or which may be asserted, by a Sovereign State against a Contributing Party that (1) is not an Estate Cause of Action and (2) arises from a statute, regulation, or common law that creates a theory of liability, by which a Sovereign State could recover damages or penalties, or obtain equitable or injunctive relief, against a Contributing Party. For the avoidance of doubt, a Sovereign State may assert a Sovereign State Retained Cause of Action irrespective of whether such Sovereign State Retained Cause of Action could also be considered an Independent AFFF Cause of Action.

"*TDPs*" or "Trust Distribution Procedures" means the Trust Distribution Procedures for the Settlement Trusts, as the same may be amended or modified from time to time in accordance with the terms thereof, that will govern the claims submission, adjudication, and distribution processes for the Settlement Trusts in a manner that is fair and equitable to Holders of Allowed Channeled AFFF Claims. To the extent that any provision of the TDPs impacts the rights of Carrier, such provision shall not be included unless reasonably acceptable to Carrier.

"*Transferred Assets*" shall have the meaning set forth in the Acquisition Agreement.

**EXHIBIT**

**EXHIBIT**

| Creditor Name | Type of Authority for Vote (A OR B) | | Vote to ACCEPT (in Favor of the Plan) OR Vote to REJECT (Against the Plan) | |
|---|---|---|---|---|
| | A | B | ACCEPT | REJECT |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |

## EXHIBIT 2T

**AFFF Master Ballot for Class 3I: Landfill Claims**

**\*\*KFI WIND-DOWN CORP. PLAN BALLOT\*\***

---

**THIS BALLOT IS FOR HOLDERS OF CLAIMS AGAINST KFI WIND-DOWN CORP. (F/K/A KIDDE-FENWAL, INC.) ARISING FROM ITS AFFF OR AFFF-CONTAINING PRODUCTS.**

---

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |

**MASTER BALLOT FOR ACCEPTING OR REJECTING
THE DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

---

**CLASS 3I:  LANDFILL CLAIMS**

---

On May 14, 2023 (the "Petition Date"), KFI Wind-Down Corp. f/k/a Kidde-Fenwal, Inc. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") (the "Chapter 11 Case").

On [•], 2025, the Debtor filed the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Plan"),[2] which is described in greater detail in the *Disclosure Statement for the Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Disclosure Statement").

---

[1]    The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters are located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

---

**THE PLAN CONTAINS RELEASE, INJUNCTION AND EXCULPATORY PROVISIONS.  THESE PROVISIONS ARE SET FORTH IN APPENDIX A TO THIS MASTER BALLOT.  YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.**

---

On [•], 2025, the Bankruptcy Court entered an order [D.I. [•]] (the "Disclosure Statement Order") approving the Disclosure Statement as containing "adequate information" within the meaning ascribed to such term in section 1125 of the Bankruptcy Code and procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures").

The Plan, Disclosure Statement, Disclosure Statement Order, Solicitation Procedures and documents included in the Plan Supplement as of the Solicitation Mailing Deadline have been included in the package of materials containing the attached master ballot (the "Master Ballot") and can be accessed free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code.  For a description of the Causes of Action to be enjoined and the identities of the Entities that would be subject to this injunction, see Article IV.E.8 of the Disclosure Statement and Article 10.8 of the Plan.

A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of the Claims that submit votes in that Voting Class vote to accept the Plan.  Even if a Voting Class votes to reject the Plan, the Bankruptcy Court nonetheless may confirm the Plan if it finds the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

If the Plan is confirmed by the Bankruptcy Court, all Holders of Claims against and Interests in the Debtor (including those Holders who reject the Plan or abstain from voting on the Plan, and those Holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby.

The Debtor will file the Plan Supplement (as may be amended, modified or supplemented from time to time) with the Bankruptcy Court no later than **November 17, 2025**.

The documents included in the Plan Supplement as of the Solicitation Mailing Deadline are included in your Solicitation Package. Any further Plan Supplement, and any amendments or supplements to the foregoing, will only be served on:  (a) the U.S. Trustee, (b) the Notice Parties and (c) the 2002 List.   Once filed, a copy of the Plan Supplement will also be available for review and download on the Debtor's website maintained by the Solicitation Agent free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

**Unless such time is extended by the Debtor, in consultation with the Settling Parties, or the Bankruptcy Court, the Master Ballot must be properly completed, signed and**

submitted to the Solicitation Agent *so as to be actually received* no later than 5:00 p.m. (prevailing Eastern Time) on December 15, 2025 (the "Voting Deadline") in order for the votes on the Master Ballot to count. Unless you receive express, written permission from the Debtor to submit a Master Ballot via other means, the **ONLY** acceptable manner of submission of Master Ballots is either (a) by email to **KFIInquiries@stretto.com** or (b) by regular mail, overnight courier or hand delivery to KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, in either case so that it is actually received by the Solicitation Agent by or before the Voting Deadline (December 15, 2025 at 5:00 p.m. (prevailing Eastern Time)).

This Master Ballot is to be used by attorneys only for voting on behalf of Holders of Landfill Claims against the Debtor in Class 3I of the Plan. Please refer to the Plan for the specific definition of "Landfill Claim," which is copied below, as well as other relevant definitions.

*"Holder" means a Person holding a Claim against or an Interest in the Debtor.*

*"Landfill Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Landfill for damages relating to such Landfill.*

*"AFFF" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.*

*"AFFF Claim" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.*

*"PFAS" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.*

*"Sovereign State" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.*

*"Sovereign Tribe" means any American Indian or Alaskan Native Tribe, band, nation, pueblo, village or community, that the U.S. Secretary of the Interior acknowledges as an Indian Tribe, as provided in the Federally Recognized Tribe List Act of 1994, 25 U.S.C. § 5130, and as periodically listed by the U.S. Secretary of the Interior in the Federal Register pursuant to 25 U.S.C. § 5131; and any "Tribal Organization" as provided in the Indian Self-Determination and Education and Assistance Act of 1975, as amended, 25 U.S.C. § 5304(1).*

-3-

*"Landfill" means a discrete area of real property primarily used for the disposal of waste material as categorized pursuant to 40 CFR Part 239-272.*

*"Claim" has the meaning ascribed to such term under section 101(5) of the Bankruptcy Code.*

*[Remainder of page left intentionally blank]*

-4-

## <u>DOCUMENTS INCLUDED WITH THE MASTER BALLOT</u>

You should have received the following documents with the Master Ballot (collectively, the "<u>Solicitation Package</u>").  **Please note that some of the following documents may be included on a USB flash drive included as part of your Solicitation Package.**

- the Cover Letter;

- the Committee Letter;

- the Solicitation Procedures;

- a USB flash drive containing a copy of the Disclosure Statement (and exhibits thereto, including the Plan) and the documents contained in the Plan Supplement that have been filed prior to the Solicitation Mailing Deadline;

- the Disclosure Statement Order (without exhibits);

- a preaddressed, return envelope for completed Master Ballots;

- the Confirmation Hearing Notice; and

- any other materials ordered by the Court to be included as part of the Solicitation Package.

If you have questions about the Master Ballot, or if you did not receive a copy of the Plan or any related materials, please contact the Solicitation Agent at <u>KFIInquiries@stretto.com</u> or (866) 887-0488 (toll-free) or +1 (949) 889-0128 (international).  Information may also be obtained at <u>https://cases.stretto.com/kfi</u> by clicking the link for "Plan & Disclosure Statement" on the landing page.

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtor or any other party for payment purposes.

## INSTRUCTIONS FOR COMPLETING THE MASTER BALLOT

1.      The Master Ballot is provided to you, as an attorney for Holders of Landfill Claims against the Debtor, in connection with the solicitation of votes of Holders of Landfill Claims to accept or reject the Plan.  The Disclosure Statement and Plan are also being provided to you. PLEASE READ ALL DOCUMENTS CAREFULLY BEFORE COMPLETING THE MASTER BALLOT.

2.      The Master Ballot is to be used by attorneys who represent, **and are authorized to vote on behalf of**, one or more Holders of Landfill Claims.  You may be required to provide evidence of your authorization by Holders of Landfill Claims to vote to accept or reject the Plan.

3.      You are receiving this Master Ballot because you represent certain clients (collectively, your "Eligible Clients") who are Holders of Landfill Claims against the Debtor.  Your firm ("Firm") must certify to one of the options below with respect to each Eligible Client whose vote is included in your Firm's Master Ballot.

    (a)      "Option (a) Certification":  The Firm (or one or more of its attorneys) has communicated with the applicable Eligible Client (as defined below) and has been authorized, consistent with applicable law, by such Eligible Client to vote their Landfill Claim to accept or reject the Plan.  The Firm may not rely on negative notice for such authorization.

    (b)      "Option (b) Certification":  The Firm (or one or more of its attorneys) has the authority under a power of attorney to vote to accept or reject the Plan on behalf of the applicable Eligible Client and the Firm completed the vote on behalf of such Eligible Client on the Master Ballot in accordance with the authority granted to the Firm.

4.      To use the Master Ballot, you must be authorized to vote on behalf of your Eligible Clients under all applicable standards for such authorization.  With respect to any of the Eligible Clients on the Exhibit, if you are unable to certify that you have the authority to vote on the Plan on behalf of such Eligible Client, you must not vote on behalf of such Eligible Client.

5.      To be entitled to vote on the Plan, a Holder of a Landfill Claim in Class 3I (either directly or through his or her attorney or agent) must be able to certify that such Holder has a Landfill Claim in Class 3I.

6.      To have the votes reflected on the Master Ballot counted for purposes of voting on the Plan, the Master Ballot must be completed, signed, and submitted **so that it is actually received** no later than the Voting Deadline by the Solicitation Agent as set forth in these instructions below.    Master Ballots will be accepted either (i) by email to KFIInquiries@stretto.com or (ii) by regular mail, overnight courier or hand delivery to KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602 unless the party submitting a Master Ballot previously received permission in writing from the Debtor to submit such Master

Ballot via other means. If a Master Ballot is received after the Voting Deadline (as may be extended by the Debtor in writing, in consultation with the Settling Parties), it may not be counted. If the Master Ballot is not signed on the appropriate lines, the Master Ballot will not be valid or counted as having been cast.

7. The Master Ballot will not constitute or be deemed a Proof of Claim or Interest, an assertion of a Claim, the allowance of a Claim, or the acceptance or liquidation of any Landfill Claim for purposes of any distribution. None of the information set forth in the Master Ballot shall constitute an admission by the Debtor as to the extent, validity, or priority of the Claim voted herein, nor shall anything contained herein or information submitted in or with the Master Ballot be binding upon the Debtor or the Holder in any subsequent claims resolution process or other proceeding. The Master Ballot may not be used for any purposes other than to transmit votes on the Plan.

8. Multiple Master Ballots may be completed and delivered to the Solicitation Agent. Subject to the terms of the Solicitation Procedures, votes reflected by multiple Master Ballots submitted by the same Firm will be counted except to the extent that they are duplicative of other Master Ballots. If two or more such ballots submitted by the same Firm are inconsistent, the last valid Master Ballot received by the Solicitation Agent on or before the Voting Deadline will, to the extent of such inconsistency, govern unless otherwise ordered by the Bankruptcy Court. If more than one Master Ballot is submitted and the last such ballot supplements rather than supersedes earlier Master Ballot(s), please designate the subsequent Master Ballot(s) as "Supplemental" and clearly mark which of those votes reflected thereon are additional votes.

9. Notwithstanding the foregoing, if the Solicitation Agent receives two or more Master Ballots from separate Firms, each of whom purports to represent the same Holder of a Landfill Claim, it is the sole obligation and responsibility of the Firms to coordinate with each other to resolve any conflicting representations, and for the appropriate Firm to submit the vote on behalf of such Eligible Client together with an email to KFIInquiries@stretto.com copying all affected Firms confirming such resolution. The Solicitation Agent is entitled to rely upon such an email. If the Firms are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple consistent votes on account of such Eligible Client (*i.e.*, multiple votes to accept the Plan or multiple votes to reject the Plan), the Solicitation Agent is authorized to treat such votes as duplicative and count them only once for both numerosity and voting amount purposes. If, however, the Firms voting on account of such Eligible Client are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple inconsistent votes on account of such Eligible Client (*i.e.*, a vote to accept the Plan and a vote to reject the Plan), the Solicitation Agent shall contact the relevant Firms and request they coordinate with each other to resolve the conflicting representation. If after the submission of inconsistent votes but prior to the Voting Deadline, the applicable Firms timely reach a consensus regarding which vote should be counted, one of the applicable Firms may email KFIInquiries@stretto.com, copying all other affected Firms, and direct the Solicitation Agent as to which vote should be counted. The Solicitation Agent is entitled to rely upon such an email. If representation of the Holder of the

-7-

Claim is not resolved within 10 calendar days from the notice of the conflict as provided by the Solicitation Agent, such votes shall not be counted.

10.    Each Holder of a Landfill Claim that votes must vote his or her entire Claim either, to ACCEPT (vote in favor of), or to REJECT (vote against), the Plan.  A Holder of a Landfill Claim may not split his or her vote.  Accordingly, the votes of any Holder of a Landfill Claim who purports partially to accept and partially to reject the Plan will not be counted.

11.    If the Master Ballot is signed and timely sent to the Solicitation Agent, but does not designate either acceptance or rejection, or designates both acceptance and rejection, of the Plan for any particular claimant listed on the Exhibit, then the Solicitation Agent may, at its discretion, either contact the party submitting the Master Ballot in order to cure the defect on the Master Ballot or such Claim will not be counted either as an acceptance or rejection of the Plan.

12.    **To complete the Master Ballot properly, you must follow the procedures described below:**

Item 1 of the Master Ballot requires that you to indicate, for each Eligible Client on the Exhibit for which you are casting a vote, (a) the authority upon which votes on behalf of each such Eligible Client are being included (*i.e.*, Option (a) Certification or Option (b) Certification as described above) in the Master Ballot and (b) whether such Eligible Client accepts or rejects the Plan.

Item 2 of the Master Ballot contains certifications which are required for you to submit a vote on behalf of one or more Holders of Landfill Claims.  Please ensure that you have read and understood the certifications before signing the Master Ballot.  **If you are unable to make the certification as to the authority to vote on behalf of any Holder of a Landfill Claim you represent, you may not cast a vote on behalf of such Holder**.

Sign the Master Ballot.

Provide your name and mailing and email addresses where indicated.

Contact the Solicitation Agent if you need additional information or copies of any documents contained in the Solicitation Package or if you have any technical questions regarding composition and submission of your Master Ballot.

Submit the completed, executed Master Ballot *so as to be actually received* by the Solicitation Agent before the Voting Deadline either (i) by email to KFIInquiries@stretto.com or (ii) by regular mail, overnight courier or hand delivery to KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602.

-8-

**IF YOU HAVE ANY QUESTIONS REGARDING THE MASTER BALLOT,
BELIEVE YOU MAY HAVE RECEIVED AN INCORRECT BALLOT,
OR IF YOU DID NOT RECEIVE A COPY OF ANY OF
THE DOCUMENTS DESCRIBED IN THESE INSTRUCTIONS,
PLEASE CONTACT THE SOLICITATION AGENT AT:**

**TELEPHONE: (866) 887-0488 (TOLL-FREE)
OR +1 (949) 889-0128 (INTERNATIONAL)
E-MAIL: KFIINQUIRIES@STRETTO.COM
OR VISIT HTTPS://CASES.STRETTO.COM/KFI**

4911-0427-4185 v.5

# **PLAN BALLOT**

## MASTER BALLOT FOR ACCEPTING OR REJECTING THE DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

## CLASS 3I: LANDFILL CLAIMS

**PLEASE COMPLETE THE FOLLOWING:**

The Solicitation Procedures are included within the Solicitation Package that accompanies these instructions. The Solicitation Procedures contain important information regarding the balloting process. Please read the Solicitation Procedures before submitting this Master Ballot. If you have any technical questions or need to arrange for special delivery of your Master Ballot, please contact the Solicitation Agent.

**Please note that each Holder of a Landfill Claim who votes on the Plan must vote the entire amount of his or her Claim to accept or reject the Plan. All AFFF Claims have been temporarily allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance or any other purpose.** Any Holders of AFFF Claims who attempt partially to reject and partially to accept the Plan will not have their vote counted. If this Master Ballot is signed and timely received by the Solicitation Agent but does not designate either acceptance or rejection or designates both acceptance and rejection of the Plan for any particular claimant, such vote will not be counted either as an acceptance or rejection of the Plan.

**Item 1 – List of Holders of Landfill Claims Represented by the Firm.**

The exhibit to this Master Ballot (the "Exhibit") contains the names set forth on the Client List previously submitted by your Firm with the Solicitation Directive and is a list of each Holder of a Landfill Claim that you represent. You must indicate on the Exhibit next to each Eligible Client for which you cast a vote (a) the authority upon which votes on behalf of each such Eligible Client are being included (*i.e.*, Option (a) Certification or Option (b) Certification as described in Item 2) on the Master Ballot and (b) whether such Eligible Client accepts or rejects the Plan.

**Item 2 – Certifications, Acknowledgement, Signature, and Date.**

By signing this Master Ballot, the undersigned certifies under penalty of perjury that each of the following statements is true and correct:

- I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the

Solicitation Mailing Deadline, and a letter from the Committee and the MDL PEC Co-Leads urging claimants to vote to ACCEPT (vote in favor of) the Plan.

- I am authorized, by agreement or under applicable law, by each of the Holders of the Landfill Claims listed on the Exhibit for which I have voted to vote his, her, or its Landfill Claim to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan.

- For each client listed on the Exhibit and for whom the "Option (a) Certification" is indicated, I or my Firm communicated with each such Eligible Client and have been authorized, consistent with applicable law, by each such Eligible Client to vote each of their Landfill Claim to accept or reject the Plan.  I am not relying on negative notice to make such certification.

- For each Eligible Client listed on the Exhibit and for whom the "Option (b) Certification" is indicated, I or my Firm has the authority under a power of attorney to vote to accept or reject the Plan on behalf of each such Eligible Client and I have completed this Master Ballot in accordance with such authority.

- To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, each Holder of a Landfill Claim listed on the Exhibit who is casting a vote has, on such Holder's information and belief, a Landfill Claim against the Debtor.

Print or Type Name of Attorney: _____

Name of Firm: _____

Attorney Signature: _____

Street Address: _____

City, State, and ZIP Code: _____

Telephone Number: _____

E-mail Address of Attorney/Signatory: _____

Date: _____

The entire Exhibit accompanying this Master Ballot must be completed and submitted with this completed Master Ballot to the Solicitation Agent.

4911-0427-4185 v.5

**IF THIS MASTER BALLOT IS NOT *ACTUALLY RECEIVED BY*
THE SOLICITATION AGENT BY 5:00 P.M. (PREVAILING EASTERN TIME) ON
DECEMBER 15, 2025, YOUR VOTE MAY NOT BE COUNTED.**

4911-0427-4185 v.5

**Appendix A**

**Release, Injunction and Exculpation Provisions in the Plan[1]**

---

[1] The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.

## Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released and cancelled, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Liquidating Estate and their successors and assigns.  Any Holder of such mortgage, deed of trust, Lien, pledge or other security interest (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including and cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Liquidating Administrators to evidence such release, including the execution, delivery and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

## Releases by the Estate

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party, the Debtor, the Liquidating Estate and each Related Party of the Debtor and the Liquidating Estate shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, or any other Person or Governmental Unit asserting currently or in the future by, under, through, or on behalf of the Debtor or its Estate, and each of their respective successors or assigns, including the Settlement Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between one or both of the Debtor, on the one hand, and any Released Party, the Liquidating Estate, or any Related Party of the Debtor and the Liquidating Estate, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.3 of the Plan shall not be construed to release any post-Effective Date obligations under the RTX Waiver, the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, which specifically provides that such Estate Claims Settlement can be terminated, and the releases provided in the Plan or in the Estate Claims Settlement are void, if Carrier fails to make the installments of the Guaranteed Cash Payment when due and such failure is not timely cured within 30 days, at which time the Primary AFFF Settlement Trust is entitled to commence, prosecute, or continue all Estate Causes of Action against the Released Parties in any court of competent jurisdiction, and take such other actions as the Primary AFFF Settlement Trustee may determine in the exercise of their fiduciary duties.

### Releases by the Released Parties

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Released Parties and their successors or assigns of and from any and all Claims and Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, the Debtor's current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between any of the Debtor, the Liquidating Estate, the Settlement Trusts or the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case, on the one hand, and any Released Party, on the other hand, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any post-Effective Date obligations under the Plan Documents, the Confirmation Order, the 2020 Separation Agreement as supplemented by the RTX Waiver, or the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, or the right of any Person to enforce the same in accordance with

the terms thereof. Except with respect to the Claims and Causes of Action against the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case that are released and discharged under Article 10.4 of the Plan, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any obligations, rights, Causes of Action or Claims that Carrier Global Corporation or members of the Carrier Group (other than the Debtor), Otis Worldwide Corporation or members of the Otis Group, or RTX or members of the UTC Group may have against any Person under the 2020 Separation Agreement as supplemented by the RTX Waiver (including indemnification rights of RTX and other members of the "UTC Group" under the 2020 Separation Agreement).  For the avoidance of doubt, in the event that the Estate Claims Settlement Effective Date does not occur or the Estate Claims Settlement is terminated as contemplated by the last paragraph of Article 10.3 in the Plan, all releases being provided by the Released Parties under the Plan shall be void.

## Scope of Releases

Each Person providing releases under the Plan, including the Debtor, the Estate and the Settling Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts. Each Person providing releases under the Plan shall be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

## Exculpation

Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtor and its directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation.

As of the Effective Date, to the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in Article 10 of the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person for any act or omission in connection with, related to or arising out of this Chapter 11 Case, including (a) the operation of the Debtor's businesses during the pendency of this Chapter 11 Case; (b) the

administration and adjudication of Claims and Interests during this Chapter 11 Case; (c) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Plan, the Disclosure Statement, the Plan Supplement, or any related contract, instrument, release or other agreement or document created or entered into in connection with the Chapter 11 Case (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan and the distribution of property under the Plan); (d) any other transaction, agreement, event, or other occurrence related to the Chapter 11 Case taking place on or before the Effective Date, other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.

### Injunction

Except as otherwise expressly provided in the Plan or the Confirmation Order, the satisfaction and release pursuant to Article 10 of the Plan shall also act as a permanent injunction against any Person who has held, holds, or may in the future hold Claims against or Interests in the Debtor or any of its assets or properties based on any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are treated, released, settled, channeled, or exculpated pursuant to the terms of the Plan from taking any of the following actions on account of, or on the basis of, such Claims or Interests:  (a) commencing or continuing any action to collect, enforce, offset, recoup, or recover with respect to any Claims or Interests treated, released, settled, channeled, or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Claim or Interest against the Debtor, the Liquidating Estate, the Settlement Trusts, or its or their respective property; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of or in connection with or with respect to any such Claims or Interests, notwithstanding an indication of a Claim or Interest or otherwise that a Holder of such Claim or Interest asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise, against the Debtor, the Liquidating Estate, or the Settlement Trusts; or (e) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

### Channeling Injunction

Notwithstanding anything to the contrary in the Plan, to preserve and promote the settlements contemplated by and provided for in the Plan, including the Insurance Settlement Agreements, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under sections 105(a) and 1123(b) of the Bankruptcy Code, the sole recourse of any Holder of a Channeled AFFF Claim against the Debtor or a Released Party on account of such Channeled AFFF Claim shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to

**and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, and such Holder shall have no right whatsoever at any time to assert any such Channeled AFFF Claim or any Estate Cause of Action that is released under the Estate Claims Settlement against the Debtor or any Released Party or any property or interest in property of the Debtor or any Released Party.  For the avoidance of doubt, the sole recourse for any Channeled AFFF Claim covered by any Insurance Policy issued by a Settling Insurance Company shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents.  Accordingly, on and after the Effective Date, all Holders of AFFF Claims that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled AFFF Claim or any Estate Cause of Action against the Debtor or any Released Party shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from the Debtor or any Released Party with respect to any such Channeled AFFF Claim or Estate Cause of Action, other than from the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, including:**

**a)       commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;**

**b)       enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;**

**c)       creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;**

**d)       asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party; or**

**e)       taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents, or, with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, by the Sovereign State AFFF Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Channeled AFFF Claim.**

The Debtor, the Liquidating Estate and/or any Released Party, as applicable, may enforce the Channeling Injunction and/or the Releases contained in the Plan before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at their own cost and expense, and no such cost or expense incurred by a party other than the Primary AFFF Settlement Trust shall be reimbursed or indemnified by the Primary AFFF Settlement Trust under any circumstances.

<u>Insurance Company Injunction</u>

Subject to the provisos set forth in this Section, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim or cause of action (including any AFFF Claim or any Claim for or respecting any Primary AFFF Settlement Trust expense) against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Insurance Policy, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, statute or any other theory of law, equity or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim or cause of action, including:

a)    commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, demand, or cause of action against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such Claim, demand, or cause of action against any Insurance Company);

b)    enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

c)    creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such Claim or cause of action; and

d)    except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

*provided, however,* that (i) nothing in this Section shall impair or affect the rights of any member of the UTC Group, including RTX, or any member of the Otis Group (each as defined in the 2020 Separation Agreement), or any additional insured designated by RTX

or any member of the UTC Group, based upon, attributable to, arising out of, or in any way connected with an Insurance Policy, including to assert Claims or Causes of Action against any Insurance Company for covered losses and to receive proceeds in respect thereof; (ii) this injunction shall not impair in any way any actions brought by the Primary AFFF Settlement Trust against any Other Insurance Company; (iii) the Primary AFFF Settlement Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction with respect to any Other Insurance Company, in accordance with the Settlement Trust Documents, upon express written notice to such Other Insurance Company; and (iv) this injunction is not issued for the benefit of any Other Insurance Company, and no Other Insurance Company is a third-party beneficiary of this injunction.

Notwithstanding anything to the contrary in the Plan, this injunction shall not enjoin:

a)      the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of Holders of AFFF Claims to assert such Claims, as applicable, in accordance with the TDPs;

b)      the rights of the Primary AFFF Settlement Trust to prosecute any action based on or arising from Insurance Policies, except to the extent otherwise released;

c)      the rights of the Primary AFFF Settlement Trust to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company based on or arising from the Insurance Policies;

d)      any actions of the Contributing Parties in fulfilling their obligations under the Estate Claims Settlement in consultation and coordination with the Primary AFFF Settlement Trust;

e)      the rights of any Insurance Company to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company; or

f)      the Claims for reinsurance under reinsurance contracts or Claims under retrocessional contracts among the Settling Insurance Companies and any Other Insurance Company.

## Prohibition on Actions Against Buyer

Subject to the Sale Order and the Acquisition Agreement, Buyer, in its capacity as such, shall not have any liability for any AFFF Claims against the Debtor arising prior to the closing of the Sale.  Except as expressly otherwise set forth in the Sale Order, all persons and entities hereby are forever barred, estopped and permanently enjoined from asserting against Buyer, its Affiliates, its successors or assigns, its property or the Transferred Assets, such persons' or entities' AFFF Claims that have been or could have been asserted against the Debtor arising prior to the closing of the Sale.  For the avoidance of doubt, the foregoing shall

not release Buyer from, or enjoin any actions against Buyer for, any Assumed Liability or any other liability incurred by Buyer on account of its operations following the closing of the Sale.

## Limitations on Exculpations and Releases

Notwithstanding anything to the contrary in the Plan, none of the releases or exculpations set forth in the Plan shall operate to waive or release any obligation or Causes of Action of any Person:  (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations or (b) expressly set forth in and preserved by the Plan, the Plan Supplement, Plan Documents or related documents.

## Release Dispute

In the event of a Release Dispute, a Released Party may, at its sole cost and expense, file a motion with the Bankruptcy Court seeking a determination as to whether an AFFF Claimant's Cause of Action was settled and released pursuant to the Plan, and upon such motion, the Bankruptcy Court shall make such determination and, if appropriate, enjoin the prosecution of such Cause of Action as having been settled and released under the Plan.

## Relevant Definitions

"*2020 Separation Agreement*" means that certain Separation and Distribution Agreement, dated as of April 2, 2020, by and among United Technologies Corporation, Carrier Global Corporation, and Otis Worldwide Corporation.

"*Administrative Claim*" means an Allowed Claim for costs and expenses of administration of the Chapter 11 Case pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate; (b) Allowed Professional Compensation Claims; (c) Allowed Fee Examiner Compensation Claims; and (d) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

"*AFFF*" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

"*AFFF Claim*" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.

"*Assumed Liability*" shall have the meaning set forth in the Acquisition Agreement.

"*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other Claims, Causes of Action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties-in-interest under the Bankruptcy Code or applicable non-

bankruptcy law, including claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) was commenced prior to the Effective Date.

"*Buyer*" means Pacific Erin Opco, LLC, as the purchaser of substantially all of the Debtor's assets pursuant to the Acquisition Agreement and the Sale Order.

"*Carrier*" means Carrier Global Corporation, a Delaware corporation, and its non-Debtor affiliates and Related Parties.

"*Causes of Action*" means any current or future actions, Claims, cross-claims, third-party claims, causes of action, controversies, disputes, demands, rights, liens, indemnities, contributions, guaranties, suits, obligations, liabilities, losses, debts, fees or expenses, damages, interest, judgments, costs, accounts, defenses, remedies, offsets, powers, privileges, proceedings, licenses, and franchises of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, choate or inchoate, capable of being asserted directly or derivatively (including any alter ego theories), including any Claims for recovery of attorneys' fees, turnover, fraud, gross negligence, or willful misconduct, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws, consumer protection laws, environmental laws, or nuisance or trespass theories).  Causes of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to or otherwise contest Claims or Interests, (c) any claim pursuant to section 362 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Actions.

"*Channeled AFFF Claims*" means all AFFF Claims against the Debtor or the Estate channeled to the Primary AFFF Settlement Trust under the Plan and Settlement Trust Documents.  For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

"*Committee*" means the official committee of unsecured creditors of the Debtor appointed by the U.S. Trustee in the Chapter 11 Case under section 1102(a) of the Bankruptcy Code pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 83] and any amendments thereto.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Settling Parties.

"*Consummation*" means the occurrence of the Effective Date.

"*Debtor*" means Kidde-Fenwal, Inc., the debtor and debtor in possession in the Chapter 11 Case, now known as KFI Wind-Down Corp.  In 2007, KFFI (formerly known as National Foam, Inc.) merged into Kidde-Fenwal, Inc., with Kidde-Fenwal, Inc. as the surviving entity.  Pursuant to this merger, KFFI's liabilities were assumed by, and KFFI's causes of action were transferred to, Kidde-Fenwal, Inc. directly or indirectly by merger or other agreement.  The term "Debtor" includes Kidde-Fenwal, Inc. as successor by merger or other agreement by which Kidde-Fenwal, Inc. obtained or assumed the liabilities and Causes of Action of any Person.

"*Effective Date*" means the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date set forth in the Plan shall have been satisfied or waived and on which a notice indicating the Effective Date has been filed on the docket of the Chapter 11 Case.

"*Estate Causes of Action*" means Causes of Action owned or held by either the Debtor or its Estate, or capable of being asserted (currently, or in the future) by any Person or Governmental Unit on behalf of, under or through, either the Debtor or its Estate, and each of their respective successors or assigns, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions, that may be commenced by a representative of the Estate under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise.  Without limiting the foregoing, Estate Causes of Action shall include:  (a) Causes of Action that on or after the Petition Date may be exclusively asserted by or on behalf of the Debtor or its Estate under applicable law, or that prior to the Petition Date could have been asserted by the Debtor on its own behalf under applicable law, including Causes of Action based on (i) the doctrine of successor liability that seek to impose the Debtor's (including KFFI's or National Foam, Inc.'s) liabilities on an alleged successor, whether based on a contractual assumption of liability, consolidation or de facto merger, acquisition of the Debtor's product line, fraud, domination, direction of the Debtor's affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, or (ii) the doctrines of alter ego or veil piercing involving alter egos of the Debtor or the piercing of the Debtor's (including KFFI's or National Foam, Inc.'s) corporate veil, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form; (b) Causes of Action or theories for recovery or remedies that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is generally common to creditors of the Debtor and can be asserted by the Debtor under applicable law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor.  Subsections (a), (b) and (c) immediately above expressly encompass any Causes of Action based on:  (i) the alleged assumption of the Debtor's (including KFFI's or

National Foam, Inc.'s) liabilities (but not a non-Debtor's liabilities) by Kidde plc (n/k/a Kidde Limited) pursuant to the 2000 Demerger Agreement, or any alleged subsequent assumption of such liabilities of the Debtor from Kidde plc by any other Released Party; or (ii) the alleged assumption of the Debtor's liabilities (but not a non-Debtor's liabilities), including any liabilities resulting from acts or omissions of National Foam, Inc. or KFFI, by a Released Party pursuant to the 2020 Separation Agreement.  For the avoidance of doubt, Estate Causes of Action shall not include any Independent AFFF Causes of Action or any Sovereign State Retained Causes of Action or Insurance Actions against any Released Party based on acts or omissions occurring after entry into the Plan Support Agreement with respect to rights under the 2020 Separation Agreement or the RTX Waiver to access and make Claims under any Insurance Policy or otherwise obtain the benefit of the Insurance Assignment.

"*Estate Claims Settlement*" means the settlement, including the release of all Estate Causes of Action against the Released Parties, pursuant to the Estate Claims Settlement Agreement.

"*Independent AFFF Cause of Action*" means any Cause of Action that could be asserted by an AFFF Claimant against a Non-Debtor Party based on the Non-Debtor Party's own conduct and breach of duty (*i.e.*, duty owed to the AFFF Claimant and not owed to the Debtor), including (a) Causes of Action arising from such acts or omissions of such Non-Debtor Party, and (b) Causes of Action based on allegations that a Non-Debtor Party is responsible for such conduct under theories of liability or recovery or remedies that could have been asserted by an AFFF Claimant on its own behalf under applicable state or federal law in respect of such Causes of Action prior to the Petition Date based on (i) the doctrine of successor liability involving a Non-Debtor Party that is alleged to be a successor to another Non-Debtor Party with respect to liabilities not directly or indirectly assumed from the Debtor, whether based on a contractual assumption of liability (including under the 2020 Separation Agreement), consolidation or de facto merger, acquisition of product line, fraud, domination, direction of affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, (ii) the doctrines of alter ego or veil piercing involving alter egos of a Non-Debtor Party, or piercing the corporate veil between Non-Debtor Parties, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form, or (iii) alleged derivative or vicarious liability of a Non-Debtor Party for liabilities of another Non-Debtor Party not directly or indirectly assumed from the Debtor; *provided* that, if any Cause of Action falls within the definition of Estate Cause of Action or Sovereign State Retained Cause of Action, it is not an Independent AFFF Cause of Action.
"*Insurance Assignment*" means the transfer by the Debtor and Carrier to the Primary AFFF Settlement Trust of certain rights in connection with the Insurance Policies as set forth in Article 5 of the Plan.

"*Insurance Policy/ies*" means: (i) any insurance policies listed on <u>Schedule 1</u> to the Plan, (ii) to the extent not listed on Schedule 1, any "general liability" insurance (which, for the avoidance of doubt, shall exclude director & officer, automobile, or workers' compensation insurance) contract, binder, certificate, insurance policy, or reinsurance policy, whether currently known or unknown, discovered after the Effective Date, in effect at any time on or before the Petition Date naming the Debtor, the Contributing Parties, or any of their predecessors, subsidiaries, or past or present affiliates as an insured (whether as the primary or additional insured) or that provides or may provide coverage to Carrier or the Debtor for AFFF Claims, (iii) "Aviation" policies to

which Carrier or the Debtor has rights as listed in Schedule 2 to the Plan solely to the extent of Insurance Policy Rights applicable to or arising from AFFF Claims and (iv) any other subsequently discovered insurance policies of the same types as listed in Schedules 1 and 2 to the Plan to the extent that Carrier or the Debtor have rights under such policies (whether or not such policies are specifically titled as "General Liability" or "Aviation" policies).  For the avoidance of doubt, "Insurance Policies" shall not include any D&O Policies, automobile policies or worker's compensation insurance.

"*Insurance Policy Rights*" means any and all rights subject to the Insurance Assignment.

"*KFFI*" means Kidde Fire Fighting, Inc. (formerly known as National Foam, Inc.).

"*Liquidating Estate Claims*" means Administrative Claims, Priority Tax Claims, Other Priority Claims and Secured Claims.

"*New National Foam*" means, collectively, National Foam, Inc. f/k/a Eurostar US Tradeco, Inc., Angus Fire Ltd. f/k/a Eurostar Tradeco Limited, Angus International Safety Group Limited f/k/a/ Eurostar Holdco Limited, and each of their Related Parties.

"*New National Foam Release*" means a settlement between the Debtor and New National Foam pursuant to which (a) Estate Causes of Action against New National Foam are resolved for value reasonably acceptable to the Settling Parties and (b) New National Foam agrees to absolutely, unconditionally, and irrevocably release and discharge the Debtor and each Released Party from any and all Claims and Causes of Action, whether known or unknown, based on or relating to, or in any manner arising from that certain Share and Business Sale Agreement, dated as of June 28, 2013, or any other occurrence taking place on or before the Effective Date, including Proof of Claim No. 225, and otherwise in form and substance reasonably acceptable to the Settling Parties.

"*Non-Debtor Party*" means any Person other than the Debtor.  For the avoidance of doubt, the term "*Non-Debtor Party*" does not include KFFI or National Foam, Inc.

"*Other Insurance Company*" means an Insurance Company that is not a Settling Insurance Company.

"*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"*Person*" means a "person" or "entity" as defined in the Bankruptcy Code.

"*Petition Date*" means May 14, 2023, the date on which the Debtor commenced the Chapter 11 Case.

"*PFAS*" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.

"*Primary AFFF Settlement Trust*" means the settlement trust organized under the laws of the state of Delaware and established under the Plan and the Settlement Trust Documents, which

shall (i) have the powers, duties and obligations set forth in the Plan and the Settlement Trust Documents, (ii) assume all liability of the Debtor and the Estate for, and administer, all Channeled AFFF Claims and (iii) be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code.

"*Primary AFFF Settlement Trust Agreement*" means the Settlement Trust Agreement governing the Primary AFFF Settlement Trust, dated as of the Effective Date, as the same may be amended or modified from time to time in accordance with the terms thereof.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Released Party*" means (i) Carrier, (ii) RTX, and (iii) each of their Related Parties in their capacities as such. Released Parties shall not include DuPont, 3M, or their current or former affiliates and Related Parties. If a Person is a current or former affiliate or Related Party of DuPont or 3M, and such Person is also a current or former affiliate or Related Party of Carrier or RTX, then such Person shall not be a Released Party. For the avoidance of doubt, New National Foam shall not be a Released Party unless the New National Foam Release is provided by the Effective Date.

"*Related Party*" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, and current and former affiliates and subsidiaries, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, all only in their capacity as a representative of such Person, and (c) respective heirs, executors, estates, and nominees, in each case solely in its capacity as such.

"*RTX Waiver*" shall have the meaning set forth in Article 5.5.11(b) of the Plan.

"*Sale Order*" means the *Order (I) Approving the Sale of All or Substantially All of the Debtor's Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving Debtor's Entry, and Performance Under the Contribution Agreement, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Granting Related Relief*, entered by the Bankruptcy Court on April 2, 2024 [D.I. 1058].

"*Settlement Trust Agreements*" means, collectively, (i) the Primary AFFF Settlement Trust Agreement, (ii) the Sovereign State AFFF Settlement Trust Agreement and (iii) the GUC Liquidating Trust Agreement. To the extent that any provision of a Settlement Trust Agreement impacts the rights of Carrier, such provision shall not be included in such Settlement Trust Agreement unless reasonably acceptable to Carrier.

"*Settlement Trust Documents*" means, collectively, (a) the Settlement Trust Agreements, (b) the TDPs, (c) the Confirmation Order, and (d) any other agreements, instruments, and documents governing the establishment, administration, and operation of the Settlement Trusts.

"*Settlement Trusts*" means the Primary AFFF Settlement Trust, Sovereign State AFFF Settlement Trust and GUC Liquidating Trust.

"*Settling Insurance Company*" means any Insurance Company that contributes funds, proceeds, or other consideration to or for the benefit of the Primary AFFF Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order.  No Insurance Company shall be considered a Settling Insurance Company without the Committee's prior written consent.

"*Sovereign State*" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.

"*Sovereign State AFFF Settlement Trust*" means the trust established under the Plan and the Settlement Trust Documents to administer all Sovereign State Claims against the Debtor.  The Sovereign State AFFF Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code and shall have the powers, duties and obligations set forth in the Settlement Trust Documents.

"*Sovereign State Retained Cause of Action*" means any Claim or Cause of Action asserted, or which may be asserted, by a Sovereign State against a Contributing Party that (1) is not an Estate Cause of Action and (2) arises from a statute, regulation, or common law that creates a theory of liability, by which a Sovereign State could recover damages or penalties, or obtain equitable or injunctive relief, against a Contributing Party.  For the avoidance of doubt, a Sovereign State may assert a Sovereign State Retained Cause of Action irrespective of whether such Sovereign State Retained Cause of Action could also be considered an Independent AFFF Cause of Action.

"*TDPs*" or "Trust Distribution Procedures" means the Trust Distribution Procedures for the Settlement Trusts, as the same may be amended or modified from time to time in accordance with the terms thereof, that will govern the claims submission, adjudication, and distribution processes for the Settlement Trusts in a manner that is fair and equitable to Holders of Allowed Channeled AFFF Claims.  To the extent that any provision of the TDPs impacts the rights of Carrier, such provision shall not be included unless reasonably acceptable to Carrier.

"*Transferred Assets*" shall have the meaning set forth in the Acquisition Agreement.

**EXHIBIT**

**EXHIBIT**

| Creditor Name | Type of Authority for Vote (A OR B) | | Vote to ACCEPT (in Favor of the Plan) OR Vote to REJECT (Against the Plan) | |
|---|---|---|---|---|
| | A | B | ACCEPT | REJECT |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |

In re Kidde-Fenwal, Inc.
Case Number: 23-10638 (LSS)

Master Ballot

**<u>EXHIBIT 2U</u>**

**AFFF Master Ballot for Class 3J: Stormwater Claims**

## **KFI WIND-DOWN CORP. PLAN BALLOT**

---

**THIS BALLOT IS FOR HOLDERS OF CLAIMS AGAINST KFI WIND-DOWN CORP. (F/K/A KIDDE-FENWAL, INC.) ARISING FROM ITS AFFF OR AFFF-CONTAINING PRODUCTS.**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |

### MASTER BALLOT FOR ACCEPTING OR REJECTING
### THE DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
### UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

---

### CLASS 3J:  STORMWATER CLAIMS

---

On May 14, 2023 (the "Petition Date"), KFI Wind-Down Corp. f/k/a Kidde-Fenwal, Inc. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") (the "Chapter 11 Case").

On [•], 2025, the Debtor filed the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Plan"),[2] which is described in greater detail in the *Disclosure Statement for the Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Disclosure Statement").

---

[1]   The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters are located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

> **THE PLAN CONTAINS RELEASE, INJUNCTION AND EXCULPATORY PROVISIONS.  THESE PROVISIONS ARE SET FORTH IN APPENDIX A TO THIS MASTER BALLOT.  YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.**

On [•], 2025, the Bankruptcy Court entered an order [D.I. [•]] (the "Disclosure Statement Order") approving the Disclosure Statement as containing "adequate information" within the meaning ascribed to such term in section 1125 of the Bankruptcy Code and procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures").

The Plan, Disclosure Statement, Disclosure Statement Order, Solicitation Procedures and documents included in the Plan Supplement as of the Solicitation Mailing Deadline have been included in the package of materials containing the attached master ballot (the "Master Ballot") and can be accessed free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code.  For a description of the Causes of Action to be enjoined and the identities of the Persons that would be subject to this injunction, see Article IV.E.8 of the Disclosure Statement and Article 10.8 of the Plan.

A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of the Claims that submit votes in that Voting Class vote to accept the Plan.  Even if a Voting Class votes to reject the Plan, the Bankruptcy Court nonetheless may confirm the Plan if it finds the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

If the Plan is confirmed by the Bankruptcy Court, all Holders of Claims against and Interests in the Debtor (including those Holders who reject the Plan or abstain from voting on the Plan, and those Holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby.

The Debtor will file the Plan Supplement (as may be amended, modified or supplemented from time to time) with the Bankruptcy Court no later than **November 17, 2025**.

The documents included in the Plan Supplement as of the Solicitation Mailing Deadline are included in your Solicitation Package. Any further Plan Supplement, and any amendments or supplements to the foregoing, will only be served on:  (a) the U.S. Trustee, (b) the Notice Parties and (c) the 2002 List.   Once filed, a copy of the Plan Supplement will also be available for review and download on the Debtor's website maintained by the Solicitation Agent free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

**Unless such time is extended by the Debtor, in consultation with the Settling Parties, or the Bankruptcy Court, the Master Ballot must be properly completed, signed and**

submitted to the Solicitation Agent *so as to be actually received* no later than 5:00 p.m. (prevailing Eastern Time) on December 15, 2025 (the "<u>Voting Deadline</u>") in order for the votes on the Master Ballot to count.  Unless you receive express, written permission from the Debtor to submit a Master Ballot via other means, the <u>ONLY</u> acceptable manner of submission of Master Ballots is either (a) by email to <u>KFIInquiries@stretto.com</u> or (b) by regular mail, overnight courier or hand delivery to KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, in either case so that it is <u>actually received</u> by the Solicitation Agent by or before the Voting Deadline (December 15, 2025 at 5:00 p.m. (prevailing Eastern Time)).

This Master Ballot is to be used by attorneys only for voting on behalf of Holders of Stormwater Claims against the Debtor in Class 3J of the Plan.  Please refer to the Plan for the specific definition of "Stormwater Claim," which is copied below, as well as other relevant definitions.

> *"Holder" means a Person holding a Claim against or an Interest in the Debtor.*
>
> *"Stormwater Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Stormwater System for damages relating to such Stormwater System.*
>
> *"AFFF" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.*
>
> *"AFFF Claim" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.*
>
> *"PFAS" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.*
>
> *"Sovereign State" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.*
>
> *"Sovereign Tribe" means any American Indian or Alaskan Native Tribe, band, nation, pueblo, village or community, that the U.S. Secretary of the Interior acknowledges as an Indian Tribe, as provided in the Federally Recognized Tribe List Act of 1994, 25 U.S.C. § 5130, and as periodically listed by the U.S. Secretary of the Interior in the Federal Register pursuant to 25 U.S.C. § 5131; and any "Tribal Organization" as provided in the Indian Self-Determination and Education and Assistance Act of 1975, as amended, 25 U.S.C. § 5304(1).*

-3-

*"Stormwater System"* **means a system of diverting excess precipitation from rain and snowmelt events and dry-weather runoff over land or impervious surfaces without percolating into the ground from real property, municipalities, construction activities, and industrial activities and permitted as such pursuant to the National Pollutant Discharge Elimination System and/or by a state or municipal permitting authority.**

*"Claim"* **has the meaning ascribed to such term under section 101(5) of the Bankruptcy Code.**

*[Remainder of page left intentionally blank]*

-4-

## <u>DOCUMENTS INCLUDED WITH THE MASTER BALLOT</u>

You should have received the following documents with the Master Ballot (collectively, the "<u>Solicitation Package</u>").  **Please note that some of the following documents may be included on a USB flash drive included as part of your Solicitation Package.**

- the Cover Letter;

- the Committee Letter;

- the Solicitation Procedures;

- a USB flash drive containing a copy of the Disclosure Statement (and exhibits thereto, including the Plan) and the documents contained in the Plan Supplement that have been filed prior to the Solicitation Mailing Deadline;

- the Disclosure Statement Order (without exhibits);

- a preaddressed, return envelope for completed Master Ballots;

- the Confirmation Hearing Notice; and

- any other materials ordered by the Court to be included as part of the Solicitation Package.

If you have questions about the Master Ballot, or if you did not receive a copy of the Plan or any related materials, please contact the Solicitation Agent at <u>KFIInquiries@stretto.com</u> or (866) 887-0488 (toll-free) or +1 (949) 889-0128 (international).  Information may also be obtained at <u>https://cases.stretto.com/kfi</u> by clicking the link for "Plan & Disclosure Statement" on the landing page.

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtor or any other party for payment purposes.

-5-

## <u>INSTRUCTIONS FOR COMPLETING THE MASTER BALLOT</u>

1.      The Master Ballot is provided to you, as an attorney for Holders of Stormwater Claims against the Debtor, in connection with the solicitation of votes of Holders of Stormwater Claims to accept or reject the Plan.  The Disclosure Statement and Plan are also being provided to you.  PLEASE READ ALL DOCUMENTS CAREFULLY BEFORE COMPLETING THE MASTER BALLOT.

2.      The Master Ballot is to be used by attorneys who represent, **and are authorized to vote on behalf of**, one or more Holders of Stormwater Claims.  You may be required to provide evidence of your authorization by Holders of Stormwater Claims to vote to accept or reject the Plan.

3.      You are receiving this Master Ballot because you represent certain clients (collectively, your "<u>Eligible Clients</u>") who are Holders of Stormwater Claims against the Debtor.  Your firm ("<u>Firm</u>") must certify to one of the options below with respect to each Eligible Client whose vote is included in your Firm's Master Ballot.

      (a)      "<u>Option (a) Certification</u>":  The Firm (or one or more of its attorneys) has communicated with the applicable Eligible Client (as defined below) and has been authorized, consistent with applicable law, by such Eligible Client to vote their Stormwater Claim to accept or reject the Plan.  The Firm may not rely on negative notice for such authorization.

      (b)      "<u>Option (b) Certification</u>":  The Firm (or one or more of its attorneys) has the authority under a power of attorney to vote to accept or reject the Plan on behalf of the applicable Eligible Client and the Firm completed the vote on behalf of such Eligible Client on the Master Ballot in accordance with the authority granted to the Firm.

4.      To use the Master Ballot, you must be authorized to vote on behalf of your Eligible Clients under all applicable standards for such authorization.  With respect to any of the Eligible Clients on the Exhibit, if you are unable to certify that you have the authority to vote on the Plan on behalf of such Eligible Client, you must not vote on behalf of such Eligible Client.

5.      To be entitled to vote on the Plan, a Holder of a Stormwater Claim in Class 3J (either directly or through his or her attorney or agent) must be able to certify that such Holder has a Stormwater Claim in Class 3J.

6.      To have the votes reflected on the Master Ballot counted for purposes of voting on the Plan, the Master Ballot must be completed, signed, and submitted **so that it is actually received** no later than the Voting Deadline by the Solicitation Agent as set forth in these instructions below.  Master Ballots will be accepted either (i) by email to KFIInquiries@stretto.com or (ii) by regular mail, overnight courier or hand delivery to KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602 unless the party submitting a

-6-

Master Ballot previously received permission in writing from the Debtor to submit such Master Ballot via other means. If a Master Ballot is received after the Voting Deadline (as may be extended by the Debtor in writing, in consultation with the Settling Parties), it may not be counted. If the Master Ballot is not signed on the appropriate lines, the Master Ballot will not be valid or counted as having been cast.

7.      The Master Ballot will not constitute or be deemed a Proof of Claim or Interest, an assertion of a Claim, the allowance of a Claim, or the acceptance or liquidation of any Stormwater Claim for purposes of any distribution. None of the information set forth in the Master Ballot shall constitute an admission by the Debtor as to the extent, validity, or priority of the Claim voted herein, nor shall anything contained herein or information submitted in or with the Master Ballot be binding upon the Debtor or the Holder in any subsequent claims resolution process or other proceeding. The Master Ballot may not be used for any purposes other than to transmit votes on the Plan.

8.      Multiple Master Ballots may be completed and delivered to the Solicitation Agent. Subject to the terms of the Solicitation Procedures, votes reflected by multiple Master Ballots submitted by the same Firm will be counted except to the extent that they are duplicative of other Master Ballots. If two or more such ballots submitted by the same Firm are inconsistent, the last valid Master Ballot received by the Solicitation Agent on or before the Voting Deadline will, to the extent of such inconsistency, govern unless otherwise ordered by the Bankruptcy Court. If more than one Master Ballot is submitted and the last such ballot supplements rather than supersedes earlier Master Ballot(s), please designate the subsequent Master Ballot(s) as "Supplemental" and clearly mark which of those votes reflected thereon are additional votes.

9.      Notwithstanding the foregoing, if the Solicitation Agent receives two or more Master Ballots from separate Firms, each of whom purports to represent the same Holder of a Stormwater Claim, it is the sole obligation and responsibility of the Firms to coordinate with each other to resolve any conflicting representations, and for the appropriate Firm to submit the vote on behalf of such Eligible Client together with an email to KFIInquiries@stretto.com copying all affected Firms confirming such resolution. The Solicitation Agent is entitled to rely upon such an email. If the Firms are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple consistent votes on account of such Eligible Client (*i.e.*, multiple votes to accept the Plan or multiple votes to reject the Plan), the Solicitation Agent is authorized to treat such votes as duplicative and count them only once for both numerosity and voting amount purposes. If, however, the Firms voting on account of such Eligible Client are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple inconsistent votes on account of such Eligible Client (*i.e.*, a vote to accept the Plan and a vote to reject the Plan), the Solicitation Agent shall contact the relevant Firms and request they coordinate with each other to resolve the conflicting representation. If after the submission of inconsistent votes but prior to the Voting Deadline, the applicable Firms timely reach a consensus regarding which vote should be counted, one of the applicable Firms may email KFIInquiries@stretto.com, copying all other affected Firms, and direct the Solicitation Agent as to which vote should be counted. The Solicitation Agent is entitled to rely upon such an email. If representation of the Holder of the

Claim is not resolved within 10 calendar days from the notice of the conflict as provided by the Solicitation Agent, such votes shall not be counted.

10.    Each Holder of a Stormwater Claim that votes must vote his or her entire Claim either, to ACCEPT (vote in favor of), or to REJECT (vote against), the Plan.  A Holder of a Stormwater Claim may not split his or her vote.  Accordingly, the votes of any Holder of a Stormwater Claim who purports partially to accept and partially to reject the Plan will not be counted.

11.    If the Master Ballot is signed and timely sent to the Solicitation Agent, but does not designate either acceptance or rejection, or designates both acceptance and rejection, of the Plan for any particular claimant listed on the Exhibit, then the Solicitation Agent may, at its discretion, either contact the party submitting the Master Ballot in order to cure the defect on the Master Ballot or such Claim will not be counted either as an acceptance or rejection of the Plan.

12.    **To complete the Master Ballot properly, you must follow the procedures described below:**

Item 1 of the Master Ballot requires that you to indicate, for each Eligible Client on the Exhibit for which you are casting a vote, (a) the authority upon which votes on behalf of each such Eligible Client are being included (*i.e.*, Option (a) Certification or Option (b) Certification as described above) in the Master Ballot and (b) whether such Eligible Client accepts or rejects the Plan.

Item 2 of the Master Ballot contains certifications which are required for you to submit a vote on behalf of one or more Holders of Stormwater Claims.  Please ensure that you have read and understood the certifications before signing the Master Ballot.  **If you are unable to make the certification as to the authority to vote on behalf of any Holder of a Stormwater Claim you represent, you may not cast a vote on behalf of such Holder**.

Sign the Master Ballot.

Provide your name and mailing and email addresses where indicated.

Contact the Solicitation Agent if you need additional information or copies of any documents contained in the Solicitation Package or if you have any technical questions regarding composition and submission of your Master Ballot.

Submit the completed, executed Master Ballot *so as to be actually received* by the Solicitation Agent before the Voting Deadline either (i) by email to KFIInquiries@stretto.com or (ii) by regular mail, overnight courier or hand delivery to KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602.

-8-

**IF YOU HAVE ANY QUESTIONS REGARDING THE MASTER BALLOT,
BELIEVE YOU MAY HAVE RECEIVED AN INCORRECT BALLOT,
OR IF YOU DID NOT RECEIVE A COPY OF ANY OF
THE DOCUMENTS DESCRIBED IN THESE INSTRUCTIONS,
PLEASE CONTACT THE SOLICITATION AGENT AT:**

**TELEPHONE: (866) 887-0488 (TOLL-FREE)
OR +1 (949) 889-0128 (INTERNATIONAL)
E-MAIL: KFIINQUIRIES@STRETTO.COM
OR VISIT HTTPS://CASES.STRETTO.COM/KFI**

4914-3981-8505 v.5

# **PLAN BALLOT**

## MASTER BALLOT FOR ACCEPTING OR REJECTING THE DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

## CLASS 3J: STORMWATER CLAIMS

**PLEASE COMPLETE THE FOLLOWING:**

The Solicitation Procedures are included within the Solicitation Package that accompanies these instructions. The Solicitation Procedures contain important information regarding the balloting process. Please read the Solicitation Procedures before submitting this Master Ballot. If you have any technical questions or need to arrange for special delivery of your Master Ballot, please contact the Solicitation Agent.

**Please note that each Holder of a Stormwater Claim who votes on the Plan must vote the entire amount of his or her Claim to accept or reject the Plan. All AFFF Claims have been temporarily allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance or any other purpose.** Any Holders of AFFF Claims who attempt partially to reject and partially to accept the Plan will not have their vote counted. If this Master Ballot is signed and timely received by the Solicitation Agent but does not designate either acceptance or rejection or designates both acceptance and rejection of the Plan for any particular claimant, such vote will not be counted either as an acceptance or rejection of the Plan.

**Item 1 – List of Holders of Stormwater Claims Represented by the Firm.**

The exhibit to this Master Ballot (the "Exhibit") contains the names set forth on the Client List previously submitted by your Firm with the Solicitation Directive and is a list of each Holder of a Stormwater Claim that you represent. You must indicate on the Exhibit next to each Eligible Client for which you cast a vote (a) the authority upon which votes on behalf of each such Eligible Client are being included (*i.e.*, Option (a) Certification or Option (b) Certification as described in Item 2) on the Master Ballot and (b) whether such Eligible Client accepts or rejects the Plan.

**Item 2 – Certifications, Acknowledgement, Signature, and Date.**

By signing this Master Ballot, the undersigned certifies under penalty of perjury that each of the following statements is true and correct:

- I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the

Solicitation Mailing Deadline, and a letter from the Committee and the MDL PEC Co-Leads urging claimants to vote to ACCEPT (vote in favor of) the Plan.

- I am authorized, by agreement or under applicable law, by each of the Holders of the Stormwater Claims listed on the Exhibit for which I have voted to vote his, her, or its Stormwater Claim to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan.

- For each client listed on the Exhibit and for whom the "Option (a) Certification" is indicated, I or my Firm communicated with each such Eligible Client and have been authorized, consistent with applicable law, by each such Eligible Client to vote each of their Stormwater Claim to accept or reject the Plan. I am not relying on negative notice to make such certification.

- For each Eligible Client listed on the Exhibit and for whom the "Option (b) Certification" is indicated, I or my Firm has the authority under a power of attorney to vote to accept or reject the Plan on behalf of each such Eligible Client and I have completed this Master Ballot in accordance with such authority.

- To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, each Holder of a Stormwater Claim listed on the Exhibit who is casting a vote has, on such Holder's information and belief, a Stormwater Claim against the Debtor.

Print or Type Name of Attorney: _____

Name of Firm: _____

Attorney Signature: _____

Street Address: _____

City, State, and ZIP Code: _____

Telephone Number: _____

E-mail Address of Attorney/Signatory: _____

Date: _____

The entire Exhibit accompanying this Master Ballot must be completed and submitted with this completed Master Ballot to the Solicitation Agent.

4914-3981-8505 v.5

**IF THIS MASTER BALLOT IS NOT *ACTUALLY RECEIVED BY*
THE SOLICITATION AGENT BY 5:00 P.M. (PREVAILING EASTERN TIME) ON
DECEMBER 15, 2025, YOUR VOTE MAY NOT BE COUNTED.**

4914-3981-8505 v.5

## Appendix A

## Release, Injunction and Exculpation Provisions in the Plan[1]

---

[1]    The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.

## Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released and cancelled, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Liquidating Estate and their successors and assigns.  Any Holder of such mortgage, deed of trust, Lien, pledge or other security interest (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including and cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Liquidating Administrators to evidence such release, including the execution, delivery and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

## Releases by the Estate

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party, the Debtor, the Liquidating Estate and each Related Party of the Debtor and the Liquidating Estate shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, or any other Person or Governmental Unit asserting currently or in the future by, under, through, or on behalf of the Debtor or its Estate, and each of their respective successors or assigns, including the Settlement Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between one or both of the Debtor, on the one hand, and any Released Party, the Liquidating Estate, or any Related Party of the Debtor and the Liquidating Estate, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.3 of the Plan shall not be construed to release any post-Effective Date obligations under the RTX Waiver, the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, which specifically provides that such Estate Claims Settlement can be terminated, and the releases provided in the Plan or in the Estate Claims Settlement are void, if Carrier fails to make the installments of the Guaranteed Cash Payment when due and such failure is not timely cured within 30 days, at which time the Primary AFFF Settlement Trust is entitled to commence, prosecute, or continue all Estate Causes of Action against the Released Parties in any court of competent jurisdiction, and take such other actions as the Primary AFFF Settlement Trustee may determine in the exercise of their fiduciary duties.

## Releases by the Released Parties

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Released Parties and their successors or assigns of and from any and all Claims and Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, the Debtor's current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between any of the Debtor, the Liquidating Estate, the Settlement Trusts or the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case, on the one hand, and any Released Party, on the other hand, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any post-Effective Date obligations under the Plan Documents, the Confirmation Order, the 2020 Separation Agreement as supplemented by the RTX Waiver, or the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, or the right of any Person to enforce the same in accordance with

the terms thereof. Except with respect to the Claims and Causes of Action against the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case that are released and discharged under Article 10.4 of the Plan, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any obligations, rights, Causes of Action or Claims that Carrier Global Corporation or members of the Carrier Group (other than the Debtor), Otis Worldwide Corporation or members of the Otis Group, or RTX or members of the UTC Group may have against any Person under the 2020 Separation Agreement as supplemented by the RTX Waiver (including indemnification rights of RTX and other members of the "UTC Group" under the 2020 Separation Agreement). For the avoidance of doubt, in the event that the Estate Claims Settlement Effective Date does not occur or the Estate Claims Settlement is terminated as contemplated by the last paragraph of Article 10.3 in the Plan, all releases being provided by the Released Parties under the Plan shall be void.

## Scope of Releases

Each Person providing releases under the Plan, including the Debtor, the Estate and the Settling Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts. Each Person providing releases under the Plan shall be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

## Exculpation

Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtor and its directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation.

As of the Effective Date, to the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in Article 10 of the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person for any act or omission in connection with, related to or arising out of this Chapter 11 Case, including (a) the operation of the Debtor's businesses during the pendency of this Chapter 11 Case; (b) the

administration and adjudication of Claims and Interests during this Chapter 11 Case;
(c) formulating, negotiating, preparing, disseminating, implementing, administering,
confirming and/or effecting the Plan, the Disclosure Statement, the Plan Supplement, or
any related contract, instrument, release or other agreement or document created or
entered into in connection with the Chapter 11 Case (including the solicitation of votes for
the Plan and other actions taken in furtherance of Confirmation and Consummation of the
Plan and the distribution of property under the Plan); (d) any other transaction,
agreement, event, or other occurrence related to the Chapter 11 Case taking place on or
before the Effective Date, other than liability resulting from any act or omission that is
determined by Final Order to have constituted gross negligence, willful misconduct, fraud
or a criminal act.

<p style="text-align:center"><u>Injunction</u></p>

Except as otherwise expressly provided in the Plan or the Confirmation
Order, the satisfaction and release pursuant to Article 10 of the Plan shall also act as a
permanent injunction against any Person who has held, holds, or may in the future hold
Claims against or Interests in the Debtor or any of its assets or properties based on any act,
omission, transaction, occurrence, or other activity of any nature that occurred prior to the
Effective Date that are treated, released, settled, channeled, or exculpated pursuant to the
terms of the Plan from taking any of the following actions on account of, or on the basis of,
such Claims or Interests:  (a) commencing or continuing any action to collect, enforce,
offset, recoup, or recover with respect to any Claims or Interests treated, released, settled,
channeled, or exculpated under the Plan or the Confirmation Order to the fullest extent
authorized or provided by the Bankruptcy Code, (b) enforcing, attaching, collecting, or
recovering by any manner or means any judgment, award, decree, or order on account of
or in connection with or with respect to any such Claim or Interest; (c) creating, perfecting,
or enforcing any encumbrance of any kind on account of or in connection with or with
respect to any such Claim or Interest against the Debtor, the Liquidating Estate, the
Settlement Trusts, or its or their respective property; (d) asserting any right of setoff,
subrogation, or recoupment of any kind on account of or in connection with or with respect
to any such Claims or Interests, notwithstanding an indication of a Claim or Interest or
otherwise that a Holder of such Claim or Interest asserts, has, or intends to preserve any
right of setoff pursuant to applicable law or otherwise, against the Debtor, the Liquidating
Estate, or the Settlement Trusts; or (e) commencing or continuing any judicial or
administrative proceeding, in any forum and in any place in the world, that does not
comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

<p style="text-align:center"><u>Channeling Injunction</u></p>

Notwithstanding anything to the contrary in the Plan, to preserve and
promote the settlements contemplated by and provided for in the Plan, including the
Insurance Settlement Agreements, pursuant to the exercise of the equitable jurisdiction and
power of the Bankruptcy Court under sections 105(a) and 1123(b) of the Bankruptcy Code,
the sole recourse of any Holder of a Channeled AFFF Claim against the Debtor or a
Released Party on account of such Channeled AFFF Claim shall be to and against the
Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to

**and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, and such Holder shall have no right whatsoever at any time to assert any such Channeled AFFF Claim or any Estate Cause of Action that is released under the Estate Claims Settlement against the Debtor or any Released Party or any property or interest in property of the Debtor or any Released Party. For the avoidance of doubt, the sole recourse for any Channeled AFFF Claim covered by any Insurance Policy issued by a Settling Insurance Company shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents. Accordingly, on and after the Effective Date, all Holders of AFFF Claims that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled AFFF Claim or any Estate Cause of Action against the Debtor or any Released Party shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from the Debtor or any Released Party with respect to any such Channeled AFFF Claim or Estate Cause of Action, other than from the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, including:**

**a)      commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;**

**b)      enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;**

**c)      creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;**

**d)      asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party; or**

**e)      taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents, or, with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, by the Sovereign State AFFF Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Channeled AFFF Claim.**

The Debtor, the Liquidating Estate and/or any Released Party, as applicable, may enforce the Channeling Injunction and/or the Releases contained in the Plan before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at their own cost and expense, and no such cost or expense incurred by a party other than the Primary AFFF Settlement Trust shall be reimbursed or indemnified by the Primary AFFF Settlement Trust under any circumstances.

## Insurance Company Injunction

Subject to the provisos set forth in this Section, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim or cause of action (including any AFFF Claim or any Claim for or respecting any Primary AFFF Settlement Trust expense) against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Insurance Policy, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, statute or any other theory of law, equity or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim or cause of action, including:

a)     commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, demand, or cause of action against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such Claim, demand, or cause of action against any Insurance Company);

b)     enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

c)     creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such Claim or cause of action; and

d)     except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

*provided, however,* that (i) nothing in this Section shall impair or affect the rights of any member of the UTC Group, including RTX, or any member of the Otis Group (each as defined in the 2020 Separation Agreement), or any additional insured designated by RTX

or any member of the UTC Group, based upon, attributable to, arising out of, or in any way connected with an Insurance Policy, including to assert Claims or Causes of Action against any Insurance Company for covered losses and to receive proceeds in respect thereof; (ii) this injunction shall not impair in any way any actions brought by the Primary AFFF Settlement Trust against any Other Insurance Company; (iii) the Primary AFFF Settlement Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction with respect to any Other Insurance Company, in accordance with the Settlement Trust Documents, upon express written notice to such Other Insurance Company; and (iv) this injunction is not issued for the benefit of any Other Insurance Company, and no Other Insurance Company is a third-party beneficiary of this injunction.

Notwithstanding anything to the contrary in the Plan, this injunction shall not enjoin:

a)    the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of Holders of AFFF Claims to assert such Claims, as applicable, in accordance with the TDPs;

b)    the rights of the Primary AFFF Settlement Trust to prosecute any action based on or arising from Insurance Policies, except to the extent otherwise released;

c)    the rights of the Primary AFFF Settlement Trust to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company based on or arising from the Insurance Policies;

d)    any actions of the Contributing Parties in fulfilling their obligations under the Estate Claims Settlement in consultation and coordination with the Primary AFFF Settlement Trust;

e)    the rights of any Insurance Company to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company; or

f)    the Claims for reinsurance under reinsurance contracts or Claims under retrocessional contracts among the Settling Insurance Companies and any Other Insurance Company.

## Prohibition on Actions Against Buyer

Subject to the Sale Order and the Acquisition Agreement, Buyer, in its capacity as such, shall not have any liability for any AFFF Claims against the Debtor arising prior to the closing of the Sale.  Except as expressly otherwise set forth in the Sale Order, all persons and entities hereby are forever barred, estopped and permanently enjoined from asserting against Buyer, its Affiliates, its successors or assigns, its property or the Transferred Assets, such persons' or entities' AFFF Claims that have been or could have been asserted against the Debtor arising prior to the closing of the Sale.  For the avoidance of doubt, the foregoing shall

not release Buyer from, or enjoin any actions against Buyer for, any Assumed Liability or any other liability incurred by Buyer on account of its operations following the closing of the Sale.

## Limitations on Exculpations and Releases

Notwithstanding anything to the contrary in the Plan, none of the releases or exculpations set forth in the Plan shall operate to waive or release any obligation or Causes of Action of any Person:  (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations or (b) expressly set forth in and preserved by the Plan, the Plan Supplement, Plan Documents or related documents.

## Release Dispute

In the event of a Release Dispute, a Released Party may, at its sole cost and expense, file a motion with the Bankruptcy Court seeking a determination as to whether an AFFF Claimant's Cause of Action was settled and released pursuant to the Plan, and upon such motion, the Bankruptcy Court shall make such determination and, if appropriate, enjoin the prosecution of such Cause of Action as having been settled and released under the Plan.

## Relevant Definitions

"*2020 Separation Agreement*" means that certain Separation and Distribution Agreement, dated as of April 2, 2020, by and among United Technologies Corporation, Carrier Global Corporation, and Otis Worldwide Corporation.

"*Administrative Claim*" means an Allowed Claim for costs and expenses of administration of the Chapter 11 Case pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate; (b) Allowed Professional Compensation Claims; (c) Allowed Fee Examiner Compensation Claims; and (d) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

"*AFFF*" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

"*AFFF Claim*" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.

"*Assumed Liability*" shall have the meaning set forth in the Acquisition Agreement.

"*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other Claims, Causes of Action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties-in-interest under the Bankruptcy Code or applicable non-

bankruptcy law, including claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) was commenced prior to the Effective Date.

"*Buyer*" means Pacific Erin Opco, LLC, as the purchaser of substantially all of the Debtor's assets pursuant to the Acquisition Agreement and the Sale Order.

"*Carrier*" means Carrier Global Corporation, a Delaware corporation, and its non-Debtor affiliates and Related Parties.

"*Causes of Action*" means any current or future actions, Claims, cross-claims, third-party claims, causes of action, controversies, disputes, demands, rights, liens, indemnities, contributions, guaranties, suits, obligations, liabilities, losses, debts, fees or expenses, damages, interest, judgments, costs, accounts, defenses, remedies, offsets, powers, privileges, proceedings, licenses, and franchises of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, choate or inchoate, capable of being asserted directly or derivatively (including any alter ego theories), including any Claims for recovery of attorneys' fees, turnover, fraud, gross negligence, or willful misconduct, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws, consumer protection laws, environmental laws, or nuisance or trespass theories).  Causes of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to or otherwise contest Claims or Interests, (c) any claim pursuant to section 362 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Actions.

"*Channeled AFFF Claims*" means all AFFF Claims against the Debtor or the Estate channeled to the Primary AFFF Settlement Trust under the Plan and Settlement Trust Documents.  For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

"*Committee*" means the official committee of unsecured creditors of the Debtor appointed by the U.S. Trustee in the Chapter 11 Case under section 1102(a) of the Bankruptcy Code pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 83] and any amendments thereto.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Settling Parties.

"*Consummation*" means the occurrence of the Effective Date.

"*Debtor*" means Kidde-Fenwal, Inc., the debtor and debtor in possession in the Chapter 11 Case, now known as KFI Wind-Down Corp.  In 2007, KFFI (formerly known as National Foam, Inc.) merged into Kidde-Fenwal, Inc., with Kidde-Fenwal, Inc. as the surviving entity.  Pursuant to this merger, KFFI's liabilities were assumed by, and KFFI's causes of action were transferred to, Kidde-Fenwal, Inc. directly or indirectly by merger or other agreement.  The term "Debtor" includes Kidde-Fenwal, Inc. as successor by merger or other agreement by which Kidde-Fenwal, Inc. obtained or assumed the liabilities and Causes of Action of any Person.

"*Effective Date*" means the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date set forth in the Plan shall have been satisfied or waived and on which a notice indicating the Effective Date has been filed on the docket of the Chapter 11 Case.

"*Estate Causes of Action*" means Causes of Action owned or held by either the Debtor or its Estate, or capable of being asserted (currently, or in the future) by any Person or Governmental Unit on behalf of, under or through, either the Debtor or its Estate, and each of their respective successors or assigns, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions, that may be commenced by a representative of the Estate under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise.  Without limiting the foregoing, Estate Causes of Action shall include:  (a) Causes of Action that on or after the Petition Date may be exclusively asserted by or on behalf of the Debtor or its Estate under applicable law, or that prior to the Petition Date could have been asserted by the Debtor on its own behalf under applicable law, including Causes of Action based on (i) the doctrine of successor liability that seek to impose the Debtor's (including KFFI's or National Foam, Inc.'s) liabilities on an alleged successor, whether based on a contractual assumption of liability, consolidation or de facto merger, acquisition of the Debtor's product line, fraud, domination, direction of the Debtor's affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, or (ii) the doctrines of alter ego or veil piercing involving alter egos of the Debtor or the piercing of the Debtor's (including KFFI's or National Foam, Inc.'s) corporate veil, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form; (b) Causes of Action or theories for recovery or remedies that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is generally common to creditors of the Debtor and can be asserted by the Debtor under applicable law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor.  Subsections (a), (b) and (c) immediately above expressly encompass any Causes of Action based on:  (i) the alleged assumption of the Debtor's (including KFFI's or

National Foam, Inc.'s) liabilities (but not a non-Debtor's liabilities) by Kidde plc (n/k/a Kidde Limited) pursuant to the 2000 Demerger Agreement, or any alleged subsequent assumption of such liabilities of the Debtor from Kidde plc by any other Released Party; or (ii) the alleged assumption of the Debtor's liabilities (but not a non-Debtor's liabilities), including any liabilities resulting from acts or omissions of National Foam, Inc. or KFFI, by a Released Party pursuant to the 2020 Separation Agreement.  For the avoidance of doubt, Estate Causes of Action shall not include any Independent AFFF Causes of Action or any Sovereign State Retained Causes of Action or Insurance Actions against any Released Party based on acts or omissions occurring after entry into the Plan Support Agreement with respect to rights under the 2020 Separation Agreement or the RTX Waiver to access and make Claims under any Insurance Policy or otherwise obtain the benefit of the Insurance Assignment.

"*Estate Claims Settlement*" means the settlement, including the release of all Estate Causes of Action against the Released Parties, pursuant to the Estate Claims Settlement Agreement.

"*Independent AFFF Cause of Action*" means any Cause of Action that could be asserted by an AFFF Claimant against a Non-Debtor Party based on the Non-Debtor Party's own conduct and breach of duty (*i.e.*, duty owed to the AFFF Claimant and not owed to the Debtor), including (a) Causes of Action arising from such acts or omissions of such Non-Debtor Party, and (b) Causes of Action based on allegations that a Non-Debtor Party is responsible for such conduct under theories of liability or recovery or remedies that could have been asserted by an AFFF Claimant on its own behalf under applicable state or federal law in respect of such Causes of Action prior to the Petition Date based on (i) the doctrine of successor liability involving a Non-Debtor Party that is alleged to be a successor to another Non-Debtor Party with respect to liabilities not directly or indirectly assumed from the Debtor, whether based on a contractual assumption of liability (including under the 2020 Separation Agreement), consolidation or de facto merger, acquisition of product line, fraud, domination, direction of affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, (ii) the doctrines of alter ego or veil piercing involving alter egos of a Non-Debtor Party, or piercing the corporate veil between Non-Debtor Parties, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form, or (iii) alleged derivative or vicarious liability of a Non-Debtor Party for liabilities of another Non-Debtor Party not directly or indirectly assumed from the Debtor; *provided* that, if any Cause of Action falls within the definition of Estate Cause of Action or Sovereign State Retained Cause of Action, it is not an Independent AFFF Cause of Action.
"*Insurance Assignment*" means the transfer by the Debtor and Carrier to the Primary AFFF Settlement Trust of certain rights in connection with the Insurance Policies as set forth in Article 5 of the Plan.

"*Insurance Policy/ies*" means: (i) any insurance policies listed on Schedule 1 to the Plan, (ii) to the extent not listed on Schedule 1, any "general liability" insurance (which, for the avoidance of doubt, shall exclude director & officer, automobile, or workers' compensation insurance) contract, binder, certificate, insurance policy, or reinsurance policy, whether currently known or unknown, discovered after the Effective Date, in effect at any time on or before the Petition Date naming the Debtor, the Contributing Parties, or any of their predecessors, subsidiaries, or past or present affiliates as an insured (whether as the primary or additional insured) or that provides or may provide coverage to Carrier or the Debtor for AFFF Claims, (iii) "Aviation" policies to

which Carrier or the Debtor has rights as listed in Schedule 2 to the Plan solely to the extent of Insurance Policy Rights applicable to or arising from AFFF Claims and (iv) any other subsequently discovered insurance policies of the same types as listed in Schedules 1 and 2 to the Plan to the extent that Carrier or the Debtor have rights under such policies (whether or not such policies are specifically titled as "General Liability" or "Aviation" policies).  For the avoidance of doubt, "Insurance Policies" shall not include any D&O Policies, automobile policies or worker's compensation insurance.

"*Insurance Policy Rights*" means any and all rights subject to the Insurance Assignment.

"*KFFI*" means Kidde Fire Fighting, Inc. (formerly known as National Foam, Inc.).

"*Liquidating Estate Claims*" means Administrative Claims, Priority Tax Claims, Other Priority Claims and Secured Claims.

"*New National Foam*" means, collectively, National Foam, Inc. f/k/a Eurostar US Tradeco, Inc., Angus Fire Ltd. f/k/a Eurostar Tradeco Limited, Angus International Safety Group Limited f/k/a/ Eurostar Holdco Limited, and each of their Related Parties.

"*New National Foam Release*" means a settlement between the Debtor and New National Foam pursuant to which (a) Estate Causes of Action against New National Foam are resolved for value reasonably acceptable to the Settling Parties and (b) New National Foam agrees to absolutely, unconditionally, and irrevocably release and discharge the Debtor and each Released Party from any and all Claims and Causes of Action, whether known or unknown, based on or relating to, or in any manner arising from that certain Share and Business Sale Agreement, dated as of June 28, 2013, or any other occurrence taking place on or before the Effective Date, including Proof of Claim No. 225, and otherwise in form and substance reasonably acceptable to the Settling Parties.

"*Non-Debtor Party*" means any Person other than the Debtor.  For the avoidance of doubt, the term "*Non-Debtor Party*" does not include KFFI or National Foam, Inc.

"*Other Insurance Company*" means an Insurance Company that is not a Settling Insurance Company.

"*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"*Person*" means a "person" or "entity" as defined in the Bankruptcy Code.

"*Petition Date*" means May 14, 2023, the date on which the Debtor commenced the Chapter 11 Case.

"*PFAS*" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.

"*Primary AFFF Settlement Trust*" means the settlement trust organized under the laws of the state of Delaware and established under the Plan and the Settlement Trust Documents, which

shall (i) have the powers, duties and obligations set forth in the Plan and the Settlement Trust Documents, (ii) assume all liability of the Debtor and the Estate for, and administer, all Channeled AFFF Claims and (iii) be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code.

"*Primary AFFF Settlement Trust Agreement*" means the Settlement Trust Agreement governing the Primary AFFF Settlement Trust, dated as of the Effective Date, as the same may be amended or modified from time to time in accordance with the terms thereof.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Released Party*" means (i) Carrier, (ii) RTX, and (iii) each of their Related Parties in their capacities as such.  Released Parties shall not include DuPont, 3M, or their current or former affiliates and Related Parties.  If a Person is a current or former affiliate or Related Party of DuPont or 3M, and such Person is also a current or former affiliate or Related Party of Carrier or RTX, then such Person shall not be a Released Party.  For the avoidance of doubt, New National Foam shall not be a Released Party unless the New National Foam Release  is provided by the Effective Date.

"*Related Party*" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, and current and former affiliates and subsidiaries, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, all only in their capacity as a representative of such Person, and (c) respective heirs, executors, estates, and nominees, in each case solely in its capacity as such.

"*RTX Waiver*" shall have the meaning set forth in Article 5.5.11(b) of the Plan.

"*Sale Order*" means the *Order (I) Approving the Sale of All or Substantially All of the Debtor's Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving Debtor's Entry, and Performance Under the Contribution Agreement, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Granting Related Relief*, entered by the Bankruptcy Court on April 2, 2024 [D.I. 1058].

"*Settlement Trust Agreements*" means, collectively, (i) the Primary AFFF Settlement Trust Agreement, (ii) the Sovereign State AFFF Settlement Trust Agreement and (iii) the GUC Liquidating Trust Agreement.  To the extent that any provision of a Settlement Trust Agreement impacts the rights of Carrier, such provision shall not be included in such Settlement Trust Agreement unless reasonably acceptable to Carrier.

"*Settlement Trust Documents*" means, collectively, (a) the Settlement Trust Agreements, (b) the TDPs, (c) the Confirmation Order, and (d) any other agreements, instruments, and documents governing the establishment, administration, and operation of the Settlement Trusts.

"*Settlement Trusts*" means the Primary AFFF Settlement Trust, Sovereign State AFFF Settlement Trust and GUC Liquidating Trust.

"*Settling Insurance Company*" means any Insurance Company that contributes funds, proceeds, or other consideration to or for the benefit of the Primary AFFF Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order. No Insurance Company shall be considered a Settling Insurance Company without the Committee's prior written consent.

"*Sovereign State*" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.

"*Sovereign State AFFF Settlement Trust*" means the trust established under the Plan and the Settlement Trust Documents to administer all Sovereign State Claims against the Debtor. The Sovereign State AFFF Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code and shall have the powers, duties and obligations set forth in the Settlement Trust Documents.

"*Sovereign State Retained Cause of Action*" means any Claim or Cause of Action asserted, or which may be asserted, by a Sovereign State against a Contributing Party that (1) is not an Estate Cause of Action and (2) arises from a statute, regulation, or common law that creates a theory of liability, by which a Sovereign State could recover damages or penalties, or obtain equitable or injunctive relief, against a Contributing Party. For the avoidance of doubt, a Sovereign State may assert a Sovereign State Retained Cause of Action irrespective of whether such Sovereign State Retained Cause of Action could also be considered an Independent AFFF Cause of Action.

"*TDPs*" or "Trust Distribution Procedures" means the Trust Distribution Procedures for the Settlement Trusts, as the same may be amended or modified from time to time in accordance with the terms thereof, that will govern the claims submission, adjudication, and distribution processes for the Settlement Trusts in a manner that is fair and equitable to Holders of Allowed Channeled AFFF Claims. To the extent that any provision of the TDPs impacts the rights of Carrier, such provision shall not be included unless reasonably acceptable to Carrier.

"*Transferred Assets*" shall have the meaning set forth in the Acquisition Agreement.

**EXHIBIT**

**EXHIBIT**

| Creditor Name | Type of Authority for Vote (A OR B) | | Vote to ACCEPT (in Favor of the Plan) OR Vote to REJECT (Against the Plan) | |
|---|---|---|---|---|
| | A | B | ACCEPT | REJECT |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |

In re Kidde-Fenwal, Inc.
Case Number: 23-10638 (LSS)

Master Ballot

**<u>EXHIBIT 2V</u>**

**AFFF Master Ballot for Class 3K: Wastewater Claims**

**\*\*KFI WIND-DOWN CORP. PLAN BALLOT\*\***

<div style="border:1px solid black">

## THIS BALLOT IS FOR HOLDERS OF CLAIMS AGAINST KFI WIND-DOWN CORP. (F/K/A KIDDE-FENWAL, INC.) ARISING FROM ITS AFFF OR AFFF-CONTAINING PRODUCTS.

</div>

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |

### MASTER BALLOT FOR ACCEPTING OR REJECTING
### THE DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
### UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

### CLASS 3K:  WASTEWATER CLAIMS

On May 14, 2023 (the "Petition Date"), KFI Wind-Down Corp. f/k/a Kidde-Fenwal, Inc. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") (the "Chapter 11 Case").

On [•], 2025, the Debtor filed the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Plan"),[2] which is described in greater detail in the *Disclosure Statement for the Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Disclosure Statement").

---

[1]    The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters are located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

> **THE PLAN CONTAINS RELEASE, INJUNCTION AND EXCULPATORY PROVISIONS.  THESE PROVISIONS ARE SET FORTH IN APPENDIX A TO THIS MASTER BALLOT.  YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.**

On [•], 2025, the Bankruptcy Court entered an order [D.I. [•]] (the "Disclosure Statement Order") approving the Disclosure Statement as containing "adequate information" within the meaning ascribed to such term in section 1125 of the Bankruptcy Code and procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures").

The Plan, Disclosure Statement, Disclosure Statement Order, Solicitation Procedures and documents included in the Plan Supplement as of the Solicitation Mailing Deadline have been included in the package of materials containing the attached master ballot (the "Master Ballot") and can be accessed free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code.  For a description of the Causes of Action to be enjoined and the identities of the Persons that would be subject to this injunction, see Article IV.E.8 of the Disclosure Statement and Article 10.8 of the Plan.

A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of the Claims that submit votes in that Voting Class vote to accept the Plan.  Even if a Voting Class votes to reject the Plan, the Bankruptcy Court nonetheless may confirm the Plan if it finds the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

If the Plan is confirmed by the Bankruptcy Court, all Holders of Claims against and Interests in the Debtor (including those Holders who reject the Plan or abstain from voting on the Plan, and those Holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby.

The Debtor will file the Plan Supplement (as may be amended, modified or supplemented from time to time) with the Bankruptcy Court no later than **November 17, 2025**.

The documents included in the Plan Supplement as of the Solicitation Mailing Deadline are included in your Solicitation Package. Any further Plan Supplement, and any amendments or supplements to the foregoing, will only be served on:  (a) the U.S. Trustee, (b) the Notice Parties and (c) the 2002 List.   Once filed, a copy of the Plan Supplement will also be available for review and download on the Debtor's website maintained by the Solicitation Agent free of charge at https://cases.stretto.com/kfi by clicking the link for "Plan & Disclosure Statement" on the landing page.

**Unless such time is extended by the Debtor, in consultation with the Settling Parties, or the Bankruptcy Court, the Master Ballot must be properly completed, signed and**

submitted to the Solicitation Agent *so as to be actually received* no later than 5:00 p.m. (prevailing Eastern Time) on December 15, 2025 (the "Voting Deadline") in order for the votes on the Master Ballot to count.  Unless you receive express, written permission from the Debtor to submit a Master Ballot via other means, the **ONLY** acceptable manner of submission of Master Ballots is either (a) by email to KFIInquiries@stretto.com or (b) by regular mail, overnight courier or hand delivery to KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, in either case so that it is actually received by the Solicitation Agent by or before the Voting Deadline (December 15, 2025 at 5:00 p.m. (prevailing Eastern Time)).

This Master Ballot is to be used by attorneys only for voting on behalf of Holders of Wastewater Claims against the Debtor in Class 3K of the Plan.  Please refer to the Plan for the specific definition of "Wastewater Claim," which is copied below, as well as other relevant definitions.

> *"Holder" means a Person holding a Claim against or an Interest in the Debtor.*

> *"Wastewater Claim" means an AFFF Claim asserted by or on behalf of an owner, including a Sovereign State or Sovereign Tribe, of a Wastewater System for damages relating to such Wastewater System.*

> *"AFFF" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.*

> *"AFFF Claim" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.*

> *"PFAS" means per- and polyfluroalkyl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.*

> *"Sovereign State" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.*

> *"Sovereign Tribe" means any American Indian or Alaskan Native Tribe, band, nation, pueblo, village or community, that the U.S. Secretary of the Interior acknowledges as an Indian Tribe, as provided in the Federally Recognized Tribe List Act of 1994, 25 U.S.C. § 5130, and as periodically listed by the U.S. Secretary of the Interior in the Federal Register pursuant to 25 U.S.C. § 5131; and any "Tribal Organization" as provided in the Indian Self-Determination and Education and Assistance Act of 1975, as amended, 25 U.S.C. § 5304(1).*

-3-

*"Wastewater System"* **means a network of pipes, pumping stations, and appurtenances that convey sewage and waste from its points of origin to a point of treatment and disposal.**

*"Claim"* **has the meaning ascribed to such term under section 101(5) of the Bankruptcy Code.**

*[Remainder of page left intentionally blank]*

-4-

## <u>DOCUMENTS INCLUDED WITH THE MASTER BALLOT</u>

You should have received the following documents with the Master Ballot (collectively, the "<u>Solicitation Package</u>").  **Please note that some of the following documents may be included on a USB flash drive included as part of your Solicitation Package.**

- the Cover Letter;

- the Committee Letter;

- the Solicitation Procedures;

- a USB flash drive containing a copy of the Disclosure Statement (and exhibits thereto, including the Plan) and the documents contained in the Plan Supplement that have been filed prior to the Solicitation Mailing Deadline;

- the Disclosure Statement Order (without exhibits);

- a preaddressed, return envelope for completed Master Ballots;

- the Confirmation Hearing Notice; and

- any other materials ordered by the Court to be included as part of the Solicitation Package.

If you have questions about the Master Ballot, or if you did not receive a copy of the Plan or any related materials, please contact the Solicitation Agent at <u>KFIInquiries@stretto.com</u> or (866) 887-0488 (toll-free) or +1 (949) 889-0128 (international).  Information may also be obtained at <u>https://cases.stretto.com/kfi</u> by clicking the link for "Plan & Disclosure Statement" on the landing page.

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtor or any other party for payment purposes.

-5-

## INSTRUCTIONS FOR COMPLETING THE MASTER BALLOT

1.     The Master Ballot is provided to you, as an attorney for Holders of Wastewater Claims against the Debtor, in connection with the solicitation of votes of Holders of Wastewater Claims to accept or reject the Plan.  The Disclosure Statement and Plan are also being provided to you.    PLEASE READ ALL DOCUMENTS CAREFULLY BEFORE COMPLETING THE MASTER BALLOT.

2.     The Master Ballot is to be used by attorneys who represent, **and are authorized to vote on behalf of**, one or more Holders of Wastewater Claims.  You may be required to provide evidence of your authorization by Holders of Wastewater Claims to vote to accept or reject the Plan.

3.     You are receiving this Master Ballot because you represent certain clients (collectively, your "Eligible Clients") who are Holders of Wastewater Claims against the Debtor. Your firm ("Firm") must certify to one of the options below with respect to each Eligible Client whose vote is included in your Firm's Master Ballot.

> (a)     "Option (a) Certification":  The Firm (or one or more of its attorneys) has communicated with the applicable Eligible Client (as defined below) and has been authorized, consistent with applicable law, by such Eligible Client to vote their Wastewater Claim to accept or reject the Plan.  The Firm may not rely on negative notice for such authorization.

> (b)     "Option (b) Certification":  The Firm (or one or more of its attorneys) has the authority under a power of attorney to vote to accept or reject the Plan on behalf of the applicable Eligible Client and the Firm completed the vote on behalf of such Eligible Client on the Master Ballot in accordance with the authority granted to the Firm.

4.     To use the Master Ballot, you must be authorized to vote on behalf of your Eligible Clients under all applicable standards for such authorization.  With respect to any of the Eligible Clients on the Exhibit, if you are unable to certify that you have the authority to vote on the Plan on behalf of such Eligible Client, you must not vote on behalf of such Eligible Client.

5.     To be entitled to vote on the Plan, a Holder of a Wastewater Claim in Class 3K (either directly or through his or her attorney or agent) must be able to certify that such Holder has a Wastewater Claim in Class 3K.

6.     To have the votes reflected on the Master Ballot counted for purposes of voting on the Plan, the Master Ballot must be completed, signed, and submitted **so that it is actually received** no later than the Voting Deadline by the Solicitation Agent as set forth in these instructions below.    Master Ballots will be accepted either (i) by email to KFIInquiries@stretto.com or (ii) by regular mail, overnight courier or hand delivery to KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602 unless the party submitting a

-6-

Master Ballot previously received permission in writing from the Debtor to submit such Master Ballot via other means.  If a Master Ballot is received after the Voting Deadline (as may be extended by the Debtor in writing, in consultation with the Settling Parties), it may not be counted. If the Master Ballot is not signed on the appropriate lines, the Master Ballot will not be valid or counted as having been cast.

7.     The Master Ballot will not constitute or be deemed a Proof of Claim or Interest, an assertion of a Claim, the allowance of a Claim, or the acceptance or liquidation of any Wastewater Claim for purposes of any distribution.  None of the information set forth in the Master Ballot shall constitute an admission by the Debtor as to the extent, validity, or priority of the Claim voted herein, nor shall anything contained herein or information submitted in or with the Master Ballot be binding upon the Debtor or the Holder in any subsequent claims resolution process or other proceeding.  The Master Ballot may not be used for any purposes other than to transmit votes on the Plan.

8.     Multiple Master Ballots may be completed and delivered to the Solicitation Agent. Subject to the terms of the Solicitation Procedures, votes reflected by multiple Master Ballots submitted by the same Firm will be counted except to the extent that they are duplicative of other Master Ballots.  If two or more such ballots submitted by the same Firm are inconsistent, the last valid Master Ballot received by the Solicitation Agent on or before the Voting Deadline will, to the extent of such inconsistency, govern unless otherwise ordered by the Bankruptcy Court.  If more than one Master Ballot is submitted and the last such ballot supplements rather than supersedes earlier Master Ballot(s), please designate the subsequent Master Ballot(s) as "Supplemental" and clearly mark which of those votes reflected thereon are additional votes.

9.     Notwithstanding the foregoing, if the Solicitation Agent receives two or more Master Ballots from separate Firms, each of whom purports to represent the same Holder of a Wastewater Claim, it is the sole obligation and responsibility of the Firms to coordinate with each other to resolve any conflicting representations, and for the appropriate Firm to submit the vote on behalf of such Eligible Client together with an email to KFIInquiries@stretto.com copying all affected Firms confirming such resolution.  The Solicitation Agent is entitled to rely upon such an email.  If the Firms are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple consistent votes on account of such Eligible Client (*i.e.*, multiple votes to accept the Plan or multiple votes to reject the Plan), the Solicitation Agent is authorized to treat such votes as duplicative and count them only once for both numerosity and voting amount purposes.  If, however, the Firms voting on account of such Eligible Client are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple inconsistent votes on account of such Eligible Client (*i.e.*, a vote to accept the Plan and a vote to reject the Plan), the Solicitation Agent shall contact the relevant Firms and request they coordinate with each other to resolve the conflicting representation.  If after the submission of inconsistent votes but prior to the Voting Deadline, the applicable Firms timely reach a consensus regarding which vote should be counted, one of the applicable Firms may email KFIInquiries@stretto.com, copying all other affected Firms, and direct the Solicitation Agent as to which vote should be counted.  The Solicitation Agent is entitled to rely upon such an email.  If representation of the Holder of the

-7-

Claim is not resolved within 10 calendar days from the notice of the conflict as provided by the Solicitation Agent, such votes shall not be counted.

10.     Each Holder of a Wastewater Claim that votes must vote his or her entire Claim either, to ACCEPT (vote in favor of), or to REJECT (vote against), the Plan.  A Holder of a Wastewater Claim may not split his or her vote.  Accordingly, the votes of any Holder of a Wastewater Claim who purports partially to accept and partially to reject the Plan will not be counted.

11.     If the Master Ballot is signed and timely sent to the Solicitation Agent, but does not designate either acceptance or rejection, or designates both acceptance and rejection, of the Plan for any particular claimant listed on the Exhibit, then the Solicitation Agent may, at its discretion, either contact the party submitting the Master Ballot in order to cure the defect on the Master Ballot or such Claim will not be counted either as an acceptance or rejection of the Plan.

12.     **To complete the Master Ballot properly, you must follow the procedures described below:**

Item 1 of the Master Ballot requires that you to indicate, for each Eligible Client on the Exhibit for which you are casting a vote, (a) the authority upon which votes on behalf of each such Eligible Client are being included (*i.e.*, Option (a) Certification or Option (b) Certification as described above) in the Master Ballot and (b) whether such Eligible Client accepts or rejects the Plan.

Item 2 of the Master Ballot contains certifications which are required for you to submit a vote on behalf of one or more Holders of Wastewater Claims.  Please ensure that you have read and understood the certifications before signing the Master Ballot.  **If you are unable to make the certification as to the authority to vote on behalf of any Holder of a Wastewater Claim you represent, you may not cast a vote on behalf of such Holder**.

Sign the Master Ballot.

Provide your name and mailing and email addresses where indicated.

Contact the Solicitation Agent if you need additional information or copies of any documents contained in the Solicitation Package or if you have any technical questions regarding composition and submission of your Master Ballot.

Submit the completed, executed Master Ballot *so as to be actually received* by the Solicitation Agent before the Voting Deadline either (i) by email to KFIInquiries@stretto.com or (ii) by regular mail, overnight courier or hand delivery to KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602.

**IF YOU HAVE ANY QUESTIONS REGARDING THE MASTER BALLOT,
BELIEVE YOU MAY HAVE RECEIVED AN INCORRECT BALLOT,
OR IF YOU DID NOT RECEIVE A COPY OF ANY OF
THE DOCUMENTS DESCRIBED IN THESE INSTRUCTIONS,
PLEASE CONTACT THE SOLICITATION AGENT AT:**

**TELEPHONE: (866) 887-0488 (TOLL-FREE)
OR +1 (949) 889-0128 (INTERNATIONAL)
E-MAIL: KFIINQUIRIES@STRETTO.COM
OR VISIT HTTPS://CASES.STRETTO.COM/KFI**

4916-2436-7881 v.5

# **PLAN BALLOT**

## MASTER BALLOT FOR ACCEPTING OR REJECTING THE DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

### CLASS 3K: WASTEWATER CLAIMS

**PLEASE COMPLETE THE FOLLOWING:**

The Solicitation Procedures are included within the Solicitation Package that accompanies these instructions. The Solicitation Procedures contain important information regarding the balloting process. Please read the Solicitation Procedures before submitting this Master Ballot. If you have any technical questions or need to arrange for special delivery of your Master Ballot, please contact the Solicitation Agent.

**Please note that each Holder of a Wastewater Claim who votes on the Plan must vote the entire amount of his or her Claim to accept or reject the Plan. All AFFF Claims have been temporarily allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance or any other purpose.** Any Holders of AFFF Claims who attempt partially to reject and partially to accept the Plan will not have their vote counted. If this Master Ballot is signed and timely received by the Solicitation Agent but does not designate either acceptance or rejection or designates both acceptance and rejection of the Plan for any particular claimant, such vote will not be counted either as an acceptance or rejection of the Plan.

**Item 1 – List of Holders of Wastewater Claims Represented by the Firm.**

The exhibit to this Master Ballot (the "Exhibit") contains the names set forth on the Client List previously submitted by your Firm with the Solicitation Directive and is a list of each Holder of a Wastewater Claim that you represent. You must indicate on the Exhibit next to each Eligible Client for which you cast a vote (a) the authority upon which votes on behalf of each such Eligible Client are being included (*i.e.*, Option (a) Certification or Option (b) Certification as described in Item 2) on the Master Ballot and (b) whether such Eligible Client accepts or rejects the Plan.

**Item 2 – Certifications, Acknowledgement, Signature, and Date.**

By signing this Master Ballot, the undersigned certifies under penalty of perjury that each of the following statements is true and correct:

- I have been provided with a copy of the Confirmation Hearing Notice, the Disclosure Statement (with the Plan attached as an exhibit), the Disclosure Statement Order, the Solicitation Procedures, the documents included in the Plan Supplement as of the

Solicitation Mailing Deadline, and a letter from the Committee and the MDL PEC Co-Leads urging claimants to vote to ACCEPT (vote in favor of) the Plan.

- I am authorized, by agreement or under applicable law, by each of the Holders of the Wastewater Claims listed on the Exhibit for which I have voted to vote his, her, or its Wastewater Claim to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan.

- For each client listed on the Exhibit and for whom the "Option (a) Certification" is indicated, I or my Firm communicated with each such Eligible Client and have been authorized, consistent with applicable law, by each such Eligible Client to vote each of their Wastewater Claim to accept or reject the Plan. I am not relying on negative notice to make such certification.

- For each Eligible Client listed on the Exhibit and for whom the "Option (b) Certification" is indicated, I or my Firm has the authority under a power of attorney to vote to accept or reject the Plan on behalf of each such Eligible Client and I have completed this Master Ballot in accordance with such authority.

- To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, each Holder of a Wastewater Claim listed on the Exhibit who is casting a vote has, on such Holder's information and belief, a Wastewater Claim against the Debtor.

Print or Type Name of Attorney: _____

Name of Firm: _____

Attorney Signature: _____

Street Address: _____

City, State, and ZIP Code: _____

Telephone Number: _____

E-mail Address of Attorney/Signatory: _____

Date: _____

The entire Exhibit accompanying this Master Ballot must be completed and submitted with this completed Master Ballot to the Solicitation Agent.

-2-

**IF THIS MASTER BALLOT IS NOT *ACTUALLY RECEIVED BY*
THE SOLICITATION AGENT BY 5:00 P.M. (PREVAILING EASTERN TIME) ON
DECEMBER 15, 2025, YOUR VOTE MAY NOT BE COUNTED.**

4916-2436-7881 v.5

## Appendix A

**Release, Injunction and Exculpation Provisions in the Plan[1]**

---

[1]    The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.

## Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released and cancelled, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Liquidating Estate and their successors and assigns.  Any Holder of such mortgage, deed of trust, Lien, pledge or other security interest (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including and cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Liquidating Administrators to evidence such release, including the execution, delivery and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

## Releases by the Estate

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party, the Debtor, the Liquidating Estate and each Related Party of the Debtor and the Liquidating Estate shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, or any other Person or Governmental Unit asserting currently or in the future by, under, through, or on behalf of the Debtor or its Estate, and each of their respective successors or assigns, including the Settlement Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between one or both of the Debtor, on the one hand, and any Released Party, the Liquidating Estate, or any Related Party of the Debtor and the Liquidating Estate, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.3 of the Plan shall not be construed to release any post-Effective Date obligations under the RTX Waiver, the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, which specifically provides that such Estate Claims Settlement can be terminated, and the releases provided in the Plan or in the Estate Claims Settlement are void, if Carrier fails to make the installments of the Guaranteed Cash Payment when due and such failure is not timely cured within 30 days, at which time the Primary AFFF Settlement Trust is entitled to commence, prosecute, or continue all Estate Causes of Action against the Released Parties in any court of competent jurisdiction, and take such other actions as the Primary AFFF Settlement Trustee may determine in the exercise of their fiduciary duties.

### Releases by the Released Parties

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Released Parties and their successors or assigns of and from any and all Claims and Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, the Debtor's current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between any of the Debtor, the Liquidating Estate, the Settlement Trusts or the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case, on the one hand, and any Released Party, on the other hand, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any post-Effective Date obligations under the Plan Documents, the Confirmation Order, the 2020 Separation Agreement as supplemented by the RTX Waiver, or the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, or the right of any Person to enforce the same in accordance with

the terms thereof. Except with respect to the Claims and Causes of Action against the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case that are released and discharged under Article 10.4 of the Plan, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any obligations, rights, Causes of Action or Claims that Carrier Global Corporation or members of the Carrier Group (other than the Debtor), Otis Worldwide Corporation or members of the Otis Group, or RTX or members of the UTC Group may have against any Person under the 2020 Separation Agreement as supplemented by the RTX Waiver (including indemnification rights of RTX and other members of the "UTC Group" under the 2020 Separation Agreement).  For the avoidance of doubt, in the event that the Estate Claims Settlement Effective Date does not occur or the Estate Claims Settlement is terminated as contemplated by the last paragraph of Article 10.3 in the Plan, all releases being provided by the Released Parties under the Plan shall be void.

### Scope of Releases

Each Person providing releases under the Plan, including the Debtor, the Estate and the Settling Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts.  Each Person providing releases under the Plan shall be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

### Exculpation

Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtor and its directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation.

As of the Effective Date, to the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in Article 10 of the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person for any act or omission in connection with, related to or arising out of this Chapter 11 Case, including (a) the operation of the Debtor's businesses during the pendency of this Chapter 11 Case; (b) the

administration and adjudication of Claims and Interests during this Chapter 11 Case;
(c) formulating, negotiating, preparing, disseminating, implementing, administering,
confirming and/or effecting the Plan, the Disclosure Statement, the Plan Supplement, or
any related contract, instrument, release or other agreement or document created or
entered into in connection with the Chapter 11 Case (including the solicitation of votes for
the Plan and other actions taken in furtherance of Confirmation and Consummation of the
Plan and the distribution of property under the Plan); (d) any other transaction,
agreement, event, or other occurrence related to the Chapter 11 Case taking place on or
before the Effective Date, other than liability resulting from any act or omission that is
determined by Final Order to have constituted gross negligence, willful misconduct, fraud
or a criminal act.

## Injunction

Except as otherwise expressly provided in the Plan or the Confirmation
Order, the satisfaction and release pursuant to Article 10 of the Plan shall also act as a
permanent injunction against any Person who has held, holds, or may in the future hold
Claims against or Interests in the Debtor or any of its assets or properties based on any act,
omission, transaction, occurrence, or other activity of any nature that occurred prior to the
Effective Date that are treated, released, settled, channeled, or exculpated pursuant to the
terms of the Plan from taking any of the following actions on account of, or on the basis of,
such Claims or Interests:  (a) commencing or continuing any action to collect, enforce,
offset, recoup, or recover with respect to any Claims or Interests treated, released, settled,
channeled, or exculpated under the Plan or the Confirmation Order to the fullest extent
authorized or provided by the Bankruptcy Code, (b) enforcing, attaching, collecting, or
recovering by any manner or means any judgment, award, decree, or order on account of
or in connection with or with respect to any such Claim or Interest; (c) creating, perfecting,
or enforcing any encumbrance of any kind on account of or in connection with or with
respect to any such Claim or Interest against the Debtor, the Liquidating Estate, the
Settlement Trusts, or its or their respective property; (d) asserting any right of setoff,
subrogation, or recoupment of any kind on account of or in connection with or with respect
to any such Claims or Interests, notwithstanding an indication of a Claim or Interest or
otherwise that a Holder of such Claim or Interest asserts, has, or intends to preserve any
right of setoff pursuant to applicable law or otherwise, against the Debtor, the Liquidating
Estate, or the Settlement Trusts; or (e) commencing or continuing any judicial or
administrative proceeding, in any forum and in any place in the world, that does not
comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

## Channeling Injunction

Notwithstanding anything to the contrary in the Plan, to preserve and
promote the settlements contemplated by and provided for in the Plan, including the
Insurance Settlement Agreements, pursuant to the exercise of the equitable jurisdiction and
power of the Bankruptcy Court under sections 105(a) and 1123(b) of the Bankruptcy Code,
the sole recourse of any Holder of a Channeled AFFF Claim against the Debtor or a
Released Party on account of such Channeled AFFF Claim shall be to and against the
Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to

and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, and such Holder shall have no right whatsoever at any time to assert any such Channeled AFFF Claim or any Estate Cause of Action that is released under the Estate Claims Settlement against the Debtor or any Released Party or any property or interest in property of the Debtor or any Released Party.  For the avoidance of doubt, the sole recourse for any Channeled AFFF Claim covered by any Insurance Policy issued by a Settling Insurance Company shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents.  Accordingly, on and after the Effective Date, all Holders of AFFF Claims that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled AFFF Claim or any Estate Cause of Action against the Debtor or any Released Party shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from the Debtor or any Released Party with respect to any such Channeled AFFF Claim or Estate Cause of Action, other than from the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, including:

a)       commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

b)       enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

c)       creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

d)       asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party; or

e)       taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents, or, with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, by the Sovereign State AFFF Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Channeled AFFF Claim.

The Debtor, the Liquidating Estate and/or any Released Party, as applicable, may enforce the Channeling Injunction and/or the Releases contained in the Plan before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at their own cost and expense, and no such cost or expense incurred by a party other than the Primary AFFF Settlement Trust shall be reimbursed or indemnified by the Primary AFFF Settlement Trust under any circumstances.

## Insurance Company Injunction

Subject to the provisos set forth in this Section, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim or cause of action (including any AFFF Claim or any Claim for or respecting any Primary AFFF Settlement Trust expense) against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Insurance Policy, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, statute or any other theory of law, equity or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim or cause of action, including:

a) commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, demand, or cause of action against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such Claim, demand, or cause of action against any Insurance Company);

b) enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

c) creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such Claim or cause of action; and

d) except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

*provided, however,* that (i) nothing in this Section shall impair or affect the rights of any member of the UTC Group, including RTX, or any member of the Otis Group (each as defined in the 2020 Separation Agreement), or any additional insured designated by RTX

or any member of the UTC Group, based upon, attributable to, arising out of, or in any way connected with an Insurance Policy, including to assert Claims or Causes of Action against any Insurance Company for covered losses and to receive proceeds in respect thereof; (ii) this injunction shall not impair in any way any actions brought by the Primary AFFF Settlement Trust against any Other Insurance Company; (iii) the Primary AFFF Settlement Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction with respect to any Other Insurance Company, in accordance with the Settlement Trust Documents, upon express written notice to such Other Insurance Company; and (iv) this injunction is not issued for the benefit of any Other Insurance Company, and no Other Insurance Company is a third-party beneficiary of this injunction.

Notwithstanding anything to the contrary in the Plan, this injunction shall not enjoin:

a) the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of Holders of AFFF Claims to assert such Claims, as applicable, in accordance with the TDPs;

b) the rights of the Primary AFFF Settlement Trust to prosecute any action based on or arising from Insurance Policies, except to the extent otherwise released;

c) the rights of the Primary AFFF Settlement Trust to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company based on or arising from the Insurance Policies;

d) any actions of the Contributing Parties in fulfilling their obligations under the Estate Claims Settlement in consultation and coordination with the Primary AFFF Settlement Trust;

e) the rights of any Insurance Company to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company; or

f) the Claims for reinsurance under reinsurance contracts or Claims under retrocessional contracts among the Settling Insurance Companies and any Other Insurance Company.

## Prohibition on Actions Against Buyer

Subject to the Sale Order and the Acquisition Agreement, Buyer, in its capacity as such, shall not have any liability for any AFFF Claims against the Debtor arising prior to the closing of the Sale. Except as expressly otherwise set forth in the Sale Order, all persons and entities hereby are forever barred, estopped and permanently enjoined from asserting against Buyer, its Affiliates, its successors or assigns, its property or the Transferred Assets, such persons' or entities' AFFF Claims that have been or could have been asserted against the Debtor arising prior to the closing of the Sale. For the avoidance of doubt, the foregoing shall

not release Buyer from, or enjoin any actions against Buyer for, any Assumed Liability or any other liability incurred by Buyer on account of its operations following the closing of the Sale.

## Limitations on Exculpations and Releases

Notwithstanding anything to the contrary in the Plan, none of the releases or exculpations set forth in the Plan shall operate to waive or release any obligation or Causes of Action of any Person:  (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations or (b) expressly set forth in and preserved by the Plan, the Plan Supplement, Plan Documents or related documents.

## Release Dispute

In the event of a Release Dispute, a Released Party may, at its sole cost and expense, file a motion with the Bankruptcy Court seeking a determination as to whether an AFFF Claimant's Cause of Action was settled and released pursuant to the Plan, and upon such motion, the Bankruptcy Court shall make such determination and, if appropriate, enjoin the prosecution of such Cause of Action as having been settled and released under the Plan.

## Relevant Definitions

"*2020 Separation Agreement*" means that certain Separation and Distribution Agreement, dated as of April 2, 2020, by and among United Technologies Corporation, Carrier Global Corporation, and Otis Worldwide Corporation.

"*Administrative Claim*" means an Allowed Claim for costs and expenses of administration of the Chapter 11 Case pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate; (b) Allowed Professional Compensation Claims; (c) Allowed Fee Examiner Compensation Claims; and (d) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

"*AFFF*" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

"*AFFF Claim*" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.

"*Assumed Liability*" shall have the meaning set forth in the Acquisition Agreement.

"*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other Claims, Causes of Action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties-in-interest under the Bankruptcy Code or applicable non-

bankruptcy law, including claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) was commenced prior to the Effective Date.

"*Buyer*" means Pacific Erin Opco, LLC, as the purchaser of substantially all of the Debtor's assets pursuant to the Acquisition Agreement and the Sale Order.

"*Carrier*" means Carrier Global Corporation, a Delaware corporation, and its non-Debtor affiliates and Related Parties.

"*Causes of Action*" means any current or future actions, Claims, cross-claims, third-party claims, causes of action, controversies, disputes, demands, rights, liens, indemnities, contributions, guaranties, suits, obligations, liabilities, losses, debts, fees or expenses, damages, interest, judgments, costs, accounts, defenses, remedies, offsets, powers, privileges, proceedings, licenses, and franchises of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, choate or inchoate, capable of being asserted directly or derivatively (including any alter ego theories), including any Claims for recovery of attorneys' fees, turnover, fraud, gross negligence, or willful misconduct, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws, consumer protection laws, environmental laws, or nuisance or trespass theories).  Causes of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to or otherwise contest Claims or Interests, (c) any claim pursuant to section 362 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Actions.

"*Channeled AFFF Claims*" means all AFFF Claims against the Debtor or the Estate channeled to the Primary AFFF Settlement Trust under the Plan and Settlement Trust Documents.  For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

"*Committee*" means the official committee of unsecured creditors of the Debtor appointed by the U.S. Trustee in the Chapter 11 Case under section 1102(a) of the Bankruptcy Code pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 83] and any amendments thereto.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Settling Parties.

"*Consummation*" means the occurrence of the Effective Date.

"*Debtor*" means Kidde-Fenwal, Inc., the debtor and debtor in possession in the Chapter 11 Case, now known as KFI Wind-Down Corp.  In 2007, KFFI (formerly known as National Foam, Inc.) merged into Kidde-Fenwal, Inc., with Kidde-Fenwal, Inc. as the surviving entity.  Pursuant to this merger, KFFI's liabilities were assumed by, and KFFI's causes of action were transferred to, Kidde-Fenwal, Inc. directly or indirectly by merger or other agreement.  The term "Debtor" includes Kidde-Fenwal, Inc. as successor by merger or other agreement by which Kidde-Fenwal, Inc. obtained or assumed the liabilities and Causes of Action of any Person.

"*Effective Date*" means the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date set forth in the Plan shall have been satisfied or waived and on which a notice indicating the Effective Date has been filed on the docket of the Chapter 11 Case.

"*Estate Causes of Action*" means Causes of Action owned or held by either the Debtor or its Estate, or capable of being asserted (currently, or in the future) by any Person or Governmental Unit on behalf of, under or through, either the Debtor or its Estate, and each of their respective successors or assigns, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions, that may be commenced by a representative of the Estate under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise.  Without limiting the foregoing, Estate Causes of Action shall include:  (a) Causes of Action that on or after the Petition Date may be exclusively asserted by or on behalf of the Debtor or its Estate under applicable law, or that prior to the Petition Date could have been asserted by the Debtor on its own behalf under applicable law, including Causes of Action based on (i) the doctrine of successor liability that seek to impose the Debtor's (including KFFI's or National Foam, Inc.'s) liabilities on an alleged successor, whether based on a contractual assumption of liability, consolidation or de facto merger, acquisition of the Debtor's product line, fraud, domination, direction of the Debtor's affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, or (ii) the doctrines of alter ego or veil piercing involving alter egos of the Debtor or the piercing of the Debtor's (including KFFI's or National Foam, Inc.'s) corporate veil, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form; (b) Causes of Action or theories for recovery or remedies that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is generally common to creditors of the Debtor and can be asserted by the Debtor under applicable law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor.  Subsections (a), (b) and (c) immediately above expressly encompass any Causes of Action based on:  (i) the alleged assumption of the Debtor's (including KFFI's or

National Foam, Inc.'s) liabilities (but not a non-Debtor's liabilities) by Kidde plc (n/k/a Kidde Limited) pursuant to the 2000 Demerger Agreement, or any alleged subsequent assumption of such liabilities of the Debtor from Kidde plc by any other Released Party; or (ii) the alleged assumption of the Debtor's liabilities (but not a non-Debtor's liabilities), including any liabilities resulting from acts or omissions of National Foam, Inc. or KFFI, by a Released Party pursuant to the 2020 Separation Agreement.  For the avoidance of doubt, Estate Causes of Action shall not include any Independent AFFF Causes of Action or any Sovereign State Retained Causes of Action or Insurance Actions against any Released Party based on acts or omissions occurring after entry into the Plan Support Agreement with respect to rights under the 2020 Separation Agreement or the RTX Waiver to access and make Claims under any Insurance Policy or otherwise obtain the benefit of the Insurance Assignment.

"*Estate Claims Settlement*" means the settlement, including the release of all Estate Causes of Action against the Released Parties, pursuant to the Estate Claims Settlement Agreement.

"*Independent AFFF Cause of Action*" means any Cause of Action that could be asserted by an AFFF Claimant against a Non-Debtor Party based on the Non-Debtor Party's own conduct and breach of duty (*i.e.*, duty owed to the AFFF Claimant and not owed to the Debtor), including (a) Causes of Action arising from such acts or omissions of such Non-Debtor Party, and (b) Causes of Action based on allegations that a Non-Debtor Party is responsible for such conduct under theories of liability or recovery or remedies that could have been asserted by an AFFF Claimant on its own behalf under applicable state or federal law in respect of such Causes of Action prior to the Petition Date based on (i) the doctrine of successor liability involving a Non-Debtor Party that is alleged to be a successor to another Non-Debtor Party with respect to liabilities not directly or indirectly assumed from the Debtor, whether based on a contractual assumption of liability (including under the 2020 Separation Agreement), consolidation or de facto merger, acquisition of product line, fraud, domination, direction of affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, (ii) the doctrines of alter ego or veil piercing involving alter egos of a Non-Debtor Party, or piercing the corporate veil between Non-Debtor Parties, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form, or (iii) alleged derivative or vicarious liability of a Non-Debtor Party for liabilities of another Non-Debtor Party not directly or indirectly assumed from the Debtor; *provided* that, if any Cause of Action falls within the definition of Estate Cause of Action or Sovereign State Retained Cause of Action, it is not an Independent AFFF Cause of Action.
"*Insurance Assignment*" means the transfer by the Debtor and Carrier to the Primary AFFF Settlement Trust of certain rights in connection with the Insurance Policies as set forth in Article 5 of the Plan.

"*Insurance Policy/ies*" means: (i) any insurance policies listed on <u>Schedule 1</u> to the Plan, (ii) to the extent not listed on Schedule 1, any "general liability" insurance (which, for the avoidance of doubt, shall exclude director & officer, automobile, or workers' compensation insurance) contract, binder, certificate, insurance policy, or reinsurance policy, whether currently known or unknown, discovered after the Effective Date, in effect at any time on or before the Petition Date naming the Debtor, the Contributing Parties, or any of their predecessors, subsidiaries, or past or present affiliates as an insured (whether as the primary or additional insured) or that provides or may provide coverage to Carrier or the Debtor for AFFF Claims, (iii) "Aviation" policies to

which Carrier or the Debtor has rights as listed in Schedule 2 to the Plan solely to the extent of Insurance Policy Rights applicable to or arising from AFFF Claims and (iv) any other subsequently discovered insurance policies of the same types as listed in Schedules 1 and 2 to the Plan to the extent that Carrier or the Debtor have rights under such policies (whether or not such policies are specifically titled as "General Liability" or "Aviation" policies).  For the avoidance of doubt, "Insurance Policies" shall not include any D&O Policies, automobile policies or worker's compensation insurance.

"*Insurance Policy Rights*" means any and all rights subject to the Insurance Assignment.

"*KFFI*" means Kidde Fire Fighting, Inc. (formerly known as National Foam, Inc.).

"*Liquidating Estate Claims*" means Administrative Claims, Priority Tax Claims, Other Priority Claims and Secured Claims.

"*New National Foam*" means, collectively, National Foam, Inc. f/k/a Eurostar US Tradeco, Inc., Angus Fire Ltd. f/k/a Eurostar Tradeco Limited, Angus International Safety Group Limited f/k/a/ Eurostar Holdco Limited, and each of their Related Parties.

"*New National Foam Release*" means a settlement between the Debtor and New National Foam pursuant to which (a) Estate Causes of Action against New National Foam are resolved for value reasonably acceptable to the Settling Parties and (b) New National Foam agrees to absolutely, unconditionally, and irrevocably release and discharge the Debtor and each Released Party from any and all Claims and Causes of Action, whether known or unknown, based on or relating to, or in any manner arising from that certain Share and Business Sale Agreement, dated as of June 28, 2013, or any other occurrence taking place on or before the Effective Date, including Proof of Claim No. 225, and otherwise in form and substance reasonably acceptable to the Settling Parties.

"*Non-Debtor Party*" means any Person other than the Debtor.  For the avoidance of doubt, the term "*Non-Debtor Party*" does not include KFFI or National Foam, Inc.

"*Other Insurance Company*" means an Insurance Company that is not a Settling Insurance Company.

"*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"*Person*" means a "person" or "entity" as defined in the Bankruptcy Code.

"*Petition Date*" means May 14, 2023, the date on which the Debtor commenced the Chapter 11 Case.

"*PFAS*" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.

"*Primary AFFF Settlement Trust*" means the settlement trust organized under the laws of the state of Delaware and established under the Plan and the Settlement Trust Documents, which

shall (i) have the powers, duties and obligations set forth in the Plan and the Settlement Trust Documents, (ii) assume all liability of the Debtor and the Estate for, and administer, all Channeled AFFF Claims and (iii) be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code.

"*Primary AFFF Settlement Trust Agreement*" means the Settlement Trust Agreement governing the Primary AFFF Settlement Trust, dated as of the Effective Date, as the same may be amended or modified from time to time in accordance with the terms thereof.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Released Party*" means (i) Carrier, (ii) RTX, and (iii) each of their Related Parties in their capacities as such.  Released Parties shall not include DuPont, 3M, or their current or former affiliates and Related Parties.  If a Person is a current or former affiliate or Related Party of DuPont or 3M, and such Person is also a current or former affiliate or Related Party of Carrier or RTX, then such Person shall not be a Released Party.  For the avoidance of doubt, New National Foam shall not be a Released Party unless the New National Foam Release  is provided by the Effective Date.

"*Related Party*" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, and current and former affiliates and subsidiaries, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, all only in their capacity as a representative of such Person, and (c) respective heirs, executors, estates, and nominees, in each case solely in its capacity as such.

"*RTX Waiver*" shall have the meaning set forth in Article 5.5.11(b) of the Plan.

"*Sale Order*" means the *Order (I) Approving the Sale of All or Substantially All of the Debtor's Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving Debtor's Entry, and Performance Under the Contribution Agreement, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Granting Related Relief*, entered by the Bankruptcy Court on April 2, 2024 [D.I. 1058].

"*Settlement Trust Agreements*" means, collectively, (i) the Primary AFFF Settlement Trust Agreement, (ii) the Sovereign State AFFF Settlement Trust Agreement and (iii) the GUC Liquidating Trust Agreement.  To the extent that any provision of a Settlement Trust Agreement impacts the rights of Carrier, such provision shall not be included in such Settlement Trust Agreement unless reasonably acceptable to Carrier.

"*Settlement Trust Documents*" means, collectively, (a) the Settlement Trust Agreements, (b) the TDPs, (c) the Confirmation Order, and (d) any other agreements, instruments, and documents governing the establishment, administration, and operation of the Settlement Trusts.

"*Settlement Trusts*" means the Primary AFFF Settlement Trust, Sovereign State AFFF Settlement Trust and GUC Liquidating Trust.

"*Settling Insurance Company*" means any Insurance Company that contributes funds, proceeds, or other consideration to or for the benefit of the Primary AFFF Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order.  No Insurance Company shall be considered a Settling Insurance Company without the Committee's prior written consent.

"*Sovereign State*" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.

"*Sovereign State AFFF Settlement Trust*" means the trust established under the Plan and the Settlement Trust Documents to administer all Sovereign State Claims against the Debtor.  The Sovereign State AFFF Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code and shall have the powers, duties and obligations set forth in the Settlement Trust Documents.

"*Sovereign State Retained Cause of Action*" means any Claim or Cause of Action asserted, or which may be asserted, by a Sovereign State against a Contributing Party that (1) is not an Estate Cause of Action and (2) arises from a statute, regulation, or common law that creates a theory of liability, by which a Sovereign State could recover damages or penalties, or obtain equitable or injunctive relief, against a Contributing Party.  For the avoidance of doubt, a Sovereign State may assert a Sovereign State Retained Cause of Action irrespective of whether such Sovereign State Retained Cause of Action could also be considered an Independent AFFF Cause of Action.

"*TDPs*" or "Trust Distribution Procedures" means the Trust Distribution Procedures for the Settlement Trusts, as the same may be amended or modified from time to time in accordance with the terms thereof, that will govern the claims submission, adjudication, and distribution processes for the Settlement Trusts in a manner that is fair and equitable to Holders of Allowed Channeled AFFF Claims.  To the extent that any provision of the TDPs impacts the rights of Carrier, such provision shall not be included unless reasonably acceptable to Carrier.

"*Transferred Assets*" shall have the meaning set forth in the Acquisition Agreement.

# **EXHIBIT**

**EXHIBIT**

| Creditor Name | Type of Authority for Vote (A OR B) | | Vote to ACCEPT (in Favor of the Plan) OR Vote to REJECT (Against the Plan) | |
|---|---|---|---|---|
| | A | B | ACCEPT | REJECT |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ | ☐ |

**<u>EXHIBIT 3</u>**

**Cover Letter**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

In re:

KFI WIND-DOWN CORP.,[1]

      Debtor.

Chapter 11

Case No. 23-10638 (LSS)

## COVER LETTER AND RECOMMENDATION OF THE DEBTOR

**TO ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN:**

      You are receiving this letter and the enclosed materials because you are entitled to vote on the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* (as may be amended, modified and supplemented from time to time and together with all schedules and exhibits thereto, the "Plan").[2] **You should read this letter carefully and discuss it with your attorney.  If you do not have an attorney, you may wish to consult one.**

**THE DEBTOR STRONGLY URGES YOU TO PROPERLY AND TIMELY SUBMIT YOUR BALLOT CASTING A VOTE TO ACCEPT THE PLAN IN ACCORDANCE WITH THE INSTRUCTIONS INDICATED ON YOUR BALLOT.**

**THE VOTING DEADLINE IS 5:00 P.M. PREVAILING EASTERN TIME ON DECEMBER 15, 2025.**

---

**THE PLAN CONTAINS RELEASE, INJUNCTION AND EXCULPATION PROVISIONS.  THE PROVISIONS ARE SET FORTH IN APPENDIX A TO THIS LETTER.  YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.**

---

---

[1]    The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters are located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]    Capitalized terms used but not otherwise defined herein have the meanings as set forth in the Plan, the Disclosure Statement or Disclosure Statement Order, as applicable.

On May 14, 2023, KFI Wind-Down Corp. f/k/a Kidde-Fenwal Inc. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") a voluntary petition for relief under the Bankruptcy Code.

On [•], 2025, the Bankruptcy Court entered the *Order (I) Approving the Adequacy of the Disclosure Statement and Form and Manner of Notice of Hearing Thereon; (II) Establishing Solicitation Procedures; (III) Approving the Form and Manner of Notice to Attorneys and Solicitation Directive; (IV) Approving the Form of Ballots; (V) Approving the Form, Manner and Scope of Confirmation Notices; (VI) Establishing Certain Deadlines in Connection with Approval of Disclosure Statement and Confirmation of Plan; and (VII) Granting Related Relief* [D.I. [•]] (the "Disclosure Statement Order").  Among other things, the Disclosure Statement Order approved the adequacy of the *Disclosure Statement for the Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* (as may be amended, modified and supplemented from time to time and together with all schedules and exhibits thereto, the "Disclosure Statement").

The enclosed materials set forth below comprise your Solicitation Package, and were approved by the Bankruptcy Court for distribution in connection with the solicitation of votes to accept the Plan:

a.    this letter;
b.    the Committee Letter;
c.    [the AHC Letter;]
d.    the Solicitation Procedures;
e.    a USB flash drive containing a copy of the Disclosure Statement (and exhibits thereto, including the Plan) and the documents contained in the Plan Supplement that have been filed prior to the Solicitation Mailing Deadline;
f.    the Disclosure Statement Order (excluding exhibits);
g.    the applicable Ballot;
h.    a preaddressed, return envelope for the completed Ballot; and
i.    the Confirmation Hearing Notice.

[The Committee Letter represents the views of the Committee and the AHC Letter represents the views of the AHC.]  The Debtor agrees with the recommendation by [the Committee and the AHC] that all Holders of Claims in the Voting Classes vote in support of the Plan, but does not adopt each of the assertions or characterizations included in such letters.

The Debtor believes that the acceptance of the Plan is in the best interests of its Estate, Holders of Claims and Interests, and all other parties-in-interest.  Moreover, the Debtor believes that any alternative other than confirmation of the Plan could result in extensive delays and increased administrative expenses, which, in turn, likely would result in smaller Distributions in the Chapter 11 Case.

4938-1055-4625 v.9

If you have any questions regarding the Plan or the Solicitation Package, please contact Stretto Inc., the Debtor's solicitation agent (the "Solicitation Agent"), by: (a) calling the Solicitation Agent at (866) 887-0488 (toll-free) or +1 (949) 889-0128 (international); (b) e-mailing the Solicitation Agent at KFIInquiries@stretto.com; or (c) writing to the Solicitation Agent at KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602.  You may also obtain copies of any pleadings filed in the Chapter 11 Case free of charge on the Solicitation Agent's case website at: https://cases.stretto.com/kfi.  In addition, the Debtor will, at its expense, provide paper copies of the Plan, the Disclosure Statement, or other pleadings filed in the Chapter 11 Case to any party submitting a request for such paper copies by (a) calling the Solicitation Agent at (866) 887-0488 (toll-free) or +1 (949) 889-0128 (international) or (b) e-mailing the Solicitation Agent at KFIInquiries@stretto.com.  Please be advised that the Solicitation Agent is authorized to answer questions about, and provide additional copies of, solicitation materials, but may not advise you as to whether you should vote to accept or reject the Plan or provide legal advice.

Dated: [•], 2025                           Sincerely,

                                           *KFI Wind-Down Corp.*

3

<u>**Appendix A**</u>

**Release, Injunction and Exculpation Provisions in the Plan[1]**

---

[1]    The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.

## Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released and cancelled, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Liquidating Estate and their successors and assigns.  Any Holder of such mortgage, deed of trust, Lien, pledge or other security interest (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including and cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Liquidating Administrators to evidence such release, including the execution, delivery and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

## Releases by the Estate

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party, the Debtor, the Liquidating Estate and each Related Party of the Debtor and the Liquidating Estate shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, or any other Person or Governmental Unit asserting currently or in the future by, under, through, or on behalf of the Debtor or its Estate, and each of their respective successors or assigns, including the Settlement Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between one or both of the Debtor, on the one hand, and any Released Party, the Liquidating Estate, or any Related Party of the Debtor and the Liquidating Estate, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.3 of the Plan shall not be construed to release any post-Effective Date obligations under the RTX Waiver, the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, which specifically provides that such Estate Claims Settlement can be terminated, and the releases provided in the Plan or in the Estate Claims Settlement are void, if Carrier fails to make the installments of the Guaranteed Cash Payment when due and such failure is not timely cured within 30 days, at which time the Primary AFFF Settlement Trust is entitled to commence, prosecute, or continue all Estate Causes of Action against the Released Parties in any court of competent jurisdiction, and take such other actions as the Primary AFFF Settlement Trustee may determine in the exercise of their fiduciary duties.

## Releases by the Released Parties

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Released Parties and their successors or assigns of and from any and all Claims and Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, the Debtor's current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between any of the Debtor, the Liquidating Estate, the Settlement Trusts or the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case, on the one hand, and any Released Party, on the other hand, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any post-Effective Date obligations under the Plan Documents, the Confirmation Order, the 2020 Separation Agreement as supplemented by the RTX Waiver, or the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, or the right of any Person to enforce the same in accordance with

the terms thereof. Except with respect to the Claims and Causes of Action against the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case that are released and discharged under Article 10.4 of the Plan, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any obligations, rights, Causes of Action or Claims that Carrier Global Corporation or members of the Carrier Group (other than the Debtor), Otis Worldwide Corporation or members of the Otis Group, or RTX or members of the UTC Group may have against any Person under the 2020 Separation Agreement as supplemented by the RTX Waiver (including indemnification rights of RTX and other members of the "UTC Group" under the 2020 Separation Agreement). For the avoidance of doubt, in the event that the Estate Claims Settlement Effective Date does not occur or the Estate Claims Settlement is terminated as contemplated by the last paragraph of Article 10.3 in the Plan, all releases being provided by the Released Parties under the Plan shall be void.

## Scope of Releases

Each Person providing releases under the Plan, including the Debtor, the Estate and the Settling Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts. Each Person providing releases under the Plan shall be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

## Exculpation

Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtor and its directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation.

As of the Effective Date, to the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in Article 10 of the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person for any act or omission in connection with, related to or arising out of this Chapter 11 Case, including (a) the operation of the Debtor's businesses during the pendency of this Chapter 11 Case; (b) the

administration and adjudication of Claims and Interests during this Chapter 11 Case; (c) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Plan, the Disclosure Statement, the Plan Supplement, or any related contract, instrument, release or other agreement or document created or entered into in connection with the Chapter 11 Case (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan and the distribution of property under the Plan); (d) any other transaction, agreement, event, or other occurrence related to the Chapter 11 Case taking place on or before the Effective Date, other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.

<div align="center">

**Injunction**

</div>

Except as otherwise expressly provided in the Plan or the Confirmation Order, the satisfaction and release pursuant to Article 10 of the Plan shall also act as a permanent injunction against any Person who has held, holds, or may in the future hold Claims against or Interests in the Debtor or any of its assets or properties based on any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are treated, released, settled, channeled, or exculpated pursuant to the terms of the Plan from taking any of the following actions on account of, or on the basis of, such Claims or Interests:  (a) commencing or continuing any action to collect, enforce, offset, recoup, or recover with respect to any Claims or Interests treated, released, settled, channeled, or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Claim or Interest against the Debtor, the Liquidating Estate, the Settlement Trusts, or its or their respective property; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of or in connection with or with respect to any such Claims or Interests, notwithstanding an indication of a Claim or Interest or otherwise that a Holder of such Claim or Interest asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise, against the Debtor, the Liquidating Estate, or the Settlement Trusts; or (e) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

<div align="center">

**Channeling Injunction**

</div>

Notwithstanding anything to the contrary in the Plan, to preserve and promote the settlements contemplated by and provided for in the Plan, including the Insurance Settlement Agreements, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under sections 105(a) and 1123(b) of the Bankruptcy Code, the sole recourse of any Holder of a Channeled AFFF Claim against the Debtor or a Released Party on account of such Channeled AFFF Claim shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to

**and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, and such Holder shall have no right whatsoever at any time to assert any such Channeled AFFF Claim or any Estate Cause of Action that is released under the Estate Claims Settlement against the Debtor or any Released Party or any property or interest in property of the Debtor or any Released Party.  For the avoidance of doubt, the sole recourse for any Channeled AFFF Claim covered by any Insurance Policy issued by a Settling Insurance Company shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents.  Accordingly, on and after the Effective Date, all Holders of AFFF Claims that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled AFFF Claim or any Estate Cause of Action against the Debtor or any Released Party shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from the Debtor or any Released Party with respect to any such Channeled AFFF Claim or Estate Cause of Action, other than from the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, including:**

**a)      commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;**

**b)      enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;**

**c)      creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;**

**d)      asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party; or**

**e)      taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents, or, with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, by the Sovereign State AFFF Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Channeled AFFF Claim.**

The Debtor, the Liquidating Estate and/or any Released Party, as applicable, may enforce the Channeling Injunction and/or the Releases contained in the Plan before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at their own cost and expense, and no such cost or expense incurred by a party other than the Primary AFFF Settlement Trust shall be reimbursed or indemnified by the Primary AFFF Settlement Trust under any circumstances.

## Insurance Company Injunction

Subject to the provisos set forth in this Section, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim or cause of action (including any AFFF Claim or any Claim for or respecting any Primary AFFF Settlement Trust expense) against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Insurance Policy, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, statute or any other theory of law, equity or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim or cause of action, including:

a)      commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, demand, or cause of action against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such Claim, demand, or cause of action against any Insurance Company);

b)      enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

c)      creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such Claim or cause of action; and

d)      except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

*provided, however,* that (i) nothing in this Section shall impair or affect the rights of any member of the UTC Group, including RTX, or any member of the Otis Group (each as defined in the 2020 Separation Agreement), or any additional insured designated by RTX

or any member of the UTC Group, based upon, attributable to, arising out of, or in any way connected with an Insurance Policy, including to assert Claims or Causes of Action against any Insurance Company for covered losses and to receive proceeds in respect thereof; (ii) this injunction shall not impair in any way any actions brought by the Primary AFFF Settlement Trust against any Other Insurance Company; (iii) the Primary AFFF Settlement Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction with respect to any Other Insurance Company, in accordance with the Settlement Trust Documents, upon express written notice to such Other Insurance Company; and (iv) this injunction is not issued for the benefit of any Other Insurance Company, and no Other Insurance Company is a third-party beneficiary of this injunction.

Notwithstanding anything to the contrary in the Plan, this injunction shall not enjoin:

a)      the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of Holders of AFFF Claims to assert such Claims, as applicable, in accordance with the TDPs;

b)      the rights of the Primary AFFF Settlement Trust to prosecute any action based on or arising from Insurance Policies, except to the extent otherwise released;

c)      the rights of the Primary AFFF Settlement Trust to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company based on or arising from the Insurance Policies;

d)      any actions of the Contributing Parties in fulfilling their obligations under the Estate Claims Settlement in consultation and coordination with the Primary AFFF Settlement Trust;

e)      the rights of any Insurance Company to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company; or

f)      the Claims for reinsurance under reinsurance contracts or Claims under retrocessional contracts among the Settling Insurance Companies and any Other Insurance Company.

## Prohibition on Actions Against Buyer

Subject to the Sale Order and the Acquisition Agreement, Buyer, in its capacity as such, shall not have any liability for any AFFF Claims against the Debtor arising prior to the closing of the Sale.  Except as expressly otherwise set forth in the Sale Order, all persons and entities hereby are forever barred, estopped and permanently enjoined from asserting against Buyer, its Affiliates, its successors or assigns, its property or the Transferred Assets, such persons' or entities' AFFF Claims that have been or could have been asserted against the Debtor arising prior to the closing of the Sale.  For the avoidance of doubt, the foregoing shall

not release Buyer from, or enjoin any actions against Buyer for, any Assumed Liability or any other liability incurred by Buyer on account of its operations following the closing of the Sale.

## Limitations on Exculpations and Releases

Notwithstanding anything to the contrary in the Plan, none of the releases or exculpations set forth in the Plan shall operate to waive or release any obligation or Causes of Action of any Person:  (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations or (b) expressly set forth in and preserved by the Plan, the Plan Supplement, Plan Documents or related documents.

## Release Dispute

In the event of a Release Dispute, a Released Party may, at its sole cost and expense, file a motion with the Bankruptcy Court seeking a determination as to whether an AFFF Claimant's Cause of Action was settled and released pursuant to the Plan, and upon such motion, the Bankruptcy Court shall make such determination and, if appropriate, enjoin the prosecution of such Cause of Action as having been settled and released under the Plan.

## Relevant Definitions

"*2020 Separation Agreement*" means that certain Separation and Distribution Agreement, dated as of April 2, 2020, by and among United Technologies Corporation, Carrier Global Corporation, and Otis Worldwide Corporation.

"*Administrative Claim*" means an Allowed Claim for costs and expenses of administration of the Chapter 11 Case pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate; (b) Allowed Professional Compensation Claims; (c) Allowed Fee Examiner Compensation Claims; and (d) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

"*AFFF*" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

"*AFFF Claim*" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.

"*Assumed Liability*" shall have the meaning set forth in the Acquisition Agreement.

"*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other Claims, Causes of Action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties-in-interest under the Bankruptcy Code or applicable non-

bankruptcy law, including claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) was commenced prior to the Effective Date.

"*Buyer*" means Pacific Erin Opco, LLC, as the purchaser of substantially all of the Debtor's assets pursuant to the Acquisition Agreement and the Sale Order.

"*Carrier*" means Carrier Global Corporation, a Delaware corporation, and its non-Debtor affiliates and Related Parties.

"*Causes of Action*" means any current or future actions, Claims, cross-claims, third-party claims, causes of action, controversies, disputes, demands, rights, liens, indemnities, contributions, guaranties, suits, obligations, liabilities, losses, debts, fees or expenses, damages, interest, judgments, costs, accounts, defenses, remedies, offsets, powers, privileges, proceedings, licenses, and franchises of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, choate or inchoate, capable of being asserted directly or derivatively (including any alter ego theories), including any Claims for recovery of attorneys' fees, turnover, fraud, gross negligence, or willful misconduct, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws, consumer protection laws, environmental laws, or nuisance or trespass theories).  Causes of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to or otherwise contest Claims or Interests, (c) any claim pursuant to section 362 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Actions.

"*Channeled AFFF Claims*" means all AFFF Claims against the Debtor or the Estate channeled to the Primary AFFF Settlement Trust under the Plan and Settlement Trust Documents.  For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

"*Committee*" means the official committee of unsecured creditors of the Debtor appointed by the U.S. Trustee in the Chapter 11 Case under section 1102(a) of the Bankruptcy Code pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 83] and any amendments thereto.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Settling Parties.

"*Consummation*" means the occurrence of the Effective Date.

"*Debtor*" means Kidde-Fenwal, Inc., the debtor and debtor in possession in the Chapter 11 Case, now known as KFI Wind-Down Corp.  In 2007, KFFI (formerly known as National Foam, Inc.) merged into Kidde-Fenwal, Inc., with Kidde-Fenwal, Inc. as the surviving entity.  Pursuant to this merger, KFFI's liabilities were assumed by, and KFFI's causes of action were transferred to, Kidde-Fenwal, Inc. directly or indirectly by merger or other agreement.  The term "Debtor" includes Kidde-Fenwal, Inc. as successor by merger or other agreement by which Kidde-Fenwal, Inc. obtained or assumed the liabilities and Causes of Action of any Person.

"*Effective Date*" means the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date set forth in the Plan shall have been satisfied or waived and on which a notice indicating the Effective Date has been filed on the docket of the Chapter 11 Case.

"*Estate Causes of Action*" means Causes of Action owned or held by either the Debtor or its Estate, or capable of being asserted (currently, or in the future) by any Person or Governmental Unit on behalf of, under or through, either the Debtor or its Estate, and each of their respective successors or assigns, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions, that may be commenced by a representative of the Estate under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise.  Without limiting the foregoing, Estate Causes of Action shall include:  (a) Causes of Action that on or after the Petition Date may be exclusively asserted by or on behalf of the Debtor or its Estate under applicable law, or that prior to the Petition Date could have been asserted by the Debtor on its own behalf under applicable law, including Causes of Action based on (i) the doctrine of successor liability that seek to impose the Debtor's (including KFFI's or National Foam, Inc.'s) liabilities on an alleged successor, whether based on a contractual assumption of liability, consolidation or de facto merger, acquisition of the Debtor's product line, fraud, domination, direction of the Debtor's affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, or (ii) the doctrines of alter ego or veil piercing involving alter egos of the Debtor or the piercing of the Debtor's (including KFFI's or National Foam, Inc.'s) corporate veil, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form; (b) Causes of Action or theories for recovery or remedies that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is generally common to creditors of the Debtor and can be asserted by the Debtor under applicable law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor.  Subsections (a), (b) and (c) immediately above expressly encompass any Causes of Action based on:  (i) the alleged assumption of the Debtor's (including KFFI's or

National Foam, Inc.'s) liabilities (but not a non-Debtor's liabilities) by Kidde plc (n/k/a Kidde Limited) pursuant to the 2000 Demerger Agreement, or any alleged subsequent assumption of such liabilities of the Debtor from Kidde plc by any other Released Party; or (ii) the alleged assumption of the Debtor's liabilities (but not a non-Debtor's liabilities), including any liabilities resulting from acts or omissions of National Foam, Inc. or KFFI, by a Released Party pursuant to the 2020 Separation Agreement.  For the avoidance of doubt, Estate Causes of Action shall not include any Independent AFFF Causes of Action or any Sovereign State Retained Causes of Action or Insurance Actions against any Released Party based on acts or omissions occurring after entry into the Plan Support Agreement with respect to rights under the 2020 Separation Agreement or the RTX Waiver to access and make Claims under any Insurance Policy or otherwise obtain the benefit of the Insurance Assignment.

"*Estate Claims Settlement*" means the settlement, including the release of all Estate Causes of Action against the Released Parties, pursuant to the Estate Claims Settlement Agreement.

"*Independent AFFF Cause of Action*" means any Cause of Action that could be asserted by an AFFF Claimant against a Non-Debtor Party based on the Non-Debtor Party's own conduct and breach of duty (*i.e.*, duty owed to the AFFF Claimant and not owed to the Debtor), including (a) Causes of Action arising from such acts or omissions of such Non-Debtor Party, and (b) Causes of Action based on allegations that a Non-Debtor Party is responsible for such conduct under theories of liability or recovery or remedies that could have been asserted by an AFFF Claimant on its own behalf under applicable state or federal law in respect of such Causes of Action prior to the Petition Date based on (i) the doctrine of successor liability involving a Non-Debtor Party that is alleged to be a successor to another Non-Debtor Party with respect to liabilities not directly or indirectly assumed from the Debtor, whether based on a contractual assumption of liability (including under the 2020 Separation Agreement), consolidation or de facto merger, acquisition of product line, fraud, domination, direction of affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, (ii) the doctrines of alter ego or veil piercing involving alter egos of a Non-Debtor Party, or piercing the corporate veil between Non-Debtor Parties, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form, or (iii) alleged derivative or vicarious liability of a Non-Debtor Party for liabilities of another Non-Debtor Party not directly or indirectly assumed from the Debtor; *provided* that, if any Cause of Action falls within the definition of Estate Cause of Action or Sovereign State Retained Cause of Action, it is not an Independent AFFF Cause of Action.
"*Insurance Assignment*" means the transfer by the Debtor and Carrier to the Primary AFFF Settlement Trust of certain rights in connection with the Insurance Policies as set forth in Article 5 of the Plan.

"*Insurance Policy/ies*" means: (i) any insurance policies listed on Schedule 1 to the Plan, (ii) to the extent not listed on Schedule 1, any "general liability" insurance (which, for the avoidance of doubt, shall exclude director & officer, automobile, or workers' compensation insurance) contract, binder, certificate, insurance policy, or reinsurance policy, whether currently known or unknown, discovered after the Effective Date, in effect at any time on or before the Petition Date naming the Debtor, the Contributing Parties, or any of their predecessors, subsidiaries, or past or present affiliates as an insured (whether as the primary or additional insured) or that provides or may provide coverage to Carrier or the Debtor for AFFF Claims, (iii) "Aviation" policies to

which Carrier or the Debtor has rights as listed in Schedule 2 to the Plan solely to the extent of Insurance Policy Rights applicable to or arising from AFFF Claims and (iv) any other subsequently discovered insurance policies of the same types as listed in Schedules 1 and 2 to the Plan to the extent that Carrier or the Debtor have rights under such policies (whether or not such policies are specifically titled as "General Liability" or "Aviation" policies).  For the avoidance of doubt, "Insurance Policies" shall not include any D&O Policies, automobile policies or worker's compensation insurance.

"*Insurance Policy Rights*" means any and all rights subject to the Insurance Assignment.

"*KFFI*" means Kidde Fire Fighting, Inc. (formerly known as National Foam, Inc.).

"*Liquidating Estate Claims*" means Administrative Claims, Priority Tax Claims, Other Priority Claims and Secured Claims.

"*New National Foam*" means, collectively, National Foam, Inc. f/k/a Eurostar US Tradeco, Inc., Angus Fire Ltd. f/k/a Eurostar Tradeco Limited, Angus International Safety Group Limited f/k/a/ Eurostar Holdco Limited, and each of their Related Parties.

"*New National Foam Release*" means a settlement between the Debtor and New National Foam pursuant to which (a) Estate Causes of Action against New National Foam are resolved for value reasonably acceptable to the Settling Parties and (b) New National Foam agrees to absolutely, unconditionally, and irrevocably release and discharge the Debtor and each Released Party from any and all Claims and Causes of Action, whether known or unknown, based on or relating to, or in any manner arising from that certain Share and Business Sale Agreement, dated as of June 28, 2013, or any other occurrence taking place on or before the Effective Date, including Proof of Claim No. 225, and otherwise in form and substance reasonably acceptable to the Settling Parties.

"*Non-Debtor Party*" means any Person other than the Debtor.  For the avoidance of doubt, the term "*Non-Debtor Party*" does not include KFFI or National Foam, Inc.

"*Other Insurance Company*" means an Insurance Company that is not a Settling Insurance Company.

"*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"*Person*" means a "person" or "entity" as defined in the Bankruptcy Code.

"*Petition Date*" means May 14, 2023, the date on which the Debtor commenced the Chapter 11 Case.

"*PFAS*" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.

"*Primary AFFF Settlement Trust*" means the settlement trust organized under the laws of the state of Delaware and established under the Plan and the Settlement Trust Documents, which

shall (i) have the powers, duties and obligations set forth in the Plan and the Settlement Trust Documents, (ii) assume all liability of the Debtor and the Estate for, and administer, all Channeled AFFF Claims and (iii) be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code.

"*Primary AFFF Settlement Trust Agreement*" means the Settlement Trust Agreement governing the Primary AFFF Settlement Trust, dated as of the Effective Date, as the same may be amended or modified from time to time in accordance with the terms thereof.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Released Party*" means (i) Carrier, (ii) RTX, and (iii) each of their Related Parties in their capacities as such.  Released Parties shall not include DuPont, 3M, or their current or former affiliates and Related Parties.  If a Person is a current or former affiliate or Related Party of DuPont or 3M, and such Person is also a current or former affiliate or Related Party of Carrier or RTX, then such Person shall not be a Released Party.  For the avoidance of doubt, New National Foam shall not be a Released Party unless the New National Foam Release  is provided by the Effective Date.

"*Related Party*" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, and current and former affiliates and subsidiaries, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, all only in their capacity as a representative of such Person, and (c) respective heirs, executors, estates, and nominees, in each case solely in its capacity as such.

"*RTX Waiver*" shall have the meaning set forth in Article 5.5.11(b) of the Plan.

"*Sale Order*" means the *Order (I) Approving the Sale of All or Substantially All of the Debtor's Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving Debtor's Entry, and Performance Under the Contribution Agreement, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Granting Related Relief*, entered by the Bankruptcy Court on April 2, 2024 [D.I. 1058].

"*Settlement Trust Agreements*" means, collectively, (i) the Primary AFFF Settlement Trust Agreement, (ii) the Sovereign State AFFF Settlement Trust Agreement and (iii) the GUC Liquidating Trust Agreement.  To the extent that any provision of a Settlement Trust Agreement impacts the rights of Carrier, such provision shall not be included in such Settlement Trust Agreement unless reasonably acceptable to Carrier.

"*Settlement Trust Documents*" means, collectively, (a) the Settlement Trust Agreements, (b) the TDPs, (c) the Confirmation Order, and (d) any other agreements, instruments, and documents governing the establishment, administration, and operation of the Settlement Trusts.

"*Settlement Trusts*" means the Primary AFFF Settlement Trust, Sovereign State AFFF Settlement Trust and GUC Liquidating Trust.

"*Settling Insurance Company*" means any Insurance Company that contributes funds, proceeds, or other consideration to or for the benefit of the Primary AFFF Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order.  No Insurance Company shall be considered a Settling Insurance Company without the Committee's prior written consent.

"*Sovereign State*" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.

"*Sovereign State AFFF Settlement Trust*" means the trust established under the Plan and the Settlement Trust Documents to administer all Sovereign State Claims against the Debtor.  The Sovereign State AFFF Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code and shall have the powers, duties and obligations set forth in the Settlement Trust Documents.

"*Sovereign State Retained Cause of Action*" means any Claim or Cause of Action asserted, or which may be asserted, by a Sovereign State against a Contributing Party that (1) is not an Estate Cause of Action and (2) arises from a statute, regulation, or common law that creates a theory of liability, by which a Sovereign State could recover damages or penalties, or obtain equitable or injunctive relief, against a Contributing Party.  For the avoidance of doubt, a Sovereign State may assert a Sovereign State Retained Cause of Action irrespective of whether such Sovereign State Retained Cause of Action could also be considered an Independent AFFF Cause of Action.

"*TDPs*" or "Trust Distribution Procedures" means the Trust Distribution Procedures for the Settlement Trusts, as the same may be amended or modified from time to time in accordance with the terms thereof, that will govern the claims submission, adjudication, and distribution processes for the Settlement Trusts in a manner that is fair and equitable to Holders of Allowed Channeled AFFF Claims.  To the extent that any provision of the TDPs impacts the rights of Carrier, such provision shall not be included unless reasonably acceptable to Carrier.

"*Transferred Assets*" shall have the meaning set forth in the Acquisition Agreement.

# **EXHIBIT 4**

**Committee Letter**

**brown**rudnick

DAVID J. MOLTON
KiddeCreditorResponse@brownrudnick.com

## OFFICIAL COMMITTEE OF UNSECURED CREDITORS
## OF KFI WIND-DOWN CORP.

c/o Brown Rudnick LLP
7 Times Square New York, NY 10036
_____, 2025

TO:   THE HOLDERS OF CLASS 3A (WATER PROVIDER CLAIMS), 3B (AIRPORT
CLAIMS), 3C (SOVEREIGN STATE CLAIMS), 3D (PROPERTY DAMAGE
CLAIMS), 3E (PERSONAL INJURY CLAIMS), 3F (SOVEREIGN TRIBE
CLAIMS), 3G (BUSINESS LOSS CLAIMS), 3H (FIRE TRAINING FACILITY
CLAIMS), 3I (LANDFILL CLAIMS), 3J (STORMWATER CLAIMS), 3K
(WASTEWATER CLAIMS) AND 4 (GENERAL UNSECURED CLAIMS) IN THE
KFI WIND-DOWN CORP. BANKRUPTCY CASE

_____

We write to you on behalf of The Official Committee of Unsecured Creditors (the
"Committee"), which was appointed by the United States Trustee in the Chapter 11 bankruptcy
case of KFI Wind-Down Corp. f/k/a Kidde-Fenwal, Inc. (the "Debtor"), Case No. 23-10638
(LSS) pending in the United States Bankruptcy Court for the District of Delaware.   The
Committee was appointed on May 31, 2023 [Dkt. No. 83].

> THE COMMITTEE WRITES TO SUPPORT THE DEBTOR'S *FIFTHAMENDED
> PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE* [DKT.
> NO. [•]] (THE "PLAN") AS SET FORTH BELOW AND URGES ALL HOLDERS OF
> AFFF CLAIMS AND GENERAL UNSECURED CLAIMS TO VOTE IN FAVOR OF
> THE PLAN.

The Committee's[1] members are California Water Service Company, Peoples Water
Company of Florida, Inc., Bellflower-Somerset Mutual Water Company, Arthur Schaap d/b/a/
Highland Dairy, Patrick Williams, Richard M. Bivone, David Herman, Terry T. Miller and S.O.
Sales, all of whom are holders of AFFF Claims or General Unsecured Claims in this bankruptcy
case.   The Committee's members are water providers, personal injury, property damage and
business loss claimants and a vendor.

The Committee's role in a chapter 11 bankruptcy case is to consult with the debtor
concerning the administration of the bankruptcy case; investigate the debtor's activities and
financial condition before and after the bankruptcy case is filed, as well as, any other matter
relevant to the case or to the formulation of a plan; participate in formulation of a plan and to

---

[1]   Capitalized terms used but not otherwise defined in this letter shall have the meanings assigned to them in the
Debtor's Plan and *Disclosure Statement for Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of
the Bankruptcy Code* [Dkt. No. [•]] (the "Disclosure Statement").



advise creditors of its views as to any plan so proposed, and perform other services as are in the interest of those represented.  *See* 11 United States Code § 1103.

A brief background of the Debtor is set forth here (and in more detail at Article II of the Disclosure Statement) to aid you in understanding the Committee's recommendation that all holders of Claims in the Voting Classes vote in favor of the Plan.  The Debtor merged with a sister company Kidde Fire Fighting, Inc. ("KFFI") in 2007.  KFFI produced and distributed AFFF (aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS) as part of its "National Foam" line of business. The Debtor owned and operated the National Foam business, alongside its other businesses until June 28, 2013, when the Debtor sold the National Foam Business, which was renamed National Foam, Inc. The Debtor in this case and its affiliates had been named as defendants in more than 5,600 lawsuits as of September 2024.  These lawsuits were filed by individuals, governmental entities, and corporate entities alleging, *inter alia*, that the historic use of AFFF (i) caused damages arising from contamination of water sources (including drinking water) and other property or natural resources, and (ii) caused personal injuries to individuals.

The Committee represents the **common interests** of the Debtor's general unsecured creditors, rather than the specific interests of any single claimant.  General unsecured creditors are (i) holders "AFFF Claims" (Claims in Classes 3A, 3B, 3C, 3D, 3E, 3F, 3G, 3H, 3I, 3J and 3K) and (ii) holders of "General Unsecured Claims" (Class 4 Claims).  *See* Plan §§ 2.1.10 (defining an AFFF Claim) and 2.1.96 (defining a General Unsecured Claim).[2]

The Committee conducted a significant investigation and identified certain claims that could be asserted by or on behalf of the Debtor against Carrier Global Corporation and its affiliates.  On November 9, 2023, the Committee filed a *Motion of the Committee of Unsecured Creditors for Entry of an Order Pursuant to Sections 1103(C) and 1109(B) of the Bankruptcy Code Granting Exclusive Leave, Standing, and Authority to Commence, Prosecute and, if Appropriate, Settle or Abandon Certain Causes of Action on Behalf of the Debtor's Estate* [Dkt. No. 696] seeking the right to prosecute or settle those claims instead of allowing the Debtor to do so.  That motion was continued several times to allow for negotiations by and amongst the parties.

Following ten months of good faith negotiations between and amongst the Debtor, the Committee, and the co-leads of the plaintiff's executive committee appointed in that certain multi-district litigation captioned *In re: Aqueous Film-Forming Foams Product Liability Litigation*, MDL No. 2:18-mn-2873 (RMG) (D.S.C.) pending in the United States District Court for the District of South Carolina (the "MDL PEC Co-Leads"), Carrier Global Corporation and its related parties ("Carrier" and collectively the "PSA Parties"), the PSA Parties entered into a

---

[2]    An AFFF Claim means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.  The description, classification, treatment and voting protocols for AFFF Claims and General Unsecured Claims are outlined in Article 4 of the Plan.



Plan Support Agreement (the "PSA"), and the settlements and compromises contained therein are embodied in the Plan.

As contemplated by the PSA, pursuant to and subject to the terms and conditions of the Estate Claims Settlement Agreement, which is described in further detail at Article III.N of the Disclosure Statement, Carrier shall:

(i)     pay a **$540 million** guaranteed cash payment (the "Guaranteed Cash Payment") for the benefit of Debtor's unsecured creditors split across five payments over five years, into Settlement Trusts established per the Plan; and

(ii)    assign and transfer rights under certain Insurance Policies to the Primary AFFF Settlement Trust for the benefit of Debtor's unsecured creditors in exchange for (a) the resolution, mutual waiver and full and final release of any and all Released Claims capable of being asserted against Carrier and certain other Released Parties by or on behalf of the Debtor or its Estate (the "Estate Claims Settlement"), and (b) a share of the proceeds from the sale of the Debtor's assets and its settlement or recovery under certain Insurance Policies.

Pursuant to the Plan and the Settlement Trust Documents, AFFF Claims against the Debtor or its Estate will be channeled to the Primary AFFF Settlement Trust and administered by the Primary AFFF Settlement Trust or the Sovereign State AFFF Settlement Trust, as applicable.[3] Class 4 General Unsecured Claims against the Debtor or its Estate will be administered by the GUC Liquidating Trust. The Primary AFFF Settlement Trust will be funded with the Guaranteed Cash Payment and certain rights to recoveries under the Insurance Policies.[4] The Plan also preserves AFFF Independent Causes of Action, which are defined, in part, as any Cause of Action that could be asserted by an AFFF Claimant against a Non-Debtor Party based on the Non-Debtor Party's own conduct and breach of duty (i.e., duty owed to the AFFF

---

[3]    For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursements, or subrogation by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

[4]    The Debtor is currently pursuing its coverage claims against 34 insurers in two adversary proceedings brought before the Bankruptcy Court on November 9, 2023, and February 8, 2024, (consolidated under caption *KFI Wind-Down Corp.* v. *Ace Am. Insurance Co., et al.*, Adv. Proc. No. 23-50758 (LSS)) [Ins. Adv. D.I. 1, 318]. Through the insurance adversary proceedings, the Debtor seeks coverage for in past defense costs and future indemnity under hundreds of primary, umbrella and excess liability insurance policies to which the Debtor has rights, for amounts associated with AFFF-related liability. On November 5, 2024, the Debtor, the Committee and the AHC filed the *Motion of KFI Wind-Down Corp., the Official Committee of Unsecured Creditors, and the Ad Hoc Committee of Governmental Claimants to Stay Adversary Proceeding* [Ins. Adv. D.I. 539], seeking to stay the insurance adversary proceedings through the Effective Date of the Plan in accordance with the PSA. On April 1, 2025, the Court entered an Agreed Order Staying Adversary Proceeding. [Ins. Adv. D.I. 585].



Claimant and not owed to the Debtor).  *See* Plan § 2.1.106.  The compromise is memorialized in the Plan and the PSA filed with the Bankruptcy Court on October 18, 2024.[5]

**A**S **A REPRESENTATIVE OF HOLDERS OF ALL AFFF CLAIMS AND GENERAL UNSECURED CLAIMS, THE COMMITTEE SUPPORTS THE PLAN AND BELIEVES THAT THE PLAN IS IN THE BEST INTERESTS OF THE HOLDERS OF AFFF CLAIMS AND GENERAL UNSECURED CLAIMS AS A WHOLE UNDER THE CIRCUMSTANCES OF THE CASE.  ACCORDINGLY, THE COMMITTEE STRONGLY URGES THE HOLDERS OF AFFF CLAIMS AND GENERAL UNSECURED CLAIMS (AS THOSE TERMS ARE DEFINED IN THE PLAN) TO VOTE TO ACCEPT THE PLAN.**

The Committee believes that the acceptance of the Plan is in the best interests of the Debtor's Estate, holders of Claims, including holders of AFFF Claims and General Unsecured Claims that are entitled to vote on the Plan, and all other parties in interest.

The Committee believes that the Plan provides a mechanism to monetize the Debtor's claims against third parties and provides for a fair and equitable distribution of monetized assets through the establishment of the Settlement Trusts (as defined in § 2.1.191 of the Plan).  The Committee recognizes that claimants may not be fully compensated through the Plan; however, the Committee believes the Plan is the best means of efficiently realizing, preserving and distributing value to the Debtor's stakeholders.  Moreover, the Committee believes that any alternative, other than confirmation of the Plan, could result in extensive delays and increased administrative expenses, which, in turn, would result in smaller distributions on account of Claims asserted in this Chapter 11 Case.

*The foregoing is not intended as a substitute for the Disclosure Statement.  Holders of Claims should read the Disclosure Statement and the Plan in their entirety, and then make their own respective independent decision as to whether the Plan is acceptable.*

The Debtor has provided you with a ballot to vote to accept or reject the Plan on behalf of yourself or your client(s), as applicable.  In order to have your vote counted, you must complete and return the ballot in accordance with the procedures set forth on the ballot.  PLEASE READ THE DIRECTIONS ON THE BALLOT CAREFULLY AND COMPLETE YOUR BALLOT IN ITS ENTIRETY BEFORE RETURNING IT TO THE DEBTOR'S BALLOTING AGENT.  *If you need a new ballot, please call or email the Debtor's solicitation agent, Stretto, at* **(866) 887-0488 (toll-free), +1 (949) 889-0128 (international) or KFIInquiries@stretto.com.**

---

[5]    The PSA also provides for a separate settlement of certain direct claims against Carrier in the AFFF MDL, which settlement will be subject to approval in the AFFF MDL. Approval of such settlement is not a condition to confirmation of the Plan in this Chapter 11 Case.



OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF KIDDE-FENWAL, INC.

Page 5

Your timely vote is important, as only those holders of Claims that timely vote on the Plan will have their vote counted for purposes of deciding whether creditors have accepted the Plan.  **If you have any questions or concerns regarding the Committee's support for the proposed Plan, you may contact counsel for the Committee at Brown Rudnick LLP, 7 Times Square, New York, New York, NY 10036, Attn: Elizabeth Castano or via email at (email: KiddeCreditorResponse@brownrudnick.com).**  The Committee does not represent holders of any particular claim and cannot advise holders of claims regarding the impact of the Plan on an individual claimant's potential claims or causes of action, if any, that such holder may have against the Debtor.

Sincerely,

**BROWN RUDNICK LLP**

David J. Molton

**EXHIBIT 5**

**[Omitted]**

# **EXHIBIT 6**

**Solicitation Directive Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |

**NOTICE OF (I) PROCEDURES FOR SOLICITING VOTES OF HOLDERS
OF CLAIMS IN CLASSES 3A, 3B, 3D, 3E, 3F, 3G, 3H, 3I, 3J AND 3K TO
ACCEPT OR REJECT THE DEBTOR'S FIFTH AMENDED PLAN OF
LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, (II)
DEADLINE FOR ATTORNEYS TO SUBMIT SOLICITATION DIRECTIVES
AND CLIENT LISTS AND (III) OTHER RELATED DEADLINES**

**To:    Attorneys Representing Holders of Claims in Applicable Classes**

        **PLEASE TAKE NOTICE THAT** on May 14, 2023, KFI Wind-Down Corp. f/k/a Kidde-Fenwal, Inc. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") (the "Chapter 11 Case"). On [•], the Debtor filed (a) the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Plan")[2] and (b) the *Disclosure Statement for the Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Disclosure Statement").

        **PLEASE TAKE FURTHER NOTICE** that on [•], 2025, the Bankruptcy Court entered the *Order (I) Approving the Adequacy of the Disclosure Statement and Form and Manner of Notice of Hearing Thereon; (II) Establishing Solicitation Procedures; (III) Approving the Form and Manner of Notice to Attorneys and Solicitation Directive; (IV) Approving the Form of Ballots; (V) Approving the Form, Manner and Scope of Confirmation Notices; (VI) Establishing Certain Deadlines in Connection with Approval of Disclosure Statement and Confirmation of Plan; and (VII) Granting Related Relief* [D.I. [•]] (the "Disclosure Statement Order"). The Disclosure Statement Order approved, among other things, solicitation and voting procedures with respect to the Plan (the "Solicitation Procedures").

---

[1]    The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters are located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]    Capitalized terms not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

**PLEASE TAKE FURTHER NOTICE THAT** the Solicitation Procedures set forth the solicitation and voting procedures that are applicable to you and your clients that may hold Claims in Classes 3A, 3B, 3D, 3E, 3F, 3G, 3H, 3I, 3J and 3K under the Plan (each an "<u>Eligible Claim</u>" and the clients you represent that may hold Eligible Claims, your "<u>Eligible Clients</u>"). **There is no minimum number of Eligible Clients required for a Firm to submit a Solicitation Directive.** With respect to your Eligible Clients, the Solicitation Procedures require you to direct the Debtor regarding your preferred method of distribution of the Solicitation Packages that may (depending on your election) contain the Ballots and other information relevant for your Eligible Clients to vote to accept or reject the Plan. In particular, the Solicitation Procedures require that you complete and return to Stretto Inc., the Debtor's solicitation agent (the "<u>Solicitation Agent</u>"), the enclosed Solicitation Directive and Client List either (a) by email at KFIInquiries@stretto.com or (b) by regular mail, overnight courier or hand delivery (with the Client List included on a USB drive) at KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602 so that it is **<u>actually received</u>** by the Solicitation Agent no later than **October 6, 2025** (the "<u>Solicitation Directive Response Deadline</u>").

**PLEASE TAKE FURTHER NOTICE THAT** the Solicitation Directive allows you to select your preferred method for the Solicitation Agent to solicit the votes of your Eligible Clients to accept or reject the Plan from two (2) different solicitation methods. These methods are intended to expedite and streamline the transmission of information to the Eligible Clients, increase voter participation and better ensure such claimants are empowered to make informed and meaningful decisions as to whether to accept or reject the Plan. Ultimately, each voting decision rests exclusively with each Eligible Client. If you wish to vote on behalf of your Eligible Clients, you must be authorized under applicable law to vote on their behalf, and must comply with applicable rules regarding aggregate settlements and informed consent. Each of the two proposed solicitation methods are described in the attached Solicitation Directive.

**PLEASE TAKE FURTHER NOTICE THAT** the Solicitation Procedures also require you to complete and return a single list (the "<u>Client List</u>") of Eligible Clients. You are required to fill out the Client List with (a) the selected solicitation method (*i.e.*, AFFF Master Ballot Solicitation Method or Direct Solicitation Method) for each Eligible Client and (b) for any Eligible Client for which you select the Direct Solicitation Method or to whom you request that the Solicitation Agent send a Solicitation Package (without a Ballot), such Eligible Client's mailing address. The Client List is pre-populated by the Solicitation Agent with the names of all plaintiffs who have filed litigation against the Debtor or a Released Party in the AFFF MDL as of the Voting Record Date that are represented by your Firm, based on (a) to the extent the claimant is listed on the Debtor's Schedules, the Firm set forth thereon with respect to the applicable claimant or (b) to the extent the claimant is not listed on the Debtor's Schedules, the face of the applicable complaint filed in the AFFF MDL.[3] You are directed to include a supplemental Client List following the same formatting and including the same information to the extent you represent additional Eligible Clients not set forth on the Client List pre-populated by the Solicitation Agent or believe any of

---

[3] The inclusion of plaintiffs who commenced proceedings against the Debtor following the Petition Date is not an admission by the Debtor that such claims are valid and/or are not in violation of section 362 of the Bankruptcy Code, and the Debtor reserves all rights and defenses with respect thereto.

4917-8057-7025 v.7

the Eligible Clients set forth on the pre-populated Client List hold an Eligible Claim or Claims in a Class or Classes other than the Class(es) provided for on the pre-populated Client List. Any such supplemental Client List must include the "Claim Type" of the Eligible Clients listed. An Excel spreadsheet template for a supplemental Client List is provided herewith under "Client List Formatting Instructions." The supplemental Client List template may also be downloaded in Microsoft Excel format from the Debtor's case website maintained by the Solicitation Agent at https://cases.stretto.com/kfi. Please return the Client List and supplemental Client List, if applicable, in the precise electronic format of such template no later than the Solicitation Directive Response Deadline (**October 6, 2025**).

PLEASE TAKE FURTHER NOTICE THAT if your Eligible Clients have not filed a Proof of Claim, your Solicitation Directive is the sole means to convey your Eligible Clients' contact information to the Solicitation Agent for the purposes of serving on such Eligible Clients a Solicitation Package. Therefore, if you select the Direct Solicitation Method for any Eligible Client, you are required to convey a mailing address for such Eligible Clients in the Client List and return such Client List to the Solicitation Agent with the Solicitation Directive.

**PLEASE TAKE FURTHER NOTICE THAT unless your Solicitation Directive and Client List are actually received by the Solicitation Agent by the Solicitation Directive Response Deadline (October 6, 2025), the Solicitation Agent will, by default, solicit votes on the Plan from your Eligible Clients via the Direct Solicitation Method. Moreover, if you return the Solicitation Directive electing the Direct Solicitation Method for any particular Eligible Client, but do not provide such Eligible Client's mailing address, the Solicitation Agent may not be able to serve such Eligible Client with a Solicitation Package (including Ballot) unless such Eligible Client filed a Proof of Claim including an address. This may result in your Eligible Client's loss of the opportunity to vote on the Plan. The Solicitation Agent may, but is not required to, contact parties who submit incomplete or otherwise deficient Solicitation Directives and/or Client Lists to make a reasonable effort to cure such deficiencies prior to the Solicitation Directive Response Deadline. Each Firm is required to confirm the accuracy of the Client List in the Solicitation Directive.**

PLEASE TAKE FURTHER NOTICE THAT to the extent that an Eligible Client appears on the Client List of more than one Firm, the Solicitation Agent will use reasonable efforts to inform such multiple Firms of the duplicative and/or conflicting representation. It is the sole obligation and responsibility of the Firms to coordinate with each other to resolve any conflicting representations, and for the appropriate Firm to submit the vote on behalf of such Eligible Client together with an email to KFIInquiries@stretto.com copying all affected Firms confirming such resolution. The Solicitation Agent is entitled to rely upon such an email. If the Firms are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple consistent votes on account of such Eligible Client (*i.e.*, multiple votes to accept the Plan or multiple votes to reject the Plan), the Solicitation Agent is authorized to treat such votes as duplicative and count them only once for both numerosity and voting amount purposes. If, however, the Firms are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple inconsistent votes on account of such Eligible Client (*i.e.*, a vote to accept the Plan and a vote to reject the Plan), the Solicitation Agent shall contact the relevant Firms and request they coordinate

with each other to resolve the conflicting representation.  If after the submission of inconsistent votes but prior to the Voting Deadline, the applicable Firms timely reach a consensus regarding which vote should be counted, one of the applicable Firms may email KFIInquiries@stretto.com, copying all other affected Firms, and direct the Solicitation Agent as to which vote should be counted.  The Solicitation Agent is entitled to rely upon such an email.  If representation of the Holder of the Claim is not resolved within 10 calendar days from notice of the conflict as provided by the Solicitation Agent, such votes shall not be counted.

**PLEASE TAKE FURTHER NOTICE THAT** for the further avoidance of doubt, if the Solicitation Agent timely receives a vote from an Eligible Client directly that is inconsistent with a corresponding vote cast by their Firm, the vote cast by the Eligible Client will control.  In addition, if an Eligible Client for whom a Firm elected the AFFF Master Ballot Solicitation Method contacts the Solicitation Agent and requests a Ballot for purposes of voting directly, then notwithstanding the election made by the Firm, the Solicitation Agent shall send a Solicitation Package and Ballot directly to the Eligible Client.

**PLEASE TAKE FURTHER NOTICE THAT** notwithstanding anything to the contrary herein, neither the Debtor nor the Solicitation Agent are obligated to attempt to cure any inconsistent votes.

**PLEASE TAKE FURTHER NOTICE THAT** copies of the Plan, the Disclosure Statement and the Disclosure Statement Order are available for review on the Debtor's case website maintained by the Solicitation Agent at https://cases.stretto.com/kfi.  In addition, hard copies of the Plan, the Disclosure Statement and the Disclosure Statement Order are available upon request by (a) calling the Solicitation Agent at (866) 887-0488 (toll-free) or +1 (949) 889-0128 (international) or (b) e-mailing the Solicitation Agent at KFIInquiries@stretto.com.  Please be advised that the Solicitation Agent is authorized to answer questions about, and provide additional copies of, materials filed in this Chapter 11 Case, but may not advise you on matters relating to the Disclosure Statement or the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** if a controversy arises regarding whether any Claim is properly classified under the Plan, the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing.  If the Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the Holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan.

4917-8057-7025 v.7

**To ensure the timely solicitation of your Eligible Clients' votes on the Plan, you must complete and return the enclosed Solicitation Directive and Client List (in a Microsoft Excel document) either (a) by email to <u>KFIInquiries@stretto.com</u> or (b) by regular mail, overnight courier or hand delivery (with the Client List included on a USB drive) to KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, in either case so that it is <u>actually received</u> by the Solicitation Agent by or before the Solicitation Directive Response Deadline (October 6, 2025).  In further accordance with the Solicitation Procedures, if your Solicitation Directive and Client List are not <u>actually received</u> by the Solicitation Agent on or before the Solicitation Directive Deadline and your Eligible Clients did not file a valid Proof of Claim including an address, your Eligible Clients may lose the opportunity to vote on the Plan.**

4917-8057-7025 v.7

Dated: [•], 2025
Wilmington, Delaware

**MORRIS NICHOLS ARSHT & TUNNELL LLP**

/s/ *DRAFT*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Daniel B. Butz (No. 4227)
Tamara K. Mann (No. 5643)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
dabbott@morrisnichols.com
aremming@morrisnichols.com
dbutz@morrisnichols.com
tmann@morrisnichols.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Justin J. DeCamp (admitted *pro hac vice*)
Benjamin S. Beller (admitted *pro hac vice*)
Julie G. Kapoor (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
        gluecksteinb@sullcrom.com
        decampj@sullcrom.com
        bellerb@sullcrom.com
        kapoorj@sullcrom.com

*Counsel for the Debtor and Debtor-in-Possession*

-6-

## EXHIBIT 7

**Solicitation Directive**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |

## SOLICITATION DIRECTIVE

I hereby direct (this "Solicitation Directive") that distribution of Solicitation Packages in connection with the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Plan")[2] be implemented as set forth below with respect to the Eligible Claims of my Eligible Clients, as set forth in this Solicitation Directive.

Enclosed herewith is one or more Excel spreadsheets that lists the name and, if applicable, mailing address of each Eligible Client to which this Solicitation Directive applies in the precise format as set forth below in the "Client List Formatting Instructions" (the "Client List").[3] Next to each name is the method of solicitation I have selected for each client and, if applicable, such Eligible Client's mailing address. In connection therewith, I make the below certifications:

**AFFF Master Ballot Solicitation Method**. For those Eligible Clients for whom I have selected the AFFF Master Ballot Solicitation Method, I certify that (a) I will collect and record the votes of such Eligible Clients through customary and accepted practices (*e.g.*, by email, telephone or other standard communications) or (b) I have the authority under a power of attorney to vote to accept or reject the Plan on behalf of each of my Eligible Clients with respect to their Eligible Claims, and I hereby acknowledge that the Solicitation Agent may rely upon this representation without the need to further investigate or verify its validity. I further acknowledge that I will make evidence of such authority available to the Debtor upon request. Accordingly, in lieu of the Solicitation Agent soliciting votes from these Eligible Clients directly, I will record the votes to accept or reject the Plan for each of the indicated Eligible Clients on a single master ballot for each applicable Class (an "AFFF Master Ballot") that I will submit to the Solicitation Agent. I understand that by electing this procedure I must meet all applicable standards to receive informed

---

[1]    The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters are located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

[3]    **If your Eligible Clients have not filed Proofs of Claim, your Solicitation Directive is the sole means to convey your Eligible Clients' contact information for the purposes of serving on such Eligible Clients a Solicitation Package. Therefore, you are required, if you select the Direct Solicitation Method for any Eligible Client, to convey a mailing address for such Eligible Clients in a Client List.**

consent from my Eligible Clients and that, unless I have authority under a power of attorney to vote to accept or reject the Plan on behalf of an Eligible Client with respect to their Eligible Claim(s), I cannot rely on negative notice to vote on behalf of any Eligible Client. I understand that if I elect this procedure I shall either (a) provide the Disclosure Statement, via instructions detailing how to access electronic versions or in hard copy or electronic format, to my Eligible Clients, or (b) request that, for informational purposes, the Solicitation Agent serve Solicitation Packages (without Ballots) on my Eligible Clients pursuant to the "Informational Service Election" below.

By signing below, I hereby certify that: (a) I have authority under a power of attorney or I will expend reasonable efforts to collect or otherwise receive duly valid and enforceable authorizations or instructions to vote to accept or reject the Plan on behalf of the indicated Eligible Clients on the Client List in accordance with my Firm's customary practices; (b) no Solicitation Packages need to be provided to any of the indicated Eligible Clients on the Client List unless I have made the informational service election below; and (c) unless I have not selected a solicitation method with respect to such Eligible Client, I represent each of the Eligible Clients set forth on the Client List that I am submitting to the Solicitation Agent contemporaneously with this Solicitation Directive.

☐ <u>Informational Service Election.</u> I request that the Solicitation Agent serve copies of the Solicitation Packages (without Ballots) on each of my Eligible Clients at the addresses identified in the Client List.[4] I understand that if I make this Informational Service Election, it is my sole obligation to provide a mailing address for those Eligible Clients to whom I want Solicitation Packages (without Ballots) sent and that any failure on my part to provide a mailing address for such Eligible Client on the Client List will (unless an applicable Proof of Claim has been filed) obviate the obligation of the Solicitation Agent to serve such Eligible Client copies of the Solicitation Packages (without Ballots).

**Direct Solicitation Method**. For those Eligible Clients for whom I have selected the Direct Solicitation Method, I do not have authority to vote to accept or reject the Plan on behalf of such Eligible Clients or I have such authority but do not intend to exercise it. Accordingly, I hereby direct the Solicitation Agent to send Solicitation Packages (including Ballots) directly to each of the indicated Eligible Clients at the addresses identified in the Client List. I understand and will advise my Eligible Clients that completed Ballots must be submitted to the Solicitation Agent individually by my Eligible Clients under this procedure. I also understand that in the event that no address is set forth on the Client List for an Eligible Client and the Eligible Client has no valid Proof of Claim on file that includes an address, then the Solicitation Agent is not required to send a Solicitation Package (including Ballots) directly to such Eligible Client. I therefore understand that my failure to provide an address may result in the loss of such Eligible Client's opportunity to vote on the Plan.

---

[4]    Such informational Solicitation Packages may contain a generic, non-customized insert explaining that the recipient's attorney has elected to utilize the AFFF Master Ballot Solicitation Method.

By signing below, I hereby certify that, unless I did not select a solicitation method for an Eligible Client on the Client List, I represent each of the Eligible Clients set forth on the Client List which I am submitting to the Solicitation Agent contemporaneously with this Solicitation Directive.

**SIGNATURE:**

| | |
|---|---|
| Name of Attorney: | _____ |
| | (Print or Type) |
| Signature | _____ |
| Name of Law Firm: | _____ |
| | (Print or Type) |
| Address: | _____ |
| | _____ |
| | _____ |
| Date Completed: | _____ |

3

## Instructions for Returning This Solicitation Directive

The Debtor is requesting that this Solicitation Directive and the Client List be returned so that they are actually received by the Debtor's Solicitation Agent on or before **October 6, 2025** (the "Solicitation Directive Response Deadline") either by (a) email at KFIInquiries@stretto.com or (b) regular mail, overnight courier or hand delivery (with the Client List included on a USB drive) at KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602.

> **In accordance with the Solicitation Procedures, unless your Solicitation Directive and Client List are actually received by the Solicitation Agent by the Solicitation Directive Response Deadline (October 6, 2025), the Solicitation Agent will, by default, solicit votes on the Plan from your Eligible Clients via the Direct Solicitation Method. In further accordance with the Solicitation Procedures, if your Solicitation Directive and Client List are not <u>actually received</u> by the Solicitation Agent on or before the Solicitation Directive Deadline and your Eligible Clients did not file a valid Proof of Claim including an address, such Eligible Clients may lose the opportunity to vote on the Plan.**

## Requirements for the Client Lists

The Client List will be pre-populated by the Solicitation Agent with the names of all plaintiffs who have filed litigation against the Debtor or a Released Party in the AFFF MDL as of the Voting Record Date that are represented by your Firm, based on (a) to the extent the claimant is listed on the Debtor's Schedules, the Firm set forth thereon with respect to the applicable claimant or (b) to the extent the claimant is not listed on the Debtor's Schedules, the face of the applicable complaint filed in the AFFF MDL.[5] For each Eligible Client whom you represent, you **must** provide the selected solicitation method (*i.e.*, AFFF Master Ballot Solicitation Method or Direct Solicitation Method). If you select the Direct Solicitation Method for any Eligible Client, you **must** provide the mailing address for such Eligible Client. Additionally, if you have selected "Informational Service Election" above, you **must** provide the mailing address for all Eligible Clients whom you represent. If you represent additional Eligible Clients that are not included on the pre-populated Client List from the Solicitation Agent or believe any of the Eligible Clients set forth on the pre-populated Client List hold an Eligible Claim or Claims in a Class or Classes other than the Class(es) provided for on the pre-populated Client List, you are directed to include a supplemental Client List following the same formatting and including the same information as the pre-populated Client List. Any such supplemental Client List must include the "Claim Type" of the Eligible Client. You may use the template for the supplemental Client List provided with this Solicitation Directive. The supplemental Client List template may be downloaded in Microsoft Excel format from the Solicitation Agent's website at https://cases.stretto.com/kfi. You are encouraged to utilize the template for the Client List provided in the Client List Formatting Instructions.

---

[5]    The inclusion of plaintiffs who commenced proceedings against the Debtor following the Petition Date is not an admission by the Debtor that such claims are valid and/or are not in violation of section 362 of the Bankruptcy Code, and the Debtor reserves all rights and defenses with respect thereto.

Client Lists must be returned so as to be received no later than the Solicitation Directive Response Deadline (**October 6, 2025**), either (a) by email at KFIInquiries@stretto.com or (b) by regular mail, overnight courier or hand delivery (with the Client List included on a USB drive) at KFI Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602.  If you have any technical questions or need to arrange for special delivery of your Client List, please contact the Solicitation Agent at KFIInquiries@stretto.com.

The Debtor encourages Firms to submit Solicitation Directives and accompanying Client Lists via encrypted email or other secured method of electronic transmission.  Firms with any questions about such secured transmission methods should contact the Solicitation Agent at KFIInquiries@stretto.com.

**To the extent that an Eligible Client appears on the Client List of more than one Firm, the Solicitation Agent will use reasonable efforts to inform such multiple Firms of the duplicative and/or conflicting representation.  It is the sole obligation and responsibility of the Firms to coordinate with each other to resolve any conflicting representations, and for the appropriate Firm to submit the vote on behalf of such Eligible Client together with an email to KFIInquiries@stretto.com copying all affected Firms confirming such resolution. The Solicitation Agent is entitled to rely upon such an email.  If the Firms are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple consistent votes on account of such Eligible Client (*i.e.*, multiple votes to accept the Plan or multiple votes to reject the Plan), the Solicitation Agent is authorized to treat such votes as duplicative and count them only once for both numerosity and voting amount purposes.  If, however, the Firms are unsuccessful in reaching consensus regarding which Firm is voting on behalf of the Eligible Client and the Solicitation Agent receives multiple inconsistent votes on account of such Eligible Client (*i.e.*, a vote to accept the Plan and a vote to reject the Plan), the Solicitation Agent shall contact the relevant Firms and request they coordinate with each other to resolve the conflicting representation.  If after the submission of inconsistent votes but prior to the Voting Deadline, the applicable Firms timely reach a consensus regarding which vote should be counted, one of the applicable Firms may email KFIInquiries@stretto.com, copying all other affected Firms, and direct the Solicitation Agent as to which vote should be counted.  The Solicitation Agent is entitled to rely upon such an email.  If representation of the Holder of the Claim is not resolved within 10 calendar days from the notice of the conflict as provided by the Solicitation Agent, such votes shall not be counted.  For the further avoidance of doubt, if the Solicitation Agent timely receives a vote from an Eligible Client directly that is inconsistent with a corresponding vote cast by their Firm, the vote cast by the Eligible Client will control.**

## <u>Client List Formatting Instructions</u>

The pre-populated Client List is in Excel and formatted to include each of the following fields (in the order listed below):

1. Creditor Name

2. Solicitation Method

3. Claim Type

4. Home Address

5. City

6. State

7. Zip Code

8. Country

9. Firm Notes

**The "Claim Type" column may <u>only</u> include one of: (i) Water Provider Claim; (ii) Airport Claim; (iii) Property Damage Claim; (iv) Personal Injury Claim; (v) Sovereign Tribe Claim; (vi) Business Loss Claim; (vii) Fire Training Facility Claim; (vii) Landfill Claim; (ix) Stormwater Claim or (x) Wastewater Claim. For any Eligible Client on a supplemental Client List, if you either do not include a "Claim Type" or include a "Claim Type" of any type other than those set forth in the preceding sentence, such Eligible Client will not be included in any AFFF Master Ballot sent to your Firm or otherwise solicited. To the extent you provide a mailing address for such Eligible Client, they will be sent a Confirmation Hearing Notice.**

You are strongly encouraged to use the template provided by the Solicitation Agent or to download the template in Excel format from the Solicitation Agent's website at https://cases.stretto.com/kfi. For your convenience, sample templates are set forth in the appendices below.

| Client Name | Solicitation Method | | Claim Type | | | | | | | | | | | Client Home Address | Client City | Client State | Client Zip | Client Country | Firm Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | AFFF Master Ballot Solicitation Method | Direct Solicitation Method | Water Provider Claim | Airport Claim | Property Damage Claim | Personal Injury Claim | Sovereign Tribe Claim | Business Loss Claim | Fire Training Facility Claim | Landfill Claim | Stormwater Claim | Wastewater Claim | | | | | | | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | | | | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | | | | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | | | | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | | | | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | | | | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | | | | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | | | | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | | | | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | | | | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | | | | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | | | | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | | | | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | | | | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | | | | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | | | | |

**EXHIBIT 8**

**Confirmation Hearing Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | **Hearing Date: January 21, 2026 at [•] [a.m. / p.m.] ET**<br>**Obj. Deadline: December 15, 2025 at 4:00 p.m. ET** |

**NOTICE OF (I) HEARING TO CONSIDER CONFIRMATION OF DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE AND (II) RELATED VOTING AND OBJECTION DEADLINES**

**PLEASE TAKE NOTICE** that on [•], 2025, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered the *Order (I) Approving the Adequacy of the Disclosure Statement and Form and Manner of Notice of Hearing Thereon; (II) Establishing Solicitation Procedures; (III) Approving the Form and Manner of Notice to Attorneys and Solicitation Directive; (IV) Approving the Form of Ballots; (V) Approving the Form, Manner and Scope of Confirmation Notices; (VI) Establishing Certain Deadlines in Connection With Approval of Disclosure Statement and Confirmation of Plan; and (VII) Granting Related Relief* [D.I. [•]] (the "Disclosure Statement Order").  Among other things, the Disclosure Statement Order approved the adequacy of the *Disclosure Statement for the Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* (as may be amended, modified or supplemented from time to time and together with all schedules and exhibits thereto, the "Disclosure Statement"), voting and solicitation procedures and established the timeline to confirm the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* (as may be amended, modified or supplemented from time to time and together with all schedules and exhibits thereto, the "Plan").[2]

**PLEASE TAKE FURTHER NOTICE** that the Debtor is soliciting acceptances of the Plan from Holders of Claims who are entitled to vote on the Plan.  The Bankruptcy Court can confirm the Plan and bind you if the Plan is accepted by the Holders of at least two-thirds in amount and more than one-half in number of the Claims in each Impaired Class who vote on the Plan and if the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court nonetheless may confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, each Class rejecting the Plan,

---

[1]  The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters are located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]  Capitalized terms used but not defined in this notice shall have the meaning ascribed to them in the Plan or the Disclosure Statement, as applicable.

(b) provides that at least one Impaired Class accepts the Plan without including the votes of insiders in accordance with section 1129(a)(10) of the Bankruptcy Code and (c) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or affirmatively vote to reject the Plan.

**PLEASE TAKE FURTHER NOTICE** that the hearing at which the Bankruptcy Court will consider the Confirmation of the Plan (the "Confirmation Hearing") will commence on **January 21, 2026 at [•] [a.m. / p.m.] (prevailing Eastern Time)**.  The Confirmation Hearing will take place before the Honorable Laurie S. Silverstein, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 Market Street, 6th Floor, Courtroom 2, Wilmington, Delaware 19801.  The Confirmation Hearing may be continued from time to time by the Bankruptcy Court or the Debtor, in consultation with the Settling Parties, without further notice other than by such adjournment being announced in open court or in the filing of a notice or hearing agenda with the Bankruptcy Court.  Moreover, the Plan may be modified or amended, if necessary, subject to the Settling Parties' consent rights set forth in the Plan Support Agreement, and pursuant to section 1127 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and other applicable law, prior to, during or as a result of the Confirmation Hearing, without further notice to parties-in-interest.

## Plan Summary

The following is an overview of the treatment to be afforded to each Class of Claims or Interests under the Plan.  This summary is being provided for convenience only and is qualified by the Plan itself.

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Not entitled to vote |
| 2 | Secured Claims | Unimpaired | Not entitled to vote |
| 3A | Water Provider Claims | Impaired | Entitled to Vote |
| 3B | Airport Claims | Impaired | Entitled to Vote |
| 3C | Sovereign State Claims | Impaired | Entitled to Vote |
| 3D | Property Damage Claims | Impaired | Entitled to Vote |
| 3E | Personal Injury Claims | Impaired | Entitled to Vote |
| 3F | Sovereign Tribe Claims | Impaired | Entitled to Vote |
| 3G | Business Loss Claims | Impaired | Entitled to Vote |
| 3H | Fire Training Facility Claims | Impaired | Entitled to Vote |
| 3I | Landfill Claims | Impaired | Entitled to Vote |
| 3J | Stormwater Claims | Impaired | Entitled to Vote |
| 3K | Wastewater Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Affiliate Claims | Impaired | Not entitled to vote |
| 6 | Interests | Impaired | Not entitled to vote |

**PLEASE BE ADVISED THAT THE PLAN CONTAINS CERTAIN RELEASES, INJUNCTIONS AND EXCULPATORY PROVISIONS, WHICH WILL BECOME EFFECTIVE IF THE PLAN IS APPROVED, AND ARE SET FORTH IN ARTICLE 10**

**OF THE PLAN AND DESCRIBED IN SECTION IV.E OF THE DISCLOSURE STATEMENT.  SUCH PROVISIONS ARE SET FORTH IN <u>APPENDIX A</u> HERETO.**

### <u>Relevant Deadlines</u>

<u>Voting Record Date</u>.  The Voting Record Date is **June 4, 2025**.  The Voting Record Date is the record date for purposes of determining (a) the Holders of Claims and Interests entitled to receive a Solicitation Package, (b) the Holders of Claims in Class 4 and (c) whether Claims have been transferred properly to an assignee pursuant to Bankruptcy Rule 3001(e), such that the assignee can vote as the Holder of such Claim.

<u>Voting Deadline</u>.  The deadline for voting on the Plan is **December 15, 2025 at 5:00 p.m. (prevailing Eastern Time)** (the "<u>Voting Deadline</u>").  If you hold a Claim against the Debtor as of the Voting Record Date and are entitled to vote to accept or reject the Plan, you should have received a Ballot along with corresponding voting instructions.  For your vote to be counted, you <u>must</u>:  (a) follow the voting instructions in your Ballot, (b) complete <u>all</u> the required information on the Ballot <u>and</u> (c) sign, date and return your completed Ballot so that it is **actually received** by the Solicitation Agent according to and as set forth in detail in the voting instructions in your Ballot on or before the Voting Deadline.  A failure to follow such voting instructions may disqualify your vote.

<u>Solicitation Directive from Attorneys</u>.  Please note that if you hold a Claim in Classes 3A, 3B, 3D, 3E, 3F, 3G, 3H, 3I, 3J or 3K as of the Voting Record Date that is otherwise allowed for voting purposes and you are represented by an attorney, it is possible that your attorney has elected, through exercising the option in the Solicitation Directive, to cast a vote on your behalf through an AFFF Master Ballot.  If your attorney elects to vote your Claim by AFFF Master Ballot, it is possible that you may not receive a copy of the Plan, Disclosure Statement, Disclosure Statement Order and/or a Ballot.  Therefore, if you hold a Claim in Classes 3A, 3B, 3D, 3E, 3F, 3G, 3H, 3I, 3J or 3K as of the Voting Record Date that is otherwise allowed for voting purposes and you did not receive a Plan, Disclosure Statement, Disclosure Statement Order and/or a Ballot and you wish to receive any of the aforementioned materials, you are encouraged to promptly contact your attorney and/or the Solicitation Agent using the information provided below.

<u>Plan Supplement</u>.  The Debtor may file supplements to the Plan (as may be amended, modified or supplemented from time to time, the "<u>Plan Supplement</u>") with the Bankruptcy Court no later than **November 17, 2025**.

### <u>Objections to the Plan</u>

<u>Confirmation Objection Deadline</u>.  The deadline for filing objections to the Plan is **December 15, 2025 at 4:00 p.m. (prevailing Eastern Time)** (the "<u>Confirmation Objection Deadline</u>").

<u>Objections to the Plan</u>.  Any objection to the confirmation of the Plan must: (a) be in writing; (b) comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules; (c) set forth the name of the objector and the nature and amount of Claims or Interests

-3-

held or asserted by the objector against the Debtor; (d) state the basis and the specific grounds therefor and (e) be filed with the Bankruptcy Court, together with proof of service thereof, and served so that it is **actually received** by each of the following parties (collectively, the "Notice Parties") no later than the Confirmation Objection Deadline.  **UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED AND MAY BE OVERRULED BY THE BANKRUPTCY COURT WITHOUT FURTHER NOTICE.**

### Notice Parties

(a)    Counsel to the Debtor: (i) Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004, Attn: Andrew G. Dietderich (dietdericha@sullcrom.com), Brian D. Glueckstein (gluecksteinb@sullcrom.com), Justin J. DeCamp (decampj@sullcrom.com) and Benjamin S. Beller (bellerb@sullcrom.com; and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box. 1347, Wilmington, DE 19899, Attn: Derek C. Abbott (dabbott@morrisnichols.com) and Andrew R. Remming (aremming@morrisnichols.com);

(b)    Counsel to the Special Committee of the Board of Directors of the Debtor, Schulte Roth & Zabel LLP, 919 Third Avenue, New York, NY, Attn: Adam Harris (Adam.Harris@srz.com) and Peter Amend (Peter.Amend@srz.com);

(c)    Counsel to Carrier, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Sixth Avenue, New York, NY 10019, Attn: Paul M. Basta (pbasta@paulweiss.com), Kenneth S. Ziman (kziman@paulweiss.com) and Robert A. Britton (rbritton@paulweiss.com);

(d)    Counsel to the Committee: (i) Brown Rudnick LLP, Seven Times Square, New York, NY 10036, Attn: David J. Molton (dmolton@brownrudnick.com); Cathrine M. Castaldi (ccastaldi@brownrudnick.com) and Eric R. Goodman (egoodman@brownrudnick.com); and (ii) Stutzman, Bromberg, Esserman & Plifka, 2323 Bryan Street, Suite 2200, Dallas, TX 75201, Attn: Sander L. Esserman (Esserman@sbep-law.com);

(e)    The MDL PEC Co-Leads: (i) Baron & Budd, P.C., 3102 Oak Lawn Avenue #1100, Dallas, TX 75219, Attn: Scott Summy (SSummy@baronbudd.com); (ii) Douglas & London, P.C., 59 Maiden Ln., 6th Floor, New York, NY

-4-

10038, Attn: Michael London (mlondon@douglasandlondon.com); (iii) Motley Rice LLC, 28 Bridgeside Blvd., Mount Pleasant, SC 29464, Attn: Joseph F. Rice (jrice@motleyrice.com); (iv) Napoli Shkolnik PLLC, 1302 Avenida Ponce de Leon, Santurce, Puerto Rico 00907, Attn: Paul Napoli (PNapoli@NSPRLaw.com); and (v) Taft Stettinius & Hollister LLP, 41 South High Street, Suite 1800, Columbus, OH 43215, Attn: David J. Butler (dbutler@taftlaw.com);

(f)    The Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Timothy J. Fox, Esq. (timothy.fox@usdoj.gov); and

(g)    To the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.

### Obtaining a Ballot

**If you believe you have an AFFF Claim against the Debtor, you may be entitled to vote on the Plan.  To vote on the Plan:**

a)    **To obtain the relevant documents and Ballot for any AFFF Claim other than a Sovereign State Claim, you may either:**

    a.  **Contact the Solicitation Agent at least three business days before the Voting Deadline and request from the Solicitation Agent a Solicitation Package containing the applicable Ballot.  Unless hard copy service is requested, the Solicitation Agent will provide the Solicitation Package documents or a link where they can be accessed via email.  To the extent you submitted your request at least seven business days prior to the Voting Deadline and requested hard copy service, the Solicitation Agent will provide you with a Solicitation Package (including the requested Ballot) within two business days.  To the extent you submitted your request on or after seven business days before the Voting Deadline and requested hard copy service, the Solicitation Agent will provide you with a Solicitation Package (including the requested Ballot) by overnight mail.**

    b.  **Visit the Solicitation Agent's website at https://cases.stretto.com/kfi and download Plan, Disclosure Statement, other Solicitation Package materials and the applicable Ballot from the online portal.**

-5-

b)   Carefully review the Plan, the Disclosure Statement, the Solicitation Package materials and the Ballot (and the instructions on the Ballot). You may wish to consult a lawyer on how your rights, if any, may be affected by the Plan.

c)   Complete and sign the Ballot according to the instructions on the Ballot.  **A failure to follow the instructions on the Ballot may result in the vote being disqualified.**

d)   Submit the completed and signed Ballot back to the Solicitation Agent so that it is <u>actually received</u> by the Voting Deadline (5:00 p.m. on December 15, 2025) according to the instructions on the Ballot. Ballots received after that time will **<u>NOT</u>** be counted unless the Voting Deadline has been extended by the Debtor in writing.

e)   Alternatively, your attorney may submit a vote on your behalf using an AFFF Master Ballot.  Please contact your attorney if you want him or her to vote on your behalf using the AFFF Master Ballot.  Your attorney may have submitted a Solicitation Directive authorizing him or her to collect and record your vote on your behalf.

To determine if you have an AFFF Claim against the Debtor, please refer to the Plan for the specific definition of an "AFFF Claim," which is copied below.  To vote on the Plan, you will need to determine which type of AFFF Claim you have, request a Solicitation Package including the applicable Ballot, and certify that you hold such a Claim on your Ballot.  If you believe you have an AFFF Claim against the Debtor, you should refer to the Plan to determine which type of AFFF Claim you have and which Ballot to request.

*"AFFF Claim" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of aqueous film-forming foam ("AFFF") or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.*

### Obtaining Copies of Relevant Documents

Copies of the Plan, the Plan Supplement, the Disclosure Statement and the Disclosure Statement Order, as well as other documents filed in this Chapter 11 Case, may be obtained (a) for a nominal fee from the Bankruptcy Court's electronic docket for the Debtor's Chapter 11 Case at https://ecf.deb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov), or (b) free of charge by accessing the Debtor's case website maintained by the Solicitation Agent, https://cases.stretto.com/kfi.  In addition, the Debtor will, at its expense, provide paper copies of the Plan, the Plan Supplement, the Disclosure Statement or the Disclosure Statement Order to

-6-

any party submitting a request for such paper copies by (a) calling the Solicitation Agent at (866) 887-0488 (toll-free) or +1 (949) 889-0128 (international) or (b) e-mailing the Solicitation Agent at KFIInquiries@stretto.com.  Please be advised that the Solicitation Agent is authorized to answer questions about, and provide additional copies of, materials filed in this Chapter 11 Case, but may not advise you on matters relating to the Disclosure Statement or the Plan.

Dated: [•], 2025
    Wilmington, Delaware

**MORRIS NICHOLS ARSHT & TUNNELL LLP**

/s/ *DRAFT*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Daniel B. Butz (No. 4227)
Tamara K. Mann (No. 5643)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
dabbott@morrisnichols.com
aremming@morrisnichols.com
dbutz@morrisnichols.com
tmann@morrisnichols.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Justin J. DeCamp (admitted *pro hac vice*)
Benjamin S. Beller (admitted *pro hac vice*)
Julie G. Kapoor (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
       glueraksteinb@sullcrom.com
       decampj@sullcrom.com
       bellerb@sullcrom.com
       kapoorj@sullcrom.com

*Counsel for the Debtor and Debtor-in-Possession*

-8-

**<u>Appendix A</u>**

**Release, Injunction and Exculpation Provisions in the Plan[1]**

---

[1] The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights. If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.

### Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released and cancelled, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Liquidating Estate and their successors and assigns.  Any Holder of such mortgage, deed of trust, Lien, pledge or other security interest (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including and cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Liquidating Administrators to evidence such release, including the execution, delivery and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

### Releases by the Estate

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party, the Debtor, the Liquidating Estate and each Related Party of the Debtor and the Liquidating Estate shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, or any other Person or Governmental Unit asserting currently or in the future by, under, through, or on behalf of the Debtor or its Estate, and each of their respective successors or assigns, including the Settlement Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between one or both of the Debtor, on the one hand, and any Released Party, the Liquidating Estate, or any Related Party of the Debtor and the Liquidating Estate, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.3 of the Plan shall not be construed to release any post-Effective Date obligations under the RTX Waiver, the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, which specifically provides that such Estate Claims Settlement can be terminated, and the releases provided in the Plan or in the Estate Claims Settlement are void, if Carrier fails to make the installments of the Guaranteed Cash Payment when due and such failure is not timely cured within 30 days, at which time the Primary AFFF Settlement Trust is entitled to commence, prosecute, or continue all Estate Causes of Action against the Released Parties in any court of competent jurisdiction, and take such other actions as the Primary AFFF Settlement Trustee may determine in the exercise of their fiduciary duties.

### Releases by the Released Parties

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Released Parties and their successors or assigns of and from any and all Claims and Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, the Debtor's current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between any of the Debtor, the Liquidating Estate, the Settlement Trusts or the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case, on the one hand, and any Released Party, on the other hand, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any post-Effective Date obligations under the Plan Documents, the Confirmation Order, the 2020 Separation Agreement as supplemented by the RTX Waiver, or the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, or the right of any Person to enforce the same in accordance with

the terms thereof. Except with respect to the Claims and Causes of Action against the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case that are released and discharged under Article 10.4 of the Plan, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any obligations, rights, Causes of Action or Claims that Carrier Global Corporation or members of the Carrier Group (other than the Debtor), Otis Worldwide Corporation or members of the Otis Group, or RTX or members of the UTC Group may have against any Person under the 2020 Separation Agreement as supplemented by the RTX Waiver (including indemnification rights of RTX and other members of the "UTC Group" under the 2020 Separation Agreement). For the avoidance of doubt, in the event that the Estate Claims Settlement Effective Date does not occur or the Estate Claims Settlement is terminated as contemplated by the last paragraph of Article 10.3 in the Plan, all releases being provided by the Released Parties under the Plan shall be void.

## Scope of Releases

Each Person providing releases under the Plan, including the Debtor, the Estate and the Settling Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts. Each Person providing releases under the Plan shall be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

## Exculpation

Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtor and its directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation.

As of the Effective Date, to the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in Article 10 of the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person for any act or omission in connection with, related to or arising out of this Chapter 11 Case, including (a) the operation of the Debtor's businesses during the pendency of this Chapter 11 Case; (b) the

administration and adjudication of Claims and Interests during this Chapter 11 Case; (c) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Plan, the Disclosure Statement, the Plan Supplement, or any related contract, instrument, release or other agreement or document created or entered into in connection with the Chapter 11 Case (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan and the distribution of property under the Plan); (d) any other transaction, agreement, event, or other occurrence related to the Chapter 11 Case taking place on or before the Effective Date, other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.

## Injunction

Except as otherwise expressly provided in the Plan or the Confirmation Order, the satisfaction and release pursuant to Article 10 of the Plan shall also act as a permanent injunction against any Person who has held, holds, or may in the future hold Claims against or Interests in the Debtor or any of its assets or properties based on any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are treated, released, settled, channeled, or exculpated pursuant to the terms of the Plan from taking any of the following actions on account of, or on the basis of, such Claims or Interests: (a) commencing or continuing any action to collect, enforce, offset, recoup, or recover with respect to any Claims or Interests treated, released, settled, channeled, or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Claim or Interest against the Debtor, the Liquidating Estate, the Settlement Trusts, or its or their respective property; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of or in connection with or with respect to any such Claims or Interests, notwithstanding an indication of a Claim or Interest or otherwise that a Holder of such Claim or Interest asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise, against the Debtor, the Liquidating Estate, or the Settlement Trusts; or (e) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

## Channeling Injunction

Notwithstanding anything to the contrary in the Plan, to preserve and promote the settlements contemplated by and provided for in the Plan, including the Insurance Settlement Agreements, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under sections 105(a) and 1123(b) of the Bankruptcy Code, the sole recourse of any Holder of a Channeled AFFF Claim against the Debtor or a Released Party on account of such Channeled AFFF Claim shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to

**and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, and such Holder shall have no right whatsoever at any time to assert any such Channeled AFFF Claim or any Estate Cause of Action that is released under the Estate Claims Settlement against the Debtor or any Released Party or any property or interest in property of the Debtor or any Released Party. For the avoidance of doubt, the sole recourse for any Channeled AFFF Claim covered by any Insurance Policy issued by a Settling Insurance Company shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents. Accordingly, on and after the Effective Date, all Holders of AFFF Claims that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled AFFF Claim or any Estate Cause of Action against the Debtor or any Released Party shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from the Debtor or any Released Party with respect to any such Channeled AFFF Claim or Estate Cause of Action, other than from the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, including:**

**a)    commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;**

**b)    enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;**

**c)    creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;**

**d)    asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party; or**

**e)    taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents, or, with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, by the Sovereign State AFFF Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Channeled AFFF Claim.**

The Debtor, the Liquidating Estate and/or any Released Party, as applicable, may enforce the Channeling Injunction and/or the Releases contained in the Plan before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at their own cost and expense, and no such cost or expense incurred by a party other than the Primary AFFF Settlement Trust shall be reimbursed or indemnified by the Primary AFFF Settlement Trust under any circumstances.

## Insurance Company Injunction

Subject to the provisos set forth in this Section, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim or cause of action (including any AFFF Claim or any Claim for or respecting any Primary AFFF Settlement Trust expense) against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Insurance Policy, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, statute or any other theory of law, equity or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim or cause of action, including:

a)    commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, demand, or cause of action against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such Claim, demand, or cause of action against any Insurance Company);

b)    enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

c)    creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such Claim or cause of action; and

d)    except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

*provided, however,* that (i) nothing in this Section shall impair or affect the rights of any member of the UTC Group, including RTX, or any member of the Otis Group (each as defined in the 2020 Separation Agreement), or any additional insured designated by RTX

or any member of the UTC Group, based upon, attributable to, arising out of, or in any way connected with an Insurance Policy, including to assert Claims or Causes of Action against any Insurance Company for covered losses and to receive proceeds in respect thereof; (ii) this injunction shall not impair in any way any actions brought by the Primary AFFF Settlement Trust against any Other Insurance Company; (iii) the Primary AFFF Settlement Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction with respect to any Other Insurance Company, in accordance with the Settlement Trust Documents, upon express written notice to such Other Insurance Company; and (iv) this injunction is not issued for the benefit of any Other Insurance Company, and no Other Insurance Company is a third-party beneficiary of this injunction.

Notwithstanding anything to the contrary in the Plan, this injunction shall not enjoin:

a)      the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of Holders of AFFF Claims to assert such Claims, as applicable, in accordance with the TDPs;

b)      the rights of the Primary AFFF Settlement Trust to prosecute any action based on or arising from Insurance Policies, except to the extent otherwise released;

c)      the rights of the Primary AFFF Settlement Trust to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company based on or arising from the Insurance Policies;

d)      any actions of the Contributing Parties in fulfilling their obligations under the Estate Claims Settlement in consultation and coordination with the Primary AFFF Settlement Trust;

e)      the rights of any Insurance Company to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company; or

f)      the Claims for reinsurance under reinsurance contracts or Claims under retrocessional contracts among the Settling Insurance Companies and any Other Insurance Company.

### Prohibition on Actions Against Buyer

Subject to the Sale Order and the Acquisition Agreement, Buyer, in its capacity as such, shall not have any liability for any AFFF Claims against the Debtor arising prior to the closing of the Sale.  Except as expressly otherwise set forth in the Sale Order, all persons and entities hereby are forever barred, estopped and permanently enjoined from asserting against Buyer, its Affiliates, its successors or assigns, its property or the Transferred Assets, such persons' or entities' AFFF Claims that have been or could have been asserted against the Debtor arising prior to the closing of the Sale.  For the avoidance of doubt, the foregoing shall

not release Buyer from, or enjoin any actions against Buyer for, any Assumed Liability or any other liability incurred by Buyer on account of its operations following the closing of the Sale.

### Limitations on Exculpations and Releases

Notwithstanding anything to the contrary in the Plan, none of the releases or exculpations set forth in the Plan shall operate to waive or release any obligation or Causes of Action of any Person:  (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations or (b) expressly set forth in and preserved by the Plan, the Plan Supplement, Plan Documents or related documents.

### Release Dispute

In the event of a Release Dispute, a Released Party may, at its sole cost and expense, file a motion with the Bankruptcy Court seeking a determination as to whether an AFFF Claimant's Cause of Action was settled and released pursuant to the Plan, and upon such motion, the Bankruptcy Court shall make such determination and, if appropriate, enjoin the prosecution of such Cause of Action as having been settled and released under the Plan.

### Relevant Definitions

"*2020 Separation Agreement*" means that certain Separation and Distribution Agreement, dated as of April 2, 2020, by and among United Technologies Corporation, Carrier Global Corporation, and Otis Worldwide Corporation.

"*Administrative Claim*" means an Allowed Claim for costs and expenses of administration of the Chapter 11 Case pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate; (b) Allowed Professional Compensation Claims; (c) Allowed Fee Examiner Compensation Claims; and (d) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

"*AFFF*" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

"*AFFF Claim*" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.

"*Assumed Liability*" shall have the meaning set forth in the Acquisition Agreement.

"*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other Claims, Causes of Action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties-in-interest under the Bankruptcy Code or applicable non-

bankruptcy law, including claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) was commenced prior to the Effective Date.

"*Buyer*" means Pacific Erin Opco, LLC, as the purchaser of substantially all of the Debtor's assets pursuant to the Acquisition Agreement and the Sale Order.

"*Carrier*" means Carrier Global Corporation, a Delaware corporation, and its non-Debtor affiliates and Related Parties.

"*Causes of Action*" means any current or future actions, Claims, cross-claims, third-party claims, causes of action, controversies, disputes, demands, rights, liens, indemnities, contributions, guaranties, suits, obligations, liabilities, losses, debts, fees or expenses, damages, interest, judgments, costs, accounts, defenses, remedies, offsets, powers, privileges, proceedings, licenses, and franchises of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, choate or inchoate, capable of being asserted directly or derivatively (including any alter ego theories), including any Claims for recovery of attorneys' fees, turnover, fraud, gross negligence, or willful misconduct, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws, consumer protection laws, environmental laws, or nuisance or trespass theories).  Causes of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to or otherwise contest Claims or Interests, (c) any claim pursuant to section 362 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Actions.

"*Channeled AFFF Claims*" means all AFFF Claims against the Debtor or the Estate channeled to the Primary AFFF Settlement Trust under the Plan and Settlement Trust Documents.  For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

"*Committee*" means the official committee of unsecured creditors of the Debtor appointed by the U.S. Trustee in the Chapter 11 Case under section 1102(a) of the Bankruptcy Code pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 83] and any amendments thereto.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Settling Parties.

"*Consummation*" means the occurrence of the Effective Date.

"*Debtor*" means Kidde-Fenwal, Inc., the debtor and debtor in possession in the Chapter 11 Case, now known as KFI Wind-Down Corp.  In 2007, KFFI (formerly known as National Foam, Inc.) merged into Kidde-Fenwal, Inc., with Kidde-Fenwal, Inc. as the surviving entity.  Pursuant to this merger, KFFI's liabilities were assumed by, and KFFI's causes of action were transferred to, Kidde-Fenwal, Inc. directly or indirectly by merger or other agreement.  The term "Debtor" includes Kidde-Fenwal, Inc. as successor by merger or other agreement by which Kidde-Fenwal, Inc. obtained or assumed the liabilities and Causes of Action of any Person.

"*Effective Date*" means the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date set forth in the Plan shall have been satisfied or waived and on which a notice indicating the Effective Date has been filed on the docket of the Chapter 11 Case.

"*Estate Causes of Action*" means Causes of Action owned or held by either the Debtor or its Estate, or capable of being asserted (currently, or in the future) by any Person or Governmental Unit on behalf of, under or through, either the Debtor or its Estate, and each of their respective successors or assigns, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions, that may be commenced by a representative of the Estate under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise.  Without limiting the foregoing, Estate Causes of Action shall include:  (a) Causes of Action that on or after the Petition Date may be exclusively asserted by or on behalf of the Debtor or its Estate under applicable law, or that prior to the Petition Date could have been asserted by the Debtor on its own behalf under applicable law, including Causes of Action based on (i) the doctrine of successor liability that seek to impose the Debtor's (including KFFI's or National Foam, Inc.'s) liabilities on an alleged successor, whether based on a contractual assumption of liability, consolidation or de facto merger, acquisition of the Debtor's product line, fraud, domination, direction of the Debtor's affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, or (ii) the doctrines of alter ego or veil piercing involving alter egos of the Debtor or the piercing of the Debtor's (including KFFI's or National Foam, Inc.'s) corporate veil, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form; (b) Causes of Action or theories for recovery or remedies that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is generally common to creditors of the Debtor and can be asserted by the Debtor under applicable law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor.  Subsections (a), (b) and (c) immediately above expressly encompass any Causes of Action based on:  (i) the alleged assumption of the Debtor's (including KFFI's or

National Foam, Inc.'s) liabilities (but not a non-Debtor's liabilities) by Kidde plc (n/k/a Kidde Limited) pursuant to the 2000 Demerger Agreement, or any alleged subsequent assumption of such liabilities of the Debtor from Kidde plc by any other Released Party; or (ii) the alleged assumption of the Debtor's liabilities (but not a non-Debtor's liabilities), including any liabilities resulting from acts or omissions of National Foam, Inc. or KFFI, by a Released Party pursuant to the 2020 Separation Agreement. For the avoidance of doubt, Estate Causes of Action shall not include any Independent AFFF Causes of Action or any Sovereign State Retained Causes of Action or Insurance Actions against any Released Party based on acts or omissions occurring after entry into the Plan Support Agreement with respect to rights under the 2020 Separation Agreement or the RTX Waiver to access and make Claims under any Insurance Policy or otherwise obtain the benefit of the Insurance Assignment.

"*Estate Claims Settlement*" means the settlement, including the release of all Estate Causes of Action against the Released Parties, pursuant to the Estate Claims Settlement Agreement.

"*Independent AFFF Cause of Action*" means any Cause of Action that could be asserted by an AFFF Claimant against a Non-Debtor Party based on the Non-Debtor Party's own conduct and breach of duty (*i.e.*, duty owed to the AFFF Claimant and not owed to the Debtor), including (a) Causes of Action arising from such acts or omissions of such Non-Debtor Party, and (b) Causes of Action based on allegations that a Non-Debtor Party is responsible for such conduct under theories of liability or recovery or remedies that could have been asserted by an AFFF Claimant on its own behalf under applicable state or federal law in respect of such Causes of Action prior to the Petition Date based on (i) the doctrine of successor liability involving a Non-Debtor Party that is alleged to be a successor to another Non-Debtor Party with respect to liabilities not directly or indirectly assumed from the Debtor, whether based on a contractual assumption of liability (including under the 2020 Separation Agreement), consolidation or de facto merger, acquisition of product line, fraud, domination, direction of affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, (ii) the doctrines of alter ego or veil piercing involving alter egos of a Non-Debtor Party, or piercing the corporate veil between Non-Debtor Parties, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form, or (iii) alleged derivative or vicarious liability of a Non-Debtor Party for liabilities of another Non-Debtor Party not directly or indirectly assumed from the Debtor; *provided* that, if any Cause of Action falls within the definition of Estate Cause of Action or Sovereign State Retained Cause of Action, it is not an Independent AFFF Cause of Action.
"*Insurance Assignment*" means the transfer by the Debtor and Carrier to the Primary AFFF Settlement Trust of certain rights in connection with the Insurance Policies as set forth in Article 5 of the Plan.

"*Insurance Policy/ies*" means: (i) any insurance policies listed on Schedule 1 to the Plan, (ii) to the extent not listed on Schedule 1, any "general liability" insurance (which, for the avoidance of doubt, shall exclude director & officer, automobile, or workers' compensation insurance) contract, binder, certificate, insurance policy, or reinsurance policy, whether currently known or unknown, discovered after the Effective Date, in effect at any time on or before the Petition Date naming the Debtor, the Contributing Parties, or any of their predecessors, subsidiaries, or past or present affiliates as an insured (whether as the primary or additional insured) or that provides or may provide coverage to Carrier or the Debtor for AFFF Claims, (iii) "Aviation" policies to

which Carrier or the Debtor has rights as listed in Schedule 2 to the Plan solely to the extent of Insurance Policy Rights applicable to or arising from AFFF Claims and (iv) any other subsequently discovered insurance policies of the same types as listed in Schedules 1 and 2 to the Plan to the extent that Carrier or the Debtor have rights under such policies (whether or not such policies are specifically titled as "General Liability" or "Aviation" policies). For the avoidance of doubt, "Insurance Policies" shall not include any D&O Policies, automobile policies or worker's compensation insurance.

"*Insurance Policy Rights*" means any and all rights subject to the Insurance Assignment.

"*KFFI*" means Kidde Fire Fighting, Inc. (formerly known as National Foam, Inc.).

"*Liquidating Estate Claims*" means Administrative Claims, Priority Tax Claims, Other Priority Claims and Secured Claims.

"*New National Foam*" means, collectively, National Foam, Inc. f/k/a Eurostar US Tradeco, Inc., Angus Fire Ltd. f/k/a Eurostar Tradeco Limited, Angus International Safety Group Limited f/k/a/ Eurostar Holdco Limited, and each of their Related Parties.

"*New National Foam Release*" means a settlement between the Debtor and New National Foam pursuant to which (a) Estate Causes of Action against New National Foam are resolved for value reasonably acceptable to the Settling Parties and (b) New National Foam agrees to absolutely, unconditionally, and irrevocably release and discharge the Debtor and each Released Party from any and all Claims and Causes of Action, whether known or unknown, based on or relating to, or in any manner arising from that certain Share and Business Sale Agreement, dated as of June 28, 2013, or any other occurrence taking place on or before the Effective Date, including Proof of Claim No. 225, and otherwise in form and substance reasonably acceptable to the Settling Parties.

"*Non-Debtor Party*" means any Person other than the Debtor. For the avoidance of doubt, the term "*Non-Debtor Party*" does not include KFFI or National Foam, Inc.

"*Other Insurance Company*" means an Insurance Company that is not a Settling Insurance Company.

"*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"*Person*" means a "person" or "entity" as defined in the Bankruptcy Code.

"*Petition Date*" means May 14, 2023, the date on which the Debtor commenced the Chapter 11 Case.

"*PFAS*" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.

"*Primary AFFF Settlement Trust*" means the settlement trust organized under the laws of the state of Delaware and established under the Plan and the Settlement Trust Documents, which

shall (i) have the powers, duties and obligations set forth in the Plan and the Settlement Trust Documents, (ii) assume all liability of the Debtor and the Estate for, and administer, all Channeled AFFF Claims and (iii) be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code.

"*Primary AFFF Settlement Trust Agreement*" means the Settlement Trust Agreement governing the Primary AFFF Settlement Trust, dated as of the Effective Date, as the same may be amended or modified from time to time in accordance with the terms thereof.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Released Party*" means (i) Carrier, (ii) RTX, and (iii) each of their Related Parties in their capacities as such.  Released Parties shall not include DuPont, 3M, or their current or former affiliates and Related Parties.  If a Person is a current or former affiliate or Related Party of DuPont or 3M, and such Person is also a current or former affiliate or Related Party of Carrier or RTX, then such Person shall not be a Released Party.  For the avoidance of doubt, New National Foam shall not be a Released Party unless the New National Foam Release  is provided by the Effective Date.

"*Related Party*" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, and current and former affiliates and subsidiaries, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, all only in their capacity as a representative of such Person, and (c) respective heirs, executors, estates, and nominees, in each case solely in its capacity as such.

"*RTX Waiver*" shall have the meaning set forth in Article 5.5.11(b) of the Plan.

"*Sale Order*" means the *Order (I) Approving the Sale of All or Substantially All of the Debtor's Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving Debtor's Entry, and Performance Under the Contribution Agreement, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Granting Related Relief*, entered by the Bankruptcy Court on April 2, 2024 [D.I. 1058].

"*Settlement Trust Agreements*" means, collectively, (i) the Primary AFFF Settlement Trust Agreement, (ii) the Sovereign State AFFF Settlement Trust Agreement and (iii) the GUC Liquidating Trust Agreement.  To the extent that any provision of a Settlement Trust Agreement impacts the rights of Carrier, such provision shall not be included in such Settlement Trust Agreement unless reasonably acceptable to Carrier.

"*Settlement Trust Documents*" means, collectively, (a) the Settlement Trust Agreements, (b) the TDPs, (c) the Confirmation Order, and (d) any other agreements, instruments, and documents governing the establishment, administration, and operation of the Settlement Trusts.

"*Settlement Trusts*" means the Primary AFFF Settlement Trust, Sovereign State AFFF Settlement Trust and GUC Liquidating Trust.

"*Settling Insurance Company*" means any Insurance Company that contributes funds, proceeds, or other consideration to or for the benefit of the Primary AFFF Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order.  No Insurance Company shall be considered a Settling Insurance Company without the Committee's prior written consent.

"*Sovereign State*" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.

"*Sovereign State AFFF Settlement Trust*" means the trust established under the Plan and the Settlement Trust Documents to administer all Sovereign State Claims against the Debtor.  The Sovereign State AFFF Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code and shall have the powers, duties and obligations set forth in the Settlement Trust Documents.

"*Sovereign State Retained Cause of Action*" means any Claim or Cause of Action asserted, or which may be asserted, by a Sovereign State against a Contributing Party that (1) is not an Estate Cause of Action and (2) arises from a statute, regulation, or common law that creates a theory of liability, by which a Sovereign State could recover damages or penalties, or obtain equitable or injunctive relief, against a Contributing Party.  For the avoidance of doubt, a Sovereign State may assert a Sovereign State Retained Cause of Action irrespective of whether such Sovereign State Retained Cause of Action could also be considered an Independent AFFF Cause of Action.

"*TDPs*" or "Trust Distribution Procedures" means the Trust Distribution Procedures for the Settlement Trusts, as the same may be amended or modified from time to time in accordance with the terms thereof, that will govern the claims submission, adjudication, and distribution processes for the Settlement Trusts in a manner that is fair and equitable to Holders of Allowed Channeled AFFF Claims.  To the extent that any provision of the TDPs impacts the rights of Carrier, such provision shall not be included unless reasonably acceptable to Carrier.

"*Transferred Assets*" shall have the meaning set forth in the Acquisition Agreement.

## **EXHIBIT 9**

**Publication Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |

**NOTICE OF (I) DEADLINE TO VOTE ON DEBTOR'S FIFTH AMENDED
PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE,
(II) HEARING TO CONSIDER CONFIRMATION OF DEBTOR'S
FIFTH AMENDED PLAN OF LIQUIDATION UNDER CHAPTER 11
OF THE BANKRUPTCY CODE AND (III) RELATED MATTERS**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

**The Plan**

On [•], 2025, KFI Wind-Down Corp. f/k/a Kidde-Fenwal Inc. (the "Debtor") filed the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Plan").[2]  In connection with the Plan, the Debtor also filed the *Disclosure Statement for the Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Disclosure Statement").

The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has scheduled a hearing on **January 21, 2026 at [•] [a.m. / p.m.] (prevailing Eastern Time)** (the "Confirmation Hearing") to consider confirmation of the Plan. The Confirmation Hearing will be held before the Honorable Laurie S. Silverstein, United States Bankruptcy Court for the District of Delaware, located at 824 Market Street, 6th Floor, Courtroom 2, Wilmington, Delaware 19801.  The Confirmation Hearing may be continued from time to time by the Bankruptcy Court or the Debtor, in consultation with the Settling Parties, without further notice other than by such adjournment being announced in open court or in the filing of a notice or a hearing agenda with the Bankruptcy Court.  Moreover, the Plan may be modified or amended, if necessary, subject to the Settling Parties' consent rights as set forth in the Plan Support Agreement, and pursuant to section 1127 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and other applicable law, prior to, during or as a result of the Confirmation Hearing, without further notice to parties-in-interest.

---

[1]    The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters are located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

**The Plan proposes certain releases, injunctions and exculpatory provisions in furtherance of the Plan. The Plan proposes a channeling injunction that permanently channels all AFFF Claims against the Debtor to the Primary AFFF Settlement Trust. In addition, the Plan proposes an injunction that permanently enjoins the pursuit of any Claim against or Interest in the Debtor or any of its assets or properties to the extent that such Claim or Interest has been discharged, released, waived, settled, or deemed satisfied in accordance with the Plan (other than enforcement of any right pursuant to the Plan). For the specific terms and conditions of all the releases, injunctions and exculpatory provisions provided for in the Plan, and the precise scope of the Claims to be channeled to the Primary AFFF Settlement Trust, please refer to the specific terms of the Plan, which can be obtained as described below.**

The Plan proposes establishing the Primary AFFF Settlement Trust and the Sovereign State AFFF Settlement Trust to resolve all AFFF Claims against the Debtor. Persons and entities with AFFF Claims against the Debtor will be forever barred from asserting such AFFF Claims against the Debtor. If the Plan is approved by the Bankruptcy Court, all current and future Holders of AFFF Claims against the Debtor can request and receive money only from the Primary AFFF Settlement Trust or the Sovereign State AFFF Settlement Trust, as applicable. You should read the Plan and Disclosure Statement carefully for details about how the Plan, if approved, will affect your rights. You may wish to discuss with a lawyer how your rights may be affected by the Plan.

## Voting on the Plan

On [•], 2025, the Bankruptcy Court entered an order (the "<u>Disclosure Statement Order</u>") approving the Disclosure Statement and procedures for soliciting votes to accept or reject the Plan (the "<u>Solicitation Procedures</u>"). Pursuant to the Disclosure Statement Order, only Holders of Claims in Voting Classes[3] are entitled to receive a ballot for casting a vote on the Plan (a "<u>Ballot</u>"). Holders of Claims and Interests in all other Classes under the Plan are either conclusively presumed to accept the Plan, because they are Unimpaired by the Plan, or presumed to reject the Plan because they are not retaining or receiving any property under the Plan. For a vote to accept or reject the Plan to be counted, a Ballot must be completed and returned in accordance with the instructions provided on the Ballot so that it is **actually received by** the Solicitation Agent on or before **December 15, 2025 at 5:00 p.m. (prevailing Eastern Time)** (the "<u>Voting Deadline</u>").

Under the Solicitation Procedures approved by the Bankruptcy Court, lawyers for Holders of Claims in Classes 3A, 3B, 3D, 3E, 3F, 3G, 3H, 3I, 3J and 3K may vote on the Plan on behalf of their clients, if authorized by the client. If you are unsure whether your lawyer is authorized to vote on your behalf, please contact your lawyer.

**If you believe you have an AFFF Claim against the Debtor, you may be entitled to vote on the Plan. To vote on the Plan:**

---

[3]    The Voting Classes are as follows: 3A, 3B, 3C, 3D, 3E, 3F, 3G, 3H, 3I, 3J, 3K and 4.

a)   To obtain the relevant documents and Ballot for any AFFF Claim other than a Sovereign State Claim, you may either:

   a. Contact the Solicitation Agent at least three business days before the Voting Deadline and request from the Solicitation Agent a Solicitation Package containing the applicable Ballot.  Unless hard copy service is requested, the Solicitation Agent will provide the Solicitation Package documents or a link where they can be accessed via email.  To the extent you submitted your request at least seven business days prior to the Voting Deadline and requested hard copy service, the Solicitation Agent will provide you with a Solicitation Package (including the requested Ballot) within two business days.  To the extent you submitted your request on or after seven business days before the Voting Deadline and requested hard copy service, the Solicitation Agent will provide you with a Solicitation Package (including the requested Ballot) by overnight mail.

   b. Visit the Solicitation Agent's website at **https://cases.stretto.com/kfi** and download Plan, Disclosure Statement, other Solicitation Package materials and the applicable Ballot from the online portal.

b)   Carefully review the Plan, the Disclosure Statement, the Solicitation Package materials and the Ballot (and the instructions on the Ballot).  You may wish to consult a lawyer on how your rights, if any, may be affected by the Plan.

c)   Complete and sign the Ballot according to the instructions on the Ballot.  <u>A failure to follow the instructions on the Ballot may result in the vote being disqualified.</u>

d)   Submit the completed and signed Ballot back to the Solicitation Agent so that it is <u>actually received</u> by the Voting Deadline (5:00 p.m. on December 15, 2025) according to the instructions on the Ballot.  Ballots received after that time will <u>**NOT**</u> be counted unless the Voting Deadline has been extended by the Debtor in writing.

e)   Alternatively, your attorney may submit a vote on your behalf using an AFFF Master Ballot.  Please contact your attorney if you want him or her to vote on your behalf using the AFFF Master Ballot.  Your attorney may have submitted a Solicitation Directive authorizing him or her to collect and record your vote on your behalf.

   To determine if you have an AFFF Claim against the Debtor, please refer to the Plan for the specific definition of an "AFFF Claim," which is copied below.  To vote on

-3-

**the Plan, you will need to determine which type of AFFF Claim you have, request a Solicitation Package including the applicable Ballot, and certify that you hold such a Claim on your Ballot. If you believe you have an AFFF Claim against the Debtor, you should refer to the Plan to determine which type of AFFF Claim you have and which Ballot to request.**

> *"AFFF Claim" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of aqueous film-forming foam ("AFFF") or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.*

The Debtor may file supplements to the Plan (as may be amended, modified or supplemented from time to time, the "Plan Supplement") with the Court no later than **November 17, 2025**.

## Objecting to the Plan

If you would like to object to the Plan, you may do so by filing your objection no later than **December 15, 2025 at 4:00 p.m. (prevailing Eastern Time)** (the "Confirmation Objection Deadline"). Any objection must: (a) be in writing; (b) comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules; (c) set forth the name of the objector and the nature and amount of Claims or Interests held or asserted by the objector against the Debtor; (d) state the basis and the specific grounds therefor; and (e) be filed with the Bankruptcy Court, together with proof of service thereof, and served upon each of the following parties (collectively, the "Notice Parties") so that it is **actually received** by the Confirmation Objection Deadline. **UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED AND MAY BE OVERRULED BY THE BANKRUPTCY COURT WITHOUT FURTHER NOTICE.**

### Notice Parties

(a)    Counsel to the Debtor: (i) Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004, Attn: Andrew G. Dietderich (dietdericha@sullcrom.com), Brian D. Glueckstein (gluecksteinb@sullcrom.com), Justin J. DeCamp (decampj@sullcrom.com) and Benjamin S. Beller (bellerb@sullcrom.com; and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box. 1347, Wilmington, DE 19899, Attn: Derek C. Abbott (dabbott@morrisnichols.com) and Andrew R. Remming (aremming@morrisnichols.com);

(b)    Counsel to the Special Committee of the Board of Directors of the Debtor, Schulte Roth & Zabel LLP, 919 Third

Avenue, New York, NY, Attn: Adam Harris (Adam.Harris@srz.com) and Peter Amend (Peter.Amend@srz.com);

(c)     Counsel to Carrier, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Sixth Avenue, New York, NY 10019, Attn: Paul M. Basta (pbasta@paulweiss.com), Kenneth S. Ziman (kziman@paulweiss.com) and Robert A. Britton (rbritton@paulweiss.com);

(d)     Counsel to the Committee: (i) Brown Rudnick LLP, Seven Times Square, New York, NY 10036, Attn: David J. Molton (dmolton@brownrudnick.com); Cathrine M. Castaldi (ccastaldi@brownrudnick.com) and Eric R. Goodman (egoodman@brownrudnick.com); and (ii) Stutzman, Bromberg, Esserman & Plifka, 2323 Bryan Street, Suite 2200, Dallas, TX 75201, Attn: Sander L. Esserman (Esserman@sbep-law.com);

(e)     The MDL PEC Co-Leads: (i) Baron & Budd, P.C., 3102 Oak Lawn Avenue #1100, Dallas, TX 75219, Attn: Scott Summy (SSummy@baronbudd.com); (ii) Douglas & London, P.C., 59 Maiden Ln., 6th Floor, New York, NY 10038, Attn: Michael London (mlondon@douglasandlondon.com); (iii) Motley Rice LLC, 28 Bridgeside Blvd., Mount Pleasant, SC 29464, Attn: Joseph F. Rice (jrice@motleyrice.com); (iv) Napoli Shkolnik PLLC, 1302 Avenida Ponce de Leon, Santurce, Puerto Rico 00907, Attn: Paul Napoli (PNapoli@NSPRLaw.com); and (v) Taft Stettinius & Hollister LLP, 41 South High Street, Suite 1800, Columbus, OH 43215, Attn: David J. Butler (dbutler@taftlaw.com);

(f)     The Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Timothy J. Fox, Esq. (timothy.fox@usdoj.gov); and

(g)     To the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.

### **Obtaining Documents**

Copies of the Plan, the Plan Supplement, the Disclosure Statement and the Disclosure Statement Order, as well as other documents filed in this Chapter 11 Case, may be

-5-

obtained (a) for a nominal fee from the Bankruptcy Court's electronic docket for the Debtor's Chapter 11 Case at https://ecf.deb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov), or (b) free of charge by accessing the Debtor's case website maintained by the Solicitation Agent, https://cases.stretto.com/kfi.  In addition, the Debtor will, at its expense, provide paper copies of the Plan, the Plan Supplement, the Disclosure Statement or the Disclosure Statement Order to any party submitting a request for such paper copies by (a) calling the Solicitation Agent at (866) 887-0488 (toll-free) or +1 (949) 889-0128 (international) or (b) e-mailing the Solicitation Agent at KFIInquiries@stretto.com.  Please be advised that the Solicitation Agent is authorized to answer questions about, and provide additional copies of, materials filed in this Chapter 11 Case, but may not advise you on matters relating to the Disclosure Statement or the Plan.

4907-5756-0065 v.5

Dated: [•], 2025
       Wilmington, Delaware

**MORRIS NICHOLS ARSHT & TUNNELL LLP**

/s/ *DRAFT*_____
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Daniel B. Butz (No. 4227)
Tamara K. Mann (No. 5643)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
dabbott@morrisnichols.com
aremming@morrisnichols.com
dbutz@morrisnichols.com
tmann@morrisnichols.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Justin J. DeCamp (admitted *pro hac vice*)
Benjamin S. Beller (admitted *pro hac vice*)
Julie G. Kapoor (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
       gluecksteinb@sullcrom.com
       decampj@sullcrom.com
       bellerb@sullcrom.com
       kapoorj@sullcrom.com

*Counsel for the Debtor and Debtor-in-Possession*

**EXHIBIT 10A**

**Notice of Unimpaired Non-Voting Status**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

KFI WIND-DOWN CORP.,[1]

      Debtor.

Chapter 11

Case No. 23-10638 (LSS)

## NOTICE OF NON-VOTING STATUS TO HOLDERS OF
## UNIMPAIRED INTERESTS AND CLAIMS

      **PLEASE TAKE NOTICE** that on [•], 2025, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered the *Order (I) Approving the Adequacy of the Disclosure Statement and Form and Manner of Notice of Hearing Thereon; (II) Establishing Solicitation Procedures; (III) Approving the Form and Manner of Notice to Attorneys and Solicitation Directive; (IV) Approving the Form of Ballots; (V) Approving the Form, Manner and Scope of Confirmation Notices; (VI) Establishing Certain Deadlines in Connection With Approval of Disclosure Statement and Confirmation of Plan; and (VII) Granting Related Relief* [D.I. [•]] (the "Disclosure Statement Order").  Among other things, the Disclosure Statement Order approved the adequacy of the *Disclosure Statement for the Debtors' Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* (as may be amended, modified or supplemented from time to time and together with all schedules and exhibits thereto, the "Disclosure Statement"), voting and solicitation procedures and established the timeline to confirm the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* (as may be amended, modified or supplemented from time to time and together with all schedules and exhibits thereto, the "Plan").[2]

<blockquote>

**THE PLAN CONTAINS RELEASE, INJUNCTION AND EXCULPATION PROVISIONS.  THE PROVISIONS ARE SET FORTH IN APPENDIX A TO THIS NOTICE.  YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.**

</blockquote>

      **UNDER THE TERMS OF THE PLAN, CLASS 1 OTHER PRIORITY CLAIMS AND  CLASS 2 SECURED CLAIMS WILL BE SATISFIED IN FULL OR OTHERWISE UNAFFECTED.  THEREFORE, IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT, YOUR CLAIMS IN THESE CLASSES ARE CONSIDERED UNIMPAIRED AND WILL BE PAID IN FULL OR OTHERWISE UNAFFECTED BY THE DEBTOR'S CHAPTER 11 CASE.  IN ACCORDANCE WITH SECTION 1126(f) OF THE BANKRUPTCY CODE, YOU ARE CONCLUSIVELY PRESUMED TO HAVE**

---

[1]    The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters are located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]    Capitalized terms used but not defined in this notice shall have the meaning ascribed to them in the Plan or the Disclosure Statement, as applicable.

**ACCEPTED THE PLAN AND ARE NOT ENTITLED TO VOTE ON THE PLAN. YOU ARE BEING SENT THIS NOTICE FOR INFORMATIONAL PURPOSES.**

If you hold a separate, additional Claim or Interest for which you are entitled to vote, then you will also receive a Ballot and other solicitation materials under separate cover.

### Relevant Deadlines

The hearing at which the Bankruptcy Court will consider the Confirmation of the Plan (the "Confirmation Hearing") will commence at **[•] [a.m. / p.m.] (prevailing Eastern Time) on January 21, 2026**, or such other time as the Bankruptcy Court determines. The Confirmation Hearing will take place before the Honorable Laurie S. Silverstein, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 Market Street, 6th Floor, Courtroom 2, Wilmington, Delaware 19801. The Confirmation Hearing may be continued from time to time by the Bankruptcy Court or the Debtor, in consultation with the Settling Parties, without further notice other than by such adjournment being announced in open court or in the filing of a notice or hearing agenda with the Bankruptcy Court. Moreover, the Plan may be modified or amended, if necessary, subject to the Settling Parties' consent rights set forth in the Plan Support Agreement, and pursuant to section 1127 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedures and other applicable law, prior to, during or as a result of the Confirmation Hearing, without further notice to parties-in-interest.

The deadline for filing objections to the Plan is **December 15, 2025 at 4:00 p.m. (prevailing Eastern Time)** (the "Confirmation Objection Deadline"). Any objection to the confirmation of the Plan must: (a) be in writing; (b) comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules; (c) set forth the name of the objector and the nature and amount of Claims or Interests held or asserted by the objector against the Debtor; (d) state the basis and the specific grounds therefor and (e) be filed with the Bankruptcy Court, together with proof of service thereof, and served so that it is **actually received** by each of the following parties (collectively, the "Notice Parties") no later than the Confirmation Objection Deadline. **UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED AND MAY BE OVERRULED BY THE BANKRUPTCY COURT WITHOUT FURTHER NOTICE.**

### Notice Parties

(a)     Counsel to the Debtor: (i) Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004, Attn: Andrew G. Dietderich (dietdericha@sullcrom.com), Brian D. Glueckstein (gluecksteinb@sullcrom.com), Justin J. DeCamp (decampj@sullcrom.com) and Benjamin S. Beller (bellerb@sullcrom.com; and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box. 1347, Wilmington, DE 19899, Attn: Derek C. Abbott (dabbott@morrisnichols.com) and Andrew R. Remming (aremming@morrisnichols.com);

-2-

(b)     Counsel to the Special Committee of the Board of Directors of the Debtor, Schulte Roth & Zabel LLP, 919 Third Avenue, New York, NY, Attn: Adam Harris (Adam.Harris@srz.com) and Peter Amend (Peter.Amend@srz.com);

(c)     Counsel to Carrier, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Sixth Avenue, New York, NY 10019, Attn: Paul M. Basta (pbasta@paulweiss.com), Kenneth S. Ziman (kziman@paulweiss.com) and Robert A. Britton (rbritton@paulweiss.com);

(d)     Counsel to the Committee: (i) Brown Rudnick LLP, Seven Times Square, New York, NY 10036, Attn: David J. Molton (dmolton@brownrudnick.com); Cathrine M. Castaldi (ccastaldi@brownrudnick.com) and Eric R. Goodman (egoodman@brownrudnick.com); and (ii) Stutzman, Bromberg, Esserman & Plifka, 2323 Bryan Street, Suite 2200, Dallas, TX 75201, Attn: Sander L. Esserman (Esserman@sbep-law.com);

(e)     The MDL PEC Co-Leads: (i) Baron & Budd, P.C., 3102 Oak Lawn Avenue #1100, Dallas, TX 75219, Attn: Scott Summy (SSummy@baronbudd.com); (ii) Douglas & London, P.C., 59 Maiden Ln., 6th Floor, New York, NY 10038, Attn: Michael London (mlondon@douglasandlondon.com); (iii) Motley Rice LLC, 28 Bridgeside Blvd., Mount Pleasant, SC 29464, Attn: Joseph F. Rice (jrice@motleyrice.com); (iv) Napoli Shkolnik PLLC, 1302 Avenida Ponce de Leon, Santurce, Puerto Rico 00907, Attn: Paul Napoli (PNapoli@NSPRLaw.com); and (v) Taft Stettinius & Hollister LLP, 41 South High Street, Suite 1800, Columbus, OH 43215, Attn: David J. Butler (dbutler@taftlaw.com);

(f)     The Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Timothy J. Fox, Esq. (timothy.fox@usdoj.gov); and

(g)     To the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.

The Debtor may file supplements to the Plan (as may be amended, modified or supplemented from time to time, the "Plan Supplement") with the Bankruptcy Court no later than **November 17, 2025**.

-3-

**Obtaining Copies of Relevant Documents**

Copies of the Plan, the Plan Supplement, the Disclosure Statement and the Disclosure Statement Order, as well as other documents filed in this Chapter 11 Case, may be obtained (a) for a nominal fee from the Bankruptcy Court's electronic docket for the Debtor's Chapter 11 Case at https://ecf.deb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov), or (b) free of charge by accessing the Debtor's website maintained by the Solicitation Agent, https://cases.stretto.com/kfi.  In addition, the Debtor will, at its expense, provide paper copies of the Plan, the Plan Supplement, the Disclosure Statement or the Disclosure Statement Order to any party submitting a request for such paper copies by (a) calling the Solicitation Agent at (866) 887-0488 (toll-free) or +1 (949) 889-0128 (international) or (b) e-mailing the Solicitation Agent at KFIInquiries@stretto.com.  Please be advised that the Solicitation Agent is authorized to answer questions about, and provide additional copies of, materials filed in this Chapter 11 Case, but may not advise you on matters relating to the Disclosure Statement or the Plan.

4898-1810-1505 v.5

Dated: [•], 2025
    Wilmington, Delaware

**MORRIS NICHOLS ARSHT & TUNNELL LLP**

/s/ *DRAFT*_____
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Daniel B. Butz (No. 4227)
Tamara K. Mann (No. 5643)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
dabbott@morrisnichols.com
aremming@morrisnichols.com
dbutz@morrisnichols.com
tmann@morrisnichols.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Justin J. DeCamp (admitted *pro hac vice*)
Benjamin S. Beller (admitted *pro hac vice*)
Julie G. Kapoor (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
      gluecksteinb@sullcrom.com
      decampj@sullcrom.com
      bellerb@sullcrom.com
      kapoorj@sullcrom.com

*Counsel for the Debtor and Debtor-in-Possession*

-5-

## <u>Appendix A</u>

**Release, Injunction and Exculpation Provisions in the Plan[3]**

---

[3]    The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.

### Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released and cancelled, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Liquidating Estate and their successors and assigns.  Any Holder of such mortgage, deed of trust, Lien, pledge or other security interest (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including and cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Liquidating Administrators to evidence such release, including the execution, delivery and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

### Releases by the Estate

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party, the Debtor, the Liquidating Estate and each Related Party of the Debtor and the Liquidating Estate shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, or any other Person or Governmental Unit asserting currently or in the future by, under, through, or on behalf of the Debtor or its Estate, and each of their respective successors or assigns, including the Settlement Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between one or both of the Debtor, on the one hand, and any Released Party, the Liquidating Estate, or any Related Party of the Debtor and the Liquidating Estate, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.3 of the Plan shall not be construed to release any post-Effective Date obligations under the RTX Waiver, the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, which specifically provides that such Estate Claims Settlement can be terminated, and the releases provided in the Plan or in the Estate Claims Settlement are void, if Carrier fails to make the installments of the Guaranteed Cash Payment when due and such failure is not timely cured within 30 days, at which time the Primary AFFF Settlement Trust is entitled to commence, prosecute, or continue all Estate Causes of Action against the Released Parties in any court of competent jurisdiction, and take such other actions as the Primary AFFF Settlement Trustee may determine in the exercise of their fiduciary duties.

### Releases by the Released Parties

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Released Parties and their successors or assigns of and from any and all Claims and Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, the Debtor's current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between any of the Debtor, the Liquidating Estate, the Settlement Trusts or the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case, on the one hand, and any Released Party, on the other hand, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any post-Effective Date obligations under the Plan Documents, the Confirmation Order, the 2020 Separation Agreement as supplemented by the RTX Waiver, or the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, or the right of any Person to enforce the same in accordance with

the terms thereof. Except with respect to the Claims and Causes of Action against the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case that are released and discharged under Article 10.4 of the Plan, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any obligations, rights, Causes of Action or Claims that Carrier Global Corporation or members of the Carrier Group (other than the Debtor), Otis Worldwide Corporation or members of the Otis Group, or RTX or members of the UTC Group may have against any Person under the 2020 Separation Agreement as supplemented by the RTX Waiver (including indemnification rights of RTX and other members of the "UTC Group" under the 2020 Separation Agreement). For the avoidance of doubt, in the event that the Estate Claims Settlement Effective Date does not occur or the Estate Claims Settlement is terminated as contemplated by the last paragraph of Article 10.3 in the Plan, all releases being provided by the Released Parties under the Plan shall be void.

## Scope of Releases

Each Person providing releases under the Plan, including the Debtor, the Estate and the Settling Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts. Each Person providing releases under the Plan shall be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

## Exculpation

Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtor and its directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation.

As of the Effective Date, to the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in Article 10 of the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person for any act or omission in connection with, related to or arising out of this Chapter 11 Case, including (a) the operation of the Debtor's businesses during the pendency of this Chapter 11 Case; (b) the

administration and adjudication of Claims and Interests during this Chapter 11 Case; (c) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Plan, the Disclosure Statement, the Plan Supplement, or any related contract, instrument, release or other agreement or document created or entered into in connection with the Chapter 11 Case (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan and the distribution of property under the Plan); (d) any other transaction, agreement, event, or other occurrence related to the Chapter 11 Case taking place on or before the Effective Date, other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.

## Injunction

Except as otherwise expressly provided in the Plan or the Confirmation Order, the satisfaction and release pursuant to Article 10 of the Plan shall also act as a permanent injunction against any Person who has held, holds, or may in the future hold Claims against or Interests in the Debtor or any of its assets or properties based on any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are treated, released, settled, channeled, or exculpated pursuant to the terms of the Plan from taking any of the following actions on account of, or on the basis of, such Claims or Interests:  (a) commencing or continuing any action to collect, enforce, offset, recoup, or recover with respect to any Claims or Interests treated, released, settled, channeled, or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Claim or Interest against the Debtor, the Liquidating Estate, the Settlement Trusts, or its or their respective property; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of or in connection with or with respect to any such Claims or Interests, notwithstanding an indication of a Claim or Interest or otherwise that a Holder of such Claim or Interest asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise, against the Debtor, the Liquidating Estate, or the Settlement Trusts; or (e) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

## Channeling Injunction

Notwithstanding anything to the contrary in the Plan, to preserve and promote the settlements contemplated by and provided for in the Plan, including the Insurance Settlement Agreements, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under sections 105(a) and 1123(b) of the Bankruptcy Code, the sole recourse of any Holder of a Channeled AFFF Claim against the Debtor or a Released Party on account of such Channeled AFFF Claim shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to

and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, and such Holder shall have no right whatsoever at any time to assert any such Channeled AFFF Claim or any Estate Cause of Action that is released under the Estate Claims Settlement against the Debtor or any Released Party or any property or interest in property of the Debtor or any Released Party. For the avoidance of doubt, the sole recourse for any Channeled AFFF Claim covered by any Insurance Policy issued by a Settling Insurance Company shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents. Accordingly, on and after the Effective Date, all Holders of AFFF Claims that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled AFFF Claim or any Estate Cause of Action against the Debtor or any Released Party shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from the Debtor or any Released Party with respect to any such Channeled AFFF Claim or Estate Cause of Action, other than from the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, including:

a) commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

b) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

c) creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;

d) asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party; or

e) taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents, or, with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, by the Sovereign State AFFF Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Channeled AFFF Claim.

The Debtor, the Liquidating Estate and/or any Released Party, as applicable, may enforce the Channeling Injunction and/or the Releases contained in the Plan before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at their own cost and expense, and no such cost or expense incurred by a party other than the Primary AFFF Settlement Trust shall be reimbursed or indemnified by the Primary AFFF Settlement Trust under any circumstances.

## Insurance Company Injunction

Subject to the provisos set forth in this Section, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim or cause of action (including any AFFF Claim or any Claim for or respecting any Primary AFFF Settlement Trust expense) against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Insurance Policy, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, statute or any other theory of law, equity or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim or cause of action, including:

a)    commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, demand, or cause of action against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such Claim, demand, or cause of action against any Insurance Company);

b)    enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

c)    creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such Claim or cause of action; and

d)    except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

*provided, however,* that (i) nothing in this Section shall impair or affect the rights of any member of the UTC Group, including RTX, or any member of the Otis Group (each as defined in the 2020 Separation Agreement), or any additional insured designated by RTX

or any member of the UTC Group, based upon, attributable to, arising out of, or in any way connected with an Insurance Policy, including to assert Claims or Causes of Action against any Insurance Company for covered losses and to receive proceeds in respect thereof; (ii) this injunction shall not impair in any way any actions brought by the Primary AFFF Settlement Trust against any Other Insurance Company; (iii) the Primary AFFF Settlement Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction with respect to any Other Insurance Company, in accordance with the Settlement Trust Documents, upon express written notice to such Other Insurance Company; and (iv) this injunction is not issued for the benefit of any Other Insurance Company, and no Other Insurance Company is a third-party beneficiary of this injunction.

Notwithstanding anything to the contrary in the Plan, this injunction shall not enjoin:

a)    the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of Holders of AFFF Claims to assert such Claims, as applicable, in accordance with the TDPs;

b)    the rights of the Primary AFFF Settlement Trust to prosecute any action based on or arising from Insurance Policies, except to the extent otherwise released;

c)    the rights of the Primary AFFF Settlement Trust to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company based on or arising from the Insurance Policies;

d)    any actions of the Contributing Parties in fulfilling their obligations under the Estate Claims Settlement in consultation and coordination with the Primary AFFF Settlement Trust;

e)    the rights of any Insurance Company to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company; or

f)    the Claims for reinsurance under reinsurance contracts or Claims under retrocessional contracts among the Settling Insurance Companies and any Other Insurance Company.

### Prohibition on Actions Against Buyer

Subject to the Sale Order and the Acquisition Agreement, Buyer, in its capacity as such, shall not have any liability for any AFFF Claims against the Debtor arising prior to the closing of the Sale. Except as expressly otherwise set forth in the Sale Order, all persons and entities hereby are forever barred, estopped and permanently enjoined from asserting against Buyer, its Affiliates, its successors or assigns, its property or the Transferred Assets, such persons' or entities' AFFF Claims that have been or could have been asserted against the Debtor arising prior to the closing of the Sale. For the avoidance of doubt, the foregoing shall

not release Buyer from, or enjoin any actions against Buyer for, any Assumed Liability or any other liability incurred by Buyer on account of its operations following the closing of the Sale.

## Limitations on Exculpations and Releases

Notwithstanding anything to the contrary in the Plan, none of the releases or exculpations set forth in the Plan shall operate to waive or release any obligation or Causes of Action of any Person:  (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations or (b) expressly set forth in and preserved by the Plan, the Plan Supplement, Plan Documents or related documents.

## Release Dispute

In the event of a Release Dispute, a Released Party may, at its sole cost and expense, file a motion with the Bankruptcy Court seeking a determination as to whether an AFFF Claimant's Cause of Action was settled and released pursuant to the Plan, and upon such motion, the Bankruptcy Court shall make such determination and, if appropriate, enjoin the prosecution of such Cause of Action as having been settled and released under the Plan.

## Relevant Definitions

"*2020 Separation Agreement*" means that certain Separation and Distribution Agreement, dated as of April 2, 2020, by and among United Technologies Corporation, Carrier Global Corporation, and Otis Worldwide Corporation.

"*Administrative Claim*" means an Allowed Claim for costs and expenses of administration of the Chapter 11 Case pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate; (b) Allowed Professional Compensation Claims; (c) Allowed Fee Examiner Compensation Claims; and (d) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

"*AFFF*" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

"*AFFF Claim*" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.

"*Assumed Liability*" shall have the meaning set forth in the Acquisition Agreement.

"*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other Claims, Causes of Action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties-in-interest under the Bankruptcy Code or applicable non-

bankruptcy law, including claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) was commenced prior to the Effective Date.

"*Buyer*" means Pacific Erin Opco, LLC, as the purchaser of substantially all of the Debtor's assets pursuant to the Acquisition Agreement and the Sale Order.

"*Carrier*" means Carrier Global Corporation, a Delaware corporation, and its non-Debtor affiliates and Related Parties.

"*Causes of Action*" means any current or future actions, Claims, cross-claims, third-party claims, causes of action, controversies, disputes, demands, rights, liens, indemnities, contributions, guaranties, suits, obligations, liabilities, losses, debts, fees or expenses, damages, interest, judgments, costs, accounts, defenses, remedies, offsets, powers, privileges, proceedings, licenses, and franchises of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, choate or inchoate, capable of being asserted directly or derivatively (including any alter ego theories), including any Claims for recovery of attorneys' fees, turnover, fraud, gross negligence, or willful misconduct, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws, consumer protection laws, environmental laws, or nuisance or trespass theories). Causes of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to or otherwise contest Claims or Interests, (c) any claim pursuant to section 362 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Actions.

"*Channeled AFFF Claims*" means all AFFF Claims against the Debtor or the Estate channeled to the Primary AFFF Settlement Trust under the Plan and Settlement Trust Documents. For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

"*Committee*" means the official committee of unsecured creditors of the Debtor appointed by the U.S. Trustee in the Chapter 11 Case under section 1102(a) of the Bankruptcy Code pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 83] and any amendments thereto.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Settling Parties.

"*Consummation*" means the occurrence of the Effective Date.

"*Debtor*" means Kidde-Fenwal, Inc., the debtor and debtor in possession in the Chapter 11 Case, now known as KFI Wind-Down Corp.  In 2007, KFFI (formerly known as National Foam, Inc.) merged into Kidde-Fenwal, Inc., with Kidde-Fenwal, Inc. as the surviving entity.  Pursuant to this merger, KFFI's liabilities were assumed by, and KFFI's causes of action were transferred to, Kidde-Fenwal, Inc. directly or indirectly by merger or other agreement.  The term "Debtor" includes Kidde-Fenwal, Inc. as successor by merger or other agreement by which Kidde-Fenwal, Inc. obtained or assumed the liabilities and Causes of Action of any Person.

"*Effective Date*" means the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date set forth in the Plan shall have been satisfied or waived and on which a notice indicating the Effective Date has been filed on the docket of the Chapter 11 Case.

"*Estate Causes of Action*" means Causes of Action owned or held by either the Debtor or its Estate, or capable of being asserted (currently, or in the future) by any Person or Governmental Unit on behalf of, under or through, either the Debtor or its Estate, and each of their respective successors or assigns, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions, that may be commenced by a representative of the Estate under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise.  Without limiting the foregoing, Estate Causes of Action shall include:  (a) Causes of Action that on or after the Petition Date may be exclusively asserted by or on behalf of the Debtor or its Estate under applicable law, or that prior to the Petition Date could have been asserted by the Debtor on its own behalf under applicable law, including Causes of Action based on (i) the doctrine of successor liability that seek to impose the Debtor's (including KFFI's or National Foam, Inc.'s) liabilities on an alleged successor, whether based on a contractual assumption of liability, consolidation or de facto merger, acquisition of the Debtor's product line, fraud, domination, direction of the Debtor's affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, or (ii) the doctrines of alter ego or veil piercing involving alter egos of the Debtor or the piercing of the Debtor's (including KFFI's or National Foam, Inc.'s) corporate veil, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form; (b) Causes of Action or theories for recovery or remedies that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is generally common to creditors of the Debtor and can be asserted by the Debtor under applicable law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor.  Subsections (a), (b) and (c) immediately above expressly encompass any Causes of Action based on:  (i) the alleged assumption of the Debtor's (including KFFI's or

National Foam, Inc.'s) liabilities (but not a non-Debtor's liabilities) by Kidde plc (n/k/a Kidde Limited) pursuant to the 2000 Demerger Agreement, or any alleged subsequent assumption of such liabilities of the Debtor from Kidde plc by any other Released Party; or (ii) the alleged assumption of the Debtor's liabilities (but not a non-Debtor's liabilities), including any liabilities resulting from acts or omissions of National Foam, Inc. or KFFI, by a Released Party pursuant to the 2020 Separation Agreement.  For the avoidance of doubt, Estate Causes of Action shall not include any Independent AFFF Causes of Action or any Sovereign State Retained Causes of Action or Insurance Actions against any Released Party based on acts or omissions occurring after entry into the Plan Support Agreement with respect to rights under the 2020 Separation Agreement or the RTX Waiver to access and make Claims under any Insurance Policy or otherwise obtain the benefit of the Insurance Assignment.

"*Estate Claims Settlement*" means the settlement, including the release of all Estate Causes of Action against the Released Parties, pursuant to the Estate Claims Settlement Agreement.

"*Independent AFFF Cause of Action*" means any Cause of Action that could be asserted by an AFFF Claimant against a Non-Debtor Party based on the Non-Debtor Party's own conduct and breach of duty (*i.e.*, duty owed to the AFFF Claimant and not owed to the Debtor), including (a) Causes of Action arising from such acts or omissions of such Non-Debtor Party, and (b) Causes of Action based on allegations that a Non-Debtor Party is responsible for such conduct under theories of liability or recovery or remedies that could have been asserted by an AFFF Claimant on its own behalf under applicable state or federal law in respect of such Causes of Action prior to the Petition Date based on (i) the doctrine of successor liability involving a Non-Debtor Party that is alleged to be a successor to another Non-Debtor Party with respect to liabilities not directly or indirectly assumed from the Debtor, whether based on a contractual assumption of liability (including under the 2020 Separation Agreement), consolidation or de facto merger, acquisition of product line, fraud, domination, direction of affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, (ii) the doctrines of alter ego or veil piercing involving alter egos of a Non-Debtor Party, or piercing the corporate veil between Non-Debtor Parties, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form, or (iii) alleged derivative or vicarious liability of a Non-Debtor Party for liabilities of another Non-Debtor Party not directly or indirectly assumed from the Debtor; *provided* that, if any Cause of Action falls within the definition of Estate Cause of Action or Sovereign State Retained Cause of Action, it is not an Independent AFFF Cause of Action.
"*Insurance Assignment*" means the transfer by the Debtor and Carrier to the Primary AFFF Settlement Trust of certain rights in connection with the Insurance Policies as set forth in Article 5 of the Plan.

"*Insurance Policy/ies*" means: (i) any insurance policies listed on Schedule 1 to the Plan, (ii) to the extent not listed on Schedule 1, any "general liability" insurance (which, for the avoidance of doubt, shall exclude director & officer, automobile, or workers' compensation insurance) contract, binder, certificate, insurance policy, or reinsurance policy, whether currently known or unknown, discovered after the Effective Date, in effect at any time on or before the Petition Date naming the Debtor, the Contributing Parties, or any of their predecessors, subsidiaries, or past or present affiliates as an insured (whether as the primary or additional insured) or that provides or may provide coverage to Carrier or the Debtor for AFFF Claims, (iii) "Aviation" policies to

which Carrier or the Debtor has rights as listed in Schedule 2 to the Plan solely to the extent of Insurance Policy Rights applicable to or arising from AFFF Claims and (iv) any other subsequently discovered insurance policies of the same types as listed in Schedules 1 and 2 to the Plan to the extent that Carrier or the Debtor have rights under such policies (whether or not such policies are specifically titled as "General Liability" or "Aviation" policies).  For the avoidance of doubt, "Insurance Policies" shall not include any D&O Policies, automobile policies or worker's compensation insurance.

"*Insurance Policy Rights*" means any and all rights subject to the Insurance Assignment.

"*KFFI*" means Kidde Fire Fighting, Inc. (formerly known as National Foam, Inc.).

"*Liquidating Estate Claims*" means Administrative Claims, Priority Tax Claims, Other Priority Claims and Secured Claims.

"*New National Foam*" means, collectively, National Foam, Inc. f/k/a Eurostar US Tradeco, Inc., Angus Fire Ltd. f/k/a Eurostar Tradeco Limited, Angus International Safety Group Limited f/k/a/ Eurostar Holdco Limited, and each of their Related Parties.

"*New National Foam Release*" means a settlement between the Debtor and New National Foam pursuant to which (a) Estate Causes of Action against New National Foam are resolved for value reasonably acceptable to the Settling Parties and (b) New National Foam agrees to absolutely, unconditionally, and irrevocably release and discharge the Debtor and each Released Party from any and all Claims and Causes of Action, whether known or unknown, based on or relating to, or in any manner arising from that certain Share and Business Sale Agreement, dated as of June 28, 2013, or any other occurrence taking place on or before the Effective Date, including Proof of Claim No. 225, and otherwise in form and substance reasonably acceptable to the Settling Parties.

"*Non-Debtor Party*" means any Person other than the Debtor.  For the avoidance of doubt, the term "*Non-Debtor Party*" does not include KFFI or National Foam, Inc.

"*Other Insurance Company*" means an Insurance Company that is not a Settling Insurance Company.

"*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"*Person*" means a "person" or "entity" as defined in the Bankruptcy Code.

"*Petition Date*" means May 14, 2023, the date on which the Debtor commenced the Chapter 11 Case.

"*PFAS*" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.

"*Primary AFFF Settlement Trust*" means the settlement trust organized under the laws of the state of Delaware and established under the Plan and the Settlement Trust Documents, which

shall (i) have the powers, duties and obligations set forth in the Plan and the Settlement Trust Documents, (ii) assume all liability of the Debtor and the Estate for, and administer, all Channeled AFFF Claims and (iii) be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code.

"*Primary AFFF Settlement Trust Agreement*" means the Settlement Trust Agreement governing the Primary AFFF Settlement Trust, dated as of the Effective Date, as the same may be amended or modified from time to time in accordance with the terms thereof.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Released Party*" means (i) Carrier, (ii) RTX, and (iii) each of their Related Parties in their capacities as such. Released Parties shall not include DuPont, 3M, or their current or former affiliates and Related Parties. If a Person is a current or former affiliate or Related Party of DuPont or 3M, and such Person is also a current or former affiliate or Related Party of Carrier or RTX, then such Person shall not be a Released Party. For the avoidance of doubt, New National Foam shall not be a Released Party unless the New National Foam Release is provided by the Effective Date.

"*Related Party*" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, and current and former affiliates and subsidiaries, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, all only in their capacity as a representative of such Person, and (c) respective heirs, executors, estates, and nominees, in each case solely in its capacity as such.

"*RTX Waiver*" shall have the meaning set forth in Article 5.5.11(b) of the Plan.

"*Sale Order*" means the *Order (I) Approving the Sale of All or Substantially All of the Debtor's Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving Debtor's Entry, and Performance Under the Contribution Agreement, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Granting Related Relief*, entered by the Bankruptcy Court on April 2, 2024 [D.I. 1058].

"*Settlement Trust Agreements*" means, collectively, (i) the Primary AFFF Settlement Trust Agreement, (ii) the Sovereign State AFFF Settlement Trust Agreement and (iii) the GUC Liquidating Trust Agreement. To the extent that any provision of a Settlement Trust Agreement impacts the rights of Carrier, such provision shall not be included in such Settlement Trust Agreement unless reasonably acceptable to Carrier.

"*Settlement Trust Documents*" means, collectively, (a) the Settlement Trust Agreements, (b) the TDPs, (c) the Confirmation Order, and (d) any other agreements, instruments, and documents governing the establishment, administration, and operation of the Settlement Trusts.

"*Settlement Trusts*" means the Primary AFFF Settlement Trust, Sovereign State AFFF Settlement Trust and GUC Liquidating Trust.

"*Settling Insurance Company*" means any Insurance Company that contributes funds, proceeds, or other consideration to or for the benefit of the Primary AFFF Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order.  No Insurance Company shall be considered a Settling Insurance Company without the Committee's prior written consent.

"*Sovereign State*" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.

"*Sovereign State AFFF Settlement Trust*" means the trust established under the Plan and the Settlement Trust Documents to administer all Sovereign State Claims against the Debtor.  The Sovereign State AFFF Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code and shall have the powers, duties and obligations set forth in the Settlement Trust Documents.

"*Sovereign State Retained Cause of Action*" means any Claim or Cause of Action asserted, or which may be asserted, by a Sovereign State against a Contributing Party that (1) is not an Estate Cause of Action and (2) arises from a statute, regulation, or common law that creates a theory of liability, by which a Sovereign State could recover damages or penalties, or obtain equitable or injunctive relief, against a Contributing Party.  For the avoidance of doubt, a Sovereign State may assert a Sovereign State Retained Cause of Action irrespective of whether such Sovereign State Retained Cause of Action could also be considered an Independent AFFF Cause of Action.

"*TDPs*" or "Trust Distribution Procedures" means the Trust Distribution Procedures for the Settlement Trusts, as the same may be amended or modified from time to time in accordance with the terms thereof, that will govern the claims submission, adjudication, and distribution processes for the Settlement Trusts in a manner that is fair and equitable to Holders of Allowed Channeled AFFF Claims.  To the extent that any provision of the TDPs impacts the rights of Carrier, such provision shall not be included unless reasonably acceptable to Carrier.

"*Transferred Assets*" shall have the meaning set forth in the Acquisition Agreement.

## **EXHIBIT 10B**

**Notice of Impaired Non-Voting Status**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KFI WIND-DOWN CORP.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | |

## NOTICE OF NON-VOTING STATUS TO HOLDERS OF
## IMPAIRED CLASSES DEEMED TO REJECT THE PLAN

      **PLEASE TAKE NOTICE** that on [•], 2025, the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") entered the *Order (I) Approving the Adequacy of the Disclosure Statement and Form and Manner of Notice of Hearing Thereon; (II) Establishing Solicitation Procedures; (III) Approving the Form and Manner of Notice to Attorneys and Solicitation Directive; (IV) Approving the Form of Ballots; (V) Approving the Form, Manner and Scope of Confirmation Notices; (VI) Establishing Certain Deadlines in Connection With Approval of Disclosure Statement and Confirmation of Plan; and (VII) Granting Related Relief* [D.I. [•]] (the "<u>Disclosure Statement Order</u>").  Among other things, the Disclosure Statement Order approved the adequacy of the *Disclosure Statement for the Debtors' Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* (as may be amended, modified or supplemented from time to time and together with all schedules and exhibits thereto, the "<u>Disclosure Statement</u>"), voting and solicitation procedures and established the timeline to confirm the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* (as may be amended, modified or supplemented from time to time and together with all schedules and exhibits thereto, the "<u>Plan</u>").[2]

> **THE PLAN CONTAINS RELEASE, INJUNCTION AND EXCULPATION PROVISIONS.  THE PROVISIONS ARE SET FORTH IN APPENDIX A TO THIS NOTICE.  YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.**

      **UNDER THE TERMS OF THE PLAN, CLASS 5 AFFILIATE CLAIMS AND CLASS 6 INTERESTS <u>WILL NOT RECEIVE ANY DISTRIBUTIONS</u>. THEREFORE, IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT, YOUR CLAIMS AND INTERESTS IN THESE CLASSES ARE CONSIDERED IMPAIRED AND <u>YOU WILL NOT RECEIVE ANY DISTRIBUTIONS UNDER THE PLAN</u>.  IN ACCORDANCE WITH SECTION 1126(g) OF THE BANKRUPTCY CODE, YOU ARE CONCLUSIVELY PRESUMED TO HAVE REJECTED THE PLAN AND**

---

[1]    The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters are located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]    Capitalized terms used but not defined in this notice shall have the meaning ascribed to them in the Plan or the Disclosure Statement, as applicable.

**ARE NOT ENTITLED TO VOTE ON THE PLAN. YOU ARE BEING SENT THIS NOTICE FOR INFORMATIONAL PURPOSES.**

If you hold a separate, additional Claim or Interest for which you are entitled to vote, then you will also receive a Ballot and other solicitation materials under separate cover.

<u>**Relevant Deadlines**</u>

The hearing at which the Bankruptcy Court will consider the Confirmation of the Plan (the "<u>Confirmation Hearing</u>") will commence at **[•] [a.m. / p.m.] (prevailing Eastern Time) on January 21, 2026**, or such other time as the Bankruptcy Court determines. The Confirmation Hearing will take place before the Honorable Laurie S. Silverstein, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 Market Street, 6th Floor, Courtroom 2, Wilmington, Delaware 19801. The Confirmation Hearing may be continued from time to time by the Bankruptcy Court or the Debtor, in consultation with the Settling Parties, without further notice other than by such adjournment being announced in open court or in the filing of a notice or hearing agenda with the Bankruptcy Court. Moreover, the Plan may be modified or amended, if necessary, subject to the Settling Parties' consent rights as set forth in the Plan Support Agreement, and pursuant to section 1127 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedures and other applicable law, prior to, during or as a result of the Confirmation Hearing, without further notice to parties-in-interest.

The deadline for filing objections to the Plan is **December 15, 2025 at 4:00 p.m. (prevailing Eastern Time)** (the "<u>Confirmation Objection Deadline</u>"). Any objection to the confirmation of the Plan must: (a) be in writing; (b) comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules; (c) set forth the name of the objector and the nature and amount of Claims or Interests held or asserted by the objector against the Debtor; (d) state the basis and the specific grounds therefor and (e) be filed with the Bankruptcy Court, together with proof of service thereof, and served so that it is **actually received** by each of the following parties (collectively, the "<u>Notice Parties</u>") no later than the Confirmation Objection Deadline. **UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED AND MAY BE OVERRULED BY THE BANKRUPTCY COURT WITHOUT FURTHER NOTICE.**

**Notice Parties**

(a)      Counsel to the Debtor: (i) Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004, Attn: Andrew G. Dietderich (dietdericha@sullcrom.com), Brian D. Glueckstein (gluecksteinb@sullcrom.com), Justin J. DeCamp (decampj@sullcrom.com) and Benjamin S. Beller (bellerb@sullcrom.com; and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box. 1347, Wilmington, DE 19899, Attn: Derek C. Abbott

-2-

(dabbott@morrisnichols.com) and Andrew R. Remming (aremming@morrisnichols.com);

(b)    Counsel to the Special Committee of the Board of Directors of the Debtor, Schulte Roth & Zabel LLP, 919 Third Avenue, New York, NY, Attn: Adam Harris (Adam.Harris@srz.com) and Peter Amend (Peter.Amend@srz.com);

(c)    Counsel to Carrier, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Sixth Avenue, New York, NY 10019, Attn: Paul M. Basta (pbasta@paulweiss.com), Kenneth S. Ziman (kziman@paulweiss.com) and Robert A. Britton (rbritton@paulweiss.com);

(d)    Counsel to the Committee: (i) Brown Rudnick LLP, Seven Times Square, New York, NY 10036, Attn: David J. Molton (dmolton@brownrudnick.com); Cathrine M. Castaldi (ccastaldi@brownrudnick.com) and Eric R. Goodman (egoodman@brownrudnick.com); and (ii) Stutzman, Bromberg, Esserman & Plifka, 2323 Bryan Street, Suite 2200, Dallas, TX 75201, Attn: Sander L. Esserman (Esserman@sbep-law.com);

(e)    The MDL PEC Co-Leads: (i) Baron & Budd, P.C., 3102 Oak Lawn Avenue #1100, Dallas, TX 75219, Attn: Scott Summy (SSummy@baronbudd.com); (ii) Douglas & London, P.C., 59 Maiden Ln., 6th Floor, New York, NY 10038, Attn: Michael London (mlondon@douglasandlondon.com); (iii) Motley Rice LLC, 28 Bridgeside Blvd., Mount Pleasant, SC 29464, Attn: Joseph F. Rice (jrice@motleyrice.com); (iv) Napoli Shkolnik PLLC, 1302 Avenida Ponce de Leon, Santurce, Puerto Rico 00907, Attn: Paul Napoli (PNapoli@NSPRLaw.com); and (v) Taft Stettinius & Hollister LLP, 41 South High Street, Suite 1800, Columbus, OH 43215, Attn: David J. Butler (dbutler@taftlaw.com);

(f)    The Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Timothy J. Fox, Esq. (timothy.fox@usdoj.gov); and

(g)    To the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.

The Debtor may file supplements to the Plan (as may be amended, modified or supplemented from time to time, the "Plan Supplement") with the Bankruptcy Court no later than **November 17, 2025**.

### Obtaining Copies of Relevant Documents

Copies of the Plan, the Plan Supplement, the Disclosure Statement and the Disclosure Statement Order, as well as other documents filed in this Chapter 11 Case, may be obtained (a) for a nominal fee from the Bankruptcy Court's electronic docket for the Debtor's Chapter 11 Case at https://ecf.deb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov), or (b) free of charge by accessing the Debtor's website maintained by the Solicitation Agent, https://cases.stretto.com/kfi.  In addition, the Debtor will, at its expense, provide paper copies of the Plan, the Plan Supplement, the Disclosure Statement or the Disclosure Statement Order to any party submitting a request for such paper copies by (a) calling the Solicitation Agent at (866) 887-0488 (toll-free) or +1 (949) 889-0128 (international) or (b) e-mailing the Solicitation Agent at KFIInquiries@stretto.com.  Please be advised that the Solicitation Agent is authorized to answer questions about, and provide additional copies of, materials filed in this Chapter 11 Case, but may not advise you on matters relating to the Disclosure Statement or the Plan.

-4-

Dated: [•], 2025
Wilmington, Delaware

**MORRIS NICHOLS ARSHT & TUNNELL LLP**

/s/ *DRAFT*

Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Daniel B. Butz (No. 4227)
Tamara K. Mann (No. 5643)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
dabbott@morrisnichols.com
aremming@morrisnichols.com
dbutz@morrisnichols.com
tmann@morrisnichols.com

-and-

**SULLIVAN & CROMWELL LLP**

Andrew G. Dietderich (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Justin J. DeCamp (admitted *pro hac vice*)
Benjamin S. Beller (admitted *pro hac vice*)
Julie G. Kapoor (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
gluecksteinb@sullcrom.com
decampj@sullcrom.com
bellerb@sullcrom.com
kapoorj@sullcrom.com

*Counsel for the Debtor and Debtor-in-Possession*

-5-

**<u>Appendix A</u>**

**Release, Injunction and Exculpation Provisions in the Plan[1]**

---

[1]    The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.

### Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released and cancelled, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Liquidating Estate and their successors and assigns. Any Holder of such mortgage, deed of trust, Lien, pledge or other security interest (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of the Debtor (including and cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Liquidating Administrators to evidence such release, including the execution, delivery and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

### Releases by the Estate

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party, the Debtor, the Liquidating Estate and each Related Party of the Debtor and the Liquidating Estate shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, or any other Person or Governmental Unit asserting currently or in the future by, under, through, or on behalf of the Debtor or its Estate, and each of their respective successors or assigns, including the Settlement Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between one or both of the Debtor, on the one hand, and any Released Party, the Liquidating Estate, or any Related Party of the Debtor and the Liquidating Estate, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.3 of the Plan shall not be construed to release any post-Effective Date obligations under the RTX Waiver, the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, which specifically provides that such Estate Claims Settlement can be terminated, and the releases provided in the Plan or in the Estate Claims Settlement are void, if Carrier fails to make the installments of the Guaranteed Cash Payment when due and such failure is not timely cured within 30 days, at which time the Primary AFFF Settlement Trust is entitled to commence, prosecute, or continue all Estate Causes of Action against the Released Parties in any court of competent jurisdiction, and take such other actions as the Primary AFFF Settlement Trustee may determine in the exercise of their fiduciary duties.

### Releases by the Released Parties

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Released Parties and their successors or assigns of and from any and all Claims and Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, the Debtor's current or former assets and properties, the Chapter 11 Case, AFFF, AFFF Claims, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements, including the Shared Services Agreement, between any of the Debtor, the Liquidating Estate, the Settlement Trusts or the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case, on the one hand, and any Released Party, on the other hand, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any post-Effective Date obligations under the Plan Documents, the Confirmation Order, the 2020 Separation Agreement as supplemented by the RTX Waiver, or the Estate Claims Settlement or any document, instrument, or agreement executed to implement the Estate Claims Settlement, or the right of any Person to enforce the same in accordance with

the terms thereof. Except with respect to the Claims and Causes of Action against the Debtor, the Liquidating Estate, the Settlement Trusts, and the Debtor's current and former officers, directors, and board members who served in such capacity during the Chapter 11 Case that are released and discharged under Article 10.4 of the Plan, the releases contained in Article 10.4 of the Plan shall not be construed to release, waive or otherwise affect any obligations, rights, Causes of Action or Claims that Carrier Global Corporation or members of the Carrier Group (other than the Debtor), Otis Worldwide Corporation or members of the Otis Group, or RTX or members of the UTC Group may have against any Person under the 2020 Separation Agreement as supplemented by the RTX Waiver (including indemnification rights of RTX and other members of the "UTC Group" under the 2020 Separation Agreement).  For the avoidance of doubt, in the event that the Estate Claims Settlement Effective Date does not occur or the Estate Claims Settlement is terminated as contemplated by the last paragraph of Article 10.3 in the Plan, all releases being provided by the Released Parties under the Plan shall be void.

## Scope of Releases

Each Person providing releases under the Plan, including the Debtor, the Estate and the Settling Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts. Each Person providing releases under the Plan shall be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

## Exculpation

Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtor and its directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation.

As of the Effective Date, to the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in Article 10 of the Plan, the Exculpated Parties shall neither have nor incur any liability to any Person for any act or omission in connection with, related to or arising out of this Chapter 11 Case, including (a) the operation of the Debtor's businesses during the pendency of this Chapter 11 Case; (b) the

administration and adjudication of Claims and Interests during this Chapter 11 Case; (c) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Plan, the Disclosure Statement, the Plan Supplement, or any related contract, instrument, release or other agreement or document created or entered into in connection with the Chapter 11 Case (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan and the distribution of property under the Plan); (d) any other transaction, agreement, event, or other occurrence related to the Chapter 11 Case taking place on or before the Effective Date, other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.

## Injunction

Except as otherwise expressly provided in the Plan or the Confirmation Order, the satisfaction and release pursuant to Article 10 of the Plan shall also act as a permanent injunction against any Person who has held, holds, or may in the future hold Claims against or Interests in the Debtor or any of its assets or properties based on any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are treated, released, settled, channeled, or exculpated pursuant to the terms of the Plan from taking any of the following actions on account of, or on the basis of, such Claims or Interests:  (a) commencing or continuing any action to collect, enforce, offset, recoup, or recover with respect to any Claims or Interests treated, released, settled, channeled, or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Claim or Interest against the Debtor, the Liquidating Estate, the Settlement Trusts, or its or their respective property; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of or in connection with or with respect to any such Claims or Interests, notwithstanding an indication of a Claim or Interest or otherwise that a Holder of such Claim or Interest asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise, against the Debtor, the Liquidating Estate, or the Settlement Trusts; or (e) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

## Channeling Injunction

Notwithstanding anything to the contrary in the Plan, to preserve and promote the settlements contemplated by and provided for in the Plan, including the Insurance Settlement Agreements, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under sections 105(a) and 1123(b) of the Bankruptcy Code, the sole recourse of any Holder of a Channeled AFFF Claim against the Debtor or a Released Party on account of such Channeled AFFF Claim shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to

**and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, and such Holder shall have no right whatsoever at any time to assert any such Channeled AFFF Claim or any Estate Cause of Action that is released under the Estate Claims Settlement against the Debtor or any Released Party or any property or interest in property of the Debtor or any Released Party.  For the avoidance of doubt, the sole recourse for any Channeled AFFF Claim covered by any Insurance Policy issued by a Settling Insurance Company shall be to and against the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents.  Accordingly, on and after the Effective Date, all Holders of AFFF Claims that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled AFFF Claim or any Estate Cause of Action against the Debtor or any Released Party shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from the Debtor or any Released Party with respect to any such Channeled AFFF Claim or Estate Cause of Action, other than from the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, to and against the Sovereign State AFFF Settlement Trust, pursuant to the Settlement Trust Documents, including:**

**a)      commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;**

**b)      enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;**

**c)      creating, perfecting or otherwise enforcing in any manner, whether directly or indirectly, any encumbrance of any kind against the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party;**

**d)      asserting, implementing, or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to the Debtor or any Released Party, or any property or interest in property of the Debtor or any Released Party; or**

**e)      taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents, or, with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Primary AFFF Settlement Trust, or in the case of a Holder of a Sovereign State Claim, by the Sovereign State AFFF Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Channeled AFFF Claim.**

The Debtor, the Liquidating Estate and/or any Released Party, as applicable, may enforce the Channeling Injunction and/or the Releases contained in the Plan before the Bankruptcy Court, which shall retain jurisdiction for such purpose, at their own cost and expense, and no such cost or expense incurred by a party other than the Primary AFFF Settlement Trust shall be reimbursed or indemnified by the Primary AFFF Settlement Trust under any circumstances.

## Insurance Company Injunction

Subject to the provisos set forth in this Section, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim or cause of action (including any AFFF Claim or any Claim for or respecting any Primary AFFF Settlement Trust expense) against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Insurance Policy, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, statute or any other theory of law, equity or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim or cause of action, including:

a)       commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, demand, or cause of action against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim, demand, or cause of action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such Claim, demand, or cause of action against any Insurance Company);

b)       enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

c)       creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such Claim or cause of action; and

d)       except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim or cause of action;

*provided, however,* that (i) nothing in this Section shall impair or affect the rights of any member of the UTC Group, including RTX, or any member of the Otis Group (each as defined in the 2020 Separation Agreement), or any additional insured designated by RTX

or any member of the UTC Group, based upon, attributable to, arising out of, or in any way connected with an Insurance Policy, including to assert Claims or Causes of Action against any Insurance Company for covered losses and to receive proceeds in respect thereof; (ii) this injunction shall not impair in any way any actions brought by the Primary AFFF Settlement Trust against any Other Insurance Company; (iii) the Primary AFFF Settlement Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction with respect to any Other Insurance Company, in accordance with the Settlement Trust Documents, upon express written notice to such Other Insurance Company; and (iv) this injunction is not issued for the benefit of any Other Insurance Company, and no Other Insurance Company is a third-party beneficiary of this injunction.

Notwithstanding anything to the contrary in the Plan, this injunction shall not enjoin:

a)      the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of Holders of AFFF Claims to assert such Claims, as applicable, in accordance with the TDPs;

b)      the rights of the Primary AFFF Settlement Trust to prosecute any action based on or arising from Insurance Policies, except to the extent otherwise released;

c)      the rights of the Primary AFFF Settlement Trust to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company based on or arising from the Insurance Policies;

d)      any actions of the Contributing Parties in fulfilling their obligations under the Estate Claims Settlement in consultation and coordination with the Primary AFFF Settlement Trust;

e)      the rights of any Insurance Company to assert any Claim, debt, obligation, cause of action or liability for payment against any Other Insurance Company; or

f)      the Claims for reinsurance under reinsurance contracts or Claims under retrocessional contracts among the Settling Insurance Companies and any Other Insurance Company.

## Prohibition on Actions Against Buyer

Subject to the Sale Order and the Acquisition Agreement, Buyer, in its capacity as such, shall not have any liability for any AFFF Claims against the Debtor arising prior to the closing of the Sale.  Except as expressly otherwise set forth in the Sale Order, all persons and entities hereby are forever barred, estopped and permanently enjoined from asserting against Buyer, its Affiliates, its successors or assigns, its property or the Transferred Assets, such persons' or entities' AFFF Claims that have been or could have been asserted against the Debtor arising prior to the closing of the Sale.  For the avoidance of doubt, the foregoing shall

not release Buyer from, or enjoin any actions against Buyer for, any Assumed Liability or any other liability incurred by Buyer on account of its operations following the closing of the Sale.

## Limitations on Exculpations and Releases

Notwithstanding anything to the contrary in the Plan, none of the releases or exculpations set forth in the Plan shall operate to waive or release any obligation or Causes of Action of any Person:  (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations or (b) expressly set forth in and preserved by the Plan, the Plan Supplement, Plan Documents or related documents.

## Release Dispute

In the event of a Release Dispute, a Released Party may, at its sole cost and expense, file a motion with the Bankruptcy Court seeking a determination as to whether an AFFF Claimant's Cause of Action was settled and released pursuant to the Plan, and upon such motion, the Bankruptcy Court shall make such determination and, if appropriate, enjoin the prosecution of such Cause of Action as having been settled and released under the Plan.

## Relevant Definitions

"*2020 Separation Agreement*" means that certain Separation and Distribution Agreement, dated as of April 2, 2020, by and among United Technologies Corporation, Carrier Global Corporation, and Otis Worldwide Corporation.

"*Administrative Claim*" means an Allowed Claim for costs and expenses of administration of the Chapter 11 Case pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate; (b) Allowed Professional Compensation Claims; (c) Allowed Fee Examiner Compensation Claims; and (d) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

"*AFFF*" means aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

"*AFFF Claim*" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.

"*Assumed Liability*" shall have the meaning set forth in the Acquisition Agreement.

"*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other Claims, Causes of Action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties-in-interest under the Bankruptcy Code or applicable non-

bankruptcy law, including claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) was commenced prior to the Effective Date.

"*Buyer*" means Pacific Erin Opco, LLC, as the purchaser of substantially all of the Debtor's assets pursuant to the Acquisition Agreement and the Sale Order.

"*Carrier*" means Carrier Global Corporation, a Delaware corporation, and its non-Debtor affiliates and Related Parties.

"*Causes of Action*" means any current or future actions, Claims, cross-claims, third-party claims, causes of action, controversies, disputes, demands, rights, liens, indemnities, contributions, guaranties, suits, obligations, liabilities, losses, debts, fees or expenses, damages, interest, judgments, costs, accounts, defenses, remedies, offsets, powers, privileges, proceedings, licenses, and franchises of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, choate or inchoate, capable of being asserted directly or derivatively (including any alter ego theories), including any Claims for recovery of attorneys' fees, turnover, fraud, gross negligence, or willful misconduct, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws, consumer protection laws, environmental laws, or nuisance or trespass theories).  Causes of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to or otherwise contest Claims or Interests, (c) any claim pursuant to section 362 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Actions.

"*Channeled AFFF Claims*" means all AFFF Claims against the Debtor or the Estate channeled to the Primary AFFF Settlement Trust under the Plan and Settlement Trust Documents.  For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

"*Committee*" means the official committee of unsecured creditors of the Debtor appointed by the U.S. Trustee in the Chapter 11 Case under section 1102(a) of the Bankruptcy Code pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 83] and any amendments thereto.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Settling Parties.

"*Consummation*" means the occurrence of the Effective Date.

"*Debtor*" means Kidde-Fenwal, Inc., the debtor and debtor in possession in the Chapter 11 Case, now known as KFI Wind-Down Corp.  In 2007, KFFI (formerly known as National Foam, Inc.) merged into Kidde-Fenwal, Inc., with Kidde-Fenwal, Inc. as the surviving entity.  Pursuant to this merger, KFFI's liabilities were assumed by, and KFFI's causes of action were transferred to, Kidde-Fenwal, Inc. directly or indirectly by merger or other agreement.  The term "Debtor" includes Kidde-Fenwal, Inc. as successor by merger or other agreement by which Kidde-Fenwal, Inc. obtained or assumed the liabilities and Causes of Action of any Person.

"*Effective Date*" means the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date set forth in the Plan shall have been satisfied or waived and on which a notice indicating the Effective Date has been filed on the docket of the Chapter 11 Case.

"*Estate Causes of Action*" means Causes of Action owned or held by either the Debtor or its Estate, or capable of being asserted (currently, or in the future) by any Person or Governmental Unit on behalf of, under or through, either the Debtor or its Estate, and each of their respective successors or assigns, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions, that may be commenced by a representative of the Estate under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise.  Without limiting the foregoing, Estate Causes of Action shall include:  (a) Causes of Action that on or after the Petition Date may be exclusively asserted by or on behalf of the Debtor or its Estate under applicable law, or that prior to the Petition Date could have been asserted by the Debtor on its own behalf under applicable law, including Causes of Action based on (i) the doctrine of successor liability that seek to impose the Debtor's (including KFFI's or National Foam, Inc.'s) liabilities on an alleged successor, whether based on a contractual assumption of liability, consolidation or de facto merger, acquisition of the Debtor's product line, fraud, domination, direction of the Debtor's affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, or (ii) the doctrines of alter ego or veil piercing involving alter egos of the Debtor or the piercing of the Debtor's (including KFFI's or National Foam, Inc.'s) corporate veil, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form; (b) Causes of Action or theories for recovery or remedies that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is generally common to creditors of the Debtor and can be asserted by the Debtor under applicable law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor.  Subsections (a), (b) and (c) immediately above expressly encompass any Causes of Action based on:  (i) the alleged assumption of the Debtor's (including KFFI's or

National Foam, Inc.'s) liabilities (but not a non-Debtor's liabilities) by Kidde plc (n/k/a Kidde Limited) pursuant to the 2000 Demerger Agreement, or any alleged subsequent assumption of such liabilities of the Debtor from Kidde plc by any other Released Party; or (ii) the alleged assumption of the Debtor's liabilities (but not a non-Debtor's liabilities), including any liabilities resulting from acts or omissions of National Foam, Inc. or KFFI, by a Released Party pursuant to the 2020 Separation Agreement.  For the avoidance of doubt, Estate Causes of Action shall not include any Independent AFFF Causes of Action or any Sovereign State Retained Causes of Action or Insurance Actions against any Released Party based on acts or omissions occurring after entry into the Plan Support Agreement with respect to rights under the 2020 Separation Agreement or the RTX Waiver to access and make Claims under any Insurance Policy or otherwise obtain the benefit of the Insurance Assignment.

"*Estate Claims Settlement*" means the settlement, including the release of all Estate Causes of Action against the Released Parties, pursuant to the Estate Claims Settlement Agreement.

"*Independent AFFF Cause of Action*" means any Cause of Action that could be asserted by an AFFF Claimant against a Non-Debtor Party based on the Non-Debtor Party's own conduct and breach of duty (*i.e.*, duty owed to the AFFF Claimant and not owed to the Debtor), including (a) Causes of Action arising from such acts or omissions of such Non-Debtor Party, and (b) Causes of Action based on allegations that a Non-Debtor Party is responsible for such conduct under theories of liability or recovery or remedies that could have been asserted by an AFFF Claimant on its own behalf under applicable state or federal law in respect of such Causes of Action prior to the Petition Date based on (i) the doctrine of successor liability involving a Non-Debtor Party that is alleged to be a successor to another Non-Debtor Party with respect to liabilities not directly or indirectly assumed from the Debtor, whether based on a contractual assumption of liability (including under the 2020 Separation Agreement), consolidation or de facto merger, acquisition of product line, fraud, domination, direction of affairs, defects in or misuse of the corporate form, single business enterprise, common enterprise, or mere continuation, (ii) the doctrines of alter ego or veil piercing involving alter egos of a Non-Debtor Party, or piercing the corporate veil between Non-Debtor Parties, whether based on inadequate capitalization, insolvency, failure to observe corporate formalities, fraud, domination, or misuse of the corporate form, or (iii) alleged derivative or vicarious liability of a Non-Debtor Party for liabilities of another Non-Debtor Party not directly or indirectly assumed from the Debtor; *provided* that, if any Cause of Action falls within the definition of Estate Cause of Action or Sovereign State Retained Cause of Action, it is not an Independent AFFF Cause of Action.
"*Insurance Assignment*" means the transfer by the Debtor and Carrier to the Primary AFFF Settlement Trust of certain rights in connection with the Insurance Policies as set forth in Article 5 of the Plan.

"*Insurance Policy/ies*" means: (i) any insurance policies listed on <u>Schedule 1</u> to the Plan, (ii) to the extent not listed on Schedule 1, any "general liability" insurance (which, for the avoidance of doubt, shall exclude director & officer, automobile, or workers' compensation insurance) contract, binder, certificate, insurance policy, or reinsurance policy, whether currently known or unknown, discovered after the Effective Date, in effect at any time on or before the Petition Date naming the Debtor, the Contributing Parties, or any of their predecessors, subsidiaries, or past or present affiliates as an insured (whether as the primary or additional insured) or that provides or may provide coverage to Carrier or the Debtor for AFFF Claims, (iii) "Aviation" policies to

which Carrier or the Debtor has rights as listed in Schedule 2 to the Plan solely to the extent of Insurance Policy Rights applicable to or arising from AFFF Claims and (iv) any other subsequently discovered insurance policies of the same types as listed in Schedules 1 and 2 to the Plan to the extent that Carrier or the Debtor have rights under such policies (whether or not such policies are specifically titled as "General Liability" or "Aviation" policies).  For the avoidance of doubt, "Insurance Policies" shall not include any D&O Policies, automobile policies or worker's compensation insurance.

"*Insurance Policy Rights*" means any and all rights subject to the Insurance Assignment.

"*KFFI*" means Kidde Fire Fighting, Inc. (formerly known as National Foam, Inc.).

"*Liquidating Estate Claims*" means Administrative Claims, Priority Tax Claims, Other Priority Claims and Secured Claims.

"*New National Foam*" means, collectively, National Foam, Inc. f/k/a Eurostar US Tradeco, Inc., Angus Fire Ltd. f/k/a Eurostar Tradeco Limited, Angus International Safety Group Limited f/k/a/ Eurostar Holdco Limited, and each of their Related Parties.

"*New National Foam Release*" means a settlement between the Debtor and New National Foam pursuant to which (a) Estate Causes of Action against New National Foam are resolved for value reasonably acceptable to the Settling Parties and (b) New National Foam agrees to absolutely, unconditionally, and irrevocably release and discharge the Debtor and each Released Party from any and all Claims and Causes of Action, whether known or unknown, based on or relating to, or in any manner arising from that certain Share and Business Sale Agreement, dated as of June 28, 2013, or any other occurrence taking place on or before the Effective Date, including Proof of Claim No. 225, and otherwise in form and substance reasonably acceptable to the Settling Parties.

"*Non-Debtor Party*" means any Person other than the Debtor.  For the avoidance of doubt, the term "*Non-Debtor Party*" does not include KFFI or National Foam, Inc.

"*Other Insurance Company*" means an Insurance Company that is not a Settling Insurance Company.

"*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"*Person*" means a "person" or "entity" as defined in the Bankruptcy Code.

"*Petition Date*" means May 14, 2023, the date on which the Debtor commenced the Chapter 11 Case.

"*PFAS*" means per- and polyfluroalykl substances, including but not limited to perfluorooctanoic acid and perfluorooctanesulfonic acid.

"*Primary AFFF Settlement Trust*" means the settlement trust organized under the laws of the state of Delaware and established under the Plan and the Settlement Trust Documents, which

shall (i) have the powers, duties and obligations set forth in the Plan and the Settlement Trust Documents, (ii) assume all liability of the Debtor and the Estate for, and administer, all Channeled AFFF Claims and (iii) be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code.

"*Primary AFFF Settlement Trust Agreement*" means the Settlement Trust Agreement governing the Primary AFFF Settlement Trust, dated as of the Effective Date, as the same may be amended or modified from time to time in accordance with the terms thereof.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Released Party*" means (i) Carrier, (ii) RTX, and (iii) each of their Related Parties in their capacities as such.  Released Parties shall not include DuPont, 3M, or their current or former affiliates and Related Parties.  If a Person is a current or former affiliate or Related Party of DuPont or 3M, and such Person is also a current or former affiliate or Related Party of Carrier or RTX, then such Person shall not be a Released Party.  For the avoidance of doubt, New National Foam shall not be a Released Party unless the New National Foam Release  is provided by the Effective Date.

"*Related Party*" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, and current and former affiliates and subsidiaries, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, all only in their capacity as a representative of such Person, and (c) respective heirs, executors, estates, and nominees, in each case solely in its capacity as such.

"*RTX Waiver*" shall have the meaning set forth in Article 5.5.11(b) of the Plan.

"*Sale Order*" means the *Order (I) Approving the Sale of All or Substantially All of the Debtor's Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving Debtor's Entry, and Performance Under the Contribution Agreement, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Granting Related Relief*, entered by the Bankruptcy Court on April 2, 2024 [D.I. 1058].

"*Settlement Trust Agreements*" means, collectively, (i) the Primary AFFF Settlement Trust Agreement, (ii) the Sovereign State AFFF Settlement Trust Agreement and (iii) the GUC Liquidating Trust Agreement.  To the extent that any provision of a Settlement Trust Agreement impacts the rights of Carrier, such provision shall not be included in such Settlement Trust Agreement unless reasonably acceptable to Carrier.

"*Settlement Trust Documents*" means, collectively, (a) the Settlement Trust Agreements, (b) the TDPs, (c) the Confirmation Order, and (d) any other agreements, instruments, and documents governing the establishment, administration, and operation of the Settlement Trusts.

"*Settlement Trusts*" means the Primary AFFF Settlement Trust, Sovereign State AFFF Settlement Trust and GUC Liquidating Trust.

"*Settling Insurance Company*" means any Insurance Company that contributes funds, proceeds, or other consideration to or for the benefit of the Primary AFFF Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order.  No Insurance Company shall be considered a Settling Insurance Company without the Committee's prior written consent.

"*Sovereign State*" means any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and each of their respective attorneys general and representatives in their capacities as such.

"*Sovereign State AFFF Settlement Trust*" means the trust established under the Plan and the Settlement Trust Documents to administer all Sovereign State Claims against the Debtor.  The Sovereign State AFFF Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code and shall have the powers, duties and obligations set forth in the Settlement Trust Documents.

"*Sovereign State Retained Cause of Action*" means any Claim or Cause of Action asserted, or which may be asserted, by a Sovereign State against a Contributing Party that (1) is not an Estate Cause of Action and (2) arises from a statute, regulation, or common law that creates a theory of liability, by which a Sovereign State could recover damages or penalties, or obtain equitable or injunctive relief, against a Contributing Party.  For the avoidance of doubt, a Sovereign State may assert a Sovereign State Retained Cause of Action irrespective of whether such Sovereign State Retained Cause of Action could also be considered an Independent AFFF Cause of Action.

"*TDPs*" or "Trust Distribution Procedures" means the Trust Distribution Procedures for the Settlement Trusts, as the same may be amended or modified from time to time in accordance with the terms thereof, that will govern the claims submission, adjudication, and distribution processes for the Settlement Trusts in a manner that is fair and equitable to Holders of Allowed Channeled AFFF Claims.  To the extent that any provision of the TDPs impacts the rights of Carrier, such provision shall not be included unless reasonably acceptable to Carrier.

"*Transferred Assets*" shall have the meaning set forth in the Acquisition Agreement.

**EXHIBIT 11**

**Plan Supplement Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>KFI WIND-DOWN CORP.,[1]<br><br>     Debtor. | Chapter 11<br><br>Case No. 23-10638 (LSS) |

**NOTICE OF FILING OF PLAN SUPPLEMENT FOR THE
DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

     **PLEASE TAKE NOTICE** that**,** as contemplated by the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. [•]] (together with all schedules and exhibits thereto, and as may be amended, modified or supplemented from time to time, the "Plan"),[2] KFI Wind-Down Corp. f/k/a Kidde-Fenwal, Inc. (the "Debtor") hereby files the plan supplement (the "Plan Supplement") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

     **PLEASE TAKE FURTHER NOTICE** that the Plan Supplement includes the following exhibits (in each case, as may be amended, modified, or supplemented from time to time), which are included in the Plan Supplement as follows:

| | |
|---|---|
| **Exhibit A** | [•] |
| **Exhibit B** | [•] |
| **Exhibit C** | [•] |
| **Exhibit D** | [•] |
| **Exhibit E** | [•] |

     **PLEASE TAKE FURTHER NOTICE** that the Debtor and other parties to these documents reserve all rights to amend, modify or supplement the Plan Supplement and any of the documents contained therein in accordance with the consent rights set forth in the Plan and the Plan Support Agreement.

     **PLEASE TAKE FURTHER NOTICE** that the Plan Supplement is integral to, part of and incorporated by reference into the Plan.  Please note, however, these documents have not yet been approved by the Bankruptcy Court.  If the Plan is confirmed, the documents

---

[1]     The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters are located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

contained in the Plan Supplement will be approved by the Bankruptcy Court pursuant to the order confirming the Plan.

       **PLEASE TAKE FURTHER NOTICE** that the hearing to consider confirmation of the Plan (the "<u>Confirmation Hearing</u>") is scheduled to commence at **[•] [a.m. / p.m.] (prevailing Eastern Time) on January 21, 2026**.  The Confirmation Hearing will be held before the Honorable Laurie S. Silverstein, United States Bankruptcy Court for the District of Delaware, located at 824 Market Street, 6th Floor, Courtroom 2, Wilmington, Delaware 19801. The Confirmation Hearing may be continued from time to time by the Bankruptcy Court or the Debtor, in consultation with the Settling Parties, without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on such parties as the Bankruptcy Court may order.

       **PLEASE TAKE FURTHER NOTICE** that the deadline for filing objections to the confirmation of the Plan is **December 15, 2025 at 4:00 p.m. (prevailing Eastern Time).**

       **PLEASE TAKE FURTHER NOTICE** that copies of the Plan and the Plan Supplement, as well as other documents filed in this Chapter 11 Case, may be obtained (a) for a nominal fee from the Bankruptcy Court's electronic docket for the Debtor's Chapter 11 Case at https://ecf.deb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov), or (b) free of charge by accessing the Debtor's case website maintained by the Solicitation Agent, https://cases.stretto.com/kfi.  In addition, the Debtor will, at its expense, provide paper copies of the Plan or the Plan Supplement to any party submitting a request for such paper copies by (a) calling the Solicitation Agent at (866) 887-0488 (toll-free) or +1 (949) 889-0128 (international) or (b) e-mailing the Solicitation Agent at KFIInquiries@stretto.com.  Please be advised that the Solicitation Agent is authorized to answer questions about, and provide additional copies of, materials filed in this Chapter 11 Case, but may not advise you on matters relating to the Plan or the Plan Supplement.

4920-3282-5089 v.4

Dated: [•], 2025
Wilmington, Delaware

**MORRIS NICHOLS ARSHT & TUNNELL LLP**

/s/ *DRAFT*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Daniel B. Butz (No. 4227)
Tamara K. Mann (No. 5643)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
dabbott@morrisnichols.com
aremming@morrisnichols.com
dbutz@morrisnichols.com
tmann@morrisnichols.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Justin J. DeCamp (admitted *pro hac vice*)
Benjamin S. Beller (admitted *pro hac vice*)
Julie G. Kapoor (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
        gluecksteinb@sullcrom.com
        decampj@sullcrom.com
        bellerb@sullcrom.com
        kapoorj@sullcrom.com

*Counsel for the Debtor and Debtor-in-Possession*

-3-

**<u>EXHIBIT 12</u>**

**AHC Letter**



**Counsel to AHC**
**James S. Carr**
**Steven Yachik**
3 World Trade Center
175 Greenwich Street
New York, NY 10007

**TO:  THE HOLDERS OF CLASS 3C SOVEREIGN STATE CLAIMS**

**RECOMMENDATION OF THE AD HOC COMMITTEE OF SOVEREIGN CLAIMANTS
TO VOTE IN FAVOR OF THE DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION**

_____

We write as counsel to the Ad Hoc Committee of Sovereign Claimants (the "AHC"), which is a group of 27 States and Territories of the United States that has been recognized by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") as a committee intended to represent the interests of all sovereign creditors (the "Sovereign Claimants") in the bankruptcy case of KFI Wind-Down Corp. (f/k/a Kidde-Fenwal, Inc.) (the "Debtor"), which is pending in the Bankruptcy Court as case number 23-10638 (LSS) (the "Bankruptcy Case").  **The purpose of this letter is to express the AHC's recommendation that Sovereign Claimants vote to accept (in favor of) the Plan (defined below).**

On _____, 2025, the Debtor filed its Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code (the "Plan") and the related Disclosure Statement for Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code (the "Disclosure Statement").[1]  The Plan is the result of a compromise by and between the Debtor, the Official Committee of Unsecured Creditors appointed in the Bankruptcy Case (the "UCC"), the co-leads of the plaintiffs' executive committee appointed in the multi-district litigation captioned *In re Aqueous Film-Forming Foams Product Liability Litigation*, MDL No. 2:18-mn-2873-RMG (D.S.C.) in the United States District Court for the District of South Carolina (the "MDL PEC Co-Leads"), and Carrier Global Corporation and its related parties ("Carrier" and, collectively with the Debtor, the UCC, and the MDL PEC Co-Leads, the "PSA Parties"). That compromise was memorialized in a Plan Support Agreement (the "PSA") that was filed with the Bankruptcy Court on October 18, 2024.[2]

Though not a party to the PSA, the AHC remained in discussions with the PSA Parties regarding the terms of a plan of liquidation that would be acceptable to the AHC.  The Plan embodies a compromise between the PSA Parties and the AHC that provides a framework pursuant to which the Debtor's remaining assets, primarily litigation rights and insurance proceeds, will be monetized and distributed to creditors, including the Sovereign Claimants, and provides Sovereign Claimants with the highest overall allocation of proceeds derived from the liquidation of the Debtor's assets, while still ensuring an allocation to non-sovereign parties which have been harmed by the Debtor's products including firefighters, first responders, and public water systems.

---

[1]     The Plan and Disclosure Statement are included in the Solicitation Package sent to Sovereign Claimants.  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

[2]     Docket No. _____.



**Counsel to AHC**
**James S. Carr**
**Steven Yachik**
3 World Trade Center
175 Greenwich Street
New York, NY 10007

The Plan allocates 30% of the distributable value of the proceeds derived from the liquidation of the Debtor's assets to the holders of Sovereign State Claims, as defined in the Plan.[3] The Plan provides for the establishment of a sovereign trust (the "Sovereign Trust") that will oversee the process of making distributions to Sovereign Claimants on account of their Sovereign State Claims. Under the Plan, Sovereign Claimants will also have the right to participate in the following seven classes of claims: (i) water providers, (ii) airports, (iii) fire training facilities, (iv) landfills, (v) property damage, (vi) stormwater, and (vii) wastewater. The Plan also provides for the establishment of a primary trust (the "Primary Trust," and together with the Sovereign Trust, the "Settlement Trusts") that will oversee the process of making distributions to Sovereign Claimants under those seven classes of claims.

As contemplated by the PSA, pursuant to and subject to the terms and conditions of the Estate Claims Settlement Agreement,[4] which is described in further detail at Article III.O of the Disclosure Statement, Carrier shall: (i) make a $540 million guaranteed cash payment for the benefit of the Debtor's unsecured creditors, including the Sovereign Claimants, payable in five payments over five years, into the Settlement Trusts established pursuant to the Plan; and (ii) assign and transfer rights under certain Insurance Policies to the Primary Trust for the benefit of the Debtor's unsecured creditors, including the Sovereign Claimants, in exchange for:

    a)    the resolution, mutual waiver and full and final release of any and all Released Claims[5] capable of being asserted against Carrier and certain other Released Parties by or on behalf of the Debtor or its Estate (the "Estate Release"), and

    b)    50% share of the first $3.5 billion from the settlement or recovery under certain Insurance Policies with the other 50% being distributed to the Settlement Trusts for the benefit of the Debtor's unsecured creditors, including the Sovereign Claimants.[6] The Settlement Trusts will also receive (i) 80% of all recoveries between $3.5 billion and $6.75 billion and (ii) 100% of all recoveries in excess of $6.75 billion.

The Plan also preserves (i) "AFFF Independent Causes of Action," which are defined, in part, "as any Cause of Action that could be asserted by an AFFF Claimant against a Non-Debtor Party based on the Non-Debtor Party's own conduct and breach of duty (*i.e.*, duty owed to the AFFF Claimant and not owed to the Debtor)"[7] and (ii) any "Sovereign State Retained Causes of Action," which is defined, in part, as

---

[3]    Plan, at § 5.5.4.

[4]    Plan, at § 2.1.78.

[5]    Plan, at § 2.1.172.

[6]    Plan, at § 2.1.115; *see also Notice of Filing of Plan Supplement for the Debtor's [_____] Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [Docket No. _____], at Exh. __.

[7]    *See* Plan, at § 2.1.106.



**Counsel to AHC**
**James S. Carr**
**Steven Yachik**
3 World Trade Center
175 Greenwich Street
New York, NY 10007

casus of action "which may be asserted, by a Sovereign State against [Carrier] that (1) is not an Estate Cause of Action and (2) arises from a statute, regulation, or common law that creates a theory of liability, by which a Sovereign State could recover damages or penalties, or obtain equitable or injunctive relief, against [Carrier]."[8]  Sovereign Claimants should carefully review the terms of the Plan for a full and complete description of the Estate Release, AFFF Independent Causes of Action, Sovereign State Retained Causes of Action, and other provisions that may impact the rights of each Sovereign Claimant.

**The Disclosure Statement contains estimates of recoveries on account of AFFF Claims, including claims belong to the Sovereign Claimants.  These estimates were prepared by the Debtor and the UCC, without the AHC's participation, and do not represent the opinion of the AHC nor any individual Sovereign Claimant.  No inferences shall be drawn regarding the value of the Sovereigns' AFFF Claims and/or the monetization of insurance proceeds with regard to such claims.**

**The AHC recognizes that Sovereign Claimants will not be fully compensated through the Plan for the harm caused by the Debtor's products; however, the Plan represents a compromise that is reasonably intended to balance the interests of the Sovereign Claimants with the interests of other creditor classes which were also harmed by these products.  This compromise is also intended to maximize the funds recovered through the monetization of the Debtor's remaining assets while minimizing the time required to realize these recoveries.  In recognition of this balancing of interests, the AHC supports the Plan, and accordingly, the AHC recommends that Sovereign Claimants vote to accept (in favor of) the Plan.**

In supporting the Plan, the AHC is acting in accordance with the approval of the majority of its members, voting solely in their capacity as members of the AHC, and not in their individual capacity.  Each member of the AHC retains all rights: (i) to vote against and/or object to the Plan; or (ii) file any pleading or take any position deemed in such member's best interest in the Bankruptcy Case.  For the avoidance of doubt, the AHC's support of the Plan shall not waive, amend, alter, or impact, in any way, the rights of any member of the AHC in its capacity as a Sovereign Claimant.

***THE FOREGOING IS NOT INTENDED AS A SUBSTITUTE FOR THE PLAN AND DISCLOSURE STATEMENT. ALL SOVEREIGN CLAIMANTS SHOULD READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY, AND SPEAK TO THEIR LAWYER AND/OR OTHER ADVISORS TO THE EXTENT THEY WISH TO DO SO.***

If you have any questions regarding the AHC's recommendation, you may contact counsel to the AHC at: jcarr@kelleydrye.com and syachik@kelleydrye.com.

---

[8]         *See* Plan, at § 2.1.200.

**KELLEY DRYE & WARREN LLP**                                                                                                    3
4919-7225-0434 v.3