

O'Melveny & Myers LLP  
1301 Avenue of the Americas  
Suite 1700  
New York, NY 10019-6022  

T: +1 212 326 2000  
F: +1 212 326 2061  
omm.com  

File Number:

September 9, 2025

**Andrew J. Frackman**  
D: +1 212 326 2017  
afrackman@omm.com

<u>VIA ECF</u>

Hon. Laurie Selber Silverstein  
Chief United States Bankruptcy Judge  
United States Bankruptcy Court for the District of Delaware  
824 North Market, 6th Floor  
Wilmington, DE 19801

<u>**Re: *KFI Wind-Down Corp.*, Case No. 23-10638 (LSS) (Bank. D. Del.) – Discovery Dispute**</u>

Dear Judge Silverstein:

Pursuant to Section III of Your Honor's Chambers Procedures, we write to advise the Court of a discovery dispute arising from the Official Committee of Unsecured Creditors (the "UCC" or the "Committee")' objections to Certain Insurers'[1] First Set of Plan-Related Requests for Production to the UCC that we served on July 2, 2025.

Following the UCC's Responses and Objections, served on August 1, 2025, and the parties' August 26, 2025 meet-and-confer conference, the following issues remain in dispute:

---

[1] "Certain Insurers" are ACE American Insurance Company, Century Indemnity Company (as successor to CIGNA Specialty Insurance Company f/k/a California Union Insurance Company; and as successor to CCI Insurance Company, as successor to Insurance Company of North America), Federal Insurance Company, and Pacific Employers Insurance Company; Great American Assurance Company and Great American Insurance Company of New York; First State Insurance Company, Hartford Accident and Indemnity Company and Twin City Fire Insurance Company; Travelers Casualty and Surety Company (f/k/a The Aetna Casualty and Surety Company); Admiral Insurance Company; Wellfleet New York Insurance Company (formerly known as Atlanta International Insurance Company), Columbia Casualty Company, The Continental Insurance Company (on its own behalf and as successor-in-interest to Harbor Insurance Company and London Guarantee and Accident Company of New York) and Government Employees Insurance Company (GEICO); National Union Fire Insurance Company of Pittsburgh, Pa. and Lexington Insurance Company; Westport Insurance Corporation, as successor-in-interest to Puritan Insurance Company; Arch Insurance Company and Arch Specialty Insurance Company; Allstate Insurance Company, solely as successor in interest to Northbrook Excess & Surplus Insurance Company, formerly known as Northbrook Insurance Company; and RSA Insurance Group Limited.



1. **There is no basis for withholding responsive documents merely because they might be in the Debtor's possession.**

The UCC objects to the production of any documents they contend are already in KFI's possession, custody, or control.  Unexplained by the UCC is how they will determine which responsive documents are in KFI's possession and whether KFI has or is actually going to produce them.  To exercise appropriate due diligence, the UCC would need to compare the documents it holds to those produced by KFI.  Then producing the documents the UCC has identified they have would not be an undue additional burden.  Otherwise, how those documents the UCC has—which it contends the Debtor is producing—are to be identified remains unanswered by the UCC.  Nor does the UCC explain why we should not be entitled to the UCC's *own* copies of any such documents, with the UCC's own email chains or markings and metadata.

Moreover, the Debtor has already indicated it will be withholding some documents based on grounds that may not be available to the UCC, whose membership includes claimants, and which are responsive.  The UCC has offered no legal authority to support a blanket exemption from its discovery obligations on this basis.  *See Williford v. Rice Energy, Inc.*, 2018 WL 11241634, at *2 (W.D. Pa. Feb. 9, 2018) ("[I]t is not a bar to the discovery of relevant material that the same material may be in the possession of the requesting party or obtainable from another source.").  Nor has the Committee supplied any factual support with requisite particularity for the burden it contends it faces in producing documents in its possession.  *Cf. Multiple Energy Techs., LLC v. Under Armour, Inc.*, 2024 WL 4784112, at *8 (W.D. Pa. Nov. 14, 2024) ("Because MET has identified *with specificity* which documents are duplicates of documents that have already been produced, the Court will not require Mr. Williams to re-produce those documents.") (emphasis added).  In this age of electronic document management, we do not believe the burden is material, if it exists at all.

2. **The UCC, like all parties, must provide a proper and complete privilege log**.

The UCC refuses to provide a complete privilege log.  Instead, it has offered to produce only what it calls a "categorical log" – which is useless in resolving privilege claims – for only those documents uniquely in its custody, possession, or control and not in the Debtor's possession as well.

First, we are entitled to a proper and complete document-by-document log.  Key to an assessment of the viability of a privilege claim is knowing the date, author and recipients of each document, as well as its subject matter, as those factors can impact whether a privilege assertion is valid.  That can only be ascertained by a document-specific log.  A categorical log, lacking the basic information of date, sender, recipient, nature of document, and claim of privilege, immunizes any privilege claim from meaningful verification.  *See United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990) ("[C]laims of attorney-client privilege must be asserted document by document, rather than as a single, blanket assertion."); *Tyco Healthcare Grp. LP v. Mut. Pharm. Co.*, 2012 WL 1585335, at *4 (D.N.J. May 4, 2012 (ordering a document-by-document log where plaintiff failed to show with particularity why the "traditional" document-by-document log would be unduly burdensome).  This is consistent with the

requirements for withholding documents on the basis of privilege under Fed. R. Civ. P. 26(b)(5)(A), and with this Court's admonition at the July 18, 2025, hearing that it expects a "useful privilege log" that has "all the information that a privilege log is supposed to have." *In re: KFI Wind-Down Corp.*, Tr. at 39:7-10, Case No. 23-10638 (LSS) (Bankr. D. Del. July 18, 2025).

Second, a party does not get a pass from preparing a proper log for documents in its possession merely because *another* party *may* have a copy of the same document, *may* be withholding it on grounds of privilege, and *may* be logging that document or a version or portion thereof on its own log.  The UCC must either produce the responsive documents or, if asserting privilege over those documents, explain the basis for the claim of privilege.  Fed. R. Civ. P. 34(a)(1); 26(b)(5)(A).  The UCC has presented no authority to the contrary.  Nor can the UCC know what documents the Debtor will produce, since the Debtor's production is ongoing, what documents the Debtor will withhold on the basis of asserted privilege is unknown, and the Debtor has provided no log to date and has refused to commit to a date for delivering one.  Moreover, if the UCC is relying on the Debtor's privilege log, not only has that not yet been provided, but a privilege that can be asserted by the Debtor is not necessarily a viable privilege for the UCC to assert, with its membership including claimants.

Third, the party asserting a claim of privilege has the burden of sustaining it.  It cannot shirk that burden on grounds of cost, effectively transferring the burden of disproving the claim without facts onto the other side.  And, if there are rare occasions when the cost of providing a proper log is so great as to warrant modification of this basic rule of evidentiary burden, it could only be found upon a powerful evidentiary showing.  The UCC has failed to provide any support for the burden they purport to face in complying with their discovery obligations.  They have not quantified the "volume" of documents they claim they will have to log.  Neither have they set forth the cost of preparing the log.  *See, e.g., Tyco Healthcare Grp. LP*, 2012 WL 1585335, at *4 (ordering plaintiff to produce a post-complaint privilege log where plaintiff failed to "provid[e] an estimate of logging the documents.").

Furthermore, the UCC's burden objections do not fly here as the UCC is more than a mere third party being dragged into ongoing litigation against its will.  The UCC was created to represent the interests of KFI's unsecured creditors in this bankruptcy; investigated and prepared a draft complaint asserting claims KFI may have against Carrier; was a party to the mediation that resulted in the settlement resolving the potential claims against Carrier; and is now an active plan proponent seeking confirmation of the Plan.  *See, e.g.*, *In re: KFI Wind-Down Corp.*, Tr. at 88:13-16, Case No. 23-10638 (LSS) (Bankr. D. Del. June 4, 2025) ("Your Honor can well-imagine that the Committee's involvement in this plan was not insignificant"); *Id*. at 88:21-89:-3 ("There was investigation by the Committee, significant investigation by the Committee; significant discovery by the Committee, discovery not only into the Debtor, but into Carrier, as well; significant efforts to understand the transaction history of this case.").  Having played such an integral role in the Plan, the UCC cannot now avoid its discovery obligations by hiding behind KFI's ongoing productions and yet-to-be-produced privilege log.



### 3. The UCC's limitations on Custodians and Time Periods are baseless and an excuse to conceal documents.

In its responses, the UCC (a) has refused to search for responsive documents in the possession of Committee members and will only search for what its attorneys possess, and (b) will not search for responsive documents predating the date this Court authorized the attorneys' retention—August 22, 2023—even though that occurred months after the Committee was constituted on May 31, 2023.  Both limitations are improperly narrow.

First, the UCC's insistence to limit production only from its attorneys would conceal documents in the possession of the Committee's members themselves.  If they have responsive documents, they have to produce them.  It is really that simple.  We expressed our willingness to accept a representation from counsel that the members have no responsive documents other than what is in their attorneys' possession, but we have not received a response (because they must have documents, after all).  Bottom line:  if they have unique documents, they have to produce them.  It is not an extraordinary request and is part of the obligations accompanying court appointment to a committee, especially when the Committee and its members are active proponents of the Plan.

Second, limiting production to after August 22, 2023, the date when the Court authorized appointment of counsel, would shield from production responsive documents in the UCC's and their attorneys' possession predating that approval date.  After all, the Court appointed the members to the Committee back on May 31, 2023, Dkt. No. 83, and the Court's retention order itself is *nunc pro tunc* to June 1, 2023, Dkt. No. 365.  Indeed, fee applications to the Court reflect work done by counsel for the UCC going back to June 1.  *See* Dkt. No. 381-2.  The UCC has offered no rationale for why their files should not be searched for responsive documents predating the Court approval of the retention of their counsel.  And they likely had communications even before May 31.  If they have none, then there is no burden.  If they have responsive documents, they are not subject to any claims of privilege and must be produced.  If there is a valid basis for withholding any particular documents, that should be stated in a privilege log so that assertion can be addressed.  Simply using a cut-off date without any log of documents withheld precludes an evaluation of the validity of their withholding of those documents.

* * *

We are prepared to address these issues at the Court's earliest convenience.

Respectfully submitted,

*/s/ Andrew J. Frackman*

Andrew J. Frackman