**brown**rudnick

D. CAMERON MOXLEY
direct dial:+1.212.209.4909
dmoxley@brownrudnick.com

September 11, 2025

**BY ECF**

The Honorable Laurie Selber Silverstein
United States Bankruptcy Judge
United States Bankruptcy Court for the District of Delaware
824 North Market Street
6th Floor, Courtroom 2
Wilmington, DE 19801

**RE:**   *KFI Wind-Down Corp.*, **Case No. 23-10638 (LSS) (Bankr. D. Del.)**

Dear Judge Silverstein:

We write on behalf of the Official Committee of Unsecured Creditors (the "Committee" or the "UCC") in the above-referenced proceedings in response to the September 9, 2025 discovery dispute letter [D.I. 2484] (the "Insurers' Letter") filed by Certain Insurers (as defined in the Insurers' Letter at 1 n.1), in accordance with Section III of Your Honor's Chambers Procedures.

**The Insurers' Letter is Premature**

As a threshold matter, the Insurers' Letter is premature and raises issues that are not yet ripe for the Court's attention. The Certain Insurers have propounded 27 document requests on the Committee (the "RFPs"). At Certain Insurers' request, the UCC readily agreed to produce substantially all non-privileged documents by September 15, 2025,[1] and, as the Insurers' Letter acknowledges, the UCC also agreed to provide a categorical privilege log. The Certain Insurers should review the UCC's imminent document production and privilege log before asserting that there is a discovery dispute, as the UCC respectfully submits they will resolve Certain Insurers' fears—asserted in the abstract—and obviate the need to burden the Court or tax further estate resources.

While the "disputes" raised in the Insurers' Letter are prematurely raised, the UCC responds to each in turn.

**Documents Discoverable from the Debtor Should be Obtained from the Debtor**

Certain Insurers entirely misconstrue the UCC's position with respect to duplicative document discovery that can be obtained from multiple sources, including the Debtor. If "the UCC's own email chains or markings and metadata" (Insurers' Letter at 2) are responsive and not otherwise

---

[1]    In addition to the RFPs, a subset of insurers also propounded interrogatories on the UCC. The UCC will timely respond to the subset of insurers' interrogatories by September 16, 2025.

privileged, they will be produced.  The UCC is not seeking any "blanket exemption from its discovery obligations."  *Id.*  Certain Insurers do *not* need—and are not entitled to under Civil Rule 26—unnecessarily duplicative discovery that is not proportional to the needs of the case, such as multiple copies of the same document.

There is nothing remarkable about the UCC's position in this regard, and Certain Insurers' own cited case law *supports the UCC* on this issue.  In *Multiple Energy Techs., LLC v. Under Armour, Inc.*, cited by Certain Insurers (Insurers' Letter at 2), the District Court expressly concluded that "[i]f documents have already been produced, they need not be re-produced if it would be 'unreasonably cumulative' to produce them."  2024 WL 4784112, at *8 (W.D. Pa. Nov. 14, 2024).

Certain Insurers also rely on *Williford v. Rice Energy, Inc.*, 2018 WL 11241634, at *2 (W.D. Pa. Feb. 9, 2018), for the proposition stated in *Williford* that "it is not a bar to the discovery of relevant material that the same material may be in the possession of the requesting party or obtainable from another source."  Insurers' Letter at 2.  *Williford*, however, was based on case law discussing the scope of discovery under the now outdated version of Rule 26, where the court explained (now incorrectly under the amended Rule 26(b)(1)) that the "scope of discovery as defined in Federal Rule of Civil Procedure 26(b)(1) is limited only by relevance, and relevance is construed broadly to include '[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"  *Id.* at *1 (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 (1978)).  Relevance, however, is no longer the "only" limit on discovery under Rule 26(b)(1).  Since 2015, the amended Rule 26(b)(1) has limited discovery not only to what is "relevant," but also to what is "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1) (". . . [T]he scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense ***and proportional to the needs of the case***, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.") (emphasis added).

Moreover, the "rule continues that discovery should not be unreasonably cumulative or duplicative."  *Maxus Liquidating Trust v. YPF S.A., et al. (In re Maxus Energy Corp.)*, 617 B.R. 806 (Bankr. D. Del. 2020) (Sontchi, C.J.).

The UCC's position on this duplicative discovery issue is straightforward and in line with the *current* scope of discovery under Rule 26(b)(1), not the outdated standard that Certain Insurers rely on.  If, for example, the Debtor has possession of a responsive, non-privileged email exchanged between Debtor's counsel and the UCC's counsel, Certain Insurers can obtain that email from the Debtor and do not need to obtain a second copy of it from the UCC.  A request for such a document from the UCC is unreasonably cumulative and duplicative, and it would be disproportionate to the needs of the case, for the UCC to have to review and produce a second copy of the same email.  The practical efficiency here is obvious: it avoids the UCC's attorneys having to spend the time and resources to review documents that the Debtor's representatives are also on and are producing (or logging if there is a basis to withhold the document), and it enables the UCC to meet the timing for substantial completion of document discovery that Certain Insurers have requested.

## **The UCC's Privilege Log is Reasonable Under the Circumstances**

Certain Insurers' characterization of categorical privilege logs as "useless in resolving privilege claims" (Insurers' Letter at 2) seems to purposely misconstrue or misunderstand what a categorical privilege log is and is completely out of step with what parties and courts accept.

First, to level set: Rule 26(b)(5)(A) of the Federal Rules of Civil Procedure provides: "When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Subparagraph (5) to Rule 26(b) was added in 1993, and the 1993 Advisory Committee Notes explicitly endorse categorical privilege logs:

> Paragraph (5) is a new provision.  A party must notify other parties if it is withholding materials otherwise subject to disclosure under the rule or pursuant to a discovery request because it is asserting a claim of privilege or work product protection. . . . The rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection. *Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories.*

Fed. R. Civ. P. 26 Advisory Committee Notes (emphasis added).

Contrary to Certain Insurers' characterization of categorical privilege logs, they are among the "four commonly accepted types of privilege logs."[2]  Your Honor utilized the parties' categorical privilege logs in *Imerys* and, based on the information contained in those categorical logs, assessed and ruled on a number of privilege assertions.  *In re Imerys Talc America, Inc.*, No. 19-10289, 2021 WL 12302368, at *1 (Bankr. D. Del. Feb. 23, 2021) ("Debtors[,] . . . the TCC, and the FCR each provided me with a categorical privilege log.  I have reviewed the submissions and come to the following determinations.").  Judge Sontchi has approved the use of categorical privilege logs, as well, explaining that their use "is a common practice in litigation involving the review of an extremely large number of documents" and is "an efficient and appropriate accommodation to allow for the production of meaningful privilege logs without undertaking the huge expense and significant delay arising from the production of a document-by-document log." *Maxus Liquidating Trust v. YPF, S.A., et al. (In re Maxus Energy Corp.)*, 2021 WL 3619900, at *4 (Bankr. D. Del. Aug. 16, 2021).  This Court is not alone in approving the use of categorical

---

[2]     Briana Hulet, *Four Types of Privilege Logs That Litigators Need to Know About*, American Bar Association Law Practice Division (Apr. 3, 2024), https://www.americanbar.org/groups/law_practice/resources/law-technology-today/2024/four-types-of-privilege-logs-that-litigators-need-to-know-about/.

privilege logs. For example, the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "<u>EDNY/SDNY Local Rules</u>") provide that "[e]fficient means of providing information regarding claims of privilege are encouraged," and, "[w]hen appropriate, parties should consider and discuss the use of a categorical log or a metadata log, instead of a document-by-document log." EDNY/SDNY Local Rule 26.2(c). Moreover, the EDNY/SDNY Local Rules provide that categorical logs are "*presumptively proper*" where a "party is asserting privilege on the same basis with respect to multiple documents." EDNY/SDNY Local Rule 26.2(c)(1) (emphasis added).

Here, Certain Insurers have run to this Court to complain about the purported inadequacy of the UCC's privilege log *before they have even received it*, advancing the demonstrably unsupported notion that categorical privilege logs are "useless in resolving privilege claims." Insurers' Letter at 2. Certain Insurers' position ignores the widespread acceptance of categorical privilege logs under Rule 26, this and other courts' acceptance (and encouragement) of their use, and this Court's own recent assessment of privilege claims based on categorical privilege logs. Certain Insurers have thereby prematurely and unnecessarily forced the UCC to expend time and resources on responding to their letter on this issue instead of finalizing the privilege log.

The UCC's categorical privilege log will be in line with the well accepted format of categorical privilege logs that provides sufficient information for Certain Insurers (and, if necessary, this Court) to assess the privilege asserted. We trust that all agree that certain categories of documents—such as the UCC counsel's emails with the Mediators, or UCC counsel's emails with the Committee—are privileged without the necessity of logging each such communication. Particularly in bankruptcy cases, parties ought to employ standard, accepted ways to minimize discovery costs while still conveying sufficient information to test privilege assertions.

Once Certain Insurers have had an opportunity to review the UCC's privilege log, they will then be in a position to assess the UCC's privilege assertions. Until then, we respectfully submit that this issue is not ripe for adjudication.

**The UCC's Custodians are Appropriate,**
**and the UCC Will Use Certain Insurers' Proposed Time Period**

The UCC will provide Certain Insurers with the list of custodians it has used to search for documents responsive to the Requests, and those custodians are ***not limited*** to the UCC's attorneys, but also include the UCC's financial advisor.

The UCC's custodians do not—and cannot—include the Committee's individual members, however, as the individual members' documents are not in the possession, custody, or control of the Committee itself. Certain Insurers argue that if the individual Committee members themselves "have responsive documents, they have to produce them," and boldly assert that "It is really that simple." Insurers' Letter at 4. Certain Insurers cite no authority for this purportedly "simple" proposition because there is none that supports it. Indeed, in *Exactech* this Court recently rejected the same argument where via discovery on the Unsecured Creditors Committee a party sought discovery from the individual members of that committee. *In re Exactech, Inc.*, No. 24-12441 (LSS) (Bankr. D. Del.) [D.I. 791] (Hr'g Tr. 31:20-24, Mar. 21, 2025 ("But in terms of how I read

The Hon. Laurie Selber Silverstein
September 11, 2025
Page 5

the request, I do not think that communications between committee members and their individual counsel are within the control of the committee.  I think those are separate communications, so I would not require those to be produced.")).

Finally, with respect to time period, the Committee will agree to expand its search to meet the period Certain Insurers request.  This expanded search will necessarily take time to undertake, and responsive, non-privileged documents and an updated privilege log may be produced after September 15, 2025.

The Committee thanks the Court for its attention to these issues.

Respectfully submitted,

**BROWN RUDNICK LLP**

*D. Cameron Moxley*

D. Cameron Moxley