# ANDERSON KILL P.C.

**7 TIMES SQUARE, 15TH FLOOR / NEW YORK, NY 10036 / 212.278.1000 / www.andersonkill.com**

Robert M. Horkovich
Rhorkovich@andersonkill.com
212.278.1322

*By CM/ECF*　　　　　　　　　　　　　　　　　　　　　　　　　　　September 19, 2025

The Honorable Laurie Silverstein
United States Bankruptcy Judge
United States Bankruptcy Court – District of Delaware
824 North Market Street, 6th Floor
Wilmington, DE 19801

　　　　　　　Re:　　In re KFI Wind-Down Corp., No. 23-10638

Dear Judge Silverstein:

This responds on behalf of Carrier Global Corporation ("Carrier") to the September 17, 2025 letter (the "Letter") (D.I. 2529) to the Court on behalf of a group of insurance companies (the "Insurance Objectors")[1] that have objected to discovery that Carrier served on August 12, 2025 in response to their objections to the proposed Plan (the "Discovery Requests"). The Discovery Requests were served five weeks ago. They are limited and aimed squarely at issues the Insurance Objectors raised repeatedly at the Disclosure Statement hearing as objections to Plan confirmation. The Insurance Objectors claimed, for example, that the Plan would "strip[]" the insurers of their contractual rights, preventing them from defending claims, and that the idea that Carrier will face "direct AFFF liability is a red herring." June 4, 2025 Disclosure Statement Hearing Transcript ("Hearing Tr.") at 30:19-31:3 (Ex. 1). Indeed, the Insurance Objectors argued that these objections were so compelling that the Court immediately should reject the Plan, without holding a confirmation hearing. The Discovery Requests ask the Insurance Objectors to substantiate their bases for asserting that the Plan should not be confirmed. That information will allow Carrier and other parties to focus efficiently on any real issues without wasting time on baseless claims. But rather than backing up their strident assertions, the Insurance Objectors seek to block discovery into issues they raised. Unless the Insurance Objectors abandon their Plan related objections, they plainly are the appropriate subject of discovery.

Nor can the Insurance Objectors claim the Discovery Requests are premature given that they raised the issues the Discovery Requests address at the disclosure statement hearing. Despite our repeated requests, the Insurance Objectors have failed to serve the responses and objections required under the Federal Rules and still have not identified specifically any information or material they will produce. We respectfully ask the Court to deny the request for a protective order and direct the Insurance Objectors to respond to the Discovery Requests by the current September 25 deadline.

---

[1] The Insurance Objectors are listed on Schedule A. Three insurance companies that Carrier served with related discovery have not joined in the Letter: Landmark Insurance Company, Lexington Insurance Company and National Union Fire Insurance Company of Pittsburgh, Pa.

### I.  The Insurance Objectors Failed to Engage in the Required Discovery Dispute Resolution Procedures Before Seeking Relief in this Court

The Discovery Requests consist of eleven Requests for Admission ("RFAs"); fourteen Interrogatories ("Interrogatories"); and five Requests for Production of Documents ("RFPs"). Some Insurance Objectors received three additional Interrogatories and two additional RFPs regarding specific representations their counsel made to the Court at the Disclosure Statement hearing (the "Hearing").[2]  Responses and objections to the Discovery Requests were due on September 11, 2025.  Carrier consented to the Insurance Objectors' request for an extension until September 25, 2025.  (Ex. 5).

On September 3, 2025, counsel for the Insurance Objectors claimed the Discovery Requests were "objectionable" and requested a meet and confer "to see whether we can narrow and/or eliminate some of the potential disputes."  (Ex. 6).  Carrier responded that the parties should meet and confer after the Objectors identified the discovery they would provide and the requests to which they objected.  *Id.*  The Insurance Objectors did not do so.  Instead, they continued to demand a meet and confer session while refusing to provide a written explanation of their objections or the discovery they would provide.  *Id.*  On September 9, 2025, the Insurance Objectors invited Carrier to a Teams meeting to be held on September 11, 2025.  *Id.*  Even though Carrier advised that it would not attend absent a written explanation of the Insurance Objectors' objections, 19 Insurance Objector counsel appeared at the Teams meeting, apparently just for show.  *Id.*

We submit that the Court should not condone the Insurance Objectors' attempt to subvert the discovery process by circumventing the required procedures for addressing discovery disputes. The Insurance Objectors could have, and should have, served responses and objections to the Discovery Requests as the rules require.  Indeed, the Letter does not identify any issue that would not ordinarily be addressed through the standard discovery process, and further demonstrates that the Insurance Objectors had ample time to articulate their objections.  Had the Insurance Objectors done so, the parties could have engaged in productive meet and confer sessions, potentially eliminating the need for the Court's involvement.

### II.  The Objections to the Discovery Requests Should Be Overruled

Now that the Insurance Objectors have brought their disputes to the Court, the Court should overrule their objections and order them to respond to all of the Discovery Requests.  In their Objections to the Disclosure Statement and at the Hearing, the Insurance Objectors argued that the Plan was "patently unconfirmable" because, among other things: (1) the Plan would strip the Insurance Objectors of their rights under their insurance policies, including rights to defend and settle claims, and to seek subrogation and contribution for payments made thereunder; and (2) the Plan's insurance sharing provision is a "kickback" to Carrier that exceeds Carrier's remaining post-confirmation liability.  *See generally* Insurers' Objection to Disclosure Statement, Brief #2 of 4 ("Objection Brief #2") [D.I. 2144].

The Insurance Objectors must claim they had a good faith basis for raising these objections at the Hearing.  Carrier is entitled to discovery into the bases for these objections and whatever

---

[2] Examples are attached as Exhibits 2, 3 and 4.

supporting evidence the Insurance Objectors claim to have. Each of the Discovery Requests directly relates to the Insurance Objectors' claims that the Plan is patently unconfirmable or other allegedly relevant assertions made to the Court.

> A. **The Discovery Requests Relate to the Insurance Objectors' Claim that the Plan Will Impair Their Contract Rights**

The Plan's supposed impairment of the Insurance Objectors' contract rights is a cornerstone of the Insurer Objectors' objections to Plan confirmation. *See, e.g.*, Objection Brief #2 at 22-26 ("The Plan and TDPs Also Impair Insurers' Contractual and Substantive Rights."). The Insurance Objectors therefore concede the relevance of RFA 11 (Letter at 5), which seeks an admission "that the Plan does not release, impair, enjoin, or otherwise modify Your rights against Carrier, if any, under any applicable insurance policy."

Similar to RFA 11, RFAs 1-8 also seek admissions or denials that directly are relevant to the contract rights that the Insurance Objectors claim the Plan will impair.[3] In their Objection and at the Hearing, the Insurance Objectors hammered the Plan's purported effects on their contractual rights to defend Carrier and KFI against AFFF claims and to seek contribution and subrogation from third parties for amounts paid under their policies:

> First, the Plan's "Insurance Assignment" assigns only KFI's and the Carrier/UTC Parties' alleged insurance rights to the Primary AFFF Settlement Trust, but not any corresponding duties owed to insurers. *By design this will hamstring the insurers' ability to defend against the claims, to resolve them at reasonable levels,* or to enforce any deductibles or self-insured retentions ("SIRs"). Objection Brief #2, ¶ 46 (emphasis added).

> Section 9.1(c) of the Plan is also egregious in its impairment of insurer rights as *it prevents insurers, as non-Released Parties, from pursuing any kind of subrogation claims against the very broad group of Released Parties* or even from enforcing their rights to retrospective premiums, deductibles, and SIRs. *Id.*, ¶ 48 (emphasis added).

> "Your Honor, I would say it ensures the validation and payment of claims for which the MDL said KFI has no liability, *because we can't defend the claims*." Hearing Tr. 204:25-205:6 (J. Weinberg) (emphasis added).

An insurance company's rights to collect from third parties through subrogation or contribution accrue only after the company actually has paid a claim. *See, e.g.*, *David Jeffrey, Ltd. v. Jewelers Mut. Ins. Co.*, No. CIV.A. 86-6222, 1987 WL 16664, at *2 (E.D. Pa. Sept. 1, 1987) ("A right of subrogation, moreover, does not accrue until the insurer has paid under the policy"). RFAs 1-8 ask the Insurance Objectors to admit that they have not, in fact, made any payments, or agreed to make any payments, under their policies toward defense, settlements or judgments of AFFF claims, and have not sought or received payments from third parties through subrogation

---

[3] Interrogatories 1-8 and 11 ask the Insurance Objectors to identify their bases for denying any of the corresponding RFAs 1-8 and 11, and are discoverable for the same reasons as the corresponding RFAs.

or contribution. If the Insurance Objectors have made no such payments, they have no present right to subrogation or contribution that the Plan could impair.[4] Similarly, Interrogatory 14 asks the Insurance Objectors to identify any defenses to AFFF claims that they claim the Plan would impair. These requests are all directly relevant to the issues that the Insurance Objectors themselves raised.

The Insurance Objectors complain that Carrier's requests "appear to be aimed at setting up and obtaining misleading admissions, taken out of context, to suggest (incorrectly) that the insurers are not meeting their obligations for claims that remain pending." Brief at 3. As explained above, the requests are relevant to the Insurance Objectors' objections and therefore discoverable, and the Insurance Objectors will have every opportunity to provide evidence to supply any missing "context" they believe is necessary.

      **B.    The Discovery Requests Relate to the Insurance Objectors' Claim that the Sharing Arrangement Represents an Impermissible "Kickback"**

The Insurance Objectors further claim that the Plan's insurance sharing mechanism would unfairly benefit Carrier because of Carrier's alleged lack of post-confirmation exposure to AFFF direct claims and other claims covered by the insurance that Carrier is surrendering to the Trust.

> "[T]his notion of there being substantial AFFF claims against Carrier outside of the KFI channeled claims. No one has identified any. Carrier has . . . AFFF liability because of its operating subsidiary KFI that's in bankruptcy. Those claims are all being channeled. No one has pointed to any specific activity of Carrier that might result in AFFF liability outside of what KFI did. So this notion that . . . Carrier faces huge ex bankruptcy, direct AFFF liability is a red herring, to be perfectly honest."
> Hearing Tr. 30:19-31:3 (A. Frackman).

Carrier is entitled to discovery into the Insurance Objectors' assertion that Carrier's post-bankruptcy liability is a "red herring." Accordingly, Carrier is justified in seeking information relating to the Insurance Objectors' understanding of Carrier's post-confirmation liabilities. This includes Carrier's RFAs regarding the claims that will remain against Carrier after confirmation (RFAs 9 and 10)[5] as well as any assessments or evaluations of Carrier's liability for direct AFFF claims (RFP 4). In addition, the Insurance Objectors' true assessment of Carrier's liability for direct AFFF claims may be reflected in the Insurance Objectors' notices and communications with their own reinsurers (RFP 5) because insurance companies generally are required to inform their reinsurers of potential exposures under their insurance policies. *See Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 139 F.R.D. 609, 612 (E.D. Pa. 1991) ("insurers' communications with their reinsurer regarding risks" may be discoverable).

---

[4] An Insurance Objector's rights to contribution or subrogation that might arise in the future would be protected under the Plan. *See* Proposed Plan, Section 5.5.12.

[5] Interrogatories 9 and 10 ask the Insurance Objectors to identify their bases for denying the corresponding RFAs 9 and 10, and seek discoverable information for the same reasons as the corresponding RFAs.

Although this discovery is amply warranted, if it is barred then the Court also should bar the Insurance Objectors from presenting evidence or argument regarding these issues at the confirmation hearing.

### III. Discovery Is Not Premature

The Insurance Objectors concede that the remaining Discovery Requests are relevant (RFA 11, Interrogatories 13, 15-17 and RFPs 3, 6 and 7), but they ask the Court to defer indefinitely the Insurance Objectors time to respond.[6]  Brief at 5.

The Insurance Objectors offer no legitimate reason why their responses should be deferred. Further, the Insurance Objectors do not say they will respond substantively to these requests. If the Insurance Objectors will object to any of these requests, it is necessary and appropriate to address those objections now, lest they further delay proceedings in this Court.

The Insurance Objectors claim that RFA 11, Interrogatory 13 and RFP 3 represent "contention discovery" that should be deferred indefinitely because the Insurance Objectors "cannot articulate Plan objections without reasonably complete discovery," or "identify relevant documents before productions are complete." Brief at 5.[7]  This ignores that they already have taken the position, in their Objection briefs and at the Hearing, that, even without discovery, the Court should reject the Disclosure Statement because the Plan is "patently unconfirmable."

> "If the plan language permits a kickback of $2.4 billion, if the plan language eliminates our claims, then you don't need discovery." Hearing Tr. 173:15-18 (A. Frackman).

The Discovery Requests the Insurance Objectors seek to defer indefinitely go directly to this claim.[8]  By raising a "patently unconfirmable" objection at the disclosure stage, the Insurance Objectors explicitly have tied the confirmability of the Plan to what they already know. The Insurance Objectors' claimed need for additional discovery, therefore, is not a basis for delay. Carrier is entitled to know what good-faith basis, if any, the Insurance Objectors had for their representations to this Court.

In conclusion, we respectfully ask the Court to deny the Insurance Objectors' request for a protective order and to order them to respond to Carrier's Discovery Requests.

---

[6] The Insurance Objectors do not address RFPs 1 and 2, which merely seek documents supporting or identified in Insurance Objectors' responses to RFAs and Interrogatories.

[7] The Insurance Objectors give no reason at all why discovery should be deferred as to Interrogatories 15-17 or RFP 6 and 7. These requests simply ask for the bases for, and documents supporting, representations made by Insurance Objectors to this Court, which are plainly discoverable. *See* Exs. 2 and 3.

[8] *See* RFA 11 ("Admit that the Plan does not release, impair, enjoin, or otherwise modify Your rights against Carrier, if any, under any applicable insurance policy"); Interrogatory 13 ("Identify and describe in detail all bases for your claim that the Plan is unconfirmable or should not be confirmed."); RFP 3 ("Produce any and all Documents supporting Your contention that the Plan is unconfirmable or should not be confirmed.").

ANDERSON KILL P.C.

Hon. Laurie Silverstein  September 19, 2025
Page 6

Respectfully submitted,

Robert M. Horkovich

Attachments