### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KFI Wind-Down Corp.,[1] | |
| Debtor. | Case No. 23-10638 (LSS) |

### DEBTOR'S RESPONSE IN SUPPORT OF DISCLOSURE STATEMENT FOR DEBTOR'S FIFTH AMENDED PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

KFI Wind-Down Corp. (the "Debtor") hereby submits this response (the "Response") to (i) the *Objection of the States of Maine and Vermont to the Revised Fourth Disclosure Statement for Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. 2416] (the "VT and ME Objection"), (ii) the *Objection of the States of California, Colorado, Connecticut, Delaware, and New York, and the District of Columbia to the Fourth Revised Disclosure Statement for Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code and Joinder in Objection of the States of Maine and Vermont* [D.I. 2424] (the "Other States' Objection" and together with the VT and ME Objection, the "States' Objections" and such objectors, the "Objecting States") and (iii) the *Insurers' Objection to the Fourth Amended Disclosure Statement for Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. 2429][2] (the "Insurers' Objection" and together with the States' Objections, the "Objections"; and such objectors, the "Insurers" and together with the Objecting States, the "Objectors"), and in support of approval of the Debtor's *Disclosure Statement*

---

[1]   The last four digits of KFI Wind-Down Corp.'s tax identification number are 5282. The Debtor's corporate headquarters are located at c/o AlixPartners 909 Third Avenue, New York, NY 10022.

[2]   Arch Insurance Company and Arch Specialty Insurance Company joined the Insurers' Objection [D.I. 2431].

*for Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. 2412] (as may be amended, modified or supplemented from time to time, the "Amended Disclosure Statement").[3]  In further support of the Response, the Debtor respectfully states as follows:

### Preliminary Statement

1.      After extensive and complex discussions with the other Settling Parties and Plan supporters since the Court's *RULING ON DISCLOSURE STATEMENT* [D.I. 2249] (the "Ruling"), the Debtor filed an Amended Disclosure Statement consistent with and implementing the Court's directives at the Disclosure Statement Hearing and in the subsequent Ruling to the maximum extent possible.  Continuing their one-note strategy of interference with and obstruction of the Debtor's solicitation, the Objecting States argue that the Debtor failed to follow the Court's instructions because the Amended Disclosure Statement does not contain a listing of each individual claim asserted in the AFFF MDL that would be released under the Plan, and instead includes supplemental narrative discussion of the types of claims that would be released and explanation as to why it would be impossible to create a schedule of specific claims. But the Objecting States' own complaints filed in the AFFF MDL perfectly exemplify why the Debtor cannot provide the schedule the Objecting States seek:  in their complaints, AFFF plaintiffs, including the Objecting States, generally have pled claims and asserted counts against all named defendants collectively, without specificity as to whether those counts are asserted against Released Parties directly (based on their own conduct and breach of duty owed to the particular plaintiff) or indirectly (based on the Released Parties' relationship to the Debtor).

---

[3]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. 2411] (as may be amended, modified or supplemented from time to time, the "Plan").

2.      As discussed in further detail below, the result of this pleading style is that each count *could* be released to the extent it is asserted against a Released Party based on a theory of liability that is derivative of the Debtor's liability, but it also could *not* be released to the extent it is based on a Released Party's own conduct and breach of duty. The Objecting States' (and effectively all AFFF MDL plaintiffs') own strategic decisions with respect to styling their complaints and pleading their claims has made what the Objecting States demand impossible.

3.      With respect to the Insurers, the Court should reject all of their recycled objections to the adequacy of the Amended Disclosure Statement on standing grounds. The Insurers have denied coverage for AFFF Claims prior to and during this Chapter 11 Case, and should not be permitted both to insist that they have no financial responsibility for claims against the Debtor and also to weaponize the bankruptcy process to their own ultimate objective: to delay any ultimate ruling on coverage and any payment on any claim. The Insurers are not creditors of the Debtor who are entitled to vote on the Plan or who will be reviewing the Amended Disclosure Statement in order to inform that vote. The Insurers' position on the Amended Disclosure Statement should not supersede the view of the Debtor's actual creditors, not a single one of whom has objected to any aspect of the Amended Disclosure Statement other than a handful of states on one issue—the released claims schedule. Moreover, the Insurers reargue objections that this Court expressly overruled in its Ruling and are thus precluded. They should all be overruled in any event for the reasons set forth below.

**<u>Background</u>**

4.      On June 4, 2025, the Court held a hearing (the "<u>Disclosure Statement Hearing</u>") to consider approval of the Debtor's *Disclosure Statement for Debtor's Fourth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [D.I. 2206] (the "<u>Original</u>

Disclosure Statement"). At the Disclosure Statement Hearing, each of the Objectors was heard on their objections to the Original Disclosure Statement over the course of an entire day. The Objectors and others raised arguments relating to the adequacy of the disclosure with respect to, among other things, the Special Committee investigation, the Debtor's relationship with Carrier, the Liquidation Analysis, the Estate Claims Settlement, creditor recoveries, the scope of the releases, and the claimant release form in connection with the receipt of distributions from the Settlement Trusts. The Court also heard arguments regarding whether the Plan is patently unconfirmable.

5.      Following briefing and argument on these and other issues, the Court ordered only two changes to the Original Disclosure Statement at the Disclosure Statement Hearing: (i) the addition of a recovery table and (ii) clarification with respect to the claimant release form that certain AFFF claimants will be required to submit in order to receive distributions on account of their Allowed AFFF Claims. (*See* June 4, 2025 Hr'g Tr. 95:19-96:14.) At the conclusion of the Disclosure Statement Hearing, the Court took the matter under advisement and noted that "we'll deal with scheduling" after ruling on the Disclosure Statement.

6.      On June 16, 2025, the Court issued the Ruling. In the Ruling, the Court overruled the remaining objections to the Original Disclosure Statement, including specifically the Objecting States' objections that the Plan's releases are impermissibly broad and the Insurers' objections regarding good faith and patent unconfirmability. (*See* Ruling at 2, 6-9.) The Court also directed the Debtor to create a schedule of prepetition claims filed against the Debtor and any Released Party and identify whether those claims will be released pursuant to the Plan or not. (*Id.* at 6-7.)

7.      On August 15, 2025, the Debtor filed the Amended Disclosure Statement. In response to the Court's directions at the Disclosure Statement Hearing, the Amended Disclosure Statement contains new disclosure regarding (i) anticipated creditor recoveries (*see* Amended Disclosure Statement at 10-12) and (ii) the claimant release form (*see id.* at 55).  In response to the Ruling, the Amended Disclosure Statement includes new and detailed disclosure regarding the types of claims, causes of action and theories of liability that constitute "Estate Causes of Action" and thus would be released under the Plan.  Specifically, the Debtor identified and described seven specific theories of liability on which claims against a Released Party may be based that would be released under the Plan.  (*See* Amended Disclosure Statement at 7-8.)  The Debtor also added disclosure explaining that "[i]n general," "claims that could be asserted by a claimant against a non-Debtor party based on the non-Debtor party's own conduct and breach of duty . . . are not Estate Causes of Action" and that "[c]laims of individual or sovereign claimants that fall outside the Estate Causes of Action categories . . . are not Estate Causes of Action and are not released or impaired by the Plan." (*Id.* at 9.)

8.      On September 10, 2025, shortly after the Debtor filed its Amended Disclosure Statement, the Third Circuit released its decision in *In re Whittaker Clark & Daniels Inc*, 2025 WL 2611753 (3d Cir. Sept. 10, 2025).  In *Whittaker*, the Third Circuit confirmed that claims premised on a theory of successor liability—which will released under the Debtor's Plan— belong to the estate in bankruptcy.  In so doing, the court made clear that it is the *theory of liability*, rather than the nature of the injury, that determines whether a cause of action is estate property. *Id.* at *9 (internal citations omitted).  The Third Circuit further unanimously confirmed that there is no requirement that "a debtor must have a state cause of action to assert before filing for

bankruptcy in order for a claim to be property of the estate," *id.* at *10, in direct contravention to arguments pressed by the Objecting States at the Disclosure Statement Hearing.

9.      Concurrently with the filing of the Amended Disclosure Statement, the Debtor filed the *Notice of Filing of Further Revised Proposed Order (I) Approving the Adequacy of the Disclosure Statement and Form and Manner of Notice of Hearing Thereon; (II) Establishing Solicitation Procedures; (III) Approving the Form and Manner of Notice to Attorneys and Solicitation Directive; (IV) Approving the Form of Ballots; (V) Approving the Form, Manner and Scope of Confirmation Notices; (VI) Establishing Certain Deadlines in Connection with Approval of Disclosure Statement and Confirmation of Plan; and (VII) Granting Related Relief* [D.I. 2413] (the "Revised Proposed Disclosure Statement Order").    The Revised Proposed Disclosure Statement Order included a revised proposed confirmation schedule following the same cadence as the schedule originally proposed by the Debtor, but updated to reflect the passage of time.

## Response

### I.    Certain of the Objections Were Already Overruled And Cannot Be Reasserted.

10.      As explained above, the only outstanding issues with respect to the Original Disclosure Statement following the Disclosure Statement Hearing and the Ruling were additional disclosure regarding (i) anticipated creditor recoveries, (ii) the claimant release form and (iii) a schedule of released causes of action in the AFFF MDL.  Despite this, the Objectors impermissibly try to relitigate issues on which they were already heard and as to which the Court already overruled their objections—a fact that the Objectors expressly concede.  For example, the Other States explicitly "reassert [their] previous objections," including that "the Plan is patently unconfirmable." (Other States Obj. at 4.)  But the Court expressly overruled objections relating to patent unconfirmability in the Ruling after full briefing and hearing on these arguments:  "After considering the arguments of counsel, I conclude that evidence and further legal argument is

needed to determine whether the Plan is confirmable.  For that reason, I overrule the disclosure statement objections on this ground." (Ruling at 9.)  Assertions that the Amended Disclosure Statement should not be approved because the Plan is patently unconfirmable cannot be raised anew now.

11.     The Insurers' objection to the Liquidation Analysis is similarly precluded. In the Insurers' Objection, the Insurers argue that the Liquidation Analysis was unchanged from that contained in the Original Disclosure Statement.  (*See* Insurers Obj. at 2.)  But the Insurers objected to the adequacy of the Liquidation Analysis in their briefing and at the Disclosure Statement Hearing (*see, e.g.*, June 4, 2025 Hr'g Tr. 46:4-48:11; 69:17-70:11), and the Court declined to require the Debtor to make any changes.  To the contrary, the Court properly identified the Insurers' objection as a confirmation issue:  "[U]ltimately, this analysis will rise or fall on whether the assumptions are valid." (June 4, 2025 Hr'g Tr. 72:4-6.)  This objection, too, should therefore be rejected as having already been considered and overruled.

## II.     The Insurers Do Not Have Standing To Be Heard on the Only Open Issues With Respect to the Amended Disclosure Statement.

12.     The Insurers do not have standing to object to the Debtor's disclosure with respect to the only issues currently outstanding.  The Supreme Court has held that insurers "with financial responsibility for bankruptcy claims can be directly and adversely affected by the reorganization proceedings in myriad ways" and are therefore parties-in-interest under section 1109(b) of the Bankruptcy Code.  *Truck Ins. Exch.* v. *Kaiser Gypsum Co.*, 602 U.S. 268, 269 (2024).  Here, the Insurers have denied that they are financially responsible for claims in this Chapter 11 Case.  It follows that *Truck Insurance* is not applicable and that there is no basis for the Insurers to raise issues in this Chapter 11 Case at all.  The Insurers should not be able to have

it both ways:  if they refuse coverage of AFFF Claims, they cannot be section 1109(b) parties-in-interest with standing to be heard in this Chapter 11 Case.

13.    Even if, despite denying coverage for AFFF Claims, the Insurers are section 1109(b) parties-in-interest in this Chapter 11 Case, that is not the end of the inquiry:  parties must also have constitutional and prudential standing in order to be heard.  *See, e.g.*, *In re Global Indus. Techs., Inc.*, 645 F.3d 201, 210 (3d Cir. 2011) ("To object to the confirmation of a reorganization plan in bankruptcy court, a party must, in the first instance, meet the requirements for standing that litigants in all federal cases face under Article III of the Constitution."); *In re Roman Catholic Diocese of Syracuse*, 665 B.R. 866, 875 (Bankr. N.D.N.Y. 2024) (rejecting insurers' argument that section 1109(b) and/or *Truck Insurance* satisfy or replace constitutional standing requirements and holding that "[i]n bankruptcy, a party must satisfy (1) Article III Constitutional standing; (2) federal court prudential standing; and (3) the party in interest standing under § 1109(b)"); *In re Dioceses of Camden, N.J.*, 2022 WL 3369087, at *2 (Bankr. D.N.J. Aug. 12, 2022) ("To have standing in bankruptcy court, a party must meet three requirements: (1) Article III's Constitutional requirements; (2) federal court prudential standing requirements; and (3) the "party in interest" requirements under Bankruptcy Code section 1109(b).").

14.    "A party seeking constitutional standing must demonstrate an 'injury in fact' that is 'concrete', 'distinct and palpable', and 'actual or imminent.'  *Global Indus. Techs., Inc.*, 645 F.3d at 210 (quoting *Whitmore* v. *Arkansas*, 495 U.S. 149, 155 (1990)); *see also Roman Catholic Diocese of Syracuse*, 665 B.R. at 878-79 ("Under the case or controversy requirement of Article III of the Constitution, a party 'must have a personal stake in the outcome of the controversy' to have standing.") (quoting *In re SVB Fin. Grp.*, 662 B.R. 53, 63 (Bankr. S.D.N.Y. 2024)).  "Additionally, the party must establish that the injury 'fairly can be traced to the

challenged action and is likely to be redressed by a favorable decision.'" *Global Indus. Techs., Inc.*, 645 F.3d at 210 (quoting *Whitmore*, 495 U.S. at 155). "Prudential standing merely requires the party raise its own legal rights and cannot rest their claim on the legal rights or interests of third parties." *In re Dioceses of Camden, N.J.*, 2022 WL 3369087, at *2. Both tests are applied "on an issue-by-issue basis." *Id.*

15.     The Insurers have not shown—and cannot show—that they have a "personal stake" in the remaining disclosure issues. Nor are they raising their own legal rights or interests. The purpose of a disclosure statement is to provide adequate information to *holders of claims* to vote on a plan. *See* 11 U.S.C. § 1125(b). But the Insurers are not creditors of the Debtor; they will not be solicited with the Amended Disclosure Statement; they are not entitled to vote on the Plan; they will not receive recoveries under the Plan; they will not be required to execute a claimant release form in connection with any distributions from a Settlement Trust (because they will not receive any distributions); and they do not hold any claims against the Debtor or a Released Party that will be released under the Plan. They are therefore not impacted by the disclosure on these *or any other issue* in the Amended Disclosure Statement. *See In re Dioceses of Camden, N.J.*, 2022 WL 3369087, at *5 (finding that insurers had "not demonstrated a legally protected interest related to the proposed injunction and releases under the Plan, or the solicitation and voting procedures of the Plan" because they "are not voting creditors, and their claims are not impaired and therefore have no legally protected interest in the classification, treatment, or solicitation of other creditors"). They simply do not have standing on disclosure statement matters.

16.     The Insurers would lack standing even under the more relaxed, non-binding analysis recently articulated by Judge Goldblatt in *In re AIO U.S., Inc. See* 2025 WL 1617477 (Bankr. D. Del. June 6, 2025). In that case, the court found the following:

(a) in a close case, one should err on the side of considering an objection on the merits as opposed to disregarding it on the ground that the objector lacks standing, and employ other tools as appropriate to guard against the potential misuse of the procedural right to be heard for tactical purposes;

(b) where the objector truly is a stranger to the issue and appears to be presenting the objection for strategic advantage, a court may treat the issue as if the relief sought is uncontested (though even then, the court need not act as a rubber stamp); and

(c) on matters that bear on the fundamental fairness or integrity of the bankruptcy process, courts should address the merits without regard to whether the issue presented by a "party in interest" with standing to raise the objection.

*Id.* at *11.

17.    Critically, *AIO* recognized that even insurers that have section 1109(b) standing do not have an "unlimited right to be heard on every and any issue that might arise in a[n] . . . insured's bankruptcy case." *In re AIO U.S., Inc.*, 2025 WL 1617477, at *1. To the contrary, courts still face the fundamental question as to "how to calibrate an insurer's right to participate and be heard in its insured's bankruptcy case" in a way that will allow the insurer to protect its legitimate interests, "without permitting an insurer . . . to weaponize its procedural rights so that they can be used for tactical advantage in other disputes." *Id.* *AIO* also confirmed that section 1109(b) party-in-interest objectors are limited to asserting *their own rights only*, and may not assert the rights of others. *Id.* at *9.

18.    We are squarely in scenario (b), where the Insurers are "truly a stranger to the issue and appear[] to be presenting the objection for strategic advantage." *Id.* at *11. It is not a "close case" as to whether the Insurers lack a legitimate interest in the objections they are pressing. At the risk of repetition: the Insurers are not creditors. Their view on the adequacy of the disclosure regarding issues that impact *creditors* is not relevant. The "strategic advantage[s]" the Insurers likely seek include but are not limited to:  delaying solicitation in order to delay

payment on claims;[4] burdening the Debtor, other Plan proponents and their professionals with baseless and unnecessary objections in order to drain resources away from discovery matters so that the Insurers can seek to delay the confirmation timeline; demanding more information to get ahead of discovery in post-confirmation coverage litigation; and boxing the Debtor and other Plan proponents into positions on the value of AFFF Claims to prejudice them in post-confirmation coverage litigation.  None of these is a valid basis to grant the Insurers standing to object to matters that are irrelevant to them.  All of the Insurers' Objections to the adequacy of the Amended Disclosure Statement should be denied on this basis alone.

## III.    The Court Should Overrule the Remaining Objections.

19.    To the extent the Court considers the remaining objections raised by the Insurers, it should overrule their objections as well as those of the Objecting States.

A.    <u>The Amended Disclosure Statement Provides as Much Disclosure as Reasonably Possible Regarding the Scope of the Releases</u>.

20.    In response to the Ruling, the Debtor added significant additional disclosure regarding the scope of the releases and the definition of "Estate Causes of Action."  (*See* Amended Disclosure Statement at 6-9.)  As explained above, the Debtor endeavored to comply with the Court's Ruling by adding numerous examples of the types of causes of action that would be released under the Plan.  (*See id.*)  The Debtor explained that complaints filed against Released Parties in the AFFF MDL generally name numerous defendants and assert claims against the defendants collectively.  (*See id.* at 8-9.)  The Debtor further explained that there has not been full

---

[4]    This tactic is not novel.  *See, e.g.*, *In re AIO US, Inc.*, No. 24-11836, 2025 WL 1617477, at *11 (Bankr. D. Del. June 6, 2025) (denying insurers' request to delay the confirmation hearing for six months because the insurers failed to identify "any confirmation issue that they seek to raise that will require such an extensive delay in the schedule").  Indeed, many of the objecting insurers in this case have implemented similar delay tactics in other chapter 11 cases such as *Boy Scouts of America*, bogging the estate down in lengthy and costly litigation in defending against objections to a Plan that was ultimately confirmed and affirmed twice on appeal.

discovery with respect to claims asserted against the Released Parties in the AFFF MDL.  (*See id.*)
The Debtor disclosed that, for these reasons, the Debtor cannot include a list of each specific claim
asserted by a third party and whether or not it would be released under the Plan in the Disclosure
Statement.  (*See id.*)

21.    The Objections have provided an opportunity for the Debtor to further
explain why this is not possible, using the complaints filed by the Objecting States as examples.
Indeed, not a single one of the Objecting States has filed a complaint in the AFFF MDL that pleads
claims against the Released Parties in a way that would allow the Debtor to classify those claims
into a "released" or "not released" schedule.  The Objecting States' (and other AFFF MDL
plaintiffs') complaints list various causes of action relating to alleged damage caused by AFFF or
its components.  The complaints follow the same pattern:  they name myriad defendants and then
plead all causes of action against all defendants, with very little specific conduct alleged against
any particular defendant.[5]

22.    Take Maine, for example.  Its complaint names the following entities as
defendants:  3M Company, Buckeye Fire Equipment Company, Carrier Fire & Security Americas
LLC, Carrier Global Corporation, Chemguard, Inc., Corteva, Inc., Dow Inc., DuPont de Nemours,
Inc., EIDP, Inc., Fire Services Plus, Inc., Kidde-Fenwal, Inc., National Foam, Inc., Perimeter
Solutions LP, RTX Corporation, The Chemours Company, The Chemours Company FC, LLC,
and Tyco Fire Products L.P.

---

[5]    There are few exceptions to this approach, including the pleading of theories of liability relating to specific
defendants not relevant here and as otherwise discussed in this Response.  In particular, California (and certain
other states that are not Objecting States) moved to amend their complaints to assert certain claims that seek to
impose the Debtor's liabilities on alleged successor[s] or are based on the assumption of the Debtor's liabilities
or the doctrines of alter ego or veil piercing involving alter egos of the Debtor or the piercing of the Debtor's
corporate veil.  Accordingly, to the extent that the complaints *do* plead theories of liability with respect to the
Debtor's affiliates, those theories facially amount to derivative claims that belong to the Debtor's Estate.

23.     Maine pleads its conclusory allegations against *all* defendants, without pleading any specific conduct on the part of either the Debtor or any of the Released Parties.  For example, Maine states that "[d]espite their knowledge that PFAS posed environmental and human health risks, and despite the availability of reasonable alternatives, Defendants failed to warn customers, users, the public, or the State, and failed to take any other appropriate precautionary measures to prevent or mitigate such contamination.  Instead, Defendants improperly marketed and promoted AFFF containing PFAS and PFAS for use in AFFF (including the Six PFAS) for uses and applications that would inevitably cause harmful environmental contamination, and provided warnings and instructions for use and disposal that were inadequate to protect against the risk to public health and the environment created by the ordinary use and disposal of such products." (*See* Maine Complaint (Exhibit 1) at ¶ 198.)

24.     This allegation does not specify who (allegedly) had such knowledge or (allegedly) failed to warn third parties, making it impossible to determine whether Maine is alleging that the Released Parties are liable based on their own conduct or whether the Released Parties are liable based on conduct of the Debtor—the key question in determining whether claims are released.  In fact, the only remotely specific conduct alleged against a Released Party is a recitation of corporate history transactions and vague allegations of control over the Debtor and/or National Foam.  (Ex. 1 (Maine Complaint) at ¶¶ 334-56.)  And the Amended Disclosure Statement is clear that claims against a Released Party based on theories of liability dependent on these types of facts (*e.g.*, veil-piercing/alter ego) are released.

25.     The counts that Maine recites in its complaint similarly offer no guidance relevant to the task of defining whether a claim is an Estate Cause of Action or not.  For example, Maine's "strict liability for design defect and/or defective product" states in part:

    i.  Defendants during the relevant time period were designers, manufacturers, marketers, distributors, and/or sellers of AFFF containing PFAS and/or PFAS to be used in AFFF, including AFFF-related PFOS, PFOA, PFNA, PFHxS, PFHpA, and/or PFDA.

    ii.  As designers, manufacturers, marketers, distributors, and/or sellers of AFFF containing PFAS, and/or PFAS to be used in AFFF, Defendants owed a duty to all persons whom Defendants' AFFF containing PFAS and/or PFAS to be used in AFFF might foreseeably harm, including the State and its citizens, not to market any product which is unreasonably dangerous for its intended and foreseeable uses.

(Ex. 1 (Maine Complaint) at ¶¶ 393-94.)

      26.    Once again, Maine is silent in its complaint as to whether or not it is asserting that a Released Party, such as Carrier, is liable because it was itself a seller of AFFF that breached its duty, or whether it is liable because the Debtor was a seller of AFFF that breached its duty.  The VT and ME Objection asserts, without providing further clarity, that Maine believes it is both.  (*See* VT and ME Obj. at ¶ 13 (stating that Maine's complaint "asserts direct and indirect claims against Carrier").)  If that is the case, to schedule this count, the Debtor would need to put it on both the "released" and "not released" schedule, and state that it is not released to the extent it is brought against Carrier based on Carrier's own conduct and breach of a duty owed to Maine, but is released to the extent it is brought against Carrier based on the Debtor's liability.  Such a schedule would offer no further meaningful disclosure beyond what is already provided in the Amended Disclosure Statement and the definitions included in the Plan.

      27.    That count is representative of Maine's other counts, and Maine's complaint is representative of the complaints of the other Objecting States (which are, in turn, representative of the complaints in the AFFF MDL more generally).  That is to say, the other Objecting States also plead facts against every defendant without specifying who is alleged to have done what.  (*See* Appendix A hereto for selected excerpts.)  Apart from limited exceptions that attempt to plead what are clearly derivative claims owned by the Debtor's Estate (*see*, e.g., California Complaint (Exhibit 3) at ¶¶ 436-41), these pleadings are insufficient for the Debtor to be able to classify

causes of action as "released" or "not released."  The Debtor simply does not know the basis for these claims because plaintiffs have not pled them.

28.    As explained above, scheduling each individual count (of which there are many thousands in the AFFF MDL complaints in the aggregate) would thus require the Debtor to list nearly all of them twice—once on each schedule—and explain that such count would be released under the Plan to the extent it is an Estate Cause of Action, and not released under the Plan to the extent that it is not.  That is the same information that the Debtor has now provided much more simply and efficiently in additional language added to the Amended Disclosure Statement.  In other words, if such a schedule *could* be created, creditors would end up with no more information than is already included in the Amended Disclosure Statement, but just a lot more words and paper.  What the Debtor can disclose, and has disclosed, is that if claims against a Released Party are based on successor liability, veil-piercing, and alter-ego—claims that are unquestionably property of the Debtor's estate under binding Third Circuit law as recently affirmed in *Whittaker*—they are clearly released under the Plan.[6]

B.    The Debtor Has Provided Adequate Disclosure Regarding Creditor Recoveries.

29.    As an initial matter, the ***only*** party that has objected to the adequacy of the Debtor's disclosure regarding creditor recoveries are the Insurers—parties that have not and will not receive any recoveries under the Plan (and whose entire goal is to delay and minimize such recoveries), will not be solicited with the Amended Disclosure Statement, and are not entitled to vote on the Plan.  To the extent the Court declines to overrule this objection on standing alone, the Insurers' view of the adequacy of the Debtor's disclosure on this point should be given no weight

---

[6]    Delaware has not in fact filed any claims against the Debtor or any Released Party.  The Debtor obviously cannot determine what hypothetical claims Delaware might bring and whether they will be released under the Plan

when compared to the fact that, as disclosed and as directed by the Court, the Debtor developed this disclosure *with* the Committee and MDL PEC Co-Leads, and that neither the Ad Hoc Committee of Governmental Claimants nor any of its members (or any state, at all) has objected on this basis. In other words, no party potentially receiving recoveries under the Plan has taken issue with the disclosure regarding those potential recoveries.

30.    To the extent the Insurers' position on the Debtor's disclosure regarding anticipated creditor recoveries deserves any consideration (it does not), it is wrong. *First*, it is entirely disingenuous. The Insurers have no duty to or concern for creditors: they are draining Estate resources that would otherwise go to the Debtor's creditors with duplicative and burdensome discovery (among other things); they are attempting to delay solicitation of a Plan that has the support of nearly all Estate fiduciaries and prolong this Chapter 11 Case to the detriment of creditors; and they have denied coverage of the very claims the creditors seek to prosecute. Contrary to their feigned concern for adequate information, the Insurers' only goal is to further delay the solicitation process and eventual payment on claims.

31.    *Second*, the Insurers' Objection is a blatant attempt to circumvent the negotiated, agreed stay of the coverage action. The Insurers' demand for more information on the asserted claims (which, again, is not propounded by a single *actual* creditor) improperly seeks to obtain discovery via public disclosure into the Debtor's assessment of the value of claims—at a time such assessment is not at issue—to be used against the Primary AFFF Settlement Trust in the forthcoming coverage dispute. It is improper.

32.    *Third*, the Insurers' Objection takes out of context what the Court directed the Debtor to include in the Amended Disclosure Statement. At the Disclosure Statement Hearing, the Court directed the Debtor to include the information that is available on the asserted claims in

the AFFF MDL.  (June 4, 2025 Hr'g Tr. 67:9-16.)  The Court further stated that "there should be something, even if it says, we can't tell you and here's why we can't tell you the range that you're going to receive, but here's some information we have."  (June 4, 2025 Hr'g Tr. 93:25-94:3.)  The Amended Disclosure Statement does this, and includes a range of estimated recoveries for all Classes entitled to vote on the Plan.  (*See* Amended Disclosure Statement at 10-12.)  It also discloses that the estimates are based on public information currently available and that the ultimate recovery percentages may vary and why.  (*See id.*)  That is consistent with the Court's directive, sufficient for creditors to make an informed vote on the Plan, and should be approved.

<b>C.</b>  <u>The Amended Disclosure Statement Includes Adequate Disclosure<br>Regarding the Anticipated Claimant Release Form.</u>

33.     In response to the Court's directive at the Disclosure Statement Hearing to include further disclosure regarding the claimant release form that it is anticipated that claimants will need to execute in connection with receiving a distribution from a Settlement Trust, the Amended Disclosure Statement discloses that claimants may be required to execute a release "concerning post-confirmation matters of the Primary AFFF Settlement Trust, the Primary AFFF Settlement Trustee, the Delaware Trustee of the Primary AFFF Settlement Trust, the Claims Administrator of the Primary AFFF Settlement Trust, the claims processor of the Primary AFFF Settlement Trust, the members of the TAC and . . . the FCR . . . and certain related parties."  (Amended Disclosure Statement at 55.)  The Debtor provided the same disclosure regarding the Sovereign State AFFF Settlement Trust.

34.     Similar to the creditor recovery objection, the Insurers are the only party who has raised any issue with this disclosure.  But Insurers will not be receiving, executing or providing the release with respect to which they argue more information should be provided. Claimants—those who *will* be the ones executing and providing the releases—have not objected

-17-

on this basis and clearly believe that the information provided in the Amended Disclosure Statement and TDPs is adequate for them to vote on the Plan. The Insurers' view on the adequacy of disclosure regarding matters that do not impact them in any way should be given no weight (if the Court declines to overrule it on standing alone).

35.     In any event, the Insurers are wrong on this point as well. The Court directed the Debtor to add "who" would be getting the release into the Amended Disclosure Statement. (June 4, 2025 Hr'g Tr. 95:5-6.) That is what the Debtor did. The Debtor did not "fail to follow the Court's instructions," as the Insurers contend. It is also obvious from the additional disclosure that the Debtor is not "attempt[ing] to maintain an impermissible third-party release through the TDPs." (Insurers Obj. at 4.) To the contrary, the added language is clear that the release will relate only to "post-confirmation matters" and that the parties identified are not in any way related to the "Released Parties" under the Plan. (Amended Disclosure Statement at 55.)

36.     Nevertheless, to eliminate any argument by the Insurers that the Amended Disclosure Statement inadequately discloses the potential recipients of a release by claimants in connection with their distributions, the Debtor added further disclosure regarding the related parties referenced and filed a Plan Supplement containing the current versions of the release forms concurrently herewith.

## IV.    The Debtor's Proposed Schedule Provides Sufficient Time Before Confirmation.

37.     As is required, the Debtor put forward an updated confirmation timeline in the Revised Proposed Disclosure Statement Order for the Court's and parties' consideration. This schedule reflected the same cadence as set forth in prior schedules proposed by the Debtor but was updated to reflect the passage of time. The Debtor submits that this cadence is appropriate: it provides nearly five months between the start of solicitation and the Confirmation Hearing, which is more than adequate time to complete discovery and for creditors to make a decision on whether

to vote to approve or reject the Plan, and to object to confirmation if they wish to do so.  Below, the Debtor has proposed a further revised schedule reflecting the further passage of time prior to the Court considering the Amended Disclosure Statement, but continuing to follow the previously proposed cadence which the Debtor continues to submit is appropriate under the circumstances. If anything, the fact that discovery has continued apace since the Disclosure Statement Hearing suggests the schedule should be shortened.  Nonetheless, the Debtor has maintained the cadence and overall timing between the start of solicitation and the Confirmation Hearing.

38.    While the Revised Proposed Disclosure Statement Order need only include dates related to solicitation and confirmation, the Debtor proposes the following additional discovery-related dates to organize discovery in this Chapter 11 Case and provide clarity to all participating parties:

| Event | Prior Proposed Schedule | New Proposed Schedule |
|---|---|---|
| Voting Record Date | June 4, 2025 | June 4, 2025 |
| Deadline for additional written/document discovery requests | | October 10, 2025 |
| Solicitation Directive Mailing Deadline | August 25, 2025 | October 15, 2025 |
| Substantial completion of document production | | November 5, 2025 |
| Solicitation Directive Response Deadline | October 6, 2025 | November 26, 2025 |
| Completion of all fact discovery, including fact depositions | | December 10, 2025 |
| Solicitation Mailing Deadline | October 13, 2025 | December 8, 2025 |
| Exchange of affirmative expert reports | | December 17, 2025 |
| Publication Deadline | October 13, 2025 | December 8, 2025 |
| Exchange of rebuttal expert reports | | January 12, 2026 |
| Plan Supplement Filing Deadline | November 17, 2025 | January 12, 2026 |
| Completion of expert depositions | | January 29, 2026 |
| Voting Deadline | December 15, 2025 at 5:00 p.m. (prevailing Eastern Time) | February 9, 2026 at 5:00 p.m. (prevailing Eastern Time) |

| Event | Prior Proposed Schedule | New Proposed Schedule |
|---|---|---|
| Confirmation Objection Deadline | December 15, 2025 at 5:00 p.m. (prevailing Eastern Time) | February 9, 2026 at 4:00 p.m. (prevailing Eastern Time) |
| Deadline to File Voting Report | December 31, 2025 | February 25, 2026 |
| Confirmation Brief, Proposed Confirmation Order and Confirmation Objection Reply Filing Deadline | January 14, 2026 | March 11, 2026 |
| Proposed Confirmation Hearing | January 21, 2026 | March 23, 2026 |

39.     The Debtor submits that the proposed timeline, including the dates proposed above with respect to discovery, are appropriate and should be approved by the Court.  The parties have been actively engaged in documentary and written discovery for several months, and the Debtor has been working diligently to respond to the Insurers' numerous and burdensome discovery requests since the service of their initial document requests.  The Insurers have had the opportunity to and in fact have used the time prior to and following the Disclosure Statement Hearing to serve voluminous requests on the Debtor.  Specifically:

- Certain Insurers' Second Set of Plan-Related Requests for Production to KFI Wind-Down Corp., dated February 21, 2025 (30 requests for production)

- Certain Insurers' Third Set of Plan-Related Requests for Production to KFI Wind-Down Corp., dated February 21, 2025 (22 requests for production, plus 27 sub-requests)

- ACFP Insurers' First Set of Plan-Related Requests for Admission to KFI Wind-Down Corp., dated June 26, 2025 (8 requests for admission)

- ACFP Insurers' First Set of Plan-Related Interrogatories to KFI Wind-Down Corp., dated June 26, 2025 (6 interrogatories)

- ACFP Insurers' First Set of Plan-Related Requests for Production to KFI Wind-Down Corp., dated June 26, 2025 (1 request for production)

- ACFP Insurers' Second Set of Plan-Related Interrogatories to KFI Wind-Down Corp., dated August 1, 2025 (3 interrogatories)

- Zurich American Insurance Company's First Set of Plan-Related Interrogatories to Debtor, dated August 11, 2025 (21 interrogatories, plus 38 sub-parts)

- Travelers Casualty and Surety Company's (f/k/a the Aetna Casualty and Surety Company) First Set of Plan-Related Interrogatories to Debtor, dated August 12, 2025 (8 interrogatories, plus 6 sub-parts)

40.     Together, the Insurers have served on the Debtor alone 53 requests for production, 8 requests for admission, and 38 interrogatories (far more than the rules permit)—not counting sub-parts.  And they have brought and lost one motion to compel to date.

41.     The Insurers have not stopped with the Debtor.  They have also served substantially duplicative discovery requests on other parties as follows:

- Certain Insurers' First Set of Plan-Related Requests for Production to the Official Committee of Unsecured Creditors, dated July 2, 2025

- ACFP Insurers' First Set of Plan-Related Interrogatories to Carrier Parties, dated August 1, 2025

- ACFP Insurers' First Set of Plan-Related Interrogatories to the Official Committee of Unsecured Creditors, dated August 1, 2025

- ACFP Insurers' First Set of Plan-Related Interrogatories to the AD Hoc Committee of Governmental Claimants, dated August 1, 2025

- ACFP Insurers' First Set of Plan-Related Interrogatories to the Official AFFF MDL Plaintiffs' Executive Committee, dated August 1, 2025

- ACFP Insurers' First Set of Plan-Related Interrogatories to the Future Claimants' Representative, dated August 1, 2025

- Certain Insurers' First Set of Plan-Related Requests for Production to the Official AFFF MDL Plaintiffs' Executive Committee, dated August 7, 2025

- Certain Insurers' First Request for Production of Documents to RTX Corporation, dated August 8, 2025

- Certain Insurers' First Request for Production of Documents to Carrier Global Corporation, dated August 8, 2025

42.     Given the advanced stage of discovery at this point, the proposed schedule allows ample time for its completion, including if motion practice is required with respect to any requests as the Insurers contend.   The proposed Confirmation Timeline should therefore be approved.

## Conclusion

43.     For the reasons state above, the Court should overrule the Objections and approve the Amended Disclosure Statement.

Dated: October 1, 2025
Wilmington, Delaware

**MORRIS NICHOLS ARSHT & TUNNELL LLP**

/s/ *Casey B. Sawyer*

Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Daniel B. Butz (No. 4227)
Tamara K. Mann (No. 5643)
Casey B. Sawyer (No. 7260)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
dabbott@morrisnichols.com
aremming@morrisnichols.com
dbutz@morrisnichols.com
tmann@morrisnichols.com
csawyer@morrisnichols.com

-and-

**SULLIVAN & CROMWELL LLP**

Andrew G. Dietderich (admitted pro hac vice)
Brian D. Glueckstein (admitted pro hac vice)
Justin J. DeCamp (admitted pro hac vice)
Benjamin B. Beller (admitted pro hac vice)
Julie G. Kapoor (admitted pro hac vice)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
        gluecksteinb@sullcrom.com
        decampj@sullcrom.com
        bellerb@sullcrom.com
        kapoorj@sullcrom.com

*Counsel for the Debtor and Debtor-in-Possession*