IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KIDDE-FENWAL, INC.,[1] | Case No. 23-10638 (LSS) |
| Debtor. | (Jointly Administered) |

**THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS BRIEF IN SUPPORT OF APPROVAL OF THE
DISCLOSURE STATEMENT FOR DEBTOR'S FIFTH AMENDED PLAN
OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

The Official Committee of Unsecured Creditors (the "UCC") in the above captioned case, by and through its counsel, hereby submits this brief in support of the approval of the *Disclosure Statement for Debtor's Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* (Dkt. No. 2412-1) (the "Disclosure Statement") and respectfully states as follows.[2] For the reasons stated herein, the UCC respectfully requests that this Court approve the Disclosure Statement.

**INTRODUCTION**

1. On June 16, 2025, this Court entered its ruling on the Disclosure Statement (Dkt. No. 2249) (the "DS Op."). "[T]o better frame the issues at confirmation," the Court directed the Debtor to "work with the plan supporters (and others, to the extent necessary) to create a schedule of the Released Claims, Independent AFFF Causes of Action and Sovereign State Retained Causes

---

[1] The last four digits of Kidde-Fenwal, Inc.'s tax identification number are 5282. The Debtor's corporate headquarters is located at 400 Main Street, Ashland, Massachusetts 01721.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Debtor's *Fifth Amended Plan of Liquidation under Chapter 11 of the Bankruptcy Code* (Dkt. No. 2411) (the "Plan").

of Action." *Id.* at 6.  These terms, as defined in the Plan, describe the scope of the AFFF claims that are and are not being released under the Plan.

2. The Debtor, through the updated Disclosure Statement, has provided additional disclosure on these points.  *See* Disclosure Statement at § I.  Various objecting parties (collectively, the "<u>Objectors</u>") contend that the Debtor's disclosures are inadequate and not responsive to the Court's request because the Debtor has not broken down by count each cause of action contained in the MDL complaints that are being released under the Settlement.  *See*, *e.g.*, Dkt. Nos. 2416 at ¶ 5 (Maine & Vermont); 2424 at ¶ 2 (California, Colorado, Connecticut, Delaware, and New York, and the District of Columbia); and 2429 at ¶ 1 (Certain Insurers).

3. But the counts in the existing MDL complaints are not co-terminus with the definitions of Independent AFFF Causes of Action or Estate Causes of Action.  Likewise, the definitions of Independent AFFF Causes of Action and Estate Causes of Action are not based on the counts in the existing MDL complaints.  Rather, those definitions are based on *In re Emoral, Inc.*, 740 F.3d 875 (3d Cir. 2014), as recently affirmed by *In re Whittaker Clark & Daniels Inc.*, --- F.4th ---, 2025 WL 2611753 (3d Cir. 2025).

4. As this Court observed, "a central feature of the Plan is [the] Debtor's settlement with its parent, Carrier Global Corporation."  DS Op. at 1.  It follows that for the Court to approve the Disclosure Statement, it must contain adequate information regarding the settlement between the Estate and Carrier (the "<u>Settlement</u>"), which the UCC contends it does.

5. The UCC supports the Disclosure Statement because it has adequate information as required under 11 U.S.C. §1125(b).  As ruled by this Court, the issues raised by the Objectors, including whether the Settlement should be approved, are to be decided at confirmation.  For these

reasons, the UCC urges this Court to approve the Disclosure Statement so this case can move toward resolution.

## ARGUMENT

**I.      Legal Standard Applicable to the Disclosure Statement.**

6.      The Court directed the Debtor to provide additional disclosure regarding the Settlement, specifically what claims are being released and what claims are not being released. DS Op. at 6. Contrary to the objections lodged by the Objectors, the Debtor has complied with this request. Therefore, the Debtor has satisfied section 1125(b).

7.      Section 1125(b) requires a plan proponent to furnish creditors with "a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information" to solicit acceptances or rejections of a proposed chapter 11 plan. 11 U.S.C. § 1125(b). "Adequate information" is defined in the Code as: "Information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan[.]" *Id.* at § 1125(a)(1).

8.      The Third Circuit has emphasized the importance of adequate disclosure, given the reliance creditors and Bankruptcy Courts place on disclosure statements.[3] A disclosure statement must contain, at a minimum, "adequate information" concerning "all those factors presently known to the plan proponent that bear upon the success or failure of the proposals contained in the plan."[4]

---

[3] *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988); *see also Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996).

[4] *See In re Beltrami Enters., Inc.*, 191 B.R. 303, 304 (Bankr. M.D. Pa. 1995); *see also Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988); *Cohen v. TIC Fin. Sys. (In re Ampace Corp.)*, 279 B.R. 145, 157 n.26 (Bankr. D. Del. 2002); *In re Zenith Elecs. Corp.*, 241 B.R. 92, 98 (Bankr. D. Del. 1999); *In re Civitella*, 14 B.R. 151, 152 (Bankr. E.D. Pa. 1981).

9. As the legislative history instructs, "[p]recisely what constitutes adequate information in any particular instance will develop on a case-by-case basis. Courts will take a practical approach as to what is necessary under the circumstances of each case." H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 409 (1977).

10. Here, the circumstances of this case require adequate disclosure regarding the Settlement. The Objectors assert that the Debtor failed to comply with the Court's directive because the Disclosure Statement does not include a "breakdown, by count, of each cause of action contained in complaints that were filed prepetition against Carrier, RTX, Related Parties and any other Released Party under the Plan." DS Op. at 6. The operative definition of "Released Claims," "Independent AFFF Causes of Action," and "Sovereign State Retained Causes of Action" operate on a categorical basis, as reflected in Article I of the Disclosure Statement.

11. As the Debtor states in the Disclosure Statement, it is "not possible at present" for the Debtor "to determine" or describe the specific Independent AFFF Causes of Action that plaintiffs in the MDL will assert against the Released Parties. Disclosure Statement at § I. Therefore, attempting to do so would require conjecture and would not provide meaningful information to those voting on the Plan.

12. What the Debtor does state in the Disclosure Statement is accurate: "[C]laims that could be asserted by a claimant against a non-Debtor party based on the non-Debtor party's own conduct and breach of duty (*i.e.*, a duty owed to the claimant and not owed to the Debtor) are not considered Estate Causes of Action." Disclosure Statement at § I. This statement aligns with the definition of "Independent AFFF Cause of Action" in the Plan and is consistent with Third Circuit case law.

13. The Objectors contend that the Debtor should sort through the MDL complaints and try to create an exhaustive list of the existing counts set forth in every complaint that will or will not be released under the Plan. Dkt. No. 2429 at ¶ 2. Even if this could be done, it would be unhelpful.

14. **First**, many MDL complaints assert counts against numerous AFFF/PFAS-related defendants—*e.g.*, 3M Company, Buckeye Fire Equipment Company, Carrier Fire & Security Americas LLC, Carrier Global Corporation, Chemguard, Inc., Corteva, Inc., Dow Inc., DuPont de Nemours, Inc., EIDP, Inc., Fire Services Plus, Inc., Kidde-Fenwal, Inc., National Foam, Inc., Perimeter Solutions LP, RTX Corporation, The Chemours Company, The Chemours Company FC, LLC, and Tyco Fire Products L.P.—without necessarily specifying as to whether those counts are asserted against Released Parties based on their own conduct and breach of duty and, therefore, fall within the definition of Independent AFFF Cause of Action. The MDL complaints were not drafted with an eye toward the possibility that the Debtor would file for bankruptcy and then seek to settle estate claims. The MDL complaints simply do not lend themselves to this exercise. Moreover, except for limited discovery conducted in the water provider bellwether process prior to KFI filing this bankruptcy, the claims asserted against the Released Parties in the MDL have not moved forward given both the bankruptcy stays issued by this Court and Judge Gergel's bellwether staging of claims in the MDL, which has not permitted full discovery on all of the claims, including those that may be Independent AFFF Causes of Action, asserted against the Released Parties. Thus, the extent to which the non-Debtor Released Parties may be subject to Independent AFFF Causes of Action has not been fully developed in the MDL.

15. **Second**, prior to the Petition Date, when the MDL complaints were filed, the knowledge base was more limited on topics like Carrier Global Corporation's liability for AFFF

5

Claims as a successor to the Debtor under the 2020 Separation Agreement, or that Kidde plc (n/k/a Kidde Limited) could be held liable for AFFF Claims as a successor to Kidde Fire Fighting, Inc. (f/k/a National Foam, Inc.) under the 2000 Demerger Agreement. The UCC, through its diligence in this case, pieced together these successor liability theories based on the Debtor's corporate history, which is discussed in Section II.A of the Disclosure Statement as well as the redacted version of the Standing Motion filed on November 30, 2023. *See* Dkt. No. 678. Unlike here, since the Petition Date, no discovery has taken place in the MDL by the MDL claimants against the Released Parties pursuant to Judge Gergel's orders directing the MDL plaintiffs to focus on other claims against other defendants while the claims against the Released Parties have been put on hold in the MDL. Counts in the existing MDL complaints do not include all the factual allegations that can be made today, nor were they drafted to align with the Third Circuit's definition of estate cause of action.

16. **Third**, the UCC expects that most plaintiffs will amend their complaints, once permitted by Judge Gergel to do so, to assert counts that align with the Settlement after the Plan is confirmed. Airport and water provider claims that fall within the definition of "Independent AFFF Cause of Action" and outside the definition of "Estate Cause of Action" are part of the $190 million settlement in the MDL.

17. However, to date, there is no MDL settlement for claims other than airport and water providers that fall within the definition of "Independent AFFF Causes of Action." Absent a settlement in the MDL, the UCC expects that plaintiffs who can assert Independent AFFF Causes of Action will do so. But the Debtor cannot sort through amended complaints that do not yet exist. Nor would it be fair to require the Debtor to offer legal advice to plaintiffs as to how they could amend their complaints *post*-confirmation to include Independent AFFF Causes of Action.

18. The question before this Court is whether the Disclosure Statement satisfies the requirements of section 1125(b). The UCC submits that it does. The UCC believes this Court will be in a position at the confirmation hearing, after claimant support for the Settlement has been measured through the solicitation process, to approve the Settlement and confirm the Plan. To move forward with this case, the Court needs to approve the Disclosure Statement and permit the record continue to develop in support of confirmation.

## CONCLUSION

**WHEREFORE**, based on the foregoing, the UCC respectfully requests that this Court approve the Disclosure Statement and allow the Debtor to solicit votes to accept or reject the Plan.

Dated: October 1, 2025
      Wilmington, Delaware

*/s/ Daniel K. Hogan*
Daniel K. Hogan, Esquire (DE #2814)
Garvan F. McDaniel, Esquire (DE # 4167)
Daniel C. Kerrick, Esquire (DE # 5027)
HOGAN♦MCDANIEL
1311 Delaware Avenue
Wilmington, DE 19806
(302) 656-7540; (302) 656-7599 (f)
dkhogan@dkhogan.com
gmcdaniel@dkhogan.com
dckerrick@dkhogan.com
*Local Counsel to the Committee*

Sander L. Esserman, Esquire
Peter C. D'Apice, Esquire
Cliff I. Taylor, Esquire
STUTZMAN, BROMBERG, ESSERMAN,
& PLIFKA, A Professional Corporation
2323 Bryan Street, Ste. 2200
Dallas, TX 75201
(214) 969-4900; (214) 969-4999 (f)
esserman@sbep-law.com
dapice@sbep-law.com
taylor@sbep-law.com
*Co-Lead Counsel to the Committee*

-and-

David J. Molton, Esquire
Jeffrey L. Jonas, Esquire
Sigmund S. Wissner-Gross, Esquire
D. Cameron Moxley, Esquire
Kenneth Aulet, Esquire
Gerard T. Cicero, Esquire
Susan Sieger-Grimm, Esquire
BROWN RUDNICK LLP
7 Times Square

Cathrine M. Castaldi, Esquire
BROWN RUDNICK LLP
2211 Michelson Drive, 7th Floor
Irvine, CA 92612
(949) 752-7100; (949) 525-1514 (f)
ccastaldi@brownrudnick.com
*Co-Lead Counsel to the Committee*

New York, NY 10036
(212) 209-4800; (212) 209-4801 (f)
dmolton@brownrudnick.com
jjonas@brownrudnick.com
swissner-gross@brownrudnick.com
dmoxley@brownrudnick.com
kaulet@brownrudnick.com
gcicero@brownrudnick.com
ssieger-grimm@brownrudnick.com
*Co-Lead Counsel to the Committee*

-and-

Eric R. Goodman, Esquire
BROWN RUDNICK LLP
601 Thirteenth Street NW, Ste. 600
Washington, D.C. 20005
(202) 536-1700; (202) 536-1701 (f)
egoodman@brownrudnick.com
*Co-Lead Counsel to the Committee*

-and-

Kami E. Quinn, Esquire
Emily Grim, Esquire
GILBERT LLP
700 Pennsylvania Avenue, SE, Suite 400
Washington, DC  20003
(202) 772-2336; (2020) 772-2337 (f)
quinnk@gilbertlegal.com
grime@gilbertlegal.com
*Insurance Counsel to the Committee*