## <u>Exhibit A</u>

**Schedule II to the Primary Trust Distribution Procedures**

## Schedule II – A

**KFI Primary AFFF Trust Release and
Indemnity Agreement for Individuals and Their Legal Representatives**

# KFI PRIMARY AFFF TRUST
## RELEASE AND INDEMNITY AGREEMENT
## FOR INDIVIDUALS AND THEIR LEGAL REPRESENTATIVES[1]

**NOTICE: THIS IS A BINDING DOCUMENT THAT AFFECTS YOUR LEGAL RIGHTS. PLEASE CONSULT YOUR ATTORNEY IN CONNECTION WITH EXECUTING THIS DOCUMENT. IF YOU DO NOT PRESENTLY HAVE AN ATTORNEY, YOU MAY WISH TO CONSIDER CONSULTING ONE.**

All capitalized terms not defined in this release and indemnity agreement (this "**Release and Indemnity Agreement**") shall have the respective meanings ascribed to them in either (i) *the Debtor's [Fifth] Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [Docket No. [•]], as the same may be amended or modified from time to time (the "**Plan**") filed in Bankruptcy Case No. 23-10638 (LSS) before the United States Bankruptcy Court for the District of Delaware, confirmed by order on [•] [Docket No. [•]], (ii) KFI Primary AFFF Settlement Trust Agreement (the "**Trust Agreement**"), or (iii) the Trust Distribution Procedures of the Trust Agreement (the "**TDP**").

**I. Definitions**.

Unless otherwise specified, the following definitions apply:

"**AFFF**" shall mean the aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

"**AFFF Claim**" shall mean a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF, excluding all Sovereign State Claims.

"**Channeled AFFF Claim**" shall mean an AFFF Claim against the Debtor or the Estate, as defined in the Plan, channeled to the Primary AFFF Settlement Trust under the Plan.[2]

"**Claim**" shall have the meaning ascribed to such term under section 101(5) of the Bankruptcy Code.

---

[1] This Release and Indemnity Agreement is for all Channeled AFFF Claims that are not Sovereign State AFFF Claims (Class 3C under the Plan) and are not Sovereign Tribe AFFF Claims (Class 3F under the Plan). Each distribution shall require the execution of a separate Release and Indemnity Agreement.

[2] For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

"**Legal Representative**" shall mean a personal representative, guardian, conservator, parent (on behalf of a minor), executor of an estate or a similar representative who has been appointed by a court or has other legal authorization to represent the Claimant.

"**Primary Trust Released Party**" shall mean each of the KFI Primary AFFF Settlement Trust (the "**Primary Trust**") established under the Trust Agreement, the Trustees of the Primary Trust, and with respect to the Primary Trust each of the following: the Delaware Trustee, the Claims Administrator, any claims processor and lien resolution administrator retained in connection with the Primary Trust, the members of the Trust Advisory Committee, the Future Claimants' Representative and each of their respective predecessors, successors, assigns, assignors, representatives, members, officers, employees, agents, consultants, lawyers, advisors, professionals, trustees, insurers, beneficiaries, administrators, and any natural, legal or judicial person or entity acting on behalf of or having liability in respect of the Primary Trust, the Trustees of the Primary Trust, the Delaware Trustee, the Claims Administrator, any claims processor and lien resolution administrator retained in connection with the Primary Trust, the members of the Trust Advisory Committee, and the Future Claimants' Representative. For the avoidance of doubt, Primary Trust Released Party shall not include any "Released Party" as that term is defined in the Plan.

"**Released Claims**" shall mean any and all past, present and future claims, counterclaims, actions, rights or causes of action, liabilities, suits, demands, damages, losses, payments, judgments, debts, dues, sums of money, costs and expenses (including, without limitation, attorneys' fees and costs), accounts, reckonings, bills, covenants, contracts, controversies, agreements, obligations, or promises, in law or in equity, contingent or non-contingent, known or unknown, suspected or unsuspected, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, liquidated or unliquidated, whether direct, representative, class or individual in nature, and whether based on contract, tort, statutory, or any other legal or equitable theory of recovery resulting from or in any way connected to, in whole or in part, the discharge of any Primary Trust Released Party's duties and responsibilities under the Trust Agreement, including any agreement, document, instrument or certification contemplated by the Trust Agreement, the TDP, the TDP Schedules, the Plan, the formulation, preparation, negotiation, execution or consummation of the Trust Agreement, the TDP, the TDP Schedules and the Plan, and any and all other orders of the Bankruptcy Court or any other applicable court relating to any Primary Trust Released Party and/or the duties and responsibilities of any Primary Trust Released Party. For the avoidance of doubt, Released Claims under this Release and Indemnity Agreement shall not include "Channeled AFFF Claims," "Estate Causes of Action," or "Released Claims," as those terms are defined in the Plan.

"**Sovereign State Claim**" means an AFFF Claim asserted by a Sovereign State that is not an Airport Claim, Business Loss Claim, Fire Training Facility Claim, Landfill Claim, Personal Injury Claim, Property Damage Claim, Stormwater Claim, Wastewater Claim or Water Provider Claim, within the meaning of the Plan.

**II. Release**.

**WHEREAS**, the undersigned, who is either an individual person or the legal representative of such person (the "**Claimant**") who has filed a Trust Claim Submission for a Channeled AFFF Claim with the Primary Trust pursuant to the TDP filed as part of the Plan, for which KFI Wind-Down Corp. (the "**Debtor**") is alleged to have legal responsibility; and

**WHEREAS**, the Claimant has accepted the Determination Notice issued by the Primary Trust and has agreed to settle and compromise the Claimant's Channeled AFFF Claim for and in consideration of the allowance of the Channeled AFFF Claim by the Primary Trust at an Allowed Claim Amount of $_____, on account of which the Claimant shall receive one or more distributions, subject to applicable reductions, deductions and withholdings, from the Primary Trust in accordance with the terms of the Plan, the Trust Agreement, and the TDP and as further set forth herein.

**NOW, THEREFORE**, the Claimant, on behalf of Claimant as well as any of Claimant's predecessors, successors, assigns, assignors, representatives, attorneys, agents, trustees, insurers, heirs, next of kin, estates, beneficiaries, executors, administrators and any natural, legal, or judicia person or entity to the extent he, she, or it is entitled to asset any claim on Claimant's behalf, including but not limited to a Legal Representative, hereby agrees as follows:

1. As of the date set forth on the signature page hereto, the Primary Trust Released Parties will be released and forever discharged from all of the Released Claims of the Claimant. The Claimant will absolutely, unconditionally, and irrevocably covenant not to bring, file, or claim, or to cause, assist in bringing, or permit to be brought, filed, or claimed, or to otherwise seek to establish liability for any Released Claims of the Claimant against any of the Primary Trust Released Parties in any forum arising from, relating to, resulting from or in any way connected to, in whole or in part, the discharge of the Primary Trust Released Parties' duties and responsibilities under the Trust Agreement or the TDP, including any agreement, document, instrument or certification contemplated by the Trust Agreement, the TDP, the Plan, the formulation, preparation, negotiation, execution or consummation of the Trust Agreement, the TDP, and the Plan, and any and all other orders of the Bankruptcy Court or any other applicable court relating to the Primary Trust Released Parties and/or their duties and responsibilities from the beginning of time through the execution date of this Release and Indemnity Agreement. The releases provided for in this Release and Indemnity Agreement are intended to be broad and shall be interpreted so as to give the Primary Trust Released Parties the broadest possible bar against any liability relating in any way to Released Claims. The release provided for in this Release and Indemnity Agreement shall be a complete bar to any Released Claim of the Claimant.

3

2. The Claimant covenants and agrees that the Claimant will honor this Release and Indemnity Agreement and, further, that the Claimant will not (a) knowingly institute or continue prosecution of a lawsuit or other action against any of the Primary Trust Released Parties based upon, arising out of, or relating to any Released Claims of the Claimant released hereby; (b) knowingly participate, assist, or cooperate in any such action; or (c) knowingly encourage, assist and/or solicit any third party to institute any such action.

3. Without limiting the foregoing, and notwithstanding anything to the contrary herein, this Release and Indemnity Agreement shall not apply in favor of the Primary Trust as to the Claimant's right to payment of the Allowed Claim Amount of the Claimant's Channeled AFFF Claim, solely as provided under the Plan and the TDP.

4. The Claimant intends this Release and Indemnity Agreement to be as broad and comprehensive as possible so that no Primary Trust Released Party shall ever be liable, directly or indirectly, to the Claimant or the Claimant's heirs, legal representatives, successors or assigns, or any other person or entity claiming by, through, under, or on behalf of the Claimant, for or on account of any Released Claim of the Claimant, except as expressly provided herein, whether the same is now known or unknown or may now be latent or may in the future appear to develop, including all spousal claims for the Claimant's claims.

5. The Claimant (a) acknowledges and agrees that no Primary Trust Released Party shall have any liability to the Claimant or any other person or entity in connection with any Liens or Other Claims[3] and that the Claimant remains solely responsible for resolving all Liens and Other Claims; and (b) represents and warrants that all Liens and Other Claims, subrogations, conditional payments, and reimbursement claims relating to amounts paid to or on account of the Claimant in connection with, or relating to, the Channeled AFFF Claim have been resolved or will be resolved from the payments made from the Primary Trust or from other funds or proceeds to the extent permitted under applicable lien settlement agreements or applicable law.

6. The Claimant has accepted the Determination Notice issued by the Primary Trust and understands that his/her Channeled AFFF Claim is being resolved by the Primary Trust, and that an Allowed Claim Amount of $_____ has been established for his/her Channeled AFFF Claim. The Claimant acknowledges that, pursuant to the TDP, the amount the Claimant ultimately will receive on account of his/her Allowed Channeled AFFF Claim depends upon the Primary Trust assets available for the payment of Allowed Channeled AFFF Claims and such other assessment, withholdings, deductions and

---

[3]   As defined in the TDP at Article V.C.

reductions as may be required under the TDP. The Claimant further acknowledges that the Claimant may receive payment in one or more distributions, subject to determinations by the Trustees, as provided in the TDP.

7. The provisions of this Release and Indemnity Agreement are, and may be asserted by the Primary Trust Released Parties as, an absolute and final bar to any claim or proceeding now pending or hereafter brought by or on behalf of the Claimant with respect to the Released Claims of the Claimant, except as expressly provided in this Release and Indemnity Agreement.

8. The Claimant understands and agrees that the Primary Released Parties will not be liable for any act, or failure to act, of the lien resolution administrator retained in connection with the Primary Trust.

9. The Claimant, as assignor, hereby transfers and assigns to the Primary Trust, as assignee, any rights, claims, benefits, or Causes of Action arising out of or related to Claimant's Channeled AFFF Claim that are against any Insurance Company.

10. The Claimant represents that he or she understands that the terms of this Release and Indemnity Agreement constitute a final and complete release of the Primary Trust Released Parties with respect to the Released Claims of the Claimant, except as expressly provided herein. The Claimant has relied solely on his or her own knowledge and information, and the advice of his or her attorneys (if any), as to the nature, extent, and duration of the Claimant's injuries, losses, damages, and legal rights, as well as the legal consequences of this Release and Indemnity Agreement, and not on any statement or representation made by any other party.

11. In further consideration of the benefit of a distribution from the Primary Trust on account of the Claimant's Allowed Channeled AFFF Claim, as of the date hereof, the Claimant shall indemnify and forever hold harmless, and pay all final judgments, damages, costs, expenses, fines, penalties, interest, multipliers, or liabilities in whatsoever nature, including costs of defense and attorneys' fees of the Primary Trust Released Parties arising from the Claimant's failure to comply with the terms of this Release and Indemnity Agreement, provided that the amount of the Claimant's obligation to the Primary Trust Released Parties under this Release and Indemnity Agreement shall be limited to the amounts distributed or to be distributed to or on account of the Claimant's Allowed Channeled AFFF Claim(s) from the Primary Trust.

12. This Release and Indemnity Agreement contains the entire agreement between the parties and supersedes all prior or contemporaneous oral or written agreements or understandings relating to the subject matter hereof between or among any of the parties hereto, including, without limitation, any prior

agreements or understandings with respect to the liquidation of the Channeled AFFF Claim.

13. This Release and Indemnity Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflicts of law thereof.

14. The Claimant authorizes payment to the Claimant or the Claimant's counsel, as agent for the Claimant, if applicable.

15. The Claimant acknowledges that the Primary Trust has no obligation to pay the Claimant until the Primary Trust receives this executed Release and Indemnity Agreement from the Claimant or the Claimant's undersigned Legal Representative.

16. The Claimant acknowledges that the Primary Trust is not providing any tax advice with respect to the receipt of any distribution on account of the Claimant's Allowed Channeled AFFF Claim or any component thereof, and understands and agrees that the Claimant shall be solely responsible for compliance with all tax laws with respect to such distribution, to the extent applicable.

17. The Claimant (a) will not encourage any person or entity to bring or maintain any proceeding with respect to any Released Claim of the Claimant against a Primary Trust Released Party; and (b) will reasonably cooperate with and not oppose any effort by a Primary Trust Released Party to secure the prompt dismissal of any such proceeding.

[remainder of page is blank]

## <u>CERTIFICATION</u>

I state that I have carefully read the foregoing Release and Indemnity Agreement and know the contents thereof, and I sign the same as my own free act. I certify, under penalty of perjury, that I have the authority as the Claimant or Claimant's Legal Representative to sign this Release and Indemnity Agreement.

I am:

[ ] the Claimant.

[ ] the Legal Representative of the Claimant, the Claimant's estate, or the Claimant's heirs.

EXECUTED this ___day of _____ 20____


_____

Signature of the Claimant


Name of the Claimant:	_____	SSN:_____ _____ _____

Name of the Legal Representative: _____

SSN of the Legal Representative:_____

SWORN to and subscribed before me this _____day of _____20__


_____

Notary Public

My commission expires: _____

## <u>Schedule II – B</u>

**KFI Primary AFFF Trust Release and
Indemnity Agreement for Entities**

# KFI PRIMARY AFFF TRUST
# RELEASE AND INDEMNITY AGREEMENT
# FOR ENTITIES[1]

**NOTICE: THIS IS A BINDING DOCUMENT THAT AFFECTS YOUR LEGAL RIGHTS. PLEASE CONSULT YOUR ATTORNEY IN CONNECTION WITH EXECUTING THIS DOCUMENT. IF YOU DO NOT PRESENTLY HAVE AN ATTORNEY, YOU MAY WISH TO CONSIDER CONSULTING ONE.**

All capitalized terms not defined in this release and indemnity agreement (this "**Release and Indemnity Agreement**") shall have the respective meanings ascribed to them in either (i) *the Debtor's [Fifth] Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [Docket No. [•]], as the same may be amended or modified from time to time (the "**Plan**") filed in Bankruptcy Case No. 23-10638 (LSS) before the United States Bankruptcy Court for the District of Delaware, confirmed by order on [•] [Docket No. [•]], (ii) KFI Primary AFFF Settlement Trust Agreement (the "**Trust Agreement**"), or (iii) the Trust Distribution Procedures of the Trust Agreement (the "**TDP**").

## I. Definitions.

Unless otherwise specified, the following definitions apply:

"**AFFF**" shall mean the aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

"**AFFF Claim**" shall mean a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF, excluding all Sovereign State Claims.

"**Channeled AFFF Claim**" shall mean an AFFF Claim against the Debtor or the Estate, as defined in the Plan, channeled to the Primary AFFF Settlement Trust under the Plan.[2]

"**Claim**" shall have the meaning ascribed to such term under section 101(5) of the Bankruptcy Code.

---

[1]    This Release and Indemnity Agreement is for all Channeled AFFF Claims that are not Sovereign State AFFF Claims (Class 3C under the Plan), other governmental entities or Sovereign Tribe AFFF Claims (Class 3F under the Plan). Each distribution shall require the execution of a separate Release and Indemnity Agreement.

[2]    For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

"**Primary Trust Released Party**" shall mean each of the KFI Primary AFFF Settlement Trust (the "**Primary Trust**") established under the Trust Agreement, the Trustees of the Primary Trust, and with respect to the Primary Trust each of the following: the Delaware Trustee, the Claims Administrator, any claims processor and lien resolution administrator retained in connection with the Primary Trust, the members of the Trust Advisory Committee, the Future Claimants' Representative and each of their respective predecessors, successors, assigns, assignors, representatives, members, officers, employees, agents, consultants, lawyers, advisors, professionals, trustees, insurers, beneficiaries, administrators, and any natural, legal or judicial person or entity acting on behalf of or having liability in respect of the Primary Trust, the Trustees of the Primary Trust, the Delaware Trustee, the Claims Administrator, any claims processor and lien resolution administrator retained in connection with the Primary Trust, the members of the Trust Advisory Committee, and the Future Claimants' Representative. For the avoidance of doubt, Primary Trust Released Party shall not include any "Released Party" as that term is defined in the Plan.

"**Released Claims**" shall mean any and all past, present and future claims, counterclaims, actions, rights or causes of action, liabilities, suits, demands, damages, losses, payments, judgments, debts, dues, sums of money, costs and expenses (including, without limitation, attorneys' fees and costs), accounts, reckonings, bills, covenants, contracts, controversies, agreements, obligations, or promises, in law or in equity, contingent or non-contingent, known or unknown, suspected or unsuspected, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, liquidated or unliquidated, whether direct, representative, class or individual in nature, and whether based on contract, tort, statutory, or any other legal or equitable theory of recovery resulting from or in any way connected to, in whole or in part, the discharge of any Primary Trust Released Party's duties and responsibilities under the Trust Agreement, including any agreement, document, instrument or certification contemplated by the Trust Agreement, the TDP, the TDP Schedules, the Plan, the formulation, preparation, negotiation, execution or consummation of the Trust Agreement, the TDP, the TDP Schedules and the Plan, and any and all other orders of the Bankruptcy Court or any other applicable court relating to any Primary Trust Released Party and/or the duties and responsibilities of any Primary Trust Released Party. For the avoidance of doubt, Released Claims under this Release and Indemnity Agreement shall not include "Channeled AFFF Claims," "Estate Causes of Action," or "Released Claims," as those terms are defined in the Plan.

"**Sovereign State Claim**" means an AFFF Claim asserted by a Sovereign State that is not an Airport Claim, Business Loss Claim, Fire Training Facility Claim, Landfill Claim, Personal Injury Claim, Property Damage Claim, Stormwater Claim, Wastewater Claim or Water Provider Claim, within the meaning of the Plan.

**II. Release**.

**WHEREAS**, the entity identified on the signature page here (the "**Claimant**") who has filed a Trust Claim Submission for a Channeled AFFF Claim with the Primary Trust

pursuant to the TDP filed as part of the Plan, for which KFI Wind-Down Corp. (the "**Debtor**") is alleged to have legal responsibility; and

**WHEREAS**, the Claimant has accepted the Determination Notice issued by the Primary Trust and has agreed to settle and compromise the Claimant's Channeled AFFF Claim for and in consideration of the allowance of the Channeled AFFF Claim by the Primary Trust at an Allowed Claim Amount of $ _____, on account of which the Claimant shall receive one or more distributions, subject to applicable reductions, deductions and withholdings, from the Primary Trust in accordance with the terms of the Plan, the Trust Agreement, and the TDP and as further set forth herein.

**NOW, THEREFORE**, the Claimant, on behalf of Claimant as well as any and all of Claimant's predecessors, successors, assigns, assignors, representatives, members, officers, directors, attorneys, agents, affiliates, general partners, limited partners, managers, trustees, and direct and indirect equity holders in any capacity including controlling persons, or other representatives, hereby agrees as follows:

1. As of the date set forth on the signature page hereto, the Primary Trust Released Parties will be released and forever discharged from all of the Released Claims of the Claimant will absolutely, unconditionally, and irrevocably covenant not to bring, file, or claim, or to cause, assist in bringing, or permit to be brought, filed, or claimed, or to otherwise seek to establish liability for any Released Claims of the Claimant against any of the Primary Trust Released Parties in any forum arising from, relating to, resulting from or in any way connected to, in whole or in part, the discharge of the Primary Trust Released Parties' duties and responsibilities under the Trust Agreement or the TDP, including any agreement, document, instrument or certification contemplated by the Trust Agreement, the TDP, the Plan, the formulation, preparation, negotiation, execution or consummation of the Trust Agreement, the TDP, and the Plan, and any and all other orders of the Bankruptcy Court or any other applicable court relating to the Primary Trust Released Parties and/or their duties and responsibilities from the beginning of time through the execution date of this Release and Indemnity Agreement. The releases provided for in this Release and Indemnity Agreement are intended to be broad and shall be interpreted so as to give the Primary Trust Released Parties the broadest possible bar against any liability relating in any way to Released Claims. The release provided for in this Release and Indemnity Agreement shall be a complete bar to any Released Claim of the Claimant.

2. The Claimant covenants and agrees that the Claimant will honor this Release and Indemnity Agreement and, further, that the Claimant will not (a) knowingly institute or continue prosecution of a lawsuit or other action against any of the Primary Trust Released Parties based upon, arising out of, or relating to any Released Claims of the Claimant released hereby; (b) knowingly participate, assist, or cooperate in any such action; or (c) knowingly encourage, assist and/or solicit any third party to institute any such action.

3

3.  Without limiting the foregoing, and notwithstanding anything to the contrary herein, this Release and Indemnity Agreement shall not apply in favor of the Primary Trust as to the Claimant's right to payment of the Allowed Claim Amount of the Claimant's Channeled AFFF Claim, solely as provided under the Plan and the TDP.

4.  The Claimant intends this Release and Indemnity Agreement to be as broad and comprehensive as possible so that no Primary Trust Released Party shall ever be liable, directly or indirectly, to the Claimant or any person on behalf of the Claimant, for or on account of any Released Claim of the Claimant, except as expressly provided herein, whether the same is now known or unknown or may now be latent or may in the future appear to develop.

5.  The Claimant (a) acknowledges and agrees that no Primary Trust Released Party shall have any liability to the Claimant or any other person or entity in connection with any Liens or Other Claims[3] and that the Claimant remains solely responsible for resolving all Liens and Other Claims; and (b) represents and warrants that all Liens and Other Claims, subrogations, conditional payments, and reimbursement claims relating to amounts paid to or on account of the Claimant in connection with, or relating to, the Channeled AFFF Claim have been resolved or will be resolved from the payments made from the Primary Trust or from other funds or proceeds to the extent permitted under applicable lien settlement agreements or applicable law.

6.  The Claimant has accepted the Determination Notice issued by the Primary Trust and understands that his/her Channeled AFFF Claim is being resolved by the Primary Trust, and that an Allowed Claim Amount of $_____ has been established for his/her Channeled AFFF Claim. The Claimant acknowledges that, pursuant to the TDP, the amount the Claimant ultimately will receive on account of his/her Allowed Channeled AFFF Claim depends upon the Primary Trust assets available for the payment of Allowed Channeled AFFF Claims and such other assessment, withholdings, deductions and reductions as may be required under the TDP. The Claimant further acknowledges that the Claimant may receive payment in one or more distributions, subject to determinations by the Trustees, as provided in the TDP.

7.  The provisions of this Release and Indemnity Agreement are, and may be asserted by the Primary Trust Released Parties as, an absolute and final bar to any claim or proceeding now pending or hereafter brought by or on behalf of the Claimant with respect to the Released Claims of the Claimant, except as expressly provided in this Release and Indemnity Agreement.

---

[3]  As defined in the TDP at Article V.C.

8. The Claimant understands and agrees that the Primary Released Parties will not be liable for any act, or failure to act, of the lien resolution administrator retained in connection with the Primary Trust.

9. The Claimant, as assignor, hereby transfers and assigns to the Primary Trust, as assignee, any rights, claims, benefits, or Causes of Action arising out of or related to Claimant's Channeled AFFF Claim that are against any Insurance Company.

10. The Claimant represents that he or she understands that the terms of this Release and Indemnity Agreement constitute a final and complete release of the Primary Trust Released Parties with respect to the Released Claims of the Claimant, except as expressly provided herein. The Claimant has relied solely on his or her own knowledge and information, and the advice of his or her attorneys (if any), as to the nature, extent, and duration of the Claimant's injuries, losses, damages, and legal rights, as well as the legal consequences of this Release and Indemnity Agreement, and not on any statement or representation made by any other party.

11. In further consideration of the benefit of a distribution from the Primary Trust on account of the Claimant's Allowed Channeled AFFF Claim, as of the date hereof, the Claimant shall indemnify and forever hold harmless, and pay all final judgments, damages, costs, expenses, fines, penalties, interest, multipliers, or liabilities in whatsoever nature, including costs of defense and attorneys' fees of the Primary Trust Released Parties arising from the Claimant's failure to comply with the terms of this Release and Indemnity Agreement, provided that the amount of the Claimant's obligation to the Primary Trust Released Parties under this Release and Indemnity Agreement shall be limited to the amounts distributed or to be distributed to or on account of the Claimant's Allowed Channeled AFFF Claim(s) from the Primary Trust.

12. This Release and Indemnity Agreement contains the entire agreement between the parties and supersedes all prior or contemporaneous oral or written agreements or understandings relating to the subject matter hereof between or among any of the parties hereto, including, without limitation, any prior agreements or understandings with respect to the liquidation of the Channeled AFFF Claim.

13. This Release and Indemnity Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflicts of law thereof.

14. The Claimant authorizes payment to the Claimant or the Claimant's counsel, as agent for the Claimant, if applicable.

15. The Claimant acknowledges that the Primary Trust has no obligation to pay the Claimant until the Primary Trust receives this executed Release and Indemnity Agreement from the Claimant.

16. The Claimant acknowledges that the Primary Trust is not providing any tax advice with respect to the receipt of any distribution on account of the Claimant's Allowed Channeled AFFF Claim or any component thereof, and understands and agrees that the Claimant shall be solely responsible for compliance with all tax laws with respect to such distribution, to the extent applicable.

17. The Claimant (a) will not encourage any person or entity to bring or maintain any proceeding with respect to any Released Claim of the Claimant against a Primary Trust Released Party; and (b) will reasonably cooperate with and not oppose any effort by a Primary Trust Released Party to secure the prompt dismissal of any such proceeding.

[remainder of page is blank]

6

## <u>CERTIFICATION</u>

I state that I have carefully read the foregoing Release and Indemnity Agreement and know the contents thereof, and I sign the same as my own free act. I certify, under penalty of perjury, that I have the authority to sign this Release and Indemnity Agreement on behalf of Claimant.

Name of the Claimant:_____

EIN: _____

Name of Authorized Person: _____

SWORN to and subscribed before me this _____ day of _____20__

_____

Notary Public

My commission expires: _____

## **<u>Schedule II – C</u>**

**KFI Primary AFFF Settlement Trust
Release Agreement for Governmental Entities
Related to Distributions (Other Than Sovereign States)**

## KFI PRIMARY AFFF SETTLEMENT TRUST

## RELEASE AGREEMENT
## FOR GOVERNMENTAL ENTITIES[1]
## RELATED TO DISTRIBUTIONS (OTHER THAN SOVEREIGN STATES)

All capitalized terms not defined in this release agreement (this "**Release Agreement**") shall have the respective meanings ascribed to them in either (i) *the Debtor's [Fifth] Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [Docket No. [•]], as the same may be amended or modified from time to time (the "**Plan**") filed in Bankruptcy Case No. 23-10638 (LSS) before the United States Bankruptcy Court for the District of Delaware, confirmed by order on [•] [Docket No. [•]] (the "**Confirmation Order**"), (ii) the KFI Primary AFFF Settlement Trust Agreement (the "**Primary Trust Agreement**"), or (iii) the Trust Distribution Procedures of the Primary Trust Agreement (the "**Primary TDP**").

**I. Definitions**.

Unless otherwise specified, the following definitions apply:

"**AFFF**" shall mean the aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

"**AFFF Claim**" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.

"**Channeled AFFF Claim**" shall mean an AFFF Claim against the Debtor or the Estate, as defined in the Plan, channeled to the Primary AFFF Settlement Trust under the Plan.[2]

"**Claim**" shall have the meaning ascribed to such term under section 101(5) of the Bankruptcy Code.

"**Primary Trust Released Party**" shall mean each of the KFI Primary AFFF Settlement Trust (the "**Primary Trust**") established under the Confirmation Order pursuant to the Plan and as set forth in the Primary Trust Agreement, the Trustees of the Primary Trust, and, with respect to the Primary Trust, each of the following: the Delaware Trustee,

---

[1]   This Release Agreement is for all governmental entities filing Channeled AFFF Claims under the Primary Trust Agreement that are not Sovereign States or Sovereign Tribes. Each distribution shall require the execution of a separate Release Agreement.

[2]   For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

the Claims Administrator, any claims processor and lien resolution administrator retained in connection with the Primary Trust, the members of the Trust Advisory Committee, the Future Claimants' Representative, and each of their respective predecessors, successors, assigns, assignors, representatives, members, officers, employees, agents, consultants, lawyers, advisors, professionals, trustees, insurers, beneficiaries, administrators, and any natural, legal or judicial person or entity acting on behalf of or having liability in respect of the Primary Trust, the Trustees of the Primary Trust, the Delaware Trustee, the Claims Administrator, any claims processor and lien resolution administrator retained in connection with the Primary Trust, the members of the Trust Advisory Committee, and the Future Claimants' Representative. For the avoidance of doubt, Primary Trust Released Party shall not include any "Released Party" as that term is defined in the Plan.

"**Released Claims**" shall mean any and all past, present and future claims, counterclaims, actions, rights or causes of action, liabilities, suits, demands, damages, losses, payments, judgments, debts, dues, sums of money, costs and expenses (including, without limitation, attorneys' fees and costs), accounts, reckonings, bills, covenants, contracts, controversies, agreements, obligations, or promises, in law or in equity, contingent or non-contingent, known or unknown, suspected or unsuspected, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, liquidated or unliquidated, whether direct, representative, class or individual in nature, and whether based on contract, tort, statutory, or any other legal or equitable theory of recovery resulting from or in any way connected to, in whole or in part, the discharge of any Primary Trust Released Party's duties and responsibilities under the Primary Trust Agreement, including any agreement, document, instrument or certification contemplated by the Primary Trust Agreement, the Primary TDP, the Primary TDP Schedules, the Plan, the formulation, preparation, negotiation, execution or consummation of the Primary Trust Agreement, the Primary TDP, the Primary TDP Schedules and the Plan, and any and all other orders of the Bankruptcy Court or any other applicable court relating to any Primary Trust Released Party and/or the duties and responsibilities of any Primary Trust Released Party. For the avoidance of doubt, Released Claims under this Release Agreement shall not include "Channeled AFFF Claims," "Estate Causes of Action," or "Released Claims," as those terms are defined in the Plan.

"**Releasor**" shall mean each governmental entity that is not a Sovereign State executing this Release Agreement, without limitation and to the maximum extent permitted under applicable laws.

"**Sovereign State**" shall mean any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia.

## II. Release.

**WHEREAS**, the governmental entity has accepted the Determination Notice issued by the Primary Trust and has agreed to settle and compromise its Channeled AFFF Claim for and in consideration of the allowance of the Channeled AFFF Claim by the Primary Trust

at an Allowed Claim Amount of $_____, on account of which the governmental entity shall receive one or more distributions, subject to applicable reductions, deductions and withholdings, from the Primary Trust in accordance with the terms of the Plan, the Primary Trust Agreement, and the Primary TDP, and as further set forth herein.

**NOW, THEREFORE**, the Releasor hereby agrees as follows:

1. **Scope**. As of the date set forth on the signature page hereto, each Primary Trust Released Party will be released and forever discharged from all of the Released Claims of the Releasor. The Releasor will absolutely, unconditionally, and irrevocably covenant not to bring, file, or claim, or to cause, assist in bringing, or permit to be brought, filed, or claimed, or to otherwise seek to establish liability for any Released Claims of the Releasor against any Primary Trust Released Party in any forum arising from, relating to, resulting from or in any way connected to, in whole or in part, the discharge of the Primary Trust Released Parties' duties and responsibilities under the Primary Trust Agreement or the Primary TDP, including any agreement, document, instrument or certification contemplated by the Primary Trust Agreement, the Primary TDP, the Plan, the formulation, preparation, negotiation, execution or consummation of the Primary Trust Agreement, the Primary TDP, and the Plan, and any and all other orders of the Bankruptcy Court or any other applicable court relating to the Primary Trust Released Parties and/or their duties and responsibilities from the beginning of time through the execution date of this Release Agreement. The releases provided for in this Release Agreement are intended to be broad and shall be interpreted so as to give the Primary Trust Released Parties the broadest possible bar against any liability relating in any way to Released Claims and extend to the full extent of the power of each governmental entity, to release claims. The release provided for in this Agreement shall be a complete bar to any Released Claim of the Releasor.

2. **Representation and Warranty**. The signatory hereto, in his/her capacity as authorized person for his/her other governmental entity, represents and warrants that he/she has or has obtained the authority to release, to the maximum extent permitted under applicable laws all Released Claims of his/her respective governmental entity and all applicable past and present executive departments, agencies, divisions, boards, commissions and instrumentalities of such governmental entity. By executing this Release Agreement, the governmental entity hereby expressly waives and fully, finally, and forever settles, releases, and discharges, any and all Released Claims of the Releasor.

3. **Cooperation**. Releasor will not encourage any person or entity to bring or maintain any Released Claim of the Releasor against any Primary Trust Released Party.

4. **Inter-Trust Matters**. Nothing in this Release Agreement shall modify, amend or be construed in any manner to affect the terms of the Inter-Trust Cooperation Agreement by and among the KFI Sovereign State AFFF Settlement Trust and the Primary Trust.

5. **Governing Law**. This Release Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflicts of law thereof.

Release Form C (Governmental Entities other than Sovereign States)

EXECUTED this ____day of _____ 20____

By:_____

Title: _____

Governmental Entity: _____

## **Schedule II – D**

**KFI Primary AFFF Settlement Trust**
**Release Agreement for Governmental Entities**
**Related to Distributions (Sovereign States Only)**

**KFI PRIMARY AFFF SETTLEMENT TRUST**

**RELEASE AGREEMENT
FOR GOVERNMENTAL ENTITIES**[1]
**RELATED TO DISTRIBUTIONS (SOVEREIGN STATES ONLY)**[2]

All capitalized terms not defined in this release agreement (this "**Release Agreement**") shall have the respective meanings ascribed to them in either (i) *the Debtor's [Fifth] Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [Docket No. [•]], as the same may be amended or modified from time to time (the "**Plan**") filed in Bankruptcy Case No. 23-10638 (LSS) before the United States Bankruptcy Court for the District of Delaware, confirmed by order on [•] [Docket No. [•]] (the "**Confirmation Order**"), (ii) the KFI Primary AFFF Settlement Trust Agreement (the "**Primary Trust Agreement**"), or (iii) the Trust Distribution Procedures of the Primary Trust Agreement (the "**Primary TDP**").

**I. Definitions**.

Unless otherwise specified, the following definitions apply:

"**AFFF**" shall mean the aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

"**AFFF Claim**" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.

"**Channeled AFFF Claim**" shall mean an AFFF Claim against the Debtor or the Estate, as defined in the Plan, channeled to the Primary AFFF Settlement Trust under the Plan.[3]

"**Claim**" shall have the meaning ascribed to such term under section 101(5) of the Bankruptcy Code.

"**Primary Trust Released Party**" shall mean each of the KFI Primary AFFF Settlement Trust (the "**Primary Trust**") established under the Confirmation Order pursuant to the Plan and as set forth in the Primary Trust Agreement, the Trustees of the Primary Trust, and, with respect to the Primary Trust, each of the following: the Delaware Trustee,

---

[1]   This Release Agreement is for all Sovereign States receiving distributions under the Primary Trust.  Each distribution shall require the execution of a separate Release Agreement.

[2]   This Release Agreement is for all Channeled AFFF Claims that are not Sovereign State AFFF Claims (Class 3C under the Plan) and are not Sovereign Tribe AFFF Claims (Class 3F under the Plan).

[3]   For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

the Claims Administrator, any claims processor retained in connection with the Primary Trust, the members of the Trust Advisory Committee, and each of their respective predecessors, successors, assigns, assignors, representatives, members, officers, employees, agents, consultants, lawyers, advisors, professionals, trustees, insurers, beneficiaries, administrators, and any natural, legal or judicial person or entity acting on behalf of or having liability in respect of the Primary Trust, the Trustees of the Primary Trust, the Delaware Trustee, the Claims Administrator, any claims processor retained in connection with the Primary Trust, and the members of the Trust Advisory Committee. For the avoidance of doubt, Primary Trust Released Party shall not include any "Released Party" as that term is defined in the Plan.

"**Released Claims**" shall mean any and all past and present claims, counterclaims, actions, rights or causes of action, liabilities, suits, demands, damages, losses, payments, judgments, debts, dues, sums of money, costs and expenses (including, without limitation, attorneys' fees and costs), accounts, reckonings, bills, covenants, contracts, controversies, agreements, obligations, or promises, in law or in equity, contingent or non-contingent, known or unknown, suspected or unsuspected, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, liquidated or unliquidated, whether direct, representative, class or individual in nature, and whether based on contract, tort, statutory, or any other legal or equitable theory of recovery against a Primary Trust Released Party, arising out of, relating to, resulting from or in any way connected to, in whole or in part, the discharge of the Primary Trust Released Parties' duties and responsibilities (other than liability resulting from any act or omission that is determined by a court of competent jurisdiction to have constituted gross negligence, wilful misconduct, fraud or a criminal act) under the Primary Trust Agreement, including any agreement, document, instrument or certification contemplated by the Primary Trust Agreement, the Primary TDP, the Plan, the formulation, preparation, negotiation, execution or consummation of the Primary Trust Agreement, the Primary TDP, and the Plan, and any and all other orders of the Bankruptcy Court or any other applicable court relating to the Primary Trust Released Parties and/or their duties and responsibilities from the beginning of time through the execution date of this Release Agreement.  For the avoidance of doubt, Released Claims under this Release Agreement shall not include "Channeled AFFF Claims," "Estate Causes of Action," or "Released Claims," as those terms are defined in the Plan.

"**Releasor**" shall mean each Attorney General of a Sovereign State executing this Release Agreement on behalf of the applicable Sovereign State to the maximum extent of the power of each Sovereign State's Attorney General to release claims on behalf of the applicable Sovereign State under applicable laws.

"**Sovereign State**" shall mean any sovereign state or territory of the United States, including each of the 50 states, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, American Samoa, the U.S. Virgin Islands, the District of Columbia, and for purposes of this Release Agreement, Sovereign State shall mean the Sovereign State for which this Release Agreement is executed, as identified on the signature page hereof.

**II. Release**.

WHEREAS, the Sovereign State has accepted the Determination Notice issued by the Primary Trust and has agreed to settle and compromise its Channeled AFFF Claim for and in consideration of the allowance of the Channeled AFFF Claim by the Primary Trust at an Allowed Claim Amount of $_____, on account of which the Sovereign State shall receive one or more distributions, subject to applicable reductions, deductions and withholdings, from the Primary Trust in accordance with the terms of the Plan, the Primary Trust Agreement, and the Primary TDP, and as further set forth herein.

NOW, THEREFORE, the Releasor hereby agrees as follows:

1.    **Scope**. As of the date set forth on the signature page hereto, the Primary Trust Released Parties will be released and forever discharged from all of the Released Claims of the Releasor. The Releasor will absolutely, unconditionally, and irrevocably covenant not to bring, file, or claim, or to otherwise seek to establish liability for any Released Claims of the Releasor against any of the Primary Trust Released Parties in any forum.  The releases provided for in this Release Agreement are intended to be broad and shall be interpreted so as to give the Primary Trust Released Parties the broadest possible bar against any liability relating in any way to Released Claims and extend to the full extent of the power of each Sovereign State's Attorney General to release claims; *provided, however*, nothing herein shall be deemed to impact the rights of the Releasor to receive future distributions on  account of its Allowed Channeled AFFF Claim. The release provided for in this Release Agreement shall be a complete bar to any Released Claim of the Releasor.

2.    **Representation and Warranty**. The signatory hereto, in his/her capacity as authorized person for the Releasor, represents and warrants that he/she has or has obtained the authority to release all Released Claims of the Releasor.  By executing this Release Agreement, the Releasor hereby expressly waives and fully, finally, and forever settles, releases, and discharges, any and all Released Claims of the Releasor.

3.    **Cooperation**. Releasor will not encourage any person or entity to bring or maintain any Released Claim of the Releasor against any Primary Trust Released Party.

4.    **Inter-Trust Matters**. Nothing in this Release Agreement shall modify, amend or be construed in any manner to affect the terms of the Inter-Trust Cooperation Agreement by and among the KFI Sovereign State AFFF Settlement Trust and the Primary Trust.

5.    **Governing Law**. This Release Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflicts of law thereof.

*BR Draft 9.29.25*
Release Form D (Sovereign States Only)

EXECUTED this ____day of _____ 20____


By:_____

Title: _____

Sovereign State: _____

## <u>Schedule II – E</u>

**KFI Primary AFFF Settlement Trust**
**Release Agreement for Sovereign Tribes for AFFF Claims**

## KFI PRIMARY AFFF SETTLEMENT TRUST

### RELEASE AGREEMENT
### FOR SOVEREIGN TRIBES
### FOR AFFF CLAIMS[1]

All capitalized terms not defined in this release agreement (this "**Release Agreement**") shall have the respective meanings ascribed to them in either (i) *the Debtor's [Fifth] Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [Docket No. [•]], as the same may be amended or modified from time to time (the "**Plan**") filed in Bankruptcy Case No. 23-10638 (LSS) before the United States Bankruptcy Court for the District of Delaware, confirmed by order on [•] [Docket No. [•]] (the "**Confirmation Order**"), (ii) the KFI Primary AFFF Settlement Trust Agreement (the "**Primary Trust Agreement**"), or (iii) the Trust Distribution Procedures of the Primary Trust Agreement (the "**Primary TDP**").

**I. Definitions**.

Unless otherwise specified, the following definitions apply:

"**AFFF**" shall mean the aqueous film-forming foam containing PFAS or alleged to contain PFAS or substances that degrade or are alleged to degrade into PFAS.

"**AFFF Claim**" means a Claim that arises from the design, manufacture, storage, marketing, use, distribution, discharge, or sale of AFFF or AFFF-containing products, or that relates directly or indirectly to alleged harm from precursor, derivative or resultant chemicals from AFFF.

"**Claim**" shall have the meaning ascribed to such term under section 101(5) of the Bankruptcy Code.

"**Channeled AFFF Claim**" shall mean an AFFF Claim against the Debtor or the Estate, as defined in the Plan, channeled to the Primary AFFF Settlement Trust under the Plan.[2]

"**Primary Trust Released Party**" shall mean each of the KFI Primary AFFF Settlement Trust (the "**Primary Trust**") established under the Confirmation Order pursuant to the Plan and as set forth in the Primary Trust Agreement, the Trustees of the Primary Trust, and, with respect to the Primary Trust, each of the following: the Delaware Trustee, the Claims Administrator, any claims processor and lien resolution administrator retained in

---

[1]   This Release Agreement is for all Sovereign Tribe AFFF Claims that are Channeled AFFF Claims (Class 3F under the Plan). Each distribution shall require the execution of a separate Release Agreement.

[2]   For the avoidance of doubt, Channeled AFFF Claims shall exclude (a) Sovereign State Retained Causes of Action, (b) any Independent AFFF Causes of Action, (c) any Claim or Cause of Action for contribution, indemnification, reimbursement, or subrogation asserted by a Non-Debtor Party against another Non-Debtor Party, (d) Administrative Claims, (e) Priority Tax Claims, (f) Other Priority Claims, (g) Secured Claims, (h) General Unsecured Claims and (i) Affiliate Claims.

connection with the Primary Trust, the members of the Trust Advisory Committee, the Future Claimants' Representative and each of their respective predecessors, successors, assigns, assignors, representatives, members, officers, employees, agents, consultants, lawyers, advisors, professionals, trustees, insurers, beneficiaries, administrators, and any natural, legal or judicial person or entity acting on behalf of or having liability in respect of the Primary Trust, the Trustees of the Primary Trust, the Delaware Trustee, the Claims Administrator, any claims processor and lien resolution administrator retained in connection with the Primary Trust, the members of the Trust Advisory Committee, and the Future Claimants' Representative. For the avoidance of doubt, Primary Trust Released Party shall not include any "Released Party" as that term is defined in the Plan.

"**Released Claims**" shall mean any and all past, present and future claims, counterclaims, actions, rights or causes of action, liabilities, suits, demands, damages, losses, payments, judgments, debts, dues, sums of money, costs and expenses (including, without limitation, attorneys' fees and costs), accounts, reckonings, bills, covenants, contracts, controversies, agreements, obligations, or promises, in law or in equity, contingent or non-contingent, known or unknown, suspected or unsuspected, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, liquidated or unliquidated, whether direct, representative, class or individual in nature, and whether based on contract, tort, statutory, or any other legal or equitable theory of recovery resulting from or in any way connected to, in whole or in part, the discharge of any Primary Trust Released Party's duties and responsibilities under the Primary Trust Agreement, including any agreement, document, instrument or certification contemplated by the Primary Trust Agreement, the Primary TDP, the Primary TDP Schedules, the Plan, the formulation, preparation, negotiation, execution or consummation of the Primary Trust Agreement, the Primary TDP, the Primary TDP Schedules and the Plan, and any and all other orders of the Bankruptcy Court or any other applicable court relating to any Primary Trust Released Party and/or the duties and responsibilities of any Primary Trust Released Party. For the avoidance of doubt, Released Claims under this Release Agreement shall not include "Channeled AFFF Claims," "Estate Causes of Action," or "Released Claims," as those terms are defined in the Plan.

"**Releasor**" shall mean each Sovereign Tribe executing this Release Agreement, without limitation and to the maximum extent of the power of each Sovereign Tribe's Attorney General to release claims, including in any other capacity seeking relief on behalf of or generally applicable to the members a Sovereign Tribe.

"**Sovereign Tribe**" shall mean any American Indian or Alaskan Native Tribe, band, nation, pueblo, village or community, that the U.S. Secretary of the Interior acknowledges as an Indian Tribe, as provided in the Federally Recognized Tribe List Act of 1994, 25 U.S.C. § 5130, and as periodically listed by the U.S. Secretary of the Interior in the Federal Register pursuant to 25 U.S.C. § 5131; and any "Tribal Organization" as provided in the Indian Self-Determination and Education and Assistance Act of 1975, as amended, 25 U.S.C. § 5304(1), and for purposes of this Release Agreement, Sovereign Tribe shall mean the Sovereign Tribe for which this Release Agreement is executed, as identified on the signature page hereof.

**II. Release**.

      **WHEREAS**, the Sovereign Tribe has accepted the Determination Notice issued by the Primary Trust and has agreed to settle and compromise the Channeled AFFF Claim for and in consideration of the allowance of the Channeled AFFF Claim by the Primary Trust at an Allowed Claim Amount of $_____, on account of which the Sovereign Tribe shall receive one or more distributions, subject to applicable reductions, deductions and withholdings, from the Primary Trust in accordance with the terms of the Plan, the Primary Trust Agreement, and the Primary TDP, and as further set forth herein.

**NOW, THEREFORE**, the Sovereign Tribe hereby agrees as follows:

1. **Scope**. As of the date set forth on the signature page hereto, each Primary Trust Released Party will be released and forever discharged from all of the Released Claims of the Releasor. The Releasor will absolutely, unconditionally, and irrevocably covenant not to bring, file, or claim, or to cause, assist in bringing, or permit to be brought, filed, or claimed, or to otherwise seek to establish liability for any Released Claims of the Releasor against any of the Primary Trust Released Party in any forum arising from, relating to, resulting from or in any way connected to, in whole or in part, the discharge of the Primary Trust Released Parties' duties and responsibilities under the Primary Trust Agreement or the Primary TDP, including any agreement, document, instrument or certification contemplated by the Primary Trust Agreement, the Primary TDP, the Plan, the formulation, preparation, negotiation, execution or consummation of the Primary Trust Agreement, the Primary TDP, and the Plan, and any and all other orders of the Bankruptcy Court or any other applicable court relating to the Primary Trust Released Parties and/or their duties and responsibilities from the beginning of time through the execution date of this Release Agreement. The releases provided for in this Release Agreement are intended to be broad and shall be interpreted so as to give the Primary Trust Released Parties the broadest possible bar against any liability relating in any way to Released Claims and extend to the full extent of the power of each Sovereign Tribe and it's authorized to execute releases of claims. The release provided for in this Release Agreement shall be a complete bar to any Released Claim of the Releasor.

2. **Representation and Warranty**. The signatory hereto, in his/her capacity as Attorney General or other authorized person for his/her Sovereign Tribe, represents and warrants that he/she has or has obtained the authority to release, to the maximum extent of the Sovereign Tribe's power, all Released Claims of his/her respective Sovereign Tribe and all applicable past and present executive departments, agencies, divisions, boards, commissions and instrumentalities of such Sovereign Tribe. By executing this Release Agreement, the Sovereign Tribe hereby expressly waives and fully, finally, and forever settles, releases, and discharges, any and all Released Claims of the Releasor.

3. **Cooperation**. Releasor (a) will not encourage any person or entity to bring or maintain any Released Claim of the Releasor against any Primary Trust Released Party; and (b) will reasonably cooperate with and not oppose any effort by a Primary Trust Released Party to secure the prompt dismissal of any and all Released Claims of the Releasor.

4.  **Governing Law**. This Release Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflicts of law thereof.

EXECUTED this ___day of _____ 20____

By:_____

Title: _____

Sovereign Tribe: _____